IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN D. WALKER aka JON WALKER, MARVIN R. REED, KENNETH R. CROWE, and PHILLIP T. KAPP,<br><br>Defendants. | CRIMINAL CASE NO. 18-00010<br><br>**REPORT & RECOMMENDATION**<br>re Motion to Dismiss Counts One and Two of the Indictment for Failure to Allege Indictable Offenses (ECF No. 118) |

Pending before the court is a Motion to Dismiss Counts One and Two of the Indictment for Failure to Allege Indictable Offenses (the "Motion to Dismiss"), filed by Defendant Kenneth R. Crowe. *See* ECF No. 118. The three codefendants have joined in the Motion to Dismiss. *See* ECF Nos. 139, 140 and 175. The Defendants seek dismissal of Counts One and Two, asserting that the Government failed to properly allege a conspiracy to defraud the United States.

The motion was referred to the below-signed Magistrate Judge, *see* ECF No. 149, and a hearing was held on February 5, 2019. *See* Minutes, ECF No. 197. After having reviewed the motion and supporting memoranda, the United States' opposition and the reply thereto, and having considered the arguments by the parties, the court hereby issues its decision in this Report and Recommendation.

**BACKGROUND**

On May 30, 2018, the grand jury issued a multi-count Indictment charging the Defendants with participating in a scheme to "circumvent[] U.S. aviation safety regulations for the purpose of reducing costs and maximizing the profits of Hansen Helicopters, Inc." ("Hansen Helicopters" or

"Hansen"). Indictment at ¶17, ECF No. 1. The Indictment further asserted that

> [t]he scheme involved, among other things, obtaining aircraft that had been previously de-registered because they were destroyed, scrapped, or otherwise deemed not airworthy; then falsifying, concealing material facts, or making materially fraudulent representations in entries, certifications, documents, and records submitted to government agencies to obtain Airworthiness Certificates for those same aircrafts.
>
> The scheme also involved creating false logbook entries, switching data plates from their associated aircraft or aircraft parts to non-associated aircraft of [sic] aircraft parts, and taking other measures to conceal the background, maintenance histories, and airworthiness of aircraft flown by Hansen.
>
> The scheme also involved the use of non-FAA certified parts that were installed into aircraft flown by Hansen.

*Id.* at ¶¶18-20.

The Indictment charged the Defendants with committing various offenses, but at issue here are the first two counts of the Indictment asserting a violation of Section 371 of Title 18, United States Code. Count One specifically charged the Defendants with Conspiracy to Defraud the National Transportation Safety Board ("NTSB") and the Federal Aviation Administration ("FAA") with regard to a Hansen aircraft bearing the tail number N9068F, which crashed on September 2, 2015. *See* Indictment, at ¶23, ECF No. 1. Count Two charged the Defendants with Conspiracy to Defraud the FAA as to a Hansen aircraft bearing the tail number N243D. *Id.* at ¶30.

On August 21, 2018, Defendant Crowe filed the instant motion seeking to dismiss Counts One and Two of the Indictment. *See* Mot. Dismiss, ECF No. 118. Defendant Crowe primarily claimed that the Indictment failed to set forth the facts and law necessary to sufficiently charge a conspiracy to defraud the United States.

On September 6, 2018, the United States filed an Opposition to the Motion to Dismiss. *See* Gov't Opp'n, ECF No. 141.

On September 14, 2018, Defendant Crowe filed a Reply to the Government's Opposition. *See* Reply Br., ECF No. 142.

## LEGAL STANDARD

Rule 7(c)(1) requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Supreme Court in *Russell v. United States* held that a legally sufficient indictment must state the elements of an

offense charged with sufficient clarity to apprise a defendant of what to defend against. 369 U.S. 749, 763-64 (1962). "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982), *cert. denied*, 460 U.S. 1086 (1983). "[T]he issue in judging the sufficiency of the indictment is . . . not whether the Government can prove its case." *Id.* at 897.

In deciding a motion to dismiss, the court must take the allegations of the indictment as true. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Afshari*, 426 F.3d 1150, 1153 (9th Cir. 2005). An indictment need not allege the government's theory of the case or supporting evidence, but it must state the essential facts necessary to apprise the defendant of the crime charged. *Id.* "An indictment must be read in its entirety and construed in accord with common sense and practicality." *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995).

## ANALYSIS

Defendant Crowe raises various arguments in the Motion to Dismiss Counts One and Two: (1) the Indictment failed to allege the necessary elements of the offense; (2) the Government should be precluded from going forward with Counts One and Two under the defraud clause when a more specific statute is available to be charged; and (3) the Government failed to establish that the NTSB is an agency of the United States.[1] The court opts to address these arguments in reverse order.

