Mack K. Martin
Amber B. Martin
Martin Law Office
125 Park Avenue, Fifth Floor
Oklahoma City, OK 73102
Telephone: (405) 236-8888
Facsimile: (405) 236-8844
mack@martinlawoffice.net
amber@martinlawoffice.net

James Michael Maher
Law Office of James M. Maher
238 Archbishop Flores St., Ste. 300
Hagåtña, Guam 96910
Telephone: (671) 477-7892/94
Facsimile: (671) 477-7889
jmpc671@gmail.com

*ATTORNEYS FOR DEFENDANT JOHN D. WALKER*

Edward A. McConwell
Laura L. McConwell
McConwell Law Offices
5201 Johnson Drive., Suite 300
Mission, Kansas 66205
Telephone: (913) 262-0605
Facsimile: (913) 262-0652
ed@mcconwell.com
laura@mcconwell.com

Anthony C. Perez
Law Office of Anthony C. Perez
Suite 802, DNA Building
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone: (671) 475-5055
Facsimile: (671) 477-5445
acp@perezlawguam.com

*ATTORNEYS FOR DEFENDANT PHILLIP T. KAPP*

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 1

# IN THE UNITED STATES DISTRICT COURT

# FOR THE TERRITORY OF GUAM

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

JOHN D. WALKER, aka JON WALKER,
MARVIN REED, KENNETH R. CROWE,
and PHILLIP T. KAPP

       Defendants.

CRIMINAL CASE NO. 18-00010

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE

      John D. Walker and Phillip T. Kapp submit this Memorandum in Support of their Motion to Suppress Evidence.

## SUMMARY

      The Motion to Suppress relates to evidence obtained directly and indirectly through three illegal search warrants issued and served in Guam, Saipan and the Middle District of Georgia.

      Five points are paramount importance to the Motion to Suppress.

      FIRST, for this Court to have jurisdiction, the alleged crimes had to have been committed in the territory of the United States. The purported illegal acts involve helicopters owned by Vanuatu corporations leased to spot fish from Pacific Ocean based fishing boats.

      SECOND, federal criminal jurisdiction is limited to violations of Federal laws. 18 U.S.C. § 3231. The purported violations of Federal laws depend upon the jurisdiction of the Federal Aviation Administration and the National Transportation Safety Board. Every helicopter mentioned by the United States in the search warrant affidavits (a) is owned by a Vanuatu corporation, (b) was invalidly registered with the FAA, and (c) operated in the international

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 2

waters of the Pacific Ocean on fishing ships which lease and control the operation and location of the helicopters, including, but not limited to when and where they come to port. The FAA has no jurisdiction over the helicopters.

THIRD, the search warrants were based on material misrepresentations and omissions made to three United States Magistrates.

FOURTH, the search warrants resulted from the activities of Douglas Dymock of the FAA's Special Emphasis Investigations Team ("SEIT"). Dymock announced that Walker and Hansen Helicopters were dirty and that he was going to shut them down and that he was going to keep digging until he found something he thought was wrong. Dymock found nothing, but proceeded with his efforts against Walker and Hansen Helicopters.

FIFTH, the search warrants failed to particularly describe the things to be seized, thereby becoming general search warrants and allowing the seizure of virtually anything the executing officers wanted. The Fourth Amendment instructs that in the execution of a search warrant nothing is to be left to the discretion of the officer executing the warrant.

### *Standard of Review*

> The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be search and the persons or things to be seized.

Movants move pursuant to Fed. R. Crim. P. 41(h) to suppress evidence obtained from or as a result of the illegal search warrants based on affidavits of Peter Prozik of the Federal Bureau of Investigation and Michael Bishop of the Department of Transportation Office of Inspector General ("OIG"). There are two types of Fed. R. Crim. P. 41 basis for suppression of evidence,

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 3

both of which are present in this case: (a) fundamental, which involves a constitutional violation of rights, in this case, illegal searches and seizures, and (b) "'Non-fundamental' noncompliance with Rule 41 requires suppression only if (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of the Rule." *United States v. Johnson*, 641 F.2d 652, 656 (9th Cir. 1980). The Court has before it fundamental and non-fundamental violations of Fed. R. Crim. P. 41.

