IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM


UNITED STATES OF AMERICA,    ) Criminal Case No. 18-00010
                       )
           Plaintiff,  )
                       )
        vs.           )
                       )
JOHN D. WALKER,        )
aka JON WALKER,        )
MARVIN R. REED,        )
KENNETH R. CROWE,      )
PHILLIP T. KAPP,       )
                       )
_____ Defendants. )


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHAEL J. BORDALLO,
MAGISTRATE JUDGE
(Via telephone)
MAY 6, 2020; 9:00 A.M.
HAGATNA, GUAM


**Motion Hearing on an Amended Motion for Hearing to Address**   09:01:50AM
**Potential Conflict of Interest and a Motion for Protective**   09:01:54AM
**Order, Prevent Removal of Evidence, Schedule Inspection,**   09:01:58AM
**Prevent Harassment of Witnesses**   09:02:01AM


Proceedings recorded by *mechanical stenography*.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: STEPHEN LEON GUERRERO, AUSA** (via telephone)
**MARIE MILLER, SAUSA** (via telephone)
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of Defendant Walker:


**LAW OFFICE OF JAMES M. MAHER**
**BY: JAMES M. MAHER, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 300, DNA Building
Hagatna, Guam 96910
(671) 477-7892

**BY: MACK K. MARTIN, ESQ.** (via telephone)
125 Park Avenue, 5th Floor
Oklahoma City, OK 73102


Appearing on behalf of Defendant Reed:

**LAW OFFICE OF PETER C. PEREZ**
**BY: PETER C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

Appearing on behalf of Defendant Crowe:

**LAW OFFICE OF LUJAN & WOLFF**
**BY: DAVID J. LUJAN, ESQ.** (via telephone)
238 Archbishop Flores Street

**LAW OFFICE OF GREGORY NICOLAYSEN**
**BY: GREGORY NICOLAYSEN, ESQ.** (via telephone)
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
(818) 970-7247

Appearing on behalf of Defendant Kapp:

**LAW OFFICE OF ANTHONY C. PEREZ**
**BY: ANTHONY C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

**BY: EDWARD A. MCCONWELL, ESQ.,** (via telephone)
**LAURA L. MCCONWELL, ESQ.** (via telephone)
5201 Johnson Drive, Suite 300
Mission, KS 66205

Appearing on behalf of Defendant Hansen:

**LAW OFFICE OF EDWARD C. HAN**
**BY: EDWARD C. HAN, ESQ.** (via telephone)
378 Sara Street
Purple Heart Highway
Maite, GU 96910
(671)477-9219

Appearing on behalf of Defendant Rogers:

**LAW OFFICE OF GUMATAOTAO & POLE**
**BY: WILLIAM B. POLE, ESQ.** (via telephone)
Suite 301, San Ramon Building
115 San Ramon Street
Hagatna, GU 96910
(671)475-0200

ALSO PRESENT:

John Walker, Defendant (via telephone)

Marvin Reed, Defendant (via telephone)

Kenneth Crowe, Defendant (via telephone)

Phillip Kapp, Defendant (via telephone)

Viranousith Khamvongsa, IRS agent (via telephone)

I N D E X

Page

Court to take matters under advisement and
issue decision shortly                          38

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

| | |
|---|---|
| 1 | May 6, 2020; 9:01 a.m.; Hagatna, Guam |
| 2 | * * * |
| 3 | THE CLERK:  Your Honor, all the parties are |
| 4 | present. |
| 5 | THE COURT:  All right, go ahead and call the case |
| 6 | then. |
| 7 | THE CLERK:  Okay, Your Honor.  Come to order, the |
| 8 | District Court of Guam is now in session, the Honorable |
| 9 | Michael J. Bordallo presiding on Criminal Case 18-00010, *USA* |
| 10 | *versus John D. Walker, Marvin R. Reed, Kenneth R. Crowe,* |
| 11 | *Phillip T. Kapp, Randall Rogers, and Hansen Helicopters* on a |
| 12 | Motion Hearing on an Amended Motion for Hearing to Address |
| 13 | Potential Conflict of Interest and a Motion for Protective |
| 14 | Order, Prevent Removal of Evidence, Schedule Inspection, |
| 15 | Prevent Harassment of Witnesses. |
| 16 | Counsels, please state your appearance, starting |
| 17 | with the government.  And we'll go from Defendant 1 all the |
| 18 | way down.  Thank you. |
| 19 | MR. LEON GUERRERO:  Buenas and hafa adai, Your |
| 20 | Honor, this is Assistant U.S. Attorney Stephen Leon Guerrero. |
| 21 | Also present with me is IRS Agent Sith Khamvongsa.  Also |
| 22 | present is co-counsel, Special Assistant U.S. Attorney Marie |
| 23 | Miller. |
| 24 | MS. MILLER:  Hafa adai, Your Honor. |
| 25 | THE COURT:  Hafa adai. |

09:00AM
09:00AM
09:01AM
09:01AM
09:01AM
09:01AM
09:01AM
09:01AM
09:01AM
09:01AM
09:01AM
09:01AM
09:01AM
09:01AM
09:02AM
09:02AM
09:02AM
09:02AM
09:02AM
09:02AM
09:02AM
09:02AM
09:02AM
09:02AM
09:02AM

1     MR. MARTIN:  Your Honor, this is Mack Martin.  I      09:02AM

2  represent John Walker.  I'm getting him on the other line.  I   09:02AM

3  had accidentally disconnected him, but he'll be on the phone    09:02AM

4  in just a moment.    09:02AM

5     THE COURT:  And is local Counsel, Jim Maher, also    09:02AM

6  on or is it just you, Mr. Martin?    09:02AM

7     MR. MARTIN:  Mr. Maher is on.    09:02AM

8     THE COURT:  Okay.  All right, thank you.    09:02AM

9     MR. PEREZ:  Good morning, Your Honor, Peter Perez    09:02AM

10 present with Mr. Reed by telephone.    09:02AM

11    THE COURT:  Okay.  Thank you.    09:03AM

12    MR. LUJAN:  Good morning, Your Honor, -- Lujan    09:03AM

13 and, you know, and also on the phone is Gregory Nicolaysen on   09:03AM

14 behalf of Rufus Crowe and Mr. Nicolaysen will be arguing on    09:03AM

15 behalf of Mr. Crowe.    09:03AM

16    MR. NICOLAYSEN:  Good morning, Your Honor, Greg    09:03AM

17 Nicolaysen here from Los Angeles.    09:03AM

18    MR. POLE:  Attorney William Pole, Your Honor --    09:03AM

19 go ahead.    09:03AM

20    THE COURT:  Go ahead, go ahead.    09:03AM

21    MR. POLE:  William Pole, Your Honor, on behalf of    09:03AM

22 Randall Rogers.  He's in Georgia.    09:03AM

23    THE COURT:  Okay.    09:03AM

24    MR. MCCONWELL:  Edward McConwell, Laura McConwell    09:03AM

25 on behalf of Phillip Kapp, and Mr. Perez is on the phone too.   09:03AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

| | |
|---|---|
| 1 | (Pause.) |
| 2 | THE COURT:  All right. |
| 3 | MR. HAN:  This is Ed Han for Hansen Helicopters. |
| 4 | THE COURT:  Okay, and Mr. Nicolaysen, on behalf |
| 5 | of Mr. Lujan, has Mr. Nicolaysen filed his pro hac vice in |
| 6 | this case already? |
| 7 | MR. NICOLAYSEN:  Yes, Your Honor, it was done two |
| 8 | years ago. |
| 9 | THE COURT:  Okay.  All right.  So he -- I haven't |
| 10 | seen but I saw -- all right.  Thank you.  All right.  Let's go |
| 11 | for the first matter before the Court is the amended motion |
| 12 | for a hearing to address potential conflicts and what I don't |
| 13 | need is I don't need a repeat of anything that's contained in |
| 14 | the briefs. |
| 15 | So beginning with the government, is there |
| 16 | anything in addition to what's been filed that you wish the |
| 17 | Court to be aware of? |
| 18 | MR. LEON GUERRERO:  Yes, yes, Your Honor.  Thank |
| 19 | you.  Stephen Leon Guerrero.  So really, in addition to, you |
| 20 | know, the arguments that were raised in our filing, it has |
| 21 | come to our attention that there is in fact a joint defense |
| 22 | agreement amongst the defendants and that was something we |
| 23 | weren't aware of or sure of when we initially filed this |
| 24 | motion, and because we've been made aware of that, you know, |
| 25 | we're simply asking the Court to make sure that there's no, |

