1
2
3
4
5
6
7

**THE DISTRICT COURT OF GUAM**

8

UNITED STATES OF AMERICA,

CRIMINAL CASE NO. 18-00010

9
Plaintiff,
10
vs.
11

**ORDER GRANTING UNITED STATES'
MOTION IN LIMINE TO EXCLUDE
ERRONEOUS LEGAL ARGUMENTS
ABOUT FAA AIRMEN CERTIFICATION
REQUIREMENTS AND DENYING
DEFENDANTS KAPP AND WALKER'S
CROSS MOTION IN LIMINE**

JOHN D. WALKER aka JON WALKER,
PHILLIP T. KAPP, and
HANSEN HELICOPTERS, INC.
12
13
Defendants.
14
15
16
Before the court is the United States' Motion in Limine to Exclude Erroneous Legal
17
Arguments About FAA Airmen Certification Requirements (ECF No. 1408) and Defendants
18
Kapp and Walker's Cross Motion in Limine (ECF No. 1438).[1] The government asks the court to
19
preclude Defendants from raising at trial the legal argument that Section 46306(b)(8) of Title 49,
20
United States Code,[2] does not prohibit the employment of airmen with foreign airmen
21
certificates but without Federal Aviation Administration (FAA) airmen certificates. *See* Mot. at
22
1, ECF No. 1408. Defendants oppose the government's motion and further ask the court to

---

[1] Defendant Hansen Helicopters joined Defendant Kapp and Walker's Cross Motion in Limine. ECF No. 1493.
[2] All section references are under Title 49 of the United States Code, unless otherwise noted.

1

preclude the government from presenting evidence and argument that any of the defendants violated the Federal Aviation Regulations (FARs) and/or the Federal Aviation Act, which includes Section 46306(b)(8). *See* Resp. at 2, ECF No. 1438. For the reasons stated herein, the United States' motion is **GRANTED**, and the Defendants' Cross Motion is **DENIED**.

## I. **United States' Motion**

Section 46306(b)(8) criminalizes "knowingly and willfully employ[ing] for service or us[ing] in any capacity as an airman an individual who does not have an airman's certificate authorizing the individual to serve in that capacity." 49 U.S.C. § 46306(b)(8). The parties have different interpretations of the terms "airman's certificate" and "to employ."[3] *See* Mot. at 4, ECF No. 1408 ("Make no mistake: an 'authorized airman certificate' is an airmen certificate *issued by the FAA*.") (emphasis in original); Resp. at 10, ECF No. 1438 ("The phrase '**airman's certificate**' is likewise unambiguous and silent on the identity of the required issuer of the certificate.") (emphasis in original).

### A. "Airman's Certificate" within the meaning of Section 46306(b)(8)

Defendants claim that they can argue a defense to Counts 14 through 95 of the Second Superseding Indictment (ECF No. 862), charged under Section 46306(b)(8), because the statute does not explicitly say the "airman's certificate" means the airman must be "FAA certificated." *See* Resp., ECF No. 1438. Under Defendants' theory, a foreign-certified airman satisfies Section 46306(b)(8). While it is true that Section 46306(b)(8) does not use the term "FAA certificated," the court finds that FAA certification is a requirement.

    1. *Statutory scheme*

---

[3] The court finds without merit the government's second grounds for their motion, that argument that foreign airmen certificates satisfy Section 46306(b) is excludable under Federal Rule of Evidence 403. *See* Mot. at 3, 5–6 ECF No. 1408. The Federal Rules of Evidence regulate the presentation of evidence, and statements, arguments, questions, and objections by attorneys are not evidence. *See* Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the Ninth Circuit* (2022 ed.), Instruction 1.4, approved Sept. 2019.

2

"When interpreting words in a statute, we start with the premise that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. Our goal is to understand the statute as a symmetrical and coherent regulatory scheme and to fit, if possible, all parts into a . . . harmonious whole." *United States v. Wing*, 682 F.3d 861, 867 (9th Cir. 2012) (internal quotations omitted).