1. <u>Whether the NTSB is an agency of the United States</u>

The Motion to Dismiss asserts that "the elements of conspiracy to defraud the United States require the [G]overnment to prove that the [D]efendants conspired to impede and impair the

---

[1] At the February 5th hearing, Mr. McConwell, counsel for Defendant Kapp, argued for the first time that the Indictment was also deficient because it failed to allege that the FAA had jurisdiction over the aircrafts that are the subject of Counts One and Two. This issue was never raised in the underlying motion, in the Reply brief, or in any of the joinders filed by the codefendants. Counsel offered no explanation for failing to raise the argument in earlier briefings filed with the court, and the court believes it is unfair to now consider the issue since the Government has not had the opportunity to brief the matter. Accordingly, the court deems the argument waived. *See Greene v. Wal-Mart Stores, Inc.*, No. 2:15-CV-00677-JAD-NJK, 2016 WL 829981, at *3 (D. Nev. Jan. 26, 2016) (citing *Harger v. Dep't of Labor*, 569 F.3d 898, 904 n.9 (9th Cir. 2009).

operations of a specific government agency." Mot. Dismiss at 13, ECF No. 118. The Defendants then argue that because the NTSB is "strictly an investigating entity" with "no regulatory or enforcement authority," Count One should be dismissed because the Government "failed to allege facts establishing that the NTSB constitutes a government agency within the meaning of Section 371." *Id.*

Despite the Defendants' contentions, it appears clear to the court that the NTSB is a government agency within the meaning of Section 371. In its entirety, Section 371 provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.
> If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

18 U.S.C. § 371.

Nothing in the language of Section 371 or the Ninth Circuit's Model Criminal Instruction 8.21 requires that the federal agency alleged to have been defrauded to have regulatory and enforcement authority. The statute and the model instruction merely require that the United States or "any agency thereof" be defrauded.

Here, the Indictment asserts that the NTSB "is an independent federal agency charged with investigating civil aviation accidents in the United States, among other duties." Indictment at ¶9, ECF No. 1. As noted above, the court must accept this allegation as true. *Boyce Motor Lines*, 342 U.S. at 343 n.16. This allegation is consistent with federal law which created the NTSB as an "independent establishment of the United States Government" charged with "investigat[ing] and report[ing] on accidents involving . . . modes of transportation," including aviation accidents. 49 U.S.C. § 1111(a) and (g). *See also World Airways, Inc. V. Int'l Bhd. of Teamsters, Airline Div.*, 578 F.2d 800, 803 n.7 (9th Cir. 1978) ("The NTSB was created in 1966 as an agency within the Department of Transportation, but since 1975 has been an independent agency of the United States."); *Lahr v. Nat'l Transp. Safety Bd.*, 453 F. Supp.2d 1153, 1162 (C. D. Cal. 2006) (The NTSB "is an independent federal agency charged with investigating civil aviation accidents in the United

States. . . . The NTSB conducts investigations in order to determine the circumstances relating to and the probable causes of accidents and to make safety recommendations that are intended 'to prevent similar accidents or incidents in the future.'"). Accordingly, the court recommends that the Chief Judge deny the Defendants' request to dismiss Count One since the Indictment sufficiently alleges facts establishing that the NTSB constitutes a government agency within the meaning of Section 371.

    2.  <u>Whether the Government should have charged the more specific offense of making false statements under 18 U.S.C. § 1001</u>

The Motion to Dismiss next argues that because a more substantive statute – specifically False Statement to Government Agency under 18 U.S.C. § 1001 – is available to be charged under the offense clause of Section 371, the Government's use of the defraud clause is improper, and the court should "grant the motion to dismiss and thereby preclude the [G]overnment from proceeding with a prosecution of the [D]efendants under the defraud clause." Mot. Dismiss at 11, ECF No. 118.

The court declines the Defendants' invitation to hamper the Government's prosecutorial discretion. The court is mindful of its role in our tripartite form of government and the doctrine of separation of powers, which reserves the decision of whether to prosecute with members of the executive branch charged with prosecutorial functions. *United States v. Edmonson*, 792 F.2d 1492, 1497 (9th Cir. 1986). "The discretion to prosecute carries with it the discretion to choose the statute that will be charged" and where, as here, "conduct violates more than one criminal statute[,] the [G]overnment may generally elect which statute it wishes to charge." *Id.* The court notes that the disjunctive "or" is used to separate the "offense clause" in Section 371 from the "defraud clause," giving a prosecutor the option to charge either if the facts support such a charge. While it may be true that the Government could have also charged the Defendants with a violation of Section 1001 instead of a violation of the defraud clause of Section 371, it is well settled that when conduct violates more than one criminal statute, the Government may choose which statute it will apply. *United States v. Batchelder*, 442 U.S. 114, 124-25 (1979). The Government was within its discretion when it decided to prosecute the Defendants under the general defraud clause of Section 371, and the court would be overstepping its authority if it granted the Defendants' Motion to Dismiss simply

because the Defendants believe it would have been more appropriate for the Government to charge them with another criminal offense.