### *Jurisdiction*

The most "fundamental" issue with which a court can be presented is jurisdiction. Personal jurisdiction has not been raised in this case. A lack of subject matter jurisdiction violates Article III of the United States Constitution. Two aspects of subject matter jurisdiction are central to this case: (1) Article III of the Constitution extends the federal judicial power to all cases "arising under" the laws, Constitution, and treaties of the United States, and (2) it is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction. *United States v. White*, 611 F.2d 531, 536 (5th Cir. 1980), *Gov't of Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979), *United States v. Benson*, 495 F.2d 475 (5th Cir.) *cert. denied* 419 U.S. 1035 (1974). Territorial jurisdiction depends on some part of the alleged crime having occurred in United States territory. *See United States v. Luton,* 486 F.2d 1021, 1022 (5th Cir. 1973), *cert. denied*, 417 U.S. 920 (1974).

The defendants' alleged activities did not arise under the laws, Constitution, and treaties of the United States or occur in the territory of the United States. The search warrants about

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 4

which the Movants complain were issued without jurisdiction. *Johnson v. Zerbst*, 304 U.S. 458 (1938), *Bauman v. United States,* 156 F.2d 534 (5th Cir. 1946).

All evidence obtained with the illegal search warrants must be suppressed and returned to the persons from whom the property was illegally seized.

### Search Warrants

The Fourth Amendment states "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Fed. R. Crim. P. 41(d)(1).   The Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 238 (1983) held that:

> The task of the issuing magistrate is simply to make a practical,
> common-sense decision whether, given all the circumstances set
> forth in the affidavit before him, including the "veracity" and
> "basis of knowledge" of persons supplying hearsay information,
> there is a fair probability that contraband or evidence of a crime
> will be found in a particular place.

The Prozik and Bishop affidavits were directed against Walker. "All the operations are based within the Territories of the United States under several company names, but owned and operated by . . . Walker, including Hansen Helicopters." **Exhibits A-C of the Motion to Suppress (Doc. #257)**.

The Fourth Amendment to the United States Constitution provides:

> [t]he right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation, and particularly
> describing the place to be searched, and the persons or things to be
> seized.

The threshold constitutional requirement for issuance of a warrant is probable cause.

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 5

Probable cause refers to "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Carroll v. United States*, 267 U. S. 132, 162." *Brinegar v. United States*, 338 US 160, 175 (1949). For the reasons stated in the Motion to Suppress, Prozik and Bishop knew or should have known that they were submitting false information to the courts. Alternatively, Dymock, an agent of the United States, convincingly lied to Prozik and Bishop so as to convince them to submit false affidavits that they did not know were false. If the truth had been presented to the Magistrates, search warrants would not have been issued. The false affidavits prevented the Magistrates from making practical, common sense decisions upon their review of the affidavits as required by *Illinois v. Gates,* 462 U.S. 213, 238 (1983). The affidavits fly into the face of the requirements of *Illinois v. Gates.*

It is impossible to construct a reasonable situation in which a valid search warrant could be (a) issued to investigate matters not subject to the United States jurisdiction and/or (b) obtained based on affidavits rife with material misrepresentations and omissions of fact and law. The United States had no basis for requesting the search warrants or presenting the three legally and factually defective affidavits to justify the issuance of search warrants.

The Supreme Court stated in *Carpenter v. United States*, 585 U.S. ---, 138 S. Ct. 2206, 2213 (2018) **"**The 'basic purpose of this Amendment,' our cases have recognized, 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" The Court in *Franks v. Delaware*, 438 U.S. 154, 164-165 (1978) stated that:

> The bulwark of Fourth Amendment protection, of course, is the
> Warrant Clause, requiring that, absent certain exceptions, police

obtain a warrant from a neutral and disinterested magistrate before embarking upon a search. In deciding today that, in certain circumstances, a challenge to a warrant's veracity must be permitted, we derive our ground from language of the Warrant Clause itself, which surely takes the affiant's good faith as its premise: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."  Judge Frankel put the matter simply: "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise `probable cause,' the obvious assumption is that there will be a **truthful** showing" (emphasis in original). . . .  But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

Citations omitted.  A warrant can be determined to be supported by probable cause if there is "a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Illinois v. Gates*, 462 U.S. at 238. "A warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause," so that a judicial officer can 'make an independent evaluation of the matter.'" *Franks*, 438 U.S. at 165.