1    you know, potential for conflict of interest in any way to be        09:05AM

2    able to conduct an in camera review of that joint defense            09:05AM

3    agreement to determine if there's any potential for conflict         09:05AM

4    of interest.  You know, the big concern, you know, that the          09:05AM

5    government has is, we have Defendant Hansen who wasn't a             09:05AM

6    defendant in the initial indictment, um, is a defendant now,         09:05AM

7    and our concern is, if Defendant Hansen is paying the legal          09:05AM

8    fees of its co-defendants, you know, there is a potential for        09:05AM

9    conflict of interest if one of these defendants chooses to           09:05AM

10   want to cooperate and assist the government against its              09:05AM

11   co-defendants but can't because Defendant Hansen is paying its       09:05AM

12   attorneys fees.                                                      09:05AM

13          So, you know, that is a conflict of interest that            09:05AM

14   the government is trying to avoid.  The other thing, too, is         09:05AM

15   you know, what we want to point out in addition is, you know,        09:06AM

16   we had attorney Martin who, you know, it's our position, was         09:06AM

17   representing Defendant Hansen and Defendant Walker at the same       09:06AM

18   time.  And so, you know, that was evident in the sense that          09:06AM

19   you know, now, you know, they have attorney Han who's now            09:06AM

20   representing Defendant Hansen.  But, you know, since the             09:06AM

21   indictment, you know, there's multiple layers of the potential      09:06AM

22   for conflict of interest to arise.                                   09:06AM

23          At one point, attorney McConwell, and this was               09:06AM

24   noted in our filing ECF 416, you know, we have attorney             09:06AM

25   McConwell that sought to deregister aircraft with the FAA.          09:06AM

1   And what's important to note is these aircraft that he's   09:06AM

2   looking to deregister belong to subsidiaries of Defendant   09:06AM

3   Hansen, again, who at least at one time was being represented   09:07AM

4   by attorney Martin.   09:07AM

5           So, you know, we have that potential conflict of   09:07AM

6   interest where attorney McConwell, in essence, representing   09:07AM

7   these Defendant Hansen subsidiaries and trying to deregister   09:07AM

8   these aircraft with the FAA.  We also have Defendant Crowe and   09:07AM

9   Defendant Crowe either has a position and/or role with these   09:07AM

10  Vanuatu subsidiaries.  And the same thing with Defendant   09:07AM

11  Crowe, he sought to deregister aircraft with the FAA, again,   09:07AM

12  creating this potential layer of a conflict, not only with   09:07AM

13  himself, but again, attorney Martin and others.   09:07AM

14          So, you know, that -- you know, the big thing   09:07AM

15  with the government, Your Honor, bringing this motion is just   09:07AM

16  really having a hearing to ensure that, you know, we point out   09:07AM

17  the concerns that we have and, you know, the different   09:07AM

18  scenarios that we believe that there may be a potential   09:08AM

19  conflict of interest.  And, you know, ultimately, it will be   09:08AM

20  the Court to make that determination if a conflict or not even   09:08AM

21  just an actual conflict but the potential for a conflict   09:08AM

22  exists and that's merely what the government is just trying to   09:08AM

23  do, we have an obligation to bring it to the Court's attention   09:08AM

24  if we feel that there is a potential and that's what we did.   09:08AM

25  And so with those arguments, Your Honor, we submit, unless my   09:08AM

```
 1    co-counsel, SAUSA Miller, has anything else she'd like to add.    09:08AM

 2             MS. MILLER:  I do not.  I do not.  Thank you,           09:08AM

 3    Your Honor.  Thank you, Stephen.                                 09:08AM

 4             THE COURT:  All right.  Thank you.  Let me begin        09:08AM

 5    with Mr. Walker's Counsel, Mr. Martin, you can go ahead and      09:08AM

 6    address if you have addition to add other than what's been       09:08AM

 7    filed?                                                           09:08AM

 8             MR. MARTIN:  Your Honor, I accidentally                 09:08AM

 9    disconnected myself, so when I picked up, Mr. Leon Guerrero      09:08AM

10    was talking about Hansen and attorney's fees being paid.         09:08AM

11    Anything before then, I didn't hear and I apologize.  I          09:09AM

12    accidentally disconnected, but let me just briefly say my        09:09AM

13    technology, Your Honor, is not that great.  Let me just --       09:09AM

14             THE COURT:  Well, let me just -- I guess, if I          09:09AM

15    can attempt to bring you up to speed, Counsel has just brought   09:09AM

16    up that there in fact exists a joint defense agreement and       09:09AM

17    then the obvious concern about the conflicts.  He referenced     09:09AM

18    Mr. McConwell may be representing subsidiaries of Hansen in      09:09AM

19    attempts at deregistration.  The Court has reviewed those        09:09AM

20    requests, the deregistrations that were filed as exhibits and    09:09AM

21    the conflicts that may be associated with that.  So that's       09:09AM

22    kind of where the government was.  Go ahead, you can then now    09:09AM

23    argue to the Court if you have anything you wish the Court to    09:09AM

24    be aware of other than what's been filed.                        09:09AM

25             MR. MARTIN:  Your Honor, very briefly.  I               09:09AM
```

```
 1    represent John Walker.  I don't represent Hansen, I don't       09:09AM
 2    represent anyone else.  My loyalties are to John Walker.  He's   09:10AM
 3    aware of that.  He's previously executed a waiver of conflict    09:10AM
 4    of interest in this case as relation to all other defendants     09:10AM
 5    and on behalf of Hansen, a waiver.  But there's -- I             09:10AM
 6    understand -- I've been doing this for a long, long time.  I     09:10AM
 7    understand what a conflict is.  And if the government wants to    09:10AM
 8    make an offer to us for us to cooperate against them, I'm sure   09:10AM
 9    willing to hear them.  I don't think Hansen is going to impact   09:10AM
10    my loyalty or duties to John Walker in any way shape or form     09:10AM
11    if that's a concern of theirs.  I will advise the Court that     09:10AM
12    we all do have a common defense.  Our common defense is we       09:10AM
13    haven't done anything wrong, but that doesn't create a           09:10AM
14    conflict of interest.  I think the issues are clearly set out    09:10AM
15    in the briefs filed by all the parties and I would stand on      09:10AM
16    that, Judge.                                                     09:10AM
17              THE COURT:  All right.  Thank you, Mr. Martin.         09:10AM
18    Let me -- go ahead, I'm sorry.                                   09:10AM
19              (Pause.)                                               09:11AM
20              THE COURT:  We may have lost Mr. Martin again.         09:11AM
21              MR. MARTIN:  No, I'm here.  I'm here, Judge.  Can      09:11AM
22    you hear me?                                                     09:11AM
23              THE COURT:  Yes, okay.  Is that it, Mr. Martin?        09:11AM
24              MR. MARTIN:  That's it, and I think my Counsel --      09:11AM
25    my client's on the phone, if you need a waiver from him, he      09:11AM
```