Section 40102 contains a list of defined terms that appear elsewhere in Title 49. The term "authorized airman certificate," while not included in this list, is discussed at length in Section 44703. Section 44703, which is titled "Airman certificates," states that "[t]he Administrator of the Federal Aviation Administration shall issue *an airman certificate* to an individual when the Administrator finds, after investigation, that the individual is qualified for, and physically able to perform the duties related to, the position to be authorized by the certificate." 49 U.S.C. §44703(a) (emphasis added). The statute discusses other airman certification requirements, including that it "be numbered and recorded by the Administrator of the Federal Aviation Administration." *Id.* § 44703(b)(1)(A).

Importantly, the FAA can "restrict or prohibit issuing an airman certificate to an alien; or make issuing the certificate to an alien dependent on a reciprocal agreement with the government of a foreign country." *Id.* § 44703(e). In other words, through the FAA, Congress reserves the right to prevent or limit a foreign airman from receiving an airman certification. It would be illogical for the law to permit the FAA to refuse to certify an alien under Section 44703(e), but still allow that alien to use a foreign airman certificate to satisfy Section 46306(b)(8). As such, the court finds that the term "airman's certificate" used in Section 46306(b)(8) refers to the "airman certificate" as defined by Section 44703.

2. *Federal regulations*

3

Typically, an agency's interpretation of ambiguous statutory language is given deference by courts under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). However, there is some question as to whether *Chevron* deference is appropriate in a criminal context. *See United States v. San Diego Gas & Elec. Co.*, CASE NO. 06 CR 0065, 2006 U.S. Dist. LEXIS 84856, at *26 (S.D. Cal. Nov. 21, 2006) (collecting cases). As such, the court will not address whether *Chevron* deference provides a basis for granting or denying the government's motion. Nevertheless, "[a] [] fundamental canon of construction is that words must be read in their context, with a view to their place in the overall regulatory scheme." *United States v. Millis*, 621 F.3d 914, 917 (9th Cir. 2010). Courts must interpret statutes in the context of implementing regulations, as well as other statutes, that make up the regulatory scheme. *See id.*

In addition to Title 49, federal regulations support the notion that airmen are required to be FAA-certificated under Section 46306(b)(8). Federal regulations implementing Title 49 specifically require pilots that operate a civil aircraft of the United States to have "a pilot certificate issued under this part and in accordance with § 61.19."[4] 14 C.F.R. § 61.3(a)(i). The same requirement is true for airmen mechanics. *See id.* § 65.81.

Additionally, the existence of federal regulations that establish a process to convert foreign certifications to an FAA certification further supports the theory that an "authorized airman certificate" is an FAA-certification. *See, e.g.*, 14 C.F.R. § 61.75(a) ("A person who holds a foreign pilot license at the private pilot level or higher that was issued by a contracting State to the Convention on International Civil Aviation may apply for and be issued a U.S. private pilot certificate with the appropriate ratings if the foreign pilot license meets the requirements of this section."); *id.* § 61.77. "[T]he holder of a pilot certificate issued on the basis of a foreign pilot license may exercise the privileges of that certificate only while that person's foreign pilot

---

[4] 14 C.F.R. § 61.19 discusses the duration of pilot and instructor certificates and privileges.

license is effective." *Id.* § 61.19(c)(2). Again, it would be illogical for a regulatory scheme to create a pathway to converting foreign airmen certifications to FAA certifications if a foreign certification was sufficient under U.S. laws and regulations.

   B.   "To employ" within meaning of Section 46306(b)(8).

   The term "to employ," is also not included in the list of defined terms under Section 40102 or in any other section of Title 49. In the absence of a statutory definition, the court "construe[s] a statutory term in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994).