The Motion to Dismiss cites to the Sixth Circuit's decision in *United States v. Minarik*, 875 F.2d 1186 (6th Cir. 1989), to support the Defendants' assertion that the Government should be precluded from prosecuting a defraud charge when a more specific statute is available. In *Minarik*, one of the defendants had been issued a tax assessment. *Id.* at 1187. The defendant responded that she did not owe the tax. *Id.* The defendant then arranged to sell a house she owned and received the payment by seven installment checks of less than $5,000 each. *Id.* When she tried to cash the checks, the bank contacted the Internal Revenue Service ("IRS") and she was arrested for violating the Bank Secrecy Act, which required the filing of a report with the IRS for any transaction over $10,000. *Id.* at 1188. The defendant was charged under section 371 for conspiring to defraud the government by concealing from the government the nature of and income from a business. *Id.* The indictment did not make clear what function of the government the defendants were impeding, and the government's theory of the case evolved throughout the period from the return of the indictment through the trial. *Id.* at 1188-89. The *Minarik* court noted that the defendant properly could have been charged under § 7206(4) of the Internal Revenue Code, which makes it a felony to conceal any goods or commodities on which a tax or levy has been imposed. *Id.* at 1191. The *Minarik* court, therefore, found that the facts proved a conspiracy under the "offense" clause of § 371 for violating § 7206(4) not the "defraud" clause as the indictment indicated and therefore dismissed the indictment. *Minarik* explained that the purpose of the "defraud" section of § 371 "was to reach conduct not covered elsewhere in the criminal code" and should not be used when a specific provision covers that conduct. 875 F.2d at 1194.

Several circuits, including subsequent Sixth Circuit cases, have distinguished or limited the holding of *Minarik*. *See United States v. Hurley,* 957 F.2d 1, 3-4 (1st Cir.)*, cert. denied,* 506 U.S. 817 (1992) ("*Minarik's* holding has been narrowly limited to the facts of that case[.]" Unlike the *Minarik* conspiracy whose "object was explicitly proscribed ay a particular statute, . . . the government alleges defendants participated in a longstanding and wide-ranging scheme to deceive the IRS regarding the amount and source of assets."); *United States v. Notch*, 939 F.2d 895, 900-01

(10th Cir.1991) *(*indictment under defraud clause proper where conduct broader than specific statutory provision*); United States v. Bilzerian,* 926 F.2d 1285, 1302 (2d Cir.)*, cert. denied,* 502 U.S. 813 (1991) (same); *United States v. Sturman*, 951 F.2d 1466 (6th Cir. 1991), *cert denied*, 504 U.S. 985 (1992) (conspiracy involved many events and no single provision of the tax code covered the totality and scope of the conspiracy); *United States v. Mohney*, 949 F.2d 899, 903 (6th Cir. 1991) ("*Minarik* . . . created a limited rule to remedy the particular concerns raised by the facts of that case"). Similar to these cases, the broad nature of the conspiracies charged in Counts One and Two and the associated violation of several regulations distinguishes the instant case from *Minarik*. Accordingly, the court declines to apply *Minarik's* holding to the facts of this case.

        3.    <u>Whether the Indictment sufficiently pleads conspiracies to defraud the United States</u>

The main argument raised in the Motion to Dismiss is that Counts One and Two of the Indictment "conspicuously lack any allegation that the [D]efendants conspired to defraud the United States by 'impeding, impairing, obstructing, and defeating' the NTSB and FAA." Mot. Dismiss at 8, ECF No. 118. The Defendants contend that the words "impede, obstruct or influence" appear for the first time in paragraph 55 of the Indictment with regard to Counts 17-19, charging Destruction, Alteration, or Falsification of Records, but the terms "impair" and "defeat" do not appear at all in the Indictment. *Id.* at 8-9. The Defendants assert that these deficiencies render Counts One and Two "legally defective" because it is "unclear . . . whether or not the [G]overnment claims that the FAA or NTSB was impeded, hindered or impaired in the performance of its function, as is required in a defraud clause conspiracy." *Id.* at 10.