In *Franks*, the Supreme Court established a defendant's right to challenge the truthfulness of statements made by law enforcement agents in an affidavit used to secure a search warrant. *Id*.  If a defendant is successful in proving—by a preponderance of the evidence—that a warrant was issued based on "a false statement that was both material to the finding of probable cause and made either knowingly and intentionally or with reckless disregard for the truth," then evidence obtained pursuant to the warrant must be suppressed.  *Id.* at 155-56.

The Ninth Circuit in *Frimmel Management, LLC v. United States*, 897 F.3d 1045, 1051-1052 (9th Cir. 2018) (citations omitted) set forth the standards for review of the affidavits, standards which mandate the suppression of the described evidence:

"'It is established law that a warrant affidavit must set forth particular facts and circumstances underlying the existence of

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 7

> probable cause, so as to allow the magistrate to make an independent evaluation of the matter. A search warrant, to be valid, must be supported by an affidavit establishing probable cause."

> To prevail on a claim that the police procured a warrant through deception, the party challenging the warrant must show that the affiant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. Our evaluation of materiality requires that we consider the effect of any false statements or omissions. "If an officer submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant." "If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause."

> If the corrected warrant is lacking in probable cause, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." . . . "[B]y reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw ... [T]o allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." Citations omitted.

The exclusionary rule prohibits the introduction into evidence of tangible materials seized during an illegal search. *See Murray v. United States*, 487 U.S. 533, 536 (1988). A trial judge must exclude all evidence derived from exploitation of the original constitutional violation up to the point at which the connection with the illegality becomes "so attenuated as to dissipate the taint." *Id.; Nardone v. United States,* 308 U.S. 338, 341 (1939). The defendants satisfy their burdens for a *Franks* hearing and the suppression of evidence.

*Criminal Jurisdiction*

The affidavits demonstrate this Court's lack of subject matter jurisdiction because no laws of the United States have been violated.  The applications for Search Warrant allege the following as a basis for seizure; (1) evidence of a crime, (2) contraband, fruits of a crime, or other items illegally possessed; and (3) specifically in the Georgia and Guam warrants property designed for use, intended for use, or used in committing a crime, "involving the laws of the United States."  Criminal subject matter jurisdiction depends upon (a) the locus of the alleged crimes and (b) cases arising under the laws, Constitution and treaties of the United States.  The claims made in the three Affidavits for Search Warrant do not involve United States territory and do not involve activity violating the defendants' obligations arising under the laws, Constitution and treaties of the United States.

The Supreme Court held in *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994):

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

Citations omitted.  Courts are presumed to lack jurisdiction unless the contrary appears affirmatively from the record.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3, (2006).  Federal courts have a duty to examine jurisdiction *sua sponte* before proceeding to the merits of a case, *see Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583, (1999), "even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp*., 546 U.S. 500, 514 (2006).

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 9

*Territorial Jurisdiction*

Criminal jurisdiction requires a nexus with the United States "in a territorial sense, includes all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone." 18 U.S.C. § 5. "It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefor." *United States v. Benson*, 495 F.2d 475, 481 (5th Cir.), *cert. denied*, 419 U.S. 1035 (1974), quoted in *Gov't of Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979). Any offenses occurred in Vanuatu and the international waters of the Pacific Ocean, outside the territory of the United States.

The applicable jurisdictional constraints in this case are found in the Convention on International Civil Aviation, Dec. 7, 1944, 61 Stat. 1180. The Convention on International Civil Aviation defines the civil aviation jurisdiction of a country in Article 1 "The contracting States recognize that every State has complete and exclusive sovereignty over the airspace above its territory." Article 2 of the Convention defines the territory of a state "For the purposes of this Convention the territory of a State shall be deemed to be the land areas and territorial waters adjacent thereto under the sovereignty, suzerainty, protection or mandate of such State."

The FAA and Vanuatu corporations mistakenly and invalidly attempted to register the helicopters. Prozik and Bishop in their affidavits, **Exhibits A and B of the Motion to Suppress (Doc. #257)**, correctly state that the attempts to register the helicopters with the FAA were "invalid." Vanuatu corporations should not have requested to have the helicopters registered with the FAA and the FAA should have not accepted the attempted registration. 12 C.F.R. § 47.9. The invalid registrations of the helicopters cannot confer jurisdiction over the helicopter or this criminal case.