| | |
|---|---|
| 1 | can orally do it and if we need to do another one, we're happy | 09:11AM |
| 2 | to do that. | 09:11AM |
| 3 | THE COURT: All right. Let me just move up the | 09:11AM |
| 4 | line. Mr. Perez, anything on behalf of Mr. Reed? | 09:11AM |
| 5 | MR. PEREZ: Just briefly, Your Honor. First, we | 09:11AM |
| 6 | join in the opposition filed by co-defendants in Document 415 | 09:11AM |
| 7 | and 417. I would just reiterate that my loyalty as Counsel is | 09:11AM |
| 8 | to Defendant Reed only. I would also point out that Mr. Reed | 09:11AM |
| 9 | also signed a waiver which was submitted to the Court | 09:11AM |
| 10 | previously. | 09:11AM |
| 11 | I would just also submit that the government has | 09:11AM |
| 12 | made no threshold showing of any conflict and I would also | 09:11AM |
| 13 | just point out that the issue regarding the conflict based | 09:11AM |
| 14 | upon payment of fees was raised previously by the government | 09:11AM |
| 15 | addressed by this Court with Judge Manibusan and was denied | 09:11AM |
| 16 | back then and this is the same issue that's being raised again | 09:12AM |
| 17 | and I have nothing further to add other than that. | 09:12AM |
| 18 | THE COURT: All right. Mr. Pole, anything to add | 09:12AM |
| 19 | on behalf of Mr. Rogers? | 09:12AM |
| 20 | MR. POLE: Your Honor, I would just add that of | 09:12AM |
| 21 | course, again, my loyalty is to Mr. Rogers and he's only on | 09:12AM |
| 22 | one count. So that even if there was a conflict for the other | 09:12AM |
| 23 | defendants, which we don't see, it wouldn't be imputed to my | 09:12AM |
| 24 | client, Your Honor. | 09:12AM |
| 25 | THE COURT: All right. On behalf of Mr. Kapp, | 09:12AM |

| | |
|---|---|
| 1 | Mr. McConwell or Tony? | 09:12AM |
| 2 | MR. MCCONWELL:  This is Mr. McConwell, Your | 09:12AM |
| 3 | Honor.  I join in that.  My loyalty is to Mr. Kapp.  He's also | 09:12AM |
| 4 | waived any potential conflict.  I do not believe there's a | 09:12AM |
| 5 | conflict with regard to the administrative matters we've been | 09:12AM |
| 6 | dealing with, with regard to the FAA enforcement case or the | 09:12AM |
| 7 | letter, or e-mail that you got from me to another Counsel in | 09:12AM |
| 8 | this case urging them to go ahead and allow deregistration.  I | 09:13AM |
| 9 | might point out to you they have blocked every deregistration | 09:13AM |
| 10 | of aircraft in the registry right now and I think they have | 09:13AM |
| 11 | something like 58 hold orders, so they're trying to block | 09:13AM |
| 12 | deregistration by Hansen of the right to deregister their | 09:13AM |
| 13 | aircraft.  But my client has no objection to the network that | 09:13AM |
| 14 | I've done for the Vanuatu corporations and has executed the | 09:13AM |
| 15 | waiver. | 09:13AM |

Mr. McConwell or Tony?

        MR. MCCONWELL:  This is Mr. McConwell, Your
Honor.  I join in that.  My loyalty is to Mr. Kapp.  He's also
waived any potential conflict.  I do not believe there's a
conflict with regard to the administrative matters we've been
dealing with, with regard to the FAA enforcement case or the
letter, or e-mail that you got from me to another Counsel in
this case urging them to go ahead and allow deregistration.  I
might point out to you they have blocked every deregistration
of aircraft in the registry right now and I think they have
something like 58 hold orders, so they're trying to block
deregistration by Hansen of the right to deregister their
aircraft.  But my client has no objection to the network that
I've done for the Vanuatu corporations and has executed the
waiver.

        THE COURT:  All right.  Thank you, Mr. McConwell.
On behalf of Mr. Crowe, Mr. Nicolaysen?

        MR. NICOLAYSEN:  Yes, thank you, Your Honor, Greg
Nicolaysen from Los Angeles speaking on behalf of Mr. Crowe
together with my co-Counsel David Lujan.  Your Honor, I ask
the Court to take note as our papers mention of the waiver of
conflicts filed on February 22nd of 2019, PACER
Document 2-0-4.  That waiver resolves any issue of any
potential conflict and there certainly was no actual conflict
that was being raised by the government in its initial filing

1    back in 2018.  And so looking at February of 2019 forward in    09:14AM

2    time up to the present time, the government has not addressed    09:14AM

3    any circumstance that would suggest that during the period    09:14AM

4    subsequent to the filing of the conflict waivers, which Judge    09:14AM

5    Manibusan accepted, there has been anything to raise divided    09:14AM

6    loyalties or any other type of conflict in regard to the    09:14AM

7    representation of Mr. Crowe.  And in my view, that this is    09:14AM

8    simply, as our papers argue, an effort to delay the trial.    09:14AM

9         In regard to the filing of the amended motion,    09:14AM

10   it's all in our papers, I won't repeat the argument here, but    09:14AM

11   there is certainly no basis for any type of conflict inquiry    09:15AM

12   or even for the filing of a supplemental waiver.  There is no    09:15AM

13   need for any additional waiver in regard to Mr. Crowe.    09:15AM

14        THE COURT:  All right.  Thank you,    09:15AM

15   Mr. Nicolaysen.  I apologize for butchering your name but I    09:15AM

16   think I got it now.    09:15AM

17        MR. NICOLAYSEN:  No, it's fine.    09:15AM

18        THE COURT:  Mr. Han, on behalf of Hansen    09:15AM

19   Helicopters, anything -- because you're -- I guess the amended    09:15AM

20   complaint that is now Hansen formally as a defendant.    09:15AM

21        MR. HAN:  Yes, Your Honor.  Um, nothing else to    09:15AM

22   add except the fact that I'd be loyal to the Hansen    09:15AM

23   Helicopters, the corporation.    09:15AM

24        THE COURT:  All right.  Thank you.    09:15AM

25        MR. LEON GUERRERO:  Your Honor, this is AUSA Leon    09:15AM

| | | |
|---|---|---|
| 1 | Guerrero, just a brief rebuttal. | 09:15AM |
| 2 | THE COURT:  Okay.  Go ahead. | 09:15AM |
| 3 | MR. LEON GUERRERO:  Now, I would say that the, | 09:15AM |
| 4 | you know, the circumstances have changed and really those | 09:15AM |
| 5 | waivers that were previously submitted to the Court are | 09:15AM |
| 6 | outdated because at the time, Defendant Hansen was not a | 09:16AM |
| 7 | co-defendant in the case.  So I would say that the | 09:16AM |
| 8 | circumstances have changed and really those -- the initial | 09:16AM |
| 9 | waivers that were provided to the Court really are no longer | 09:16AM |
| 10 | pertinent and they're outdated, given the current superseding | 09:16AM |
| 11 | indictment. | 09:16AM |
| 12 | THE COURT:  All right. | 09:16AM |
| 13 | MR. NICOLAYSEN:  Your Honor, on behalf of | 09:16AM |
| 14 | Mr. Crowe, I'd like to respond since it was in response to my | 09:16AM |
| 15 | comment.  The government has an obligation to make a prima | 09:16AM |
| 16 | facie showing that there is a reason to be concerned about a | 09:16AM |
| 17 | serious potential for conflict or an actual conflict.  The | 09:16AM |
| 18 | mere fact that the corporate entity was not a defendant at the | 09:16AM |
| 19 | time the original conflict waivers were filed in February 2019 | 09:16AM |
| 20 | and we now have the corporate defendant in this case, that is | 09:16AM |
| 21 | not a sufficient change of circumstance to suggest that there | 09:16AM |
| 22 | are divided loyalties that would warrant further inquiry.  And | 09:17AM |
| 23 | the government needs to demonstrate that there is some basis | 09:17AM |
| 24 | for divided loyalties sufficient to conduct further inquiry in | 09:17AM |
| 25 | camera or otherwise.  If the Court wishes to conduct further | 09:17AM |