   According to Black's Law Dictionary, to "employ" means "to make use of; to hire . . . to commission and entrust with the performance of certain acts." *Employ*, Black's Law Dictionary, (11th ed. 2019). In distinguishing employees from independent contractors under the Fair Labor Standards Act, courts consider "economic reality" rather than "technical concepts." *See Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 32 (1961); *Dawson v. Nat'l Collegiate Athletic Ass'n*, 932 F.3d 905, 909 (9th Cir. 2019). "Economic reality accounts for the circumstances of the whole activity rather than considering isolated factors determinative." *Dawson*, 932 F.3d at 909 (internal quotation omitted). "The Supreme Court has found a number of circumstances relevant in evaluating economic reality, including: (1) expectation of compensation; (2) the power to hire and fire; (3) and evidence that an arrangement was 'conceived or carried out' to evade the law." *Id.* (citations omitted).

   Under a plain-language dictionary reading of Section 46306(b)(8), the pilots and mechanics hired by Defendants would be considered "employ[ed]" by Hansen Helicopters.[5] They were made use of by Hansen Helicopters in that Hansen Helicopters used them to fulfill

---

[5] The court notes that only Defendants, i.e. the employers, were charged in this case under Section 46306(b)(8). None of the mechanics or pilots were charged under Section 46306(b)(9). "In our criminal justice system, the executive branch has broad discretion to decide whom to prosecute." *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003) (internal quotation omitted).

5

their contracts with the tuna boat companies. They were hired to help Hansen fulfill those contracts. And they were commissioned and entrusted to perform the services contracted for. Under an economic reality test, the pilots and mechanics hired by Defendants would still be considered employees. The pilots and mechanics were paid for the services they provided, Hansen had the power to hire and fire them, and the assertion that they were independent contractors is being made to facilitate a defense to criminal liability.

Even if an analysis of the worker's role and responsibilities were to classify the pilots and mechanics as independent contractors, Section 46306(b)(8) does not distinguish between uncertificated employees and uncertificated independent contractors. Section 46306(b)(8) prevents "employ[ing] for service or *us[ing] in any capacity* [] an [uncertificated] individual." (emphasis added). One such capacity could be to independently contract with such individuals. Defendants therefore cannot assert that Section 46306(b)(8) does not apply to the pilots and mechanics hired by Defendants because they are "independent contractors."

C. Defendants' other arguments

Defendants raise two other arguments – that the rule of lenity requires the court to construe Section 46306(b)(8) to permit foreign airmen certificates and that Section 46306 was passed in order to enable law enforcement to stop drug trafficking. Resp. at 7 & 9, ECF No. 1438. The rule of lenity is only applied to "grievously ambiguous" statutes. *Dean v. United States*, 556 U.S. 568, 577 (2009). Based on the illuminating regulatory scheme surrounding Section 46306(b)(8), the court finds that no such grievous ambiguity exists here.

The argument that, because a criminal statute was originally intended to be utilized in one area of law enforcement, it cannot later be enforced in another, also fails. For example, the Racketeer Influenced and Corrupt Organizations Act (RICO) was originally passed to help prosecute "mobsters and organized criminals." *Sedima v. Imrex Co.*, 473 U.S. 479, 499 (1985),

6

*superseded by statute on other grounds as noted in Abene v. Jaybar, LLC*, 802 F. Supp. 2d 716, 721 (E.D. La. 2011). These days, it is instead primarily used to prosecute members of street gangs. *See, e.g.*, *United States v. Tillman*, No. 19-16419, 2021 WL 3739175 (9th Cir. Aug. 24, 2021); *United States v. Young*, No. 19-50355, 2021 WL 3201103 (9th Cir. July 28, 2021); *see also* Lucy Litt, *RICO: Rethinking Interpretations of Criminal Organizations*, 26 Berkeley J. Crim. L. 71 (2021). Even if Section 46306(b)(8) was originally meant to be used to prohibit drug trafficking, nothing in that statute prevents the Department of Justice from prosecuting prohibited conduct occurring in another context.

D. Conclusion

A foreign certificate would not satisfy Section 46306(b)(8), because FAA certification is a requirement. Although this is not explicitly stated in Section 46306(b)(8), other parts of Title 49 and several federal regulations demonstrate Congress's intent to regulate foreign certifications and the administration of appropriate airman certificates. Further, there is no supporting case law to indicate that the use of "to employ" should be construed narrowly to distinguish between an employee and an independent contractor, or that an independent contractor would not be covered by Section 46306(b)(8). Argument and questioning putting forward an incorrect interpretation of the law serve no purpose and would only confuse the jury. For the foregoing reasons, the United States' Motion in Limine to Exclude Erroneous Legal Arguments About FAA Airmen Certification Requirements, ECF No. 1408, is **GRANTED**.