As stated previously, a legally sufficient indictment must state the elements of the alleged crime in adequate detail to apprise a defendant of the charge. *Russell*, 369 U.S. at 763-64; *Buckley*, 689 F.2d at 896.

Here, Counts One and Two charge the Defendants with conspiring to defraud the FAA and NTSB, in violation of Section 371. The Ninth Circuit has described the elements of this offense as follows: "To convict someone under 18 U.S.C. § 371 the government need only show (1) he entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *United States v. Caldwell*, 989

F.2d 1056, 1059 (9th Cir. 1993). This is consistent with the elements of the offense as set forth in Model Instruction 8.21 of the Ninth Circuit's Manual of Model Criminal Jury Instructions, which states that the Government must prove the following elements beyond a reasonable doubt:

> First, beginning on or about [date], and ending on or about [date], there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of [specify government agency] by deceitful or dishonest means as charged in the indictment;
>
> Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and
>
> Third, one of the members of the conspiracy performed at least one overt act [on or after [date]] for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

Ninth Circuit Model Criminal Instruction 8.21 (Conspiracy to Defraud the United States).

Neither the *Caldwell* case nor the model instruction utilize the words "impede," "hinder" or "impair." Instead the Ninth Circuit case and instruction require that a defendant "obstruct" a lawful function of a government agency by "deceitful or dishonest means."

In this case, the Indictment sets forth 21 paragraphs in the "Introduction" section, which are thereafter incorporated by reference into Counts One and Two. In relevant part, these paragraphs describe the FAA and NTSB functions as follows:

> 1.  The Federal Aviation Administration (FAA) is an agency fo the United States within the Department of Transportation . . . . The primary concern of the FAA with regards to civilian aviation matters is safety. Federal Aviation Regulations (FAR) . . . are enforced by the FAA.
> 2.  The FAA regulates the registration of aircraft in the United States. . . .
> . . .
> 4.  The FAA also issues Airworthiness Certificates, an FAA document which grants authorization to operate an aircraft in flight.
> 5.  To obtain an FAA Airworthiness Certificate, the registered owner or owner's agent must submit an FAA Form 8130-7 (for a Special Airworthiness Certificate) or an FAA Form 8130-6 (for a Standard Airworthiness Certificate) to the FAA. The FAA may then issue the relevant Airworthiness Certificate if it determines the aircraft is eligible and in a condition for safe operation.
> 6.  FAA Aviation Safety Inspectors (ASI) administer, investigate, and enforce FAA safety regulations and standards for the production, operation, maintenance, and modification of all aircraft. ASIs are authorized to issue FAA airworthiness certificates.
> 7.  FAR titled "Identification and Registration Marking," requires certain aircraft to attach a fireproof identification plate, commonly referred to as a "data plate," which provides information about the aircraft. . . . The FAA uses data plates to track aircraft parts and to maintain accountability of those parts.
> 8.  FAR also require that each aircraft have a unique set of logbooks that document historical data dating back to the manufacturing date of the aircraft. These

> logbooks must be complete and kept current. Logbooks are used by FAA certified aircraft mechanics and FAA certified repair stations in performing maintenance and repairs on aircraft.
> 9. The National Transportation Safety Board (NTSB) is an independent federal agency charged with investigating civil aviation accidents in the United States, among other duties. The NTSB conducts investigations to determine the probable cause of transportation accidents and to formulate safety recommendations.
> 10. Federal regulations require operators to notify the NTSB immediately of aviation accidents and certain incidents. . . .
> 11. NTSB regulations require that "[t]he operator of an aircraft involved in an accident or incident for which notification must be given is responsible for preserving to the extent possible any aircraft wreckage, cargo, and mail aboard the aircraft, and all records, including all recording mediums of flight, maintenance, and voice recorders, pertaining to the operation and maintenance of the aircraft and to the airmen until the Board takes custody thereof or a release is granted." . . .
> 12. NTSB regulations also require that "[t]he operator of an aircraft involved in an accident or incident shall retain all records, reports, internal documents, and memoranda dealing with the accident or incident, until authorized by the Board to the contrary." . . .

Indictment at ¶¶1-12, ECF No. 1.

The Indictment goes on to describe the Defendants' scheme to obstruct or circumvent the aviation regulations applicable to or enforced by the FAA and the NTSB:

> 17. Beginning as early as 1997, but no later than February 15, 2012, . . . defendants knowingly and willfully circumvented U.S. aviation safety regulations[.]
> 18. The scheme involved, among other things, obtaining aircraft that had been previously de-registered because they were destroyed, scrapped, or otherwise deemed not airworthy; then falsifying, concealing material facts, or making materially fraudulent representations in entries, certifications, documents, and records submitted to government agencies to obtain Airworthiness Certificates for those same aircraft.
> 19. The scheme also involved creating false logbook entries, switching data plates from their associated aircraft or aircraft parts to non-associated aircraft [or] aircraft parts, and taking other measures to conceal the background, maintenance histories, and airworthiness of aircraft flown by Hansen.