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 10

An aircraft "may be registered only by and in the legal name of its owner." 14 C.F.R. § 47.5(b). 14 C.F.R. § 47.3 permits registration of aircraft by the owner of the aircraft not registered under the laws of a foreign country. With regard to aircraft owned by a corporation not owned by a citizen of the United States, the corporation must be organized and doing business under the laws of the United States or a State and the aircraft is based and primarily used in the United States. 14 C.F.R. § 47.3(a)(3), 14 C.F.R. § 47.9 (obligation on corporations which are not United States citizens). The FAA registrations by the Vanuatu corporations do not satisfy these criteria and the registrations are invalid. 14 C.F.R. § 47.43(a).

When a corporation not a United States citizen requests to register an aircraft with the FAA, it must submit with the registration form (a) A certified copy of its certificate of incorporation; (b) A certification that it is lawfully qualified to do business in one or more States; and (c) A certification that the aircraft will be based and primarily used in the United States. 14 C.F.R. § 47.9. This did not occur with the Vanuatu corporations and their owned aircraft.

The Vanuatu corporations' FAA registrations were "invalid." *Ballentine's Law Dictionary,* 3d Ed., defines invalid as **"Illegal, having no force or effect or efficacy; void; null."** *Merriam-Webster* defines "invalid" as "being **without foundation or force in fact, truth, or law**." Various Vanuatu corporations registered their helicopters, albeit invalidly, with the FAA. The FAA invalidly issued the registrations. The prescribed remedy is to return the registration papers to the FAA. 14 C.F.R. § 47.43(b) "If the registration of an aircraft is invalid under paragraph (a) of this section, the holder of the invalid Certificate of Aircraft Registration, AC Form 8050-3, must return it as soon as possible to the Registry."

For this Court to have jurisdiction because of the invalid registrations would mean that the FAA and the Vanuatu corporations created jurisdiction where none existed by making mistakes. Parties to a lawsuit cannot consent to subject matter jurisdiction intentionally or accidentally. "[T]he consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

### *Arising Under the Laws, Constitution and Treaties*

Article III of the Constitution extends the federal judicial power to all cases "arising under" the laws, Constitution, and treaties of the United States. In this case, central to the charges against the defendants is that they violated FAA regulations. A review of the FAA regulations demonstrates the false and misleading nature of the three affidavits in addition to the factual falsities upon which the United States relied in seeking the issuance of search warrants.

Federal statutory law recognizes that the law of the United States does not exist over all persons and commerce in the world. A violation of 18 U.S.C. § 38(a), requires an effect on "interstate or foreign commerce." 18 U.S.C. § 10 states that:

> The term "interstate commerce", as used in this title, includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia.
>
> The term "foreign commerce", as used in this title, includes commerce with a foreign country.

This case does not involve either "interstate commerce" or "foreign commerce" as required by 18 U.S.C. § 38(a).

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 12

The parties could not conspire to commit an offence against the United States or to defraud the United States as provided in 18 U.S.C. § 371 ("offense against the United States, or to defraud the United States") without subject matter jurisdiction. Similarly, without subject jurisdiction over the areas of purportedly illegal conduct, the defendants could not have made false statements "within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."

Mail fraud, 18 U.S.C. § 1341, has three elements: The elements of mail fraud and wire fraud are essentially identical: "the government must show (1) a scheme to defraud, (2) the use of either the mail or wire, radio, or television to further the scheme, and (3) the specific intent to defraud." *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017). The search warrant affidavits omit any reference to the use of the United States mail. Moreover, ignoring the owners of the helicopters, which all had Vanuatu addresses, and focusing on Hansen Helicopters and Walker, any mail from or to Walker and Hansen Helicopters, if it existed, would not relate to the purported violations of the law as the actors, based on the FAA records, were the Vanuatu corporations, which were not even named in the search warrant affidavits.