1  inquiry, I would recommend that that be done outside the                09:17AM

2  government's presence and the Court can take oral waivers by             09:17AM

3  phone at this hearing in an under-seal proceeding and we can             09:17AM

4  have it resolved now.  I don't think it's necessary, but I              09:17AM

5  think the defendants would be prepared to do that if the Court           09:17AM

6  feels that the need has arisen for a supplemental waiver.               09:17AM

7            THE COURT:  No, the Court has reviewed the                    09:17AM

8  defendants' briefs and also the arguments with respect to the            09:17AM

9  nature of the initial investigation and the government's                 09:17AM

10 awareness certainly since 2015 of the involvement of -- well,            09:17AM

11 the newest defendant, Hansen Helicopters, and that the                   09:17AM

12 investigation really was -- was -- was geared towards them               09:17AM

13 from the beginning.                                                      09:18AM

14            The Court, I think, just needs to remind the                 09:18AM

15 lawyers to, you know, I'm sure the lawyers are aware of their            09:18AM

16 duty under Rule 1.8 and just make sure that you guys remain in           09:18AM

17 compliance with the rules and everybody's affirmatively stated          09:18AM

18 their loyalty to their specific client -- the insistence of a           09:18AM

19 defense agreement and whether or not compensation may or may            09:18AM

20 not be coming from -- from -- from persons other than their             09:18AM

21 client.  So let's just make sure we remain cognizant of that            09:18AM

22 and remain in compliance with that as well as 1.6 dealing with          09:18AM

23 confidentiality with respect to your individual client.  Okay?          09:18AM

24 I don't think the Court needs to be concerned with that.  The           09:18AM

25 second motion before the Court is -- so the Court will take             09:18AM

1    that matter under advisement and will issue an order as soon          09:18AM

2    as possible.                                                          09:18AM

3              The other motion before the Court is motion for            09:19AM

4    protective order by the government to schedule an inspection          09:19AM

5    and to prevent harassment of the witnesses.  Again, the Court        09:19AM

6    has reviewed all the documents that have been filed                  09:19AM

7    previously.  Mr. Leon Guerrero or Ms. Martin [sic], is there         09:19AM

8    anything the government wishes to add with respect to that           09:19AM

9    motion?                                                              09:19AM

10             MS. MILLER:  Yes, Your Honor, this is Marie                09:19AM

11   Miller, can you hear me?                                             09:19AM

12             THE COURT:  I'm sorry, Ms. Miller, I apologize.           09:19AM

13             MS. MILLER:  Oh, that's okay.  Can you hear me             09:19AM

14   okay?                                                                09:19AM

15             MR. MARTIN:  Your Honor, may I interject                   09:19AM

16   something first?                                                     09:19AM

17             THE COURT:  And who is this?                               09:19AM

18             MR. MARTIN:  This is Mr. Martin, Your Honor.  I           09:19AM

19   represent Mr. Walker.  I had a suggestion about this motion if       09:19AM

20   I might interject and then if you want to proceed, that's            09:19AM

21   fine.                                                                09:19AM

22             THE COURT:  Go ahead.                                      09:19AM

23             MR. MARTIN:  That the government has also filed,          09:19AM

24   issued 62 subpoenas for the production of these same identical       09:19AM

25   helicopters addressing almost the same issues, and rather than       09:19AM

being repetitive, I was going to suggest we might set both arguments for the same time at a later date, because the same issues will virtually be addressed in those arguments that are going to be addressed here.  And if the Court wants to proceed, that's fine, but I wanted to make that suggestion.

THE COURT:  So Ms. Miller, what is the briefing period -- I assume, Mr. Martin, you're referring to a motion to quash the subpoenas then, there's a motion to quash that's pending; is that correct?

MR. MARTIN:  That's correct, Your Honor.

THE COURT:  Does anybody know what the briefing schedule is for that?  I don't know it off hand.

MS. MILLER:  Your Honor, there isn't anything scheduled yet in terms of hearing that motion and the government does not concede that the Rule 16 motion is the same as the Rule 17 motion.  Those are two distinct procedural processes and it is inappropriate to say that they should be argued and heard at the same time.  The motion for a protective order is a critical motion that should be heard and ruled on by the Court as soon as possible and since we have this hearing time and no one has before now recommended that we move it and combine it with the Rule 17 motion and I suggest we do go forward, Your Honor.

THE COURT:  All right.  Go ahead, Ms. Miller, then.  Mr. Martin, we'll hear the argument and go from there.

09:21AM MS. MILLER:  Thank you, Your Honor.  So I know
09:21AM Your Honor does not want to hear anything that has already
09:21AM been previously filed.  I will however bring something to the
09:21AM Court's attention that the Court may not be fully aware of:

09:21AM Number one, the FAA has tried to inspect these
09:21AM helicopters 29 times.  There are 29 letters that have gone
09:21AM from the FAA to the defendants seeking repeatedly to inspect
09:21AM these helicopters to ensure that they are safe and air-worthy.

09:21AM One of those requests was on Helicopter N No.
09:22AM 9068-F, as in Frank.  And that particular aircraft was one
09:22AM that crashed and killed a pilot on September 3rd of 2015.  And
09:22AM the defendants continue to refuse to produce the helicopters
09:22AM for inspection by the FAA for years, making numerous excuses
09:22AM similar to the excuses that they made in response to the
09:22AM government's motion here, that it would be too difficult to
09:22AM pull the helicopters in, that it is too challenging, that is
09:22AM it would cost them too much money, and our response is, too
09:22AM bad.  The defendants actually are the ones who sought the
09:22AM registration of all of these helicopters by the FAA.  And when
09:22AM they sought that registration by the FAA, they certified under
09:22AM penalty of perjury that they were seeking the registration to
09:23AM comply with all of the FAA rules and conditions, and since
09:23AM then, they have done anything but comply with those rules and
09:23AM conditions.

09:23AM In this particular case, Your Honor, there has

1    been a plea agreement entered into by an FAA inspector who          09:23AM
2    admitted to his role in the honest services fraud and his role      09:23AM
3    in issuing 30 airworthiness certificates, 3-0, to these            09:23AM
4    defendants, without having actually conducted a proper             09:23AM
5    inspection of either the aircraft or the legitimate paperwork       09:23AM
6    tied to the aircraft.                                              09:23AM

7              Another thing that Your Honor hasn't seen in the          09:23AM
8    pleadings is that there have been nine deaths associated with       09:23AM
9    Hansen-owned helicopters, six serious injuries associated with      09:23AM
10   Hansen-owned and -operated helicopters.  We know that the          09:23AM
11   defendants have, "deregistered" and "reregistered" aircraft in      09:24AM
12   the Philippines before.                                            09:24AM

13             For example, Your Honor, one of the aircraft,            09:24AM
14   N369TG, Mr. Crowe said that Echo Air owned that aircraft.          09:24AM
15   Echo Air is one of the numerous Vanuatu corporations created       09:24AM
16   by the defendants for, according to them, insurance purposes.      09:24AM
17   And despite the fact that Mr. Crowe indicated to the FAA that      09:24AM
18   that aircraft is owned by Hansen outright and, therefore,          09:24AM
19   Hansen has the right to deregister it and to reregister it in      09:24AM
20   the Philippines, the FAA also has certification from Venezuela     09:24AM
21   that that identical aircraft is registered there by a third        09:24AM
22   party.  Every single helicopter was registered with the FAA.      09:24AM
23   And another example is N444GJ.  Every single request for          09:25AM
24   paperwork regarding that aircraft, even though it was             09:25AM
25   allegedly a Vanuatu-owned aircraft, the defendants asked that      09:25AM