II. **Defendants' Cross-Motion**

Defendants argue that because the subsidiaries of Defendant Hansen Helicopters were Vanuatu corporations, the registrations submitted for the helicopters owned by those subsidiaries were void ab initio, and the FAA had no regulatory authority to regulate them. Defendants argue

Case 1:18-cr-00010   Document 1535   Filed 05/13/22   Page 7 of 13

that in the absence of FAA regulatory jurisdiction over their helicopters, evidence and argument during trial by the government that Defendants violated the Federal Aviation Act and/or FARs should be prohibited by this court. *See* Resp. at 2, ECF No. 1438.

A.    Motion as to the Federal Aviation Act

Defendants are being tried for three offenses that are criminalized within Title 49, which contains the Federal Aviation Act. *See* Second Superseding Indictment, ECF No. 862. Defendants are asking the court to prevent the presentation of evidence that they violated the criminal laws they are being tried for violating. The court construes such a request as a motion to dismiss. The court has already denied a motion to dismiss for lack of jurisdiction in this case. Order, ECF No. 706. As such, the law of the case doctrine is applicable here. "As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The motion as to the Federal Aviation Act is therefore **DENIED**.

B.    Motion as to the FARs

The argument that the registrations of Defendants' helicopters with the FAA were void ab initio was raised by Defendants on the above-mentioned motion to dismiss, which the court described as a "challenge . . . to the authority of the United States government to regulate the behavior at issue in the indictment." ECF No. 792, Transcript of Aug. 17, 2020 Proceedings, 51:12-16. It was also the subject of two other motions in limine: the United States' Motion in Limine to Exclude Evidence and Arguments Alleging that FAA Registrations Were Void Ab Initio Pursuant to Rule 104 of the Federal Rules of Evidence (ECF No. 1057), and Defendant Kapp's Motion in Limine, Pursuant to Rule 104 of the Federal Rules of Evidence, to Preclude the United States From Offering Evidence and Arguments Alleging that Defendant Kapp, and/or

8

the Other Defendants, Have Violated the Federal Aviation Act and/or Any of the Federal Aviation Regulations Promulgated by the Federal Aviation Administration (ECF No. 1123). The court denied both motions. ECF No. 1252. The argument was again raised in Defendants Kapp and Walker's trial brief (Trial Br. at 6–9, ECF No. 1321) and vigorously objected to in the Government's response thereto (Resp. at 7–17, ECF No. 1321).

Prosecution under criminal statutes operates independently of regulatory enforcement. *Cf. United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1366 (9th Cir. 1987) (noting that the application of the primary jurisdiction doctrine in criminal cases "clearly interferes with the government's authority to prosecute criminal cases."); *United States v. Int'l Union of Operating Eng'rs, Local 701*, 638 F.2d 1161, 1162 (9th Cir. 1979), *cert. denied*, 444 U.S. 1077 (1980) (holding that there was no requirement the government exhaust an administrative remedy before the Federal Election Commission prior to bringing an indictment under the Federal Election Campaign Act).

The FAA's regulatory jurisdiction does not occlude any other form of jurisdiction, even when the subject matter of litigation pertains to aircrafts. *See, e.g.*, *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305 (1976) (common law fraud against an airline carrier was not within primary jurisdiction of FAA because "the standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts."); *see also United States v. Culliton*, 328 F.3d 1074, 1082 (9th Cir. 2003) ("While it is true that the FAA plays a vital and major role in regulating aviation matters, Culliton cannot point to anything in the pertinent statutory or regulatory framework that prevents the Department of Justice from prosecuting an individual for the felony of making false statements to a government agency. Furthermore, while the FAA is competent to determine whether an applicant has made false statements on a certificate form, it is squarely within the province of the Department of Justice to prosecute

9

felonies of perjury and false statements.").