*Id.* at ¶¶17-19.

Specifically as to Count One, the Indictment alleges that with regard to the Hansen aircraft that crashed on September 2, 2015, the Defendants "knowingly and willfully combine, conspire, confederate and agree together to defraud agencies of the United States, namely the NTSB and the FAA[.]" *Id.* at 23. This was accomplished by the commission of several overt acts, including Defendant Kapp making entries into aircraft N9068F's records on or about September 10, 2015, "documenting that he had performed the necessary inspections and maintenance" on said aircraft "when in fact [he] had not performed the stated inspections or maintenance." *Id.* at ¶25. Defendant Kapp provided these false logbook entries to Defendant Crowe, who thereafter submitted the false

logbook entries to the FAA and the NTSB. *Id.* at ¶¶26-28. This is sufficient to satisfy the element requiring a deceitful or dishonest means, since the Government is not merely criminalizing the innocent act of providing inaccurate information to federal agencies, but rather prosecuting the knowing act of misrepresenting to the FAA and the NTSB that the necessary inspections and maintenance on Hansen aircraft N9068F had been performed when in fact they had not. These knowing misrepresentations obstructed the lawful functions of the FAA, which is charged with enforcing various Federal Aviation Regulations with regard to safety, and the NTSB, who would conduct the subsequent investigation to determine the probable cause of the crash involving said aircraft. Reading all these paragraphs in their entirety and construing them in accord with common sense and practicality, the court finds that the Indictment alleges the essential elements with sufficient specificity as to inform the Defendants of the charge and to prepare an adequate defense thereto.

With regard to Count Two, the Indictment alleged that the Defendants "did knowingly and willfully combine, conspire, confederate and agree together to defraud" the FAA with regard to Hansen aircraft bearing the tail number N243D. *Id.* at ¶30. The overt acts related to Count Two assert that on or about February 15, 2012, Defendant Walker submitted to the FAA an application to register said aircraft, which included an FAA Form 8050-2 (Aircraft Bill of Sale) that contained a "forged signature"; that on or about June 24, 2012, Defendant Kapp created a maintenance logbook entry for said aircraft reflecting completion of a hard landing inspection, when no such inspection was performed on N243D; that on or about December 10, 2012, Defendant Crowe submitted to the FAA photographs of a helicopter that he misrepresented as N243D; that on the same date Defendant Crowe submitted to the FAA Defendant Kapp's June 24, 2012 maintenance logbook entry for the aircraft which falsely indicated completion of the hard landing inspection; and that on or about December 21, 2015, Defendant Kapp sent an email to a Hansen employee directing him to swap out "number" and "tags" for three aircraft, one of which was N243D. *Id.* at ¶¶31-36. Again, reading these paragraphs in their entirety and construing them in accord with common sense and practicality, the Indictment asserts sufficient facts to conclude that the Defendants conspired to obstruct the FAA's lawful function of administering, investigating and enforcing FAA safety

regulations and standards with regard to maintaining accurate logbooks. The court finds that Count Two of the Indictment alleges the essential elements with sufficient specificity as to inform the Defendants of the charge against them and to prepare for trial accordingly.

In addition to the claim that the Indictment is deficient because it fails to allege the Defendants conspired to impeded or impair the lawful functions of the two federal agencies, the Motion to Dismiss also argues that the Counts One and Two are "fatally defective" because they "fail to allege the requisite intent to defraud." Mot. Dismiss at 12, ECF No. 118. However, as discussed above, the Indictment sufficiently alleges that the Defendants employed deceitful or dishonest means to obstruct the functions of the FAA and the NTSB. The Defendant are alleged to have submitted logbooks or reports knowing that said logbooks or reports contained false information. This is sufficient to satisfy the requisite intent to defraud. Accordingly, the court recommends that the Chief Judge deny the request to dismiss Counts One and Two.

## CONCLUSION

Based on the above analysis, after reading the Indictment in its entirety and construing it in accord with common sense and practicality, the court finds that the Indictment sufficiently alleges the necessary elements of an offense under the defraud clause of Section 371 to permit the preparation of an adequate defense. Accordingly, the court recommends that the Chief Judge deny the Motion to Dismiss it its entirety.

IT IS SO RECOMMENDED.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Feb 26, 2019**

## NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**