The same analysis applies to wire fraud, 18 U.S.C. § 1343. "Since both section 1341 and 1343 outlaw use of the mails or wire communications "for the purpose of executing" the scheme to defraud, the sections are in *pari materia* and are to be given similar construction." *United States v. Cusino*, 694 F.2d 185, 187 n.1 (9th Cir. 1982). There is nothing in the affidavits that show Hansen or Walker used United States wires to commit a crime. Congress's legislative concern was "to prevent the use of [United States wires] in furtherance of fraudulent enterprises." *United States v. Kim*, 246 F.3d 186, 191 (2d Cir. 2001). Hansen Helicopters and Walker were

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 13

not the owners of the helicopters, the helicopters were owned by companies formed in a foreign country, Vanuatu, and operated outside the territorial limits of the United States, the Pacific Ocean.

The FAA through the DOT has jurisdiction over fast, safe, efficient, and convenient transportation at the lowest cost consistent with those and other national objectives. 49 U.S.C. § 101. The FAA's jurisdiction over Civil Aviation is not unlimited. Convention on International Civil Aviation, 49 U.S.C. § 106(g), sets forth the duties and powers of the FAA administrator. Part of those duties and powers includes those found in Section 40101. 49 U.S.C. § 40101(d) provides the FAA considers, among other things, air commerce. Central to understanding the jurisdiction of the FAA over aircraft are the terms "air commerce," "navigable airspace" and civil aircraft. These terms are defined in 49 U.S.C. § 40102(a):

> (3) "air commerce" means foreign air commerce, interstate air commerce, the transportation of mail by aircraft, the operation of aircraft within the limits of a Federal airway, or the operation of aircraft that directly affects, or may endanger safety in, foreign or interstate air commerce.

> (17) "civil aircraft of the United States" means an aircraft registered under chapter 441 of this title. [1]

> (22) "foreign air commerce" means the transportation of passengers or property by aircraft for compensation, the transportation of mail by aircraft, or the operation of aircraft in furthering a business or vocation, between a place in the United States and a place outside the United States when any part of the transportation or operation is by aircraft.

> (24) "interstate air commerce" means the transportation of passengers or property by aircraft for compensation, the transportation of mail by aircraft, or the operation of aircraft in furthering a business or vocation—

---

[1]     Public aircraft are owned or operated by the government.

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 14

        (A) between a place in—

> (i) a State, territory, or possession of the United States and a place in the District of Columbia or another State, territory, or possession of the United States; or
>
>       * * *
>
> (iv) a territory or possession of the United States and another place in the same territory or possession.

Under 49 U.S.C. § 44101 "a person may operate an aircraft only when the aircraft is registered under section 44103 of this title." Under 49 USCS § 44102, an aircraft is eligible for registration in the United States by the FAA if:

> (a) Eligibility.—An aircraft may be registered under section 44103 of this title **only when** the aircraft is—
>
> > (1) **not registered under the laws of a foreign country** and is owned by—
> >
> > > (A) a citizen of the United States;
> > >
> > > (B) an individual citizen of a foreign country lawfully admitted for permanent residence in the United States; or
> > >
> > > (C) a corporation not a citizen of the United States when the corporation is organized and doing business under the laws of the United States or a State, and the aircraft is based and primarily used in the United States . . . .

The aircraft fulfill none of the stated criteria for FAA registration.

The FAA registrations were invalid. The term "invalid" means under 14 C.F.R. § 47.43(b) that "the holder of the invalid Certificate of Aircraft Registration, AC Form 8050-3, must return it as soon as possible to the Registry." The returned Certificate of Aircraft Registration will be cancelled by the FAA. 49 U.S.C. § § 44105. The basis for suspension or revocation of a registration by the FAA is that the aircraft does meet the two standards of 49 U.S.C. § 44102 for registration. 49 U.S.C. § 44102 allows aircraft registration with the FAA of

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 15

aircraft owned by (a) a United States citizen, (b) a permanent resident alien of the United States, and (c) a non-citizen corporation organized and doing business under the laws of the United States or a State based and primarily used in the United States. The Vanuatu corporations owning the subject aircraft meet none of these standards.

The United States in its affidavits complains about the defendants and named persons' failure to comply with FAA demands for reinspection and reexamination under 49 U.S.C. § 44709. The aircraft FAA registrations were invalid. 49 U.S. Code § 44102. To obtained an airworthiness certificate, which permits an aircraft to fly legally, there must be a registered owner and a registered aircraft. 14 CFR § 21.173. There are no validly issued FAA certificates held by the defendants or the persons named in the affidavits to be re-inspected or reexamined. There is no jurisdiction for such complaints and they cannot and do not form a basis for the issuance of a search warrant.