1  all that paperwork be sent to Guam and this is something that  09:25AM
2  they've done over and over and over again.  09:25AM
3         We have a letter that we produced to you, Your  09:25AM
4  Honor, from the Philippines, indicating -- not only from the  09:25AM
5  Philippines by the way, Your Honor, from Vanuatu, from  09:25AM
6  Palawan, confirming that the aircraft that the defendants  09:25AM
7  ostensively deregistered here to reregister there were never  09:25AM
8  in fact registered or their registrations were allowed to fail  09:25AM
9  in the case of the Philippines.  09:25AM
10         I submitted to the Court yesterday an exhibit  09:25AM
11  just to show you and to provide you with an example of just  09:26AM
12  how outrageous the defendants' conduct is in relation to this  09:26AM
13  particular case.  The defendants submitted an exhibit in  09:26AM
14  support of their motion to dismiss that the defendants  09:26AM
15  represented was an exhibit relating to aircraft N831FG.  But  09:26AM
16  what the defendants did was they only submitted to the Court  09:26AM
17  part of the file on N831FG.  They submitted an export letter  09:26AM
18  requesting deregistration of that aircraft.  They submitted a  09:26AM
19  deregistration confirmation.  They submitted a letter from the  09:26AM
20  FAA registering the aircraft after the export request and then  09:26AM
21  the registration from the FAA.  What they did not submit to  09:26AM
22  this Court was a statement of the whereabouts of that aircraft  09:26AM
23  showing that that aircraft never left Guam, despite the  09:27AM
24  representations to the government that it was being exported.  09:27AM
25  What they didn't produce to the Court was a letter from  09:27AM

1   Mr. Walker requesting the FAA registration after that aircraft    09:27AM
2   was supposedly exported but we know it was never exported, nor    09:27AM
3   did they produce to the Court another letter to the FAA,          09:27AM
4   indicating that they were waiting for Vanuatu to confirm that     09:27AM
5   the helicopter was never registered there and then they also      09:27AM
6   didn't produce to the Court the Vanuatu confirmation that the     09:27AM
7   aircraft was never registered there.  We have letters from the    09:27AM
8   defendants going to the FAA over the last ten years, talking      09:27AM
9   about aircraft being exported, then saying, no, we never          09:27AM
10  exported this aircraft, and meanwhile, the aircraft is in         09:27AM
11  registration limbo, but we know, based on the information we      09:28AM
12  received from the defendants, that these helicopters are          09:28AM
13  making them millions of dollars a year, despite the fact that     09:28AM
14  they have not been properly inspected.                            09:28AM
15          Finally, Your Honor, they want to ostensively             09:28AM
16  remove the aircraft to the Philippines but we also produced a     09:28AM
17  document for you from the Philippines referring to the            09:28AM
18  defendants' utter defiance of civil aviation law and disregard    09:28AM
19  of their responsibilities to the Philippines equivalent of the    09:28AM
20  FAA as they have here.                                            09:28AM
21          Your Honor, you have the authority under Rule 16          09:28AM
22  of the Federal Rules of Criminal Procedure to enter a            09:28AM
23  protective order to allow the inspection of these helicopters     09:28AM
24  and also to assure that they are not deregistered and not         09:28AM
25  moved outside of the jurisdiction of the United States.  When     09:28AM

1    you consider what has happened in this case and how the          09:29AM

2    defendants have repeatedly, repeatedly lied to the FAA and        09:29AM

3    misrepresented and they are still using these helicopters to      09:29AM

4    transport pilots and mechanics, putting all these individuals     09:29AM

5    in danger, we ask this Court to exercise your jurisdiction        09:29AM

6    under the rule and under the case law that we cited to grant      09:29AM

7    the motion for a protective order, to require the defendants      09:29AM

8    to finally bring these helicopters back to Guam for a proper      09:29AM

9    inspection by the government and to make them available to the    09:29AM

10   government.  And I don't wish to add anything else other than     09:29AM

11   what was already previously filed with the Court regarding the    09:29AM

12   witness tampering, any other issues.  Thank you, Your Honor.      09:29AM

13              THE COURT:  All right.  Let's -- Mr. Martin, on        09:29AM

14   behalf of Mr. Walker?                                             09:29AM

15              MR. MARTIN:  Yes, Your Honor, thank you very           09:30AM

16   much.  Your Honor, I'm not sure that the government              09:30AM

17   understands the purpose of Rule 16 discovery.  They asked for    09:30AM

18   discovery in this criminal case.  They don't represent the      09:30AM

19   Department of Transportation, they don't represent the FAA,     09:30AM

20   they don't represent the Federal Bureau of Investigation, they  09:30AM

21   don't represent Mr. Cislo, who's their star witness that they   09:30AM

22   talk about in this case.  Their one -- their alleged purpose    09:30AM

23   for this is for safety and airworthiness and they talk about    09:30AM

24   29 letters that have been sent ten years ago before I was even  09:30AM

25   involved in this case.  They admit they sent me one letter      09:30AM

1   that was attached to my motion.  I believe it was                    09:30AM
2   December 12th saying, "Please tell us when we can inspect            09:30AM
3   these helicopters" and I responded to the letter, I asked them       09:30AM
4   to tell me what authority they had to do that.  I said if you        09:30AM
5   got a problem with it, we'll take it up with Judge Gatewood or       09:30AM
6   call me on the phone.  Neither one of those occurred.  They          09:31AM
7   didn't call me, we didn't take it up with Judge Gatewood.  I         09:31AM
8   figured they realized that they didn't have the authority to         09:31AM
9   do that, so we went on.                                              09:31AM
10          Secondly, they talk about the case law in support            09:31AM
11  of their motion for protective order.  They cited no case law,       09:31AM
12  Your Honor.  Rule 16 doesn't -- the way I read the rule,            09:31AM
13  doesn't give the government the authority to come in and            09:31AM
14  inspect evidence that -- for materials that -- in a case,           09:31AM
15  unless we're going to use it and I, in my motion said, we're       09:31AM
16  not going to produce any helicopters, we're not going to use       09:31AM
17  any helicopters at trial so we shouldn't -- we shouldn't           09:31AM
18  produce it.                                                          09:31AM
19          Thirdly, Your Honor, the thing that offends me              09:31AM
20  the most, and I use that word very lightly, is the personal        09:31AM
21  attacks on lawyers.  The government has misrepresented in          09:31AM
22  their motions things that my co-Counsel have been involved in,     09:31AM
23  in this case.  In particular, in reference to Mr. Cislo, they      09:32AM
24  make blatant allegations that Mr. McConwell confronted and        09:32AM
25  accosted Mr. Cislo, which did not occur.  The government          09:32AM