Defendants argue that they were operating "aerial work helicopters," which are exempt from the Standards and Recommended Practices contained in Annex 6, Part III of the Chicago Convention, which applies to "helicopters engaged in international commercial air transport operations or in international general aviation operations." *See, e.g.*, Reply at 10, ECF No. 1492. The Chicago Convention defines "aerial work" as "an aircraft operation in which an aircraft is used for specialized services such as agriculture, construction, photography, *surveying*, *observation* and patrol, search and rescue, aerial advertisement, etc." (emphasis added).

However, whether Defendants were "aerial work helicopters" or "civil aircraft" is irrelevant to the issues in this case.[6] This is a prosecution for violations of criminal law, not an international treaty. Therefore, if argument pertaining to the regulatory jurisdiction of the FAA is to be presented, it must be relevant to an element in one of the crimes charged. Fed. R. Evid. 402.

The regulatory jurisdiction of the FAA is not relevant to the elements of any of the crimes charged, with the exceptions of Conspiracy to Defraud the FAA and NTSB in violation of 18 U.S.C. § 371, Destruction, Alteration, or Falsification of Records in violation of 18 U.S.C. § 1519, False Statement in violation of 18 U.S.C. § 1001(a)(2), and Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349.[7]

---

[6] Additionally, the scope of the FAA and NTSB's regulatory authority is not found in the Chicago Convention. It is found in those agencies' respective organic statutes, 49 U.S.C. § 106 (FAA) and 49 U.S.C. §§1131-40 (NTSB). The FAA is the part of the U.S. government responsible for implementing the standards found in the Chicago Convention, but the Chicago Convention is not the source of its regulatory jurisdiction. Therefore, argument and evidence related to the Chicago Convention is irrelevant.

[7] Defendants are charged with the following:
- Conspiracy to defraud the FAA and NTSB, in violation of 18 U.S.C. § 371. Section 371 prohibits "two or more persons [from] conspir[ing] either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons [from] do[ing] any act to effect the object of the conspiracy."
- Destruction, alteration, or falsification of records in violation of 18 U.S.C. § 1519. Section 1519 prohibits "knowingly alter[ing], destroy[ing], mutilat[ing], conceal[ing], cover[ing] up,

10

1            *1.  Conspiracy to defraud the FAA and NTSB*

2        Section 371 prohibits "two or more persons [from] conspir[ing] either to commit any

3    offense against the United States, or to defraud the United States, or any agency thereof in any

4    manner or for any purpose, and one or more of such persons [from] do[ing] any act to effect the

5    object of the conspiracy." Count 1 of the Second Superseding Indictment lists twenty-one overt

6    acts in furtherance of the alleged conspiracy to defraud the FAA and NTSB. The *necessity* of

7    undertaking actions to allegedly defraud is not relevant to the elements of Count 1. What is

8    relevant is whether or not Defendants did in fact undertake such actions and their mens rea at the

9    time. The *validity* of the FAA registrations is not relevant to the elements of Count 1. What is

---

falsif[ying], or mak[ing] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of *any matter within the jurisdiction of any department or agency of the United States* . . . or in relation to or contemplation of any such matter or case." (emphasis added).

- False statement in violation of 18 U.S.C. § 1001(a)(2). Section 1001(a)(2) prohibits, "in any matter *within the jurisdiction of the executive*, legislative, or judicial *branch of the Government of the United States*, knowingly and wilfully—mak[ing] any materially false, fictitious, or fraudulent statement or representation."
- Aircraft parts fraud in violation of 18 U.S.C. § 38(a)(1)(A). Section 38(a)(1)(A) prohibits "in or affecting interstate or foreign commerce, knowingly and with the intent to defraud—falsif[ying] or conceal[ing] a material fact concerning any aircraft or space vehicle part."
- Employing a mechanic without a mechanic's certificate in violation of 49 U.S.C. § 46306(b)(8). Section 46306(b)(8) prohibits "knowingly and willfully employ[ing] for service or uses in any capacity as an airman an individual who does not have an airman's certificate authorizing the individual to serve in that capacity."
- Employing a pilot without a pilot's certificate in violation of 49 U.S.C. § 46306(b)(8). Same as above.
- Registration violations involving helicopters in violation of 49 U.S.C. § 46306(b)(3). Section 46306(b)(3) prohibits "knowingly and willfully display[ing] or caus[ing] to be displayed on an aircraft a mark that is false or misleading about the nationality or registration of the aircraft."
- Wire fraud in violation of 18 U.S.C. §§ 1343, 1346, & 2. Secion 1343 prohibits "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmit[ting] or caus[ing] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." Section 1346 provides that a "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services." Conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 is also charged.
- Money laundering in violation of 18 U.S.C. § 1957. Section 1957 prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity" when the offense takes place in the United States or in the territorial jurisdiction of the United States.