### Wrong Parties

FAA records show that the subject aircraft are owned by Vanuatu corporations. The United States submitted false statements about the roles played by Walker and Hansen Helicopters. The United States alleges nothing to show that the defendants are liable for alleged acts committed by the Vanuatu corporations. The Prozik and Bishop affidavits attempt to justify the scope of the requested search warrants by repeatedly and falsely stating that every purported wrong is related to Walker and Hansen Helicopters. Vanuatu companies own the helicopters, not Walker or Hansen Helicopters.

The Supreme Court described the United States' ignored burden in seeking to nullify corporate entities in *United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998):

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 16

It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. "Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate"; "Ordinarily, a corporation which chooses to facilitate the operation of its business by employment of another corporation as a subsidiary will not be penalized by a judicial determination of liability for the legal obligations of the subsidiary"; "Limited liability is the rule, not the exception"; "A corporation and its stockholders are generally to be treated as separate entities". Thus it is hornbook law that "the exercise of the `control' which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary. That `control' includes the election of directors, the making of by-laws . . . and the doing of all other acts incident to the legal status of stockholders. Nor will a duplication of some or all of the directors or executive officers be fatal."

(Citations to authorities omitted with quotations remaining.)

The teachings of the Ninth Circuit are clearly stated in *Ranza v. Nike*, 793 F.3d 1059. 1073 (9th Cir. 2015):

To satisfy the alter ego test, a plaintiff "must make out a prima facie case `**(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.**'" *Unocal*, 248 F.3d at 926 (alterations in original) (quoting *AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)). The "unity of interest and ownership" prong of this test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (internal quotation marks omitted). This test envisions pervasive control over the subsidiary, such as when a parent corporation "dictates every facet of the subsidiary's business-from broad policy decisions to routine matters of day-to-day operation." *Id.* (internal quotation marks omitted). Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 17

Emphasis added. Mere ownership of a company does not impose liability upon the owner of the company. *See United States v. Bennett*, 621 F. 3d 1131, 1136 (9th Cir. 2010). The United States has a heavy burden to prove to the Court that the corporate formalities of Hansen Helicopters and the other corporations should be ignored. *United States v. Bestfoods*, *Ranza v. Nike*, *Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir. 2001).

According to FAA records, the named helicopters are owned by Vanuatu corporations. Nothing shows that the United States has jurisdiction over claims made against the defendants based on the helicopters owned by Vanuatu corporations. The United States asserts that the defendants are associated with Hansen Helicopters. There is no connection between the defendants and the Vanuatu corporations presented by the United States other than the bald allegations that helicopter N9068F, shown by the FAA to be owned by Whirlwide Helicopter of Vanuatu, Indictment p. 6, ¶ 23, aircraft owned by Hansen and Walker, Indictment, p. 6-7, ¶¶ 19-20, p. 9, ¶¶ 40-41, and helicopter N243D, shown by the FAA to be owned by Evan Air, Inc., Indictment, p. 7, ¶ 30.

Submitted with the Motion is a description of the ownership of the Vanuatu corporations which owned at the pertinent times the aircraft described in the United States' pleadings. The described Vanuatu corporations were 100% owned by Beanbag Helicopters Services, Inc. of Vanuatu. Beanbag Helicopters Services was 100% owned by Caledonian Insurance Company Ltd, which was owned by Hansen Northern Inc. (149,999 shares) and Veritatem Nominees, Limited (one share.) Hansen Northern, Inc. was owned by Walker (9,998 shares,) Crowe (one share,) and Reed (one share.) Thus, to establish liability for Hansen Helicopters, the United States must prove that Hansen Helicopters illegally used its non-ownership of the Vanuatu

corporations to commit the allegedly illegal acts, and must pierce the corporate identities of the pertinent Vanuatu corporations, Beanbag Helicopters, Caledonian Insurance Company and Hansen Northern.  Not only are not facts alleged to accomplish the feats, the law does not support such assertions.

Vanuatu Corporation Laws impose liability upon shareholders not on the basis that ownership of shares but requires actions by the persons that create liability for the shareholder personally.  Vanuatu Companies Act No. 25 of 2012, § 46.