1   finally in January provided to us a 302 that's been identified      09:32AM
2   as FBI Hansen Document No. 046383, where during a proffer           09:32AM
3   session, the government alleged that Mr. McConwell confronted       09:32AM
4   him inside his hangar.  Mr. Cislo, and I'm reading from the         09:32AM
5   FBI 302 itself now, says "On Saturday, July 14th, a male            09:32AM
6   individual initiated contact with Cislo outside, outside of         09:32AM
7   his private hangar."  I made representations to the Court, as       09:32AM
8   an officer of the Court, quite honestly, what occurred by mere      09:32AM
9   happenstance on July 14th, and for them to make some type of        09:33AM
10  outrageous allegations that he tried to talk to him and he         09:33AM
11  tried to confront him about the case, he didn't intimidate him     09:33AM
12  at all, Your Honor.  Mr. Cislo doesn't say that.  Mr. Cislo        09:33AM
13  says -- even mentions that Mr. McConwell advised him that he        09:33AM
14  attempted to contact Cislo's attorney, they did not receive a      09:33AM
15  reply, consistent with exactly what I put in the motion, Your      09:33AM
16  Honor.  No Counsel in this case has done anything                  09:33AM
17  inappropriate.  And I find it kind of offensive that the          09:33AM
18  government would allege that there's something done              09:33AM
19  inappropriate by any Counsel.  There's no basis for a            09:33AM
20  protective order.  We all know the rules of ethics in this       09:33AM
21  case just like we know the rules relating to a conflict of       09:33AM
22  interest.  I ask the Court to deny the government's motion,      09:33AM
23  Your Honor.                                                       09:33AM
24          THE COURT:  All right.  Thank you, Mr. Martin.           09:33AM
25  Mr. Nicolaysen, anything to add?                                  09:33AM

1          MR. NICOLAYSEN:  Yes, Your Honor.  Thank you.          09:33AM

2    Rule 16 is a very narrow and specific rule in criminal          09:34AM

3    proceedings.  It deals with discovery by both sides.  The          09:34AM

4    issuance of protective orders provide restrictions under          09:34AM

5    Rule 16 that focus on the production of information by the          09:34AM

6    government typically by which parameters are being established          09:34AM

7    regarding the use of such evidence by the parties and we have          09:34AM

8    these protective orders in gang cases, identity theft cases,          09:34AM

9    etc., which is all about regulating how evidence is going to          09:34AM

10   be managed and used by the parties.          09:34AM

11          When the government seeks a protective order with          09:34AM

12   respect to the defense, that protective order under Rule 16          09:34AM

13   must be tailored to defense evidence.  That's not what's          09:34AM

14   happening here.  I'll give an example.  If the defendants          09:34AM

15   designated as a trial exhibit, a particular FAA-approved part          09:34AM

16   that was used on the helicopters during the time period of the          09:35AM

17   indictment, 2012 up to May 2018 when the first indictment was          09:35AM

18   filed, and we are going to be having testimony at trial          09:35AM

19   regarding that part, part of our presentation regarding          09:35AM

20   helicopters, then the Court would be well within its rights          09:35AM

21   and the government likewise, to direct the defense to make          09:35AM

22   that part available for inspection because that part is now          09:35AM

23   being designated by the defense as a trial exhibit.  Now          09:35AM

24   that's not happening -- the defense is not going to be          09:35AM

25   designating helicopters as defense exhibits.  That's just not          09:35AM

1    going to happen.  And therefore, the helicopters, which are          09:35AM

2    the subject of this motion, do not fall within the purview of         09:35AM

3    Rule 16.  They are not reciprocal discovery from the defense          09:35AM

4    to the government and the Court cannot issue any protective           09:35AM

5    orders with regard to those helicopters because those                 09:36AM

6    helicopters simply don't fall within the parameters of Rule 16        09:36AM

7    and the government has made it clear in its filings, and as           09:36AM

8    recently as yesterday in Document 460, that their motion for          09:36AM

9    protective order is being brought under Rule 16.  It's                09:36AM

10   referred to as, "the government's Rule 16 motion."  So                09:36AM

11   therefore, the request by the government for (background              09:36AM

12   noise) to inspect the helicopters, order directing Hansen not         09:36AM

13   to transfer these helicopters as part of some sort of a               09:36AM

14   protective order, all of that has to be justified within the          09:36AM

15   very narrow and specific criteria of Rule 16, and because the         09:36AM

16   helicopters don't fall within Rule 16, they are not reciprocal        09:36AM

17   discovery, they are not going to be trial exhibits, this              09:36AM

18   Court, and I say this with respect, has no authority to order         09:36AM

19   any inspection.  And what the government is doing, is arguing         09:36AM

20   its case as if it were before an administrative body.  Marie         09:37AM

21   Miller is from the Department of Transportation, she's well           09:37AM

22   versed in FAA administrative procedures and the arguments that        09:37AM

23   she has presented here, which pertain to which she considers         09:37AM

24   safety issues, that there have been numerous requests to              09:37AM

25   inspect, that in her judgment have been ignored, and so on all        09:37AM

---

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1   of that, goes to the issue of the FAA and the regulatory                09:37AM

2   agency having the authority to suspend or revoke                        09:37AM

3   registrations, suspend or revoke airworthiness certificates.            09:37AM

4   That's the power of a regulatory agency, same thing with the            09:37AM

5   FDA over a drug company, the ACF over a gun manufacturer and            09:37AM

6   so on.  The arguments presented by Ms. Miller are suited for            09:37AM

7   the administrative environment where Hansen or whoever would            09:37AM

8   be, you know, deemed the appropriate owner of the helicopters,          09:38AM

9   would be subject to some administrative sanction for failing            09:38AM

10  to satisfy the safety and other obligations including making            09:38AM

11  the helicopters available for inspection.  That's an                    09:38AM

12  administrative issue.  That has nothing at all to do with the           09:38AM

13  criminal proceeding or the narrow criteria under Rule 16.  And          09:38AM

14  I should emphasize that these helicopters, the vast majority            09:38AM

15  of the ones that's listed in the superseding indictment, which          09:38AM

16  for round numbers -- let's just use the number sixty, the vast          09:38AM

17  majority of these helicopters have valid registrations and              09:38AM

18  valid airworthiness certificates.  In fact, registrations have          09:38AM

19  three-year time tables and if Your Honor goes to www.faa.gov            09:38AM

20  and you have the superseding indictment in front of Your Honor          09:38AM

21  that has the table and all of these N numbers of the sixty              09:38AM

22  helicopters and you just start typing these N numbers into the          09:39AM

23  search engine on the home page, you'll get the profile of the           09:39AM

24  helicopters and you will see that the vast majority of them             09:39AM

25  have valid registrations.  Well, in fact, valid registrations          09:39AM

---

*Criminal Case No. 18-00010, USA v. Walker, et al.*

that expire either this year, 2021, even 2022.  That means the
FAA has been renewing these registrations during the period of
the investigation of this case which goes back at least to
2015 and earlier, and during the prosecution of this case.

So when the government complains, as it does,
that the helicopters are unsafe, and that we have refused
inspections, those administrative arguments should be directed
to the FAA as part of a claim that maybe the registrations
should not have been renewed, maybe they should be suspended
or revoked.  But this is a motion under Rule 16 and none of
the arguments the government has presented in its papers or
here today orally have any relevance whatsoever to Rule 16.

Let me just close by speaking about the
chronology of the superseding indictment.  If Your Honor goes
through the superseding indictment with an eye to the time
periods of the different counts, and if the Court please, I'll
be glad to do it, I have yellow highlighted it so I could
recite all the paragraphs in the superseding indictment.  Your
Honor will see that the government has consistently framed the
chronology of this prosecution from year 2012 up through May
of 2018, which is the doorstep of the filing of the initial
indictment, which was filed on May 31, 2018.