11

relevant is whether Defendants sought to obtain such registrations, and whether they made fraudulent statements to that end.

### 2. *Falsification of records and false statement*

Falsification of records is prohibited when done with the intent to impede the "proper administration of any matter within the jurisdiction of any department or agency of the United States," and false statements are prohibited "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." These charges stem from Defendants' interactions with the FAA and NTSB in various capacities, specifically those agencies' investigation of crashes (Second Superseding Indictment ¶¶ 74, 77, 80, 84 ECF No. 862), tracking certificates of airworthiness and registrations (*id.* ¶¶ 77 & 84), overseeing inspection and maintenance of aircraft (*id.* ¶ 82), and tracking the export of formerly US-registered aircraft (*id.* ¶ 86).

When 18 U.S.C. §§ 1519 and 1001(a)(2) refer to "any matter within the jurisdiction" of the executive branch, they mean that the type of interaction with the federal agency that forms the basis for the charge is one that falls within that agency's regulatory scope. The FAA is the governmental body that registers aircraft. The validity of a given registration is not what determines whether the matter of registration *writ large* is within its regulatory jurisdiction, the *FAA organic statute* does. The regulatory jurisdiction of the FAA and NTSB are relevant, but whether or not the FAA and NTSB had regulatory authority over Defendants' aircraft is irrelevant to the charges of Falsification of Records and False Statement.

### 3. *Conspiracy to commit wire fraud*

The Second Superseding Indictment also makes some references to Defendants' helicopters not complying with registrations requirements in the charge for Conspiracy to Commit Wire Fraud. *See* Second Superseding Indictment ¶¶ 123, ECF No. 862 ("The first object

12

of the conspiracy and scheme to defraud was to receive money from the lease of un-airworthy helicopters to tuna boat companies, *which purportedly met FAA regulations, registrations requirements, certification requirements, and airworthiness standards, when in fact the helicopters did not*.") (emphasis added). Evidence for this charge must therefore be relevant to whether the helicopters purported to meet FAA standards, and whether they did in fact meet those standards. Whether they needed to meet those standards in the first place is not relevant.

### 4. *Conclusion*

Earlier in this case, the court declined to rule on the issue of whether Defendants' void ab initio theory could be presented to the jury. ECF No. 1252. The court now finds that it is necessary in order to prevent confusion on the part of the jury.

IT IS HEREBY ORDERED that Defendants shall not present any argument that their helicopters were not subject to FAA or NTSB regulatory jurisdiction. Such arguments are irrelevant to the elements in the crimes charged. To the extent that Defendants had a particular mens rea (or lack thereof) at the time of the alleged conduct that involves their subjective understanding of their obligations (or lack thereof) to the FAA and NTSB, they may present relevant evidence and argument.

As for Defendants' Cross Motion in Limine, ECF No. 1438, it is **DENIED**. Describing the background of why and how the FAA and NTSB were interacting with Defendants throughout the alleged conspiracies is helpful information for the jury. Furthermore, the failure to comply with FAA standards as applied to Defendants' helicopters is directly relevant to Count 99. The United States is, however, reminded that it is prosecuting Defendants for violations of criminal statutes, not FAA regulations, and should avoid evidence and argument that could unduly prejudice Defendants.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: May 13, 2022**