There is no basis for holding the defendants responsible for the allegedly illegal actions of the Vanuatu corporations, particularly since any such activity much show actions on behalf of Hansen Helicopters much relate back to companies in which Hansen Helicopters owned no interest.

Nothing in the Prozik and Bishops affidavits provides anything other than bald faced conclusions.  The Fourth Amendment requires more than mere conclusions for the establishment of probable cause.

### *Americopters*

The issuance of a search warrant against Americopters shows the total lack of concern for the facts of the case and the law demonstrated in the search warrant affidavits.  Based on the language in the affidavits, nothing was presented to the Court regarding Americopters, all evidence, documents and property obtained from or resulting from evidence or documents seized at the facilities of Americopters in Saipan must be suppressed.  The affidavit submitted in support of the Americopters' search warrant did not pretend to present a basis for a search warrant directed at Americopters.  Fed. R. Crim. P. 41(c).

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 19

*General Warrants*

In this instance the execution of each of the search warrants violated the Fourth Amendment to the United States Constitution. The government through the execution of three virtually identical Search Warrants at three separate locations engaged in the unlimited search and seizure which the Fourth Amendment forbids – a general warrant. See, *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927).

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.
>
> As to what is to be taken, nothing is left to the discretion of the officer executing the warrant. *Marron v. United States*, 275 U.S. at 195.

That rule condemning general searches was re-affirmed in *Stanford v. State of Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed. 2d 431 (1965).

> "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, at 196, 48 S.Ct. 74, at 76. We need not decide in the present case whether the description of the things to be seized would have been too generalized to pass constitutional muster, had the things been weapons, narcotics or 'cases of whiskey.' See *Steele v. United States No. 1*, 267 U.S. 498, 504, 45 S.Ct. 414, 416, 69 L.Ed. 757.18 The point is that it was not any contraband of that kind which was ordered to be seized, but literary material—'books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas, and the operations of the Communist Party in Texas.' The indiscriminate sweep of that language is constitutionally intolerable. To hold otherwise would be false to the terms of the Fourth Amendment, false to its meaning, and false to its history. *Stanford v. State of Texas*, 379 U.S. at 485-86.

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 20

As evidenced by the "Attachment B" to the Search Warrant Affidavits, "property to be seized" on each of the three affidavits for search warrant there is virtually no limitation on the things that can be seized under any of the three warrants. The officers executing the search warrants had unfettered discretion to take anything they wanted. All of the description of the things to be seized begins with the catch all phrase "Any and all" and then gives a description which covers any type of electronic, technological, paper, video, audio, storage devise of data on the premises. The warrant authorizes the wholesale seizure of all electronic technical equipment and data. The officers could conceivably seized anything on the premises based on the general description, from a thumb drive to a fully functional helicopter. This type of unguided and unfettered discretion in the execution of search warrant has been condemned by the Supreme Court multiple times. See, *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed. 2d 72 (1987).

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157 2172, 72 L.Ed.2d 572 (1982).
> *Maryland v. Garrison*, 480 U.S. at 84-85

The three Search Warrants issued and executed in Guam, Saipan and Georgia were general warrants and all evidence seized as a result thereof must be suppressed as a violation of the Fourth Amendment to the United States Constitution.

## CONCLUSION

Subject matter jurisdiction did not exist to issue the search warrants directed against Walker and Hansen Helicopters. The search warrants were not legally issued. The execution of the search warrants was a rummaging through property and general search warrants. All evidence that comes from the execution of those search warrants, directly or indirectly, must be suppressed.

Respectfully submitted,

MARTIN LAW OFFICE

/s/  *Mack K. Martin*
    Mack K. Martin
    Amber B. Martin
    James M. Maher (Local Counsel)
    ATTORNEYS FOR DEFENDANT
    John D. Walker

McCONWELL LAW OFFICE

/s/  *Edward A. McConwell*
    Edward A. McConwell
    Laura L. McConwell
    Anthony C. Perez (Local Counsel)
    ATTORNEYS FOR DEFENDANT
    Phillip T. Kapp

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 22

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of July, 2019, I provided a courtesy copy via U. S. mail and electronically transmitted the attached document to the clerk of the Court using the ECF System for filing and transmitting a Notice of Electronic Filing to the following ECF registrants:  Mr. Stephen F. Leon-Guerrero, Assistant United States Attorney.

/s/  *Edward A. McConwell*

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE - 23