The superseding indictment, which was filed in
December 2019, a year and a half later, has one substantive
count that has to do with registrations that they claim was,

1    you know, improperly done on June 10th of 2018, a couple of                09:41AM
2    weeks after the first indictment.  But other than that one                 09:41AM
3    ministerial charge, the entire superseding indictment is based             09:41AM
4    on the same chronology as the original indictment, which                   09:41AM
5    doesn't go beyond May of 2018, and of course we are now in May             09:41AM
6    of 2020, two years later.                                                  09:41AM

7             So the government cannot properly argue that                      09:41AM
8    there is anything about the current helicopters that are                   09:41AM
9    flying that has any relevance to the charges in the                        09:41AM
10   indictment.  There is no allegation of continuity of                       09:41AM
11   misconduct, or that the charged conspiracy are ongoing                     09:41AM
12   conspiracies.  It'd be very different in a RICO case.  We've               09:41AM
13   all seen RICO cases where, let's just use a gang or a mafia                09:41AM
14   family where the defendants are on trial as members of a RICO              09:41AM
15   enterprise that is still in existence through the ongoing                  09:41AM
16   prosecution and all the way up through a trial.  And so when               09:42AM
17   the mob family bosses in New York are on trial for being a                 09:42AM
18   member of -- you know, being a leader of the Gambino family,               09:42AM
19   while they're in trial and while the prosecution is ongoing,               09:42AM
20   the RICO enterprise is considered to be still active.  And so              09:42AM
21   it's still ongoing criminal activities.  That's one of the key             09:42AM
22   centers between RICO and conspiracy.  Conspiracy, as we see in             09:42AM
23   this case, has bookends; it has a beginning and an end.  And               09:42AM
24   it's critical to recognize that the government is seeking to               09:42AM
25   have Court orders issued for inspections that the Court is not             09:42AM

1  authorized to issue, but the government is misunderstanding      09:42AM

2  that today's helicopters have nothing to do with the time         09:42AM

3  frame of the charge, because there's no allegation of any         09:42AM

4  continuity of misconduct, that there's any crime being            09:42AM

5  committed in 2020 that is relevant to the charge in this case,    09:42AM

6  unless the government is planning to supersede.  And if they      09:43AM

7  are, I ask the government through Your Honor, tell us now so      09:43AM

8  that we understand that; otherwise, based on chronology alone,    09:43AM

9  the concept of inspection is completely irrelevant because of     09:43AM

10 the two-year lapse between May of 2018 when the indictment        09:43AM

11 charges them and May of 2020, which is where we are today.        09:43AM

12 Those are my arguments to Your Honor and I would ask that the     09:43AM

13 government's motion be denied.                                    09:43AM

14         THE COURT:  All right.  Mr. Perez or                      09:43AM

15 Mr. McConwell on behalf of Defendant Kapp, anything to add?       09:43AM

16         MR. PEREZ:  Your Honor, I join in the opposition          09:43AM

17 of 422, 424, 428 and 434 and we rest on those as well as the      09:43AM

18 oral arguments presented by Mr. Martin and Mr. Nicolaysen.        09:43AM

19         MR. MCCONWELL:  This is Edward McConwell, Your            09:43AM

20 Honor, if I could respond a little bit here.  I could respond    09:43AM

21 to everything that Ms. Miller said and believe me, she's only    09:43AM

22 told you a fraction of the story in this matter.  There is       09:44AM

23 issues that she just brushed over and not given you the whole    09:44AM

24 story.                                                            09:44AM

25         One example you may not be aware of, but there's         09:44AM

1   a motion to dismiss on lack of jurisdiction that's pending    09:44AM

2   right now, it's been filed before the Court dealing with the    09:44AM

3   validity or invalidity of the airworthiness cert -- or the    09:44AM

4   registration certificates themselves.    09:44AM

5             MR. MILLER:  Your Honor, I'm sorry to interrupt    09:44AM

6   but I'm going to object to Mr. McConwell arguing anything    09:44AM

7   relating to the motion to dismiss.  I didn't ignore it.  We're    09:44AM

8   not here to argue it.    09:44AM

9             THE COURT:  All right.    09:44AM

10            MR. MCCONWELL:  I'm bringing the matter to the    09:44AM

11  Court's attention.  I wasn't going to argue it, but I do want    09:44AM

12  to give one example of something she did bring up that is very    09:44AM

13  important in this case.  She highlights 9068 Fox Trot.  Now,    09:44AM

14  that's an aircraft that had an accident in September of 2015    09:44AM

15  and the Court -- the FAA was aware as of that time and    09:45AM

16  actually back in April of 2015 of an issue with regard to the    09:45AM

17  validity or invalidity to the aircraft registrations.  They    09:45AM

18  acknowledged in their search warrant affidavit with regard to    09:45AM

19  the search warrant that was issued from Guam by Judge    09:45AM

20  Manibusan that 9068 Fox Trot was registered in the Philippines    09:45AM

21  and because of that, and because of international law, that    09:45AM

22  was an invalid registration, and at that point, absolutely    09:45AM

23  knew they did not have jurisdiction over that aircraft, yet    09:45AM

24  they plowed ahead and ignored the fact they didn't have    09:45AM

25  jurisdiction with regard to that aircraft and the    09:45AM

investigation that ensued from that, but it goes to the entire

line of Vanuatu corporations.  They were totally aware of the

existence of them, the number and that they were foreign

corporations.  That is implications that we'll be dealing with

later.  I'm not going to go through everything she said.

There is a different story.  There's more evidence that would

be -- would neutralize the thing that she said and we could

explain it to you, but it would take too long to do that.

But I do want to go back to the Mr. Cislo thing

at the airport.  Mr. Cislo did not tell the truth to the FBI

agents and that was an accidental meeting that occurred.  We

had no idea that he was going to even be there, didn't even

knew he was.  But for the way that has been misrepresented to

the Court is very offensive and Mr. Martin's already spoke on

my behalf and that's all I'm going to say about that, but I

join in the pleadings that have been filed in this matter and

ask that the motion for protective order be denied.

And I do have my question for you, my

understanding, and I've been doing this for over 50 years,

that a lawyer has the ability to be able to interview

witnesses that are identified by the government or the

plaintiff or the adverse party.  The government seems to say

that we can't do that and our clients are not supposed to by

their conditions of release, but the lawyers and we have

ethical standards we have to follow, that we've done nothing

1    wrong and there seems -- seems to say we did and I'd like to          09:47AM

2    know whether we are allowed to interview witnesses.  I will          09:47AM

3    tell you that I had one witness in this case say that he was          09:47AM

4    told not to talk to anybody, including their lawyers, and that          09:47AM

5    appeared to come from the government.          09:47AM

6          THE COURT:  All right.  Thank you, Mr. McConwell.          09:47AM

7    Mr. Pete Perez, Jr., on behalf Mr. Reed?  Anything?          09:47AM

8          MR. PEREZ:  No, Your Honor.          09:47AM

9          THE COURT:  All right.  Mr. Pole, on behalf of          09:47AM

10    anything -- Mr. Rogers, anything you wish to add?          09:47AM

11          MR. POLE:  Your Honor, just two things, one, we          09:47AM

12    continue to object and have objected to the government's          09:48AM

13    painting the defendants as being -- all defendants being in          09:48AM

14    control of the helicopters.  As we have pointed out and it's          09:48AM

15    as well clear from the superseding indictment, Mr. Randy          09:48AM

16    Rogers has no authority over those helicopters and has nothing          09:48AM

17    to do with those helicopters and shouldn't be painted with a          09:48AM

18    stroke as the government is trying to do here or in trial.          09:48AM

19          The only other thing I'd like to point out, Your          09:48AM

20    Honor, obviously while we join with all other defendants in          09:48AM

21    the motion, we're primarily concerned with the issue of the          09:48AM

22    right to interview witnesses and I just wanted to point out          09:48AM

23    that one of the cases that was cited was *United States versus*          09:48AM

24    *Brumel-Alvarez,* which is 991 F.2d 1452, and the reason I want          09:48AM

25    to point out is that was decided by the Ninth Circuit in 1993          09:48AM

1    that found a *Brady* violation where the government failed to            09:48AM

2    provide a DEA memo about one of their star witnesses on --             09:49AM

3    asking for the truth and I just want to point out that even           09:49AM

4    though that was 1993 and therefore before the U.S. Supreme            09:49AM

5    Court in *Kyles v. Whitley*, 514 U.S. 419, which wasn't decided       09:49AM

6    until 1995, that case is still consistent with the U.S.               09:49AM

7    Supreme Court that said that issues of *Brady* must be provided       09:49AM

8    to defense Counsel and is not that it is grounds for                  09:49AM

9    dismissal.  I think -- but we absolutely have a right to              09:49AM

10   interview witnesses to receive information and the government         09:49AM

11   provided nothing to suggest that even if this Court has the           09:49AM

12   right to sanction one defense attorney for alleged misconduct,        09:49AM

13   that it would have a right to sanction all defense attorneys          09:49AM

14   for the same misconduct and not allow for a proper defense,           09:49AM

15   that is, the interviewing of witnesses.  I have nothing               09:49AM

16   further to add, Your Honor.                                           09:49AM

17            THE COURT:  Thank you, Mr. Pole.  Mr. Han,                    09:49AM

18   anything on behalf of Hansen Helicopters other than what's            09:50AM

19   been argued?                                                          09:50AM

20            MR. HAN:  Nothing to add, Your Honor.                        09:50AM

21            THE COURT:  All right.  Ms. Miller, briefly in               09:50AM

22   response to the arguments you heard from defense.                     09:50AM

23            MS. MILLER:  Yes, Your Honor.  First of all,                 09:50AM

24   Mr. Martin actually said the letters that the government sent         09:50AM

25   to us were ten years old, that's absolutely not true.  We have        09:50AM

1   been sending them letters as recently as last year requesting          09:50AM
2   inspection of these helicopters.  I have letters dated April            09:50AM
3   29, 2015, June 23, 2015, July 8, 2015, then we can                      09:50AM
4   fast-forward to May 20, 2016, July 20, 2016.  Let's move                09:50AM
5   ahead, May 14, 2018, July 2nd, 2019.  I can go on and on, Your          09:50AM
6   Honor, but the point is that is absolutely a misstatement of            09:50AM
7   fact.                                                                   09:51AM
8           The second thing is, Mr. Martin said that the                  09:51AM
9   government doesn't understand Rule 16 and I would disagree              09:51AM
10  with that and I would also state the defense Counsel has                09:51AM
11  basically just kind of skirted over the explicit language of            09:51AM
12  Rule 16 which says that this Court has the authority to                 09:51AM
13  require the defendant to permit inspection by the government            09:51AM
14  of tangible objects and it's not only those objects that the           09:51AM
15  defendant intends to use in its case in chief because, again,          09:51AM
16  a third misstatement by defense Counsel, which is that the             09:51AM
17  government cited -- case law, the government did cite                    09:51AM
18  substantial case law to support its position, including case           09:51AM
19  law that indicates that if the defendant intends to                     09:51AM
20  cross-examine any of the government's witnesses in a criminal          09:51AM
21  case regarding evidence, that the government is entitled to            09:52AM
22  view that evidence.  It is not a violation of the defendant's          09:52AM
23  Fifth Amendment privilege against self-incrimination and it is        09:52AM
24  not necessary that the defendants use that evidence in their           09:52AM
25  case in chief.  And all that case law was cited by the                 09:52AM

government to the Court, so I won't repeat it, but it is just 09:52AM
completely ridiculous for defense to make that statement that 09:52AM
no case law was cited. 09:52AM

The fourth thing, Your Honor, is I understand 09:52AM
very well the distinction between administrative proceeding 09:52AM
and a civil proceeding. As a matter of fact, it's going to be 09:52AM
really interesting to hear what the defendants have to say 09:52AM
when they turn around and argue that administrative 09:52AM
proceedings are the most meaningful thing for the Court to 09:52AM
consider, but in this case, yes, I'm an attorney with the DOT 09:52AM
OIG. I'm also a former federal prosecutor with extensive 09:52AM
experience in conspiracy cases. 09:53AM

And the fifth issue that I'd like to address as 09:53AM
an experienced federal prosecutor is, a conspiracy is not 09:53AM
completed until its abandoned. We don't have to supersede in 09:53AM
order to argue, and we will argue, so all of the defense 09:53AM
Counsel need to be put on notice right now, it's the 09:53AM
government's contention that this conspiracy has not ended, 09:53AM
the conspiracy has continued. 09:53AM

As a matter of fact, immediately after the 09:53AM
indictment, the first indictment in this case, there was 09:53AM
another accident by one of these helicopters that the 09:53AM
defendants owned and that the defendants have refused to allow 09:53AM
to be inspected. 09:53AM

The sixth thing I want to address is the Cislo 09:53AM

Case 1:18-cr-00010    Document 472    Filed 05/11/20    Page 36 of 38

```
 1    issue.  This actually relates to the conflict of interest          09:53AM
 2    motion that was filed, Your Honor.  If Mr. McConwell is            09:53AM
 3    calling Mr. Cislo a liar and saying that he did not disclose       09:53AM
 4    their interaction with each other truthfully to the FBI            09:54AM
 5    agent, then again, I want to put Mr. McConwell on notice that      09:54AM
 6    he will be called as a witness to testify under oath about         09:54AM
 7    where that meeting took place, when that meeting took place,       09:54AM
 8    what was said during the course of that meeting, because Mr.       09:54AM
 9    Cislo has confirmed for us that Mr. McConwell specifically         09:54AM
10    told him that he should not be talking to him, he knew he          09:54AM
11    shouldn't be talking to him, but he was still talking with him     09:54AM
12    and Mr. Cislo said he felt intimidated.                           09:54AM
13            So to address the last point that Mr. Rogers'             09:54AM
14    Counsel brought up, the government isn't indicating in any way     09:54AM
15    shape or form that the defense cannot talk to witnesses or         09:54AM
16    understand what they're going to say.  What we are indicating      09:54AM
17    is that it is inappropriate and a violation of law to             09:54AM
18    intimidate witnesses, number one, and number two, to offer to     09:54AM
19    pay attorney's fees for witnesses because that is unduly          09:54AM
20    influencing a witness and it goes into tampering with            09:55AM
21    witnesses and that is what we object to.  I have nothing          09:55AM
22    further to say, Your Honor.  Thank you.                          09:55AM
23            MR. NICOLAYSEN:  Your Honor, I'll be happy to            09:55AM
24    respond.  This is Greg Nicolaysen on behalf of Defendant --      09:55AM
25            MS. MILLER:  No, Your Honor, I'm going to object         09:55AM
```

1   to Counsel responding.  The way these arguments go is, we          09:55AM

2   filed the motion --                                               09:55AM

3              THE COURT:  That's fine.  Ms. Miller, that's all       09:55AM

4   right.  All right.  The Court has heard enough.  The Court        09:55AM

5   will take the matters under advisement, will issue its           09:55AM

6   recommendation and decision as soon as possible.                 09:55AM

7              MS. MILLER:  Thank you, Your Honor.                    09:55AM

8              THE COURT:  Thank you everybody.                       09:55AM

9              (Proceedings concluded at 9:55 a.m.)                   09:55AM

10                            * * *

11   ---------------------------------------------

12              CERTIFICATE OF OFFICIAL REPORTER

13

14   CITY OF HAGATNA              )
                                  )  ss.
15   TERRITORY OF GUAM            )

16

17        I, Veronica F. Flores, Official Court Reporter for

18   the United States District Court of Guam, do hereby certify

19   the foregoing pages, 1 to 38, to be a true and correct

20   transcript of the proceedings held in the above-entitled

21   matter to the best of my ability.

22        Dated this 11th day of May 2020.

23

24                        /s/Veronica F. Flores
                          Veronica F. Flores
25

*Criminal Case No. 18-00010, USA v. Walker, et al.*