IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM


UNITED STATES OF AMERICA,    ) Criminal Case No. 18-00010
    )
              Plaintiff,  )
    )
        vs.         )
    )
JOHN D. WALKER, et al.,    )
    )
              Defendants. )


TRIAL TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD,
CHIEF JUDGE
JUNE 8, 2022 - AUGUST 22, 2022; 10:01 A.M.
HAGATNA, GUAM


**Testimony of Viranousith Khamvongsa**

(Jury Trial Excerpt)

Veronica F. Flores, CSR-RPR
Official Court Reporter
veronica_flores@gud.uscourts.gov

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: MARIE MILLER, SAUSA,**
**SAMANTHA MILLER, SAUSA,**
**STEPHEN LEON GUERRERO, AUSA**
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of Defendant Walker:

**MARTIN LAW OFFICE**
**BY: MACK K. MARTIN, ESQ.**
125 Park Avenue, 5th Floor
Oklahoma City, OK 73102
(405) 236-8888


Appearing on behalf of Defendant Hansen:

**MCCONWELL LAW OFFICES**
**BY: EDWARD A. MCCONWELL, SR., ESQ.**
**LAURA MCCONWELL, ESQ.**
5201 Johnson Drive, Suite 300
Mission, KS 66205
(913) 262-0605

**LAW OFFICE OF EDWARD C. HAN**
**BY: EDWARD C. HAN, ESQ.**
238 Archbishop Flores Street
DNA Building, Suite 802
Hagatna, Guam 96910
(671) 477-5055


ALSO PRESENT:

Jon D. Walker, Defendant

Carmen Santos, Clerk

I N D E X

|                          | Direct    | Cross    | Redirect | Recross  |
|--------------------------|-----------|----------|----------|----------|

GOVERNMENT
WITNESS:

Viranousith Khamvongsa    6(SM/MM)  758(EM)   994(MM)   1202(MM)
                                    841(MM)   1220(MM)

EXHIBITS:

| | Description | Page |
|---|---|---|
| 742 | E-mail dated 6/26/2014 from Crowe to Reed re: Having Reed Forward Tim's documents to get his plane in Hawaii | 45 |
| 183 | Pilot/Mechanic List from seized computers from FBI SW | 159 |
| 1254 | SW/Subpoenaed Records from HH Summary Chart | 165 |
| 726 | Wilma's Flight Services, Inc. Billings and Collections from Dec 2013 to April 2018 | 347 |
| 725-1-26 | Hansen Helicopters, Inc. Aircraft/ Vessel assignment from 8/18/2014 to 3/14/2018 | 362 |
| 40-2 | Excerpt of paragraph 127 of the Second Superseding Indictment | 383 |
| 2900-3522-3527 | PDF of Contracts | 406 |
| 92 | 2017 Non-owed Aviation - GA99-8CC6E-00 Sea Global Fisheries, LLC Yr 2017-2018 Insurance | 483 |
| 21 | BOH Caledonian Agency, Inc. Acct. 9134 from 8/31/2015 to 9/30/2015 | 501 |
| 22-1-21 | BOH Caledonian Agency, Inc. Acct. 9134 from 11/30/2015 to 12/31/2015 | 526 |

10:38:19AM
10:38:21AM

Veronica F. Flores, CSR-RPR
Official Court Reporter
veronica_flores@gud.uscourts.gov

2900-1976-
1981      PDF of Contracts                          534

2936-1-
4         BOH Caledonian Agency, Inc. Acct. 9134
          Statement dated 9/30/2016 to 10/31/2016   540

25-1-
11        BOH Caledonian Agency, Inc. Acct. 9134
          from 11/30/2016 to 12/31/2016              552

25-12     BOH Caledonian Agency, Inc. Acct. 9134
          from 11/30/2016 to 12/31/2016              556

25-22-    BOH Caledonian Agency, Inc. Acct. 9134
23        from 11/30/2016 to 12/31/2016              559

23-1-
2         BOH Hansen Northern Helicopters, Inc.
          Acct. 3534 from 11/30/2016 to 12/31/2016 562

30        CBT Walker Agricola LLC signature card    569

31-1-
3         CBT Walker Agriola LLC from 11/30/2016
          to 12/30/2016                              571

366-1-
98        MNS Capitol Files identifying corporate
          structure, various helos in inventory,
          vessels                                    613

D-130-1   Amended Articles of Incorporation of
15        Wilma's Flight Services, Inc.              782

D-131     Minutes of Shareholders and Board of
          Directors of Wilma's Flight Services,
          Inc.                                       782

D-132     Minutes of Shareholders and Board of
          Directors of Wilma's Flight Services,
          Inc.                                       782

D-133     Minutes of Shareholders and Board of
          Directors of Wilma's Flight Services,
          Inc.                                       782

D-134     Minutes of Shareholders and Board of
          Directors of Wilma's Flight Services,
          Inc.                                       782

Veronica F. Flores, CSR-RPR
Official Court Reporter
veronica_flores@gud.uscourts.gov

| | | |
|---|---|---|
| D-135 | Minutes of Shareholders and Board of Directors of Wilma's Flight Services, Inc. | 782 |
| D-136 | 2002 Constitution for Wilma's Flight Service, Inc. (Vanuatu) | 820 |
| D-76 | Insurance policy #11-22-4571-05 by Caledonian Insurance Co., Limited for Beanbag Helicopters, Inc., and wholly Owned Vanuatu Companies | 822 |
| D-66A-85 | GAO 2020 Report | 836 |
| D-66A-86-87 | GAO 2020 Report | 837 |
| 3003-15 | CAAP documents | 1032 |
| 2939-82-83 | CFGu FCU Limey Air Service, Inc. Acct. 9899 Signature Card, Corporate Records, 2018 & 2019 Incoming Wire Transfer Log | 1171 |
| 3007 | Thomas Geluz Bustos Helicopter Pilot Resume | 1213 |

| | |
|---|---|
| 1 | June 8, 2022; 10:01 a.m.; Hagatna, Guam | |
| 2 | * * * | |
| 3 | (Beginning of excerpt.) | |
| 4 | | |
| 5 | THE CLERK:  Sir, please state your name and spell | 10:01AM |
| 6 | your name for the record. | 10:01AM |
| 7 | THE WITNESS:  May I be seated?  Thank you.  Good | 10:01AM |
| 8 | morning, my name is Viranousith Khamvongsa and I reside in | 10:02AM |
| 9 | Guam.  Last name is Khamvongsa, that's K-H-A-M, as in Mike, | 10:02AM |
| 10 | V-O-N-G-S-A. | 10:02AM |
| 11 | COURT REPORTER:  Can you spell your first name? | 10:02AM |
| 12 | THE WITNESS:  Viranousith.  Common spelling, | 10:02AM |
| 13 | V-I-R-A-N-O-U-S-I-T-H. | 10:02AM |
| 14 | | 10:02AM |
| 15 | DIRECT EXAMINATION | 10:02AM |
| 16 | | 10:02AM |
| 17 | THE COURT:  You may proceed. | 10:02AM |
| 18 | BY MS. S. MILLER: | 10:02AM |
| 19 | Q.   Okay, good morning, Agent Khamvongsa. | 10:02AM |
| 20 | A.   Good morning. | 10:02AM |
| 21 | Q.   Good morning, ladies and gentlemen of the jury. | 10:02AM |
| 22 | THE JURY:  Good morning. | 10:02AM |
| 23 | BY MS. S. MILLER: (CONTINUING) | 10:02AM |
| 24 | Q.   Agent Khamvongsa, can you please describe your | 10:02AM |
| 25 | educational background for the jury? | 10:02AM |

*Direct - Khamvongsa*

1    A.   I graduated with an accounting degree from the

2 University of Alaska.  It's a BBA, bachelor of business

3 administration, with a minor in management information

4 systems.

5    Q.   And what year is that, sir?

6    A.   I graduated in 2002.

7    Q.   Could you please tell the jury, what was your first

8 job out of college assuming you had one?

9    A.   My first job I graduated -- upon graduation, I was

10 immediately hired by IRS Criminal Investigation as a Special

11 Agent.

12    Q.   And where do you currently work, Agent Khamvongsa?

13    A.   I am still a Special Agent with IRS Criminal

14 Investigation.

15    Q.   How long have you been a special agent with the IRS?

16    A.   Almost 20 years.

17    Q.   Could you please tell the jury a little bit about

18 your duties as a criminal investigator for the IRS?

19    A.   As a Special Agent, I investigate crimes that -- like

20 tax fraud or tax evasion, failing to file a false return -- or

21 failing to file returns, filing a false return, impeding the

22 IRS.  But in addition to enforcing the internal revenue code,

23 I also investigate other financial crimes, such as money

24 laundering and the money and banking statutes.

25    Q.   Did you have to do any special training to become an

1    IRS special agent?                                                10:04AM

2        A.   Yes, upon -- upon graduating, I immediately went to     10:04AM

3    the federal law enforcement training center where I spent six    10:04AM

4    months.  While there, I was attending the federal law            10:04AM

5    enforcement training center to do special agent training.  And   10:04AM

6    then after a couple months of that, what we learned              10:04AM

7    investigative techniques in the law and how to apply it as a     10:04AM

8    special agent.  We take on our agency-specific classes at the    10:04AM

9    federal law enforcement training center.                         10:04AM

10       Q.   Have you done any special training since that first     10:04AM

11   initial training?                                                10:04AM

12       A.   We take CPEs, or continued professional education, on   10:04AM

13   a yearly basis.                                                  10:04AM

14       Q.   Special Agent Khamvongsa, where are you located?        10:04AM

15       A.   I currently am here in the Guam, but I also cover the   10:04AM

16   CNMI.                                                            10:04AM

17       Q.   How long have you been located in the Guam/CNMI         10:04AM

18   office?                                                          10:04AM

19       A.   I've been here since September 2010.                    10:04AM

20       Q.   And where were you prior to that?                       10:04AM

21       A.   I was in Anchorage, Alaska.                             10:05AM

22       Q.   Sir, can you tell the jury a little bit about the       10:05AM

23   training specifically that you received regarding money          10:05AM

24   laundering?                                                      10:05AM

25       A.   Money laundering, that took place in the federal law    10:05AM

```
 1   enforcement training center while I was there in 2002.  In          10:05AM

 2   addition, we get yearly training on the various money               10:05AM

 3   laundering statutes as it applies.  And in addition, in the         10:05AM

 4   course of our training, in order to prove money laundering, we      10:05AM

 5   have to identify the underlying criminal activity that occurs,      10:05AM

 6   then money laundering occurs thereafter.                            10:05AM

 7       Q.   Okay.  Okay, before we go on to the underlying             10:05AM

 8   criminal activity, can you just tell the jury what is money         10:05AM

 9   laundering?                                                         10:05AM

10       A.   Money laundering is a three-step process.  Upon           10:05AM

11   identifying where the source of the funds are coming from, in       10:05AM

12   this case, I'll use the example --                                  10:05AM

13            MR. MARTIN:  Your Honor, I object to -- the Court          10:05AM

14   will instruct the jury on what money laundering is and this is      10:05AM

15   trying to go way beyond that.  I object.                           10:06AM

16            THE COURT:  All right.  Let me just hear the last          10:06AM

17   question.  I'm sorry.  I just was talking to my jury               10:06AM

18   administrator.  Hold on.  Last question?  Or was it his            10:06AM

19   answer, was that --                                                10:06AM

20            MR. MARTIN:  It was the question and the answer.          10:06AM

21            THE COURT:  Let me just hear the question real            10:06AM

22   quick, please.                                                      10:06AM

23            (Whereupon the reporter read back requested               10:06AM

24   portion.)                                                           10:06AM

25            THE COURT:  That's okay.  Thank you.  I'm sorry,          10:06AM
```

*Direct - Khamvongsa*

1  Veronica, I didn't mean to cut you off.  I appreciate it.  The    10:06AM

2  Court will sustain the objection.  There will be a definition    10:06AM

3  of money laundering, ladies and gentlemen.  So the Court will    10:06AM

4  sustain that.    10:06AM

5  BY MS. S. MILLER:  (CONTINUING)    10:06AM

6     Q.   Special Agent Khamvongsa, you mentioned that in order    10:06AM

7  to prove money laundering, you have to have some underlying    10:06AM

8  criminal activity.    10:06AM

9          Can you give the members of the jury of the some    10:06AM

10  examples of the types of underlying criminal activities that    10:07AM

11  you have investigated to prove money laundering?    10:07AM

12             MR. MARTIN:  Well, Your Honor, I again object.    10:07AM

13             MS. S. MILLER:  I asked the types.    10:07AM

14             THE COURT:  Hold on.  Let me hear the objection,    10:07AM

15  Counsel.  Don't interrupt.  What's the objection?    10:07AM

16             MR. MARTIN:  I again object to him defining what    10:07AM

17  underlying criminal activity is.  There's going to be a    10:07AM

18  definition of that in the Court's instructions.    10:07AM

19             THE COURT:  Okay.  Go ahead.  You can respond.    10:07AM

20             MS. S. MILLER:  Yes, Your Honor.  I didn't ask    10:07AM

21  him to define it.  I asked for the types of underlying crimes    10:07AM

22  he has investigated to prove money laundering.    10:07AM

23             THE COURT:  All right.  The Court will overrule    10:07AM

24  that objection then.  And he may testify as to the type of    10:07AM

25  investigations that he's conducted in regard to this    10:07AM

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | particular area. | 10:07AM |
| 2 | THE WITNESS:  Thank you, Your Honor. | 10:07AM |
| 3 | THE COURT:  You may proceed. | 10:07AM |
| 4 | THE WITNESS:  One more time, please. | 10:07AM |
| 5 | BY MS. S. MILLER: (CONTINUING) | 10:07AM |
| 6 | Q.   Sure.  You mentioned that there were -- in order to | 10:07AM |
| 7 | prove money laundering, there has to be some underlying crime. | 10:07AM |
| 8 | Could you tell the members of the jury the types of underlying | 10:07AM |
| 9 | crimes you've investigated to prove money laundering, the | 10:07AM |
| 10 | types? | 10:07AM |
| 11 | A.   The types of crimes in my career, I've investigated | 10:07AM |
| 12 | that are the underlying crimes for money laundering include | 10:08AM |
| 13 | visa fraud, wire fraud, and drug trafficking. | 10:08AM |
| 14 | Q.   Thank you.  Now, you stated that you've done a lot of | 10:08AM |
| 15 | investigating of tax-related crimes.  Can you please tell the | 10:08AM |
| 16 | jury what's tax fraud? | 10:08AM |
| 17 | A.   Tax fraud includes tax evasion, failing to file a tax | 10:08AM |
| 18 | return.  So for example, if an individual is -- files a tax | 10:08AM |
| 19 | return where they're only reporting, let's say $10,000 as | 10:08AM |
| 20 | their gross income or what they make in that year, yet their | 10:08AM |
| 21 | bank account represents a deposit of $1 million and they took | 10:08AM |
| 22 | steps to evade that reporting, that would go to the tax | 10:08AM |
| 23 | evasion, like the steps of like creating a corporation where | 10:08AM |
| 24 | they sign the income to the corporation saying that belongs to | 10:08AM |
| 25 | the corporation.  These are steps they take to hide the money | 10:08AM |

*Direct - Khamvongsa*

```
1    from the IRS.  And the tax return itself is signed under     10:09AM

2    penalties of perjury.  So the information within the document  10:09AM

3    is relied upon by the government as being true and correct.    10:09AM

4         So when that information is submitted and there is        10:09AM

5    other documents or other pieces of evidence showing that it's  10:09AM

6    something completely different, that would -- I would then     10:09AM

7    move forward and present that to the U.S. Attorney's Office    10:09AM

8    or...                                                          10:09AM

9    Q.   So Special Agent Khamvongsa, when you're looking at        10:09AM

10   the different types of documents related to a tax             10:09AM

11   investigation, as you compare them, what generally speaking    10:09AM

12   are you looking for?                                           10:09AM

13   A.   So, initially, in the course of my investigation, I       10:09AM

14   rely on the tax return.  Again, it's a document that's         10:09AM

15   submitted to the government in good faith.  And from there, I  10:09AM

16   identify what the allegation may be.  So if it's tax evasion,  10:09AM

17   we'll say, I have to identify where on that tax return they    10:09AM

18   were -- there was some --                                      10:10AM

19        MR. MARTIN:  Your Honor, I object, this is a              10:10AM

20   narrative.  She said what documents did you look at.  Now,     10:10AM

21   he's going into detail about --                                10:10AM

22        THE COURT:  Okay, objection is narrative.  The           10:10AM

23   Court will sustain.                                            10:10AM

24   BY MS. S. MILLER: (CONTINUING)                                 10:10AM

25   Q.   When you -- when you're looking at the different          10:10AM
```

*Direct - Khamvongsa*

1   kinds of documents, what are you looking as you compare them?   10:10AM

2   What are you looking for?   10:10AM

3       A.   When I'm looking at the documents, I'm looking at   10:10AM

4   patterns of inconsistencies or misrepresentations within the   10:10AM

5   document.   10:10AM

6       Q.   What do you do to determine the accuracy with respect   10:10AM

7   to inconsistencies?   10:10AM

8       A.   I review the records that are submitted to the   10:10AM

9   government, which are often under penalties of perjury, which   10:10AM

10  are being truthful and accurate by the taxpayer, and then I   10:10AM

11  look at records, such as bank records, records filed with   10:10AM

12  other government agencies, records maintained with other   10:10AM

13  businesses and I compare that to what is reported with the   10:11AM

14  government; in this case, the IRS.   10:11AM

15      Q.   When you look at that type of information that's   10:11AM

16  submitted to government agencies, do you use any other   10:11AM

17  investigative tools to obtain additional evidence?   10:11AM

18      A.   Yes.  I also use subpoenas or summonses.   10:11AM

19      Q.   Could you please tell the jury what subpoenas and   10:11AM

20  summonses are?   10:11AM

21      A.   It's a tool that compels an individual or business to   10:11AM

22  provide records to the government.   10:11AM

23      Q.   And in your 20 years of experience as a criminal   10:11AM

24  investigator, what type of information do you normally obtain   10:11AM

25  with a subpoena?   10:11AM

1    A.   The information I generally obtain with a subpoena,    10:11AM

2   include bank records, they may be invoices from a retail    10:11AM

3   store, or a car dealership or even an individual or an    10:11AM

4   accountant.    10:11AM

5    Q.   Could you tell the jury what the difference between a    10:11AM

6   subpoena and a summons is?    10:11AM

7    A.   A summons is an agency-specific tool to compel    10:11AM

8   documents or witness testimony.  And a subpoena comes from the    10:12AM

9   grand jury and I make the request through the U.S. Attorney's    10:12AM

10   Office.    10:12AM

11    Q.   Okay.  So for summons purposes, as an IRS    10:12AM

12   investigator and agent, it would be an IRS summons?    10:12AM

13    A.   Yes.    10:12AM

14    Q.   Okay.  Who does the information -- how would you    10:12AM

15   generalize about who the information that responds to summons    10:12AM

16   and subpoenas comes from?  How would you generalize those    10:12AM

17   entities?    10:12AM

18         MS. MCCONWELL:  Your Honor, I object to the form    10:12AM

19   of the question.    10:12AM

20         THE COURT:  Yeah, that's kind of vague and    10:12AM

21   ambiguous.  You want to rephrase that?  Court will sustain    10:12AM

22   that.    10:12AM

23         MS. S. MILLER:  Sure.    10:12AM

24   BY MS. S. MILLER: (CONTINUING)    10:12AM

25    Q.   Typically in your work with the IRS, are you issuing    10:12AM

*Direct - Khamvongsa*

1   subpoenas to defendants or other organizations?                 10:12AM

2       A.   To other organizations.  But if I were to issue a      10:12AM

3   summons, I would notify the bank holder, like the               10:13AM

4   accountholder that we are subpoenaing their -- or issuing a      10:13AM

5   summons for their bank records.                                 10:13AM

6       Q.   Do grand jury subpoenas require notice to the          10:13AM

7   accountholder that you're looking for a bank account            10:13AM

8   information?                                                    10:13AM

9       A.   No.                                                    10:13AM

10      Q.   So is that another difference that differentiates      10:13AM

11  summons versus subpoenas?                                       10:13AM

12      A.   Yes.                                                   10:13AM

13      Q.   A notice?                                              10:13AM

14      A.   The grand jury is more --                              10:13AM

15           MS. MCCONWELL:  Your Honor, I object to                10:13AM

16  relevance.  Leading -- and leading.                             10:13AM

17           THE COURT:  Okay --                                    10:13AM

18           MS. S. MILLER:  Just trying to provide some            10:13AM

19  general information.                                            10:13AM

20           THE COURT:  Okay, overruled and then sustained on      10:13AM

21  leading.                                                        10:13AM

22           MS. S. MILLER:  Sure.                                  10:13AM

23  BY MS. S. MILLER: (CONTINUING)                                  10:13AM

24      Q.   Special Agent Khamvongsa, once you get information in  10:13AM

25  response to grand jury subpoenas, what do you do with that      10:13AM

*Direct - Khamvongsa*

1    information?                                                    10:13AM

2         A.    I review them and I analyze them.                   10:13AM

3         Q.    How many criminal investigations have you           10:13AM

4    participated in, throughout your over 20 years as a special    10:13AM

5    agent for the IRS?                                             10:13AM

6         A.    How many criminal investigations?                   10:13AM

7         Q.    Yes.                                                 10:14AM

8         A.    A lot.  At least 40, alone.                         10:14AM

9         Q.    And what about with respect to, specifically, wire  10:14AM

10   fraud investigations?                                          10:14AM

11        A.    I would say, at least 20.                           10:14AM

12        Q.    20 of those --                                      10:14AM

13        A.    Of being wire fraud, yes; correct.                  10:14AM

14        Q.    Okay.  What about with respect to money laundering  10:14AM

15   investigations?                                                10:14AM

16        A.    The money laundering, at least the same number; about 10:14AM

17   20.                                                            10:14AM

18        Q.    Okay.  How about with criminal tax fraud?          10:14AM

19        A.    Prior to my -- prior to doing money laundering and  10:14AM

20   wire fraud, I was focused primarily on tax cases.  So the 20   10:14AM

21   -- about 20.                                                   10:14AM

22        Q.    Now, as a special agent for the IRS, let's talk a   10:14AM

23   little bit more about the sources of evidence.  How do you use 10:14AM

24   evidence obtained from experts?                                10:14AM

25        A.    How I do use -- I use that information to corroborate 10:14AM

*Direct - Khamvongsa*

the documents.  My cases are paper-intensive.  So the witness

testimony or the expert testimony goes to creating a bigger

picture or better understanding of what is reported on a piece

of paper.

Q.   How do you use evidence obtained from trial

testimony?

A.   Trial testimony is the same thing.  It's under oath,

so it has a little bit more weight to it versus just an

interview.  So I use that information to corroborate, again,

what a piece of paper says.

Q.   And specifically with respect to this trial, have you

been listening to all the testimony throughout the trial?

A.   Yes.

Q.   How do you use evidence obtained through interviews?

A.   Interviews, the same way; I utilize that information

to corroborate what a document says.

Q.   Do you ever use evidence obtained from foreign

records?

A.   Yes, I do use -- I do review foreign records.

Q.   How do you use those foreign records?

A.   A lot of times, again, when records or when documents

are completed, most of the documents that I've reviewed are

signed and they're certifying that the information is true and

accurate.  So there is a re -- there is a good faith basis

that the information they're providing whether it's a foreign

```
 1   entity or a bank or any other agency --                         10:16AM

 2              MS. MCCONWELL:  Your Honor, I think we're onto a      10:16AM

 3   narrative.                                                       10:16AM

 4              THE COURT:  I'm sorry?                                10:16AM

 5              THE WITNESS:  -- good faith.                          10:16AM

 6              MS. MCCONWELL:  I object to narrative.                10:16AM

 7              THE COURT:  All right.  Sustained.                    10:16AM

 8   BY MS. S. MILLER: (CONTINUING)                                   10:16AM

 9      Q.   Can you tell the jury a little bit about how you use     10:16AM

10   records obtained through search warrants?                       10:16AM

11      A.   Um, I review that information, I analyze it and I       10:16AM

12   compare it to what other documents may or may not say.          10:16AM

13      Q.   Now, can you tell the jury a little bit about the       10:16AM

14   difference between evidence obtained from third parties, like   10:16AM

15   banks versus typically what you obtained through search         10:16AM

16   warrants?                                                       10:16AM

17      A.   Documents obtained from third parties, such as banks,   10:16AM

18   again, when those information -- that information is reliable    10:16AM

19   because the information presented to the bank is based on good  10:16AM

20   faith, a lot of times again it's being submitted -- that is     10:16AM

21   being true and correct to the bank.                             10:17AM

22              MS. MCCONWELL:  Your Honor, I object.  This is        10:17AM

23   also a narrative.                                               10:17AM

24              THE COURT:  Okay.  Sustained.                        10:17AM

25              MS. MCCONWELL:  And it's inserting nonresponsive      10:17AM
```

| | |
|---|---|
| 1 | information. | 10:17AM |
| 2 | THE COURT:  All right.  Sustained. | 10:17AM |
| 3 | BY MS. S. MILLER: (CONTINUING) | 10:17AM |
| 4 | Q.   How is that information different from evidence | 10:17AM |
| 5 | obtained through search warrants? | 10:17AM |
| 6 | A.   The evidence comes from a different entity.  And the | 10:17AM |
| 7 | information is provided to me via grand jury subpoena or | 10:17AM |
| 8 | summons. | 10:17AM |
| 9 | Q.   And just to clarify for the jury, typically search | 10:17AM |
| 10 | warrant information comes from who? | 10:17AM |
| 11 | A.   It comes from oftentimes the -- or the defendant. | 10:17AM |
| 12 | Q.   What about corporate records, how do you use evidence | 10:17AM |
| 13 | obtained through corporate records? | 10:17AM |
| 14 | A.   Again, I use corporate records to verify, invalidate | 10:17AM |
| 15 | or corroborate other pieces of evidence, such as testimony. | 10:17AM |
| 16 | Q.   So in terms of the investigations that you've done, | 10:17AM |
| 17 | tax fraud, money laundering and wire fraud, do you do those | 10:18AM |
| 18 | investigations with respect to individuals and corporate | 10:18AM |
| 19 | entities? | 10:18AM |
| 20 | A.   Yes. | 10:18AM |
| 21 | Q.   Have you received any training specifically in | 10:18AM |
| 22 | investigating corporations? | 10:18AM |
| 23 | A.   Yes. | 10:18AM |
| 24 | Q.   Can you tell the jury a little bit about that | 10:18AM |
| 25 | training? | 10:18AM |

*Direct - Khamvongsa*

1      A.   The training, again, goes back to my time at the

2    federal law enforcement training center.  And again, it

3    involves yearly training with the continued professional

4    education through my agency, the IRS.

5      Q.   Can you please provide the jury with an example of

6    how a corporation might violate the law?

7              MR. MARTIN:  I object to this.  This is so

8    speculative and hypothetical.

9              THE COURT:  Yeah.  The Court will sustain the

10   objection.

11   BY MS. S. MILLER: (CONTINUING)

12     Q.   Okay, Special Agent Khamvongsa, turning to your

13   investigation with respect to this case, are you familiar with

14   the indictment in this case?

15     A.   Yes.

16     Q.   How are you familiar with the indictment?

17     A.   I've been involved since 2017 and I helped

18   investigate it since then.

19     Q.   How did you first get involved in investigating this

20   case?

21     A.   The U.S. Attorney's Office reached out and requested

22   my assistance to review records that were provided me from the

23   FBI search warrant in October 2016.

24     Q.   And the records you initially looked at, where did

25   those come from?

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | A.   Those records came from Hansen Helicopters. | 10:19AM |

1    A.   Those records came from Hansen Helicopters.    10:19AM

2    Q.   What has your role been in this investigation?    10:19AM

3    A.   My role is to -- was to investigate any allegations    10:19AM

4  or the possibility of wire fraud and money laundering.    10:19AM

5    Q.   In fulfilling that role, did you look for any    10:19AM

6  evidence of an agreement between persons to violate the law?    10:19AM

7    A.   Yes.    10:19AM

8    Q.   I'd like to show you what's been marked and admitted    10:19AM

9  as Exhibit G-302.  Special Agent Khamvongsa, how did -- did    10:19AM

10  you review this document?    10:20AM

11    A.   Yes.    10:20AM

12    Q.   How did it inform your analysis?    10:20AM

13    A.   This document was obtained via the search warrant.    10:20AM

14  And it contains submissions that were made by the defendant or    10:20AM

15  by Walker, Hansen Helicopters --    10:20AM

16        MR. MARTIN:  Your Honor, I object to this.    10:20AM

17  Everything he's saying is speculative.  This is a business    10:20AM

18  plan.  He's making generalizations that are not supported by    10:20AM

19  the document.  He can say what the document says, but he can't    10:20AM

20  just come here -- this is what this means and this is what    10:20AM

21  that means.  Wholly improper.    10:20AM

22        THE COURT:  Just a minute.  Okay.  That's your    10:20AM

23  objection.  What's -- yes, your objection?    10:20AM

24        MR. MARTIN:  My objection -- mine or Ms.    10:21AM

25  McConwell?    10:21AM

*Direct - Khamvongsa*

1          THE COURT:  Your objection is specifically          10:21AM

2    improper, it's not --          10:21AM

3          MR. MARTIN:  Yes, Your Honor.  He can say what          10:21AM

4    the document says but he can't interpret the document that's          10:21AM

5    totally foreign to him.          10:21AM

6          THE COURT:  All right.  And then speculative.          10:21AM

7          MS. MCCONWELL:  I add that it's a narrative.  It          10:21AM

8    is beyond -- he was nonresponsive to the question.          10:21AM

9          THE COURT:  All right.  Let me hear the question          10:21AM

10   and answer, please.          10:21AM

11          (Whereupon the reporter read back requested          10:21AM

12   portion.)          10:21AM

13          MS. S. MILLER:  May I respond, Your Honor?          10:21AM

14          THE COURT:  No, not yet.  Um... I mean, he          10:21AM

15   doesn't.  He just says -- I mean, he answered the question.          10:21AM

16   He's not getting into a -- first of all he's not -- he's not          10:21AM

17   -- I don't think he's interpreting it.  You think that answer          10:21AM

18   is interpretive.          10:21AM

19          MR. MARTIN:  He was on the way, Judge.  That's my          10:22AM

20   objection.          10:22AM

21          THE COURT:  He was on the way.  This is like          10:22AM

22   preventive?          10:22AM

23          MR. MARTIN:  Correct.  That's a preventive          10:22AM

24   objection, Your Honor.  It's a new one I made up today.          10:22AM

25          THE COURT:  That's that a new one because I never          10:22AM

 1   heard that.  All right, overruled.  And then -- okay.  So          10:22AM
 2   yeah, it's overruled for right now.  Let's just see -- just,       10:22AM
 3   you know, I want to make it, Khamvongsa, right?                    10:22AM
 4               MS. S. MILLER:  Very good.                             10:22AM
 5               THE COURT:  Did I say that?                            10:22AM
 6               THE WITNESS:  Yes, Your Honor.                         10:22AM
 7               THE COURT:  I just put it on my posty here.  Then      10:22AM
 8   I put it phonetically.  So Kham.  K-H-A-M.  Vongsa.               10:22AM
 9               THE WITNESS:  Yes, ma'am.                              10:22AM
10               THE COURT:  So you already know how to testify.        10:22AM
11   So avoid narratives and answer the question.  I know you know    10:22AM
12   that because you testified in my court before.                    10:22AM
13               THE WITNESS:  Yes, Your Honor.                         10:22AM
14               THE COURT:  So, go ahead.                              10:22AM
15               MS. S. MILLER:  So, one second.  Could we just        10:22AM
16   pull the Exhibit back up, please?                                 10:22AM
17               THE COURT:  Sometimes you don't have to respond       10:22AM
18   because I'm just trying to --                                     10:22AM
19               MS. S. MILLER:  Yes, Your Honor.                      10:22AM
20               THE COURT:  -- figure out what the question is or     10:22AM
21   the objection.  Go ahead.                                         10:22AM
22   BY MS. S. MILLER:  (CONTINUING)                                   10:23AM
23       Q.   Would you like to hear the question?                     10:23AM
24       A.   Yes, please.                                             10:23AM
25       Q.   How did this document inform your analysis in this       10:23AM

                        *Direct - Khamvongsa*

| | |
|---|---|
| 1 | investigation? |
| 2 | A.   It helped me identify the agreements. |
| 3 | Q.   How? |
| 4 | A.   There is specific statements within this document |
| 5 | that help me form that agreement, identify the agreements. |
| 6 | Q.   Okay.  Let's take a look, I believe it's page 3? |
| 7 | THE COURT:  Of the same exhibit? |
| 8 | MS. S. MILLER:  Yes, please. |
| 9 | THE COURT:  So Exhibit 302-3.  Is that what |
| 10 | you're talking about? |
| 11 | MS. S. MILLER:  One second. |
| 12 | THE COURT:  Just make sure you put on the record |
| 13 | what page we're looking at. |
| 14 | MS. S. MILLER:  Yes, Your Honor, of course.  This |
| 15 | is page 2.  So Exhibit 302 page 2. |
| 16 | BY MS. S. MILLER: (CONTINUING) |
| 17 | Q.   Special Agent Khamvongsa, can you please tell the |
| 18 | jury if there was anything specifically on this page that |
| 19 | informed your analysis? |
| 20 | A.   In the bottom of the page, under Item No. 4, there is |
| 21 | a response.  "It is all Hansen Helicopters." |
| 22 | Q.   Before you go on, let's actually -- can you read the |
| 23 | question and then the response, please, in full? |
| 24 | A.   Yes.  "Some of the leases refer to Wilma's Flight |
| 25 | Service as the lessor and operator registered owner; whereas |

The timestamps 10:23AM appear on lines 1-19, 10:24AM on lines 20-25.

*Direct - Khamvongsa*

1 other leases do not.  This is a -- is this a typo or is there    10:24AM

2 some explanation?"    10:24AM

3     Q.   And then the answer, please?    10:24AM

4     A.   "It is all Hansen Helicopters.  All of the aircraft    10:24AM

5 are owned wholly by Hansen and its subsidiary companies and    10:24AM

6 all leases and contracts are basically with Hansen, John and    10:24AM

7 Ledger, were trying to spread out the liability through the    10:24AM

8 forming of the other companies.  Everything is controlled by    10:24AM

9 Hansen, and John.  They are synonymous."    10:24AM

10     Q.   Thank you.  Now, I'd like to show you what's been    10:24AM

11 previously admitted as G-304.  Did you review this document in    10:24AM

12 your analysis, Special Agent Khamvongsa?    10:25AM

13     A.   Yes.    10:25AM

14     Q.   How did it inform your analysis?    10:25AM

15     A.   This helped me identify the agreement that took    10:25AM

16 place, as well as one of the overt acts to prove the -- one of    10:25AM

17 the charges in the indictment, specifically conspiracy to    10:25AM

18 commit wire fraud or wire fraud itself.    10:25AM

19     Q.   And when you say "overt act," what do you mean by    10:25AM

20 that?    10:25AM

21     A.   That's a willful act taken by an individual, in this    10:25AM

22 case, Hansen Helicopters, Walker, Crowe, Reed and Kapp.    10:25AM

23     Q.   Okay.  Can you tell the jury -- first of all, can you    10:25AM

24 remind the jury what this document is?    10:25AM

25     A.   This is a plea agreement.  It is signed by Timothy J.    10:25AM

1    Cislo.                                                                10:26AM

2        Q.   And I think the jury knows by now who Timothy Cislo          10:26AM

3    is, but can you tell them, please, what in this agreement             10:26AM

4    informed your analysis as to the overt acts?                          10:26AM

5             MR. MARTIN:  Your Honor, I object to him unless              10:26AM

6    he's going to read from the document, his opinion or his              10:26AM

7    interpretation of the document, I object to.                          10:26AM

8             THE COURT:  You're -- are you having him read                10:26AM

9    from the document?                                                    10:26AM

10            MS. S. MILLER:  Sure, yes, Your Honor.                        10:26AM

11            THE COURT:  All right.  So...do you know where to            10:26AM

12   look?                                                                 10:26AM

13            MS. S. MILLER:  Yes.                                         10:26AM

14            THE WITNESS:  Yes.                                           10:26AM

15            THE COURT:  Okay, go ahead.  Is this a grand jury            10:26AM

16   indictment?                                                           10:26AM

17            MS. S. MILLER:  No, Your Honor, this is the Cislo            10:26AM

18   plea agreement.                                                       10:26AM

19            THE COURT:  Oh, the Cislo plea agreement.                    10:26AM

20            MS. S. MILLER:  Yes.                                         10:26AM

21            THE COURT:  Okay.  Very good.                                10:26AM

22   BY MS. S. MILLER: (CONTINUING)                                        10:26AM

23       Q.   Special Agent Khamvongsa, is there a particular page        10:26AM

24   you'd like to read from?                                              10:26AM

25       A.   Yes, it's the Elements of the Offense and Factual           10:26AM

*Direct - Khamvongsa*

1    Basis on page 3.                                                    10:26AM

2        Q.   Okay.  Could we zoom in a little bit further, just so     10:26AM

3    it's a little bigger?                                               10:26AM

4             THE COURT:  That has already been admitted,               10:26AM

5    right?                                                              10:27AM

6             MS. S. MILLER:  Yes, Your Honor.                          10:27AM

7             THE COURT:  So this has already been shown.               10:27AM

8    Jurors, you can see it?  Okay.  Very well.  Go ahead.              10:27AM

9    BY MS. S. MILLER: (CONTINUING)                                     10:27AM

10       Q.   Could you please read for the jury, Special Agent         10:27AM

11   Khamvongsa, the portion of this that informed your analysis?       10:27AM

12       A.   Item No. 5.                                               10:27AM

13       Q.   Feel free to please read it.                              10:27AM

14       A.   Okay.  Thank you.  "Defendants understand and agrees      10:27AM

15   that to establish the offense, honest services, wire fraud in      10:27AM

16   violation of 18 U.S. Section 1343, 1346 and 2, the United          10:27AM

17   States must prove each of the following elements beyond a          10:27AM

18   reasonable doubt.                                                  10:27AM

19            First, the defendant devised or knowingly                 10:27AM

20   participated in a scheme or plan to deprive the United States      10:27AM

21   and its citizens of their right of honest services.               10:27AM

22            Second, the scheme or plan consisted of a bribe.  His     10:27AM

23   receipt of an aircraft in exchange for the defendant's             10:27AM

24   services.  The exchange may be express or may be implied from      10:27AM

25   all the surrounding circumstances.                                 10:27AM

*Direct – Khamvongsa*

1    Third, the defendant owed a fiduciary duty to the          10:27AM

2 United States and its citizens.                               10:27AM

3    Fourth, the defendant acted with the intent to           10:27AM

4 defraud by depriving the United States and its citizens of    10:28AM

5 their right of honest services.                               10:28AM

6    Fifth, the defendant's act was material, that is, it     10:28AM

7 had a natural tendency to influence or was capable of         10:28AM

8 influence[*sic*] a person or an entity's acts.                10:28AM

9    And sixth, the defendant used or caused someone to       10:28AM

10 use an interstate," I don't know what that other word is      10:28AM

11 that's written there, "a wire communication to carry out or to 10:28AM

12 attempt to carry out the scheme or plan."                     10:28AM

13   Q.   Thank you for that dramatic reading.  Could you        10:28AM

14 please tell the jury what is honest services fraud?           10:28AM

15   A.   I can give an --                                       10:28AM

16            MR. MARTIN:  Your Honor.                           10:28AM

17            THE COURT:  Yeah?  You didn't like that --         10:28AM

18            MR. MARTIN:  The Court will instruct --            10:28AM

19            THE COURT:  You didn't like the dramatic reading?  10:28AM

20            MR. MARTIN:  No, it was very dramatic, but my      10:28AM

21 objection is, the Court will instruct the jury on what the law 10:28AM

22 is in this case, because the question was, will you tell the   10:28AM

23 jury what honest services fraud is.                           10:28AM

24            THE COURT:  Yeah , so okay, so yeah, the -- yeah,  10:28AM

25 so the Court will sustain the objection.                      10:28AM

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | MS. S. MILLER:  No problem, Your Honor. | 10:28AM |
| 2 | THE COURT:  So ladies and gentlemen, let me just | 10:28AM |
| 3 | tell you because some of you have been jurors and some of you | 10:29AM |
| 4 | haven't.  But as you know, I'm going to give a concluding jury | 10:29AM |
| 5 | instructions.  Remember how I gave opening instructions | 10:29AM |
| 6 | earlier.  But when you go in to deliberate, I will give you | 10:29AM |
| 7 | concluding jury instructions and you will have a packet and | 10:29AM |
| 8 | you'll be reading, but you'll also be reading it -- we'll have | 10:29AM |
| 9 | it flashed on the screen.  But it will have, it will have the | 10:29AM |
| 10 | definitions of honest services and other -- other instructions | 10:29AM |
| 11 | that we believe are appropriate that I have approved and I | 10:29AM |
| 12 | worked closely with the defense counsels and the prosecutor | 10:29AM |
| 13 | and those will be instructions that are relevant to your | 10:29AM |
| 14 | consideration.  So yeah, so when it comes to the law, I will | 10:29AM |
| 15 | give that to you and the Court will sustain the objection. | 10:29AM |
| 16 | MS. S. MILLER:  Thank you, Your Honor. | 10:29AM |
| 17 | BY MS. S. MILLER: (CONTINUING) | 10:29AM |
| 18 | Q.   If we could turn to page 4 of this document.  So | 10:29AM |
| 19 | 304-4, please. | 10:29AM |
| 20 | Now, Special Agent Khamvongsa, I'm not going to have | 10:29AM |
| 21 | you read this entire page to the jury, but could you please | 10:29AM |
| 22 | identify and then read -- identify the line and then read to | 10:30AM |
| 23 | the jury any information on this page that informed your | 10:30AM |
| 24 | investigation? | 10:30AM |
| 25 | A.   Again, you want me to read just the specific line? | 10:30AM |

1     Q.   Right.  So if you're going to read anything, please          10:30AM

2   identify the line and then read it.                                 10:30AM

3          THE COURT:  Do you want to point to him what line            10:30AM

4   he's going to read or --                                            10:30AM

5   BY MS. S. MILLER: (CONTINUING)                                      10:30AM

6     Q.   Yeah.  You can point to it, too, but for the                 10:30AM

7   transcript you might as well say the line, please?                  10:30AM

8          THE COURT:  Okay.                                            10:30AM

9          THE WITNESS:  We can go specifically to line 7 on            10:30AM

10   that page.  "The defendant knew that the scheme or artifice        10:30AM

11   consisted of his receipt of a Taylorcraft BC12D aircraft           10:30AM

12   Serial No. 6904, valued at approximately $20,000 from Hansen       10:30AM

13   Helicopters, Inc., and its employees in exchange for the           10:30AM

14   defendant's services of issuing and reissuing special             10:30AM

15   airworthiness certificates to Hansen Helicopters without          10:31AM

16   conducting the necessary inspections and examinations of such     10:31AM

17   helicopters."                                                      10:31AM

18   BY MS. S. MILLER: (CONTINUING)                                     10:31AM

19     Q.   Thank you.  And we you could look at --                     10:31AM

20          MS. MCCONWELL:  I'm sorry, I thought you were on            10:31AM

21   page 5.  What page are you?                                        10:31AM

22          MS. S. MILLER:  This is page 4.                             10:31AM

23          THE COURT:  Okay, so that was page 4, lines --              10:31AM

24   for the record, line 7 through 11; is that correct, Counsel?       10:31AM

25          MS. S. MILLER:  Yes, Your Honor.  7 through 11              10:31AM

*Direct - Khamvongsa*

1   exactly.                                                    10:31AM

2            THE COURT:  All right.                             10:31AM

3   BY MS. S. MILLER: (CONTINUING)                             10:31AM

4       Q.   And if we could zoom back out, please.  If you look 10:31AM

5   at the bottom of the paragraph, beginning on line 20, could 10:31AM

6   you please read for the jury after stating the line any     10:31AM

7   information here that informed your analysis, if any?       10:31AM

8       A.   I'm sorry can you restate that.                    10:31AM

9       Q.   Sure, can you do the same thing with respect to the 10:31AM

10  remaining portion of this page, if there is any statements in 10:31AM

11  this page at the bottom that informed your analysis, could you 10:31AM

12  read it for the jury after stating the line it begins on?    10:31AM

13      A.   Give me one moment.  Starts on line 22.  "In May 22, 10:31AM

14  2014, e-mail transmission between the defendant and Hansen   10:32AM

15  employee Kenneth Rufus Crowe," and its initials there,       10:32AM

16  "regarding the selection of a Taylorcraft BC12D aircraft worth 10:32AM

17  $20,000, including..."                                       10:32AM

18      Q.   If we could please go to page 4, I mean 5 of the    10:32AM

19  document.  Could you continue reading, Special Agent         10:32AM

20  Khamvongsa, the rest of that sentence?                       10:32AM

21           THE COURT:  Okay.  That's -- when you say           10:32AM

22  "document" just state for the record, is that three -- that's 10:32AM

23  still 302.                                                   10:32AM

24           MS. S. MILLER:  Yes, Your Honor G-304-5.  Now       10:32AM

25  we're on page 5.                                             10:32AM

| | |
|---|---|
| 1 | THE COURT: Okay. 304. Very well. | 10:32AM |
| 2 | MS. S. MILLER: Yes. | 10:32AM |
| 3 | THE WITNESS: Continue. | 10:32AM |
| 4 | BY MS. S. MILLER: (CONTINUING) | 10:32AM |
| 5 | Q. Yes, please. | 10:32AM |
| 6 | A. Defendant's statement. "I have to go with the yeller | 10:32AM |
| 7 | one; two, a $22,500 wire transfer on May 29, 2014, from Bank | 10:32AM |
| 8 | of Hawaii account ending in 9134 to EJS to purchase the | 10:32AM |
| 9 | aircraft and; three, a February 13th, to 2015 e-mail | 10:33AM |
| 10 | transmission between the defendant and Hansen employee, Eric | 10:33AM |
| 11 | J. Seacrest..." and there is initials, "including defendant's | 10:33AM |
| 12 | statement, I'm looking at May or June to have a sign fest | 10:33AM |
| 13 | concerning the restricted aerial survey certificates." | 10:33AM |
| 14 | Q. Thank you. Now, I'd like to show you what's been | 10:33AM |
| 15 | previously admitted as G-0158, please. | 10:33AM |
| 16 | THE COURT: G-51 -- | 10:33AM |
| 17 | MS. S. MILLER: 158, please. | 10:33AM |
| 18 | THE COURT: G-158. | 10:33AM |
| 19 | MS. S. MILLER: Yes. | 10:33AM |
| 20 | THE COURT: Okay. And that's already been | 10:33AM |
| 21 | admitted? | 10:33AM |
| 22 | MS. S. MILLER: Yes, Your Honor. | 10:33AM |
| 23 | THE COURT: All right. Very well. Yes? | 10:33AM |
| 24 | MS. MCCONWELL: I don't have it. | 10:33AM |
| 25 | THE COURT: Hold on. | 10:33AM |

*Direct - Khamvongsa*

|     |                                                                  |         |
|-----|------------------------------------------------------------------|---------|
| 1   | MS. MCCONWELL:  If Carmen could check.                          | 10:33AM |
| 2   | THE COURT:  Oh, you don't have it down as                       | 10:33AM |
| 3   | admitted?                                                        | 10:33AM |
| 4   | MS. MCCONWELL:  No, ma'am.                                       | 10:33AM |
| 5   | THE COURT:  We'll verify.  Hold on.                             | 10:34AM |
| 6   | (Pause.)                                                        | 10:34AM |
| 7   | THE COURT:  We don't have that as admitted,                     | 10:34AM |
| 8   | Counsel, we don't have that either.                             | 10:34AM |
| 9   | MS. S. MILLER:  Sorry, Your Honor.  That may have               | 10:34AM |
| 10  | been a duplicate.  Let me grab the one that has been admitted.  | 10:34AM |
| 11  | Yes, sorry about that, it's Exhibit 422.                        | 10:34AM |
| 12  | THE COURT:  Let me know, Carmen.  Ms. McConwell,                | 10:34AM |
| 13  | you want to check your 422?                                     | 10:35AM |
| 14  | MS. MCCONWELL:  Yes, I have that.                               | 10:35AM |
| 15  | THE COURT:  You have that?  Okay.                              | 10:35AM |
| 16  | THE CLERK:  Yes.                                                | 10:35AM |
| 17  | THE COURT:  Okay, Carmen said okay.  All right,                | 10:35AM |
| 18  | that's good.                                                    | 10:35AM |
| 19  | MS. S. MILLER:  Great.                                          | 10:35AM |
| 20  | THE COURT:  It's been admitted.                                | 10:35AM |
| 21  | MS. S. MILLER:  Thank you, Your Honor, and Ms.                 | 10:35AM |
| 22  | Santos and Ms. McConwell.                                       | 10:35AM |
| 23  | BY MS. S. MILLER: (CONTINUING)                                 | 10:35AM |
| 24  | Q.   So -- and could we publish to the jury, please?           | 10:35AM |
| 25  | THE COURT:  And could you, please, make that                    | 10:35AM |

*Direct - Khamvongsa*

1   larger too, Mr. Leon Guerrero, or whoever is doing it.          10:35AM

2   BY MS. S. MILLER: (CONTINUING)                                  10:35AM

3       Q.   Special Agent Khamvongsa, did you review this         10:35AM

4   document in your analysis of the investigation?                10:35AM

5       A.   I have.                                                10:35AM

6       Q.   Could you please tell the jury what you discovered    10:35AM

7   with respect -- if anything, in this document with respect to  10:35AM

8   Mr. Crowe's role in the bribe?                                  10:35AM

9              MR. MARTIN:  Your Honor, I object to the             10:35AM

10  characterization of the word *bribe*.  She can ask him what he 10:35AM

11  discovered, but that's improper.                               10:36AM

12             THE COURT:  All right.  Court will sustain the       10:36AM

13  objection.                                                     10:36AM

14             MS. S. MILLER:  Yes, Your Honor.                     10:36AM

15  BY MS. S. MILLER: (CONTINUING)                                 10:36AM

16      Q.   Could you please describe what you discovered and how 10:36AM

17  it related to your investigation within this e-mail?           10:36AM

18             MR. MARTIN:  And I would object to him              10:36AM

19  interpreting the e-mail.  He can read a particular portion of  10:36AM

20  it, Your Honor, but an interpretation is speculation.          10:36AM

21             THE COURT:  All right.  Court will sustain the       10:36AM

22  objection.  You want to rephrase the question?                 10:36AM

23             MS. S. MILLER:  Yes, Your Honor.                     10:36AM

24  BY MS. S. MILLER: (CONTINUING)                                 10:36AM

25      Q.   Could we please go to, I believe it's the third page  10:36AM

*Direct - Khamvongsa*

```
 1   of this document.                                          10:36AM

 2               (Discussion with clerk.)                       10:36AM

 3               MS. S. MILLER:  I'm sorry, I think it's actually 10:36AM

 4   the second page.                                           10:36AM

 5               THE COURT:  Jurors, if you have any problem     10:36AM

 6   seeing the print, let me know.  Just raise your hand, okay?  I 10:36AM

 7   mean, am I the only one that has a problem?  Am I only one 10:37AM

 8   that has a problem?  Because if I am... I still count a little 10:37AM

 9   bit, but I want to see if anybody else has a problem.  Yes, if 10:37AM

10   you do, can you raise your hand.  Like the small print.  I 10:37AM

11   think that's like .003 or something.  Anybody have -- I see 10:37AM

12   one person, at least.  Okay.  Okay.  The rest of you must have 10:37AM

13   good eyes.  Sharp eyes.  All right.                        10:37AM

14   BY MS. S. MILLER: (CONTINUING)                             10:37AM

15       Q.   So could you please read the first e-mail, starting 10:37AM

16   from Tim Cislo to Rufus Crowe here, please, Special Agent   10:37AM

17   Khamvongsa?                                                10:37AM

18       A.   From Tim Cislo sent Thursday, May 15, 2014, 4:53 p.m. 10:37AM

19   to Rufus Crowe subject re Cessna 206.  "Hey, Rufus, you like T 10:37AM

20   carts?  Taylorcraft BC12D, 22,500, light sport aircraft for 10:37AM

21   sale."                                                     10:37AM

22       Q.   Thank you.  And then if we go to page 1, please.  10:37AM

23               THE COURT:  And this is the same exhibit?       10:38AM

24               MS. S. MILLER:  Same exhibit, yes, Your Honor.  10:38AM

25   It goes in reverse chronological order.                    10:38AM
```

*Direct - Khamvongsa*

```
 1              THE COURT:  Okay.                          10:38AM
 2    BY MS. S. MILLER: (CONTINUING)                       10:38AM
 3        Q.   Could you just read the bottom sentence of this part  10:38AM
 4    we have zoomed in, please?  No problem.  First, could you tell  10:38AM
 5    the jury who this e-mail is from?                    10:38AM
 6        A.   Rufus Crowe wrote.                          10:38AM
 7        Q.   And what was his e-mail address, please?   10:38AM
 8        A.   Rufus@hansenhelicopters.com.               10:38AM
 9        Q.   And then jut the bottom sentence could you read that  10:38AM
10    please?                                              10:38AM
11        A.   "You need to show me the one you want and give me an  10:38AM
12    address where you want it shipped."                  10:38AM
13        Q.   Can you please tell the jury how that statement  10:38AM
14    informed your analysis with respect to Crowe's role based on  10:38AM
15    your investigation?                                  10:38AM
16        A.   Crowe helped facilitate --                 10:38AM
17              MR. MARTIN:  Well, Your Honor, I object to him  10:39AM
18    saying what -- how he helped.  That's not responsive and it's  10:39AM
19    speculation.                                         10:39AM
20              THE COURT:  All right.  The Court will sustain  10:39AM
21    the objection.                                       10:39AM
22    BY MS. S. MILLER: (CONTINUING)                       10:39AM
23        Q.   Did this particular communication inform your  10:39AM
24    investigation?                                       10:39AM
25        A.   This supports the plea agreement, that I just read  10:39AM
```

*Direct - Khamvongsa*

1   earlier.                                                    10:39AM

2       Q.   How?                                               10:39AM

3       A.   This is a direct communication between Crowe and   10:39AM

4   Cislo that further supports the selection of the Taylorcraft 10:39AM

5   airplane.                                                   10:39AM

6               (Pause.)                                        10:40AM

7               MS. S. MILLER:  Could I have just one second,   10:40AM

8   Your Honor?  Check one thing.                               10:40AM

9               THE COURT:  Sure.  Mm-hmm.                       10:40AM

10  BY MS. S. MILLER: (CONTINUING)                              10:40AM

11      Q.   So Special Agent Khamvongsa, can you then read the 10:40AM

12  e-mail going up from the middle of the page -- yes, basically 10:40AM

13  the top half of this page?                                  10:40AM

14              THE COURT:  What's the cite on this?            10:40AM

15              MS. S. MILLER:  Sure.  422-1 and actually just  10:40AM

16  starting from -- could you zoom in, Mr. Leon Guerrero, from 10:40AM

17  which one of them Taylorcrafts did you pick out and above,  10:40AM

18  please?                                                     10:40AM

19  BY MS. S. MILLER: (CONTINUING)                              10:40AM

20      Q.   So starting at the bottom, could you please read this 10:40AM

21  e-mail chain going from the bottom to the top, Special Agent 10:41AM

22  Khamvongsa?                                                 10:41AM

23      A.   From Tim Cislo, mailed to cislot002@gmail.com, sent 10:41AM

24  Wednesday May 21, 2014, 1:44 p.m. to Rufus Crowe, subject re 10:41AM

25  Cessna 206.  "Which one of them Taylorcrafts did you pick   10:41AM

1   out?"                                                                   10:41AM

2          On Wednesday, May 21, 2014, at 11:11 a.m., Rufus               10:41AM

3   Crowe, rufus@hansenhelicopters.com, wrote "I can't decide.            10:41AM

4   Let me know which one."                                              10:41AM

5          From Tim Cislo mailed to cislot002@gmail.com sent             10:41AM

6   Thursday May 22, 2014, 4:35 p.m. to Rufus Crowe subject              10:41AM

7   regarding Cessna 206.  "Tough decision, that big old round           10:41AM

8   wheel on the blue one is way cool, real old-school.  Bitchin'        10:42AM

9   even.  The yeller one got an A65 with the spare A65 as part of       10:42AM

10  the deal.  Makes more sense.  I'd have to go with the yeller         10:42AM

11  one."                                                                10:42AM

12     Q.   Thank you.  And if we could take to page 4 of this           10:42AM

13  document, please.  So 422-4.  If we could zoom in on the top         10:42AM

14  half of this page, please.                                           10:42AM

15         Could you please read for the jury the middle e-mail,         10:42AM

16  which is May 14th at 6:58 a.m., please?                              10:42AM

17     A.   On Wednesday May 14, 2014, at 6:58 a.m., Tim Cislo,          10:42AM

18  cislot002@gmail.com wrote "ai sus."                                  10:42AM

19         On May 13, 2014, 8:02 p.m., Rufus Crowe,                      10:42AM

20  rufus@hansenhelicopters.com wrote "no, but you pick one out         10:43AM

21  and I'll have John buy it for you."                                  10:43AM

22         From Tim Cislo mailed to cislot002@gmail.com.                 10:43AM

23     Q.   You can actually stop there.  Thank you, Special            10:43AM

24  Agent Khamvongsa.  How did this set of e-mails on this page         10:43AM

25  inform your investigation?                                           10:43AM

```
 1        A.   This e-mail further supports the plea agreement that          10:43AM

 2   Crowe helped -- helped negotiate the sales on behalf of Jon             10:43AM

 3   Walker or negotiate the purchase of other aircraft.                     10:43AM

 4             MR. MARTIN:  Your Honor, I'm going to object to               10:43AM

 5   him interpreting e-mails, Your Honor.  They say what they say.          10:43AM

 6   The jury is to decide.  This is an ultimate conclusion.                 10:43AM

 7             MS. S. MILLER:  May I respond, Your Honor?                    10:43AM

 8             MR. MARTIN:  Pure speculation.                                10:43AM

 9             THE COURT:  Hold on.  Let me hear the objection.              10:43AM

10   You don't have -- repeat it.                                           10:43AM

11             MR. MARTIN:  He is interpreting an e-mail, Your              10:43AM

12   Honor.  He can read the e-mail but he cannot interpret what it         10:43AM

13   means or what it supports.  That's for the jury to decide.            10:44AM

14   This is speculation.                                                   10:44AM

15             THE COURT:  All right.  Any objections from Ms.             10:44AM

16   McConwell?                                                             10:44AM

17             MS. MCCONWELL:  Yes, ma'am.  Hansen joins.                  10:44AM

18             THE COURT:  Yes, your response?                             10:44AM

19             MS. S. MILLER:  My response, Your Honor, is under          10:44AM

20   701, he's providing his opinion.  If he can't testify as to          10:44AM

21   his opinion throughout his investigation, what is he going to        10:44AM

22   testify to?  I'm asking how this --                                   10:44AM

23             THE COURT:  He can testify as to his                       10:44AM

24   investigation but...                                                   10:44AM

25             MS. S. MILLER:  Right.  How did it inform his             10:44AM
```

```
 1   investigation is what I asked.  How did it inform his      10:44AM
 2   investigation.                                              10:44AM
 3            THE COURT:  Okay, I have not ever heard that      10:44AM
 4   question, but okay the Court will sustain the objection.    10:44AM
 5   There's a way to rephrase that.  So the Court will sustain the 10:44AM
 6   objection.                                                  10:44AM
 7   BY MS. S. MILLER:  (CONTINUING)                             10:44AM
 8       Q.   Special Agent Khamvongsa, was there anything in this 10:44AM
 9   e-mail from which you drew conclusions as a criminal        10:44AM
10   investigator investigating wire fraud and money laundering in 10:44AM
11   this case?                                                  10:44AM
12            MR. MARTIN:  Which I object, Your Honor.  His      10:44AM
13   conclusions are speculation.                                10:44AM
14            MS. S. MILLER:  It's his lay opinion.             10:45AM
15            THE COURT:  He's going to give a lay opinion on   10:45AM
16   his investigation?                                          10:45AM
17            MS. S. MILLER:  Right.                            10:45AM
18            THE COURT:  That's what you want him to do?       10:45AM
19            MS. S. MILLER:  Yes --                            10:45AM
20            MR. MARTIN:  He testified to --                   10:45AM
21            THE COURT:  Go ahead.                             10:45AM
22            MR. MARTIN:  He can testify I did this, this and  10:45AM
23   this.  He can't testify to an ultimate conclusion.  He can 10:45AM
24   testify I interviewed people, I picked up documents, I did  10:45AM
25   this but he can't testify based on that, we have a crime.  And 10:45AM
```

*Direct - Khamvongsa*

1    that's what she's trying to get him to do and I object.    10:45AM

2                    THE COURT:  Yeah, he's -- it's not that -- yeah,    10:45AM

3    he's not qualified as an expert.  You haven't qualified him as    10:45AM

4    an expert.    10:45AM

5                    MS. S. MILLER:  Right, but --    10:45AM

6                    THE COURT:  Okay.  But you're asking to give --    10:45AM

7    he conducted an investigation so what did you do, what did you    10:45AM

8    find?    10:45AM

9                    MS. S. MILLER:  Right, what you found.  Exactly.    10:45AM

10                   THE COURT:  What did you find, that's it.  He    10:45AM

11   could say what he found after he investigated.    10:45AM

12                   MR. MARTIN:  That's not what I'm objecting to.    10:45AM

13                   THE COURT:  I'm sorry?  That's not what you're    10:45AM

14   objecting to?    10:45AM

15                   MR. MARTIN:  Right.  I'm objecting to him saying    10:45AM

16   based upon that, this proves X.    10:45AM

17                   THE COURT:  Okay.  So I think just the    10:45AM

18   rephrasing, why don't you rephrase.    10:46AM

19                   MS. S. MILLER:  Yes, Your Honor.    10:46AM

20                   THE COURT:  Because he's -- he's a professional    10:46AM

21   who had an investigation, what -- based on his investigation,    10:46AM

22   what did he find?  What did he find?    10:46AM

23                   MS. S. MILLER:  Thank you, Your Honor.    10:46AM

24   BY MS. S. MILLER: (CONTINUING)    10:46AM

25       Q.   Special Agent --    10:46AM

*Direct - Khamvongsa*

```
 1              THE COURT:  Simple.  You guys can keep it simple.    10:46AM
 2   BY MS. S. MILLER: (CONTINUING)                                  10:46AM
 3      Q.   Special Agent Khamvongsa, with respect to this e-mail   10:46AM
 4   what did you find?                                              10:46AM
 5      A.   This e-mail is -- involves Tim Cislo, Rufus Crowe,      10:46AM
 6   having discussion.  And in it, it says "you pick one out and    10:46AM
 7   I'll have John buy it for you," which further supports the      10:46AM
 8   plea agreement --                                               10:46AM
 9              MR. MARTIN:  I object to what it supports, Your       10:46AM
10   Honor.  It says what it says.  There is no support in there.    10:46AM
11   That's a conclusion.                                            10:46AM
12              THE COURT:  Okay, so --                              10:46AM
13              MS. S. MILLER:  We could move on, Your Honor.        10:46AM
14              THE COURT:  So the Court will sustain that part      10:46AM
15   of the objection.  I mean part -- in terms of the last part of  10:46AM
16   his answer.                                                     10:46AM
17   BY MS. S. MILLER: (CONTINUING)                                  10:46AM
18      Q.   Sure.  If we could --                                  10:46AM
19              THE COURT:  There is probably a different way to     10:46AM
20   rephrase this.                                                  10:46AM
21   BY MS. S. MILLER: (CONTINUING)                                  10:46AM
22      Q.   We'll move on, Your Honor.  If we could turn to        10:46AM
23   Exhibit 742, which has already been admitted, please?           10:47AM
24              THE COURT:  Okay, 742.  Yes?                         10:47AM
25              MS. MCCONWELL:  Carmen could check, I do not have    10:47AM
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | that 742 is admitted. | 10:47AM |
| 2 | THE COURT:  Okay.  Let's verify.  Counsel, all | 10:47AM |
| 3 | the Counsel verify.  And I'll have Carmen verify. | 10:47AM |
| 4 | THE CLERK:  One moment, Your Honor. | 10:47AM |
| 5 | THE COURT:  I'm sorry? | 10:47AM |
| 6 | THE CLERK:  One moment. | 10:47AM |
| 7 | THE COURT:  Okay, hold on one moment. | 10:47AM |
| 8 | (Pause.) | 10:47AM |
| 9 | THE COURT:  It's not admitted, Counsel?  Okay, | 10:48AM |
| 10 | it's not admitted.  Did you want to show it? | 10:48AM |
| 11 | MS. S. MILLER:  Yes, please. | 10:48AM |
| 12 | THE COURT:  Or introduce it? | 10:48AM |
| 13 | MS. S. MILLER:  Yes, please. | 10:48AM |
| 14 | THE COURT:  So don't publish this. | 10:48AM |
| 15 | BY MS. S. MILLER:  (CONTINUING) | 10:48AM |
| 16 | Q.   Can you see the document, Special Agent Khamvongsa? | 10:48AM |
| 17 | A.   Yes. | 10:48AM |
| 18 | Q.   Before we zoom in on it actually, can we go to the | 10:48AM |
| 19 | bottom. | 10:48AM |
| 20 | Do you know how it was obtained, Special Agent | 10:48AM |
| 21 | Khamvongsa? | 10:48AM |
| 22 | A.   Yes, this was obtained from the FBI search warrant. | 10:48AM |
| 23 | This e-mail comes from the electronic media seized from the | 10:48AM |
| 24 | FBI search warrant in October of 2016. | 10:48AM |
| 25 | MS. S. MILLER:  Thank you.  At this time, Your | 10:48AM |

*Direct - Khamvongsa*

1    Honor, I move Exhibit 742 into evidence.                          10:48AM

2              MR. MARTIN:  May I voir dire for an objection?          10:48AM

3              THE COURT:  Yes, you may, Mr. Martin.  Go ahead.        10:48AM

4                                                                       10:48AM

5                            **VOIR DIRE**                              10:49AM

6    BY MR. MARTIN: (CONTINUING)                                       10:49AM

7        Q.    Agent Khamvongsa?                                       10:49AM

8        A.    Good morning, Mr. Martin.                               10:49AM

9        Q.    Did I say that right, sir?                              10:49AM

10       A.    Khamvongsa.                                             10:49AM

11       Q.    Khamvongsa.  Thank you?                                 10:49AM

12       A.    Thank you, sir.                                         10:49AM

13       Q.    Good morning to you.                                    10:49AM

14       A.    Good morning.                                           10:49AM

15       Q.    Is Mr. Walker a recipient or a carbon on this e-mail,   10:49AM

16   sir?                                                              10:49AM

17       A.    He's not on this e-mail.                                10:49AM

18             MR. MARTIN:  I object on the basis of hearsay,          10:49AM

19   Your Honor.                                                       10:49AM

20             THE COURT:  Okay, and Ms. McConwell, do you have        10:49AM

21   any objections?                                                   10:49AM

22             MS. MCCONWELL:  Hansen Helicopters joins, Your          10:49AM

23   Honor.                                                            10:49AM

24             THE COURT:  Okay.  And the citation?                    10:49AM

25             MS. S. MILLER:  801(d)(2)(E) as in echo.                10:49AM

*Direct – Khamvongsa*

```
 1              THE COURT:  Okay.  The Court will overrule the      10:49AM
 2   objection and admit the document.  And yes, you may publish,   10:49AM
 3   if you'd like.                                                 10:49AM
 4   (Exhibit 742 admitted.)                                        10:48AM
 5              MS. S. MILLER:  Thank you, Your Honor.  I would      10:49AM
 6   like to publish it.                                            10:49AM
 7   BY MS. S. MILLER:  (CONTINUING)                                10:49AM
 8      Q.   So if we could zoom in on the top, please, Mr. Leon    10:49AM
 9   Guerrero.  Thank you.                                          10:49AM
10              Special Agent Khamvongsa, can you please read this  10:49AM
11   e-mail to jury to the e-mail, starting with the very top?      10:49AM
12      A.   "Tim's plane, from Rufus Crowe,                        10:49AM
13   rufus@hansenhelicopters.com.  To                               10:50AM
14   marvinreed@hansenhelicopters.com.  Date, Thursday, 26 June,    10:50AM
15   2014, at 17:55:34, 0400.  Morning Marvious, could you please   10:50AM
16   forward me the document that Tim's going to need to get his    10:50AM
17   plane in Hawaii?  Do you know when it's going to arrive?       10:50AM
18   You're da bomb.  Rufus."                                       10:50AM
19      Q.   Thank you, Special Agent Khamvongsa.  Can you please   10:50AM
20   tell jury what, if anything, you found based on this e-mail?   10:50AM
21      A.   This e-mail is from Rufus to Marvin Reed and it's      10:50AM
22   discussing the need to forward Rufus --                        10:50AM
23              MR. MARTIN:  Your Honor, I object to what -- he     10:50AM
24   can read what it says.  He cannot interpret it.                10:50AM
25              THE COURT:  Sustained.                              10:50AM
```

*Direct - Khamvongsa*

```
 1              THE WITNESS:  It says, "Could you please forward          10:50AM

 2   the document --"                                                    10:50AM

 3              MS. S. MILLER:  Sustained.  Sustained.                    10:51AM

 4              THE COURT:  You could read it.                            10:51AM

 5              MS. S. MILLER:  He just did.                              10:51AM

 6              MS. MCCONWELL:  He already has.                           10:51AM

 7              THE COURT:  Did you want him to read it again?            10:51AM

 8   Okay.  Asked and answered.  Go ahead next question.  All            10:51AM

 9   right.  Next question.                                              10:51AM

10   BY MS. S. MILLER:  (CONTINUING)                                     10:51AM

11      Q.   Sure.  I'd now like to direct your attention to            10:51AM

12   Exhibit 551, which has been admitted.  And if we could zoom in     10:51AM

13   on the actual text of the letter, please.                          10:51AM

14              Special Agent Khamvongsa, can you please read the        10:51AM

15   first full paragraph for the jury of this letter?                  10:51AM

16      A.   "Dear John --"                                              10:51AM

17      Q.   Yes, thank you.  Sorry.                                     10:51AM

18      A.   "Dear John, it is my understanding of our agreement         10:51AM

19   as follows:  You are purchasing all of Trafficopters, Inc.,        10:52AM

20   369 helicopter assets and parts, as well as two trucks and two     10:52AM

21   trailers as defined in our invoice.  This includes anything        10:52AM

22   used for or on the Hughes 369500 helicopter, all for               10:52AM

23   $135,000."                                                         10:52AM

24      Q.   Special Agent Khamvongsa, who is this letter from?          10:52AM

25      A.   Randy Rogers of Trafficopters.                              10:52AM
```

*Direct - Khamvongsa*

1    Q.   Thank you.  Is he a defendant in this case?    10:52AM

2    A.   Yes.    10:52AM

3    Q.   Okay.  And can you please read for the jury the last    10:52AM

4  paragraph of this letter?    10:52AM

5    A.   "I feel it will be better to do everything through    10:52AM

6  Vanguard Aviation since it has the business license here in    10:52AM

7  Valdosta and Vanguard has the lease with the airport.  No    10:52AM

8  sense stirring any pots.  You agree?  That way when you do    10:52AM

9  take all the assets of Trafficopters, Inc., I can close it    10:52AM

10  quietly without any problems."    10:52AM

11    Q.   Thank you.  And if we zoom out of the document.  Can    10:52AM

12  you please read who this letter is addressed to in the    10:52AM

13  address?    10:52AM

14    A.   Mr. Jon Walker, Hansen Helicopters via e-mail    10:53AM

15  jwalker@guam.net.    10:53AM

16    Q.   Thank you.  I'd now like to show you what's been    10:53AM

17  previously admitted as G-761.    10:53AM

18         THE COURT:  Yes?    10:53AM

19         MS. S. MILLER:  Have you seen this document?    10:53AM

20         THE COURT:  Hold on.  Hold on.    10:53AM

21         MS. MCCONWELL:  This is only admitted as to    10:53AM

22  Hansen Helicopters, Your Honor, not to Mr. Walker and I would    10:53AM

23  object to relevance for any line along -- with this exhibit    10:53AM

24  because --    10:53AM

25         THE COURT:  With this witness?    10:53AM

*Direct - Khamvongsa*

1    MS. MCCONWELL:  With this witness because this
2    witness is testifying about counts that Hansen Helicopters is
3    not charged in.
4           THE COURT:  Okay, so -- so I see what you're
5    saying, so this was -- this exhibit was only admitted against
6    Hansen and not against Mr. Walker.
7           MS. MCCONWELL:  That's correct.
8           THE COURT:  So it's irrelevant to both?
9           MS. MCCONWELL:  That's correct.
10          MS. S. MILLER:  My response, Your Honor.
11          THE COURT:  Yes.
12          MS. S. MILLER:  He was involved in the entirety
13   of this investigation.  He has knowledge and certainly some of
14   the manner and means that he -- that are included in other
15   counts relate to his investigation.  So he also testified that
16   he reviewed all of the evidence, including filings.
17          THE COURT:  But that's not the object -- you
18   heard the objection.  The objection is irrelevant.  It's just
19   not relevant to Hansen Helicopters.
20          MS. S. MILLER:  It's also relevant because it
21   describes the relationship and to the money laundering wire
22   fraud counts.  The relationship is relevant to those --
23          THE COURT:  I'm sorry.  Wait.  Wait.  Wait.  Hold
24   back.  It's not relevant to the Hansen -- let's think about
25   this.  It's not relevant to the Hansen Helicopters.

*Direct - Khamvongsa*

```
 1              MR. MARTIN:  Could we take the document down,        10:54AM
 2    Your Honor.                                                    10:54AM
 3              THE COURT:  I don't think it's published.  Is it?    10:54AM
 4              MS. S. MILLER:  It is, but it's been admitted        10:54AM
 5    already.                                                       10:54AM
 6              MR. MARTIN:  But it's not admitted against Jon       10:54AM
 7    Walker.                                                        10:55AM
 8              THE COURT:  It's not admitted against Jon Walker     10:55AM
 9    and right now, they're saying it should not be used against    10:55AM
10    Hansen Helicopters.  So the objection is, it's not relevant to 10:55AM
11    anything to do with Hansen Helicopters.  If that's true, then  10:55AM
12    Mr. Khamvongsa has no business discussing this exhibit.        10:55AM
13              MS. S. MILLER:  So one of the counts that he has     10:55AM
14    testified to is conspiracy.  So --                             10:55AM
15              THE COURT:  So just tell me the count number, you    10:55AM
16    don't have to tell me, so Count 1.                             10:55AM
17              MS. S. MILLER:  99.  Count 99 is conspiracy.         10:55AM
18              THE COURT:  Just let me look at Count 99.            10:55AM
19              MS. S. MILLER:  And it's relevant to that, Your      10:55AM
20    Honor.                                                         10:55AM
21              THE COURT:  All right, let me look at 99.  And       10:55AM
22    everybody else look at 99 over there on that side.  99.        10:55AM
23    Page 33.  Okay, let me look at this.  Okay.  So again, so 99   10:55AM
24    does not include, does not include Hansen Helicopters.  Number 10:55AM
25    one.  And this document is not -- was not admitted against     10:56AM
```

1  Walker.  So the Court will sustain the objection.  Unless you          10:56AM

2  have another.          10:56AM

3              MS. S. MILLER:  I would ask Your Honor to          10:56AM

4  reconsider that ruling because it does show evidence of the          10:56AM

5  conspiracy described in Count 99.          10:56AM

6              THE COURT:  But Counsel, but Counsel, no.  The          10:56AM

7  Court will sustain the objection.  Based on -- I don't know if          10:56AM

8  you understand my ruling, but based on the fact that that          10:56AM

9  exhibit is only to be used against Hansen Helicopters, but not          10:56AM

10  against Mr. Walker.          10:56AM

11              MS. S. MILLER:  Right.  And that's what I'm          10:56AM

12  asking the Court to reconsider is that should be admitted also          10:56AM

13  --          10:56AM

14              THE COURT:  Oh, I see, against Walker now?          10:56AM

15              MS. S. MILLER:  Right, because -- because of 99.          10:56AM

16              THE COURT:  Hold on a second.  So Mr. Martin?          10:56AM

17  Okay.  So now, she's independently --          10:56AM

18              MR. MARTIN:  Well, I need time to review the          10:57AM

19  document again, Your Honor.  I'll have go back to my notes as          10:57AM

20  to why we kept it out.  But I knew it was out so I objected to          10:57AM

21  it.  So...          10:57AM

22              THE COURT:  You need ten minutes?          10:57AM

23              MR. MARTIN:  That'd be great.          10:57AM

24              THE COURT:  Ten minutes, ladies and gentlemen.          10:57AM

25  Let's go, get up and exercise again.  Keep an open mind.  Do          10:57AM

Case 1:18-cr-00010    Document 1917    Filed 03/09/23    Page 50 of 1311

1    not form or express any opinion on this case.  And you know          10:57AM

2    this is important, I want you to know, it's really because           10:57AM

3    these are legal issues, I'm required under the law to just           10:57AM

4    speak to the lawyers and it has to stay out of your presence         10:57AM

5    and because you guys are fact-finders.  Not legal finders.           10:57AM

6    Okay.  Thank you.  Enjoy your break.                                 10:57AM

7                    (Jury out at 10:57 a.m.)                            10:57AM

8                    THE COURT:  Maybe we could have you step out.       10:57AM

9                    THE WITNESS:  Yes, ma'am.                            10:57AM

10                   THE COURT:  Thank you.                               10:57AM

11                   MS. M. MILLER:  Are we taking a brief recess,        10:58AM

12   Your Honor?  Are the attorneys, too, Your Honor?                     10:58AM

13                   THE COURT:  I'll let you, hold on a minute after     10:58AM

14   Mr. Khamvongsa goes out.  The prosecutor is asking that this         10:58AM

15   exhibit, that exhibit was -- 761, right?  761.                       10:58AM

16                   MS. S. MILLER:  Yes, Your Honor.                     10:58AM

17                   THE COURT:  That has already been admitted as        10:58AM

18   against Hansen.  But now she's going to try to -- I assume           10:58AM

19   you're going to try to set -- does he -- you're going to be          10:58AM

20   able to lay a foundation with this witness?                          10:58AM

21                   MS. S. MILLER:  Right.  He's reviewed a number of    10:58AM

22   declarations that are under -- I think he testified earlier          10:58AM

23   that he reviewed a lot of third-party information where              10:58AM

24   they're swearing under oath.                                         10:58AM

25                   THE COURT:  Can you put 761 back up, please.         10:58AM

*Direct - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | MS. S. MILLER:  Sure. | 10:58AM |
| 2 | THE COURT:  It's not very long. | 10:58AM |
| 3 | Oh, declaration of Crowe, let me see.  Okay, | 10:58AM |
| 4 | let's go to the next page.  There is four pages.  Okay, go | 10:59AM |
| 5 | ahead.  So basically he's discussing the operations of Hansen | 10:59AM |
| 6 | Helicopters; is that right? | 10:59AM |
| 7 | MS. S. MILLER:  There are some of that, Your | 10:59AM |
| 8 | Honor.  It also in paragraph 14 specifically mentions the | 10:59AM |
| 9 | relationship between the co-conspirators and Mr. Walker, which | 10:59AM |
| 10 | is relevant to conspiracy. | 10:59AM |
| 11 | THE COURT:  So are you saying that on | 10:59AM |
| 12 | paragraph 14, is what you're really trying to get? | 10:59AM |
| 13 | MS. S. MILLER:  Well there is a number of | 11:00AM |
| 14 | different paragraphs, but that's probably the most important | 11:00AM |
| 15 | one. | 11:00AM |
| 16 | THE COURT:  Well, which ones are you trying to | 11:00AM |
| 17 | get?  Let's focus on that. | 11:00AM |
| 18 | MS. S. MILLER:  Okay, so paragraph -- | 11:00AM |
| 19 | THE COURT:  Because maybe some of it is | 11:00AM |
| 20 | irrelevant to Walker and some of it is relevant to Walker. | 11:00AM |
| 21 | Mr. Walker.  Go ahead.  So which ones are you looking at? | 11:00AM |
| 22 | MS. S. MILLER:  So I would -- these are all | 11:00AM |
| 23 | relevant to the agreement and sort of relationship between the | 11:00AM |
| 24 | co-conspirators, including Walker.  So paragraph 2. | 11:00AM |
| 25 | THE COURT:  Okay, so let me go up to paragraph 2, | 11:00AM |

1    please.  Two.  Okay, one more page.  Okay.  Next one.                    11:00AM

2              MS. S. MILLER:  Paragraph 5.                                   11:00AM

3              THE COURT:  All right.  Let's go to five, next                 11:00AM

4    page.  Okay.  Next one?                                                  11:00AM

5              MS. S. MILLER:  6, right there.                                11:00AM

6              THE COURT:  Okay.  Next?                                       11:00AM

7              MS. S. MILLER:  7.                                             11:00AM

8              THE COURT:  Okay.                                              11:00AM

9              MS. S. MILLER:  9.                                             11:00AM

10             THE COURT:  Okay.                                              11:01AM

11             MS. S. MILLER:  Which, I think, continues on to                11:01AM

12   the next page, please.                                                  11:01AM

13             THE COURT:  Okay.                                              11:01AM

14             MS. S. MILLER:  10.                                            11:01AM

15             THE COURT:  Okay.                                              11:01AM

16             MS. S. MILLER:  11.                                            11:01AM

17             THE COURT:  Okay.                                              11:01AM

18             MS. S. MILLER:  12.                                            11:01AM

19             THE COURT:  Let me look at 12, hold on.  Okay.                 11:01AM

20             MS. S. MILLER:  And then 14.                                   11:01AM

21             THE COURT:  Not 14.  I mean not 13, but 14?                    11:01AM

22             MS. S. MILLER:  Right.  Well, the end of 12 at                 11:01AM

23   the top and then 14, Your Honor.                                        11:01AM

24             THE COURT:  Okay.  14.                                         11:01AM

25             (Pause.)                                                       11:01AM

*Direct - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | THE COURT:  So 10, 11 -- 12 and 14? | 11:02AM |
| 2 | MS. S. MILLER:  2, 5, 6, 7, 9, 10, 11, 12, 14. | 11:02AM |
| 3 | THE COURT:  Right.  Okay. | 11:02AM |
| 4 | MS. S. MILLER:  I can do that again, if you'd | 11:02AM |
| 5 | like. | 11:02AM |
| 6 | THE COURT:  No, I got it. | 11:02AM |
| 7 | MS. S. MILLER:  Okay. | 11:02AM |
| 8 | THE COURT:  All right.  9 of 14 paragraphs.  All | 11:02AM |
| 9 | right.  And you're saying that -- you're trying to offer -- | 11:02AM |
| 10 | well, it's pretty much most of it.  As evidence of the | 11:02AM |
| 11 | conspiracy that in Count 99? | 11:02AM |
| 12 | MS. S. MILLER:  Right.  It explains the | 11:02AM |
| 13 | relationship among the co-conspirators that are alleged as | 11:02AM |
| 14 | co-conspirators in the conspiracy in Count 99, including | 11:02AM |
| 15 | Mr. Walker. | 11:02AM |
| 16 | THE COURT:  Okay. | 11:02AM |
| 17 | (Pause.) | 11:03AM |
| 18 | THE COURT:  Ready?  Go ahead. | 11:03AM |
| 19 | MR. MARTIN:  Yes, Your Honor. | 11:03AM |
| 20 | THE COURT:  Yes? | 11:03AM |
| 21 | MR. MARTIN:  First of all, so that the record is | 11:03AM |
| 22 | complete. | 11:03AM |
| 23 | THE COURT:  Okay, get on your mic.  Yup. | 11:03AM |
| 24 | MR. MARTIN:  First of all, so the record is | 11:03AM |
| 25 | complete, Your Honor, this is a legal pleading in this case | 11:03AM |

*Direct - Khamvongsa*

1   filed July 5, 2018, by Mr. Crowe.                          11:03AM

2           THE COURT:  Mr. Crowe's lawyer, lawyers filed on   11:03AM

3   his behalf, right?                                         11:03AM

4           MR. MARTIN:  Yeah.                                 11:03AM

5           THE COURT:  A declaration.                         11:03AM

6           MR. MARTIN:  Yeah.  Declaration by Mr. Lujan on    11:03AM

7   behalf of Mr. Crowe requesting that he be allowed, it's in 11:03AM

8   support of his motion to modify conditions of release.     11:03AM

9   Mr. Walker has nothing to do with it.  He didn't adopt it.  He  11:03AM

10  hasn't seen it.  He wasn't a party to it.  And it's -- it's 11:03AM

11  not co-conspirator hearsay because it's not -- it doesn't  11:04AM

12  further nor is it a statement in furtherance of the        11:04AM

13  conspiracy.  And it's not in the -- it's not in any capacity 11:04AM

14  for Mr. Walker because he doesn't -- he's not even a party to 11:04AM

15  it, Your Honor.  This is a legal document requesting the Court 11:04AM

16  to modify his conditions of bond and it has to be filed or I 11:04AM

17  assume it has to be filed.  I didn't represent Mr. Crowe and 11:04AM

18  it could be admissible absolutely against Mr. Crowe but not 11:04AM

19  against Mr. Walker.                                        11:04AM

20          THE COURT:  Yeah, I think he makes a good point.   11:04AM

21  I see what you're trying to do, but if it was a declaration in 11:04AM

22  support of a bail hearing to be released out of Guam, it's not 11:04AM

23  like -- like -- it's not as if Mr. Crowe was making a      11:04AM

24  statement to an investigator like a 302.  It's not as if   11:05AM

25  Mr. Crowe was, you know, caught on tape making his statements 11:05AM

```
1    in furtherance of a conspiracy.  So I'm inclined to sustain   11:05AM
2    the objection.                                                11:05AM
3              MS. S. MILLER:  May I respond, Your Honor?          11:05AM
4              THE COURT:  Yeah.  Go ahead.                        11:05AM
5              MS. S. MILLER:  So while I agree it's not           11:05AM
6    Mr. Walker's statement.                                       11:05AM
7              THE COURT:  That's not -- yeah, that's not the      11:05AM
8    point, but go ahead.                                          11:05AM
9              MS. S. MILLER:  Well, Mr. Kapp signed it.  He       11:05AM
10   swore under oath that these facts were true.  I'm sorry Crowe. 11:05AM
11   Did I -- Crowe.  So it is 801(d)(2)(E).  It's a co-conspirator 11:05AM
12   statement.  And it's in furtherance of the conspiracy as a    11:05AM
13   whole because this conspiracy is ongoing as Your Honor knows  11:05AM
14   and is allowed --                                             11:05AM
15             THE COURT:  I don't know that.  Don't say I know    11:05AM
16   that that's what you want to prove.                           11:05AM
17             MS. S. MILLER:  Right.  So it is a co-conspirator   11:05AM
18   statement because plenty of the facts in here show they're    11:05AM
19   still operating in this manner as of today.  Because the      11:05AM
20   conspiracy continues till today.                              11:05AM
21             THE COURT:  And so you are offering it under 801?   11:05AM
22   What? (d)(2)?  What?                                          11:06AM
23             MS. S. MILLER:  (d)(2)(E) as in echo.               11:06AM
24             THE COURT:  Got it.  "(E), was made by the          11:06AM
25   party's conspirator during and in furtherance of the         11:06AM
```

*Direct - Khamvongsa*

```
1   conspiracy.  The statement must be considered, but does not      11:06AM
2   establish -- but does not by itself establish a declarant's      11:06AM
3   authority under... the existence or scope of a relationship      11:06AM
4   under the existence or the conspiracy or participation" and      11:06AM
5   it's under (E)."  All right.  Mr. Martin.                        11:06AM
6             MR. MARTIN:  Your Honor, this is a statement for       11:06AM
7   modification of conditions of bond.  It is not a statement in    11:06AM
8   furtherance of the conspiracy.  It is a statement by Mr. Crowe   11:06AM
9   saying Mr. Lujan wants to modify my conditions of bond.          11:06AM
10  That's the purpose of it.  That's what it's for.  And for the    11:06AM
11  government to be able to use Mr. Crowe's legal pleading to let    11:06AM
12  him modify his conditions of release against Mr. Walker is       11:06AM
13  very inappropriate.  Let's just put it that way, I'll say.       11:07AM
14            MS. S. MILLER:  And may I respond again, Your          11:07AM
15  Honor?                                                           11:07AM
16            THE COURT:  Hold on.  Not yet.  Okay.  For the         11:07AM
17  record, Cann deposition has been docketed for all those that     11:07AM
18  need to go and --                                                11:07AM
19            MS. M. MILLER:  Thank you, Your Honor.                 11:07AM
20            THE COURT:  -- work.  My clerk's office has            11:07AM
21  docketed it.  Are you offering this for the truth of the         11:07AM
22  matter asserted?                                                 11:07AM
23            MS. S. MILLER:  I'm offering it as a                   11:07AM
24  co-conspirator statement so it's not hearsay at all.            11:07AM
25            THE COURT:  No, I know.  But -- okay, it's             11:07AM
```

```
1    non-hearsay but the question is, was this made in the         11:07AM
2    furtherance of the conspiracy?  Hold on.                       11:07AM
3            So generally, I'm just trying to think this            11:07AM
4    through.  I'm not saying you're right but I'm not saying       11:07AM
5    you're wrong, either.  I don't know.  I'm just thinking this   11:07AM
6    through.  Because I have not had somebody use a bail           11:07AM
7    declaration for a co-conspirator statement.  Generally, you    11:07AM
8    guys have other things for co-conspirator statements, i.e., a  11:07AM
9    302 or something else, a tape or something, but not to the     11:07AM
10   point of going into the magistrate judge and saying, release   11:07AM
11   me, release me, let me go for whatever purpose.                11:08AM
12           MR. MARTIN:  And we're not party to it at all,         11:08AM
13   Judge.                                                         11:08AM
14           THE COURT:  No, I don't think you have to be a         11:08AM
15   party to it but it's more like, was this made in furtherance   11:08AM
16   of a conspiracy?  And --                                       11:08AM
17           MS. S. MILLER:  My response, Your Honor, is that       11:08AM
18   the entire reason Mr. Kapp and Mr. Crowe were seeking          11:08AM
19   modifications of bail is so that they could operate the        11:08AM
20   business and continue their conspiracy, including, for         11:08AM
21   example, flying to the Philippines where they moved their      11:08AM
22   operation.                                                     11:08AM
23           THE COURT:  All right.  So you can say that's          11:08AM
24   your theory all you want.  The thing is, did the judge         11:08AM
25   believe you downstairs, because if the judge did, why did he  11:08AM
```

*Direct - Khamvongsa*

1    release him?                                                    11:08AM

2            MS. S. MILLER:  I'm not sure why that's relevant.       11:08AM

3            THE COURT:  Well, it is relevant because if             11:08AM

4    you're trying to say that your theory is, is that they did      11:08AM

5    this, did you guys argue that before the judge downstairs.      11:08AM

6            MS. S. MILLER:  We opposed every time they tried        11:08AM

7    to get their bail modified, yes.                                11:08AM

8            THE COURT:  All right.  All right.  So you did          11:08AM

9    that.  You argued that.  So that's good for you.                11:08AM

10           MS. M. MILLER:  And Judge Manibusan did deny Mr.        11:08AM

11   Kapp going to the Philippines, then he retired.  Then Judge     11:09AM

12   Bordallo heard it.  And Judge Bordallo, Your Honor, just as a   11:09AM

13   reminder, has recused himself from any decisions in this case. 11:09AM

14   We don't know why.  We never got any of the reasons why he      11:09AM

15   recused himself.  So I don't know that that means anything.     11:09AM

16   This is clearly an admission by Mr. Crowe.                      11:09AM

17           MR. MARTIN:  Well, you just said Mr. Kapp.  This        11:09AM

18   is Mr. Crowe.                                                   11:09AM

19           MS. M. MILLER:  No, my point is, Mr. Kapp               11:09AM

20   initially was the one trying to go to the Philippines all the   11:09AM

21   time.  And then Mr. Crowe wanted to go to the Philippines as    11:09AM

22   well.  And, Your Honor, until we got the records from the       11:09AM

23   Philippines , we didn't even know all the details we know now. 11:09AM

24           MR. MARTIN:  That's not relevant.                       11:09AM

25           MS. M. MILLER:  Of course it's relevant.                11:09AM

```
 1              THE COURT:  No, no, wait, wait, okay.  No, no,    11:09AM
 2    not necessarily.  Okay.  I'm talking about -- okay, you guys  11:09AM
 3    have a theory to the case.  The thing is, we have a statement  11:09AM
 4    by Crowe, forget Kapp for right now, we're talking about    11:09AM
 5    Crowe; correct?                                              11:10AM
 6              MS. M. MILLER:  Yes.                               11:10AM
 7              THE COURT:  I don't care about Kapp right now.     11:10AM
 8    This is Crowe's statement for purposes of a bail reduction.  11:10AM
 9    You saw Judge --                                             11:10AM
10              MS. M. MILLER:  No, no, no, no, this is his        11:10AM
11    statement for purposes of travel, I believe.  I don't think -- 11:10AM
12              THE COURT:  Okay, not bail reduction, but bail     11:10AM
13    modification.  It's bail modification.                       11:10AM
14              MS. M. MILLER:  To allow him to travel to the      11:10AM
15    Philippines, yes.                                            11:10AM
16              THE COURT:  Bail modification.  Okay, so he was    11:10AM
17    his -- okay, his pretrial release status, he wants to go to  11:10AM
18    the Philippines.  Did you guys make this argument before the  11:10AM
19    judge.  Which judge?                                         11:10AM
20              MR. MARTIN:  I wasn't a party to it so I don't     11:10AM
21    know, Your Honor.                                            11:10AM
22              MS. M. MILLER:  And we did not make this argument  11:10AM
23    that we're making in front of you in front of Judge Bordallo  11:10AM
24    because we did not have the records from the Philippines that  11:10AM
25    we do now.                                                   11:10AM
```

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Okay, so you did not know, you did | 11:10AM |
| 2 | not know that there was -- it was part of your theory that | 11:10AM |
| 3 | there was an ongoing conspiracy? | 11:10AM |
| 4 | MS. M. MILLER:  Correct.  We didn't get the | 11:10AM |
| 5 | records. | 11:10AM |
| 6 | THE COURT:  That's all I want to know. | 11:10AM |
| 7 | MS. M. MILLER:  Yes. | 11:10AM |
| 8 | THE COURT:  So that's my question.  But she just | 11:10AM |
| 9 | said, yeah, you did make that argument. | 11:10AM |
| 10 | MS. M. MILLER:  No, we made an alternative | 11:11AM |
| 11 | argument to Judge Manibusan when he was still the magistrate | 11:11AM |
| 12 | judge on the case when Mr. Kapp in 2017 wanted to go to the | 11:11AM |
| 13 | Philippines. | 11:11AM |
| 14 | THE COURT:  So my only question, though, but my | 11:11AM |
| 15 | question was, with regard to Crowe, did you make that -- | 11:11AM |
| 16 | MS. M. MILLER:  No, we didn't. | 11:11AM |
| 17 | THE COURT:  -- argument. | 11:11AM |
| 18 | MS. M. MILLER:  We did not get those records from | 11:11AM |
| 19 | the Philippines until 2022. | 11:11AM |
| 20 | THE COURT:  Okay, so that's all I wanted to know. | 11:11AM |
| 21 | I got it.  But had you not -- had you not made it or make it | 11:11AM |
| 22 | look like okay what -- and if you made it, and the judge | 11:11AM |
| 23 | decided against it, that's another issue I have to resolve. | 11:11AM |
| 24 | But that's not the case. | 11:11AM |
| 25 | MR. MARTIN:  I can't tell what was argued there, | 11:11AM |

 1   Your Honor, because I was not a party to this.                    11:11AM

 2              THE COURT:  All right.                                  11:11AM

 3              MR. MARTIN:  Mr. -- I do know that he was granted       11:11AM

 4   permission.                                                       11:11AM

 5              THE COURT:  Okay, so he's made a statement.  So         11:11AM

 6   this is Crowe making a statement.  He's saying okay, this is      11:11AM

 7   where I work, this is what I do, this is my operation, I mean     11:11AM

 8   this is how it's operated.  So is this a statement made in        11:11AM

 9   furtherance of the conspiracy?  That's really the question.       11:12AM

10              MR. MARTIN:  My answer is, it's a statement made        11:12AM

11   so he could travel to whatever the motion for modification.       11:12AM

12   We just have the affidavit.  I don't even know what the motion    11:12AM

13   says, Your Honor.  Like I said, I wasn't a party to it.           11:12AM

14   Mr. Lujan represents Mr. Crowe.                                   11:12AM

15              THE COURT:  Right.  Okay.                               11:12AM

16              MR. MARTIN:  And --                                     11:12AM

17              THE COURT:  Doesn't matter whether you're a party      11:12AM

18   to it necessarily for purposes of --                             11:12AM

19              MR. MARTIN:  I agree.  I agree.                         11:12AM

20              THE COURT:  -- of trying to figure out what kind       11:12AM

21   of statement this is, right?  So I'm just trying to figure out    11:12AM

22   because I never had somebody use a bail or a declaration to       11:12AM

23   try to get off Guam and modify conditions to say that's made     11:12AM

24   in furtherance of a conspiratorial statement.                     11:12AM

25              MR. MARTIN:  The primary purpose of the                11:12AM

```
 1   affidavit, we know, is for modification of conditions of bond.    11:12AM
 2           THE COURT:  We do know that.  I think the                 11:12AM
 3   prosecutor would agree with that.                                 11:12AM
 4           MS. S. MILLER:  Yes.                                       11:12AM
 5           THE COURT:  That it is.  The question is, was             11:12AM
 6   this statement -- is the statement offered against an opposing     11:12AM
 7   party and was it made by the party's co-conspirator during and    11:12AM
 8   in furtherance of the conspiracy?  During and in further of       11:13AM
 9   the conspiracy?  That's really the question.                      11:13AM
10           MR. MARTIN:  Well, and I can't say, Your Honor,           11:13AM
11   and I would say that they can't say this is in furtherance of     11:13AM
12   the conspiracy.  I mean, they've alleged that the conspiracy      11:13AM
13   started back in 1992.  And there is no other way for, let me      11:13AM
14   say this, Your Honor, there is no absolutely no other way for     11:13AM
15   Mr. Crowe to modify request a modification of conditions of       11:13AM
16   bond, other than to file a motion and an affidavit in support.    11:13AM
17           THE COURT:  Is his going to the Philippines part          11:13AM
18   of the conspiracy?                                                11:13AM
19           MR. MARTIN:  Well, I don't think that's alleged           11:13AM
20   in here, Your Honor.                                              11:13AM
21           MS. M. MILLER:  Yes.                                      11:13AM
22           THE COURT:  Is his -- wait, is his going to the           11:13AM
23   Philippines part of the conspiracy?                               11:13AM
24           MR. MARTIN:  That's not alleged.                          11:13AM
25           THE COURT:  As contained in Count 99?                     11:13AM
```

*Direct - Khamvongsa*

```
 1              MR. MARTIN:  No.                                11:13AM

 2              THE COURT:  Hold on.  Let me look at it.        11:13AM

 3  Everybody just let me look because I just need to read this 11:13AM

 4  really quick.  Present a scheme?  Okay, that's the question. 11:13AM

 5  And the answer is, yes, Ms. Samantha Miller, what's the     11:14AM

 6  answer?  What is --                                         11:14AM

 7              MS. S. MILLER:  Sorry.  I'm just pulling up     11:14AM

 8  manner and means, Your Honor.  Just one second please.      11:14AM

 9              THE COURT:  Manner and means.  Are you looking at 11:14AM

10  what page?                                                  11:14AM

11              MS. S. MILLER:  Right, I'm looking at pages 33, 11:14AM

12  34 --                                                       11:14AM

13              THE COURT:  Well, that's not -- okay.           11:14AM

14              MS. S. MILLER:  It's the manner and means of the 11:14AM

15  conspiracy to commit wire fraud.                            11:14AM

16              THE COURT:  That's before Count 99, but okay,   11:14AM

17  let's see, is it count --                                   11:14AM

18              MS. S. MILLER:  No, it's the manner and means of 11:14AM

19  Count 99.  Count 99 begins on page 33, line 18.            11:14AM

20              THE COURT:  Yeah, you said it was before that,  11:14AM

21  though.                                                     11:14AM

22              MS. S. MILLER:  I'm sorry if I misspoke, page 33 11:14AM

23  onward is the manner and means.                             11:14AM

24              THE COURT:  Yeah, you misspoke there.           11:14AM

25              MS. S. MILLER:  Sorry about that, Your Honor.   11:14AM
```

*Direct - Khamvongsa*

|    |    |    |
|----|----|----|

1        THE COURT:  All right.  So manner and means are    11:14AM

2   on page 34, line 18, 19.  Okay.    11:15AM

3        MS. S. MILLER:  Let me know when you want me to    11:15AM

4   respond, Your Honor.    11:15AM

5        THE COURT:  Hold on a second.    11:15AM

6        MS. S. MILLER:  One second.    11:15AM

7        THE COURT:  Okay.  Tell me.  Go ahead.    11:16AM

8        MS. S. MILLER:  So Your Honor, on pages 34 and    11:16AM

9   35, you see the list of aircraft and the list of tuna boats.    11:16AM

10        THE COURT:  Yup.    11:16AM

11        MS. S. MILLER:  So we have evidence and presented    11:16AM

12   evidence already that these same helicopters now have been    11:16AM

13   moved from the United States to the Philippines.  They're    11:16AM

14   still being leased to the same tuna boat companies.  So the    11:16AM

15   conspiracy continues and it's related to these particular tuna    11:16AM

16   boat and particular aircraft.    11:16AM

17        THE COURT:  Okay, so let's look at his date --    11:16AM

18   what is the date of his declaration?    11:16AM

19        MS. S. MILLER:  It was early on in the case, Your    11:16AM

20   Honor.  That's why we didn't know about the moving -- 2018.    11:16AM

21        THE COURT:  No, just answer the question.    11:16AM

22        MS. S. MILLER:  2018.    11:16AM

23        THE COURT:  Okay.  What date?    11:16AM

24        MR. MARTIN:  July 5, 2018.    11:16AM

25        THE COURT:  July 5, 2018, okay.  So you're saying    11:16AM

*Direct - Khamvongsa*

```
1    that -- so -- but you're not using the July 2018, you're              11:16AM
2    saying it's more recent?  Right?                                      11:16AM
3              MS. S. MILLER:  Well, we're saying it establishes          11:17AM
4    the relationships between the defendants at the time of the           11:17AM
5    declaration was filed.  And that the fact that he was trying          11:17AM
6    to go to the Philippines is evidence of how the conspiracy            11:17AM
7    operated.  By moving these same aircraft into leases with             11:17AM
8    Philippine companies is part of the conspiracy and how they           11:17AM
9    committed wire fraud.  They moved their bank accounts to the          11:17AM
10   Philippines.                                                          11:17AM
11             THE COURT:  Okay.  Did he go to the Philippines            11:17AM
12   to establish leases?  At that time?                                   11:17AM
13             MS. S. MILLER:  We believe so, Your Honor.                 11:17AM
14             THE COURT:  Not you believe so.  Why the --               11:17AM
15             MS. S. MILLER:  I think he's on bills of sale             11:17AM
16   that were filed with the Philippines.  I think he was on the          11:17AM
17   board of directors for Pacific Spotters, the director or --          11:17AM
18             MS. M. MILLER:  We have the contracts, we have            11:17AM
19   the opening of the bank account, we have everything.                  11:17AM
20             THE COURT:  Okay, let's -- FYI the jurors' food           11:17AM
21   is already here.  I'm just going to tell them to eat.  So            11:17AM
22   they're waiting for me, but it arrived ten minutes ago.  I'm         11:17AM
23   just going to tell them to eat.                                       11:17AM
24             MS. M. MILLER:  Yes, Your Honor.                          11:17AM
25             THE COURT:  Tell them to eat.  Okay.  Let's              11:17AM
```

1    return back.  But you're saying this is in furtherance of the      11:18AM

2    Count 99 conspiracy?                                               11:18AM

3            MS. S. MILLER:  Right, because he took the same            11:18AM

4    -- or all of the co-conspirators took the same aircraft           11:18AM

5    identified in Count 99 with the same tuna boat companies          11:18AM

6    identified in Count 99 and moved the entire operation to the      11:18AM

7    Philippines.  And Mr. Crowe was traveling at the very time        11:18AM

8    that they established the new operations in the Philippines.       11:18AM

9    We've presented evidence about starting, I think there was        11:18AM

10   articles of incorporation with Pacific Spotters, we have the      11:18AM

11   bank records established that they were opening accounts at        11:18AM

12   that time.                                                         11:18AM

13           THE COURT:  All I care -- you're arguing that             11:18AM

14   this particular exhibit is in furtherance of Count 99?  That's    11:18AM

15   what you just said.                                                11:19AM

16           MS. S. MILLER:  Yes.  Yes.                                11:19AM

17           THE COURT:  All right.                                    11:19AM

18           MS. S. MILLER:  And, of course relatedly, the            11:19AM

19   money laundering, too.                                             11:19AM

20           THE COURT:  Go ahead.                                     11:19AM

21           MR. MARTIN:  Well, first of all, Your Honor,             11:19AM

22   Count --                                                           11:19AM

23           THE COURT:  99.                                          11:19AM

24           MR. MARTIN:  99 alleges conspiracy to defraud and        11:19AM

25   cheat others.  It does not allege anything about the              11:19AM

```
 1   Philippines or transferring anything to the Philippines.  And     11:19AM
 2   if you go to the money laundering counts, those are all           11:19AM
 3   alleged to have occurred in 2016.  And this declaration is        11:19AM
 4   made in 2018, two years after the fact, which can't be in         11:19AM
 5   furtherance of money laundering because it happened two years     11:19AM
 6   earlier, if it happened at all.                                   11:19AM
 7            So I submit that there is no object or manner and        11:19AM
 8   means alleging anything about the Philippines or setting up       11:19AM
 9   any type of business in the Philippines in Count 99 and this      11:20AM
10   is improper.                                                      11:20AM
11            THE COURT:  Okay, hold on.  I'm just looking at          11:20AM
12   this carefully.  Have you guys presented evidence that he         11:20AM
13   established -- evidence that he went to the Philippines to        11:20AM
14   establish leases and have you presented that already?  Crowe?     11:20AM
15            MS. S. MILLER:  Yes, Your Honor, we --                   11:20AM
16            THE COURT:  During this timeframe?                       11:20AM
17            MS. S. MILLER:  Yes, Your Honor.  We admitted a          11:20AM
18   number of exhibits with the representative from the               11:20AM
19   Philippines Civil Aviation Authority, if you recall.  And a       11:20AM
20   lot of those documents involved the starting of Pacific          11:20AM
21   Spotters and who was on those articles of incorporation for       11:20AM
22   that company.  And it coincide --                                 11:21AM
23            THE COURT:  Just give me the exhibit number.             11:21AM
24            MS. S. MILLER:  3003 is one of those exhibits.           11:21AM
25            THE COURT:  That is all I care about.  Don't make        11:21AM
```

*Direct - Khamvongsa*

1    your arguments.  I don't need your argument.  I just need the          11:21AM
2    evidence.  I'll remember the evidence.  Go ahead.                       11:21AM
3              MS. MCCONWELL:  Certain pages.                                11:21AM
4              THE COURT:  3003?                                             11:21AM
5              MS. S. MILLER:  Yes, Your Honor.                              11:21AM
6              MS. MCCONWELL:  Only certain pages of 3003 were               11:21AM
7    admitted.  Not the entire document, Your Honor.                         11:21AM
8              THE COURT:  So what page on 3003?                             11:21AM
9              MS. S. MILLER:  Page 7, for example, Your Honor.              11:21AM
10             THE COURT:  All right.  I'll look at that in a                11:21AM
11   minute.  And so as I look at Count 99, Mr. Walker is saying             11:21AM
12   that this only deals with committing wire fraud.  Right.  So            11:21AM
13   this is dealing with wire transfers.  All right.  And what was          11:21AM
14   your point then, Mr. Martin?                                            11:22AM
15             MR. MARTIN:  If it was page 7 --                              11:22AM
16             THE COURT:  We're focusing only on Count 99.                  11:22AM
17   That's what she says.  Go ahead.                                        11:22AM
18             MR. MARTIN:  Well, as far as 3003 is concerned,               11:22AM
19   Your Honor, our record --                                              11:22AM
20             COURT REPORTER:  I'm sorry, Your Honor, I don't               11:22AM
21   think the mic is on.                                                    11:22AM
22             THE COURT:  Mic.  Mic.                                        11:22AM
23             MR. MARTIN:  Sorry, Your Honor.  As far as                    11:22AM
24   Exhibit 3003.  Number one, our records show it's not admitted,         11:22AM
25   page 7.  Number 2, if it was admitted, it's dated 2013, which          11:22AM

*Direct - Khamvongsa*

1   is well after this declaration, and before this declaration.    11:22AM

2   And it does not support the government's theory that, oh, we    11:22AM

3   suddenly just now found out because it was back in 2013.  So    11:22AM

4   -- and finally, Count 99 does not allege anything about moving    11:22AM

5   a business to the Philippines.    11:22AM

6           THE COURT:  Okay, hold on one second.  Let me    11:22AM

7   look at this carefully.    11:23AM

8           All right.  Let's go back to this.  All right.    11:23AM

9   Let me understand your proffer here.  Why do you want -- give    11:23AM

10  me the reason why you want this document in?  You want Crowe's    11:23AM

11  -- Mr. Crowe's declaration to a magistrate judge because he    11:23AM

12  wants to be able to be released from Guam and modify his    11:23AM

13  conditions of release.    11:24AM

14          And Mr. Crowe is saying, look, I'm part of Hansen    11:24AM

15  Helicopters.  And he's basically -- he's basically saying,    11:24AM

16  hey, Hansen Helicopters is a corporation that has so many    11:24AM

17  employees.  We've been on Guam for a long time.  I mean, he    11:24AM

18  builds up Hansen Helicopters.  So that's what he's doing.    11:24AM

19          And you're saying that you want to bring that    11:24AM

20  evidence in as part of the conspiracy because it relates to    11:24AM

21  Count 99?  So tell me exactly and narrowly and what is your    11:24AM

22  proffer on Count 99, because let me just say, I've read 99.    11:24AM

23  So it's a conspiracy to commit wire fraud, that's what the    11:24AM

24  charge is, and all this other stuff about objects and manners,    11:24AM

25  okay, that's not -- you know, it's really the elements that    11:24AM

*Direct - Khamvongsa*

1    the court looks to.  I mean it's what the jury looks to, is        11:24AM

2    really the elements.  All this other stuff is really your         11:24AM

3    theory of how the conspiracy occurred on wire fraud.  And the      11:25AM

4    elements are, how do you -- what are you trying to prove, how,     11:25AM

5    with regard to this statement made in furtherance of a            11:25AM

6    conspiracy.  Was this statement about his business made in         11:25AM

7    furtherance of a conspiracy?  Go ahead.  And the conspiracy to     11:25AM

8    commit wire fraud in particular.  Go ahead.  So what's your        11:25AM

9    proffer?                                                           11:25AM

10             MS. S. MILLER:  So the proffer, Your Honor is,          11:25AM

11   you heard testimony from Ms. Jones who reviewed also a lot of      11:25AM

12   the bank records.  And one of the things she testified to was     11:25AM

13   that defendants started closing all their U.S. bank accounts      11:25AM

14   in the summer of 2018.  She also admitted evidence, we didn't     11:25AM

15   go through it extensively, but we admitted evidence with Ms.      11:25AM

16   Jones that showed suddenly they opened a Wilma's bank account     11:25AM

17   in the summer of 2018 and started receiving funds from account   11:25AM

18   they couldn't identify at the time, which now we know is a       11:25AM

19   Philippine bank account.                                          11:25AM

20             So money was going into the Philippine bank            11:25AM

21   account from tuna boats and being transferred all around          11:26AM

22   between the accounts including Wilma's U.S. account.  The         11:26AM

23   reason why this declaration is relevant is because, first of     11:26AM

24   all, it shows what one of the co-conspirators is stating the     11:26AM

25   relationship was between the defendants, what their roles were   11:26AM

```
 1    within the company.                                        11:26AM
 2              THE COURT:  All right.  So -- but has that        11:26AM
 3    already been established?  I mean, is it cumulative?  Have you 11:26AM
 4    already established the relationship as stated by Crowe      11:26AM
 5    already?                                                     11:26AM
 6              MS. S. MILLER:  Right.  But it's now relevant as   11:26AM
 7    to Mr. Walker with respect to wire fraud.  So I think we     11:26AM
 8    admitted it, I can't remember what count --                 11:26AM
 9              THE COURT:  How are you connecting Walker, the     11:26AM
10    Philippines and Crowe right now?  How are you connecting this 11:26AM
11    as far as Count 99 goes?                                    11:26AM
12              MS. S. MILLER:  Sure.  So he was requesting in... 11:26AM
13              THE COURT:  Who is he?                            11:26AM
14              MS. S. MILLER:  Mr. Crowe was requesting to        11:26AM
15    modify bail so that he could travel to the Philippines.      11:26AM
16              THE COURT:  Okay.                                  11:26AM
17              MS. S. MILLER:  We have documents in evidence and  11:26AM
18    we will present further documents that show, for example, 3 -- 11:26AM
19    Exhibit 3003 page 32 --                                      11:27AM
20              THE COURT:  So Crowe's request, what is the date   11:27AM
21    of his declaration?                                          11:27AM
22              MS. S. MILLER:  July 2018.                         11:27AM
23              THE COURT:  July what 2018 what day?  July 5th.    11:27AM
24    So Crowe is requesting modification of his bail conditions or 11:27AM
25    his trial -- pretrial release conditions.  All right.        11:27AM
```

|   |   |   |
|---|---|---|
| 1 | MS. S. MILLER:  Right. | 11:27AM |
| 2 | THE COURT:  On July 5, 2018. | 11:27AM |
| 3 | MS. S. MILLER:  Right. | 11:27AM |
| 4 | THE COURT:  This, okay, so this document -- I | 11:27AM |
| 5 | mean, this was in 2018 his request and this is -- okay, so the | 11:27AM |
| 6 | conspiracy here is 2000 to the present.  So it's before -- | 11:27AM |
| 7 | before this -- his release, his request for release condition, | 11:27AM |
| 8 | he's asking that it be before what -- the start date on the | 11:27AM |
| 9 | conspiracy.  Correct? | 11:27AM |
| 10 | MS. M. MILLER:  After. | 11:27AM |
| 11 | MS. S. MILLER:  No. | 11:27AM |
| 12 | MS. M. MILLER:  After. | 11:27AM |
| 13 | THE COURT:  I'm sorry, that's right.  It's after. | 11:27AM |
| 14 | I read it wrong, 2020.  Okay.  That's right.  2018 you're | 11:27AM |
| 15 | right.  So 2018 he's requesting this and continuing to | 11:28AM |
| 16 | present.  What day did I say present meant? | 11:28AM |
| 17 | MS. M. MILLER:  Yes. | 11:28AM |
| 18 | THE COURT:  Was it January 8, 2021, right? | 11:28AM |
| 19 | MS. M. MILLER:  Correct. | 11:28AM |
| 20 | MR. MARTIN:  Correct. | 11:28AM |
| 21 | THE COURT:  So January 8, 2021.  All right.  And | 11:28AM |
| 22 | this is -- okay.  Very well.  Go ahead. | 11:28AM |
| 23 | MS. S. MILLER:  So at the very time he's | 11:28AM |
| 24 | submitting this declaration, which describes, allegedly, what | 11:28AM |
| 25 | the company looked like, the relationship among the | 11:28AM |

*Direct - Khamvongsa*

```
1    defendants, they're moving their operations to the                11:28AM
2    Philippines, large transfers of money from a Philippine -- we     11:28AM
3    now know Philippine bank account is coming into the U.S. bank     11:28AM
4    account.  And then we see all of these Philippine --              11:28AM
5             THE COURT:  Okay, so we're looking at the                11:28AM
6    timeframe between July 5, 2018 to January -- well to              11:28AM
7    January 8, 2021.  That's the timeframe that we're talking        11:28AM
8    about.                                                            11:28AM
9             MS. S. MILLER:  Yes.                                     11:28AM
10            THE COURT:  Okay, and there is evidence to show          11:28AM
11   that there is okay.  Go ahead.  What's the evidence?             11:28AM
12            MS. S. MILLER:  So you recall Ms. Jones testified        11:28AM
13   that four U.S. bank accounts were closed in the summer of        11:28AM
14   2018.  And then the one remaining bank account that they         11:29AM
15   opened around that exact time, I think it was August 2018,       11:29AM
16   started -- you started seeing transfers in from an account       11:29AM
17   that at the time we couldn't identify, but we now know is a      11:29AM
18   Philippine bank account.                                         11:29AM
19            THE COURT:  Okay.                                        11:29AM
20            MS. S. MILLER:  So it's just further evidence           11:29AM
21   that there is a conspiracy among these defendants at the very    11:29AM
22   time that he's swearing under oath establishing that the        11:29AM
23   relationship was what Mr. Crowe says it is in the declaration,   11:29AM
24   that that's in furtherance of this conspiracy because at that    11:29AM
25   time, he was actually going to the Philippines to move their     11:29AM
```

```
 1    fraud scheme to the Philippines and we have bank records          11:29AM
 2    backing that up among other things, like the -- the -- the        11:29AM
 3    articles of incorporation documents in the Philippines with       11:29AM
 4    Mr. Crowe and Mr. Walker's name on them.                          11:29AM
 5              THE COURT:  Okay.  And this is between the               11:29AM
 6    timeframe of July 5, 2018 to January 8, 2021?                     11:29AM
 7              MS. S. MILLER:  Yes, Your Honor, mostly in the          11:29AM
 8    summer of 2018.                                                   11:29AM
 9              THE COURT:  Well, summer.  What is summer to you?       11:30AM
10              MS. S. MILLER:  Summer and fall, the second half       11:30AM
11    of 2018.  So the bank accounts were closed I believe in July     11:30AM
12    --                                                                11:30AM
13              THE COURT:  Yeah, but give me the dates, I mean I      11:30AM
14    need the dates.  Some people count summer as one month.  Okay.   11:30AM
15    So July 5, 2018, is the date that Mr. Crowe requested his        11:30AM
16    modification?                                                    11:30AM
17              MS. S. MILLER:  Right.                                 11:30AM
18              THE COURT:  So when was the bank account opened        11:30AM
19    in the Philippines?                                              11:30AM
20              MS. S. MILLER:  I don't have that date on the top     11:30AM
21    of my head, but I do have a document right here, which is when   11:30AM
22    they opened Pacific Spotters, which is November 21, 2018.        11:30AM
23              THE COURT:  Okay.  Is that part of the                 11:30AM
24    Philippines bank account?                                        11:30AM
25              MS. S. MILLER:  That's the Philippine company,        11:30AM
```

```
 1   Pacific Spotters, and it was filed with the Securities    11:30AM
 2   Exchange Commission.                                       11:30AM
 3           THE COURT:  Okay, but you're talking about wire    11:30AM
 4   fraud.  So you're talking about banks.  All I care about is 11:30AM
 5   the bank.                                                  11:30AM
 6           MS. S. MILLER:  Right, but they had to submit      11:30AM
 7   these documents to the bank in order to show they were     11:30AM
 8   actually opening companies.                                11:30AM
 9           THE COURT:  You told me a bank account was         11:30AM
10   opened.  I want to know the date.  So just look that up.   11:30AM
11           MS. S. MILLER:  Sorry, I don't have that right in  11:30AM
12   front of me.                                               11:30AM
13           THE COURT:  You guys should know that if you want  11:30AM
14   me to focus on this timeframe.  And you're theory is, is that 11:31AM
15   there is a bank account that we're focusing in on, let's get 11:31AM
16   the date because the period is July 15th, I think we all   11:31AM
17   agree, if in fact -- I mean --                             11:31AM
18           MR. MARTIN:  Your Honor, I don't agree.            11:31AM
19           THE COURT:  Okay, you don't have to agree.  But    11:31AM
20   nobody has to agree with me, I don't care.  It doesn't matter, 11:31AM
21   I'm not saying that flippantly, I'm saying you don't have to 11:31AM
22   agree with me.  I'm trying to think this through logically. 11:31AM
23           If her proffer is Mr. Crowe was trying to further  11:31AM
24   the conspiracy of wire fraud, it would have to be, it would 11:31AM
25   have to be between I would -- I'm thinking out loud so if I'm 11:31AM
```

*Direct - Khamvongsa*

1    wrong, I know you'll try to correct me.                    11:31AM

2              MR. MARTIN:  No, I'm sorry, Your Honor.           11:31AM

3              THE COURT:  As I'm thinking out loud, it would    11:31AM

4    have to be from the time that he made his request because he's    11:31AM

5    trying to go to the Philippines, July 5, 2018, and they're    11:31AM

6    saying there is an ongoing conspiracy, ongoing conspiracy    11:31AM

7    ends, according to my ruling, date of present, under the grand    11:32AM

8    jury indictment, second superseding is January 8, 2021.    11:32AM

9    That's the timeframe we're talking about.  Do you agree with    11:32AM

10   that?                                                       11:32AM

11             MR. MARTIN:  No, Your Honor, can I briefly        11:32AM

12   respond?                                                    11:32AM

13             THE COURT:  Okay.  Can I briefly -- why don't we    11:32AM

14   briefly come back after lunch.                              11:32AM

15             MR. MARTIN:  Sure.                                11:32AM

16             THE COURT:  Because I need to go have my lunch    11:32AM

17   and I need to use the restroom, to be honest.  But okay, but    11:32AM

18   as you know, this is my thought process, if the -- the only    11:32AM

19   reason why I'm saying this is the -- if the prosecutor is    11:32AM

20   saying their proffer is what they say it is, is that the    11:32AM

21   conspiracy was still ongoing and that when Mr. Crowe made his    11:32AM

22   request to the magistrate judge, I want to leave Guam, but you    11:32AM

23   know what I want to leave Guam for whatever X reason, I have    11:32AM

24   to go back and look at the document, but if he says I want to    11:32AM

25   leave Guam but he was allegedly furthering a conspiracy and it    11:32AM

1    was related to Count 99, then what evidence is that?                    11:32AM

2              MR. MARTIN:  I would ask the Court to look at                 11:33AM

3    Counts 100 through 104 as well because that's the -- that's            11:33AM

4    the wire fraud counts that they're talking about that the             11:33AM

5    conspiracy relates to.  And we could talk about that after            11:33AM

6    lunch, Your Honor.                                                     11:33AM

7              THE COURT:  Oh, I see.  Okay.  So the wire                   11:33AM

8    transfers are, okay, the counts are 2015, the 2015 date?              11:33AM

9              MR. MARTIN:  Yes, Your Honor.                                11:33AM

10              MS. MCCONWELL:  And 2016.                                   11:33AM

11              THE COURT:  And 2016.  So -- yeah, but her                  11:33AM

12    argument is not so much as it relates to those dates that are        11:33AM

13    alleged in the indictment.  Her argument is the timeframe up         11:33AM

14    to the present.  So it sounds to me their theory -- I may be         11:33AM

15    wrong -- is between the 2018 of July 5th, to January 8, 2021.        11:33AM

16              MR. MARTIN:  I know that's their theory, but I'm            11:33AM

17    saying the indictment doesn't support that based upon                11:33AM

18    Count 99.  And then -- it's conspiracy to commit wire fraud.         11:33AM

19    The next four, five counts are wire fraud.                           11:33AM

20              THE COURT:  I may have to revisit this issue of            11:33AM

21    up to present then.  Let me tell you why, okay, in terms of          11:34AM

22    notice to the defendant, and really, I do think I may have to        11:34AM

23    revisit that issue.  That it may not -- you know, when we say        11:34AM

24    "up to present," what does that really mean?                         11:34AM

25              I mean, if you're a defendant, you want notice of          11:34AM

1  what your crime is.  And if there is an ongoing conspiracy,                11:34AM

2  they need to have you, the defense, defendant, Mr. Walker and               11:34AM

3  Hansen Helicopters, needs to know what exactly is the crime                 11:34AM

4  that they're committing and what are the dates.  So you know                11:34AM

5  what, you guys might want to revisit that, too.  And we might               11:34AM

6  want to go back on that date and just use the date of the --                11:34AM

7  of what's alleged in the indictment, because you surely and                 11:34AM

8  could have and still can indict the defendants for conspiracy,              11:34AM

9  any defendant, just generally, let me put this out, any                     11:35AM

10 defendant, for additional acts that are not... well, I mean                 11:35AM

11 there could be double jeopardy argument, I have to think about              11:35AM

12 that, but anyway, putting that aside, if there's not -- we                  11:35AM

13 might think about that, Counsels.  We'll come back to that                  11:35AM

14 issue.  Up to present.                                                      11:35AM

15         Do you understand what I'm saying, Marie Miller?                    11:35AM

16         MS. M. MILLER:  Yes, Your Honor.  I do understand                   11:35AM

17 what you're saying.  I do understand what you're saying.  But               11:35AM

18 part of this is twofold.  Number one, at least through the                  11:35AM

19 date of the indictment, obviously is going to be included and               11:35AM

20 we had a superseding indictment in 2021.                                    11:35AM

21         THE COURT:  Yeah.                                                   11:35AM

22         MS. M. MILLER:  The second issue is, the                            11:35AM

23 defendants, for the first time at trial, tried to assert that               11:35AM

24 Jon Walker either retired or stopped operating and went to                  11:35AM

25 Missouri and did nothing.                                                   11:35AM

1    So a lot of evidence that has come in regarding    11:35AM

2  actions had to do with refuting that contention which is not    11:35AM

3  correct.  And the defendants have had notice because there    11:35AM

4  isn't the evidence that we're introducing regarding that that    11:35AM

5  they haven't seen that hasn't been part of the discovery or    11:35AM

6  the record.    11:36AM

7    Now this issue with the Limey bank and the Limey    11:36AM

8  Air account and the Philippine stuff, that happened in 2018.    11:36AM

9  And what the evidence is going to show is that the transfers    11:36AM

10  through the accounts that are the subject not only to the    11:36AM

11  conspiracy to commit wire fraud, but also the subject of the    11:36AM

12  substantive wire fraud counts, the money laundering counts,    11:36AM

13  came from their work in the Philippines.  That is exactly what    11:36AM

14  Special Agent Khamvongsa is going to testify to.  So we don't    11:36AM

15  even have to go beyond the date of the second superseding    11:36AM

16  indictment, Your Honor, to include all of this information.    11:36AM

17    THE COURT:  No, okay, okay, you can -- okay,    11:36AM

18  we'll come back to this but I'm just saying that when a    11:36AM

19  prosecutor goes to the grand jury and they ask the grand jury    11:36AM

20  to return an indictment of a conspiracy to commit wire fraud    11:36AM

21  as in Count 99 --    11:36AM

22    MS. M. MILLER:  Yes.    11:36AM

23    THE COURT:  - the execution of that fraud usually    11:36AM

24  has a date on it.    11:36AM

25    MS. M. MILLER:  Yes.    11:36AM

*Direct - Khamvongsa*

                    THE COURT:  Which you do in Counts 100 to 104, as    11:36AM

the defense Counsel has indicated.  Now, as you're trying to    11:37AM

allege this, I mean, it becomes almost -- I'm not sure what    11:37AM

the right word is.  It's not -- if there is no date on it, if    11:37AM

there is no -- if there is just no date, like on Count 100,    11:37AM

September 4, 2015, there was a fraud, a wire transfer --    11:37AM

                    MS. M. MILLER:  Right --    11:37AM

                    THE COURT:  Wait, wait, wait.  So you have that    11:37AM

and the defendants can defend that.    11:37AM

                    MS. M. MILLER:  Right.    11:37AM

                    THE COURT:  Now, we're saying okay, there is a    11:37AM

conspiracy to keep the fraud going.    11:37AM

                    MS. M. MILLER:  Right.    11:37AM

                    THE COURT:  And so now, it's really they are --    11:37AM

they are defending against actually further crimes, even    11:37AM

though it's not listed in the indictment.  Not -- not -- it's    11:37AM

a further aggravation of a crime, I should say.    11:37AM

                    MS. M. MILLER:  Correct.    11:37AM

                    THE COURT:  Conspiracy.    11:37AM

                    MS. M. MILLER:  Correct.    11:37AM

                    THE COURT:  And conspiracy, obviously, is one of    11:37AM

the most powerful tools in a prosecutor's box.    11:37AM

                    MS. M. MILLER:  Absolutely.    11:38AM

                    THE COURT:  Because conspiracy is just so strong.    11:38AM

                    MS. M. MILLER:  Yes.    11:38AM

```
 1                   THE COURT:  And so wide.                    11:38AM

 2                   MS. M. MILLER:  Yes.                        11:38AM

 3                   THE COURT:  Wide web there.                 11:38AM

 4                   MS. M. MILLER:  Yes.                        11:38AM

 5                   THE COURT:  Anyway, so I'm just thinking out 11:38AM

 6     loud.  And let's come back to that, okay?                11:38AM

 7                   MS. M. MILLER:  Yes, Your Honor.            11:38AM

 8                   THE COURT:  You guys -- you think about that, 11:38AM

 9     Counsels.                                                 11:38AM

10                   MS. M. MILLER:  We will.                    11:38AM

11                   THE COURT:  Let me just say something for   11:38AM

12     prosecution.  I know you guys you got upset, but you know I 11:38AM

13     help you guys, too.  I mean you say -- I throw out lifelines 11:38AM

14     --                                                        11:38AM

15                   MR. MARTIN:  I'm not upset, Your Honor.  I'm not 11:38AM

16     upset.                                                    11:38AM

17                   THE COURT:  You shouldn't be.  I think I threw 11:38AM

18     out a lifeline yesterday, last night.  But anyway my point is, 11:38AM

19     I do that sincerely and I call it case management, Counsels, 11:38AM

20     for the record, case management.                         11:38AM

21                   But you know what, you have -- you have an  11:38AM

22     indictment, this is your second superseding indictment, which 11:38AM

23     by the way, mine is getting holes in it because I've read it 11:38AM

24     so many times and you could see.  Okay, keep it simple.  11:38AM

25                   MS. M. MILLER:  Yes.                        11:38AM
```

*Direct - Khamvongsa*

```
 1                    THE COURT:  Just keep it simple.            11:38AM

 2                    MS. M. MILLER:  Yes, Your Honor.            11:38AM

 3                    THE COURT:  That's all.  Think about it.    11:38AM

 4                    MS. M. MILLER:  Yes, Your Honor.  We will, thank  11:38AM

 5       you.                                                     11:38AM

 6                    THE COURT:  I'll see all of you guys at -- time  11:38AM

 7       -- 12:30.  Go to your lunch.                             11:39AM

 8                    MS. S. MILLER:  Your Honor, can I give you   11:39AM

 9       specific cite to a document you might want to take a look at  11:39AM

10       you're reviewing this?                                   11:39AM

11                    THE COURT:  Sure.                           11:39AM

12                    MS. S. MILLER:  So it's in evidence already.  11:39AM

13       Exhibit 2898.                                            11:39AM

14                    THE COURT:  2898.  Okay, go ahead.          11:39AM

15                    MS. S. MILLER:  Page 14.  You'll see deposits  11:39AM

16       coming in.  That's when they begin with Pacific.Spotters,  11:39AM

17       which is the Philippine version of Pacific Spotters.     11:39AM

18                    THE COURT:  Okay.  So just, yeah, and yeah.  All  11:39AM

19       right.                                                   11:39AM

20                    MS. S. MILLER:  Thank you.                  11:39AM

21                    THE COURT:  Thank you.  I'll look at it.    11:39AM

22                    MS. S. MILLER:  Thank you.                  11:39AM

23                    THE COURT:  Okay.  Thank you.               11:39AM

24                    (Recess taken at 11:39 a.m.)                11:39AM

25                    (Back on the record at 12:39 p.m.)          12:39PM
```

*Direct - Khamvongsa*

1    THE COURT:  All right.  We're back on the record.    12:39PM

2  All Counsels are present, defendants are present and the    12:39PM

3  witness is present.    12:39PM

4    And so the Court has reviewed G-2898-14, which    12:39PM

5  was what was requested of by Ms. Samantha Miller.  And it    12:39PM

6  appears that this is dated July 21 -- sorry, July 31, 2018 --    12:39PM

7  and so -- July 31.  Hold on a second.  Let me just check    12:39PM

8  another thing.  Hold on.  Did you have a chance to review    12:39PM

9  that, Mr. Martin and Ms. McConwell?  The exhibit?    12:39PM

10    MR. MARTIN:  I did, Your Honor.    12:39PM

11    THE COURT:  Okay.  We might ask Mr. Khamvongsa to    12:39PM

12  step out on this.    12:40PM

13    MS. S. MILLER:  Sith.    12:40PM

14    THE COURT:  Khamvongsa, I'm sorry, Khamvongsa,    12:40PM

15  Khamvongsa.  Just continue to step out.  I'm sorry,    12:40PM

16  Mr. Khamvongsa.    12:40PM

17    THE WITNESS:  No problem, thank you, Your Honor.    12:40PM

18    (Witness exited courtroom.)    12:40PM

19    THE COURT:  Yeah.  Thank you.  Okay, this -- all    12:40PM

20  right.  So let me just tell you what I'm looking at.    12:40PM

21  Mr. Crowe's request was July 5, 2018.  That's when he signed    12:40PM

22  the declaration; is that correct?    12:40PM

23    MS. S. MILLER:  Yes, Your Honor.    12:40PM

24    THE COURT:  Was it approved for him to travel and    12:40PM

25  what day was that or what period of time, do you guys know ?    12:40PM

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | MS. S. MILLER:  When he was supposed to travel? | 12:40PM |
| 2 | THE COURT:  No, what day did the judge approve -- | 12:40PM |
| 3 | or when did he travel?  You said the judge approved it, but | 12:40PM |
| 4 | what day did he actually travel, if he did travel? | 12:40PM |
| 5 | MS. S. MILLER:  That I don't know.  I don't know | 12:41PM |
| 6 | whether he ended up traveling or not, Your Honor.  The motion | 12:41PM |
| 7 | was on the 5th. | 12:41PM |
| 8 | THE COURT:  No, yeah, but the critical thing -- | 12:41PM |
| 9 | no, but wait.  The critical thing is you're saying that he | 12:41PM |
| 10 | traveled to the Philippines.  So I need to know what date did | 12:41PM |
| 11 | he actually travel? | 12:41PM |
| 12 | (Pause.) | 12:41PM |
| 13 | MS. S. MILLER:  I don't know what date he | 12:41PM |
| 14 | traveled.  I do know that he signed paperwork for Philippines | 12:41PM |
| 15 | in November of 2018 and that's in a different document. | 12:41PM |
| 16 | THE COURT:  I'm sorry.  Can you repeat -- okay, | 12:41PM |
| 17 | wait.  This is what -- let me just back up. | 12:41PM |
| 18 | MS. S. MILLER:  Sure. | 12:41PM |
| 19 | THE COURT:  His request that you showed me, was | 12:41PM |
| 20 | that he signed this on July 5, 2018. | 12:41PM |
| 21 | MS. S. MILLER:  Right. | 12:41PM |
| 22 | THE COURT:  His declaration to the judge?  Right? | 12:41PM |
| 23 | MS. S. MILLER:  (Nodded head.) | 12:41PM |
| 24 | THE COURT:  So a modification was made.  You said | 12:41PM |
| 25 | there was a bank account.  So you're showing me a wire | 12:41PM |

*Direct - Khamvongsa*

1    transfer account on G-2898-14; correct?                    12:41PM

2            MS. S. MILLER:  Yes, that's money coming into the   12:41PM

3    United States account from the Pacific Spotters Philippine 12:42PM

4    bank account.  That's what I was directing Your Honor to.  12:42PM

5            THE COURT:  Okay.  So this is coming -- okay, so    12:42PM

6    it's a transfer from U.S. -- no, from the Philippines to U.S.? 12:42PM

7            MS. S. MILLER:  Right.  At bottom of that page.     12:42PM

8            THE COURT:  And that's on July 31 -- well           12:42PM

9    actually the date -- the transfer is actually July 27th.   12:42PM

10           MS. S. MILLER:  Right.                               12:42PM

11           THE COURT:  All right.  Let me get these dates      12:42PM

12   right.  Okay.  I'm sorry, wire transfer from the PI -- from 12:42PM

13   the Philippines to U.S.?                                    12:42PM

14           MS. S. MILLER:  Yes, Your Honor.                     12:42PM

15           THE COURT:  All right.  And then, okay, so these    12:42PM

16   are the critical dates that I know as of right now, hold on. 12:42PM

17           Okay, so -- so the -- Mr. Crowe's declaration was   12:43PM

18   signed July 5, 2018.  The wire transfer from the Philippines 12:43PM

19   to the United States is evidence, according to the prosecutor, 12:43PM

20   on G-2898-14, which is July 27, 2018.  Okay.  So July 27,   12:43PM

21   2018.  And the date of pres -- date to present on the grand 12:43PM

22   jury indictment is January 8, 2020 -- what year?  Two?  One? 12:43PM

23           MR. MARTIN:  '21.                                    12:43PM

24           THE COURT:  Okay.  January 2021.  So the           12:43PM

25   prosecution, you're saying that he was actually in the     12:43PM

1    Philippines.  When was he in the Philippines, that's my                    12:43PM

2    question.                                                                  12:43PM

3               MS. S. MILLER:  So an exhibit that we're seeking                12:43PM

4    to introduce with this witness is the Philippine bank records.            12:43PM

5    They're not in evidence, yet, but we've marked them.  The                 12:43PM

6    defense has them.  And those records show opening the                     12:43PM

7    signature card in the Philippines for Pacific.Spotters                    12:44PM

8    Corporation on July 26, 2018.                                             12:44PM

9               THE COURT:  All right.  Okay.  Okay.  So somebody               12:44PM

10   opened an account in the Philippines?  Is that what you're                12:44PM

11   saying?                                                                   12:44PM

12              MS. S. MILLER:  Yes, Jon Walker, Crowe, Kapp.                   12:44PM

13              THE COURT:  Who opened the account?  Somebody                   12:44PM

14   opened the account.  Who opened the account?                             12:44PM

15              MS. S. MILLER:  So Mr. Walker's signature and Mr.              12:44PM

16   Crowe's are both on it, on the signature card paperwork.                  12:44PM

17              MS. MCCONWELL:  What exhibit is this?                           12:44PM

18              MS. S. MILLER:  That's 3020, which has not been                12:44PM

19   admitted, yet.                                                            12:44PM

20              MS. MCCONWELL:  It was not on our exhibit list.                 12:44PM

21              THE COURT:  Okay.  Hold on.  So there was a                     12:44PM

22   signature -- we'll get to that in a minute.  I just got to get            12:44PM

23   the dates figured out.  The signature card was signed -- there            12:44PM

24   was a signature card by Mr. Crowe and Mr. Walker.  And it was             12:44PM

25   a Philippines bank account, right?                                        12:44PM

| | | |
|---|---|---|
| 1 | MS. S. MILLER:  Yes, Your Honor. | 12:44PM |
| 2 | THE COURT:  An opening of an account? | 12:44PM |
| 3 | MS. S. MILLER:  Yes. | 12:45PM |
| 4 | THE COURT:  Okay.  Bank.  All right.  So it was | 12:45PM |
| 5 | on July? | 12:45PM |
| 6 | MS. S. MILLER:  26. | 12:45PM |
| 7 | THE COURT:  26, 2018? | 12:45PM |
| 8 | MS. S. MILLER:  Yes. | 12:45PM |
| 9 | THE COURT:  Okay.  So there was a wire transfer | 12:45PM |
| 10 | that you're focusing in on only.  And that's the only wire | 12:45PM |
| 11 | transfer that you're telling me right now, July 27, 2018; | 12:45PM |
| 12 | correct? | 12:45PM |
| 13 | MS. S. MILLER:  That is one example, yes.  There | 12:45PM |
| 14 | is a lot of example of wire transfers. | 12:45PM |
| 15 | THE COURT:  All I care about is the relevant | 12:45PM |
| 16 | sample for my decision.  So listen to -- | 12:45PM |
| 17 | MS. S. MILLER:  Yes. | 12:45PM |
| 18 | THE COURT:  Listen to that, because that's | 12:45PM |
| 19 | critical.  So July 27, 2018, since you guys don't know -- so | 12:45PM |
| 20 | the request to travel was granted August 27, 2018.  I pulled | 12:45PM |
| 21 | this out myself, ECF 129.  So it was granted.  The question | 12:45PM |
| 22 | is, what dates did he travel?  Does anybody know?  Can we try | 12:45PM |
| 23 | to get that?  Can we try -- this is the day that the judge | 12:45PM |
| 24 | granted it.  I guess I want to know what date was he in the | 12:45PM |
| 25 | Philippines, because if you're trying to say that he was | 12:45PM |

*Direct - Khamvongsa*

1    conducting business in the Philippines during a specific    12:46PM

2    timeframe, then where is it in relation to the bank records?    12:46PM

3    Okay?  I mean that's what we're talking about.    12:46PM

4                   MS. S. MILLER:  Right.  And that exhibit isn't in    12:46PM

5    evidence, yet, Your Honor.  But...    12:46PM

6                   THE COURT:  But putting that aside, even if it's    12:46PM

7    not in evidence, so give me an example.    12:46PM

8                   MS. S. MILLER:  So the signature card pages --    12:46PM

9                   THE COURT:  I got that.    12:46PM

10                   MS. S. MILLER:  Are July 26th.  The day --    12:46PM

11                   THE COURT:  You already said that.  I got that    12:46PM

12    down.  So what is the banking transaction?  You said he was    12:46PM

13    conducting banking transaction during that timeframe.  So...    12:46PM

14                   MS. S. MILLER:  Right --    12:46PM

15                   THE COURT:  No, but I'm talking about his actual    12:46PM

16    presence in the Philippines, because your theory was that he    12:46PM

17    was in the Philippines conducting business.  When was he    12:46PM

18    present?  That's my question.    12:46PM

19                   MS. S. MILLER:  I believe he was present to sign    12:46PM

20    those signature card documents in the Philippines.    12:46PM

21                   THE COURT:  How could he have been there if he    12:46PM

22    didn't get approved until after that time?    12:46PM

23                   MS. S. MILLER:  I thought you just said it was    12:46PM

24    the 26th.    12:46PM

25                   THE COURT:  August 27th.  This is July.  Did you    12:46PM

*Direct - Khamvongsa*

1   say it was July 26th?  Did you say it was July 26, 2018?                    12:47PM

2           MS. S. MILLER:  That's when he signed signature                    12:47PM

3   card documents in the Philippines.                                         12:47PM

4           THE COURT:  Okay.  But according to our court                      12:47PM

5   record, the judge did not grant his request to travel until                12:47PM

6   August 27, 2018.  So that's a month later.                                 12:47PM

7           MS. S. MILLER:  Well, perhaps he ignored and did                   12:47PM

8   it anyway, I'm not sure.                                                   12:47PM

9           THE COURT:  If he ignored it, his butt would be                    12:47PM

10  grass and he would be arrested and he'd be put in jail.  I'll              12:47PM

11  tell you that right now.  So don't say stuff like that because             12:47PM

12  you can't.  You've got to give me -- my question is, when was              12:47PM

13  he in the Philippines because you're saying -- you're arguing              12:47PM

14  that he was in the Philippines to conduct business.                        12:47PM

15          MS. S. MILLER:  Right.  What I'm saying is, he                     12:47PM

16  signed documents for bank records in the Philippines on                    12:47PM

17  July 28th -- I'm sorry, 26, 2018 and then there were large                 12:47PM

18  transfers the next day into their U.S. bank accounts from a                12:47PM

19  Philippine bank account with the same name.                                12:47PM

20          THE COURT:  Yeah, but you're not listening to me,                  12:47PM

21  though.  You argued earlier, Ms. Samantha Miller, that the                 12:47PM

22  defendant was in the Philippines during this critical period              12:47PM

23  of time.  My question is, what days was he in the Philippines?            12:47PM

24          MS. S. MILLER:  I don't know.                                      12:48PM

25          THE COURT:  Well, then I'm going to deny your                      12:48PM

```
 1    request.                                                      12:48PM

 2              MS. S. MILLER:  Well, may I respond?                12:48PM

 3              THE COURT:  You got -- no, you -- it's your         12:48PM

 4    burden.  You are here -- they're making an objection, figure  12:48PM

 5    it out.                                                       12:48PM

 6              MS. S. MILLER:  Well, my response, Your Honor, is   12:48PM

 7    --                                                            12:48PM

 8              THE COURT:  It's not good enough.  Your response    12:48PM

 9    is not good enough because it's not evidence.  All I care     12:48PM

10    about is evidence.  I don't care that you said well, he might 12:48PM

11    have just violated the court law -- court order.  Let me tell 12:48PM

12    you, these U.S. Probation offices and the United States       12:48PM

13    Attorney's office, I would assume, would be on his grass to   12:48PM

14    get a revocation and put him in jail.  So that's not a good   12:48PM

15    comeback.                                                     12:48PM

16              MS. S. MILLER:  Well, my response, Your Honor, is   12:48PM

17    that the point of all this, the point of citing to that       12:48PM

18    document at all is to show that he was swearing under oath as 12:48PM

19    a co-conspirator as to one thing about some of the paragraphs 12:48PM

20    on that declaration talk about sort of where they're located, 12:48PM

21    who works for the company.                                    12:48PM

22              THE COURT:  Let me tell you something, I already    12:48PM

23    know it, I'm a fast learner, I've already read it.  But you   12:48PM

24    come into the court on a proffer to say that the defendant was 12:48PM

25    in the Philippines during this critical period of time.       12:49PM
```

*Direct - Khamvongsa*

```
 1                 My only question is, when was he in the          12:49PM

 2     Philippines?  During -- between July 5th, no, not even that,  12:49PM

 3     from the date the judge granted his request to the time of    12:49PM

 4     date of -- to the indictment.                                 12:49PM

 5                 (Counsel conferring.)                             12:49PM

 6                 MS. S. MILLER:  Maybe I misunderstood what Your    12:49PM

 7     Honor was asking.                                             12:49PM

 8                 THE COURT:  No.  Okay.  Go ahead.  Maybe you did.  12:49PM

 9     Go ahead.                                                     12:49PM

10                 MS. S. MILLER:  So some of the documents that     12:49PM

11     have already been admitted with respect to -- from the        12:49PM

12     Philippines Civil Aviation Authority have him signing         12:49PM

13     documents in December of 2018, where he had to physically sign 12:49PM

14     documents.                                                    12:49PM

15                 THE COURT:  Okay.  Was he there?                  12:49PM

16                 MS. S. MILLER:  I assume so.                      12:49PM

17                 THE COURT:  Don't assume it.                      12:49PM

18                 MS. S. MILLER:  I mean yes.  He signed documents  12:49PM

19     as if --                                                      12:49PM

20                 THE COURT:  Hold on, hold on.  Hold on.  I don't  12:49PM

21     know if you do bail hearings.  I don't know who does bail     12:49PM

22     hearings over there in the prosecution side.  But let me tell 12:49PM

23     you, when the judge gives a defendant an opportunity to modify 12:50PM

24     his release conditions, they'll say, okay, and we would know. 12:50PM

25     The record would be he left on this date and returned on this 12:50PM
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | date.  Does anybody know the answer to that question? | 12:50PM |
| 2 | (Counsels conferring.) | 12:50PM |
| 3 | MS. S. MILLER:  What, is this an ECF number? | 12:50PM |
| 4 | MS. M. MILLER:  No.  But this is what we have | 12:50PM |
| 5 | from probation. | 12:50PM |
| 6 | MS. S. MILLER:  Okay.  Apologies, Your Honor. | 12:50PM |
| 7 | This was well before I was involved in this case, so I didn't | 12:50PM |
| 8 | have this document available to me. | 12:50PM |
| 9 | THE COURT:  I know, but can I say something?  If | 12:50PM |
| 10 | you're going to argue it, you got to be prepared on this.  So | 12:50PM |
| 11 | your proffer is that the defendant was in the Philippines | 12:50PM |
| 12 | conducting business.  All I care about right now because I've | 12:50PM |
| 13 | got the dates, I've got the start date and the end date right | 12:50PM |
| 14 | here. | 12:50PM |
| 15 | MS. S. MILLER:  Sure. | 12:50PM |
| 16 | THE COURT:  And really, the start date would | 12:50PM |
| 17 | actually be when the judge granted it August 27th, but not | 12:50PM |
| 18 | even that.  It will be the date that he actually traveled. | 12:50PM |
| 19 | So what date did he travel and what date did he | 12:50PM |
| 20 | return on that particular request, which was related to the | 12:50PM |
| 21 | declaration of Crowe?  That's all I care about.  Do you | 12:51PM |
| 22 | understand what I'm saying now? | 12:51PM |
| 23 | MS. S. MILLER:  Yes. | 12:51PM |
| 24 | THE COURT:  Go ahead. | 12:51PM |
| 25 | MS. S. MILLER:  And now I have his itinerary in | 12:51PM |

*Direct - Khamvongsa*

front of me, it looks like he left Guam on November 17, 2018.                      12:51PM

        THE COURT:  Okay.  Hold on.  So -- okay, so let          12:51PM

me see.  So the judge granted it August 27, 2018.  This is          12:51PM

when judge granted.  Okay.  And then he departed Guam on what          12:51PM

day, November what?                      12:51PM

        MS. S. MILLER:  November 17, 2018.          12:51PM

        THE COURT:  November 17, 2018.  Okay.  To.  And          12:51PM

when did he return?                      12:51PM

        MS. S. MILLER:  He returned December 1st, 2018.          12:51PM

        THE COURT:  12/1/2018.  Okay, so he was gone          12:51PM

almost like two or, yeah, two and a half, three weeks.          12:51PM

        MS. S. MILLER:  Yes, Your Honor.          12:51PM

        THE COURT:  So this is when he's in the          12:51PM

Philippines.  And where did you find this from?          12:51PM

        MR. LEON GUERRERO:  It was the itinerary provided          12:52PM

to probation, Your Honor.          12:52PM

        THE COURT:  I don't care about an itinerary.  I          12:52PM

want to know, did he make the flight.          12:52PM

        MR. LEON GUERRERO:  This is what he gave          12:52PM

probation.          12:52PM

        THE COURT:  Right.  So you could give probation          12:52PM

anything you want.          12:52PM

        MS. M. MILLER:  We're getting the affidavit that          12:52PM

he signed in the Philippines with a notary from the          12:52PM

Philippines.  We're getting that exhibit for Your Honor right          12:52PM

*Direct - Khamvongsa*

1    now.                                                          12:52PM

2             THE COURT:  Okay.  Should have had it like an        12:52PM

3    hour ago.                                                     12:52PM

4             MS. M. MILLER:  I understand, but it's part of       12:52PM

5    3003 and we only introduced certain provisions of 3003, one of 12:52PM

6    which included John Walker's signature in the Philippines on  12:52PM

7    that same date, but we're pulling that.                       12:52PM

8             THE COURT:  That's fine.  You could pull that.       12:52PM

9    But my point is, the critical timeframe, was he in the        12:52PM

10   Philippines.                                                  12:52PM

11            MS. M. MILLER:  Yes.                                 12:52PM

12            THE COURT:  Defense attorney can give a probation    12:52PM

13   officer -- listen, I've been through so many bail hearings.   12:52PM

14   I've been a judge 29 years.  I know all the games that        12:52PM

15   everybody plays with these -- I know all the games that       12:52PM

16   defendants play.  That's what I mean.  And sometimes they're  12:52PM

17   in or they're out.  Sometimes they give a judge an itinerary  12:52PM

18   and then they change their itinerary.  So it doesn't matter.  12:52PM

19   The question is, when was his actual days of travel, when was 12:53PM

20   he in the Philippines and when did he leave the Philippines.  12:53PM

21   That's what I care about.  So do we have that information?  We 12:53PM

22   have an itinerary and it could very well be, Mr. Leon         12:53PM

23   Guerrero, Ms. Miller that, yes, it is consistent with his    12:53PM

24   itinerary.  It could also very well not be that.             12:53PM

25            MS. M. MILLER:  Right.                               12:53PM

1     THE COURT:  I've seen this happen all the time. | 12:53PM
2  All right.  So, all right, so you think that he was in the | 12:53PM
3  Philippines November 17, 2018 to December 1, 2018.  Okay.  The | 12:53PM
4  wire transfer that you are discussing, this Bank of Hawaii | 12:53PM
5  transfer occurred July 27, 2018, before he was there.  Okay. | 12:53PM
6  So that's irrelevant.  This is irrelevant. | 12:53PM
7     MS. S. MILLER:  Well, I cited it to Your Honor as | 12:53PM
8  an example of why that bank account was opened and what sort | 12:53PM
9  of came after that to show that what his dec -- how his | 12:54PM
10  declaration at that time was relevant and what happened after | 12:54PM
11  that with respect to conspiracy to commit wire fraud.  So that | 12:54PM
12  was when those transfers began and they continued thereafter | 12:54PM
13  because that is right after he opened this account. | 12:54PM
14     THE COURT:  I know.  But you were telling me and | 12:54PM
15  the prosecutor this morning, I mean the defense Counsel this | 12:54PM
16  morning that he was there during these time -- this timeframe | 12:54PM
17  where he was conducting actual business.  This business of | 12:54PM
18  transfer, yeah, he signed the card in July, he even signed it | 12:54PM
19  before he -- before -- yeah, he signed it before -- he signed | 12:54PM
20  the court -- the bank in July, but he probably wasn't in the | 12:54PM
21  Philippines there. | 12:54PM
22     MS. S. MILLER:  Right.  So the sequence of events | 12:54PM
23  was, he requests permission to leave the country, an account | 12:54PM
24  is opened in the Philippine. | 12:54PM
25     THE COURT:  Okay. | 12:54PM

1          MS. S. MILLER:  Transfers start coming from that          12:54PM

2    account into the U.S. bank account, four other U.S. bank          12:54PM

3    accounts are closed, another Limey bank account is opened in          12:55PM

4    the U.S. where we see lots of money going back and forth          12:55PM

5    between the Philippine bank account.  Then he gets permission          12:55PM

6    to travel to the Philippines and he does to submit documents          12:55PM

7    to the Philippines Civil Aviation Authority establishing          12:55PM

8    Pacific Spotters, the fact that he's a director at Pacific          12:55PM

9    Spotters and registering the same aircraft that are registered          12:55PM

10   in the United States, that are the subject of the conspiracy          12:55PM

11   count.          12:55PM

12          THE COURT:  Okay, but your statement to the Court          12:55PM

13   was, he was actually in the Philippines conducting business          12:55PM

14   and you were going to pull out -- I mean actually conducting          12:55PM

15   business.  He was in the Philippines.  He was not in the          12:55PM

16   Philippines when this business was conducted.  Not this          12:55PM

17   exhibit.  I'm just talking about this exhibit.  I'm only          12:55PM

18   looking at what you guys are giving me.  So he was not in the          12:55PM

19   Philippines on July 27th, according to just what you guys have          12:55PM

20   said.  He was in the Philippines August, September, October,          12:55PM

21   four months later.          12:55PM

22          MS. S. MILLER:  Right, Your Honor.  And the          12:55PM

23   reason why it's relevant is because it shows that pattern, the          12:55PM

24   timeline of events.          12:56PM

25          THE COURT:  But that wasn't your proffer.  Your          12:56PM

1   proffer was that he was in the Philippines conducting                    12:56PM
2   business.  That was your proffer.                                        12:56PM
3                   MS. S. MILLER:  I apologize if I wasn't specific         12:56PM
4   enough with respect to the timing of each of these incidents            12:56PM
5   but --                                                                   12:56PM
6                   THE COURT:  No, you were specific.  The question         12:56PM
7   -- the thing is --                                                       12:56PM
8                   MS. S. MILLER:  I didn't realize it was granted         12:56PM
9   three months later.  I thought it was granted more quickly.  I          12:56PM
10  thought the order was granted more quickly, so I was mistaken            12:56PM
11  about that.                                                              12:56PM
12                  MS. M. MILLER:  Your Honor, just so you know,            12:56PM
13  Mr. Lujan, on behalf of Mr. Crowe, filed a pleading with the            12:56PM
14  Court and signed it as an officer of the Court stating as               12:56PM
15  follows:  "The government --" this is when we objected to a             12:56PM
16  later trip by Mr. Crowe to the Philippines.                             12:56PM
17                  "The government fails to address the basic fact         12:56PM
18  that in 2018 with this Court's approval, ECF 178, Crowe                  12:56PM
19  traveled to the Philippines and returned to Guam as he                   12:56PM
20  promised."                                                               12:56PM
21                  THE COURT:  Well, here's the deal, he -- Crowe          12:56PM
22  and Kapp and whoever else has been allowed to travel,                    12:56PM
23  including Mr. Walker, a magistrate judge, and even this Court,          12:56PM
24  will look at what is his travel history?  Or her travel                  12:57PM
25  history.  If they are following the rules, if they are not              12:57PM

1  breaking the law, then they're not a flight risk, really,           12:57PM

2  they're not a flight risk.  And you guys know that.  I mean,        12:57PM

3  the Court has to look at that under the bail statute.               12:57PM

4          But anyway, all right, so back to this.  So                12:57PM

5  that's why I'm really like going at you here, Ms. Samantha          12:57PM

6  Miller, because you're telling the Court he was in the             12:57PM

7  Philippines conducting business during a relevant transaction      12:57PM

8  of wire fraud.  And you're specifically saying the date that       12:57PM

9  he signed the card.  Not true.  He wasn't in the Philippines       12:57PM

10  then.  You said -- then you presented to the Court Exhibit        12:57PM

11  289814, which again he was not in the Philippines on that        12:57PM

12  date.                                                            12:57PM

13          MS. S. MILLER:  And I apologize, Your Honor.  I          12:57PM

14  thought that he got there sooner than he did, but it all is      12:57PM

15  relevant because that's when it started.  So the transfer        12:57PM

16  started in July.  Then as I said, accounts were closed in the    12:58PM

17  U.S., accounts were opened in the Philippines, money starts      12:58PM

18  going back and forth between the remaining U.S. accounts and     12:58PM

19  the Philippine account, then he flies there to submit the        12:58PM

20  documents to this Philippine Civil Aviation Authority for the    12:58PM

21  aircraft that are listed in Count 99 in the conspiracy to        12:58PM

22  commit wire fraud.                                               12:58PM

23          THE COURT:  Okay, so that's your theory.  Where          12:58PM

24  is the evidence that he then signed documents with leases, is    12:58PM

25  that what you're saying?                                         12:58PM

1      MS. S. MILLER:  Yes, Your Honor, so --                    12:58PM

2      THE COURT:  What exhibit will that be or has that          12:58PM

3 been?                                                          12:58PM

4      MS. S. MILLER:  Pages of that exhibit have been           12:58PM

5 admitted, one of which is it's Exhibit 3003.                   12:58PM

6      THE COURT:  Okay.  And what page?                          12:58PM

7      MS. S. MILLER:  Pages 32 through 36.                       12:58PM

8      THE COURT:  All right.  What else?                         12:58PM

9      MS. S. MILLER:  So for example --                          12:58PM

10     THE COURT:  No.  No.  Don't tell me what it is.            12:58PM

11 I don't want you guys to read anything to me.  I would rather  12:58PM

12 read it myself.  Just tell me the exhibit numbers.            12:58PM

13     MS. S. MILLER:  So that's one example.                     12:58PM

14     THE COURT:  Is there any -- are there any other           12:58PM

15 examples?                                                      12:58PM

16     MS. S. MILLER:  That entire document we didn't            12:59PM

17 admit as a whole, but the whole document evidences --         12:59PM

18     THE COURT:  I got that.  I got that.  So my point          12:59PM

19 is, is Exhibit 3003, pages 32 through 36, all of the relevant  12:59PM

20 exhibits that you want us to look at for purposes of this     12:59PM

21 proffer?  Including, including what you just gave me which is  12:59PM

22 the 2898-14 and whatever else you already gave me.            12:59PM

23     MS. S. MILLER:  So Your Honor, it would be that           12:59PM

24 entire exhibit.  Not just those pages.  And then 3020 is the  12:59PM

25 Philippine bank record, which have not been admitted yet.     12:59PM

1   We're seeking to admit that --                                    12:59PM

2           THE COURT:  All I care about is just give me              12:59PM

3   exhibits.  Give it to me and the defense Counsels.  What are      12:59PM

4   the exhibit numbers?  Okay.  We've got 3003, 32 through 36,       12:59PM

5   I'll look at that.  What's the other exhibit?                     12:59PM

6           MS. S. MILLER:  3020.                                     12:59PM

7           THE COURT:  Okay.  And that's the bank account?          12:59PM

8           MS. S. MILLER:  The Philippine bank records, yes,         12:59PM

9   Your Honor.                                                       12:59PM

10          THE COURT:  Anything else?                                12:59PM

11          MS. S. MILLER:  There is one other document we            12:59PM

12  were going to admit with this witness, which is the Limey --     12:59PM

13          THE COURT:  Remember, all I care about is what's          12:59PM

14  relevant to this issue.  I don't care about anything else.        12:59PM

15  Because I -- don't make me read something I don't need to         12:59PM

16  read.                                                             01:00PM

17          MS. S. MILLER:  Of course, Your Honor.  So those          01:00PM

18  -- that exhibit is 2939.                                          01:00PM

19          THE COURT:  Okay.  And what is that?                      01:00PM

20          MS. S. MILLER:  That's the Limey account bank             01:00PM

21  records.                                                          01:00PM

22          THE COURT:  Okay.                                         01:00PM

23          MS. S. MILLER:  And the last two pages of that            01:00PM

24  document, which I believe -- so Counsel objected initially        01:00PM

25  because we didn't have the right witness for it, so those have    01:00PM

*Direct - Khamvongsa*

```
 1   not been admitted, but I believe it's page 82 and 83 of that        01:00PM
 2   document.                                                           01:00PM
 3            THE COURT:  Make sure it's the right page, don't           01:00PM
 4   just -- make sure you send us to the right pages.                   01:00PM
 5            MS. S. MILLER:  Yes, let me triple check here.             01:00PM
 6            (Pause.)                                                   01:00PM
 7            THE COURT:  Carmen, maybe you could pull these             01:00PM
 8   for me, too.  We have the hardcopy.  I want to see Exhibits         01:00PM
 9   3003, pages 32 through 36, Exhibit 3020 and then Exhibit 2939.      01:00PM
10   What page?                                                          01:00PM
11            MS. S. MILLER:  So the first page, which would be          01:00PM
12   the signature page so you could see who's on that and then          01:00PM
13   pages 82 and 83.                                                    01:00PM
14            THE COURT:  So 82 and 83.  Those are the only two          01:00PM
15   pages --                                                            01:01PM
16            MS. S. MILLER:  I just said that they are not              01:01PM
17   admitted, yet, but yes, those are the relevant pages.              01:01PM
18            THE COURT:  Okay, they're not admitted.  So we're          01:01PM
19   -- you're just trying to see if she even has -- she's trying        01:01PM
20   to lay a proffer here.  All right.  Any other exhibits?            01:01PM
21            MS. S. MILLER:  Anything else?                             01:01PM
22            MS. M. MILLER:  No.                                        01:01PM
23            MS. S. MILLER:  No.  That should be it.                    01:01PM
24            THE COURT:  So let's be clear so we're all on the          01:01PM
25   same page, we're all speaking the same language.  Are you           01:01PM
```

*Direct - Khamvongsa*

```
1    saying then that these exhibits will demonstrate to the Court        01:01PM
2    that the defendant, I'm sorry, that Mr. Crowe, in particular,        01:01PM
3    was in the Philippines at relevant times that are pertinent to       01:01PM
4    Count 99?                                                            01:01PM
5              MS. S. MILLER:  Yes, Your Honor.                           01:01PM
6              THE COURT:  As it deals with wire fraud?  As it            01:01PM
7    deals -- is that what you're saying?  Yes?                           01:01PM
8              MS. S. MILLER:  Conspiracy to commit wire fraud,           01:01PM
9    yes.                                                                 01:01PM
10             THE COURT:  Conspiracy to commit wire fraud and            01:01PM
11   specifically as it deals with -- that's Count 99.  But also as       01:01PM
12   it deals with Counts 100 to 104, which focus in on the               01:01PM
13   execution of the fraud?  Is that what you're saying?                 01:01PM
14             MS. S. MILLER:  It's the same -- yes, the wire             01:02PM
15   fraud went between the same bank account.  So it's relevant in       01:02PM
16   that, it's not those specific transactions because as we said,       01:02PM
17   Your Honor, earlier, we didn't get the Philippine bank records       01:02PM
18   until very recently.                                                 01:02PM
19             THE COURT:  So the answer is no, it has nothing            01:02PM
20   to do with 100 to 104, because 100 to 104 is very specific.          01:02PM
21             MS. S. MILLER:  Sure.                                      01:02PM
22             THE COURT:  So is it relevant to 100 to 104 or is          01:02PM
23   it not relevant?                                                     01:02PM
24             MS. S. MILLER:  It is less relevant than it is to          01:02PM
25   99.                                                                  01:02PM
```

*Direct - Khamvongsa*

```
 1            THE COURT:  No, forget that.  If you're a              01:02PM
 2    prosecutor -- you are the prosecutor, are you going to prove   01:02PM
 3    that -- what are you trying to prove then as it relates to     01:02PM
 4    this count?  Are you going to -- are you going to introduce    01:02PM
 5    evidence that this proffer will prove that he committed wire   01:02PM
 6    fraud, the execution of wire fraud is 100 to 104 here?         01:02PM
 7            MS. S. MILLER:  No, Your Honor.                        01:02PM
 8            THE COURT:  Okay, so then it's no.                     01:02PM
 9            MS. S. MILLER:  Okay.                                  01:02PM
10            THE COURT:  No, I mean it's no.  Right?                01:02PM
11            MS. S. MILLER:  Well, it's involving the same         01:02PM
12    bank account, some of the same bank accounts.  The specific   01:02PM
13    wire fraud transactions involve the same U.S. bank accounts.  01:03PM
14            THE COURT:  Okay, okay.  That may be so, but Ms.       01:03PM
15    Miller.  Samantha Miller.                                     01:03PM
16            MS. S. MILLER:  Yes.                                   01:03PM
17            THE COURT:  All we care about the pros -- the         01:03PM
18    defense is arguing against specific counts that you are saying 01:03PM
19    is relevant.  So it's either relevant to 100 to 104 in terms  01:03PM
20    of your burden of proof and the answer, I think you're saying, 01:03PM
21    is not relevant to the execution of wire fraud on these       01:03PM
22    counts, the 2015 date.  It's not relevant to any of that.     01:03PM
23            MS. S. MILLER:  Okay, Your Honor, I will concede      01:03PM
24    that.                                                         01:03PM
25            THE COURT:  You will concede that, right?             01:03PM
```

*Direct - Khamvongsa*

```
1              MS. S. MILLER:  Yes.                              01:03PM

2              THE COURT:  I'm not trying to make you tell me,   01:03PM

3    I'm not trying to make you answer the way I think to me seems 01:03PM

4    the certain way.  I want to make sure that I understand your 01:03PM

5    theory how you're proving your case.  So is it or is it not  01:03PM

6    relevant to your prosecution beyond a reasonable doubt of    01:03PM

7    Counts 100 to 104?                                           01:03PM

8              MS. S. MILLER:  It is not relevant, Your Honor.    01:03PM

9              THE COURT:  Okay.  So it's out.  Let's not even    01:03PM

10   talk about that.  All right.  So that's -- overruled on that 01:03PM

11   objection, Mr. Martin.  Because you thought -- you were      01:03PM

12   talking about 100 to 104.  Okay.  All right.  Anything else? 01:04PM

13   Are these all the exhibits?                                  01:04PM

14             MS. S. MILLER:  Yes, Your Honor.  For count --     01:04PM

15   relevant to Count 99, conspiracy to commit wire fraud.       01:04PM

16             THE COURT:  And your focus is just Count 99?       01:04PM

17             MS. S. MILLER:  Yes, Your Honor.                   01:04PM

18             THE COURT:  All right.  Thank you.  Now defense?   01:04PM

19   Have you looked at all this?  You want to look at it?  Because 01:04PM

20   all I looked at -- I have looked --                          01:04PM

21             MR. MARTIN:  I just looked at the... excuse me,    01:04PM

22   Your Honor, what we were given before we went to lunch.      01:04PM

23             THE COURT:  Yes.                                   01:04PM

24             MR. MARTIN:  That's the only thing.  The other     01:04PM

25   exhibits, I have not looked at.                              01:04PM
```

```
 1              THE COURT:  Okay.  Excuse me.  2898-14, the Bank    01:04PM

 2   of Hawaii?                                                    01:04PM

 3              MR. MARTIN:  That's the one I looked at.           01:04PM

 4              THE COURT:  Okay, I have looked at it, too, but I  01:04PM

 5   have not looked at everything else, yet, because she's just  01:04PM

 6   announced it.                                                 01:04PM

 7              MR. MARTIN:  Right.                                01:04PM

 8              THE COURT:  Okay.  So you want to look at it?      01:04PM

 9              MR. MARTIN:  I would appreciate the opportunity.   01:04PM

10              THE COURT:  Why don't we take, like, take about    01:04PM

11   15 minutes to look at it.  I'll pull mine up and then we'll go 01:04PM

12   to that and look at it.  You have any questions on her proffer 01:05PM

13   so that we all are on the same wavelength?                   01:05PM

14              MR. MARTIN:  The only thing I was saying, Your     01:05PM

15   Honor, related to Counts 100 through 104 was that -- my point 01:05PM

16   was that the conspiracy count relates to those counts and the 01:05PM

17   date therefore that makes this relevant is the 2015 area,    01:05PM

18   therefore, Mr. Crowe's affidavit in 2018 is three years after 01:05PM

19   the alleged conspiracy to commit wire fraud that is supported 01:05PM

20   by Counts 100 through 104.                                   01:05PM

21              THE COURT:  No, you're right on that.  I agree     01:05PM

22   with you on that.  I'm just -- so it is -- but it's irrelevant 01:05PM

23   to -- you're right, I mean I agree with you on that.  So I    01:05PM

24   shouldn't have said -- anyway, your objection should be      01:05PM

25   sustained on that.  That's what I meant to say.  It is       01:05PM
```

*Direct - Khamvongsa*

sustained on that.  But she's saying up to the present.           01:05PM

That's what she's saying.  That's their theory now.  Is that      01:05PM

right?                                                            01:05PM

            MS. S. MILLER:  Yes.  And that's what's stated in     01:05PM

Count 99.                                                        01:06PM

            MR. MARTIN:  And I have a problem with up to the      01:06PM

present, Your Honor, in that, you know, we're getting to a       01:06PM

point where we're starting to amend this indictment.            01:06PM

            MS. S. MILLER:  None of the documents I just         01:06PM

cited, Your Honor, go past the indictment date.                 01:06PM

            THE COURT:  Hold on.  Hold on.  I think I made a     01:06PM

ruling that if -- if -- if the charge -- if the conspiracy is   01:06PM

inextricably intertwined, if the charge is inextricably         01:06PM

intertwined with what they're trying to prove with regard to    01:06PM

up to present, then that is allowed under conspiracy law.        01:06PM

Wouldn't you agree with that?                                   01:06PM

            MR. MARTIN:  I saw the ruling, Your Honor.  I'm      01:06PM

just saying, we're going beyond that.  We have received in      01:06PM

excess of a hundred new exhibits and we get 'em every day.      01:06PM

I'm sure if we haven't got 'em yet, we're going to get new      01:06PM

exhibits again today.  But every day we get new exhibits.       01:06PM

This -- this -- I do know this, this is 2939, pages 81, excuse  01:06PM

me, 82 and 83, that's a new exhibit.  We just --                01:06PM

            MS. S. MILLER:  No, it's not.                        01:07PM

            THE COURT:  Wait.  Wait.  Wait.  One person at a     01:07PM

*Direct - Khamvongsa*

1    time.  Okay, let him make his objection, then you guys can     01:07PM

2    come back.  Go.     01:07PM

3              MR. MARTIN:  Let me back up, Your Honor.  It is     01:07PM

4    not a new exhibit.  It is a summary chart we haven't agreed     01:07PM

5    to.     01:07PM

6              THE COURT:  All right.  Let's...see that, can I     01:07PM

7    just say something?  That's the danger, Counsels, when you're     01:07PM

8    a prosecutor and you want to extend a conspiracy beyond what's     01:07PM

9    contained in the indictment.  We're going to get these delays     01:07PM

10   and listen, listen to my experience.  I'm telling you now.     01:07PM

11   Whether you take it or not, that's up to you and whether I     01:07PM

12   change my ruling on the up to present, that's another issue.     01:07PM

13   But I am concerned -- I don't -- I don't necessarily agree     01:07PM

14   that you're amending the indictment, but I do think you're     01:07PM

15   complicating your prosecution and the defense.     01:07PM

16             I think that that is -- you know what, when you     01:07PM

17   go in with a clean indictment and you're saying these are the     01:07PM

18   dates, these are the charges, this is wire fraud, these are     01:08PM

19   the -- this is the execution of the wire fraud,     01:08PM

20   blah-blah-blah, and we know specifically what dates, which     01:08PM

21   wire transfer, that's easy.     01:08PM

22             But when we start coming in to, okay, the     01:08PM

23   conspiracy is continuing even up to this moment.  Okay.  Well,     01:08PM

24   put aside that up to this moment, because I have a bar date,     01:08PM

25   which I said was, I should know this by heart, is January 8,     01:08PM

*Direct - Khamvongsa*

1    2021.  January 2021.  And that -- you know, it's complicated    01:08PM
2    by the fact that this is the third indictment in this case    01:08PM
3    against these defendants, No. 1.    01:08PM
4            And No. 2, it seems like you're building evidence    01:08PM
5    when you may really just have a good case -- sufficient case    01:08PM
6    with which you have in the indictment.  But I mean, I'm not    01:08PM
7    trying to tell you guys how to run your prosecution, but I'm    01:08PM
8    just warning you that these issues keep percolating.  Whether    01:08PM
9    you take that for what it's worth and... yeah, I mean I think    01:09PM
10   Mr. Martin makes good points.  You may not like to hear that,    01:09PM
11   but he's a defense Counsel.  He's got to represent his client    01:09PM
12   to the best of his ability and I understand the prosecution    01:09PM
13   can be aggressive and wanting, in the best interest of the    01:09PM
14   United States of America, to nail whoever they want to nail on    01:09PM
15   the charges.    01:09PM
16           But oftentimes, sometimes it's better to stay    01:09PM
17   within the confines of what was presented to the grand jury    01:09PM
18   because -- because some of the stuff was not presented to the    01:09PM
19   grand jury.  The ongoing conspiracy beyond -- I mean well, it    01:09PM
20   may not have been presented to the grand jury because you    01:09PM
21   unveiled it after that.  Correct?  Is that a fair statement?    01:09PM
22           MS. S. MILLER:  Yes.  Although all these    01:09PM
23   documents I just told Your Honor about focus on the timeframe    01:09PM
24   of sort of middle of 2018 to middle of 2019, which is well    01:09PM
25   before the second superseding indictment in January of 2021.    01:09PM

*Direct - Khamvongsa*

```
 1                THE COURT:  But the point is, this is the third     01:09PM

 2    indictment.                                                     01:09PM

 3                MS. S. MILLER:  Right.                               01:10PM

 4                THE COURT:  Three indictments, the defendants       01:10PM

 5    have gone through three indictments.  That's a lot.             01:10PM

 6                MS. S. MILLER:  Well, the interesting thing is,     01:10PM

 7    these things that we're talking about right now happened        01:10PM

 8    within the three or four months following the first            01:10PM

 9    indictment.  That's what makes them highly relevant.            01:10PM

10                THE COURT:  Okay.  And so but, but, but -- okay,    01:10PM

11    so -- so that's not -- that's -- that's a good point.  But my   01:10PM

12    point is, we're going through it and you're saying that this    01:10PM

13    evidence has come through, you're just coming through this,     01:10PM

14    these guys are just receiving it.  But they're really focusing  01:10PM

15    on what's contained within the indictment.  Do you understand?  01:10PM

16    They're looking at specific dates.  2015, execution of wire     01:10PM

17    fraud, that's what they're looking at.  You're saying that      01:10PM

18    hey, you know what, the conspiracy continued on up to           01:10PM

19    January 8, 2021, but the indictment says 2015 on Count 99.      01:10PM

20    That's what I'm saying.  That's three years later.  Or no, let  01:10PM

21    me see, '15, '16, '17, '18, '19, '20; that's six years later.   01:10PM

22    Think about that.  Yeah.                                        01:11PM

23                MR. MARTIN:  Your Honor.                            01:11PM

24                THE COURT:  Yes, Mr. Martin?  Tell the jury it'll   01:11PM

25    be another 20 minutes.                                          01:11PM
```

| | |
|---|---|
| 1 | MR. MARTIN:  I have in my hand -- | 01:11PM |
| 2 | THE COURT:  They could take their smoke break. | 01:11PM |
| 3 | Yes? | 01:11PM |
| 4 | MR. MARTIN:  I have in my hand what was filed | 01:11PM |
| 5 | this morning by the government, ECF 1595, filed, excuse me | 01:11PM |
| 6 | yesterday, June 7, 2022, is the *United States' Fourth Amended* | 01:11PM |
| 7 | *Exhibit List*.  It is 96 pages long. It has more new exhibits | 01:11PM |
| 8 | on it.  And two of the exhibits that they've asked you to rely | 01:11PM |
| 9 | on are outside the exhibit list.  Their exhibit went to 2,940 | 01:11PM |
| 10 | and we're now at 2,000 -- excuse me, 3,051, Exhibits 3003, | 01:11PM |
| 11 | pages 32 and 36 -- through 36, and Exhibit 3020 are both | 01:11PM |
| 12 | beyond the Court's order for them to turn over exhibits to us | 01:12PM |
| 13 | and it continues to happen every day.  And this is -- I | 01:12PM |
| 14 | mean... | 01:12PM |
| 15 | THE COURT:  Okay, you know what? | 01:12PM |
| 16 | MR. MARTIN:  We're not getting notice of what | 01:12PM |
| 17 | we're defending against when they drop documents, and big | 01:12PM |
| 18 | documents, on us every day. | 01:12PM |
| 19 | THE COURT:  Good point, if what you're saying is | 01:12PM |
| 20 | true, that's a good point.  That's a good point. | 01:12PM |
| 21 | MR. MARTIN:  Well, here's what I got yesterday. | 01:12PM |
| 22 | MS. MCCONWELL:  Hansen joins. | 01:12PM |
| 23 | THE COURT:  Uh-huh.  You tell them they could | 01:12PM |
| 24 | take -- | 01:12PM |
| 25 | MR. MARTIN:  These are Guzzetti exhibits that we | 01:12PM |

*Direct - Khamvongsa*

```
 1   got couple days ago.  I mean, and I get something like this      01:12PM
 2   every night, Judge.                                              01:12PM
 3              MS. S. MILLER:  May I respond?                         01:12PM
 4              THE COURT:  Yeah, Hansen joins?                        01:12PM
 5              MS. MCCONWELL:  Yeah, Hansen joins.                    01:12PM
 6              THE COURT:  What's that?                               01:12PM
 7              MS. MCCONWELL:  These are some of the documents        01:12PM
 8   that they have given us that are new that were not on the        01:12PM
 9   prior exhibits.                                                  01:12PM
10              THE COURT:  So how much inches of documents is         01:12PM
11   that?                                                            01:12PM
12              MS. MCCONWELL:  Well, I would say at least -- I        01:12PM
13   would say when I put the rest of these in, it's at least six,    01:12PM
14   maybe seven.                                                     01:13PM
15              MR. MARTIN:  Doesn't go to the space station.         01:13PM
16              MS. MCCONWELL:  Doesn't go to the space station.      01:13PM
17              THE COURT:  Obviously.  Obviously it's not            01:13PM
18   terabytes, Mr. Martin.  (Laughing.)  I don't even know what      01:13PM
19   terabytes is.  All right.  Yeah.  Is that true?  Wait.  Wait.    01:13PM
20   Let me ask, before you respond.                                  01:13PM
21              MS. S. MILLER:  Sure.                                  01:13PM
22              THE COURT:  Is it true that the prosecution is        01:13PM
23   dropping exhibits to the defense Counsels daily or almost        01:13PM
24   daily new exhibits?                                              01:13PM
25              MS. S. MILLER:  I don't think it's daily.  I          01:13PM
```

1    would say we've given them a small number compared to the          01:13PM

2    entire exhibit list of new exhibits.  But Your Honor,              01:13PM

3    unfortunately --                                                   01:13PM

4              THE COURT:  No, no, no, strike that.  Let's go to        01:13PM

5    another question.                                                  01:13PM

6              MS. S. MILLER:  No, it's not daily.                      01:13PM

7              THE COURT:  Okay, forget the daily.  Since this          01:13PM

8    trial started 20 -- how many days ago, Carmen?  Trial dates,       01:13PM

9    right?  Since the trial started 27 trial days ago, has the         01:13PM

10   prosecution been dropping Exhibits to the defense, new exhibit     01:14PM

11   -- a new exhibit list containing new exhibits?                     01:14PM

12             MS. S. MILLER:  Yes.                                     01:14PM

13             THE COURT:  And how many of those trial dates            01:14PM

14   have you been doing that, would you say?  Honestly?                01:14PM

15   Approximately?                                                     01:14PM

16             MS. S. MILLER:  Maybe ten times?                         01:14PM

17             THE COURT:  That's a lot.  Okay.  So was it one          01:14PM

18   page?                                                              01:14PM

19             MS. S. MILLER:  No.                                      01:14PM

20             THE COURT:  On the average, how many pages?              01:14PM

21             MS. S. MILLER:  Some were one page, some were            01:14PM

22   longer.                                                            01:14PM

23             THE COURT:  Like how many much equals longer?           01:14PM

24             MS. S. MILLER:  You know, I don't think there are        01:14PM

25   any over a hundred pages.                                          01:14PM

1     THE COURT:  A hundred pages?  I'll tell you this,        01:14PM

2  if I was the defense Counsel, I would say that's not fair.  In        01:14PM

3  the middle of trial, in the middle of -- not in the middle of        01:14PM

4  trial, we are now at end of the trial with big -- big        01:14PM

5  witnesses testifying, experts and so forth.  And these guys        01:14PM

6  are getting exhibits dropped on them 10 out of 27 days?  Some        01:14PM

7  of them could be as high as a hundred pages?  That's not good.        01:14PM

8     MS. M. MILLER:  Your Honor, to be fair.        01:15PM

9     MS. S. MILLER:  Let me respond, please.        01:15PM

10     THE COURT:  Yeah.  Ms. Marie Miller.        01:15PM

11     MS. M. MILLER:  Yes?        01:15PM

12     THE COURT:  She could do it.        01:15PM

13     MS. S. MILLER:  Maybe.        01:15PM

14     THE COURT:  I know -- I know that you are the        01:15PM

15  lead Counsel but -- let your co-Counsels fly.  Go.        01:15PM

16     MS. S. MILLER:  My response, Your Honor, is that        01:15PM

17  I have been a part of this because I'm on the team of the        01:15PM

18  folks who are sitting here in Guam, that the second we heard        01:15PM

19  when we came back from our six-week hiatus -- so before that,        01:15PM

20  remember we initially had --        01:15PM

21     THE COURT:  Just answer the question.        01:15PM

22     MS. S. MILLER:  So we started hearing a        01:15PM

23  completely -- two different defenses that we never heard        01:15PM

24  before.  One was, they're going to blame it all on Crowe        01:15PM

25  because he got severed.        01:15PM

1   The second was that Mr. Walker stepped away from
2   the business.  So we have been scrambling to put -- that's not
3   -- that was not our focus up until now.  But because they
4   raised that the second we got back here, we've been scrambling
5   to put together documents specifically to refute that because
6   we weren't focused on that before.
7           THE COURT:  So you're saying all the documents
8   out of the 10 to 27 days, those documents are there to be
9   refutation of what you believe is the defense Counsel's
10  defense?
11          MS. S. MILLER:  100%.
12          THE COURT:  Well, I don't think it's 100% because
13  you are saying in this particular matter right now as we
14  speak, these exhibits that you've just dropped to these
15  defense Counsels and to the Court, that this is part of the
16  ongoing conspiracy, that's what you're saying.
17          MS. S. MILLER:  Well, right and that it continues
18  till today.
19          THE COURT:  Right.  So that is part of the
20  indictment.
21          MS. S. MILLER:  Right, but this shows -- I mean
22  these documents all show that Crowe and Walker together were
23  heavily involved, holding hands, marching to the Philippines
24  and doing -- moving their operations there.  So we're showing
25  two things; that Crowe wasn't the only man at the hour to

*Direct - Khamvongsa*

1    defeat that defense, and two, that Mr. Walker also was heavily                01:16PM

2    involved after 2011.  That was the year they cited.  So these                 01:16PM

3    are in 2018 showing Mr. Crowe and Mr. Walker --                               01:16PM

4                THE COURT:  Wait, wait, wait.  Okay, but first of                 01:16PM

5    all, Crowe is not on trial.  But --                                           01:16PM

6                MS. S. MILLER:  But they're blaming him.  That's                  01:17PM

7    their defense.                                                                01:17PM

8                THE COURT:  Is it?                                                01:17PM

9                MS. S. MILLER:  Yes.                                              01:17PM

10               THE COURT:  I think their defense is a lot of                     01:17PM

11   things.                                                                       01:17PM

12               MS. S. MILLER:  Well, that's one of them.                         01:17PM

13               THE COURT:  I think their defense is a lot of                     01:17PM

14   things.  That you may think that.  I don't know what they're                  01:17PM

15   going to argue, but you're using this, though, to show --                     01:17PM

16   let's focus, as an example, demonstrative exhibit that this                   01:17PM

17   particular exhibits that you have just given me and the                       01:17PM

18   defense Counsel, you're saying that this is part of your                      01:17PM

19   burden of proof for the conspiracy?  That's what you've just                  01:17PM

20   told us.                                                                      01:17PM

21               MS. S. MILLER:  Yes.                                              01:17PM

22               THE COURT:  Not for refutation, but for really as                 01:17PM

23   a proof of conspiracy, your burden of proof.                                  01:17PM

24               MS. S. MILLER:  Well, that's at the same time.                    01:17PM

25               THE COURT:  No, but that's not what you said when                 01:17PM

*Direct - Khamvongsa*

1    you made your proffer.  Your proffer was, this is part of our          01:17PM

2    proof for Count 99.  Now, if that's true --                            01:17PM

3              MS. S. MILLER:  To show their relationship, yes.            01:17PM

4              THE COURT:  No, you don't get it.  You're not               01:17PM

5    listening to me.  I don't know.  Some attorneys just don't             01:17PM

6    listen to the judge.                                                   01:17PM

7              My point is, Ms. Miller, what I'm telling you is            01:17PM

8    that if this is part of your Count 99 burden of proof, then            01:18PM

9    this should have been given to them way before today.  That's          01:18PM

10   my point.  If it's part of a refutation only, that Walker was          01:18PM

11   not around and so forth, that's a little different story.              01:18PM

12             Ut the fact is, if the evidence truly is, and you          01:18PM

13   guys really better think about this, if the evidence is truly          01:18PM

14   is that out of the 27 trial days, that close to half of those          01:18PM

15   days these defense Counsels, these defendants, have been               01:18PM

16   receiving new exhibits for purposes of your conspiracy theory          01:18PM

17   under the indictment, that is a no-no.  And I could exclude            01:18PM

18   all of that right now and say that you can't even prove                01:18PM

19   anything up to January 8, 20 -- 2021.  So that's concerning.          01:18PM

20             MS. S. MILLER:  I say this with the most respect            01:18PM

21   for Your Honor, but I don't think you can prove a count                01:18PM

22   without disproving a defense at the same time.  So it's our            01:19PM

23   burden of proof, but it's also our burden to disprove their            01:19PM

24   theory.                                                                01:19PM

25             THE COURT:  You can prove.  But that's okay.  But           01:19PM

*Direct - Khamvongsa*

the problem is you can't -- you can't come into Court -- that

could be on rebuttal.  Save it for rebuttal.  But you're

trying to do this in your case in chief and you're trying to

put it under the guise of proving it as part of your burden of

proof for your case in chief.  That's what's happening.

         There is one thing to say a burden of proof and

there is another thing to say I'm going to rebut the defense.

Because if it was a rebuttal of a defense, you don't even have

to give them, you do not have to give the defense Counsel

notice.

         MS. S. MILLER:  Well, that has been our -- what

we said to Your Honor this entire time when we brought in new

documents is that we're rebutting the defense that they've

raised through cross-examination.

         THE COURT:  Yeah, but that's not what you're

doing with this.  I'm talking about case in point.  This

particular proffer is for your case in chief.  You've just

argued that.  "Judge, I need this evidence for Count 99

because I have to prove it beyond a reasonable doubt."  Did

you not say that?

         MS. S. MILLER:  Right.  But my opinion, Your

Honor, is that proving it beyond a reasonable doubt is also

disproving what they're trying to do otherwise.  So it does

both things; it shows the relationship between these

defendants and it disproves that Crowe is the only one running

1   the show.                                                    01:20PM

2           THE COURT:  Okay.  Good point.  But the problem      01:20PM

3   is that your proof, if you're going to prove it beyond a     01:20PM

4   reasonable doubt, these defendants, any defendant that comes 01:20PM

5   into my Court, they have the right to have notice of what    01:20PM

6   they're defending against.                                   01:20PM

7           Now if they bring up a defense in the middle of      01:20PM

8   trial and you want to refute that, that's one thing.  You can 01:20PM

9   impeach them and so forth.  You can even have a rebuttal and  01:20PM

10  rebut that in your case in chief.  You could do that.        01:20PM

11          MS. S. MILLER:  And I think that's what we're        01:20PM

12  trying to do.                                                01:20PM

13          THE COURT:  No, no, you're not.  You're trying to    01:20PM

14  integrate it within the burden of proof that you have and    01:20PM

15  you're saying that.  Now you're your theory -- your proffer  01:20PM

16  changes.                                                     01:20PM

17          MS. M. MILLER:  Your Honor, I want to remind         01:20PM

18  everyone, we're talking about Exhibit 761, which was on our  01:21PM

19  original exhibit list, which is Mr. Crowe's affidavit.  We   01:21PM

20  have had it on our list the entire time.                     01:21PM

21          MS. S. MILLER:  And it's been admitted.              01:21PM

22          MS. M. MILLER:  Ms. Miller is not -- she's           01:21PM

23  arguing to Your Honor why that particular affidavit is       01:21PM

24  relevant and using additional evidence to show why that's    01:21PM

25  relevant.                                                    01:21PM

```
 1          THE COURT:  Listen, you guys -- no, you don't      01:21PM
 2    have to tell me that.  I know that.  But she's dropping out --  01:21PM
 3    she's dropping in Exhibit 3003, 3020, 2939 and those pages to  01:21PM
 4    show that this is relevant to her burden of proving Count 99.  01:21PM
 5    Why wasn't this provided to the defense a long time ago?  01:21PM
 6          MS. M. MILLER:  First of all, 3003 is rebuttal.  01:21PM
 7    Secondly, we don't need it to use 761, which was already  01:21PM
 8    produced to the defense.  We went down this rabbit hole  01:21PM
 9    because of arguing in response to the defense why Mr. Crowe's  01:21PM
10    affidavit was in fact a co-conspirator statement.  Your Honor  01:21PM
11    had already admitted it as a co-conspirator statement against  01:21PM
12    Hansen.  01:22PM
13          THE COURT:  Okay.  That's true.  So even if I  01:22PM
14    admitted a co-conspirator statement, the way in which she's  01:22PM
15    presenting this now, is this -- this is a declaration, put  01:22PM
16    aside the co-conspirator, why do you even need this, okay.  01:22PM
17    But put aside, because you guys want to be cumulative.  I do  01:22PM
18    think is a cumulative issue, too.  But putting that aside,  01:22PM
19    this is your theory.  01:22PM
20          You guys are putting in a declaration used in a  01:22PM
21    bail hearing in a modification of pretrial release.  And  01:22PM
22    you're trying to say that, hey, you know what, Crowe got to go  01:22PM
23    to the Philippines and he was conducting business.  And that  01:22PM
24    is part of our burden of proof of Count 99.  I mean, I don't  01:22PM
25    know, I'm not going to repeat myself.  I already know what I  01:22PM
```

1    think.  I know this.  I mean you guys, remember, I'm a former    01:22PM

2    prosecutor.  I totally understand bail --    01:22PM

3                MS. M. MILLER:  No, I think --    01:22PM

4                THE COURT:  -- bail and stuff.    01:22PM

5                MS. M. MILLER:  I think we should just move on at    01:22PM

6    this point, Your Honor.  We'll withdraw.    01:22PM

7                THE COURT:  Can I tell you something?    01:22PM

8                MS. M. MILLER:  Yes.    01:22PM

9                THE COURT:  Let me just say something.    01:22PM

10               MS. M. MILLER:  Yes, Your Honor.    01:22PM

11               THE COURT:  I think you should regroup here.  And    01:22PM

12   I say this in all sincerity because we are looking at a case    01:22PM

13   where -- and we're looking at a very serious case, both for    01:23PM

14   the United States and for the defense.  You guys are...    01:23PM

15   everybody, okay, sometimes there is a lot of unnecessary    01:23PM

16   arguments and proffers and -- that I believe are being made    01:23PM

17   here.  You guys have less than a hundred -- let's say a    01:23PM

18   100-count indictment.  We've thrown out some of the stuff, but    01:23PM

19   not a lot, or removed it.  All right.    01:23PM

20               So you got -- have this big indictment that you    01:23PM

21   have filed with the grand jury and the -- I'm sorry, the grand    01:23PM

22   jury has returned against Mr. Walker only, right now, and    01:23PM

23   Hansen Helicopters.    01:23PM

24               It just keeps -- if you keep it simple and just    01:23PM

25   focus on the indictment , it's so much easier.  But I do    01:23PM

```
1    believe and I'm warning you and I may even change my mind on          01:23PM
2    something with regard to this inextricably intertwined because        01:23PM
3    it's getting too complicated.  You guys are spinning your             01:24PM
4    wheels, we're wasting jury time.  These jurors want to be --          01:24PM
5    these jurors have been very dedicated.  And you know that.            01:24PM
6    They even said, Judge, we'll stay late and they've stayed late        01:24PM
7    every night last week or so.  And they're even going to come         01:24PM
8    in Saturdays.  They've been coming on Saturday.                       01:24PM
9            But you might really need to consider, do you                 01:24PM
10   real need to go down the line of ongoing conspiracy?  I really        01:24PM
11   think you better regroup.  So I'm going to it to take a               01:24PM
12   15-minute recess and maybe you should think about it.  I know         01:24PM
13   that you might think that I'm interfering and I'm trying --           01:24PM
14   I'm not interfering.  I'm talking about case management.  I'm         01:24PM
15   just telling you that I believe as your trial judge, that            01:24PM
16   there is a lot of unnecessary arguing and a lot of expended          01:24PM
17   time that you don't need.                                            01:24PM
18           Assuming you believe you have a strong case,                 01:24PM
19   which I think you do have a strong case, but I also think that       01:25PM
20   there is a strong defense, too.  You know you've got very good       01:25PM
21   defense lawyers here, got good prosecution here.  Why are you        01:25PM
22   making it more complicated than you should.  So maybe you            01:25PM
23   should regroup.  15 minutes.  I'll see you in 15 minutes.            01:25PM
24           MS. S. MILLER:  Thank you, Your Honor.                       01:25PM
25           (Recess taken at 1:25 p.m.)                                  01:25PM
```

*Direct - Khamvongsa*

```
 1              (Back on the record at 1:41 p.m.)              01:41PM

 2         THE COURT:  Okay.  We're back on the record.  All    01:42PM

 3    Counsels present, defendants present.  Let me just make a  01:42PM

 4    comment here.  All right.  So let me just say, the         01:42PM

 5    inextricably intertwined is only an issue if it's -- if it's 01:42PM

 6    from the date of the indictment, I just want to make sure I 01:42PM

 7    got this because I don't want to mix this up here.         01:42PM

 8              So the date of the second superseding indictment 01:42PM

 9    is...where is my second superseding indictment.  Okay,     01:42PM

10    January 8, 2021.  Okay, so hold on.  Second superseding    01:42PM

11    indictment.  Give me a second, please.  All right.  So let me 01:42PM

12    just get this clear.  So Count 99 reads from on or about   01:42PM

13    January 2000 and continuing to present, the Court has made a 01:43PM

14    decision dated March 4, 2022, regarding evidence of an ongoing 01:43PM

15    criminal conspiracy and gave a bar date of January 8, 2021. 01:43PM

16              Okay.  And so when we look at count -- let's just 01:43PM

17    focus on Count 99, it's the Count 99 element of date is from 01:43PM

18    on or about January 2000 and then continuing to present would 01:43PM

19    be January 2000 to January 8, 2021.                        01:43PM

20              Mr. Walker[sic] points out to the Court that     01:43PM

21    Counts 100 to 104 specifically dealing with the conspiracy to 01:43PM

22    commit wire fraud dates -- is dated September 4, 2015,     01:43PM

23    December 1, 2015, December 17, 2015, September 2, 2016,    01:44PM

24    October 3, 2016, okay.  So those are very specific dates.  01:44PM

25              Now, anything -- and what we were talking about  01:44PM
```

1   was anything that occurred between 2000 to January 8th -- and       01:44PM

2   in this case, as it relates to Mr. Crowe, it would have been        01:44PM

3   the date that he went to the Philippines and then first date        01:44PM

4   that he goes is November 17, 2018, the timeframe to January 8,      01:44PM

5   2021.  That's really the focus.                                     01:44PM

6           But -- this is not inextricably intertwined                 01:44PM

7   because inextricably intertwined -- yeah, it is, it is up to        01:44PM

8   that date.  So from the date of the 2015 date, that's              01:44PM

9   contained in the indictment to -- and 2016 dates from Count 11     01:44PM

10  to 104 up to 2021, that timeframe focuses on the inextricably      01:44PM

11  intertwined time.                                                   01:44PM

12          And my concern is, is that, really, is just by             01:45PM

13  listening to every single day or every other day or however        01:45PM

14  you want to say it, when the defense Counsel comes in and           01:45PM

15  says, Judge, we just got new exhibits in, we didn't have            01:45PM

16  notice of it, and I say well do you -- you want to go review        01:45PM

17  it.  And so you know, they go review it and so forth, but I'm       01:45PM

18  concerned that in terms of notice, if the defense Counsels are      01:45PM

19  receiving evidence, and it's true, I already -- I already know      01:45PM

20  the law about overt acts and so forth, those things -- those        01:45PM

21  -- and objects of a conspiracy, all of that information, that       01:45PM

22  evidence can come in to show an ongoing conspiracy.  That -- I      01:45PM

23  was in agreement with the prosecution on that.  And that's why      01:46PM

24  I said that I would allow evidence up to a bar date of              01:46PM

25  January 8, 2021.                                                    01:46PM

*Direct - Khamvongsa*

1    My concern is, now that we're in the trial, and          01:46PM

2  as Mr. Martin points out on behalf of his client, Mr. Walker,   01:46PM

3  on counts -- I'm sorry, 100 through 104, they have notice of    01:46PM

4  all those events that occurred during that timeframe, 2015,     01:46PM

5  2015, 2015 -- okay, they've got notice of that and so they're   01:46PM

6  able to properly defend.                                        01:46PM

7    But if they're getting evidence or exhibits to              01:46PM

8  have to defend outside of those dates, between the 2015, '16    01:46PM

9  date up to the bar date, and in this case, it's just that       01:46PM

10  little timeframe that I've already talked about as it relates   01:46PM

11  to Crowe, which would be 2018 to 2021, if -- and if they're     01:46PM

12  still receiving evidence, it's really delaying the trial now.   01:47PM

13  And it's really not giving them sufficient notice.              01:47PM

14    And so for me, as a judge now trying to monitor             01:47PM

15  this case, if they haven't received this evidence but they're   01:47PM

16  receiving it during the course of the trial, we're not playing  01:47PM

17  a fair game here.  It's not -- we're not -- it's just not       01:47PM

18  being fair.  This is causing a delay.                           01:47PM

19    So I say that to you because I went back and                01:47PM

20  looked at my notes here and I just want to be clear on that     01:47PM

21  and I don't know if you guys -- I mean, how you want to         01:47PM

22  proceed with this.                                              01:47PM

23    MS. S. MILLER:  Your Honor, we're not planning on           01:47PM

24  using any more exhibits with this witness that were not in the  01:47PM

25  -- we're not in the first, second or third amended exhibit      01:47PM

```
 1    list.  So none of the new ones.                          01:47PM

 2              THE COURT:  Did you hear that?                  01:47PM

 3              MR. MARTIN:  I couldn't hear what she said, Your 01:47PM

 4    Honor.                                                    01:48PM

 5              THE COURT:  Repeat that.                        01:48PM

 6              MS. S. MILLER:  Sure.  Maybe this isn't close   01:48PM

 7    enough to my mouth.  We're not planning on using any of the 01:48PM

 8    new exhibits that defense Counsel has received since we've 01:48PM

 9    been in Guam, round two.                                  01:48PM

10              MR. MARTIN:  Since -- so the record is straight, 01:48PM

11    that would be anything before Exhibit No. 2940?  After 2940. 01:48PM

12              MS. MCCONWELL:  2955.                           01:48PM

13              MR. MARTIN:  2955?                              01:48PM

14              MS. S. MILLER:  Yes.                            01:48PM

15              MS. MCCONWELL:  Well, and Your Honor, I would   01:48PM

16    also --                                                   01:48PM

17              THE COURT:  Okay, hold on.                      01:48PM

18              MS. M. MILLER:  Wait, one sec.  One sec.  There 01:48PM

19    is physical evidence that was marked, Your Honor, at trial 01:48PM

20    that was identified on our third amended exhibit list and  01:48PM

21    second amended exhibit list, but hadn't been marked until we 01:48PM

22    were here.  So those numbers are going to be later than that. 01:48PM

23    But those exhibits are already in and those exhibits were  01:48PM

24    identified before, so I want to be really clear.          01:48PM

25              MR. MARTIN:  I'm not objecting to anything that's 01:48PM
```

 1    already in.                                                          01:48PM

 2            MS. S. MILLER:  Right, and I should have been                01:48PM

 3    careful.  Nothing that hasn't already been admitted, we're not       01:48PM

 4    going to seek to admit any documents that were not numbered          01:49PM

 5    2955 or lower in terms of government exhibit numbers.                01:49PM

 6            THE COURT:  Or higher?  Higher.                              01:49PM

 7            MS. M. MILLER:  Higher.                                      01:49PM

 8            MS. S. MILLER:  That were not below that number              01:49PM

 9    or, yes, higher.                                                     01:49PM

10            MS. MCCONWELL:  And, Your Honor, I want to have              01:49PM

11    it be that it's the government's third -- third amended              01:49PM

12    exhibit list, which was the one that we've come into trial           01:49PM

13    with.  They had other iterations of it.  They removed a number       01:49PM

14    of exhibits and it's also not fair game for those exhibits to        01:49PM

15    be coming back because that's what has been happening, they          01:49PM

16    decide they want to use some exhibit that they'd already             01:49PM

17    removed from their exhibit list, which we didn't think would         01:49PM

18    be on -- was not on the exhibit list.  And we want those also        01:49PM

19    to not -- to be excluded.  That's not fair game, either.             01:49PM

20            MS. M. MILLER:  So two things, Your Honor.                   01:49PM

21            THE COURT:  Hold on.  Hold on.  Just wait.  I                01:49PM

22    just got to understand her objection.  So are you saying,            01:49PM

23    okay, so how many -- first of all, how many exhibit lists have       01:49PM

24    been brought in?  Remind me.                                         01:49PM

25            MS. MCCONWELL:  Well, now a fourth one was filed             01:50PM

```
 1    that we got a copy of it today.                        01:50PM

 2            THE COURT:  So today you got a fourth amended  01:50PM

 3    exhibit list?                                          01:50PM

 4            MS. MCCONWELL:  I got a fourth amended exhibit  01:50PM

 5    list.                                                  01:50PM

 6            THE COURT:  So they said now they're going to  01:50PM

 7    drop the fourth amended exhibit list.                  01:50PM

 8            MS. MCCONWELL:  Well, the thing with the fourth 01:50PM

 9    exhibit list in addition to new exhibits that we haven't seen 01:50PM

10    and they haven't offered yet, I think it also includes some of 01:50PM

11    the ones that they -- above 2955.  Some of those are in but -- 01:50PM

12            THE COURT:  Let me understand what you have.  You 01:50PM

13    have received four amended exhibit lists.  The prosecution is 01:50PM

14    saying, with regard to the fourth witness list -- I mean 01:50PM

15    exhibit list, it's out, don't worry about it; correct? 01:50PM

16            MS. M. MILLER:  Right.                          01:50PM

17            THE COURT:  That's all I care about.            01:50PM

18            MS. MCCONWELL:  She said for this witness.      01:50PM

19            THE COURT:  Well, for the trial.               01:50PM

20            MS. M. MILLER:  Yes, except for what's come in  01:50PM

21    rebuttal, Your Honor.  Now we're not waiving any rebuttal that 01:50PM

22    we've already brought in and we're not waiving any right to 01:50PM

23    bring in additional rebuttal if they keep arguing that Jon 01:50PM

24    Walker retired.                                        01:50PM

25            THE COURT:  Of course not.  Of course you're not 01:50PM
```

*Direct - Khamvongsa*

1    going to waive rebuttal.                                      01:50PM

2              MS. M. MILLER:  Right.  Right.  No.                 01:50PM

3              THE COURT:  All I care about -- listen.  Okay,      01:51PM

4    that I said how many exhibit lists, amended exhibit lists has 01:51PM

5    the prosecution brought in.  Four.  You said delete No. 4, we 01:51PM

6    won't even consider it.                                       01:51PM

7              MS. M. MILLER:  Yes.                                01:51PM

8              THE COURT:  1, 2, and 3.  Let's just talk about     01:51PM

9    that.  Is there a problem with those?  And if so, say it now. 01:51PM

10             MS. MCCONWELL:  Yes.  And what I've objected to      01:51PM

11   is that -- their Exhibit 2 and 3 are substantially similar.  I 01:51PM

12   think they contain the same exhibits, but they dropped off,   01:51PM

13   they took out and removed a number of exhibits off of that    01:51PM

14   list and then they also substituted some other stuff.  But I  01:51PM

15   mean, if they're going to stick to the third amended exhibit  01:51PM

16   list, that's fine, but they have been trying to bring in other 01:51PM

17   exhibits that they removed from the third exhibit list that,   01:51PM

18   you know, I didn't -- I don't have copies of because that's   01:51PM

19   the exhibit list that I've been going with.                   01:51PM

20             THE COURT:  So would you agree, though, okay, so     01:51PM

21   as it relates to the first, second and third amended exhibit  01:51PM

22   list, you're not objecting to that, that's already -- that's  01:52PM

23   already passed?                                               01:52PM

24             MS. MCCONWELL:  Yeah.  I'm not objecting to the      01:52PM

25   third one.  What I'm objecting to is, if they pull things off 01:52PM

1  of the first list that were removed and not on contained on

2  the third list.

3          THE COURT:  Okay.  Well, that's a whole different

4  story.  So you want to be able to rely on the third amended

5  exhibit list?  That's what you're saying?

6          MS. MCCONWELL:  Correct.  Yes, ma'am.

7          THE COURT:  And that's it.  And if anything was

8  removed earlier, it's removed.  Now, to the extent that

9  they --

10          MS. MCCONWELL:  That's correct.

11          THE COURT:  -- have rebuttal evidence, obviously

12  they can come forward on the rebuttal evidence and at least

13  try to bring it in.

14          MS. MCCONWELL:  Well, the rebuttal -- well, yeah,

15  the rebuttal case and then the only rebuttal that was my

16  understanding that Your Honor was allowing during this trial

17  was related to their concern about Jon Walker after 2011.

18          THE COURT:  Well, it related to the issue of

19  refuting whether he was in retirement or if he was slowing

20  down his involvement.  Whatever you want to call it.

21          MS. MCCONWELL:  Right.  And that was it.

22          THE COURT:  That was it because a lot of that was

23  because you have witnesses that are off island and you wanted

24  to be efficient, I thought.  That was really the whole goal,

25  right?

                    MS. MCCONWELL:  That was -- I think so.        01:53PM

                    THE COURT:  Well, at least that was my thought    01:53PM

        process.  All right.  So does everybody agree with that then?    01:53PM

                    MS. S. MILLER:  The only caveats to that, Your      01:53PM

        Honor, about the third amended exhibit list are, one, we       01:53PM

        reserve the right to use any of the underlying documents for    01:53PM

        the summary charts that have already been introduced and any    01:53PM

        that we will -- that were part of our third amended exhibit    01:53PM

        list and we haven't introduced yet because I think we have two   01:53PM

        or three more.                                                  01:53PM

                    THE COURT:  Let's just put this way, I'm not       01:53PM

        going to make any rulings on that.  We could get to that.  If    01:53PM

        there is a summary chart that has already been admitted or      01:53PM

        stipulated by stipulation or by court order, and obviously     01:53PM

        there is underlying documents that have supported it, both     01:53PM

        sides have had an opportunity, defense have had an opportunity   01:53PM

        to object; if they fail to object, I just say okay, it comes    01:54PM

        in because case law allows all that.  Okay.  Don't worry about   01:54PM

        it.                                                             01:54PM

                    My point is, let's just wait and see what         01:54PM

        happens.  If you try to bring it in, and you say they have      01:54PM

        notice of it, it was like exactly like what we just said.      01:54PM

        Okay.  So I may let it in.  I may not let it in on another      01:54PM

        basis, irrelevant, 403, okay, whatever.  But you can try to     01:54PM

        bring it in.  Any other caveats that you want to propose?       01:54PM

```
 1              MS. S. MILLER:  I think there were just a couple    01:54PM
 2   of accidents with the -- between removal of exhibits from one  01:54PM
 3   of the early exhibit lists to the third that were with respect 01:54PM
 4   to the depositions and I believe Your Honor ruled on those     01:54PM
 5   within the transcripts anyway.  So if there was one or more of 01:54PM
 6   those in the Cann deposition, we would just ask should be      01:54PM
 7   allowed to use an exhibit that we accidentally took off the    01:54PM
 8   third list.                                                    01:54PM
 9              THE COURT:  Okay.  So let's cross that bridge        01:54PM
10   when we have to.                                               01:54PM
11              MS. S. MILLER:  I think you already probably        01:54PM
12   ruled -- I haven't looked at it yet, but you made those        01:54PM
13   rulings.                                                       01:54PM
14              THE COURT:  But if I didn't, let's just cross --    01:54PM
15              MS. S. MILLER:  Okay, yes, Your Honor.  Thank       01:54PM
16   you.  That's it.                                               01:54PM
17              THE COURT:  Is that it?  Okay, are we all like on   01:54PM
18   the same page now?                                             01:54PM
19              MS. S. MILLER:  Yes.                                01:54PM
20              THE COURT:  Okay.  But I will say, though, that     01:54PM
21   prosecution, you are not allowed to drop off new -- let's put  01:55PM
22   it -- well, be careful when you send over new discovery over   01:55PM
23   to defense Counsel.  Reason why new discovery is given to      01:55PM
24   prosecutors or defense, depending on who gives it, is usually  01:55PM
25   is because they just found out that information 30 seconds ago 01:55PM
```

```
 1   or one minute ago, not five years when they should have given     01:55PM
 2   to the other side.  This is all about notice.  This is about       01:55PM
 3   no surprises, this is not a shotgun case.  And we could make        01:55PM
 4   it orderly.                                                         01:55PM
 5            Okay.  Are we all on the same page?  These are             01:55PM
 6   the rules of engagement, again.  Okay.  Mr. Martin, you're         01:55PM
 7   good?                                                               01:55PM
 8            MR. MARTIN:  I'm good, Your Honor.                         01:55PM
 9            THE COURT:  Ms. McConwell?                                 01:55PM
10            MS. MCCONWELL:  I believe so, Your Honor.                  01:55PM
11            THE COURT:  And Mr. McConwell?                             01:56PM
12            MR. MCCONWELL:  Yes, Your Honor.                           01:56PM
13            THE COURT:  And Ms. Marie Miller?                          01:56PM
14            MS. M. MILLER:  Yes, Your Honor.                           01:56PM
15            THE COURT:  Ms. Samantha Miller?                           01:56PM
16            MS. S. MILLER:  Yes, Your Honor.                           01:56PM
17            THE COURT:  Mr. Leon Guerrero.                             01:56PM
18            MR. LEON GUERRERO:  Yes, Your Honor.                       01:56PM
19            THE COURT:  Call in the jury.  Are they ready?            01:56PM
20            MS. MCCONWELL:  And Mr. Han is, too.                       01:56PM
21            THE COURT:  Oh, Mr. Han.  You're going to hate            01:56PM
22   me, Mr. Han, please, I'll give you a hug.  I'm sorry.  It's        01:56PM
23   because you're behind the podium, I can't see you.                 01:56PM
24            MR. HAN:  It's okay, Your Honor.                           01:56PM
25            THE COURT:  Just hiding away.  Sorry, Mr. Han.            01:56PM
```

1   That's not intentional, you know.                           01:56PM

2                   MR. HAN:  I know.                            01:56PM

3                   THE COURT:  Yeah.  Okay.  No, but I have     01:56PM

4   forgotten you other times so I don't mean to because you're 01:56PM

5   like tucked away hidden over there.                         01:56PM

6                   MS. S. MILLER:  Probably had a good nap in there. 01:56PM

7   Huh?                                                        01:56PM

8                   THE COURT:  Did he?                          01:56PM

9                   MS. S. MILLER:  We won't ask him.           01:57PM

10                  THE COURT:  Yeah don't.  He might be embarrassed. 01:57PM

11                  (Witness returned to witness stand.)        01:57PM

12                  THE COURT:  How much longer do you have with this 01:57PM

13  witness, Counsel?                                           01:57PM

14                  MS. S. MILLER:  Maybe 45 minutes hopefully. 01:57PM

15  Maybe less.  He speaks fast.  Just like me.                01:57PM

16                  THE COURT:  He's very --                     01:57PM

17                  MS. S. MILLER:  Animated.                    01:57PM

18                  THE COURT:  Radio voice.  You could probably be 01:57PM

19  hired by Disney and so forth.                               01:58PM

20                  THE WITNESS:  You're too kind.              01:58PM

21                  THE COURT:  They actually have people that are -- 01:58PM

22  you know paid to be a voiceover on, like, cartoons.  You know 01:58PM

23  that.                                                       01:58PM

24                  THE WITNESS:  My brother is a much better voice 01:58PM

25  actor than I am.                                            01:58PM

| | | |
|---|---|---|
| 1 | THE COURT:  Oh, is he a voice actor? | 01:58PM |
| 2 | THE WITNESS:  He was trying for that. | 01:58PM |
| 3 | THE COURT:  Did he make it? | 01:58PM |
| 4 | THE WITNESS:  No, he's still working on it. | 01:58PM |
| 5 | THE COURT:  He's got to work on his voice? | 01:58PM |
| 6 | THE WITNESS:  Yes. | 01:58PM |
| 7 | MS. S. MILLER:  Who did you say that was? | 01:58PM |
| 8 | THE WITNESS:  My brother. | 01:58PM |
| 9 | MS. S. MILLER:  Oh, really? | 01:58PM |
| 10 | (Pause.) | 01:58PM |
| 11 | (Jury in at 1:58 p.m.) | 01:58PM |
| 12 | THE COURT:  Please be seated, ladies and | 01:59PM |
| 13 | gentlemen.  Thank you.  Apologize for that long delay but we | 01:59PM |
| 14 | did have to take care of a few legal matters and I think we're | 01:59PM |
| 15 | done with that.  So go ahead, you may proceed. | 01:59PM |
| 16 | MS. S. MILLER:  Thank you, Your Honor. | 01:59PM |
| 17 | BY MS. S. MILLER: (CONTINUING) | 01:59PM |
| 18 | Q.   Good afternoon, Special Agent Khamvongsa. | 01:59PM |
| 19 | A.   Good afternoon. | 01:59PM |
| 20 | MS. S. MILLER:  Good afternoon, ladies and | 01:59PM |
| 21 | gentlemen of the jury. | 01:59PM |
| 22 | THE JURY:  Good afternoon. | 01:59PM |
| 23 | BY MS. S. MILLER:  (CONTINUING) | 01:59PM |
| 24 | Q.   Special Agent Khamvongsa, I'd like to talk to you a | 01:59PM |
| 25 | little specifically about the types of seized evidence you | 01:59PM |

*Direct - Khamvongsa*

1    reviewed for your analysis.                                01:59PM

2          Could you tell the juries the types of seized       01:59PM

3    evidence you reviewed, please?                             01:59PM

4    A.    Yes.  I reviewed the e-mails, I reviewed the pilot   01:59PM

5    mechanic list, which was seized from the search warrant    01:59PM

6    evidence.  I reviewed contracts.  That's most of it.       01:59PM

7    Q.    When you say "contracts," do you mean what we already 02:00PM

8    been calling throughout this trial as "leases"?            02:00PM

9    A.    Yes, lease agreements.                               02:00PM

10   Q.    I'd like to show you what's been previously marked   02:00PM

11   and admitted into evidence as Exhibit 1248, please.        02:00PM

12         Special Agent Khamvongsa, do you recognize this      02:00PM

13   document?                                                  02:00PM

14   A.    Yes.                                                 02:00PM

15   Q.    Did you use this document, which is a summary chart  02:00PM

16   in your analysis in this case?                             02:00PM

17   A.    Yes.                                                 02:00PM

18   Q.    How did you use it?                                  02:00PM

19   A.    I used it to -- well, going back, I looked at the    02:00PM

20   bank records, to -- from the bank records I saw payments being 02:00PM

21   made by the tuna boat companies.  From there, I identified the 02:00PM

22   helicopters assigned to those tuna boats as well as the pilot 02:01PM

23   and mechanics assigned to the helicopters.  So I used this to 02:01PM

24   verify whether or not those mechanics were FAA certified.  02:01PM

25   Q.    Thank you.  You went a little quick there so can we  02:01PM

1    take a step back.  Can you go piece by piece, so what you went          02:01PM

2    through.  So first, you did what?          02:01PM

3         A.    First, I --          02:01PM

4         Q.    Bank records?          02:01PM

5         A.    Right.  Correct.  First, I reviewed the bank records.          02:01PM

6         Q.    And what were you looking for in the bank records?          02:01PM

7         A.    The bank records show wire transfers from the tuna          02:01PM

8    boat companies for leasing the helicopters.          02:01PM

9         Q.    Then what did you do?          02:01PM

10        A.    There, I identified the -- from the helicopters, I          02:01PM

11   looked at the Hansen Helicopters records to identify who the          02:01PM

12   pilot and mechanics were assigned to the specific helicopter.          02:01PM

13        Q.    How did you connect the tuna boat company information          02:01PM

14   and the bank records to the helicopters?          02:01PM

15        A.    There is an aircraft vessel assignment in which I          02:01PM

16   reviewed that helped identify which vessels the helicopters          02:02PM

17   were assigned to.          02:02PM

18        Q.    And then could you tell what the next step was again,          02:02PM

19   what was the next step in your process?          02:02PM

20        A.    Once I identified which helicopters were assigned to          02:02PM

21   a particular vessel or tuna boat, I then identified whether --          02:02PM

22   who the pilot and mechanic were for that helicopter.          02:02PM

23        Q.    And what documents did you use to do that analysis?          02:02PM

24        A.    I used a -- I used the pilot mechanic listing that          02:02PM

25   was seized from the search warrant, or that was provided from          02:02PM

*Direct - Khamvongsa*

1   the FBI as a result of the search warrant.                    02:02PM

2       Q.   And how did you use that -- I'm sorry, I'm really     02:02PM

3   loud, how did you use that information in combination with, if  02:02PM

4   you did, this search warrant that's in front of the jury?      02:02PM

5       A.   I used that chart to identify whether or not the      02:02PM

6   mechanic was FAA certified.                                    02:02PM

7       Q.   Now, the pilot and mechanic listing that you          02:03PM

8   mentioned, did you create a summary chart of that information?  02:03PM

9       A.   Yes.                                                  02:03PM

10      Q.   I'd like to show you what's been previously           02:03PM

11  identified but not yet admitted as Government's Exhibit 1254.   02:03PM

12  Do you recognize this document?                                02:03PM

13      A.   Yes.                                                  02:03PM

14      Q.   What is it?                                           02:03PM

15      A.   It is a summary of the search warrant evidence that I  02:03PM

16  reviewed.  I reviewed over 30 files from the search warrant    02:03PM

17  and this is a summary of that information, as well as          02:03PM

18  information provided as a result of a grand jury subpoena.     02:03PM

19      Q.   Thank you.                                            02:03PM

20           MS. S. MILLER:  Your Honor, at this time I move       02:03PM

21  Exhibit 1254 into evidence.                                    02:03PM

22           THE COURT:  Yes, Counsel?                             02:03PM

23           MR. MARTIN:  Your Honor, I need a minute to find      02:03PM

24  the document.  My list does not have it on it.                 02:03PM

25           THE COURT:  All right.  Go ahead.  Let's see if       02:04PM

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | you -- try to see if you have it.  Can you make this bigger? | 02:04PM |
| 2 |      MS. S. MILLER:  Sure.  Can you zoom in on a | 02:04PM |
| 3 | portion.  You might have to do it left side, right side. | 02:04PM |
| 4 |      THE COURT:  Yeah, that's fine.  I just need to | 02:04PM |
| 5 | read it. | 02:04PM |
| 6 |      (Pause.) | 02:04PM |
| 7 |      THE COURT:  Yes, yes, Mr. -- continue, go ahead. | 02:05PM |
| 8 |      MR. MARTIN:  Your Honor, I haven't found mine. | 02:05PM |
| 9 | It's obviously in another folder somewhere that was produced | 02:05PM |
| 10 | at a different time but I'm -- I object to the chart because | 02:05PM |
| 11 | the chart has dates on it from what I could tell that are | 02:05PM |
| 12 | outside the dates on the indictment. | 02:05PM |
| 13 |      THE COURT:  Okay.  Let's start with the -- okay, | 02:06PM |
| 14 | which block there?  Tell me, they've highlighted block one, | 02:06PM |
| 15 | two, three, four, five, which one -- is there anything in | 02:06PM |
| 16 | there?  Or no?  Or can you just show me where, tell me which | 02:06PM |
| 17 | block it is. | 02:06PM |
| 18 |      MR. MARTIN:  If I might just have a moment, Your | 02:06PM |
| 19 | Honor? | 02:06PM |
| 20 |      THE COURT:  Uh-huh. | 02:06PM |
| 21 |      MS. MCCONWELL:  Your Honor, this is -- | 02:06PM |
| 22 |      THE COURT:  Go ahead.  Yes. | 02:06PM |
| 23 |      MS. MCCONWELL:  -- is not relevant to the | 02:06PM |
| 24 | Count 99 or 100 through 110, which this witness is testifying | 02:06PM |
| 25 | about. | 02:06PM |

```
 1              THE COURT:  Okay.  Which count is this relevant    02:06PM
 2    to?                                                          02:06PM
 3              MS. S. MILLER:  It is relevant to                  02:06PM
 4    Mr. Khamvongsa's entire analysis with respect to Counts 99   02:06PM
 5    through 110.                                                 02:07PM
 6              THE COURT:  Okay, Counts 99 through 110.  All      02:07PM
 7    right.  And you're saying it's not relevant.  We'll get back 02:07PM
 8    to that.  We'll get back to the relevancy but that's what    02:07PM
 9    she's saying it's relevant to.                               02:07PM
10              MS. S. MILLER:  Your Honor, just so you're aware,  02:07PM
11    this was part of the hearing we had on summary charts.  This 02:07PM
12    was one of the charts we discussed back in March.            02:07PM
13              THE COURT:  Was this already admitted then?        02:07PM
14              MS. S. MILLER:  It wasn't admitted because he was  02:07PM
15    the one --                                                   02:07PM
16              MS. MCCONWELL:  Your Honor, we did not stipulate   02:07PM
17    to admission of this chart.                                  02:07PM
18              THE COURT:  That's what I'm asking.  Did they      02:07PM
19    stipulate to this?                                           02:07PM
20              MS. S. MILLER:  Yes, Your Honor.                   02:07PM
21              THE COURT:  To the admission of this chart?        02:07PM
22              MS. S. MILLER:  Not to the admission, I'm sorry.   02:07PM
23    To the authenticity of the underlying document.  This was one 02:07PM
24    of the ones we discussed at that hearing.                    02:07PM
25              THE COURT:  So this was stipulated to, as far as   02:07PM
```

*Direct - Khamvongsa*

```
 1    authenticity?                                          02:07PM

 2              MS. S. MILLER:  Right.                        02:07PM

 3              THE COURT:  No need to get a records custodian. 02:07PM

 4              MS. S. MILLER:  Right.                        02:07PM

 5              THE COURT:  And just to be clear, Counsel     02:07PM

 6    received the underlying document supporting this summary 02:07PM

 7    chart?                                                  02:07PM

 8              MS. S. MILLER:  Yes, and the G numbers on the 02:07PM

 9    chart itself.                                           02:07PM

10              MS. MCCONWELL:  Yes, we didn't receive        02:07PM

11    specifically the exhibits, but I did review the G number, they 02:07PM

12    did -- on the chart has G numbers and I did find most of the G 02:08PM

13    numbers contained within their exhibit list.            02:08PM

14              THE COURT:  So I mean, but you're not disputing 02:08PM

15    that defense Counsel received the underlying documents   02:08PM

16    supporting this chart?                                  02:08PM

17              MS. MCCONWELL:  Well, I looked -- searched for 02:08PM

18    them myself out of their exhibits, yes.                 02:08PM

19              THE COURT:  So you are disputing them or you're 02:08PM

20    not disputing?                                          02:08PM

21              MS. MCCONWELL:  Well, if you're asking me, Your 02:08PM

22    Honor, if they gave me the chart -- well --             02:08PM

23              THE COURT:  No, my question is, okay, obviously 02:08PM

24    you've seen the chart, right?                           02:08PM

25              MS. MCCONWELL:  Right.  And I looked at the Gs on 02:08PM
```

```
 1   there.                                              02:08PM
 2            THE COURT:  Okay, so my question is, have you   02:08PM
 3   received all of the underlying documents supporting the  02:08PM
 4   summary chart?  That's all I want to know.         02:08PM
 5            MS. MCCONWELL:  I believe so.  I don't have my  02:08PM
 6   notes but I believe --                             02:08PM
 7            THE COURT:  So there is no objection based on   02:08PM
 8   that.                                               02:08PM
 9            MS. MCCONWELL:  No.                        02:08PM
10            MR. MARTIN:  Your Honor.                   02:08PM
11            THE COURT:  If there was, there would be an    02:08PM
12   issue.  Go ahead.  Yes?                             02:08PM
13            MR. MARTIN:  If we can to go to -- I think it's 02:08PM
14   the second page referring, for example, to Count 53.   02:08PM
15            THE COURT:  Okay.  Let's go to page 2.     02:09PM
16            MS. MCCONWELL:  The third page.            02:09PM
17            THE COURT:  1254, page 2.                  02:09PM
18            MS. MCCONWELL:  Three.                     02:09PM
19            THE COURT:  1254, page 3?  And then can you make 02:09PM
20   that bigger.  What count did you say?  Count what?  02:09PM
21            MR. MARTIN:  53.                           02:09PM
22            THE COURT:  Okay, there is no 53.  You got to go 02:09PM
23   down more.  There it is, there, there.  Okay.  Count 53.  02:09PM
24   Okay.  Let me look at the date.  Which date are you looking 02:09PM
25   at?                                                 02:09PM
```

1      MR. MARTIN:  I'm looking at -- let me see.  It          02:09PM
2 will be the fourth column.                                   02:09PM
3      THE COURT:  Okay.  1, 2, 3, 4.  Okay.  Okay, I          02:09PM
4 see it.                                                      02:09PM
5      MR. MARTIN:  That's an accurate date.  The fifth        02:09PM
6 column is not.  And the sixth and seventh --                 02:09PM
7      THE COURT:  Okay.  Wait, 1, 2, 3, 4, okay 5, 6          02:09PM
8 and 7 are not accurate?  Is that --                          02:10PM
9      MR. MARTIN:  They're not alleged in the                 02:10PM
10 indictment, Your Honor.                                     02:10PM
11      THE COURT:  Okay.  Okay.  I can't see what the --      02:10PM
12 can I go up to the headings, please?  Can you move, heading. 02:10PM
13 5, 6, 7 heading, okay.  Okay.  I guess I don't understand -- 02:10PM
14 can you go back up to the heading, please.  Can you keep it -- 02:10PM
15 there.  Are you saying those heading dates are not contained 02:10PM
16 in the indictment?                                          02:10PM
17      MR. MARTIN:  I'm saying, Your Honor, the fourth        02:10PM
18 -- there is what's alleged in the indictment.  Then I'm saying 02:10PM
19 that what's alleged in the other dates are outside, for      02:10PM
20 example that one.                                           02:10PM
21      THE COURT:  Okay.  Let me just go to Count 55.         02:10PM
22      MR. MARTIN:  53, Your Honor.                           02:10PM
23      THE COURT:  Oh, 53 excuse me, so Count 53.  Oh, I      02:11PM
24 see what you're saying.  So Count 53 only has one date, right? 02:11PM
25      MR. MARTIN:  Correct, Your Honor.                      02:11PM

*Direct - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Okay.  Oh, I see.  Well, it one only | 02:11PM |
| 2 | has one month and one year. | 02:11PM |
| 3 | MR. MARTIN:  Correct, Your Honor, and there are | 02:11PM |
| 4 | dates way outside that. | 02:11PM |
| 5 | MS. S. MILLER:  Your Honor, if I may respond? | 02:11PM |
| 6 | THE COURT:  Yeah. | 02:11PM |
| 7 | MS. S. MILLER:  So this summary chart is | 02:11PM |
| 8 | summarizing the facts within these documents that are | 02:11PM |
| 9 | defendants documents. | 02:11PM |
| 10 | THE COURT:  Okay.  So let's back up.  So | 02:11PM |
| 11 | essentially, what you're saying is that there are underlying | 02:11PM |
| 12 | documents that support these other dates?  That's what you're | 02:11PM |
| 13 | saying? | 02:11PM |
| 14 | MS. S. MILLER:  Right.  The dates are just taken | 02:11PM |
| 15 | from the document themselves. | 02:11PM |
| 16 | THE COURT:  No, I got it.  All I want to know is, | 02:11PM |
| 17 | because one of the documents that's underlying -- an | 02:11PM |
| 18 | underlying document that supports this summary chart is the | 02:11PM |
| 19 | indictment.  But there is also other documents.  That's what | 02:12PM |
| 20 | you're saying? | 02:12PM |
| 21 | MS. S. MILLER:  I wasn't referencing the | 02:12PM |
| 22 | indictment.  I was just saying the dates that read blue | 02:12PM |
| 23 | columns which I think is what he's taking issue with, are just | 02:12PM |
| 24 | summarizing what the dates are within the underlying document. | 02:12PM |
| 25 | THE COURT:  Right.  So my -- okay.  But my | 02:12PM |

*Direct - Khamvongsa*

```
 1    question is, okay, but it's clear that at least one of those        02:12PM
 2    month and year is contained within the indictment.  Is             02:12PM
 3    contained in the indictment, so the indictment is an               02:12PM
 4    underlying document, right?  Ms. Samantha Miller.                  02:12PM
 5              MS. S. MILLER:  Not for the summary chart.  Well,         02:12PM
 6    I guess yes, it is.  It's referencing the counts, you're           02:12PM
 7    right, yes.                                                        02:12PM
 8              THE COURT:  I think it is.  But my only question          02:12PM
 9    was, so there are other document -- you're not relying --          02:12PM
10    another underlying document that supports this summary chart       02:12PM
11    which has these other dates outside of the indictment date are    02:12PM
12    other documents?                                                   02:12PM
13              MS. S. MILLER:  Yes.  And they're all referenced         02:12PM
14    in the last column on the far right, all the documents that        02:12PM
15    are --                                                             02:12PM
16              THE COURT:  That's only question I have.  Okay,          02:12PM
17    Mr. Martin?  Yes?                                                  02:12PM
18              MR. MARTIN:  Well, my objection is, Your Honor,          02:13PM
19    the summary chart presents evidence that's not even included      02:13PM
20    in the indictment, and I object to that.                          02:13PM
21              THE COURT:  Okay, the objection will be overruled       02:13PM
22    because the summary chart is based on underlying documents,       02:13PM
23    it's not just one document, according to the prosecutor.  They    02:13PM
24    have more than one document, including -- can you go up to the     02:13PM
25    heading please, including the documents contained in the last     02:13PM
```

*Direct - Khamvongsa*

1    -- in the last chart in the last column, government exhibit    02:13PM

2    number.  Is that a fair statement?    02:13PM

3                MS. S. MILLER:  Yes.    02:13PM

4                THE COURT:  All right.  Mr. Martin, so based on    02:13PM

5    that -- go ahead.  So based on that objection, the Court will    02:13PM

6    overrule the objection because apparently you guys have    02:13PM

7    received all the underlying documents that support the summary    02:13PM

8    chart.  If that's the case, then the Court will admit this.    02:13PM

9    Yes.    02:13PM

10               MS. MCCONWELL:  Your Honor, it's not relevant to    02:13PM

11   Count 99.    02:13PM

12               THE COURT:  Oh, okay, so -- now there is a    02:14PM

13   different argument.  So it's not relevant to Count 99?    02:14PM

14               MS. MCCONWELL:  Right.  If you look at what's    02:14PM

15   charged and what they're alleged to have done, this isn't    02:14PM

16   relevant.    02:14PM

17               THE COURT:  Well, she said -- he's speaking    02:14PM

18   what's relevant as to Count 99 through 110.  Oh, I see, you're    02:14PM

19   saying Count 53 is not relevant but there is --    02:14PM

20               MS. MCCONWELL:  No, I'm saying this chart she    02:14PM

21   wants to admit is not relevant to any of the Counts 99 and    02:14PM

22   above.    02:14PM

23               THE COURT:  Oh, so there is no counts noted here    02:14PM

24   from 99 to 110?  Is that what you're saying?    02:14PM

25               MR. MARTIN:  Yes, Your Honor.    02:14PM

*Direct - Khamvongsa*

```
 1              THE COURT:  Oh okay, I get that now.  All right,   02:14PM
 2   so therefore?  Go ahead.                                      02:14PM
 3              MS. S. MILLER:  So Your Honor, he just testified   02:14PM
 4   what -- the first step in his analysis was using the bank     02:14PM
 5   records to tie the tuna boat companies to the uncertificated  02:14PM
 6   mechanics and he found that information in these types of      02:14PM
 7   documents.  So he's summarizing the types of documents he     02:14PM
 8   reviewed to get to the Counts 99 through 110.                 02:14PM
 9              THE COURT:  I'm sorry.  So you're saying that      02:14PM
10   this summary chart will -- I'm sorry, this summary chart      02:14PM
11   relates to Counts 99 to 110, even though it's not noted as a  02:15PM
12   count but the information contained in the underlying         02:15PM
13   documents --                                                  02:15PM
14              MS. S. MILLER:  He relied upon to get to those     02:15PM
15   counts.                                                       02:15PM
16              THE COURT:  To -- for his investigation of 99      02:15PM
17   through 110?                                                  02:15PM
18              MS. S. MILLER:  Yes.                               02:15PM
19              THE COURT:  Okay, that's her proffer.             02:15PM
20              MS. MCCONWELL:  Well, it's not -- it isn't         02:15PM
21   relevant, Your Honor.  And if you look at what he -- all his  02:15PM
22   testimony and what he's told us he was going to be doing was  02:15PM
23   about -- the wire fraud and the money laundering charges, that 02:15PM
24   is what his testimony was limited to in the second superseding 02:15PM
25   indictment, which actually does not include 99, it starts off 02:15PM
```

1    with Counts 100 through 104 and Count 105 to 110 which provide          02:15PM

2    very specific dates and transactions that he's complaining              02:15PM

3    about and that's what's contained in his summary of what he's           02:15PM

4    going to talk about as the internal revenue officer.                    02:15PM

5              THE COURT:  Okay.  Why don't I do this, let's see             02:15PM

6    if she can lay the foundation.  If she can lay the foundation,          02:15PM

7    then the exhibit will come in.  I mean, well the exhibit will           02:16PM

8    be deemed relevant.  So let's just let her lay the foundation.          02:16PM

9    Because I think you guys objected immediately when the exhibit          02:16PM

10   thing came up.                                                          02:16PM

11             MS. MCCONWELL:  Okay.  All right.  We expect him              02:16PM

12   to be limited to what they provided in their trial brief,              02:16PM

13   though.                                                                 02:16PM

14             THE COURT:  You don't think -- you don't -- you              02:16PM

15   think he's going beyond that in terms of his proffer?                  02:16PM

16             MS. MCCONWELL:  Yes, I do because --                         02:16PM

17             MR. MARTIN:  He already has, Your Honor.  Their              02:16PM

18   offer didn't include Count 99.                                         02:16PM

19             THE COURT:  Did it not include Count 99?  Did it             02:16PM

20   or did it not?                                                         02:16PM

21             MS. S. MILLER:  I think we stated generally the             02:16PM

22   wire fraud and money laundering counts which include 99               02:16PM

23   because it's about conspiracy to commit wire fraud.                    02:16PM

24             THE COURT:  But the question is, did it include              02:16PM

25   Count 99.  Let's not do generally.  I'm a judge.  I know the           02:16PM

*Direct - Khamvongsa*

```
 1    words.  Is it or not?  Is it or is it not 99?              02:16PM

 2             MS. MCCONWELL:  If you look at Document ECF 1311   02:16PM

 3    on page 51 of 68, it has what his summary testimony and it  02:17PM

 4    says "Khamvongsa will testify as to wire fraud and money    02:17PM

 5    laundering charges reflected in the second superseding      02:17PM

 6    indictment."                                                02:17PM

 7             MS. S. MILLER:  Exactly.  It was general.          02:17PM

 8             THE COURT:  Okay, hold on.  So Count 99 is wire    02:17PM

 9    fraud.  Conspiracy to commit wire fraud.                    02:17PM

10             MS. MCCONWELL:  It doesn't say conspiracy.  It     02:17PM

11    says the wire fraud and the money laundering.  And those are 02:17PM

12    Counts 100 through 104, is wire fraud and 105 through 110 is 02:17PM

13    money laundering.                                           02:17PM

14             THE COURT:  I'm sorry, so what does his notice     02:17PM

15    say to you all?                                             02:17PM

16             MS. MCCONWELL:  He's going to testify about wire   02:17PM

17    fraud and money laundering.                                 02:17PM

18             THE COURT:  Okay.  Hold on.  Hold on.  Wire fraud  02:17PM

19    and money laundering.  So the charges -- the charges for wire 02:17PM

20    fraud is count --                                           02:17PM

21             MS. MCCONWELL:  100 to 104.                        02:18PM

22             THE COURT:  100 to 104.  And money laundering is   02:18PM

23    105 to 110, right?                                          02:18PM

24             MS. MCCONWELL:  Yes.                               02:18PM

25             THE COURT:  Do we agree with that?                 02:18PM
```

```
 1              MS. S. MILLER:  No, Your Honor, we generally    02:18PM
 2    state --                                                  02:18PM
 3              THE COURT:  No.  Wait.                           02:18PM
 4              MS. S. MILLER:  I thought you were asking me.    02:18PM
 5              THE COURT:  No, I'll come to you in a minute.    02:18PM
 6    Let me just understand her objection.  All right.  So the 02:18PM
 7    notice that you have is this witness will only testify as to 02:18PM
 8    Count 100 to 104 and 105 to 110.                          02:18PM
 9              MS. MCCONWELL:  Yes.                             02:18PM
10              THE COURT:  Is that a fair -- is that what you're 02:18PM
11    saying?                                                   02:18PM
12              MS. MCCONWELL:  Yes.                             02:18PM
13              THE COURT:  And therefore, you had no notice that 02:18PM
14    he was also going to speak about Counts 99 through, well -- 02:18PM
15              MS. MCCONWELL:  99.                              02:18PM
16              THE COURT:  Well, she said 99 through 110.  So  02:18PM
17    really, you had no notice that he was going to speak on   02:18PM
18    Count 99.                                                 02:18PM
19              MS. MCCONWELL:  Right.                           02:18PM
20              THE COURT:  But as far as 104 to 110, you do have 02:18PM
21    notice.  100 to 110 you have notice.  Because she just said 02:18PM
22    that he was going to speak of 99 through 110, right?  Did you 02:19PM
23    say that?                                                 02:19PM
24              MS. S. MILLER:  Yes.                             02:19PM
25              THE COURT:  He was --                            02:19PM
```

*Direct - Khamvongsa*

```
 1          MS. S. MILLER:  Wire fraud and money laundering      02:19PM
 2    charges as a whole.                                        02:19PM
 3          THE COURT:  Okay.  Okay.  Wait.  Wait.  Okay.        02:19PM
 4    Her proffer is, is that this witness is going to speak to  02:19PM
 5    Counts 99 through 110.  The document that you guys have just 02:19PM
 6    submitted says that he's only going to speak to 100 to 104, 02:19PM
 7    105 to 110.  So you're really just talking about Count 99?  02:19PM
 8          MR. MARTIN:  Well, the summary chart, Your Honor,     02:19PM
 9    deals with Counts 14 through 95.                            02:19PM
10          THE COURT:  Well, okay, but -- does it?               02:19PM
11          MR. MARTIN:  Yes.                                     02:19PM
12          MS. MCCONWELL:  Yes.                                  02:19PM
13          MS. S. MILLER:  So I think there are two              02:19PM
14    different objections going on here.  I don't know which one 02:19PM
15    the Court would like me --                                 02:19PM
16          THE COURT:  Hold on.  Hold on.  Hold on.  Let me      02:19PM
17    figure out the objection.                                  02:19PM
18          MS. S. MILLER:  One was to our disclosure about      02:19PM
19    this witness --                                             02:19PM
20          THE COURT:  You don't have to tell me that.  Hold    02:19PM
21    on.  I just got to figure out.  You guys want me to analyze 02:19PM
22    this.                                                       02:20PM
23          All right.  So the first objection is, Count 99      02:20PM
24    should not be discussed, number one.  And then No. 2, your 02:20PM
25    second objection is that this exhibit, this summary chart, it 02:20PM
```

*Direct - Khamvongsa*

1   only focuses on all other counts except for the counts that he          02:20PM

2   said he was going to speak of, which is 100 to 110 and the              02:20PM

3   proffer, is that -- those are the two objections?                       02:20PM

4           MR. MARTIN:  It's 13 through 95, Your Honor.                    02:20PM

5   Counts 13 through 95 -- 14.                                             02:20PM

6           THE COURT:  What's contained in the summary                     02:20PM

7   chart?                                                                  02:20PM

8           MR. MARTIN:  Yes, Your Honor.                                   02:20PM

9           MS. MCCONWELL:  Yes.                                            02:20PM

10          THE COURT:  13 through 95.                                      02:20PM

11          MS. MCCONWELL:  Well, 14 through 95.                            02:20PM

12          THE COURT:  Okay.  What is it?                                  02:20PM

13          MS. MCCONWELL:  14 through 95.                                  02:20PM

14          THE COURT:  Okay.  14.  So this exhibit is 14 --               02:20PM

15  only supposed to be focusing on 14 through 95.  All right.  Go          02:20PM

16  ahead.  Now, you can -- now, I think we know the three -- two           02:20PM

17  objections.  Go ahead.                                                  02:20PM

18          MS. S. MILLER:  Yes.  So in response to the first               02:20PM

19  objection, what our trial brief says about Agent Khamvongsa             02:20PM

20  is, he will testify, quote, "as to the wire fraud and money             02:20PM

21  laundering charges reflected in the second superseding                  02:21PM

22  indictment."  It doesn't specifically mention any count                 02:21PM

23  numbers but conspiracy to commit wire fraud is a wire fraud            02:21PM

24  charge.  We didn't --                                                   02:21PM

25          THE COURT:  I suppose they're getting very                      02:21PM

*Direct - Khamvongsa*

1   particular because there is a conspiracy to commit wire fraud   02:21PM

2   charge and there is a straight wire fraud charge and there is   02:21PM

3   a straight money laundering charge.  Okay, got it.  Next.   02:21PM

4   Your response to the next objection.   02:21PM

5           MS. S. MILLER:  Yes, the next response is, as   02:21PM

6   Mr. -- or Agent Khamvongsa just testified before we took this   02:21PM

7   break, he reviewed these specific documents, all of them, that   02:21PM

8   are summarized in the summary chart in order to trace the   02:21PM

9   funds from the bank accounts to the uncertificated mechanics   02:21PM

10  to identify the transactions that are in 104 through 110.   02:21PM

11          THE COURT:  All right.  Anything further,   02:21PM

12  Counsels?  Any further objections?  I can rule.   02:21PM

13          MR. MARTIN:  I've laid ours out, Your Honor.   02:22PM

14          MS. MCCONWELL:  Well...   02:22PM

15          THE COURT:  Yes, Ms. McConwell?   02:22PM

16          MS. MCCONWELL:  In their Counts 1 -- 100   02:22PM

17  through 104 and 105 through 110, there are no financial   02:22PM

18  transactions as described by Ms. Miller.   02:22PM

19          THE COURT:  I'm sorry, can you repeat that?  What   02:22PM

20  was that?   02:22PM

21          MS. MCCONWELL:  Ms. Miller indicated --   02:22PM

22          THE COURT:  Summary chart.   02:22PM

23          MS. MCCONWELL:  Yes.  Ms. Miller indicated that   02:22PM

24  the summary chart supports 100 through 104 and 105 through 110   02:22PM

25  because there were supposedly financial transactions that he   02:22PM

```
1    identified using this -- this -- her summary chart that she's        02:22PM
2    attempting to get into evidence, but there is nothing about          02:22PM
3    any of the information from these Counts 14 through 95 which          02:22PM
4    are contained in 100 through 104 or 105 through 110.  Those          02:22PM
5    are very specific financial transactions that in no way relate       02:22PM
6    to the chart that's 1254.                                            02:23PM
7              THE COURT:  Okay.  Hold on one second.  So                 02:23PM
8    Counts 14 through 93 are employing a pilot without a pilot           02:23PM
9    certificate.  And counts -- okay, just a minute.  I'm just           02:23PM
10   looking at the indictment.  Correct?  14 to 93 is employing a        02:23PM
11   pilot without a pilot certificate and 94 to 95 is registration      02:23PM
12   -- no, no, is that right?                                            02:23PM
13             MS. S. MILLER:  Yes.                                       02:23PM
14             THE COURT:  Okay, I'm sorry.  One.  Two.  Okay.            02:23PM
15   14 to 93 is employing a mechanic without a mechanic's                02:23PM
16   certificate.  And Counts 94 to 95 is employing a pilot without      02:23PM
17   a pilot certificate.                                                 02:23PM
18             So this is dealing with mechanic and pilot                 02:23PM
19   certificate.  And you're saying that this has nothing to do          02:23PM
20   with Counts 99 to 110?  She -- but her -- her comment is, is         02:23PM
21   that the information contained herein is relevant to his             02:24PM
22   investigation of 99 to 110.                                          02:24PM
23             MS. MCCONWELL:  And I say with 100 through 110,            02:24PM
24   it is not.  It relates in no way to those counts.                    02:24PM
25             THE COURT:  Okay, so I mean maybe at first blush           02:24PM
```

*Direct - Khamvongsa*

```
 1    that may be true, but let's see if the prosecutor lay a         02:24PM
 2    foundation on this.  Okay, go ahead.  Try to lay a foundation   02:24PM
 3    with the witness.  Let's see if you can do it, Counsel.         02:24PM
 4              MS. S. MILLER:  Yes.                                  02:24PM
 5              THE COURT:  Okay.  So I won't make a ruling on        02:24PM
 6    the admission of this.  Let's just try to lay the foundation    02:24PM
 7    first.  This is only for purposes of relevancy, Counsel.        02:24PM
 8    Okay, go ahead.  Because otherwise it would be admitted, but    02:24PM
 9    if it's irrelevant, it won't be admitted.                      02:24PM
10              (Pause.)                                              02:25PM
11    BY MS. S. MILLER: (CONTINUING)                                 02:25PM
12       Q.   Okay.  I'd like to show -- let's move away from this    02:25PM
13    so I can lay a foundation.  I'd like to show you what's been   02:25PM
14    previously marked as Exhibit 166 and page 68, specifically.    02:25PM
15    Yes.  Exhibit 166, page 68, please.  Okay, what about 176,     02:25PM
16    page 79, please.                                               02:25PM
17              (Pause.)                                              02:26PM
18    BY MS. S. MILLER: (CONTINUING)                                 02:26PM
19       Q.   Okay.  Let's -- is 183 in there?  Okay, let's pull up  02:26PM
20    Exhibit 183, please.                                           02:26PM
21              THE COURT:  Okay.  And has this been admitted?       02:26PM
22              MS. S. MILLER:  It has not.                          02:26PM
23    BY MS. S. MILLER: (CONTINUING)                                 02:26PM
24       Q.   Special Agent Khamvongsa, do you recognize this        02:26PM
25    document?                                                      02:26PM
```

*Direct - Khamvongsa*

```
 1      A.    Yes.                                          02:26PM

 2      Q.    What is it?                                   02:26PM

 3      A.    This is a pilot mechanic listing that was provided to   02:26PM

 4  me as a result of the search warrant.                   02:26PM

 5            MS. MCCONWELL:  Your Honor, I think he needs to   02:26PM

 6  --                                                      02:27PM

 7            THE COURT:  I'm sorry, what was the objection?   02:27PM

 8            MS. MCCONWELL:  Well, he's testifying about an   02:27PM

 9  exhibit that's not been admitted into evidence.         02:27PM

10            THE COURT:  Right.  Just say, do you recognize it   02:27PM

11  without saying what it is.                              02:27PM

12            THE WITNESS:  My apologies, Your Honor.       02:27PM

13            THE COURT:  Okay, that's fine.  So do you     02:27PM

14  recognize it?                                           02:27PM

15            THE WITNESS:  Yes.                            02:27PM

16            THE COURT:  Okay.  Next question.             02:27PM

17  BY MS. S. MILLER: (CONTINUING)                          02:27PM

18      Q.    I think I asked him, what is it for identification   02:27PM

19  purposes?                                               02:27PM

20            THE COURT:  He can't say what it is until it's   02:27PM

21  admitted.                                               02:27PM

22            MS. S. MILLER:  So I move to admit Exhibit 183,   02:27PM

23  please, Your Honor.                                     02:27PM

24            THE COURT:  How does he recognize it?         02:27PM

25  BY MS. S. MILLER: (CONTINUING)                          02:27PM
```

*Direct - Khamvongsa*

1      Q.   How do you recognize it?                                02:27PM

2      A.   It was provided to me from the FBI search warrant.      02:27PM

3      Q.   And can you remind the jury what the FBI search         02:27PM

4   warrant materials are?                                          02:27PM

5      A.   The FBI search warrant materials include lease          02:27PM

6   agreements, pilot-mechanic listings, e-mails, invoices.        02:27PM

7           MS. S. MILLER:  So at this time, Your Honor, I          02:27PM

8   move Exhibit 183 into evidence.                                 02:27PM

9           THE COURT:  All right.  Any objections, Counsels?       02:27PM

10          MR. MARTIN:  On behalf Mr. Walker, Your Honor, I        02:28PM

11  object on the basis of hearsay.                                 02:28PM

12          THE COURT:  Okay.  And Ms. McConwell?                   02:28PM

13          MS. MCCONWELL:  This is -- this document is not         02:28PM

14  relevant to Hansen Helicopters.  Hansen Helicopters is not     02:28PM

15  charged in Counts 99 through 110 and...I had one other one,    02:28PM

16  but I can't remember what it was.                              02:28PM

17          THE COURT:  Okay, then I can't rule on that.           02:28PM

18  Counts 99 through 110, is this really only to Counts 99        02:28PM

19  through 110?                                                    02:28PM

20          MS. S. MILLER:  No, Your Honor.  This is one of        02:28PM

21  the underlying documents for that summary chart that Agent     02:28PM

22  Khamvongsa reviewed in his investigation.                      02:28PM

23          THE COURT:  Okay.                                       02:28PM

24          MS. MCCONWELL:  And, Your Honor, it's not              02:28PM

25  relevant to any of those counts.                               02:28PM

```
 1          THE COURT:  Okay.  So it's relevancy.  Okay.  So          02:28PM
 2   even though it supports the -- it may support the summary         02:29PM
 3   chart, the objection is relevancy.  So that's the real            02:29PM
 4   objection.                                                        02:29PM
 5          MS. S. MILLER:  Right, and it's relevant to how            02:29PM
 6   he traced the funds, his analysis of tracing those funds to       02:29PM
 7   finally conclude that there was --                                02:29PM
 8          THE COURT:  You don't have to tell us the                  02:29PM
 9   conclusion, just say to what count.                               02:29PM
10          MS. S. MILLER:  That led to the counts, the                02:29PM
11   allegations in Counts 99 through 110.                             02:29PM
12          THE COURT:  Okay.  Okay.  Yes?                             02:29PM
13          MS. MCCONWELL:  Well, Your Honor, he --                    02:29PM
14   Mr. Khamvongsa is an investigator.  He's not an expert, first     02:29PM
15   of all.  And then second, and I was remiss not asking when he     02:29PM
16   started that Hansen Helicopters would also request a limiting     02:29PM
17   instruction that his testimony is only for Mr. Walker and not     02:29PM
18   for Hansen Helicopters.                                           02:29PM
19          THE COURT:  Any objection to that?                         02:29PM
20          MS. S. MILLER:  No, Your Honor.                            02:29PM
21          THE COURT:  All right.  So as far as it relates            02:29PM
22   to Counts 99 to 100, first of all, let's see G-183-1, based on    02:29PM
23   your proffer, the Court, ladies and gentlemen of the jury,        02:30PM
24   will admit G-183-1.  This -- so that's G-183-1, this              02:30PM
25   particular exhibit.  It's only one page?                          02:30PM
```

*Direct - Khamvongsa*

```
 1              MS. S. MILLER:  I think it's longer than that,      02:30PM
 2    Your Honor.  We can just admit page -- it's four pages total.  02:30PM
 3    We could do the first page or all four.  Either way.          02:30PM
 4              THE COURT:  You tell me what you want to do.         02:30PM
 5    What is relevant to the case?                                 02:30PM
 6              MS. S. MILLER:  Let's go for all four pages,         02:30PM
 7    please.                                                       02:30PM
 8              THE COURT:  So G-183 to 2, 3 and 4 will be          02:30PM
 9    admitted with objection.  And ladies and gentlemen, it is    02:30PM
10    would only apply to -- if you believe it, you would only apply 02:30PM
11    to -- or you consider it, it would only apply to defendant    02:30PM
12    Walker but not to Hansen Helicopters.                         02:30PM
13    (Exhibit G-183 admitted)                                      02:30PM
14              And that is as it relates to, according to the      02:30PM
15    prosecutor, 99 through 110; is that correct?                  02:30PM
16              MS. S. MILLER:  Yes, Your Honor.                    02:30PM
17              THE COURT:  All right.  Go ahead.  You may          02:30PM
18    proceed.                                                      02:30PM
19              MS. S. MILLER:  May I publish to the jury, Your     02:30PM
20    Honor?                                                        02:30PM
21              THE COURT:  You may.                                02:30PM
22              MS. S. MILLER:  Thank you.  So if we could just     02:31PM
23    zoom in, just on the top left quarter perhaps of the document, 02:31PM
24    please, Mr. Leon Guerrero.  I know it's hard to see with the  02:31PM
25    video there.  There you go.  Perfect.  Top quarter on the     02:31PM
```

*Direct - Khamvongsa*

left, please.  So down a little bit and down to the right just

a little more.  Just up to the date, perhaps.  Perfect.  Thank

you so much.

BY MS. S. MILLER: (CONTINUING)

     Q.   So Special Agent Khamvongsa, can you please read to

the jury the title of this document in the top left corner?

     A.   "Hansen Helicopters, Inc. Pilot Mechanic Aircraft

Vessel Fax, Phone E-mail List."

     Q.   Special Agent Khamvongsa, I believe you refer to the

documents you used in your investigation as PM lists; can you

explain whether that relates to this document?

     A.   It does.  PM list is the electronic Excel file as to

how it was saved.  That was the title of the file itself.

     Q.   So "P" stands for what?

     A.   Pilot.

     Q.   And "M" stands for what?

     A.   Mechanic.

     Q.   So you would agree that that title that you used is

what is featured here in the top left corner?

     A.   That's correct.

     Q.   Okay.  Now, can we walk through, please -- can you

walk the jury through the information that we're seeing just

in this top quarter of page 1 of Exhibit 183?

     A.   The first column identifies the helicopter assignment

to the fishery that is leasing it out.  And then the next

*Direct - Khamvongsa*

column identified as vessels, identifies the specific tuna
boats in which the helicopter is assigned to.

        The next column entitled *Pilot* identifies the pilot,
the start contract date and the end contract date captures
their contract period for the pilot.  The days remaining is
calculating what days are left and it's a running clock as
identified by the negative.  The mechanic is the -- identified
there, the mechanic assigned to the helicopter.  The start
contract date and the end contract date refers to the
mechanic.

    Q.   When you say it "refers to the mechanic," can you
explain that a little further?

    A.   It refers to the timeframe in which the mechanics are
assigned to the helicopters, which are identified in the first
columns.

    Q.   Now, did you see more than this one example, this
four-page document of what you've called *PM lists* or pilots
and mechanics lists?

    A.   Yes.  I reviewed over 30.

    Q.   Over 30.

        And also, I realize you've also referred to it as an
aircraft vessel list, right?

    A.   Correct.

    Q.   Okay.  So if we hear you say pilot mechanic list, PM
list or aircraft vessel list, you're talking about this type

1     of document?                                              02:33PM

2          A.    This one and another one.                      02:33PM

3          Q.    Okay.  Before we go back to the summary chart, while  02:33PM

4     the jury is looking at this particular example, can you walk  02:34PM

5     them through, again, how you used this type of document in  02:34PM

6     your wire fraud, including conspiracy to commit wire fraud,  02:34PM

7     and money laundering investigation?                       02:34PM

8          A.    So in reviewing this document, I compiled all the  02:34PM

9     names on there as it relates to the mechanics.  There, I gave  02:34PM

10    that information to my counterparts at DOTOIG and FAA, who  02:34PM

11    verified whether or not they were FAA certified or          02:34PM

12    certificated mechanics.  I utilized that information to     02:34PM

13    identify.  Once the information came back, I tied those     02:34PM

14    vessels that paid lease payments into the bank accounts to the  02:34PM

15    mechanic and the helicopter.                               02:34PM

16         Q.    How did you -- how did you tie that?  Can you explain  02:34PM

17    what you mean by "tie that" a little bit more?             02:34PM

18         A.    When I say "tie that," I mean I associate that the  02:35PM

19    from one document to another document to another document.  So  02:35PM

20    in reviewing this document again, for example, if we take the  02:35PM

21    first person, Henry Delumen, I would then go to another     02:35PM

22    document that was provided by FAA that would say that he --  02:35PM

23    that would say whether or not he's certificated.           02:35PM

24         Q.    Now, let me stop you there.  I know you've been  02:35PM

25    working on this investigation for a long time.  But once a  02:35PM

1   summary chart of that information was created, did you use       02:35PM

2   that summary chart to identify whether the particular mechanic    02:35PM

3   listed in that column was a FAA-certificated mechanic?            02:35PM

4       A.   Yes.                                                     02:35PM

5       Q.   Okay.  Continue please.                                  02:35PM

6       A.   Once identified, I would then look at another source    02:35PM

7   document that was provided via grand jury subpoena from the      02:35PM

8   Hansen Helicopters, Inc. and from there, I would verify if a     02:35PM

9   payment was made.  There, I would refer to the --                02:35PM

10      Q.   Sorry.  Let me stop you there.  When you say a          02:36PM

11  payment was made, from who and to who?                           02:36PM

12      A.   When I say payment was made, it's from the tuna boat    02:36PM

13  company to Hansen Helicopters or one of its subsidiaries.        02:36PM

14      Q.   And what documents did you look at to see whether a     02:36PM

15  payment was made from a tuna boat company to a Hansen entity     02:36PM

16  or one of its subsidiaries?                                      02:36PM

17      A.   I looked at two documents.                              02:36PM

18      Q.   Okay.  What are those two document?                     02:36PM

19      A.   I looked at Hansen Helicopters' own billing, schedule   02:36PM

20  of billing and collections and I compared that to the bank      02:36PM

21  records.                                                         02:36PM

22      Q.   Okay.  So now I'd like to go back to the summary        02:36PM

23  chart, Exhibit 1254, please.                                     02:36PM

24           THE COURT:  Let me just tell you, we're going to       02:36PM

25  take a recess at 3 for like a 20-minute recess because I'm      02:36PM

| | | |
|---|---|---|
| 1 | sorry, ladies and gentlemen of the jury, I have to handle | 02:36PM |
| 2 | another legal matter.  So -- which is not part of this case, | 02:36PM |
| 3 | but I have to handle it.  So it will be from 3 to 3:20 okay. | 02:37PM |
| 4 | MS. S. MILLER:  Thank you, Your Honor. | 02:37PM |
| 5 | THE COURT:  Yeah.  Do you think you'll be done | 02:37PM |
| 6 | with the witness before -- | 02:37PM |
| 7 | MS. S. MILLER:  I don't think so.  Probably not. | 02:37PM |
| 8 | THE COURT:  Okay. | 02:37PM |
| 9 | MS. S. MILLER:  But not too much after that time. | 02:37PM |
| 10 | THE COURT:  Okay.  Go ahead.  Just checking on | 02:37PM |
| 11 | our time. | 02:37PM |
| 12 | BY MS. S. MILLER:  (CONTINUING) | 02:37PM |
| 13 | Q.   Yeah.  So if we can look at Exhibit 1254, please. | 02:37PM |
| 14 | Now, Special Agent Khamvongsa, you've already testified that | 02:37PM |
| 15 | you recognize this document.  Can you tell -- well, I would | 02:37PM |
| 16 | move for its admission Your Honor, Exhibit 1254? | 02:37PM |
| 17 | THE COURT:  Okay.  Counsels? | 02:37PM |
| 18 | MR. MARTIN:  Your Honor, I think I previously | 02:37PM |
| 19 | objected to this document. | 02:37PM |
| 20 | THE COURT:  Yeah.  Yeah.  So I do have your | 02:37PM |
| 21 | objections.  You have any further objection? | 02:37PM |
| 22 | MR. MARTIN:  No, Your Honor. | 02:37PM |
| 23 | MS. MCCONWELL:  I have a voir dire in aid of an | 02:37PM |
| 24 | objection. | 02:37PM |
| 25 | THE COURT:  Yes.  Go ahead. | 02:37PM |

*Direct - Khamvongsa*

1                          **VOIR DIRE**

2  BY MS. MCCONWELL:

3      Q.    Mr. Khamvongsa --

4               MS. MCCONWELL:  I want a limiting instruction.

5  I'm sorry.  Hang on a second.

6               THE COURT:  I'm sorry?  I'm sorry, go ahead.

7               MS. MCCONWELL:  I need to confer with Counsel.

8               (Pause.)

9               MS. MCCONWELL:  Your Honor, I still have my

10  objection, but I would like a limiting instruction.

11              THE COURT:  Okay, for 1254?

12              MS. MCCONWELL:  For 1254.

13              THE COURT:  Al right.  Okay, ladies and gentlemen

14  of the jury, the Exhibit 1254 will be admitted over objection

15  and it will not apply to Hansen Helicopters, but it will apply

16  for your consideration, to the defendant, Mr. Walker.  So yes,

17  you may proceed and the relevancy objection is overruled.

18              MS. S. MILLER:  Thank you, Your Honor, may I

19  publish to the jury?

20  (Exhibit 1254 admitted.)

21              THE COURT:  You may.

22              MS. S. MILLER:  Thank you.

23  BY MS. S. MILLER: (CONTINUING)

24      Q.    So Mr. Leon Guerrero, could we do a top, sort of

25  fourth of this document through the blue column first, please.

*Direct - Khamvongsa*

1   So we can make sure the jury can read it, it's a little small.  02:39PM

2   That works.  Great, thank you.  02:39PM

3        So Special Agent Khamvongsa, you testified that this  02:39PM

4   is a summary chart, right?  02:39PM

5   A.   Yes.  02:39PM

6   Q.   Could you tell the jury what it's summarizing?  02:39PM

7   A.   This particular summary chart is summarizing the  02:39PM

8   information in which I reviewed, which includes search warrant  02:39PM

9   evidence and grand jury subpoenaed evidence all belonging to  02:39PM

10  Hansen Helicopters, Inc. or its subsidiaries.  02:39PM

11  Q.   And could you tell the members of the jury the name  02:39PM

12  of the summary chart?  02:39PM

13  A.   The name of the summary chart is Summary of PM List  02:39PM

14  Data from Search Warrant and Subpoenaed Hansen Helicopters  02:39PM

15  Records.  02:39PM

16  Q.   Okay.  And could we go one by one and I'll ask the  02:39PM

17  questions for each column, but first can you tell the members  02:39PM

18  of the jury what's in the first column entitled *Helicopter*?  02:39PM

19  A.   The first column contains all the helicopters  02:39PM

20  identified in the documents, which I just discussed.  02:40PM

21  Q.   Okay.  And in the mechanic column?  02:40PM

22  A.   The mechanic lists all the names I found in the  02:40PM

23  search warrant material and the grand jury subpoenaed material  02:40PM

24  from Hansen Helicopters.  02:40PM

25  Q.   And what are -- what's indicated in the count column?  02:40PM

*Direct - Khamvongsa*

1    A.   The count is in reference to the number in the                       02:40PM

2  indictment for that particular individual.                                   02:40PM

3    Q.   Okay.  And then what does the indictment column mean?                 02:40PM

4    A.   The indictment is in reference to the timeframe,                      02:40PM

5  which is identified within the indictment for that mechanic.                 02:40PM

6    Q.   So is it fair to say that those two columns, count                    02:40PM

7  and indictment, is just repeating information contained in the               02:40PM

8  second superseding indictment?                                               02:40PM

9    A.   That's correct.                                                       02:40PM

10    Q.   Okay.  And then the next two columns, the first two                  02:40PM

11  sort of aqua-colored ones, reported contract dates, can you                 02:40PM

12  read, before you tell them exactly what is in there, sort of                02:40PM

13  the subheading above that, please?                                          02:40PM

14    A.   It says "PM list files from search warrant."                         02:40PM

15    Q.   Can you please tell the jury what that means?                        02:41PM

16    A.   Again, this pertains specifically to the search                      02:41PM

17  warrant material or search warrant evidence that was provided               02:41PM

18  to me from the FBI search warrant in October 2016.                          02:41PM

19    Q.   And when it says "PM list," what does that mean?                     02:41PM

20    A.   Pilot mechanic.                                                      02:41PM

21    Q.   So is that -- are these references that are taken                    02:41PM

22  directly from examples of documents like the last one we just              02:41PM

23  looked at?                                                                  02:41PM

24    A.   Yes.                                                                 02:41PM

25    Q.   And in the next two columns that are the gray                        02:41PM

1    heading?

2        A.   The gray heading refers to subpoenaed records I

3    received from Hansen Helicopters and it's a summary of that.

4        Q.   I'm sorry, let's go back one.  File saved dates.  Can

5    you tell the jury what that means?

6        A.   So of the 30 files that I reviewed, at the end of the

7    title of the document when it says "PM list," a date was

8    provided in reference to the save date of that file.

9        Q.   So to be clear, the documents you're referencing, the

10   30 files, they were electronic files you were reviewing?

11       A.   Yes.  They were electronic Excel files.

12       Q.   Okay.  Thank you.  And then finally the government

13   exhibit number column, could you tell the jury what that

14   means, please?

15       A.   Those reference the pilot mechanic listings and the

16   government exhibit numbers that are tied to those specific

17   pilot mechanic lists from the search warrant.

18       Q.   Thank you.

19       A.   Or the subpoenaed documents.

20       Q.   Thank you.  Okay.  Let's -- well, taking a step back,

21   Agent Khamvongsa, you testified earlier that you also reviewed

22   the lease contracts or lease with the tuna boat companies,

23   right?

24       A.   Correct.

25       Q.   About how many leases would you say you reviewed?

*Direct - Khamvongsa*

```
 1    A.   Over 200.                                        02:42PM

 2    Q.   Okay.  About how many pages was that?            02:42PM

 3    A.   Um... 4 to 5,000 pages.                          02:42PM

 4    Q.   Okay.  I'd like to take a look at one of those   02:42PM

 5  leases, which has been previously admitted.  Could we can  02:42PM

 6  please go to Exhibit 2900-1142.                         02:42PM

 7            THE COURT:  Okay.  This has not been admitted.  02:43PM

 8            MS. S. MILLER:  No, it has been admitted, Your  02:43PM

 9  Honor.                                                  02:43PM

10            THE COURT:  Oh, it has been?                  02:43PM

11            MS. S. MILLER:  Yes.                          02:43PM

12            THE COURT:  2900 dash what?                   02:43PM

13            MS. S. MILLER:  1142.                         02:43PM

14  BY MS. S. MILLER: (CONTINUING)                          02:43PM

15    Q.   Now, while we're pulling that up, can you remind the  02:43PM

16  jury, Special Agent Khamvongsa, why you looked at the   02:43PM

17  helicopter leases or contracts?                         02:43PM

18    A.   I looked at the helicopter leases and contracts just  02:43PM

19  to verify the information that's provided within the document  02:43PM

20  here, so I was just trying to corroborate all the evidence and  02:43PM

21  tie them all together.                                  02:43PM

22    Q.   So what was it specifically in the lease documents  02:43PM

23  you were looking at?                                    02:43PM

24    A.   I was looking at the lease contract information,  02:43PM

25  itself, what was stated within the contract.           02:43PM
```

*Direct - Khamvongsa*

```
 1      Q.    Okay.  Special Agent Khamvongsa, of the -- I think   02:43PM

 2   you said 200 leases, is this one of the leases you reviewed?  02:44PM

 3      A.    Yes.                                                 02:44PM

 4      Q.    Could you tell the jury who the lessor is?           02:44PM

 5      A.    The lessor identified in this document is Wilma's    02:44PM

 6   Flight Service, Inc.                                          02:44PM

 7      Q.    And that's the one leasing the helicopter?           02:44PM

 8      A.    That is the one leasing the helicopter.              02:44PM

 9      Q.    And who is the lessee?                               02:44PM

10            MS. MCCONWELL:  Your Honor, I object to this         02:44PM

11   line.  The dates contained in the chart that he's talking     02:44PM

12   about, Exhibit 1254, all occur within 2015 -- '14, '15 and    02:44PM

13   '16.  And the document she's asking questions about occurred  02:44PM

14   in 2008.  So it in no way -- so these questions are not       02:44PM

15   relevant to the document.                                     02:44PM

16            THE COURT:  So the objection is relevance?           02:44PM

17            MS. MCCONWELL:  Relevance.                           02:44PM

18            THE COURT:  Okay.  Counsel?                          02:44PM

19            MS. S. MILLER:  Count 99 goes well beyond those      02:44PM

20   specific dates.                                               02:44PM

21            THE COURT:  Count 99?                                02:44PM

22            MS. S. MILLER:  Mm hmm.                              02:44PM

23            (Pause.)                                             02:45PM

24            MS. MCCONWELL:  Well, Your Honor, she                02:45PM

25   specifically -- she's specifically asking him what he looked  02:45PM
```

```
 1   at in tying together the information for this summary chart      02:45PM
 2   that's just been admitted, 1254, and he indicated he looked at   02:45PM
 3   leases to tie together the information with pilots and            02:45PM
 4   mechanics.  And 2008, which is what this 2900-1142, which is      02:45PM
 5   dated.  There are no dates.  This document that was created      02:45PM
 6   was about eight years after or before -- or yeah, they're        02:45PM
 7   discussing now is eight years before any item that's contained   02:45PM
 8   on 1254.                                                         02:45PM
 9            THE COURT:  So let me just be clear, so this            02:45PM
10   particular document, this is 1254, right?                        02:45PM
11            MS. S. MILLER:  Yes.                                     02:45PM
12            THE COURT:  This is 1254?                                02:45PM
13            MS. S. MILLER:  This is 2900-1142.  This                02:45PM
14   document.                                                        02:46PM
15            THE COURT:  Right now, this is 2900.                    02:46PM
16            MS. MCCONWELL:  Yes.                                     02:46PM
17            THE COURT:  So you're saying between 2900-1142 is       02:46PM
18   irrelevant to the summary chart?                                 02:46PM
19            MS. MCCONWELL:  Is not relevant to the summary          02:46PM
20   chart that she's having him testify what he looked at in         02:46PM
21   creating his -- yeah.                                            02:46PM
22            THE COURT:  His investigation?                          02:46PM
23            MS. MCCONWELL:  Yes, ma'am.                             02:46PM
24            MR. MARTIN:  It's not an underlying document.           02:46PM
25            THE COURT:  I'm sorry?                                  02:46PM
```

*Direct - Khamvongsa*

```
 1              MR. MARTIN:  It's not an underlying document to       02:46PM

 2    the chart.                                                      02:46PM

 3              THE COURT:  It's not an underlying document to        02:46PM

 4    the chart?                                                      02:46PM

 5              MR. MARTIN:  Correct.                                 02:46PM

 6              MS. S. MILLER:  May I respond, Your Honor?            02:46PM

 7              THE COURT:  First of all, is it an underlying         02:46PM

 8    document to the chart?                                          02:46PM

 9              MS. S. MILLER:  So it's way beyond --                 02:46PM

10              THE COURT:  No, so my question, forget -- is it       02:46PM

11    an underlying document to the summary chart?                   02:46PM

12              MS. S. MILLER:  No, Your Honor.                       02:46PM

13              THE COURT:  Okay.  Second question is, is it          02:46PM

14    relevant to the dates that are contained in the summary chart?  02:46PM

15    That's their objection.                                        02:46PM

16              MS. S. MILLER:  Right, and it's not related to        02:46PM

17    the summary chart.  So...                                      02:46PM

18              THE COURT:  It's not related to the summary           02:46PM

19    chart.  Okay?                                                  02:46PM

20              MR. MARTIN:  But the question she asked him was,      02:46PM

21    can we go to some documents that you used in creating the      02:46PM

22    summary chart.  And if that's not the question, I mean don't   02:47PM

23    ask it, if that's not what you expect.                         02:47PM

24              THE COURT:  So you want -- so you said she was        02:47PM

25    tying it to the summary chart.                                 02:47PM
```

*Direct - Khamvongsa*

1    MR. MARTIN:  Yeah.  We can reread the question.  `02:47PM`

2 But I'm almost positive.  `02:47PM`

3    THE COURT:  Let's check the evidence.  Veronica,

4 can you read that last question?

5    (Whereupon the reporter read back requested

6 portion.)

7    MR. MARTIN:  It's going to be a little before

8 that, Your Honor.

9    THE COURT:  It's going -- so it has to deal with

10 the word *summary chart*.  `02:47PM`

11    MS. S. MILLER:  Your Honor, I'll withdraw and  `02:47PM`

12 I'll use another example.  It's not worth the time.  So I'll  `02:47PM`

13 just use another.  `02:47PM`

14    THE COURT:  You're withdrawing the question?  `02:47PM`

15    MS. S. MILLER:  I'll withdraw this exhibit.  We  `02:47PM`

16 can move on to a different exhibit.  `02:47PM`

17    THE COURT:  Okay.  The question is withdrawn.  `02:47PM`

18 Exhibit is withdrawn and objection is withdrawn.  I don't have  `02:47PM`

19 to make a ruling.  And Veronica, you don't have to read it.  `02:47PM`

20 So let's go.  Next question.  `02:47PM`

21 BY MS. S. MILLER: (CONTINUING)  `02:47PM`

22    Q.   I'd like to show you what has been previously marked  `02:47PM`

23 and admitted as Exhibit 2900-1447, please.  `02:47PM`

24    THE COURT:  Has been admitted.  `02:48PM`

25    MS. S. MILLER:  It has been.  `02:48PM`

```
 1                    THE COURT:  2900-14.                    02:48PM

 2    BY MS. S. MILLER: (CONTINUING)                          02:48PM

 3        Q.   So while that's getting pulled up, Special Agent   02:48PM

 4    Khamvongsa, can you please say again what you did in your  02:48PM

 5    investigation with respect to the lease agreements, the    02:48PM

 6    200-plus lease agreements you reviewed?                 02:48PM

 7        A.   Again, in reviewing those lease agreements, I didn't   02:48PM

 8    -- I reviewed it to identify how it matches up with the rest   02:48PM

 9    of the documents.  I was looking for patterns of consistency.   02:48PM

10    I relied on not only the pilot mechanic listings, but also   02:48PM

11    other records that I looked at from the FAA, such as the   02:48PM

12    registration documentations.                           02:48PM

13        Q.   Now, for example, did you also --             02:48PM

14             MS. MCCONWELL:  Your Honor, Hansen Helicopters is   02:48PM

15    not charged in Counts 99 through 110.  And so I object to   02:48PM

16    relevance of this objection -- or to this exhibit being   02:48PM

17    discussed with this witness.                           02:48PM

18             THE COURT:  Okay.  Counts 99 through 110.  So   02:48PM

19    you're just saying it's irrelevant to your client.     02:49PM

20             MS. MCCONWELL:  Relevant to Hansen Helicopters.   02:49PM

21             THE COURT:  So would you like a limiting       02:49PM

22    instruction?                                           02:49PM

23             MS. MCCONWELL:  Yes, ma'am.                    02:49PM

24             THE COURT:  No objection, I'm sure?            02:49PM

25             MS. S. MILLER:  No, Your Honor.                02:49PM
```

*Direct - Khamvongsa*

```
 1              THE COURT:  All right.  Ladies and gentlemen of       02:49PM
 2    the jury, this particular exhibit, 2914-47, is not relevant to  02:49PM
 3    Hansen Helicopters as a defendant, and may be relevant -- I'm    02:49PM
 4    sorry?  Carmen, it's not admitted?  Carmen just corrected me.    02:49PM
 5    It's 2900-147.  Okay, I said that incorrectly.  Let me change    02:49PM
 6    that.  So 2900-147.  Let me repeat that.  Strike everything I    02:49PM
 7    just said.  So ladies and gentlemen, 2900-147 --                 02:49PM
 8              MS. S. MILLER:  1447, Your Honor.  I know it's         02:49PM
 9    hard to hear in here.                                            02:49PM
10              THE COURT:  No, it's just -- okay.  Let me start       02:49PM
11    again.                                                           02:49PM
12              Ladies and gentlemen of the jury, this exhibit,        02:49PM
13    2900-1447 is not -- should not be used against Hansen            02:49PM
14    Helicopters.  It's not relevant to the charges against Hansen    02:49PM
15    Helicopters because Hansen Helicopters are not named in          02:50PM
16    Counts 99 through 110.  They may, however, be used --            02:50PM
17              MR. MARTIN:  May I make an objection, Your Honor,      02:50PM
18    before --                                                        02:50PM
19              THE COURT:  Before I say anything?                     02:50PM
20              MR. MARTIN:  Yes, Your Honor.                          02:50PM
21              THE COURT:  So I won't say anything.  Go ahead.        02:50PM
22              MR. MARTIN:  I didn't mean to interrupt you, but       02:50PM
23    I'd like to ask a question in aid of an objection to the same    02:50PM
24    exhibit.                                                         02:50PM
25              THE COURT:  Okay.  Go ahead.                           02:50PM
```

| | | |
|---|---|---|
| 1 | **VOIR DIRE** | 02:50PM |
| 2 | BY MR. MARTIN: | 02:50PM |
| 3 | Q.   Agent *Khamvonska*? | 02:50PM |
| 4 | A.   Khamvongsa, sir. | 02:50PM |
| 5 | Q.   I'm sorry.  I'm from Oklahoma. | 02:50PM |
| 6 | A.   You have a great accent, sir. | 02:50PM |
| 7 | Q.   That's how we say it there. | 02:50PM |
| 8 | THE COURT:  He has a great accent? | 02:50PM |
| 9 | THE WITNESS:  Yes.  Yes, Your Honor. | 02:50PM |
| 10 | BY MR. MARTIN: (CONTINUING) | 02:50PM |
| 11 | Q.   *Khamvolsa*? | 02:50PM |
| 12 | A.   Khamvongsa. | 02:50PM |
| 13 | Q.   Vongsa? | 02:50PM |
| 14 | A.   Yes. | 02:50PM |
| 15 | Q.   Okay. | 02:50PM |
| 16 | THE COURT:  Practice. | 02:50PM |
| 17 | THE WITNESS:  We'll go with that. | 02:50PM |
| 18 | MS. S. MILLER:  It's like a "K" sound. | 02:50PM |
| 19 | MR. MARTIN:  It's got a "K." Vongsa? | 02:50PM |
| 20 | THE WITNESS:  Khamvongsa.  G is a little bit | 02:50PM |
| 21 | soft. | 02:50PM |
| 22 | THE COURT:  Vong.  Vong.  It's got an "N" in | 02:50PM |
| 23 | there, right? | 02:50PM |
| 24 | THE WITNESS:  Yeah.  Like song, but replace it | 02:50PM |
| 25 | with a "V" Vong. | 02:50PM |

*Direct - Khamvongsa*

1    BY MR. MARTIN:  (CONTINUING)                          02:50PM

2        Q.    Agent.                                       02:50PM

3        A.    That works, Your Honor -- sir.  Thank you.   02:50PM

4        Q.    Are you familiar with the document that's been  02:50PM

5    introduced, 2900-1446 through the end of the -- through the  02:51PM

6    end of that entire document, just that one document, sir?  02:51PM

7        A.    Let me correct you.  It's 1447, 2900-1447.  You said  02:51PM

8    2900-1446.                                              02:51PM

9        Q.    Actually, I think it starts -- let me go back up to  02:51PM

10   the top.  1441.  Oh, I'm sorry.  I'm looking at the wrong  02:51PM

11   document.  I apologize.  Thank you for correcting me.   02:51PM

12          Have you read that entire document, sir?         02:51PM

13       A.    Yes.                                          02:51PM

14       Q.    Is John Walker's name mentioned anywhere in that  02:51PM

15   document?                                               02:51PM

16       A.    I don't recall seeing his name in this particular  02:51PM

17   document, but I do recall seeing his name in other --   02:51PM

18       Q.    I didn't ask you about other documents.  I'm talking  02:51PM

19   about this one right here.  Okay?                       02:51PM

20       A.    Okay.                                         02:51PM

21       Q.    Do you need time to review it?                02:51PM

22       A.    I'd have to review the rest of it.  But as -- I can't  02:52PM

23   say for sure because there are so many documents.  There's  02:52PM

24   over 4 to 5,000 documents.                              02:52PM

25       Q.    I'm just talking about this one document.  It's  02:52PM

*Direct - Khamvongsa*

```
 1    labeled a lease, right?                                          02:52PM
 2        A.   Yes.  Yes.  It's a lease service agreement.             02:52PM
 3        Q.   And it ends on page 1452; correct, sir?                 02:52PM
 4        A.   I would have to see it.                                 02:52PM
 5        Q.   Okay.  And I -- can it be shown to the witness so he    02:52PM
 6    could see the document, Your Honor?  Because my next question    02:52PM
 7    is, on the very last page, did Mr. Walker sign this document.    02:52PM
 8             THE COURT:  Okay, so sure.  Go ahead.                   02:52PM
 9    BY MR. MARTIN: (CONTINUING)                                      02:53PM
10        Q.   Can you answer my question, sir?                        02:53PM
11        A.   Yes, sir.                                               02:53PM
12        Q.   Did Mr. Walker sign this document?                      02:53PM
13        A.   No, he did not.                                         02:53PM
14        Q.   Okay.  And would you take my word if I told you his     02:53PM
15    name is not in there anywhere?                                   02:53PM
16        A.   Um...I would only after reviewing the evidence.         02:53PM
17        Q.   All right.  I'd ask that he be given the opportunity    02:53PM
18    to review it, Your Honor.  It's almost 3 o'clock.  Maybe he      02:53PM
19    can do that.  And --                                            02:53PM
20             THE COURT:  Sure.  Let's do that.                       02:53PM
21             MR. MARTIN:  Thank you.                                 02:53PM
22             THE COURT:  So you could review it.  That would         02:53PM
23    be fair.  All right, ladies and gentlemen of the jury, I have    02:53PM
24    a call at 3 o'clock, let me try to get on my call right now,     02:53PM
25    so I should be back at 3:20.  Please keep an open mind.  Do      02:53PM
```

*Direct - Khamvongsa*

```
1   not form or express any opinion on this case until it's          02:53PM
2   submitted to you.  I'll see you after your afternoon break.      02:53PM
3   Please rise for the jury.                                        02:53PM
4              (Jury out at 2:52 p.m.)                                02:53PM
5              THE COURT:  We're outside the presence of the         02:54PM
6   jury.  Are you trying to have 2900-1447 through 1452 in its      02:54PM
7   entirety be admitted?                                            02:54PM
8              MS. S. MILLER:  It's already admitted, Your           02:54PM
9   Honor.                                                           02:54PM
10             THE COURT:  Oh, it's already been admitted?           02:54PM
11  Okay.  That's right.  You did say that.  Okay.  That's fine.     02:54PM
12  Thank you.  So you want to review it?  Can you review it.        02:54PM
13             THE WITNESS:  Sure, I can review.                     02:54PM
14             MS. S. MILLER:  I'll show it to him on my             02:54PM
15  computer.                                                        02:54PM
16             THE WITNESS:  Thank you, Your Honor.                  02:54PM
17             THE COURT:  Okay, thank you.                          02:54PM
18             (Recess taken at 2:54 p.m.)                           02:54PM
19             (Back on the record at 3:50 p.m.)                     03:50PM
20             THE COURT:  We'll call in the jury, oh, no, let's     03:50PM
21  get ready.  Ready?                                               03:50PM
22             (Pause.)                                              03:50PM
23             THE COURT:  We'll call in the jury.  You guys         03:50PM
24  ready to go?                                                     03:50PM
25             MR. MARTIN:  Yes, Your Honor.                         03:50PM
```

*Direct - Khamvongsa*

```
 1          THE COURT:  Okay.  There you go.  Let's call in      03:50PM
 2   the jury.  Sorry that took longer than I thought.  There is  03:50PM
 3   not enough hours in the day with this trial.               03:50PM
 4          MS. S. MILLER:  Your Honor, can we address one       03:51PM
 5   thing before we bring in the jury, actually?               03:51PM
 6          THE COURT:  Make it fast because they're coming.     03:51PM
 7          MS. S. MILLER:  So because Your Honor issued a       03:51PM
 8   limiting instruction with respect to Hansen Helicopters, I   03:51PM
 9   think it's a waste of time for Hansen Helicopters to continue 03:51PM
10   objecting to this evidence since you've already issued that   03:51PM
11   limiting instruction.  So could we perhaps --                03:51PM
12          THE COURT:  Well, I think it depends on what the     03:51PM
13   objection is.  The objection was relevance, so we had to talk 03:51PM
14   about it.  If --                                            03:51PM
15          MS. S. MILLER:  But if we're talking about counts    03:51PM
16   that are not even -- that Hansen Helicopters isn't even     03:51PM
17   involved in, why is she objecting to relevance?            03:51PM
18          THE COURT:  Well, she doesn't want -- she wants      03:51PM
19   to make sure that it's not -- there is a limiting instruction 03:51PM
20   as to the -- to any particular piece of evidence.  She's --  03:51PM
21          MS. S. MILLER:  Standing objection so we don't       03:51PM
22   have to keep doing it for every piece of evidence with this  03:51PM
23   witness.                                                    03:51PM
24          THE COURT:  She has to preserve her objection or     03:51PM
25   she's out of luck in the appellate court.                   03:51PM
```

```
1              MS. MCCONWELL:  That's right.                    03:51PM

2              THE COURT:  I mean, if it's a different exhibit,  03:51PM

3    she must preserve her specific objection or they're going to  03:52PM

4    say you waived it.  That's why.                           03:52PM

5              MS. S. MILLER:  What about as to exhibits that    03:52PM

6    are already admitted?                                     03:52PM

7              THE COURT:  Well, she's talking about it's        03:52PM

8    irrelevant, though.  It may be admitted, but it's irrelevant  03:52PM

9    to the testimony of the witness so she can still make a     03:52PM

10   relevancy objection.  So your request is denied.          03:52PM

11             MS. S. MILLER:  Okay.                            03:52PM

12             (Pause.)                                         03:52PM

13             THE COURT:  What are you practicing?             03:53PM

14             MR. MARTIN:  Khamvongsa.                         03:53PM

15             THE COURT:  Just write it down phonetically.     03:53PM

16             MR. MARTIN:  How is that?                        03:53PM

17             THE WITNESS:  It was very close.                 03:53PM

18             THE COURT:  Practice.  It's Khamvongsa.          03:53PM

19             THE WITNESS:  Vongsa.                            03:53PM

20             THE COURT:  Just do phonetics.                   03:53PM

21             THE WITNESS:  The occasional "hey you" works,    03:53PM

22   too, sir.                                                 03:53PM

23             THE COURT:  What's that?                         03:53PM

24             THE WITNESS:  Hey you.                           03:53PM

25             THE COURT:  Hey.  Just write it down.            03:53PM
```

*Direct - Khamvongsa*

```
 1                    MR. MARTIN:  I've written it down about five        03:53PM
 2      different times, Judge.                                            03:53PM
 3                    THE COURT:  I know, but do it phonetically.          03:53PM
 4                    (Jury in at 3:53 p.m.)                               03:53PM
 5                    THE COURT:  Please be seated.  Welcome back,         03:54PM
 6      ladies and gentlemen of the jury.  Even for me to remember        03:54PM
 7      tail rotor pitch change link, that's very difficult.  Go          03:54PM
 8      ahead.                                                            03:54PM
 9                    MR. MARTIN:  Agent Khamvongsa.  Close?              03:54PM
10                    THE COURT:  Give him a lesson.                       03:54PM
11                    MR. MARTIN:  Help me out here.                       03:54PM
12                    THE WITNESS:  It's Khamvongsa.  G is a little        03:54PM
13      softer.                                                           03:54PM
14                    MR. MARTIN:  Khamvongsa.                            03:54PM
15                    THE WITNESS:  Yes, sir.                             03:55PM
16                    THE COURT:  Very good.                              03:55PM
17      BY MR. MARTIN: (CONTINUING)                                        03:55PM
18          Q.   Agent Khamvongsa, do you recall the question I asked     03:55PM
19      you before we took the recess, sir?                               03:55PM
20          A.   Yes, sir.                                                03:55PM
21          Q.   And did you have an opportunity during the recess to     03:55PM
22      review 2900-1447, sir?                                            03:55PM
23          A.   Yes, sir.                                                03:55PM
24          Q.   And did you find the name "Jon Walker" anywhere in       03:55PM
25      that document, sir?                                               03:55PM
```

*Direct - Khamvongsa*

```
 1      A.   No, sir.                                      03:55PM

 2           MR. MARTIN:  I object, Your Honor, to the     03:55PM

 3   introduction of that document on the basis of relevance.  03:55PM

 4           THE COURT:  Can you just pull that exhibit up.  03:55PM

 5   What exhibit is that?  Is that 1376?                  03:55PM

 6           MS. S. MILLER:  Actually, Your Honor, we can  03:55PM

 7   withdraw my question.                                 03:55PM

 8           THE COURT:  Withdrawn.  Okay.  The case -- I'm  03:55PM

 9   sorry, exhibit withdrawn.  Go to the next question.   03:55PM

10           MS. S. MILLER:  Thank you, Your Honor.        03:55PM

11   BY MS. S. MILLER: (CONTINUING)                        03:55PM

12      Q.   Agent Khamvongsa, I'd like to show you what's been  03:55PM

13   admitted as Exhibit 1252, please.  And specifically, page 9, I  03:55PM

14   believe.                                              03:55PM

15           Now, Agent Khamvongsa, what is this document?  03:56PM

16      A.   This is a summary document of the registration for  03:56PM

17   all the aircrafts in this case.                       03:56PM

18      Q.   Thank you.  And if we could zoom in on the entry for  03:56PM

19   N454S, please.  Could you please walk the members of the jury  03:56PM

20   through this entry, starting at the bottom to the top, so  03:56PM

21   oldest to newest, please?                             03:56PM

22      A.   Starting on 6 -- sorry, starting --           03:56PM

23           THE COURT:  Can you make it larger, this font  03:56PM

24   size, Mr. --                                          03:56PM

25           MS. S. MILLER:  I don't think so.  But why don't  03:56PM
```

1  we zoom in on everything except the last one, two, three, four      03:56PM

2  five rows.  Maybe that'll make it a little bigger.  I mean      03:56PM

3  columns.  Last four columns.  Perfect.  Maybe that will be      03:56PM

4  better.  Is that better, Your Honor.      03:56PM

5          THE COURT:  I can see it better, go ahead.      03:56PM

6          THE WITNESS:  Begin?      03:56PM

7  BY MS. S. MILLER:  (CONTINUING)      03:57PM

8      Q.   Yes, please.      03:57PM

9      A.   This is for N454S Serial No. 330454S.  And I'm      03:57PM

10 starting at the bottom.  671996, source R.  AC Form 8050-1,      03:57PM

11 Hansen Helicopters, Inc., PO Box 9099 Tamuning, Guam 96931.      03:57PM

12 It is -- name of applicant, Hansen Helicopters, Inc., U.S.      03:57PM

13 corporation, Jon Walker, handwritten, Jon Walker.      03:57PM

14     Q.   Okay.  And then if we go up to the entry for      03:57PM

15 12-21-2007, could you please tell the members of the jury what      03:57PM

16 we're seeing there?      03:57PM

17     A.   The date is 12-21-2007.  The sources are, it's AC      03:57PM

18 Form 8050-1, Dave's Helicopter Service, Inc., 9102 Lini      03:57PM

19 Highway PMB Port Vila, Vanuatu, Dave's Helicopter Service,      03:57PM

20 Inc. U.S. corporation, Jon Walker, handwritten, Jon Walker.      03:57PM

21     Q.   And then without reading every single entry above      03:58PM

22 that, would you agree that the entries above that are      03:58PM

23 consistent with the entry in December 2007, so Dave's      03:58PM

24 continues to be the registered owner?      03:58PM

25     A.   That's correct.      03:58PM

 1     Q.   And Jon Walker continues to be the, let's see,        03:58PM

 2   certified and signed by on behalf of applicant?              03:58PM

 3     A.   That's correct.                                       03:58PM

 4     Q.   Okay.  Now I'd like to go to Exhibit 2900-1142.       03:58PM

 5          THE COURT:  Okay.  Repeat that.  What was that        03:58PM

 6   exhibit?                                                     03:58PM

 7          MS. S. MILLER:  2900-1142, which has already been     03:58PM

 8   admitted, please.                                            03:58PM

 9   BY MS. S. MILLER: (CONTINUING)                               03:59PM

10     Q.   Special Agent Khamvongsa, what is this document?      03:59PM

11     A.   This is a lease agreement.                            03:59PM

12     Q.   And what is the aircraft identified in this lease     03:59PM

13   agreement?                                                   03:59PM

14     A.   N454S.                                                03:59PM

15     Q.   Would you agree that's the same --                    03:59PM

16          MR. MARTIN:  Your Honor, I object to this             03:59PM

17   testimony.  We just had this document up and we objected to  03:59PM

18   it.  It's a 2008 document.  It doesn't support the summary   03:59PM

19   chart.                                                       03:59PM

20          THE COURT:  Okay.  Let me look at --                  03:59PM

21          MS. S. MILLER:  Which summary chart, Counsel?         03:59PM

22          MR. MARTIN:  The one you were using a while ago.      03:59PM

23          MS. S. MILLER:  This testimony is totally             03:59PM

24   separate from that summary chart.  I think he's going back to 03:59PM

25   the PM list summary chart.  This is separate now.            03:59PM

| | | |
|---|---|---|
| 1 | THE COURT:  So it's not connected to the summary | 03:59PM |
| 2 | chart. | 03:59PM |
| 3 | MR. MARTIN:  Well it's not -- I also submit, Your | 03:59PM |
| 4 | Honor, it's not connected to Counts 100 through 110. | 03:59PM |
| 5 | THE COURT:  Okay, so Counsel? | 03:59PM |
| 6 | MS. S. MILLER:  I can ask some foundational | 03:59PM |
| 7 | questions. | 04:00PM |
| 8 | THE COURT:  All right.  Very well.  Go ahead and | 04:00PM |
| 9 | do that. | 04:00PM |
| 10 | BY MS. S. MILLER: (CONTINUING) | 04:00PM |
| 11 | Q.  So Agent Khamvongsa, did you review this document in | 04:00PM |
| 12 | your investigation of the conspiracy to commit wire fraud? | 04:00PM |
| 13 | A.  Yes. | 04:00PM |
| 14 | Q.  What count is that in the indictment? | 04:00PM |
| 15 | A.  99. | 04:00PM |
| 16 | Q.  Okay.  What is the timeframe alleged in that count? | 04:00PM |
| 17 | A.  2002 and it's an ongoing conspiracy. | 04:00PM |
| 18 | Q.  So there is no end date? | 04:00PM |
| 19 | A.  None. | 04:00PM |
| 20 | MS. MCCONWELL:  Your Honor. | 04:00PM |
| 21 | THE COURT:  I'm sorry.  Yes?  What's the | 04:00PM |
| 22 | objection? | 04:00PM |
| 23 | MR. MARTIN:  The objection is that his summary | 04:00PM |
| 24 | from the government's trial exhibits says he will be | 04:00PM |
| 25 | testifying about wire fraud and money laundering, Your Honor. | 04:00PM |

*Direct - Khamvongsa*

1   Not conspiracy.                                      04:00PM

2           THE COURT:  Okay, so same objection in terms of   04:00PM

3   notice.                                              04:00PM

4           MR. MARTIN:  Yes, Your Honor.                04:00PM

5           THE COURT:  All right.  And not include the  04:00PM

6   Count 99, that's what you're saying?                 04:00PM

7           MR. MARTIN:  Correct.  Your Honor.           04:00PM

8           THE COURT:  Will you join the objection, Ms.  04:00PM

9   McConwell?                                           04:00PM

10          MS. MCCONWELL:  I am, but I still -- we're still  04:00PM

11  not in the count.                                    04:01PM

12          THE COURT:  So it's not relevant to you anyway.  04:01PM

13          MS. MCCONWELL:  Right.  It's not relevant so I  04:01PM

14  need a limiting instruction with regard to any testimony about  04:01PM

15  or disregard it with regard to Hansen Helicopters.   04:01PM

16          THE COURT:  As it relates to this document and  04:01PM

17  his testimony as it relates to this document.        04:01PM

18          MS. MCCONWELL:  Yes, ma'am.                  04:01PM

19          THE COURT:  Okay.  All right.  So do you agree  04:01PM

20  with that with regard to -- okay, so.                04:01PM

21          MS. S. MILLER:  I do not agree --            04:01PM

22          THE COURT:  As far as the limiting instruction.  04:01PM

23          MS. S. MILLER:  Sure, Your Honor.            04:01PM

24          THE COURT:  All right, ladies and gentlemen of  04:01PM

25  the jury, this exhibit, 2900-1142, which has already been  04:01PM

1    admitted does not have any applicability to Hansen                    04:01PM

2    Helicopters.  Okay, you may proceed.  What's your response,           04:01PM

3    though, as to the Count 99 notice objection made by                   04:01PM

4    Mr. Martin?                                                           04:01PM

5            MS. S. MILLER:  So as we said earlier, Your                   04:01PM

6    Honor, it was a broad general description of what Agent               04:01PM

7    Khamvongsa was going to be testifying about.  We said wire            04:01PM

8    fraud charges.  That includes conspiracy to commit wire fraud.        04:01PM

9            THE COURT:  The Court will overrule the objection             04:01PM

10   and allow the question.  Go ahead.  You may proceed.                  04:02PM

11   BY MS. S. MILLER: (CONTINUING)                                        04:02PM

12       Q.   Thank you, Your Honor.  So Agent Khamvongsa, can you         04:02PM

13   tell the jury again what registration number for the aircraft         04:02PM

14   are we dealing with?                                                  04:02PM

15       A.   N454 Sierra.                                                 04:02PM

16       Q.   You don't need to zoom in, Mr. Leon Guerrero.  Thank         04:02PM

17   you.                                                                  04:02PM

18            And could you tell the ladies and gentlemen of the           04:02PM

19   jury who is the lessor on this agreement?                             04:02PM

20       A.   Wilma's Flight Service, Inc.                                 04:02PM

21       Q.   And now you'd agree that that's different from --            04:02PM

22   well, who was listed on the summary chart for registrations as        04:02PM

23   the owner of this aircraft?                                           04:02PM

24       A.   Dave's Helicopter.                                           04:02PM

25       Q.   And you agree that we looked at that, that was true          04:02PM

1    from I think we said December 2007 onward, right?    04:02PM

2        A.    Correct.    04:02PM

3        Q.    So that would apply here?    04:02PM

4        A.    Correct.    04:02PM

5        Q.    What's the date here?    04:02PM

6        A.    June 27, 2008.    04:02PM

7        Q.    Thank you.  And could you tell the members of the    04:02PM

8    jury who the fishing company is listed here?    04:02PM

9        A.    The lessee or the fishing company on this document is    04:02PM

10    fishing company Friesland N.V. Kaya Flamboyan 11, I believe    04:02PM

11    that's the address.    04:03PM

12        Q.    And is Friesland, as a fishing company, in any of the    04:03PM

13    wire fraud counts in the indictment?    04:03PM

14        A.    Yes.    04:03PM

15        Q.    Now, Agent Khamvongsa, have you had an opportunity to    04:03PM

16    review this lease?    04:03PM

17        A.    I've reviewed this and many other leases.    04:03PM

18        Q.    Okay.  Is Dave's Helicopters mentioned in this lease?    04:03PM

19        A.    Dave's Helicopter is not mentioned in this lease.    04:03PM

20        Q.    Even though that was the registered owner at this    04:03PM

21    time?    04:03PM

22        A.    That's correct.    04:03PM

23        Q.    Okay.  Now, based on your investigation and also all    04:03PM

24    the testimony you've heard throughout this trial, who was    04:03PM

25    maintaining the helicopters listed in the second superseding    04:03PM

1    indictment?                                                    04:03PM

2        A.    Hansen Helicopters.                                  04:03PM

3        Q.    And where is Hansen Helicopters mentioned in this    04:03PM

4    lease?                                                         04:04PM

5              MS. MCCONWELL:  Your Honor, I object to any          04:04PM

6    testimony about Hansen Helicopters.  We're not in counts 99   04:04PM

7    through 110.                                                   04:04PM

8              THE COURT:  Okay.  Sustained.                        04:04PM

9    BY MS. S. MILLER: (CONTINUING)                                04:04PM

10       Q.    Agent Khamvongsa, where is the bribe of the          04:04PM

11   airworthiness inspector mentioned in this lease?              04:04PM

12       A.    It's not.                                            04:04PM

13       Q.    And if we go down to Section 1, can you please read  04:04PM

14   the sentence to the ladies and gentlemen of the jury about how 04:04PM

15   long the tuna company had to review the aircraft, the sentence 04:04PM

16   beginning in Section 1 with "lessee," please, in the middle of 04:04PM

17   that paragraph.                                                04:04PM

18       A.    "Lessee shall have 24 hours from arrival of aircraft 04:04PM

19   in which to provide lessor with written notification of any    04:04PM

20   defects in the aircraft or its equipment and accessories or in 04:04PM

21   case the pilot is not sufficient capable for his work          04:04PM

22   according to the judgment of the captain of MFV Friesland.  In 04:04PM

23   the absence of written notification, lessee agrees it is       04:05PM

24   satisfied with and finds the aircraft and its equipment and    04:05PM

25   accessories to be acceptable."                                 04:05PM

*Direct – Khamvongsa*

1        Q.    Thank you.  And now, turning to Section 5 of the    04:05PM

2   lease agreement, please, which is page 1144 of this exhibit.    04:05PM

3              In Section 5, Agent Khamvongsa, can you please read    04:05PM

4   to the jury the sentence starting with "at."    04:05PM

5        A.    "At the sole discretion of the lessor, lessor shall    04:05PM

6   provide a fully qualified and licensed pilot, mechanic or    04:05PM

7   pilot mechanic for flight operations and maintenance of the    04:05PM

8   aircraft.  Compensation for professional flying and    04:05PM

9   maintenance services shall be born by the lessor."    04:05PM

10       Q.    Where in this lease agreement is there a reference to    04:06PM

11   the pilots not being FAA certificated?    04:06PM

12       A.    It's not.  There is no reference.    04:06PM

13       Q.    Where in the lease is there a reference to the    04:06PM

14   mechanics not being FAA certificated?    04:06PM

15              MR. MARTIN:  Objection, Your Honor, both    04:06PM

16   questions were leading.    04:06PM

17              THE COURT:  Sustained.    04:06PM

18              MS. S. MILLER:  What was the objection?    04:06PM

19              THE COURT:  Leading.    04:06PM

20              MR. MARTIN:  Leading.    04:06PM

21              THE COURT:  Sustained.    04:06PM

22   BY MS. S. MILLER: (CONTINUING)    04:06PM

23       Q.    Is there any reference in this agreement to the    04:06PM

24   mechanics not being FAA certificated?    04:06PM

25       A.    There is no indication that -- that they are not FAA    04:06PM

*Direct - Khamvongsa*

1    certificated.                                              04:06PM

2        Q.    Okay.  Now, if we turn to -- if we look here on   04:06PM

3    Section 4, please, could you please read the first paragraph  04:06PM

4    under "indemnification and insurance"?                     04:06PM

5        A.    The first paragraph?                             04:06PM

6        Q.    Under Section 4, please.  Yes.                   04:06PM

7        A.    "Lessee agrees to indemnify lessor against all   04:06PM

8    losses, including cost and expenses by reason of claims for  04:06PM

9    injury to or death of persons and loss of damage to property  04:07PM

10   arising from or in any manner connected with negligent      04:07PM

11   possession, use or operation of the aircraft by lessee or its  04:07PM

12   agents during the term of this lease."                     04:07PM

13       Q.    And you can stop there.  Thank you.              04:07PM

14             And the lessee is who again in this contract?    04:07PM

15       A.    It's the tuna boat company, Friesland.           04:07PM

16       Q.    And the lessor?                                  04:07PM

17       A.    The lessor is Wilma's Flight Services.           04:07PM

18       Q.    Thank you.  And then can you read the second sentence  04:07PM

19   of the second paragraph of that section, please?           04:07PM

20       A.    "It is agreed..."?                               04:07PM

21       Q.    Yes.                                             04:07PM

22       A.    "It is agreed that the cost of repairs and parts  04:07PM

23   arising from damage to the aircraft, which was caused by    04:07PM

24   negligence or any action of members of the crew of lessee's  04:07PM

25   vessel will be reimbursed to the lessor upon determination of  04:07PM

1    the value thereof."                                              04:07PM

2        Q.   Now let's take a look at Section 6, which is on         04:08PM

3    page 1145.  Can you please read Section 6, Repairs and           04:08PM

4    Maintenance to the jury?                                         04:08PM

5        A.   The entirety?                                           04:08PM

6        Q.   At least the first paragraph, please.                   04:08PM

7        A.   "Lessor shall maintain and repair the aircraft so       04:08PM

8    that at all times, it is in a safe and airworthy condition for   04:08PM

9    the conduct of flight and fish spotting operations.  Lessor      04:08PM

10   shall pay all costs for replacements of parts and accessories    04:08PM

11   arising from normal use in flight operations.  Lessor shall be   04:08PM

12   entitled to all salvage from used, worn, or broken parts         04:08PM

13   recovered from the aircraft."                                    04:08PM

14       Q.   Special Agent Khamvongsa, where in that section is      04:08PM

15   there a reference to a machine shop in Oregon making critical    04:08PM

16   parts?                                                           04:08PM

17       A.   There is none.                                          04:08PM

18       Q.   Thank you.  We can take that exhibit down.  Special     04:08PM

19   Agent Khamvongsa, in your role in the investigation, did you     04:09PM

20   ever contact the tuna boat companies?                            04:09PM

21       A.   Yes.                                                    04:09PM

22       Q.   And did you ever issue any subpoenas to those tuna      04:09PM

23   boat companies?                                                  04:09PM

24       A.   Yes.                                                    04:09PM

25       Q.   What evidence did you receive in response to the        04:09PM

```
 1   subpoenas?                                                    04:09PM

 2       A.   They provided copies of payments as well as insurance  04:09PM

 3   documents.                                                    04:09PM

 4       Q.   Okay.  I'd like to show you what's been previously   04:09PM

 5   marked as Exhibit 102.  Please.  Do you recognize this       04:09PM

 6   document?                                                     04:09PM

 7       A.   Yes.                                                  04:09PM

 8       Q.   In very general terms, what is it?                   04:10PM

 9       A.   This is a document that was provided to me from the  04:10PM

10   specific tuna boat company.                                   04:10PM

11       Q.   Okay.  At this time, Your Honor, I would move       04:10PM

12   Exhibit 102 into evidence.                                    04:10PM

13                THE COURT:  Counsel?  Yes?                        04:10PM

14                MS. MCCONWELL:  Your Honor.                       04:10PM

15                THE COURT:  Yes.                                  04:10PM

16                MS. MCCONWELL:  I object to the admission of this 04:10PM

17   document.  Hansen Helicopters is not in Counts 99 through 104 04:10PM

18   and it's also hearsay.                                        04:10PM

19                THE COURT:  All right.                            04:10PM

20                MS. S. MILLER:  It's a business record, Your     04:10PM

21   Honor.                                                        04:10PM

22                THE COURT:  Okay.                                 04:10PM

23                MS. S. MILLER:  That's my response to the hearsay 04:10PM

24   objection.                                                    04:10PM

25                THE COURT:  Did you lay the foundation for       04:10PM
```

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | business records exception? | 04:10PM |
| 2 | MS. S. MILLER:  It was provided in response to | 04:10PM |
| 3 | the subpoena, yes. | 04:10PM |
| 4 | THE COURT:  Counsel? | 04:10PM |
| 5 | MS. MCCONWELL:  Your Honor, that's not a | 04:10PM |
| 6 | foundation for a document.  It's still -- it doesn't change | 04:10PM |
| 7 | that Hansen Helicopters is not in Count 99. | 04:10PM |
| 8 | THE COURT:  You have no objection to a limiting | 04:10PM |
| 9 | instruction? | 04:10PM |
| 10 | MS. S. MILLER:  No, Your Honor. | 04:10PM |
| 11 | THE COURT:  So we don't have to get to the | 04:10PM |
| 12 | business records exception foundation issue.  Ladies and | 04:11PM |
| 13 | gentlemen of the jury, if Exhibit 102-1 is admitted, you are | 04:11PM |
| 14 | to disregard that has no bearing whatsoever as to Counts 99 | 04:11PM |
| 15 | through 110 as it relates to the testimony of this witness. | 04:11PM |
| 16 | All right.  Mr. Martin, your objection? | 04:11PM |
| 17 | MR. MARTIN:  May I voir dire the witness, Your | 04:11PM |
| 18 | Honor? | 04:11PM |
| 19 | THE COURT:  Yes, you may voir dire the witness in | 04:11PM |
| 20 | aid of an objection. | 04:11PM |
| 21 | MR. MARTIN:  Thank you, Your Honor. | 04:11PM |
| 22 | | 04:11PM |
| 23 | VOIR DIRE | 04:11PM |
| 24 | BY MR. MARTIN: | 04:11PM |
| 25 | Q.   Agent, the -- what company is this insurance policy | 04:11PM |

1    from?                                                    04:11PM

2        A.    South Pacific Tuna Company.                    04:11PM

3        Q.    Okay.  And whose insurance policy is this, sir?  04:11PM

4        A.    It's for the -- the South Pacific Tuna Company  04:11PM

5    manages several tuna boats.  So it pertains to those tuna  04:11PM

6    boats those vessels.                                     04:11PM

7        Q.    So it's not Jon Walker's insurance policy, it is the  04:11PM

8    insurance policy of the South Pacific Tuna Boat Company, sir?  04:11PM

9        A.    Yes, and their various tuna boats.             04:11PM

10        Q.    So it has nothing with Jon Walker?            04:12PM

11        A.    Yes, sir.                                      04:12PM

12              MR. MARTIN:  Relevance, Your Honor.            04:12PM

13              THE COURT:  Relevance?                         04:12PM

14              MS. S. MILLER:  So Your Honor, one of the      04:12PM

15    elements of the --                                       04:12PM

16              THE COURT:  Which exhibit, which count?        04:12PM

17              MS. S. MILLER:  It would relate to both 99 and  04:12PM

18    100 through 104.                                         04:12PM

19              THE COURT:  All right.  So let me just look at  04:12PM

20    the elements.                                            04:12PM

21              MS. S. MILLER:  Sure.                          04:12PM

22              THE COURT:  I'll look at 99 in particular.  Let's  04:12PM

23    see.  I'll go to 99.  And I am looking at page -- cite me to  04:12PM

24    the page and line, that's all I care about.  Page.  Line.  And  04:12PM

25    I'll figure out which element.  If I can't, I'll ask you.  04:12PM

*Direct - Khamvongsa*

                    MS. S. MILLER:  So Your Honor, I would cite you          04:12PM
    to page 34.                                                              04:12PM
                    THE COURT:  Okay.                                        04:12PM
                    MS. S. MILLER:  Line 5 through 10.                       04:12PM
                    THE COURT:  First of all, that's not an element.         04:13PM
    The elements are on 122.                                                 04:13PM
                    MS. S. MILLER:  Right.  It goes to the intent            04:13PM
    elements of the defendants and also --                                   04:13PM
                    THE COURT:  I'm sorry, hold on.  That's not an           04:13PM
    element, though.  Those are just objects.  That's not -- the             04:13PM
    elements that you have to prove are contained on                         04:13PM
    paragraph 122.                                                           04:13PM
                    MS. S. MILLER:  Right.  It goes to the intent            04:13PM
    element of the crime.  But the reason this document is --                04:13PM
                    THE COURT:  No, no, no, you said it goes to an           04:13PM
    element.  So I just want to find out which element is it going           04:13PM
    to.  So you're saying it's on paragraph 122 are the elements             04:13PM
    of the crime of conspiracy.                                              04:13PM
                    MS. S. MILLER:  Right.                                    04:13PM
                    THE COURT:  Which element is it, just focus on --        04:13PM
                    MS. S. MILLER:  Sure, lines 22 and 23 of page 33?        04:13PM
                    THE COURT:  Okay.  So it goes to the mental              04:13PM
    state, the culpable mental state elements.                               04:13PM
                    MS. S. MILLER:  Yes, Your Honor.                         04:13PM
                    THE COURT:  Okay.  Mr. Martin, goes to the               04:14PM

```
1   culpable mental state element.                              04:14PM
2              MR. MARTIN:  Your Honor, the witness has         04:14PM
3   testified this document has nothing to do with Mr. Walker.  04:14PM
4   It's therefore irrelevant.                                  04:14PM
5              THE COURT:  He did say that.  So based on that,   04:14PM
6   the Court will sustain the objection, unless you lay another 04:14PM
7   foundation.  So just based on the question and answer that he 04:14PM
8   just responded, the Court will sustain the objection.  Next 04:14PM
9   question, if you want to try to --                          04:14PM
10             MS. S. MILLER:  Sure.                             04:14PM
11             THE COURT:  -- establish a foundation.            04:14PM
12             MS. S. MILLER:  Sure.                             04:14PM
13  BY MS. S. MILLER: (CONTINUING)                              04:14PM
14      Q.   Special Agent Khamvongsa, in your 20 years as a    04:14PM
15  criminal investigator, when you're investigating fraud cases, 04:14PM
16  what types of evidence do you look for in terms of whether  04:14PM
17  there are any victims of the crime?                         04:14PM
18      A.   Speak directly to the victims that were defrauded or 04:15PM
19  look at pieces of evidence that establishes that this is what 04:15PM
20  they believed they were getting.                            04:15PM
21      Q.   And why are you -- why do you look into whether a  04:15PM
22  victim might have believed what they were getting?          04:15PM
23      A.   It goes to show what's represented to the victim  04:15PM
24  versus the inconsistencies in the evidences.  The          04:15PM
25  inconsistencies established by other pieces of evidence.    04:15PM
```

*Direct - Khamvongsa*

```
 1        Q.   And what type of evidence do you use to determine    04:15PM
 2   whether a victim relied on the representations?              04:15PM
 3        A.   Can you ask that again?                            04:15PM
 4        Q.   What types of evidence do you review and look for to 04:15PM
 5   determine whether the victims of fraud relied on the        04:15PM
 6   representations being made by the alleged?                  04:15PM
 7        A.   They could be a variety of evidence, they could   04:15PM
 8   include e-mails, it could include additional steps taken by 04:15PM
 9   the victims, in believing that this is what they were getting; 04:15PM
10   for example, insurance.                                     04:16PM
11        Q.   What does insurance show?                         04:16PM
12        A.   The insurance shows the state of mind and why they 04:16PM
13   got it.  Why they got it is based upon the premises told to 04:16PM
14   them in regards to a contract.                              04:16PM
15        Q.   Okay.  Taking a step back, specifically with this 04:16PM
16   case where there is helicopters that are being leased to tuna 04:16PM
17   boat companies, what did you look for with respect to the tuna 04:16PM
18   boat companies that would show they relied on the           04:16PM
19   representations made, for example, in the lease agreements? 04:16PM
20        A.   What I was looking for specifically was any       04:16PM
21   indication if they believed what they were getting was      04:16PM
22   FAA-compliant, if they met FAA regulations.                 04:16PM
23        Q.   Meaning, whether the aircrafts were airworthy     04:16PM
24   pursuant to the FAA?                                        04:16PM
25        A.   Correct.                                          04:16PM
```

1    Q.   What about with respect to pilots and mechanics?          04:16PM

2    A.   Again, I was looking at, I was trying to determine        04:16PM

3 whether or not the victims involved believed they were getting    04:17PM

4 FAA-certificated pilots.                                          04:17PM

5    Q.   And did you see any evidence of that in any of the        04:17PM

6 insurance documents?                                              04:17PM

7    A.   I did.                                                    04:17PM

8    Q.   What did you see in the insurance documents?              04:17PM

9    A.   The insurance documents, itself, required that in         04:17PM

10 order to meet --                                                 04:17PM

11        MR. MARTIN:  Well, Your Honor, I object to him            04:17PM

12 testifying about documents that have not been admitted.          04:17PM

13        THE COURT:  Is he going to be talking about this          04:17PM

14 document?                                                        04:17PM

15        MS. S. MILLER:  I think he was talking about              04:17PM

16 insurance documents with respect to the ones he received in      04:17PM

17 general, but I would again move this in now with additional      04:17PM

18 foundation laid.                                                 04:17PM

19        THE COURT:  Your objection?                               04:17PM

20        MR. MARTIN:  May I ask another question?                  04:17PM

21        THE COURT:  You may.                                      04:17PM

22 BY MR. MARTIN: (CONTINUING)                                      04:17PM

23    Q.   Is your answer still the same, that this insurance       04:17PM

24 policy has nothing to do with Jon Walker, sir?                   04:17PM

25    A.   Can you restate the question?                            04:17PM

```
1    Q.   Do you recall the one I asked a while ago about          04:17PM
2  whether or not this was Jon Walker's insurance policy and your  04:17PM
3  answer was "no," sir?                                           04:18PM
4    A.   So you're asking if this is John Walker's insurance      04:18PM
5  policy?                                                         04:18PM
6    Q.   Yes, sir.                                                04:18PM
7    A.   This is not John Walker's insurance policy.              04:18PM
8    Q.   And he's not named in the policy?                        04:18PM
9    A.   He is not named as a holder in this policy.              04:18PM
10           MR. MARTIN:  Relevance, Your Honor.                   04:18PM
11           MS. S. MILLER:  May I ask a couple additional         04:18PM
12 clarifying questions?                                           04:18PM
13           THE COURT:  Sure, go ahead.  I mean just based on     04:18PM
14 what he just said, again the Court will sustain the objection,  04:18PM
15 but I'll give you another chance.  Go ahead.                    04:18PM
16 BY MS. S. MILLER: (CONTINUING)                                  04:18PM
17   Q.   So Special Agent Khamvongsa, what was the subject,       04:18PM
18 what was being insured in these insurance policies?            04:18PM
19   A.   The item --                                              04:18PM
20           MR. MARTIN:  Your Honor, I object to him              04:18PM
21 testifying from the documents.                                  04:18PM
22           THE COURT:  Sustained.  Unless it's admitted, he      04:18PM
23 can't talk about it.  So objection will be sustained.           04:18PM
24 BY MS. S. MILLER: (CONTINUING)                                  04:18PM
25   Q.   Why would the tuna boat -- what evidence did you         04:18PM
```

1  review that indicated in the leases, for example, why the tuna  04:18PM
2  boat companies will be getting their own insurance?  04:18PM
3          MR. MARTIN:  To which I object, Your Honor,  04:18PM
4  speculation.  04:18PM
5  BY MS. S. MILLER:  (CONTINUING)  04:18PM
6     Q.   Let's go back to that lease.  04:18PM
7          THE COURT:  Sustained.  04:18PM
8  BY MS. S. MILLER:  (CONTINUING)  04:18PM
9     Q.   Let's go back to the lease.  So could we please pull  04:18PM
10  up 1142, please.  I'm sorry, 2900-1142.  04:19PM
11          THE COURT:  That's already been admitted, right?  04:19PM
12          MS. S. MILLER:  Yes, Your Honor.  It's the lease  04:19PM
13  we were just looking at.  04:19PM
14          THE COURT:  Okay.  04:19PM
15          MR. MARTIN:  Your Honor, if I might enter an  04:19PM
16  objection.  The exhibit being pulled up is dated in 2008.  The  04:19PM
17  exhibit that we are looking at is dated in 2018.  I don't know  04:19PM
18  how the two could be connected.  So I object to --  04:19PM
19          THE COURT:  Well, let's hear the question, first.  04:19PM
20          MR. MARTIN:  Sure.  04:19PM
21          THE COURT:  2900-1142 and let's see.  Go ahead.  04:19PM
22          MS. S. MILLER:  It's not up yet, Your Honor.  04:19PM
23          THE COURT:  All right.  04:19PM
24  BY MS. S. MILLER:  (CONTINUING)  04:19PM
25     Q.   If we could actually go to Section 4, which might be  04:19PM

*Direct - Khamvongsa*

on the second page.  Am I on?  I believe it's on the second

page, Section 4.

So Special Agent Khamvongsa, was there a section

about indemnification and insurance in pretty much every lease

you reviewed of those 200-plus leases?

A.    Section 4 was in every lease.

Q.    Okay.  And, again, can you tell the jury what -- who

is responsible, if there is any damage to the aircraft during

the time of lease?

MS. MCCONWELL:  Your Honor, I object.  I think

that misstates what the language says.  I think he either

needs to read from it.  Not paraphrase.

BY MS. S. MILLER: (CONTINUING)

Q.    Okay.  So can you please read the first sentence of

Section 4 again?

MR. MARTIN:  Well, Your Honor, again, this is not

-- this is in evidence, but it's dated 2008.  And what the

other exhibit --

THE COURT:  Objection is relevance?

MR. MARTIN:  Yes, Your Honor.

MS. S. MILLER:  And he just stated that same

provision is in all the leases he looked at.

MR. MARTIN:  Well, I think they need to go to a

lease that is maybe one of the ones that was used in the

indictment, Your Honor.  I got the number here, if they need

```
 1    it.                                                          04:21PM

 2               MS. S. MILLER:  Well, Your Honor, the conspiracy  04:21PM

 3    count is from 2000 to present so this would be implicated in 04:21PM

 4    that.                                                        04:21PM

 5               MR. MARTIN:  It's -- it is, Your Honor, but the   04:21PM

 6    exhibit they're trying to introduce is dated 20 -- 2018.     04:21PM

 7               THE COURT:  Okay.  But did you say that -- what   04:21PM

 8    did you say about this section in particular, Section 4 as it 04:21PM

 9    relates to, I guess, insurance policies?                     04:21PM

10               THE WITNESS:  This.                               04:21PM

11               THE COURT:  Generally?                            04:21PM

12               THE WITNESS:  This section is found in the        04:21PM

13    4,000 pages as it relates to 2900.  So it's the same -- it's 04:21PM

14    the same wording, the same --                                04:21PM

15               THE COURT:  Identical?                            04:21PM

16               THE WITNESS:  Yes.                                04:21PM

17               THE COURT:  All right.  Did you hear that?        04:21PM

18               MR. MARTIN:  I heard what he said, Your Honor,    04:21PM

19    but I respectfully disagree that the language has been the   04:21PM

20    same for over the 20-year period of time.  I think we need one 04:21PM

21    that's dated in 2018 and I object.                           04:21PM

22               THE COURT:  All right.  So I think that'll go to  04:22PM

23    the credibility and the weight of the evidence.  The Court   04:22PM

24    will overrule the objection and you may answer the question. 04:22PM

25    BY MS. S. MILLER: (CONTINUING)                               04:22PM
```

1      Q.   Do you remember the question, Special Agent                    04:22PM

2  Khamvongsa?                                                             04:22PM

3      A.   No.                                                            04:22PM

4      Q.   Can you please read the first sentence of Section 4,           04:22PM

5  indemnification and insurance.                                          04:22PM

6      A.   "Lessee agrees to indemnify lessor against all                 04:22PM

7  losses, including cost and expense by reason of claims for              04:22PM

8  injury to or death of persons and loss or damage to property            04:22PM

9  arising from or in any manner connected with negligent                  04:22PM

10 possession -- possession, use or operation of the aircraft by           04:22PM

11 lessee or its agents during the term of the lease.  Such                04:22PM

12 losses, as seizure by foreign countries resulting from illegal          04:22PM

13 fishing, helicopter landing without lessor's consent and gross          04:22PM

14 negligence, such as destruction of the helicraft by the ship            04:22PM

15 crew members."                                                          04:22PM

16     Q.   Now, Special Agent Khamvongsa, if the fishing                  04:22PM

17 company, the lessee, agrees to indemnify the lessor, meaning,           04:23PM

18 the helicopter company leasing to the tuna fish -- fishing              04:23PM

19 company, what could the tuna company do to protect itself?              04:23PM

20     A.   Get insurance.                                                 04:23PM

21     Q.   So let's go back, please, to Exhibit 102.  And                 04:23PM

22 Special Agent Khamvongsa, this exhibit, is that what -- what            04:23PM

23 you received in response to a subpoena that is evidence of the          04:23PM

24 fishing companies doing just that?                                      04:23PM

25     A.   Yes.                                                           04:23PM

```
 1              THE COURT:  I'm sorry, Exhibit 102, can you pull      04:23PM
 2    that up?                                                        04:23PM
 3              MS. S. MILLER:  Yes.  We're working on that, Your     04:23PM
 4    Honor.                                                          04:23PM
 5              THE COURT:  Has that been admitted?                   04:23PM
 6              MS. S. MILLER:  No.  That's the insurance policy      04:23PM
 7    we're trying to admit.                                          04:23PM
 8              THE COURT:  Okay.  Hold on.  Oh, that's right.        04:23PM
 9    Yes?  Let's -- go ahead, Mr. Martin.                           04:24PM
10              MR. MARTIN:  Well, she hasn't asked a question.       04:24PM
11    I'll wait, Your Honor.                                          04:24PM
12              THE COURT:  Next question.                            04:24PM
13    BY MS. S. MILLER:  (CONTINUING)                                 04:24PM
14       Q.   Yes.  Could we turn to page 2 of this document,        04:24PM
15    please.  And page 3, please.                                    04:24PM
16              Special Agent Khamvongsa, in terms of the grand jury  04:24PM
17    subpoena to the tuna boat companies for insurance policies,     04:24PM
18    what was the subject of those insurance policies?  What was     04:24PM
19    being insured?                                                  04:24PM
20              MR. MARTIN:  Well, Your Honor, I object.  This        04:24PM
21    has not been admitted.                                          04:24PM
22              THE COURT:  Sustained.                                04:24PM
23              MS. S. MILLER:  I'm having trouble understanding.     04:24PM
24              MR. MARTIN:  It's not been admitted.                  04:24PM
25              THE COURT:  Sustained.                                04:24PM
```

*Direct - Khamvongsa*

BY MS. S. MILLER: (CONTINUING)                                    04:25PM

    Q.   Why, Special Agent Khamvongsa, did you request by    04:25PM

subpoena insurance policies from the tuna companies?              04:25PM

    A.   Determine if they got insurance for the helicopters    04:25PM

they leased from Hansen Helicopters or its subsidiaries.          04:25PM

    Q.   And which specific --                               04:25PM

        MS. MCCONWELL:  Your Honor, I object.  He    04:25PM

identified Hansen Helicopters.  Hansen is not part of      04:25PM

Counts 99 through 105 -- or to 110.                               04:25PM

        THE COURT:  All right.  Sustained.  So disregard,    04:25PM

strike the last question and answer.  Well, the last answer as    04:25PM

it relates to Hansen Helicopters.  Next question.          04:25PM

BY MS. S. MILLER: (CONTINUING)                                    04:25PM

    Q.   Sorry, which helicopter are you referencing?  How do    04:25PM

you know what helicopters you were asking about in terms of       04:25PM

the insurance policies with fishing companies?                   04:25PM

    A.   How do I know which helicopters are tied to which    04:25PM

specific companies?                                               04:25PM

    Q.   No.  Well, sure, yeah.  That's a good question.    04:25PM

    A.   The helicopters identified in the registration helps    04:25PM

support that Walker or one of the companies in which he's 99%      04:25PM

owner of owns and operates the helicopters which are being         04:26PM

leased to the tuna boat companies.                                04:26PM

    Q.   And did you see any of those helicopters -- did the    04:26PM

subpoena request insurance information for specifically those      04:26PM

1   helicopters?                                  04:26PM

2    A.   Not specifically those helicopters, just helicopters   04:26PM

3   as it relates to the leases they have with the lessor or the   04:26PM

4   various companies that Jon Walker owns as 99% holder,   04:26PM

5   shareholder.   04:26PM

6              MS. S. MILLER:  So at this time, Your Honor, I   04:26PM

7   would move Exhibit 102 into evidence.   04:26PM

8              MR. MARTIN:  Same objection, Your Honor.   04:26PM

9   Mr. Walker is not an insured under this policy, it's   04:26PM

10   irrelevant to him.  And Hansen is not named in these counts.   04:26PM

11              MS. S. MILLER:  May I respond, Your Honor?   04:26PM

12              THE COURT:  Yeah.   04:26PM

13              MS. S. MILLER:  So the fishing companies listed   04:26PM

14   as -- in the transactions in 100 through 104 are among --   04:26PM

15              THE COURT:  I'm sorry, in the Count 100 to 104.   04:27PM

16              MS. S. MILLER:  Yes.   04:27PM

17              THE COURT:  In the indictment.  Go ahead.  So let   04:27PM

18   me just go to that.  And I see it.  Go ahead.   04:27PM

19              MS. S. MILLER:  So for example --   04:27PM

20              THE COURT:  You don't have to tell me an example.   04:27PM

21   Just say whatever the number is.  And so the point is?   04:27PM

22              MS. S. MILLER:  So these insurance policies were   04:27PM

23   purchased by the specific tuna boat -- certain of the specific   04:27PM

24   tuna boat companies referenced in those counts.   04:27PM

25              THE COURT:  Okay.   04:27PM

1          MS. S. MILLER:  In the transactions in those                04:27PM

2   counts.                                                            04:27PM

3          MR. MARTIN:  May I respond, Your Honor?                     04:27PM

4          THE COURT:  Yes.  Yes, go ahead.                            04:27PM

5          MR. MARTIN:  Is the purchaser Sea Global                    04:27PM

6   Fisheries, LLC, sir?                                               04:28PM

7          THE WITNESS:  I'm sorry, are you --                         04:28PM

8          MR. MARTIN:  Your Honor, I withdraw the question.           04:28PM

9   Your Honor, if you'll look at page -- Exhibit No. G102-2.          04:28PM

10         THE COURT:  Okay, let's go to that, G102-2, oh              04:28PM

11  okay.  Is this it right here?  102-3 you mean?                     04:28PM

12         MR. MARTIN:  If we could go to page 2 at the very           04:28PM

13  top.                                                               04:28PM

14         THE COURT:  Okay.  102-2.                                   04:28PM

15         MR. MARTIN:  To help highlight, there is a No. 1            04:28PM

16  at the top.  If that could be highlighted, it will show you        04:28PM

17  who the insured is, Your Honor.                                    04:28PM

18         THE COURT:  Okay.                                           04:28PM

19         MR. MARTIN:  Right there.  And if you will                  04:28PM

20  compare that to Counts 100, 101, 102, 103 and 104, that is not     04:28PM

21  one of the companies listed.                                       04:28PM

22         THE COURT:  Okay.                                           04:29PM

23         MR. MARTIN:  I object.                                      04:29PM

24         THE COURT:  So you mean, it's not one of the                04:29PM

25  companies listed in all caps, right?                               04:29PM

|   |   |   |
|---|---|---|
| 1 | MR. MARTIN:  Right. | 04:29PM |
| 2 | THE COURT:  All caps. | 04:29PM |
| 3 | MR. MARTIN:  In all caps in the counts, yes, Your | 04:29PM |
| 4 | Honor. | 04:29PM |
| 5 | THE COURT:  From 100 to 104. | 04:29PM |
| 6 | MR. MARTIN:  Yes, Your Honor. | 04:29PM |
| 7 | THE COURT:  Okay.  Counsel? | 04:29PM |
| 8 | MS. S. MILLER:  May I ask Special Agent | 04:29PM |
| 9 | Khamvongsa a couple clarifying question on that. | 04:29PM |
| 10 | THE COURT:  Sure. | 04:29PM |
| 11 | BY MS. S. MILLER: (CONTINUING) | 04:29PM |
| 12 | Q.    So Special Agent Khamvongsa, in Count 103 of the | 04:29PM |
| 13 | indictment, there is a wire transfer from Ocean Conquest, LLC. | 04:29PM |
| 14 | Do you know who is the holding company that owns Ocean | 04:29PM |
| 15 | Conquest, LLC? | 04:29PM |
| 16 | A.    Ocean Conquest, LLC is owned by South Pacific Tuna | 04:29PM |
| 17 | Company. | 04:29PM |
| 18 | Q.    Okay.  And I'm sorry, go ahead? | 04:29PM |
| 19 | A.    Go ahead. | 04:29PM |
| 20 | Q.    And what about Sea Fox, LLC? | 04:29PM |
| 21 | A.    Sea Fox, LLC is actually one of the many sea -- so a | 04:29PM |
| 22 | lot of the tuna boat companies start with "sea" and then have | 04:29PM |
| 23 | a second name to it, but those -- | 04:29PM |
| 24 | MS. MCCONWELL:  Your Honor, I object to the | 04:29PM |
| 25 | narrative. | 04:29PM |

*Direct - Khamvongsa*

1      THE COURT:  Hold on.  What's the objection?                04:29PM

2      MS. MCCONWELL:  Narrative.                                 04:29PM

3      THE COURT:  No, overruled.  He's just trying to            04:29PM

4  explain.  Okay, what was the question?  Veronica, can you just  04:30PM

5  tell me what the question is?                                  04:30PM

6      (Whereupon the reporter read back requested               04:30PM

7  portion.)                                                     04:30PM

8      THE COURT:  Make that question more specific.              04:30PM

9  BY MS. S. MILLER:  (CONTINUING)                               04:30PM

10     Q.   Sure.  So Special Agent Khamvongsa, who is the        04:30PM

11 holding company that owns Sea Fox, LLC, which is in Count 104  04:30PM

12 of the indictment?                                            04:30PM

13     A.   Sea Global Fisheries, LLC.                            04:30PM

14     THE COURT:  Okay.                                          04:30PM

15     MS. S. MILLER:  So I think that should clarify,            04:30PM

16 Your Honor, the name differentiation.                         04:30PM

17     THE COURT:  Well, the name of the holding                  04:30PM

18 company.  Not differentiation because it's not -- it's not a   04:30PM

19 differentiation.  It's just a -- I mean, it's different --     04:30PM

20 okay, anyway, Mr. Martin?                                      04:30PM

21     MR. MARTIN:  Your Honor, if we could go to page 6          04:30PM

22 of that exhibit.                                               04:30PM

23     THE COURT:  Okay.  Page 6 of G-102.                        04:31PM

24     MR. MARTIN:  Under name and address of lessor,             04:31PM

25 Your Honor, Mr. Walker is not named.  I still have my          04:31PM

1    relevancy --                                                    04:31PM

2              THE COURT:  Name and address of lessor.  Is that      04:31PM

3    under the -- the first?                                         04:31PM

4              MR. MARTIN:  It's on the right side.                  04:31PM

5              THE COURT:  Right.  Okay.                             04:31PM

6              MS. S. MILLER:  May I respond, Your Honor?            04:31PM

7              THE COURT:  Hold on.  Hold on.  Hold on.  Just --     04:31PM

8    okay.  Let me go to -- okay, so this says -- I see what that    04:31PM

9    says.  Let me go to the other exhibit that you just showed,     04:31PM

10   Mr. Khamvongsa.  Khamvongsa.  Go ahead.  What was the last one  04:31PM

11   you showed?                                                     04:31PM

12             MS. S. MILLER:  The last exhibit, Your Honor?         04:31PM

13             THE COURT:  Yeah, the last exhibit he just            04:31PM

14   identified.                                                     04:31PM

15             MS. S. MILLER:  The lease agreement?                  04:31PM

16             THE COURT:  Whatever it was.  Exhibit G-102-2.        04:31PM

17             MS. S. MILLER:  On the second page of this            04:32PM

18   document, Your Honor?                                           04:32PM

19             THE COURT:  Yeah, let's go to 2.                      04:32PM

20             MS. S. MILLER:  Sure.  Would you like us to zoom      04:32PM

21   on it?                                                          04:32PM

22             THE COURT:  Okay.  So -- okay.  The objection         04:32PM

23   will be sustained.  Can I say that there is three different     04:32PM

24   names here.  There is three different names.  There is a name   04:32PM

25   on the indictment, there is a name in G-102-2.  And the Court   04:32PM

*Direct - Khamvongsa*

1  finds there is another name in G-102-6.  So the Court will  04:32PM

2  sustain the objection as it -- he has a very specific  04:32PM

3  objection.  It's based on that, so the Court will sustain the  04:32PM

4  objection.  04:32PM

5  BY MS. S. MILLER: (CONTINUING)  04:32PM

6      Q.   Special Agent Khamvongsa, I'd like to direct your  04:32PM

7  attention to Exhibit 829.  04:32PM

8      A.   Yes.  04:32PM

9      Q.   Can you remind the jury in the last lease we looked  04:32PM

10 at, who was listed as the lessor?  04:32PM

11     A.   Wilma's Flight Services.  04:33PM

12     Q.   Am I pointing to it right here?  04:33PM

13     A.   I can't see.  Oh, yes.  04:33PM

14     Q.   Okay.  And then can you tell the jury who was listed  04:33PM

15 as the owner of the aircraft in that lease?  04:33PM

16     A.   Dave's Walker -- or excuse me, Dave's Helicopter  04:33PM

17 Service.  04:33PM

18     Q.   Am I pointing to it here?  04:33PM

19     A.   That's correct.  04:33PM

20     Q.   Okay.  And can you tell the jury please what's the  04:33PM

21 title of this section of this exhibit?  04:33PM

22     A.   30 Vanuatu International Companies.  04:33PM

23     Q.   And who is at the top of this column of the document?  04:33PM

24     A.   John D. Walker.  04:33PM

25          MS. S. MILLER:  May I have a moment, Your Honor?  04:33PM

*Direct - Khamvongsa*

```
 1                    THE COURT:  Yes.                          04:33PM

 2                    MS. S. MILLER:  Your Honor, could we have a   04:34PM

 3     sidebar, please?                                       04:34PM

 4                    THE COURT:  Sidebar?                     04:34PM

 5                    MS. S. MILLER:  Yes, Your Honor.         04:34PM

 6                    THE COURT:  Okay.  Let's go.  Let's have a   04:34PM

 7     sidebar.  Oh wait, we can't.  This is plugged in?  Is this all   04:34PM

 8     plugged in?                                            04:34PM

 9                    (Discussion with clerk.)                 04:34PM

10                    THE COURT:  No.  It's just too much of hassle to   04:34PM

11     have sidebar because it's all plugged in for the COVID   04:34PM

12     situation.  15-minute recess, ladies and gentlemen, or ten   04:34PM

13     minutes.  Please rise for the jury.  Keep an open mind.  It's   04:34PM

14     not yet over.                                          04:34PM

15                    (Jury out at 4:34 p.m.)                  04:34PM

16                    THE COURT:  Go ahead.  Yes.  You wanted to say   04:34PM

17     something?                                             04:35PM

18                    MS. M. MILLER:  Yes, Your Honor.  I'm going to   04:35PM

19     speak about this particular issue.  It is misleading to leave   04:35PM

20     the Court or the jury with the impression that the defendant   04:35PM

21     has nothing to do with these insurance policies.       04:35PM

22                    All of those companies that were named as the,   04:35PM

23     quote, "owner" of those helicopters and all of those   04:35PM

24     helicopters that were listed on that insurance policy are   04:35PM

25     actually in our second superseding indictment.  Those   04:35PM
```

*Direct - Khamvongsa*

1   helicopters were used in the fraud.                         04:35PM

2          THE COURT:  But here's the deal, you've got to       04:35PM

3   set the foundation.  She's not setting it.  The problem is  04:35PM

4   you're not setting up the foundation.  Just a minute.  Listen. 04:35PM

5   Look, all I have is what's before me.  You guys have so much 04:35PM

6   more...background information.  What do you call it, anyway  04:35PM

7   you just have more background information than I do.         04:35PM

8          The issue is, the objection is very specific,        04:35PM

9   he's saying this witness has said, Mr. Walker has nothing to 04:35PM

10  do with the insurance policy.  You guys are pointing to the  04:35PM

11  particular indictment, Sea Fox, LLC.  Holding company is Sea 04:36PM

12  Global Fisheries, and then you moved down to the next exhibit, 04:36PM

13  I can't remember -- Fox what is it?  Fox Start?             04:36PM

14          MS. S. MILLER:  May I explain, Your Honor?          04:36PM

15          THE COURT:  No.  No.  No.  Don't explain anything   04:36PM

16  right now because I'm telling you my analysis if you guys    04:36PM

17  listen.  So what I hear is you're not setting up the proper  04:36PM

18  foundation.  If you don't set it up, but you got all this    04:36PM

19  institutional history and it's not doing me any good.  I'm   04:36PM

20  trying to make a ruling based on what you present to me.  So 04:36PM

21  all of this is, he says it has nothing to do with Jon Walker's 04:36PM

22  company or Jon Walker's name.                                04:36PM

23          You look -- we're looking at the indictment and     04:36PM

24  he agrees it doesn't say anything about Jon Walker.  You're  04:36PM

25  showing me a name of a tuna boat company.  You're showing me 04:36PM

1   the name of a holding company.  And the third one, what is Fox
                 04:36PM

2   Star, is it Fox Start?
   04:37PM

3            MS. S. MILLER:  So --
   04:37PM

4            THE COURT:  What is that last one?
   04:37PM

5            THE WITNESS:  Sea Fox.
   04:37PM

6            THE COURT:  Sea Fox.  Okay.  What is Sea Fox
   04:37PM

7   then.
   04:37PM

8            MR. MARTIN:  Your Honor, can we excuse the
   04:37PM

9   witness, please?
   04:37PM

10           THE COURT:  No, I just want to know, what you did
   04:37PM

11   you testify that last one was.
   04:37PM

12           THE WITNESS:  Sea Fox is one of the boats that
   04:37PM

13   make up Sea Global on the insurance company.
   04:37PM

14           THE COURT:  Okay.  I'm sorry, Sea Fox...okay,
   04:37PM

15   just a minute, no, no, no, don't talk.  Please.  Please.  Just
   04:37PM

16   let me get through this.
   04:37PM

17           MS. S. MILLER:  Yes, Your Honor.
   04:37PM

18           THE COURT:  Sea Fox is listed as a tuna boat
   04:37PM

19   company in the indictment 104; correct?
   04:37PM

20           THE WITNESS:  Yes.
   04:37PM

21           THE COURT:  That's what I see.  Holding company
   04:37PM

22   is Sea Global Fisheries, that's what you testified to;
   04:37PM

23   correct?
   04:37PM

24           THE WITNESS:  Yes.
   04:37PM

25           THE COURT:  Then there was a third one, Fox what?
   04:37PM

*Direct - Khamvongsa*

```
1    What's the last one?                                       04:37PM
2              THE WITNESS:  Are you thinking about the...um...  04:37PM
3    one of Jon Walker's company Foxtrot?                       04:37PM
4              THE COURT:  So Foxtrot did you testify -- what   04:37PM
5    was the last exhibit?  Let's go to the last exhibit.  G -- 04:37PM
6    what was the last exhibit that was brought up and you      04:37PM
7    testified and I looked at the -- let's go to the last exhibit. 04:38PM
8    Hold on.  Let's go to the last exhibit.                    04:38PM
9              MS. MCCONWELL:  Page 6, Your Honor.               04:38PM
10             THE COURT:  Okay.  Let's go to 102-6, I think    04:38PM
11   that's what it is.  Can we go there?  Okay.  There it is.  04:38PM
12   Okay, so Foxtrot Air, Inc. And it's individual executive   04:38PM
13   director is the lessor, that's what it is, Foxtrot.  I was 04:38PM
14   right.  Okay.  Foxtrot Air.  All right.  Is the lessor.  So 04:38PM
15   all I see here is tuna boat companies says Sea Fox.  Holding 04:38PM
16   company is Sea Global Fisheries and lessor is listed as    04:38PM
17   Foxtrot Air.  Let's just stop there.  Now you can step out. 04:38PM
18   Thank you.  But thank you for clarifying.  So we've got those 04:38PM
19   three different -- okay.  Okay, go ahead.                   04:38PM
20             MS. S. MILLER:  So Your Honor.                    04:38PM
21             MS. MCCONWELL:  Your Honor.                       04:39PM
22             THE COURT:  Wait till he gets out for a second.  04:39PM
23   Wait.  I'm sorry.                                          04:39PM
24             MS. S. MILLER:  If I could answer before Ms.     04:39PM
25   McConwell speaks, Your Honor?                              04:39PM
```

| | |
|---|---|
| 1 | THE COURT: Yes. Go ahead. | 04:39PM |
| 2 | MS. S. MILLER: So Sea Fox is in Count 104 of the | 04:39PM |
| 3 | indictment. | 04:39PM |
| 4 | THE COURT: That's right. We just said that. | 04:39PM |
| 5 | MS. S. MILLER: Right. | 04:39PM |
| 6 | THE COURT: He just said that. | 04:39PM |
| 7 | MS. S. MILLER: Then on page 2 of this insurance | 04:39PM |
| 8 | document, please, if we could go there. I think it's three | 04:39PM |
| 9 | actually. So Special Agent Khamvongsa testified that the | 04:39PM |
| 10 | insured on this insuring agreement Sea Global Fisheries is the | 04:39PM |
| 11 | holding company of the company in Count 104, Sea Fox. | 04:39PM |
| 12 | THE COURT: I just said that. Go ahead. | 04:39PM |
| 13 | MS. S. MILLER: So I agree with you there. | 04:39PM |
| 14 | THE COURT: Okay. Good. | 04:39PM |
| 15 | MS. S. MILLER: So if we look, before we go on, | 04:39PM |
| 16 | if we look in 5, No. 5 here, paragraph 5. Would you like us | 04:39PM |
| 17 | to zoom in on there? | 04:39PM |
| 18 | THE COURT: Paragraph 5. Go ahead. Let's go to | 04:39PM |
| 19 | 5. | 04:39PM |
| 20 | MS. S. MILLER: So it says "description of | 04:39PM |
| 21 | aircraft and aircraft physical damage coverage" and it talks | 04:39PM |
| 22 | about what this insuring agreement is covering. And it lists | 04:40PM |
| 23 | N-registered aircraft, which are all in the second superseding | 04:40PM |
| 24 | indictment. | 04:40PM |
| 25 | THE COURT: But you didn't bring this to me. | 04:40PM |

1     This was not --                                          04:40PM

2               MS. S. MILLER:  Well, I couldn't talk about the   04:40PM

3     document.                                                04:40PM

4               THE COURT:  All right.  I know you can't talk    04:40PM

5     about the document, but you could say to the witness to refer   04:40PM

6     -- hold on.                                              04:40PM

7               MS. S. MILLER:  Sorry.                          04:40PM

8               THE COURT:  You could have said look at -- so    04:40PM

9     under Item 5 and then specifically which particular helicopter   04:40PM

10    you're discussing, you know what line there.  That's -- so   04:40PM

11    this was not part of my analysis.                        04:40PM

12              MS. S. MILLER:  I'm sorry, Your Honor.          04:40PM

13              THE COURT:  Well, is that not true?             04:40PM

14              MS. S. MILLER:  No.  You're right.  You're right.   04:40PM

15              THE COURT:  So -- okay, so you got to understand.   04:40PM

16    I don't know what you're talking about.                  04:40PM

17              MS. S. MILLER:  Right.                          04:40PM

18              THE COURT:  Other than what is brought in through   04:40PM

19    the witness.  So that's where you're trying to loop in?  And   04:40PM

20    which registration number?  All of them?  All five of them?   04:40PM

21    One, two, there, four, five FAA registration?  Or yeah is that   04:40PM

22    what you're saying?                                      04:40PM

23              MS. S. MILLER:  Yes.  And then what's connected   04:40PM

24    on page 6, that Your Honor identified, was you saw the Foxtrot   04:40PM

25    name.  If we could please go to page 6.                  04:41PM

         1          The COURT:  And that's the name of the lessor,        04:41PM

         2     the name and address of the lessor is Foxtrot Air?          04:41PM

         3          MS. S. MILLER:  One of these aircrafts, right.         04:41PM

         4     So like the lease agreement that we just identified, Wilma's  04:41PM

         5     was the lessor in that lease agreement we looked at, that's   04:41PM

         6     also true here.  Wilma's, Marlin Bay, Bravo Air, Foxtrot are  04:41PM

         7     the lessors of these aircrafts that are being insured by the  04:41PM

         8     tuna companies, so they're getting additional insurance.     04:41PM

         9          THE COURT:  I'm sorry.  Okay, I'm not following         04:41PM

        10     you right now.  I followed you with the other -- the one that  04:41PM

        11     you did not show me, paragraph 5.  And we'll go back to that.  04:41PM

        12     But I'm sorry, what's your argument here on this particular   04:41PM

        13     Exhibit 102 dash, what is it?  6?                            04:41PM

        14          MS. S. MILLER:  Right.  Sixth page of the              04:41PM

        15     insurance agreement.  And it just gives additional detail as  04:41PM

        16     to the aircraft that had been listed in that last page we     04:41PM

        17     looked at.                                                   04:41PM

        18          THE COURT:  All right.  So the relevance is the        04:41PM

        19     aircraft?  And these aircrafts have already been identified?  04:41PM

        20          MS. S. MILLER:  Yes.  And also, of course, in          04:42PM

        21     what's in 829, show all of these name and addresses of the    04:42PM

        22     lessors funnels up to Mr. Walker, who is 99.9 percent owner in  04:42PM

        23     all.                                                         04:42PM

        24          THE COURT:  Okay, wait.  All the names and             04:42PM

        25     addresses of the lessors.                                   04:42PM

1      MS. S. MILLER:  Right the --                          04:42PM

2      THE COURT:  The 9102 PMB Lini Highway, which is       04:42PM

3  the same address all the way down?                        04:42PM

4      MS. S. MILLER:  Right.  So they're all listed         04:42PM

5  here and then funnel up to Mr. Walker at the top, as the 99.9%  04:42PM

6  owner of all of those companies.                          04:42PM

7      THE COURT:  All right.  Well now that you've          04:42PM

8  given me a more complete foundation, that makes more sense.  04:42PM

9  But based on what you have said before that, the objection was  04:42PM

10  sustained.  Okay.  Mr. Walker and Ms. McConwell?         04:42PM

11      MR. MARTIN:  Your Honor, if we could go back up      04:42PM

12  to page Item No. 5?                                       04:42PM

13      THE COURT:  Okay.  Let's go to -- the exhibit        04:42PM

14  that she just brought up?                                 04:42PM

15      MR. MARTIN:  The one that's on the screen.           04:42PM

16  Page 3.                                                   04:42PM

17      THE COURT:  This one?  Okay.  Let's go right         04:42PM

18  here.                                                     04:42PM

19      MR. MARTIN:  If we go --                             04:42PM

20      THE COURT:  5.                                        04:42PM

21      MR. MARTIN:  Paragraph 5, Your Honor.                04:42PM

22      THE COURT:  All right.  There we go.  So this        04:43PM

23  G-102-3 paragraph 5.                                      04:43PM

24      MR. MARTIN:  These helicopters are not covered by    04:43PM

25  insurance, Your Honor.  There is no coverage for every one of  04:43PM

```
 1   'em, number one.  So these aren't insurance policies on these    04:43PM
 2   helicopters.  These are liability for the boat in case they      04:43PM
 3   kill somebody, I believe.  And it's still, in spite of what       04:43PM
 4   the government may want to say, Mr. Walker is not named as an     04:43PM
 5   insured in this insurance policy.                                 04:43PM
 6            MS. MCCONWELL:  And RPC 4901 is not mentioned in        04:43PM
 7   those counts that's she referred to.                              04:43PM
 8            MS. S. MILLER:  Right.  We said the N-numbered          04:43PM
 9   aircraft.                                                         04:43PM
10            THE COURT:  Actually, you said all of them.  I          04:43PM
11   asked you for all of them.  You said "yes."                       04:43PM
12            MS. S. MILLER:  I'm sorry, Your Honor.  The             04:43PM
13   N-numbered aircraft is what I thought I had said prior to your    04:43PM
14   question.                                                         04:43PM
15            THE COURT:  No, I said all five, you said "yes."         04:43PM
16   So RPC is out, so that's out.  But on the other four, the        04:43PM
17   four, one, two, three, four, N, FAA registration number, you      04:43PM
18   heard his argument?  That this is not an insurance policy and    04:44PM
19   your position, Ms. Miller?                                        04:44PM
20            MS. S. MILLER:  Right, so if we go to later             04:44PM
21   pages, there are endorsements that modify that.  I'm sure         04:44PM
22   you're very familiar with how insurance policies work.  So for   04:44PM
23   example --                                                        04:44PM
24            THE COURT:  Don't ever be too sure what a judge         04:44PM
25   knows or doesn't know.                                            04:44PM
```

```
 1              MS. S. MILLER:  I guess not for aircraft, that's        04:44PM
 2    for sure.  Right, so to be clear, this is an insurance policy     04:44PM
 3    for the tuna boat companies in the instance that something        04:44PM
 4    goes wrong with the helicopters that they are leasing, which      04:44PM
 5    is why the leasing information is in the insurance policy.         04:44PM
 6              THE COURT:  Okay.  So but based on what you              04:44PM
 7    presented me, I mean you're connecting it slowly, slowly,         04:44PM
 8    slowly.                                                            04:44PM
 9              MS. S. MILLER:  I know, it is --                         04:44PM
10              THE COURT:  Dribble, trickling, trickling.  So          04:44PM
11    yes...                                                             04:44PM
12              MS. MCCONWELL:  Well, Your Honor, I object to Ms.        04:44PM
13    Miller having a second and third and fourth and fifth             04:44PM
14    opportunity.                                                       04:44PM
15              THE COURT:  Chance?                                      04:44PM
16              MS. MCCONWELL:  Outside, yeah, to try to work out       04:44PM
17    how she's going to try to get this in once the -- have this       04:44PM
18    practice for the jury.  I object to that.  I think it's          04:45PM
19    extremely prejudicial to Hansen Helicopters because we're not    04:45PM
20    in --                                                             04:45PM
21              THE COURT:  You guys won all the objections in          04:45PM
22    front of jury.  But -- so it's not prejudicial because you've    04:45PM
23    won every objection in the front of the jury.                    04:45PM
24              MS. MCCONWELL:  Well, but we're given her a whole       04:45PM
25    lot of slices of the apple to come back and do this exhibit.     04:45PM
```

```
 1   And it's going to -- I mean it's unnecessary and it drags us          04:45PM

 2   out, so I object.                                                     04:45PM

 3              THE COURT:  It's a waste of time you're saying.            04:45PM

 4              MS. MCCONWELL:  It's a waste of time and I                 04:45PM

 5   object.  I object to that.                                            04:45PM

 6              THE COURT:  Okay.  I mean that's a valid                   04:45PM

 7   objection.  Because you guys -- I mean you haven't -- you're          04:45PM

 8   trying to figure how to lay the foundation here.                      04:45PM

 9              MS. MCCONWELL:  I mean, a sidebar was asked for            04:45PM

10   us to have -- I thought -- you know to bring -- a sidebar was         04:45PM

11   requested and a sidebar apparently was requested that we work         04:45PM

12   on how Ms. Miller is going to try to get this in.  Anyway, and       04:45PM

13   I object.                                                             04:45PM

14              MS. S. MILLER:  Thank you for that, Ms.                    04:45PM

15   McConwell.  Your Honor --                                            04:45PM

16              THE COURT:  But I think it's true, though.  I             04:45PM

17   think you are trying to figure it out as you go along.                04:46PM

18              MS. S. MILLER:  Well, it's challenging because as         04:46PM

19   insurance documents work, there is a little bit on one page          04:46PM

20   and then it's modified and endorsement which is modified in          04:46PM

21   another.                                                             04:46PM

22              THE COURT:  No excuses.  No excuses.  You can't           04:46PM

23   -- you cannot say insurance documents are so cumbersome and          04:46PM

24   complicated.  Who cares.  Everybody knows that.  Bottom line         04:46PM

25   is, it's your burden of proof.  You got to walk into court and       04:46PM
```

*Direct - Khamvongsa*

1    say, Judge, Mr. Khamvongsa, I'm going to show you what's been    04:46PM

2    marked as Prosecutor's Exhibit 1, 2, 3, 4, 5, 102 pages 1, 5,    04:46PM

3    10, whatever and read it and tell me where is it that Jon    04:46PM

4    Walker is involved in here?  Really, that's really what you    04:46PM

5    have to say, but you guys are kind of pulling it out.    04:46PM

6              MS. S. MILLER:  But then they objected that we're    04:46PM

7    talking about the contents of the document.    04:46PM

8              THE COURT:  But you can't talk about the contents    04:46PM

9    of the document until it's admitted.  That's a valid    04:46PM

10   objection.  You guys made the same objection.  That's the    04:46PM

11   rules of evidence.  We're going to take a ten-minute recess    04:46PM

12   and I'll come back.  And I'll decide, figure out this --    04:46PM

13             MS. S. MILLER:  Your Honor, may I grab the    04:47PM

14   hardcopy of this so you could look at the insurance policy as    04:47PM

15   a whole?    04:47PM

16             THE COURT:  I don't -- can I tell you something,    04:47PM

17   you could give me a thousand pages of an insurance policy.    04:47PM

18   All I care about is your foundation for what you're trying to    04:47PM

19   do and your proffer.  That's it.  You guys can't just -- don't    04:47PM

20   do me a dump because you guys do each other dumps all the    04:47PM

21   time.  No, no , no.    04:47PM

22             Focus on exactly what you are -- how are you    04:47PM

23   trying to get in this evidence?  I mean, I don't disagree with    04:47PM

24   Ms. McConwell.  I mean, this is like, you guys, it's    04:47PM

25   excruciating because you haven't gotten all the documents in    04:47PM

```
 1    order.  And you can't give me excuse, like it's too          04:47PM
 2    cumbersome, Judge.  Because I don't care.  And neither -- I   04:47PM
 3    shouldn't care how cumbersome it is.                          04:47PM
 4             What I care about is that we move the trial along    04:47PM
 5    and the exhibit numbers should have been already prepped up   04:47PM
 6    and lined up for this proffer.  It isn't and I agree with Ms. 04:47PM
 7    McConwell.                                                    04:47PM
 8             So at this point, I do think you're just trying      04:47PM
 9    -- you're trying to figure it out.  And I mean, it just sounds 04:48PM
10    like it.  So I'm going to take a ten-minute recess.  I'll come 04:48PM
11    back and I'll make a decision on the objection.               04:48PM
12             (Recess taken at 4:48 p.m.)                          04:48PM
13             (Back on the record at 4:56 p.m.)                    04:56PM
14             THE COURT:  We're back on the record.  All           04:57PM
15    Counsels present.  Defendants are present.  Okay.  Yes, Ms.   04:57PM
16    Miller.                                                       04:57PM
17             MS. S. MILLER:  Yes, Your Honor, if I could just     04:57PM
18    direct Your Honor to one last page that is crucial for Your   04:57PM
19    Honor to understanding with respect to my proffer?            04:57PM
20             THE COURT:  Go ahead.                                04:57PM
21             MS. S. MILLER:  Just make sure it's up on the        04:57PM
22    screen.  Can you see it okay or do you want me to zoom in on  04:57PM
23    that, Your Honor?                                             04:57PM
24             THE COURT:  Yes.  Please make it bigger.  Just       04:57PM
25    take it as a given, if it's that small of a font, it's really 04:57PM
```

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | difficult for me to read. | 04:57PM |
| 2 | MS. S. MILLER:  Yes, Your Honor.  No problem. | 04:57PM |
| 3 | THE COURT:  So this is exhibit what now?  102-4. | 04:57PM |
| 4 | MS. S. MILLER:  Yes, Your Honor. | 04:57PM |
| 5 | THE COURT:  All right.  And what are we looking | 04:58PM |
| 6 | at? | 04:58PM |
| 7 | MS. S. MILLER:  So the crucial part here is that | 04:58PM |
| 8 | it says on the third-ish paragraph here, if you saw my dot. | 04:58PM |
| 9 | Item 9, requirements for the pilot flying the aircraft.  And | 04:58PM |
| 10 | then down here on this line, you'll see that it says "the | 04:58PM |
| 11 | pilot certificate with necessary ratings each as required by | 04:58PM |
| 12 | the FAA for each flight." | 04:58PM |
| 13 | So what's crucial about this document is it shows | 04:58PM |
| 14 | that the tuna boat companies believed that these aircrafts | 04:58PM |
| 15 | were, because of their N registration, were going to have | 04:58PM |
| 16 | FAA-certificated pilots and mechanics and that these aircraft | 04:58PM |
| 17 | were airworthy.  It specifies FAA. | 04:58PM |
| 18 | THE COURT:  Okay.  And what does that have to do | 04:58PM |
| 19 | with the -- okay, so what is this endorsement issue then? | 04:58PM |
| 20 | MS. S. MILLER:  It's just an endorsement that | 04:58PM |
| 21 | modifies earlier portions of the insurance policy. | 04:58PM |
| 22 | THE COURT:  He could say that, he can testify to | 04:58PM |
| 23 | that, this witness can testify he knows that for a fact? | 04:58PM |
| 24 | MS. S. MILLER:  Right.  Because if you read the | 04:59PM |
| 25 | whole document as a whole, like I was saying earlier you know, | 04:59PM |

it'll have provision 1. Like this says it modifies.

THE COURT: Are you saying that he can testify to that.

MS. S. MILLER: Yes, Your Honor.

THE COURT: Okay. I still don't -- I'm not sure about the -- okay, I understand what you're saying about this. Anything else?

MS. S. MILLER: That's it, Your Honor.

THE COURT: Okay. Mr. Martin? Yes, go ahead.

MR. MARTIN: Well, Your Honor, that requirement doesn't mean anything. The insurance company, the insurance policy is not valid if those requirements aren't met. It's like if I have an insurance policy for my car that says I've got to have certain restrictions on it, if I don't have it and I'm involved in a wreck, the insurance company isn't going to cover me. This is not something the boat company did, this is a requirement of the insurance company that is not a party to the contracts that they're talking about. As I showed you earlier, Your Honor, there is no insurance on these aircrafts anyway. There is no endorsement. They are not insured.

MS. S. MILLER: May I respond, Your Honor?

THE COURT: Hold on. What's your objection, Ms. McConwell?

MS. MCCONWELL: Well, additionally , the contract that they're trying to tie to this was from 2008 and this is a

1  2018 policy.                                                          05:00PM

2           MS. S. MILLER:  No.  We're beyond that lease at              05:00PM

3  this point.  We're not talking about that lease anymore.             05:00PM

4           THE COURT:  What are you talking about then?                05:00PM

5           MS. S. MILLER:  We're talking about the aircraft            05:00PM

6  specifically mentioned in this insurance agreement, which are        05:00PM

7  in the second superseding indictment and the fact that these         05:00PM

8  tuna boat companies purchased additional insurance that              05:00PM

9  required the pilots and mechanics to be FAA certificated.  And       05:00PM

10 this insurance wouldn't apply if there was evidence that they        05:00PM

11 weren't.  So it shows the tuna boat boats believed the               05:00PM

12 representations of what they were getting because it was             05:00PM

13 N-registered --                                                      05:00PM

14          THE COURT:  But what evidence is that the tuna              05:00PM

15 boat companies believed that?  What evidence is there of that?       05:00PM

16          MS. S. MILLER:  That's exactly what this                    05:00PM

17 insurance agreement shows.  Is that if that weren't true, if         05:00PM

18 the aircraft --                                                      05:00PM

19          THE COURT:  No.  No.  No.  Wait.  Wait.  Wait.              05:00PM

20 I'm sorry.  You said that the opportunity tuna boat companies        05:00PM

21 believed that their boats were insured.                             05:00PM

22          MS. S. MILLER:  They believed that -- no.  No,              05:01PM

23 Your Honor.                                                          05:01PM

24          THE COURT:  I don't understand what you just said           05:01PM

25 then.                                                                05:01PM

1        MS. S. MILLER:  Sorry.  They believed that the                    05:01PM
2  helicopters they were leasing were N-registered, meaning, U.S.          05:01PM
3  registered with the FAA, which requires pilots to be FAA                05:01PM
4  certified.  And it shows they relied on the representations --          05:01PM
5        THE COURT:  Okay, I'm sorry, so who believes                      05:01PM
6  that?  Who on the tuna boat believes that?  The pilots of the           05:01PM
7  tuna boat?                                                              05:01PM
8        MS. S. MILLER:  No, this is the holding company                   05:01PM
9  of the vessel.                                                          05:01PM
10       THE COURT:  No, you're saying somebody believes                   05:01PM
11 it.  Who believes what?                                                 05:01PM
12       MS. S. MILLER:  The tuna companies as a whole.                    05:01PM
13       THE COURT:  And who testified to that?                            05:01PM
14       MS. S. MILLER:  That is what this document shows.                 05:01PM
15       THE COURT:  Okay, no, no, no, this is what --                     05:01PM
16 this is what the document expects to have happened.  My                 05:01PM
17 question is, who in the tuna boat companies in particular,              05:01PM
18 who's testified that they believe what you're saying that they          05:01PM
19 believe what you're saying they believe?                                05:01PM
20       MS. S. MILLER:  That's my proffer with respect to                 05:01PM
21 this, is it shows they relied, because why would you buy                05:01PM
22 insurance that wouldn't cover you if there weren't                      05:01PM
23 FAA-certificated pilots.  This is requiring FAA-certificated            05:01PM
24 pilots in order for this insurance to apply.                            05:02PM
25       THE COURT:  All right.  And so how does that                      05:02PM

```
 1    relate to the case -- the indictment?                    05:02PM
 2            MS. S. MILLER:  So the helicopters --            05:02PM
 3            THE COURT:  Which count?  Which count?           05:02PM
 4            MS. S. MILLER:  In the conspiracy in Count 99, we 05:02PM
 5    list all the helicopters and all the tuna boat companies. 05:02PM
 6            THE COURT:  So Count 99 and then that relates to 05:02PM
 7    Count 101, 100 to 104 right; is that correct?            05:02PM
 8            MS. S. MILLER:  Right.  And specifically this    05:02PM
 9    holding company owns specifically Sea Fox, LLC, also in -- 05:02PM
10            THE COURT:  So really only Count 199 and 104?    05:02PM
11            MS. S. MILLER:  Yes, Your Honor.                 05:02PM
12            THE COURT:  All right.  So Sea Fox.  Okay, so    05:02PM
13    therefore, let's talk about Sea Fox then.                05:02PM
14            MS. S. MILLER:  So Sea Fox funnels up to Ocean   05:02PM
15    Sea Global Fisheries, which is the insured in this insurance 05:02PM
16    policy.                                                  05:02PM
17            THE COURT:  It's a lessor.  Sea Global Fisheries 05:02PM
18    is the lessor.                                           05:02PM
19            MS. S. MILLER:  No, that's the lessee.  The      05:02PM
20    lessor are the ones that Your Honor noticed on page 6 of this 05:02PM
21    document.                                                05:02PM
22            THE COURT:  Okay.  I'm sorry.  Sea Fox is the    05:02PM
23    tuna boat.  The holding company, I thought, was --       05:03PM
24            MS. S. MILLER:  Sea Global Fisheries, which is   05:03PM
25    the person --                                            05:03PM
```

1          THE COURT:  Sea Global Fisheries, yeah.  They're          05:03PM
2   the holding company.                                             05:03PM
3          MS. S. MILLER:  Right.                                    05:03PM
4          THE COURT:  I thought I said that.  All right.            05:03PM
5   Go ahead.                                                        05:03PM
6          MS. S. MILLER:  Right --                                  05:03PM
7          THE COURT:  And then the lessor, though, is               05:03PM
8   Foxtrot Air.                                                     05:03PM
9          MS. S. MILLER:  That's one of the lessors of the          05:03PM
10  helicopters.                                                     05:03PM
11         THE COURT:  Well, that's only one we're talking           05:03PM
12  about.                                                           05:03PM
13         MS. S. MILLER:  No, it is, Your Honor.  So                05:03PM
14  fishing boat buys insurance to cover them in case there is an    05:03PM
15  accident with respect to the helicopters they're leasing from    05:03PM
16  Foxtrot being one of the helicopters they're leasing from,       05:03PM
17  Wilma's being another that they're leasing from --               05:03PM
18         THE COURT:  But we're only talking about Foxtrot.         05:03PM
19  So Foxtrot is on there.                                          05:03PM
20         MS. S. MILLER:  Yes.  Foxtrot is right here.              05:03PM
21         THE COURT:  So we're only talking about Foxtrot           05:03PM
22  because that's all I see here.  I don't see Wilma's up here,     05:03PM
23  right now.  All I see, what you showed us is Foxtrot, right?     05:03PM
24         MS. S. MILLER:  Well, page 6 includes Wilma's, it        05:03PM
25  is confusing but...                                              05:03PM

<table>
<tr><td>1</td><td>THE COURT:  I'm not confused.  I want to make</td><td>05:03PM</td></tr>
</table>

THE COURT:  I'm not confused.  I want to make

05:03PM

sure I know exactly what you're talking about.  So in

05:03PM

particular, he was focused on Foxtrot.

05:03PM

MS. S. MILLER:  Well, part of it is because there

05:04PM

is Fox in both the name of one of the --

05:04PM

THE COURT:  Doesn't matter what it is.  He was

05:04PM

only focused, well, he was focused on Foxtrot in terms of the

05:04PM

question, who is the name of the lessor and the specific

05:04PM

lessor was Foxtrot.

05:04PM

Now you brought up this other stuff that, okay,

05:04PM

which was never brought to me before.  Now it's brought during

05:04PM

the break.  This description of lease property, lease

05:04PM

aircraft, that names all the FAA numbers.  So this is

05:04PM

different.  This has not been the subject -- he, meaning, the

05:04PM

witness has not been questioned on this.  On these.  On this

05:04PM

description of lease aircraft with all the FAA numbers and the

05:04PM

names and address of lessor, other than Foxtrot Air.  Okay.

05:04PM

You don't have to agree with me because I'm not

05:04PM

asking if you agree with me.  All right.  So okay, so again,

05:04PM

the objection is, how is it -- how does this relate to Jon

05:04PM

Walker.  He says it does not relate to John -- your witness

05:04PM

says that.

05:04PM

MS. S. MILLER:  Right.  Well it relates --

05:04PM

THE COURT:  So if your witness says that, the

05:05PM

objection will be sustained.

05:05PM

```
 1              MS. S. MILLER:  Yes.  But then right after, he      05:05PM
 2      testified that Wilma's and Foxtrot all funnel up to Jon Walker  05:05PM
 3      through these shell companies.  And those are the entities   05:05PM
 4      leasing aircrafts that the tuna boat companies are seeking   05:05PM
 5      insurance to cover.                                          05:05PM
 6              THE COURT:  Okay.  So she makes a good point.        05:05PM
 7      Your best -- the best objection is, is that Ms. McConwell's  05:05PM
 8      objection is that, basically, this has been a lot of wasted  05:05PM
 9      time because we're having the prosecution try to figure out  05:05PM
10      their evidence and they trying to go through this excruciating  05:05PM
11      exercise to figure out which Exhibit really counts.          05:05PM
12              MR. MARTIN:  I join that, No. 1, Your Honor.          05:05PM
13              THE COURT:  So that's the best objection so far,      05:05PM
14      but go ahead.                                                 05:05PM
15              MR. MARTIN:  Number 2, Count 104.                     05:05PM
16              THE COURT:  Yeah, Count 104.  I'm looking at it.      05:05PM
17              MR. MARTIN:  2016.                                    05:05PM
18              THE COURT:  Right.                                    05:05PM
19              MR. MARTIN:  Government's Exhibit 102.  2018, two     05:05PM
20      years afterwards.                                             05:06PM
21              THE COURT:  Right.                                    05:06PM
22              MR. MARTIN:  Not tied to Count 104.  The              05:06PM
23      government is further, Your Honor, trying to reform a contract  05:06PM
24      because -- and that was one of the arguments that we had that  05:06PM
25      there is --                                                   05:06PM
```

            1          THE COURT:  I haven't heard that in a long time          05:06PM

            2    since law school, but go ahead.  Contract reformation.          05:06PM

            3          MS. S. MILLER:  I didn't even know what he said.          05:06PM

            4    Reform?          05:06PM

            5          THE COURT:  Yeah.  There is contract reformation          05:06PM

            6    in contract law.  Go ahead.          05:06PM

            7          MR. MARTIN:  They're basically trying to make the          05:06PM

            8    FAA a party to this contract.  And you will recall the          05:06PM

            9    testimony of Marvin Reed who said the FAA are not involved in          05:06PM

           10    these at all and they don't have anything to do with this.          05:06PM

           11    And there is no representation there, Your Honor.          05:06PM

           12          MS. MCCONWELL:  And, additionally, Your Honor,          05:06PM

           13    they're trying to infer intent.  And you cannot infer intent.          05:06PM

           14    Ms. Miller --          05:06PM

           15          MS. S. MILLER:  No, we're showing reliance --          05:06PM

           16          THE COURT:  Wait.  Wait.  Wait.  Counsel, please          05:06PM

           17    let them make their objections.  If you keep doing that, I'm          05:06PM

           18    just -- I cannot hear to two people at one time.          05:06PM

           19          MS. S. MILLER:  I apologize.  I'm sorry, Ms.          05:06PM

           20    McConwell.          05:07PM

           21          THE COURT:  Inferring intent.  Go ahead.          05:07PM

           22          MS. MCCONWELL:  They're trying to infer intent          05:07PM

           23    and a contract is what a contract is.  It's the four corners          05:07PM

           24    of the document.  What is contained -- what is the language          05:07PM

           25    that is contained within the document.  So in addition,          05:07PM

```
 1    they're trying to do some type of contract reformation.        05:07PM
 2              THE COURT:  Wow.  She's a business lawyer.            05:07PM
 3              MR. MCCONWELL:  She is.                               05:07PM
 4              MS. MCCONWELL:  Yes, I am.  What they tried to do     05:07PM
 5    with the leases.                                                05:07PM
 6              THE COURT:  So is my son.                             05:07PM
 7              MS. MCCONWELL:  And with the insurance contracts.     05:07PM
 8    They can't -- I mean, they can't do that.  And you cannot       05:07PM
 9    infer intent.                                                   05:07PM
10              THE COURT:  Let me just make my decision right        05:07PM
11    now.  All right.  The Court will sustain the objection based    05:07PM
12    on the objection made by Ms. McConwell that it's just been --   05:07PM
13    yeah, it's been a waste of the time and prosecution is not      05:07PM
14    ready to present this particular exhibit or this type of line   05:07PM
15    of questioning.                                                 05:07PM
16              So the Court will sustain the objection.              05:07PM
17    Exhibit 102 will not be admitted or allowed to be discussed.    05:07PM
18    Lack of foundation.  And it just taken too much time.           05:07PM
19              MS. S. MILLER:  With this witness, right, Your        05:07PM
20    Honor?                                                          05:07PM
21              THE COURT:  Well, if it's the same objection -- I     05:07PM
22    mean, I don't know, depends on your foundation.  Right now      05:08PM
23    with this witness, the answer is objection is sustained.  So    05:08PM
24    let's put it this way, it's not forecast the future because I   05:08PM
25    don't know the future other than with this witness.            05:08PM
```

```
1   Sustained.  Let's go.  Call the jury because now we are now at    05:08PM
2   5:07.                                                             05:08PM
3              And FYI, based on the fact that we thought we          05:08PM
4   were going to be done today, I have a 9 o'clock hearing --        05:08PM
5   bankruptcy matter at 9:00 a.m. that I counted on to be            05:08PM
6   available for.  And I think I have an 11:30 Pacific Judicial      05:08PM
7   Council executive board budget meeting.  Just an FYI, Counsel,    05:08PM
8   because I thought we'd be done today.  So that was the only --    05:08PM
9   and reliance on that.  I'm going do my best to -- do I have       05:08PM
10  something else?                                                   05:08PM
11             (Discussion with clerk.)                               05:08PM
12             THE COURT:  Do I have a 7:30 motion on which           05:08PM
13  case?  Who?  Oh, Joysa Willy.  That's just a status hearing,      05:08PM
14  right?  What's the motion?  Oh, yeah.  Yeah.  Yeah.  That's       05:09PM
15  easy.  Okay.  Right.  Who is that Razzano and?  Who is it?        05:09PM
16  Who are the lawyers?                                              05:09PM
17             (Discussion with law clerk.)                           05:09PM
18             THE COURT:  Those guys are fast.  I'll make it         05:09PM
19  fast, too.  That's 7:30 tomorrow morning?                         05:09PM
20             THE CLERK:  Yes, ma'am.                                05:09PM
21             THE COURT:  Okay.  Please stand.  Please rise for      05:09PM
22  the jury.                                                         05:09PM
23             (Jury in at 5:09 p.m.)                                 05:09PM
24             THE COURT:  Please be seated.  Welcome back,           05:09PM
25  ladies and gentlemen of the jury.  And you may proceed, Ms.       05:09PM
```

*Direct - Khamvongsa*

1    Miller.                                                              05:09PM

2              MS. S. MILLER:  Thank you, Your Honor.                     05:09PM

3    BY MS. S. MILLER: (CONTINUING)                                      05:10PM

4        Q.    Special Agent Khamvongsa, you said you reviewed a lot     05:10PM

5    of bank records, right?                                             05:10PM

6        A.    Yes.                                                      05:10PM

7        Q.    About how many different pages of bank records would      05:10PM

8    you say you reviewed?                                               05:10PM

9        A.    Easily 10 to 15,000 pages of bank records, if not         05:10PM

10   more.                                                               05:10PM

11       Q.    Okay.  So did you review the signature card for           05:10PM

12   Caledonian Agency, Inc.'s bank record?                              05:10PM

13       A.    Yes.                                                      05:10PM

14       Q.    Did you review the signature card page for Hansen         05:10PM

15   Northern Helicopters's bank account?                                05:10PM

16       A.    Yes.                                                      05:10PM

17       Q.    Did you review the signature card page for Hansen         05:10PM

18   Helicopters Inc.'s bank account?                                    05:10PM

19       A.    Yes.                                                      05:10PM

20       Q.    What about Wilma's Flight Services' bank account?         05:10PM

21       A.    Yes.                                                      05:10PM

22       Q.    Was Mr. Walker a signer, an authorized signer on all      05:10PM

23   those cards?                                                        05:10PM

24       A.    Yes, as president.                                        05:10PM

25       Q.    Okay.  And was there a mailing address of Tamuning,       05:10PM

*Direct - Khamvongsa*

1    Guam on all those --                                           05:10PM

2                MS. MCCONWELL:  Your Honor, I object to leading.    05:10PM

3                THE COURT:  Okay.  Sustained.                       05:10PM

4    BY MS. S. MILLER: (CONTINUING)                                 05:11PM

5       Q.   What was the mailing address reflected in all those    05:11PM

6    signature --                                                   05:11PM

7                MS. MCCONWELL:  I also object that this is          05:11PM

8    cumulative.                                                    05:11PM

9                MS. S. MILLER:  I don't think we discussed --      05:11PM

10               MS. MCCONWELL:  Ms. Jones testified about the       05:11PM

11   signature cards.  I think it's cumulative.                     05:11PM

12               THE COURT:  Same signature card.                    05:11PM

13               MS. MCCONWELL:  Yes.                                05:11PM

14               THE COURT:  All right.  If that's the case, if      05:11PM

15   it's the same signature card and if Jones did testify to that, 05:11PM

16   then the objection will be sustained.  If they're different    05:11PM

17   signature card, you can ask the question.                      05:11PM

18   BY MS. S. MILLER: (CONTINUING)                                 05:11PM

19      Q.   I'd like to turn your attention to Exhibit G-2898.     05:11PM

20   2898, please.  Could we publish to the jury, please?           05:12PM

21               THE COURT:  That's already been admitted.           05:12PM

22               MS. S. MILLER:  Yes, Your Honor.                    05:12PM

23               THE CLERK:  I'm just verifying.                     05:12PM

24               MS. MCCONWELL:  Only certain pages of this          05:12PM

25   document have been admitted.                                   05:12PM

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | THE COURT:  So whichever pages -- whichever pages | 05:12PM |
| 2 | have been admitted may be published. | 05:12PM |
| 3 | MS. MCCONWELL:  And I would also object that it's | 05:12PM |
| 4 | cumulative.  Ms. Jones testified about this document and as | 05:12PM |
| 5 | well. | 05:12PM |
| 6 | THE COURT:  Are you going to ask her -- ask him | 05:12PM |
| 7 | something different from Ms. Jones because if that's -- | 05:12PM |
| 8 | MS. S. MILLER:  Yes, Your Honor.  After this -- | 05:12PM |
| 9 | after talking about this first page, I'm going to go to a page | 05:12PM |
| 10 | that we didn't cover with Ms. Jones. | 05:12PM |
| 11 | THE COURT:  Okay.  Very well.  So to that extent | 05:12PM |
| 12 | go ahead and proceed. | 05:12PM |
| 13 | BY MS. S. MILLER: (CONTINUING) | 05:12PM |
| 14 | Q.   Thank you.  So Special Agent -- could we publish | 05:12PM |
| 15 | please?  Page 1? | 05:12PM |
| 16 | THE CLERK:  One moment. | 05:12PM |
| 17 | BY MS. S. MILLER: (CONTINUING) | 05:13PM |
| 18 | Q.   Special Agent Khamvongsa, which account is this -- | 05:13PM |
| 19 | the corporate signature card page for? | 05:13PM |
| 20 | A.   Wilma's Flight Services, Inc. | 05:13PM |
| 21 | Q.   Okay.  And what's the date on this document? | 05:13PM |
| 22 | A.   11/3/2017. | 05:13PM |
| 23 | Q.   Okay.  And on page -- can we go to page 16, please. | 05:13PM |
| 24 | Special Agent Khamvongsa, what's the date on this check? | 05:13PM |
| 25 | MS. MCCONWELL:  Your Honor, this is cumulative. | 05:13PM |

```
 1   This was gone over completely with Ms. Jones.                    05:13PM
 2              MS. S. MILLER:  And I'm going to ask him              05:13PM
 3   questions about this that were not asked of Ms. Jones.          05:13PM
 4              THE COURT:  Very well.  You may proceed.              05:13PM
 5              THE WITNESS:  2/7/2018.                               05:13PM
 6   BY MS. S. MILLER: (CONTINUING)                                   05:13PM
 7       Q.   Okay.  You work for the IRS, right, Special Agent      05:13PM
 8   Khamvongsa?                                                      05:13PM
 9       A.   Yes.                                                    05:13PM
10       Q.   Can you tell the ladies and gentlemen of the jury      05:13PM
11   what actions you took on behalf of the IRS shortly after this   05:13PM
12   check?                                                           05:14PM
13       A.   Actually.                                               05:14PM
14       Q.   Or before?                                             05:14PM
15       A.   Actually, before this check, I obtained a seizure      05:14PM
16   warrant and seized approximately $4.6 million.                  05:14PM
17       Q.   From?                                                   05:14PM
18       A.   From accounts belonging to Jon Walker and the         05:14PM
19   subsidiary companies, including Caledonian Agency, Inc.,        05:14PM
20   including Hansen Northern Helicopters and Hansen Helicopters    05:14PM
21   as well as Walker Agricola.                                     05:14PM
22       Q.   Could you tell the ladies and gentlemen of the jury   05:14PM
23   what Walker Agricola is?                                         05:14PM
24       A.   It is a bank account and Walker, Jon Walker is the    05:14PM
25   sole signer of that bank account.                               05:14PM
```

```
 1      Q.    Is it a corporate account or a personal account?    05:14PM

 2      A.    It appears to be a business account.                05:14PM

 3      Q.    Okay.  Now, I'd like to go to page 14, please?  Now, 05:14PM

 4  Special Agent Khamvongsa, do you see the transaction -- well  05:15PM

 5  first of all, what are we looking at here in terms of deposits 05:15PM

 6  versus payments going out?                                    05:15PM

 7      A.    These are wire transfer credits or deposits going or 05:15PM

 8  going into the account Wilma's Flight Services, Inc., and it's 05:15PM

 9  identified by the word additions at the top of the header     05:15PM

10  above the dollar amounts.                                     05:15PM

11      Q.    Thank you.  And if we look at the wire transfer      05:15PM

12  company coming into this account on July 27th, in the amount  05:15PM

13  of 299,000 and change, do you recognize the name of where that 05:15PM

14  wire transfer is coming from?                                 05:15PM

15      A.    I see in the name Pacific Spotters Corporation and I 05:15PM

16  do -- I am aware of a Pacific Spots Corporation that was      05:15PM

17  opened.                                                       05:16PM

18            MS. MCCONWELL:  Your Honor, this is beyond the --    05:16PM

19  nonresponse and narrative.                                    05:16PM

20            THE COURT:  Okay.  Sustained.                        05:16PM

21  BY MS. S. MILLER: (CONTINUING)                                05:16PM

22      Q.    Okay.  Could you tell the members of the jury what   05:16PM

23  you know, based on your investigation, about Pacific Spotters? 05:16PM

24      A.    Pacific.Spotters corporation was opened in the      05:16PM

25  Philippines in 2018.                                          05:16PM
```

*Direct - Khamvongsa*

```
 1              MR. MARTIN:  Your Honor.                          05:16PM

 2              THE COURT:  Yes?                                  05:16PM

 3              MR. MARTIN:  I object.  My recollection is        05:16PM

 4   Pacific Spotters is not named anywhere in this indictment and 05:16PM

 5   I object on the base of relevancy.                          05:16PM

 6              THE COURT:  Is it named in the indictment?       05:16PM

 7              MS. S. MILLER:  No, Your Honor, but it formed --  05:16PM

 8   it was part of his investigation was looking --             05:16PM

 9              MR. MARTIN:  I object to the narrative then, Your 05:16PM

10   Honor.                                                      05:16PM

11              MS. S. MILLER:  It's part of the records he      05:16PM

12   reviewed for -- -                                           05:16PM

13              MR. MARTIN:  I object to a narrative.            05:16PM

14              THE COURT:  Okay.  So in terms of relevance to   05:16PM

15   the indictment, that's their objection.  If it's not relevant 05:16PM

16   to the indictment, then the Court will sustain the objection 05:16PM

17   on that ground.                                             05:16PM

18   BY MS. S. MILLER: (CONTINUING)                              05:16PM

19     Q.    Okay.  Mr. Khamvongsa, Agent Khamvongsa, with respect 05:16PM

20   to the Count 99, conspiracy to commit wire fraud, can you just 05:16PM

21   generalize for the jury the types of information you reviewed 05:17PM

22   within the bank records related -- and how it relates to that 05:17PM

23   count?                                                      05:17PM

24     A.    I've reviewed foreign bank account records, I       05:17PM

25   reviewed bank records here from financial institutions here 05:17PM
```

*Direct - Khamvongsa*

```
 1   within Guam, which include Bank of Hawaii, Community First      05:17PM
 2   Guam Federal Credit Union, I also looked at articles of         05:17PM
 3   incorporation as it relates to Jon Walker being president and   05:17PM
 4   majority shareholder, which includes Pacific.Spotters           05:17PM
 5   Corporation as well as Hansen Helicopters --                    05:17PM
 6             MR. MARTIN:  Your Honor, I object, I mean the         05:17PM
 7   answer is directly in violation of the Court's order relating   05:17PM
 8   to Pacific Spotters, Your Honor, and I object it's not named    05:17PM
 9   in the indictment.                                              05:17PM
10             THE COURT:  Okay.  Sustained.                         05:17PM
11   BY MS. S. MILLER: (CONTINUING)                                  05:17PM
12        Q.   Special Agent Khamvongsa, around the time of that     05:17PM
13   wire transfer from Pacific Spotters, what else do you know --   05:18PM
14             MR. MARTIN:  Your Honor... I have objected to         05:18PM
15   this three times now.                                           05:18PM
16             MS. S. MILLER:  I'm asking what else he knows.        05:18PM
17             THE COURT:  So --                                     05:18PM
18             MS. MCCONWELL:  Hansen joins.                         05:18PM
19             THE COURT:  So with regard to Pacific Spotter         05:18PM
20   questions, the Court will sustain the objection.  Move on to    05:18PM
21   the next question.                                              05:18PM
22   BY MS. S. MILLER: (CONTINUING)                                  05:18PM
23        Q.   Okay.  So around the time of July 27, 2018, could you 05:18PM
24   please tell the jury what else you know based on your           05:18PM
25   investigation occurred during that time?                       05:18PM
```

*Direct - Khamvongsa*

1    A.   Limey Air Service Incorporated was opened with    05:18PM

2  Community First Guam Federal Credit Union.  In addition,    05:18PM

3  additional bank accounts were opened in the Philippines.    05:18PM

4    Q.   Were any banks -- what if any bank account were    05:18PM

5  closed shortly before that timeframe?    05:18PM

6    A.   Actually, the bank accounts with Bank of Hawaii for    05:18PM

7  Caledonian Agency, Inc., for Wilma's Flight Services, for    05:18PM

8  Hansen Northern Helicopters and Hansen Helicopters closed    05:18PM

9  August 1st of 2018.    05:18PM

10    Q.   And what, if anything, happened with respect to this    05:19PM

11  case in May of 2018?    05:19PM

12    A.   This case was indicted in May of 2018.    05:19PM

13    Q.   Now, I'd like to go to Exhibit 2939, please.  And I'd    05:19PM

14  like to first start with the first page which is already    05:19PM

15  admitted.    05:19PM

16       Special Agent Khamvongsa, what is this?    05:19PM

17    A.   This is a member application card from Community    05:19PM

18  First Guam Federal Credit Union, which I obtained from -- via    05:19PM

19  grand jury subpoena and it's for Limey Air Service, Inc.    05:19PM

20    Q.   Based on your review of all the documentation you    05:19PM

21  received on Limey Air Service --    05:20PM

22       MS. MCCONWELL:  Your Honor, I object to this as    05:20PM

23  being cumulative.  Ms. Jones went over this signature card and    05:20PM

24  this exhibit as well.    05:20PM

25       MS. S. MILLER:  I'm going ask him other questions    05:20PM

1    than the ones I asked Ms. Jones, Your Honor.                    05:20PM

2              THE COURT:  All right.  Based on that, go ahead.      05:20PM

3    You may proceed.                                                05:20PM

4              MS. S. MILLER:  Thank you.                            05:20PM

5    BY MS. S. MILLER:  (CONTINUING)                                 05:20PM

6      Q.   Let me step back.                                        05:20PM

7           About how many pages, if you could estimate, of bank    05:20PM

8    records did you review with respect to this bank account for   05:20PM

9    Limey Air Services?                                             05:20PM

10     A.   For Limey Air Service, the number of pages is about      05:20PM

11   2500 to 3,000 pages.                                            05:20PM

12     Q.   Okay.  And did you see within those pages anything       05:20PM

13   that indicated Mr. Walker's relationship to Limey Air          05:20PM

14   Services?                                                       05:20PM

15     A.   Yes, it's in the articles of incorporation, which was   05:20PM

16   part of the account opening.                                   05:20PM

17     Q.   Okay.  What was his role as listed in the articles of   05:20PM

18   incorporation, Mr. Walker?                                      05:20PM

19     A.   Well, there is a letter in which he says that he's      05:20PM

20   99.9% owner of Limey Air Services.                             05:21PM

21     Q.   Okay.                                                    05:21PM

22     A.   And that was around the time of 2018.                   05:21PM

23     Q.   Okay.  Now like to go to pages 82 and 83 of this        05:21PM

24   document, which have not yet been admitted.                    05:21PM

25              THE COURT:  Okay.  This is G-2939-18?                05:21PM

```
 1              MS. S. MILLER:  I'd like to go to page 82.  So    05:21PM
 2    2939-82.                                                    05:21PM
 3              THE COURT:  Oh, 82, okay.  Thank you.             05:21PM
 4    BY MS. S. MILLER: (CONTINUING)                             05:21PM
 5       Q.   Special Agent Khamvongsa, have you seen this document  05:21PM
 6    before?                                                    05:21PM
 7       A.   Yes.                                               05:21PM
 8       Q.   Do you know where it came from?                    05:21PM
 9       A.   It came from Community First Guam Federal Credit   05:21PM
10    Union in pursuant to the grand jury subpoena.              05:21PM
11              MS. S. MILLER:  Okay.  At this time, Your Honor,  05:21PM
12    I'd move pages 82 and 83 of Exhibit 2939 into evidence.    05:21PM
13              THE COURT:  Counsels?                             05:21PM
14              MR. MARTIN:  May I have just a second, Your       05:22PM
15    Honor?                                                     05:22PM
16              THE COURT:  Yup.                                  05:22PM
17              (Pause.)                                         05:22PM
18              MS. MCCONWELL:  And, Your Honor, while Mr. Walker  05:22PM
19    is reviewing this, I would ask for a limiting instruction  05:22PM
20    again on this.  Hansen Helicopters is not part of Counts 99  05:22PM
21    through 110.  So any questions, I would ask that you advise  05:23PM
22    that Hansen is not part of that in the limiting.  And if you  05:23PM
23    do admit these, that it's not to be used against Hansen    05:23PM
24    Helicopters.                                               05:23PM
25              THE COURT:  All right.                            05:23PM
```

*Direct - Khamvongsa*

```
 1              MR. MARTIN:  May I ask a question?          05:23PM

 2              THE COURT:  Did you say it's already been   05:23PM

 3    admitted, right?                                      05:23PM

 4              MR. MARTIN:  No.                            05:23PM

 5              THE COURT:  I'm sorry, it has not.          05:23PM

 6              MS. S. MILLER:  These two pages have not.   05:23PM

 7              MS. MCCONWELL:  And the prior one has only been 05:23PM

 8    admitted for Mr. Walker.  Not for Hansen Helicopters. 05:23PM

 9              THE COURT:  Okay.  Well, admitted for       05:23PM

10    consideration.  Yes.  Go ahead.                       05:23PM

11              MR. MARTIN:  May I ask some questions in aid of 05:23PM

12    an object, Your Honor?                                05:23PM

13              THE COURT:  You may.                        05:23PM

14                        VOIR DIRE                         05:23PM

15    BY MR. MARTIN: (CONTINUING)                           05:23PM

16       Q.   Agent, I'm looking at what's characterized it looks 05:23PM

17    like as Exhibit A, page 82 of that exhibit and Exhibit B, 82 05:23PM

18    of that exhibit.                                      05:23PM

19              Are you telling me, that is a bank record kept in the 05:23PM

20    normal course of business at the bank, sir?          05:23PM

21       A.   This is what they provided me in response to the 05:24PM

22    grand jury subpoena that I issued.                    05:24PM

23       Q.   It is not a bank record kept in the normal course of 05:24PM

24    business then?                                        05:24PM

25       A.   It is a bank record that they provided, which is kept 05:24PM
```

1    in ordinary course of business.                                    05:24PM

2        Q.   So they keep a running list of specific questions          05:24PM

3    that you asked in a grand jury subpoena?                            05:24PM

4        A.   This was provided in response to that account and the      05:24PM

5    information that is a summary of what was going on in that          05:24PM

6    account that was done by the bank.                                  05:24PM

7        Q.   The bank prepared this document pursuant to a grand        05:24PM

8    jury subpoena that was issued to them?                              05:24PM

9        A.   I don't know if they did it in response to the grand       05:24PM

10   jury subpoena, but it was provided in response to a grand jury      05:24PM

11   subpoena.                                                           05:24PM

12       Q.   And did the grand jury subpoena ask for a specific         05:24PM

13   list of information, sir?                                           05:24PM

14       A.   The grand jury subpoena asked for all records as it        05:25PM

15   relates to Limey Air Service, Inc.                                  05:25PM

16       Q.   No.  I'm talking about relating to pages 82 and 83 of      05:25PM

17   this exhibit?                                                       05:25PM

18       A.   This was provided in response to activity that             05:25PM

19   occurred within that account in response to the grand jury          05:25PM

20   subpoena.                                                           05:25PM

21       Q.   And that is -- is that same evidence contained in          05:25PM

22   pages 1 through 81 of this exhibit, sir?                            05:25PM

23       A.   1 through 81 of this exhibit is a portion of the           05:25PM

24   entirety of the 3,000 -- 25 to 3,000 documents I reviewed from      05:25PM

25   Limey Air Services, Inc., from the Community First Guam             05:25PM

*Direct - Khamvongsa*

1   Federal Credit Union.                                          05:25PM

2       Q.   And are these page -- are these 2939-82 and 2939-83,   05:25PM

3   are those specific transactions contained within those 3,000   05:25PM

4   documents you reviewed, sir?                                    05:25PM

5       A.   Yes, sir.                                              05:26PM

6            MR. MARTIN:  Your Honor, I object.  This is a          05:26PM

7   summary exhibit.  I have not been provided the underlying data  05:26PM

8   to authorize me to determine the validity of the information.   05:26PM

9   I object.                                                       05:26PM

10           THE COURT:  First of all, is this a summary            05:26PM

11  chart?                                                          05:26PM

12           MS. S. MILLER:  No, Your Honor.  This was              05:26PM

13  provided as-is from the bank.                                   05:26PM

14           THE COURT:  This was provided as the witness has       05:26PM

15  said?                                                           05:26PM

16           MS. S. MILLER:  (Nodded head.)                         05:26PM

17           THE COURT:  Mr. Martin?                                05:26PM

18           MR. MARTIN:  Your Honor, this is not -- it's           05:26PM

19  obvious from its face, this is not a bank record kept in the    05:26PM

20  normal ordinary course of business.  And I object on that      05:26PM

21  ground.                                                         05:26PM

22           THE COURT:  All right.  Can you just pull up the       05:26PM

23  -- can you make it larger?  All right.  Are you trying to       05:26PM

24  bring it under the business records exception.  If you are,     05:26PM

25  the objection will be sustained because there is no foundation  05:26PM

*Direct - Khamvongsa*

1    laid.  So go ahead and if you try to figure out, lay a        05:26PM

2    foundation with this witness.        05:26PM

3            MS. S. MILLER:  Well, Your Honor, the witness.        05:26PM

4            THE COURT:  You said you're bringing it under        05:26PM

5    business records exception.  That's what you said you're        05:26PM

6    bringing it under business records exception.  That's what you        05:26PM

7    said you're bringing it under.  So go ahead and set it up as        05:26PM

8    business records exception.  Go ahead.        05:26PM

9            MS. S. MILLER:  Well, we stipulated to not have        05:27PM

10   records custodian, first of all.        05:27PM

11           THE COURT:  Right.        05:27PM

12           MS. S. MILLER:  And this came directly from one        05:27PM

13   of those records custodian from the bank.        05:27PM

14           THE COURT:  But did you stipulate to this        05:27PM

15   particular exhibit?  You did?        05:27PM

16           MS. S. MILLER:  Yes.        05:27PM

17           THE COURT:  You both -- you guys stipulated as --        05:27PM

18           MS. S. MILLER:  And even from the bank, we        05:27PM

19   obviated the need custodians.        05:27PM

20           THE COURT:  Okay.  All right.  Counsels?  Okay.        05:27PM

21           MR. MARTIN:  We did not stipulate to this        05:27PM

22   exhibit, Your Honor.        05:27PM

23           MS. S. MILLER:  It came from the bank.        05:27PM

24           THE COURT:  Hold on.  Hold on.  Okay.  Is this a        05:27PM

25   business record, I mean did you stipulate that certain        05:27PM

```
 1   business records from a specific bank would obviate the need      05:27PM
 2   to get in a records custodian?  I think you guys --               05:27PM
 3            MS. MCCONWELL:  We said they didn't need a               05:27PM
 4   records custodian, but did not stipulate to having additional     05:27PM
 5   summary charts.                                                   05:27PM
 6            MR. MARTIN:  And this is not -- this is not a            05:27PM
 7   business records, Your Honor.  This is something that he did      05:27PM
 8   not get from the bank, he got it pursuant to a grand jury         05:27PM
 9   subpoena.                                                         05:27PM
10            MS. S. MILLER:  I move to strike that comment           05:27PM
11   because he has no --                                              05:28PM
12            THE COURT:  Counsel.  Counsel.  Please.  I cannot       05:28PM
13   hear the objection.  Don't move to strike because I don't even    05:28PM
14   know what he just said.  Okay.  What?  Go ahead.  You guys,       05:28PM
15   you know what, if I hear that again, I'm going to ban you guys    05:28PM
16   from speaking in my Court.  I will tell you that now.            05:28PM
17            I need to hear the specific objection and I need        05:28PM
18   to hear the responses before I make an informed decision.        05:28PM
19   What is the objection, Mr. Martin?                                05:28PM
20            MR. MARTIN:  Your Honor.                                05:28PM
21            THE COURT:  Yes?  Exhibit?                              05:28PM
22            MR. MARTIN:  I stipulated to them having -- not         05:28PM
23   required to bring in custodian in.  This is not being brought     05:28PM
24   in as a custodian.  This is being brought in through this        05:28PM
25   witness as a pursuant to a grand jury subpoena.  That's          05:28PM
```

*Direct - Khamvongsa*

1    different.                                                    05:28PM

2              THE COURT:  All right.  So it's my understanding    05:28PM

3    and correct me if I'm wrong, both of you, let me just start   05:28PM

4    with the defense, that if there were any specific business    05:28PM

5    records from a bank, in particular, the parties would review  05:28PM

6    that and they would say, okay, we do not object, we agree on  05:29PM

7    the authenticity of the documents and that would obviate the  05:29PM

8    need to bring in a business records custodian, that was the   05:29PM

9    general stipulation, right?  Agreement?                       05:29PM

10             MS. S. MILLER:  Yes, Your Honor.                     05:29PM

11             THE COURT:  That was the agreement, is that          05:29PM

12   right, Mr. Martin?                                            05:29PM

13             MR. MARTIN:  Your Honor, that is right.              05:29PM

14             THE COURT:  Okay.  So are you saying that this --    05:29PM

15   this document, and let's -- this particular document, what is 05:29PM

16   this again?                                                   05:29PM

17             MR. MARTIN:  2939-82 and 83.  And I submit to the    05:29PM

18   Court, those two pages are not business records.              05:29PM

19             THE COURT:  So these have not been presented to     05:29PM

20   you as business records for you to have reviewed and you do   05:29PM

21   not review this as bank business records?  That's what you're 05:29PM

22   saying.                                                       05:29PM

23             MR. MARTIN:  Those two pages, Your Honor.            05:29PM

24             THE COURT:  Those two pages.  All right.  Is that    05:29PM

25   true?                                                         05:29PM

*Direct - Khamvongsa*

1     MS. S. MILLER:  No, Your Honor.  This has been on   05:29PM

2     our exhibit list in full since day one.  This is -- what about   05:29PM

3     it sounds like Mr. Martin is saying is that he doesn't believe   05:30PM

4     Agent Khamvongsa --   05:30PM

5     THE COURT:  No.  No.  Don't say what you think he   05:30PM

6     believe -- no, no, no, Ms. Miller.  Do not comment, let me --   05:30PM

7     the attorneys do not need to comment on what you think your   05:30PM

8     opposing side believes.  I don't care what you think.  I only   05:30PM

9     care about is what your argument is here.   05:30PM

10     The question is, is this a business record from   05:30PM

11     the bank that came from the bank and that was presented to   05:30PM

12     defense Counsel for their review to ascertain whether a chain   05:30PM

13     of custody, I mean I'm sorry, a business record custodian need   05:30PM

14     not be brought in and you said yes.   05:30PM

15     Let me ask you is this, is this a business record   05:30PM

16     that came from the bank directly?   05:30PM

17     THE WITNESS:  Yes, Your Honor.   05:30PM

18     THE COURT:  Okay.  But then the -- the next   05:30PM

19     question is, was that presented to the defense Counsel?   05:30PM

20     MS. S. MILLER:  Yes, Your Honor.   05:30PM

21     THE COURT:  Mr. Martin?   05:30PM

22     MR. MARTIN:  May respond briefly.   05:30PM

23     THE COURT:  Yeah.   05:30PM

24     MR. MARTIN:  Your Honor, bank records are checks,   05:30PM

25     statements, signature cards, letters, not summary documents   05:31PM

```
 1    like this.  This is a document that was created pursuant to a     05:31PM
 2    grand jury subpoena.  It is not a business record kept in the     05:31PM
 3    normal course of the business, I can go to my bank today and I    05:31PM
 4    won't get anything like that looks like this and you can, too.    05:31PM
 5    We all can.                                                        05:31PM
 6              THE COURT:  Okay.                                        05:31PM
 7              MS. S. MILLER:  May I respond, Your Honor?              05:31PM
 8              THE COURT:  Okay.  Hold on.  Let me just look at        05:31PM
 9    this.  Okay.  Yes, you may respond, Ms. Miller.                   05:31PM
10              MS. S. MILLER:  So ECF 1516 contains a                  05:31PM
11    stipulation which says that they are stipulating to the          05:31PM
12    authenticity and chain of custody of all records and objects,    05:31PM
13    whether seized or obtained through a grand jury subpoena.        05:31PM
14              THE COURT:  Okay.                                        05:31PM
15              MS. S. MILLER:  Perhaps this an unusual looking         05:31PM
16    document, but our witness --                                     05:31PM
17              THE COURT:  Never mind.  You don't need to             05:31PM
18    comment on that.  Just focus on that stipulation.  Okay.  How    05:32PM
19    do you respond to that?  Grand jury subpoena.                    05:32PM
20              MR. MARTIN:  I was -- I was under the belief,          05:32PM
21    Your Honor, that everything seized was a "business record" and   05:32PM
22    my representation to the Court is this is not a business         05:32PM
23    record because I was led to believe that what was seized by      05:32PM
24    the grand jury were business records.                            05:32PM
25              THE COURT:  Okay.  But the stipulation, though,        05:32PM
```

```
 1    do you agree with the stipulation?                          05:32PM
 2            MR. MARTIN:  I agree with the stipulation, Your      05:32PM
 3    Honor, but we have been given over 3,000 exhibits.  There they  05:32PM
 4    are.  We did our -- I did my best to look at every one of   05:32PM
 5    them, but if I missed two pages of the 3,055 exhibits, which  05:32PM
 6    encompasses over 30,000 pages, I goofed up and I am sorry,  05:32PM
 7    Your Honor.  But this is not a bank record, which is what I  05:32PM
 8    thought we were stipulating to that was obtained pursuant to a  05:32PM
 9    grand jury subpoena.                                        05:33PM
10            THE COURT:  Okay, but he just testified that this   05:33PM
11    is a business record.  And he testified it was obtained     05:33PM
12    through a grand jury.  This is what the witness has testified  05:33PM
13    to.                                                         05:33PM
14            MR. MARTIN:  He testified he obtained it pursuant   05:33PM
15    to a grand jury subpoena, Your Honor.  I would like to voir  05:33PM
16    dire him about --                                           05:33PM
17            THE COURT:  You want to voir dire the witness in    05:33PM
18    aid of an objection on the foundation.  Go ahead.           05:33PM
19                          VOIR DIRE                             05:33PM
20    BY MR. MARTIN:                                              05:33PM
21       Q.   Sir, did you hear me talking about what bank records  05:33PM
22    are earlier?                                                05:33PM
23       A.   Yes.                                                05:33PM
24       Q.   Will you agree that they are statements, sir?       05:33PM
25       A.   They are many things.                               05:33PM
```

*Direct - Khamvongsa*

Q.   No, I'm going through them.  Statements?

A.   Statements are one.

Q.   Signature cards?

A.   Signature cards are one.

Q.   Copies of checks?

A.   Checks are one.

Q.   Loan documents?

A.   Loan documents are one.

Q.   And letters from the bank to you and you to the bank?

A.   That's another one.

Q.   All right.  This document, 2939-82, and 2989-33 are not document, is not a document that is kept in the normal course of business, is it, sir?

A.   This is provided by the bank and kept in the ordinary course of business because this was provided to me because they've been tracking that the information that these specific transactions were suspicious.

Q.   And was that... is it your testimony then, that this is all wire transfers, sir?

A.   Yes, sir.  Wire transfers from the Philippine bank account.

Q.   And those are required by law -- by law, is that correct, sir?

A.   It's required by law for banks to establish and anti-money laundering policies within the bank to prevent

*Direct - Khamvongsa*

1    criminals or individuals from trying to laundering money.    05:34PM

2         Q.   I understand what the law is, sir.    05:35PM

3         A.   My apologies.    05:35PM

4         Q.   And where -- do you have copy of these?  Does the IRS    05:35PM

5    have a copy of these?    05:35PM

6         A.   Are you asking if they sent it to me?    05:35PM

7         Q.   Yes, sir.    05:35PM

8         A.   I did not -- I only got this as a result of the grand    05:35PM

9    jury subpoena, but this was kept during the ordinary course of    05:35PM

10   their business.    05:35PM

11        Q.   Aren't all suspicious activities with banks required    05:35PM

12   to be forwarded to some other entity for investigation and    05:35PM

13   follow up, sir?    05:35PM

14        A.   There is -- they keep records, their own records    05:35PM

15   within their -- the bank, as well as it's -- it goes to other    05:35PM

16   agencies.    05:35PM

17        Q.   Well, one of them is the IRS, isn't it, sir?    05:35PM

18        A.   There is a -- it goes to FinCEN.    05:35PM

19        Q.   I'm sorry, I couldn't hear you?    05:35PM

20        A.   It goes to another agency.    05:35PM

21        Q.   And do you have access to that, sir?    05:36PM

22        A.   I do.    05:36PM

23        Q.   And did you obtain this document from them?    05:36PM

24        A.   No, I did not.    05:36PM

25        Q.   Do you know whether or not they have this document?    05:36PM

*Direct - Khamvongsa*

1       A.   I do not know whether or not they have this document.

2  This was provided from the bank as a result --

3       Q.   I heard what you said, sir.

4       A.   Okay.  Thank you.

5       Q.   What was the date of the grand jury subpoena, sir?

6       A.   I would have to review it, I don't know.

7       Q.   Well, I think it's critical because the date is

8  relevant to the information contained herein.

9       A.   Um.  I believe it's...can we go to the page 83?  It

10 would have been provided sometime around the end of

11 11-25-2019, so it would have been around that timeframe.

12      Q.   So the grand jury subpoena would have been prior to

13 11-25 of '19?

14      A.   It would have been around 11-25-2019.  I can't say

15 for sure because the record stops at that date.  So generally

16 when grand jury subpoenas are issued, it says from this date

17 to present.

18            MR. MARTIN:  Your Honor, I would like that the --

19 before further ruling that the copy of the grand jury subpoena

20 be provide to defense Counsel so that we can make an informed

21 objection if one is appropriate.

22            THE COURT:  All right.  Let me -- okay, that's

23 fine.  The Court will allow that.  But let me just ask the

24 agent.

25            This particular exhibit, G-2939-82 and 83, was

1    this made in the course -- the regular practice -- I'm sorry,          05:38PM
2    was this made in the course of the business of the bank or was          05:38PM
3    this made for use for this court case?          05:38PM
4              THE WITNESS:  This was --          05:38PM
5              THE COURT:  Or both?  What is it?          05:38PM
6              THE WITNESS:  This was not -- this was not          05:38PM
7    developed in response to this court case.  This was something          05:38PM
8    that the bank did on its own, during the normal course of          05:38PM
9    business.          05:38PM
10             THE COURT:  And so you know for a fact, okay, so          05:38PM
11   just in terms of the -- of business records exception, you          05:38PM
12   know for a fact that this record was made at or near the time          05:38PM
13   this information was transmitted by someone with knowledge, do          05:38PM
14   you know that for a fact?          05:38PM
15             THE WITNESS:  Yes.          05:38PM
16             THE COURT:  And how do you know that?          05:38PM
17             THE WITNESS:  The records custodian is the person          05:38PM
18   that --          05:38PM
19             MS. MCCONWELL:  I would object to hearsay.          05:38PM
20             THE COURT:  Okay.  But -- all right.  Maybe I'll          05:39PM
21   talk to him outside the presence of the jury.  All right.          05:39PM
22   Ladies and gentlemen, why don't we -- we're going to recess          05:39PM
23   for the day.  And I'm just going to talk to this witness.          05:39PM
24   Keep an open mind.  I'll see you tomorrow morning at 8:15.          05:39PM
25   Okay.  We're not done today.          05:39PM

1    MS. S. MILLER:  Sorry.                                    05:39PM

2    THE COURT:  Keep an open mind.  Do not listen to         05:39PM

3    any social media or anybody reporting if it's being reported,  05:39PM

4    okay?                                                     05:39PM

5    (Jury out at 5:39 p.m.)                                   05:39PM

6    THE COURT:  All right.  Please be seated.  All            05:39PM

7    right.  Okay, so just -- let me just say because this is so  05:39PM

8    contentious on whether or not this is a business records  05:39PM

9    exception, I mean, putting aside all this issue of the    05:39PM

10   stipulation and everything, this is like the one document that  05:39PM

11   the two of you have been fighting for.  And the Court notes  05:39PM

12   that if a document was calculated for use, essentially in the  05:40PM

13   court system -- for the Court, then it's inadmissible.  It's  05:40PM

14   not a business record.                                    05:40PM

15   MR. MARTIN:  And I agree with that, Your Honor.           05:40PM

16   THE COURT:  Right.  So I'm just trying to                 05:40PM

17   ascertain.  Go ahead.                                     05:40PM

18   MR. MARTIN:  And I want to look at the subpoena.          05:40PM

19   But also, Your Honor, you've already sustained three separate  05:40PM

20   objections relating to specific -- Pacific Spotters, which is  05:40PM

21   in the -- which is where all these -- every one of the    05:40PM

22   transfers appears to be coming from Pacific Spotters, which is  05:40PM

23   not named in the indictment.                              05:40PM

24   THE COURT:  Are these all Pacific Spotters issues         05:40PM

25   or transactions?                                          05:40PM

```
1              THE WITNESS:  Yes, these are -- this is from     05:40PM
2    Pacific.Spotters, which Walker is president of.            05:40PM
3              THE COURT:  Okay.  This is from Pacific dot --   05:40PM
4    Pacific Spotters, all right.  And this is -- okay, but I think 05:40PM
5    the objection was, okay, what were you saying then?  Yes,  05:40PM
6    right, the Court has sustained that objection.             05:41PM
7              MR. MARTIN:  We went over this, I objected that  05:41PM
8    Pacific Spotters is not in the indictment anywhere.  And they 05:41PM
9    tried to introduce three separate documents relating, he's 05:41PM
10   testified about it and we had to object.  And we are going way 05:41PM
11   outside the indictment with this.                          05:41PM
12             THE COURT:  Okay.  You can take that off,        05:41PM
13   Counsel.  All right.  Anything -- any other -- so on this  05:41PM
14   issue of Pacific Spotters.  What else?                     05:41PM
15             MR. MARTIN:  I'd like to seen the subpoena, Your 05:41PM
16   Honor.                                                     05:41PM
17             THE COURT:  You'll get the subpoena.  Who has the 05:41PM
18   subpoena?  Do we have it?  Do you guys have it?  Who has the 05:41PM
19   subpoena?                                                  05:41PM
20             MS. S. MILLER:  I'm sure we have a copy.  We     05:41PM
21   could get it, Your Honor.                                  05:41PM
22             THE COURT:  Do you have it with you right now?   05:41PM
23             MS. M. MILLER:  No.                              05:41PM
24             THE COURT:  You don't?  You don't have it        05:41PM
25   electronically --                                          05:41PM
```

```
1          MR. MARTIN:  They can e-mail.  They have my      05:41PM

2   e-mail.                                                  05:41PM

3          THE COURT:  Okay.  Just e-mail to defense         05:41PM

4   Counsel.  All right.  What about his Pacific Spotters    05:41PM

5   argument.  The Court has sustained that objection.  And now   05:41PM

6   you're bringing in a document that is replete with Pacific   05:41PM

7   Spotter transfers.  He said it's all of them.  So that's a   05:41PM

8   fair objection.  How do you respond to that objection?   05:42PM

9          MS. S. MILLER:  So Your Honor, this witness has   05:42PM

10  testified that Limey Air Services bank account with Community   05:42PM

11  First Guam was opened, I think, within five months of the   05:42PM

12  first superseding indictment.  And then although Mr. Walker's   05:42PM

13  name is not on the signature card, he is the -- you know,   05:42PM

14  there were letters within this same document received from the   05:42PM

15  bank that said that he was, I think he said -- actually, I   05:42PM

16  might want to look at it, but he signed an affidavit under   05:42PM

17  oath saying that he was the 99.9% owner and he was the   05:42PM

18  director of the company related with this bank account.  So   05:42PM

19  this is further information that shows the conspiracy.  In   05:42PM

20  Count 99.                                                05:42PM

21         THE COURT:  Okay, so I understand that argument.   05:42PM

22  But what about this Spotters -- Pacific Spotters objection   05:42PM

23  made by Counsel?  Because your witness just testified that all   05:42PM

24  of these, and correct me if I'm wrong, Agent, but all of the   05:42PM

25  wire transfers deal with Pacific Spotters.                05:43PM
```

```
 1            MS. S. MILLER:  Right.  He also testified that        05:43PM
 2   Mr. Walker is the owner of it and he's the one named in         05:43PM
 3   Counts 99 through 110.                                          05:43PM
 4            MR. MARTIN:  And he had testified to it, Your          05:43PM
 5   Honor, before I could get my objection out, which you           05:43PM
 6   sustained after I objected.  And I would ask that the witness   05:43PM
 7   be excused, Your Honor.                                         05:43PM
 8            THE WITNESS:  Sorry.                                   05:43PM
 9            THE COURT:  No, it's okay.  I didn't excuse you.       05:43PM
10   Yes, you may be excused.  Thank you.                            05:43PM
11            THE WITNESS:  Thank you.                               05:43PM
12            THE COURT:  See you tomorrow.                          05:43PM
13            THE WITNESS:  Thank you, Your Honor.                   05:43PM
14            THE COURT:  Okay.  Yes.  Wait.  Wait till he goes      05:43PM
15   out.                                                            05:43PM
16            MS. S. MILLER:  Sure.                                  05:43PM
17            THE COURT:  Wait till he goes out.  Okay.  He's        05:43PM
18   out.  The double doors.  Go ahead.                              05:43PM
19            MR. MARTIN:  As I said, Your Honor, he did             05:43PM
20   testify about the Pacific Spotters before -- sorry.  Before I   05:43PM
21   could get my objection out because that was one of the three    05:43PM
22   objections that I had.  Because he was testifying about         05:43PM
23   something that was not contained or outside the scope of this   05:43PM
24   indictment.  I mean, we --                                      05:43PM
25            THE COURT:  But does it change the landscape, now      05:44PM
```

```
 1    that he has evidence or testimony that Mr. Walker is the owner        05:44PM
 2    of Pacific Spotters?  Should that --                                  05:44PM
 3              MR. MARTIN:  Your Honor, I'm here on an                      05:44PM
 4    indictment that talks about what I'm charged with to defend           05:44PM
 5    Mr. Walker.  And Pacific Spotters is not anywhere in this             05:44PM
 6    indictment and I shouldn't have to, on the 27th day of trial,         05:44PM
 7    be having to defend against something that's not in the               05:44PM
 8    indictment and we're not required to defend against.                  05:44PM
 9              MS. S. MILLER:  May I respond, Your Honor?                   05:44PM
10              THE COURT:  Yeah.  Go ahead.                                 05:44PM
11              MS. S. MILLER:  So there --                                  05:44PM
12              THE COURT:  So he makes a point.  I mean I agree             05:44PM
13    with that.                                                            05:44PM
14              MS. S. MILLER:  So there already has been plenty            05:44PM
15    of evidence about Pacific Spotters and the fact that he               05:44PM
16    originally purchased it from defendant Crowe.  Also, in a             05:44PM
17    manner and means paragraph of the indictment in the conspiracy        05:44PM
18    to commit wire fraud.                                                 05:44PM
19              THE COURT:  Just cite to me.                                 05:44PM
20              MS. S. MILLER:  Yes.  Page 37.  I'm sorry.  The             05:44PM
21    end of 36 into 37.                                                    05:44PM
22              THE COURT:  Okay.  Just what line.                          05:45PM
23              MS. S. MILLER:  Line 24 on the last line of                 05:45PM
24    page 36.                                                              05:45PM
25              THE COURT:  Okay.                                           05:45PM
```

```
 1              MS. S. MILLER:  It references numerous shell        05:45PM
 2    corporations.  Pacific Spotters is one of those corporations  05:45PM
 3    and was using the same aircraft, the same pilots and mechanics 05:45PM
 4    after the first indictment and the bank accounts were closed  05:45PM
 5    and moved to the Philippines.                                 05:45PM
 6              So this is relevant information to the fact that    05:45PM
 7    the money started coming into the United States account from  05:45PM
 8    one of these shell corporations.                              05:45PM
 9              THE COURT:  All right.  But he's saying he          05:45PM
10    doesn't have notice that -- he does not have notice --        05:45PM
11              MS. S. MILLER:  He had --                           05:45PM
12              THE COURT:  Just a minute.  Listen to what I just   05:45PM
13    -- you guys, you keep forgetting that your institutional      05:45PM
14    history means nothing to me.  Zero.  All that matters to me is 05:45PM
15    what's brought into this courtroom.                           05:45PM
16              MS. S. MILLER:  Right.                              05:45PM
17              THE COURT:  The defense is saying they have no      05:45PM
18    notice in the indictment as to -- in the indictment as to     05:45PM
19    which shell company he has to defend against.  That's what he 05:46PM
20    just said.  Is that what you said?                            05:46PM
21              MR. MARTIN:  Yes, Your Honor.                       05:46PM
22              THE COURT:  And Pacific Spotters is not one of      05:46PM
23    'em.                                                          05:46PM
24              MS. S. MILLER:  Their own filing in this case       05:46PM
25    identified Pacific Spotters.  So...                           05:46PM
```

*Direct - Khamvongsa*

```
 1              MS. MCCONWELL:  No, it doesn't.                    05:46PM

 2              MS. S. MILLER:  Yes, it does.                      05:46PM

 3              MR. MARTIN:  I'm not --                            05:46PM

 4              THE COURT:  I'm sorry, your own exhibit.  What     05:46PM

 5    exhibit number is that?                                     05:46PM

 6              MS. S. MILLER:  This is Exhibit 829.               05:46PM

 7              THE COURT:  It says Pacific Spotters on it.        05:46PM

 8              MS. S. MILLER:  I mean I could rattle --           05:46PM

 9              THE COURT:  Is that what you just said?            05:46PM

10              MS. S. MILLER:  Yes.                               05:46PM

11              THE COURT:  That's your -- but he's talking about  05:46PM

12    the indictment.                                             05:46PM

13              MS. S. MILLER:  Right.  It reference shell         05:46PM

14    corporation.                                                05:46PM

15              THE COURT:  Listen.  Listen.  Just look at it      05:46PM

16    objectively.  Try to -- you probably can't because you      05:46PM

17    represent one side.  So does he.  But if you look at it from a 05:46PM

18    worldly point -- global point of view.  So the defendants can 05:46PM

19    have their organizational chart.  That may be so.  But what  05:46PM

20    he's defending against is in the indictment.  So his objection 05:46PM

21    is, I don't have notice as to which shell -- which shell     05:46PM

22    corporation, i.e., Pacific Spotters, is being discussed here. 05:47PM

23    So.                                                         05:47PM

24              MS. M. MILLER:  Your Honor, there is notice in     05:47PM

25    the indictment in the wire fraud counts of the funds coming in 05:47PM
```

```
 1   --                                                    05:47PM

 2          THE COURT:  That's not what -- okay, but she's  05:47PM

 3   referring -- no, no, no, Counsel you could say all you want.  05:47PM

 4   That's not what Ms. Miller is referring to.           05:47PM

 5          MS. M. MILLER:  I know.                         05:47PM

 6          THE COURT:  She's asking me -- first of all,    05:47PM

 7   listen to this, again you guys -- people -- I don't why you  05:47PM

 8   guys are not listening to me.  Listen.  Manners and means and  05:47PM

 9   objects of a conspiracy are not the elements.  That's just the  05:47PM

10   theory of the case.  When the prosecutor walks into any  05:47PM

11   courtroom and you know this, Ms. Miller.              05:47PM

12          MS. M. MILLER:  Yes, I know.                    05:47PM

13          THE COURT:  Because you are an experienced      05:47PM

14   lawyer.  When a prosecutor walks into this courtroom or any  05:47PM

15   federal courtroom or local courtroom, they have to prove the  05:47PM

16   elements of the case.                                 05:47PM

17          MS. M. MILLER:  Yes.                            05:47PM

18          THE COURT:  You guys are citing to me           05:47PM

19   non-elements.  You're citing to me theories.          05:47PM

20          MS. M. MILLER:  I was going to the element.     05:47PM

21          THE COURT:  Okay.  Well, she's not.  She did not  05:47PM

22   go to the element.  She was going to manners and means.  05:47PM

23          MS. M. MILLER:  If you look at the specific     05:47PM

24   counts, forget about the manners and means, look at specific  05:47PM

25   counts.                                               05:48PM
```

1          THE COURT:  Show us specific count.  He's only          05:48PM

2     testifying 99 to 110.  Which one is it?          05:48PM

3          MS. M. MILLER:  Correct.  So Counts 99 to 110 --          05:48PM

4          THE COURT:  Okay, let's go to 99, where are we          05:48PM

5     talking about?          05:48PM

6          MS. M. MILLER:  Include transfers into the bank          05:48PM

7     accounts that are specifically identified in the indictment.          05:48PM

8          THE COURT:  Okay.  Hold on.  Hold on.          05:48PM

9          MS. M. MILLER:  In the indictment.          05:48PM

10          THE COURT:  Count 99, elements.  Elements.  Okay,          05:48PM

11     through the use of wire transfer, okay, I see that.          05:48PM

12          MS. M. MILLER:  Yes.          05:48PM

13          THE COURT:  All right.  So therefore, continue.          05:48PM

14     So that's 99.          05:48PM

15          MS. M. MILLER:  Yes, Your Honor.  And then when          05:48PM

16     you go to the specific counts under the conspiracy to commit          05:48PM

17     wire fraud, you see the allegations of transfers of funds          05:48PM

18     coming in and the amount of the transfer of the funds.          05:48PM

19          THE COURT:  I see that.  What counts?  100          05:48PM

20     through 104.  That is what you're talking about?          05:48PM

21          MS. M. MILLER:  That's 100 though 104.  And then          05:48PM

22     we have the money laundering counts, 105 to 110.          05:48PM

23          THE COURT:  No, no, no.  Let's just focus on          05:49PM

24     Counts 100 to 104.          05:49PM

25          MS. M. MILLER:  Yes, Your Honor.          05:49PM

*Direct - Khamvongsa*

```
 1          THE COURT:  And the only one he talked about is     05:49PM
 2   Sea Fox 104.                                               05:49PM
 3          MS. M. MILLER:  Yes.                                05:49PM
 4          THE COURT:  All right.                              05:49PM
 5          MS. M. MILLER:  And all of these accounts were      05:49PM
 6   involved in the money laundering.  What Mr. -- Special Agent 05:49PM
 7   Khamvongsa is testifying to is that the funds were passing  05:49PM
 8   through multiple accounts to eventually get to Jon Walker.  05:49PM
 9   That's the whole basis of his testimony.                   05:49PM
10          And the conspiracy to commit wire fraud, which is   05:49PM
11   Count 99, not these specific counts, says from 2000 until this 05:49PM
12   Court said January 7, 2021, the defendants conspired to commit 05:49PM
13   wire fraud.  And when you look at those specific allegations, 05:49PM
14   and I'm not talking about the manner and means now, Your    05:49PM
15   Honor, I'm talking about the conspiracy to commit wire fraud. 05:49PM
16   You're looking at Jon Walker being named there.  And Jon    05:49PM
17   Walker being identified as a person who participated in the 05:49PM
18   conspiracy to commit wire fraud.                           05:50PM
19          The defendants took all of their leases from        05:50PM
20   these companies up here and changed it all to Pacific Spotters 05:50PM
21   Corporation, same helicopters, same airmen, same registration 05:50PM
22   numbers.  All they did was change the name of the shell     05:50PM
23   company.  And we alleged in the indictment that they used   05:50PM
24   numerous shell companies.  We didn't name all the shell     05:50PM
25   companies, but we alleged they used numerous shell companies. 05:50PM
```

*Direct - Khamvongsa*

1      THE COURT:  And I think he said that.                    05:50PM

2      MS. M. MILLER:  Yes.                                     05:50PM

3      THE COURT:  He says you did state generally.             05:50PM

4      MS. M. MILLER:  Yes.                                     05:50PM

5      THE COURT:  That there are shell companies.  What        05:50PM

6  he's saying he doesn't have -- okay, he doesn't have specific   05:50PM

7  notice as to Pacific Spotters.                               05:50PM

8      MS. M. MILLER:  Two things about Pacific Spotter         05:50PM

9  s--                                                          05:50PM

10     THE COURT:  Wait.  Wait.  Wait.  Wait.  Wait.            05:50PM

11  Wait.  Let me ask you this.                                 05:50PM

12     MS. M. MILLER:  Yes.                                     05:50PM

13     THE COURT:  He's saying it's not in the                  05:50PM

14  indictment that the shell company is Pacific Spotters.  Let's   05:50PM

15  put that aside for one second.                              05:50PM

16     MS. M. MILLER:  Yes.                                     05:50PM

17     THE COURT:  Then you guys are focusing on                05:50PM

18  Count 104, Sea Fox.  That's what this witness is talking    05:50PM

19  about.                                                      05:51PM

20     MS. M. MILLER:  Yes.                                     05:51PM

21     THE COURT:  Now, how are you putting together Sea        05:51PM

22  Fox equals Pacific Spotters equals Jon Walker?              05:51PM

23     MS. M. MILLER:  Because, Your Honor, starting on         05:51PM

24  or about 2013, Pacific Spotters Corporation was originally  05:51PM

25  opened and Pacific Spotters Corporation started being used by   05:51PM

*Direct - Khamvongsa*

the defendants in their fraud.

We alleged in the earlier part of the indictment
that the defendants were using the Philippine Civil Aviation
Authority as one of the ways in which they were defrauding the
FAA.  We have a lease from Pacific Spotters Corporation that
has an N U.S.-registered helicopter that is in the indictment,
that the defendants entered into a lease with one of these
shell companies in front of you, 829.  And then after the
first indictment, they changed that lease to Pacific Spotters
Corporation and they continued to lease that N-registered
helicopter even though they deregistered it to ostensibly
export it to the Philippines.  So --

THE COURT:  Okay.  All right.  So I understand
all that.  My question, though, is just -- to make the
connection, Ms. Samantha Miller is querying the Special Agent
on the stand from the IRS.

And I guess, I'm trying to ascertain, where has
the evidence been that Sea Fox, LLC tuna company with the
holding company Sea Global Fisheries with the lessor Foxtrot
Air equals Jon Walker and Pacific Spotters, that's the
connection.

MS. M. MILLER:  Yes.

THE COURT:  That you guys are trying -- I'm not
seeing it.

MS. M. MILLER:  Well, here's the evidence, Your

```
 1   Honor.  Exhibit 102, which you said we can't use, that's one     05:52PM
 2   piece of it.                                                      05:52PM
 3            THE COURT:  Well, because you guys didn't set the        05:52PM
 4   proper foundation.                                                05:52PM
 5            MS. M. MILLER:  I understand.  I understand, Your        05:52PM
 6   Honor, but you said where is the evidence and did they have       05:52PM
 7   notice.  That is one way in which they had notice.  Another       05:52PM
 8   way they had notice were these bank records --                    05:53PM
 9            THE COURT:  Okay.  But here's the problem, the           05:53PM
10   witness, your witness, said 102 has nothing to do with Jon        05:53PM
11   Walker.                                                           05:53PM
12            MS. M. MILLER:  He did not say that, Your Honor.         05:53PM
13            THE COURT:  I thought he did.  It's not                  05:53PM
14   mentioned.                                                        05:53PM
15            MS. M. MILLER:  The question was, is Jon Walker          05:53PM
16   in that document.  And he said he is not in that document.        05:53PM
17   But when Ms. Samantha Miller asked him, how is Jon Walker         05:53PM
18   related to this document, he said the registered aircraft, the    05:53PM
19   N numbers in this and these shell companies, the Vanuatu          05:53PM
20   companies, are owned 99.9% by Jon Walker.                         05:53PM
21            THE COURT:  Okay.  But here's the thing.  Here's         05:53PM
22   the problem.  These -- those particular -- and you know this,     05:53PM
23   the particular helicopter numbers, the N numbers, that was not    05:53PM
24   brought in during the course of the colloquy with this           05:53PM
25   witness.                                                          05:53PM
```

*Direct - Khamvongsa*

```
 1                 MS. M. MILLER:  Yes.                        05:53PM

 2                 THE COURT:  To set up the foundation.        05:53PM

 3                 MS. M. MILLER:  Yes.                        05:53PM

 4                 THE COURT:  So when I made my decision, I    05:53PM

 5    considered that and Ms. McConwell, you know, appropriately  05:54PM

 6    said, look, this is a waste of time, the prosecutor just is  05:54PM

 7    still trying figure out which evidence.  So that's why, I mean  05:54PM

 8    it's like I mean so sad because you guys just -- for yourself.  05:54PM

 9                 MS. M. MILLER:  No but --                   05:54PM

10                 THE COURT:  For yourself because you just didn't  05:54PM

11    have the --                                               05:54PM

12                 MS. M. MILLER:  No.  But your question was, did  05:54PM

13    they have notice.  And what I'm answering is, Your Honor, they  05:54PM

14    did have notice.                                          05:54PM

15                 THE COURT:  Yeah.  But my point is, you guys are  05:54PM

16    setting up as you're trying figure out your case.  That's the  05:54PM

17    problem.                                                  05:54PM

18                 MS. M. MILLER:  The problem is this, Your Honor,  05:54PM

19    I actually have a terrible cold and I asked Samantha Miller to  05:54PM

20    manage this witness today.  And I'm not making an excuse.  05:54PM

21                 THE COURT:  No, no, no.                      05:54PM

22                 MS. M. MILLER:  I do have a terrible cold.  I  05:54PM

23    feel terrible.  I've been taking DayQuil all day.  I did rapid  05:54PM

24    COVID tests.  I do not have COVID so I'm perfectly fine.  05:54PM

25                 THE COURT:  Okay.  Now you're telling me that you  05:54PM
```

*Direct - Khamvongsa*

```
1    don't have COVID.                                              05:54PM
2            MS. M. MILLER:  No, I don't -- no, no, no, I           05:54PM
3    don't want anybody to be freaked because I have a cold.  I     05:54PM
4    have a cold.  That's all.  But in the eleventh hour, I said    05:54PM
5    could you please handle this.                                  05:54PM
6            So that's one of the problems here.  It's not Ms.      05:54PM
7    Samantha Miller not being prepared.  It's not the government   05:55PM
8    not being -- it's that I'm sick and I should be laying in bed  05:55PM
9    somewhere.                                                     05:55PM
10           THE COURT:  Okay, let me just say this.  Should        05:55PM
11   we take a recess tomorrow.  Honestly, let's think about this.  05:55PM
12           MS. M. MILLER:  That would be extraordinarily          05:55PM
13   helpful, Your Honor, because I feel terrible.                  05:55PM
14           THE COURT:  All right.  So I am sympathetic to         05:55PM
15   that.                                                          05:55PM
16           MS. M. MILLER:  Thank you.                             05:55PM
17           THE COURT:  I am.  If you're sick, you're sick.        05:55PM
18   And honestly, I know what you mean.  I was sick last week and  05:55PM
19   I know exactly what you mean.  So we will recess tomorrow.     05:55PM
20   How is that?                                                   05:55PM
21           MS. M. MILLER:  Thank you, Your Honor.  Thank          05:55PM
22   you.                                                           05:55PM
23           THE COURT:  And let's come back to this.               05:55PM
24           MS. M. MILLER:  Thank you, Your Honor.  Thank          05:55PM
25   you.                                                           05:55PM
```

*Direct - Khamvongsa*

1          THE COURT:  Okay.                                    05:55PM

2          MR. MARTIN:  Have a good evening, Your Honor.        05:55PM

3          THE COURT:  Did I forget anything?  Emily?  Oh.      05:55PM

4          MR. MARTIN:  I said have a good evening.             05:55PM

5          THE COURT:  Yes, I will always -- I always have a    05:55PM

6   good evening.  But Mr. -- wait, wait, wait, oh, Ms. McConwell   05:55PM

7   Mr. McConwell, do we have the -- who was your client?  Kapp,    05:55PM

8   Mr. Kapp's waiver, you know --                              05:55PM

9          MS. MCCONWELL:  The declaration, yeah, that he       05:55PM

10  will consent to it.  He's -- he's sending that back so we'll    05:56PM

11  have that filed.                                            05:56PM

12         THE COURT:  He's consenting to your withdrawal as    05:56PM

13  counsel?                                                    05:56PM

14         MS. MCCONWELL:  Yes.                                 05:56PM

15         THE COURT:  Right.  That's what we do need to get    05:56PM

16  that before the status hearing.                             05:56PM

17         MS. MCCONWELL:  Yes.                                 05:56PM

18         THE COURT:  How is he doing by the way?  Better?     05:56PM

19         MS. MCCONWELL:  He's still in Arizona, but he's      05:56PM

20  out of the hospital so --                                   05:56PM

21         THE COURT:  Counsel, we will recess.  Today is --    05:56PM

22  today is Wednesday?  Okay.  This gives me a chance to do my     05:56PM

23  Thursday stuff, but I hope you feel better.                 05:56PM

24         MS. M. MILLER:  Thank you.                           05:56PM

25         THE COURT:  And I want to say this to anyone of      05:56PM

1  you.  If you're sick, I know you're away from home, if you're  05:56PM
2  ill and you feel like you need to break, just let me know.  05:56PM
3           MS. M. MILLER:  Thank you, Your Honor.  05:56PM
4           THE COURT:  Because I'm going to be sympathetic  05:56PM
5  to that.  Because I know how it feels to be in trial.  05:56PM
6           MR. MCCONWELL:  Your Honor, I'll be speak to  05:56PM
7  Mr. Kapp also.  05:56PM
8           THE COURT:  Please speak to Mr. Kapp.  Get that  05:56PM
9  to me some time tomorrow.  05:56PM
10           MR. MCCONWELL:  He just got out of the hospital.  05:56PM
11  He's been in almost the whole time.  05:56PM
12           THE COURT:  Very well.  Thank you all.  I'll tell  05:56PM
13  the jurors to come back the following day unless you guys tell  05:56PM
14  me otherwise.  05:56PM
15           MS. M. MILLER:  Yes.  Thank you, Your Honor.  05:56PM
16           THE COURT:  Take care.  05:56PM
17           (Proceedings concluded at 5:56 p.m.)  05:57PM
18                    * * *  05:57PM
19                                                 05:57PM
20                                                 05:57PM
21                                                 05:57PM
22
23
24
25

1          August 15, 2022; 8:32 a.m.; Hagatna, Guam          07:49AM

2                              * * *                          07:49AM

3                                                             07:49AM

4          THE COURT:  All right, everyone, welcome back to   08:32AM

5  Guam.  Did you all arrive last night or sometime earlier?  08:32AM

6          MS. M. MILLER:  Earlier, Your Honor.               08:32AM

7          THE COURT:  Earlier?                               08:32AM

8          MS. M. MILLER:  Yes.                               08:32AM

9          THE COURT:  Okay, good to know.  Well, don't       08:32AM

10 worry, I'm okay, I think.  And I took my COVID test.  FYI, I'm  08:32AM

11 fine.  When we have go to federal court conferences, they make  08:32AM

12 us take it every day.                                      08:32AM

13         MS. M. MILLER:  Wow.                               08:32AM

14         THE COURT:  Yeah.  But we're on the honor system,  08:32AM

15 so we're hoping everybody is telling the truth they don't have  08:32AM

16 it.  But -- yeah, but I did take mine and -- and so -- so I'm  08:32AM

17 clear.                                                     08:33AM

18         All right.  So we're going to go ahead and begin.  08:33AM

19 Just an FYI before we start, so there is five Government --  08:33AM

20 four Government motions that are pending, and we're working on  08:33AM

21 those now.  The Government's motion for order permitting    08:33AM

22 testimony and evidence of defendant's alter ego shell       08:33AM

23 companies, Government's motion in limine to admit summary    08:33AM

24 charts pursuant to Federal Rule of Evidence 1006, motion to  08:33AM

25 use expert Jeffrey Klang as a summary witness, and defendant's  08:33AM

*Direct - Khamvongsa*

```
 1    motion in limine concerning testimony of Jeff Guzzetti.  So      08:33AM
 2    those are -- those are still pending and we're just still        08:33AM
 3    working on it, just to let you know for an update.               08:33AM
 4              Okay, where were we last?                              08:33AM
 5              MS. M. MILLER:  We're in the middle of the             08:33AM
 6    testimony of Mr. Khamvongsa.  And as you recall, Your Honor,     08:33AM
 7    Mr. Khamvongsa was supposed to be my witness.  I was sick that   08:33AM
 8    day --                                                           08:33AM
 9              THE COURT:  Yeah.                                      08:33AM
10              MS. M. MILLER:  -- and Ms. Samantha Miller             08:33AM
11    started his direct examination, but I'm ready to proceed with    08:33AM
12    his direct examination.                                          08:33AM
13              THE COURT:  Okay.  Very well.  Yes, Mr. Martin?        08:33AM
14              MR. MARTIN:  Are they asking to change lawyers?        08:34AM
15              THE COURT:  Well, I think -- you want to get on        08:34AM
16    your mic; repeat that question.                                  08:34AM
17              MR. MARTIN:  My question was, Your Honor, are          08:34AM
18    they asking to change lawyers in mid examinations?              08:34AM
19              THE COURT:  Well, probably because maybe she           08:34AM
20    wasn't feeling well, as I recall and --                         08:34AM
21              MS. M. MILLER:  That's right.                          08:34AM
22              THE COURT:  -- I think Samantha Miller went up to      08:34AM
23    assist her.                                                      08:34AM
24              MS. M. MILLER:  Step in.                               08:34AM
25              THE COURT:  Step in, yeah.                             08:34AM
```

*Direct - Khamvongsa*

1          MR. MARTIN:  Because the problem I have, Your

2    Honor, is we didn't find out she was even ill until the end of

3    the day.  Had we known it, we could have recessed for the day

4    and she could have done it.  We're halfway through this.  I

5    object to changing lawyers midstream like this.  I mean, no

6    one had notice Ms. Miller was even feeling bad until that --

7    at least on our side, maybe they did, but that she was even

8    feeling bad until that evening.

9          And then, quite honestly, I wish we had known and

10   then I wouldn't have had to deal with COVID, which I had to

11   deal with, and we could have recessed that day when -- and so

12   I -- I object to changing lawyers midstream.  I don't think

13   it's appropriate.  I think there is -- you know, the procedure

14   should have been followed.  We should have been notified she

15   wasn't feeling well.  She shouldn't have been in the courtroom

16   with us that day, and we could have recessed.  But to change

17   right now, I just want my objection on the record.

18          THE COURT:  Yeah, I'll -- I'll let Ms. Miller

19   speak in a minute, but I guess sometimes -- and I can't tell

20   you this because I personally have never had COVID.  I

21   haven't.  I've been very fortunate.  My entire family has had

22   it.  One of them has been in ICU.  My grandchild is eight

23   months old.  Everybody's had it in my family, but -- and

24   they're all fine.  And even a lot of my staff members have had

25   it here even while pretrial, during trial, after trial since

1  our last time.  So -- but I do take the test.  And I think        08:35AM

2  like many, like even myself, if I start feeling like allergies     08:35AM

3  -- I think it's usually allergies.  I'm probably in denial in      08:36AM

4  thinking that, you know, I'm not -- I don't -- I'm pretty sure      08:36AM

5  I don't have COVID.  I don't even think it's the flu; I think      08:36AM

6  it's allergies.  I mean, I -- maybe that's what happened.  I        08:36AM

7  think that's what Ms. Miller had indicated, she thought it         08:36AM

8  was --                                                             08:36AM

9          MS. M. MILLER:  Yes, Your Honor.  I had gone to           08:36AM

10  the emergency services the night before and they told me with    08:36AM

11  no fever and with the main symptom being my throat that they     08:36AM

12  thought I may have strep, but that was it.  And my rapid test,   08:36AM

13  which I bring with me, was negative, not that I should be        08:36AM

14  talking about my medical issues in open public court.            08:36AM

15          But there's absolutely no legal basis for                08:36AM

16  Mr. Martin's objection, and we want to finish this trial this    08:36AM

17  week, which means if I have prepped this witness, I know the     08:36AM

18  evidence, I know the objections, we need to get going and not    08:36AM

19  waste the jury's time with -- with anything that isn't totally   08:36AM

20  supported by the law.  There is absolutely no law that says      08:36AM

21  that because Ms. Samantha Miller started with this witness       08:36AM

22  because I wasn't feeling well, she must finish with the          08:36AM

23  witness.  There's no prejudice to the defendants.               08:36AM

24          As a matter of fact, Your Honor, there would be a       08:37AM

25  prejudice to this Court by having any further delay as opposed   08:37AM

*Direct - Khamvongsa*

```
 1    to just let's get it done.  The jury is here.  We're ready to      08:37AM
 2    go.  Let's go.                                                     08:37AM
 3              THE COURT:  And also -- well, I don't -- so let          08:37AM
 4    me just tell both of you, I understand both positions, plus we     08:37AM
 5    lost a juror.  You -- you heard that.                              08:37AM
 6              MS. M. MILLER:  I saw that.                              08:37AM
 7              THE COURT:  The Court, just as an FYI, the juror         08:37AM
 8    had to -- well, the juror sent in a note and said, "May I be       08:37AM
 9    excused?  I have a family member who has cancer."                  08:37AM
10              And I -- so I said -- - Well, no, just a minute.         08:37AM
11    I said, "I want to talk to you in person -- or on the phone,"      08:37AM
12    and I did, "and I want to see" -- you know, I know that sounds     08:37AM
13    kind of strict, "but I want to see what stage cancer, how         08:37AM
14    serious was this, in terms of could we keep you on until the      08:37AM
15    end."                                                              08:37AM
16              And she said, "Judge, he just got diagnosed.            08:37AM
17    It's Stage 4.  And on a scale of 9 -- 1 to 10, he's at a 9        08:37AM
18    right now."  And she goes, "I want to stay on."  She said she      08:37AM
19    was very -- loved being on the jury.  She felt all you were       08:37AM
20    professional and so on.  So she was on the phone with me and      08:37AM
21    the jury administrator.  So it was with a heavy heart that she    08:38AM
22    told us she didn't -- you know, she had to leave, and so I        08:38AM
23    excused her.  I don't want -- I don't want to lose any jurors.    08:38AM
24              Yeah, Mr. Martin, I think I'm -- I'm inclined to        08:38AM
25    just allow Ms. Miller to return.  Your point is taken, and I      08:38AM
```

*Direct - Khamvongsa*

1  understand that.                                                      08:38AM

2          MR. MARTIN:  May I make a comment, Your Honor?                08:38AM

3          THE COURT:  Yeah.                                             08:38AM

4          MR. MARTIN:  I've been coming to this Court now               08:38AM

5  for -- well, I've been in Guam over 70 days now, but I've been        08:38AM

6  coming to this Court.  And every morning when I come in, I            08:38AM

7  come in the front door --                                             08:38AM

8          THE COURT:  Yeah, they --                                     08:38AM

9          MR. MARTIN:  -- and there's a sign.  And if I                 08:38AM

10  don't meet the qualifications of those signs, which she              08:38AM

11  didn't, I would have never got in the courtroom that day.  And       08:38AM

12  -- and it's --                                                       08:38AM

13          MS. M. MILLER:  I'm going to object to move to               08:38AM

14  strike any further comments on my medical issues or condition.       08:38AM

15  I don't come in the front door, Your Honor, first of all.            08:38AM

16          Second of all, I did not --                                  08:38AM

17          MR. MARTIN:  May I finish my --                              08:38AM

18          MS. M. MILLER:  -- not meet --                               08:38AM

19          MR. MARTIN:  May I finish my record, please?                 08:38AM

20          THE COURT:  Wait, wait, wait --                              08:38AM

21          MS. M. MILLER:  No, because he wants to talk                 08:38AM

22  about my potential physical condition.  It's inappropriate.          08:38AM

23  And, again, we are now wasting time.                                 08:38AM

24          THE COURT:  Okay, Ms. Miller, all right.  Let                08:38AM

25  him --                                                               08:38AM

|   |   |
|---|---|
| 1 | MS. M. MILLER:  We want to get this court done. | 08:38AM |
| 2 | THE COURT:  Let him finish -- | 08:38AM |
| 3 | MS. M. MILLER:  Let's get going. | 08:38AM |
| 4 | THE COURT:  Okay.  Without -- without -- okay, I | 08:38AM |
| 5 | understand.  Okay, a medical condition is brought -- it was -- | 08:38AM |
| 6 | has already been brought to -- to Court earlier.  So the Court | 08:39AM |
| 7 | -- the point is well taken, and I think Ms. Miller knows -- | 08:39AM |
| 8 | she knows the rules that the Court has specific requirements | 08:39AM |
| 9 | that, you know, you can't come into Court. | 08:39AM |
| 10 | MS. M. MILLER:  Right. | 08:39AM |
| 11 | THE COURT:  I mean, it's -- it's in my -- it's in | 08:39AM |
| 12 | my general orders.  So she knows it, and I -- and I believed | 08:39AM |
| 13 | her when she said she did take the -- made the effort to try | 08:39AM |
| 14 | to find out, hey, do I have an issue, should I stay away, | 08:39AM |
| 15 | and -- and basically, her doctors told her, look, you might | 08:39AM |
| 16 | have strep throat or -- or you might just have something else. | 08:39AM |
| 17 | Then there was no indication that she has COVID.  And, you | 08:39AM |
| 18 | know, this COVID, and its variants and are so -- everything is | 08:39AM |
| 19 | so fluid about it.  I mean, it just changes every week, I | 08:39AM |
| 20 | think.  But I'm inclined to deny your request and allow | 08:39AM |
| 21 | Ms. Miller to return to be back the -- the original | 08:39AM |
| 22 | interrogator of the witness. | 08:39AM |
| 23 | MR. MARTIN:  Well, she's -- my objection is she's | 08:39AM |
| 24 | never interrogated him yet, Your Honor, and now we're changing | 08:39AM |
| 25 | midstream, and so I -- | 08:39AM |

| | |
|---|---|
| 1 | THE COURT:  All right. | 08:39AM |
| 2 | MR. MARTIN:  -- I want that on the record. | 08:40AM |
| 3 | THE COURT:  Okay, well, I guess to let her be -- | 08:40AM |
| 4 | to allow her to -- to interrogate because that was the | 08:40AM |
| 5 | intention in the first place, that was her witness in the | 08:40AM |
| 6 | first place according to them, and I think that was stated -- | 08:40AM |
| 7 | MS. M. MILLER:  That's correct, Your Honor. | 08:40AM |
| 8 | THE COURT:  -- that was stated at the time. | 08:40AM |
| 9 | Yes, Counsel, Ms. McConwell? | 08:40AM |
| 10 | MR. MCCONWELL:  Hansen Helicopters -- Hansen | 08:40AM |
| 11 | Helicopters joins in the objection and -- and that was not | 08:40AM |
| 12 | stated prior to the witness testifying at the end of the day | 08:40AM |
| 13 | -- | 08:40AM |
| 14 | THE COURT:  That's true.  You mean in terms of | 08:40AM |
| 15 | that she wasn't feeling well? | 08:40AM |
| 16 | MS. MCCONWELL:  At the term -- yeah, in terms | 08:40AM |
| 17 | that she wasn't feeling well, we were not notified that this | 08:40AM |
| 18 | was her witness that Ms. Miller -- Ms. Samantha Miller was | 08:40AM |
| 19 | going to take the witness for that day.  And even when she | 08:40AM |
| 20 | said that she didn't feel well at end of the day, she -- well, | 08:40AM |
| 21 | it may have been the next day when we heard that it was her | 08:40AM |
| 22 | witness that she had Ms. Miller take -- | 08:40AM |
| 23 | MS. M. MILLER:  No, it actually was that -- | 08:40AM |
| 24 | MS. MCCONWELL:  -- because she wasn't feeling | 08:40AM |
| 25 | well. | 08:40AM |

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | THE COURT:  The Court -- okay -- | 08:40AM |
| 2 | MS. M. MILLER:  -- day, Your Honor, and I think | 08:40AM |
| 3 | we've beat on this horse -- horse to death. | 08:40AM |
| 4 | THE COURT:  Okay. | 08:40AM |
| 5 | MS. M. MILLER:  Can we move on now? | 08:40AM |
| 6 | THE COURT:  The Court -- the Court will recall -- | 08:40AM |
| 7 | make -- okay, Defendant will rely on its own recollection, | 08:40AM |
| 8 | but -- but the -- your -- the Court accepts your joinder.  The | 08:40AM |
| 9 | Court will deny the motion to disallow Marie Miller to | 08:41AM |
| 10 | continue with the interrogation -- or start the interrogation | 08:41AM |
| 11 | of the witness. | 08:41AM |
| 12 | Anything further? | 08:41AM |
| 13 | MS. MCCONWELL:  I have two things:  I hope we're | 08:41AM |
| 14 | not going to re -- re-plow the ground that was plowed by | 08:41AM |
| 15 | Ms. Samantha Miller in our last day in Court? | 08:41AM |
| 16 | MS. M. MILLER:  No, no. | 08:41AM |
| 17 | THE COURT:  Okay. | 08:41AM |
| 18 | MS. MCCONWELL:  And then my -- my second thing -- | 08:41AM |
| 19 | THE COURT:  I'm sure there would be objection | 08:41AM |
| 20 | asked and answered. | 08:41AM |
| 21 | MS. M. MILLER:  Right. | 08:41AM |
| 22 | THE COURT:  Yes. | 08:41AM |
| 23 | MS. MCCONWELL:  My next question, Your Honor, so | 08:41AM |
| 24 | our Juror No. 8 was excused who was formally Alternate No. | 08:41AM |
| 25 | 1 -- | 08:41AM |

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Yeah. | 08:41AM |
| 2 | MS. MCCONWELL:  -- and I have on my sheet that | 08:41AM |
| 3 | juror -- that juror that was originally Alternate No. 3 is who | 08:41AM |
| 4 | is going to replace Juror 8, and I just wanted to make sure | 08:41AM |
| 5 | that that was -- is consistent. | 08:41AM |
| 6 | THE COURT:  Okay, Carmen, you want me -- let | 08:41AM |
| 7 | me have Carmen check her notes and I'll pull up mine too. | 08:41AM |
| 8 | MS. MCCONWELL:  Are we -- I wasn't sure if we're | 08:41AM |
| 9 | supposed to say the name, so that's why I didn't. | 08:41AM |
| 10 | THE COURT:  Just need -- no, the number is fine. | 08:42AM |
| 11 | Okay, well, just let me get -- | 08:42AM |
| 12 | MS. MCCONWELL:  Well, the last number I have | 08:42AM |
| 13 | was -- was Alternate 2, but this person may have been | 08:42AM |
| 14 | Alternate 1.  Anyway, I just want to make sure we have the | 08:42AM |
| 15 | same -- | 08:42AM |
| 16 | THE COURT:  Yeah, that's -- that's a good point. | 08:42AM |
| 17 | Let's -- let's try to get that. | 08:42AM |
| 18 | (Discussion with clerk.) | 08:42AM |
| 19 | THE COURT:  Sure, yeah, go ahead. | 08:42AM |
| 20 | (Carmen spoke to Defense Counsel.) | 08:42AM |
| 21 | THE COURT:  Can we get Lani to come in too? | 08:42AM |
| 22 | (Pause.) | 08:43AM |
| 23 | THE COURT:  Okay.  We'll get you a copy of the | 08:43AM |
| 24 | new chart.  Carmen -- | 08:43AM |
| 25 | MS. MCCONWELL:  Carmen, were we the same? | 08:43AM |

|   |   |   |
|---|---|---|
| 1 | THE CLERK:  Yes, ma'am. | 08:43AM |
| 2 | THE COURT:  So Alternate No. 2 now becomes Juror | 08:43AM |
| 3 | No. 8, and I'll give you the... | 08:43AM |
| 4 | (Pause.) | 08:43AM |
| 5 | THE COURT:  Okay.  If you all have a copy now | 08:43AM |
| 6 | that we're on the same page. | 08:44AM |
| 7 | Good morning. | 08:44AM |
| 8 | THE WITNESS:  Good morning, Your Honor. | 08:44AM |
| 9 | THE COURT:  So before we begin, while Carmen is | 08:44AM |
| 10 | passing all that out, how many more witnesses do you have | 08:44AM |
| 11 | left, Ms. Marie Miller? | 08:44AM |
| 12 | MS. M. MILLER:  After Special Agent Khamvongsa, | 08:44AM |
| 13 | just two. | 08:44AM |
| 14 | THE COURT:  Oh, okay.  Good.  And then it's | 08:44AM |
| 15 | Mr. Klang? | 08:44AM |
| 16 | MS. M. MILLER:  Mr. Klang and Mr. Guzzetti. | 08:44AM |
| 17 | THE COURT:  Guzzetti.  Just those two? | 08:44AM |
| 18 | MS. M. MILLER:  Yes. | 08:44AM |
| 19 | THE COURT:  All right.  And, defendants, you | 08:44AM |
| 20 | probably -- are you -- are you now -- are you prepared to tell | 08:44AM |
| 21 | me if you have any witnesses you're going to call or you want | 08:44AM |
| 22 | to wait until... | 08:44AM |
| 23 | MR. MARTIN:  Your Honor, we're to kind of waiting | 08:44AM |
| 24 | to see how everything falls out. | 08:44AM |
| 25 | THE COURT:  Okay.  Very well. | 08:44AM |

*Direct - Khamvongsa*

```
 1                    (Conferred with the Clerk.)                    08:44AM

 2              THE COURT:  So we're good to go.  All right.          08:44AM

 3    Shall we call in the jurors everyone?                          08:45AM

 4              MS. M. MILLER:  Yes, Your Honor.                      08:45AM

 5              THE COURT:  Okay.  We'll call in the jurors.          08:45AM

 6    Everyone feeling okay?  Do I need to get you guys free COVID    08:45AM

 7    tests?  You guys have your test kits?                          08:45AM

 8              MS. M. MILLER:  Yup.                                  08:45AM

 9              THE COURT:  We have test kits too.  Okay.  How        08:45AM

10    long do you think you'll be with your --                       08:45AM

11              MS. M. MILLER:  We'll be done hopefully -- well,      08:45AM

12    we'll be done today but I'm hoping we'll be done before end of  08:45AM

13    the day so that we could actually start his cross today.       08:45AM

14              THE COURT:  Oh, okay, that's a long -- okay, so       08:45AM

15    you -- you're looking at having him all day with --            08:45AM

16              MS. M. MILLER:  Possibly.                             08:45AM

17              THE COURT:  Okay.  Yes?                               08:45AM

18              MR. MARTIN:  It was 45 minutes --                     08:45AM

19              MS. M. MILLER:  On Thursday.                          08:45AM

20              MR. MARTIN:  -- last -- last time we were in         08:45AM

21    here, Judge, and now it's all day.                             08:45AM

22              THE COURT:  Okay.  I'll --                            08:45AM

23              MR. MARTIN:  That's one of the reasons I'm            08:45AM

24    objecting to changing lawyers midstream.                       08:45AM

25              THE COURT:  Well, how do you know it wouldn't --      08:45AM
```

*Direct - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | MR. MARTIN:  I believe it substantially -- | 08:45AM |
| 2 | THE COURT:  -- it might -- it could have been the | 08:45AM |
| 3 | same.  She -- Ms. Samantha might -- | 08:45AM |
| 4 | MS. M. MILLER:  It wouldn't have been any shorter | 08:45AM |
| 5 | with Ms. Samantha Miller. | 08:45AM |
| 6 | THE COURT:  She might have said the same, you | 08:45AM |
| 7 | know. | 08:46AM |
| 8 | MR. MARTIN:  It was announced that it would be | 08:46AM |
| 9 | about a 45-minute witness. | 08:46AM |
| 10 | THE COURT:  Okay.  Well, maybe it will turn into | 08:46AM |
| 11 | 45.  We'll see.  We'll see what happens. | 08:46AM |
| 12 | Okay.  Well, I guess I haven't really missed you | 08:46AM |
| 13 | all. | 08:46AM |
| 14 | (Laughing.) | 08:46AM |
| 15 | MS. M. MILLER:  I missed you for five minutes. | 08:46AM |
| 16 | Now we're back, no more. | 08:46AM |
| 17 | THE COURT:  Okay, no, we're getting there.  Oh, | 08:46AM |
| 18 | it looks like you have three to witnesses and -- | 08:46AM |
| 19 | MS. M. MILLER:  Yes. | 08:46AM |
| 20 | THE COURT:  -- then, yeah.  You have the jury | 08:46AM |
| 21 | instructions.  I've reviewed your jury instructions -- | 08:46AM |
| 22 | MS. M. MILLER:  Yes. | 08:46AM |
| 23 | THE COURT:  -- that you sent me.  Thank you | 08:46AM |
| 24 | everyone.  And then we'll go through all that, and, yup, we're | 08:46AM |
| 25 | good.  And I don't -- yeah, we're good on -- I'm -- I'm here. | 08:46AM |

*Direct - Khamvongsa*

```
 1    I don't have any place to go.                              08:46AM

 2              MS. M. MILLER:  Wonderful.                       08:46AM

 3              THE COURT:  Yeah.                                 08:46AM

 4              MS. MCCONWELL:  I was curious while we're         08:46AM

 5    waiting, do we have an estimate on the length of Mr. Guzzetti   08:46AM

 6    or Mr. Klang?                                               08:46AM

 7              MS. M. MILLER:  On how long they'll be?           08:46AM

 8              THE COURT:  Yeah, all right.                      08:46AM

 9              MS. M. MILLER:  So Mr. Guzzetti, Your Honor, I    08:46AM

10    anticipate being about four hours, and Mr. Klang I anticipate   08:46AM

11    being about the same.                                       08:46AM

12              THE COURT:  Okay.  So it looks like, if anything,  08:46AM

13    I mean, if everything went well, we probably could get through  08:47AM

14    them in the next three days.                                08:47AM

15              MS. M. MILLER:  That's -- that's my hope.  And,   08:47AM

16    Your Honor, if we stick to legal arguments only either in the   08:47AM

17    mornings --                                                 08:47AM

18              THE COURT:  Oh, we can --                         08:47AM

19              MS. M. MILLER:  -- or in the evenings --          08:47AM

20              THE COURT:  Yeah.                                 08:47AM

21              MS. M. MILLER:  -- we will definitely do that.    08:47AM

22              THE COURT:  We are sticking with that.  You see   08:47AM

23    my calendar --                                              08:47AM

24              MS. M. MILLER:  Excellent.                        08:47AM

25              THE COURT:  -- it's set up that way.  We're not   08:47AM
```

*Direct - Khamvongsa*

```
 1    having anything interrupt my calendar.                    08:47AM

 2              MS. M. MILLER:  Excellent.                       08:47AM

 3              THE COURT:  Yeah, all my sentencings, whatever   08:47AM

 4    needs to be bumped.  Well, I haven't checked it lately, but 08:47AM

 5    I'm pretty sure it is that way.                            08:47AM

 6              MS. M. MILLER:  Uh-huh.                          08:47AM

 7              (Jury in at 8:47 a.m.)                           08:47AM

 8              THE COURT:  Welcome back, ladies and gentlemen.  08:47AM

 9    Nice to see all of you.  I appreciate your dedication to   08:48AM

10    staying healthy and being here today.  Unfortunately, we did 08:48AM

11    lose one juror.  She had a family issue, so and -- and so we 08:48AM

12    had -- I had to let her go.  And she didn't want to go but she 08:48AM

13    was very -- she had go, but she was very -- wanting to stay, 08:48AM

14    very dedicated to continuing to stay.                      08:48AM

15              But so we -- I have 14 of you, so every one of   08:48AM

16    you are very important.  We want to finish this.  The      08:48AM

17    prosecution intends to finish their case in chief in this  08:48AM

18    week.  They have three witnesses remaining, including the  08:48AM

19    witness currently on the stand who, you might recall, was  08:48AM

20    still on the stand the week before we had our last recess.  08:48AM

21    And then -- and then they have two witnesses after him, and 08:48AM

22    then we will proceed -- I'll tell you how we're going to    08:48AM

23    proceed after that, and then -- and then, you know, there'll 08:48AM

24    be potential other evidence we'll see and closing arguments 08:48AM

25    and then deliberations.  So that's that -- so there is an end 08:48AM
```

| | |
|---|---|
| 1 | in sight, and so thank you for your patience. | 08:48AM |
| 2 | At this time, Ms. Miller, Marie Miller. | 08:49AM |
| 3 | MS. M. MILLER: Yes, Your Honor, thank you. | 08:49AM |
| 4 | THE COURT: Are you willing to restate the name | 08:49AM |
| 5 | of the witness for the record or you can have him? | 08:49AM |
| 6 | THE WITNESS: It's Viranousith Khamvongsa. I'm a | 08:49AM |
| 7 | Special Agent with IRS Criminal Investigation. | 08:49AM |
| 8 | MS. M. MILLER: Thank you, sir. | 08:49AM |
| 9 | May I proceed, Your Honor? | 08:49AM |
| 10 | THE COURT: You may. | 08:49AM |
| 11 | MS. M. MILLER: Good morning, members of the | 08:49AM |
| 12 | jury. | 08:49AM |
| 13 | THE COURT: Okay. What is that noise? | 08:49AM |
| 14 | MS. M. MILLER: I don't know. I don't think it's | 08:49AM |
| 15 | me but maybe. | 08:49AM |
| 16 | THE COURT: Okay, is it -- Carm -- Carm -- | 08:49AM |
| 17 | MS. M. MILLER: Maybe somebody's mic is live and | 08:49AM |
| 18 | there's rep -- I don't know. | 08:49AM |
| 19 | (Conferred with the Clerk.) | 08:49AM |
| 20 | THE COURT: Oh, you're breathing. | 08:49AM |
| 21 | MS. M. MILLER: I'm breathing. Okay, I'm going | 08:49AM |
| 22 | to stop breathing. This may be a long night -- will that | 08:49AM |
| 23 | work? | 08:49AM |
| 24 | THE COURT: Well, I don't know CPR. | 08:49AM |
| 25 | MS. M. MILLER: Hold my breath. | 08:49AM |

*Direct - Khamvongsa*

08:49AM
08:49AM
08:49AM
08:49AM
08:49AM
08:49AM
08:49AM
08:49AM
08:49AM
08:49AM
08:49AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM
08:50AM

1           THE COURT:  Anybody?  The fireman probably knows

2    CPR.

3           MS. M. MILLER:  Yeah, we'll do that.  You'll --

4    you'll handle it?  Thank you, thank you.  Thank you for not

5    letting me die.

6           THE COURT:  Yeah, I don't know CPR; I'm not a

7    good judge.  Okay, go ahead.

8           MS. M. MILLER:  Is that better?  Is that better,

9    Your Honor?  All right, wonderful.

10   BY MS. M. MILLER: (CONTINUING)

11      Q.   Special Agent Khamvongsa, welcome back.

12      A.   Thank you.

13      Q.   Could you, please, tell the members of the jury, how

14   long have you been working on this case?

15      A.   I've been involved in this case since 2017.

16      Q.   And could you also tell the members of the jury, who

17   is the primary owner of every single company that was used to

18   lease the helicopters to the tuna boat companies?

19           MR. MARTIN:  Your Honor, I object; asked and

20   answered.  This is -- this is replowing what was already done.

21           MS. M. MILLER:  And, Your Honor, I can assure the

22   Court it has not been asked and answered.  I read the entire

23   transcript of Special Agent Khamvongsa's testimony.

24           MR. MARTIN:  I have too, Your Honor, and I

25   object; asked and answered.

MS. M. MILLER:  Then point -- point to it.                    08:50AM

THE COURT:  Counsels, all right.  Address the                 08:50AM

Court, not each other.                                        08:50AM

All right.  The jurors will -- it's going to be               08:50AM

your memory that -- that counts.  So the Court will allow this 08:50AM

preliminary ones, and whether -- this will entail me to go    08:50AM

back and look at the transcript, but I'm going to let the     08:50AM

jurors' memory prevail, but I'll allow this one question.  So 08:51AM

go ahead, you may proceed.                                    08:51AM

MS. M. MILLER:  Yes, Your Honor.                              08:51AM

THE COURT:  Go ahead, sir.                                    08:51AM

BY MS. M. MILLER:  (CONTINUING)                               08:51AM

Q.    Sir, could you, please, tell the members of the jury,   08:51AM

who owns every single company that was used to lease          08:51AM

helicopters to the tuna boat companies?                       08:51AM

A.    Defendant Jon Walker.                                   08:51AM

Q.    And could you tell the members of the jury how you      08:51AM

know that?                                                    08:51AM

A.    I know that based upon the corporate records along      08:51AM

with Hansen Helicopters, which was obtained through the search 08:51AM

warrant as well as provided to the Government -- Government   08:51AM

through a grand jury subpoena.  I also -- it's also based upon 08:51AM

my review of the bank records, statements made by the         08:51AM

co-defendants, including Mr. Reed, Mr. Crowe and Mr. Walker   08:51AM

himself.  A good example is on the bank records --            08:51AM

*Direct - Khamvongsa*

```
 1              MR. MARTIN:  Your Honor, I object to the      08:51AM

 2   narrative.                                               08:51AM

 3   BY MS. M. MILLER:  (CONTINUING)                          08:51AM

 4       Q.   Could you provide the jury with an example?     08:51AM

 5              THE COURT:  Okay.                              08:51AM

 6              MR. MARTIN:  May I have a ruling on my objection?  08:51AM

 7              THE COURT:  Okay, the objection will be        08:52AM

 8   sustained, yeah.                                         08:52AM

 9   BY MS. M. MILLER:  (CONTINUING)                          08:52AM

10       Q.   Can you provide the jury with an example, sir?  08:52AM

11              MR. MARTIN:  Your Honor, I object that's going  08:52AM

12   right -- he's already done that.                         08:52AM

13              MS. M. MILLER:  Actually --                    08:52AM

14              THE COURT:  Overruled.                          08:52AM

15              MS. M. MILLER:  -- he didn't --                 08:52AM

16              THE COURT:  Overruled.                          08:52AM

17              MS. M. MILLER:  -- finish.                      08:52AM

18              THE COURT:  Overruled.  Go ahead.  Go ahead.   08:52AM

19              MR. MARTIN:  Your Honor, may -- may I have a    08:52AM

20   standing objection.  When I object, I would like the Court to  08:52AM

21   rule and Ms. Miller to wait for you to rule before --    08:52AM

22              THE COURT:  Okay, very well.                    08:52AM

23              MR. MARTIN:  -- she starts talking.            08:52AM

24              THE COURT:  Point --                            08:52AM

25              MR. MARTIN:  We've -- we've started a process and  08:52AM
```

*Direct - Khamvongsa*

1    it's been going on throughout the trial.  It's not                08:52AM

2    appropriate.  It's not proper.                                    08:52AM

3              MS. M. MILLER:  I'm going to move to strike Mr.         08:52AM

4    Martin's comments --                                              08:52AM

5              MR. MARTIN:  And I ask the Court to --                  08:52AM

6              MS. M. MILLER:  -- because that --                      08:52AM

7              MR. MARTIN:  -- to allow him --                         08:52AM

8              MS. M. MILLER:  -- that is not correct.                 08:52AM

9              THE COURT:  Okay, listen, I've been a judge            08:52AM

10   30 years.  I think I've only used my gavel three times.  I        08:52AM

11   don't think I need to do it another time.  So let's just say      08:52AM

12   point well taken.  Whoever makes an objection, but in this        08:52AM

13   particular case if Mr. Martin makes an objection, Counsel wait    08:52AM

14   until he's done.                                                  08:52AM

15             MS. M. MILLER:  Yes, Your Honor.                        08:52AM

16             THE COURT:  And then I will -- then if I -- if I        08:52AM

17   think I need you to respond, I'll do it; otherwise, I can just    08:52AM

18   make my ruling without your response.  Both ways, okay,           08:52AM

19   Counsels?                                                         08:52AM

20             MS. M. MILLER:  Yes, Your Honor.                        08:52AM

21             THE COURT:  Right, so objection over --                08:52AM

22   sustained.  Go ahead.                                             08:52AM

23             MS. M. MILLER:  No, you overruled it.                   08:52AM

24             THE COURT:  I'm sorry, no, objection -- his            08:52AM

25   request -- I'm sorry, his request is granted, I should say.       08:53AM

| | | |
|---|---|---|
| 1 | MS. M. MILLER:  Right. | 08:53AM |
| 2 | THE COURT:  The request is granted. | 08:53AM |
| 3 | MS. M. MILLER:  But then the -- | 08:53AM |
| 4 | THE COURT:  You know, the objection is overruled. | 08:53AM |
| 5 | MS. M. MILLER:  -- I could ask the example? | 08:53AM |
| 6 | THE COURT:  Go ahead, yeah.  Yeah. | 08:53AM |
| 7 | BY MS. M. MILLER:  (CONTINUING) | 08:53AM |
| 8 | Q.   Could you provide the jury with an example? | 08:53AM |
| 9 | A.   A good example is the exhibit that we have, as it | 08:53AM |
| 10 | relates to Exhibit 829, as you look at the 30 Vanuatu | 08:53AM |
| 11 | companies, you can see that it flows through Bean Bag, then it | 08:53AM |
| 12 | flows through Caledonian Insurance Company, and eventually it | 08:53AM |
| 13 | all flows through to Jon Walker. | 08:53AM |
| 14 | In addition, we have tax records which reflect that | 08:53AM |
| 15 | those companies are wholly owned by Hansen Helicopters, and | 08:53AM |
| 16 | Hansen Helicopters is 99.9% owned by -- | 08:53AM |
| 17 | MS. MCCONWELL:  Your Honor -- | 08:53AM |
| 18 | THE WITNESS:  -- Mr. Jon Walker. | 08:53AM |
| 19 | MS. MCCONWELL:  -- I object to any testimony | 08:53AM |
| 20 | about Hansen Helicopters.  Hansen Helicopters is not part of | 08:53AM |
| 21 | any of the counts that Mr. Khamvongsa is testifying to. | 08:53AM |
| 22 | THE COURT:  Okay, the relevance? | 08:53AM |
| 23 | MS. M. MILLER:  May I respond, Your Honor? | 08:53AM |
| 24 | THE COURT:  Yes. | 08:53AM |
| 25 | MS. M. MILLER:  Yes.  As we saw from the | 08:53AM |

*Direct - Khamvongsa*

testimony and from the documents that were all admitted into    08:53AM

evidence, Jon Walker is the sole owner of Hansen Helicopters.    08:53AM

So some of the evidence that the control of these leases, the    08:54AM

control of the helicopters was actually directed by Jon Walker    08:54AM

but through Hansen Helicopters.    08:54AM

           THE COURT:  Is this -- oh, okay, yes?    08:54AM

           MR. MARTIN:  Your Honor, may I --    08:54AM

           THE COURT:  Mr. Martin, yes?    08:54AM

           MR. MARTIN:  My objection is Ms. Miller is    08:54AM

testifying.    08:54AM

           MS. M. MILLER:  I'm not testifying.

           MR. MARTIN:  She responded --

           THE COURT:  Okay, wait --

           MR. MARTIN:  May I --

           THE COURT:  -- wait, wait --

           MR. MARTIN:  May I make my --

           THE COURT:  Don't -- don't respond -- wait, wait,    08:54AM

Ms. Miller, don't respond, please.  Just -- nobody respond    08:54AM

unless I ask you guys to respond.    08:54AM

           MS. M. MILLER:  Yes, Your Honor.    08:54AM

           MR. MARTIN:  Ms. Miller is testifying in response    08:54AM

to a legal objection.  That's inappropriate.  That's for the    08:54AM

jury to decide who owns what, who doesn't own what.  I object    08:54AM

to these testifying responses she's making and ask the Court,    08:54AM

if we need to go into that, excuse the jury and do it    08:54AM

```
 1    appropriately.                                              08:54AM

 2             THE COURT:  All right.  And, Ms. McConwell?        08:54AM

 3             MS. MCCONWELL:  And I object to any reference or   08:54AM

 4    inference of Hansen Helicopters or trying to bootstrap them 08:54AM

 5    into counts that they have not -- Hansen Helicopters has not 08:54AM

 6    been indicted on, which are Counts 99 through 110.          08:54AM

 7             THE COURT:  All right.  And let me just have one   08:55AM

 8    more -- okay, go ahead, Ms. --                              08:55AM

 9             MS. M. MILLER:  May I respond --                   08:55AM

10             THE COURT:  Yes --                                 08:55AM

11             MS. M. MILLER:  -- Your Honor?                     08:55AM

12             THE COURT:  -- Marie Miller, go ahead.             08:55AM

13             MS. M. MILLER:  First of all, it's impossible to   08:55AM

14    respond to a relevance objection without reminding the Court 08:55AM

15    of the evidence that has been --                            08:55AM

16             THE COURT:  Okay, let me just --                   08:55AM

17             MS. M. MILLER:  -- produced.                       08:55AM

18             THE COURT:  -- let me just say -- let me just      08:55AM

19    look at 99.  Let me look at the indictment.                 08:55AM

20             MS. M. MILLER:  Well, no, Your Honor, Hansen       08:55AM

21    Helicopters is not named as a named defendant in Count 99.  08:55AM

22             THE COURT:  All right, so okay --                  08:55AM

23             MS. M. MILLER:  However --                         08:55AM

24             THE COURT:  -- so we all agree on that.  So --     08:55AM

25             MS. M. MILLER:  Yes.                               08:55AM
```

*Direct - Khamvongsa*

```
 1                    THE COURT:  -- it has to do with another        08:55AM

 2      theory --                                                     08:55AM

 3                    MS. M. MILLER:  Yes.                             08:55AM

 4                    THE COURT:  -- not that theory?                  08:55AM

 5                    MS. M. MILLER:  Correct.                         08:55AM

 6                    THE COURT:  Which is what?                       08:55AM

 7                    MS. M. MILLER:  Which is that Jon Walker, as the 08:55AM

 8      99.99 --                                                       08:55AM

 9                    THE COURT:  All right.  So we heard --           08:55AM

10                    MS. M. MILLER:  -- percent --                    08:55AM

11                    THE COURT:  Okay, hold on.  The Court already has 08:55AM

12      that evidence before it, so you don't need go any further with 08:55AM

13      that.                                                          08:55AM

14                    MS. M. MILLER:  Correct.  So what Mr. Khamvongsa 08:55AM

15      was talking about -- was answering the question about --       08:55AM

16                    THE COURT:  Got it.                             08:55AM

17                    MS. M. MILLER:  -- is how he knows through his  08:55AM

18      investigation --                                               08:55AM

19                    THE COURT:  I got it.  I understand.            08:55AM

20                    MS. M. MILLER:  Yes.                             08:55AM

21                    THE COURT:  I already -- I been here as long as 08:55AM

22      you guys have.                                                 08:55AM

23                    MS. M. MILLER:  Yes.                             08:55AM

24                    THE COURT:  Okay, go ahead.  Anything further,  08:55AM

25      Counsels?                                                      08:55AM
```

*Direct - Khamvongsa*

```
1          MS. MCCONWELL:  Well, I would also say asked and      08:55AM
2    answered.  Some of this ground we went through on Thursday,  08:55AM
3    June 8th, and so I think we need to move on to subject matters  08:55AM
4    that have not been --                                        08:56AM
5          THE COURT:  Okay.                                      08:56AM
6          MS. MCCONWELL:  -- inquired of.                        08:56AM
7          THE COURT:  All right.  Anything -- okay.  Any --      08:56AM
8    on the asked and answered?                                   08:56AM
9          MS. M. MILLER:  It has not been, Your Honor.  As       08:56AM
10   a matter of fact, as I've stated earlier, I reviewed the     08:56AM
11   entire transcript of the testimony of Agent Khamvongsa and I 08:56AM
12   ensured myself for the Court that there is not one question  08:56AM
13   that has been asked and answered.                            08:56AM
14         THE COURT:  All right, very well.  And I've heard      08:56AM
15   the opposite sometimes from the defense.                     08:56AM
16         All right.  On the -- on the objection of asked        08:56AM
17   and answered, again, the Court will -- the Court will overrule 08:56AM
18   that objection and I will allow the jurors to recall their own 08:56AM
19   memory of the prior testimony, which did occur sometime ago. 08:56AM
20         Secondly, on the particular original objection,        08:56AM
21   the Court will overrule that objection, and you may proceed. 08:56AM
22         MS. M. MILLER:  Thank you, Your Honor.                 08:56AM
23         MS. MCCONWELL:  Your Honor, I'd ask for a              08:56AM
24   limiting -- the limiting instruction that you have given about 08:56AM
25   that Hansen Helicopters is not charged in this Counts 99     08:56AM
```

*Direct - Khamvongsa*

1    through 110 --                                                      08:56AM

2              MS. M. MILLER:  And, Your Honor --                        08:56AM

3              MS. MCCONWELL:  -- which are the only counts that         08:56AM

4    Mr. Khamvongsa's testimony is relevant to, and we -- because       08:57AM

5    it's been some time since the jury's heard that limiting           08:57AM

6    instruction.                                                       08:57AM

7              THE COURT:  All right.                                    08:57AM

8              MS. M. MILLER:  Your Honor --                             08:57AM

9              THE COURT:  Yes?                                          08:57AM

10             MS. M. MILLER:  -- that limiting instruction was          08:57AM

11   given repeatedly.  The jury just heard the objection.              08:57AM

12             THE COURT:  All right, so --                              08:57AM

13             MS. M. MILLER:  The jury has heard the Government         08:57AM

14   say that Hansen --                                                 08:57AM

15             THE COURT:  All right, the question is --                 08:57AM

16             MS. M. MILLER:  -- is not named.                          08:57AM

17             THE COURT:  -- you -- you -- just way minute.  So         08:57AM

18   you're not saying that the instruction is incorrect.  You're       08:57AM

19   just saying that just think it's not -- I've already stated --     08:57AM

20             MS. M. MILLER:  It is at this point so cumulative         08:57AM

21   --                                                                 08:57AM

22             THE COURT:  Let me have a --                              08:57AM

23             MS. M. MILLER:  -- it's just --                           08:57AM

24             THE COURT:  Let me have a copy of that                    08:57AM

25   instruction --                                                     08:57AM

```
 1              MS. M. MILLER:  -- wasting time.                  08:57AM

 2              THE COURT:  -- copy of the instruction.          08:57AM

 3              MR. MARTIN:  Judge, it's been 45 days since the  08:57AM

 4    jury has heard the instruction.                            08:57AM

 5              THE COURT:  Has it been 45 days?                 08:57AM

 6              MR. MARTIN:  And --                              08:57AM

 7              THE COURT:  My gosh.                             08:57AM

 8              MR. MARTIN:  -- and --                           08:57AM

 9              THE COURT:  Okay, we got it.  I got it.  You guys 08:57AM

10    don't have to explain it.  You may proceed.               08:57AM

11              MS. M. MILLER:  They don't remember the          08:57AM

12    instruction but they remembered the 200 pages of testimony -- 08:57AM

13              THE COURT:  The Court will overrule --           08:57AM

14              MS. M. MILLER:  -- over that period of time --   08:57AM

15              THE COURT:  The Court will overrule --           08:57AM

16              MS. M. MILLER:  -- right?                        08:57AM

17              MR. MARTIN:  These sidebar comments are          08:57AM

18    continuing.                                                08:57AM

19              THE COURT:  All right.                           08:57AM

20              MS. M. MILLER:  And your objections are --       08:57AM

21              THE COURT:  No --                                08:57AM

22              MS. M. MILLER:  -- continuing --                 08:57AM

23              THE COURT:  Counsel --                           08:57AM

24              MS. M. MILLER:  -- so I need to respond to the   08:57AM

25    objections.                                                08:57AM
```

*Direct - Khamvongsa*

```
 1              THE COURT:  Listen, I don't want to have to reach      08:57AM
 2    over.  It's like five more inches from me.                      08:57AM
 3              All right.  The Court will -- the Court will --        08:57AM
 4    okay, first of all, on the instruction, I'll give the           08:57AM
 5    instruction this time.  So let me pull it up to make sure I     08:58AM
 6    say it correctly.  I'm pretty sure I have it in my pile here,   08:58AM
 7    but I'm going to get it faster with Emily giving it to me.  I   08:58AM
 8    think.                                                          08:58AM
 9              You don't have it?  All right, let me see.  Maybe     08:58AM
10    I have it.  Hold on.                                            08:58AM
11              Secondly, yeah, Counsels, let's just keep our         08:58AM
12    comments to ourselves, as much as we want to say stuff, you    08:58AM
13    know, in the heat of the trial.  We get all excited.  How do I 08:58AM
14    know?  Because I used to be a trial lawyer.  But you need to    08:58AM
15    calm down, everyone.                                            08:58AM
16              All right, let me see.  Let me pull my --             08:58AM
17              (Conferred off the record.)                           08:58AM
18              THE COURT:  Excuse me, ladies and gentlemen of        08:58AM
19    the jury.                                                       08:59AM
20              (Pause.)                                              08:59AM
21              MS. MCCONWELL:  Your Honor, I think we created it     09:00AM
22    when Ms. Jones also testified.                                  09:00AM
23              THE COURT:  Who?  Ms. Jones?                          09:00AM
24              MS. MCCONWELL:  Ms. Jones.                            09:00AM
25              THE COURT:  All right, let me try -- we'll try to     09:00AM
```

```
 1    find it.  We'll try to find it but let me -- so let's just          09:00AM
 2    craft one -- wait, hold on, it's right here.  No, that's --         09:00AM
 3    that's got to -- that's got to do with COVID stuff.  That's         09:00AM
 4    not it.  Find it?                                                   09:00AM
 5              All right.  Basically you want a limiting -- I'll          09:01AM
 6    find a limiting instruction, but I just -- basically just say       09:01AM
 7    that the defendant not charged under -- under Counts 99             09:01AM
 8    through 110?                                                        09:01AM
 9              MS. MCCONWELL:  Yes, and his testimony is not             09:01AM
10    relevant to Hansen Helicopters.                                     09:01AM
11              THE COURT:  It's not relevant as to -- well,              09:01AM
12    it's -- they're saying -- they're saying it's relevant to          09:01AM
13    Hansen Helicopters --                                               09:01AM
14              MS. M. MILLER:  Exactly.                                  09:01AM
15              THE COURT:  -- to a certain extent.  But -- but,          09:01AM
16    in terms of the charging, that's what you're saying --             09:01AM
17              MS. M. MILLER:  No.                                       09:01AM
18              THE COURT:  -- you're focusing on the actual             09:01AM
19    charged indictment, which I have a copy of.                         09:01AM
20              MS. M. MILLER:  And that's --                             09:01AM
21              MR. MARTIN:  Your Honor, if the Court remembers           09:01AM
22    --                                                                  09:01AM
23              MS. M. MILLER:  -- and that changes.                      09:01AM
24              MR. MARTIN:  -- the Government's trial brief said         09:01AM
25    his testimony would be limited to Counts 100 through 110.          09:01AM
```

*Direct - Khamvongsa*

```
 1          MS. M. MILLER:  No, that's incorrect.              09:01AM

 2          THE COURT:  Okay, wait, wait, hold on, let him --  09:01AM

 3          MR. MARTIN:  It says 100 --                        09:01AM

 4          THE COURT:  -- let him just finish.                09:01AM

 5          MR. MARTIN:  It says wire fraud -- I'll be more    09:01AM

 6  specific.  It says wire fraud and money laundering, which is  09:01AM

 7  counts --                                                  09:01AM

 8          MS. M. MILLER:  Conspiracy --                      09:01AM

 9          MR. MARTIN:  -- one --                             09:01AM

10          MS. M. MILLER:  -- to commit --                    09:01AM

11          MR. MARTIN:  Can she just --                       09:01AM

12          THE COURT:  Wait, Ms. Miller --                    09:01AM

13          MR. MARTIN:  May I finish?                         09:01AM

14          THE COURT:  Ms. Miller, let him, and then I -- if  09:01AM

15  you don't let him finish, I'm not going to let you respond.  09:01AM

16          MS. M. MILLER:  Yes, Your Honor.                   09:02AM

17          THE COURT:  So it's better to let him finish if    09:02AM

18  you want to get your point across.                         09:02AM

19          MS. M. MILLER:  Yes, Your Honor.                   09:02AM

20          THE COURT:  All right.  What is it, Mr. Martin?    09:02AM

21          MR. MARTIN:  It says --                            09:02AM

22          THE COURT:  No, just want what count -- what       09:02AM

23  counts are you talking about?                              09:02AM

24          MR. MARTIN:  I'm reading from the Government's     09:02AM

25  summary of their trial brief where it says his testimony, what  09:02AM
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | it will be -- |
| 2 | THE COURT:  Uh-huh, counts -- |
| 3 | MR. MARTIN:  -- will testify as to wire fraud and |
| 4 | money laundering charges reflected in SSI, which is Counts 100 |
| 5 | through 110. |
| 6 | MS. MCCONWELL:  And, Your Honor -- |
| 7 | THE COURT:  Okay. |
| 8 | MS. MCCONWELL:  -- that's at 1311-51. |
| 9 | THE COURT:  Okay. |
| 10 | MR. MARTIN:  Page. |
| 11 | THE COURT:  100 -- strike -- okay, hold on, hold |
| 12 | on.  I'm a fast reader but I got to -- let me look at this |
| 13 | real quick.  100 -- okay, 100 to 104 is wire to fraud.  And |
| 14 | let's see, okay, and 105 to 110, well, that wouldn't be |
| 15 | relevant.  That's -- that was the forfeiture allegations.  So |
| 16 | 100 to 104 is money laundering. |
| 17 | MS. M. MILLER:  No, Your Honor. |
| 18 | THE COURT:  1 -- 99 -- |
| 19 | MS. M. MILLER:  Count 99 is conspiracy to commit |
| 20 | wire fraud. |
| 21 | THE COURT:  Oh, I'm reading it wrong; that's |
| 22 | right.  Okay -- but, okay, you're talking about 100 to 104 -- |
| 23 | MR. MARTIN:  110, Your Honor. |
| 24 | THE COURT:  Okay, 1-0 -- 100 to 104 is -- |
| 25 | MR. MARTIN:  Wire fraud. |

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | THE COURT:  -- money laundering and notice of | 09:03AM |
| 2 | forfeiture allegations. | 09:03AM |
| 3 | MR. MARTIN:  Your Honor, 1 -- | 09:03AM |
| 4 | THE COURT:  Are you guys looking at the Second | 09:03AM |
| 5 | Superseding Indictment? | 09:03AM |
| 6 | MR. MARTIN:  Yes, Your Honor, 105 through to 110 | 09:03AM |
| 7 | is money laundering. | 09:03AM |
| 8 | THE COURT:  Oh, okay, you're right.  Strike that. | 09:03AM |
| 9 | I'm looking at -- you know what -- | 09:03AM |
| 10 | MR. MARTIN:  And -- and if the Court will look | 09:03AM |
| 11 | at -- | 09:03AM |
| 12 | THE COURT:  Yeah, you're right, you're right. | 09:03AM |
| 13 | I'm sorry. | 09:03AM |
| 14 | MR. MARTIN:  -- ECF 1311, page 42 -- | 09:03AM |
| 15 | MS. M. MILLER:  It's 51 on the ECF. | 09:03AM |
| 16 | MR. MARTIN:  Yeah, ECF.  It's Page 51 on the ECF. | 09:03AM |
| 17 | At top of page, it tells what the summary testimony of the | 09:03AM |
| 18 | witness will be. | 09:03AM |
| 19 | THE COURT:  All right.  Okay.  So let's look at | 09:03AM |
| 20 | this really quick, let me look -- I'm looking at the -- I was | 09:03AM |
| 21 | reading the -- I was reading the order wrong.  So 100 to 104 | 09:03AM |
| 22 | is wire fraud. | 09:03AM |
| 23 | MS. M. MILLER:  99, Your Honor, is the wire fraud | 09:04AM |
| 24 | -- | 09:04AM |
| 25 | THE COURT:  Okay, wait, Counsel -- but, Counsel, | 09:04AM |

*Direct - Khamvongsa*

```
 1    he's only talking about -- okay, we'll talk about -- you can      09:04AM
 2    respond in a minute.  He's only talking about 100 to 110.         09:04AM
 3    That's all I'm focused on right now.                              09:04AM
 4              MS. M. MILLER:  But he's misleading you, Your            09:04AM
 5    Honor.                                                            09:04AM
 6              THE COURT:  But you can say -- you can say that          09:04AM
 7    when you respond.                                                 09:04AM
 8              MS. M. MILLER:  Okay.                                    09:04AM
 9              THE COURT:  Let me just -- yeah, let's just hear         09:04AM
10    what he has to say.  100 to 104 is wire fraud, and 105 to 110     09:04AM
11    is --                                                             09:04AM
12              MS. MCCONWELL:  Money laundering.                        09:04AM
13              THE COURT:  -- money laundering.  Okay, we all          09:04AM
14    agree on that.  Anybody disagree?  Okay?                          09:04AM
15              MS. M. MILLER:  Yes, Your Honor, I disagree.            09:04AM
16              MR. MARTIN:  That -- that is found, Your Honor,         09:04AM
17    at ECF 1311, Page 51, where it tells what his summary             09:04AM
18    testimony will be, that's where that comes from.  It's the        09:04AM
19    Government's document and it says "wire fraud and money           09:04AM
20    laundering charges."                                             09:04AM
21              THE COURT:  Okay.                                       09:04AM
22              MR. MARTIN:  And I've read that.  I can read it         09:04AM
23    --                                                               09:04AM
24              THE COURT:  No, you don't have to read it.              09:04AM
25    Please don't read to me.  Nobody needs to read to me.            09:04AM
```

*Direct - Khamvongsa*

```
 1                MS. M. MILLER:  And Count 99 is conspiracy to      09:04AM
 2   commit wire fraud.  By the way, we had this legal argument --   09:04AM
 3                MR. MARTIN:  We've not --                          09:04AM
 4                MS. M. MILLER:  -- the last time that --           09:04AM
 5                THE COURT:  All right, wait, wait, Counsels --      09:04AM
 6                MS. M. MILLER:  -- Agent Khamvongsa --              09:04AM
 7                THE COURT:  Okay --                                09:04AM
 8                MS. M. MILLER:  -- testified.                      09:04AM
 9                THE COURT:  Okay, all I care about is --           09:04AM
10                MS. M. MILLER:  This is the --                     09:05AM
11                THE COURT:  Let me --                              09:05AM
12                MS. M. MILLER:  This is the same argument.         09:05AM
13                THE COURT:  Let me -- okay, I found the            09:05AM
14   instruction.  Everybody could be seated.  Here we go.          09:05AM
15                Ladies -- I got the instruction.                  09:05AM
16                The Court notes what -- I see the Counts 99        09:05AM
17   through 110.  It says, "Although the defendants are being      09:05AM
18   tried together, ladies and gentlemen of the jury, you must     09:05AM
19   give separate consideration of each -- to each defendant.  In  09:05AM
20   doing so, you must determine which evidence in the case        09:05AM
21   applies to each defendant, disregarding any evidence admitted  09:05AM
22   solely against some other defendant or defendants.  The fact   09:05AM
23   that you may find one of the defendants guilty or not guilty   09:05AM
24   should not control your verdict as to any other defendant or   09:05AM
25   defendants."  This is Court's -- gets this instruction from    09:05AM
```

```
 1    6.12, all right, so separate consideration for each defendant.        09:05AM

 2              So we have two defendants in this case, that are           09:05AM

 3    remaining here in Court now, right, Mr. Jon D. Walker                09:05AM

 4    represented by Mr. Martin and Hansen Helicopters represented         09:05AM

 5    by Mr. McConwell and Ms. McConwell.                                  09:06AM

 6              So that's the limiting instruction count, ladies           09:06AM

 7    and gentlemen.  If I'm going to get more specific about it, I        09:06AM

 8    will give you another one, okay?                                     09:06AM

 9              So proceed, next question.                                 09:06AM

10              MS. M. MILLER:  Okay.  Thank you, Your Honor.             09:06AM

11    BY MS. M. MILLER: (CONTINUING)                                       09:06AM

12       Q.   Special Agent Khamvongsa, based on your                      09:06AM

13    investigation, can you, please, tell the members of the jury         09:06AM

14    who was the sole controller of all of the Vanuatu companies          09:06AM

15    used in this case?                                                   09:06AM

16              MS. MCCONWELL:  Your Honor, I object, that calls           09:06AM

17    for a conclusion.                                                    09:06AM

18              THE COURT:  All right.  The Court will sustain             09:06AM

19    the objection.  You have to lay a foundation.                        09:06AM

20              MS. M. MILLER:  The question said --                       09:06AM

21              THE COURT:  Who -- who --                                  09:06AM

22              MS. M. MILLER:  -- based on all of his                     09:06AM

23    investigation, it calls for a concl- -- I'm not -- that's --         09:06AM

24              THE COURT:  Oh, yeah --                                    09:06AM

25              MS. M. MILLER:  -- not a conclusion.                       09:06AM
```

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | THE COURT: -- did you -- did you say based on | 09:06AM |
| 2 | your investigation? | 09:06AM |
| 3 | MS. M. MILLER: Yes. | 09:06AM |
| 4 | THE COURT: Oh, okay. Well, then, I'm sorry, I | 09:06AM |
| 5 | didn't hear that. | 09:07AM |
| 6 | MS. M. MILLER: Yes. | 09:07AM |
| 7 | THE COURT: All right. Anything further? | 09:07AM |
| 8 | Yes, Mr. Martin? | 09:07AM |
| 9 | MR. MARTIN: Your Honor, I believe that the Court | 09:07AM |
| 10 | has entered an order that -- and I object that he may testify | 09:07AM |
| 11 | as to what he did relating to the facts of his investigation. | 09:07AM |
| 12 | THE COURT: Right. | 09:07AM |
| 13 | MR. MARTIN: But any opinions that he may have | 09:07AM |
| 14 | are -- are to be excluded, and the Court issued an order the | 09:07AM |
| 15 | other day on that. | 09:07AM |
| 16 | MS. M. MILLER: No, you did not. Again, | 09:07AM |
| 17 | misrepresentation -- | 09:07AM |
| 18 | MR. MARTIN: And may we have -- | 09:07AM |
| 19 | THE COURT: Wait, wait, wait, Ms. Miller, please | 09:07AM |
| 20 | let him finish -- | 09:07AM |
| 21 | MS. M. MILLER: Okay. | 09:07AM |
| 22 | THE COURT: -- let him finish his objection. | 09:07AM |
| 23 | Better to let him finish. You don't -- you want to -- | 09:07AM |
| 24 | MR. MARTIN: They filed -- | 09:07AM |
| 25 | THE COURT: -- be able to speak on behalf of the | 09:07AM |

*Direct - Khamvongsa*

1   Government.                                                   09:07AM

2           Go ahead.                                            09:07AM

3           MR. MARTIN:  The Government filed a motion           09:07AM

4   requesting that he be allowed to testify not only as to what 09:07AM

5   he found in the facts to be but as to his opinions, and the  09:07AM

6   Court issued an order.  They also asked that he be a summary  09:07AM

7   witness, and the Court issued an order that he cannot testify 09:07AM

8   as to his opinions or as to any summary testimony, and she's  09:07AM

9   asking that very thing right now.                            09:07AM

10          THE COURT:  All right.                               09:07AM

11          MS. M. MILLER:  Three things.                        09:07AM

12          MR. MARTIN:  And I object.                           09:07AM

13          THE COURT:  All right.  Any -- wait, wait.  Any      09:07AM

14  other -- any other objections?                               09:07AM

15          Wait, wait, wait.  Ms. Miller, don't speak until     09:07AM

16  I say you can speak.  Zip it.                                09:07AM

17          MR. MARTIN:  That's --                               09:07AM

18          THE COURT:  Go ahead.                                09:08AM

19          MR. MARTIN:  That's the basis of my objection,       09:08AM

20  Your Honor.                                                  09:08AM

21          THE COURT:  All right.  Yes?                         09:08AM

22          MS. MCCONWELL:  Hansen joins.                        09:08AM

23          THE COURT:  Hansen joins.                            09:08AM

24          All right, yes, Ms. Miller?                          09:08AM

25          MS. M. MILLER:  Number one, I did not ask him for    09:08AM

*Direct - Khamvongsa*

1    an opinion.                                                              09:08AM

2              Number two, I did not ask this Court to allow him              09:08AM

3    to testify as a summary witness; that was Mr. Klang.                     09:08AM

4              Number three, this Court entered an order saying               09:08AM

5    that you could not preliminarily render opinions about whether           09:08AM

6    lay witness opinion is appropriate through this witness or               09:08AM

7    not.  You needed to wait until the questions were asked and              09:08AM

8    then you would rule, Your Honor.  That is what you ruled and             09:08AM

9    that is exactly what was in that motion, not what Mr. Martin             09:08AM

10   just represented.                                                        09:08AM

11             THE COURT:  Okay.  But he is -- he is somewhat                 09:08AM

12   giving an opinion by, based on his investigation, he's -- he's          09:08AM

13   making a finding that he believes somebody was doing                     09:08AM

14   something.  It was while he was performing his --                        09:08AM

15             MS. M. MILLER:  No, the finding is that the --                 09:08AM

16             THE COURT:  -- job.                                            09:08AM

17             MS. M. MILLER:  Not at all.  He's saying based on              09:08AM

18   the investigation and all of the evidence that he reviewed,              09:08AM

19   which was he already testified earlier thousands and thousands          09:08AM

20   of documents, that the sole controller was Jon Walker.  That's          09:09AM

21   not an opinion.  That is what the evidence showed based on the           09:09AM

22   transactions and based on who was signing off on those                   09:09AM

23   transactions.                                                            09:09AM

24             THE COURT:  But that's based on --                            09:09AM

25             MR. MARTIN:  Your Honor, I object to the --                    09:09AM

```
1        THE COURT:  I'm sorry, that's --                    09:09AM
2        MR. MARTIN:  -- narratives and the factual -- the   09:09AM
3   factual way she's answering your questions, not arguing the  09:09AM
4   law but trying to testify to this jury again.            09:09AM
5        THE COURT:  All right.  Let me just say couple      09:09AM
6   things:                                                  09:09AM
7        Number one, Ms. Miller's correct that in my order   09:09AM
8   I said that Counsels can make specific objections during the  09:09AM
9   trial, which you guys are -- which defense is doing now and  09:09AM
10  which prosecution will have an opportunity to if they need to  09:09AM
11  do so as well.                                           09:09AM
12       On the issue of this last question, the Court       09:09AM
13  will overrule the objection and allow it.  You may proceed.  09:09AM
14       MS. M. MILLER:  Thank you, Your Honor.              09:09AM
15       THE COURT:  Answer?                                 09:09AM
16  BY MS. M. MILLER: (CONTINUING)                           09:09AM
17  Q.   Would you like me to repeat the question, Special   09:09AM
18  Agent Khamvongsa?                                        09:09AM
19  A.   Could you please?                                   09:09AM
20  Q.   I will.                                             09:09AM
21       Based on your investigation and the evidence that you  09:09AM
22  reviewed, could you, please, tell the jury who was the sole  09:09AM
23  controller of the Vanuatu companies that were used in this  09:09AM
24  case?                                                    09:10AM
25       MR. MARTIN:  Your Honor, I object.  It calls for    09:10AM
```

*Direct - Khamvongsa*

     1    a conclusion, beyond the scope of this witness.                    09:10AM
     2              THE COURT:  All right.  Anything -- Ms.                   09:10AM
     3    McConwell, anything?                                               09:10AM
     4              MS. MCCONWELL:  Hansen joins.                            09:10AM
     5              THE COURT:  All right.  The Court will overrule          09:10AM
     6    the objection.  You may proceed.                                  09:10AM
     7    BY MS. M. MILLER:  (CONTINUING)                                    09:10AM
     8        Q.   Can you tell the jury --                                 09:10AM
     9        A.   Defendant Jon Walker.                                    09:10AM
    10        Q.   -- based on your review of the corporate records in      09:10AM
    11    this case, including the bank records, who was the president      09:10AM
    12    of every single one of these corporations used in this case?      09:10AM
    13              MR. MARTIN:  Same objection, Your Honor.                 09:10AM
    14              THE COURT:  Overruled.                                   09:10AM
    15              THE WITNESS:  Defendant Jon Walker.                      09:10AM
    16    BY MS. M. MILLER:  (CONTINUING)                                    09:10AM
    17        Q.   Based on your review of all of the bank records, who     09:10AM
    18    was the number one authorized signer to move money from          09:10AM
    19    accounts in this case?                                            09:10AM
    20        A.   Defendant Jon Walker.                                    09:10AM
    21        Q.   And, based on your review of all of the bank records     09:10AM
    22    and the tax records, who was the person who received the         09:10AM
    23    profits from the tuna boat leases in this case?                  09:10AM
    24              MR. MARTIN:  Same objection, Your Honor.                 09:11AM
    25              THE COURT:  Okay, overruled.                            09:11AM

*Direct - Khamvongsa*

```
 1              THE WITNESS:  Defendant Jon Walker.              09:11AM
 2   BY MS. M. MILLER: (CONTINUING)                             09:11AM
 3      Q.   As a Special Agent with the IRS for the last 20 years   09:11AM
 4   and based on the education and experience that you already  09:11AM
 5   shared with this jury that you have, can you tell the members  09:11AM
 6   of the jury what do you look for in terms of evidence of a   09:11AM
 7   valid corporate structure?                                 09:11AM
 8              MR. MARTIN:  Your Honor, I object to the         09:11AM
 9   question, "a valid corporate structure."  That's an improper  09:11AM
10   question and I object.  She can ask what a corporate structure  09:11AM
11   is.  She can ask -- he's not an expert, Your Honor, and     09:11AM
12   they're trying to make him one, and I object.              09:11AM
13              MS. MCCONWELL:  And I object to foundation and   09:11AM
14   join in his objection.                                     09:11AM
15              THE COURT:  All right, the Court -- okay, so --  09:11AM
16   okay, there's an objection to "valid corporate structure" and  09:11AM
17   another objection to foundation.  So the Court will sustain  09:12AM
18   the objection on foundation.                               09:12AM
19              MS. M. MILLER:  So I will lay a foundation, Your  09:12AM
20   Honor.                                                     09:12AM
21              THE COURT:  Right.  Very well, go ahead.         09:12AM
22   BY MS. M. MILLER: (CONTINUING)                             09:12AM
23      Q.   So could you, please, let the members of the jury   09:12AM
24   know what training and experience did you have as an IRS    09:12AM
25   special agent to determine the validity of a corporation when  09:12AM
```

*Direct - Khamvongsa*

```
1    you're doing your investigation?
2              MR. MARTIN:  Asked and answered, Your Honor.
3    He's already testified as to all this background six weeks
4    ago.
5              MS. M. MILLER:  Which means the foundation has
6    been laid.  So I either lay it again --
7              MR. MARTIN:  Your Honor, that's totally
8    inappropriate --
9              THE COURT:  Okay, wait, wait, wait.
10             MS. M. MILLER:  -- or I don't lay it again.
11             THE COURT:  I'm sorry.  Ms. Miller, yes.
12             Go ahead, Mr. Martin.  Go ahead.
13             MR. MARTIN:  It wasn't laid because he's not an
14   expert, Your Honor, and so he can't testify to expert
15   opinions.
16             MS. M. MILLER:  This is not an expert opinion.
17   He's been an IRS criminal investigation agent for 20 years.
18             THE COURT:  Okay, the Court notes that.  The
19   Court notes that.
20             Anything further, Mr. Martin?
21             MR. MARTIN:  No, Your Honor.
22             THE COURT:  All right, the Court will overrule
23   the objection.  You may proceed.
24             MS. M. MILLER:  Thank you, Your Honor.
25   BY MS. M. MILLER: (CONTINUING)
```

*Direct - Khamvongsa*

1      Q.   Could you, please, tell the members of the jury what          09:12AM
2  are the indicators that you look for when you're doing an              09:12AM
3  investigation to determine whether a corporation is a valid            09:12AM
4  corporation?                                                           09:13AM
5               MR. MARTIN:  Your Honor, this is expert                   09:13AM
6  testimony; I object.                                                   09:13AM
7               MS. M. MILLER:  And you already overruled it.             09:13AM
8  And, Your Honor --                                                     09:13AM
9               THE COURT:  Wait, wait, wait.                             09:13AM
10              MS. M. MILLER:  We're never going to get done             09:13AM
11 with this trial.                                                       09:13AM
12              THE COURT:  All right, calm down, Counsels.  We           09:13AM
13 don't need -- I don't need every -- I just want you guys to            09:13AM
14 focus on the objections.                                               09:13AM
15              Any -- what else, Mr. -- you made the same                09:13AM
16 objection.                                                             09:13AM
17              MS. MCCONWELL:  We'll join and I'm also objecting         09:13AM
18 to foundation --                                                       09:13AM
19              THE COURT:  All right.                                    09:13AM
20              MS. MCCONWELL:  -- to her question.                       09:13AM
21              THE COURT:  The Court will overrule -- the Court          09:13AM
22 will overrule the objection.  You may proceed.                         09:13AM
23              MS. M. MILLER:  Thank you, Your Honor.                    09:13AM
24              Ms. Santos, do you have a marker that I can use           09:13AM
25 on the white board?                                                    09:13AM

```
 1              (Pause.)                                    09:13AM
 2              MS. MCCONWELL:  And, Your Honor, I would also   09:13AM
 3    object to this being cumulative.  Ms. Jone[sic] has already  09:13AM
 4    testified, and while she was testifying, they were -- they  09:13AM
 5    discussed markers and a number of other items.  This is  09:13AM
 6    cumulative testimony, and she was their person that was  09:13AM
 7    designated as an expert, not Mr. Khamvongsa.        09:13AM
 8              THE COURT:  So what -- what's the objection,  09:13AM
 9    though, I'm sorry?                                  09:13AM
10              MS. MCCONWELL:  Cumulative.  This is all    09:13AM
11    cumulative --                                       09:13AM
12              THE COURT:  On this -- on this --          09:13AM
13              MS. MCCONWELL:  -- testimony.              09:13AM
14              THE COURT:  On this last issue of -- well, the  09:14AM
15    last question?                                      09:14AM
16              MS. MCCONWELL:  On this last question and the  09:14AM
17    line of questioning, this is cumulative to Ms. Jones'  09:14AM
18    testimony.                                          09:14AM
19              THE COURT:  Is it -- is it cumulative --   09:14AM
20              MS. M. MILLER:  Not at all.                09:14AM
21              THE COURT:  No, Ms. Jones, though, did go through  09:14AM
22    what constitutes a --                               09:14AM
23              MS. M. MILLER:  Not a valid corporate structure.  09:14AM
24              MS. MCCONWELL:  Yes, she did.              09:14AM
25              MS. M. MILLER:  Her testimony was based solely on  09:14AM
```

*Direct - Khamvongsa*

1    the Quickbook records and her analysis of the bank                09:14AM

2    transactions.  It was not an issue of the companies               09:14AM

3    themselves, which is a nuanced but important distinction          09:14AM

4    between the two.  Because Special Agent Khamvongsa, as an IRS      09:14AM

5    criminal investigation agent --                                   09:14AM

6                MS. MCCONWELL:  Your Honor --                         09:14AM

7                MS. M. MILLER:  -- has a different role and a         09:14AM

8    different responsibility --                                       09:14AM

9                THE COURT:  Okay, the Court --                        09:14AM

10               MS. M. MILLER:  -- as a forensic accountant.          09:14AM

11               THE COURT:  All right.  Very well.  The Court         09:14AM

12   notes that.  Go ahead.                                            09:14AM

13               MS. MCCONWELL:  Well, I object to Ms. Miller          09:14AM

14   testifying and not soliciting whatever information's going to     09:14AM

15   come in --                                                        09:14AM

16               THE COURT:  All right.                                09:14AM

17               MS. MCCONWELL:  -- through a witness.                 09:14AM

18               THE COURT:  All right.  Very well.  The Court         09:14AM

19   will overrule the objection.  You may proceed.                    09:14AM

20               MS. M. MILLER:  Yes, Your Honor.                      09:14AM

21               THE COURT:  Let's just go quickly through --          09:14AM

22               MS. M. MILLER:  Yes, Your Honor.                      09:14AM

23               THE COURT:  -- what is required.                      09:14AM

24   BY MS. M. MILLER:  (CONTINUING)                                   09:14AM

25        Q.   So, Special Agent Khamvongsa, we're going to use this   09:14AM

*Direct - Khamvongsa*

```
 1    board, and I'm going to keep it back here.                        09:14AM

 2               MS. M. MILLER:  Could we turn it so that the jury       09:15AM

 3    could see it.  Did we lose our three-legged stool?                09:15AM

 4               THE COURT:  Yeah, we lost it in COVID.                   09:15AM

 5               MS. M. MILLER:  We lost one of our legs here.           09:15AM

 6               THE COURT:  Yes, Mr. Martin, I see you standing          09:15AM

 7    up?                                                                09:15AM

 8               MR. MARTIN:  I'd like to be able to see the board      09:15AM

 9    as well.                                                           09:15AM

10               THE COURT:  Okay, let's -- let's zoom in on this.       09:15AM

11    Let's see, okay, try to zoom in on this.  Try to do that.         09:15AM

12    Okay.                                                              09:15AM

13    BY MS. M. MILLER: (CONTINUING)                                    09:15AM

14       Q.   Special Agent --                                          09:15AM

15               THE COURT:  Okay, hold on, hold on.  Let's see if       09:15AM

16    we can get -- make sure that Mr. Martin and defense team can      09:15AM

17    see this.  So we'll zoom in on the chart there, the easel.        09:15AM

18               And so, Mr. Martin, can you see that in your --        09:15AM

19    your computer screen there or is that too -- we'll try to make   09:15AM

20    it --                                                             09:15AM

21               MR. MARTIN:  I can see what Ms. Miller has             09:15AM

22    written on there.                                                 09:15AM

23               THE COURT:  Okay, very good.                           09:15AM

24               MS. M. MILLER:  Perfect.                               09:15AM

25               THE COURT:  Okay.  If you can't, just let me           09:15AM
```

*Direct - Khamvongsa*

```
 1    know.                                                        09:15AM
 2              All right.  You may proceed.  Make sure that we    09:15AM
 3    have a dark, dark --                                         09:15AM
 4              MS. M. MILLER:  Yeah, this is a -- it's black      09:15AM
 5    marker.                                                      09:15AM
 6              THE COURT:  Is it dark enough?  Okay.              09:15AM
 7              MS. M. MILLER:  I think now with the camera on     09:15AM
 8    it, I think everyone will be able to see it --               09:15AM
 9              THE COURT:  Okay.                                  09:15AM
10              MS. M. MILLER:  -- better.                         09:16AM
11              THE COURT:  Okay, go ahead.                        09:16AM
12    BY MS. M. MILLER:  (CONTINUING)                              09:16AM
13       Q.   So Special Agent Khamvongsa, could you please tell  09:16AM
14    the members of the jury what is one of the indicators that you 09:16AM
15    look for as an investigator with the IRS for a valid corporate 09:16AM
16    structure?                                                   09:16AM
17       A.   First of all, I look at independent assets; does the 09:16AM
18    corporation actually control that asset?                     09:16AM
19       Q.   And what is the next thing you look for?             09:16AM
20       A.   Independent employees; who do the employees actually 09:16AM
21    work for.                                                    09:16AM
22       Q.   And what else do you look for?                       09:16AM
23       A.   Shared ownership; in a corporation, it's made up -- 09:16AM
24    there are shares that make up the corporation and so those   09:17AM
25    shares are bought up by investors and those investors have a 09:17AM
```

*Direct - Khamvongsa*

1    voting right.                                                    09:17AM

2            MS. MCCONWELL:  Your Honor, I'm going to object      09:17AM

3    to this line.  I object to foundation for this witness being    09:17AM

4    able to testify about physically corp -- it sounds like he's    09:17AM

5    testing[sic] about corporate law and he's trying to inform the  09:17AM

6    jury about who investors are.  There is no foundation for him   09:17AM

7    to provide any of this testimony, regardless of the fact he's   09:17AM

8    been an agent for 20 years.                                      09:17AM

9            MR. MARTIN:  I join in the objection, Your Honor.   09:17AM

10   I object, this -- I object to the testimony of him -- they're   09:17AM

11   making him an expert.  He's not designated an expert and        09:17AM

12   they're trying to do that.                                       09:17AM

13           THE COURT:  All right.  Ms. Miller?                  09:17AM

14           MS. M. MILLER:  Yes, Your Honor.  We're not          09:17AM

15   asking him any questions about opinions that would normally be  09:17AM

16   an expert-only opinion.  We're asking him facts that he relies  09:17AM

17   on in investigation.  That is an appropriate line of inquiry    09:17AM

18   and it is extraordinarily relevant in this case where the       09:18AM

19   defendant used all of these shell companies --                  09:18AM

20           MR. MARTIN:  I object --                             09:18AM

21           THE COURT:  You don't have to get into the --        09:18AM

22           MS. M. MILLER:  Yes, Your Honor.                     09:18AM

23           THE COURT:  I agree with that, that objection is     09:18AM

24   sustained.  Let's go back for a second.  With regard to his --  09:18AM

25   he's going through the corporate -- what he believes are        09:18AM

1  corporate requirements.  But with regard to the foundation,  09:18AM

2  the particular objection is, what is his background to know  09:18AM

3  what constitutes a valid corporation.  The Court --  09:18AM

4          MS. M. MILLER:  And when I asked that, the  09:18AM

5  objection was cumulative because it was asked and established  09:18AM

6  already.  So which way are we going to go?  I'm happy to go  09:18AM

7  back and lay the foundation again and let the jury hear again  09:18AM

8  about all of his training and experience.  And then you know  09:18AM

9  what's going to happen --  09:18AM

10          THE COURT:  Wait, wait.  We know.  Mr. Martin, go  09:18AM

11  ahead.  09:18AM

12          MR. MARTIN:  Your Honor, I'm going to object to  09:18AM

13  everything she does that I think is inappropriate.  It's my  09:18AM

14  job to do that.  If she wants me to pick one side or the  09:18AM

15  other, I'm picking 'em all.  It's my job to defend my client.  09:19AM

16  And I am offended when people keep making -- testifying about  09:19AM

17  facts that have not been testified to in this case and I want  09:19AM

18  the Court to instruct her --  09:19AM

19          THE COURT:  That's right.  09:19AM

20          MS. M. MILLER:  Your Honor --  09:19AM

21          THE COURT:  No, Ms. Miller, the Court will warn  09:19AM

22  you, just focus on the objection.  If the objection is  09:19AM

23  foundation, all you have to say is "I've already done it,  09:19AM

24  you've already said it."  Okay.  09:19AM

25          MS. M. MILLER:  I've already done it, you've  09:19AM

1   already said it.                                           09:19AM

2          THE COURT:  Simple.  Brevity is better.            09:19AM

3          MS. M. MILLER:  Perfect.                           09:19AM

4          THE COURT:  But let's not get into an analysis of   09:19AM

5   why, team.  We don't care about that.  I can figure that out.  09:19AM

6   All right, yes?                                           09:19AM

7          MS. MCCONWELL:  And, Your Honor, I'm also going     09:19AM

8   -- I have an objection that this is beyond the scope of what  09:19AM

9   this witness was identified to testify regarding.         09:19AM

10         THE COURT:  All right.  So the Court will          09:19AM

11  overrule the objection on the last objection.  But on this  09:19AM

12  objection on the corporate structure, the Court will allow  09:19AM

13  Counsel, Ms. Miller, to just focus in on that particular   09:19AM

14  part --                                                   09:19AM

15         MS. M. MILLER:  Yes, Your Honor.                   09:19AM

16         THE COURT:  -- his knowledge, background,          09:19AM

17  experience, just on -- zoom in.  Not the entire breadth --  09:19AM

18  depth and breadth of your resume, just that part.  Go ahead.  09:20AM

19  BY MS. M. MILLER:  (CONTINUING)                           09:20AM

20     Q.   So can you please tell the members of the jury, what  09:20AM

21  training, education and experience you have that allows you to  09:20AM

22  testify about your investigations into corporate structures?  09:20AM

23     A.   So the -- with the IRS criminal investigation, I   09:20AM

24  received extensive training as it relates to corporations.  09:20AM

25  Oftentimes, through the course of our investigations,      09:20AM

*Direct - Khamvongsa*

corporations can be abused and used to conceal the beneficiary

and conceal criminal acts.  Corporations are their own legal

entities separate from the owners, but --

MR. MARTIN:  Your Honor, I object to the

narrative here.  The question was what training he had.  Now

he's giving a lecture on what this does and I object it's a

narrative.

THE COURT:  Objection will be sustained.  Just

like, you know, what school did you go to, to learn about

this.  Or what training, you know, like that.  What experience

-- in terms of experience, you just say how many times you had

to testify regarding the adequacy of the corporation.  That's

it.  Just that simple.

THE WITNESS:  Yes.

THE COURT:  You know --

THE WITNESS:  My apologies, Your Honor.

THE COURT:  Okay, go ahead.

THE WITNESS:  I've had -- every year, we go

through continuing professional education, I received training

at the Federal Law Enforcement Training Center.  I received

continuous training through the IRS.  It's... that's it.

BY MS. M. MILLER:  (CONTINUING)

Q.   Okay.  And when you say you received training, do you

actually attend classes?

A.   Yes.

1      Q.    What was your undergrad degree in?                    09:21AM

2      A.    It was in accounting.                                  09:21AM

3      Q.    Okay.  And in accounting, I was an accounting major    09:21AM

4  as well, can you tell the members of the jury what you learn     09:21AM

5  about corporations when you are going through an undergraduate   09:21AM

6  degree in accounting?                                            09:21AM

7      A.    We learn how the corporation is made, the purpose      09:21AM

8  behind the corporation, um, how it's beneficial to an            09:21AM

9  individual or groups of individuals.                             09:21AM

10     Q.    And when you go through your training to become an     09:22AM

11 IRS criminal investigations agent, how long do you go through    09:22AM

12 that training?                                                   09:22AM

13     A.    IRS criminal investigation has one of the longest      09:22AM

14 training programs.  It runs about 6 to 8 months.                 09:22AM

15     Q.    Okay.  So in addition to your four-year college        09:22AM

16 degree, you also went to training for 6 to 8 months to become    09:22AM

17 a criminal investigation agent; is that correct?                 09:22AM

18     A.    That's correct.                                        09:22AM

19     Q.    And were some of the classes that you took or the      09:22AM

20 seminars that you took related to the validity of corporate      09:22AM

21 entities?                                                        09:22AM

22     A.    Absolutely.                                            09:22AM

23     Q.    And is that where you learned how to investigate a     09:22AM

24 case that involves a corporation?                                09:22AM

25     A.    Yes.                                                   09:22AM

1     Q.   And have you had many hours of studying that?     09:22AM

2          MR. MARTIN:  Your Honor, I object to the     09:22AM

3     continual leading of this witness.     09:22AM

4          MS. M. MILLER:  It's laying a foundation.     09:22AM

5     Leading is appropriate in laying a foundation.     09:22AM

6          THE COURT:  Let him finish the objection --     09:22AM

7          MS. M. MILLER:  He did.     09:22AM

8          THE COURT:  No, he didn't.  He was in     09:22AM

9     mid-sentence.     09:22AM

10         MS. M. MILLER:  Foundation.     09:22AM

11         THE COURT:  He was in mid-sentence.  He was still     09:22AM

12    going.  Yes, go ahead.     09:22AM

13         MR. MARTIN:  My objection is to the continual     09:22AM

14    leading of this witness.     09:23AM

15         THE COURT:  You know what, it's been a long time     09:23AM

16    since I've been with these lawyers.  (Laughing.)  I feel like     09:23AM

17    I never left.  Go ahead.  Mr. Martin, go ahead.     09:23AM

18         MR. MARTIN:  My objection is to the continuous --     09:23AM

19    she's asked five leading questions in a row.  It's     09:23AM

20    inappropriate.     09:23AM

21         THE COURT:  All right.  So generally, the Court     09:23AM

22    does allow for foundational questions, I do allow leading.  So     09:23AM

23    the Court will overrule the objection.  All right.  I think     09:23AM

24    he's getting -- wrap it up.     09:23AM

25         MS. M. MILLER:  Absolutely.  I think that's     09:23AM

1    sufficient.                                                    09:23AM

2    BY MS. M. MILLER:  (CONTINUING)                                09:23AM

3        Q.   So let's move on now to the next question.  Can you   09:23AM

4    tell the members of the jury, based on your training,          09:23AM

5    education, experience, what else do you look for when you are  09:23AM

6    trying to determine whether a corporation is valid?            09:23AM

7              MR. MARTIN:  To which I object, Your Honor, is an    09:23AM

8    expert opinion and he's not been designated.                   09:23AM

9              THE COURT:  Overruled.  Go ahead.                    09:23AM

10             THE WITNESS:  Shared decision making.  Because       09:23AM

11   with investors, when like earlier I talked about voting power, 09:23AM

12   you vote in a board of directors and it's those board of       09:23AM

13   directors that decide how the corporation is going to operate. 09:23AM

14   So it's a shared decision-making process.                      09:24AM

15   BY MS. M. MILLER:  (CONTINUING)                                09:24AM

16       Q.   And what else do you look for?                        09:24AM

17       A.   Recorded meetings.  So oftentimes, these board of     09:24AM

18   directors meet and these meetings are recorded so that these   09:24AM

19   meetings are transparent to the investors.                     09:24AM

20       Q.   And what else do you look for?                        09:24AM

21       A.   Shared profits.                                       09:24AM

22       Q.   And tell us what you mean by *shared profits*?        09:24AM

23       A.   So a corporation's sole purpose is to generate money, 09:24AM

24   generate profits, and oftentimes, these profits are shared     09:24AM

25   with the investors as dividends.                               09:24AM

1      Q.   In this case, did you take what you had learned from

2   your education, training and experience, about valid corporate

3   entities, and apply it to the information that was seized from

4   the defendants regarding the Vanuatu companies?

5      A.   Yes.

6      Q.   And could you please tell the members of the jury,

7   first, did you -- what did you find about whether these

8   Vanuatu companies had independent assets?

9      A.   There are none.

10      Q.   What did you find about whether these Vanuatu

11   companies had independent employees?

12      A.   There were none.

13           MR. MARTIN:  Your Honor, I object to this line of

14   questioning not being related to Counts 100 through 110, which

15   was the substance of what the government provided to Counsel

16   for defense in this case that this witness's testimony would

17   go to.  And this has nothing whatsoever to do with Counts 100

18   through 110, and I ask that the testimony be stricken.

19           MS. MCCONWELL:  And Hansen joins.

20           MS. M. MILLER:  May I respond, Your Honor?

21           THE COURT:  Yeah, does it relate to 100 to 110?

22           MS. M. MILLER:  It absolutes relates to Count 99

23   which is conspiracy to commit wire fraud --

24           THE COURT:  Okay.  So you agree that we're not

25   focusing on 100 --

| | |
|---|---|
| 1 | MS. M. MILLER: No, I do not agree. Absolutely | 09:26AM |
| 2 | not. As a matter of fact -- | 09:26AM |
| 3 | THE COURT: All right. You know what, why don't | 09:26AM |
| 4 | you guys get on your little thingy. | 09:26AM |
| 5 | Oh, do we still have that? | 09:26AM |
| 6 | THE CLERK: Yes, Your Honor. | 09:26AM |
| 7 | THE COURT: Okay, let's try it. Let's do it. | 09:26AM |
| 8 | Because I can already feel you're going to be | 09:26AM |
| 9 | objecting, jumping up. | 09:26AM |
| 10 | (Pause. ) | 09:26AM |
| 11 | THE COURT: You know what, let's just do this, | 09:26AM |
| 12 | Carm, I'll let the jurors go. 10-minute, 15 minutes, let's | 09:26AM |
| 13 | take a break. Please rise for the jury. | 09:26AM |
| 14 | (Jury out at 9:27 a.m.) | 09:27AM |
| 15 | THE COURT: All right. We're outside the | 09:27AM |
| 16 | presence of the jury. Yes, Ms. Martin[sic]? What's it | 09:27AM |
| 17 | relevant to? Okay, so let's just focus on 100 -- let's not | 09:27AM |
| 18 | get on to 99 yet. On 100 to 110, what's the relevance to | 09:27AM |
| 19 | that? | 09:27AM |
| 20 | MS. M. MILLER: The relevance to that, Your | 09:27AM |
| 21 | Honor, is if you look at Counts 100 through 104, those are | 09:27AM |
| 22 | specific wire fraud counts and those wire fraud counts involve | 09:27AM |
| 23 | transfers of funds into an account called Caledonian Insurance | 09:28AM |
| 24 | Company's bank accounts, and if I could show the Court and | 09:28AM |
| 25 | remind the Court of the corporate structure of the defendants | 09:28AM |

*Direct - Khamvongsa*

1   here, we see Caledonian Agency here.  Okay?  So the funds that   `09:28AM`

2   were coming in for the tuna boat contracts were coming into   `09:28AM`

3   Caledonian Agency --   `09:28AM`

4           MS. MCCONWELL:  Can Agent Khamvongsa step out   `09:28AM`

5   while we're having this conversation?   `09:28AM`

6           THE COURT:  Oh, yes, Mr. Khamvongsa, you want to   `09:28AM`

7   step out then?   `09:28AM`

8           MS. M. MILLER:  This is a legal argument.  Why   `09:28AM`

9   does he have to step out?  Because we have people sitting   `09:28AM`

10  there including the defendant's own expert.   `09:28AM`

11          THE COURT:  They think it's a factual argument.   `09:28AM`

12  That's why.   `09:28AM`

13          MS. M. MILLER:  It's not a factual argument.   `09:28AM`

14  It's a legal argument about whether the indictment --   `09:28AM`

15          THE COURT:  That's okay.  He could step out.  He   `09:28AM`

16  can hold his own.  Let's go.  All right.   `09:28AM`

17          MS. M. MILLER:  Okay.   `09:28AM`

18          THE COURT:  So, go ahead.   `09:29AM`

19          MS. M. MILLER:  What the evidence is going to   `09:29AM`

20  show, Your Honor, is that these shell Vanuatu companies   `09:29AM`

21  entered into the tuna boat contracts with the tuna boat   `09:29AM`

22  companies, then the money was sent to Caledonian Agency from   `09:29AM`

23  the payment for these contracts and Caledonian Agency was   `09:29AM`

24  identified as an investment company.   `09:29AM`

25          THE COURT:  All right.   `09:29AM`

*Direct - Khamvongsa*

1          MS. M. MILLER:  From Caledonian Agency, the money    09:29AM

2   was then sent out to Hansen Northern and Hansen Helicopters    09:29AM

3   for payment of expenses relating to operating, and then the    09:29AM

4   profit went to Jon Walker.    09:29AM

5          So what we have with the wire fraud counts is we    09:29AM

6   have a situation where these Vanuatu companies were used as    09:29AM

7   shells to enter into these leases with the tuna boat    09:29AM

8   companies, but ultimately, the money is going to Caledonian    09:30AM

9   Agency and then eventually to Jon Walker.    09:30AM

10          So we alleged and we incorporated by reference    09:30AM

11   the allegations that are contained earlier on in our second    09:30AM

12   superseding indict that the defendants used the Vanuatu    09:30AM

13   companies to commit their fraud.    09:30AM

14          As a matter of fact, Mr. Martin and    09:30AM

15   Mr. McConwell, in pleadings filed with this Court,    09:30AM

16   specifically ECF 541 said, that the Vanuatu companies were    09:30AM

17   created to quote, "avoid liability," and that the Vanuatu    09:30AM

18   companies ultimately are all owned, if you follow the trail,    09:30AM

19   by Jon Walker.  We have him at the top, and he has all these    09:30AM

20   corporate entities that are used to confuse, deceive, lie, but    09:30AM

21   ultimately, the money all goes back to him.    09:30AM

22          So what they're trying to do is they're trying to    09:30AM

23   create this situation where, Hey, Your Honor, no, it's    09:31AM

24   irrelevant to talk about these other corporate entities as to    09:31AM

25   these counts.  No, it's not.  Those counts are based on leases    09:31AM

1    that the defendants signed, that they named these corporate          09:31AM

2    entities, these Vanuatu companies as the lessors, despite the         09:31AM

3    fact the companies did not own the helicopters, did not have          09:31AM

4    any employees, did not have any assets, Hansen Helicopters did        09:31AM

5    everything, controlled everything.  And Jon Walker is in fact         09:31AM

6    Hansen Helicopters.  This goes to the very heart of our alter         09:31AM

7    ego argument to this Court.                                           09:31AM

8              Additionally, this argument was made by defense             09:31AM

9    Counsel the last time we were here and you, Your Honor,               09:31AM

10   overruled the argument.  And we have on the transcript where          09:31AM

11   this Court already heard this argument and already overruled          09:31AM

12   the argument.  Mr. Martin knows that.                                 09:31AM

13             So now all we're doing is we are literally                  09:31AM

14   wasting the jury's time because the same arguments are being          09:31AM

15   made that this Court has already overruled.  And if he's read         09:32AM

16   that transcript so carefully as he claims he has, then he             09:32AM

17   knows that.  But we're trying to interrupt the flow of the            09:32AM

18   evidence to this jury because the evidence is damming to his          09:32AM

19   client.  That's not a valid legal basis to raise an objection        09:32AM

20   over and over again that's already been ruled on by this              09:32AM

21   Court.  We're one hour into presentation of evidence and we           09:32AM

22   had to excuse the jury to have a legal argument that we               09:32AM

23   already had that this Court has already overruled.                    09:32AM

24             THE COURT:  All right.  Anything further?                   09:32AM

25             MR. MARTIN:  Yes, a lot, Your Honor.  I disagree            09:32AM

1  with everything she just said, Your Honor.                    09:32AM

2            MS. M. MILLER:  Of course.                          09:32AM

3            THE COURT:  Okay.                                   09:32AM

4            MR. MARTIN:  When she cited to the Court 541,       09:32AM

5  first of all, that was a motion to suppress relating to the  09:32AM

6  First Superseding Indictment, it has nothing to do with this 09:32AM

7  indictment.  It was withdrawn when they filed a superseding  09:32AM

8  indictment.                                                  09:32AM

9            Secondly, Your Honor, this argument, if she says   09:32AM

10  it's in the transcript, point it out to us, point it out to 09:32AM

11  us.  I disagree.  We had this argument the last time we were 09:33AM

12  in Court.  You sustained it.  You said we are limiting this to 09:33AM

13  100 through 110 and 100 through 104 is wire fraud.  That means 09:33AM

14  they have to establish a scheme to defraud.                 09:33AM

15            MS. M. MILLER:  Exactly.                           09:33AM

16            MR. MARTIN:  His testimony that he's giving,       09:33AM

17  their scheme to defraud, alleges that they have -- they have 09:33AM

18  alleged these -- pardon me, the helicopters don't meet the  09:33AM

19  standards of the FAA, and therefore, this is wire fraud.  It 09:33AM

20  has nothing to do with the corporate structure of these     09:33AM

21  companies.                                                  09:33AM

22            And so I submit to you, Your Honor, his testimony  09:33AM

23  is way beyond the testimony that he's put -- the government's 09:33AM

24  put in their trial brief and is relevant to the substance of 09:33AM

25  Counts 100 through 110.                                     09:33AM

```
 1              MS. M. MILLER:  The scheme to defraud has          09:33AM
 2   everything to do with the Vanuatu companies.  We allege that  09:33AM
 3   in our Second Superseding Indictment.  And the reason why I   09:34AM
 4   cited the ECF is because as an officer of the Court,          09:34AM
 5   representations were made by both Mr. Martin and Mr. McConwell 09:34AM
 6   about the relationship of Jon Walker to all of these corporate 09:34AM
 7   entities and they're the ones that tied it all up.  And I'll  09:34AM
 8   remind the Court in ECF 265, when this case was first brought 09:34AM
 9   before the Court, they were saying there is no relation       09:34AM
10   between the Vanuatu company and the defendants.               09:34AM
11              Now let's fast forward, ECF 541, okay, there is a  09:34AM
12   relationship but they're valid corporations.  That was one of 09:34AM
13   their defenses.  Then they say that the helicopters are owned 09:34AM
14   and registered by Vanuatu companies, which they withdraw that 09:34AM
15   contention in ECF 573 only to raise it again in ECF 1492,     09:34AM
16   which was the subject to the government's motion to strike    09:34AM
17   because the constant misrepresentations by defense Counsel.   09:34AM
18   And, Your Honor, I will cite the Court to the transcript dated 09:34AM
19   June 8th, and the Court said --                               09:35AM
20              MR. MARTIN:  Page number, please?                  09:35AM
21              (Pause.)                                           09:35AM
22              MS. M. MILLER:  I'm skipping over all the          09:35AM
23   argument to the order.                                        09:35AM
24              (Pause.)                                           09:35AM
25              THE COURT:  Okay, I'll giving you guys one minute  09:35AM
```

| | |
|---|---|
| 1 | because I'm ready to rule, but go ahead.  One minute unless | 09:35AM |
| 2 | you have anything further.  Go ahead and cite to him what | 09:35AM |
| 3 | you're looking for. | 09:35AM |
| 4 |      MS. M. MILLER:  So it starts -- the argument is | 09:35AM |
| 5 | on page 115 of the transcript.  You said, Your Honor, "I | 09:35AM |
| 6 | suppose they're getting very particular because there is a | 09:36AM |
| 7 | conspiracy to commit wire fraud charge, and there is straight | 09:36AM |
| 8 | -- a straight wire fraud charge and there is a straight money | 09:36AM |
| 9 | laundering charge, okay, got it." | 09:36AM |
| 10 |      Next, your response, the objection and then Ms. | 09:36AM |
| 11 | Miller responded to the objection.  And then your Court -- you | 09:36AM |
| 12 | said "Anything further, Counsels?" | 09:36AM |
| 13 |      Mr. Martin said, "I laid it out."  Mr. McConwell, | 09:36AM |
| 14 | then Ms. McConwell and then the Court said, "Can you repeat | 09:36AM |
| 15 | that?"  Blah-blah-blah blah blah.  Here we go... | 09:36AM |
| 16 |      MR. MARTIN:  Just so we are clear, Your Honor, I | 09:36AM |
| 17 | don't think we have the same transcript because my page 115 | 09:36AM |
| 18 | doesn't have that. | 09:36AM |
| 19 |      MS. M. MILLER:  50, I said.  Not 15. | 09:36AM |
| 20 |      THE COURT:  Oh, 1-5-0? | 09:36AM |
| 21 |      MS. M. MILLER:  1-5-0. | 09:36AM |
| 22 |      MR. MARTIN:  I thought I heard -- | 09:36AM |
| 23 |      THE COURT:  Okay, 1-5-0. | 09:36AM |
| 24 |      (Pause.) | 09:37AM |
| 25 |      MS. M. MILLER:  Boy, we argued a lot. | 09:37AM |

*Direct - Khamvongsa*

1        THE COURT:  I'm ready to make my ruling but if -- 09:37AM

2        MS. M. MILLER:  Yeah, go ahead and make your 09:37AM

3   ruling, Your Honor, because this goes on for pages but the 09:37AM

4   point is -- 09:37AM

5        THE COURT:  No, you guys -- I get it.  Let me -- 09:37AM

6   I don't think I need to hear anybody -- more arguments.  I 09:37AM

7   understand the arguments.  It is true that Count 99 talks 09:37AM

8   about the conspiracy to commit wire fraud and I'm looking at 09:37AM

9   the Second Superseding Indictment.  I already stated that in 09:37AM

10  the transcript that Ms. Marie Miller just briefly focused on. 09:37AM

11       Counts 100 to 104 zeros in on the underlying wire 09:37AM

12  fraud.  So there is a conspiracy to commit the wire fraud in 09:37AM

13  99 and the 100 to 104 is the underlying wire fraud.  And then 09:37AM

14  the remaining counts is money laundering that has been the 09:37AM

15  subject of the -- these objections. 09:38AM

16       The whole issue now is coming to light, has been 09:38AM

17  coming to light towards the end of the testimonies before we 09:38AM

18  had our recess was this whole issue of the shell company 09:38AM

19  motion, the alter ego defense, whether or not the Court can 09:38AM

20  find by -- make a factual finding pursuant to 104(b) of the 09:38AM

21  Federal Rules of Evidence if there is relevance, can the jury 09:38AM

22  reasonably find by a preponderance of the evidence that these 09:38AM

23  are alter ego corporations.  And I think that's where we're 09:38AM

24  getting to -- it appears that that's been -- the particular 09:38AM

25  matter that's been heating up, especially during our latest 09:38AM

*Direct - Khamvongsa*

1     recesses, and the Court notes that.                                    09:38AM

2              So the Court will overrule the objection and          09:38AM

3     allow him to speak on this issue and include Counts 99          09:38AM

4     through 110.  But I will also say that, and just looking back   09:38AM

5     on the issue of expert witness, it's true that the prosecution 09:39AM

6     did not identify or call this latest -- how do you say his     09:39AM

7     name again?                                                     09:39AM

8              MS. M. MILLER:  Khamvongsa.                            09:39AM

9              THE COURT:  Khamvongsa, that's right, as an           09:39AM

10    expert witness.  There was no notice of that and that's not    09:39AM

11    what he -- they're trying to propound by him.  But he can give 09:39AM

12    testimony as a lay witness and under Federal Rule of Evidence  09:39AM

13    701, if he's not testifying as an expert, he can give opinion  09:39AM

14    testimony if his testimony is rationally based on his          09:39AM

15    perception, it's helpful to clearly understand his testimony   09:39AM

16    or to determine a fact in issue and it's not based on          09:39AM

17    scientific, technical or other specialized knowledge within    09:39AM

18    the scope of Rule 702.  Sometimes it does blend, 702 and 701   09:39AM

19    does blend, but he -- I think it's clear that he can testify   09:39AM

20    regarding a lay witness opinion testimony in this regard.  So  09:39AM

21    that'll be the order of the Court.  And then let's call in the 09:40AM

22    jury.  You guys want to take -- what time is our recess        09:40AM

23    supposed to be?                                                 09:40AM

24              MS. M. MILLER:  I think it's supposed to be at       09:40AM

25    10:15 maybe.                                                    09:40AM

*Direct - Khamvongsa*

```
1    THE COURT:  Why don't you guys take a recess and        09:40AM
2    come right back.  Yes, Ms. McConwell?  I'm sorry.        09:40AM
3         MS. MCCONWELL:  I just want to make sure, Hansen    09:40AM
4    Helicopters is not indicted on Counts 99 through 110.    09:40AM
5         THE COURT:  And I think the prosecution would       09:40AM
6    agree on that --                                         09:40AM
7         MS. M. MILLER:  Yes, Your Honor, for the            09:40AM
8    five-thousandth time, we do.                             09:40AM
9         THE COURT:  Now when it come to jury                09:40AM
10   instructions, we can modify instructions to fit the evidence  09:40AM
11   into -- and so forth.  Okay?                             09:40AM
12        MS. MCCONWELL:  Yes.  And I appreciate the          09:40AM
13   prosecutor's frustration, however, we have a record to   09:40AM
14   protect.                                                 09:40AM
15        THE COURT:  No, I think -- you know, you don't      09:40AM
16   have to apologize for that.  I mean you guys -- you have a  09:40AM
17   right and you have a duty, both of you, Mr. McConwell and  09:40AM
18   Mr. Martin have a duty to protect and zealously advocate --  09:40AM
19   oh, Mr. -- yeah, I'm sorry, see, you're hiding behind the  09:41AM
20   podium, Mr. Han.  I can't see you there.  Mr. Han.  All you  09:41AM
21   have a duty to zealously safeguard your clients' rights, what  09:41AM
22   you believe them to be, and to advocate for them.  So let's  09:41AM
23   take a ten-minute recess and we'll be back.              09:41AM
24        MS. M. MILLER:  Yes, Your Honor, thank you.         09:41AM
25        (Recess taken at 9:41 a.m.)                         09:41AM
```

```
 1                  (Back on the record at 9:59 a.m.)              09:59AM

 2                  THE COURT:  Let's call in the jury.            09:59AM

 3                  (Pause.)                                       09:59AM

 4                  THE COURT:  Welcome back, ladies and gentlemen of  10:00AM

 5       the jury.  And the Court will overrule the objections and let  10:00AM

 6       me just say, thank you for your patience, ladies and      10:00AM

 7       gentlemen.  And you may proceed, Ms. Miller.              10:00AM

 8                  MS. M. MILLER:  Thank you, Your Honor.         10:00AM

 9       BY MS. M. MILLER: (CONTINUING)                            10:00AM

10           Q.   Special Agent Khamvongsa, could you tell the members  10:00AM

11       of the jury what evidence did you see that, in relation to the  10:00AM

12       Vanuatu companies, there was a shared ownership of the Vanuatu  10:00AM

13       companies?                                                10:00AM

14           A.   There was none.                                  10:00AM

15           Q.   What evidence did you see that there was shared  10:01AM

16       decision making?                                          10:01AM

17           A.   There was none.                                  10:01AM

18           Q.   What evidence did you see of recorded meetings?  10:01AM

19           A.   There was none.                                  10:01AM

20           Q.   What evidence did you see that anyone besides Jon  10:01AM

21       Walker received profits?                                  10:01AM

22           A.   There was none of shared profits.                10:01AM

23           Q.   What is a wire?                                  10:01AM

24           A.   A wire is a telecommunication -- an electronic   10:01AM

25       telecommunication such as a phone, an e-mail, an instant  10:01AM
```

*Direct - Khamvongsa*

1    message through social media, communications between banks

2    such as a wire transfer, a fax.  Those are some of the things

3    that make up a wire.

4        Q.   Okay.  And could you tell the members of the jury

5    what an originator of a wire transfer is?

6        A.   Originator of a wire transfer, an OBI, often referred

7    to or identified within a bank statement, just -- just says

8    that the originator may come from one bank and that the B,

9    beneficiary, is that's where is that wire going to, who is

10   benefitting from that wire.

11       Q.   And could you tell the members of the jury also, when

12   you have a wire in relation to the counts in this case, is

13   there some aspect of cross state lines or international lines

14   or anything like that?

15       A.   Yes, in -- in regards to wires -- the wires in this

16   case, the wires crossed international and state lines.

17       Q.   Okay.  And how are the leases paid for the tuna boat

18   and the pilots and the mechanics?

19       A.   The fishing companies, or the tuna boat companies,

20   pay by a wire transfer.

21       Q.   Okay.  And can you explain to the jury what you mean

22   when you say wire transfer in conjunction with this case?

23       A.   So, in reviewing the bank statements, a wire transfer

24   is identified, and that's an electronic communication, from

25   one bank to another saying that this amount of money is going

1    from one bank account to another bank account.                    10:03AM

2        Q.   And can you tell the members of the jury what            10:03AM

3    happened around the year 2000, in this case, that changed the     10:03AM

4    way Hansen Helicopters was operating?                             10:03AM

5        A.   So around 2000 is when Jon Walker acquired Hansen        10:03AM

6    Helicopters.  In 2000 is when the Vanuatu companies were first    10:03AM

7    created.  Around that same time is when Hansen Helicopters        10:03AM

8    stopped registering the helicopters in their name and suddenly    10:03AM

9    they're in the names of the Vanuatu companies.                    10:03AM

10       Q.   Which bank accounts were funds deposited into from       10:03AM

11   the leases?                                                       10:03AM

12       A.   The funds were deposited into Caledonian Agency          10:04AM

13   Inc.'s bank account.                                              10:04AM

14       Q.   Okay.  And based on the bank records, could you tell     10:04AM

15   the members of the jury, what kind of company was Caledonian      10:04AM

16   Agency?                                                           10:04AM

17       A.   Caledonian Agency is -- its nature of business is an     10:04AM

18   investment.                                                       10:04AM

19       Q.   Could you tell the members of the jury what you did      10:04AM

20   to obtain information from Hansen Helicopters in this case in     10:04AM

21   relation to these transactions?                                  10:04AM

22       A.   I issued a grand jury -- I issued a grand jury           10:04AM

23   subpoena for all financial records for Hansen Helicopters and     10:04AM

24   its subsidiaries, for -- including its fleet reg- -- its          10:04AM

25   entirety of its fleet, the schedule of billings and               10:04AM

*Direct - Khamvongsa*

1    collections, the pilots and mechanics that they employ, and --       10:04AM

2    and those are but a few of some of the things in which we            10:05AM

3    subpoenaed.                                                          10:05AM

4        Q.   Okay.  I'd like to show you what has been previously        10:05AM

5    marked --                                                            10:05AM

6              MS. M. MILLER:  But not entered into evidence              10:05AM

7    yet, Your Honor.                                                     10:05AM

8    BY MS. M. MILLER: (CONTINUING)                                       10:05AM

9        Q.   -- Exhibit 726.  You're going to see it come up in         10:05AM

10   front of you.  Do you see that document, sir?                       10:05AM

11       A.   Yes.                                                        10:05AM

12       Q.   Do you recognize it?                                        10:05AM

13       A.   Yes.                                                        10:05AM

14       Q.   What is it?                                                 10:05AM

15       A.   This is one of the documents that came as a result of      10:05AM

16   the grand jury subpoena.  This is a Wilma's Flight Services,        10:05AM

17   Inc. top level schedule of billings and collections.               10:05AM

18       Q.   And who did you receive this document from?                10:05AM

19       A.   From Hansen Helicopters.                                   10:06AM

20              MS. M. MILLER:  Your Honor, at this time the             10:06AM

21   Government would offer into evidence what has been previously      10:06AM

22   marked as Government's Exhibit 726.                                 10:06AM

23              THE COURT:  Counsel?                                     10:06AM

24              MR. MARTIN:  No objection, Your Honor, on behalf        10:06AM

25   of Mr. Walker.                                                      10:06AM

         MS. MCCONWELL:  And, Your Honor, I would ask that     10:06AM
the admission be limited to Mr. Walker, because this is used   10:06AM
for the purpose of these Counts 99 through 110, which Hansen   10:06AM
Helicopters has not been charged with.                        10:06AM
         MS. M. MILLER:  And, Your Honor, again, you've        10:06AM
already given that instruction to the jury multiple times.  I  10:06AM
don't think it's necessary to do it again.  And as, Your       10:06AM
Honor, has heard, our contention is that these companies were  10:06AM
alter egos of --                                              10:06AM
         THE COURT:  Right.                                    10:06AM
         MS. M. MILLER:  -- Jon Walker.                         10:06AM
         THE COURT:  Right.  All right.  So the Court will     10:06AM
-- ladies and gentlemen, for Exhibit G-726, without objection,  10:06AM
as to Mr. Walker, will be admitted and you may review.  And    10:06AM
then with regard to the limiting instruction, the Court has    10:06AM
given the limiting instruction, so I don't think I need to do  10:07AM
that any further.                                             10:07AM
         MS. MCCONWELL:  Right.  I just wanted to make         10:07AM
sure it was not admitted to Hansen Helicopters, solely to Jon  10:07AM
Walker, but that's it.  Thank you, Your Honor.                 10:07AM
         THE COURT:  Well, all right.                          10:07AM
(Exhibit G-726 admitted.)                                     10:07AM
         THE COURT:  Counsel?                                  10:07AM
         MS. M. MILLER:  Yes, Your Honor.                      10:07AM
         THE COURT:  So --                                     10:07AM

```
 1                MS. M. MILLER:  You're going to instruct the jury   10:07AM
 2     at end of the case pursuant to the --                         10:07AM
 3                THE COURT:  So -- okay, so we don't need to argue   10:07AM
 4     this case.                                                     10:07AM
 5                MS. M. MILLER:  Yes.                                10:07AM
 6                THE COURT:  Okay.  Next question.                   10:07AM
 7                MS. M. MILLER:  May I publish it, Your Honor?       10:07AM
 8                THE COURT:  You may.                                10:07AM
 9                MS. M. MILLER:  Thank you.                          10:07AM
10                And, Ms. Miller, if you are driving or is           10:07AM
11     Mr. Leon Guerrero driving?  You're driving.  Mr. Leon         10:07AM
12     Guerrero, can you first hone in on just the very top portion.  10:07AM
13     Yes, sir.  Thank you.                                         10:07AM
14     BY MS. M. MILLER:  (CONTINUING)                               10:07AM
15        Q.   Now, just to make it clear for the jurors what we're   10:07AM
16     talking about, who did you issue the grand jury subpoena to?  10:07AM
17        A.   Hansen Helicopters.                                    10:07AM
18        Q.   And what did you ask for?                              10:08AM
19        A.   Again, I asked for all financial records relative to   10:08AM
20     the leasing of the helicopters as well as the pilots and      10:08AM
21     mechanics, their identifications, any accounts which we       10:08AM
22     receive the tuna boat money, or the lease payments from the   10:08AM
23     tuna boats, those are but a few of the things we asked.       10:08AM
24        Q.   Could you tell the members of the jury, Wilma's       10:08AM
25     Flight Services, Inc., who's Wilma's Flight Services, Inc.,   10:08AM
```

*Direct - Khamvongsa*

1    based on your investigation and review of the records?

2        A.    Wilma Flight Services, Inc. is a -- is a corporation

3    belonging to Jon Walker.

4        Q.    Where was Wilma's Flight Services, Inc. incorporated?

5        A.    It was incorporated here in Guam.

6        Q.    Does that make it a U.S. corporation?

7        A.    Yes.

8        Q.    Do you know why, in Exhibit 829, the defendants'

9    identify Wilma's Flight Services --

10            MR. MARTIN:  Your Honor, I object to the question

11    --

12    BY MS. M. MILLER:  (CONTINUING)

13        Q.    -- as a --

14            MS. M. MILLER:  I'm not even finished with --

15            THE COURT:  Okay, wait, wait.

16            MS. M. MILLER:  -- my question is yet.

17            THE COURT:  All right.  Yeah, don't answer the

18    question.  Let -- let's hear the question.

19            MS. M. MILLER:  Can I finish the question?

20            THE COURT:  It sounds like speculation, but go

21    ahead.

22    BY MS. M. MILLER:  (CONTINUING)

23        Q.    Can you tell the jurors why, in Exhibit 829, the

24    defendants list Wilma's Flight Service as a Vanuatu company

25    even though we have records that it was incorporated in the

```
 1    U.S.?                                                          10:09AM

 2                  THE COURT:  Okay.  Hold on.  Objection?          10:09AM

 3                  MR. MARTIN:  I'll adopt the Court's -- sounds    10:09AM

 4    like speculation.  Secondly, Your Honor, the defendants, I    10:09AM

 5    would ask Ms. Miller to identify who she is referring to,     10:09AM

 6    because there is no indication that Mr. Walker --             10:09AM

 7                  THE COURT:  Fair enough.                         10:09AM

 8                  MR. MARTIN:  -- had anything to do with that     10:09AM

 9    exhibit, and I object to it.                                  10:09AM

10                  THE COURT:  All right.  So the Court will sustain 10:09AM

11    the -- the last objection -- and both objections, yeah,       10:09AM

12    sustained.                                                    10:09AM

13                  MS. M. MILLER:  So --                           10:09AM

14                  THE COURT:  Rephrase on the --                   10:09AM

15                  MS. M. MILLER:  Yes, Your Honor.                 10:09AM

16                  THE COURT:  -- question.  And then if you want to 10:09AM

17    identify a specific defendant if it applies to --             10:09AM

18                  MS. M. MILLER:  Yes, Your Honor.                 10:09AM

19                  THE COURT:  All right, very well.                10:09AM

20    BY MS. M. MILLER:  (CONTINUING)                               10:09AM

21       Q.   So Mr. Khamvongsa, this exhibit --                    10:09AM

22                  THE COURT:  Can you just state what exhibit      10:10AM

23    number is that?                                               10:10AM

24                  MS. M. MILLER:  Yes, it's Exhibit 829 --        10:10AM

25                  THE COURT:  Okay.                               10:10AM
```

*Direct - Khamvongsa*

```
 1                MS. M. MILLER:  -- but this was, Your Honor, just    10:10AM

 2      for the record, filed in Document 541 by both Jon Walker's     10:10AM

 3      attorney and --                                                10:10AM

 4                MR. MARTIN:  I object to whose --                    10:10AM

 5                MS. M. MILLER:  -- Hansen Helicopters' attorney.     10:10AM

 6                THE COURT:  All right, hold on.  I'm sorry,          10:10AM

 7      objection?                                                     10:10AM

 8                MR. MARTIN:  Your Honor --                           10:10AM

 9                THE COURT:  Sustained.  The objection will be        10:10AM

10      sustained.  Let's just focus on -- we don't need to get into   10:10AM

11      the --                                                         10:10AM

12                MS. M. MILLER:  Well, because --                     10:10AM

13                THE COURT:  No, no, wait, Counsel.  We don't need    10:10AM

14      to -- it's not relevant --                                     10:10AM

15                MS. M. MILLER:  No, no --                            10:10AM

16                THE COURT:  Wait, wait.  It's not relevant as to     10:10AM

17      prior filings and motions at this point.  So as far as it's    10:10AM

18      being -- it's already been admitted in this Court.             10:10AM

19                MS. M. MILLER:  This is already admitted.            10:10AM

20                THE COURT:  Yeah, that's all I care about.           10:10AM

21                MS. M. MILLER:  And I was just clarifying            10:10AM

22      something Your Honor, Mr. Martin said that his client did      10:10AM

23      not --                                                         10:10AM

24                THE COURT:  All right.  So --                        10:10AM

25                MS. M. MILLER:  -- submit this.                      10:10AM
```

*Direct - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | THE COURT:  -- the Court has that.  All right. | 10:10AM |
| 2 | MS. M. MILLER:  That was not correct. | 10:10AM |
| 3 | THE COURT:  All right. | 10:10AM |
| 4 | MR. MARTIN:  That is correct, Your Honor, and -- | 10:10AM |
| 5 | MS. M. MILLER:  That is not correct. | 10:10AM |
| 6 | THE COURT:  All right, Counsel, Counsel, we'll | 10:10AM |
| 7 | get back on that issue. | 10:10AM |
| 8 | MS. M. MILLER:  Okay. | 10:10AM |
| 9 | THE COURT:  The Court will sustain that objection | 10:10AM |
| 10 | at this time.  We'll come back to that issue later during a | 10:10AM |
| 11 | break -- | 10:10AM |
| 12 | MS. M. MILLER:  Yes.  Thank you, Your Honor. | 10:10AM |
| 13 | THE COURT:  -- and we'll talk about that.  But as | 10:10AM |
| 14 | far as it being submitted for this Court purposes admitted | 10:10AM |
| 15 | here -- | 10:11AM |
| 16 | MS. M. MILLER:  Yes. | 10:11AM |
| 17 | THE COURT:  -- the Court does -- notes for the | 10:11AM |
| 18 | record that -- it's Exhibit what number? | 10:11AM |
| 19 | MS. M. MILLER:  829, Your Honor. | 10:11AM |
| 20 | THE COURT:  All right.  You may proceed. | 10:11AM |
| 21 | MS. M. MILLER:  Thank you, Your Honor. | 10:11AM |
| 22 | THE COURT:  And we'll get back together that | 10:11AM |
| 23 | issue, Mr. Martin. | 10:11AM |
| 24 | Go ahead. | 10:11AM |
| 25 | MS. M. MILLER:  Thank you, Your Honor. | 10:11AM |

*Direct - Khamvongsa*

```
 1    BY MS. M. MILLER:  (CONTINUING)                      10:11AM

 2        Q.   Sir, where is Wilma's Flight Service on this  10:11AM

 3    document?                                            10:11AM

 4        A.   I can't see it.                             10:11AM

 5             MS. M. MILLER:  Can I --                    10:11AM

 6             THE WITNESS:  Could you please --           10:11AM

 7             MS. M. MILLER:  Can I approach?             10:11AM

 8             THE COURT:  You may.                        10:11AM

 9             THE WITNESS:  Okay.  Wilma's Flight --      10:11AM

10             THE COURT:  Why don't you go -- why don't you go 10:11AM

11    on the other side, so you don't block the jury's view of him. 10:11AM

12             MS. M. MILLER:  Oh, what I could do, is I could 10:11AM

13    do this, Your Honor.                                 10:11AM

14             THE COURT:  Oh, oh, okay.                   10:11AM

15    BY MS. M. MILLER:  (CONTINUING)                      10:11AM

16        Q.   Special Agent Khamvongsa, you want to step down point 10:11AM

17    to where it is?                                      10:11AM

18             THE COURT:  Okay, you can.  And then let's just 10:11AM

19    get a -- let's get a --                              10:11AM

20             MS. M. MILLER:  Sure.                       10:11AM

21             THE COURT:  -- a visual for the defense     10:11AM

22    Counsels --                                          10:11AM

23             MS. M. MILLER:  Okay, okay.                 10:11AM

24             THE COURT:  -- to see it.                   10:11AM

25             Carmen -- okay, hold on, let's see if Carmen can 10:11AM
```

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | get the defense Counsels to see where he's pointing to. | 10:11AM |
| 2 | Can you -- can you all see? | 10:11AM |
| 3 | MS. M. MILLER:  No. | 10:11AM |
| 4 | THE COURT:  Okay.  Yeah, go ahead.  Okay, let's | 10:11AM |
| 5 | see -- hold on, hold on, hold on, one second.  I want to | 10:12AM |
| 6 | see -- we'll get you on the screen. | 10:12AM |
| 7 | MS. M. MILLER:  You'll be able to see it. | 10:12AM |
| 8 | Carmen's gonna get the camera on it and then -- | 10:12AM |
| 9 | (Discussion with the clerk.) | 10:12AM |
| 10 | THE COURT:  Oh, mic.  You have a mic?  Yeah, | 10:12AM |
| 11 | okay, go to the mic there.  That's fine.  Can you -- there you | 10:12AM |
| 12 | go. | 10:12AM |
| 13 | THE WITNESS:  Wilma's Flight Services is located, | 10:12AM |
| 14 | within this document, under the 30 Vanuatu international | 10:12AM |
| 15 | companies here at the very bottom. | 10:12AM |
| 16 | BY MS. M. MILLER: (CONTINUING) | 10:12AM |
| 17 | Q.   Okay.  Thank you, sir.  Thank you. | 10:12AM |
| 18 | A.   Thanks. | 10:12AM |
| 19 | Q.   What evidence did you see, in your review of all of | 10:12AM |
| 20 | the evidence in this case, that Wilma's Flight Service was in | 10:12AM |
| 21 | fact a Vanuatu company? | 10:12AM |
| 22 | A.   I've seen none. | 10:12AM |
| 23 | Q.   And this document that was just admitted into | 10:12AM |
| 24 | evidence that was received from Hansen Helicopters says | 10:12AM |
| 25 | Wilma's Flight Service, Inc. schedule of billings and | 10:12AM |

1  collections, can you tell the members of the jury what other  10:12AM

2  documents did you see besides these types of documents that  10:12AM

3  identified any other company as having a schedule of billings  10:13AM

4  and collections?  10:13AM

5       A.    I've seen none.  10:13AM

6       Q.    So all of the billings for the tuna boat contracts  10:13AM

7  went through Wilma's?  10:13AM

8       A.    Yes.  10:13AM

9             MS. M. MILLER:  And now, Mr. Leon Guerrero, if  10:13AM

10  you could pull out, so the jury could see the rest of this  10:13AM

11  document -- maybe you could just go across the entire document  10:13AM

12  but a small portion.  No, no, much shorter.  Yeah, there you  10:13AM

13  go.  10:13AM

14  BY MS. M. MILLER: (CONTINUING)  10:13AM

15       Q.    So can you walk us through the columns in this  10:13AM

16  document, sir?  First, on the left-hand side, we see fishing  10:13AM

17  companies.  Could you tell the members of the jury what this  10:13AM

18  is referencing?  10:13AM

19       A.    This is identifying all the fishing -- fishing  10:13AM

20  companies that have leases with Hansen Helicopters and its  10:13AM

21  subsidiaries.  10:14AM

22       Q.    And then the next column says boat name, could you  10:14AM

23  explain to the jury what we are seeing there?  10:14AM

24       A.    So these are the various boats which had the  10:14AM

25  helicopters assigned to them, so they're generating invoices  10:14AM

*Direct - Khamvongsa*

```
 1   for those services.                                          10:14AM
 2       Q.   Okay.  And then invoice number, what is that        10:14AM
 3   referencing?                                                 10:14AM
 4       A.   That references the period and the time billed.     10:14AM
 5       Q.   Okay.  What about date billed?                      10:14AM
 6       A.   Again, it's the date billed to the company.         10:14AM
 7       Q.   To the tuna boat company?                           10:14AM
 8       A.   To the tuna boat company, correct, or the fishing   10:14AM
 9   company.                                                     10:14AM
10       Q.   And then it says period covered, what does that     10:14AM
11   reference?                                                   10:14AM
12       A.   That's the period in what they're billing for the   10:14AM
13   lease agreement --                                           10:14AM
14       Q.   Okay.  So if you --                                 10:14AM
15       A.   -- where the lease --                               10:14AM
16       Q.   -- look at the first row, that's a one-month period;10:14AM
17   is that correct?                                             10:14AM
18       A.   That's correct.                                     10:14AM
19       Q.   And then in the column amount, what are we seeing   10:14AM
20   there?                                                       10:14AM
21       A.   That's the amount being billed to the tuna boat     10:14AM
22   companies.                                                   10:15AM
23       Q.   And then where see a column for fishing see --      10:15AM
24   fish -- shipping fee overtime, downtime, what are where seeing10:15AM
25   there?                                                       10:15AM
```

*Direct - Khamvongsa*

1    A.    Again, that's in relation to any fees generated, any

2    overtime or any downtime costs which may affect the overall

3    billing to the fishing company.

4    Q.    Okay.  And this is one example of many that you

5    received in terms of the documents from Hansen Helicopters?

6    A.    Yes.

7    Q.    Okay.

8         MS. M. MILLER:  Thank you, Stephen.

9    BY MS. M. MILLER: (CONTINUING)

10   Q.    How much money total did the evidence demonstrate to

11   you was received as a result of these fishing contracts?

12   A.    In total during -- at least during the timeframe from

13   2000-present, $400 million.

14   Q.    Okay.  Now, could you tell the members of the jury,

15   Wilma's Flight Service, who's the president of Wilma's Flight

16   Service?

17   A.    Mr. Jon Walker.

18   Q.    Who is the signer on the bank accounts for Wilma

19   Flight Service?

20   A.    Defendant Jon Walker.

21   Q.    You said that the funds from these billings went into

22   a company called Caledonian Agency; is that correct?

23   A.    Yes, Cal -- it went into a bank account for

24   Caledonian Agency, Inc., which is with Bank of Hawaii here in

25   Guam.

*Direct - Khamvongsa*

10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:16AM
10:16AM
10:16AM
10:16AM
10:16AM
10:16AM
10:16AM
10:16AM
10:16AM
10:16AM

1    MS. MCCONWELL:  Your Honor, I would object.  I'd    10:16AM

2    ask for a timeframe.  It's -- it's just unclear.    10:16AM

3    THE COURT:  Okay.  Ms. -- you want to get a    10:16AM

4    timeframe on that, please?    10:16AM

5    MS. M. MILLER:  Yes, Your Honor.    10:16AM

6    THE WITNESS:  My -- my review of the records go    10:16AM

7    from 2014 through 2018.    10:16AM

8    BY MS. M. MILLER: (CONTINUING)    10:16AM

9    Q.    For this particular account?    10:17AM

10    A.    Yes.    10:17AM

11    Q.    Okay.  Where was Caledonian Agency incorporated?    10:17AM

12    A.    Caledonian Agency -- I'm unsure, but its parent    10:17AM

13    company, Caledonian Insurance Company, was incorporated in the    10:17AM

14    CNMI.    10:17AM

15    Q.    The CNMI?    10:17AM

16    A.    Yes.    10:17AM

17    Q.    Does that make it a U.S. corporation?    10:17AM

18    A.    Yes.    10:17AM

19    Q.    Is Hansen Helicopters a U.S. corporation?    10:17AM

20    A.    Yes.    10:17AM

21    Q.    And you said Wilma's was a U.S. corporation?    10:17AM

22    A.    I said Wilma's was a U.S. corporation, yes.    10:17AM

23    Q.    I'd like to show you a demonstrative aid, which is    10:17AM

24    just an excerpt from paragraph 126 from the Second Superseding    10:17AM

25    Indictment.  It's Demonstrative Aid 40-1.    10:17AM

*Direct - Khamvongsa*

```
 1                    MR. MARTIN:  Could we have the question repeated,    10:17AM
 2      Your Honor?  I couldn't hear the --                               10:18AM
 3                    THE COURT:  Okay, I'm sorry.  Could you repeat       10:18AM
 4      the question?  Bring the mic a little closer.                     10:18AM
 5                    MS. M. MILLER:  Yes, Your Honor, I just wanted to    10:18AM
 6      show the witness a demonstrative aid, which is an excerpt from    10:18AM
 7      paragraph 126 from the Second Superseding Indictment.             10:18AM
 8                    THE COURT:  Okay.  And it's marked as 40-1?          10:18AM
 9                    MS. M. MILLER:  Yes, Your Honor, it's marked as      10:18AM
10      Government's Demonstrative Aid 40-1.                              10:18AM
11                    THE COURT:  All right.                              10:18AM
12                    MS. M. MILLER:  And, Your Honor, may I publish      10:18AM
13      this to the jury as a demonstrative aid?                         10:18AM
14                    THE COURT:  All right.  Counsels?  Okay, this is    10:18AM
15      99... oh, I see, okay, this is just a -- just really a           10:18AM
16      repeat --                                                        10:18AM
17                    MS. M. MILLER:  It's just demonstrative aid, yes.   10:18AM
18                    THE COURT:  Yeah, it's -- it's exactly what's       10:18AM
19      contained within the indictment?                                 10:18AM
20                    MS. M. MILLER:  Yes, Your Honor.                    10:18AM
21                    THE COURT:  All right.  No objections, Counsels,    10:18AM
22      I assume, Mr. Martin --                                          10:18AM
23                    MR. MARTIN:  No, Your Honor.                        10:18AM
24                    THE COURT:  -- no objection?                        10:18AM
25                    Ms. McConwell?                                      10:18AM
```

*Direct - Khamvongsa*

MS. MCCONWELL: No, Your Honor. 10:18AM
THE COURT: All right. Very well. That'll be allowed as a demonstrative aid, 40-1. You may proceed. 10:18AM 10:19AM
BY MS. M. MILLER: (CONTINUING) 10:19AM
Q. Special Agent Khamvongsa, do you see this document in front of you? 10:19AM 10:19AM
A. Yes. 10:19AM
Q. Okay. Could you tell the members of the jury, how did you identify these helicopters that are in the Second Superseding Indictment? 10:19AM 10:19AM 10:19AM
A. All these helicopters were identified from Hansen Helicopters' own records, which I obtained either through a search warrant or through the grand jury subpoena. 10:19AM 10:19AM 10:19AM
Q. Okay. And now let's look at what you received pursuant to a grand jury subpoena. It has been marked but not introduced into evidence yet as Exhibit 725, and you're going to see it come up on the screen in front of you. Do you see Exhibit 725, sir? 10:19AM 10:19AM 10:19AM 10:20AM 10:20AM
A. Yes. 10:20AM
Q. What is it? 10:20AM
A. This is one of the documents I received from Hansen Helicopters through the grand jury subpoena, and it's an aircraft vessel assignment as it relates to the fleet of helicopters and their assignment to the tuna boats. 10:20AM 10:20AM 10:20AM 10:20AM
Q. Is it a true and correct copy of what you received 10:20AM

1    from Hansen Helicopters?                                    10:20AM

2        A.   Yes.                                               10:20AM

3                MS. M. MILLER:  Your Honor, at this time the    10:20AM

4    Government would move into evidence what has been previously 10:20AM

5    been marked as Government's Exhibit 725.                    10:20AM

6                THE COURT:  Any objections, Counsels?           10:20AM

7                MS. MCCONWELL:  How many pages is your document, 10:20AM

8    Ms. Miller?                                                 10:20AM

9                MR. LEON GUERRERO:  Twenty-six pages.           10:20AM

10               MS. MCCONWELL:  Twenty-six, okay.               10:20AM

11               THE COURT:  So that's 725-1 through 26?         10:20AM

12               MS. M. MILLER:  Yes, Your Honor.                10:20AM

13               THE COURT:  Okay.                               10:20AM

14               MR. MARTIN:  No objection, Your Honor.          10:21AM

15               THE COURT:  Ms. McConwell?                      10:21AM

16               MS. MCCONWELL:  I just would renew that this is 10:21AM

17   admitted only to -- for this purpose of these counts to Jon 10:21AM

18   Walker and not to Hansen Helicopters.                      10:21AM

19               THE COURT:  All right, very well.  I think that's 10:21AM

20   understood, at least at this point.                        10:21AM

21               So, ladies and gentlemen of the jury,          10:21AM

22   Exhibit 725-1 through 725-26 are admitted.  At this point  10:21AM

23   they're admitted against Mr. Walker and not necessarily to 10:21AM

24   Hansen Helicopters.  And the Court has given you that      10:21AM

25   instruction on how to evaluate each defendant separately.  Of 10:21AM

*Direct - Khamvongsa*

1    course the Court will give further instructions later before    10:21AM

2    you deliberate.  You may proceed.    10:21AM

3    (Exhibit 725-1 to 725-26 admitted.)    10:21AM

4            MS. M. MILLER:  May I publish it, Your Honor?    10:21AM

5            THE COURT:  You may.    10:21AM

6            MS. M. MILLER:  And, Mr. Leon Guerrero, could you    10:21AM

7    just highlight the top portion so we could show the jury one    10:21AM

8    section of what we're looking at here?  Thank you, sir.    10:21AM

9    BY MS. M. MILLER: (CONTINUING)    10:21AM

10       Q.   Special Agent Khamvongsa, what are we looking at    10:21AM

11   here?    10:22AM

12       A.   In the first column, it identifies the aircraft    10:22AM

13   belonging to Hansen Helicopters, Inc., and then on the right    10:22AM

14   column is the vessel or tuna boat company as it relates to the    10:22AM

15   assignment.    10:22AM

16       Q.   Okay.    10:22AM

17           MS. MCCONWELL:  Your Honor, I object to any --    10:22AM

18   any speculation with regard this witness testimony on the    10:22AM

19   document.  The document speaks for itself and he's trying to    10:22AM

20   -- he's interpreting the document.  If he -- it's complete    10:22AM

21   speculation.  It's spec- -- his testimony is speculative -- or    10:22AM

22   response is speculative.    10:22AM

23           MR. MARTIN:  I join, Your Honor.    10:22AM

24           THE COURT:  Okay.    10:22AM

25           MS. M. MILLER:  May I respond, Your Honor?    10:22AM

*Direct - Khamvongsa*

```
1                    THE COURT:  You may.                        10:22AM

2                    MS. M. MILLER:  This is in response to a grand   10:22AM

3    jury subpoena where the request was to provide the list of all  10:22AM

4    the helicopters and the vessels.                            10:22AM

5                    THE COURT:  All right.                      10:22AM

6                    MS. M. MILLER:  And so they provided the list of  10:22AM

7    all the helicopters and the vessels.  That's not speculative;  10:22AM

8    they provided --                                           10:22AM

9                    MR. MARTIN:  Based off of a subpoena.       10:22AM

10                    MS. M. MILLER:  -- this information.  Okay,  10:22AM

11   I'm --                                                      10:22AM

12                    MR. MARTIN:  That's not what -- may I object,  10:22AM

13   Your Honor?  That's not what the subpoena asked for.  It asked  10:22AM

14   for every record from this date to this date, and this -- they  10:22AM

15   have hundreds of thousands of documents, and that's a       10:23AM

16   misrepresentation by the prosecution and I object.          10:23AM

17                    MS. M. MILLER:  Your Honor, I object --    10:23AM

18                    THE COURT:  Okay, wait, let --             10:23AM

19                    MS. M. MILLER:  -- and move to strike.     10:23AM

20                    THE COURT:  -- him -- hold on.             10:23AM

21                    MS. M. MILLER:  If he doesn't want me to talk  10:23AM

22   about misrepresentations by him, then I certainly --        10:23AM

23                    THE COURT:  Counsel, I -- no --            10:23AM

24                    MS. M. MILLER:  -- don't expect him --     10:23AM

25                    THE COURT:  -- Ms. Miller, let him --      10:23AM
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | MS. M. MILLER:  -- to make this statement. |
| 2 | THE COURT:  -- let him -- no, no, let him finish |
| 3 | his objection -- finish his statement. |
| 4 | MR. MARTIN:  He's testifying to what it is. |
| 5 | That's -- |
| 6 | THE COURT:  All right.  So let me -- let me just |
| 7 | say this, what you guys happened -- what happened with the |
| 8 | request for grand jury, what happened in filings, keep that to |
| 9 | yourself.  Really, the jurors don't need to know that unless I |
| 10 | say they need to know that, because that's really more of a |
| 11 | legal matter that's taken care of outside the presence of the |
| 12 | jury.  So the Court will sustain that request. |
| 13 | Now, on this -- but let me, let me just -- on the |
| 14 | particular question and answer, let me just hear the question |
| 15 | and answer again.  I want to hear Ms. -- hear that. |
| 16 | Veronica, could you get the last question and |
| 17 | last answer by our witness here. |
| 18 | (Whereupon the reporter read back requested |
| 19 | portion.) |
| 20 | THE COURT:  All right.  The Court -- the Court |
| 21 | will overrule the objection.  The witness's answer, it -- as |
| 22 | it indicates here on this the particular exhibit, this is the |
| 23 | aircraft, this is the vessel.  So the Court will overrule the |
| 24 | objection. |
| 25 | MS. MCCONWELL:  Well -- |

```
 1   BY MS. M. MILLER:  (CONTINUING)                          10:24AM

 2       Q.   And could you tell --                           10:24AM

 3                THE COURT:  Wait, hold on, hold on, hold on, 10:24AM

 4   what -- yes?                                             10:24AM

 5                MS. MCCONWELL:  He's asking about ownership of a  10:24AM

 6   vessel -- or of an aircraft.  All this document says it has  10:24AM

 7   type.  It doesn't identify ownership of aircraft --      10:24AM

 8                THE COURT:  Okay, so your objection is --    10:24AM

 9                MS. MCCONWELL:  -- and that's my objection.  10:24AM

10                THE COURT:  -- to the ownership, who owns it --  10:24AM

11                MS. MCCONWELL:  His response --             10:24AM

12                THE COURT:  -- the question.                10:24AM

13                MS. MCCONWELL:  Yeah, his response saying it's  10:24AM

14   that Hansen Helicopters owns those aircraft, because all this  10:24AM

15   document -- it has Hansen Helicopters on it, the document  10:25AM

16   speaks for itself, but it doesn't have the ownership of the  10:25AM

17   particular aircraft.                                     10:25AM

18                THE COURT:  All right.  All right.  Ms. McCon- --  10:25AM

19   Ms. Miller.                                              10:25AM

20                MS. M. MILLER:  Yes, Your Honor.  First of all --  10:25AM

21                THE COURT:  Yeah.                           10:25AM

22                MS. M. MILLER:  -- I didn't ask the question who  10:25AM

23   owns.  Second of all --                                 10:25AM

24                THE COURT:  He -- so he -- so his answer is not  10:25AM

25   responsive to the question; that's really --            10:25AM
```

*Direct - Khamvongsa*

                    MS. M. MILLER:  He didn't --                        10:25AM

                    THE COURT:  -- the objection.                       10:25AM

                    MS. M. MILLER:  -- he didn't -- he didn't testify   10:25AM
to that either.  The question was --                                   10:25AM

                    THE COURT:  No, no, don't tell --                   10:25AM

                    MS. M. MILLER:  -- what is the jury --              10:25AM

                    THE COURT:  Okay, wait.                             10:25AM

                    MS. M. MILLER:  What is the -- what is the --       10:25AM

                    THE COURT:  No, no, I don't want --                 10:25AM

                    MS. M. MILLER:  Okay.                               10:25AM

                    THE COURT:  -- I don't want you guys to tell me     10:25AM
what the question was.                                                  10:25AM

                    MS. M. MILLER:  Well --

                    THE COURT:  Let me hear it again.  Hold on --

                    MS. M. MILLER:  Yes.

                    THE COURT:  Hold on.  Veronica, repeat it again.
I want to make sure now that I know what the specific
objection is.  Go ahead.                                               10:25AM

                    (Whereupon the reporter read back requested         10:25AM
portion.)                                                              10:25AM

                    THE COURT:  All right.  The objection will be       10:25AM
sustained as to that last part as to not responsive to the             10:25AM
question, "What are we looking at here?"  He's laying -- this           10:25AM
is an aircraft -- aircraft number; that's what it should say.          10:25AM
Okay.  So the Court will sustain that objection.                       10:26AM

1          As to the ownership, that -- that wasn't the                    10:26AM

2   question, so I'm -- the Court is going to sustain the                  10:26AM

3   objection as not responsive to the question.                          10:26AM

4          Okay, next question.  So disregard that part of                 10:26AM

5   the answer.  All right, next question.                                10:26AM

6          MS. M. MILLER:  Yes.                                            10:26AM

7   BY MS. M. MILLER: (CONTINUING)                                        10:26AM

8   Q.   Sir, who did you get this information from?                      10:26AM

9   A.   Hansen Helicopters.                                             10:26AM

10  Q.   What is at the very top of this document that you               10:26AM

11  received?                                                            10:26AM

12  A.   Hansen Helicopters, Inc.                                         10:26AM

13  Q.   And what does it say under that?                                10:26AM

14  A.   Aircraft vessel.                                                10:26AM

15  Q.   And what is in the first column on the left of all              10:26AM

16  26 pages of this document?                                           10:26AM

17  A.    It's the U.S.-registered aircraft as well as the              10:26AM

18  New Zealand and Philippine --                                        10:26AM

19  Q.   Okay.  And on the right of this document, what is              10:26AM

20  being identified?                                                    10:26AM

21  A.    The tuna boats.                                                10:26AM

22  Q.   Now, let's talk about ownership of these helicopters.          10:26AM

23  Can you tell the members of the jury, in reviewing the              10:26AM

24  evidence in this case, did you see any evidence that indicated      10:26AM

25  who was purchasing the helicopters used in this scheme?             10:26AM

*Direct - Khamvongsa*

```
 1              MR. MARTIN:  Your Honor, I object to the form of        10:27AM
 2   the question.                                                      10:27AM
 3              THE COURT:  Yeah, the Court will sustain the            10:27AM
 4   objection.  Why don't you rephrase that.  That seems too --        10:27AM
 5   too broad "in this scheme."  Which scheme?  Which --               10:27AM
 6              MS. M. MILLER:  Okay.                                    10:27AM
 7              MR. MARTIN:  I object --                                 10:27AM
 8              THE COURT:  -- which there's a lot of schemes           10:27AM
 9   here possibly.                                                     10:27AM
10              MR. MARTIN:  Your Honor, I --                            10:27AM
11              THE COURT:  So the Court will sustain the               10:27AM
12   objection.                                                         10:27AM
13              MR. MARTIN:  I object to the word "scheme."             10:27AM
14              THE COURT:  All right.  The objection will be           10:27AM
15   sustained.  Rephrase, Ms. Miller.                                  10:27AM
16              MS. M. MILLER:  Okay.                                    10:27AM
17   BY MS. M. MILLER: (CONTINUING)                                     10:27AM
18      Q.  Could you tell the members of the jury, what evidence       10:27AM
19   did you review in this case that supported an identification       10:27AM
20   of the owner of the helicopters?                                   10:27AM
21      A.  I reviewed Hansen Helicopters' own records.  A good         10:27AM
22   example is the Eastern Shore Invoice, which reflected that it      10:27AM
23   was purchased by Hansen Helicopters, Vanuatu --                    10:27AM
24              MS. MCCONWELL:  Your Honor, I object.  That's           10:27AM
25   also nonresponsive.  She didn't ask about purchasing.  She         10:27AM
```

1    asked about ownership.                                              10:27AM

2              MS. M. MILLER:  I asked him what evidence was             10:27AM

3    there about who owned it.  If they -- if Hansen purchased          10:27AM

4    it --                                                              10:27AM

5              THE COURT:  Well, no, no, no --                          10:27AM

6              MS. M. MILLER:  -- they owned it.                        10:27AM

7              THE COURT:  -- no, no, that's not necessarily so.        10:27AM

8    The Court will sustain the objection.  It was -- so the Court      10:27AM

9    sustained the objection.  Disregard.  The question was only as     10:27AM

10   to ownership.  So go ahead.                                        10:28AM

11   BY MS. M. MILLER:  (CONTINUING)                                    10:28AM

12      Q.   Okay, so how do you know who owned these helicopters,      10:28AM

13   sir?                                                               10:28AM

14             MS. MCCONWELL:  And, Your Honor, I want -- want a        10:28AM

15   timeframe.                                                         10:28AM

16   BY MS. M. MILLER:  (CONTINUING)                                    10:28AM

17      Q.   How do you know who owned these helicopters, sir?          10:28AM

18             THE COURT:  Timeframe, which -- which                    10:28AM

19   helicopters?  Are these the ones that are --                      10:28AM

20             MS. M. MILLER:  The helicopters that are                 10:28AM

21   disclosed in Exhibit 725 that was just admitted into evidence,     10:28AM

22   and the helicopters that are identified in the Second             10:28AM

23   Superseding Indictment, which the jury saw as Demonstrative        10:28AM

24   Aid 40-1 --                                                        10:28AM

25             THE COURT:  So you're asking for --                     10:28AM

*Direct - Khamvongsa*

```
 1                MS. M. MILLER:  -- so subject helicopters of this      10:28AM
 2   case.                                                               10:28AM
 3                THE COURT:  For those two timeframes?                   10:28AM
 4                MS. M. MILLER:  Yes, Your Honor.                        10:28AM
 5                THE COURT:  Okay, so the -- okay, so she's              10:28AM
 6   giving -- she's giving it to him.  All right.  Those                10:28AM
 7   timeframes.  Go ahead, can you answer?                              10:28AM
 8                THE WITNESS:  The question again?                       10:28AM
 9   BY MS. M. MILLER: (CONTINUING)                                      10:28AM
10      Q.   How do you know who owned the helicopters that we see       10:28AM
11   listed here in this exhibit?                                        10:28AM
12      A.   I know, based upon the corporate records from Hansen        10:28AM
13   Helicopters as well as the tax return information and who           10:28AM
14   benefitted from the monies that these helicopters generated.       10:28AM
15      Q.   And you've talked about the purchase --                     10:29AM
16                MS. MCCONWELL:  Your Honor, I object to that           10:29AM
17   being nonresponsive.                                                10:29AM
18                THE COURT:  Yeah.  Sustained.                          10:29AM
19                MS. M. MILLER:  Your Honor, that is responsive.        10:29AM
20   How do you know who owned?  So they're objecting to as to          10:29AM
21   speculation --                                                      10:29AM
22                THE COURT:  The Court will -- the Court will           10:29AM
23   sustain the objection.                                              10:29AM
24   BY MS. M. MILLER: (CONTINUING)                                      10:29AM
25      Q.   Sir, when you talk about the ownership issue, can you      10:29AM
```

*Direct - Khamvongsa*

1  tell the members of the jury what did you see, in terms of    10:29AM

2  actual physical evidence that Hansen Helicopters owned these    10:29AM

3  helicopters?    10:29AM

4     A.   The physical evidence was actually in Hansen    10:29AM

5  Helicopters' own facilities.    10:29AM

6             MS. MCCONWELL:  Your Honor, I would --    10:29AM

7             THE COURT:  And so what was that?  What is the    10:29AM

8  evidence?  That's what she -- how do you know?  What is it?    10:29AM

9  What is it that show you had that?    10:29AM

10  BY MS. M. MILLER: (CONTINUING)    10:29AM

11     Q.   Can you identify the --    10:29AM

12     A.   There's -- there's a variety --    10:29AM

13     Q.   So I know there's a variety --    10:29AM

14     A.   Your Honor, there's a variety of evidence and there's    10:29AM

15  no one particular source.    10:29AM

16     Q.   List the variety of evidence, that's the question.    10:29AM

17     A.   Okay.    10:29AM

18             MS. MCCONWELL:  And, Your Honor, I'd ask about    10:29AM

19  timeframe.  I'd object --    10:29AM

20             THE COURT:  Is it the same time frame?    10:30AM

21             MS. MCCONWELL:  -- it's speculative.    10:30AM

22             MS. M. MILLER:  Same time frame, Your Honor.    10:30AM

23             THE COURT:  Okay.  Same time frame as in the    10:30AM

24  indictment --    10:30AM

25             MS. M. MILLER:  Same time frame.    10:30AM

*Direct - Khamvongsa*

1    THE COURT:  -- as on this exhibit?                    10:30AM

2    MS. M. MILLER:  Yes, Your Honor.                      10:30AM

3    THE COURT:  Do you -- yes?                            10:30AM

4    MS. MCCONWELL:  Well, I'm going to object             10:30AM

5    because --                                            10:30AM

6    THE COURT:  Yeah.                                      10:30AM

7    MS. MCCONWELL:  -- I'm -- I'm confused.               10:30AM

8    Ownership changes.  I -- there is -- and a time period's   10:30AM

9    relevant as to who -- what the -- who the owner was.  So if   10:30AM

10   there's a specific --                                 10:30AM

11   THE COURT:  Do you want to voir die the witness       10:30AM

12   in aid of your objection?                             10:30AM

13   MS. M. MILLER:  There's also --                       10:30AM

14   THE COURT:  Wait, just a minute, just a minute --     10:30AM

15   MS. M. MILLER:  -- cross-examination.                 10:30AM

16   THE COURT:  -- hold on a second.  Do you want to      10:30AM

17   voir dire the witness in aid of your objection, because   10:30AM

18   honestly, I'm -- I -- I'm not sure if I'm understanding your   10:30AM

19   theory.  And you know -- you guys know the evidence a lot more   10:30AM

20   than -- better than I do because you've got everything more   10:30AM

21   than I -- I mean, a lot more stuff than I've read because I   10:30AM

22   don't have everything.  Do you want to voir dire the witness?   10:30AM

23   MS. MCCONWELL:  Um -- um, yes.                         10:30AM

24   THE COURT:  Okay, go ahead.                           10:30AM

25                   VOIR DIRE EXAMINATION                 10:30AM

*Direct - Khamvongsa*

10:30AM (each line)

1

2  BY MS. MCCONWELL:

3      Q.   So what's the time period that you're -- that --

4  what -- what time period did you look at ownership of --

5           Well, are you representing to this Court and jury

6  that you looked at the ownership for each and every one of the

7  aircraft that's on Exhibit 275?

8      A.   I looked at evidence --

9      Q.   That's a yes or no.

10     A.   -- as well there's admissions made by --

11     Q.   That's a yes or no.

12     A.   -- by Mr. Crowe.

13     Q.   Did you look at each and every one of the aircraft

14 that's listed on Exhibit 275?

15     A.   Yes.

16     Q.   Did you look at the aircraft files for each aircraft

17 that's listed on 725?

18     A.   I looked at summary charts, and I relied upon the

19 information provided by the FAA.

20     Q.   So that's a no, you did not look at the aircraft

21 charts.

22          And did you --

23          MS. M. MILLER:  Objection, Your Honor,

24 Counsel's --

25          THE COURT:  No, no, no, I'm sorry --

```
 1            MS. M. MILLER:  -- testifying.  The witness says        10:31AM
 2   yes --                                                           10:31AM
 3            THE COURT:  Wait, wait.                                  10:31AM
 4            MS. M. MILLER:  -- and she says that's a no.            10:31AM
 5            THE COURT:  Okay.  Is that right --                     10:31AM
 6            MS. MCCONWELL:  He said he looked --                    10:31AM
 7            THE COURT:  Is that right --                            10:31AM
 8            MS. MCCONWELL:  -- at summary charts --                 10:31AM
 9            THE COURT:  Hold on.  Is that right, what she           10:31AM
10   just asked?  Go back -- go back to your last question.          10:31AM
11   BY MS. MCCONWELL: (CONTINUING)                                   10:31AM
12       Q.   Did you look at each and every aircraft file on the     10:31AM
13   aircraft that are listed on 725 or on the demonstrative aid     10:31AM
14   40-1?                                                            10:31AM
15       A.   Yes.                                                    10:31AM
16       Q.   You looked at every single aircraft chart -- I mean,    10:31AM
17   aircraft file?                                                   10:32AM
18       A.   As it -- yes, as it relates to this, yes.               10:32AM
19       Q.   And did you look at each -- even each year --           10:32AM
20            You're saying you looked at it between which year,      10:32AM
21   2000 to 2018, or did you look at it from 2014 to 2018?          10:32AM
22       A.   I looked into this in the entirety of the wire fraud    10:32AM
23   conspiracy.                                                      10:32AM
24       Q.   That didn't answer my question.                        10:32AM
25            THE COURT:  Which is?                                   10:32AM
```

*Direct - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | THE WITNESS:  Yes, it's 2000 to present. | 10:32AM |
| 2 | BY MS. MCCONWELL:  (CONTINUING) | 10:32AM |
| 3 | Q.   All right.  And so that you would know what -- what | 10:32AM |
| 4 | changes of ownership had occurred and with any of these | 10:32AM |
| 5 | aircraft? | 10:32AM |
| 6 | MS. M. MILLER:  Objection, Your Honor, assuming | 10:32AM |
| 7 | facts not in evidence. | 10:32AM |
| 8 | THE COURT:  Overruled.  Go ahead.  Do you | 10:32AM |
| 9 | understand the last question? | 10:32AM |
| 10 | THE WITNESS:  Could you rephrase -- could you | 10:32AM |
| 11 | rephrase it, please? | 10:32AM |
| 12 | BY MS. MCCONWELL:  (CONTINUING) | 10:32AM |
| 13 | Q.   So you would be able to testify to any change of | 10:32AM |
| 14 | ownership in any of these aircraft? | 10:32AM |
| 15 | MS. M. MILLER:  Objection, Your Honor. | 10:32AM |
| 16 | THE COURT:  If -- if there was any. | 10:32AM |
| 17 | MS. M. MILLER:  If there was any, right. | 10:32AM |
| 18 | THE WITNESS:  Absolutely. | 10:32AM |
| 19 | THE COURT:  All right.  Overruled. | 10:32AM |
| 20 | BY MS. MCCONWELL:  (CONTINUING) | 10:32AM |
| 21 | Q.   And would -- and were there? | 10:32AM |
| 22 | A.   These were all alter egos of Jon Walker -- | 10:33AM |
| 23 | Q.   That wasn't my -- | 10:33AM |
| 24 | A.   -- so there was no change -- | 10:33AM |
| 25 | Q.   -- question. | 10:33AM |

*Direct - Khamvongsa*

1        A.    -- as to the ownership.                          10:33AM

2              THE COURT:  Wait, wait.  Just -- just -- the      10:33AM

3  answer -- what's the answer to that question, was there any?  10:33AM

4  Was that your question, was there any changes?  Is that your  10:33AM

5  question --                                                   10:33AM

6              MR. MARTIN:  Your Honor, I have an objection that 10:33AM

7  -- that the witness needs to be instructed to answer the      10:33AM

8  question and not do evidentiary harpoons like he just did.    10:33AM

9  He's making these statements up about alter egos that there's 10:33AM

10 no evidence --                                                10:33AM

11             MS. M. MILLER:  Your Honor, he's --               10:33AM

12             THE COURT:  Wait, wait, wait, hold -- wait,       10:33AM

13 Counsels.  No, no, I disagree with that.  I think he's trying 10:33AM

14 to answer.  You got -- we've got three lawyers breathing down 10:33AM

15 his back right now, so let's -- let's calm down, and we got a  10:33AM

16 judge right next to him.  So let's -- let's -- let's -- so, go 10:33AM

17 ahead, proceed.  What's your question?                        10:33AM

18 BY MS. MCCONWELL: (CONTINUING)                                10:33AM

19     Q.    Did you look at the registration for each of these  10:33AM

20 aircraft?                                                      10:33AM

21     A.    Through the course of my investigation, yes.        10:33AM

22     Q.    The registration files?                             10:33AM

23     A.    Yes.                                                10:33AM

24     Q.    All right.  Okay.  So you looked at the individual  10:33AM

25 registration for each of these aircraft?                      10:33AM

*Direct - Khamvongsa*

```
 1      A.   Again, that's yes.                                    10:34AM

 2           MS. M. MILLER:  Your Honor, he's answered that        10:34AM

 3  question twice now.  May we move on?                           10:34AM

 4           THE COURT:  Okay?  Yes?                                10:34AM

 5           MS. MCCONWELL:  All right.                             10:34AM

 6           THE COURT:  Asked and answered.  Okay.  Go ahead,      10:34AM

 7  next question.                                                 10:34AM

 8           Need some water?                                      10:34AM

 9  BY MS. M. MILLER: (CONTINUING)                                 10:34AM

10      Q.   So of the evidence --                                 10:34AM

11           THE WITNESS:  Yes, please.                            10:34AM

12           THE COURT:  Let him get water.                        10:34AM

13  BY MS. M. MILLER: (CONTINUING)                                 10:34AM

14      Q.   Of the --                                             10:34AM

15           THE COURT:  Let him get a water.                      10:34AM

16           MS. M. MILLER:  Yeah, absolutely.  He needs it,       10:34AM

17  I'm sure.  (Laughing.)                                         10:34AM

18           THE COURT:  All right.  Next.                         10:34AM

19           MS. M. MILLER:  Yes, Your Honor.                      10:34AM

20  BY MS. M. MILLER: (CONTINUING)                                 10:34AM

21      Q.   Of the evidence that you reviewed from 2000 to        10:34AM

22  present regarding the ownership of the helicopters at issue,   10:34AM

23  can you please tell the jury what evidence did you see that    10:34AM

24  indicates that Hansen Helicopters owned the helicopters at     10:34AM

25  issue?                                                         10:34AM
```

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | MS. MCCONWELL:  Is this limited to 40-1, | 10:34AM |
| 2 | Demonstrative Aid 40-1? | 10:34AM |
| 3 | MS. M. MILLER:  Yes. | 10:34AM |
| 4 | THE WITNESS:  There is a document in which | 10:34AM |
| 5 | Mr. Crowe responds to a potential buyer about the helicopters, | 10:35AM |
| 6 | and in that document Mr. Crowe says that everything is owned | 10:35AM |
| 7 | by Jon Walker. | 10:35AM |
| 8 | BY MS. M. MILLER: (CONTINUING) | 10:35AM |
| 9 | Q.   Okay.  In addition to that document, did you see | 10:35AM |
| 10 | invoices to Hansen Helicopters for the purchase of | 10:35AM |
| 11 | helicopters? | 10:35AM |
| 12 | MS. MCCONWELL:  And, Your Honor, I'm going to | 10:35AM |
| 13 | object to leading. | 10:35AM |
| 14 | THE COURT:  Overruled.  Go ahead. | 10:35AM |
| 15 | THE WITNESS:  Yes. | 10:35AM |
| 16 | BY MS. M. MILLER: (CONTINUING) | 10:35AM |
| 17 | Q.   Did you see invoices to any other company besides | 10:35AM |
| 18 | Hansen Helicopters? | 10:35AM |
| 19 | A.   No. | 10:35AM |
| 20 | Q.   What else did you see that referenced the purchase of | 10:35AM |
| 21 | helicopters in this case during this time period? | 10:35AM |
| 22 | A.   There was a $4.8 million check that was for -- in the | 10:35AM |
| 23 | memo line for purchase of helicopters. | 10:35AM |
| 24 | Q.   And who was that check made payable to? | 10:35AM |
| 25 | A.   Jon Walker, Defendant Jon Walker. | 10:35AM |

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | MS. MCCONWELL:  And the time period is when? | 10:35AM |
| 2 | 2000 to when? | 10:35AM |
| 3 | MS. M. MILLER:  Current -- | 10:36AM |
| 4 | THE WITNESS:  To present. | 10:36AM |
| 5 | MS. MCCONWELL:  To present. | 10:36AM |
| 6 | MS. M. MILLER:  -- for the fourth time. | 10:36AM |
| 7 | THE COURT:  All right, Counsel, you don't need to | 10:36AM |
| 8 | -- | 10:36AM |
| 9 | MS. M. MILLER:  Well, I mean, Your Honor, I -- I | 10:36AM |
| 10 | was hopeful we'd get done this week -- | 10:36AM |
| 11 | THE COURT:  No -- | 10:36AM |
| 12 | MS. M. MILLER:  -- but maybe -- | 10:36AM |
| 13 | THE COURT:  -- no, we'll get done -- we're going | 10:36AM |
| 14 | to get done even if we have to go till late in the evening, | 10:36AM |
| 15 | which I'm sure you don't want to do that because you don't | 10:36AM |
| 16 | want the jurors to be -- staying late -- | 10:36AM |
| 17 | MS. M. MILLER:  I -- I think we go late, we start | 10:36AM |
| 18 | early, we do whatever we need to do and -- | 10:36AM |
| 19 | THE COURT:  Okay, Counsel -- | 10:36AM |
| 20 | MS. M. MILLER:  -- and we'll get it done. | 10:36AM |
| 21 | THE COURT:  -- we don't need -- I don't need | 10:36AM |
| 22 | everybody to comment on the evidence or comment on Counsel's | 10:36AM |
| 23 | questioning.  Just keep it professional. | 10:36AM |
| 24 | MS. M. MILLER:  All right.  Your Honor, at | 10:36AM |
| 25 | this -- | 10:36AM |

*Direct - Khamvongsa*

```
 1              THE COURT:  Yes, Mr. Martin?                      10:36AM
 2              MR. MARTIN:  Your Honor, sidebar comments as      10:36AM
 3    we've had delay things.  And if we could stop that, we could 10:36AM
 4    get through it quicker.                                     10:36AM
 5              THE COURT:  I agree with all -- I --              10:36AM
 6              MS. M. MILLER:  If we could stop the repeated     10:36AM
 7    objections that you already ruled on --                    10:36AM
 8              THE COURT:  Okay.                                 10:36AM
 9              MS. M. MILLER:  -- Your Honor, we could get       10:36AM
10    moving.                                                     10:36AM
11              THE COURT:  The Court --                          10:36AM
12              MR. MARTIN:  Sidebar comments --                  10:36AM
13              THE COURT:  Excuse me.                            10:36AM
14              MR. MARTIN:  This is a sidebar comment.           10:36AM
15              MS. M. MILLER:  This is not a sidebar comment.    10:36AM
16    What --                                                     10:36AM
17              THE COURT:  These are -- these are --             10:36AM
18              MS. M. MILLER:  -- time frame --                  10:36AM
19              THE COURT:  -- sidebar.  It's --                  10:36AM
20              MS. M. MILLER:  -- for the fourth time.           10:36AM
21              THE COURT:  Counsel, this is open bar, and the    10:36AM
22    four -- the fourth-time comment is not necessary.  The Court 10:36AM
23    will take care of that later.  Let's move on, next question. 10:36AM
24    BY MS. M. MILLER:  (CONTINUING)                             10:36AM
25         Q.   So, sir --                                        10:37AM
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | THE COURT: Come on, because, you know, we don't | 10:37AM |
| 2 | have all day, let go. It's 10:25 -- | 10:37AM |
| 3 | MS. M. MILLER: I know. | 10:37AM |
| 4 | THE COURT: -- I think you've asked -- | 10:37AM |
| 5 | MS. M. MILLER: I know. | 10:37AM |
| 6 | THE COURT: -- seven questions, let's go. | 10:37AM |
| 7 | MS. M. MILLER: I know. | 10:37AM |
| 8 | THE COURT: Go ahead. | 10:37AM |
| 9 | MS. M. MILLER: Well, Your Honor, and for the | 10:37AM |
| 10 | record -- | 10:37AM |
| 11 | THE COURT: I mean, everybody's asked seven | 10:37AM |
| 12 | questions. | 10:37AM |
| 13 | MS. M. MILLER: Thank you, Your Honor. | 10:37AM |
| 14 | THE COURT: I'm just overexaggerating, but let's | 10:37AM |
| 15 | go ahead. | 10:37AM |
| 16 | MS. M. MILLER: Yes. | 10:37AM |
| 17 | BY MS. M. MILLER: (CONTINUING) | 10:37AM |
| 18 | Q. Okay. Can you also, please, also tell the members of | 10:37AM |
| 19 | the jury whether you correlated the helicopters that are | 10:37AM |
| 20 | listed here with the tuna boat companies and the leases? | 10:37AM |
| 21 | A. Yes, I did exactly that. In addition -- | 10:37AM |
| 22 | THE COURT: Okay. Hold on. There is an | 10:37AM |
| 23 | objection? | 10:37AM |
| 24 | MS. MCCONWELL: "Here," is "here" referring to | 10:37AM |
| 25 | what? | 10:37AM |

*Direct - Khamvongsa*

```
 1                    THE COURT:  Yes, I agree with that.          10:37AM

 2                    MS. M. MILLER:  It's the Exhibit 725, which is in   10:37AM

 3      front of you that I'm pointing to when I say "here."   10:37AM

 4                    THE COURT:  All right.                    10:37AM

 5                    Answer?                                   10:37AM

 6                    THE WITNESS:  So I did use this document, as it   10:37AM

 7      relates to the aircraft and vessel, and I correlated that --   10:37AM

 8      or compared it to what was we -- what we discussed earlier as   10:37AM

 9      it relates to the schedule of billings and collections, and I   10:37AM

10      used that to identify what helicopters were assigned to those   10:38AM

11      boats and then whether or not those payments were made.   10:38AM

12      BY MS. M. MILLER:  (CONTINUING)                        10:38AM

13         Q.   Okay.  I'd like you to look at a demonstrative aid   10:38AM

14      marked as Government's Demonstrative 40-2, which is an excerpt   10:38AM

15      of paragraph 127 of the Second Superseding Indictment.   10:38AM

16                    MS. M. MILLER:  Mr. Leon Guerrero, can you pull   10:38AM

17      that up?                                               10:38AM

18                    MR. MARTIN:  Since we weren't provided that,   10:38AM

19      could you give me the paragraph number again, please?   10:38AM

20                    MS. M. MILLER:  127.  And it is an excerpt from   10:38AM

21      the Second Superseding Indictment, Your Honor.        10:38AM

22                    THE COURT:  Okay.                         10:38AM

23                    MS. M. MILLER:  And may I publish that to the   10:38AM

24      jury, Your Honor?                                      10:38AM

25                    THE COURT:  You may.                      10:38AM
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | Counsel, any -- did you want a -- did you have a |
| 2 | chance to review that, Mr. Martin? |
| 3 | MR. MARTIN: I have now -- |
| 4 | THE COURT: Okay. |
| 5 | MR. MARTIN: -- that it's been identified, yes, |
| 6 | Your Honor. I have, Judge. |
| 7 | THE COURT: Okay. All right. No objections. |
| 8 | Ms. McConwell, you want to just look at that? Is |
| 9 | that okay with you? |
| 10 | MS. MCCONWELL: Well, yes, Your Honor, other than |
| 11 | Hansen Helicopters is not in that -- this paragraph. |
| 12 | THE COURT: So noted. Okay, you may -- you may |
| 13 | publish. |
| 14 | MS. M. MILLER: Thank you, Your Honor. |
| 15 | (Government's Demonstrative 40-2 admitted) |
| 16 | BY MS. M. MILLER: (CONTINUING) |
| 17 | Q. Special Agent Khamvongsa, can you tell the members of |
| 18 | the jury how did you develop this list of tuna boat companies |
| 19 | for the Second Superseding Indictment? |
| 20 | A. I used the document which we looked at just recently, |
| 21 | the aircraft vessel assignment, as well as the schedule of |
| 22 | billings and collections, which we just talked about earlier, |
| 23 | as well as there is a pilot mechanic listing which actually |
| 24 | identifies the vessel and the tuna boats and which they're |
| 25 | assigned to. So I looked at three different documents to |

*Direct - Khamvongsa*

1    verify and corroborate that the information was correct.        10:39AM

2        Q.   And when you say you looked at the pilot-mechanic       10:39AM

3    list of which pilots and which mechanics were actually working   10:39AM

4    on these boats, where did you get that information from?         10:39AM

5        A.   That information came both from the search warrants,     10:39AM

6    as well as provided by Hansen Helicopters.                       10:39AM

7        Q.   Can we look at Exhibit 183, which has been entered       10:39AM

8    into evidence, please, and this has been entered into evidence   10:40AM

9    so we could it show to the jury.                                 10:40AM

10            MS. M. MILLER:  Mr. Leon Guerrero, can you,             10:40AM

11   please, just highlight the first section across the top of      10:40AM

12   this exhibit?  Thank you, sir.  Is there a way to blow that up  10:40AM

13   at all or is that as big as we get it?  Are we going to make    10:40AM

14   it bigger?  Okay, yeah, that's much better.                     10:40AM

15   BY MS. M. MILLER: (CONTINUING)                                  10:40AM

16       Q.   So, Special Agent Khamvongsa, is this one of the       10:40AM

17   pieces of evidence that you've just described you relied on?    10:40AM

18       A.   This pilot-mechanic list is one of many in which I     10:40AM

19   reviewed and relied upon.                                       10:40AM

20       Q.   And could you, please, tell the members of the jury,   10:41AM

21   what does it say on the upper left-hand corner of this          10:41AM

22   document?                                                       10:41AM

23       A.   "Hansen Helicopters, Inc."                             10:41AM

24       Q.   And then under that?                                   10:41AM

25       A.   "Pilot-mechanic aircraft vessel fax, phone, e-mail     10:41AM

*Direct - Khamvongsa*

1    list."                                                      10:41AM

2        Q.   Okay.  And then what do we see going across the first  10:41AM

3    row, just to show the jury how you coordinated this         10:41AM

4    information?                                                 10:41AM

5        A.   What we see is the fishing company and then we see a  10:41AM

6    listing of the U.S.-registered numbers -- or U.S.-registered  10:41AM

7    helicopters underneath the fishing company.  Then we see the  10:41AM

8    vessels and then we see the boats -- or the vessel names.    10:41AM

9    Then we see the pilot and then the names of the pilots.  Then  10:41AM

10   we see the start contract date and the end contract date for  10:41AM

11   the pilot, days remaining.  Then we see the mechanic, the    10:41AM

12   names of the mechanics underneath, start contract date, the  10:41AM

13   end contract date and the days remaining.  Then we see the fax  10:41AM

14   number and then the e-mail address as it relates to the      10:42AM

15   fishing vessel or the tuna boat.                             10:42AM

16       Q.   Okay.  And, sir, you also referenced the leases.  Can  10:42AM

17   we look at what has been marked but not yet admitted into    10:42AM

18   evidence as Exhibit 2900-2904.  Do you see that document, sir?  10:42AM

19       A.   Yes.                                                 10:43AM

20       Q.   Do you recognize it?                                 10:43AM

21       A.   Yes.                                                 10:43AM

22       Q.   Is it a true and correct copy of the lease that was  10:43AM

23   seized from the Defendant Hansen Helicopters' computers?     10:43AM

24       A.   Yes.                                                 10:43AM

25            MS. M. MILLER:  Your Honor, at this time the         10:43AM

```
 1    Government would offer into evidence what has been previously    10:43AM
 2    marked as Exhibit 2900-2904 through 2909.                         10:43AM
 3              MR. MARTIN:  May I voir dire the witness, Your          10:43AM
 4    Honor?                                                            10:43AM
 5              THE COURT:  You may.                                    10:43AM
 6              MR. MARTIN:  I'm sorry, Your Honor, I'm trying to       10:43AM
 7    pull that up on my computer.                                      10:43AM
 8                                                                      10:44AM
 9                    VOIR DIRE EXAMINATION                             10:44AM
10    BY MR. MARTIN:                                                    10:44AM
11       Q.   Agent Khamvongsa --                                      10:44AM
12              THE COURT:  Could you make that -- I'm sorry,           10:43AM
13    Mr. Leon Guerrero, can you make that a little bigger?  Just       10:43AM
14    the... that helps me.                                            10:44AM
15              Okay, go ahead.  Yes, go ahead, Mr. Martin.            10:44AM
16    BY MR. MARTIN: (CONTINUING)                                       10:44AM
17       Q.   Agent Khamvongsa --                                      10:44AM
18              MR. MARTIN:  If we could go to the last page of         10:44AM
19    this document, Mr. Leon Guerrero, so we the agent can see it.    10:44AM
20              THE COURT:  Is that 2909, is that what it would         10:44AM
21    be, Mr. Martin?                                                   10:44AM
22              MR. MARTIN:  Yes, Your Honor.                           10:44AM
23              THE COURT:  Okay.                                       10:44AM
24    BY MR. MARTIN: (CONTINUING)                                       10:44AM
25       Q.   Is that document signed by anyone, sir?                  10:44AM
```

*Direct - Khamvongsa*

1    A.    Yes.                                                  10:44AM

2    Q.    The one that I'm looking at, 2909?                    10:44AM

3    A.    We have the amended copy of this contract that's      10:44AM

4  signed.                                                        10:44AM

5    Q.    I'm asking you about the one on screen in front of     10:44AM

6  you, sir.  If you don't understand my question, please let me  10:44AM

7  know.                                                           10:44AM

8          Is that contract, 290-2909, that's on the screen that  10:44AM

9  the Government sought the admission of, signed by anyone, sir?  10:44AM

10   A.    If you're talking about this particular page, there    10:45AM

11 is no signature on it.  But, again, we do have copies of a      10:45AM

12 signed contract.                                                10:45AM

13   Q.    Agent, did you not understand my question?             10:45AM

14   A.    Go ahead and rephrase it.  I'm -- I apologize if I'm    10:45AM

15 not answering it correctly.                                     10:45AM

16   Q.    The document in front of you on the computer, do you    10:45AM

17 see that document, 2909?                                        10:45AM

18   A.    Yes.                                                    10:45AM

19   Q.    Is there a signature on that screen on that document,   10:45AM

20 sir?                                                            10:45AM

21   A.    As -- if we're talking about specifically what I'm      10:45AM

22 seeing on the screen --                                         10:45AM

23   Q.    Do you not --                                          10:45AM

24   A.    -- there is no --                                      10:45AM

25   Q.    My question --                                         10:45AM

```
 1     A.    -- there is no --                                      10:45AM

 2     Q.    -- is very specific.                                   10:45AM

 3     A.    There is no signature.                                 10:45AM

 4     Q.    That screen, yes, sir.                                 10:45AM

 5     A.    There is no signature.                                 10:45AM

 6     Q.    Okay.  Is there a signature for a boat company or for  10:45AM

 7    a lessee or a lessor on that page, on that screen, sir?       10:45AM

 8     A.    For what I'm saying here, there is --                  10:45AM

 9     Q.    Yes, sir, I'm not talking -- I'm not talking about     10:45AM

10    something else.  I'm talking about the screen I'm looking at  10:45AM

11    that's been provided to me by the Government that they're     10:45AM

12    trying to introduce into evidence, that screen.  Is that -- is 10:46AM

13    that something not understandable?                            10:46AM

14     A.    No, I just want to --                                  10:46AM

15           MS. M. MILLER:  Objection, Your Honor --               10:46AM

16           THE WITNESS:  -- clarify, sir.                         10:46AM

17           MS. M. MILLER:  -- move to strike.                     10:46AM

18           THE COURT:  No, no, no.  Objection overruled.          10:46AM

19           Go ahead.  Go ahead.  Do you understand --             10:46AM

20    BY MR. MARTIN: (CONTINUING)                                   10:46AM

21     Q.    Is there a signature on that document that is on the   10:46AM

22    screen right there by lessee or a lessor?                     10:46AM

23     A.    Only on the screen, no.                                10:46AM

24     Q.    That's all I'm asking about.  I'm not asking about in  10:46AM

25    the universe.  I'm asking about what's on the screen.  Do you 10:46AM
```

*Direct - Khamvongsa*

1  understand that?                                                    10:46AM

2          MS. M. MILLER:  Objection, Your Honor, asked and           10:46AM

3  answered three times now.                                          10:46AM

4          THE COURT:  Okay, the answer is no.                        10:46AM

5          MS. M. MILLER:  Yes.                                       10:46AM

6          THE WITNESS:  Yeah, no.                                    10:46AM

7          THE COURT:  All right, okay.                               10:46AM

8          MR. MARTIN:  I object to the introduction of this          10:46AM

9  exhibit, Your Honor.                                               10:46AM

10         THE COURT:  All right.  Counsel?                           10:46AM

11         MS. MCCONWELL:  Hansen also objects.                       10:46AM

12         MS. M. MILLER:  And, Your Honor --                         10:46AM

13         THE COURT:  All right.  Did you want to respond?           10:46AM

14         MS. M. MILLER:  Yes, Your Honor.                           10:46AM

15 BY MS. M. MILLER: (CONTINUING)                                     10:46AM

16    Q.   This is one part, is it not, sir, of a lease which         10:46AM

17 includes an amendment that is signed?                              10:46AM

18    A.   Yes.                                                       10:46AM

19    Q.   Okay.  Let's look at Exhibit 3035, which is also part      10:46AM

20 of 2900.                                                           10:46AM

21         MR. MARTIN:  Your Honor, I object to the                   10:46AM

22 question --                                                        10:47AM

23         MS. M. MILLER:  If you pull that up to the                 10:47AM

24 screen.                                                            10:47AM

25         MR. MARTIN:  -- unless this -- we have an                  10:47AM

*Direct - Khamvongsa*

1   unsigned document and then she makes reference to the fact          10:47AM

2   that it is an amendment to an unsigned document.                    10:47AM

3               THE COURT:  All right, I think -- okay --               10:47AM

4               MR. MARTIN:  I object to the question.                  10:47AM

5               THE COURT:  -- so -- so are you asking me to hold       10:47AM

6   off on my decision until you --                                     10:47AM

7               MS. M. MILLER:  Yes.                                    10:47AM

8               THE COURT:  -- ask the next question?                   10:47AM

9               MS. M. MILLER:  So that you could see --                10:47AM

10              THE COURT:  All right.                                  10:47AM

11              MS. M. MILLER:  -- the rest of --                       10:47AM

12              THE COURT:  So the --                                   10:47AM

13              MS. M. MILLER:  -- this contract.                       10:47AM

14              THE COURT:  All right.  So you're not moving to         10:47AM

15  admit at this point?                                                10:47AM

16              MS. M. MILLER:  At this point --                        10:47AM

17              THE COURT:  You're going to withdraw your               10:47AM

18  motion --                                                           10:47AM

19              MS. M. MILLER:  -- I'm going to withdraw the            10:47AM

20  motion and we'll go back.                                           10:47AM

21              THE COURT:  -- to -- go ahead.  Go.                     10:47AM

22  BY MS. M. MILLER: (CONTINUING)                                      10:47AM

23      Q.   Let's look at 3035 of Exhibit 2900, please.  And,         10:47AM

24  sir, we got these leases from the defendants' computers,            10:47AM

25  right?                                                              10:47AM

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | MR. MARTIN:  Your Honor, I -- I object. | 10:47AM |
| 2 | MS. M. MILLER:  To what? | 10:47AM |

 1      MR. MARTIN:  Your Honor, I -- I object.          10:47AM

 2      MS. M. MILLER:  To what?                          10:47AM

 3      MR. MARTIN:  I object.  These are not leases.     10:47AM

 4  These are things they seized from a computer.  They are pieces  10:47AM

 5  of paper.  They are not leases.  Her reference to that is --  10:47AM

 6  as evidenced by the exhibit she just tried to introduce is  10:47AM

 7  inappropriate.                                        10:47AM

 8      MS. M. MILLER:  Your Honor, the --               10:47AM

 9      THE COURT:  Okay.  The objection -- I'm sorry.   10:47AM

10  The objection will be overruled.  Go ahead.  On here -- on  10:47AM

11  the -- on the -- on the characterization --          10:47AM

12      MS. M. MILLER:  Yes.                              10:47AM

13      THE COURT:  -- of leases.                         10:47AM

14      MS. M. MILLER:  Yes.                              10:47AM

15      THE COURT:  All right.  Overruled.               10:47AM

16      MS. M. MILLER:  Now --                            10:47AM

17      THE COURT:  Go ahead.  Next question --          10:47AM

18      MS. M. MILLER:  Yes.                              10:47AM

19      THE COURT:  -- next objection?                    10:47AM

20      MS. MCCONWELL:  Okay.  Well, this was not -- this  10:48AM

21  page is not on any of the -- it's 3035 and it's not on any of  10:48AM

22  the ones that was on our list that she provided.  So I'm going  10:48AM

23  to -- so we're going to have to take a second to look at it.  10:48AM

24      THE COURT:  Okay.                                 10:48AM

25      (Pause.)                                          10:48AM

*Direct - Khamvongsa*

```
 1              MS. MCCONWELL:  Is there -- I'm sorry --        10:51AM

 2              THE COURT:  I'm just waiting for you.  You said 10:51AM

 3     you were going to check to see if you got notice of the 10:51AM

 4     exhibit.                                                 10:51AM

 5              MR. MARTIN:  We didn't.                         10:51AM

 6              MS. MCCONWELL:  Well, we -- we didn't.          10:51AM

 7              THE COURT:  You didn't?                         10:51AM

 8              And, Counsel --                                 10:51AM

 9              MS. M. MILLER:  Yes, Your Honor, so we --       10:51AM

10              THE COURT:  -- they just said they didn't.     10:51AM

11              MS. M. MILLER:  -- did give notice that we were 10:51AM

12     using leases in Mr. Khamvongsa's testimony, and we were going 10:51AM

13     to use a different lease.  We decided to use this lease, and 10:51AM

14     they're right I didn't specify this lease.  But, as Your Honor 10:51AM

15     knows, these leases, all of them came from the defendants, 10:51AM

16     were provided to the defendants --                      10:51AM

17              THE COURT:  Okay.  Let -- okay --              10:51AM

18              MR. MARTIN:  Your Honor, I object to the       10:51AM

19     testifying.                                              10:51AM

20              THE COURT:  -- but, yeah, okay, we don't --    10:51AM

21     putting that aside, the question is did you give them notice 10:51AM

22     of this lease?                                           10:51AM

23              MS. M. MILLER:  Correct --                     10:51AM

24              THE COURT:  The answer is no.                  10:51AM

25              MS. M. MILLER:  -- of this particular lease,   10:51AM
```

*Direct - Khamvongsa*

```
 1    which they have now had an opportunity --               10:51AM
 2              THE COURT:  I'm sorry, "this page," "this page"  10:51AM
 3    meaning --                                                10:51AM
 4              MS. M. MILLER:  These pages, yes.               10:51AM
 5              THE COURT:  -- the signature page?              10:51AM
 6              MS. M. MILLER:  Yes, the signature page which is 10:51AM
 7    on page 3035.                                             10:51AM
 8              MS. MCCONWELL:  Completely separate.            10:51AM
 9              THE COURT:  Okay.  So, I'm sorry, the objection 10:51AM
10    is to what now?                                          10:52AM
11              MS. MCCONWELL:  Well, first --                 10:52AM
12              THE COURT:  Receiving notice of --             10:52AM
13              MS. MCCONWELL:  No, no notice of this page.    10:52AM
14              THE COURT:  This page, and what -- can you     10:52AM
15    identify it for the record.                              10:52AM
16              MS. MCCONWELL:  Sorry, 2900-3035.              10:52AM
17              THE COURT:  Okay, this is the one I see right in 10:52AM
18    front of me.  Okay, so there's no -- no notice of that,  10:52AM
19    uh-huh.                                                  10:52AM
20              And the same with you, Mr. Martin?             10:52AM
21              MR. MARTIN:  Yes, Your Honor.                  10:52AM
22              THE COURT:  Did you have notice of the -- the -- 10:52AM
23    was there a draft this?  Was there a first -- okay, strike 10:52AM
24    that.  Okay, tell -- respond to that then, they didn't have 10:52AM
25    notice of -- they didn't have notice of this page.  Is that -- 10:52AM
```

*Direct - Khamvongsa*

```
 1    you would agree with that?                                    10:52AM

 2              MS. M. MILLER:  No, I won't agree with that.  I     10:52AM

 3    would say that they did have notice of this document, all of  10:52AM

 4    2900 --                                                       10:52AM

 5              THE COURT:  No, that you intended --                10:52AM

 6              MS. M. MILLER:  -- at least in 2900 --              10:52AM

 7              THE COURT:  -- to use it, in other words, you       10:52AM

 8    intended to use it.                                           10:52AM

 9              MS. M. MILLER:  -- but this particular one, no.     10:52AM

10    This one out of the 4,000 pages in 2900, no.                  10:52AM

11              THE COURT:  All right.                              10:52AM

12              MR. MARTIN:  I object, Your Honor.  I was given     10:52AM

13    two pages, which took me all yesterday afternoon to look them 10:52AM

14    all up, and this isn't one of them.                           10:53AM

15              THE COURT:  Uh-huh.                                 10:53AM

16    BY MS. M. MILLER: (CONTINUING)                                10:53AM

17       Q.   Okay.  Let's go --                                    10:53AM

18              THE COURT:  All right.                              10:53AM

19    BY MS. M. MILLER: (CONTINUING)                                10:53AM

20       Q.   -- to Exhibit 2900 --                                 10:53AM

21              THE COURT:  Oh, you're withdrawing --               10:53AM

22    BY MS. M. MILLER: (CONTINUING)                                10:53AM

23       Q.   -- 1142 --                                            10:53AM

24              THE COURT:  -- your motion?                         10:53AM

25              MS. M. MILLER:  Yes.                                10:53AM
```

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | THE COURT:  You're withdrawing your motion? | 10:53AM |
| 2 | MS. M. MILLER:  Yes -- | 10:53AM |
| 3 | THE COURT:  Yes, okay -- | 10:53AM |
| 4 | MS. M. MILLER:  -- because I don't want to waste | 10:53AM |
| 5 | any more time, Your Honor. | 10:53AM |
| 6 | THE COURT:  -- okay, withdrawn.  Next question. | 10:53AM |
| 7 | BY MS. M. MILLER: (CONTINUING) | 10:53AM |
| 8 | Q.   Let's go to 2900-1142, please. | 10:53AM |
| 9 | THE COURT:  Okay. | 10:53AM |
| 10 | BY MS. M. MILLER: (CONTINUING) | 10:53AM |
| 11 | Q.   And, Special Agent Khamvongsa, you will see that | 10:53AM |
| 12 | appear before you. | 10:53AM |
| 13 | MS. M. MILLER:  And I believe that's already been | 10:53AM |
| 14 | entered into evidence; is that correct? | 10:53AM |
| 15 | MS. MCCONWELL:  Yes. | 10:53AM |
| 16 | MS. M. MILLER:  Okay.  So we can publish it -- | 10:53AM |
| 17 | MS. MCCONWELL:  So only as to Jon Walker. | 10:53AM |
| 18 | MS. M. MILLER:  -- to the jury as well. | 10:53AM |
| 19 | THE COURT:  1142? | 10:53AM |
| 20 | MS. M. MILLER:  1142.  2900-1142. | 10:53AM |
| 21 | MS. MCCONWELL:  And we agree that's only admitted | 10:53AM |
| 22 | to Jon Walker. | 10:53AM |
| 23 | MS. M. MILLER:  And since this is admitted, can | 10:54AM |
| 24 | we go ahead and publish to the jury please? | 10:54AM |
| 25 | THE COURT:  Right, that's fine.  So this has been | 10:54AM |

*Direct - Khamvongsa*

1    admitted, 2900 --                                      10:54AM

2              MS. M. MILLER:  Yes, Your Honor.             10:54AM

3              THE COURT:  -- 1142?  All right.             10:54AM

4              MS. M. MILLER:  Yes, Your Honor.             10:54AM

5              THE COURT:  You may admit that -- I mean, you may   10:54AM

6    publish to the jury if --                              10:54AM

7              MS. M. MILLER:  Thank you --                 10:54AM

8              THE COURT:  -- that's admitted.              10:54AM

9              MS. M. MILLER:  -- Your Honor.               10:54AM

10             THE COURT:  Okay.                            10:54AM

11   BY MS. M. MILLER: (CONTINUING)                         10:54AM

12        Q.   Special Agent Khamvongsa, do you see this exhibit in   10:54AM

13   front of you?                                          10:54AM

14        A.   Yes.                                         10:54AM

15        Q.   Okay.  Let me step back for a moment.  When you   10:54AM

16   reviewed the leases that we marked for use in evidence as   10:54AM

17   2900, what did you do to correlate the leases, whether they   10:54AM

18   were signed or not, with the information that Hansen   10:54AM

19   Helicopters gave you in 725, 726, and 183?             10:54AM

20        A.   Ask the question again --                    10:54AM

21        Q.   Yes.                                         10:54AM

22        A.   -- I -- I'm --I don't think I'm understanding it.   10:54AM

23        Q.   What did you do to determine whether the lease was   10:54AM

24   actually executed; in other words, that money came in from   10:54AM

25   that helicopter being leased at that period of time?   10:55AM

*Direct - Khamvongsa*

1      A.   So I used the leases, compared it to what was

2   reflected in what had we discussed about Exhibit 725 and 726.

3   Again, 725 reflects the helicopter and the boat or vessel

4   assignment.   And then I reviewed that to see if any payments

5   came in for those leases as it relates to the lease contracts.

6   And then I went into the bank account to see if they actually

7   received the money for the lease -- lease agreements for these

8   particular helicopters.

9      Q.   And did you do that for the lease we just talked

10  about that was not introduced even though it wasn't signed?

11     A.   Yes.

12              MS. MCCONWELL:  Your Honor, I'd object.

13              THE COURT:  What's the objection?

14              MR. MARTIN:  The objection is she's talking about

15  a document that's not been introduced, she's referred to as a

16  lease.  It's a piece of paper that's unsigned.

17              MS. M. MILLER:  And that's the issue right there,

18  that statement in front of this jury that it's not a lease

19  because it wasn't signed, when he knows --

20              THE COURT:  Oh, wait, wait, Counsel --

21              MR. MARTIN:  Your Honor --

22              THE COURT:  -- okay, wait, wait, wait.

23              MR. MARTIN:  -- we --

24              THE COURT:  Wait, wait, wait --

25              MS. M. MILLER:  -- it was signed --

| | | |
|---|---|---|
| 1 | THE COURT:  -- Counsel, just a minute. | 10:56AM |
| 2 | MR. MARTIN:  She knows and -- | 10:56AM |
| 3 | THE COURT:  Just a minute. | 10:56AM |
| 4 | MR. MARTIN:  -- we got to stop this. | 10:56AM |
| 5 | THE COURT:  No, no, no. | 10:56AM |
| 6 | MR. MARTIN:  We got to stop this. | 10:56AM |
| 7 | THE COURT:  Okay, first of all, it says on the | 10:56AM |

THE COURT:  -- Counsel, just a minute.

MR. MARTIN:  She knows and --

THE COURT:  Just a minute.

MR. MARTIN:  -- we got to stop this.

THE COURT:  No, no, no.

MR. MARTIN:  We got to stop this.

THE COURT:  Okay, first of all, it says on the very first page it's a lease.

MS. M. MILLER:  Yes.

THE COURT:  It just says it's a lease.

MR. MARTIN:  It's unsigned.

THE COURT:  Whether it's a lease or not, you know, that -- that's -- anyway, the point is, you're right it's not admitted into evidence, but he's being asked about the process of what he's doing.

MS. M. MILLER:  Correct.

MR. MARTIN:  And I don't ask -- have a problem with that, but when she's referring to a document that's not signed, I object -- not -- excuse me.  I withdraw that statement.  When she's referring to an exhibit that is not admitted, I object to him testifying about an exhibit that has not been admitted.

THE COURT:  Okay, I thought he was just testifying --

MS. M. MILLER:  The question --

```
 1              THE COURT:  Hold on.  I thought he was testifying    10:56AM

 2  as to the process on the demonstrative exhibit.                 10:56AM

 3              MS. M. MILLER:  Yes.                                 10:56AM

 4              THE COURT:  It was a -- wait just a minute.  I       10:56AM

 5  thought, as I'm listening to this, he's saying the              10:56AM

 6  demonstrative exhibit and trying to track payments as to those  10:57AM

 7  particular vessels; right?  That's --                           10:57AM

 8              MR. MARTIN:  She made a specific reference to the    10:57AM

 9  -- a -- a proposed exhibit that was not admitted.               10:57AM

10              THE COURT:  Okay, well, if that's -- if that's      10:57AM

11  the case, if -- if the Counsel -- Counselor is making a         10:57AM

12  reference to an exhibit that's not admitted, then your -- the   10:57AM

13  objection will be sustained.                                    10:57AM

14              MS. M. MILLER:  Let me respond, please.             10:57AM

15              THE COURT:  Yeah, uh-hmm.                           10:57AM

16              MS. M. MILLER:  Throughout this case, this jury     10:57AM

17  has seen Exhibit 2900 and they've seen leases called leases,    10:57AM

18  some signed, some not.  This issue goes to credibility.  This   10:57AM

19  witness just testified that he used Exhibit 725 --             10:57AM

20              THE COURT:  Okay, wait, wait, Counselor --          10:57AM

21              MS. M. MILLER:  -- which was produced --            10:57AM

22              THE COURT:  -- okay, wait, wait, wait, okay.  I     10:57AM

23  don't need you to give me that explanation.  What the issue     10:57AM

24  is, is let's focus on, because you withdrew your admission of   10:57AM

25  that -- of that exhibit.  Now we're focusing on the process.    10:57AM
```

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | MS. M. MILLER:  We are -- | 10:57AM |
| 2 | THE COURT:  The Court -- | 10:57AM |
| 3 | MS. M. MILLER:  -- the process. | 10:57AM |
| 4 | THE COURT:  Okay.  The Court will overrule the | 10:57AM |
| 5 | objection as to the process -- | 10:57AM |
| 6 | MS. M. MILLER:  The process. | 10:57AM |
| 7 | THE COURT:  -- how he performs his duties on the | 10:57AM |
| 8 | paperwork that he has before him.  But with regard to any | 10:58AM |
| 9 | document that's not admitted, if there's a reference to that | 10:58AM |
| 10 | that's not been admitted, the Court will sustain that | 10:58AM |
| 11 | objection. | 10:58AM |
| 12 | All right.  So you may proceed. | 10:58AM |
| 13 | MS. M. MILLER:  Yes, Your Honor. | 10:58AM |
| 14 | BY MS. M. MILLER: (CONTINUING) | 10:58AM |
| 15 | Q.  In terms of your process of verifying whether there | 10:58AM |
| 16 | was in fact a lease where there was payment made, could you | 10:58AM |
| 17 | please explain to the jury what you did to ensure that that | 10:58AM |
| 18 | process was complete? | 10:58AM |
| 19 | A.  Again, I went through multiple steps.  I -- first, I | 10:58AM |
| 20 | looked at the bank accounts:  Did money come in from the tuna | 10:58AM |
| 21 | boat companies?  And then I identified the tuna boat companies | 10:58AM |
| 22 | which made the payments on the billing schedule that we just | 10:58AM |
| 23 | discussed in 726.  There I compared to see the date and the | 10:58AM |
| 24 | amount to what's reflected in the bank account.  Okay? | 10:58AM |
| 25 | And then from there, I tried to identify what | 10:58AM |

*Direct - Khamvongsa*

1    helicopter was assigned to the tuna boat.  So then we go to    10:59AM

2    725.  725 reflects the aircraft assigned to the vessel.    10:59AM

3         Then from there, I'll look at the lease, I'll look at    10:59AM

4    the registrations with the FAA, I'll review the pilots and    10:59AM

5    mechanics assigned to that helicopter.    10:59AM

6    Q.   Okay.  And now let's look at the lease in front of    10:59AM

7    you, sir, which has been entered into evidence as    10:59AM

8    Exhibit 2900-1142?    10:59AM

9         MS. M. MILLER:  And, Mr. Leon Guerrero, if you    10:59AM

10   could just include the top portion including the recitals but    10:59AM

11   stop above (B).  Yup, thank you so much.    10:59AM

12   BY MS. M. MILLER: (CONTINUING)    10:59AM

13   Q.   Okay.  So what is the date of this lease, sir?    10:59AM

14   A.   It's identified as June 27th, 2008.    10:59AM

15   Q.   And that's within the timeframe of the conspiracy to    10:59AM

16   commit wire fraud as alleged in the Second Superseding    10:59AM

17   Indictment indictment?    10:59AM

18   A.   Yes.    10:59AM

19   Q.   And who is identified as the lessor of this    10:59AM

20   particular aircraft?    11:00AM

21   A.   Wilma's Flight Service.    11:00AM

22   Q.   And what is the registration number of this    11:00AM

23   particular aircraft?    11:00AM

24   A.   The registration number is reflected as N454S.    11:00AM

25   Q.   Did you look at, as Ms. McConwell asked you, the    11:00AM

*Direct - Khamvongsa*

1    registration information relating to this aircraft?    11:00AM

2        A.    Yes.    11:00AM

3            MS. M. MILLER:    Could we, please, pull up the    11:00AM

4    summary chart for registrations which has been entered into    11:00AM

5    evidence as Exhibit 1252, I believe.    11:00AM

6    BY MS. M. MILLER: (CONTINUING)    11:00AM

7        Q.    N454S, is that the correct number of the helicopter?    11:00AM

8        A.    Yes, that is correct, N454S.    11:00AM

9            MS. M. MILLER:    Okay.    If we could go to N454S,    11:01AM

10   please.    And can you highlight that please?    All the way down    11:01AM

11   to the bottom, please.    All the way.    Yup, perfect.    Thank    11:01AM

12   you.    11:01AM

13   BY MS. M. MILLER: (CONTINUING)    11:01AM

14       Q.    Could you tell the members of the jury who registered    11:01AM

15   that aircraft in 1996, it looks like?    11:01AM

16       A.    Hansen Helicopters.    11:02AM

17       Q.    And then who registered that aircraft in 1999?    11:02AM

18       A.    Eddie Air, Inc.    11:02AM

19       Q.    And let's look at Exhibit 829, please, sir.    Do you    11:02AM

20   see Eddie Air, Inc. on Exhibit 829 as one of the Vanuatu    11:02AM

21   companies?    11:02AM

22       A.    Yes, that's correct.    11:02AM

23       Q.    Who registered the helicopter after Eddie's Air?    11:02AM

24       A.    Dave's Helicopter.    11:02AM

25       Q.    Who was the registered owner of the helicopter    11:02AM

*Direct - Khamvongsa*

1   according to what was filed with the FAA at the time that the    11:02AM

2   lease was entered into that we just saw?    11:02AM

3       A.   Dave's Helicopter Service, Inc.    11:02AM

4       Q.   Now, let's go back to that lease, 2900-1142.  And, by    11:02AM

5   the way, Dave's Helicopter, Inc. also a Vanuatu company on    11:03AM

6   Exhibit 829?    11:03AM

7       A.   Yes, that's correct.    11:03AM

8       Q.   And who's signing these registrations as we see on    11:03AM

9   Exhibit 1252?    11:03AM

10      A.   Defendant Jon Walker.    11:03AM

11      Q.   Okay.  Now, who --    11:03AM

12           MS. M. MILLER:  Can you go to the end of this    11:04AM

13   lease, please and let's remind the jury who signed this lease.    11:04AM

14           THE COURT:  Give me the number on that too,    11:04AM

15   what's exhibit number --    11:04AM

16           MS. M. MILLER:  Yes, Your Honor, we will --    11:04AM

17           THE COURT:  -- when you get to it.    11:04AM

18           MS. M. MILLER:  -- when we get --    11:04AM

19           THE COURT:  Okay.    11:04AM

20           MS. M. MILLER:  Mm-hmm.    11:04AM

21           THE COURT:  Okay.    11:04AM

22           MS. M. MILLER:  And could you highlight the    11:04AM

23   signature, please.    11:04AM

24   BY MS. M. MILLER:  (CONTINUING)    11:04AM

25      Q.   Special Agent Khamvongsa, who signed this lease?    11:04AM

*Direct - Khamvongsa*

1    A.    Defendant Jon Walker.                                    11:04AM

2    Q.    Okay.  And could we go back to the page 1 of the        11:04AM

3    lease, and the first paragraph that identifies the lessor     11:04AM

4    company, who is the lessor company identified in this lease?  11:04AM

5    A.    Wilma's Flight Service, Inc.                            11:05AM

6    Q.    In June 27th of 2008, was Wilma's Flight Service,       11:05AM

7    Inc. the registered owner of the helicopter according to the 11:05AM

8    FAA records?                                                  11:05AM

9    A.    No.                                                     11:05AM

10   Q.    I'd like you to look at what has been previously        11:05AM

11   marked as Government Exhibit 2900-3522.                       11:05AM

12          MS. M. MILLER:  And, Mr. Leon Guerrero, could you       11:06AM

13   highlight the top portion of that, please.                    11:06AM

14   BY MS. M. MILLER: (CONTINUING)                                11:06AM

15   Q.    Do you see this document, sir?                          11:06AM

16   A.    Yes.                                                    11:06AM

17   Q.    Okay.  Do you see the date?  Could you tell the         11:06AM

18   members of the jury what the date is?                         11:06AM

19   A.    January 27th, 2016.                                     11:06AM

20   Q.    And is this within the timeframe of the alleged         11:06AM

21   conspiracy to commit wire fraud?                              11:06AM

22   A.    Yes.                                                    11:06AM

23          MS. M. MILLER:  Mr. Leon Guerrero, can you             11:06AM

24   highlight the registration number of the aircraft being leased 11:06AM

25   in this document.                                             11:06AM

*Direct - Khamvongsa*

```
 1  BY MS. M. MILLER:  (CONTINUING)                          11:06AM
 2      Q.    And do you see that registration number, sir?   11:06AM
 3      A.    Yes.                                             11:06AM
 4      Q.    And what is that registration number?           11:06AM
 5            THE COURT:  Sorry, hold on, hold on.  Hold on one  11:06AM
 6  second.                                                    11:06AM
 7            MS. M. MILLER:  Yes, Your Honor.                 11:06AM
 8            THE COURT:  Hold on, just check with my Court -- 11:06AM
 9  clerk just a minute.  Is that 2900 -- what was the last -- 11:06AM
10            MS. M. MILLER:  35 --                            11:07AM
11            THE COURT:  3522.                                11:07AM
12            MS. M. MILLER:  3522, Your Honor, through 3527.  11:07AM
13  I'm laying the foundation for its admission.               11:07AM
14            THE COURT:  Oh, okay, very well.  Thank you.     11:07AM
15            MS. M. MILLER:  Yes, Your Honor.                 11:07AM
16            THE COURT:  I just wanted clarification.  Go     11:07AM
17  ahead.                                                     11:07AM
18  BY MS. M. MILLER:  (CONTINUING)                            11:07AM
19      Q.    Is that registration number one of the numbers that 11:07AM
20  was on Exhibit 725 that the jury just saw that you received 11:07AM
21  from Hansen Helicopters, sir?                              11:07AM
22      A.    Yes.                                             11:07AM
23            MS. M. MILLER:  Your Honor, at this time the     11:07AM
24  Government would offer into evidence what has been previously 11:07AM
25  marked as Government's Exhibit 2900-3522 to 3527.          11:07AM
```

*Direct - Khamvongsa*

```
 1              THE COURT:  Let me let Counsels look at that --          11:07AM
 2    those numbers and see if there is any objections.                 11:07AM
 3              (Pause.)                                                 11:07AM
 4              MR. MARTIN:  3522, 3527?                                 11:07AM
 5              MS. M. MILLER:  That's correct, Your Honor.              11:07AM
 6              MR. MARTIN:  No objection.                               11:07AM
 7              MS. MCCONWELL:  And admitted to Jon Walker only,         11:07AM
 8    not to Hansen Helicopters.                                        11:07AM
 9              THE COURT:  All right.  Ladies and gentlemen of          11:07AM
10    the jury, Exhibit 2900-3522 through 3527 is admitted without      11:07AM
11    objection as to Jon Walker.  Okay.  You may proceed.              11:08AM
12    (Exhibits 2900-3522 through 3527 admitted.)                       11:08AM
13              MS. M. MILLER:  May I publish it to the jury,            11:08AM
14    Your Honor?                                                       11:08AM
15              THE COURT:  You may.  You may.                           11:08AM
16    BY MS. M. MILLER: (CONTINUING)                                    11:08AM
17      Q.   Special Agent Khamvongsa, did I just write the             11:08AM
18    correct number of the -- the registration number on the board    11:08AM
19    that is the subject of this lease?                                11:08AM
20      A.   N369V is the -- that is the same number that I'm           11:08AM
21    seeing here on the screen.                                        11:08AM
22              MS. M. MILLER:  Okay.  And, Mr. Leon Guerrero,          11:08AM
23    let's go to the top portion of the lease that shows who the       11:08AM
24    lessor is.                                                        11:08AM
25    BY MS. M. MILLER: (CONTINUING)                                    11:08AM
```

*Direct - Khamvongsa*

1     Q.   And, Special Agent Khamvongsa, could you tell the
2  members of the jury who is the lessor identified in this
3  lease?
4     A.   Wilma's Flight Service, Inc.
5     Q.   Okay.  And the date of this lease, sir?
6     A.   January 27th, 2016.
7     Q.   And could we go back to Exhibit 252, the registration
8  chart, and could you tell the members of the jury which
9  company was identified as the register owner of 369V in
10  January of 2016?  And it will take a second to flip back over
11  that chart.
12          MS. M. MILLER:  And could you go to the page that
13  has November 369V, please.  I think it's the prior page.
14          THE COURT:  We have about 38 minutes before --
15          MS. M. MILLER:  Lunch.
16          THE COURT:  -- lunchtime, yeah.  How much longer
17  do you have with this witness do you think, Ms. --
18          MS. M. MILLER:  With objections or without?
19          THE COURT:  No need to be smarty.
20          MS. M. MILLER:  With objections, eh -- probably
21  to the end of the day.
22          THE COURT:  Okay.  All right.
23  BY MS. M. MILLER: (CONTINUING)
24     Q.   So, Special Agent Khamvongsa, let's highlight N369V,
25  please, on the registration chart.

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | MR. LEON GUERRERO: Sorry, I just need one | 11:11AM |
| 2 | moment. | 11:11AM |
| 3 | MS. M. MILLER: Okay. | 11:11AM |
| 4 | THE COURT: This has already been admitted, did | 11:11AM |
| 5 | you say? | 11:11AM |
| 6 | MS. M. MILLER: This has already been admitted, | 11:11AM |
| 7 | Your Honor, yes. | 11:11AM |
| 8 | BY MS. M. MILLER: (CONTINUING) | 11:11AM |

Q.   Okay.  So, Special Agent Khamvongsa, can you tell the members of the jury which company was the registered owner of this helicopter according to the paperwork filed with the FAA at the time of the lease?

A.   Foxtrot Air, Inc.

Q.   And who signed that registration paperwork?

A.   Jon Walker, Defendant Jon Walker.

Q.   Now, let's go back to the lease.  And if we look at first paragraph again, can you tell the members of the jury what was the name of the boat that this helicopter was leased to?

A.   The date?

Q.   The name of the boat.

A.   Oh, the name of the boat, I apologize.

     Sea Bounty, LLC/South Pacific Tuna Corp.

Q.   And the date on this lease, sir?

A.   January 27, 2016.

1    Q.   Okay.                                            11:13AM

2         MS. M. MILLER:  And now let's go to page 2 of the    11:13AM

3    lease, Mr. Leon Guerrero.  And if we look at top of the page,    11:13AM

4    can you highlight the top of the page, sir.          11:14AM

5    BY MS. M. MILLER: (CONTINUING)                       11:14AM

6    Q.   How long was this lease supposed to last for?   11:14AM

7    A.   This lease shall be for a period of 36 months from    11:14AM

8    the occurrence of delivery of the aircraft.          11:14AM

9    Q.   Okay.  Now, did you actually go back and look at    11:14AM

10   Exhibits 725 and 726 to ensure that this particular aircraft    11:14AM

11   was listed in those two documents?                   11:14AM

12   A.   Yes.                                             11:14AM

13   Q.   And could you tell the members of the jury, was that    11:14AM

14   particular aircraft listed in those two documents?   11:14AM

15   A.   The aircraft is listed in the aircraft vessel, but    11:14AM

16   it's not listed in the schedule of billings.  What's listed is    11:14AM

17   the tuna boat company, which is referenced as Sea Bounty and    11:14AM

18   South Pacific Tuna Company.                           11:15AM

19   Q.   Okay.  Let's go back to Exhibit 725 which was    11:15AM

20   admitted into evidence already, and let's locate this    11:15AM

21   particular aircraft in Exhibit 725.                  11:15AM

22         MS. M. MILLER:  Okay.  And could you do a search,    11:15AM

23   Mr. Leon Guerrero, for -- yup, there we go.  And we're    11:15AM

24   highlighting that portion of 725.                    11:15AM

25   BY MS. M. MILLER: (CONTINUING)                       11:15AM

*Direct - Khamvongsa*

```
 1     Q.   So do you see that aircraft that was part of that
 2  lease, sir?
 3     A.   Yes.
 4     Q.   And --
 5            MS. MCCONWELL:  I have a question, are we on
 6  page 1?  Is that where you're highlighting on page 1?  I would
 7  object to --
 8            MS. M. MILLER:  It is on page 1, which is on the
 9  screen, Your Honor.
10            MS. MCCONWELL:  Yeah, I would object to the time
11  frame.
12            MS. M. MILLER:  It's identified as that.
13            THE COURT:  I'm sorry?  You're objecting what?
14            MS. MCCONWELL:  Okay, never mind.
15            THE COURT:  No objection?  Okay.  Go ahead,
16  proceed.
17  BY MS. M. MILLER:  (CONTINUING)
18     Q.   And do you see the name of the vessel?
19     A.   Yes, the vessel is Sea Bounty.
20     Q.   And does that match up with the lease that we just
21  saw?
22     A.   Yes, it does.
23     Q.   Is there any place else on this document where we see
24  a reference to N369V?
25     A.   It's referenced throughout the document.
```

*Direct - Khamvongsa*

1    Q.   Okay.                                               11:16AM

2    A.   And, in the range of this document, it goes from   11:16AM

3    August 2014 to May of 2018.                              11:16AM

4    Q.   Okay.  And you said that Sea bounty is also on      11:16AM

5    Exhibit 726.  Can we go to Exhibit 726 please, and can you,  11:16AM

6    please, go to Sea Bounty.                                11:17AM

7         (Pause.)                                            11:17AM

8    BY MS. M. MILLER: (CONTINUING)                           11:17AM

9    Q.   Okay.  Sir, do you see that reference to Sea Bounty 11:18AM

10   on Exhibit 726 as well?                                  11:18AM

11   A.   Yes.                                                11:18AM

12   Q.   Okay.  And then with the schedule of billings and   11:18AM

13   records that you reviewed in this case, can you tell the 11:18AM

14   members of the jury, was there anything different that   11:18AM

15   occurred during the three-year period of this lease that 11:18AM

16   changed that number from N369V to something else?        11:18AM

17   A.   If we -- if you go back to the prior exhibit, the   11:18AM

18   aircraft vessel exhibit, you'll see that there is a small 11:18AM

19   break sometime around January 2017 which a different boat is 11:18AM

20   identify -- or, I mean, excuse me, helicopter is identified. 11:18AM

21   Q.   Okay.  And could you go back to 725 please, and to  11:18AM

22   January 5th of 2017, and do you remember what the registration 11:19AM

23   number was of the helicopter that was used with Sea Bounty 11:19AM

24   during that short period of time?                        11:19AM

25   A.   I don't remember the exact.  I just recall it being a 11:19AM

*Direct - Khamvongsa*

1    RP number -- an RP prefix, which is a Philippine aircraft.    11:19AM

2        Q.    Okay.    We're going to locate it in 725 and we will --    11:19AM

3    we'll show you and the jury.    11:19AM

4        And do you see the RPC number there with Sea Bounty    11:19AM

5    on page 15 of Exhibit 725?    11:19AM

6        A.    Yes.    11:19AM

7        Q.    And could you read that RPC number to the jury    11:19AM

8    please?    11:20AM

9        A.    It is RPC4913.    11:20AM

10       Q.    What happened before January of 2017, regarding    11:20AM

11   Hansen Helicopters, immediately prior to January of 2017?    11:20AM

12       A.    There was immediately -- there was a transfer of    11:20AM

13   funds of over 7 million -- approximately $7 million in    11:20AM

14   December of 2016 from Hansen Northern Helicopters to Walker    11:20AM

15   Agricola as well as, in October 2016, there was the FBI search    11:20AM

16   warrant that was conducted at Hansen facilities.    11:20AM

17       Q.    Okay.    If we go back to the lease, sir, let's look at    11:20AM

18   the very first paragraph of the lease underneath the    11:20AM

19   identification of the lessor and the helicopter.    11:21AM

20            MS. M. MILLER:    No, that's not it.    11:21AM

21            (Pause.)    11:21AM

22            MS. M. MILLER:    It's 3522.    Yup.    3522, not 3552.    11:21AM

23            (Speaking to co-Counsel.)    11:22AM

24            MS. M. MILLER:    Okay.    And if you could    11:22AM

25   highlight, Mr. Leon Guerrero, that first section including    11:22AM

*Direct - Khamvongsa*

```
 1   (A), the top section including (A), including lease of the          11:22AM
 2   aircraft.                                                           11:22AM
 3   BY MS. M. MILLER: (CONTINUING)                                      11:22AM
 4       Q.   Okay.  So can you read what subsection (A) says            11:22AM
 5   there, sir?                                                         11:22AM
 6       A.   "The operator is the registered owner of an aircraft      11:22AM
 7   described as follows:  Helicopter manufacturer, Hughes; model       11:22AM
 8   number 369A; serial number 191021; registration number N369V.      11:22AM
 9   The above referred to as the aircraft is available for              11:22AM
10   delivery to lessee."                                                11:22AM
11       Q.   Now, the first paragraph of this lease identifies who      11:22AM
12   as the operator?                                                    11:23AM
13       A.   Who's the -- Wilma's Flight Services, Inc.                 11:23AM
14       Q.   The registered owner of this helicopter, however, at      11:23AM
15   this same time was --                                               11:23AM
16            MS. MCCONWELL:  Your Honor, I object, that's a            11:23AM
17   misstatement of the document.  The document speaks for itself.     11:23AM
18            THE COURT:  Yeah, the Court will sustain the              11:23AM
19   objection as to the last question.                                 11:23AM
20            MS. M. MILLER:  The -- the last question, Your            11:23AM
21   Honor?                                                              11:23AM
22            THE COURT:  Uh-huh.                                        11:23AM
23            MS. M. MILLER:  Okay.                                      11:23AM
24   BY MS. M. MILLER: (CONTINUING)                                      11:23AM
25       Q.   Who is identified as the registered owner of this         11:23AM
```

1   aircraft at the time of this lease?                          11:23AM

2       A.    Foxtrot Air.                                        11:23AM

3              MR. MARTIN:  Your Honor, I object, that's not      11:23AM

4   what the document says if he's referring to the document.    11:23AM

5              THE COURT:  All right.  The Court will sustain     11:23AM

6   the objection.                                               11:23AM

7              MS. M. MILLER:  Your Honor --                      11:23AM

8              THE COURT:  You want to maybe rephrase that.       11:23AM

9              MS. M. MILLER:  -- the registered owner was shown  11:23AM

10  in Exhibit 1252, which is the summary chart of registrations. 11:23AM

11             THE COURT:  All right.                             11:23AM

12             MS. M. MILLER:  The question --                    11:23AM

13             THE COURT:  All right.  So is it -- so is that     11:23AM

14  where it's coming from --                                    11:23AM

15             MS. M. MILLER:  Yes.                               11:23AM

16             THE COURT:  -- the summary chart?                  11:23AM

17             MS. M. MILLER:  Yes.                               11:23AM

18             THE COURT:  All right.  Counsel?                   11:23AM

19             MR. MARTIN:  That's not what she asked.            11:23AM

20             MS. M. MILLER:  That is --                         11:23AM

21             MR. MARTIN:  She asked who was the registered      11:23AM

22  owner.                                                       11:23AM

23             THE COURT:  All right.  So, yeah, so -- so, I      11:23AM

24  mean, just for clarification then that's fine --             11:23AM

25             MS. M. MILLER:  Yes, Your Honor.                   11:23AM

*Direct - Khamvongsa*

```
 1              THE COURT:  -- maybe you can --                11:23AM

 2   BY MS. M. MILLER: (CONTINUING)                            11:23AM

 3      Q.   Go back please --                                 11:23AM

 4              MS. M. MILLER:  Mr. Leon Guerrero, can you,     11:23AM

 5   please, highlight the first part of this lease that identifies  11:24AM

 6   the operator?                                             11:24AM

 7              THE COURT:  All right.  Okay.  I just got a note  11:24AM

 8   from one of the jurors they have to use the restroom, so why  11:24AM

 9   don't we -- let's just go ahead and take our lunch break.  Let  11:24AM

10   me -- hopefully the lunch is here already.  Let's just go take  11:24AM

11   our lunch break early.  Let's do it now --                11:24AM

12              MS. M. MILLER:  Yes, Your Honor.                11:24AM

13              THE COURT:  -- since -- so we don't have to come  11:24AM

14   back.                                                     11:24AM

15              All right.  Please keep an open mind.  Do not   11:24AM

16   form or express any opinion on this case until it's submitted  11:24AM

17   to you.  Do not speak to anyone on any subject connected to  11:24AM

18   the trial.  I'll see you guys as soon as we have our lunch.  11:24AM

19   Hopefully it's delivered.  Go ahead.  Sorry about that.   11:24AM

20              (Jury out at 11:24 p.m.)                        11:24AM

21              THE COURT:  So hopefully lunch is already here.  11:24AM

22   We can come back 15 minutes earlier.  So let's see, let's try  11:25AM

23   to come back at -- well, let's -- well, we'll assume that --  11:25AM

24   just come back at 1:15 unless we tell you otherwise.      11:25AM

25              MS. M. MILLER:  Yes, Your Honor.               11:25AM
```

*Direct - Khamvongsa*

```
 1              THE COURT:  Okay.  Because hopefully it's here.        11:25AM
 2              (Recess taken at 11:25 a.m.)                           11:25AM
 3              (Back on the record at 12:25 p.m.)                     12:25PM
 4              THE COURT:  So still not till this afternoon?          12:25PM
 5    Just checking the...                                            12:25PM
 6              MS. M. MILLER:  Maybe Friday the way it's going.       12:25PM
 7              THE COURT:  Don't say that.  Don't say that.           12:25PM
 8              MR. MARTIN:  I could read you a quote from the         12:25PM
 9    transcript that's very enlightening, Your Honor, about the      12:25PM
10    length of time it will take to finish the testimony.           12:25PM
11              MS. M. MILLER:  And I could read the objections       12:25PM
12    that were repeated over and over and over and over again even  12:26PM
13    after they'd been overruled.                                   12:26PM
14              MR. MARTIN:  Well, those were sustained very good     12:26PM
15    too, Your Honor, if we're going to get into that.             12:26PM
16              THE COURT:  All right.  I feel like -- I feel         12:26PM
17    like David Lujan still in the courthouse.  (Laughing.)         12:26PM
18    Getting more feisty.  All right.  No, I'm just teasing.        12:26PM
19              We'll call in the jurors.  Okay.  So you're going    12:26PM
20    to have him, the witness, testify until the end?              12:26PM
21              MS. M. MILLER:  Yeah, my guess is it will be --       12:26PM
22              THE COURT:  Until this afternoon?  Okay.              12:26PM
23              MS. M. MILLER:  Yup.                                  12:26PM
24              THE COURT:  All right.  Then we'll figure out how     12:26PM
25    many -- how much time you guys want for closing arguments.     12:26PM
```

*Direct - Khamvongsa*

```
1   Yeah, so just think about it, Counsels.  We'll talk about    12:26PM
2   that.                                                         12:26PM
3              (Pause.)                                           12:26PM
4              MS. M. MILLER:  Could we also discuss, Your        12:26PM
5   Honor, potentially going on a little bit longer if we need to. 12:27PM
6              THE COURT:  Yeah, we can do that.  Let's see how   12:27PM
7   today goes.                                                   12:27PM
8              MS. M. MILLER:  Okay.                              12:27PM
9              THE COURT:  It's not going so well, but let's see  12:27PM
10  how it goes today.                                            12:27PM
11             THE WITNESS:  Sorry.                               12:27PM
12             THE COURT:  No, it's not your fault.  It's just    12:27PM
13  that's way it goes.  That's -- it's how trial goes.  Nothing  12:27PM
14  surprises me in trial, let's put it that way.  Uh-huh.        12:27PM
15             (Pause.)                                           12:27PM
16             THE COURT:  No, we could discuss that.  Maybe we   12:27PM
17  could do that, you know, maybe tomorrow we'll go longer --    12:27PM
18             MS. M. MILLER:  Yeah, that's --                    12:27PM
19             THE COURT:  -- or start earlier.                   12:27PM
20             MS. M. MILLER:  I think that would be -- that      12:27PM
21  would be good.                                                12:27PM
22             THE COURT:  Do I have anything in the morning?     12:27PM
23             MR. MARTIN:  Your Honor, the only concern I have   12:27PM
24  I don't know what our jurors' schedules are --                12:27PM
25             THE COURT:  Yeah.                                  12:27PM
```

*Direct - Khamvongsa*

```
 1              MR. MARTIN:  -- and going longer impacts them.        12:27PM
 2              THE COURT:  Yeah, I mean, I'll have all -- I'll        12:27PM
 3    call on and -- let me call -- Emily, can you ask Lani to --      12:27PM
 4    I'll talk to Lani.  I'll have Lani talk to them at break and     12:27PM
 5    say, hey, we're thinking about trying to push this along and     12:27PM
 6    -- because you think -- well, you think the other two            12:27PM
 7    witnesses will take four hours each based on --                  12:28PM
 8              MS. M. MILLER:  Yes.                                    12:28PM
 9              THE COURT:  Okay.  Oh, you think two hours each?        12:28PM
10              MS. MCCONWELL:  No, I think two days each.             12:28PM
11              THE COURT:  Wow.                                        12:28PM
12              MS. M. MILLER:  I've gone through my questions          12:28PM
13    with them, it's --                                               12:28PM
14              THE COURT:  Oh, you mean like -- you mean like          12:28PM
15    total, not just her?                                             12:28PM
16              MS. MCCONWELL:  No, I'm just based on -- based on      12:28PM
17    the time estimates from prior witnesses, I anticipate that       12:28PM
18    Mr. Guzzetti and Mr. Klang will each take two days.  When        12:28PM
19    Mr. Khamvongsa started on the 8th of -- did I say that right?    12:28PM
20              THE WITNESS:  Absolutely.                              12:28PM
21              MS. MCCONWELL:  Okay.  When he started on the 8th      12:28PM
22    of June, we were told that this would be about a 45-minute       12:28PM
23    witness and we're now on -- we're now into the afternoon of      12:28PM
24    day two on this witness.                                         12:28PM
25              THE COURT:  Uh-huh.                                    12:28PM
```

*Direct - Khamvongsa*

```
 1              MS. MCCONWELL:  So --                    12:28PM

 2              MS. M. MILLER:  And, Your Honor --       12:28PM

 3              MS. MCCONWELL:  -- if Mr. Guzzetti and Mr. Klang   12:28PM

 4   are represented to be each four-hour witnesses, I would     12:28PM

 5   anticipate that they're probably --                12:28PM

 6              THE COURT:  And that also depends on my rulings   12:28PM

 7   too.  I mean, so we have the -- is both of them there's a    12:28PM

 8   request -- well, there is a request for -- for Mr. Klang to be  12:29PM

 9   a summary witness.                                 12:29PM

10              MS. M. MILLER:  Correct.                 12:29PM

11              MS. MCCONWELL:  Well, if -- if Mr. Klang's   12:29PM

12   testimony is estimated, I think he'll go longer.   12:29PM

13              THE COURT:  Oh, I don't know, but you're assuming   12:29PM

14   that that's --                                     12:29PM

15              MR. MCCONWELL:  We're assuming.          12:29PM

16              THE COURT:  -- if I grant that request is four?   12:29PM

17              MS. M. MILLER:  Yes, Your Honor.         12:29PM

18              THE COURT:  Okay.  All right.  Well, then --   12:29PM

19              All right.  Call in the jury.            12:29PM

20              MS. M. MILLER:  Your Honor, our colleagues are   12:29PM

21   reporting they're not getting sound.               12:29PM

22              THE COURT:  I'm sorry?                   12:29PM

23              MR. MCCONWELL:  I'm getting no sound on my --   12:29PM

24              THE COURT:  No -- no sound?              12:29PM

25              MS. M. MILLER:  Yeah, I think there's -- oh, now   12:29PM
```

*Direct - Khamvongsa*

1    it is?  Now it is.  Okay, never mind.                    12:29PM
2             THE CLERK:  Sorry, I forgot to turn on the...    12:29PM
3             THE COURT:  Oh, just now?  Okay.  Oh, do you mean 12:29PM
4    like -- because it's getting zoomed out?               12:29PM
5             MS. M. MILLER:  Yes, they weren't hearing it.   12:29PM
6    Yeah, thank you.                                        12:29PM
7             THE CLERK:  My apologies, Your Honor.           12:29PM
8             THE COURT:  Okay, that's fine.  You can hear    12:29PM
9    okay, though, Mr. McConwell, Mr. Han, everybody?  Okay. 12:29PM
10            (Jury in at 12:29 p.m.)                         12:29PM
11            THE COURT:  Welcome back, ladies and gentlemen of 12:29PM
12   the jury.  I hope your lunch was okay.  All right.  We'll go 12:29PM
13   ahead and start -- continue on with this witness.       12:29PM
14            You may proceed, Ms. Marie Miller.              12:29PM
15            MS. M. MILLER:  Yes, Your Honor.  Thank you.    12:30PM
16   BY MS. M. MILLER: (CONTINUING)                          12:30PM
17     Q.   Special Agent Khamvongsa, let's go back to       12:30PM
18   Exhibit 1252, and I'm going to have Ms. Miller now show that 12:30PM
19   on the screen at the name of the registered owner of 369V, and 12:30PM
20   then we're also going to look at the lease for that     12:30PM
21   helicopter.                                             12:30PM
22            MS. MCCONWELL:  Which page of 125 -- 1252?      12:30PM
23            THE COURT:  What did you say, what --           12:30PM
24            MS. M. MILLER:  It will be up on the screen in a 12:30PM
25   moment, Your Honor.                                     12:30PM

*Direct - Khamvongsa*

```
 1              THE COURT:  Okay.  Yeah, what exhibit is coming    12:30PM
 2   up?  1252?                                                    12:30PM
 3              MS. M. MILLER:  Yes.                                12:30PM
 4              THE COURT:  Has this already been admitted?        12:30PM
 5              MS. M. MILLER:  Yes, it's already been admitted.   12:30PM
 6   We've already actually shown it to the jury --                12:30PM
 7              THE COURT:  Okay.                                   12:30PM
 8              MS. M. MILLER:  -- but there has been an           12:30PM
 9   objection, so we're going back to it because I don't know that 12:30PM
10   Counsel remembers the -- the name.                            12:30PM
11              THE COURT:  All right.  1252, what -- okay, let's  12:30PM
12   pull it up.                                                   12:30PM
13              MS. M. MILLER:  Yeah.                               12:30PM
14              MS. MCCONWELL:  What page?                          12:30PM
15              THE COURT:  I think she's going to pull it up      12:30PM
16   right now.                                                    12:30PM
17              MS. MCCONWELL:  Okay.                               12:30PM
18              THE COURT:  Page 8, okay.  1252, page 8.           12:30PM
19              MS. M. MILLER:  Okay.  So what we see here on the  12:31PM
20   screen, Your Honor -- an both of these exhibits have already  12:31PM
21   been entered into evidence, so if we could show it to the     12:31PM
22   jury.                                                         12:31PM
23              THE COURT:  Okay.                                   12:31PM
24   BY MS. M. MILLER:  (CONTINUING)                                12:31PM
25       Q.   Special Agent Khamvongsa, could you remind the jury, 12:31PM
```

*Direct - Khamvongsa*

1  please, sir, what is the name of the registered owner of the    12:31PM

2  helicopter we identified as N369V?    12:31PM

3      A.   Foxtrot Air.    12:31PM

4      Q.   And what is the name of the lessor entering into the    12:31PM

5  contract with the tuna boat company that you see below the    12:31PM

6  excerpt from 1252?    12:31PM

7      A.   Wilma's Flight Service.    12:31PM

8      Q.   All right.    12:31PM

9          MS. M. MILLER:  Ms. Miller, now could you please    12:31PM

10  get rid of 1252 and go to Section 8 of the lease, (pause) and    12:31PM

11  can you highlight that section.  Thank you.    12:33PM

12  BY MS. M. MILLER:  (CONTINUING)    12:33PM

13      Q.   Special Agent Khamvongsa, could you, please, read    12:33PM

14  that paragraph to the jury?    12:33PM

15      A.   "The registration and title to the aircraft shall be    12:33PM

16  in the name of the lessor and the aircraft at all times during    12:33PM

17  the term of this agreement or automatic renewals shall bear    12:33PM

18  internationally-recognized registration markings."    12:33PM

19      Q.   Let me stop you there for a moment.  Was the    12:33PM

20  registration and title to the aircraft in the name of the    12:33PM

21  lessor?    12:33PM

22      A.   The lessor on this lease agreement does not match up    12:33PM

23  with what's in the registration of the FAA.    12:33PM

24      Q.   Okay.  Now, sir, let's look at Section 5 of the    12:33PM

25  lease.  Do you see Section 5?    12:33PM

*Direct - Khamvongsa*

1    A.    Yes.                                              12:34PM

2    Q.    And could you please read the sentence that starts    12:34PM

3    with the "at the sole discretion of the lessor"?       12:34PM

4    A.    "At the sole discretion of the lessor, lessor shall    12:34PM

5    provide a fully qualified and licensed pilot, mechanic, or    12:34PM

6    pilot mechanic for flight operations and maintenance of the    12:34PM

7    aircraft."                                             12:34PM

8    Q.    Sir, do you know who the mechanics were that were    12:34PM

9    assigned to this particular aircraft?                  12:34PM

10   A.    Yes.                                              12:34PM

11   Q.    How do you know?                                  12:34PM

12   A.    I know because it's based upon the records I received    12:34PM

13   from Hansen Helicopters, as well as my review at FAA records.    12:34PM

14   Q.    And who were those mechanics, sir?                12:34PM

15   A.    The mechanics during this time is -- the -- the    12:34PM

16   mechanics were Dixey Dizon and Vilamore Fabian, Jr.    12:34PM

17   Q.    Were they certified by the FAA at the time that they    12:34PM

18   were working on this aircraft?                         12:34PM

19   A.    No, they were not FAA-certificated mechanics.    12:34PM

20   Q.    Okay.  Let's go to Section 13 of this lease, please,    12:35PM

21   and could you tell the members of the jury what law applies in    12:35PM

22   the event that there were any issues with this lease?    12:35PM

23   A.    The laws of United States -- the laws of United    12:35PM

24   States jurisdiction where appropriate.                 12:35PM

25   Q.    Okay.  Now, let's look at Section 4 of the lease.    12:35PM

*Direct - Khamvongsa*

1   Now, when we look at Section 4 of the lease, can you please

2   read the first sentence of the second paragraph there

3   regarding indemnification and insurance?

4       A.    The first sentence of which?

5       Q.    Second paragraph, please.

6       A.    "Lessor shall maintain in full force and effect

7   sufficient insurance to cover loss of or damage to the

8   aircraft resulting from flight operations or maintenance

9   procedures performed by members of the air crew."

10      Q.    Could you tell the members of the jury in this case

11  who is the lessor?

12      A.    The lessor is -- as it -- as it relates to this

13  contract?

14      Q.    Yes.

15      A.    Is Wilma's Flight Services, Inc.

16      Q.    And did your investigation uncover the insurance that

17  the lessor had or did not have in this case?

18      A.    The -- Wilma's Flight Services did not have any

19  outside or third-party insurance.

20      Q.    Okay.  Now, let's look at the first paragraph, and

21  can you read the first sentence of the first paragraph to the

22  jury about the tuna boat companies' obligations?

23      A.    So again read the first paragraph?

24      Q.    Just read the first sentence of the first paragraph.

25      A.    "Lessee agrees to indemnify lessor against all

1  losses, including costs and expenses, by reasons of claims for          12:37PM

2  injury to or death of persons and loss or damage to property             12:37PM

3  arising from or in a manner connected with the negligent                  12:37PM

4  possession, use, or operation of the aircraft by lessee or its           12:37PM

5  agent during the term of this lease."                                     12:37PM

6      Q.   During the course of this investigation, sir, did you          12:37PM

7  determine whether the lessee in this case did, in fact, obtain           12:37PM

8  insurance in conjunction with Section 4 of this lease?                   12:37PM

9      A.   Yes.                                                            12:37PM

10     Q.   And could you explain to the jury how you determined           12:37PM

11 that?                                                                     12:37PM

12     A.   I obtained insurance documents from South Pacific              12:37PM

13 Tuna Company which is identified in this contract, and they              12:37PM

14 provided it to me.                                                       12:37PM

15          MS. MCCONWELL:  Your Honor, I object, I think the              12:37PM

16 question's non-responsive and there's no foundation.  I mean,           12:37PM

17 the response is non-responsive and there's no foundation.               12:37PM

18          THE COURT:  All right.  Rephrase the question                  12:37PM

19 then.                                                                     12:37PM

20          MS. M. MILLER:  Yes.                                           12:37PM

21 BY MS. M. MILLER: (CONTINUING)                                           12:37PM

22     Q.   Could you please tell the members of the jury what            12:37PM

23 you reviewed that supports your earlier testimony that you did          12:37PM

24 obtain information regarding this particular tuna boat                   12:38PM

25 company's obtaining of insurance?                                        12:38PM

*Direct - Khamvongsa*

```
 1       A.   I reviewed an insurance policy from South Pacific --    12:38PM
 2   South Pacific Tuna Company Corporation that --                   12:38PM
 3            MS. MCCONWELL:  Your Honor, I object to him             12:38PM
 4   testifying about something not in evidence.                      12:38PM
 5            THE COURT:  All right.  Just -- just say what you       12:38PM
 6   reviewed, that's it.  Don't say what it says.  Just say what     12:38PM
 7   you reviewed.  She just asked what did you review.               12:38PM
 8            THE WITNESS:  Okay.                                     12:38PM
 9            THE COURT:  So just -- I reviewed "X".  Whatever        12:38PM
10   that "X" is.  And hold on a second.  Yeah, go ahead.  Okay.      12:38PM
11   BY MS. M. MILLER: (CONTINUING)                                   12:38PM
12       Q.   So you reviewed an insurance policy?                    12:38PM
13       A.   Yes.                                                    12:38PM
14       Q.   Okay.  I'd like you to look at what has been entered    12:38PM
15   -- not entered into evidence, marked as Exhibit 0092, and it     12:38PM
16   will come up in front of you in one moment.                      12:38PM
17            THE COURT:  What is that again, 0092?                   12:39PM
18            MS. M. MILLER:  Yes, Your Honor.                        12:39PM
19            THE COURT:  Okay.  Dash one here?                       12:39PM
20            MS. M. MILLER:  Yes.                                    12:39PM
21            THE COURT:  Okay.                                       12:39PM
22   BY MS. M. MILLER: (CONTINUING)                                   12:39PM
23       Q.   Do you recognize this?                                 12:39PM
24       A.   Yes.                                                    12:39PM
25       Q.   And is that the insurance policy referred to a moment   12:39PM
```

*Direct - Khamvongsa*

```
 1    ago?                                                          12:39PM

 2              MS. MCCONWELL:  Your Honor, I would -- I object      12:39PM

 3    to it being described or any reference to it until it's been  12:39PM

 4    admitted into evidence.                                       12:39PM

 5              THE COURT:  Overruled.  Go ahead.                    12:39PM

 6    BY MS. M. MILLER: (CONTINUING)                                12:39PM

 7       Q.   Is that the insurance policy that you referred to a   12:39PM

 8    moment ago?                                                   12:39PM

 9       A.   Yes.                                                  12:39PM

10       Q.   And is the aircraft that we just saw the lease for,   12:39PM

11    N369V, included in that insurance policy?                     12:39PM

12       A.   Yes, it is.                                           12:39PM

13       Q.   And does it cover the time frame that we just saw     12:39PM

14    that was also covered by --                                   12:39PM

15              MR. MARTIN:  Your Honor, I object to her --         12:39PM

16    BY MS. M. MILLER: (CONTINUING)                                12:39PM

17       Q.   -- the lease for that insurance policy?               12:39PM

18              MR. MARTIN:  I -- I object.                         12:39PM

19              THE COURT:  Okay, I'm sorry --                      12:39PM

20              MR. MARTIN:  She's going into the substance --      12:39PM

21              THE COURT:  -- what's the objection?                12:39PM

22              MR. MARTIN:  She's going into the substance of a    12:39PM

23    document that's not been admitted.                            12:39PM

24              THE COURT:  I thought this was admitted.            12:39PM

25              MS. M. MILLER:  I'm laying the found- -- no, it's   12:39PM
```

*Direct - Khamvongsa*

1    not admitted yet, Your Honor.                                    12:39PM

2                THE COURT:  Oh.                                       12:39PM

3                MS. M. MILLER:  I'm laying the foundation for it.     12:39PM

4                MR. MARTIN:  And we spent hours on insurance          12:39PM

5    documents the last time we were here and none of these were --   12:39PM

6                MS. M. MILLER:  Your Honor, I'm going to ask,         12:39PM

7    Mr. Martin --                                                    12:39PM

8                THE COURT:  Okay, just a minute --                    12:39PM

9                MS. M. MILLER:  -- to refrain --                      12:39PM

10               THE COURT:  -- just a minute.  Okay, I -- hold        12:39PM

11   on.  I thought this was already admitted.  All right.  So        12:39PM

12   the -- the objection will be sustained as to the substance.      12:39PM

13   Move on.  If you get it admitted --                              12:40PM

14               MS. M. MILLER:  Your Honor, at this time I would      12:40PM

15   offer into evidence Exhibit 92.                                  12:40PM

16               THE COURT:  Okay.                                     12:40PM

17               MR. MARTIN:  Your Honor, I can renew all the          12:40PM

18   objections I had on all the other insurance policies the Court   12:40PM

19   sustained.  I mean, they have -- they have nothing to do with    12:40PM

20   the substance of Counts 100 through 110 in this case, Your       12:40PM

21   Honor.                                                           12:40PM

22               MS. M. MILLER:  Yes, they do, Your Honor.            12:40PM

23               THE COURT:  Okay.  Wait, wait, wait.                  12:40PM

24               MS. M. MILLER:  And would you like me to go --        12:40PM

25               THE COURT:  So -- I'm sorry, so it's -- the           12:40PM

*Direct - Khamvongsa*

```
 1    objection's irrelevant --                                    12:40PM
 2              MS. MCCONWELL:  It's not relevant.                  12:40PM
 3              THE COURT:  -- to -- to which counts?               12:40PM
 4              MR. MARTIN:  100 through --                         12:40PM
 5              MS. MCCONWELL:  Ninety-nine.                        12:40PM
 6              MR. MARTIN:  -- 99, I guess, through 110, Your      12:40PM
 7    Honor --                                                     12:40PM
 8              THE COURT:  Okay.                                   12:40PM
 9              MR. MARTIN:  -- which is the substance of his       12:40PM
10    testimony.                                                   12:40PM
11              THE COURT:  Okay.  So to Counts 99 through 110 is   12:40PM
12    irrelevant.  Okay, what about any other objections?          12:40PM
13              MS. MCCONWELL:  I think hearsay.                    12:40PM
14              THE COURT:  Okay, hearsay.  What else?  Anything    12:40PM
15    else?                                                        12:40PM
16              MS. MCCONWELL:  I don't -- there hasn't been        12:40PM
17    found -- any foundation for it.                              12:40PM
18              THE COURT:  Okay.  All right.                       12:41PM
19              MS. MCCONWELL:  Yeah, it's not -- it's -- it's --   12:41PM
20    and it's not relevant.                                       12:41PM
21              THE COURT:  Okay, I got that.  I got irrelevant,    12:41PM
22    hearsay, foundation.  Any other objections, Counsels?        12:41PM
23              MS. MCCONWELL:  Well, you have my hearsay.          12:41PM
24              THE COURT:  I got it.  I know the three             12:41PM
25    objections so far.                                           12:41PM
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | MS. MCCONWELL:  And 403. | 12:41PM |
| 2 | THE COURT:  Okay, four objections. | 12:41PM |
| 3 | MS. MCCONWELL:  Well... | 12:41PM |
| 4 | THE COURT:  Is that it, four objections?  We'll | 12:41PM |
| 5 | start with the easiest one -- yeah, anything else? | 12:41PM |
| 6 | MR. MARTIN:  Your Honor, last time we tried -- we | 12:41PM |
| 7 | went through this whole thing, and the most telling objection | 12:41PM |
| 8 | was one made by Ms. McConwell when the Court sustained it | 12:41PM |
| 9 | saying that we've been going over the introduction of these | 12:41PM |
| 10 | insurance policies -- | 12:42PM |
| 11 | MS. MCCONWELL:  For hours. | 12:42PM |
| 12 | MR. MARTIN:  -- for hours and hours and it was | 12:42PM |
| 13 | three or four times, and -- and you finally said we're not | 12:42PM |
| 14 | going to go into that anymore -- | 12:42PM |
| 15 | THE COURT:  Okay, all right.  So -- | 12:42PM |
| 16 | MR. MARTIN:  -- and we're doing it again. | 12:42PM |
| 17 | THE COURT:  All right. | 12:42PM |
| 18 | MR. MARTIN:  This is becoming cumulative and | 12:42PM |
| 19 | repetitive. | 12:42PM |
| 20 | THE COURT:  All right.  Oh, okay, so another, | 12:42PM |
| 21 | five.  Let me write it down so I can remember.  And repet-  -- | 12:42PM |
| 22 | okay, repetitive. | 12:42PM |
| 23 | All right.  Let's start with the easier one for | 12:42PM |
| 24 | me -- | 12:42PM |
| 25 | MS. M. MILLER:  Sure. | 12:42PM |

|   |   |   |
|---|---|---|
| 1 | THE COURT:  -- foundation. | 12:42PM |
| 2 | MS. M. MILLER:  Yes, Your Honor.  So -- | 12:42PM |
| 3 | THE COURT:  Have you laid a foundation that this | 12:42PM |
| 4 | witness knows this insurance policy? | 12:42PM |
| 5 | MS. M. MILLER:  Yes, Your Honor, and this witness | 12:42PM |
| 6 | has already testified that this is the insurance policy that | 12:42PM |
| 7 | he obtained from the tuna boat company that he reviewed. | 12:42PM |
| 8 | MS. MCCONWELL:  Your Honor -- | 12:42PM |
| 9 | MS. M. MILLER:  He also testified -- | 12:42PM |
| 10 | THE COURT:  Okay, so you laid -- you said you've | 12:42PM |
| 11 | laid foundation.  Anything else? | 12:42PM |
| 12 | MS. M. MILLER:  I've laid the foundation, yes, | 12:42PM |
| 13 | through his testimony that this is the policy that he obtained | 12:42PM |
| 14 | and he reviewed, and he also already testified that this | 12:42PM |
| 15 | policy pertains to that aircraft that -- | 12:42PM |
| 16 | THE COURT:  Okay, without getting into the -- | 12:42PM |
| 17 | MS. M. MILLER:  Yeah, no -- | 12:42PM |
| 18 | THE COURT:  -- what it pertains to. | 12:42PM |
| 19 | MS. M. MILLER:  -- he said that aircraft -- | 12:42PM |
| 20 | THE COURT:  He said his knowledge of -- | 12:42PM |
| 21 | MS. M. MILLER:  -- that's in this policy -- | 12:42PM |
| 22 | THE COURT:  All right. | 12:42PM |
| 23 | MS. M. MILLER:  -- and this policy covers the | 12:42PM |
| 24 | time frame for the lease of this aircraft. | 12:42PM |
| 25 | THE COURT:  All right. | 12:42PM |

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | MS. M. MILLER:  We also saw -- |
| 2 | THE COURT:  I just want to know -- I just want to |
| 3 | know foundation as to know the foundation as to -- |
| 4 | MS. M. MILLER:  Yes, so we laid -- |
| 5 | THE COURT:  -- the foundation as to how -- |
| 6 | MS. M. MILLER:  -- so we laid the foundation -- |
| 7 | THE COURT:  -- how he can say that this -- |
| 8 | that -- how he can bring -- authenticate that this document -- |
| 9 | MS. M. MILLER:  Yes -- |
| 10 | THE COURT:  -- is what it says. |
| 11 | MS. M. MILLER:  -- so he can authenticate it, |
| 12 | Your Honor, because; number one, it is a business record, |
| 13 | number two -- |
| 14 | THE COURT:  Okay, so you have -- have you laid |
| 15 | the business records exception? |
| 16 | MS. M. MILLER:  He will be able to -- |
| 17 | THE COURT:  So go ahead and do that. |
| 18 | MS. M. MILLER:  -- assert that it's a business -- |
| 19 | THE COURT:  That's the first objection. |
| 20 | MS. M. MILLER:  -- record, number one; number two |
| 21 | -- |
| 22 | THE COURT:  Okay.  Wait, wait, wait, so lay the |
| 23 | foundation now so they can get through that -- I get through |
| 24 | that exhibit -- that objection. |
| 25 | MS. M. MILLER:  Yes. |

```
 1              THE COURT:  Go ahead.                    12:43PM
 2  BY MS. M. MILLER: (CONTINUING)                       12:43PM
 3      Q.   Could you please explain to the Court and to the jury   12:43PM
 4  exactly how you obtained this record?                12:43PM
 5      A.   I obtained this record directly from South Pacific   12:43PM
 6  Tuna Company, which is identified in the contract.   12:43PM
 7      Q.   Okay.  And --                               12:43PM
 8              THE COURT:  Which is what, I'm sorry?    12:43PM
 9              THE WITNESS:  Which is identified in the contract   12:43PM
10  that we just discussed as it relates to N369V.       12:43PM
11              THE COURT:  Okay.  Go ahead.             12:43PM
12  BY MS. M. MILLER: (CONTINUING)                       12:43PM
13      Q.   Okay.  And how do you know that this is a true and   12:43PM
14  correct copy of the insurance policy that they took out for   12:43PM
15  this particular lease?                               12:43PM
16      A.   This -- I know based upon my review of this document   12:43PM
17  and the helicopter identified within this document this   12:44PM
18  insurance --                                         12:44PM
19              MR. MARTIN:  Your Honor, may --          12:44PM
20              THE WITNESS:  -- policy is the same one --   12:44PM
21              MR. MARTIN:  -- may I enter an objection to the   12:44PM
22  question?                                            12:44PM
23              THE COURT:  I'm sorry.                   12:44PM
24              MR. MARTIN:  May I enter an objection?   12:44PM
25              THE COURT:  Yeah.                        12:44PM
```

*Direct - Khamvongsa*

1       MR. MARTIN:  He is not a business records

2  custodian.

3       THE COURT:  Well, I'm -- but hold on.  They're

4  trying to -- they're trying to -- I'm sorry, she's trying to

5  see if she can get it under the business records exception, so

6  let me hear --

7       MR. MARTIN:  He's not a business records

8  custodian.  He's a CID agent with the IRS.  He can't

9  qualify --

10       THE COURT:  Okay, well, let -- okay, let her

11  finish her -- try to get it in.  And if you're right, then

12  I'll sustain the objection.

13       MS. M. MILLER:  And there's also, Your Honor,

14  under 80 --

15       MR. MARTIN:  Let me -- let me --

16       THE COURT:  Okay.

17       MS. M. MILLER:  There's also under --

18       MR. MARTIN:  May I briefly respond?

19       THE COURT:  Yeah.

20       MS. M. MILLER:  We --

21       THE COURT:  Hold on.  I just need to get her --

22  she -- she -- I said lay the foundation.  If the prosecutor

23  can lay it, then I'll let it in.  If she can't, then it's out

24  on foundation.  That's easiest --

25       MR. MARTIN:  I understand.  And in that regard,

1  Your Honor, business records custodian would be someone from          12:44PM
2  the company that produced the document that she's trying to           12:44PM
3  introduce.                                                            12:44PM
4          THE COURT:  Yeah, I think I know what business                12:44PM
5  records exception is --                                               12:44PM
6          MR. MARTIN:  And -- and --                                    12:44PM
7          THE COURT:  -- so okay.  Well, we had -- he --                12:44PM
8  she only just started asking.  Let's see what he says.               12:45PM
9          MS. M. MILLER:  And in --                                     12:45PM
10         THE COURT:  So go ahead -- go ahead, continue on.            12:45PM
11         MS. M. MILLER:  Well, there's -- there's two                  12:45PM
12 things I want to say first before we do this.  Number one, the       12:45PM
13 stipulation that the defense entered into with the Government        12:45PM
14 that said it is unnecessary --                                        12:45PM
15         MR. MARTIN:  No.                                              12:45PM
16         MS. MCCONWELL:  No.                                           12:45PM
17         MS. M. MILLER:  Excuse me.                                    12:45PM
18         THE COURT:  Okay, wait, wait, wait, Counsels --              12:45PM
19         MS. M. MILLER:  That for any --                              12:45PM
20         THE COURT:  -- don't interrupt.  You don't like             12:45PM
21 her to interrupt you.  Go ahead.                                     12:45PM
22         MS. M. MILLER:  Right.  Any of the documents that           12:45PM
23 were seized or subpoenaed.  If you look at the stipulation,          12:45PM
24 they agree that we did not have to bring in a records                12:45PM
25 custodian for any document that was seized or subpoenaed, and        12:45PM

*Direct - Khamvongsa*

1   this document was subpoenaed from the tuna boat companies,   12:45PM

2   number one.   12:45PM

3              THE COURT:  All right.  Okay.   12:45PM

4              MS. M. MILLER:  Number two --   12:45PM

5              THE COURT:  So, first of all -- so if that's the   12:45PM

6   case, then you don't even have to get into the --   12:45PM

7              MS. M. MILLER:  Right.   12:45PM

8              THE COURT:  -- foundation.   12:45PM

9              MS. M. MILLER:  Right.  And that is --   12:45PM

10             THE COURT:  So, okay, okay, stop right there.   12:45PM

11             MS. M. MILLER:  Okay.   12:45PM

12             THE COURT:  Just stop.   12:45PM

13             MS. M. MILLER:  Okay.   12:45PM

14             THE COURT:  Stipulation, Counsel?   12:45PM

15             MS. MCCONWELL:  No, Your Honor, we -- what we   12:45PM

16   stipulated to was what's contained on page -- if you recall,   12:45PM

17   we had this conversation the night before we came to Court.   12:45PM

18             THE COURT:  I can barely recall, but go ahead.   12:46PM

19             MS. MCCONWELL:  Okay.   12:46PM

20             THE COURT:  Barely.   12:46PM

21             MS. MCCONWELL:  So -- and we have the records --   12:46PM

22             THE COURT:  But I'm pretty sure you're going to   12:46PM

23   remind me.   12:46PM

24             MS. MCCONWELL:  -- we have the records custodian   12:46PM

25   which are contained on page 2 of the United States' Amended   12:46PM

```
 1   Witness List, and then we also agreed to the search warrant    12:46PM
 2   that was at Hansen Helicopters.                                 12:46PM
 3              THE COURT:  Okay.                                    12:46PM
 4              MS. MCCONWELL:  And --                               12:46PM
 5              THE COURT:  Okay, the prosecutor has -- okay,        12:46PM
 6   let -- okay, hold on.  So let me just -- let's pull -- let's    12:46PM
 7   pull out the prosecutor's stipulation, and see --              12:46PM
 8              MS. M. MILLER:  Yes.                                 12:46PM
 9              THE COURT:  -- did you agree to this.  Hold on,      12:46PM
10   make it easier.                                                 12:46PM
11              MS. M. MILLER:  1516 is the ECF of the              12:46PM
12   stipulation, and it's paragraph 4 --                           12:46PM
13              THE COURT:  Okay.  So --                            12:46PM
14              MS. M. MILLER:  -- specifically, and paragraph 5.   12:46PM
15              THE COURT:  All right.  And --                      12:46PM
16              MS. M. MILLER:  So that's Exhibit 1516 of ECF       12:46PM
17   paragraph 4 and 5.  Paragraph 4 says, defendants --            12:46PM
18              MR. MARTIN:  You don't need to read.                12:46PM
19              THE COURT:  You don't have to say -- you don't      12:46PM
20   have to say what it says.                                       12:46PM
21              MS. M. MILLER:  Okay.                               12:46PM
22              THE COURT:  Counsel, read it and see if you agree   12:46PM
23   with what the prosecutor just said.                            12:46PM
24              MS. MCCONWELL:  No, Your Honor, and we addressed    12:46PM
25   this --                                                         12:46PM
```

*Direct - Khamvongsa*

```
1              THE COURT:  Okay, I know -- okay --          12:46PM

2              MS. MCCONWELL:  -- on the very first day --  12:46PM

3              THE COURT:  -- even --                       12:46PM

4              MS. MCCONWELL:  -- we were here.             12:46PM

5              THE COURT:  Let me just ask you, you guys can 12:46PM

6    address a thousand things a thousand times ago -- a thousand 12:46PM

7    years ago.  I get that.  My question is I'm here right now. 12:47PM

8    Did you all stipulate to this?  Did you -- if you --  12:47PM

9              MS. MCCONWELL:  Not to this, no.            12:47PM

10             THE COURT:  -- stipulated to this, then we'll 12:47PM

11   discuss it.  If you withdrew your stipulation, we'll discuss 12:47PM

12   it.                                                    12:47PM

13             MS. MCCONWELL:  We did not stipulate to -- to -- 12:47PM

14             THE COURT:  You did not stipulate to --     12:47PM

15             MS. MCCONWELL:  -- to that.                 12:47PM

16             THE COURT:  But did you review what she just sent 12:47PM

17   you?                                                   12:47PM

18             MS. M. MILLER:  No, they're not reviewing it. 12:47PM

19             THE COURT:  Okay, wait.                     12:47PM

20             MS. MCCONWELL:  I'll -- I'll review it.     12:47PM

21             THE COURT:  No, no, just review it.  You guys 12:47PM

22   have to review it.  That's how I'll make my decision.  12:47PM

23             MR. MARTIN:  Can we please have the ECF again? 12:47PM

24             THE COURT:  What the ECF again?  ECC what?  12:47PM

25             MS. M. MILLER:  ECF, Your Honor, is 1516 -- 12:47PM
```

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Uh-hum. | 12:47PM |
| 2 | MS. M. MILLER:  -- page 2, paragraphs 4 and 5. | 12:47PM |
| 3 | THE COURT:  All right. | 12:47PM |
| 4 | (Pause.) | 12:47PM |
| 5 | THE COURT:  And did you guys have a chance to | 12:48PM |
| 6 | review it?  Yeah, did you review -- Ms. McConwell, do you | 12:48PM |
| 7 | agree or disagree? | 12:48PM |
| 8 | MR. MARTIN:  Your Honor, I haven't been -- | 12:48PM |
| 9 | THE COURT:  Oh, you're still reviewing it. | 12:48PM |
| 10 | MR. MARTIN:  I don't have 1516. | 12:48PM |
| 11 | THE COURT:  Could you give them a copy?  Could | 12:48PM |
| 12 | you give them a copy?  Sometimes we get -- you know, you | 12:48PM |
| 13 | got -- you got a million pages -- | 12:49PM |
| 14 | MS. M. MILLER:  It's 1516. | 12:49PM |
| 15 | THE COURT:  --16, page 2 -- | 12:49PM |
| 16 | MS. M. MILLER:  1516 -- | 12:49PM |
| 17 | THE COURT:  -- paragraph 4 and 5? | 12:49PM |
| 18 | MS. M. MILLER:  Yes. | 12:49PM |
| 19 | THE COURT:  Ms. -- why don't you guys review | 12:49PM |
| 20 | that. | 12:49PM |
| 21 | MS. MCCONWELL:  And -- and, Your Honor, no, it | 12:49PM |
| 22 | doesn't -- it doesn't change what my position is.  When | 12:49PM |
| 23 | Ms. Miller and I discussed this the night before I leave at | 12:49PM |
| 24 | 6:00 the next morning, I -- we -- we agreed to was the records | 12:49PM |
| 25 | custodians that are -- | 12:49PM |

*Direct - Khamvongsa*

1          THE COURT:  And so it was amended.  So, I'm        12:49PM

2    sorry, it might --                                        12:49PM

3          MS. MCCONWELL:  -- contained on here --            12:49PM

4          THE COURT:  All right.                             12:49PM

5          MS. MCCONWELL:  -- and -- and what was -- what     12:49PM

6    was got from all of the -- of Hansen Helicopters.  We did not   12:49PM

7    agree to a complete free-for-all that anything that they ever   12:49PM

8    got we were going to agree to, and that is why, when we came    12:49PM

9    back to Court and Ms. Miller asked for another stipulation,     12:49PM

10   and I said, no, I cannot do that --                      12:49PM

11         THE COURT:  All right.                             12:49PM

12         MS. MCCONWELL:  -- because you're misrepresenting  12:49PM

13   what we agreed to.                                        12:49PM

14         THE COURT:  Okay.                                  12:49PM

15         MS. M. MILLER:  Your Honor, what we agreed to --   12:49PM

16         THE COURT:  Okay, wait, wait --                    12:49PM

17         MS. M. MILLER:  -- is in writing.                  12:49PM

18         THE COURT:  Okay, you know what, so why don't we   12:49PM

19   do --                                                     12:49PM

20         MS. M. MILLER:  It's in writing.                   12:49PM

21         THE COURT:  Wait, wait, wait.  Why don't we do     12:50PM

22   this, ladies and gentlemen, we'll see you in ten minutes. 12:50PM

23         Please rise for the jury.  I don't want to keep    12:50PM

24   cutting off people, I'd rather just kind of get through this.  12:50PM

25         (Jury out at 12:50 p.m.)                           12:50PM

*Direct - Khamvongsa*

```
 1              THE COURT:  We're outside the presence of the        12:50PM
 2    jury.  This is what I want to do.  Just let's take -- let's    12:50PM
 3    take a five-minute recess and allow Ms. Miller to talk to      12:50PM
 4    Ms. Miller, Marie -- not you, Marie, but Miss other Miller,    12:50PM
 5    and to go over with your stipulation.  Because if it was       12:50PM
 6    amended -- let them -- let them try to see if they agree or    12:50PM
 7    disagree because I -- because you're, like, in the middle, but 12:50PM
 8    they may have had their own deal.  And I'm not saying they did 12:50PM
 9    or did not.                                                    12:50PM
10              MS. M. MILLER:  Right.                               12:50PM
11              THE COURT:  So let's take five minutes and then      12:50PM
12    we'll come back and talk.                                      12:50PM
13              MS. M. MILLER:  Yes, Your Honor.                     12:50PM
14              THE COURT:  It makes it easier.                      12:50PM
15              MS. M. MILLER:  Yes, Your Honor.                     12:51PM
16              THE COURT:  Because -- because it's true, I did      12:51PM
17    have Ms. McConwell go in and -- and meet with you guys --      12:51PM
18              MS. M. MILLER:  Yes.                                 12:51PM
19              THE COURT:  -- separately.  So let's --              12:51PM
20              MS. M. MILLER:  Yes.                                 12:51PM
21              THE COURT:  -- let's just five minutes, okay.        12:51PM
22              MS. M. MILLER:  Yes.                                 12:51PM
23              THE COURT:  If it takes ten, that's fine.            12:51PM
24              MS. M. MILLER:  Yes, Your Honor.                     12:51PM
25              (Recess taken at 12:51 p.m.)                         12:51PM
```

*Direct - Khamvongsa*

```
 1              (Back on the record at 12:56 p.m.)          12:56PM

 2              THE COURT:  Okay.  We're back on the record  12:56PM

 3    outside the presence of the jury.  The question is, has there  12:56PM

 4    been a stipulation as to specifically this exhibit that's in  12:56PM

 5    question, it's a policy -- an insurance policy.      12:56PM

 6              Ms. Marie Miller is attempting -- to trying to  12:56PM

 7    attempt to get in a foundational colloquy going.  The defense  12:56PM

 8    Counsel -- and then -- and then Ms. Marie Miller said, look,  12:57PM

 9    we don't even have do it this essentially because we have  12:57PM

10    stipulated to the admission without getting a custodian of  12:57PM

11    record.                                              12:57PM

12              Is that correct, Ms. Marie Miller?          12:57PM

13              MS. M. MILLER:  That is correct, Your Honor.  And  12:57PM

14    --                                                   12:57PM

15              THE COURT:  Now -- okay, so that's all.  I just  12:57PM

16    need to focus --                                     12:57PM

17              MS. M. MILLER:  Yes.                        12:57PM

18              THE COURT:  -- streamline this.             12:57PM

19              Ms. McConwell says, and can you -- and my    12:57PM

20    understanding is Ms. McConwell says, no, we never agreed to a  12:57PM

21    -- you guys call it free-for-all, an omnibus-type-of-admission  12:57PM

22    of insurance policies as in this case or documents.  And, in  12:57PM

23    fact, we got together and you spoke to Stephanie Miller to go  12:57PM

24    over and --                                          12:57PM

25              MS. MCCONWELL:  No.                         12:57PM
```

          THE COURT:  I'm sorry, you talked to Marie                    12:57PM

Miller?  You talked to who?                                            12:57PM

          MS. M. MILLER:  I met with --                                12:57PM

          THE COURT:  I'm sorry, wait, wait, wait --                   12:57PM

          MS. M. MILLER:  -- Ms. Laura McConwell.                      12:57PM

          THE COURT:  Hold on, hold on, no, no, no.  I --              12:57PM

let me -- let me talk to Marie -- I mean let me talk to                12:57PM

Ms. McConwell.  You spoke to who?                                      12:57PM

          MS. M. MILLER:  Me.                                          12:58PM

          MS. MCCONWELL:  Ms. Marie Miller and I had a                 12:58PM

conversation --                                                       12:58PM

          THE COURT:  Okay.                                            12:58PM

          MS. MCCONWELL:  -- late on a Tuesday or --

          COURT REPORTER:  I'm sorry, ma'am, can you get on

the microphone, please.

          THE COURT:  Can you get on a mic --

          COURT REPORTER:  I can't hear you.

          THE COURT:  Can you get on a mic because the                 12:58PM

court reporter.                                                       12:58PM

          MS. MCCONWELL:  Ms. Marie Miller and I had a                 12:58PM

telephone conversation late in the evening I believe on a             12:58PM

Tuesday evening before we were -- at the Court's direction            12:58PM

before we were coming back.                                           12:58PM

          THE COURT:  Okay.                                            12:58PM

          MS. MCCONWELL:  Okay?                                        12:58PM

```
1              THE COURT:  And?                           12:58PM
2              MS. MCCONWELL:  And so what we agreed to was she   12:58PM
3    wasn't going to need to call these records custodians --     12:58PM
4              THE COURT:  Right.                         12:58PM
5              MS. MCCONWELL:  -- which are on page 2 of their    12:58PM
6    amended witness list, and they weren't -- and they weren't   12:58PM
7    going to need to call a custodian on the FBI search warrant  12:58PM
8    documents from my client.                          12:58PM
9              THE COURT:  All right.                     12:58PM
10             MS. MCCONWELL:  And I think also the documents    12:58PM
11   that -- that came from Hansen via the -- the -- I think the  12:58PM
12   subpoena.                                          12:58PM
13             THE COURT:  And you guys put that in writing?   12:58PM
14             MS. MCCONWELL:  Well, we didn't put it in       12:58PM
15   writing.  Ms. Miller said she would go ahead and file a     12:58PM
16   stipulation, which she did.                         12:58PM
17             THE COURT:  Okay.                          12:58PM
18             MS. MCCONWELL:  And then you adopted it.  When we 12:58PM
19   got to Court --                                    12:58PM
20             THE COURT:  Right.                         12:58PM
21             MS. MCCONWELL:  -- in May, I did bring it up that 12:58PM
22   we didn't -- that's -- that's much broader than what we had 12:59PM
23   agreed to.  What we agreed to is what I just represented to 12:59PM
24   you, and that's what we've been operating under through the 12:59PM
25   rest of Court.  No, I did not file a separate motion because 12:59PM
```

*Direct - Khamvongsa*

```
 1    we had -- as I understood it, had -- had cleared that up --     12:59PM
 2                THE COURT:  With the Court, with me --               12:59PM
 3                MS. MCCONWELL:  Yes, with you --                     12:59PM
 4                THE COURT:  -- some time ago.                        12:59PM
 5                MS. MCCONWELL:  -- when we were right back --        12:59PM
 6    right back -- when we were back that week of, what, May 9th,    12:59PM
 7    or whatever week we were here.                                  12:59PM
 8                THE COURT:  Uh-huh.  Was this the last week          12:59PM
 9    before we adjourned?                                            12:59PM
10                MS. MCCONWELL:  No, that was first week we came     12:59PM
11    back.                                                           12:59PM
12                THE COURT:  Okay.                                   12:59PM
13                MS. MCCONWELL:  Now, on June 8th, which was our     12:59PM
14    last trial date --                                             12:59PM
15                THE COURT:  Yeah.                                   12:59PM
16                MS. MCCONWELL:  -- then we did spend several        12:59PM
17    hours outside the presence of the jury where Ms. Samantha      12:59PM
18    Miller was attempting to get in Exhibit 102, which is another  12:59PM
19    issue insurance policy --                                      12:59PM
20                THE COURT:  Right.                                  12:59PM
21                MS. MCCONWELL:  -- and was -- the Court ruled       12:59PM
22    that wasn't coming in --                                       12:59PM
23                THE COURT:  I remember that.                        12:59PM
24                MS. MCCONWELL:  -- as with this one --              12:59PM
25                THE COURT:  Okay.  That's what --                   12:59PM
```

```
 1          MS. MCCONWELL:  -- and they don't --                12:59PM

 2          THE COURT:  -- I thought it --                      12:59PM

 3          MS. MCCONWELL:  -- have -- yeah.                     12:59PM

 4          THE COURT:  All right, okay --                      12:59PM

 5          MS. M. MILLER:  Your ruling at that time --         12:59PM

 6          THE COURT:  Wait, wait --                           12:59PM

 7          MS. M. MILLER:  -- was not based on a lack of       01:00PM

 8   foundation.  Your ruling at that time, if we look at the   01:00PM

 9   record, was based on their arguments that it wasn't relevant. 01:00PM

10   That was your ruling at the time.                          01:00PM

11          THE COURT:  Okay, okay, putting that aside --       01:00PM

12   okay, but that's -- that's not really my -- my focus.  Right 01:00PM

13   now my focus is this particular exhibit number and it is -- 01:00PM

14          MS. MCCONWELL:  92.                                 01:00PM

15          MS. M. MILLER:  92.                                 01:00PM

16          THE COURT:  -- Exhibit 92.                          01:00PM

17          MS. M. MILLER:  Yes.                                01:00PM

18          THE COURT:  All right.  So Exhibit 92.              01:00PM

19          MS. M. MILLER:  Yes.                                01:00PM

20          THE COURT:  And your -- your argument is that       01:00PM

21   you've never agreed to the admission.  Ms. McConwell, there is 01:00PM

22   no documentation that shows that you have agreed to the    01:00PM

23   admission of this exhibit, this insurance to policy.       01:00PM

24          MS. MCCONWELL:  That's correct.                     01:00PM

25          THE COURT:  That's all I care about right now.      01:00PM
```

*Direct - Khamvongsa*

|    |                                                                      |        |
|----|----------------------------------------------------------------------|--------|
| 1  | MS. MCCONWELL:  That is correct.                                     | 01:00PM |
| 2  | THE COURT:  You never admit -- admitted -- agreed                    | 01:00PM |
| 3  | to that.  And you said --                                            | 01:00PM |
| 4  | MS. M. MILLER:  And this is the documentation                        | 01:00PM |
| 5  | that proves it.  I sent this stipulation to Ms. McConwell and        | 01:00PM |
| 6  | Mr. Martin and Mr. McConwell and Mr. Han.  The paragraph --          | 01:00PM |
| 7  | THE COURT:  And they signed it?                                      | 01:00PM |
| 8  | MS. M. MILLER:  And they signed off on it and                        | 01:00PM |
| 9  | this Judge, you, granted this.  And it says in paragraph 4 and       | 01:00PM |
| 10 | 5 -- now they're saying, well, we didn't really mean it to be        | 01:01PM |
| 11 | so broad.  I call BS on that, Your Honor, because when               | 01:01PM |
| 12 | you look at paragraph --                                             | 01:01PM |
| 13 | THE COURT:  Okay, as long as you sign -- okay,                       | 01:01PM |
| 14 | wait, wait, wait.  So you signed it.                                 | 01:01PM |
| 15 | MS. M. MILLER:  Yes.                                                  | 01:01PM |
| 16 | THE COURT:  That's all I care about.  All right.                     | 01:01PM |
| 17 | MS. M. MILLER:  Yes, they did.                                       | 01:01PM |
| 18 | MS. MCCONWELL:  No, we did not sign it.                              | 01:01PM |
| 19 | THE COURT:  All right.                                               | 01:01PM |
| 20 | MS. M. MILLER:  And paragraph 4 says --                              | 01:01PM |
| 21 | THE COURT:  Wait, wait.  Did they sign it?                           | 01:01PM |
| 22 | MS. M. MILLER:  They did agree -- it's a joint                       | 01:01PM |
| 23 | stipulation that we filed.  And, yes, here we go, page 2 of          | 01:01PM |
| 24 | the joint stipulation filed by Laura McConwell, Edward               | 01:01PM |
| 25 | McConwell, Mack Martin, Edward Han.                                  | 01:01PM |

*Direct - Khamvongsa*

```
 1                    THE COURT:  Right.  So my --              01:01PM

 2                    MS. M. MILLER:  All of us filed this.  All of us    01:01PM

 3     filed this.  And from May 5th, at the time that we filed this,     01:01PM

 4     until today, from the time you entered an order granting           01:01PM

 5     paragraphs 4 and 5 and 6 of this stipulation, the defendants       01:01PM

 6     have never moved to say, Your Honor, we didn't mean to file        01:01PM

 7     paragraph 4, which says that they stipulate --                     01:01PM

 8                    THE COURT:  I got it.  I got it.            01:01PM

 9                    MS. M. MILLER:  -- to the authenticity and the      01:01PM

10     chain of custody of all --                                         01:01PM

11                    THE COURT:  All right.                     01:01PM

12                    MS. M. MILLER:  -- all records.            01:02PM

13                    THE COURT:  All right.                     01:02PM

14                    MS. M. MILLER:  Now they don't want this policy     01:02PM

15     in, so all of a sudden there's a limitation.                       01:02PM

16                    THE COURT:  Well, no, no, no, the -- I guess the    01:02PM

17     question is, did they file it?  They signed it and filed it,       01:02PM

18     you said yes.                                                      01:02PM

19                    MS. M. MILLER:  They did.                  01:02PM

20                    THE COURT:  And you said what, Ms. McConwell?       01:02PM

21                    MS. MCCONWELL:  I'm saying no, and if I have to     01:02PM

22     go get my airline tickets to show I was on a plane, Ms. Miller    01:02PM

23     prepared it, Ms. Miller filed it.                                  01:02PM

24                    MS. M. MILLER:  Here's the e-mail from you          01:02PM

25     confirming yes, file it.  Do I need to show --                     01:02PM
```

*Direct - Khamvongsa*

1          MS. MCCONWELL:  That you --                        01:02PM

2          MS. M. MILLER:  -- that to the judge.             01:02PM

3          MS. MCCONWELL:  You told me you were going to     01:02PM

4   prepare one and file it and I said that's --              01:02PM

5          MS. M. MILLER:  I sent it to you, Laura.          01:02PM

6          MS. MCCONWELL:  -- great.                         01:02PM

7          MS. M. MILLER:  I didn't say I'm going to prepare 01:02PM

8   one.  I sent you this.  I sent you this.                  01:02PM

9          THE COURT:  All right.  My question --            01:02PM

10         MS. M. MILLER:  You approved it.                  01:02PM

11         THE COURT:  Okay, my question is --               01:02PM

12         MS. MCCONWELL:  Well --                           01:02PM

13         THE COURT:  Wait, hold on, hold on.               01:02PM

14         MS. M. MILLER:  Well what?                        01:02PM

15         THE COURT:  No, because you both are              01:02PM

16  professionals, let's calm down.  We got -- we just got to get  01:02PM

17  to the bottom of this.                                    01:02PM

18         MS. M. MILLER:  I'm just going to find the        01:02PM

19  e-mail --                                                 01:02PM

20         THE COURT:  Now the question.                     01:02PM

21         MS. M. MILLER:  -- now because apparently that's  01:02PM

22  what we need to do.                                       01:02PM

23         THE COURT:  Well, even if you got the e-mail, the 01:02PM

24  question is, did you sign the stipulation.                01:02PM

25         MS. M. MILLER:  Yes.                              01:02PM

*Direct - Khamvongsa*

```
 1              THE COURT:  Wait, you did.  You did, Ms. Marie.    01:02PM
 2   Everybody, your signatures are on -- is everybody's signature  01:02PM
 3   on the stipulation?                                           01:02PM
 4              MS. MCCONWELL:  Well, she put an e-signature --     01:02PM
 5   everybody's e-signature on it.                                01:02PM
 6              THE COURT:  All right.  Did she get your --         01:02PM
 7              MS. M. MILLER:  Which she approved.                 01:03PM
 8              THE COURT:  -- permission to get an e-signature?    01:03PM
 9              MS. M. MILLER:  Yes, she did.                       01:03PM
10              MS. MCCONWELL:  Well, I'm going to have to --       01:03PM
11              THE COURT:  Let her speak.                          01:03PM
12              MS. MCCONWELL:  I'm going to have to pull up and    01:03PM
13   look at the e-mails.  I do not recall --                      01:03PM
14              MS. M. MILLER:  Oh --                               01:03PM
15              THE COURT:  Okay, why don't we come back to         01:03PM
16   this -- hold on -- because this -- this is a foundational     01:03PM
17   question.  Okay, putting that aside, even if you don't        01:03PM
18   agree -- hold on.  Even if -- even if -- even if I can't make 01:03PM
19   a decision on -- on that, the question is can she lay a       01:03PM
20   foundation with this witness.  So let's just get the -- oh,   01:03PM
21   he's gone.  Well, okay, we -- we just got to get -- can he -- 01:03PM
22   can she pull it out and make the -- make it so --             01:03PM
23              MS. M. MILLER:  And let me address that, Your       01:03PM
24   Honor.  So, first, when you look at the exception 803(6) for a 01:03PM
25   business records --                                           01:03PM
```

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Okay, go ahead. | 01:03PM |
| 2 | MS. M. MILLER:  -- the business records -- | 01:03PM |
| 3 | THE COURT:  No, you don't have to read it.  Just | 01:03PM |
| 4 | tell me the -- I got it. | 01:03PM |
| 5 | MS. M. MILLER:  So 803(6) is one way in which it | 01:03PM |
| 6 | comes in, because Special Agent Khamvongsa is able to lay the | 01:03PM |
| 7 | foundation for all of the requirements under -- | 01:03PM |
| 8 | THE COURT:  Okay, as long -- if he could do that, | 01:03PM |
| 9 | then you -- you may get it in under that basis. | 01:03PM |
| 10 | MS. M. MILLER:  And I'm trying to -- | 01:03PM |
| 11 | THE COURT:  So you're trying to do it. | 01:03PM |
| 12 | MS. M. MILLER:  And I have another argument about | 01:03PM |
| 13 | it, Your Honor, besides 803(6).  In addition, there is a | 01:04PM |
| 14 | catch-all provision under the Federal Rules of Evidence for | 01:04PM |
| 15 | the veracity of a document, whether it fits within a | 01:04PM |
| 16 | particular exception or not -- | 01:04PM |
| 17 | THE COURT:  Okay, what -- just what is it? | 01:04PM |
| 18 | MS. M. MILLER:  That is 803 -- | 01:04PM |
| 19 | THE COURT:  Just tell me what it is. | 01:04PM |
| 20 | MS. M. MILLER:  Yes, Your Honor. | 01:04PM |
| 21 | THE COURT:  Don't -- don't read it, because I can | 01:04PM |
| 22 | read myself. | 01:04PM |
| 23 | MS. M. MILLER:  Yes, Your Honor. | 01:04PM |
| 24 | THE COURT:  803 -- | 01:04PM |
| 25 | MS. M. MILLER:  807. | 01:04PM |

*Direct - Khamvongsa*

|     |                                                          |        |
|-----|----------------------------------------------------------|--------|
| 1   | THE COURT:  All right.  Let me just look at 807          | 01:04PM |
| 2   | for a minute.                                            | 01:04PM |
| 3   | MS. M. MILLER:  Yes, Your Honor.                         | 01:04PM |
| 4   | THE COURT:  All right.  She has not been able to         | 01:04PM |
| 5   | try to get through the foundation because you guys are   | 01:04PM |
| 6   | objecting.                                               | 01:04PM |
| 7   | MS. M. MILLER:  Right.                                    | 01:04PM |
| 8   | THE COURT:  So if -- if the prosecutor can get           | 01:04PM |
| 9   | through 80 -- 803(6) through colloquy, then the Court may| 01:04PM |
| 10  | allow it.  So 807, in the alternative narrative, she's asking | 01:04PM |
| 11  | me to look at 807.                                       | 01:04PM |
| 12  | MS. M. MILLER:  Yes, Your Honor.                         | 01:04PM |
| 13  | THE COURT:  Let me look at that really quick,            | 01:04PM |
| 14  | residual exception.                                      | 01:04PM |
| 15  | MS. M. MILLER:  Yes, Your Honor.                         | 01:04PM |
| 16  | THE COURT:  All right.  So she can try to bring          | 01:04PM |
| 17  | it in under 807.  All right.  So --                      | 01:05PM |
| 18  | MS. M. MILLER:  Yes, and then I have a third             | 01:05PM |
| 19  | argument --                                              | 01:05PM |
| 20  | THE COURT:  Okay, so --                                  | 01:05PM |
| 21  | MS. M. MILLER:  -- Your Honor.                           | 01:05PM |
| 22  | THE COURT:  Okay, wait a minute.                         | 01:05PM |
| 23  | MS. M. MILLER:  The third argument is --                 | 01:05PM |
| 24  | THE COURT:  Yeah.                                        | 01:05PM |
| 25  | MS. M. MILLER:  -- it's not being offered for the        | 01:05PM |

*Direct - Khamvongsa*

 1    truth of the matter asserted.  It's being offered to show that      01:05PM
 2    the tuna boat companies relied on the representations of Jon         01:05PM
 3    Walker in these leases that the helicopters were in fact             01:05PM
 4    properly registered, airworthy, and that the airman were in          01:05PM
 5    fact qualified by the FAA.                                           01:05PM
 6            And I want this to be on the record, Your Honor,             01:05PM
 7    because it becomes extremely important.  This is a conspiracy        01:05PM
 8    to commit wire fraud count.  The reason why they're objecting        01:05PM
 9    so vehemently to the introduction of this insurance policy is        01:05PM
10    it shows --                                                          01:05PM
11            THE COURT:  All right.                                       01:05PM
12            MS. M. MILLER:  -- that the state of mind of the             01:05PM
13    tuna boat companies was that they were getting a helicopter         01:05PM
14    that was registered with the FAA properly by the owner, number      01:05PM
15    one; number two, that the helicopter was airworthy according        01:05PM
16    to the FAA; and, number three, that the airmen were in fact         01:05PM
17    FAA certified.                                                       01:05PM
18            The words FAA appear in this Document 50 times in           01:06PM
19    11 pages, that's why they don't want it in --                       01:06PM
20            THE COURT:  All right.                                       01:06PM
21            MS. M. MILLER:  -- because it clearly shows that            01:06PM
22    reliance by the tuna boat companies on their                        01:06PM
23    misrepresentations.  So I would argue that it's not even           01:06PM
24    hearsay because I want to bring it in to show the state of          01:06PM
25    mind of the tuna boat companies who are the victims of the         01:06PM

*Direct - Khamvongsa*

```
1     conspiracy to commit wire fraud.                         01:06PM

2              THE COURT:  Got it.  Okay.                       01:06PM

3              MR. MARTIN:  Your Honor --                       01:06PM

4              THE COURT:  Yeah.                                01:06PM

5              MR. MARTIN:  -- Mr. -- Agent Khamvongsa is not an 01:06PM

6     individual that could testify --                         01:06PM

7              THE COURT:  Okay, let's get him on the stand.    01:06PM

8     Let's just -- outside the presence of the jury, let's just do 01:06PM

9     it.  Let's just see if he can --                         01:06PM

10             MR. MARTIN:  He can't testify as to state of mind 01:06PM

11    of a tuna boat owners.                                   01:06PM

12             THE COURT:  All right, that's -- that's --       01:06PM

13             MR. MARTIN:  They need a tuna boat owner to      01:06PM

14    testify to that.                                         01:06PM

15             THE COURT:  Okay, let's go -- let's just go --   01:06PM

16    let's see if he can do -- get through the foundation first. 01:06PM

17    Let's see if he can get through the -- if they can get   01:06PM

18    through 803(6) and 807.  Okay, and then -- then we could talk 01:06PM

19    about the state of mind later.                           01:06PM

20             MR. MARTIN:  All right.                          01:06PM

21             MS. M. MILLER:  And then, Your Honor, I also have 01:06PM

22    for the Court's record the e-mail that went to Ms. McConwell. 01:06PM

23             THE COURT:  Okay, we'll -- we'll look at that -- 01:06PM

24    we'll look at that later.  Let's just try and see --     01:06PM

25             MS. M. MILLER:  Okay.                            01:06PM
```

*Direct - Khamvongsa*

```
 1              THE COURT:  We'll -- we'll come to that later.     01:07PM
 2   Let's -- because that could -- let's -- let's see if he could 01:07PM
 3   get through this.  This might -- this might be easier.        01:07PM
 4              MS. M. MILLER:  Well, it may be easier, but I      01:07PM
 5   also want it on the record --                                 01:07PM
 6              THE COURT:  Okay, you put it on the record.        01:07PM
 7              MS. M. MILLER:  -- that she had the                01:07PM
 8   stipulation --                                                01:07PM
 9              THE COURT:  All right.                             01:07PM
10              MS. M. MILLER:  -- when she approved filing it     01:07PM
11   with the Court.                                               01:07PM
12              THE COURT:  All right.  So you could show that to  01:07PM
13   her later.  Go ahead.  80 --  go ahead, 803-6.                01:07PM
14              MS. M. MILLER:  Yes.                               01:07PM
15   BY MS. M. MILLER:  (CONTINUING)                               01:07PM
16      Q.   Special Agent Khamvongsa, could you, please, tell the 01:07PM
17   Court whether this particular record is a record that the tuna 01:07PM
18   boat company would normally maintain?                         01:07PM
19      A.   Yes.                                                  01:07PM
20              MR. MARTIN:  Objection; speculation.               01:07PM
21              THE COURT:  Okay, how does he know that?           01:07PM
22              MS. M. MILLER:  Yes.                               01:07PM
23   BY MS. M. MILLER:  (CONTINUING)                               01:07PM
24      Q.   How do you know that, sir?                            01:07PM
25      A.   I know that because the tuna boat company             01:07PM
```

*Direct - Khamvongsa*

1    representative told me this is their record --                01:07PM

2              MR. MARTIN:  Objection; hearsay.                    01:07PM

3              THE WITNESS:  -- and they provided it to me --      01:07PM

4              MR. MARTIN:  Objection; hearsay.                    01:07PM

5              THE WITNESS:  -- directly.                          01:07PM

6              THE COURT:  Okay.  Hearsay?                          01:07PM

7              MS. M. MILLER:  Your Honor, it's not hearsay        01:07PM

8    because, again, it is not being offered for the truth of the  01:07PM

9    matter asserted.                                              01:07PM

10             MR. MARTIN:  What the tuna boat owner said to him   01:07PM

11   is not the --                                                 01:07PM

12             MS. M. MILLER:  The tuna boat company gave him a    01:07PM

13   lease.  The lease itself -- not the lease, the insurance      01:07PM

14   policy.  If you look at the insurance policy itself, the      01:07PM

15   insurance policy --                                           01:08PM

16             Can we pull that back up on the screen so the       01:08PM

17   Court can see it, please?                                     01:08PM

18             MR. MARTIN:  Your Honor, my objection was he was    01:08PM

19   testifying to hearsay, not -- not what the policy --          01:08PM

20             MS. M. MILLER:  He subpoenaed from the tuna boat    01:08PM

21   company their insurance --                                    01:08PM

22             THE COURT:  All right, just ask the question --     01:08PM

23             MS. M. MILLER:  -- policy.                          01:08PM

24             THE COURT:  The objection -- okay, the Court --     01:08PM

25   let me just -- let's clarify this.  Go back to the question.  01:08PM

*Direct - Khamvongsa*

```
 1                MS. M. MILLER:  Yes.                        01:08PM
 2   BY MS. M. MILLER: (CONTINUING)                           01:08PM
 3       Q.   How do you know that this particular insurance  01:08PM
 4   policy, which you obtained from the tuna boat company, is in  01:08PM
 5   fact a business record of the tuna boat company consistent  01:08PM
 6   with the federal rules?                                  01:08PM
 7                MR. MARTIN:  Objection; speculation.         01:08PM
 8   BY MS. M. MILLER: (CONTINUING)                           01:08PM
 9       Q.   How do you know?                                01:08PM
10                THE COURT:  Overruled.                       01:08PM
11                MS. M. MILLER:  Let's hear what he has --    01:08PM
12                THE COURT:  Overruled.                       01:08PM
13                MS. M. MILLER:  -- to say about --           01:08PM
14                THE COURT:  How do you know -- how do you know  01:08PM
15   that?                                                    01:08PM
16   BY MS. M. MILLER: (CONTINUING)                           01:08PM
17       Q.   How do you know?                                01:08PM
18       A.   It was provided directly -- directly to me from the  01:08PM
19   owner of that -- that contractor -- insurance, and that is  01:08PM
20   South Pacific Tuna Company which oversees the tuna boat  01:08PM
21   vessels.                                                 01:08PM
22       Q.   And now --                                      01:08PM
23                THE COURT:  Somebody gave it to you and you  01:08PM
24   believed that that's what it is; that's what you're saying?  01:08PM
25                THE WITNESS:  Yes.                           01:08PM
```

*Direct - Khamvongsa*

```
 1              THE COURT:  Okay.  Next question.            01:08PM
 2    BY MS. M. MILLER:  (CONTINUING)                        01:08PM
 3        Q.   Yes.                                          01:08PM
 4             And when you received it, did you review the entire   01:08PM
 5    insurance policy carefully?                            01:08PM
 6        A.   Yes.                                          01:09PM
 7        Q.   Did you ensure that the policy itself matched up with   01:09PM
 8    the evidence in this case in terms of the aircraft that was   01:09PM
 9    identified in the policy?                              01:09PM
10        A.   Yes.                                          01:09PM
11        Q.   The lease term that was identified in the policy?   01:09PM
12        A.   Yes.                                          01:09PM
13        Q.   The boat that was being used to lease that in the   01:09PM
14    policy?                                                01:09PM
15        A.   Yes.                                          01:09PM
16        Q.   Was there anything in that policy or in that document   01:09PM
17    that made you question the authenticity or veracity of the   01:09PM
18    information contained in the insurance policy?         01:09PM
19        A.   No.                                           01:09PM
20             MS. M. MILLER:  Your Honor, under 807, the    01:09PM
21    residual exception, this clearly comes in.  It also goes to   01:09PM
22    the weight, not the admissibility --                  01:09PM
23             MR. MARTIN:  May I voir dire the witness, Your   01:09PM
24    Honor?                                                 01:09PM
25             THE COURT:  Okay, hold on.  Okay, you're --   01:09PM
```

```
1   you're bringing it under 807.                                01:09PM
2              MS. M. MILLER:  Yes.                               01:09PM
3              THE COURT:  All right, so I got it.                01:09PM
4              All right, so --                                  01:09PM
5              MR. MARTIN:  May I voir dire?                      01:09PM
6              THE COURT:  -- yes, well, you may.                 01:09PM
7                                                                01:09PM
8                        VOIR DIRE                               01:09PM
9   BY MR. MARTIN:                                               01:09PM
10     Q.   Agent Khamvongsa, who gave you this document, the    01:09PM
11  name of the person?                                          01:09PM
12     A.   Dan Hoff of -- or Keith Solar of South Pacific Tuna  01:09PM
13  Company.                                                     01:10PM
14     Q.   What is his title?                                   01:10PM
15     A.   He is the legal counsel that was obtained from --    01:10PM
16  that -- that's for South Pacific Tuna Company.               01:10PM
17     Q.   He's a lawyer?                                       01:10PM
18     A.   Yes.                                                 01:10PM
19     Q.   Does he work for the company?                        01:10PM
20     A.   He worked -- as far as I know, he works for the      01:10PM
21  company.                                                     01:10PM
22     Q.   All right.  Is he an employee of the company?        01:10PM
23     A.   I don't know.  I just know that he represents the    01:10PM
24  company.                                                     01:10PM
25     Q.   Does he -- is it his job to keep the records of the  01:10PM
```

*Direct - Khamvongsa*

```
1    company?                                                    01:10PM
2        A.   Again, he's a representative of the company and he  01:10PM
3    represented the --                                          01:10PM
4        Q.   Is it his job to keep the records of the company?  01:10PM
5        A.   He --                                              01:10PM
6        Q.   Do you understand the question?                    01:10PM
7        A.   He was representing the individuals involved with  01:10PM
8    providing the records.                                      01:10PM
9        Q.   I'm talking about his job.  I'm talking about his  01:10PM
10   responsibility.  Is it his responsibility to keep the records  01:10PM
11   of the company?                                             01:10PM
12       A.   Yes.                                               01:10PM
13       Q.   Okay.  And so where does he store all these records  01:10PM
14   he keeps of the company?                                    01:11PM
15       A.   At the company facility.                           01:11PM
16       Q.   Does he work at the company facility or is he a    01:11PM
17   private lawyer?                                             01:11PM
18       A.   I do not know.  I don't know as it relates to that 01:11PM
19   question.                                                   01:11PM
20       Q.   Okay.  Well, is it his job to keep the records of the  01:11PM
21   company?                                                    01:11PM
22       A.   He is representing -- he's a representative of the 01:11PM
23   company.                                                    01:11PM
24       Q.   I understand you said he's a representative of the 01:11PM
25   company.                                                    01:11PM
```

*Direct - Khamvongsa*

```
 1    A.    And he represented that these --                    01:11PM

 2    Q.    I understand that he's a representative --           01:11PM

 3    A.    -- are true and create documents from the company.  01:11PM

 4    Q.    May I ask the question, sir?                         01:11PM

 5    A.    Yes, sir.                                            01:11PM

 6          THE COURT:  You know, just -- okay, answer the       01:11PM

 7  specific question.  Okay.  Go ahead, what's the question?    01:11PM

 8  BY MS. M. MILLER:  (CONTINUING)                              01:11PM

 9    Q.    They have people at the company whose job it is to   01:11PM

10  keep the records of the company, do they not, sir?          01:11PM

11    A.    Yes, absolutely.                                     01:11PM

12    Q.    And who are those people?                            01:11PM

13    A.    The chief financial officer who provided the records 01:11PM

14  through --                                                   01:11PM

15    Q.    Who is that person, was my question, sir.            01:11PM

16    A.    The name escapes me at the moment.  But --           01:11PM

17    Q.    Okay.  And he would be the person then that would    01:11PM

18  come to the courtroom and show -- tell us that these records 01:11PM

19  are kept in the normal course of business if they are kept in 01:12PM

20  the normal course of business.  Would you agree with that,   01:12PM

21  sir?                                                         01:12PM

22    A.    He represents the company.  He's one of the many that 01:12PM

23  could testify to that.                                       01:12PM

24    Q.    Okay.  And you don't work for the company?           01:12PM

25    A.    I don't work for the company, but the records were   01:12PM
```

*Direct - Khamvongsa*

1    provided --                                                     01:12PM

2        Q.    No, you don't --                                       01:12PM

3        A.    -- from the company.                                   01:12PM

4        Q.    -- work for the company; correct?                      01:12PM

5        A.    No, I do not.  I work for the government.              01:12PM

6        Q.    I -- that's -- all right.                              01:12PM

7              And it's not your job to maintain these records in a   01:12PM

8    normal course of business, is it, sir?                           01:12PM

9        A.    (Pause.)                                               01:12PM

10       Q.    That's a simple question.                             01:12PM

11       A.    It's my job to review business records.               01:12PM

12       Q.    Okay.  Is it your job to maintain the records of this 01:12PM

13   tuna boat company in the normal course of your business, sir?    01:12PM

14       A.    After it's been provided to me from a business as a   01:12PM

15   result from a subpoena, yes.                                     01:12PM

16       Q.    No, I -- my question is, in your day-to-day           01:12PM

17   operations, do you maintain the records of this tuna boat        01:12PM

18   company?                                                         01:12PM

19       A.    Again, if it's provided to me through a subpoena, I   01:13PM

20   do maintain it after it's been provided to me.  If I'm           01:13PM

21   misunderstanding --                                              01:13PM

22       Q.    Before it's --                                         01:13PM

23       A.    -- your question --                                    01:13PM

24       Q.    -- provided to you, sir, before anything is provided  01:13PM

25   to you, is it your job to maintain the records of this tuna      01:13PM

```
1   boat company?                                          01:13PM
2        A.   No.                                          01:13PM
3        Q.   Okay.  And... (pause.)                       01:13PM
4             You know whether or not -- as far as the keeping and  01:13PM
5   maintaining of these records and the practice of keeping and  01:13PM
6   maintaining these records, is that your job before they were  01:13PM
7   given to you, sir?                                     01:13PM
8        A.   It's the job of the custodian of records for the  01:14PM
9   business itself.                                       01:14PM
10       Q.   Okay.  And you would agree with me, you are not the  01:14PM
11  custodian of records for the tuna boat company; isn't that  01:14PM
12  true, sir?                                             01:14PM
13       A.   I am not the custodian of records for the South  01:14PM
14  Pacific Tuna Company.                                  01:14PM
15       Q.   Okay.  And --                                01:14PM
16            MR. MARTIN:  Your Honor, that concludes my voir  01:14PM
17  dire --                                                01:14PM
18            THE COURT:  Okay.                            01:14PM
19            MR. MARTIN:  -- and my argument is he's not the  01:14PM
20  custodian of records --                                01:14PM
21            THE COURT:  All right.                       01:14PM
22            MR. MARTIN:  -- for the tuna boat company.   01:14PM
23            THE COURT:  So as of -- as of right now, I would  01:14PM
24  agree with you, but let's see if the prosecutor can --  01:14PM
25            MS. M. MILLER:  Yes, Your Honor.             01:14PM
```

*Direct - Khamvongsa*

```
1              THE COURT:  Go ahead.                           01:14PM

2              MS. M. MILLER:  So two things.  Number one, the  01:14PM

3    stipulation, I do have the e-mail that went to Laura      01:14PM

4    McConwell --                                              01:14PM

5              THE COURT:  Okay.                               01:14PM

6              MS. M. MILLER:  -- with the attached stipulation 01:14PM

7    that was filed with the Court, and I have her e-mail returning 01:14PM

8    to me saying we agree with these stipulations, you are    01:14PM

9    approved to file it.  And I am going to e-mail that -- I'm 01:14PM

10   going to instruct Mr. Leon Guerrero to, please, e-mail that to 01:14PM

11   the Court because of the representation that was made --  01:14PM

12             THE COURT:  And also --                         01:14PM

13             MS. M. MILLER:  -- by Ms. McConwell --          01:15PM

14             THE COURT:  Okay.  And let me --                01:15PM

15             MS. M. MILLER:  -- that is inaccurate.          01:15PM

16             THE COURT:  -- receive a copy of that too.      01:15PM

17             MS. M. MILLER:  So that is -- yes, can you,     01:15PM

18   please, e-mail that to the Court right now.               01:15PM

19             THE COURT:  Yeah, but also --                   01:15PM

20             MS. M. MILLER:  As well, number two --          01:15PM

21             THE COURT:  -- e-mail it to Ms. McConwell --    01:15PM

22             MS. M. MILLER:  Yes, and e-mail it back to her. 01:15PM

23             THE COURT:  -- and Mr. Martin.  Go ahead.       01:15PM

24             MS. M. MILLER:  Number two, Your Honor, is, under 01:15PM

25   807, the residual exception to the hearsay rule, 807      01:15PM
```

```
 1    specifically says that a hearsay statement, if the Court          01:15PM
 2    rules, first of all, that this is a hearsay statement, is not      01:15PM
 3    excluded by the rule against hearsay even if the statement is      01:15PM
 4    not admissible under any hearsay exception if the statement is     01:15PM
 5    supported by sufficient guarantees of trustworthiness.            01:15PM
 6            We heard this agent testify that he subpoenaed            01:15PM
 7    the records from the tuna boat company and that the tuna boat      01:15PM
 8    company put him in charge with their -- put him in contact         01:15PM
 9    with their attorney who produced these insurance policies to       01:15PM
10    him that aligned with the leases that have already been            01:15PM
11    entered into evidence in this case.  So there is no question       01:15PM
12    about that.  The policies themselves align with the leases.        01:16PM
13    They align with the N number of the helicopters that were          01:16PM
14    owned by Hansen Helicopters and Jon Walker.  They align with       01:16PM
15    the leases that were entered into.  They identify the tuna         01:16PM
16    boat companies.                                                    01:16PM
17            And the second part of 807 says, that if this             01:16PM
18    evidence is more probative on the point for which it is            01:16PM
19    offered than any other evidence, that the proponent can obtain     01:16PM
20    through reasonable efforts, then it may be admitted.  Now,         01:16PM
21    we've already discussed why this evidence is so probative.         01:16PM
22    The defense are the ones who opened the door arguing, even         01:16PM
23    though the jury instructions for conspiracy to commit wire         01:16PM
24    fraud do not require that we prove that the tuna boat              01:16PM
25    companies suffered a financial loss, the defendants have been      01:16PM
```

arguing, well, isn't it true the insurance boat companies     01:16PM

haven't suffered a loss.     01:16PM

This evidence shows that the tuna boat companies     01:16PM

paid $30,000 a year for additional insurance on these     01:16PM

helicopters and on the airmen that the defendants were     01:17PM

producing to them, and that the insurance policy itself says     01:17PM

if these helicopters do not comply with the FAA rules, if the     01:17PM

helicopters are not airworthy under the FAA rules, and if the     01:17PM

airmen are not certified by the FAA, then there's no coverage.     01:17PM

Why would the tuna boat companies pay $30,000 a     01:17PM

year for that insurance if they didn't believe the defendants'     01:17PM

own representations that they were getting airworthy, FAA     01:17PM

registered, properly-owned aircraft with airmen who were     01:17PM

qualified by the FAA?     01:17PM

It absolutely refutes that argument, and it is     01:17PM

more probative than any other evidence that we have.     01:17PM

And I would argue, Your Honor, in terms of     01:17PM

notice, look at the number of this exhibit.  It is Exhibit     01:17PM

No. 92.  The defendants have had this since our first witness     01:17PM

list was sent to them more than two years ago.  We immediately     01:18PM

disclosed it.     01:18PM

And I would go back to the stipulation for the     01:18PM

admissibility of any records that were either subpoenaed or     01:18PM

obtained through the search warrant, and the defendants agreed     01:18PM

that no records custodians would be required.     01:18PM

```
 1              This is a damming piece of evidence.  So to say     01:18PM
 2    --                                                            01:18PM
 3              THE COURT:  All right, I got it, I got it.  I got    01:18PM
 4    your argument.                                                01:18PM
 5              All right.  So the first question is, did you all    01:18PM
 6    want to review the e-mail Ms. McConwell?                      01:18PM
 7              MR. GUERRERO:  It was just sent, Your Honor, so      01:18PM
 8    they should be --                                             01:18PM
 9              MS. MCCONWELL:  No, Your Honor, we went -- we        01:18PM
10    went -- had gone -- we went back and forth, and what -- and --  01:18PM
11    and it was late at night before I'm leaving the next day.  And  01:18PM
12    what we agreed to and what I understood we agreed to, and      01:18PM
13    clearly we should have asked more questions, is the records   01:18PM
14    custodians.  The only records custodians I'm aware of at the  01:18PM
15    time I'm having the conversation is what was on page 2 of     01:18PM
16    their witness list, which are nine custodians of -- for       01:18PM
17    records.  And we've been talking to the bank custodians.      01:18PM
18    We've been talking about the medical custodians.  And I'm,    01:19PM
19    like, no, you don't need those custodians.  Those are the     01:19PM
20    records custodians that we agreed to.                         01:19PM
21              THE COURT:  Okay.                                   01:19PM
22              MS. MCCONWELL:  With regard to what was -- the      01:19PM
23    search warrant and the subpoenas, they -- they execute search  01:19PM
24    warrants on Hansen Helicopters and subpoenas on Hansen        01:19PM
25    Helicopters.  Those are the search warrants and those subpoena  01:19PM
```

*Direct - Khamvongsa*

```
1    I -- I -- I am talking about.  And so at no time did I -- did      01:19PM
2    I anticipate that it means the universe of any subpoena that        01:19PM
3    they'd ever issued was going to be in -- was going to be            01:19PM
4    included in that stipulation.                                       01:19PM
5              THE COURT:  All right.                                    01:19PM
6              MS. MCCONWELL:  And then we didn't agree that             01:19PM
7    things were just going to automatically be admitted.  The          01:19PM
8    things that we did agree to where they didn't need to have the     01:19PM
9    records custodian was authenticity, so they didn't have to         01:19PM
10   have that records custodian.  We didn't agree that something       01:19PM
11   just gets to be admitted.                                          01:19PM
12             THE COURT:  All right, but okay, so let me just          01:19PM
13   say I believe you.  But my question is, on this e-mail, was        01:19PM
14   there, like, further conversations between you and Ms. Marie       01:20PM
15   Miller --                                                          01:20PM
16             MS. MCCONWELL:  I was -- I was --                        01:20PM
17             THE COURT:  -- about -- about the -- about go            01:20PM
18   ahead and file this stipulation?                                   01:20PM
19             MS. MCCONWELL:  What it was, was is I said -- and        01:20PM
20   on me, we changed it because I didn't want a word "otherwise"      01:20PM
21   in it.  I didn't want -- we didn't -- we didn't specifically       01:20PM
22   said, no, 1 through 9 on that --                                   01:20PM
23             MS. M. MILLER:  Here's what she said --                  01:20PM
24             THE COURT:  Okay, no, no, no.                            01:20PM
25             MS. MCCONWELL:  What she --                              01:20PM
```

*Direct - Khamvongsa*

```
 1              THE COURT:  No, no, no, Counsel, let me -- just          01:20PM
 2   let me hear from her.                                               01:20PM
 3              MS. MCCONWELL:  That's the only thing I thought          01:20PM
 4   we were talking about was what was on their witness list --        01:20PM
 5              THE COURT:  All right.                                   01:20PM
 6              MS. MCCONWELL:  -- were those.  So that's the            01:20PM
 7   first thing.  The second -- and that's -- that's -- that's, I      01:20PM
 8   think, Item 3 on her stipulation, which I don't think I saw        01:20PM
 9   the final one.  I sent her this e-mail and then I -- then it       01:20PM
10   got -- then it was filed.                                          01:20PM
11              Then the next thing is I said, everything that          01:20PM
12   you've got -- and, in my head I'm thinking from us, was either     01:20PM
13   seized or subpoenaed, because they -- they issued several         01:20PM
14   subpoenas against Hansen Helicopters and Hansen --                 01:20PM
15   Hansen-affiliated companies all in the same time.  And then       01:20PM
16   they'd also done a subpoena that got responded to that we gave     01:21PM
17   Agent Khamvongsa's stuff in January of 2020.                       01:21PM
18              So when she's saying, you know, are you going to        01:21PM
19   agree with the subpoena and the -- and the -- the subpoenaed      01:21PM
20   and the -- the -- the search warrant stuff, I'm thinking this     01:21PM
21   is what she's wanting --                                           01:21PM
22              THE COURT:  Okay.                                       01:21PM
23              MS. MCCONWELL:  -- is the Hansen Helicopters            01:21PM
24   stuff.                                                             01:21PM
25              THE COURT:  Let -- let me just say -- let me just      01:21PM
```

```
 1    say -- okay, on this --                                      01:21PM

 2              MS. MCCONWELL:  There is nothing more specific.     01:21PM

 3              THE COURT:  On this stipulation and this -- and     01:21PM

 4    you -- sounds like there could be a misunderstanding on your  01:21PM

 5    part or their part, whatever.  I'm not going to make a ruling 01:21PM

 6    on that because I don't know.  I'd have to really probe that  01:21PM

 7    further, so I'm not going to make a ruling at this time.      01:21PM

 8              On the business records exception, the Court will   01:21PM

 9    sustain the objection.  There has not been made -- the witness 01:21PM

10    cannot testify as a chain -- a custodian of record.          01:21PM

11              On the residual exception, it does say that         01:21PM

12    notice -- reasonable pretrial notice is required for that to  01:21PM

13    be admissible, but it goes on to say, and the prosecutor's    01:21PM

14    already argued that you all have had a copy of this, and --   01:21PM

15    and it does say that the Court may give -- the Court may allow 01:21PM

16    this type of residual exception to apply if I find that there 01:22PM

17    is lack of earlier notice for good cause.                    01:22PM

18              Now, that's only -- hold on.  It only becomes       01:22PM

19    relevant if the Court agrees that this is a hearsay statement. 01:22PM

20    The prosecutor is saying she's not offering it for the truth  01:22PM

21    of the matter asserted.  If I agree with her, then residual   01:22PM

22    business records is irrelevant right now at this point.  So   01:22PM

23    what -- what she's saying it's being offered for was -- what  01:22PM

24    was it?                                                       01:22PM

25              MR. MARTIN:  To prove intent.                       01:22PM
```

1           MS. M. MILLER:  The state of mind -- no.                   01:22PM

2           THE COURT:  Oh, the state of mind --                       01:22PM

3           MS. M. MILLER:  State of mind --                           01:22PM

4           THE COURT:  Of the tuna boat --                            01:22PM

5           MS. M. MILLER:  -- of the tuna boat companies.             01:22PM

6           THE COURT:  Okay.  I've got it, yeah.                      01:22PM

7           MS. M. MILLER:  Right.                                     01:22PM

8           THE COURT:  So that's her -- it's going to --              01:22PM

9    okay, yes?                                                        01:22PM

10          MR. MARTIN:  And -- well --                                01:22PM

11          THE COURT:  Okay.  So that's what she's saying             01:22PM

12   that they're going to try to prove it -- I mean, that's her      01:22PM

13   argument.  She's going to infer that maybe or do you have --     01:22PM

14   do you have --                                                    01:22PM

15          MR. MARTIN:  No.                                           01:22PM

16          THE COURT:  -- a tuna boat guy to say, hey --              01:22PM

17          MR. MARTIN:  No.                                           01:22PM

18          MS. M. MILLER:  No, we don't.                              01:22PM

19          THE COURT:  -- we relied on that?                          01:22PM

20          MR. MARTIN:  No, they don't.                               01:22PM

21          MS. M. MILLER:  No, because they stipulated that          01:22PM

22   we didn't need a records custodian.                               01:22PM

23          That -- that --                                            01:22PM

24          THE COURT:  No, no, no, my question is -- hold             01:22PM

25   on.                                                               01:23PM

```
 1                   MS. M. MILLER:  -- to begin with.                01:23PM

 2                   THE COURT:  Hold on, hold on, calm down.  My      01:23PM

 3       question is, is there any tuna boat owner --                  01:23PM

 4                   MR. MARTIN:  No.                                  01:23PM

 5                   THE COURT:  -- to come in say, you know what, our 01:23PM

 6       state of mind was such that --                                01:23PM

 7                   MS. M. MILLER:  No.                               01:23PM

 8                   THE COURT:  I mean, okay, so basically you're     01:23PM

 9       going to say we believe that this was their state of mind     01:23PM

10       because who would go proceed forward -- okay.  I got it.  I   01:23PM

11       know.                                                         01:23PM

12                   MS. M. MILLER:  And paid $30,000 a year for an    01:23PM

13       insurance policy --                                           01:23PM

14                   THE COURT:  I know.  You -- you are -- yeah --    01:23PM

15                   MS. M. MILLER:  -- that was -- that was not       01:23PM

16       valid.                                                        01:23PM

17                   THE COURT:  Okay.  All right.                     01:23PM

18                   MS. MCCONWELL:  Well, wait --                     01:23PM

19                   THE COURT:  So -- so it's really an inferential   01:23PM

20       or circumstantial -- yeah, okay.  Okay, go ahead, Mr. --      01:23PM

21                   MR. MARTIN:  Well, Your Honor --                  01:23PM

22                   THE COURT:  Yes?                                  01:23PM

23                   MR. MARTIN:  -- I understand you're not going     01:23PM

24       into what stipulation was or wasn't, but I want --            01:23PM

25                   THE COURT:  Well, I don't -- I don't have time to 01:23PM
```

*Direct - Khamvongsa*

1    go into it right now because I -- I just want to try to see if    01:23PM
2    I can make a ruling --    01:23PM
3                   MR. MARTIN:  Well --    01:23PM
4                   THE COURT:  -- without having to deal with that.    01:23PM
5                   MR. MARTIN:  The residual -- as to the residual    01:23PM
6    rule, Your Honor --    01:23PM
7                   THE COURT:  Yes.    01:23PM
8                   MR. MARTIN:  -- when we got the Government's    01:23PM
9    witness list -- not two years ago -- we got it probably    01:23PM
10   6-8 months ago, but there were 30,000 -- 20,900 and something    01:23PM
11   exhibits on it.    01:24PM
12                  THE COURT:  Uh-huh.    01:24PM
13                  MR. MARTIN:  Okay.  And for them to say we got    01:24PM
14   notice, there it is, Judge.  That is a --    01:24PM
15                  THE COURT:  Are you pointing to the many, many    01:24PM
16   binders in front of us?    01:24PM
17                  MR. MARTIN:  And that's not all of them.    01:24PM
18   That's --    01:24PM
19                  THE COURT:  Okay, I got it.  Yes, we know.    01:24PM
20                  MR. MARTIN:  We had thousand of exhibits, and to    01:24PM
21   say that that is notice to us is like looking for a needle in    01:24PM
22   a haystack, Your Honor.    01:24PM
23                  THE COURT:  All right, okay, so let's --    01:24PM
24                  MR. MARTIN:  That's not a fair representation.    01:24PM
25                  THE COURT:  All right, so I've got your notice    01:24PM

*Direct - Khamvongsa*

```
1    argument.  What about this argument on the state of mind in    01:24PM
2    the tuna boat or --                                            01:24PM
3              MR. MARTIN:  They can call a tuna boat owner to       01:24PM
4    come in and say why we bought insurance company[sic].  But for 01:24PM
5    this agent to say that the insurance policy reflects the state 01:24PM
6    of mind of somebody that he's never met is totally             01:24PM
7    inappropriate.  It's speculation.                              01:24PM
8              MS. M. MILLER:  He's not going to say that, Your      01:24PM
9    Honor.  It's the policy itself --                              01:24PM
10             THE COURT:  But you want to argue -- no, but what     01:24PM
11   you're going to argue that, though --                          01:24PM
12             MS. M. MILLER:  The policy itself --                  01:24PM
13             THE COURT:  -- wait, wait, wait.  But you want to     01:24PM
14   be able to argue it; right?                                    01:24PM
15             MS. M. MILLER:  What I want --                        01:24PM
16             THE COURT:  Wait, wait.                               01:24PM
17             MS. M. MILLER:  Yes.                                  01:24PM
18             THE COURT:  You want to be able to get this in --     01:24PM
19             MS. M. MILLER:  What I want to be able to             01:24PM
20   argue --                                                       01:24PM
21             THE COURT:  -- so you can argue it.                   01:24PM
22             MS. M. MILLER:  Yes --                                01:24PM
23             THE COURT:  That's --                                 01:25PM
24             MS. M. MILLER:  -- I want to be able to argue --      01:25PM
25   absolutely, Your Honor.                                        01:25PM
```

*Direct - Khamvongsa*

1          THE COURT:  So we got it --                    01:25PM

2          MS. M. MILLER:  What I want to be able to argue    01:25PM

3    is why would --                                     01:25PM

4          THE COURT:  I know.                            01:25PM

5          MS. M. MILLER:  -- a tuna boat company --     01:25PM

6          THE COURT:  I got it.                          01:25PM

7          MS. M. MILLER:  -- pay $30,000 a year for a    01:25PM

8    policy that requires FAA certification?             01:25PM

9          THE COURT:  All right.  I got it.  You guys don't  01:25PM

10   have to -- you don't have to pound it in my head; I got it.  01:25PM

11         MS. M. MILLER:  And, in terms of the notice    01:25PM

12   issue, just so you know, this insurance issue, when we sent  01:25PM

13   them the list of exhibits that were going to be used with   01:25PM

14   Special Agent Khamvongsa before we broke three months ago,  01:25PM

15   these policies were listed on that list three months ago,   01:25PM

16   three months ago.  So to say, well, it's 30,000 pages and we  01:25PM

17   haven't had a chance to look at it, insincere, absolutely   01:25PM

18   insincere.                                          01:25PM

19         THE COURT:  Okay.                              01:25PM

20         MS. M. MILLER:  Of course they've had a chance to  01:25PM

21   look at it.  They don't want it in because it is so probative  01:25PM

22   of the fraud.                                       01:25PM

23         THE COURT:  All right.  Anything else?         01:25PM

24         MS. M. MILLER:  No.                            01:25PM

25         THE COURT:  Okay, yes?                         01:25PM

| | |
|---|---|
| 1 | MS. MCCONWELL: Well, I was just -- you know you | 01:25PM |
| 2 | give -- we're given an exhibit list and we don't have to | 01:25PM |
| 3 | disclose what all of our objections may be -- | 01:26PM |
| 4 | THE COURT: No, I know. | 01:26PM |
| 5 | MS. MCCONWELL: -- to an exhibit -- | 01:26PM |
| 6 | THE COURT: I agree. | 01:26PM |
| 7 | MS. MCCONWELL: -- until it's actually offered. | 01:26PM |
| 8 | THE COURT: Right, or if it's offered because it | 01:26PM |
| 9 | could -- | 01:26PM |
| 10 | MS. MCCONWELL: If it's offered -- | 01:26PM |
| 11 | THE COURT: Yeah. | 01:26PM |
| 12 | MS. MCCONWELL: -- because a lot of them aren't | 01:26PM |
| 13 | being offered, so I'm not really clear where that -- | 01:26PM |
| 14 | THE COURT: All right. All right. So the Court | 01:26PM |
| 15 | is going to hold this under advisement. Let me think about it | 01:26PM |
| 16 | for a little bit, and then just move on to the next question. | 01:26PM |
| 17 | MS. M. MILLER: Yes, Your Honor. | 01:26PM |
| 18 | THE COURT: All right. By the way, I did have | 01:26PM |
| 19 | Lani speak to the jurors and say, hey, is it possible that we | 01:26PM |
| 20 | could, you know, go up -- go earlier or go later. And they're | 01:26PM |
| 21 | asking -- the consensus is they say a lot of them have to pick | 01:26PM |
| 22 | up their children -- go to school in the morning, pick them up | 01:26PM |
| 23 | at end of day. It would be difficult for them to. It's not | 01:26PM |
| 24 | until they start deliberating, I suppose, where we're going to | 01:26PM |
| 25 | be able to do that. So just wanted to at least give you | 01:26PM |

```
 1    heads-up.                                              01:26PM

 2              All right.  Let's take a ten-minute recess.  01:26PM

 3    Everybody go use the restroom.  We'll come back -- but let me  01:26PM

 4    hold off on that.  How many more -- you can go on to another  01:26PM

 5    area, and --                                           01:26PM

 6              MS. M. MILLER:  Yeah, we'll go on to another  01:26PM

 7    area.                                                  01:26PM

 8              THE COURT:  -- we'll come back to this insurance  01:26PM

 9    policy later.                                          01:26PM

10              MS. M. MILLER:  Yes, Your Honor.             01:26PM

11              THE COURT:  Okay.  Ten minutes, Counsel.     01:26PM

12              MS. M. MILLER:  Thank you.                   01:26PM

13              (Recess taken at 1:26 p.m.)                  01:27PM

14              (Back on the record at 1:56 p.m.)            01:56PM

15              THE COURT:  We're back on the record, all    01:58PM

16    Counsels present.  The jurors are not present, but we'll call  01:58PM

17    in the jurors.                                         01:58PM

18              Let me just say couple things.  Let me just make  01:58PM

19    a ruling.                                              01:58PM

20              Okay, for -- on the relevancy objection, the  01:58PM

21    Court finds that the evidence is relevant.             01:58PM

22              On the foundation exception -- or the objection,  01:58PM

23    excuse me -- not exception, objection -- I would agree with  01:58PM

24    the defense Counsel that a business records exception is not  01:58PM

25    met here in terms of the colloquy.                     01:58PM
```

                    Under the -- the next exception that the                    01:58PM

prosecution has asked the Court to bring it under, 807, the                    01:58PM

residual exception, the Court notes that -- okay, the Court                    01:58PM

notes that -- well, the threshold issue the Court has to                    01:58PM

decide is whether or not this is hearsay.  So the prosecution                    01:58PM

has indicated that --                    01:59PM

                    Okay, before I get to the hearsay, let me --                    01:59PM

before I get to the hearsay, let me just make my ruling.  So                    01:59PM

with regard to the business records and the residual                    01:59PM

exception, at this point, the Court will sustain the                    01:59PM

objections.  I don't find it is hearsay, but I'll get to the                    01:59PM

hearsay issue -- the non-hearsay issue, the second.                    01:59PM

                    On the issue of the stipulation, the Court has                    01:59PM

reviewed the particular e-mail and -- by Laura McConwell and                    01:59PM

to Marie Miller, and so -- and so I looked at that over the                    01:59PM

recess.  And so I think -- you know, honestly, I think that it                    01:59PM

probably went both ways.  I think really there was a good                    01:59PM

faith basis to -- to -- the Court to believe what Ms.                    01:59PM

McConwell said, and I think that there's a good faith basis                    01:59PM

to -- to believe what Ms. Marie Miller said and did, so -- so                    01:59PM

I'm not going to make a ruling on that.  I don't want to                    01:59PM

choose the between of you, because I think really probably                    02:00PM

happened both ways.  So -- so with regard to that, the Court's                    02:00PM

deciding not to make a ruling on that particular issue.                    02:00PM

                    But on the issue of hearsay, the prosecution is                    02:00PM

saying it's not being offered for the truth of the matter

asserted but it's being offered to show the state of the mind

of the tuna boat companies.  And so it's very -- it's going to

be a very inferential circumstantial argument, but the Court

will overrule the objection and indicate that I do believe

that they could arguing that as -- as their offer of proof.

But, of course, Mr. Martin and Ms. McConwell and

Mr. McConwell, whoever makes the closing arguments, you could

just -- you could argue that away too, I mean, just as easily.

I mean, this is -- there's nobody here to -- I mean, state of

mind is very subjective.  And -- and, you know, for the

prosecution to say, well, we believe that, you know, who would

do this, who would spend this much money?  You've heard her

argument already.  She's already given you a preview of that.

But then again, you could argue that, well, there's nobody

hear saying that, that that was their state of mind.

So the Court will -- with regard to that

particular proffer, the Court -- and that particular -- well,

first, as to that objection of hearsay, the Court finds it's

not hearsay based on the proffer.  So the Court will allow

this exhibit in for that limited purpose.

Okay.  Very well.  We'll call in the jury.

Oh, and then let me just say, the Court does not

find it cumulative and the Court does not feel that the --

under 403, because that was the sixth -- sixth objection, so

```
 1    under 403, let me just say, the Court finds that -- it says          02:01PM
 2    the relevant evidence may be excluded if its probative value         02:01PM
 3    is substantially outweighed by danger of unfair prejudice,           02:01PM
 4    confusion of issues, misleading the jury, or by considerations       02:01PM
 5    of delay, waste of time, or needless presentation, cumulative        02:01PM
 6    evidence.  And the Court finds that, based on that particular        02:02PM
 7    rule, that the Court does not find that its probative value is       02:02PM
 8    substantially outweighed by those particular danger points.         02:02PM
 9    So the Court will allow that -- this exhibit to be admitted,         02:02PM
10    okay, for that limited purpose.                                     02:02PM
11            Yes, Ms. McConwell?                                         02:02PM
12    (Exhibit admitted.)                                                  02:02PM
13            MS. MCCONWELL:  And that's only as to Jon Walker,          02:02PM
14    not to Hansen Helicopters?                                           02:02PM
15            THE COURT:  Yeah, that's fine.                              02:02PM
16            Okay.  We'll call in the jury.  And then make              02:02PM
17    sure -- just -- just ask me for the admission then --               02:02PM
18            MS. M. MILLER:  Yes, Your Honor, I will.                    02:02PM
19            THE COURT:  The Court's already made the ruling            02:02PM
20    and then just ask --                                                 02:02PM
21            MS. M. MILLER:  I will.                                      02:02PM
22            THE COURT:  -- ask -- ask the Court to admit it            02:02PM
23    and then I will admit it --                                          02:02PM
24            MS. M. MILLER:  Yes, Your Honor.                            02:02PM
25            THE COURT:  -- and then I'll give a limiting               02:02PM
```

| | |
|---|---|
| 1 | instruction. |
| 2 | And you just want to say specifically as to -- or |
| 3 | just state what the proffer is, so I can state it exactly -- |
| 4 | MS. M. MILLER:  Yes, Your Honor. |
| 5 | THE COURT:  -- how I'm going do it in the |
| 6 | limiting instruction. |
| 7 | MS. M. MILLER:  Yes, Your Honor. |
| 8 | THE COURT:  Okay. |
| 9 | MS. MCCONWELL:  And, Your Honor, I'm concern -- |
| 10 | I'm confused.  What's the limiting purpose? |
| 11 | THE COURT:  That it's on for -- the particular |
| 12 | proffer is for state of mind.  That's it.  And is it as to all |
| 13 | the companies? |
| 14 | MS. M. MILLER:  Yes, Your Honor. |
| 15 | THE COURT:  Be very specific when you -- |
| 16 | MS. M. MILLER:  Yes. |
| 17 | THE COURT:  Or do you want to wait to give a |
| 18 | limiting after to write it out and then you guys can review |
| 19 | it?  Do you want -- |
| 20 | MS. M. MILLER:  I think so. |
| 21 | THE COURT:  -- to do that instead? |
| 22 | MS. M. MILLER:  I think that might be better. |
| 23 | THE COURT:  Mr. Martin and Ms. McConwell? |
| 24 | MS. M. MILLER:  I think so. |
| 25 | THE COURT:  Do you want -- do you want me to wait |

*Direct - Khamvongsa*

1    and give a limiting instruction afterwards?                    02:03PM

2              MR. MARTIN:  Yes, Your Honor.                         02:03PM

3              THE COURT:  So maybe you can look at the wording      02:03PM

4    on that.                                                       02:03PM

5              (Jury in at 2:03 p.m.)                               02:03PM

6              THE COURT:  Okay.  Okay, welcome back, ladies and    02:03PM

7    gentlemen of the jury.  Thank you very much for your time.     02:03PM

8    I'm sorry, that was -- there's a legal issue that I really     02:03PM

9    needed to speak to the lawyers about, so don't hold it against 02:03PM

10   the lawyers.  They both have a duty to represent their clients 02:03PM

11   vigorously and zealously, and the Court has a equal duty to    02:04PM

12   make sure that I listen to their arguments and make a          02:04PM

13   decision.  So I've already -- we've already had our hearing    02:04PM

14   here outside your presence.                                    02:04PM

15             So, yes, Ms. Miller, you may proceed.                02:04PM

16             MS. M. MILLER:  Yes, Your Honor, at this time,       02:04PM

17   the government would offer into evidence what has been         02:04PM

18   previously marked as Government's Exhibit 92.                  02:04PM

19             THE COURT:  All right.  The Court notes that         02:04PM

20   Mr. Martin and Ms. McConwell, Mr. McConwell have objected     02:04PM

21   strongly, and the Court has overruled the objections as       02:04PM

22   indicated in the hearing outside the jury.  The Court will    02:04PM

23   admit Exhibit 92 for a very limited purpose, and I'll give    02:04PM

24   that limiting jury instruction later on.  I want the attorneys 02:04PM

25   to review that instruction.  But there will be only a limited 02:04PM

```
 1    purpose for the admission of Exhibit 92.                    02:04PM

 2    (Exhibit 92 admitted.)                                      02:04PM

 3              MS. M. MILLER:  Yes, Your Honor.                  02:04PM

 4              THE COURT:  Yes, you may publish.                 02:04PM

 5              MS. M. MILLER:  May I publish it please?          02:04PM

 6              THE COURT:  Mm-hmm.                               02:04PM

 7              (Pause.)                                          02:04PM

 8    BY MS. M. MILLER: (CONTINUING)                              02:04PM

 9        Q.   So, Special Agent Khamvongsa, could you please tell 02:05PM

10    the members of the jury what we're looking at here?         02:05PM

11        A.   This is the aircraft insurance policy from South   02:05PM

12    Pacific Tuna Company.                                       02:05PM

13        Q.   Okay.  Could you please go to the first content page 02:05PM

14    of the policy, which is 92-2.  Okay.                        02:05PM

15              MS. M. MILLER:  And can you hone in, if you don't 02:05PM

16    mind, Ms. Miller, on the top portion first, just so we could 02:05PM

17    see the coverage period and what's covered -- thank you.    02:05PM

18    BY MS. M. MILLER: (CONTINUING)                              02:05PM

19        Q.   Okay.  So could you please tell the members of the 02:05PM

20    jury first who is the insured?                              02:05PM

21        A.   The insured is Sea Global Fisheries, LLC and its   02:05PM

22    individual executive officers and members.                  02:05PM

23        Q.   And, sir, going back to that lease that we talked  02:05PM

24    about earlier involving this aircraft, is that the same as Sea 02:05PM

25    Bounty/South Pacific Tuna?                                  02:05PM
```

*Direct - Khamvongsa*

1    A.   Yes, it's one of the individual items that make up    02:05PM

2    the Sea Global Fisheries, the individual tuna boats.    02:05PM

3    Q.   Okay.  And could you tell the members of the jury the    02:05PM

4    policy period, please?    02:06PM

5    A.   September 15th, 2017 to September 15th, 2018.    02:06PM

6    Q.   Okay.  And was that during the period of time that    02:06PM

7    the lease which was entered into evidence previously?    02:06PM

8    A.   Yes.    02:06PM

9    Q.   Okay.  Now, can you look at, under paragraph 5, the    02:06PM

10   description of the aircraft, and can you tell the members of    02:06PM

11   the jury what does it say under paragraph 5 in terms of the    02:06PM

12   description of the aircraft and the registration number?    02:06PM

13   A.   Paragraph 5?  Did you want me to read it?    02:06PM

14   Q.   Yes, if you don't mind.    02:06PM

15   A.   "You have told us that each of the aircraft below (1)    02:06PM

16   is a fixed wing land aircraft with an FAA standard    02:06PM

17   airworthiness certificate unless noted in the aircraft    02:06PM

18   description below, and (2) is solely and unconditionally owned    02:06PM

19   by you unless noted differently in Item 1 or endorsements we    02:06PM

20   issue.  If no agreed value amount is shown, no aircraft    02:06PM

21   physical damage coverage is provided."    02:06PM

22   Q.   Okay.  And then can you tell the members of the jury    02:06PM

23   what do you see underneath that where it says "registration    02:06PM

24   number"?    02:06PM

25   A.   It says FAA registration number.    02:06PM

1    Q.   Okay.                                              02:07PM

2          MS. M. MILLER:  And, Ms. Miller, can you now zoom  02:07PM

3    out and can you please go to the next page where it has the  02:07PM

4    listing of the aircraft?  Thank you.  And can you please  02:07PM

5    highlight under Section 5.  Yes, Section 5 and 6.  Okay.  02:07PM

6    BY MS. M. MILLER: (CONTINUING)                            02:07PM

7    Q.   Do you see N3699V there, sir?                       02:07PM

8    A.   Yes.                                                02:07PM

9    Q.   And can you tell the members of the jury, what does  02:07PM

10   it indicate the description of that aircraft is?         02:07PM

11   A.   The description is the -- N369V is a 1969 Hughes 369A  02:07PM

12   helicopter.                                              02:07PM

13   Q.   And could you, please, read paragraph 5 where it says  02:07PM

14   description of the aircraft, and again "you have told us"?  02:07PM

15   A.   "You have told us that each of the aircraft below (1)  02:07PM

16   has an FAA standard airworthiness certificate unless noted  02:07PM

17   below, and (2) is solely and unconditionally owned by you  02:07PM

18   unless noted differently in Item 1 or endorsements we issue."  02:08PM

19   Q.   Now, can you remind the jury please, sir, where did  02:08PM

20   these airworthiness certificates come from, specifically the  02:08PM

21   one for N369V?                                           02:08PM

22   A.   The -- they come from the FAA, the airworthiness  02:08PM

23   certificates.                                            02:08PM

24   Q.   And who is the inspector who issued the airworthiness  02:08PM

25   certificate?                                             02:08PM

*Direct - Khamvongsa*

```
 1      A.   Mr. Cislo.                                    02:08PM

 2      Q.   And Mr. Cislo who agreed that he accepted a bribe in   02:08PM

 3  exchange for 'em?                                     02:08PM

 4           MR. MARTIN:  Your Honor, I object to her leading   02:08PM

 5  question, testifying.  It's inappropriate and I object.  There   02:08PM

 6  is a proper way.                                      02:08PM

 7           THE COURT:  All right.  The Court will sustain   02:08PM

 8  the objection as to leading.                          02:08PM

 9  BY MS. M. MILLER: (CONTINUING)                        02:08PM

10      Q.   Yes.  What did Mr. Cislo receive in exchange for   02:08PM

11  issuing the airworthiness certificate, sir?           02:08PM

12      A.   Mr. Cislo received an airplane --             02:08PM

13           MS. MCCONWELL:  Your Honor, this is -- I object   02:08PM

14  to the foundation of that question, Your Honor.       02:08PM

15           THE COURT:  Foundation?                       02:09PM

16           MS. MCCONWELL:  Yeah, there's -- it's -- it's --   02:09PM

17           THE COURT:  All right.  Sustained.            02:09PM

18           MS. MCCONWELL:  There is no evidence --       02:09PM

19           THE COURT:  All right.  Sustained, foundation.   02:09PM

20  Go ahead.                                             02:09PM

21  BY MS. M. MILLER: (CONTINUING)                        02:09PM

22      Q.   How do you know, sir, what Mr. Cislo received in   02:09PM

23  exchange for these airworthiness certificates?       02:09PM

24      A.   I know --                                    02:09PM

25           MR. MARTIN:  Your Honor, we object to that   02:09PM
```

*Direct - Khamvongsa*

```
 1   question.  That's the same issue.  There's no evidence that he        02:09PM
 2   received anything in exchange.  She can ask a question but             02:09PM
 3   not -- not the way she's doing it.                                     02:09PM
 4              MS. M. MILLER:  Your Honor --                               02:09PM
 5              THE COURT:  Okay, okay, the Court will overrule             02:09PM
 6   of the objection.  She's trying to -- go ahead.  Overruled.           02:09PM
 7   Go ahead.                                                              02:09PM
 8   BY MS. M. MILLER: (CONTINUING)                                         02:09PM
 9     Q.   Could you please tell the jury?                                 02:09PM
10     A.   Yeah.                                                           02:09PM
11              THE COURT:  She's trying to -- she's trying to             02:09PM
12   lay a foundation.  You guys are objecting to foundation.  Go          02:09PM
13   ahead.                                                                 02:09PM
14              THE WITNESS:  Mr. Cislo received an airplane for           02:09PM
15   looking the other way and not doing his due duty -- due              02:09PM
16   diligence as a safety inspector for the FAA.  So he issued           02:09PM
17   airworthiness certificates without ensuring their --                  02:09PM
18              MS. MCCONWELL:  Your Honor, I object to the               02:09PM
19   narrative.                                                             02:09PM
20              THE WITNESS:  -- safety.                                    02:09PM
21              THE COURT:  Okay, so the question, though, is how         02:09PM
22   do you --                                                             02:09PM
23              MS. MCCONWELL:  And to foundation.                         02:09PM
24              THE COURT:  How do you know?                               02:09PM
25              THE WITNESS:  I know based upon testimony               02:09PM
```

*Direct - Khamvongsa*

1    provided by Cislo, as well as my review -- review of the    02:09PM

2    records.    02:10PM

3                    MS. MCCONWELL:  And the remoteness in time.    02:10PM

4                    THE COURT:  Overruled.  Go ahead.  All right.    02:10PM

5    BY MS. M. MILLER: (CONTINUING)    02:10PM

6        Q.    I'm not sure if the jury heard you, so how do you    02:10PM

7    know again, sir?    02:10PM

8        A.    I know based upon statements made by Mr. Cislo.    02:10PM

9        Q.    Okay.  And, as a special agent who is assigned to    02:10PM

10   this case, were you permitted to listen to the testimony of    02:10PM

11   Mr. Cislo?    02:10PM

12       A.    Yes.    02:10PM

13       Q.    Okay.  Now, could you, please, tell the members of    02:10PM

14   the jury again where we see, under paragraph 5, what does it    02:10PM

15   indicate in terms of the registration number, which agency is    02:10PM

16   issuing that registration number?    02:10PM

17       A.    For U.S. -- it's a -- for N369V which agency, federal    02:10PM

18   agency?  For all the N-related numbers, they're    02:10PM

19   U.S.-registered numbers, and FAA has a responsibility to    02:10PM

20   ensure their safety.    02:10PM

21       Q.    Did you count how many times the word FAA appears in    02:10PM

22   this insurance policy?    02:10PM

23       A.    This document FAA appears 54 times.    02:10PM

24       Q.    So, as we go down to the next section, can you tell    02:10PM

25   the members of the jury what they're seeing in terms of    02:11PM

1    paragraph 6?                                                    02:11PM

2        A.   Did you want me to read it specifically?              02:11PM

3        Q.   Yes, please.  What is the title of paragraph 6?       02:11PM

4        A.   Liability and medical payments coverage and limits of 02:11PM

5    coverage.                                                       02:11PM

6        Q.   And what was the limit of coverage for each           02:11PM

7    occurrence for N369V?                                           02:11PM

8        A.   $1 million.                                            02:11PM

9        Q.   Okay.  And then let's go down to paragraph 7,         02:11PM

10   premiums.                                                       02:11PM

11            MS. M. MILLER:  And, Ms. Miller, can you pull in       02:11PM

12   all of paragraph 7, including the total for the premiums paid.  02:11PM

13   BY MS. M. MILLER: (CONTINUING)                                  02:11PM

14       Q.   And could you tell the members of the jury, what was  02:11PM

15   the total of the premiums paid per year for these insurance    02:11PM

16   policies, sir?                                                  02:11PM

17       A.   $27,624.                                               02:11PM

18       Q.   Okay.                                                  02:11PM

19            MS. M. MILLER:  And, Ms. Miller, could we go to       02:11PM

20   the next page, please.  Is that on the next page?              02:12PM

21            (Pause.)                                               02:12PM

22            MS. M. MILLER:  It's on, yeah, page 4.  Sorry.        02:12PM

23   Thank you.                                                      02:12PM

24   BY MS. M. MILLER: (CONTINUING)                                  02:12PM

25       Q.   And could you tell the members of the jury if we look 02:12PM

*Direct - Khamvongsa*

1    at paragraph 9, what is the use of the aircraft being cited in    02:12PM

2    paragraph 9?    02:12PM

3        A.    The use of the aircraft?    02:12PM

4        Q.    Yes.    02:12PM

5        A.    "The aircraft will be used for your pleasure and    02:12PM

6    business-related purposes where no changes made for such use,    02:12PM

7    and also may be used for other uses described below.  Other    02:12PM

8    uses, fish spotting, see endorsement number three."    02:12PM

9            MS. M. MILLER:  And now let's go to the next    02:13PM

10   page, Ms. Miller, and where it says requirements for the pilot    02:13PM

11   flying the aircraft.  No, next page.  Next page.  There you    02:13PM

12   go.  And can you highlight that for the jury, please.    02:13PM

13   BY MS. M. MILLER: (CONTINUING)    02:13PM

14       Q.    And could you read for the jury what the requirements    02:13PM

15   were for the pilot flying the aircraft?    02:13PM

16       A.    Would you like me to start at where the aircraft or    02:13PM

17   read it --    02:13PM

18       Q.    Just where it says "this endorsement"?    02:13PM

19       A.    Okay.  "This endorsement applies only to the    02:13PM

20   following aircraft.  If no entry is made in this endorsement    02:13PM

21   -- if no entry is made, this endorsement applies to all    02:13PM

22   aircraft covered by your policy.  This endorsement completes    02:13PM

23   or changes Item 9, requirements by the pilot flying the    02:13PM

24   aircraft of your coverage identification page to read as    02:13PM

25   follows:  The aircraft must be operated in flight only by a    02:14PM

*Direct - Khamvongsa*

1    pilot named below having the minimum qualifications shown.    02:14PM

2    The pilots must have a current and valid medical certificate,    02:14PM

3    flight review, and pilot certificate with necessary ratings,    02:14PM

4    each as required by the FAA for each flight.  There is no    02:14PM

5    coverage if the pilot does not meet the qualifications or    02:14PM

6    requirements specified below for each designated use of the    02:14PM

7    aircraft."    02:14PM

8         Q.    How many of these policies, sir, did you review?    02:14PM

9         A.    I was provided approximately 60 policies.    02:14PM

10        Q.    Okay.  And did you review them all?    02:14PM

11        A.    Yes.    02:14PM

12        Q.    All right.  I'd like to now turn your attention to a    02:14PM

13   demonstrative aid that will show the jury what these specific    02:14PM

14   wire fraud counts are in our Second Superseding Indictment.    02:14PM

15             MS. M. MILLER:  Ms. Miller, could you please show    02:14PM

16   the jury Demonstrative Aid 43.    02:14PM

17             And, Your Honor, may I publish it to the jury?    02:14PM

18   It's just an excerpt from the Second Superseding Indictment.    02:15PM

19             THE COURT:  Okay, Counsels?    02:15PM

20             MR. MARTIN:  Could we be advised what it is --    02:15PM

21             THE COURT:  Yeah.    02:15PM

22             MR. MARTIN:  -- since we've not been provided it?    02:15PM

23             THE COURT:  Okay, yeah, tell us where it is.    02:15PM

24             MS. M. MILLER:  Yes, Your Honor, I did.  It's an    02:15PM

25   excerpt from --    02:15PM

*Direct - Khamvongsa*

```
 1                    MR. MARTIN:  Got that.                        02:15PM
 2                    MS. M. MILLER:  -- the Second Superseding     02:15PM
 3      Indictment of Counts 100 through 104, which are the wire fraud  02:15PM
 4      counts.                                                      02:15PM
 5                    THE COURT:  Okay, so it's in -- it's on the    02:15PM
 6      Second Superseding Indictment, Counts 100 to 104?            02:15PM
 7                    MS. M. MILLER:  Yes, Your Honor.               02:15PM
 8                    THE COURT:  And the -- what is the exhibit     02:15PM
 9      number?                                                      02:15PM
10                    MS. M. MILLER:  It is Government's Demonstrative  02:15PM
11      Aid No. 43-1.                                                02:15PM
12                    THE COURT:  Okay, did you find that there,     02:15PM
13      Mr. Martin?                                                  02:15PM
14                    MS. M. MILLER:  It's on the screen, Your Honor. 02:15PM
15                    THE COURT:  No -- okay.                        02:15PM
16                    MR. MARTIN:  We didn't -- we didn't get the    02:15PM
17      demonstrative aid, but I have the indictment, Your Honor.    02:15PM
18                    THE COURT:  Okay, all right.  Very well.  Go   02:15PM
19      ahead, you can compare.  Any objections, Counsels?           02:15PM
20                    MR. MARTIN:  Other than we'd like to be provided 02:15PM
21      the demonstrative aids ahead of time, Your Honor, so we could 02:15PM
22      be prepared.                                                 02:15PM
23                    THE COURT:  All right, that's fair enough.     02:15PM
24      Counsel, make sure you provide it ahead of time.             02:15PM
25                    MS. M. MILLER:  Yes, Your Honor.  Maybe we     02:15PM
```

| | | |
|---|---|---|
| 1 | publish this to the jury? | 02:15PM |
| 2 | THE COURT:  All right, yeah, no -- okay, with | 02:15PM |
| 3 | you, Ms. McConwell? | 02:15PM |
| 4 | MS. MCCONWELL:  Yes, ma'am. | 02:16PM |
| 5 | THE COURT:  All right, very well, may be | 02:16PM |
| 6 | published. | 02:16PM |
| 7 | BY MS. M. MILLER: (CONTINUING) | 02:16PM |
| 8 | Q.   Special Agent Khamvongsa, do you see Demonstrative | 02:16PM |
| 9 | Aid 43 in front of you? | 02:16PM |
| 10 | A.   Yes. | 02:16PM |
| 11 | Q.   What role did you have in assisting the Government in | 02:16PM |
| 12 | preparing the indictment? | 02:16PM |
| 13 | A.   Not only did I do the -- not only did I do the | 02:16PM |
| 14 | investigation as it relates to these specific counts, but I | 02:16PM |
| 15 | also assisted the U.S. Attorneys with the preparation of the | 02:16PM |
| 16 | indictment. | 02:16PM |
| 17 | Q.   And could you tell the members of the jury why you | 02:16PM |
| 18 | chose these particular transactions for the wire fraud counts? | 02:16PM |
| 19 | A.   So of the transaction, I learned there was over 3,000 | 02:16PM |
| 20 | transactions, and this is a sample of the 3,000 transactions | 02:16PM |
| 21 | that I reviewed as it relates to the wire fraud. | 02:16PM |
| 22 | Q.   Okay.  And now let's talk about specifically | 02:16PM |
| 23 | Count 100.  Can you tell the members of the jury, what was the | 02:16PM |
| 24 | date of that wire transfer that constitutes that particular | 02:16PM |
| 25 | allegation? | 02:17PM |

1    A.    September 4th, 2015.                                    02:17PM

2    Q.    And where was it a wire transfer from?                 02:17PM

3    A.    It was from Friesland Fishing Company, LLC.            02:17PM

4    Q.    And what was the amount?                               02:17PM

5    A.    $134,219.92.                                           02:17PM

6    Q.    Could you tell the members of the jury what you did    02:17PM

7  in order to determine whether that particular wire transfer    02:17PM

8  was supported by the evidence in this case?                    02:17PM

9    A.    What I did was I started first with the bank           02:17PM

10 statement.  The bank statement from there, at the bank -- I    02:17PM

11 looked at the bank statement, and I looked at that specific    02:17PM

12 transaction.  In this case, it's Friesland Fishing.  From      02:17PM

13 there I identified the tuna boat company.                      02:17PM

14        I went back to the billing schedules and collections    02:17PM

15 to identify the vessel that it may have been -- that was       02:17PM

16 assigned to that and also to refer to whether or not the       02:17PM

17 payment matches up.  So I was looking at both the bank record  02:17PM

18 and Hansen Helicopters' own records.                           02:18PM

19        And then from there, once identifying the tuna boat,    02:18PM

20 I reviewed the aircraft vessel assignment to determine the     02:18PM

21 helicopter.  Once I identified the helicopter, I went back to  02:18PM

22 the pilot-mechanic listings that were provided by Hansen       02:18PM

23 Helicopters that I received and I determined the pilot and     02:18PM

24 mechanic assigned to that.  I compared that to the FAA records 02:18PM

25 as to whether or not they were certified as a mechanic or a    02:18PM

*Direct - Khamvongsa*

1    pilot.                                                                    02:18PM

2        Q.   Okay.  And, in each of these instances, can you tell            02:18PM

3    the members of the jury whether the pilots and mechanics were            02:18PM

4    in fact certified by the FAA?                                            02:18PM

5        A.   They were not.                                                  02:18PM

6        Q.   Okay.  And in each of these instances, did they                 02:18PM

7    involve a helicopter that had received an airworthiness                  02:18PM

8    certificate from Mr. Cislo?                                              02:18PM

9        A.   Yes, Counts 100, 101 and 102 reflect -- or reflect             02:18PM

10   Mr. Cislo's involvement in not doing his duty in ensuring that          02:19PM

11   they were properly inspected and safe.                                   02:19PM

12            MS. MCCONWELL:  Your Honor, this calls for --                    02:19PM

13   it's beyond the scope of the question and it's a narrative.             02:19PM

14            THE COURT:  Overruled, go ahead.                                02:19PM

15   BY MS. M. MILLER: (CONTINUING)                                           02:19PM

16       Q.   Did you finish answering the question, sir?                     02:19PM

17       A.   Yes.                                                            02:19PM

18       Q.   Okay.  Now, can you tell the members of the jury               02:19PM

19   which helicopter was involved in Count 100?                              02:19PM

20       A.   Count 100 --                                                    02:19PM

21       Q.   Yes.                                                            02:19PM

22       A.   -- involved N454S.                                             02:19PM

23       Q.   Okay.  And could you tell the members of the jury who          02:19PM

24   had registered N454S with the FAA as the owner?                          02:19PM

25       A.   Could you, please, provide 1252 --                             02:20PM

*Direct - Khamvongsa*

1    Q.    Yes.                                                    02:20PM

2    A.    -- the summary chart?                                   02:20PM

3    Q.    Yes.                                                    02:20PM

4          MS. M. MILLER:  Yes, Ms. Miller, could you pull         02:20PM

5    up Exhibit 1252.                                              02:20PM

6    BY MS. M. MILLER: (CONTINUING)                                02:20PM

7    Q.    Do you see that, sir?                                   02:20PM

8    A.    Yes.                                                    02:20PM

9    Q.    Can you tell the members of the jury which company      02:20PM

10   registered this helicopter with the FAA?                      02:21PM

11   A.    Dave's Helicopter Service, Inc. registered this         02:21PM

12   particular helicopter.                                        02:21PM

13   Q.    And that was the registration at the time of that       02:21PM

14   wire transfer?                                                02:21PM

15   A.    Yes.                                                    02:21PM

16   Q.    And could you tell the members of the jury which        02:21PM

17   company registered the helicopter initially with the FAA?     02:21PM

18   A.    Hansen Helicopters, Inc.                                02:21PM

19   Q.    And who had signed that initial registration?           02:21PM

20   A.    I don't know -- Defendant Jon Walker.                   02:21PM

21   Q.    And then in 1999, what was that changed to?             02:21PM

22   A.    It was changed to Eddie Air, Inc.                       02:21PM

23   Q.    And, again, who signed that registration?               02:21PM

24   A.    Jon Walker.                                             02:21PM

25   Q.    And then in 2002, who was it changed to?                02:21PM

*Direct - Khamvongsa*

```
 1        A.    Dave's Helicopter Service, Inc.                    02:21PM

 2        Q.    And who signed off on that registration?           02:21PM

 3        A.    Defendant Jon Walker.                               02:21PM

 4              MR. MARTIN:  Your Honor, I object.  His name is     02:21PM

 5   Jon Walker.  It doesn't say Defendant on there, and he's done 02:21PM

 6   this over and over.  It's -- it's Jon Walker or -- and --     02:21PM

 7   and --                                                        02:22PM

 8              THE COURT:  Okay.  All right.  Just say Jon         02:22PM

 9   Walker.                                                       02:22PM

10              MS. M. MILLER:  Jon Walker is the defendant.       02:22PM

11              THE COURT:  Just say just Walker.                  02:22PM

12              MR. MARTIN:  No, Your Honor.                       02:22PM

13              MS. M. MILLER:  No?                                02:22PM

14              MR. MARTIN:  That's training, Marie.               02:22PM

15              MS. M. MILLER:  Excuse me?                         02:22PM

16              THE COURT:  Jon Walker -- you can say -- Counsel,  02:22PM

17   that's fine.  The Court will sustain the objection.  Just say 02:22PM

18   Jon Walker, that's what it says, yes?                         02:22PM

19              MS. MCCONWELL:  We're on 12 -- 1252, correct,      02:22PM

20   isn't that --                                                 02:22PM

21              THE COURT:  Exhibit --                             02:22PM

22              MS. M. MILLER:  Because that is what has been      02:22PM

23   admitted into evidence, then it's --                          02:22PM

24              THE COURT:  Yes.                                   02:22PM

25              MS. MCCONWELL:  Well, I'm just using one off of    02:22PM
```

*Direct - Khamvongsa*

1    my flash drive, and my page for N454S is different than...    02:22PM

2    yeah, I -- I don't think I have the same one that Counsel's    02:22PM

3    using.  Yeah, I don't.    02:22PM

4                    THE COURT:  Okay.  Was it amended?    02:22PM

5                    MS. M. MILLER:  No.    02:22PM

6                    THE COURT:  It wasn't amended.  You want to    02:22PM

7    double-check that, Ms. McConwell?  She's --    02:22PM

8                    MS. MCCONWELL:  May I approach?    02:22PM

9                    THE COURT:  Yeah, go ahead, you can talk -- you    02:22PM

10   want to show the prosecutor?  Okay, why don't you do that.    02:22PM

11                    (Counsel conferred.)    02:23PM

12                    MS. M. MILLER:  This was -- this an amendment you    02:23PM

13   wanted to take out reference.    02:23PM

14                    MS. MCCONWELL:  But that's what's on -- I    02:23PM

15   don't --    02:23PM

16                    MS. M. MILLER:  But what was submitted into    02:23PM

17   evidence is this.    02:23PM

18                    MS. MCCONWELL:  I don't -- I don't have the    02:23PM

19   current one on the flash drive.    02:23PM

20                    MS. S. MILLER:  I just re-sent it.    02:23PM

21                    MS. M. MILLER:  She just sent it.    02:23PM

22                    There was -- there was a request by defense    02:23PM

23   Counsel to remove information of prior owners before it got to    02:23PM

24   Hansen, which we did.  And what was admitted into evidence is    02:23PM

25   the one that only had the Hansen ownership information.    02:23PM

*Direct - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | THE COURT:  All right. | 02:23PM |
| 2 | MS. M. MILLER:  And so -- | 02:23PM |
| 3 | MR. MARTIN:  Your Honor, I don't know that the | 02:23PM |
| 4 | explanation is necessary.  Let's just get the right document. | 02:23PM |
| 5 | THE COURT:  Well, I know. | 02:23PM |
| 6 | MR. MARTIN:  We have a comment on everything -- | 02:23PM |
| 7 | THE COURT:  Okay. | 02:23PM |
| 8 | MR. MARTIN:  -- and I object to that. | 02:24PM |
| 9 | THE COURT:  Let me just -- so, Ms. McConwell, did | 02:24PM |
| 10 | you find -- okay, did you figure it out, what happened? | 02:24PM |
| 11 | MS. M. MILLER:  Ms. Miller just -- | 02:24PM |
| 12 | MS. MCCONWELL:  No.  Ms. Miller has -- has | 02:24PM |
| 13 | e-mailed me.  She sent the correct one.  The one that was on | 02:24PM |
| 14 | the flash drive that they gave me is not. | 02:24PM |
| 15 | THE COURT:  So you just got it now? | 02:24PM |
| 16 | MS. M. MILLER:  No, Your Honor.  This was used -- | 02:24PM |
| 17 | MS. MCCONWELL:  No, I did not -- | 02:24PM |
| 18 | THE COURT:  Okay, wait, wait, let me just ask | 02:24PM |
| 19 | her.  What was that? | 02:24PM |
| 20 | MS. MCCONWELL:  I pulled up the one that's on the | 02:24PM |
| 21 | flash drive.  She's e-mailed it to me.  I will -- I will pull | 02:24PM |
| 22 | it up. | 02:24PM |
| 23 | THE COURT:  Okay, give her a minute.  Give her a | 02:24PM |
| 24 | minute. | 02:24PM |
| 25 | MS. MCCONWELL:  Okay, I'm -- I'm with her now. | 02:25PM |

*Direct - Khamvongsa*

```
 1              THE COURT:  All right, very well.  Go ahead.     02:25PM

 2   Proceed.                                                    02:25PM

 3   BY MS. M. MILLER:  (CONTINUING)                             02:25PM

 4      Q.   Okay.  Special Agent Khamvongsa, so Dave's is the   02:25PM

 5   registered owner at the time of this particular wire        02:25PM

 6   transaction?                                                02:25PM

 7      A.   Yes.                                                02:25PM

 8      Q.   And you told the members of the jury that you also  02:25PM

 9   looked at the bank records; is that correct?               02:25PM

10      A.   Yes.                                                02:25PM

11      Q.   So let's look what has been previously marked but not 02:25PM

12   introduced, Exhibit 0021.  Do you recognize this document,  02:25PM

13   sir?                                                        02:25PM

14      A.   Yes.                                                02:25PM

15      Q.   Is it a true and correct copy of the document that  02:25PM

16   you received from the Bank of Hawaii?                      02:25PM

17      A.   Yes.                                                02:26PM

18              MS. M. MILLER:  Your Honor, at this time the     02:26PM

19   Government would offer into evidence what has been previously 02:26PM

20   marked as Government's Exhibit 21.                          02:26PM

21              THE COURT:  Okay.  Counsels?                     02:26PM

22              MR. MARTIN:  We stipulated to it, Your Honor.  I 02:26PM

23   don't have any objections.                                  02:26PM

24              THE COURT:  All right.                           02:26PM

25              MS. MCCONWELL:  And this is only as to Jon       02:26PM
```

*Direct - Khamvongsa*

1    Walker, not Hansen.                                        02:26PM

2              THE COURT:  All right.  Very well.  Ladies and    02:26PM

3    gentlemen of the jury, Exhibit G-0021 admitted without     02:26PM

4    objection and applies to Defendant Jon Walker.  You may    02:26PM

5    proceed.                                                   02:26PM

6    (Exhibit G-0021 admitted.)                                 02:26PM

7              MS. M. MILLER:  May I publish this to the jury,   02:26PM

8    Your Honor?                                                02:26PM

9              THE COURT:  Okay, uh-huh.  It's only one page;    02:26PM

10   right?                                                     02:26PM

11             MS. M. MILLER:  No, Your Honor.                   02:26PM

12             THE COURT:  Oh, how many pages?  So let's see --  02:26PM

13             MS. M. MILLER:  Eleven.                           02:26PM

14             THE COURT:  All right.  Okay.  So let's just make 02:26PM

15   sure we say G-0021 through 11?                             02:26PM

16             MS. M. MILLER:  Yes, Your Honor.                  02:26PM

17             THE COURT:  All right.  Very well.  That'll be    02:26PM

18   admitted then without objection and as I already stated.   02:26PM

19             Okay.  Go ahead.  You may publish.               02:26PM

20             MS. M. MILLER:  Thank you, Your Honor.            02:26PM

21             And, Ms. Miller, can you highlight just the top  02:26PM

22   portion so we can show the jury what this record is.       02:26PM

23   BY MS. M. MILLER: (CONTINUING)                             02:26PM

24      Q.   Special Agent Khamvongsa, could you tell the members 02:27PM

25   of the jury how you obtained this record?                  02:27PM

*Direct - Khamvongsa*

1      A.   I obtained this record through the grand jury                02:27PM

2    subpoena.                                                           02:27PM

3      Q.   Okay.  And could you tell the members of the jury           02:27PM

4    what is the name of the company on this bank -- bank record?       02:27PM

5      A.   Caledonian Agency, Inc. is identified here in this          02:27PM

6    bank statement.                                                    02:27PM

7      Q.   Okay.  And could you remind the members of the jury         02:27PM

8    what kind of business was Caledonian Agency, Inc.?                 02:27PM

9      A.   Investment.                                                 02:27PM

10     Q.   Okay.                                                       02:27PM

11          MS. M. MILLER:  And could you please back off of            02:27PM

12   the highlight please, Ms. Miller, and can you bring the jury       02:27PM

13   to the transaction that specifically -- or transactions that       02:27PM

14   underline the Count 100 of the indictment, the wire transfers.     02:27PM

15   I believe it's page 11.                                            02:28PM

16   BY MS. M. MILLER:  (CONTINUING)                                    02:28PM

17     Q.   Do you see that there, sir?                                 02:28PM

18     A.   Yes.                                                        02:28PM

19     Q.   Okay.  And can you tell the members of the jury where       02:28PM

20   are the -- where is the wire transaction that is the subject       02:28PM

21   of Count 100?                                                      02:28PM

22     A.   It's right here.  Whoops.                                   02:28PM

23     Q.   Should you do that?                                         02:28PM

24     A.   Should I not have done that?                                02:28PM

25     Q.   Okay.                                                       02:28PM

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | A.   How do I... I don't know how to undo it. | 02:28PM |
| 2 | Q.   So, okay, we erased that. | 02:28PM |
| 3 | MS. M. MILLER:  Ms. Miller, can you just | 02:28PM |
| 4 | highlight that portion of the bank record to make it easier | 02:28PM |
| 5 | for me to see and for the jury to see, and then Special Agent | 02:28PM |
| 6 | Khamvongsa doesn't have to -- zone in on it.  I said | 02:28PM |
| 7 | highlight, but I didn't mean that. | 02:28PM |
| 8 | MS. S. MILLER:  I did that by accident. | 02:28PM |
| 9 | BY MS. M. MILLER: (CONTINUING) | 02:28PM |
| 10 | Q.   Okay.  So we see the wire transfer.  What is the date | 02:28PM |
| 11 | of this wire transfer, sir? | 02:29PM |
| 12 | A.   September 4th, 2016 -- 2017, excuse me. | 02:29PM |
| 13 | Q.   Okay.  And it says "ORG."  What does that mean? | 02:29PM |
| 14 | A.   It's the originator or organization. | 02:29PM |
| 15 | Q.   Okay.  And does that mean that company sent the money | 02:29PM |
| 16 | into the Caledonian account? | 02:29PM |
| 17 | A.   Yes, Friesland Fishing Company, LLC sent that | 02:29PM |
| 18 | money -- | 02:29PM |
| 19 | Q.   Okay. | 02:29PM |
| 20 | A.   -- to this account. | 02:29PM |
| 21 | Q.   And where it says "OBI," what does that mean? | 02:29PM |
| 22 | A.   Originating beneficiary information. | 02:29PM |
| 23 | Q.   And what is the originating beneficiary information? | 02:29PM |
| 24 | A.   It's identifying that the beneficiary is Hansen as | 02:29PM |
| 25 | reflected in this bank statement. | 02:29PM |

*Direct - Khamvongsa*

1    Q.   Okay.  So just to recap for the jury, the bank
2  account that the money goes into from the lease is Caledonian,
3  which is an investment company; correct?
4              MR. MARTIN:  Your Honor, I object to the leading.
5              THE COURT:  All right.
6              MR. MARTIN:  We don't need to recap for the jury.
7  She can ask him his next question.
8              THE COURT:  Very well.  The Court will sustain
9  the objection.
10  BY MS. M. MILLER: (CONTINUING)
11    Q.   Which account did the money go into, sir?
12    A.   It went to -- into Caledonian Agency, Inc. bank
13  account identified as investment.
14    Q.   And who is identified as the beneficiary of those
15  funds?
16              MR. MARTIN:  Asked and answered, Your Honor.
17              THE WITNESS:  Hansen --
18              MR. MARTIN:  Asked and answered, Your Honor.
19              THE COURT:  All right.  Sustained.
20              MS. M. MILLER:  Okay.
21  BY MS. M. MILLER: (CONTINUING)
22    Q.   And, when we look at Exhibit 829, which was already
23  admitted into evidence, do you see Caledonian on
24  Exhibit 829 --
25    A.   Yes.

*Direct - Khamvongsa*

```
 1      Q.   -- Agency?                                        02:30PM
 2      A.   It's located there on the -- on my right, the far 02:30PM
 3 right, and it's nowhere located anywhere near the 30 Vanuatu 02:30PM
 4 international companies.                                     02:30PM
 5      Q.   Okay.                                             02:30PM
 6           MS. M. MILLER:  All right.  We can back out of    02:30PM
 7 that, Ms. Miller.                                           02:30PM
 8 BY MS. M. MILLER: (CONTINUING)                              02:30PM
 9      Q.   So, sir, who's the president of Dave's Helicopters? 02:30PM
10      A.   It is Jon Walker.                                 02:30PM
11      Q.   Who's the president of Caledonian Investment Company? 02:30PM
12      A.   Mr. Jon Walker.                                   02:30PM
13      Q.   Who's the president of Hansen Helicopters?        02:30PM
14           MR. MARTIN:  Your Honor, these are all            02:31PM
15 cumulative --                                               02:31PM
16           THE WITNESS:  Mr. Jon Walker.                     02:31PM
17           THE COURT:  I'm sorry?                            02:31PM
18           MR. MARTIN:  -- asked and answered, repetitive.   02:31PM
19 I object; cumulative, asked and answered, repetitive.       02:31PM
20 We've --                                                    02:31PM
21           THE COURT:  All right.                            02:31PM
22           MR. MARTIN:  -- we've done this for six weeks     02:31PM
23 now.                                                        02:31PM
24           THE COURT:  Counsel?                              02:31PM
25           MS. M. MILLER:  Well, Your Honor, if they want to 02:31PM
```

*Direct - Khamvongsa*

```
1    stipulate to it, we could not do it anymore.  Then it will        02:31PM
2    become something the jury --                                      02:31PM
3              THE COURT:  Okay, but the objection --                  02:31PM
4              MS. M. MILLER:  Doesn't even have to decide.            02:31PM
5              THE COURT:  -- the objection is cumulative,             02:31PM
6    though.                                                           02:31PM
7              MS. M. MILLER:  Okay, it's not cumulative with          02:31PM
8    this particular witness with this particular testimony because    02:31PM
9    now we're talking about the wire fraud counts, and it's           02:31PM
10   important for the jury to see --                                  02:31PM
11             MR. MARTIN:  Your Honor, this -- this is another        02:31PM
12   speech.                                                           02:31PM
13             THE COURT:  All right.  All right, okay.  Any           02:31PM
14   further objections, Mr. Martin?                                   02:31PM
15             MR. MARTIN:  No, Your Honor, it's cumulative.           02:31PM
16             THE COURT:  All right.  The Court will sustain          02:31PM
17   the objection as cumulative.  Next question.                      02:31PM
18   BY MS. M. MILLER: (CONTINUING)                                    02:31PM
19      Q.   So let's look at Exhibit 726, which is the schedule       02:31PM
20   of billings and records.  And if you look at page 21, I           02:31PM
21   believe it is, we can see the transactions that equal that        02:31PM
22   wire transfer.                                                    02:32PM
23             MR. MARTIN:  Is that a question, Your Honor?            02:32PM
24             THE COURT:  I think it is.                              02:32PM
25             MS. M. MILLER:  We're looking at it.                    02:32PM
```

*Direct - Khamvongsa*

```
1              THE COURT:  Okay.                              02:32PM

2              MS. M. MILLER:  Ms. Miller, can you, please,   02:32PM

3    highlight the transaction for 14,100 --                  02:32PM

4              MR. MARTIN:  Your Honor, I would ask her to ask 02:32PM

5    the witness a question and not make speeches.            02:32PM

6              MS. M. MILLER:  I'm asking Ms. Miller to       02:32PM

7    highlight a portion of this --                           02:32PM

8              MR. MARTIN:  She -- she --                     02:32PM

9              MS. M. MILLER:  -- exhibit, Your Honor, so that 02:32PM

10   the jury --                                              02:32PM

11             THE COURT:  Okay.                              02:32PM

12             MS. M. MILLER:  -- could see it --             02:32PM

13             THE COURT:  That's fine.                       02:32PM

14             MS. M. MILLER:  -- and Your Honor could see it. 02:32PM

15   Thank you, Your Honor.                                   02:32PM

16             THE COURT:  Let her -- she's asking Ms. Miller to 02:32PM

17   just get the exhibit up, so the Court will overrule the  02:32PM

18   objection at this time.                                  02:32PM

19             MS. M. MILLER:  Thank you, Your Honor.         02:32PM

20             THE COURT:  Go ahead.                          02:32PM

21   BY MS. M. MILLER: (CONTINUING)                           02:32PM

22      Q.   So, Special Agent Khamvongsa, did you see the -- one 02:32PM

23   of the transactions that equals $134,000 wire transfer?  02:32PM

24      A.   Yes.                                             02:32PM

25      Q.   And could you identify it for the jury?          02:32PM
```

*Direct - Khamvongsa*

1    A.   Yes, if we look at the far right -- may I touch the    02:32PM

2    screen?    02:32PM

3    Q.   Okay.    02:32PM

4    A.   On 9/4/2015, $14,193.52 was received, and it's    02:32PM

5    reflected in Hansen Helicopters' own records.    02:33PM

6    Q.   Now, this was the record that who provided to you?    02:33PM

7    A.   Hansen Helicopters.    02:33PM

8    Q.   And, on the top of this record, what's the name of    02:33PM

9    the company that this is a billings and -- and schedule for?    02:33PM

10   A.   Wilma's Flight Services, Inc.    02:33PM

11   Q.   Okay.  Now let's look at page 23.    02:33PM

12         THE COURT:  This is the same Exhibit 726?    02:33PM

13         MS. M. MILLER:  Yes, Your Honor, it's still    02:33PM

14   Exhibit 726.    02:33PM

15         THE COURT:  All right.    02:33PM

16   BY MS. M. MILLER: (CONTINUING)    02:33PM

17   Q.   And let's look at the next transaction that comprised    02:33PM

18   the $134,219.92 wire transfer.  Do you see it, sir?    02:33PM

19   A.   Yes.    02:33PM

20   Q.   And how much was that transaction?    02:33PM

21   A.   Again, this is capturing another payment of $40,000    02:33PM

22   received on 9/4/2015 for Friesland covering the invoice period    02:33PM

23   of May to June, 2015.    02:33PM

24   Q.   Okay.  And now let's look at page 25, same date,    02:33PM

25   September 4th, 2015, could you tell the members of the jury    02:34PM

*Direct - Khamvongsa*

what they see there, in terms of the amount of money paid from

the tuna boat company into the Caledonian account?

A.   Friesland is paying $40,000 -- or $40,026.40 on

September 4th, 2015.

Q.   Okay.  And now let's look at page 28 the transaction

dated 9/4/15 between Friesland and what was deposited into the

Caledonian?

A.   Again --

MS. MCCONWELL:  Your Honor, I object to leading.

THE COURT:  Overruled.  Go ahead on this exhibit.

Go ahead.

THE WITNESS:  Again, Friesland is making a

payment of $40,000 on September 4th, 2015, for the invoice

period of July to August 2015.

BY MS. M. MILLER: (CONTINUING)

Q.   So, when you have, in the Second Superseding

Indictment as the jury saw in Demonstrative Aid 43, the total

of 134,291.92, these are the transactions that comprise that

total amount?

A.   Yes.

Q.   Okay.  Did you conduct the same analysis for each of

the counts in the Second Superseding Indictment indictment?

A.   I did.

Q.   Okay.

MS. M. MILLER:  Ms. Miller, could we go back to

1    Demonstrative Aid 43 and look at Count 101.                    02:35PM

2    BY MS. M. MILLER: (CONTINUING)                                 02:35PM

3        Q.   Okay.  Could you read to the jury Count 101, please?  02:35PM

4    It should be right in front of you.                            02:35PM

5        A.   December 1st, 2015, wire transfer from Golden Village 02:35PM

6    Global Limited in the amount of $194,183.52.                   02:35PM

7        Q.   Okay.  Could give me that amount?  I'm sorry, 194?    02:36PM

8        A.   194,18 -- $194,183.52.                                02:36PM

9        Q.   Okay.  And could you tell the members of the jury if  02:36PM

10   you identified which helicopter was used to generate that      02:36PM

11   income from the tuna boat company?                             02:36PM

12       A.   N501FC.                                               02:36PM

13       Q.   And let's go to --                                    02:36PM

14       A.   F as in Foxtrot.                                      02:36PM

15       Q.   Oh, F as in Foxtrot?  F -- FC?                        02:36PM

16       A.   FC.                                                   02:36PM

17       Q.   Thank you.                                            02:36PM

18       A.   Foxtrot Charlie.                                      02:36PM

19       Q.   And could we go to Exhibit 1252, which is the         02:36PM

20   registration summary chart, and could you tell the members of  02:37PM

21   the jury who the registered owner was of that aircraft at this  02:37PM

22   time in December of 2015?                                      02:37PM

23            MS. M. MILLER:  And could you highlight that,         02:37PM

24   Ms. Miller, that portion.  Excellent.                          02:37PM

25   BY MS. M. MILLER: (CONTINUING)                                 02:37PM

*Direct - Khamvongsa*

 1    Q.   Okay.  Could you tell the members of the jury, sir,

 2   who is the registered owner of that helicopter at the time

 3   that this particular lease was in effect?

 4    A.   Eddie Air, Inc.

 5    Q.   And who is the individual who registered it as Eddie

 6   Air, Inc.?

 7    A.   Jon Walker.

 8    Q.   Where did the money go from this lease, into which

 9   account?

10    A.   It went into the Caledonian -- excuse me, Caledonian

11   Agency, Inc. bank account with Bank of Hawaii.

12    Q.   Now, in the first count and in this count, we talked

13   about two helicopters.  I'd like you to look at what has been

14   entered into evidence as Government's Exhibit 645.  Do you

15   recall this piece of evidence?  And this has already want been

16   entered into evidence.

17    A.   Yes.

18    Q.   And could you tell the members of the jury if we go

19   to the next page, are the aircraft that you've identified that

20   we're talking about these wire fraud counts, are they on this

21   e-mail communication?

22    A.   Yes, they are.  I could point out them if you'd like.

23    Q.   Yes, please.

24    A.   They're identified in Item No. 4 and 5.

25    Q.   Okay.  And four was Count 100 we just saw?

*Direct - Khamvongsa*

1    A.    Correct.                                                    02:39PM

2    Q.    Five is Count 101, which we just saw?                       02:39PM

3    A.    Correct.                                                    02:39PM

4    Q.    And tell the members of the jury what about this            02:39PM

5   particular piece of evidence, as an investigator with the IRS,    02:39PM

6   did you view, in terms of these wire fraud counts?                02:39PM

7    A.    Well, this helped me establish that the helicopters        02:39PM

8   that --                                                           02:40PM

9            MR. MARTIN:  Your Honor, that's -- "did he view."        02:40PM

10  I object to the question.  I mean, it just opens the door for     02:40PM

11  him to give a narrative.                                          02:40PM

12           THE COURT:  I'm sorry?                                    02:40PM

13           MR. MARTIN:  I didn't understand the question.           02:40PM

14           THE COURT:  Okay.  Okay.  Repeat the question.           02:40PM

15  BY MS. M. MILLER: (CONTINUING)                                    02:40PM

16   Q.    Sure.  What is it about this piece of evidence that        02:40PM

17  -- well, first, let's go back and look at what this piece of      02:40PM

18  evidence is.  This is what?  What kind of evidence is this?       02:40PM

19   A.    This is evidence of the --                                 02:40PM

20   Q.    No, what is it?  Is it an e-mail?                          02:40PM

21   A.    Oh, it's an e-mail.  Excuse me.                            02:40PM

22   Q.    Who is it to?                                              02:40PM

23   A.    This e-mail is to Timothy Cislo.                           02:40PM

24   Q.    Who is it from?                                            02:40PM

25   A.    Turner -- Kapp Turner, or Turner Kapp.                     02:40PM

*Direct - Khamvongsa*

1    Q.   Is it from Rufus with copying Turner?                    02:40PM

2    A.   It could be -- yes, it is.                               02:40PM

3    Q.   Okay.  And the date of this?                             02:40PM

4    A.   February 11th, 2015.                                     02:40PM

5    Q.   Okay.  And could you please read this e-mail to the      02:40PM

6  jury and then tell the jury why this e-mail has anything to do  02:40PM

7  with the wire fraud count.                                      02:40PM

8    A.   "Hey, Tim, I brain-farted getting these to you.          02:41PM

9  Sorry about that.  Having Walker with us for a month            02:41PM

10  immediately followed by the DOIPO Boys onslaught has left me a  02:41PM

11  bit dingier than usual.  What paper do you want me -- or        02:41PM

12  Turner to have ready?  Here are the machines, Hansen            02:41PM

13  Helicopters restricted aerial survey, number, type, serial     02:41PM

14  number."                                                       02:41PM

15       And it goes -- do you want me to read the list of         02:41PM

16  helicopters?                                                   02:41PM

17    Q.   No.                                                     02:41PM

18    A.   And it identified ten helicopters.  "Much               02:41PM

19  appreciated, Rufus."                                           02:41PM

20    Q.   Now, let's go to the e-mail that followed this on the    02:41PM

21  first page of this document on the bottom there, and what do   02:41PM

22  we see there?                                                  02:41PM

23    A.   Another e-mail, the response from Timothy Cislo.        02:41PM

24    Q.   Okay.  And what does it say?                            02:41PM

25    A.   "Rufus, all we need is an FAA Form 8130-6 for each      02:41PM

*Direct - Khamvongsa*

1   one.  When do the current certificates expire?  I'm looking at        02:41PM

2   May or June to have a sign fest."        02:42PM

3       Q.   Okay.        02:42PM

4       A.   "Regards, Tim."        02:42PM

5       Q.   So can you please explain to the members of the jury        02:42PM

6   why this particular e-mail has anything to do with the wire        02:42PM

7   fraud counts?        02:42PM

8                   MR. MARTIN:  Objection.  Speculation, Your Honor.        02:42PM

9                   MS. M. MILLER:  Based on your investigation, sir.        02:42PM

10                  MR. MARTIN:  Objection; speculation.        02:42PM

11                  THE COURT:  Overruled -- I mean, I'm sorry,        02:42PM

12  sustained.  The Court will sustain that objection.        02:42PM

13  BY MS. M. MILLER: (CONTINUING)        02:42PM

14      Q.   Based on your investigation, sir, did you connect up        02:42PM

15  these aircraft with the money that was coming in from the        02:42PM

16  companies?        02:42PM

17      A.   Yes.        02:42PM

18      Q.   Based on your review of the documents, what did Jon        02:42PM

19  Walker ever communicate to the tuna boat companies about the        02:42PM

20  fact that he had bribed an inspector to obtain those --        02:42PM

21                  MR. MARTIN:  Your Honor, I object to the leading        02:42PM

22  form of the question that -- that --        02:42PM

23  BY MS. M. MILLER: (CONTINUING)        02:42PM

24      Q.   What did --        02:42PM

25                  THE COURT:  Okay, wait, wait.  Just a minute.        02:42PM

*Direct - Khamvongsa*

1    Let me -- let me -- okay, wait.  Just rephrase the question.    02:42PM

2                MS. M. MILLER:  Yes, Your Honor.    02:42PM

3    BY MS. M. MILLER: (CONTINUING)    02:42PM

4        Q.   What did Jon Walker communicate to the tuna boat    02:42PM

5    companies in the leases so that they would know that the    02:42PM

6    helicopters they were leasing had airworthiness certificates    02:43PM

7    as a result of a bribe?    02:43PM

8                MR. MARTIN:  Your Honor, I object to the    02:43PM

9    question.  It assumes facts that -- up to the jury to decide.    02:43PM

10   It assumes -- it assumes a negative right off the bat.    02:43PM

11               THE COURT:  All right.  The Court will sustain    02:43PM

12   the objection.  Rephrase.    02:43PM

13               MS. M. MILLER:  Yes, Your Honor.    02:43PM

14   BY MS. M. MILLER: (CONTINUING)    02:43PM

15       Q.   Could you tell the members of the jury what    02:43PM

16   information was provided -- did you --    02:43PM

17               First of all, did you review the leases that pertain    02:43PM

18   to each of these transactions?    02:43PM

19       A.   Yes.    02:43PM

20       Q.   Okay.  What information was in those leases that let    02:43PM

21   the tuna boat companies know that they were paying for    02:43PM

22   aircraft that had airworthiness certificates as a result of a    02:43PM

23   bribe?    02:43PM

24               MR. MARTIN:  Your Honor, I object to the    02:43PM

25   question.  It assumes a fact that's up to the jury to decide.    02:43PM

*Direct - Khamvongsa*

1    It assumes a negative.  It's an improper question.  It's          02:43PM

2    leading.                                                          02:43PM

3              MS. M. MILLER:  Your Honor --                           02:43PM

4              THE COURT:  Okay.  Could the Court --                   02:43PM

5              MS. M. MILLER:  -- Mr. Cislo already testified --       02:43PM

6              THE COURT:  Wait, wait.  The Court --                   02:43PM

7              MS. M. MILLER:  -- he --                                02:43PM

8              THE COURT:  The Court will sustain the objection        02:43PM

9    based on speculation.  Next -- just rephrase.                     02:43PM

10   BY MS. M. MILLER: (CONTINUING)                                    02:43PM

11     Q.   Let's look at Exhibit 166, please.  Do you recognize       02:44PM

12   Exhibit 166?                                                      02:44PM

13     A.   Yes.                                                       02:44PM

14     Q.   What is it?                                                02:44PM

15     A.   This is a pilot-mechanic list that I obtained from         02:44PM

16   Hansen Helicopters through the search warrant.                    02:44PM

17             MS. M. MILLER:  Your Honor, at this time the            02:44PM

18   Government would offer into evidence what has previously          02:44PM

19   marked as Exhibit 166.                                            02:44PM

20             THE COURT:  Counsels, any objections?                   02:44PM

21             MR. MARTIN:  May I have just a second, Your             02:44PM

22   Honor?                                                            02:44PM

23             THE COURT:  Yes, you may.                               02:44PM

24             (Pause.)                                                02:44PM

25             MR. MARTIN:  May I ask a --                             02:45PM

| | |
|---|---|
| 1 | THE COURT:  Yes. | 02:45PM |
| 2 | MR. MARTIN:  -- question in aid -- | 02:45PM |
| 3 | THE COURT:  Yes. | 02:45PM |
| 4 | MR. MARTIN:  -- of maybe or maybe not an | 02:45PM |
| 5 | objection? | 02:45PM |

    1                THE COURT:  Yes.                              02:45PM
    2                MR. MARTIN:  -- question in aid --           02:45PM
    3                THE COURT:  Yes.                             02:45PM
    4                MR. MARTIN:  -- of maybe or maybe not an     02:45PM
    5    objection?                                               02:45PM
    6                THE COURT:  Right.                           02:45PM
    7                                                             02:45PM
    8                   VOIR DIRE EXAMINATION                     02:45PM
    9    BY MR. MARTIN:                                           02:45PM
   10       Q.   Government's Exhibit --                          02:45PM
   11                THE COURT:  Can you speak into the mic?  Bring 02:45PM
   12    the mic a little closer there, Mr. Martin.  Yes.  Go ahead. 02:45PM
   13    BY MR. MARTIN: (CONTINUING)                              02:45PM
   14       Q.   Government's Exhibit 166, sir, did you obtain that? 02:45PM
   15       A.   Yes.                                             02:45PM
   16       Q.   Pursuant to a grand jury subpoena or a search   02:45PM
   17    warrant?                                                 02:45PM
   18       A.   No, this was obtained by the search warrant --  02:45PM
   19    through the search warrant.                              02:45PM
   20       Q.   Okay.                                            02:45PM
   21                MR. MARTIN:  No objection.                   02:45PM
   22                THE COURT:  No objection.                    02:45PM
   23                Ms. McConwell?                               02:45PM
   24                MS. MCCONWELL:  Well, I'm -- I'm going to object 02:46PM
   25    to the -- the relevance of this.  I don't think it's relevant 02:46PM

*Direct - Khamvongsa*

 1    to the line -- well, first of all, I don't think -- it          02:46PM

 2    shouldn't come into Jon -- or to Hansen Helicopters because      02:46PM

 3    we're not in any of these counts, but it doesn't appear to be    02:46PM

 4    relevant to the Count 100 or 101, which is the counts which      02:46PM

 5    the line of questioning is.  The dates don't match.              02:46PM

 6              MS. M. MILLER:  Okay.  First of all, as to             02:46PM

 7    relevance, Your Honor, this was obtained at Hansen Helicopters   02:46PM

 8    pursuant to the search warrant.                                  02:46PM

 9              Secondly, if you look at very top of the               02:46PM

10    document, it identifies it as being a Hansen Helicopters crew    02:46PM

11    and vessel list.                                                 02:46PM

12              Thirdly, we are talking about -- we're talking         02:46PM

13    about aircraft N501FC.  If you look at paragraph -- Row 33 on    02:46PM

14    this document, it shows N501FC.  It shows the name of the tuna   02:46PM

15    boat company that that particular aircraft was leased to, and    02:46PM

16    then it identifies the name of the individuals who worked on     02:46PM

17    that aircraft, both as pilot and mechanic, and the dates that    02:46PM

18    they worked on it, which coincide, Your Honor, with this         02:47PM

19    particular wire fraud count.  That's why it's relevant and       02:47PM

20    that's why it should comment in.                                 02:47PM

21              THE COURT:  All right.                                 02:47PM

22              MS. MCCONWELL:  Okay.  So the wire -- 101 is --        02:47PM

23    is a wire fraud count that's dated December 1st, 2015, and       02:47PM

24    this 166 is a pilot-mechanic list date 8/15/16.  I think that    02:47PM

25    its prejudicial value outweighs any possible probative value     02:47PM

*Direct - Khamvongsa*

1    because it's confusing.  This -- this pilot-mechanic's list is    02:47PM

2    about a year after the counts that she's asking Mr. Khamvongsa    02:47PM

3    about right now --    02:47PM

4            MS. M. MILLER:  No, it's not, Your Honor.    02:47PM

5            MS. MCCONWELL:  -- so I think it confusing.    02:47PM

6            MS. M. MILLER:  If you -- if you --    02:47PM

7            THE COURT:  Okay.    02:47PM

8            MS. M. MILLER:  If you look at the date to the    02:47PM

9    right of the mechanic, it specifically says that that mechanic    02:47PM

10    started working on this aircraft in October of 2015.  We're    02:47PM

11    talking about a wire transfer that occurred in December of    02:47PM

12    2015.  How is that a year after?    02:47PM

13            MS. MCCONWELL:  Well, then --    02:47PM

14            MS. M. MILLER:  And it also shows --    02:47PM

15            THE COURT:  Okay.    02:47PM

16            MS. M. MILLER:  -- that this person worked until    02:47PM

17    10/19/16.  So, again, these are transactions that occurred in    02:48PM

18    12 of '15.  How is that outside the dates?    02:48PM

19            MS. MCCONWELL:  Then I think it's cumulative    02:48PM

20    because they've already admitted Exhibit 183, which is a pilot    02:48PM

21    and mechanic's list which covers the same period.    02:48PM

22            THE COURT:  All right.  The Court will overrule    02:48PM

23    the objection on both counts.  You may proceed.    02:48PM

24            MS. M. MILLER:  May I publish it to the jury,    02:48PM

25    Your Honor?    02:48PM

*Direct - Khamvongsa*

        THE COURT:  You may.                              02:48PM

BY MS. M. MILLER:  (CONTINUING)                           02:48PM

    Q.   And, Special Agent Khamvongsa, could you please tell  02:48PM

the members of the jury what we're seeing in Row 33 on this  02:48PM

document?                                                 02:48PM

    A.   Yes, what we're seeing is that N51FC is assigned to  02:48PM

the tuna vessel -- or the vessel SHUNFA8.  And then we see the  02:48PM

name of the pilot, Francisco Enriquez, the contract start date  02:48PM

and the contract end date of 3-7-2016 to 3-7-2017.  Then we  02:48PM

see the mechanic, Vilamar Batara, Jr.  The contract --  02:49PM

start -- starting contract date of October 19th, 2015, to the  02:49PM

contract date of 10-19-2016.                              02:49PM

    Q.   So as to the mechanic, Mr. Batara, Jr., was he the  02:49PM

mechanic for this particular aircraft during the period of  02:49PM

time that these transactions were taking place?           02:49PM

    A.   Yes.                                             02:49PM

    Q.   And was he certificated by the FAA, sir?         02:49PM

    A.   No.                                              02:49PM

    Q.   Okay.  Now let's please look at the top of this   02:49PM

document before we leave this document.                   02:49PM

        MS. M. MILLER:  Ms. Miller, the very top of the   02:49PM

document where it identifies the heading.  Yes, thank you.  02:49PM

BY MS. M. MILLER:  (CONTINUING)                           02:49PM

    Q.   What is the heading of this document, sir?       02:49PM

    A.   Hansen Helicopters Air Crew Vessel Contact List,  02:49PM

*Direct - Khamvongsa*

1    total aircraft 46, air crew vessel contact list 7-16-2016.    02:49PM

2    Q.    Okay.  Thank you.    02:49PM

3            MS. M. MILLER:  Now, Ms. Miller, could you,    02:49PM

4    please -- could you please go to the schedule of billings and    02:49PM

5    collections Exhibit 726, and could you go to page 38.    02:50PM

6            THE COURT:  Sorry, 726-8, this has already been    02:50PM

7    admitted?    02:50PM

8            MS. M. MILLER:  Thirty-eight.  This has already    02:50PM

9    been admitted, Your Honor, yes.    02:50PM

10            THE COURT:  Thirty-eight.  Okay.    02:50PM

11            MS. M. MILLER:  Could you go to 38 please and far    02:50PM

12    right column, December 1st, 2015.    02:50PM

13    BY MS. M. MILLER: (CONTINUING)    02:50PM

14    Q.    Special Agent Khamvongsa, could you please tell the    02:50PM

15    members of the jury which of these transactions constitute the    02:50PM

16    told of 194,193.52 that is in Count 101?    02:50PM

17    A.    So if you look at the billing schedule, it identifies    02:51PM

18    the vessel SHUNFA8 that Golden Village Global made a basement    02:51PM

19    for SHUNFA8, and there's three different invoice items.    02:51PM

20    There's the three-month deposit and then there's the lease    02:51PM

21    period of October 21st to October -- excuse me -- October 21st    02:51PM

22    to October 31st, 2015, and then the other period is    02:51PM

23    November 1st, through November 30th of 2015.  And if we look    02:51PM

24    on far right column, we see that the date paid all are    02:51PM

25    12-1-2015, and it identifies individuals amounts.  So for the    02:51PM

*Direct - Khamvongsa*

1    three-month deposit it's $120,000, $120,000.  Then the invoice    02:51PM

2    period of October 21st to October 31st, it's $34,193.52.  And    02:51PM

3    then the invoice period of November 1st through November 30th,    02:52PM

4    2015, we see that it's $40,000.  So a lump sum payment of    02:52PM

5    $194,193.52, it corroborates what's reflected in the bank --    02:52PM

6    bank statement.    02:52PM

7        Q.   So just so the jury is clear, we're looking at the    02:52PM

8    schedule of billings that Hansen Helicopters produced to you;    02:52PM

9    correct?    02:52PM

10       A.   Yes.    02:52PM

11       Q.   Now let's look at the bank records, let's look at    02:52PM

12   Exhibit 22 which has not been entered into evidence yet.  Do    02:52PM

13   you see Exhibit 22?    02:52PM

14       A.   Yes.    02:52PM

15       Q.   Is that a true and correct copy of the bank records    02:52PM

16   that you received pursuant to a subpoena in this case?    02:52PM

17       A.   Yes.    02:52PM

18       Q.   And is it for the time period that we're discussing    02:52PM

19   with this particular count?    02:52PM

20       A.   Yes.    02:52PM

21            MS. M. MILLER:  Your Honor, at this time I would    02:52PM

22   offer into evidence what has been previously marked as    02:52PM

23   Government's Exhibit 22.    02:52PM

24            THE COURT:  And is it more than one page?    02:52PM

25            MS. M. MILLER:  It is.    02:53PM

| | |
|---|---|
| 1 | THE COURT:  How many pages? |
| 2 | MS. M. MILLER:  Twenty-three, Your Honor. |
| 3 | THE COURT:  All right.  So 22-1 through 23? |
| 4 | MS. M. MILLER:  Yes, Your Honor. |
| 5 | THE COURT:  Any objections, Counsels? |
| 6 | MS. MCCONWELL:  Could -- could we limit this |
| 7 | to -- to the relevant pages? |
| 8 | THE COURT:  We could.  You can ask, yeah.  I |
| 9 | mean, they're -- they're asking for a limitation to the |
| 10 | relevant pages.  Any objections to that? |
| 11 | MS. M. MILLER:  No objection -- well, yes, Your |
| 12 | Honor.  I -- I don't think that's necessary.  This isn't a |
| 13 | voluminous document, and I think it is relevant for the jury |
| 14 | to see the income coming into the account. |
| 15 | MR. MARTIN:  And we only 2900 Exhibits, Your |
| 16 | Honor, so I -- |
| 17 | THE COURT:  Well -- |
| 18 | MS. M. MILLER:  Your Honor, I wish that -- |
| 19 | THE COURT:  No, we don't -- |
| 20 | MS. M. MILLER:  -- the Court would -- |
| 21 | THE COURT:  Yeah. |
| 22 | MS. M. MILLER:  -- instruct Mr. Martin to please |
| 23 | stop.  He doesn't want me to make these extraneous -- |
| 24 | THE COURT:  All right. |
| 25 | MS. M. MILLER:  -- comments. |

*Direct - Khamvongsa*

1          THE COURT:  You both are making extraneous          02:53PM

2    comments, okay --                                          02:53PM

3          MS. M. MILLER:  But -- but --                        02:53PM

4          THE COURT:  -- so you're both guilty of it --        02:53PM

5          MS. M. MILLER:  -- it goes both ways.                02:53PM

6          THE COURT:  -- so the Court -- hold on, I agree.     02:53PM

7    So the Court will sustain the objection.                   02:53PM

8          MR. MARTIN:  Your Honor --                           02:53PM

9          Yes, Mr. McConwell -- Mr. Martin, we accept your     02:53PM

10   apology.  Go ahead.                                        02:54PM

11         MS. M. MILLER:  So I will move to admit page 1       02:54PM

12   which shows the jury --                                    02:54PM

13         THE COURT:  Okay.  Wait just --                      02:54PM

14         MS. M. MILLER:  -- the information about --          02:54PM

15         THE COURT:  I already know what the motion --        02:54PM

16         MS. M. MILLER:  -- this account.                     02:54PM

17         THE COURT:  -- is.  Okay, wait, wait.                02:54PM

18         Any other objection, Ms. McConwell?                  02:54PM

19         MS. MCCONWELL:  Well, I wasn't sure if she's --      02:54PM

20   that's we're going to do that or we're not going to do that. 02:54PM

21         THE COURT:  No, she's indicated she prefer to not    02:54PM

22   limit it to the pages that it focuses in on.               02:54PM

23         MS. MCCONWELL:  Well, I -- it contains              02:54PM

24   information about a lot of individuals who are paid through 02:54PM

25   this account that are not relevant to this -- this jury    02:54PM

*Direct - Khamvongsa*

```
 1    trial --                                                    02:54PM

 2              MS. M. MILLER:  Your Honor --                     02:54PM

 3              MS. MCCONWELL:  -- and so --                      02:54PM

 4              THE COURT:  Okay.  Hold on.  Hold on.             02:54PM

 5              MS. M. MILLER:  I'm withdrawing.                  02:54PM

 6              THE COURT:  Hold on.  Let me hear -- let me       02:54PM

 7    hear --                                                     02:54PM

 8              MS. MCCONWELL:  -- just the relevant pages.       02:54PM

 9              THE COURT:  -- the objection.                     02:54PM

10              MS. M. MILLER:  I'm just -- I'm agreeing with     02:54PM

11    her.  I'll just --                                          02:54PM

12              THE COURT:  Oh, okay --                           02:54PM

13              MS. M. MILLER:  -- introduce --                   02:54PM

14              THE COURT:  -- okay, okay.                        02:54PM

15              MS. M. MILLER:  I want to move on for the jury -- 02:54PM

16              THE COURT:  Okay.  She agrees with you.           02:54PM

17              MS. M. MILLER:  -- so --                          02:54PM

18              THE COURT:  Okay.  Got it.                        02:54PM

19              MS. M. MILLER:  -- let's just introduce page 1,   02:54PM

20    which shows the jury what this document is.                 02:54PM

21              THE COURT:  Motion -- okay.  There's a motion to  02:54PM

22    admit 22-1.  No objections, Ms. McConwell?                  02:54PM

23              MR. MARTIN:  No objection.                        02:54PM

24              THE COURT:  Mr. Martin?                           02:54PM

25              Okay.  Admitted.  Yes, you may publish.           02:54PM
```

*Direct - Khamvongsa*

```
 1              MS. M. MILLER:  And then I believe page 21 is the    02:54PM
 2   one that has the transaction.  Once I verify that, I will move  02:54PM
 3   to admit just that page so that we could move on.               02:55PM
 4              THE COURT:  Okay.  So 22-1 and 20[sic] is            02:55PM
 5   admitted without objection.  Why don't you guys look at 22-21   02:55PM
 6   now.                                                            02:55PM
 7   (Exhibit 22-1, 22-20 admitted.)                                 02:55PM
 8              MS. M. MILLER:  Can you go to 21?  And can you       02:55PM
 9   hone in on the 194?  It's towards the bottom.  Yeah, there you  02:55PM
10   go.                                                             02:55PM
11              THE COURT:  Yes?                                     02:55PM
12              MS. M. MILLER:  Any objection to that, Your          02:55PM
13   Honor?                                                          02:55PM
14              THE COURT:  I think they're looking.  They're        02:55PM
15   looking.  They're speed reading there.                          02:55PM
16              MR. MARTIN:  I've already said I have no             02:55PM
17   objection.                                                      02:55PM
18              THE COURT:  Oh, yeah.                                02:55PM
19              MR. MARTIN:  I'm sorry.                              02:55PM
20              THE COURT:  But -- but -- okay, no objections.       02:55PM
21              Ms. McConwell?                                       02:55PM
22              MS. MCCONWELL:  Well, yeah, I mean, it's only to     02:55PM
23   Mr. Walker, so --                                               02:55PM
24              THE COURT:  All right.  So objections -- 22-1 and    02:55PM
25   22-21 will be admitted without objection.  You may proceed.     02:55PM
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | (Exhibit 22-21 admitted.) |
| 2 | MS. M. MILLER:  Thank you, Your Honor.  May I |
| 3 | publish? |
| 4 | THE COURT:  Yes, you may publish.  26. |
| 5 | MS. M. MILLER:  So Ms. Miller, yes, thank you for |
| 6 | starting the first page. |
| 7 | BY MS. M. MILLER: (CONTINUING) |
| 8 | Q.   And, Special Agent Khamvongsa, once this gets on the |
| 9 | screen -- okay, wonderful.  So can you tell the members of the |
| 10 | jury how you obtained this information, please? |
| 11 | A.   I obtained -- I obtained it through the grand jury |
| 12 | subpoena. |
| 13 | Q.   Okay.  And, again, the name of the company that is |
| 14 | identified in this bank record? |
| 15 | A.   Caledonian Agency, Inc. |
| 16 | Q.   And that was the investment company, sir? |
| 17 | A.   Yes. |
| 18 | Q.   The address of the company, do you recognize that? |
| 19 | A.   Yes. |
| 20 | Q.   And what do you recognize about that address? |
| 21 | A.   It's the same address belonging to Hansen |
| 22 | Helicopters -- |
| 23 | Q.   Okay. |
| 24 | A.   -- here in Guam. |
| 25 | Q.   And let's look at page 21 of this document, and, |

02:55PM
02:55PM
02:55PM
02:55PM
02:55PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM
02:56PM

*Direct - Khamvongsa*

1    Ms. Miller's going to highlight the transaction on 12-1-2015.    02:56PM

2    Do you recognize this?    02:56PM

3        A.   Yes.    02:56PM

4        Q.   And is this wire transfer reflected in the Hansen    02:56PM

5    Helicopters' schedule of billings that we just saw previously?    02:57PM

6        A.   Yes.    02:57PM

7             MS. M. MILLER:  Okay, thank you, Ms. Miller.    02:57PM

8    BY MS. M. MILLER: (CONTINUING)    02:57PM

9        Q.   Now, if we go back to Demonstrative Aid 43 again, and    02:57PM

10   let's look at Count 103.  And could you read 103 to the jury,    02:57PM

11   please?    02:57PM

12       A.   September 2nd, 2016, wire transfer from Ocean    02:57PM

13   Conquest, LLC in the amount of $234,980.    02:57PM

14       Q.   Okay.  And did you see the information in the    02:57PM

15   schedule of billings and collections that you received from    02:57PM

16   Hansen Helicopters?    02:57PM

17       A.   Yes.    02:57PM

18       Q.   Let's look at Exhibit 726, page 67, please.  Okay.    02:57PM

19   Sir, do you see the schedule here that corresponds with that    02:58PM

20   particular count?    02:58PM

21       A.   Yes.    02:58PM

22       Q.   And can you tell the members of the jury, what are    02:58PM

23   the transactions that equal that 290 -- $234,980 that is    02:58PM

24   reflected in that wire fraud transaction?    02:58PM

25       A.   So there's six tuna boats identified here in this    02:58PM

*Direct - Khamvongsa*

1    schedule of billings and collections identified as Ocean    02:58PM

2    Challenger, Ocean Expedition, Ocean Warrior, Ocean Encounter,    02:58PM

3    Ocean Conquest, Ocean Galaxy, which made a lump sum payment of    02:58PM

4    $230,980, and it's reflected individually for each tuna boat    02:58PM

5    company covering the period of September 2nd, to October 1st,    02:59PM

6    2016.    02:59PM

7        Q.    Okay.  And, again, this is a record received from the    02:59PM

8    Defendant Hansen Helicopters?    02:59PM

9        A.    Yes.    02:59PM

10       Q.    Now, let's look at Exhibit 725, which is another    02:59PM

11   record received from Hansen Helicopters, and I'd like you to    02:59PM

12   look specifically at pages 13 and 15 of that exhibit so that    02:59PM

13   you can identify the aircraft that were used in those leases.    02:59PM

14   Do you see those there, sir?    02:59PM

15       A.    Yes.    02:59PM

16       Q.    And could you read those for the jury, please?    02:59PM

17       A.    N911GP is assigned to Ocean Challenger.  N336SP is    02:59PM

18   assigned to Ocean Warrior.  N9938A is assigned to Ocean    02:59PM

19   Expedition.  N1156X is assigned to Ocean Encounter.  N810M is    02:59PM

20   assigned to Ocean Conquest.  N26892 is assigned to Ocean    03:00PM

21   Galaxy.    03:00PM

22           MS. M. MILLER:  Okay.  Now, Ms. Miller, if we    03:00PM

23   could keep that up and move it over and pull up Exhibit 1252.    03:00PM

24   Is that asking too much?    03:00PM

25           MS. S. MILLER:  I'll try.    03:00PM

```
 1              MS. M. MILLER:  We'll try.                    03:00PM

 2    BY MS. M. MILLER: (CONTINUING)                          03:00PM

 3         Q.   What I'd like you to do, sir, is let the jury know   03:00PM

 4    who registered those helicopters that were used in these   03:00PM

 5    leases.                                                  03:00PM

 6                   (Counsel conferred.)                     03:00PM

 7              MS. M. MILLER:  And just pull up 1252.  I'm    03:01PM

 8    writing the numbers on the board, so...                 03:01PM

 9    BY MS. M. MILLER: (CONTINUING)                          03:01PM

10         Q.   Okay.  So we're going to pull up Exhibit 1252, which   03:01PM

11    is the registration information, okay, and let's start with   03:01PM

12    the first helicopter, 9911GP.  Can you tell the members of the   03:01PM

13    jury, who is the registered owner of that helicopter during   03:01PM

14    the payment from the lease?                             03:01PM

15         A.   South Pacific Spotters, Inc.                  03:01PM

16         Q.   Then if we look at November 336SP, can you tell the   03:01PM

17    members of the jury who was the registered owner of that   03:01PM

18    helicopter during the time of the lease?                03:01PM

19              And, by the way, who was the person that you just saw   03:01PM

20    that registered that helicopter with the FAA?           03:02PM

21         A.   Jon Walker.                                   03:02PM

22         Q.   Okay.  Now, N336SP, who was the registered owner of   03:02PM

23    that aircraft during the time of this transaction?      03:02PM

24         A.   Alpha Air, Inc.                               03:02PM

25         Q.   And who registered it with the FAA under Alpha Air,   03:02PM
```

*Direct - Khamvongsa*

1   Inc?                                                          03:02PM

2       A.    Jon Walker.                                         03:02PM

3       Q.    Now, let's look at the next aircraft, which is      03:02PM

4   N9938A, and could you tell the members of the jury which      03:02PM

5   company was that aircraft registered under?                   03:02PM

6       A.    South Pacific Spotters, Inc.                        03:02PM

7       Q.    And who registered it?                              03:02PM

8       A.    Jon Walker.                                         03:02PM

9       Q.    Now, could you look at N1156X, and could you tell the  03:02PM

10  members of the jury which company was that aircraft registered   03:03PM

11  under at the time of the lease?                               03:03PM

12      A.    Walker Helicopters, Inc.                            03:03PM

13      Q.    And who's the person who registered it that way with  03:03PM

14  the FAA?                                                      03:03PM

15      A.    Jon Walker.                                         03:03PM

16      Q.    All right.  Let's look at N810M, and could you tell  03:03PM

17  the members of the jury which company was that aircraft       03:03PM

18  registered under during the time of this transaction?        03:03PM

19      A.    Bravo Air, Inc.                                     03:03PM

20      Q.    And who registered it?                              03:03PM

21      A.    Jon Walker.                                         03:03PM

22      Q.    And the last helicopter for this transaction, N26892,  03:03PM

23  can you tell the members of the jury which company was that   03:04PM

24  helicopter registered under?                                 03:04PM

25      A.    Wilma's Flight Service, Inc.                        03:04PM

*Direct - Khamvongsa*

1    Q.    And who registered it under Wilma's Flight Service,    03:04PM

2  Inc?    03:04PM

3    A.    Jon Walker.    03:04PM

4    Q.    Now, sir, in addition to reviewing the list of    03:04PM

5  aircraft and boats in 725 and reviewing the schedule of    03:04PM

6  billings that the Defendant Hansen Helicopters provided in 726    03:04PM

7  and looking at the registration information, did you also    03:04PM

8  determine who the mechanics were for each of these helicopters    03:04PM

9  during the relevant period of time?    03:04PM

10    A.    Yes.    03:04PM

11    Q.    Could you tell the jury how you made that    03:04PM

12  determination?    03:04PM

13    A.    Based upon the process that we've gone through thus    03:04PM

14  far, once identifying the helicopters, I took that information    03:04PM

15  and reviewed the pilot-mechanics list to determine who was    03:05PM

16  assigned that the point in time to those particular    03:05PM

17  helicopters.    03:05PM

18    Q.    And when you made that determination, what did you do    03:05PM

19  then?    03:05PM

20    A.    I then compared that information to FAA records,    03:05PM

21  and -- and then I made a determination from there as to    03:05PM

22  whether or not they were certificated with the FAA.    03:05PM

23    Q.    Were any of the mechanics used during this period of    03:05PM

24  time for these leases certificated by the FAA?    03:05PM

25    A.    No.    03:05PM

1   Q.   Okay.  Let's look at what has been previously marked      03:05PM

2   as Exhibit 2900-1976.  Do you see that document, sir?          03:05PM

3   A.   Yes.                                                      03:06PM

4   Q.   Is that a true and correct copy of the lease that you    03:06PM

5   reviewed?                                                      03:06PM

6   A.   Yes.                                                      03:06PM

7           MS. M. MILLER:  Your Honor, at this time, I would      03:06PM

8   offer into evidence what has been previously marked as         03:06PM

9   Government's Exhibit 2900-1976.                                03:06PM

10           THE COURT:  Counsels?                                 03:06PM

11           MR. MARTIN:  Just a moment, Your Honor.               03:06PM

12           THE COURT:  No problem.                               03:06PM

13           (Pause.)                                              03:06PM

14           THE COURT:  And how many pages is that?               03:06PM

15           MS. M. MILLER:  It is -- all of these leases are      03:06PM

16   six pages, Your Honor, so I believe it goes through 81 --     03:06PM

17   981 -- 1981; is that correct?  1981.                          03:06PM

18           (Pause.)                                              03:07PM

19           MR. MARTIN:  Your Honor, on behalf of Mr. Walker,     03:07PM

20   I don't object to 1976 through, I believe it's 1918; is that  03:08PM

21   right?                                                        03:08PM

22           THE COURT:  That's correct, yeah.                     03:08PM

23           All right.  Ms. McConwell?                            03:08PM

24           MS. MCCONWELL:  It's -- I would object that it's      03:08PM

25   on a completed contract but it's not going to come -- it's    03:08PM

*Direct - Khamvongsa*

1    not -- it's not a completed document.  It's not been fully            03:08PM

2    executed.  So I would object to it on that basis, but it would         03:08PM

3    only come in as to Jon Walker.  It will not come in as to              03:08PM

4    Hansen Helicopters --                                                  03:08PM

5                    THE COURT:  All right.                                 03:08PM

6                    MS. MCCONWELL:  -- because we're not in these          03:08PM

7    counts.                                                                03:08PM

8                    THE COURT:  Okay.  So with regard to -- the Court      03:08PM

9    will admit 2900-1976 through 1981 and there's no objection by          03:08PM

10   Mr. Walker's Counsel, so that's admitted without objection.            03:08PM

11   (Exhibit 2900-1976 to 1981 admitted.)                                  03:08PM

12                   THE COURT:  With regard to the objection made by       03:08PM

13   Ms. McConwell, the Court will overrule that objection.                 03:08PM

14                   You may proceed.                                       03:08PM

15                   MS. M. MILLER:  And, Ms. Miller, could you,            03:08PM

16   please, highlight the top portion of the document after we             03:08PM

17   publish it.  May I publish it to the jury, Your Honor?                 03:09PM

18                   THE COURT:  Yes, you may.                              03:09PM

19                   MS. M. MILLER:  Thank you.                             03:09PM

20                   And could you, please, pull out the top portion        03:09PM

21   of the document.  Okay.                                                03:09PM

22   BY MS. M. MILLER:  (CONTINUING)                                        03:09PM

23       Q.   So, Special Agent Khamvongsa, is this lease -- what           03:09PM

24   is the date of this lease?                                             03:09PM

25       A.   June 17th, 2016.                                              03:09PM

*Direct - Khamvongsa*

1      Q.    And who is identified as the lessor?                03:09PM

2      A.    Wilma's Flight Service, Inc.                         03:09PM

3      Q.    All right.  Now, let's go down to the helicopter that 03:09PM

4   is identified in this lease.  What is the registration of the  03:09PM

5   helicopter that is involved in this lease?                     03:09PM

6      A.    N911GP.                                               03:09PM

7      Q.    Now, sir, could you please remind the jury who is     03:09PM

8   identified as the registered owner of this helicopter --       03:09PM

9      A.    South --                                              03:09PM

10     Q.    -- during this period of time?                        03:09PM

11     A.    South Pacific -- South Pacific Spotter.               03:09PM

12     Q.    But who's identified as the lessor in this particular 03:09PM

13  lease?                                                         03:09PM

14     A.    Wilma's Flight Service.                               03:09PM

15     Q.    Can you go to Section 8 of the lease, please, and     03:10PM

16  could you read that to the jury, please?                       03:10PM

17     A.    "The registration and title to the aircraft shall be  03:10PM

18  in the name of the lessor and the aircraft at all times during 03:10PM

19  the term of this agreement or automatic renewals shall bear    03:10PM

20  internationally-recognized registration markings."            03:10PM

21     Q.    Was the name of the lease in the name of the lessor?  03:10PM

22     A.    No.                                                   03:10PM

23     Q.    Or the registered owner?                              03:10PM

24     A.    It did -- it did not reflect what was reflected in    03:10PM

25  the FAA registry.                                              03:10PM

```
 1      Q.   Okay.                                              03:10PM

 2      A.   "It" being the contract.                           03:10PM

 3      Q.   Okay.  Now, let's look at Exhibit 2935, please.    03:10PM

 4           MS. M. MILLER:  And, Ms. Santos, just to verify,   03:10PM

 5   we have on our list that that has already been admitted, 2935.  03:10PM

 6           THE CLERK:  Yes.                                    03:11PM

 7           MS. M. MILLER:  Okay, 2935, and, Ms. Miller,       03:11PM

 8   specifically page 22.                                      03:11PM

 9           MS. MCCONWELL:  I have that as to Jon Walker        03:11PM

10   only.                                                      03:11PM

11           THE COURT:  I'm sorry, what was -- so what is the  03:11PM

12   question?                                                  03:11PM

13           MS. M. MILLER:  I'm sorry, Your Honor?             03:11PM

14           THE COURT:  What was it -- what is it?  She's      03:11PM

15   looking for the document?                                  03:11PM

16           MS. M. MILLER:  No, we're pulling up the Document  03:11PM

17   2935.  It's already been admitted into evidence.           03:11PM

18           THE COURT:  Okay, all right.                       03:11PM

19           MS. M. MILLER:  And I asked Ms. Miller to go       03:11PM

20   to --                                                      03:11PM

21           THE COURT:  All right.                             03:11PM

22           MS. M. MILLER:  -- page 22 which reflects the      03:11PM

23   transactions that we're talking about in this particular   03:11PM

24   count, Your Honor.                                         03:12PM

25           THE COURT:  Okay.                                  03:12PM
```

*Direct - Khamvongsa*

1          MS. M. MILLER:  Okay.  Ms. Miller, could you          03:12PM

2     please highlight the transaction that shows the -- yes, thank          03:12PM

3     you so much.          03:12PM

4     BY MS. M. MILLER: (CONTINUING)          03:12PM

5          Q.   Special Agent Khamvongsa, could you tell the members          03:12PM

6     of the jury what we're seeing here, please?          03:12PM

7          A.   On September 2nd, a wire transfer credit of $234,980          03:12PM

8     was made into the bank account of Caledonian Agency, Inc., and          03:12PM

9     it's from Ocean Conquest, LLC.          03:12PM

10          Q.   And did that money correlate with this list of          03:12PM

11     helicopters that we just discussed?          03:12PM

12          A.   Yes.          03:12PM

13          Q.   That were registered to this list of companies that          03:12PM

14     we just discussed?          03:12PM

15          A.   Yes.          03:12PM

16          Q.   That we saw on the documents that Hansen Helicopters          03:12PM

17     produced in response to the grand jury subpoena?          03:12PM

18          A.   Yes.          03:12PM

19          Q.   Now, let's talk about Count 104.          03:12PM

20          MS. M. MILLER:  And, Ms. Miller, if you can go          03:12PM

21     back to the demonstrative aid.  Thank you.          03:12PM

22     BY MS. M. MILLER: (CONTINUING)          03:12PM

23          Q.   And, Special Agent Khamvongsa, could you read to the          03:12PM

24     jury Count 104?          03:12PM

25          A.   "October 3rd, 2016, wire transfer from Sea Fox, LLC          03:13PM

*Direct - Khamvongsa*

1    in the amount of $401,558.41."                          03:13PM

2        Q.   Did you say 558?                               03:13PM

3        A.   $558.41.                                       03:13PM

4        Q.   Thank you.                                     03:13PM

5             Did you perform the same kind of analysis for this    03:13PM

6    count as you did for the others?                        03:13PM

7        A.   Yes, I -- yes, I did.                          03:13PM

8        Q.   Okay.  And could you tell the members of the jury,    03:13PM

9    first, Sea Fox, LLC, did they have a holding company?   03:13PM

10       A.   Yes, they have a parent company or an umbrella  03:13PM

11   company.                                                03:13PM

12       Q.   Okay.  And what was the name of that holding company?  03:13PM

13       A.   That was the South Pacific Tuna Company.        03:13PM

14       Q.   Okay.  Let's look at what has been previously marked   03:13PM

15   as Government's Exhibit 2936.  I do not believe this is  03:13PM

16   entered into evidence yet.  Do you recognize this?      03:13PM

17       A.   Yes.                                           03:13PM

18       Q.   What is it?                                    03:13PM

19       A.   It's a -- it's a monthly bank statement for    03:14PM

20   Caledonian Agency, Inc. bank account.                   03:14PM

21       Q.   How do you obtain this?                        03:14PM

22       A.   It was provided to me through the grand jury    03:14PM

23   subpoena.                                               03:14PM

24       Q.   Is it a true and correct copy of what was provided?   03:14PM

25       A.   Yes.                                           03:14PM

*Direct - Khamvongsa*

|  |  |  |
|---|---|---|

1          MS. M. MILLER:  Your Honor, at this time, the          03:14PM

2   Government would offer into evidence what has been previously   03:14PM

3   marked as Government Exhibit 2936.          03:14PM

4          And pages?          03:14PM

5          THE COURT:  How many pages or do you just want to   03:14PM

6   do one -- the pertinent page?          03:14PM

7          MS. M. MILLER:  It's a total of five pages, Your   03:14PM

8   Honor.          03:14PM

9          THE COURT:  You're moving to admit all five?   03:14PM

10          MS. M. MILLER:  And the wire transfers, so I   03:14PM

11   would move to admit page 1 and page 4.          03:14PM

12          THE COURT:  I'm sorry, what is it, page 1 and   03:14PM

13   page 4?          03:14PM

14          MS. M. MILLER:  Page 1 and page 4.  Page 4 shows   03:14PM

15   the wire transfer.          03:14PM

16          THE COURT:  Okay.  All right.  Any objections,   03:14PM

17   Counsels?          03:14PM

18          MR. MARTIN:  No, Your Honor.          03:14PM

19          THE COURT:  Okay.  Ms. McConwell?          03:14PM

20          MS. MCCONWELL:  Yeah, no, Your Honor, but I would   03:14PM

21   -- it's not -- this is not Hansen Helicopter's counts.   03:15PM

22          THE COURT:  All right, very well.  So, ladies and   03:15PM

23   gentlemen of the jury, 2936-1 through 5 will be admitted   03:15PM

24   without objection, and it applies to Mr. Walker.   03:15PM

25          MR. MARTIN:  I thought it was one and four.   03:15PM

*Direct - Khamvongsa*

```
1          THE COURT:  Oh, I'm sorry.  It's one and four.     03:15PM
2          MS. M. MILLER:  One and four.                      03:15PM
3          THE COURT:  I made a mistake, one and four,        03:15PM
4    that's right.  Strike that.  2936-1 and 2936-4 admitted  03:15PM
5    without objection as applied to Mr. Walker.              03:15PM
6    (Exhibit 2936-1 to 2936-4 admitted.)                     03:15PM
7          THE COURT:  Go ahead.                              03:15PM
8          MS. M. MILLER:  May I publish page 1, Your Honor?  03:15PM
9          THE COURT:  You may, yes.                          03:15PM
10         MS. M. MILLER:  And, Ms. Miller, could you hone    03:15PM
11   in on the very top of the document.                      03:15PM
12   BY MS. M. MILLER:  (CONTINUING)                          03:15PM
13     Q.   And, Special Agent Khamvongsa, could you tell the 03:15PM
14   members of the jury what they're seeing here?            03:15PM
15     A.   This is a bank statement covering the period of   03:15PM
16   September 30th, 2016, through October 31st, 2016, for    03:15PM
17   Caledonian Agency, Inc., PO Box 9099, Tamuning, Guam 96931. 03:15PM
18     Q.   Okay.  And, now, let's go to page 4, and can you tell 03:15PM
19   the members of the jury what they're seeing here?        03:16PM
20     A.   This is on October 3rd, 2016, a wire transfer credit 03:16PM
21   of $401,558.41 was made by the organization Sea Fox, LLC. 03:16PM
22     Q.   Into the account of Caledonian Agency?            03:16PM
23     A.   Yes, into the Caledonian Agency, Inc. bank account. 03:16PM
24     Q.   Okay.  Now, did you do an analysis to determine which 03:16PM
25   transactions comprised the $401,558.41 wire transfer?    03:16PM
```

*Direct - Khamvongsa*

```
 1      A.   Yes.                                             03:16PM

 2      Q.   Okay.  Let's go back to Exhibit 726, and specifically    03:16PM

 3   I'm going to ask you to look at pages 65 and 66.  We could    03:16PM

 4   start with 66.  Do you see the transaction for September 2016    03:17PM

 5   from Sea Quest?                                          03:17PM

 6           MS. M. MILLER:  Can we hone in on that?          03:17PM

 7           THE WITNESS:  No, I think you have the wrong     03:17PM

 8   page.                                                   03:17PM

 9           (Pause.)                                        03:17PM

10           MS. M. MILLER:  Ms. Miller, can you highlight the    03:17PM

11   fishing companies on the left, please.                  03:17PM

12           THE WITNESS:  Okay.  Yes.                        03:17PM

13   BY MS. M. MILLER: (CONTINUING)                          03:17PM

14      Q.   Okay.  And could you tell the members of the jury    03:17PM

15   what do we see here?                                    03:17PM

16      A.   We see six tuna boats which make up Sea -- which make    03:17PM

17   up that lump sum payment of $239,867.58, which was received on    03:17PM

18   9-1-2016.                                               03:18PM

19      Q.   Okay.  And could you go through this for the members    03:18PM

20   of the jury just, please, quickly the names of the boats?    03:18PM

21      A.   Yes.  The boats include Sea Quest, Sea Defender, Sea    03:18PM

22   Trader Sea Fox, Sea Honor, Sea Bounty.                  03:18PM

23      Q.   Okay.  And now let's look at the prior page, which is    03:18PM

24   Exhibit 726-66.                                         03:18PM

25           MS. S. MILLER:  Sorry, that was page 65.        03:18PM
```

*Direct - Khamvongsa*

```
 1              MS. M. MILLER:  Oh, that was page 65.  Now go to      03:18PM

 2   page 66.  Sorry.  Thank you.                                     03:18PM

 3   BY MS. M. MILLER: (CONTINUING)                                   03:18PM

 4        Q.   There was an additional transaction, wasn't there,     03:18PM

 5   sir, so that we get the total of 401,558.41?                     03:18PM

 6        A.   Yes.                                                   03:18PM

 7        Q.   Okay.  And I believe that's on --                      03:18PM

 8        A.   It may be on the prior page.                           03:18PM

 9        Q.   -- next page.                                          03:18PM

10             Okay.  And do you see what has been highlighted        03:19PM

11   there, sir?                                                      03:19PM

12        A.   Yes.                                                   03:19PM

13        Q.   And could you tell the members of the jury what that   03:19PM

14   is?                                                              03:19PM

15        A.    That's for the Sea Fox invoice for damage charges of  03:19PM

16   $161,593.41.                                                     03:19PM

17        Q.   If you total that amount with the amount we had on     03:19PM

18   the prior page, do you come up with 401,558.41?                  03:19PM

19        A.   Yes.                                                   03:19PM

20        Q.   Now, let's look at Exhibit 725, please.                03:19PM

21             THE COURT:  Yes, Ms. McConwell?                        03:19PM

22             MS. MCCONWELL:  I'm -- I'm not clear what she --       03:19PM

23   when she said "the other page," I'm not -- I didn't see what     03:19PM

24   other page she's talking about.                                  03:19PM

25             MS. M. MILLER:  The prior page that we just            03:19PM
```

*Direct - Khamvongsa*

```
 1    showed the total amount of the billings, to be 239,000 and      03:19PM
 2    change --                                                        03:19PM
 3                MS. MCCONWELL:  I only saw that on page --           03:19PM
 4                MS. M. MILLER:  -- added to the --                   03:19PM
 5                MS. MCCONWELL:  -- you only showed page 65.  You     03:19PM
 6    didn't show another page.                                       03:19PM
 7                MS. S. MILLER:  It was just one page, Marie.         03:19PM
 8                MS. M. MILLER:  Oh, just one page?                   03:19PM
 9                MS. MCCONWELL:  Just one page.                       03:19PM
10                MS. M. MILLER:  Were they both on one page?         03:19PM
11    Okay, it was both on one page.  Sorry.                          03:20PM
12                THE COURT:  All right.  725-1?                       03:20PM
13                MS. M. MILLER:  Yes, Your Honor, 725 --             03:20PM
14                THE COURT:  Has that been admitted?                  03:20PM
15                MS. M. MILLER:  725's already been admitted, and    03:20PM
16    I would like Special Agent Khamvongsa to look at pages 13 to     03:20PM
17    15 of 725.                                                      03:20PM
18                THE COURT:  Okay.  Those have been admitted as       03:20PM
19    well?                                                           03:20PM
20                MS. M. MILLER:  Yes, Your Honor.                     03:20PM
21                THE COURT:  All right.                               03:20PM
22    BY MS. M. MILLER:  (CONTINUING)                                  03:20PM
23        Q.   So do you see the Sea Bounty, Sea Quest, Sea           03:20PM
24    Defender, Sea Fox, Sea Honor and Sea Trader?                    03:20PM
25        A.   Yes.                                                    03:20PM
```

*Direct - Khamvongsa*

1    Q.   And could you please tell me the registration numbers          03:20PM

2  of the helicopters that were being leased to those companies?         03:20PM

3    A.   N369V, N755PC, N271M, N40490, N -- N831FG to Sea               03:20PM

4  Honor, and N90176 to Sea Trader.                                      03:21PM

5    Q.   And 9 --                                                       03:21PM

6    A.   -- 0176.                                                       03:21PM

7    Q.   Okay.  And did you perform the same analysis where             03:21PM

8  you looked at the registration summary chart to determine who         03:21PM

9  was identified as the registered owner of these helicopters           03:21PM

10 during the period of time of this transaction?                        03:21PM

11   A.   Yes.                                                           03:21PM

12   Q.   Okay.                                                          03:21PM

13        MS. M. MILLER:  Can we go to that chart please,                03:21PM

14 Ms. Miller.                                                           03:21PM

15 BY MS. M. MILLER: (CONTINUING)                                        03:21PM

16   Q.   Okay, for 369V could you tell the members of the jury          03:21PM

17 what was the name of the company that was identified as the           03:21PM

18 registered owner?                                                     03:21PM

19   A.   Foxtrot Air, Inc.                                              03:21PM

20   Q.   And who registered it under Foxtrot Air?                       03:21PM

21   A.   Jon Walker.                                                    03:21PM

22   Q.   Okay.  Can you go to N755PC, and tell the members of           03:21PM

23 the jury what was the name of the company that this particular        03:22PM

24 helicopter was registered under during this period of time?           03:22PM

25   A.   HH Helicopters, Inc.                                           03:22PM

*Direct - Khamvongsa*

1    Q.   And who registered it?                        03:22PM

2    A.   Jon Walker.                                    03:22PM

3    Q.   Can you go to N271M and please tell the members of   03:22PM

4  the jury which company was the registered owner of N271M   03:22PM

5  during this period of time?                          03:22PM

6    A.   Jan's Helicopters Service, Inc.               03:22PM

7    Q.   And who registered that helicopter under Jan's name?   03:22PM

8    A.   Jon Walker.                                    03:22PM

9    Q.   Okay.  Can you go to N40490 and please tell the   03:22PM

10  members of the jury which company that particular helicopter   03:22PM

11  was registered under?                                03:22PM

12    A.   Wilma's Flight Services, Inc.                 03:22PM

13    Q.   And who registered that helicopter under Wilma's   03:22PM

14  Flight Services, Inc.?                               03:22PM

15    A.   Kenneth Crowe.                                03:22PM

16    Q.   Okay.  Now, could you please go to November 831FG,   03:23PM

17  and tell the members of the jury which company was identified   03:23PM

18  as the registered owner during the period of time?   03:23PM

19    A.   Marlin Bay Helicopters.                       03:23PM

20    Q.   And who registered that company -- that aircraft with   03:23PM

21  that company?                                        03:23PM

22    A.   Jon Walker.                                   03:23PM

23    Q.   And then could you please look at N90176 and tell the   03:23PM

24  members of the jury which company that helicopter was   03:23PM

25  registered under?                                    03:23PM

```
 1      A.    Spotters, Inc.                                    03:23PM

 2      Q.    And who registered that helicopter in the name of 03:23PM

 3 Spotters, Inc?                                               03:23PM

 4      A.    Jon Walker.                                       03:23PM

 5      Q.    Now, let's look at Exhibit 750-1.                 03:24PM

 6            THE COURT:  Has that been admitted?               03:24PM

 7            MS. M. MILLER:  Yes, Your Honor, that's what I    03:24PM

 8 have on my record that --                                   03:24PM

 9            THE COURT:  Okay.                                 03:24PM

10            MS. M. MILLER:  -- that has already been          03:24PM

11 admitted.                                                   03:24PM

12            THE COURT:  750-1, okay.                          03:24PM

13            MS. M. MILLER:  750-1.                            03:24PM

14 BY MS. M. MILLER: (CONTINUING)                              03:24PM

15      Q.    First of all, can you tell me the date of this   03:24PM

16 letter, sir?                                                03:24PM

17      A.    It's dated -- it's dated July 9th, 2020.         03:24PM

18      Q.    Okay.  Let's stop for a moment.                  03:24PM

19            MS. M. MILLER:  Ms. Santos, do you have that as  03:24PM

20 admitted?                                                   03:24PM

21            THE CLERK:  I'm just verifying.                   03:24PM

22            MS. M. MILLER:  Oh, I'm sorry.                    03:24PM

23            THE CLERK:  One moment, thank you.                03:24PM

24            MS. M. MILLER:  No, no, no, take your time.       03:24PM

25            THE CLERK:  Yes.                                  03:25PM
```

*Direct - Khamvongsa*

1   BY MS. M. MILLER: (CONTINUING)                          03:25PM

2       Q.   So the date of the letter, sir, I'm sorry?     03:25PM

3       A.   July 9th, 2020.                                03:25PM

4       Q.   A who is it addressed to?                      03:25PM

5       A.   Stephanie Lewis with the Federal Aviation      03:25PM

6   Administration.                                         03:25PM

7       Q.   Who is it from?                                03:25PM

8       A.   It's from Jon D. Walker.                       03:25PM

9       Q.   And what address is Mr. Walker sending this from?  03:25PM

10      A.   3561 Route C, Neosho, Missouri.                03:25PM

11      Q.   Okay.  And if we look at the next page of this 03:25PM

12  document.                                               03:25PM

13           MS. M. MILLER:  Would you go to the next page, 03:25PM

14  Ms. Miller.  Next page, sorry.                          03:25PM

15  BY MS. M. MILLER: (CONTINUING)                          03:25PM

16      Q.   Do you see that list of helicopters, sir?      03:25PM

17      A.   Yes.                                           03:25PM

18      Q.   And does that list include some of the helicopters 03:25PM

19  that we see here, for example, 831FG?                   03:25PM

20      A.   Sorry.                                         03:25PM

21      Q.   It's okay.  It's line 11.                      03:25PM

22      A.   Okay.  Yes.                                    03:26PM

23      Q.   Okay.  All right.  Did you analyze, like you did for 03:26PM

24  the other transactions, who the mechanics were that were 03:26PM

25  assigned to these helicopters to work on them?          03:26PM

*Direct - Khamvongsa*

1     A.    I did.                                          03:26PM

2     Q.    And were you able to determine whether those    03:26PM

3  mechanics were or were not certificated?                 03:26PM

4     A.    They were not certificated by the FAA.          03:26PM

5     Q.    Okay.  And if we go back to page 1 of this letter,  03:26PM

6  750-1, and could you please read this paragraph that     03:26PM

7  Ms. Miller just highlighted?                             03:26PM

8     A.    "Included with this letter is a list of containing  03:26PM

9  1DQ and 16 Model 369-HS aircraft whose certificate of aircraft  03:26PM

10 registration has been signed by me and returned to the   03:26PM

11 registry.  I am the president and a director of the      03:27PM

12 corporation listed with each aircraft.  Although I do not  03:27PM

13 agree that the HS aircraft are subject to the Cape Town Treaty  03:27PM

14 or international registry, I hereby certify, as president of  03:27PM

15 each listed corporation, that all registered interests, if  03:27PM

16 any, ranking in priority to the -- of the owner of each   03:27PM

17 aircraft have been discharged.  Please complete the      03:27PM

18 deregistration process.  Sincerely yours, Jon D. Walker."  03:27PM

19    Q.    Okay.  Thank you.                                03:27PM

20          MS. M. MILLER:  Thank you, Ms. Miller.          03:27PM

21 BY MS. M. MILLER: (CONTINUING)                            03:27PM

22    Q.    Now, I'd like to show you a demonstrative aid that  03:27PM

23 will show the jury the money laundering transactions from the  03:27PM

24 Second Superseding Indictment.                            03:27PM

25          MS. M. MILLER:  Ms. Miller, if you could pull up  03:27PM

*Direct - Khamvongsa*

1    Demonstrative Aid 43, and I believe it's page 2 that has money          03:27PM
2    laundering counts from the Second Superseding Indictment.               03:27PM
3              THE COURT:  What was the --                                   03:27PM
4              MR. MARTIN:  What paragraph is this?  Is this a               03:28PM
5    paragraph of the indictment?                                           03:28PM
6              MS. M. MILLER:  It is.                                       03:28PM
7              MR. MARTIN:  Can you identify it for us, please?            03:28PM
8              THE COURT:  And what exhibit is this?                        03:28PM
9    Demonstrate what?                                                      03:28PM
10             MS. S. MILLER:  Forty-three.                                 03:28PM
11             MS. M. MILLER:  It's Demonstrative Aid 43,                   03:28PM
12   G-DA-43.                                                               03:28PM
13             THE COURT:  Okay.  And then give -- point,                   03:28PM
14   Mr. Martin to --                                                       03:28PM
15             MS. M. MILLER:  It's paragraph 139, Your Honor.              03:28PM
16   It's on screen.                                                        03:28PM
17             THE COURT:  Right, okay.  139 of the indictment?            03:28PM
18             MS. M. MILLER:  Yes, Your Honor.                             03:28PM
19             THE COURT:  Okay, 139, Counsel, Second                      03:28PM
20   Superseding Indictment.                                                03:28PM
21   BY MS. M. MILLER: (CONTINUING)                                         03:28PM
22      Q.   And, Special Agent Khamvongsa --                              03:28PM
23             MS. M. MILLER:  Ms. Miller, could you highlight              03:28PM
24   just that section please?                                              03:28PM
25             (Counsel conferred.)                                        03:28PM

*Direct - Khamvongsa*

1          MS. M. MILLER:  No, that's okay.  There you go.          03:28PM

2    Thank you.                                                    03:28PM

3    BY MS. M. MILLER:  (CONTINUING)                               03:28PM

4         Q.    Special Agent Khamvongsa, could you please read this   03:28PM

5    paragraph to the jury?                                        03:28PM

6         A.    "On or about December 2016 in the District of Guam      03:28PM

7    and elsewhere, the Defendant John D. Walker aka Jon Walker,   03:29PM

8    knowingly engaged or attempted to engage in monetary          03:29PM

9    transactions, that is the deposit, withdrawal, transfer, or   03:29PM

10   exchange of funds or a monetary instrument, through or to a   03:29PM

11   financial institution, affecting interstate or foreign        03:29PM

12   commerce, in criminally-derived property of value greater than 03:29PM

13   $10,000, such property having been derived from a specified   03:29PM

14   unlawful activity, that is, honest services and wire fraud, in 03:29PM

15   violation of Title 18, United States Code, Sections 13 --     03:29PM

16   1343, 1346, and 2, as more fully described in the paragraphs  03:29PM

17   of Count 100 through 104 of this Second Superseding Indictment 03:29PM

18   to wit."                                                      03:29PM

19        Q.    Okay.  And let's go to -- and Counts 100 through 104    03:29PM

20   are the ones we just went over that were the wire fraud       03:29PM

21   counts?                                                       03:30PM

22        A.    Yes.                                               03:30PM

23        Q.    Okay.  Now, let look at Counts 105 to 110, please. 03:30PM

24   There we go.  So let's start with Count 105, please, and could 03:30PM

25   you read that count to the members of the jury?               03:30PM

1      A.    "December 14th, 2016, Walker electronically      03:30PM

2    transferred $3 million from Caledonian's Bank of Hawaii    03:30PM

3    corporate bank account ending in 9134 to Hansen Northern's    03:30PM

4    Bank of Hawaii corporate bank account ending in 3534."    03:30PM

5      Q.    Okay.  Now, let's look at what has been marked but    03:30PM

6    not introduced as Government's Exhibit 25.  Do you recognize    03:30PM

7    this document?    03:30PM

8              THE COURT:  How many page is that are you going    03:30PM

9    to put in?  What are you trying to put in, how many pages?    03:30PM

10              MS. M. MILLER:  Twenty-three total, Your Honor.    03:30PM

11              THE COURT:  Okay.  So 25-1 through 25-23.    03:30PM

12              MS. M. MILLER:  Yes, Your Honor.    03:30PM

13              THE COURT:  Go ahead.    03:30PM

14    BY MS. M. MILLER: (CONTINUING)    03:30PM

15      Q.    Do you recognize this document?    03:30PM

16      A.    Yes.    03:30PM

17      Q.    What is it?    03:30PM

18      A.    This is the bank statement for Caledonian Agency,    03:30PM

19    Inc.    03:30PM

20      Q.    Okay.  Bank of Hawaii?    03:30PM

21      A.    Yes, from Bank of Hawaii.    03:30PM

22      Q.    Is it a true and correct copy of the bank statement    03:30PM

23    that you received pursuant to a subpoena in this case?    03:31PM

24      A.    Yes.    03:31PM

25              MS. M. MILLER:  Your Honor, at this time I would    03:31PM

*Direct - Khamvongsa*

1    offer into evidence what has been previously marked as          03:31PM

2    Government's Exhibit 25.                                          03:31PM

3                    THE COURT:  1 through 23?                          03:31PM

4                    MS. M. MILLER:  Dash 1 and 25-11 --               03:31PM

5                    THE COURT:  Okay, so --                            03:31PM

6                    MS. M. MILLER:  -- which is the specific monetary  03:31PM

7    transactions.                                                     03:31PM

8                    THE COURT:  Those two pages.  All right, Counsel?  03:31PM

9                    (Pause.)                                           03:31PM

10                   THE COURT:  Yes?                                   03:31PM

11                   MR. MARTIN:  As to 25-1 and 11, no objection.     03:31PM

12                   THE COURT:  All right.  Very well.  And --        03:31PM

13                   MS. MCCONWELL:  And Hansen -- and the same for    03:31PM

14   Hansen Helicopters, it's just it's admitted to Mr. Walker not     03:31PM

15   to Hansen Helicopters.                                            03:31PM

16                   THE COURT:  All right, very well.  Counsel --      03:31PM

17   ladies and gentlemen of the jury, 25-1 and 25-11 are admitted     03:31PM

18   without objection and it applies to Mr. Walker.                   03:32PM

19                   And, yes, you may publish.                        03:32PM

20   (Exhibit 25-1 to 25-11 admitted.)                                 03:32PM

21                   MS. M. MILLER:  Okay.  So let's first publish     03:32PM

22   page 1, please, and the top of the page please.                  03:32PM

23   BY MS. M. MILLER: (CONTINUING)                                    03:32PM

24      Q.   And could you tell the members of the jury same bank,     03:32PM

25   same company; right?                                              03:32PM

*Direct - Khamvongsa*

1    A.    Yes, it's Caledonian Agency, Inc. bank account.    03:32PM

2    Q.    Okay.  Now let's look at page 11, and can you    03:32PM

3    identify for us the transaction that you identified as a money    03:32PM

4    laundering transaction?    03:32PM

5    A.    Sure.  It is the December -- it's a December 14th,    03:32PM

6    2016, transaction right here which are marked, which is the    03:32PM

7    BBC web transfer.    03:32PM

8    Q.    Can you see that better?    03:32PM

9    A.    Yes.    03:32PM

10    Q.    Okay.    03:32PM

11    A.    It's the BBC web transfer of $3 million going into    03:32PM

12    the account ending in 3534, which is the Hansen Northern    03:32PM

13    Helicopters account.    03:33PM

14         MS. M. MILLER:  I'm out of paper.  Can I get    03:33PM

15    another one?    03:33PM

16    BY MS. M. MILLER: (CONTINUING)    03:33PM

17    Q.    So the $3 million went from Caledonian Agency;    03:33PM

18    correct?    03:33PM

19    A.    Yes.    03:33PM

20    Q.    To Hansen Northern; correct?    03:33PM

21    A.    Yes.    03:33PM

22    Q.    And while we're getting the white paper put up there,    03:33PM

23    let's look at what has already been entered into evidence as    03:33PM

24    Exhibit 829.  Do you see those two companies here, sir?    03:33PM

25    A.    Yes.    03:33PM

*Direct - Khamvongsa*

1    Q.   And could you tell the members of the jury -- step    03:33PM

2    down and show the members of the jury where they're located.    03:33PM

3    You can use this microphone.  It's awkward.  I'll stand here.    03:33PM

4    You stand there.    03:33PM

5    A.   Bless you.    03:33PM

6         Hansen Northern Helicopters and Caledonian Agency are    03:33PM

7    owned by Jon Walker and they're -- they're underneath the Jon    03:34PM

8    Walker here in this corporate structure.    03:34PM

9    Q.   Okay.  And so can you show, by using your hand,    03:34PM

10   the -- the flow of the money from Caledonian to Hansen    03:34PM

11   Helicopters -- Hansen Northern Helicopters, Inc.?    03:34PM

12   A.   So the tuna boat companies' money would come into    03:34PM

13   here into Caledonian Agency, Inc., the investment account,    03:34PM

14   which went into Hansen Northern's Helicopters' Inc. bank    03:34PM

15   account.    03:34PM

16   Q.   Okay.  Thank you, sir.    03:34PM

17        And the president of both of those companies, sir?    03:34PM

18   A.   Jon Walker.    03:34PM

19   Q.   And that transaction obviously involves more than    03:34PM

20   $10,000?    03:34PM

21   A.   Yes.    03:34PM

22   Q.   Okay.  Let's look at page 12 --    03:34PM

23        MS. M. MILLER:  And that has not been admitted    03:35PM

24   yet, Your Honor.    03:35PM

25        THE COURT:  Same -- 29 --    03:35PM

*Direct - Khamvongsa*

1          MS. M. MILLER:  It's the same Exhibit 25 but it's          03:35PM
2     page 12, and so the same foundation for it.          03:35PM
3          THE COURT:  All right.  Any objections, Counsel?          03:35PM
4          MR. MARTIN:  May I have judgment a moment, Your          03:35PM
5     Honor?          03:35PM
6          (Pause.)          03:35PM
7          MS. M. MILLER:  Before we go to page 12, there's          03:35PM
8     one more thing I want to do on 11.          03:35PM
9          THE COURT:  Let's see if there is any objections          03:35PM
10    as to 25-12?          03:36PM
11         MR. MARTIN:  No objection to 12, Your Honor.          03:36PM
12         THE COURT:  All right.          03:36PM
13    BY MS. M. MILLER: (CONTINUING)          03:36PM
14    Q.   Okay.  So, Special Agent Khamvongsa --          03:36PM
15         THE COURT:  Hold on, hold on, let me see --          03:36PM
16    Ms. McConwell?  Yes?          03:36PM
17         MS. MCCONWELL:  Hansen's not on these.  You know,          03:36PM
18    Your Honor, as I'm looking at the -- at the statements, I wish          03:36PM
19    we could go in and redact, and I would ask if the Government          03:36PM
20    would be willing to do this, redact some of the names of the          03:36PM
21    people that are on here.  We're going to be -- if it's going          03:36PM
22    to be published into the -- into the public, because there          03:36PM
23    are, you know, individuals that were paid that have -- may          03:36PM
24    work for the organizations that I don't think it's appropriate          03:36PM
25    to have their names out there.  They're not defendants.          03:36PM

*Direct - Khamvongsa*

1   They're not parties to this litigation, and -- and I think    03:36PM

2   their privacy should be protected.  And, I'm sorry, to        03:36PM

3   announce that --                                              03:36PM

4           THE COURT:  All right.  No objections to that.        03:36PM

5   All right.  Very well.  The Court will admit Exhibit 25-12    03:36PM

6   without objection, except with the proviso that any other    03:36PM

7   names that are not relevant to the transaction at hand will be  03:37PM

8   redacted.                                                     03:37PM

9           MS. MCCONWELL:  Thank you.                            03:37PM

10          THE COURT:  All right.  Very well.                    03:37PM

11          Admitted.  Yes, published.                            03:37PM

12          MS. M. MILLER:  Thank you, Your Honor.                03:37PM

13          THE COURT:  Go ahead.                                 03:37PM

14          MS. M. MILLER:  Thank you, Your Honor.                03:37PM

15  (Exhibit 25-12 admitted.)                                     03:37PM

16  BY MS. M. MILLER: (CONTINUING)                                03:37PM

17      Q.   Now, Count 105, Special Agent Khamvongsa, involved a  03:37PM

18  $3 million transaction; correct?                              03:37PM

19      A.   Yes.                                                 03:37PM

20      Q.   Count 106 involves a transaction of how much?        03:37PM

21      A.   $3 million.                                          03:37PM

22      Q.   And if you look at what has been admitted as         03:37PM

23  Exhibit 25, page 11, on the bottom of that page, do you see   03:37PM

24  the transaction -- the second transaction for $3 million      03:37PM

25  there?                                                        03:37PM

*Direct - Khamvongsa*

1    A.    Yes.                                              03:37PM

2    Q.    Where was that money transferred to?            03:37PM

3    A.    That is -- that $3 million was transferred from 03:37PM

4  Caledonian Agency, Inc. to Hansen Northern Helicopters, Inc. 03:37PM

5  bank account with Bank of Hawaii.                        03:37PM

6    Q.    Count 107 involved a monetary transaction.  If we can 03:37PM

7  go to page 12, please, and do you see that transaction there, 03:38PM

8  sir?                                                     03:38PM

9    A.    Yes.                                             03:38PM

10   Q.    And what is the amount of that transaction?     03:38PM

11   A.    $200,000.                                        03:38PM

12   Q.    And where did those funds go?                    03:38PM

13   A.    This one went into the Hansen Helicopter bank account 03:38PM

14 with Bank of Hawaii.                                     03:38PM

15   Q.    So to Hansen Helicopters, not Hansen Northern?  03:38PM

16   A.    No.                                              03:38PM

17         MR. LEON GUERRERO:  Your Honor, sorry, this     03:38PM

18 particular exhibit published to the jury?  It's been admitted. 03:38PM

19         THE COURT:  25-12 has been admitted.            03:38PM

20         MS. M. MILLER:  Yeah.                            03:38PM

21         MR. LEON GUERRERO:  Now it's being shown.       03:38PM

22         THE COURT:  25-12 --                             03:38PM

23         MS. M. MILLER:  Oh, I'm sorry, it wasn't being  03:38PM

24 published.  Thank you.                                   03:38PM

25         THE COURT:  25-12?                               03:38PM

*Direct - Khamvongsa*

```
 1              MS. M. MILLER:  Yes.  Okay, I think the jury      03:38PM

 2    could see it now, Your Honor.                               03:39PM

 3              Thank you, Mr. Leon Guerrero.                     03:39PM

 4    BY MS. M. MILLER: (CONTINUING)                              03:39PM

 5       Q.   Okay.  So that $200,000 transaction went from      03:39PM

 6    Caledonian to Hansen Helicopters?                           03:39PM

 7       A.   Yes.                                                03:39PM

 8       Q.   Okay.  And then let's look at the transaction that is  03:39PM

 9    reflected in Count 108, and that is also on page 12, and could  03:39PM

10    you tell the members of the jury what the amount of that   03:39PM

11    transaction was?                                            03:39PM

12       A.   $500,000.                                           03:39PM

13       Q.   And where did that money go?                        03:39PM

14       A.    It went into the Hansen Northern Helicopters, Inc.  03:39PM

15    bank account with Bank of Hawaii.                           03:39PM

16              MS. M. MILLER:  And then, Your Honor, on -- in    03:39PM

17    this same exhibit, Exhibit 25, on pages 22 to 23, we have the  03:39PM

18    -- beginning and the ending balance for this account that I  03:40PM

19    would like to share with the jury, so I would ask the Court to  03:40PM

20    allow me to move into evidence Exhibits 22 to 23.          03:40PM

21              MS. MCCONWELL:  Pages?                            03:40PM

22              MS. M. MILLER:  Pages 22 and 23 of Exhibit 25.   03:40PM

23              THE COURT:  Okay.  I think I've already -- I      03:40PM

24    think I've already admitted 23.  So we're going add 22.  Any  03:40PM

25    objections to that?                                         03:40PM
```

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | MS. M. MILLER:  It's Exhibit 25, pages 22 and 23. | 03:40PM |
| 2 | THE COURT:  Right, right, yeah. | 03:40PM |
| 3 | MS. MCCONWELL:  Um... | 03:40PM |
| 4 | MR. MARTIN:  Your Honor, I have no objection. | 03:40PM |
| 5 | THE COURT:  Okay.  Ms. McConwell? | 03:40PM |
| 6 | MS. MCCONWELL:  Subject to my request for | 03:41PM |
| 7 | redaction, I don't have -- Hansen has no objection.  This is | 03:41PM |
| 8 | also admitted as to Walker, not to Hansen. | 03:41PM |
| 9 | THE COURT:  All right.  Ladies and gentlemen of | 03:41PM |
| 10 | the jury, Exhibit 25 through 20 -- 25-22 and 23-23[sic] has | 03:41PM |
| 11 | been admitted, but 22 will also be admitted without objection, | 03:41PM |
| 12 | and to the extent that there are names in there that deserve | 03:41PM |
| 13 | privacy, then have them redacted. | 03:41PM |
| 14 | MS. M. MILLER:  Yes, Your Honor. | 03:41PM |
| 15 | THE COURT:  All right. | 03:41PM |
| 16 | (Exhibit 25-22 to 25-23 admitted.) | 03:41PM |
| 17 | MS. M. MILLER:  May I publish -- | 03:41PM |
| 18 | THE COURT:  You may. | 03:41PM |
| 19 | MS. M. MILLER:  -- page 22 to the jury, please? | 03:41PM |
| 20 | (Pause.) | 03:41PM |
| 21 | BY MS. M. MILLER: (CONTINUING) | 03:41PM |
| 22 | Q.   Okay.  So this is from page 22, sir.  Can you tell | 03:41PM |
| 23 | the members of the jury what they're seeing here? | 03:41PM |
| 24 | A.   So what's reflected here is the monthly balance.  So | 03:41PM |
| 25 | it starts off on a -- on a November 30th, 2016, at | 03:41PM |

*Direct - Khamvongsa*

1    $6,102,121.62, and throughout that time frame, it stays          03:41PM

2    relatively at that amount.  Do you want me to read each --         03:42PM

3        Q.    Yeah.                                                    03:42PM

4              MS. M. MILLER:  Let's go to the next page please,        03:42PM

5    Ms. Miller, page 23.                                              03:42PM

6    BY MS. M. MILLER: (CONTINUING)                                    03:42PM

7        Q.    Okay.  Can you tell us what we're seeing here,          03:42PM

8    please?                                                          03:42PM

9        A.    So what we're seeing is on December 14th, 15th and     03:42PM

10   16th, we see -- it reflects a substantial drop in the balance,   03:42PM

11   which is an anomaly in regards to this particular account with   03:42PM

12   Caledonian Agency, Inc.  And then for the rest of the month,     03:42PM

13   the balance is under a million dollars after 12-16-2016.         03:42PM

14       Q.    What happened in December of 2016 or immediately       03:42PM

15   prior to 20 -- December 2016, in regards to this particular      03:42PM

16   case?                                                            03:43PM

17       A.    In October 2016, the FBI and Department of             03:43PM

18   Transportation OIG executed this search warrant on Hansen        03:43PM

19   Helicopters' facilities.                                         03:43PM

20       Q.    Okay.  How much money total was transferred out of     03:43PM

21   the Caledonian Agency account and moved into either Hansen       03:43PM

22   Northern or Hansen Helicopters?                                  03:43PM

23       A.    We're looking at $6.7 million.                         03:43PM

24       Q.    Okay.  Now, I'd like you to look at what has been      03:43PM

25   previously marked and I believe entered into evidence as         03:43PM

1   Government's Exhibit 23 --                                03:43PM

2           MS. M. MILLER:  Or has that been in yet?  Not    03:43PM

3   yet.  Okay, good.  This not into evidence yet, Your Honor, 03:43PM

4   Exhibit 23.                                               03:43PM

5   BY MS. M. MILLER: (CONTINUING)                            03:43PM

6       Q.   Do you see it, sir?                              03:43PM

7       A.   Yes.                                             03:43PM

8       Q.   Do you recognize it?                             03:43PM

9       A.   Yes.                                             03:43PM

10      Q.   Is it a true and correct copy of a bank account  03:43PM

11  record that you received in this case?                    03:43PM

12      A.   Yes.                                             03:43PM

13          MS. M. MILLER:  Your Honor, at this time, the     03:43PM

14  Government would move into evidence Exhibit 23.           03:43PM

15          THE COURT:  Just that -- there's no other pages?  03:43PM

16          MS. M. MILLER:  No, so there's more pages.        03:44PM

17  Page 2 of Exhibit 23, this is the Hansen Northern account. 03:44PM

18  It's going to show the money coming into the Hansen Northern 03:44PM

19  Helicopters' account.                                     03:44PM

20          THE COURT:  So what are you moving to admit?      03:44PM

21          MS. M. MILLER:  I'm moving to admit page 1,       03:44PM

22  page 2 -- and let me make sure that there are no other    03:44PM

23  relevant pages here.                                      03:44PM

24          MS. MCCONWELL:  I only have two pages.  It's only 03:44PM

25  two pages long, Marie.                                    03:44PM

*Direct - Khamvongsa*

```
 1                MS. M. MILLER:  Oh, yeah, that's it, one and two.   03:44PM
 2                THE COURT:  All right.  Counsels, any objections   03:44PM
 3      to 23-1 and 23-2?                                            03:44PM
 4                MR. MARTIN:  No, Your Honor.                       03:44PM
 5                THE COURT:  Ms. McConwell?                         03:44PM
 6                MS. MCCONWELL:  No, Your Honor, and it's not       03:44PM
 7      admitted as to Hansen Helicopters because we're not in the   03:44PM
 8      Counts 99 through 110.                                       03:44PM
 9                THE COURT:  Oh, okay.  All right.                  03:44PM
10                Ladies and gentlemen of the jury, Exhibits 23-1   03:44PM
11      and 23-2 will be admitted without objection.  Will be admitted  03:44PM
12      as to Mr. Walker.  And to the extent that there's any privacy   03:44PM
13      issues on any other names not relevant to this case, they will  03:44PM
14      be redacted.                                                 03:44PM
15      (Exhibit 23-1 to 23-2 admitted.)                            03:44PM
16                MS. M. MILLER:  And, Your Honor, may I publish it   03:44PM
17      to the jury?                                                 03:44PM
18                THE COURT:  You may, yes.                          03:44PM
19                MS. M. MILLER:  And, Ms. Miller, can you          03:45PM
20      highlight the top portion of this record.                    03:45PM
21      BY MS. M. MILLER: (CONTINUING)                               03:45PM
22         Q.   And, sir, whose bank account is this?               03:45PM
23         A.   Hansen Northern Helicopters, Inc.                    03:45PM
24         Q.   And what is the address shown here?                  03:45PM
25         A.   PO Box 9099, Tamuning, Guam 96931.                  03:45PM
```

*Direct - Khamvongsa*

1    Q.    Who else shares that address?                          03:45PM

2    A.    Hansen Helicopters and Caledonian Agency, Inc.         03:45PM

3    Q.    Okay.  And if we look at page -- can you go down this  03:45PM

4  page to the transaction section.  Yes.  Do you see the       03:45PM

5  transactions identified here, sir?                            03:45PM

6    A.    Yes.                                                   03:45PM

7    Q.    And could you tell the members of the jury what we're  03:45PM

8  looking at, in terms of those transactions?                   03:45PM

9    A.    So immediate -- immediately after the 12-14 to[sic]    03:45PM

10  2016 transfer of funds from Caledonian Agency, Inc. bank     03:45PM

11  account into Hansen Northern, now we see from December 16th to 03:45PM

12  December 2020, $2.5 million going out for each one of those   03:46PM

13  individual days.  So 12/16, 12/19 and 12/20 of 2016, we see  03:46PM

14  $2.5 million going out to the account belonging to Walker     03:46PM

15  Agricola, and it's an outgoing wire transfer.                03:46PM

16    Q.    Who owns Walker Agricola?                              03:46PM

17    A.    Jon Walker.                                            03:46PM

18    Q.    Who's the signer on the account for Walker Agricola?   03:46PM

19    A.    The sole signer of that account is Jon Walker.         03:46PM

20    Q.    Is anyone else a beneficiary on that account besides   03:46PM

21  Jon Walker?                                                   03:46PM

22    A.    No.                                                    03:47PM

23    Q.    Let's look at page 2, please, and what do we see here  03:47PM

24  on page 2?                                                    03:47PM

25    A.    Page 2 -- we're going out of order -- actually         03:47PM

*Direct - Khamvongsa*

1    reflects the money that we just talked about earlier regarding          03:47PM
2    Caledonian Agency transferring the monies into Hansen                   03:47PM
3    Northern.  So this reflects the money coming into the Hansen            03:47PM
4    Northern Helicopter account.                                            03:47PM
5         So earlier we talked about the $3 million coming in                03:47PM
6    on December 14th, 2016, and then the day later, December 15th,          03:47PM
7    2016, another $3 million, and then December 16th, 2016, we see          03:47PM
8    $500,000, which came from the Caledonian Agency, Inc. bank              03:47PM
9    account.                                                                03:47PM
10    Q.   For a total of how much going into the Caledonian --              03:47PM
11   from the Caledonian Agency account to Hansen Northern?                  03:48PM
12    A.   6.5 million.                                                      03:48PM
13    Q.   And how much went out from Hansen Northern to Walker              03:48PM
14   Agricola?                                                               03:48PM
15    A.   7.5.                                                              03:48PM
16    Q.   What is the business of Hansen Northern Helicopters?              03:48PM
17    A.   Airline.                                                          03:48PM
18    Q.   Okay.  Not leasing of tuna boat companies -- I mean,             03:48PM
19   tuna boat --                                                            03:48PM
20         MR. MARTIN:  Asked and answered.                                 03:48PM
21   BY MS. M. MILLER: (CONTINUING)                                          03:48PM
22    Q.   -- helicopters for tuna boat companies?                          03:48PM
23         MR. MARTIN:  Asked and answered, Your Honor.                     03:48PM
24         THE WITNESS:  No.                                                03:48PM
25         THE COURT:  I'm sorry -- I'm sorry, wait, wait                   03:48PM

*Direct - Khamvongsa*

```
 1    just a minute.  What was the objection?                      03:48PM

 2              MR. MARTIN:  It was asked and answered, and it's    03:48PM

 3    a leading question.  It was asked and answered.               03:48PM

 4              THE COURT:  Overruled on -- we'll just let it go.   03:48PM

 5    Go ahead.  Overruled.                                         03:48PM

 6              THE WITNESS:  No.                                   03:48PM

 7    BY MS. M. MILLER: (CONTINUING)                                03:48PM

 8       Q.   Okay.  Now, what is the beginning balance of the      03:48PM

 9    Hansen Northern airline account shown on page 23-1?           03:49PM

10              MS. M. MILLER:  Can you go to 23-11, Ms. Miller?    03:49PM

11    BY MS. M. MILLER: (CONTINUING)                                03:49PM

12       Q.   Can you see the beginning balance there in the middle 03:49PM

13    of the page?                                                  03:49PM

14              MS. M. MILLER:  If you could pull that out.         03:49PM

15    BY MS. M. MILLER: (CONTINUING)                                03:49PM

16       Q.   What was the beginning balance?                       03:49PM

17       A.   $975,377.91.                                          03:49PM

18       Q.   And what was added during this month?                 03:49PM

19       A.   The total additions is 6. -- $6,579,978.20.           03:49PM

20       Q.   And how much went out of the account?                 03:49PM

21       A.   $7,534,443.65.                                        03:49PM

22       Q.   And what was the ending balance of this account?      03:49PM

23       A.   $20,912.46.                                           03:49PM

24       Q.   Let's go back to Exhibit 43, the Demonstrative Aid    03:50PM

25    43, and look at Count 109.  Demonstrative Aid 43, Count 109.  03:50PM
```

*Direct - Khamvongsa*

1          THE COURT:  Okay.  Ten minutes before we recess          03:50PM

2     for the day.                                                   03:50PM

3          MS. M. MILLER:  Yes, Your Honor.                          03:50PM

4          THE COURT:  How we doing on time?                         03:50PM

5          MS. M. MILLER:  We're doing great on time.  I'll          03:50PM

6     actually 1, 2, 3 -- yeah, I'm on the last page-and-a-half of   03:50PM

7     questions, so we're doing good on time.                        03:50PM

8          THE COURT:  You're going to be able to finish             03:50PM

9     this witness before ten minutes you think or not?  Probably    03:50PM

10    not?                                                           03:50PM

11         MS. M. MILLER:  We're to going to stop in ten             03:50PM

12    minutes?                                                       03:50PM

13         THE COURT:  Yeah.                                         03:50PM

14         MS. M. MILLER:  I'll have very few questions for          03:50PM

15    tomorrow morning if we stop --                                 03:50PM

16         THE COURT:  All right.                                    03:50PM

17         MS. M. MILLER:  -- in ten minutes.                        03:50PM

18         THE COURT:  That's fine.                                  03:50PM

19         MS. M. MILLER:  But it will be done before the            03:50PM

20    first recess.                                                  03:50PM

21         THE COURT:  All right.  That's fine.                      03:50PM

22    BY MS. M. MILLER:  (CONTINUING)                                03:50PM

23    Q.   Could you please read Count 109 to the jury?             03:50PM

24    A.   "December 19th, 2016, Walker electronically              03:50PM

25    transferred $2,500,000 from Hansen Northern's Bank of Hawaii   03:51PM

*Direct - Khamvongsa*

1    corporate bank account ending in 3534 to Walker Agricola LLC's    03:51PM

2    Community Bank and Trust business bank account ending in 4056.    03:51PM

3        Q.    By the way, where is the Walker Agricola account    03:51PM

4    located?    03:51PM

5        A.    Neosho, Missouri.    03:51PM

6        Q.    Now, can you please look at count --    03:51PM

7                THE COURT:  Sorry, where is it located?    03:51PM

8                THE WITNESS:  Missouri.    03:51PM

9                THE COURT:  Oh, Missouri, okay, that's right.    03:51PM

10               MS. M. MILLER:  Neosho, Missouri.    03:51PM

11               THE COURT:  That's right.    03:51PM

12   BY MS. M. MILLER: (CONTINUING)    03:51PM

13       Q.    Could you now look at Count 110, and could you read    03:51PM

14   that count to the jury?    03:51PM

15       A.    "December 20th, 2016, Walker electrically transferred    03:51PM

16   $2,500,000 from Hansen Northern's Bank of Hawaii corporate    03:51PM

17   bank account ending in 3534 to Walker Agricola, LLC's    03:51PM

18   Community Bank and Trust business bank account ending in 4056.    03:51PM

19       Q.    And were those the transactions that we saw earlier    03:51PM

20   in the bank statement?    03:52PM

21       A.    Yes.    03:52PM

22       Q.    Who lives in Neosho, Missouri?    03:52PM

23       A.    Mr. Jon Walker.    03:52PM

24       Q.    I'd like to show you what has been previously marked    03:52PM

25   as Exhibit 30.  It has not been entered into evidence yet.  Do    03:52PM

*Direct - Khamvongsa*

```
1   you recognize this?                                      03:52PM

2       A.   Yes.                                            03:52PM

3       Q.   Is it a true and correct copy of what you received?  03:52PM

4       A.   Yes.                                            03:52PM

5            MS. M. MILLER:  Your Honor, at this time, I would  03:52PM

6   offer into evidence what has been previously marked as   03:52PM

7   Exhibit 30.                                              03:52PM

8            THE COURT:  Counsel?                            03:52PM

9            MR. MARTIN:  Just a second, Your Honor, I'm     03:52PM

10  sorry.                                                   03:52PM

11           THE COURT:  Mm-hmm.                             03:52PM

12           (Pause.)                                        03:52PM

13           MR. MARTIN:  No objection, Your Honor.          03:53PM

14           MS. MCCONWELL:  I have no objection, Your Honor, 03:53PM

15  but this is not admitted to Hansen Helicopters.  We're not in  03:53PM

16  these counts.                                            03:53PM

17           THE COURT:  All right.  Ladies and gentlemen of 03:53PM

18  the jury, Exhibit --                                     03:53PM

19           MS. M. MILLER:  Thirty.                         03:53PM

20           THE COURT:  -- 30 -- is it just one page there, 03:53PM

21  30?                                                      03:53PM

22           MS. M. MILLER:  Thirty.                         03:53PM

23           THE COURT:  30-1?                               03:53PM

24           MS. M. MILLER:  30-1, yes.                      03:53PM

25           THE COURT:  All right.                          03:53PM
```

*Direct - Khamvongsa*

```
 1              MS. M. MILLER:  It's only one page, Your Honor.        03:53PM
 2              THE COURT:  Admitted without objection and --          03:53PM
 3              MS. M. MILLER:  May I publish it?                       03:53PM
 4              THE COURT:  Yeah, you may.                             03:53PM
 5              MS. M. MILLER:  Thank you.                             03:53PM
 6  (Exhibit 30 admitted.)                                            03:53PM
 7              THE COURT:  As applied to Mr. Jon -- Mr. Walker.       03:53PM
 8              MS. M. MILLER:  Yes, Your Honor.                       03:53PM
 9  BY MS. M. MILLER: (CONTINUING)                                    03:53PM
10      Q.   Special Agent Khamvongsa --                              03:53PM
11              MS. M. MILLER:  Ms. Miller, could you just            03:53PM
12  highlight the top portion of it and then we'll go through it.     03:53PM
13  Thank you so much.  It's okay.                                    03:53PM
14  BY MS. M. MILLER: (CONTINUING)                                    03:53PM
15      Q.   So, first, can you tell the members of the jury what     03:53PM
16  is this -- what is this document?                                 03:53PM
17      A.   This is a -- an account card, which is generally         03:53PM
18  created at the opening of the bank account.                       03:54PM
19      Q.   Okay.  And could you tell the members of the jury,       03:54PM
20  what was the initial deposit to open up this bank account?        03:54PM
21      A.   $50,000.                                                 03:54PM
22      Q.   And when was it opened?                                  03:54PM
23      A.   March 19th, 2014.                                        03:54PM
24      Q.   Okay.  Now, let's look at the middle portion of this     03:54PM
25  document, okay, and let's see -- now, who signed this             03:54PM
```

*Direct - Khamvongsa*

1    document?                                          03:54PM

2        A.   Jon Walker.                               03:54PM

3        Q.   And what box is checked next to his citizenship   03:54PM

4    status?                                            03:54PM

5        A.   He's a U.S. citizen.                      03:54PM

6        Q.   Okay.  And do we see the name of the company that you   03:54PM

7    referenced earlier on this document?               03:54PM

8        A.   Yes.                                       03:54PM

9        Q.   Is that Walker Agricola?                  03:54PM

10       A.   Yes.                                       03:54PM

11       Q.   Okay.  And then who do we see as the signer on this   03:54PM

12   account?                                           03:55PM

13       A.   Jon Walker.                               03:55PM

14       Q.   How many signatures are needed -- how many signatures   03:55PM

15   are needed to remove any funds from this account based on this   03:55PM

16   card?                                              03:55PM

17       A.   Just Jon Walker.                          03:55PM

18       Q.   Okay.  Now let's look at the bottom, and we just --   03:55PM

19   what do we see here?                               03:55PM

20       A.   Walker Agricola, LLC, and just Jon Walker's   03:55PM

21   signature.                                         03:55PM

22       Q.   Okay.  Now let's look at what has been previously   03:55PM

23   marked but not admitted yet as Exhibit 31.  Do you recognize   03:55PM

24   this document?                                     03:55PM

25       A.   Yes.                                       03:55PM

1    Q.   Is it a true and correct copy of what you received          03:55PM

2  from the bank?                                                      03:55PM

3    A.   Yes.                                                         03:55PM

4         MS. M. MILLER:  Your Honor, at this time, the               03:55PM

5  Government would move into evidence what has been previously        03:56PM

6  marked as Exhibit 31.  How many pages?  Three pages, Your           03:56PM

7  Honor.                                                              03:56PM

8         THE COURT:  1 through 3?                                     03:56PM

9         MS. M. MILLER:  Yes, Your Honor.                             03:56PM

10         THE COURT:  All right.  Counsels?                            03:56PM

11         (Pause.)                                                     03:56PM

12         MR. MARTIN:  No objection Your Honor.                        03:56PM

13         THE COURT:  Ms. McConwell?                                   03:56PM

14         MS. MCCONWELL:  No objection, Your Honor, but,               03:56PM

15  again, Hansen Helicopters is not in the counts in 99               03:56PM

16  through 105 -- or 110.                                             03:56PM

17         THE COURT:  All right.  Ladies and gentlemen of             03:56PM

18  the jury, Exhibits 31-1 through 31-3 will be admitted without      03:56PM

19  objection as to Mr. Walker.  And, again, as to the extent that     03:56PM

20  there is any private information from -- for other third           03:56PM

21  parties, please redact this -- redact their names and their        03:56PM

22  information.  So admitted and yes, you may publish.                03:56PM

23  (Exhibit 31-1 to 31-3 admitted.)                                   03:56PM

24         MS. M. MILLER:  Thank you, Your Honor.                       03:56PM

25         THE COURT:  You got three minutes.                           03:56PM

*Direct - Khamvongsa*

                    MS. M. MILLER:  So, Ms. Miller, can you -- yeah,
we'll just wrap up this document and then we'll be done for
the day.
                    THE COURT:  Yeah, that's fine.
                    MS. M. MILLER:  Could you highlight the top
portion.  Thank you so much.
BY MS. M. MILLER: (CONTINUING)
    Q.   And could you tell the members of the jury, sir, what
are we seeing right here?
    A.   What we're seeing is this is a statement from
Community Bank and Trust from Walker Agricola, LLC in Neosho,
Missouri.
    Q.   Okay.  Do you recall, sir, did the signature card
indicate what type of business Walker Agricola, LLC was?
    A.   I don't recall that.
    Q.   Okay.  And, again, do we see that address in Neosho,
Missouri?
    A.   Yes.
                    MS. M. MILLER:  And could you please now,
Ms. Miller, go to the transactions part of this page.
BY MS. M. MILLER: (CONTINUING)
    Q.   Okay.  Sir, and could you tell the members of the
jury what we're seeing here?
    A.   We're seeing a bunch of transactions as it relates to
the account.

1          MS. M. MILLER:  Okay.  Now, let's go to the next          03:57PM

2     page, and can you highlight that page, please, just the          03:58PM

3     transactions.          03:58PM

4     BY MS. M. MILLER: (CONTINUING)          03:58PM

5          Q.   And, again, what are we seeing here, sir?          03:58PM

6          A.   What we're seeing is that the transfer of funds from          03:58PM

7     Hansen Northern Helicopters is being received by the Walker          03:58PM

8     Agricola bank account.  As reflected here in the very -- in          03:58PM

9     the very top in this area here of the bank statement, we see          03:58PM

10    the $2.5 million being received about December 15th, 2016.          03:58PM

11    Again we see another wire transfer of funds being received in          03:58PM

12    December 16th, 2016, of $2.5 million, and it's identifying          03:58PM

13    Hansen Northern Helicopters.  And then we see another wire          03:58PM

14    transfer of $2.5 million again for December 19th, 2016 from          03:59PM

15    Hansen Northern Helicopters.          03:59PM

16         Q.   Okay.  So the transactions that we talked about in          03:59PM

17    Counts 109 and 110, we're seeing go into the actual account of          03:59PM

18    Walker Agricola; is that correct?          03:59PM

19         A.   Yes.  This reflects that they received the money --          03:59PM

20    Mr. Walker received the money.          03:59PM

21         Q.   Do you see expenses going out of this account for          03:59PM

22    various businesses here in Guam?          03:59PM

23         A.   Yes.          03:59PM

24         Q.   Both on this page and the prior page?          03:59PM

25         A.   Well, some appears to be in Guam and then some          03:59PM

*Direct - Khamvongsa*

1    appears to be in Neosho, Missouri.                    03:59PM

2        Q.   Okay.                                        03:59PM

3             MS. M. MILLER:  And, Ms.  Miller, let's go to   03:59PM

4    page 3.  Okay.  And let's go to the summary of the account,   03:59PM

5    please, if you can highlight that.                    03:59PM

6    BY MS. M. MILLER: (CONTINUING)                        03:59PM

7        Q.   Okay.  So what are we seeing here, sir, in terms of   04:00PM

8    the starting and ending balance of this account?     04:00PM

9        A.   (No response.)                               04:00PM

10       Q.   Let me ask you the question a different way, because   04:00PM

11   this account is kind of set up differently.  What are the   04:00PM

12   total credits into this account for this month?      04:00PM

13       A.   $7,508,887.82.                               04:00PM

14       Q.   What are the total debits, meaning money, going out   04:00PM

15   of the account for that particular month?            04:00PM

16       A.   $16,867.58.                                  04:00PM

17       Q.   Okay.                                        04:00PM

18            MS. M. MILLER:  Your Honor, at this time, we will   04:00PM

19   stop.  I just have wrap-up questions for tomorrow.  So --   04:00PM

20            THE COURT:  Okay, very well.                 04:00PM

21            MS. M. MILLER:  -- we'll be done tomorrow    04:00PM

22   morning.                                              04:00PM

23            THE COURT:  All right.  You'll be done with this   04:00PM

24   witness tomorrow morning?                             04:00PM

25            MS. M. MILLER:  Yes, Your Honor.             04:00PM

*Direct - Khamvongsa*

```
 1              THE COURT:  And defense has an opportunity to    04:00PM
 2   call -- to cross-examination the witness and you'll have your  04:00PM
 3   next witness ready to go.                                   04:01PM
 4              Ladies and gentlemen of the jury, first of all,  04:01PM
 5   the Court will thank you again for coming back and being   04:01PM
 6   faithful to staying healthy, as I've indicated earlier, and  04:01PM
 7   also staying faithful to fulfilling your civic duty.  It's  04:01PM
 8   very important, as I've indicated to both the prosecution and  04:01PM
 9   defense, that we have our jurors intact.  And all of you,   04:01PM
10   every one of you who are here today are very important to the  04:01PM
11   -- this success of this process towards completion.         04:01PM
12              So, as I indicated, the prosecution has two more  04:01PM
13   witnesses.  We're hoping to get done by this week so that you  04:01PM
14   can all start deliberating and, you know, complete this case.  04:01PM
15              The Court will keep the schedule as-is as we've   04:01PM
16   already discussed.                                          04:01PM
17              I would admonish you to continue to keep an open  04:01PM
18   mind.  Do not form or express any opinion on this case until  04:01PM
19   it's submitted to you.  Do not speak to anyone on any subject  04:01PM
20   connected with this trial.                                  04:02PM
21              I hope you have a safe evening.  And also if you  04:02PM
22   don't feel good, make sure you don't come in.  Let us know.  I  04:02PM
23   mean, you know, COVID is still, you know -- and its variants  04:02PM
24   are still around Guam, but I think the good thing is a lot of  04:02PM
25   us are immunized and taken -- having taken our booster shots.  04:02PM
```

*Direct - Khamvongsa*

1          So the Court, as I've indicated, because the          04:02PM

2    governor has said that masks are optional except for in          04:02PM

3    healthcare facilities, I think it may be even in the schools,          04:02PM

4    I'm not sure, but in healthcare facilities for sure, the Court          04:02PM

5    will keep that, will follow that particular executive order.          04:02PM

6    And my general order will allow jurors, if they wish to put on          04:02PM

7    their masks they can.  If they don't, they don't have to.          04:02PM

8          We'll continue to provide you lunch and snacks.          04:02PM

9    And, again, thank you for your patience and your attention.          04:02PM

10          Please rise for the jury.  See you tomorrow          04:02PM

11    morning.  Start again on time 8:15.          04:03PM

12          (Jury out at 5:03 p.m.)          04:03PM

13          THE COURT:  Agent Khamvongsa, I'll see you          04:03PM

14    tomorrow.          04:03PM

15          THE WITNESS:  Thank you so much.          04:03PM

16          THE COURT:  I'll see you tomorrow.  Focus on          04:03PM

17    getting your limiting instruction that you were going to talk          04:03PM

18    about.          04:03PM

19          MS. M. MILLER:  Yes, Your Honor.  Thank you.          04:03PM

20          THE COURT:  Thank you.          04:03PM

21          (Proceedings concluded at 5:03 p.m.)          04:03PM

22                          * * *          04:03PM

23

24

25

| | | |
|---|---|---|
| 1 | August 16, 2022; 8:13 a.m.; Hagatna, Guam | 04:03PM |
| 2 | * * * | 04:03PM |
| 3 | (In Chambers.) | 08:13AM |
| 4 | THE COURT:  Let's go on the record.  Who's | 08:13AM |
| 5 | present first of all?  Your client, Mr. Walker is present. | 08:13AM |
| 6 | Mr. McConwell, Ms. McConwell, Mr. Martin, Mr. Han.  Okay yes, | 08:13AM |
| 7 | Mr. Martin? | 08:14AM |
| 8 | MR. MARTIN:  Yesterday afternoon, when I first | 08:14AM |
| 9 | found out about it, and I didn't have a chance to look at it | 08:14AM |
| 10 | because we were in Court, a website has been created | 08:14AM |
| 11 | June 27th. | 08:14AM |
| 12 | MS. MCCONWELL:  July 27th. | 08:14AM |
| 13 | MR. MARTIN:  July 27th, just recently.  And it | 08:14AM |
| 14 | looks like a legitimate website and it is, for lack of a | 08:14AM |
| 15 | better word, a website designed to ensure we get convicted and | 08:14AM |
| 16 | go out of business because it's -- we have it here, Laura's | 08:14AM |
| 17 | actually got it. | 08:14AM |
| 18 | MS. MCCONWELL:  It's Hansen-Helicopters. | 08:14AM |
| 19 | THE COURT:  Why don't we put it on my big screen, | 08:14AM |
| 20 | send it to me JFTG -- | 08:14AM |
| 21 | MS. MCCONWELL:  Hold on a second. | 08:14AM |
| 22 | THE COURT:  I'll give it to you.  Is it Kandit | 08:14AM |
| 23 | News? | 08:14AM |
| 24 | MS. MCCONWELL:  No, it is not. | 08:14AM |
| 25 | THE COURT:  Ed Han, is it Kandit News? | 08:14AM |

*Direct - Khamvongsa*

```
 1              MS. MCCONWELL:  It's not.                      08:14AM

 2              MR. MARTIN:  Every link goes to our case, it acts   08:14AM

 3   like it's an aviation website and what is it called,     08:15AM

 4   Pomposity?                                               08:15AM

 5              MS. MCCONWELL:  Pomposity.                     08:15AM

 6              THE COURT:  Is that a word?                    08:15AM

 7              MS. MCCONWELL:  I don't know.  I haven't looked  08:15AM

 8   it up.                                                   08:15AM

 9              THE COURT:  Pomposity.                         08:15AM

10              MR. MARTIN:  Maybe that's what it is.          08:15AM

11              MS. MCCONWELL:  What e-mail?                   08:15AM

12              THE COURT:  Jftg@gud.uscourts.gov.             08:15AM

13              MS. MCCONWELL:  Let's see if I can -- I'm going  08:15AM

14   do this.  Copy.                                          08:15AM

15              THE COURT:  You think it's from the prosecution?  08:15AM

16              MR. MARTIN:  No, Judge, we have no clue.  We have   08:15AM

17   no clue.                                                 08:15AM

18              THE COURT:  Why aren't we calling the prosecution  08:15AM

19   in then?                                                 08:15AM

20              MR. MARTIN:  Well, we don't know.  We wanted to   08:15AM

21   address you first with it.                               08:15AM

22              THE COURT:  Okay.  And then decide?            08:15AM

23              MR. MARTIN:  Just -- we're not accusing anybody   08:15AM

24   of anything.  We're not certainly not accusing anybody because  08:15AM

25   we don't know.                                           08:15AM
```

```
1              THE COURT:  Okay.  How did you guys find the      08:15AM
2    website?                                                     08:15AM
3              MR. MARTIN:  Our -- one of our clients -- one of   08:15AM
4    our clients...                                               08:16AM
5              MS. MCCONWELL:  Well, actually we found it... we   08:16AM
6    found it because our client's girlfriend had -- was aware that 08:16AM
7    hansen-helicopter.com, a website was created but that's all  08:16AM
8    that we knew.  And yesterday, we get e-mails while we're in  08:16AM
9    court and we find out that there have been contacts and      08:16AM
10   e-mails to Hansen Helicopters employees, and they've sent now 08:16AM
11   e-mails to --                                                08:16AM
12             MR. MARTIN:  Boat companies.                       08:16AM
13             MS. MCCONWELL:  All of the boats and the only way  08:16AM
14   they could have gotten the information is from the exhibits in 08:16AM
15   this trial.                                                  08:16AM
16             THE COURT:  Okay, did you send it?                 08:16AM
17             MS. MCCONWELL:  I did.  It should be in your       08:16AM
18   inbox.                                                       08:16AM
19             THE COURT:  Okay.  I don't have it yet.            08:16AM
20             MS. MCCONWELL:  I may have gone to junk.           08:16AM
21             THE COURT:  Let me go to junk.                     08:16AM
22             MS. MCCONWELL:  If she just tells you the URL,     08:17AM
23   you could type it in.                                        08:17AM
24             THE COURT:  What was that?                         08:17AM
25             MS. MCCONWELL:  Hansen-helicopters.com and go to   08:17AM
```

*Direct - Khamvongsa*

1    the website and we'll just type it in.                    08:17AM

2              THE COURT:  Okay.                               08:17AM

3              (Pause. )                                       08:17AM

4              MS. MCCONWELL:  Then at the top, in the top one, 08:17AM

5    just do H-A-N-S-E-N.                                      08:17AM

6              THE COURT:  We don't need to go to Google?      08:17AM

7              MS. MCCONWELL:  You don't even need to go to    08:17AM

8    Google.  You just type it in.                            08:17AM

9              THE COURT:  You want to do it?                  08:17AM

10             (Pause. )                                       08:17AM

11             THE COURT:  My law clerk.  Emily do it.  Okay,  08:17AM

12   hold on.  While you're doing that.                       08:17AM

13             (Pause. )                                       08:17AM

14             THE COURT:  Okay.  Is this is it?               08:18AM

15             MR. MARTIN:  That's it.                         08:18AM

16             MS. MCCONWELL:  And it has like an employment   08:18AM

17   record from Phillip Kapp in the Pacific Spotters -- from the 08:18AM

18   Philippines on it.  It has a letter that this appears -- from 08:18AM

19   an organization that's Aeronavigator Advocacy Association 08:18AM

20   which can be found nowhere and it's definitely not in Keizer, 08:18AM

21   Oregon, which is one of the links in this page.  It directs 08:18AM

22   people to contact Mike Boler --                          08:18AM

23             MR. MARTIN:  The FAA.                           08:18AM

24             MS. MCCONWELL:  -- who is the FAA Special       08:18AM

25   Assessment team -- investigation team who had been -- you know 08:18AM

| | | |
|---|---|---|
| 1 | on the list for a witness. | 08:18AM |
| 2 | MR. MARTIN: There is a docket link on there, | 08:18AM |
| 3 | Judge, that was just filed. | 08:18AM |
| 4 | THE COURT: Wow, so somebody is watching this | 08:18AM |
| 5 | trial. | 08:18AM |
| 6 | MS. MCCONWELL: It all -- it went live on | 08:18AM |
| 7 | July 27th is what we discovered. It's hosted by somebody in | 08:18AM |
| 8 | Arizona, but if you go in here, it links to -- it links to -- | 08:18AM |
| 9 | basically prosecution filings, it references the prosecution. | 08:19AM |
| 10 | MR. MARTIN: Every link is to us. Although -- | 08:19AM |
| 11 | MS. MCCONWELL: FAA inspector took "Hookers and | 08:19AM |
| 12 | money", Phillip Kapp. Pomposity vs. Reality. | 08:19AM |
| 13 | THE COURT: Pomposity? | 08:19AM |
| 14 | MS. MCCONWELL: Okay. Pomposity. | 08:19AM |
| 15 | MR. MARTIN: You can call me Mr. Pomposity now. | 08:19AM |
| 16 | THE COURT: All right. | 08:19AM |
| 17 | MS. MCCONWELL: So if you scroll, it talks about | 08:19AM |
| 18 | Mr. Martin's opening but then it goes, but then the reality. | 08:19AM |
| 19 | THE COURT: Wow. So somebody is really watching | 08:19AM |
| 20 | this. You know what also too, we could find out -- but it's | 08:19AM |
| 21 | not that everybody will be identified on the Zoom -- you know | 08:19AM |
| 22 | how we -- it's open to the public? | 08:19AM |
| 23 | MS. MCCONWELL: Well, what I wondered about | 08:19AM |
| 24 | getting the document, because it would have to go into PACER | 08:19AM |
| 25 | to get the documents. | 08:19AM |

*Direct - Khamvongsa*

```
 1              THE COURT:  Yeah.  They can get it as long as      08:19AM
 2    it's not sealed.  Are these sealed documents?               08:19AM
 3              MS. MCCONWELL:  Well, no, this is the problem,     08:20AM
 4    they have the ability to get -- if they get into the -- the 08:20AM
 5    exhibits aren't all redacted and so we don't know how they've 08:20AM
 6    been able to contact all of our employees, how they've been -- 08:20AM
 7    and now they've contacted all of our boats.                 08:20AM
 8              MR. MARTIN:  All the boats.                        08:20AM
 9              MS. MCCONWELL:  All the tuna boats.                08:20AM
10              MR. MARTIN:  Have been notified.                   08:20AM
11              MS. MCCONWELL:  All of the e-mails that are on     08:20AM
12    some of those documents, all those people now have been -- an 08:20AM
13    e-mail -- this e-mail which is -- and I don't know, I don't  08:20AM
14    remember where I found or got -- went to this one which is the 08:20AM
15    Aeronavigator's Advocacy Association link that is --         08:20AM
16              THE COURT:  All right.  So I guess where it says   08:20AM
17    identifying link between Hansen Helicopters and Pacific      08:20AM
18    Spotters--Aeronavigators media release.  I don't know if you 08:20AM
19    can see that Emily.  That's...                              08:20AM
20              Let's get -- we can -- what was that you           08:20AM
21    wanted -- oh --                                             08:20AM
22              MS. MCCONWELL:  Well, no, I wanted you to see      08:20AM
23    this just because this then has just a lot salacious things in 08:21AM
24    it.                                                         08:21AM
25              THE COURT:  What do you want us to look at?        08:21AM
```

```
 1              MS. MCCONWELL:  Let me show Emily what the thing    08:21AM

 2   was.                                                          08:21AM

 3              LAW CLERK:  This photograph, this is and exhibit    08:21AM

 4   right?  That's not docketed, Judge.                           08:21AM

 5              MS. MCCONWELL:  There are a bunch of exhibit        08:21AM

 6   pictures in here.                                             08:21AM

 7              MR. MARTIN:  Some of them may have been in the      08:21AM

 8   media.                                                        08:21AM

 9              MS. MCCONWELL:  Well those aren't docketed          08:21AM

10   though.                                                       08:21AM

11              MR. MARTIN:  Oh.                                    08:21AM

12              THE COURT:  Is that like over at the -- is that     08:21AM

13   at the... is that at National Guard?                          08:21AM

14              MR. MARTIN:  No, that's one of the government       08:21AM

15   exhibits, Judge.  The one at National Guard are --            08:21AM

16              THE COURT:  Okay.                                   08:21AM

17              MS. MCCONWELL:  So if you scroll down, that's       08:21AM

18   where it's directing, it talks about a class action and       08:21AM

19   directing people to contact Mike Boler.                       08:21AM

20              THE COURT:  But there is no class action suit, is   08:21AM

21   there?                                                        08:21AM

22              MR. MARTIN:  No.  But it's -- it's --               08:21AM

23              THE COURT:  Or there is somebody --                 08:21AM

24              MR. MARTIN:  It's a solicitation for --             08:21AM

25              THE COURT:  This is former and current helicopter   08:21AM
```

*Direct - Khamvongsa*

```
1    staff.                                                      08:22AM

2              MS. MCCONWELL:  This is what it says but we don't  08:22AM

3    know this -- but it's not.                                  08:22AM

4              THE COURT:  Okay.  Aeronavigator Advocacy          08:22AM

5    Association.                                                 08:22AM

6              MR. MARTIN:  There is no such group as that.       08:22AM

7              MS. MCCONWELL:  That purports to be the secretary  08:22AM

8    of this organization, we can't find him.  And we can't find 08:22AM

9    him and the organization on Page 4.                         08:22AM

10             THE COURT:  So the docket, that's the CMECF        08:22AM

11   docket number right here that are recited?                   08:22AM

12             MS. MCCONWELL:  Yes.                               08:22AM

13             THE COURT:  I think we should call in the          08:22AM

14   prosecutors then.  And just say that, you know, this is here 08:22AM

15   and see if they know anything about it.                      08:22AM

16             MS. MCCONWELL:  And one of them they have          08:22AM

17   referenced the motion that the prosecutor just filed, 1629,  08:22AM

18   which is about the alter egos.                               08:22AM

19             MR. MCCONWELL:  That was the exhibit yesterday     08:22AM

20   right there.                                                 08:22AM

21             THE COURT:  Okay.  All right.  Well, let's call    08:22AM

22   in the prosecutors.  And Emily, you want to call them in.    08:22AM

23   Then we'll just... you can call them in.                     08:22AM

24             MR. MCCONWELL:  Actually, that's not the same      08:22AM

25   one, that's --                                               08:22AM
```

         1            MR. MARTIN:  Right.  It's an extract from a                    08:23AM

         2    filing and that's 1120 --                                              08:23AM

         3            MR. MCCONWELL:  The filing yesterday had the boat              08:23AM

         4    number on it too.                                                      08:23AM

         5            (Prosecutors now present.)                                     08:23AM

         6            MS. M. MILLER:  Good morning, Your Honor.                      08:24AM

         7            THE COURT:  The defense Counsels have asked --                 08:24AM

         8    come on in, you guys can be seated for a second.  So for the           08:24AM

         9    record, Marie Miller, Stephanie Miller and Mr. Leon Guerrero          08:24AM

        10    are all present -- so they just came in a few minutes ago to          08:24AM

        11    speak to me first as they weren't sure, I said, well, let's           08:24AM

        12    see if we should call the prosecutors and we all agreed that          08:24AM

        13    we with should.  So I will leave -- you want -- who wants to          08:24AM

        14    speak?  They found something that they wanted to bring to our         08:24AM

        15    attention.                                                            08:24AM

        16            MS. M. MILLER:  Sure.                                         08:24AM

        17            THE COURT:  Go ahead.  Whoever wants to speak.               08:24AM

        18            MR. MARTIN:  There is a website that was created,            08:24AM

        19    we believe, July 27th, that is purporting to be some type of          08:24AM

        20    aviation news website, you find it by going to *Hansen*               08:24AM

        21    *hash[sic] Helicopter*.                                               08:25AM

        22            THE COURT:  And here it is.                                   08:25AM

        23            MR. MARTIN:  Yeah, there it is.                              08:25AM

        24            THE COURT:  I asked him to put it on the big                 08:25AM

        25    screen.                                                              08:25AM

*Direct - Khamvongsa*

1       MS. MCCONWELL:  It's Hansen-Helicopters.                    08:25AM

2       MR. MARTIN:  And every link is something negative          08:25AM

3  about our case from the defense side.  And it is -- and it's    08:25AM

4  requesting people get together for a class action lawsuit.      08:25AM

5  There are --                                                    08:25AM

6       MS. MCCONWELL:  That they contact Mike Boler.              08:25AM

7       MR. MARTIN:  And there are links to documents,             08:25AM

8  like 1629, it says latest Court filings, and it's got all       08:25AM

9  kinds of Court filings in there.  It's got comments about my    08:25AM

10 opening statement and it's got -- all kinds of -- nothing bad   08:25AM

11 about you-all.  And I'm not suggesting anyone had anything to   08:25AM

12 do with it.  We don't know what it is.  We are very concerned.  08:25AM

13 Boat companies have been contacted.  This has been forwarded    08:25AM

14 to --                                                           08:25AM

15      MS. MCCONWELL:  Employees -- and that's how we             08:25AM

16 found out about it.                                             08:25AM

17      MR. MARTIN:  And we found out about it last                08:25AM

18 night.  Had a chance to look at it last night and thought it    08:26AM

19 should be brought to the Court's attention.  And I'm very       08:26AM

20 concerned that -- and if the jurors have any access to it or    08:26AM

21 have access to it or find out about it, it puts us in a very    08:26AM

22 difficult situation as far as the validity of any verdicts in   08:26AM

23 this case, Your Honor.  And so that's why we came to you        08:26AM

24 because we just found out about it.  But it is -- I don't know  08:26AM

25 how to find out -- I don't have the technology --              08:26AM

*Direct - Khamvongsa*

1   technological savvy to find out who posted it, how it was      08:26AM

2   done, who's behind it.  But it's very concerning to us.        08:26AM

3   Particularly, at this point in the game.                       08:26AM

4            MS. M. MILLER:  So Your Honor, one of the             08:26AM

5   questions I would have is, is there anything on this site that 08:26AM

6   is not in the public domain or part of the public record as a  08:26AM

7   result of this trial?  Because if there is not --              08:26AM

8            MR. MARTIN:  There is.                                08:26AM

9            MS. M. MILLER:  I mean we've had to -- I              08:26AM

10  personally have had to deal with bad press in this case when   08:26AM

11  Mr. Lujan filed his motion against me and made the comments he  08:26AM

12  made against me and my picture was in a news article and       08:27AM

13  negative things were said and, you know, I mean that's what    08:27AM

14  happens.  So what is in here that's not part of the public     08:27AM

15  record?                                                        08:27AM

16           MR. MARTIN:  No disrespect to you, but you're not     08:27AM

17  on trial.  Jon is on trial.                                    08:27AM

18           MS. M. MILLER:  No, but my question is, what in       08:27AM

19  here is not --                                                 08:27AM

20           MR. MARTIN:  I haven't had a chance to look at        08:27AM

21  everything but I will tell you there are things in there,      08:27AM

22  there are things, just like what you said, negative things     08:27AM

23  about you, negative things about Jon, there is                 08:27AM

24  misrepresentations of the trial testimony in here that I've    08:27AM

25  seen.  I haven't seen it all.                                  08:27AM

*Direct - Khamvongsa*

```
 1              MS. MCCONWELL:  Well, there are things that          08:27AM
 2    are -- I mean whoever is doing this, is actively watching the  08:27AM
 3    trial but there are things about some of the exhibits --       08:27AM
 4              MR. MARTIN:  There is a Turner Kapp document.         08:27AM
 5              MS. MCCONWELL:  -- which have not been filed,         08:27AM
 6    which aren't there as part of the public -- in the public      08:27AM
 7    domain or the public record.  And these links are being sent   08:27AM
 8    to...I guess the world.  I mean --                             08:28AM
 9              THE COURT:  By who, do we know?                       08:28AM
10              MR. MARTIN:  That's --                                08:28AM
11              MS. MCCONWELL:  We don't know who's doing it.  We     08:28AM
12    don't know who is behind it.                                   08:28AM
13              MR. MCCONWELL:  E-mails have gone out.                08:28AM
14              MS. M. MILLER:  From who though?                      08:28AM
15              MS. MCCONWELL:  From a newsletter at                  08:28AM
16    hansen-helicopters.com.  I don't know.                         08:28AM
17              MS. M. MILLER:  So Your Honor, obviously we're        08:28AM
18    not hearing that anything confidential has been put out there  08:28AM
19    that could negatively influence or unfairly influence.  There  08:28AM
20    is not much we could do, you know, other than a gag order to   08:28AM
21    prevent there from being publications.  Mr. Martin said,       08:28AM
22    initially, there's nothing about you-all there that is         08:28AM
23    negative, then he said well there is something about you in    08:28AM
24    there, Ms. Miller, that is negative.  I have no idea --        08:28AM
25              THE COURT:  No, I think -- I'm not going -- well,     08:28AM
```

1    first of all, I'm not going to issue a gag order.                        08:28AM

2              MS. M. MILLER:  I don't think you can't.                       08:28AM

3              THE COURT:  I have to look specifically --                     08:28AM

4              MS. M. MILLER:  Right, right.                                  08:28AM

5              THE COURT:  -- justify that.                                   08:28AM

6              MS. M. MILLER:  Right, right.                                  08:28AM

7              THE COURT:  But what I think we can do --                      08:28AM

8              MS. M. MILLER:  Ask the jurors if they've seen                 08:29AM

9    it.                                                                      08:29AM

10             THE COURT:  I'll just do my regular questions,                 08:29AM

11   about any media contact and so forth.  I have that question.             08:29AM

12   And that they're to tell me immediately, and if they say                08:29AM

13   nothing, then that's fine, we just leave it at that.  But in             08:29AM

14   the meantime, you guys can investigate this, look at it                  08:29AM

15   carefully both sides.                                                    08:29AM

16             MS. M. MILLER:  Absolutely.                                    08:29AM

17             THE COURT:  But I don't want to be looking for                 08:29AM

18   something myself.  I don't -- you know, unless there is                  08:29AM

19   something that you show me right now that is egregious, like             08:29AM

20   something sealed has now been published, that would concern              08:29AM

21   me.                                                                      08:29AM

22             MR. MARTIN:  Well, let's say -- for example,                   08:29AM

23   Judge, we know that we've been advised -- I don't want to say            08:29AM

24   now, we have been advised that this has been forwarded to                08:29AM

25   various boat companies that have contracts with Mr. Walker.              08:29AM

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | THE COURT:  Oh, currently? | 08:29AM |
| 2 | MR. MARTIN:  Currently, by e-mails.  And the only | 08:29AM |
| 3 | way they could have -- we believe the only way they could have | 08:30AM |
| 4 | gotten those e-mails would be off of exhibits that have been | 08:30AM |
| 5 | published in Court, because that's the only place I know that | 08:30AM |
| 6 | they there are unless they're in a court filing. | 08:30AM |
| 7 | MS. MCCONWELL:  Which I don't believe they are. | 08:30AM |
| 8 | MR. MARTIN:  This is an extensive website.  I | 08:30AM |
| 9 | haven't looked at all of it. | 08:30AM |
| 10 | THE COURT:  Well, how many employees are | 08:30AM |
| 11 | currently working for Hansen Helicopters? | 08:30AM |
| 12 | MR. MARTIN:  Well, however many -- however many | 08:30AM |
| 13 | helicopters there are. | 08:30AM |
| 14 | MS. MCCONWELL:  I don't know because we have W-2 | 08:30AM |
| 15 | and then there'd be potentially 1099. | 08:30AM |
| 16 | THE COURT:  Okay, so what, 10, 20, 100?  I mean | 08:30AM |
| 17 | it could be an inside job too, somebody is disgruntled. | 08:30AM |
| 18 | MR. MARTIN:  I'm not saying that it isn't, Your | 08:30AM |
| 19 | Honor, I'm just saying we found it, it was a concern. | 08:30AM |
| 20 | THE COURT:  Yeah, of course. | 08:30AM |
| 21 | MR. MARTIN:  We wanted to bring to your attention | 08:30AM |
| 22 | first. | 08:30AM |
| 23 | THE COURT:  Totally understand. | 08:30AM |
| 24 | MR. MARTIN:  And then get the prosecution | 08:30AM |
| 25 | involved.  We'd like for it be stopped.  It's, you know, | 08:30AM |

*Direct - Khamvongsa*

1    totally inappropriate and there is nothing in there --    08:30AM

2              MS. MCCONWELL:  He didn't mean there was anything    08:30AM

3    in there negative about you, Marie.    08:30AM

4              MR. MARTIN:  No.    08:30AM

5              THE COURT:  This is my point, I think you guys    08:30AM

6    have got to do your due diligence and investigate it, file a    08:31AM

7    motion.  If you want me to issue an order, just file it and    08:31AM

8    I'll look at it, both parties can -- I don't want, of course    08:31AM

9    understanding amendment laws.    08:31AM

10             MR. MARTIN:  The problem is, who do we issue an    08:31AM

11   order against?    08:31AM

12             THE COURT:  I don't know, because I don't even    08:31AM

13   know what the issue is, so you guys have to tell me what the    08:31AM

14   problem is.  You're upset because -- and rightly so, because    08:31AM

15   this is coming out.  But the question is, what is the real    08:31AM

16   issue for me to act upon?  So unless and until you tell me    08:31AM

17   what it is, I can't do anything.  But I will out of abundance    08:31AM

18   of caution just talk to the jurors, not alert them to    08:31AM

19   anything.  I'll just say, hey, just wanted to go back to my    08:31AM

20   long instruction about making sure that you decide this case    08:31AM

21   solely on the evidence before you.    08:31AM

22             MR. MARTIN:  My concern, Judge, and the reason I    08:31AM

23   brought it to your attention, not to blame anyone but my    08:31AM

24   concern is, make sure that this doesn't impact the validity of    08:31AM

25   any verdict in this case and I don't want to have to come back    08:31AM

1   at a later date.  I want to try to be proactive on it and          08:32AM

2   that's why I brought it to everybody's attention.                  08:32AM

3            THE COURT:  No, so I appreciate that.  I think            08:32AM

4   we're fine, but you have to investigate it.  You have to look      08:32AM

5   at it carefully and see if there is any violation.  And if         08:32AM

6   there is anything that the Court has the authority to do, I'll     08:32AM

7   look at that.  Okay?                                               08:32AM

8            MS. M. MILLER:  Yes.                                      08:32AM

9            MR. MARTIN:  Sure.                                        08:32AM

10           THE COURT:  Yeah, so you guys just have to do             08:32AM

11  your due diligence, both sides.  I think both sides because        08:32AM

12  prosecution should find out if there is anybody doing anything     08:32AM

13  to sabotage your own case.  I have no idea.  This is like a        08:32AM

14  whole... looks like somebody is really definitely looking at       08:32AM

15  this case.                                                         08:32AM

16           MR. MARTIN:  I mean --                                    08:32AM

17           THE COURT:  It's a whole website for this.                08:32AM

18           MR. MARTIN:  It looks like it's some type of an           08:32AM

19  aviation -- if you go to the very top, it looks like it's some     08:32AM

20  type of an aviation industry update and that's --                  08:32AM

21           THE COURT:  I don't know anything about the               08:32AM

22  aviation world but is that -- is that --                           08:32AM

23           MR. MARTIN:  That is not -- apparently that is            08:32AM

24  not a --                                                           08:33AM

25           THE COURT:  Standard?  Commonly known?                    08:33AM

```
 1                    MR. MARTIN:  It doesn't exist.              08:33AM

 2                    THE COURT:  Oh, okay.                        08:33AM

 3                    MS. MCCONWELL:  The Aeronavigator doesn't exist  08:33AM

 4       either.                                                  08:33AM

 5                    MR. MARTIN:  It's just something somebody made  08:33AM

 6       up.                                                      08:33AM

 7                    MS. MCCONWELL:  Aeronavigator Advocacy       08:33AM

 8       Association doesn't exist.                               08:33AM

 9                    THE COURT:  Oh, Aeronavigator media release,  08:33AM

10       whoever that is.  Yeah, and we could always look at -- I mean  08:33AM

11       you could always ask to look at who's zooming in on the trial.  08:33AM

12       We have a list -- I could -- I could tell ask Chuck.  You guys  08:33AM

13       can look at my listing.  I have an idea like who -- but that  08:33AM

14       doesn't mean that they're telling the truth either.      08:33AM

15                    MR. MARTIN:  Anybody could put down Bill Smith  08:33AM

16       and watch.                                               08:33AM

17                    THE COURT:  If they're trying to be deceptive,  08:33AM

18       they're --                                               08:33AM

19                    MS. MCCONWELL:  Could we find out who accesses  08:33AM

20       our case on PACER or gets documents?                     08:33AM

21                    THE COURT:  We could check.  Is that public  08:33AM

22       record?                                                  08:33AM

23                    MS. MCCONWELL:  I have no idea.  I highly doubt  08:33AM

24       it.  We don't run PACER out of here, you know it's like --  08:33AM

25                    THE COURT:  It's run out of DC.  I don't even  08:34AM
```

*Direct - Khamvongsa*

1    know if it's out of DC but it's administrative office.  It's a          08:34AM
2    good question.  We could find out.  I can look but... but,             08:34AM
3    okay, so let me call -- we'll call the jurors in and how much          08:34AM
4    time do you need with your next --                                      08:34AM
5              MS. M. MILLER:  It'll probably be a half hour.               08:34AM
6              THE COURT:  Okay.  Let's do it.                               08:34AM
7              MS. M. MILLER:  And Your Honor, before we go in,             08:34AM
8    one thing that I will ask, just to allow this to go much more          08:34AM
9    smoothly so that we can finish this week, when there is an             08:34AM
10   objection, I would like, first of all, the privilege of being          08:34AM
11   able to finish my question, then if Counsel will say                   08:34AM
12   objection, and state the legal basis only of the objection,           08:34AM
13   that will then give me an opportunity to respond to the legal         08:34AM
14   basis only of the objection.  But if Counsel stands up and            08:34AM
15   starts with a long-speaking objection, then I'm put in a              08:34AM
16   position of having to respond.  And one example that I think          08:34AM
17   really stands out to me is a comment made by Mr. Martin that          08:34AM
18   Jon Walker did not produce Exhibit 829 to the government.  And        08:34AM
19   that wasn't true, because 829 was in fact an attachment to an         08:35AM
20   ECF that was signed by Mr. Martin on behalf of Jon Walker.  So        08:35AM
21   once he makes that comment in the presence of the jury and the        08:35AM
22   jury hears that comment, he's attacking my credibility as an          08:35AM
23   officer of the Court.  When I ask the question, a document            08:35AM
24   that the defendant themselves provided to the government and          08:35AM
25   to the Court that we should be able to rely on if it was              08:35AM

```
 1    provided by them as an officer of the Court.                    08:35AM

 2              But then to not allow me to respond to correct         08:35AM

 3    it, or more importantly, not be able to establish that what      08:35AM

 4    Mr. Martin said was absolutely not correct or true, creates a    08:35AM

 5    problem for the prosecution.  So I think to avoid this and       08:35AM

 6    it's on both sides, when they do their cross-examination, I      08:35AM

 7    will object.  I will state the legal basis for my objection      08:35AM

 8    and I will stop and then they could respond and Your Honor can   08:36AM

 9    rule.                                                            08:36AM

10              THE COURT:  I agree it is for both sides, but I        08:36AM

11    will say this that when you guys start saying, well, it was a    08:36AM

12    filed documents, sometimes I don't know if I struck any part     08:36AM

13    of it.  So we have to go back and look at it, you know.  I       08:36AM

14    mean, it takes a while.  There's lots and lots of document       08:36AM

15    filed here, so I don't want to sit there and get into a          08:36AM

16    investigation into all this.  That's why I say, okay, I don't    08:36AM

17    need to hear that, let's move on.  And that's why I may cut      08:36AM

18    you off.  But I do agree that, you know, you could -- Counsel    08:36AM

19    could say, well, it has been previously provided or it hasn't    08:36AM

20    been and you could say it's previously provided in other filed   08:36AM

21    documents.  You could say that.  But we don't have to get into   08:36AM

22    like -- because the jurors are like what, what are they          08:36AM

23    talking about?                                                   08:36AM

24              MR. MARTIN:  Your Honor, I want the record to          08:36AM

25    reflect the document she's talking about was attached to an      08:36AM
```

1    e-mail to Rufus Crowe.                                        08:36AM

2              MS. M. MILLER:  No.                                 08:36AM

3              MR. MARTIN:  Just because I attached it, if I       08:36AM

4    did, I don't remember attaching it, to a pleading in our case, 08:36AM

5    doesn't mean Mr. Walker produced it.  And I take issue with   08:36AM

6    her representing I did something, when if Mr. Crowe does       08:37AM

7    something or Mr. Lujan does something on his behalf, that      08:37AM

8    doesn't mean Jon Walker.                                       08:37AM

9              THE COURT:  Okay.  So rather than get into the      08:37AM

10   intricacies and the complexities of that situation, because he 08:37AM

11   says he's got his defense, you say you got -- because I don't  08:37AM

12   want to sit there and investigate this.  This is like a side   08:37AM

13   issue for me.  You know, it's just a distraction.  And so you  08:37AM

14   may be right, you may be wrong.  I don't know.  Because I      08:37AM

15   don't want to sit here and rule on that.                       08:37AM

16             But my point is, I agree, let the person make       08:37AM

17   their objection and then if you feel -- if you feel there is   08:37AM

18   an objection, you could stand up, so I could tell the witness  08:37AM

19   don't answer.  And usually, sometimes the witnesses want to    08:37AM

20   answer, just slip it in or sometimes if I say just don't       08:37AM

21   answer, let's listen to the question, then let me hear the     08:37AM

22   objection.  Let's do it that way.                              08:37AM

23             MS. M. MILLER:  And also, Your Honor,                08:37AM

24   Ms. McConwell continually objects on the basis of form.  Form  08:37AM

25   is not a valid legal objection to a question in a criminal     08:37AM

1    trial.  If she needs to object, is it relevance?  Is it          08:38AM

2    leading, is it speculation?  Form is an objection that's made     08:38AM

3    in a civil deposition to preserve a ruling at a later date,       08:38AM

4    but it is an inappropriate legal basis.  And if the Ninth         08:38AM

5    Circuit looks at this, that objection means nothing.  So it       08:38AM

6    needs to be an objection based on one of the rules of the         08:38AM

7    federal rules of evidence that say, you can't lead, unless        08:38AM

8    it's foundational, hearsay, relevance; that kind of thing.        08:38AM

9            MR. MARTIN:  Your Honor, I'll object for whatever         08:38AM

10   basis I feel.  If I feel like I'll need to object on behalf of    08:38AM

11   my client and if it I think it's form, I'm going do it in         08:38AM

12   spite of the lecture.                                             08:38AM

13           THE COURT:  Okay.  Let me say, all right, I don't         08:38AM

14   necessarily disagree with Ms. Martin -- I mean Ms. Miller, but    08:38AM

15   let's just say, if they want to make on objection on form, let    08:38AM

16   them do it.  And I'll just -- if they want to preserve it,        08:38AM

17   that's fine.                                                      08:38AM

18           MS. M. MILLER:  But here's the problem --                 08:38AM

19           THE COURT:  Whether it's appropriate or not --            08:39AM

20           MS. M. MILLER:  How do I respond to an objection          08:39AM

21   based on form?                                                    08:39AM

22           THE COURT:  But basically, her only -- those              08:39AM

23   objections were like, look, it really doesn't apply to me and     08:39AM

24   my client, it doesn't apply to Hansen Helicopters, but I just     08:39AM

25   want to place on the record that -- she's concerned about --      08:39AM

*Direct - Khamvongsa*

```
 1    like a concern I thought was legitimate was the redaction of      08:39AM
 2    private materials of third-party custodian.                        08:39AM
 3              MS. M. MILLER:  And we have no objection to that         08:39AM
 4    but that is not a form objection.                                  08:39AM
 5              THE COURT:  Okay.  So however -- however it's            08:39AM
 6    stated, I got it.  Sometimes a judge could say, okay, it may       08:39AM
 7    not have been stated the way it should be, but I got it.           08:39AM
 8              MS. M. MILLER:  But it is the parties'                   08:39AM
 9    responsibility to preserve the record for their client.  And      08:39AM
10    if they don't know how, that's their problem, No. 1.  No. 2 --    08:39AM
11    No. 2, we know we have preserved the issue of alter ego --        08:39AM
12    excuse me, if you don't want me talking over you, you have to     08:39AM
13    give me the same privilege.                                        08:39AM
14              THE COURT:  Okay.  You guys, we have to hurry up         08:39AM
15    because the jurors have been waiting.  Let's go.                   08:39AM
16              MS. M. MILLER:  No. 2, she's already stated these        08:39AM
17    counts aren't against my client a thousand times.  The jury       08:40AM
18    knows that.  You'll instruct them.  However, if it's not          08:40AM
19    against her client and you've asked -- been asked and you've      08:40AM
20    given that instruction over and over again, she shouldn't be      08:40AM
21    objecting.  She shouldn't be objecting anyway because she's       08:40AM
22    not going to do the cross-examination, Mr. McConwell is.  But     08:40AM
23    you've given them that privilege, fine, no problem.               08:40AM
24              THE COURT:  I'll give it to both you guys --             08:40AM
25              MS. M. MILLER:  But she should not be objecting          08:40AM
```

| | |
|---|---|
| 1 | if the counts do not apply to her client, which they don't. | 08:40AM |
| 2 | However, here's the other issue that's come up in this case | 08:40AM |
| 3 | which is very unusual:  We have a witness, his role in this | 08:40AM |
| 4 | case is the conspiracy to commit wire fraud, we all know or | 08:40AM |
| 5 | should know that underlying a wire fraud is another fraud, a | 08:40AM |
| 6 | criminal violation that underlies the transfer of money from | 08:40AM |
| 7 | one place to another.  We have alleged repeatedly in our | 08:40AM |
| 8 | superseding indictment and in all of our argument that Hansen | 08:41AM |
| 9 | Helicopters is a key actor here.  So we're just -- we're | 08:41AM |
| 10 | creating a very muddy record with objections that are not | 08:41AM |
| 11 | valid and -- anyway, so my whole point is this, Your Honor, | 08:41AM |
| 12 | let me finish a question, there is an objection. | 08:41AM |
| 13 | THE COURT:  Well, I think it goes to both. | 08:41AM |
| 14 | MS. M. MILLER:  Both sides. | 08:41AM |
| 15 | THE COURT:  I will say I agree with that.  Now on | 08:41AM |
| 16 | her -- you want to speak on your behalf, Ms. McConwell? | 08:41AM |
| 17 | MS. MCCONWELL:  Well, I didn't make one form | 08:41AM |
| 18 | objection yesterday. | 08:41AM |
| 19 | MS. M. MILLER:  You did, but that's in the | 08:41AM |
| 20 | record. | 08:41AM |
| 21 | MS. MCCONWELL:  I don't recall saying I object to | 08:41AM |
| 22 | the form of the question in any of my objections, but -- | 08:41AM |
| 23 | THE COURT:  Okay.  Well, putting that aside -- | 08:41AM |
| 24 | MS. MCCONWELL:  I said foundation plenty of | 08:41AM |
| 25 | times, and so I hear what your comment is and I hear what your | 08:41AM |

```
 1   concern is, but we have a duty to represent our client.          08:41AM
 2            MS. M. MILLER:  No doubt.                                08:41AM
 3            MS. MCCONWELL:  And you interjected Hansen               08:41AM
 4   Helicopters repeatedly to counts we're not involved in so...     08:41AM
 5            THE COURT:  Yeah, you guys, just focus on your           08:41AM
 6   own objections and let's focus on civility in the courtroom.     08:41AM
 7   I think that's what counts.  And we will get this trial done     08:42AM
 8   with.                                                            08:42AM
 9            MR. MARTIN:  So we --                                    08:42AM
10            MS. M. MILLER:  This week?                               08:42AM
11            MR. MARTIN:  Could we ask you-all advise your           08:42AM
12   witness that if he sees us stand up, to avoid answering the      08:42AM
13   question so that we don't have to -- he gets in a hurry.         08:42AM
14            MS. M. MILLER:  Well, I think part of it is just        08:42AM
15   his personality.                                                 08:42AM
16            MR. MARTIN:  Could you ask him?                          08:42AM
17            MS. M. MILLER:  There are also times, Mack, when        08:42AM
18   you stand up and you don't object and you change your mind and   08:42AM
19   sit down.  I'm not going to tell my witness to stop talking      08:42AM
20   every time you stand up.  If you have an objection, let me       08:42AM
21   finish my question.  First of all, I have to be able to finish   08:42AM
22   my question.                                                     08:42AM
23            THE COURT:  I think that goes to all of you.            08:42AM
24            MS. M. MILLER:  -- hear my question then stand up       08:42AM
25   and say objection, as opposed to --                              08:42AM
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | MR. MARTIN: Marie, I'm asking can you ask your | 08:42AM |
| 2 | witness, if he sees me stand, to not answer until -- | 08:42AM |
| 3 | THE COURT: You know what, I will tell the | 08:42AM |
| 4 | witness that. It's probably better it comes from the Judge. | 08:42AM |
| 5 | MR. MARTIN: Fine. | 08:42AM |
| 6 | THE COURT: But, yeah, I mean it's not that he's | 08:42AM |
| 7 | that guilty all the time but he does get a little excitable. | 08:42AM |
| 8 | MS. M. MILLER: It's his personality. And he's | 08:42AM |
| 9 | also focusing on me, he's looking at the jury. And like I | 08:43AM |
| 10 | said, there have been moments when both of them have stood up | 08:43AM |
| 11 | and then they changed their mind and they sit down, and I -- | 08:43AM |
| 12 | we want to get this case tried and we want to get moving. | 08:43AM |
| 13 | THE COURT: Team, we're almost there. | 08:43AM |
| 14 | MS. M. MILLER: Let's go in and do it. | 08:43AM |
| 15 | THE COURT: We don't want any issues. | 08:43AM |
| 16 | MS. M. MILLER: No. | 08:43AM |
| 17 | THE COURT: We don't want COVID. | 08:43AM |
| 18 | MS. M. MILLER: Lord no. | 08:43AM |
| 19 | THE COURT: Lord no, please. | 08:43AM |
| 20 | MS. M. MILLER: Lord no. | 08:43AM |
| 21 | THE COURT: We don't want any what's that, not | 08:43AM |
| 22 | deviant. It's not deviant. | 08:43AM |
| 23 | MS. MCCONWELL: Variant. | 08:43AM |
| 24 | THE COURT: Variant. Not deviant. | 08:43AM |
| 25 | MS. M. MILLER: Oh, COVID variant. | 08:43AM |

*Direct - Khamvongsa*

```
 1                 THE COURT:  We don't need another variant.           08:43AM

 2                 MS. M. MILLER:  Or Monkey Pox.  I don't know what     08:43AM

 3      Monkey Pox even is.                                              08:43AM

 4                 MR. MCCONWELL:  You don't want to go to the           08:43AM

 5      definitions.                                                     08:43AM

 6                 THE COURT:  I was on a trip with my child -- my       08:43AM

 7      grandchild and they thought he might have Monkey Pox but he      08:43AM

 8      didn't have it.                                                  08:43AM

 9                 MS. M. MILLER:  I don't even know what it is.         08:43AM

10                 MS. MCCONWELL:  Google it.  So I do have one          08:43AM

11      question -- from Hansen Helicopters, I mean we want the phone    08:43AM

12      numbers, e-mails and then I think we're taking care of the      08:44AM

13      bank records redacted, because the only way this stuff gets     08:44AM

14      out there is because of what's in -- what exhibits that have    08:44AM

15      been -- in this trial.                                          08:44AM

16                 THE COURT:  Let me say this, because we don't        08:44AM

17      know who's doing this, we don't know how they're getting this   08:44AM

18      information, but to the extent that you want me to do           08:44AM

19      something, you guys tell me what needs to be done, what you     08:44AM

20      find, so put it in a motion.                                    08:44AM

21                 MS. MCCONWELL:  Okay, I will do that.                 08:44AM

22                 THE COURT:  Just do that.  In the meantime, I        08:44AM

23      will check about if it's public record about CM/ECF which I     08:44AM

24      doubt, but who knows, but it is public accessible.  And then    08:44AM

25      we'll take it from there.  To the extent that if you want to    08:44AM
```

| | |
|---|---|
| 1 | have access to who Zooms in every day? | 08:44AM |
| 2 | MS. MCCONWELL:  I didn't even know if Zoom was | 08:44AM |
| 3 | supposed to be recorded. | 08:44AM |
| 4 | THE COURT:  It's not recorded. | 08:44AM |
| 5 | MS. MCCONWELL:  But someone who watches it may | 08:44AM |
| 6 | record it. | 08:44AM |
| 7 | THE COURT:  They're not supposed to. | 08:44AM |
| 8 | MS. M. MILLER:  How can the Judge control that? | 08:44AM |
| 9 | THE COURT:  They're not supposed to record it and | 08:45AM |
| 10 | republish it, that's the thing.  That's against the federal | 08:45AM |
| 11 | stuff.  But you know what, who knows what people do.  They do | 08:45AM |
| 12 | whatever the hell they want. | 08:45AM |
| 13 | MR. MCCONWELL:  Even on PACER, I don't think you | 08:45AM |
| 14 | can reproduce it and use it like that. | 08:45AM |
| 15 | THE COURT:  I don't know.  I have to ask my IT | 08:45AM |
| 16 | guys, do you know?  Could they record -- they can't record? | 08:45AM |
| 17 | (Discussion with law clerk.) | 08:45AM |
| 18 | THE COURT:  They could screenshot it, who knows. | 08:45AM |
| 19 | I don't know, but we'll work with you. | 08:45AM |
| 20 | MR. MARTIN:  We don't have where this is -- who | 08:45AM |
| 21 | sets this up, where it's coming from, the IP address; things | 08:45AM |
| 22 | like that. | 08:45AM |
| 23 | THE COURT:  Let me just say, to the extent that | 08:45AM |
| 24 | there needs to be an investigation, you got to put it in a | 08:45AM |
| 25 | motion and if I have to ask FBI or whoever or even my own IT | 08:45AM |

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | people, I'll do that. | 08:45AM |
| 2 | But just put it in writing because I can't speak | 08:45AM |
| 3 | -- just speak out of nowhere. | 08:45AM |
| 4 | MR. MCCONWELL:  Given Mr. Boler's involvement | 08:46AM |
| 5 | with SEIT and manager involved in this case. | 08:46AM |
| 6 | THE COURT:  Who is this? | 08:46AM |
| 7 | MR. MCCONWELL:  Mike Boler.  He was supposed to | 08:46AM |
| 8 | be a witness, him and Dymock were supposed to be witnesses for | 08:46AM |
| 9 | SEIT. | 08:46AM |
| 10 | THE COURT:  Okay. | 08:46AM |
| 11 | MR. MCCONWELL:  Given their reference in e-mails, | 08:46AM |
| 12 | say e-mail them, that caused me some serious concern because I | 08:46AM |
| 13 | have some opinions about the SEIT team and practices in | 08:46AM |
| 14 | general, but that opens up a lot of -- terrible questions. | 08:46AM |
| 15 | THE COURT:  But you guys can all have your own | 08:46AM |
| 16 | theories and your own suspicions -- | 08:46AM |
| 17 | MS. M. MILLER:  Right. | 08:46AM |
| 18 | THE COURT:  Yeah, it's okay, it's understandable. | 08:46AM |
| 19 | You guys have been living and breathing this case, but the | 08:46AM |
| 20 | question is what evidence you have, if you have it, send it to | 08:46AM |
| 21 | me and I'll act on it.  Okay, we'll call the jury in. | 08:46AM |
| 22 | MS. M. MILLER:  Thank you, Your Honor. | 08:46AM |
| 23 | (Off the record at 8:46 a.m.) | 08:46AM |
| 24 | (Back on the record at 8:52 a.m.) | 08:46AM |
| 25 | THE CLERK:  Good morning, Your Honor.  This is | 09:11AM |

*Direct - Khamvongsa*

```
 1   Criminal Case No. -- I'm sorry, one moment.                    09:11AM

 2              (Feedback.)                                         09:11AM

 3              THE CLERK:  Criminal Case No. 18-00010, *United*    09:11AM

 4   *States of America v. John D. Walker* and Hansen Helicopters;  09:11AM

 5   Jury Trial, Day 29.                                            09:11AM

 6              Counsel, please state your appearances, beginning   09:11AM

 7   with the government.                                           09:11AM

 8              MR. LEON GUERRERO:  *Buenas* and *hafa adai*, Your  09:11AM

 9   Honor, Stephen Leon Guerrero on behalf of the United States.   09:11AM

10   Also present are Special Assistant U.S. Attorneys Marie Miller 09:11AM

11   and Samantha Miller for the government.                        09:11AM

12              MS. M. MILLER:  *Hafa adai*, Your Honor.            09:11AM

13              MS. S. MILLER:  Hi.                                 09:11AM

14              MR. MARTIN:  Morning, Your Honor, Mack Martin       09:11AM

15   appearing with Jon Walker who's also present.                  09:11AM

16              THE COURT:  Good morning, Mr. Walker and            09:11AM

17   Mr. Martin.                                                    09:11AM

18              MR. MCCONWELL:  Good morning, Your Honor, Edward    09:11AM

19   McConwell, Laura McConwell and Edward Han for Hansen           09:11AM

20   Helicopters.  Is my mic working okay?                          09:11AM

21              THE COURT:  What's that?                            09:11AM

22              MR. MCCONWELL:  Is my mic going to work okay?       09:11AM

23              THE COURT:  Oh, yes, you sound very nice.  And      09:11AM

24   then Mr. Han, yes.  Good morning, everyone.  Okay.  So we just 09:12AM

25   had a slight delay.  We had to take care of a legal matter     09:12AM
```

```
 1    which we'll continue a little later and we'll go ahead and          09:12AM
 2    call in the jurors at this time.                                    09:12AM
 3              And, Ms. Miller, how much time do you have with           09:12AM
 4    this witness?                                                       09:12AM
 5              MS. M. MILLER:  Half an hour, Your Honor.                 09:12AM
 6              THE COURT:  Half an hour.  Anything further?              09:12AM
 7    Yes, Mr. Martin?                                                    09:12AM
 8              MR. MARTIN:  Your Honor, were you going to                09:12AM
 9    instruct the witness about objections?                             09:12AM
10              THE COURT:  Oh, right.  So, yeah, so I'm going to         09:12AM
11    instruct you as well as all other witnesses, if the defense        09:12AM
12    Counsels stand up, that means they're getting ready with an        09:12AM
13    objection so just don't answer until I tell you it's okay.         09:12AM
14              THE WITNESS:  Yes, ma'am.  Yes, Your Honor.               09:12AM
15              THE COURT:  Because the prosecution needs to             09:12AM
16    hear -- well she needs to -- well in this case, the prosecutor     09:12AM
17    needs to state the question, then the defense need to              09:12AM
18    formulate the objection.  Then -- and then I need to rule on       09:12AM
19    it, then I could just tell what to answer.                         09:12AM
20              THE WITNESS:  My apologies.  I was so focused on          09:12AM
21    the jury, I didn't see it so...                                    09:12AM
22              THE COURT:  Don't worry about it.  We'll follow          09:12AM
23    protocol here.  Okay, we'll call in the jury.                      09:13AM
24              (Jury in at 9:13 a.m.)                                   09:13AM
25              THE COURT:  Please be seated.  *Hafa adai*.  Good        09:13AM
```

*Direct - Khamvongsa*

morning, everyone.  How are we doing, ladies and gentlemen? `09:13AM`

All right.  I apologize for the delay, I had to work on some `09:13AM`

legal issues with the lawyers and we just completed it and it `09:13AM`

was important enough that I'm sorry I had to delay the trial `09:13AM`

for a little bit, but we are ready to proceed.  The United `09:13AM`

States Attorney, Ms. Miller, has indicated that she has about `09:13AM`

30 minutes left in direct examination of this witness.  You `09:13AM`

may proceed. `09:13AM`

        MS. M. MILLER:  Thank you, Your Honor. `09:13AM`

        THE COURT:  Okay. `09:13AM`

BY MS. M. MILLER: (CONTINUING) `09:13AM`

   Q.   Mr. Khamvongsa, Special Agent Khamvongsa, I `09:14AM`

apologize, and good morning, members of the jury.  Thank you `09:14AM`

for your patience.  Could you tell the members of the jury, do `09:14AM`

all the transactions that we discussed yesterday, both in the `09:14AM`

crime fraud -- crime -- I'm sorry, wire fraud counts and the `09:14AM`

money laundering counts, do they all exceed $10,000? `09:14AM`

   A.   Yes. `09:14AM`

   Q.   And do they all involve the movement of money `09:14AM`

interstate or internationally? `09:14AM`

        THE WITNESS:  Yes. `09:14AM`

BY MS. M. MILLER: (CONTINUING) `09:14AM`

   Q.   Could you tell the members of the jury what was the `09:14AM`

source of all of the funds for the counts in the Second `09:14AM`

Superseding Indictment regarding wire fraud and money `09:14AM`

*Direct - Khamvongsa*

1    laundering?                                                              09:14AM

2        A.    Leasing of the helicopters and pilots and mechanics.          09:14AM

3        Q.    I'd like to show you and the jury two exhibits that           09:14AM

4    were entered into evidence yesterday, one is Exhibit 750.  And          09:14AM

5    the other is Exhibit 31.  And to refresh your memory,                   09:14AM

6    Exhibit 750 is a letter that Jon Walker sent to the FAA in              09:14AM

7    2020 and Exhibit 31 is the Walker Agricola bank account.  May           09:14AM

8    I publish a portion of those two exhibits to the jury, Your             09:15AM

9    Honor?                                                                  09:15AM

10               THE COURT:  Right, that's fine.  Counsels, have             09:15AM

11   you been able to pull that?  And then are there any objections          09:15AM

12   to that?                                                                09:15AM

13               MS. M. MILLER:  They're both entered.                       09:15AM

14               THE COURT:  Oh, they're both entered?                       09:15AM

15               MS. M. MILLER:  Yes, Your Honor.                            09:15AM

16               THE COURT:  Go ahead and publish then.  Thank               09:15AM

17   you.                                                                    09:15AM

18               MS. M. MILLER:  Okay.                                       09:15AM

19   BY MS. M. MILLER:  (CONTINUING)                                         09:15AM

20       Q.    So, Special Agent Khamvongsa, could you tell the             09:15AM

21   members of the jury what do you see about the addresses used            09:15AM

22   both for the Walker Agricola bank account that the                      09:15AM

23   $7.5 million was moved into, and the address that was included          09:15AM

24   in the letter that Jon Walker sent to the FAA?                          09:15AM

25       A.    They both reflect 3561 Route C, Neosho, Missouri,            09:15AM

*Direct - Khamvongsa*

1    64850.  The same address.                                          09:15AM

2        Q.    Thank you, sir.  Now, can you tell the members of the    09:15AM

3    jury who issued all of the airworthiness certificates for          09:15AM

4    every single aircraft that was involved in the wire fraud and      09:15AM

5    money laundering counts?                                           09:15AM

6        A.    Mr. Cislo.                                               09:15AM

7        Q.    Where did the funds for the airplane that he received    09:15AM

8    come from?                                                         09:16AM

9        A.    The Caledonian agency Inc., bank account.                09:16AM

10       Q.    Who's the president of that business?                    09:16AM

11       A.    Mr. Jon Walker.                                          09:16AM

12       Q.    Who's the signer of that account for that business?      09:16AM

13       A.    Mr. Jon Walker.                                          09:16AM

14       Q.    Okay.  I'd like to show you what has been previously     09:16AM

15   entered into evidence as Exhibit 366.                              09:16AM

16              THE COURT:  Admitted as well?                           09:16AM

17              MS. M. MILLER:  It has been admitted, Your Honor.       09:16AM

18              MS. MCCONWELL:  I only have that certain pages          09:16AM

19   are admitted, I don't that the whole exhibit is admitted.         09:16AM

20              MS. M. MILLER:  And I have that the whole thing         09:16AM

21   has been admitted, Your Honor.                                     09:16AM

22              THE COURT:  All right.  366 in total.                   09:16AM

23              MS. M. MILLER:  You don't though --                     09:16AM

24              THE COURT:  Hold on, hold on.                           09:16AM

25              MS. M. MILLER:  So we'll lay the foundation.            09:16AM

*Direct - Khamvongsa*

```
 1              THE COURT:  All right.  Hold on, hold on.  Let's      09:16AM
 2     find out.  Carmen, what do we have?  366, has that been       09:16AM
 3     admitted?                                                     09:16AM
 4              THE CLERK:  I have pages only 2, 37 and 38, Your      09:16AM
 5     Honor.                                                        09:16AM
 6              THE COURT:  237 and 238 are the only --              09:16AM
 7              THE CLERK:  No, 2.                                    09:17AM
 8              THE COURT:  Oh, 37 and 38?                            09:17AM
 9              THE CLERK:  Yes.                                      09:17AM
10              THE COURT:  You want to check that, Ms. Miller?      09:17AM
11              MS. M. MILLER:  So what I will do, Your Honor, is    09:17AM
12     lay the foundation for the admission of the rest of the       09:17AM
13     documents.                                                    09:17AM
14              THE COURT:  Very well.                                09:17AM
15              MS. M. MILLER:  It could be that what we were        09:17AM
16     doing when it was first admitted was just covering those      09:17AM
17     pages.                                                        09:17AM
18              THE COURT:  And you want all --                       09:17AM
19              MS. M. MILLER:  All of it, yes, and we've already    09:17AM
20     laid the foundation, but if I need to lay it again, I can.    09:17AM
21              THE COURT:  Go ahead.                                 09:17AM
22              MS. M. MILLER:  Okay.                                 09:17AM
23     BY MS. M. MILLER: (CONTINUING)                                 09:17AM
24        Q.   Special Agent Khamvongsa, could you tell the members  09:17AM
25     of the jury what is this document?                            09:17AM
```

*Direct - Khamvongsa*

1    A.    (No response. )                                    09:17AM

2         MS. MCCONWELL:  I -- Your Honor, I don't know        09:17AM

3    that that's the proper way to lay the foundation just to say,  09:17AM

4    okay, what's the document?  I mean I think she needs to lay    09:17AM

5    the foundation with the admission of the rest pages she's      09:17AM

6    interested in without having him talk about the document.      09:17AM

7         THE COURT:  Okay.  Overruled.  Go ahead.  He's       09:17AM

8    not going to -- you can't talk about what it is, just do you   09:17AM

9    recognize it.  Okay.  Go ahead.                          09:17AM

10         MS. M. MILLER:  Thank you, Your Honor.              09:17AM

11   BY MS. M. MILLER: (CONTINUING)                           09:17AM

12   Q.    Could you please tell the members of the jury what is    09:17AM

13   this document, sir?                                      09:17AM

14   A.    This is an e-mail.                                 09:17AM

15   Q.    Okay.  And the attachments to the e-mail?          09:17AM

16   A.    Yes.                                               09:17AM

17   Q.    Okay.  And could you tell the members of the jury how    09:17AM

18   the government obtained this document?                   09:18AM

19   A.    This was obtained from the search warrant in       09:18AM

20   October 2016.                                            09:18AM

21   Q.    And is it a true and correct copy of what was      09:18AM

22   obtained via the search warrant?                         09:18AM

23   A.    Yes.                                               09:18AM

24         MS. M. MILLER:  Your Honor, at this time the        09:18AM

25   government would move into evidence the remainder of     09:18AM

| | |
|---|---|
| 1 | Exhibit 366. |
| 2 | THE COURT:  All right.  So for the record, what |
| 3 | is the remainder?  Can you tell me what that is? |
| 4 | MS. M. MILLER:  Yes, Your Honor, it is an e-mail |
| 5 | with attachments from Rufus Crowe at Hansen Helicopters. |
| 6 | THE COURT:  Right. |
| 7 | MS. M. MILLER:  To Tom Ferruzzo.  And it's dated |
| 8 | October 5, 2016 and the attachments include Hansen |
| 9 | Helicopter's information including aircraft information -- |
| 10 | THE COURT:  Okay.  I just need to know the |
| 11 | numbers, what is it? |
| 12 | MS. M. MILLER:  Oh, yeah, so the pages are |
| 13 | actually Page 1 through -- give me one second, Your Honor. |
| 14 | MS. MCCONWELL:  A 102 pages. |
| 15 | MS. M. MILLER:  I'm going to be using Pages 1 |
| 16 | through 98.  It's a 102 pages. |
| 17 | THE COURT:  But you only need 1 through 98? |
| 18 | MS. M. MILLER:  Yes. |
| 19 | THE COURT:  All right.  So prosecution is moving |
| 20 | only Pages 1 through 98 but there have been two other pages |
| 21 | that have already been previously admitted.  So no objections, |
| 22 | Counsels? |
| 23 | MR. MARTIN:  May I approach a minute and talk to |
| 24 | prosecution, Your Honor? |
| 25 | THE COURT:  Yes, you may. |

*Direct - Khamvongsa*

```
 1              (Pause. )                                    09:20AM

 2              MR. MARTIN:  No objection, Your Honor.       09:20AM

 3              THE COURT:  Ms. McConwell?                   09:20AM

 4              MS. MCCONWELL:  (No response.)               09:20AM

 5              THE COURT:  Bring your mic a little closer,  09:20AM

 6    please, to your -- yeah.  Okay.  There you go.  Go ahead.  09:20AM

 7    Yes?                                                   09:20AM

 8              MS. MCCONWELL:  Your Honor, I would ask that any  09:20AM

 9    sensitive information be redacted from the pages that are  09:20AM

10    going to be admitted.                                  09:21AM

11              THE COURT:  Okay.                            09:21AM

12              MS. MCCONWELL:  Based on our conversation    09:21AM

13    yesterday.  And with that, I'm assuming it is only admitted to  09:21AM

14    Mr. Walker, and not to Hansen Helicopters.             09:21AM

15              THE COURT:  Very well.  The Court then will admit  09:21AM

16    this exhibit, No. 366, Pages 1 through 98, without objection.  09:21AM

17    And with this proviso that any sensitive third-party   09:21AM

18    information be redacted and it's specifically as to    09:21AM

19    Mr. Walker.                                            09:21AM

20    (Exhibit 366-1 through 98 admitted.)                   09:21AM

21              MR. MCCONWELL:  Very well.                   09:21AM

22              THE COURT:  You may proceed.                 09:21AM

23              MS. M. MILLER:  May I publish Page 1, Your Honor?  09:21AM

24              THE COURT:  You may.                         09:21AM

25              MS. M. MILLER:  And, Ms. Miller, could you please  09:21AM
```

*Direct - Khamvongsa*

1    hone in on that first top portion?                        09:21AM

2    BY MS. M. MILLER:  (CONTINUING)                           09:21AM

3        Q.    Special Agent Khamvongsa, who is this e-mail from?  09:21AM

4        A.    It's from Mr. Crowe.                            09:21AM

5        Q.    And his e-mail address?                         09:21AM

6        A.    Rufus@hansenhelicopters.com.                    09:21AM

7        Q.    And who is it to?                               09:22AM

8        A.    Mr. Ferruzzo.                                   09:22AM

9        Q.    Okay.  And what is the date?                    09:22AM

10            THE WITNESS:  The date is October 5th, 2016.     09:22AM

11   BY MS. M. MILLER:  (CONTINUING)                           09:22AM

12       Q.    And there is a reference to attachments?        09:22AM

13       A.    Yes, several attachments.                       09:22AM

14       Q.    Okay.  And we're going go through those attachments.  09:22AM

15   First, can you please tell the jury, did you see other    09:22AM

16   evidence in this case that explained the purpose of this  09:22AM

17   communication?                                            09:22AM

18       A.    Yes.                                            09:22AM

19       Q.    What was it?                                    09:22AM

20       A.    It was another e-mail, this is in response -- all  09:22AM

21   this information is in response to requests as it relates to  09:22AM

22   purchase of Hansen Helicopters.                           09:22AM

23       Q.    Okay.  Was Hansen at this point trying to sell the  09:22AM

24   company?                                                  09:22AM

25       A.    Yes.                                            09:22AM

```
 1              MS. MCCONWELL:  Your Honor, this calls for        09:22AM
 2  speculation.                                                  09:22AM
 3              MS. M. MILLER:  Your Honor, it doesn't call --    09:22AM
 4              THE COURT:  Wait just a minute.  The objection is 09:22AM
 5  speculation?                                                  09:22AM
 6              MR. MARTIN:  The -- he's testified as to his      09:22AM
 7  interpretation of an e-mail, Your Honor.  And our objection is 09:22AM
 8  speculation.                                                  09:22AM
 9              MS. M. MILLER:  Your Honor --                     09:22AM
10              THE COURT:  Okay.  Wait, wait.  Are there any     09:22AM
11  other objections?                                             09:22AM
12              MR. MARTIN:  No, Your Honor.                      09:22AM
13              THE COURT:  Ms. McConwell?                        09:22AM
14              MS. MCCONWELL:  (Shook head.)  No.                09:23AM
15              THE COURT:  Okay.  Yes?                           09:23AM
16              MS. M. MILLER:  Yes, Your Honor, it's not        09:23AM
17  speculation.  What he referenced is there other evidence that 09:23AM
18  has already been introduced that shows that this e-mail is in 09:23AM
19  response to another e-mail requesting information about       09:23AM
20  purchasing Hansen.  If we need to go back --                  09:23AM
21              THE COURT:  I'm sorry?                            09:23AM
22              MS. M. MILLER:  -- to that other document, we     09:23AM
23  can.                                                          09:23AM
24              THE COURT:  I think you need to do that.          09:23AM
25  Objection will be sustained.  And the objection will be       09:23AM
```

*Direct - Khamvongsa*

sustained and the jurors are to disregard the last question, 09:23AM

last answer.  But if you need to go back, go back and do it 09:23AM

that way. 09:23AM

          MS. M. MILLER:  We will. 09:23AM

          MS. MCCONWELL:  And the colloquy which we 09:23AM

discussed which we weren't going to be doing. 09:23AM

          THE COURT:  I'm sorry?  Which one? 09:23AM

          MS. MCCONWELL:  I thought we all had an agreement 09:23AM

we weren't going to be make long speaking objections and 09:23AM

responses. 09:23AM

          THE COURT:  Okay. 09:23AM

          MS. M. MILLER:  Well, Your Honor, that was not a 09:23AM

long speaking objection.  I'm trying to -- 09:23AM

          THE COURT:  Right now it's long enough.  Hey, 09:23AM

let's go.  Move on.  I already made my ruling.  Let's go by 09:23AM

the rules, team. 09:23AM

          MS. M. MILLER:  Yup. 09:23AM

          THE COURT:  Wow.  I came back on Saturday, Sunday 09:23AM

night from a long trip to Washington, D.C. and I came in 09:24AM

Monday morning, I feel like I never left you.  I should be jet 09:24AM

lagged. 09:24AM

          MS. M. MILLER:  You're not though. 09:24AM

          THE COURT:  I know.  I feel like I should be but 09:24AM

go ahead. 09:24AM

          MS. M. MILLER:  It's easier not to be coming 09:24AM

*Direct - Khamvongsa*

1    here.  It's harder when you go stateside.                    09:24AM

2    BY MS. M. MILLER: (CONTINUING)                              09:24AM

3        Q.   So we're going to look at Exhibit 425, Your Honor,  09:24AM

4    which has already been entered into evidence.  And Special   09:24AM

5    Agent Khamvongsa, could you please tell the members of the   09:24AM

6    jury, what do you see here in terms of who this e-mail is     09:24AM

7    from?                                                        09:24AM

8        A.   It's from Mr. Ferruzzo.                             09:24AM

9        Q.   And is that the same gentleman we just saw on the   09:24AM

10   e-mail on Exhibit 366?                                       09:24AM

11       A.   Yes.                                                09:24AM

12       Q.   And who is it to?                                   09:24AM

13       A.   It's to Mr. Crowe.                                  09:24AM

14       Q.   And who is copied on this e-mail?                   09:24AM

15       A.   Mr. Walker and Mr. Ferruzzo and a Ms. Aragon.       09:24AM

16       Q.   And subject?                                        09:24AM

17       A.   Subject is Hansen Helicopters.                      09:24AM

18           MS. M. MILLER:  Okay.  And Ms. Miller, can you       09:24AM

19   hone in on the request there.  And, Special Agent Khamvongsa, 09:25AM

20   can you tell the members of the jury is this the communication 09:25AM

21   that you were referencing when you were describing what       09:25AM

22   Exhibit 366 was responding to?                               09:25AM

23           THE WITNESS:  Yes.                                   09:25AM

24           MS. M. MILLER:  So, Ms. Miller, can we go back to    09:25AM

25   Exhibit 366 now.  Thank you.                                 09:25AM

*Direct - Khamvongsa*

1    BY MS. M. MILLER:  (CONTINUING)                        09:25AM

2        Q.   Okay.  Now we're back at Exhibit 366, let's start   09:25AM

3    looking at the attachments.                            09:25AM

4             MS. M. MILLER:  First, Ms. Miller, can you go to   09:25AM

5    Page 2 of Exhibit 366?                                 09:25AM

6    BY MS. M. MILLER:  (CONTINUING)                        09:25AM

7        Q.   And, Special Agent Khamvongsa, can you please tell   09:25AM

8    the members of the jury what we're seeing on Page 2?   09:25AM

9        A.   We're seeing the corporate structure for the   09:25AM

10   corporations listed on the documents, similar to 829.   09:26AM

11       Q.   Okay.                                         09:26AM

12       A.   Exhibit 829.                                  09:26AM

13            MS. M. MILLER:  And then could you please go to   09:26AM

14   Page 3, Ms. Miller.  Just Page 3 for now.              09:26AM

15            MS. S. MILLER:  Sorry.                        09:26AM

16            MS. M. MILLER:  No, it's okay.  Perfect.  And,   09:26AM

17   Ms. Miller, is there a way to highlight all of it except for   09:26AM

18   the white board on the bottom?  Yup, perfect.          09:26AM

19   BY MS. M. MILLER:  (CONTINUING)                        09:26AM

20       Q.   And could you tell the members of the jury what we're   09:26AM

21   seeing here that was attached to the e-mail from Mr. Crowe to   09:26AM

22   Mr. Ferruzzo?                                          09:26AM

23       A.   This is the fleet of helicopters owned and controlled   09:26AM

24   by Hansen Helicopters.                                 09:26AM

25       Q.   Okay.  Now can we -- and by the way, this list of   09:26AM

*Direct - Khamvongsa*

1   helicopters, does this include the helicopter that was            09:26AM

2   included in your evaluation for the wire fraud and the money      09:26AM

3   laundering?                                                       09:26AM

4       A.   Yes.                                                     09:26AM

5       Q.   Okay.  Now, could we please go to Page 4 and, yes, if    09:26AM

6   can you highlight just the top of that.  Wonderful.  Could you    09:26AM

7   tell the members of the jury what you're looking at here?         09:27AM

8       A.   This is proof that the helicopters are registered       09:27AM

9   with the FAA.                                                     09:27AM

10      Q.   Okay.  And from Page 4 through Page 33, do we see the    09:27AM

11  same thing?                                                       09:27AM

12      A.   Yes, four U.S.-registered helicopters.                   09:27AM

13      Q.   Okay.  And this is information going from Rufus at       09:27AM

14  Hansen Helicopters to Mr. Ferruzzo; correct?                      09:27AM

15      A.   Yes.                                                     09:27AM

16           MS. M. MILLER:  Okay.  Now let's go through these        09:27AM

17  pages, Ms. Miller, if you don't mind, to Page 34.                 09:27AM

18  BY MS. M. MILLER: (CONTINUING)                                    09:27AM

19      Q.   Okay.  And then what do we see here on Page 34?          09:27AM

20      A.   This is proof that they have -- Hansen Helicopters       09:27AM

21  had aircraft registered in New Zealand.                           09:27AM

22           MS. MCCONWELL:  Your Honor, I object to the use          09:27AM

23  of the word "proof."  The question is, What do we have here?      09:27AM

24  He's trying to make up an ultimate conclusion.                    09:27AM

25           THE COURT:  Okay.  Yeah, maybe he's getting             09:27AM

1    conclusion.  All right.  Sustained.  You want to rephrase          09:28AM

2    that?                                                               09:28AM

3    BY MS. M. MILLER:  (CONTINUING)                                     09:28AM

4        Q.   So what is this document, sir?                            09:28AM

5        A.   This is a registration with New Zealand for               09:28AM

6    helicopter ZKHIA.                                                   09:28AM

7        Q.   And, again, let's remind the jury, all of these           09:28AM

8    documents are being sent to Mr. Ferruzzo by Hansen Helicopters     09:28AM

9    through Rufus Crowe; correct?                                      09:28AM

10             THE WITNESS:  That's correct.                            09:28AM

11             MR. MARTIN:  That's a leading question, I object.        09:28AM

12   "Let's remind the jury" and then -- I mean --                      09:28AM

13             THE COURT:  All right.  Objection will be                09:28AM

14   sustained.  Rephrase, please, Counsel.                            09:28AM

15   BY MS. M. MILLER:  (CONTINUING)                                     09:28AM

16       Q.   So when you look at that communication we saw, that       09:28AM

17   e-mail between Mr. Ferruzzo asking Mr. Crowe, copying Jon          09:28AM

18   Walker on that request, can you tell the members of the jury       09:28AM

19   what was Mr. Ferruzzo requesting?                                  09:28AM

20       A.   Mr. Ferruzzo was requesting additional documents as       09:28AM

21   pertains to Hansen Helicopters, its fleets.  And this was          09:28AM

22   provided in response to that.                                      09:28AM

23       Q.   Okay.  And now let's look at Page 35 and tell the         09:28AM

24   members of the jury what we're seeing on Page 35.                  09:28AM

25       A.   This is a New Zealand aircraft registration for ZKHMF     09:29AM

*Direct - Khamvongsa*

1    and it identifies Jon Darrell Walker.                    09:29AM

2    BY MS. M. MILLER: (CONTINUING)                           09:29AM

3        Q.   Okay.  Now let's look at Page 36.  And tell the  09:29AM

4    members of the jury what we're seeing on Page 36.        09:29AM

5        A.   This is the certificate of registration with the 09:29AM

6    Philippine government for another helicopter with the ID  09:29AM

7    number of U.S. -- or the registration number RPC588.     09:29AM

8        Q.   Okay.  Now let's look at Page 37.  And what are we 09:29AM

9    seeing here on Page 37?                                  09:29AM

10       A.   37 lists all the leases that Hansen Helicopters had. 09:29AM

11       Q.   Okay.  And across the top we can see it says Hansen 09:29AM

12   Helicopters Inc.,; correct?                              09:30AM

13       A.   That's correct.                                 09:30AM

14       Q.   Okay.  And total number of helicopters, that were 09:30AM

15   being represented available?                             09:30AM

16       A.   46.                                             09:30AM

17       Q.   And the current rate, I'm sorry, Ms. Miller, what was 09:30AM

18   the current rate per month for the helicopters as shown on 09:30AM

19   this document?                                           09:30AM

20       A.   They were either $37,500 or $40,000 a month.    09:30AM

21       Q.   And what's represented on top current rate of     09:30AM

22   helicopters per year?                                    09:30AM

23       A.   Current rate of helicopter rental is $480,000 per 09:30AM

24   annum.                                                   09:30AM

25       Q.   Okay.  Per helicopter?                          09:30AM

*Direct - Khamvongsa*

1       A.    Per helicopter.                                      09:30AM

2       Q.    Okay.  Now let's look at Page 38 oh, sorry, thank    09:30AM

3   you, Ms. Miller.  Line 61 on Page 37, what is the yearly       09:30AM

4   contract revenue that is being represented in this document?   09:30AM

5       A.    $21,450,000.                                         09:30AM

6       Q.    And is that consistent, sir, with the other          09:30AM

7   documentation that you've reviewed in this case?               09:31AM

8       A.    Yes.                                                 09:31AM

9       Q.    Okay.  Now let's look at Page 38, please.  And can   09:31AM

10  you tell the members of the jury what we're seeing on Page 38? 09:31AM

11      A.    This involves the director and shareholder           09:31AM

12  relationship with the 31 companies identified on the left.     09:31AM

13      Q.    And are those what we've heard in this case as the   09:31AM

14  Vanuatu companies?                                             09:31AM

15      A.    Yes.                                                 09:31AM

16      Q.    Okay.  And then let's look at Page 43 and starting on 09:31AM

17  Page 43 and going all the way through Page 98.  Can you tell   09:31AM

18  the members of the jury what's contained here?                 09:31AM

19            MS. M. MILLER:  Ms. Miller, can you stay on 43       09:31AM

20  for one second, then we'll go through.  Thank you.             09:31AM

21  BY MS. M. MILLER: (CONTINUING)                                 09:31AM

22      Q.    Can you tell the members of the jury what we're      09:31AM

23  seeing on Pages 43 through 98?                                 09:31AM

24      A.    This is Wilma's Flight Services Inc., accounts       09:31AM

25  receivable agent summary as of June 30th, 2016, and it        09:31AM

*Direct - Khamvongsa*

1    identifies all the tuna boats and the accounts receivable.    09:32AM

2        Q.    Okay.  And when is an account receivable?    09:32AM

3        A.    It's essentially money still owed by the tuna boat    09:32AM

4    company.    09:32AM

5              MS. M. MILLER:  Okay.  And now, Ms. Miller, if    09:32AM

6    you can continue down to the pages.  So 43, 44, and 45 is all    09:32AM

7    the Wilma's Flight Services account receivables?    09:32AM

8        A.    Yes.    09:32AM

9        Q.    Okay.  And then 46 is just blank 47 blank.  Let's go    09:32AM

10   to Page 53, I think that's the next time we see any    09:32AM

11   substantive information.  And by the way, the blanks in these    09:32AM

12   markings that we see on these pages, was this exactly the way    09:32AM

13   we received the information or downloaded it from the    09:32AM

14   defendant's computers?    09:32AM

15       A.    Yes.    09:32AM

16       Q.    Okay.  Now on Page 53, what are we seeing here?    09:32AM

17       A.    This is financial information for Caledonian Agency    09:32AM

18   Inc.    09:32AM

19             MS. M. MILLER:  Okay.  Ms. Miller, can you    09:32AM

20   highlight the top portion, please.    09:32AM

21   BY MS. M. MILLER: (CONTINUING)    09:32AM

22       Q.    What is a balance sheet?    09:33AM

23       A.    The balance sheet identifies the assets and    09:33AM

24   liabilities in owner's equity within a company.    09:33AM

25       Q.    Okay.  And this is for what time period?    09:33AM

*Direct - Khamvongsa*

1      A.   As of December 31, 2013.                          09:33AM

2      Q.   Okay.  And if we continue on beyond Page 53,        09:33AM

3   Pages 54, that's also part of the balance sheet, sir?      09:33AM

4           THE WITNESS:  Yes.                                 09:33AM

5   BY MS. M. MILLER: (CONTINUING)                             09:33AM

6      Q.   And then Page 55?  And I believe Page 56 is the last 09:33AM

7   page of the balance sheet for Caledonian Agency; is that   09:33AM

8   correct?                                                   09:33AM

9      A.   Yes.                                               09:33AM

10          MS. M. MILLER:  Okay, now Ms. Miller, if can you    09:33AM

11  go to Page 63.                                             09:33AM

12  BY MS. M. MILLER: (CONTINUING)                             09:33AM

13     Q.   And can you tell the members of the jury what we're 09:33AM

14  seeing here on Page 63?                                    09:33AM

15     A.   This is Caledonian Agency Inc's., profit and loss   09:33AM

16  statement from January through December 2013.              09:33AM

17     Q.   What is a profit and loss statement?               09:33AM

18     A.   It identifies the revenue and -- coming into the    09:33AM

19  business as well as the expenses as it relates to that     09:34AM

20  business.                                                  09:34AM

21          MS. M. MILLER:  Okay, Ms. Miller, if you can now    09:34AM

22  go to Pages 71 and 72.                                     09:34AM

23  BY MS. M. MILLER: (CONTINUING)                             09:34AM

24     Q.   What are we seeing here on Page 71?                 09:34AM

25     A.   This is Caledonian Insurance Company Limited balance 09:34AM

1    sheet as of December 31st, 2015.                        09:34AM

2        Q.   And 72?  Is that just a continuation?          09:34AM

3        A.   It appears that way, yes.                      09:34AM

4             MS. M. MILLER:  Okay, now, Ms. Miller, can you go   09:34AM

5    to Page 79.                                             09:34AM

6    BY MS. M. MILLER: (CONTINUING)                          09:34AM

7        Q.   Can you tell the members of the jury what we're   09:34AM

8    seeing here?                                            09:34AM

9        A.   This is Caledonian Insurance Company Limited profit   09:34AM

10   and loss statement for January through December 2013.  09:34AM

11       Q.   Okay.  And now could we go to Pages 87 and 89 --   09:35AM

12   through 89.  Let's start with 87.  If you could hone in on the   09:35AM

13   top of that would be great.  And what is this that we are   09:35AM

14   seeing here, sir?                                       09:35AM

15       A.   This is Wilma's Flight Service Inc., balance sheet as   09:35AM

16   of December 31st, 2013.                                 09:35AM

17       Q.   Okay.  And that continues on to the next page; is   09:35AM

18   that correct?                                           09:35AM

19       A.   Yes.                                           09:35AM

20             MS. M. MILLER:  Okay.  Now, Ms. Miller, can you   09:35AM

21   please -- and actually, it goes through Page 89.  And then   09:35AM

22   Ms. Miller, can you go to Page 97.  And can you hone in on the   09:35AM

23   very top of that page.                                  09:35AM

24   BY MS. M. MILLER: (CONTINUING)                          09:35AM

25       Q.   And what are we seeing on Page 97?             09:35AM

*Direct - Khamvongsa*

1    A.   This is Hansen Helicopters profit and loss January          09:35AM

2  through December 2015.                                              09:35AM

3    Q.   Okay.  And when you look at the income, combined            09:35AM

4  income for the year 2015, what are we seeing there?                09:36AM

5    A.   $23,167,598.96.                                             09:36AM

6    Q.   Is that consistent with some of the other information       09:36AM

7  you've seen about how much money these companies were bringing     09:36AM

8  in?                                                                09:36AM

9    A.   Yes.                                                        09:36AM

10    Q.   Okay.  Now could you tell the members of the jury of       09:36AM

11  the companies whose financial record we just reviewed,            09:36AM

12  Wilma's, Caledonian's and Hansen Helicopters, where are those     09:36AM

13  companies incorporated?                                           09:36AM

14    A.   The U.S.                                                   09:36AM

15    Q.   Okay.  And which of those companies is shown as            09:36AM

16  receiving all of the income from the tuna boat leases?            09:36AM

17    A.   On this document, it's Wilma's Flight Services             09:36AM

18  receives 18 -- over $18 million from the tuna boats.              09:36AM

19    Q.   And what about this particular document, Hansen            09:36AM

20  Helicopters profit and loss statement?                           09:36AM

21    A.   That also comes from either lease or rent income.         09:36AM

22    Q.   Okay.  Now can you also tell the members of the jury      09:36AM

23  what else did you review in addition to the documentation that    09:37AM

24  was seized and subpoenaed that you've already discussed to        09:37AM

25  validate information that you presented to the jury about the     09:37AM

1    total amount of this fraud.                                    09:37AM

2              THE WITNESS:  Well, I also --                         09:37AM

3              MR. MARTIN:  Your Honor, I object, the total          09:37AM

4    amount of this fraud, he can talk about his investigation.     09:37AM

5    That's a improper question --                                  09:37AM

6              THE COURT:  All right.  The Court will sustain        09:37AM

7    the objection and rephrase the question, Counsel.              09:37AM

8              MS. M. MILLER:  Okay, Your Honor.                     09:37AM

9    BY MS. M. MILLER: (CONTINUING)                                 09:37AM

10        Q.   What else did you review that supported your         09:37AM

11   testimony and information about the total amount of the funds  09:37AM

12   that were received by Hansen and all these other companies for 09:37AM

13   leasing these tuna boats, leasing these helicopters?           09:37AM

14        A.   I reviewed the QuickBooks records, I reviewed the    09:37AM

15   bank records, I reviewed also of the billing schedule which    09:37AM

16   all corroborates the $20 million that I discussed earlier,     09:37AM

17   which equaled the 400 million covered in the timeframe of 2000 09:38AM

18   to present.                                                    09:38AM

19        Q.   Did you also review tax records?                     09:38AM

20        A.   Yes, I also reviewed tax returns as it relates to    09:38AM

21   Hansen Helicopters and Jon Walker.                             09:38AM

22        Q.   When you look at what we just saw in terms of income 09:38AM

23   reported on Hansen Helicopters profit and loss statement for   09:38AM

24   2015, what is the difference, if any, between what's shown     09:38AM

25   here and what is in the tax records of Hansen Helicopters?     09:38AM

*Direct - Khamvongsa*

1    A.   Less than 20% of the money reflected here, the 23    09:38AM

2    million, is recorded on the Hansen Helicopters tax return,    09:38AM

3    corporate tax return.    09:38AM

4    Q.   What did Jon Walker do in 2018 --    09:38AM

5         MS. M. MILLER:  Oh, thank you, sorry.  Before we    09:38AM

6    get off this document, can you please hone in, Ms. Miller, on    09:38AM

7    the upper left-hand corner of the document.  Thank you.    09:38AM

8    BY MS. M. MILLER: (CONTINUING)    09:38AM

9    Q.   And, Special Agent Khamvongsa, and if you can, yeah,    09:39AM

10   I keep saying highlight.  Thank you.  Can you please tell the    09:39AM

11   members of the jury what is shown on Line 1?    09:39AM

12   A.   Jon D. Walker Group Companies.    09:39AM

13   Q.   Okay.  Now, what did Jon Walker do in 2018 after he    09:39AM

14   was indicted?    09:39AM

15   A.   All the accounts that the government knew about were    09:39AM

16   closed out and businesses -- business was opened up in the    09:39AM

17   Philippines.    09:39AM

18   Q.   Under what name?    09:39AM

19   A.   Pacific.Spotters Corporation.    09:39AM

20   Q.   And did you also review bank records for    09:39AM

21   Pacific.Spotters Corporation?    09:39AM

22   A.   I did.    09:39AM

23   Q.   And could you tell the members of the jury which bank    09:39AM

24   had those records?    09:39AM

25   A.   I reviewed two bank accounts, there was a Philippine    09:39AM

*Direct - Khamvongsa*

bank account with Coconut Planters Bank and then there was
also another bank account here in Guam with Community First
Guam Federal Credit Union for Limey Air Services.

    Q.   Okay.  And has the jury seen some of these bank
records already?

    A.   Yes.

          MS. M. MILLER:  Okay.  So, Your Honor, I would
like to show, Special Agent Khamvongsa, Exhibit 2939 but pages
that have not been admitted into evidence yet which are
Pages 82 and 83 of that Exhibit, 2939.

          MR. MARTIN:  Your Honor, if we could.

          THE COURT:  Yup.

          MR. MARTIN:  I'd ask that the jury be excused, we
had extensive, very extensive discussion on these documents.

          THE COURT:  Okay, hold on.  Okay, let me just get
the Exhibit No. 2939.

          MS. M. MILLER:  Yes, Your Honor, Pages 82 and 83.

          THE COURT:  All right.  All right.  Ladies and
gentlemen, let's take a 15-minute recess.  Keep an open mind
and we'll see you shortly.  Please rise for the jury.

          (Jury out at 9:40 a.m.)

          THE COURT:  All right.  Please be seated.  We're
outside the presence of the jury.  And, yes, Agent?

          THE WITNESS:  I'm sorry, thank you.

          THE COURT:  Why don't you step out.  We'll call

*Direct - Khamvongsa*

1    you when we're ready.  So let's -- page -- pull up the page,    09:41AM

2    let's just pull up the page that we're looking at.    09:41AM

3    Exhibit 2939, Page 82 and 83 that's already on.  So what's the    09:41AM

4    offer of proof, what do you -- why do you want to bring    09:41AM

5    that --    09:41AM

6            MS. M. MILLER:  Your Honor, if you recall    09:41AM

7    previously, we tried to bring this in, Mr. Martin asked for    09:41AM

8    the Court to hold off on ruling on it because he wanted to see    09:41AM

9    the grand jury subpoena that was issued to the bank in order    09:41AM

10   to receive these records.  We gave him a copy of that subpoena    09:41AM

11   and that was all we've heard about the issue until now.    09:42AM

12           MR. MARTIN:  Your Honor.    09:42AM

13           MS. M. MILLER:  So --    09:42AM

14           THE COURT:  All right.  That's it?    09:42AM

15           MR. MARTIN:  Your Honor, we -- that was not my    09:42AM

16   objection.  I asked the grand jury subpoena and I did get the    09:42AM

17   grand jury subpoena.    09:42AM

18           THE COURT:  Right.    09:42AM

19           MR. MARTIN:  The objection was, Pacific Spotters    09:42AM

20   which is the whole scope of this, as you'll recall when    09:42AM

21   Samantha Miller was doing this, we had a huge argument    09:42AM

22   about -- Pacific Spotters is nowhere in this indictment.  We    09:42AM

23   argued notice and the Court sustained the objection that    09:42AM

24   the -- we're here to defend what's in this indictment.    09:42AM

25           THE COURT:  Yeah.    09:42AM

*Direct - Khamvongsa*

```
 1              MR. MARTIN:  Pacific Spotters is nowhere in      09:42AM

 2    there.  And that's what these two pages of this Exhibit deal  09:42AM

 3    with.  I believe it's wire transfers into the Limey bank   09:42AM

 4    account relating to Pacific Spotters which is not in the   09:42AM

 5    indictment.  And we objected to it on that basis.          09:42AM

 6              MS. M. MILLER:  And Your Honor --                09:43AM

 7              THE COURT:  Okay.  Wait, wait hold on.  Hold on  09:43AM

 8    just a minute.                                             09:43AM

 9              Okay.  So you're saying Pacific Spotters is      09:43AM

10    nowhere in this the Second Superseding Indictment?         09:43AM

11              MR. MARTIN:  Correct.                            09:43AM

12              THE COURT:  All right.                           09:43AM

13              MR. MARTIN:  And we argued, Your Honor, if the   09:43AM

14    Court will recall that we didn't get notice that they were  09:43AM

15    going to going into this Pacific Spotters information.  And  09:43AM

16    unless I'm mistaken, Your Honor, and I could be but I think  09:43AM

17    you sustained our objection based upon that, we asked them to  09:43AM

18    provide us the subpoena which we got.  I believe it was --  09:43AM

19    while we were in recess, Your Honor.  I had received that   09:43AM

20    subpoena now.                                              09:43AM

21              THE COURT:  Okay, wait.  Hold on.  Let me just   09:43AM

22    look at my notes on this issue.  Everybody give me a second  09:43AM

23    because I can't listen to two people at one time.  Let me just  09:43AM

24    look at my notes here.  Okay, so -- all right.  This is    09:43AM

25    something we've been working on, me -- I've been working on.  09:44AM
```

1   So this is government's theory of relevance here requires a          09:44AM

2   finding that Pacific Spotters is an alter ego of Walker or          09:44AM

3   Hansen Helicopters.                                                  09:44AM

4            And just on my preliminary review, Counsels, it's          09:44AM

5   not clear to the Court whether or not Pacific Spotters Corp.         09:44AM

6   and specific -- or Pacific Spotters Corp. are the same entity,       09:44AM

7   this evidence indicates that Mr. Marinho received his                09:44AM

8   paychecks from Pacific Spotters Corporation despite the fact         09:44AM

9   that he testified that he believed he was employed by                09:44AM

10  Defendant Hansen Helicopters or Alpha Air, which is an alleged       09:44AM

11  alter ego of Defendant Hansen Helicopters.  And Defendant --        09:45AM

12  that's G-1061.  Defendant's Walker, Crowe and Kapp were             09:45AM

13  appointed officers when Pacific Spotters Corp. was                  09:45AM

14  incorporated, G-3003 Page 25, and although these circumstances      09:45AM

15  could indicate the unity of interest of alter egos, it does         09:45AM

16  not appear to the Court that there is sufficient evidence           09:45AM

17  pertinent to Pacific Spotters Corp. or -- and/or Pacific            09:45AM

18  Spotters Corp. for a jury to reasonably find that it is an          09:45AM

19  alter ego of either defendant.  Should other evidence be            09:45AM

20  presented that pertains specifically to Pacific Spotters Corp.      09:45AM

21  and/or Pacific -- Pacific.Spotters Corp., the government may        09:45AM

22  move for a finding under Rule 104(b) at the that time.             09:45AM

23            MS. M. MILLER:  And, so Your Honor, my offer of           09:45AM

24  proof --                                                            09:45AM

25            THE COURT:  This is the time?                            09:45AM

*Direct - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | MS. M. MILLER: This is the time. | 09:45AM |
| 2 | THE COURT: Okay, hold on. This is the time, | 09:45AM |
| 3 | right? Hold on. | 09:45AM |
| 4 | MS. M. MILLER: Yes. | 09:45AM |
| 5 | THE COURT: So what -- so let me just hear now | 09:45AM |
| 6 | how this is the time? | 09:46AM |
| 7 | MS. M. MILLER: This is the time, Your Honor, | 09:46AM |
| 8 | because first of all, this particular document and | 09:46AM |
| 9 | particularly, these two pages show that the lease income | 09:46AM |
| 10 | started coming into this account. Additionally, we have the | 09:46AM |
| 11 | leases that the bank required Pacific Spotters to provide it | 09:46AM |
| 12 | to prove that the income coming into the accounts was | 09:46AM |
| 13 | legitimate because there was a concern. In addition to that, | 09:46AM |
| 14 | we have proof that the helicopters that are the subject of | 09:46AM |
| 15 | those leases are the exact helicopters that were being owned | 09:46AM |
| 16 | and operated by Jon Walker and all of these companies that you | 09:46AM |
| 17 | see here in 829 and it is all the same thing, all the same | 09:46AM |
| 18 | company. | 09:46AM |
| 19 | And, Your Honor, we have representations that | 09:46AM |
| 20 | have been made by not only Mr. Walker, but by Mr. Crowe and | 09:46AM |
| 21 | Mr. Kapp, that Pacific Spotters Corporation was in fact part | 09:46AM |
| 22 | of their Hansen Helicopters affiliates. I would refer the | 09:47AM |
| 23 | Court to the ECF filings of both Mr. Crowe and Mr. Kapp and if | 09:47AM |
| 24 | you need the specific numbers we can get those for you, where | 09:47AM |
| 25 | they actually represent to the Court repeatedly their need to | 09:47AM |

*Direct - Khamvongsa*

go to the Philippines because Pacific Spotters Corporation is 09:47AM

in fact part of their corporate entity and that they are 09:47AM

operating out of the Philippines. 09:47AM

      We also have, Your Honor, which was an Exhibit 09:47AM

that the defense introduced, Mr. McConwell specifically, 09:47AM

D4-124, which was a list of helicopters that Mr. McConwell 09:47AM

represented to the Court and I have the transcript of the 09:47AM

representation, that those helicopters were being registered 09:47AM

in the Philippines to be used in the Philippines, in current 09:47AM

leases.  There is no other person who is tied to Pacific 09:47AM

Spotters than Jon Walker and the other named co-defendants and 09:48AM

as I've indicated, Your Honor, we have the evidence to show 09:48AM

that the leases are covering the same helicopters. 09:48AM

      Two of the leases, even have U.S.-registration 09:48AM

numbers on them despite the fact that Jon Walker in 2020 09:48AM

deregistered those helicopters with the FAA, as you just saw 09:48AM

that came into evidence.  His letter that he sent to the FAA 09:48AM

from his location in Missouri, saying I am the owner and 09:48AM

controller of all of these helicopters I want to deregister 09:48AM

them.  Well, guess what?  They're still using all of them in 09:48AM

the Philippines.  They just changed the name of the company to 09:48AM

Pacific Spotters Corporation.  Plus we have the testimony of 09:48AM

Mr. Marinho who was paid through Pacific Spotters Corporation, 09:48AM

plus we introduced in 3003, the pages of the bank records 09:48AM

where Jon Walker actually flew to the Philippines, as did 09:49AM

Rufus Crowe, as did Turner Kapp, to open up that account, to

establish that account, and to set up that account and all of

those leases were submitted to that bank to prove that that's

where the money was coming from.  There is no distinction.

THE COURT:  Okay.  So, yes?  Mr. Martin, go

ahead.

MR. MARTIN:  Your Honor, if you'll recall on

June 8th, we had this very same argument, the flights where

you were asked -- you actually asked, did these flights lineup

with when these signatures were made on these bank statements,

they didn't.  You asked the government to establish that for

you, they didn't.  And I would point out, Your Honor, this

is -- we got an updated exhibit list from the government on

Friday.  This exhibit is not on that list.  And I mean I hate

to gripe about that but we've got all these exhibits we're

trying to prepare for.

I remember this just because of what happened

last time, that these exhibits, the times that they're talking

about, flying to sign these bank statements, didn't lineup,

the things didn't lineup.  The Pacific Spotters is nowhere in

this indictment, isn't named.  I would be more prepared had I

known had it been on their exhibit list that they were going

to try to do this again, I would be a little more prepared.

But, Your Honor, this is not relevant to the pending

indictment and they're going way beyond where we are, and I

1    object to it.                                              09:50AM

2              THE COURT:  Okay.  And Ms. McConwell?            09:50AM

3              MS. MCCONWELL:  Well, I mean we probably spent an 09:50AM

4    hour and a half or two hours talking about this on June 8th 09:50AM

5    and the Court -- the Court did not allow -- I mean she      09:50AM

6    overruled -- she sustained our objection on the admission and 09:51AM

7    so... I would ask that we move on, that you sustained.      09:51AM

8    They're essentially trying to take a shot at your ruling with 09:51AM

9    the same witness, because we were on Agent Khamvongsa when  09:51AM

10   we -- they were attempting to get these two pages in.       09:51AM

11             THE COURT:  All right.  You may reply.            09:51AM

12             MS. M. MILLER:  Yes, Your Honor.  Two things.     09:51AM

13             THE COURT:  Go ahead.                             09:51AM

14             MS. M. MILLER:  First of all, this idea that they 09:51AM

15   didn't have notice is just not correct because we actually  09:51AM

16   identified this exhibit as something that we wanted to use, 09:51AM

17   with Special Agent Khamvongsa months before he first started 09:51AM

18   testifying.                                                 09:51AM

19             Second of all, all of the prior pages of this    09:51AM

20   exhibit were admitted by this Court except for the last two 09:51AM

21   pages because the objection was they just didn't look like  09:51AM

22   documents that the bank would produce pursuant to a grand jury 09:51AM

23   subpoena.  I'm sure you remember that whole argument.       09:51AM

24             And, therefore, we produced the grand jury       09:51AM

25   subpoena to the defendants and they never said a word about it 09:52AM

```
1    after that.  They never said we still have an objection, we        09:52AM
2    still don't think it's legitimate.  You heard the testimony of     09:52AM
3    Special Agent Khamvongsa at that time who said, "I received        09:52AM
4    these documents from the bank as is, I made no changes to them     09:52AM
5    or anything."  Additionally, for Counsel to say they have no       09:52AM
6    notice is false, but I would refer the Court to several            09:52AM
7    additional ECF filings.                                            09:52AM
8            First of all, Your Honor, your order in ECF 1387,          09:52AM
9    the defendants had already moved to dismiss or strike             09:52AM
10   references to the shell companies that the government             09:52AM
11   contended were used in this fraud.  And Your Honor, in that       09:52AM
12   order on Page 3 starting at Line 4, you stated, "The Court        09:52AM
13   further finds that evidence that the shell corporations were      09:52AM
14   passed through companies is relevant to whether the               09:52AM
15   transactions of the corporations can be imputed to                09:52AM
16   defendants."  And in this situation, Jon Walker, who actually     09:53AM
17   flew out to the Philippines after he was indicted, opened up      09:53AM
18   those accounts, you just heard yesterday the testimony of         09:53AM
19   Special Agent Khamvongsa who said that Jon Walker removed all     09:53AM
20   of that money from the accounts that the government was aware     09:53AM
21   of, and from the corporate names that the government was aware    09:53AM
22   of to move it into Pacific Spotters Corporation, which we         09:53AM
23   introduced the deposit of those funds in Exhibit 3003.            09:53AM
24           Mr. Martin is saying we can't tie up the amount           09:53AM
25   of money that came in from the leases to the use of Pacific       09:53AM
```

*Direct - Khamvongsa*

Case 1:18-cr-00010   Document 1917   Filed 03/09/23   Page 637 of 1311

```
 1   Spotters, absolutely we can.  These two pages show the            09:53AM
 2   hundreds of thousands of dollars of income that started going     09:53AM
 3   into Pacific Spotters for these leases after the Defendants       09:53AM
 4   were indicted.  Again, I refer the Court to the ECF filings of    09:53AM
 5   Mr. Crowe and Mr. Turner Kapp who signed declarations that        09:53AM
 6   their lawyers filed with this Court saying that they had to go    09:54AM
 7   to the Philippines because Pacific Spotters Corporation was an    09:54AM
 8   integral part of the Hansen Helicopters operations.              09:54AM
 9        The defendants admitted it.  There is no contrary           09:54AM
10   evidence.  There is no evidence that there was any other         09:54AM
11   person who controlled, operated or did anything related to       09:54AM
12   Pacific Spotters other than Jon Walker and these Defendants.     09:54AM
13   Additionally, Your Honor, you also granted the government's      09:54AM
14   motion to allow us to bring in evidence the Defendants were      09:54AM
15   still violating the law today.                                   09:54AM
16        If you look at ECF 1521, you said that, that               09:54AM
17   evidence is relevant because we were able to show the Court      09:54AM
18   that despite the fact Jon Walker deregistered all of these       09:54AM
19   N-numbered helicopter in 2020, his employees are still flying    09:54AM
20   around using N-registered helicopters.  As a matter of fact,     09:55AM
21   we have evidence, Your Honor, that after the indictment, there   09:55AM
22   are two more accidents involving a U.S.-registered helicopter    09:55AM
23   and a helicopter that was registered in New Zealand.  That       09:55AM
24   evidence has already come into court.  And those accidents,      09:55AM
25   Your Honor, involved helicopters that were supposedly            09:55AM
```

*Direct - Khamvongsa*

1  de-registered from those two registrations.  But they were    09:55AM

2  operating under leases with Pacific Spotters Corporation.      09:55AM

3             MS. MCCONWELL:  Your Honor, this exhibit, the       09:55AM

4  first --                                                        09:55AM

5             THE COURT:  Okay, which exhibit?                    09:55AM

6             MS. MCCONWELL:  The one -- this Exhibit 2139, I'm    09:55AM

7  going to bring us back to what -- is our issue is at hand and   09:55AM

8  what Ms. Miller today is trying to redo what Ms. Miller did on  09:55AM

9  June 8th with regard to 2939, 82 to 83.  The Pages 2 -- or      09:55AM

10 Page 1 was admitted with Agent Prozik on 5/11 of '22, and I     09:56AM

11 believe that's the signature card for this account.            09:56AM

12            On the 31st of May, Counsel agreed... Hansen         09:56AM

13 Helicopters had an objection to this and so it was not          09:56AM

14 admitted as to Hansen Helicopters on either of those, but on    09:56AM

15 May 31st, there was -- the two through -- Pages 2 goes          09:56AM

16 through 81 were admitted because that's what the government     09:56AM

17 represented is all that they wanted to have admitted.          09:56AM

18            So then they come in on June 8th and we have at      09:56AM

19 least, I think we talked for probably two hours on 82 and 83,   09:56AM

20 and Ms. Samantha Miller did pull out all the records because    09:56AM

21 excepts of that Exhibit 3003, which by the way, is an           09:56AM

22 additional exhibit which wasn't on their third amended list     09:57AM

23 but several pages were admitted but they could not match up     09:57AM

24 any of the air travel with the dates that were on the           09:57AM

25 documents.  She was purporting that they had travelled and      09:57AM

1    then these documents had been signed; none of that lined up or    09:57AM

2    matched.  It appeared to be, this was some type of also a    09:57AM

3    summary chart.  Agent Khamvongsa represented that this was    09:57AM

4    some special activity chart that the bank provided, that just    09:57AM

5    happened to keep, which is what -- which is what precipitated    09:57AM

6    Mr. Martin's request to see what the subpoena was that was    09:57AM

7    issued to the bank on what records were going to be admitted.    09:57AM

8            But -- and so after we went through all of that,    09:57AM

9    the Court still denied admission for Pages 81 -- 82 and 83 and    09:57AM

10   I would submit that this is -- the government's, just another    09:57AM

11   attempt to replough the ground we've already done with the    09:57AM

12   government and already sustained the objection to admission.    09:58AM

13           THE COURT:  All right, let me just say, okay, so    09:58AM

14   this is the Court's ruling:  The Court will say that at this    09:58AM

15   point, unless the prosecutor can tie a contract to Hansen    09:58AM

16   Helicopters or to one of the Vanuatu companies on G-829 and    09:58AM

17   activity in this Pacific.Spotters account by citing to me    09:58AM

18   specific exhibit numbers, not ECF numbers, I'll look at that.    09:58AM

19   We can look at that.  But otherwise, the objection will be    09:58AM

20   sustained.  So why don't you -- let me give you guys    09:58AM

21   15 minutes and then give -- and then pull the ECF -- I'm    09:58AM

22   sorry, cite me the specific exhibit numbers.    09:58AM

23           MS. M. MILLER:  Yes, Your Honor.    09:58AM

24           THE COURT:  And then make sure you give that to    09:58AM

25   defense Counsel.    09:58AM

```
 1          MS. M. MILLER:  Yes, Your Honor.                    09:58AM

 2          THE COURT:  We'll review it.  I'm not saying I'm    09:58AM

 3   going to rule in your favor, but I'm just saying that I don't   09:58AM

 4   see the tie in yet.                                        09:58AM

 5          MS. M. MILLER:  Yes, Your Honor.                    09:58AM

 6          MS. MCCONWELL:  And I'm also -- I just want to      09:58AM

 7   make it real clear that the government did give us their   09:58AM

 8   exhibits that they were going to use with Mr. Khamvongsa and   09:58AM

 9   they gave us a list on August 2nd, they also gave us a list on   09:59AM

10   August 12th and their renewed effort to attempt to get these   09:59AM

11   two pages into evidence did not appear -- that Exhibit 2939   09:59AM

12   did not appear on that exhibit list that they gave us of the   09:59AM

13   exhibits that they were going to use.                      09:59AM

14          MS. M. MILLER:  And that is because it appeared     09:59AM

15   on the list that they were provided before Special Agent   09:59AM

16   Khamvongsa testified the first time, Your Honor.  So what   09:59AM

17   we're going to do -- because this is a critical issue --   09:59AM

18          THE COURT:  Well, it's a critical issue for both    09:59AM

19   of you.                                                    09:59AM

20          MS. M. MILLER:  This is a critical issue --         09:59AM

21          THE COURT:  So this is my point -- Okay, we'll      09:59AM

22   come back to that objection.  Noted, okay.  But in the     09:59AM

23   meantime, I'll give you guys 15 minutes to come back with the   09:59AM

24   exhibit numbers and we'll look at it.                      09:59AM

25          MS. M. MILLER:  Yup.                                09:59AM
```

*Direct - Khamvongsa*

```
 1                THE COURT:  All right.  Unless you want to go       09:59AM
 2     ahead and finish this guy with other questions or?             09:59AM
 3                MS. M. MILLER:  No, because I literally have --      09:59AM
 4                THE COURT:  This is it?                              09:59AM
 5                MS. M. MILLER:  -- a handful of questions.  So we    09:59AM
 6     have to definitely resolve this issue with him.                09:59AM
 7                THE COURT:  All right.  15 minutes is enough         09:59AM
 8     time?                                                          09:59AM
 9                MS. M. MILLER:  Yes.  Absolutely.                    09:59AM
10                THE COURT:  Okay, 15-minutes recess.  Go ahead      09:59AM
11     and then get back to me.                                       09:59AM
12                MR. MARTIN:  Okay.                                  10:00AM
13                THE COURT:  So just make sure give them -- give     10:00AM
14     them -- Ms. Marie Miller, give the defense Counsel the exhibit 10:00AM
15     numbers that you're relying and then give me the exhibit       10:00AM
16     numbers.  Give it to Carmen, then I'll review it.  Thank you,  10:00AM
17     Counsels.                                                      10:00AM
18                MS. M. MILLER:  Thank you, Your Honor.              10:00AM
19                THE COURT:  All right.                              10:00AM
20                (Recess taken at 10:00 a.m.)                        10:00AM
21                (Back on the record at 11:11 a.m.)                  11:11AM
22                THE COURT:  Okay.  So we're back on the record.     11:11AM
23     All counsels present, Defendants are present.  So let me just  11:12AM
24     say this:  I think this is the best way to proceed with this.  11:12AM
25     I was scrambling with my law clerk, going through all of the   11:12AM
```

*Direct - Khamvongsa*

```
 1  exhibit numbers, the ECF numbers, we're going -- my chamber   11:12AM
 2  desk trying to figure out what the argument might be, I think  11:12AM
 3  it's more prudent instead of rushing it, because -- and having 11:12AM
 4  everybody argue back and forth on this exhibit, this exhibit,  11:12AM
 5  so forth, I think it's better that the prosecutor just write   11:12AM
 6  out, it's easier to say, okay, these are the exhibit numbers,  11:12AM
 7  this is the specific page on this exhibit number and this is   11:12AM
 8  my argument why Pacific Spotters dot -- Pacific.Spotters,      11:12AM
 9  Pacific Spotters, whatever.                                   11:12AM
10              MS. M. MILLER:  Yes.                               11:12AM
11              THE COURT:  Is an alter ego of Hansen.             11:12AM
12              MS. M. MILLER:  Yes.                               11:12AM
13              THE COURT:  I think it's easier that way because  11:12AM
14  then the defense will have an opportunity to be able to        11:12AM
15  respond and so they can make their objection.  So if their     11:12AM
16  objection is, well, we didn't have notice or whatever it might 11:12AM
17  be or, you know, anyway, they can just make their objections,  11:13AM
18  and I think it will just be cleaner because --                 11:13AM
19              MS. M. MILLER:  Yes.                               11:13AM
20              THE COURT:  Believe me, we were rushing through   11:13AM
21  all of these -- as we were -- as we got the list , we were     11:13AM
22  going through them really quickly, pulling up ECF, pulling up  11:13AM
23  the exhibits, going -- studying it really fast and so forth.   11:13AM
24  Carmen would come in every 20 minutes or so or 15 minutes, you 11:13AM
25  know, and add stuff.  So we were doing it but I just think     11:13AM
```

```
 1    it's just cleaner.  And so I'm going to ask the prosecutors to      11:13AM
 2    go back.                                                            11:13AM
 3              MS. M. MILLER:  Yes, Your Honor, will do.                 11:13AM
 4              THE COURT:  So there is two options, one, go back         11:13AM
 5    and do it today and then we come back tomorrow morning.  But        11:13AM
 6    the defense -- how long is it going to take you to do this?         11:13AM
 7              MS. M. MILLER:  We'll get it done tonight.                11:13AM
 8              THE COURT:  I know but the defense Counsel need            11:13AM
 9    to be able to review it and respond to it.                          11:13AM
10              MS. M. MILLER:  Yes.  They already have the               11:13AM
11    exhibit numbers we intend to rely on and I will also, you           11:13AM
12    know, if there is anything else, obviously one thing I didn't       11:13AM
13    put up in the e-mail because that's the exhibit we were             11:13AM
14    talking about is 2939.                                              11:13AM
15              THE COURT:  Right okay.                                   11:13AM
16              MS. M. MILLER:  So 2939 is obviously critical             11:13AM
17    exhibit.  All of it has gotten in except for the last two          11:14AM
18    pages, that's what they're objecting to.  And so that's going      11:14AM
19    to be probably the first thing.  The rest of them I already        11:14AM
20    e-mailed Counsel and gave them the ECF for G numbers of the        11:14AM
21    exhibits we intend to rely on and so we can prepare a              11:14AM
22    memorandum, for --                                                 11:14AM
23              THE COURT:  How long will that take you, so I             11:14AM
24    want to give them the defense Counsel sufficient opportunity       11:14AM
25    to review what you've written and they could respond to it,        11:14AM
```

1   then I could look at it too before we have arguments on it                11:14AM

2   tomorrow.                                                                  11:14AM

3                MS. M. MILLER:  Yes.                                          11:14AM

4                THE COURT:  By the way, I reviewed a lot of it.               11:14AM

5                MS. M. MILLER:  Yes.                                          11:14AM

6                THE COURT:  So far, quickly, and I'm a fast                   11:14AM

7   reader, so is Emily.  So we're going through it, some of them             11:14AM

8   I must say I'm not sure where the theory comes from, some of              11:14AM

9   it may be, and there's plausible argument there, but some of              11:14AM

10  them I don't understand why they submitted this.  Could be                11:14AM

11  either I got the wrong number, or you know, I don't know --               11:14AM

12               MS. M. MILLER:  I will.                                       11:14AM

13               THE COURT:  -- citation.                                      11:14AM

14               MS. M. MILLER:  It will be easier for me to pull             11:14AM

15  it together for the Court and for Counsel and to lay it all              11:14AM

16  out, because frankly, once I lay it all out, it's going to be            11:14AM

17  extremely clear and we also have admissions made by defense              11:15AM

18  Counsel in a hearing in front of Judge Manibusan.                         11:15AM

19               THE COURT:  Well, I've read the bail hearing.                11:15AM

20               MS. M. MILLER:  Yes.                                          11:15AM

21               THE COURT:  Just a minute.                                    11:15AM

22               MS. M. MILLER:  Yes.                                          11:15AM

23               THE COURT:  The Court has read the bail hearings             11:15AM

24  orders by Judge Manibusan.                                                11:15AM

25               MS. M. MILLER:  Yes.                                          11:15AM

| | | |
|---|---|---|
| 1 | THE COURT:  As it relates to the defendants who | 11:15AM |
| 2 | want to go to the Philippines.  That's what you're talking | 11:15AM |
| 3 | about? | 11:15AM |
| 4 | MS. M. MILLER:  Correct, correct.  Where Judge | 11:15AM |
| 5 | Manibusan represented in there, we can get the transcript if | 11:15AM |
| 6 | we need to, that defense Counsel said that Pacific.Spotters | 11:15AM |
| 7 | was in fact an affiliate of Hansen Helicopters.  So we're | 11:15AM |
| 8 | going to pull all of that together, because the last thing we | 11:15AM |
| 9 | want obviously and I'm sure the Court is for there to be any | 11:15AM |
| 10 | fraud on the Court, there is zero doubt that Pacific.Spotters, | 11:15AM |
| 11 | once you see all of this pulled together, is in fact just | 11:15AM |
| 12 | another alter ego of Jon Walker.  When you look at the bank | 11:15AM |
| 13 | records, Limey Air -- Jon Walker -- | 11:15AM |
| 14 | THE COURT:  Let's not get -- | 11:15AM |
| 15 | MS. M. MILLER:  I'll put it all in writing, we'll | 11:15AM |
| 16 | get it done. | 11:15AM |
| 17 | THE COURT:  Put it in writing because I think | 11:15AM |
| 18 | it's fair.  It's only fair to the defense Counsel.  It's also | 11:15AM |
| 19 | fair to the Court. | 11:16AM |
| 20 | MS. M. MILLER:  Yup. | 11:16AM |
| 21 | THE COURT:  But we have -- all of us have a lot | 11:16AM |
| 22 | of background on -- | 11:16AM |
| 23 | MS. M. MILLER:  Yes. | 11:16AM |
| 24 | THE COURT:  And I have reviewed the orders by the | 11:16AM |
| 25 | Judge for travel. | 11:16AM |

*Direct - Khamvongsa*

```
 1              MS. M. MILLER:  Right.                          11:16AM

 2              THE COURT:  Travel requests.                    11:16AM

 3              MS. M. MILLER:  We'll tie it all together and   11:16AM

 4    we'll do it right after court today, Your Honor, so we could  11:16AM

 5    get it filed, if we end Court at 4:00 --                  11:16AM

 6              THE COURT:  Well, no, no, no, I guess the       11:16AM

 7    question is, do you want to continue on or do you want -- 11:16AM

 8    here's --                                                 11:16AM

 9              MS. M. MILLER:  Yeah, no, so this is what I     11:16AM

10    propose:  Let's get Special Agent Khamvongsa back on the  11:16AM

11    witness stand --                                          11:16AM

12              THE COURT:  And then you're going to go to      11:16AM

13    something else?                                           11:16AM

14              MS. M. MILLER:  I'll put a pin in main documents. 11:16AM

15              THE COURT:  Okay.                               11:16AM

16              MS. M. MILLER:  I'm going to go to the rest --  11:16AM

17    I'll be done with his direct examination before lunch.    11:16AM

18              THE COURT:  Okay.                               11:16AM

19              MS. M. MILLER:  We could do his cross-examination 11:16AM

20    after lunch and we could move on with our case.  If the Court 11:16AM

21    rules in favor of the government, then I would ask to be able 11:16AM

22    to bring him back before we close our case.  If the Court 11:16AM

23    doesn't, we've moved on and we haven't held up the jury   11:16AM

24    anymore so --                                             11:16AM

25              THE COURT:  So you want the opportunity to --   11:16AM
```

*Direct - Khamvongsa*

```
 1    you'll send in the stuff tonight then?                         11:16AM

 2              MS. M. MILLER:  Yes.                                  11:16AM

 3              THE COURT:  Okay.  Yes?                               11:16AM

 4              MR. MARTIN:  Your Honor, I would like them to go      11:16AM

 5    do it now, send it to us so we can be prepared to argue it     11:17AM

 6    tomorrow.  I don't want to have to stay up all night           11:17AM

 7    responding to their motion that they get to us tonight and I   11:17AM

 8    don't think it's fair to us to have him come back and forth,   11:17AM

 9    back and forth.  I would just say we go now, give them help    11:17AM

10    however much time they need.                                   11:17AM

11              THE COURT:  Yeah, how long -- if I let you guys       11:17AM

12    recess now?                                                    11:17AM

13              MS. M. MILLER:  We'll get it done before -- if       11:17AM

14    you let us recess now and we come back from lunch at 12:30,    11:17AM

15    we'll have it filed.                                           11:17AM

16              MR. MARTIN:  We want an opportunity to respond.      11:17AM

17              THE COURT:  You guys are fast.                       11:17AM

18              MS. M. MILLER:  We could do that quick.              11:17AM

19              MR. MARTIN:  If they can get, then that will give    11:17AM

20    us time.  I would like us to have the afternoon to finish up   11:17AM

21    and file a response and we could argue it in the morning.     11:17AM

22              THE COURT:  Okay.  That's a possibility.  Yeah,      11:17AM

23    so there is two options, that's Option 1.  Option 2 is option  11:17AM

24    that was proposed by the prosecutor, which you don't want to   11:17AM

25    have?                                                          11:17AM
```

         1          MR. MARTIN:  No, Your Honor.  I want to get                11:17AM

         2    through with this witness, done.  I don't want to have to         11:17AM

         3    piecemeal this together.  I want to get through with this         11:17AM

         4    witness and this is a critical piece of evidence I'd like to      11:18AM

         5    have sometime to review what they are arguing.  It's very --      11:18AM

         6    it's very important to us we have all --                          11:18AM

         7          THE COURT:  What's my calendar tomorrow?  What is           11:18AM

         8    today?  Tuesday.                                                  11:18AM

         9          MS. M. MILLER:  Do I have anything on Wednesday             11:18AM

        10    morning?                                                          11:18AM

        11          (Discussion with clerk.)                                    11:18AM

        12          THE COURT:  Thursday I have something, but don't            11:18AM

        13    have compassionate release stuff.  So why don't we do this,       11:18AM

        14    Counsels, I think that's fair, I think, you know, because         11:18AM

        15    there is a lot of exhibits that were just thrown to me and my     11:18AM

        16    clerk.  So I think it's fair and just be very -- I don't need     11:18AM

        17    to tell you that but just make sure that you're focused on        11:18AM

        18    what is really truly relevant to your justification.             11:18AM

        19          MS. M. MILLER:  Yes, Your Honor.                            11:18AM

        20          THE COURT:  Because that -- instead -- because I            11:18AM

        21    think there was like some stuff I read and I was like, I          11:18AM

        22    wonder what -- I don't really get this but maybe I don't know     11:18AM

        23    your theory on this.                                              11:18AM

        24          MS. M. MILLER:  We'll tie it altogether, Your               11:18AM

        25    Honor.  So we will have this done -- we'll get it -- are we       11:18AM

*Direct - Khamvongsa*

1    going to just break for the rest of the day?                              11:18AM

2              THE COURT:  I'll let jurors eat their lunch.                      11:19AM

3    They haven't eaten their lunch yet but they're going to eat                11:19AM

4    lunch in a few minutes.                                                    11:19AM

5              MS. M. MILLER:  And so we will get it filed and                  11:19AM

6    served on the defendants by, let's say 1:00 p.m. today,                    11:19AM

7    assuming we do that, when can we expect their response so that             11:19AM

8    we can make this argument tomorrow morning at 7:00 a.m. so we              11:19AM

9    can continue on with this?                                                 11:19AM

10             THE COURT:  Counsel, maybe -- if they get it to                   11:19AM

11   you by 1:00, which is now two hours from now, less than two                11:19AM

12   hours.                                                                      11:19AM

13             MS. M. MILLER:  I say give them two hours to                      11:19AM

14   respond.  There is all of them.  There is only us.                         11:19AM

15             MR. MARTIN:  There is only us.                                    11:19AM

16             THE COURT:  Us, you got a strong us here.                         11:19AM

17             MS. M. MILLER:  We do got a strong us.                            11:19AM

18             MR. MARTIN:  Judge, if they can get it to us at                   11:19AM

19   1:00, can we have until 4:00?                                              11:19AM

20             MS. M. MILLER:  That's fine.                                      11:19AM

21             THE COURT:  That's fine.                                          11:19AM

22             MS. M. MILLER:  And then we'll see you tomorrow                   11:19AM

23   at 7:00?                                                                    11:19AM

24             THE COURT:  Yeah, 7:00.                                           11:19AM

25             MS. M. MILLER:  7:00, I love 7:00 hearing.                        11:19AM

*Direct - Khamvongsa*

|    |                                                                              |        |
|----|------------------------------------------------------------------------------|--------|
| 1  | MR. MARTIN:  How about 7:30, Judge?                                           | 11:19AM |
| 2  | MS. M. MILLER:  The way this group goes, I think                             | 11:19AM |
| 3  | we need to start at 7:00 so we get this jury in at 8:15 and we                | 11:19AM |
| 4  | go.  Because Special Agent Khamvongsa, seriously, whether this                | 11:20AM |
| 5  | is in or out, his direct is going to be over and we could then               | 11:20AM |
| 6  | move on to Mr. Guzzetti and we could still get this done this                 | 11:20AM |
| 7  | week, which is, obviously, the government's goal.                             | 11:20AM |
| 8  | THE COURT:  Tomorrow is Wednesday.  Hold on.  I'm                             | 11:20AM |
| 9  | looking at my docket here.  I don't have anything on my docket                | 11:20AM |
| 10 | so I'm just trying to figure out if I have any other --                       | 11:20AM |
| 11 | sometimes I have meetings.  I have to get early in the                        | 11:20AM |
| 12 | morning.  All right, 7:30.  I'll do it.  I'll just do it 7:30.                | 11:20AM |
| 13 | I was going to cut the baby in half and do it 7:15 but we'll                  | 11:20AM |
| 14 | do it 7:30.                                                                   | 11:20AM |
| 15 | MS. M. MILLER:  Okay.                                                         | 11:20AM |
| 16 | THE COURT:  And that will give me staff too                                   | 11:20AM |
| 17 | enough time -- yeah, are we going to be okay at 7:30 with the                 | 11:20AM |
| 18 | marshals letting us in?  We're good.  Let me find out because                 | 11:20AM |
| 19 | marshals -- because that constitutes overtime.  Hold on.  And                 | 11:20AM |
| 20 | we're on continuing resolution with DC.  You know how they                    | 11:20AM |
| 21 | are, kind of slow on our budget.                                              | 11:20AM |
| 22 | (Pause. )                                                                     | 11:21AM |
| 23 | THE COURT:  Is 7:30 okay?  And if not, then we'll                             | 11:21AM |
| 24 | do it at 8:00.  Can you -- he's going to verify right now.                    | 11:21AM |
| 25 | But okay, so prosecution will turn theirs in at -- did you say                | 11:21AM |

| | |
|---|---|
| 1 | 1:00? |
| 2 | MS. M. MILLER:  We'll get it filed by 1:00.  Can |
| 3 | we work in here or do we need to -- |
| 4 | THE COURT:  No, you can work in here, that's |
| 5 | fine.  You want to work in here, that's fine.  And defense |
| 6 | could turn theirs in at 4:00, then we'll look at it and then |
| 7 | we'll meet tomorrow morning to decide.  So depending on what |
| 8 | they say.  Please, Counsels, just be very, you know, specific |
| 9 | and articulate about your justification and your objections. |
| 10 | MS. M. MILLER:  Yes, we will put in to our motion |
| 11 | the specific excerpts from the documents, page number, line |
| 12 | numbers, if there are line numbers -- |
| 13 | THE COURT:  Well if, you add that on, so I don't |
| 14 | have to look for it, that's even better. |
| 15 | MS. M. MILLER:  We're going to do that, Your |
| 16 | Honor, so you do not have to look through a bunch of exhibits, |
| 17 | we'll just attach and file have pictures of those excerpts |
| 18 | with the citations. |
| 19 | THE COURT:  That's a good idea. |
| 20 | MS. MCCONWELL:  And if there is any confidential |
| 21 | information on that, like we've discussed before with bank |
| 22 | records or employees, we would like that redacted. |
| 23 | THE COURT:  All right.  That's fine.  I'm pretty |
| 24 | sure prosecution will take care of that, Ms. Miller? |
| 25 | MS. M. MILLER:  Yes, Your Honor. |

The time stamps on the right: 11:21AM (lines 1-11), 11:22AM (lines 12-25).

*Direct - Khamvongsa*

```
 1              THE COURT:  All right.  And then let's see what        11:22AM
 2   the marshals say.  They're still checking their budget?           11:22AM
 3   They're checking their budget?  I know.  Because their            11:22AM
 4   director is coming out pretty soon.  He might -- he's coming      11:22AM
 5   out in September, might get in trouble if we don't do this        11:22AM
 6   right.  7:30, see you guys at 7:30 a.m.                           11:22AM
 7              MS. M. MILLER:  Thank you, Your Honor.                  11:22AM
 8              THE COURT:  Thank you.  Take care.                      11:22AM
 9              And then, Carmen, just let the jurors know we're       11:23AM
10   going to come back tomorrow morning, come back at... well, we    11:23AM
11   start at 8:15.  I'm going to tell the jurors to come back at     11:23AM
12   9:00.                                                             11:23AM
13              MS. M. MILLER:  Yes, Your Honor.                       11:23AM
14              THE COURT:  Because I do not think we'll be done       11:23AM
15   by 8:15.                                                          11:23AM
16              MR. MARTIN:  I agree.                                  11:23AM
17              MS. M. MILLER:  Yes, Your Honor.                       11:23AM
18              THE COURT:  So I'll tell them 9:00, okay.  To be       11:23AM
19   here, start at 9:00.  So Carmen will let them know.  Okay.       11:23AM
20              (Proceedings concluded at 11:23 a.m. )                 11:23AM
21                             *  *  *                                 11:23AM
22
23
24
25
```

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | August 17, 2022; 7:32 a.m.; Hagatna, Guam | 11:23AM |
| 2 | * * * | 11:23AM |
| 3 | | 07:32AM |
| 4 | THE CLERK:  Morning.  This is Criminal Case No. | 07:32AM |
| 5 | 18-00010, *United States of America versus John D. Walker and* | 07:32AM |
| 6 | *Hansen Helicopters;* Motion Hearing. | 07:32AM |
| 7 | Counsel, please state your appearances, beginning | 07:32AM |
| 8 | with the government. | 07:32AM |
| 9 | MR. LEON GUERRERO:  *Buenas* and *hafa adai*, Your | 07:32AM |
| 10 | Honor.  Stephen Leon Guerrero on behalf of United States. | 07:32AM |
| 11 | Also present are Special Assistant U.S. Attorneys Marie Miller | 07:32AM |
| 12 | and Samantha Miller. | 07:32AM |
| 13 | THE COURT:  Oh, okay.  *Hafa adai.*  *Hafa adai.* | 07:32AM |
| 14 | MS. S. MILLER:  *Hafa adai*, Your Honor. | 07:32AM |
| 15 | THE COURT:  Was I calling you Stephanie Miller | 07:32AM |
| 16 | yesterday, right? | 07:32AM |
| 17 | MS. S. MILLER:  I don't remember. | 07:32AM |
| 18 | THE COURT:  I think I did.  Sorry about that.  I | 07:32AM |
| 19 | just realized that. | 07:32AM |
| 20 | MS. S. MILLER:  I get Amanda a lot too. | 07:32AM |
| 21 | THE COURT:  Sorry.  I just realized that.  I | 07:32AM |
| 22 | apologize. | 07:32AM |
| 23 | MR. MARTIN:  Morning, Your Honor.  Mack Martin | 07:32AM |
| 24 | also present with my client, Jon Walker. | 07:32AM |
| 25 | THE COURT:  Good morning, Mr. Martin and | 07:33AM |

*Direct - Khamvongsa*

1   Mr. Walker.                                                    07:33AM

2           It's not turned on.                                    07:33AM

3           MR. MCCONWELL:  Edward McConwell on behalf of          07:33AM

4   Hansen Helicopters, Laura McConwell and Edward Han.            07:33AM

5           THE COURT:  Okay.  Good morning, Mr. Han,              07:33AM

6   Mr. McConwell, Ms. McConwell.  We'll make sure it's on.  All   07:33AM

7   right.  So the Court is in receipt of the prosecutor's offer   07:33AM

8   -- Plaintiff's -- Pacific Spotters is affiliated with the      07:33AM

9   Defendants.  The Court is also in receipt of Mr. Walker and    07:33AM

10  Hansen Helicopters' response and opposition to this motion     07:33AM

11  regarding specific exhibits, G-2939-82-83, and the Court also  07:33AM

12  in receipt of the United States' reply to the Defendants'      07:33AM

13  response.  So -- and that's it, I don't have any other files,  07:33AM

14  right?                                                         07:33AM

15          MS. M. MILLER:  That's it, Your Honor.  Yeah.          07:33AM

16  There are two issues that have come to our attention and --    07:33AM

17          THE COURT:  Outside of this?                           07:33AM

18          MS. M. MILLER:  Outside of this in the last --         07:33AM

19  well, one has to do with this, and one tangentially has to do  07:33AM

20  with this.  There was apparently another accident yesterday of 07:34AM

21  the helicopter that the Defendants are illegally operating,    07:34AM

22  RPC 6911, which used to be N1DQ.  As you heard the testimony   07:34AM

23  of Mr. Bustos, he flew N1DQ, and Mr. Walker personally went    07:34AM

24  out to the boat to fix it when there was a problem with it.    07:34AM

25  It was in an accident yesterday in the Philippines, or outside 07:34AM

*Direct - Khamvongsa*

1    of the Philippines, and the pilot died.  And two additional      07:34AM

2    people were injured.  In addition to that and, by the way,       07:34AM

3    that is a helicopter that is registered under Pacific            07:34AM

4    Spotters.                                                         07:34AM

5              In addition to that, Your Honor, it appears that        07:34AM

6    Mr. Walker traveled to the Philippines without the approval of   07:34AM

7    the probation office.  We verified that yesterday once we        07:34AM

8    carefully reviewed the documentation showing that Mr. Walker     07:34AM

9    was actually in the Philippines in December of 2018, after he    07:34AM

10   had been indicted and after the Court had imposed restrictions   07:34AM

11   on his travel.  And it appears that he never filed any motion    07:35AM

12   with the Court to allow him to travel, yet we have his           07:35AM

13   passport photographed in the Philippines and we have a           07:35AM

14   notarized signature of Mr. Walker in the Philippines when he     07:35AM

15   flew out there to open up a new bank account for                 07:35AM

16   Pacific.Spotters Corporation.                                     07:35AM

17             That obviously is of great concern to the United       07:35AM

18   States.  We know that Mr. Walker has a jet.  We know that        07:35AM

19   Mr. Walker had the capacity to fly from here to the              07:35AM

20   Philippines on his own jet.  And we're now very concerned        07:35AM

21   about him fleeing in anticipation of a negative jury verdict.    07:35AM

22   So we will be filing a motion to ask the Court to consider       07:35AM

23   remanding Mr. Walker until the end of this trial because we      07:35AM

24   are very concerned about that.  So I wanted to bring those two   07:35AM

25   things to the Court's attention before we consider -- proceed    07:35AM

*Direct - Khamvongsa*

```
 1    with this proffer.                                        07:36AM
 2               THE COURT:  All right.  Yes, Mr. Martin?       07:36AM
 3               MR. MARTIN:  First, Your Honor.                07:36AM
 4               THE COURT:  Yup.                               07:36AM
 5               MR. MARTIN:  Relating to an accident, which we 07:36AM
 6    have no clue what they're talking about since they provided us 07:36AM
 7    no information on it, we don't know what caused the accident 07:36AM
 8    since they provided us no reports.  If it was pilot error, if 07:36AM
 9    it even happened.  I don't know the purpose that the       07:36AM
10    government is bringing this to anyone's attention other than 07:36AM
11    to attempt to prejudice our case in the eyes of the Court. 07:36AM
12    It's totally inappropriate to bring something up without any 07:36AM
13    evidence whatsoever to support it, and I am offended that the 07:36AM
14    government would do that at this point in the trial.       07:36AM
15               Secondly, if Ms. Miller had been involved in this 07:36AM
16    case from the beginning, she would know that until the Second 07:36AM
17    Superseding Indictment, which was in January of 2022,     07:36AM
18    Mr. Walker had -- 2021, Mr. Walker had absolutely no      07:37AM
19    restrictions on his travel.  It was only at the Second    07:37AM
20    Superseding Indictment at their insistence that he be detained 07:37AM
21    that the magistrate judge put restrictions on him that    07:37AM
22    required him to contact his probation officer for any travel. 07:37AM
23    He has not traveled improperly at all.  And the allegations by 07:37AM
24    the government are unfounded, and that, again, offends me  07:37AM
25    because the order allowing him release did not require     07:37AM
```

1   anything for travel like that.  So I -- I don't know why we're   07:37AM
2   going into things that, number one, are designed to prejudice   07:37AM
3   my client without evidence to support it, and number two, are   07:37AM
4   designed to prejudice our case in your eyes, Your Honor.  It   07:37AM
5   offends me, and it's continued throughout this case.   07:37AM
6          MR. LEON GUERRERO:  Your Honor, if I may?   07:37AM
7          THE COURT:  Okay.  Hold on.  Hold on.  Does the   07:37AM
8   other Counsels -- go ahead.   07:37AM
9          MR. MARTIN:  That -- that's it, Your Honor.  I   07:38AM
10  mean, I don't like -- if they've got some evidence, they need   07:38AM
11  to provide it to us in this case.   07:38AM
12         THE COURT:  Okay.  Ms. McConwell, did you want to   07:38AM
13  say something?   07:38AM
14         MS. MCCONWELL:  Not on these two issues, Your   07:38AM
15  Honor.   07:38AM
16         THE COURT:  Oh, okay.  All right.  Yes, Mr. Leon   07:38AM
17  Guerrero, go ahead.   07:38AM
18         MR. LEON GUERRERO:  Yes, Your Honor.  With   07:38AM
19  respect to the travel restrictions, I know that the government   07:38AM
20  had opposed the travel by the Defendants.  Travel restrictions   07:38AM
21  were in place for foreign travel, not domestic travel.  So the   07:38AM
22  Defendants were able to travel domestically within the United   07:38AM
23  States, but any foreign travel, there had to be a motion so we   07:38AM
24  had an opportunity to oppose it.  So I want to --   07:38AM
25         THE COURT:  But, you know, I don't really want to   07:38AM

*Direct - Khamvongsa*

1  get into the merits of it, file your motion.                    07:38AM

2        Don't worry, Mr. Martin, I'm not prejudiced by           07:38AM

3  it.  I mean, I don't see anything before the Court.  If there   07:38AM

4  is an allegation, I'll certainly review the motion, and then    07:38AM

5  from there, I'll decide.  But the parties need to, you know,    07:38AM

6  have their ducks in order.  If there really was a violation     07:38AM

7  they'll file it, and I'm sure the U.S. probation and pretrial   07:39AM

8  officer will be knowledgeable of this issue.                    07:39AM

9        MS. M. MILLER:  We will be doing that.                    07:39AM

10       THE COURT:  As I recall, I think it was Judge             07:39AM

11  Manibusan who did most of the bail detention hearing.          07:39AM

12       MS. M. MILLER:  Right.  And the other Defendants          07:39AM

13  actually did seek permission from Judge Manibusan to travel in 07:39AM

14  2018, both Mr. Kapp and Mr. Crowe.  As a matter of fact, some  07:39AM

15  of the proffer evidence that we submitted to your Court, Your  07:39AM

16  Honor, yesterday included the allegations made by Mr. Kapp     07:39AM

17  that were asserted by Mr. McConwell here about traveling to    07:39AM

18  the Philippines in order to work with Pacific.Spotters on      07:39AM

19  behalf of Hansen Helicopters.                                  07:39AM

20       So we will be filing that motion.  The reason why        07:39AM

21  I brought it up is I want Your Honor to be aware of it because 07:39AM

22  we just confirmed with probation yesterday that that was a     07:39AM

23  violation, number one.  Number two, we just got notification   07:40AM

24  this morning about this accident.  It was in the news, and it  07:40AM

25  was flagged by the FAA.  We will be sending that information   07:40AM

1   to the Defendants.  We're bringing it to this Court's      07:40AM
2   attention because the seriousness of the fact that the     07:40AM
3   Defendant has been permitted to continue to fly these      07:40AM
4   helicopters, that we heard testimony are not airworthy, and to  07:40AM
5   continue his fraudulent operation in the Philippines with  07:40AM
6   these identical helicopters is just an unbelievable fraud on  07:40AM
7   the United States, on the Court, it's our duty.            07:40AM
8               THE COURT:  Well, let me ask you since I did not  07:40AM
9   do the bail detention hearing, as I recall.  Was there a   07:40AM
10  request --                                                 07:40AM
11              MS. M. MILLER:  There was.                      07:40AM
12              THE COURT:  -- was there a request in terms of --  07:40AM
13              MS. M. MILLER:  Of remanding --                 07:40AM
14              THE COURT:  Not -- okay, I don't know, remand is  07:40AM
15  one thing.  Another thing might be --                      07:40AM
16              MS. M. MILLER:  Yes.  Yes.                      07:40AM
17              THE COURT:  -- continuation, I'm sorry,         07:40AM
18  continuation of certain --                                 07:40AM
19              MS. M. MILLER:  Yes.  There was a motion for    07:41AM
20  protective order filed both under Rule 16, and a motion to  07:41AM
21  actually allow the government to seize the helicopters that  07:41AM
22  were being illegally operated under 17.  What happened was,  07:41AM
23  Your Honor, and this is something we just don't know why.  07:41AM
24  Judge Manibusan, as you know, retired.  Judge Bordallo took  07:41AM
25  over.  Judge Bordallo heard those motions.  Judge Bordallo  07:41AM

1   denied those motions.  And then Judge Bordallo recused himself    07:41AM
2   from hearing any other motions that were filed in the case        07:41AM
3   saying that he had a conflict of interest, and we have no idea     07:41AM
4   what that conflict is.  We have no idea why.  And so that has      07:41AM
5   just left kind of a question mark for us in this case.  But I      07:41AM
6   do want the record to reflect that the government has made         07:41AM
7   multiple, multiple attempts to try to cease the operations to      07:41AM
8   avoid exactly what just happened yesterday.  Another pilot         07:41AM
9   died.                                                             07:41AM
10                  THE COURT:  Okay.  Well --                        07:41AM
11                  MR. MARTIN:  May I respond?  May I respond, Your   07:41AM
12  Honor.                                                            07:42AM
13                  THE COURT:  Well, go ahead, but let me say before 07:42AM
14  you do that, since I wasn't the judge that handled the bail       07:42AM
15  detention hearing, I don't have the history -- I mean, I've       07:42AM
16  read some of it, but not all of it.  But in terms of what may     07:42AM
17  have happened, but -- so -- I can't really comment on what's      07:42AM
18  before a judge, I mean, what had came before Judge Bordallo or    07:42AM
19  Judge Manibusan, I don't know.  And putting that aside, we're     07:42AM
20  here in a new day, file your motion.  We'll just proceed          07:42AM
21  forward.  Yes?                                                    07:42AM
22                  MR. MARTIN:  Her comments that she just made,     07:42AM
23  Your Honor, refer to them trying to cease helicopters, had        07:42AM
24  nothing to do with the bond hearing.  Both those motions were     07:42AM
25  denied by the Court.                                              07:42AM

*Direct - Khamvongsa*

```
 1                THE COURT:  All right.  I will submit to the        07:42AM
 2   Court that my client has not violated any court order.  He has   07:42AM
 3   not been to the Philippines in violation of his conditions of    07:42AM
 4   bond.  If they will give us a date, time, and place, we will     07:42AM
 5   verify that.  But to come in here and try to distract this       07:42AM
 6   trial, which it happens every day, we get something new coming   07:43AM
 7   in.  I -- you know, I thought we were going to try to finish     07:43AM
 8   this case, but apparently we're not going to until Christmas.    07:43AM
 9                Yeah, we're going to finish it.  Don't worry        07:43AM
10   about it.                                                        07:43AM
11                MS. M. MILLER:  The accident is something new.      07:43AM
12   The death is something new.                                      07:43AM
13                THE COURT:  Okay.  Well, but that's not -- so the   07:43AM
14   accident is something new.                                       07:43AM
15                MS. M. MILLER:  The death is something new.         07:43AM
16                THE COURT:  But the issue of what's relevant is     07:43AM
17   not before me.  So you're going to have to bring it -- you       07:43AM
18   have to bring it formally.                                       07:43AM
19                MS. M. MILLER:  We're going to file that.          07:43AM
20                THE COURT:  That's right.                           07:43AM
21                MS. M. MILLER:  I want Your Honor to know because   07:43AM
22   I, you know --                                                   07:43AM
23                THE COURT:  Yeah, give me heads up.  I got it.  I   07:43AM
24   appreciate that.                                                 07:43AM
25                MS. M. MILLER:  Yes.                                07:43AM
```

*Direct - Khamvongsa*

          THE COURT:  But I would say that if the defense

-- if Mr. Martin, he seems to be quite adamant that you're

wrong about the dates.  Whether -- whether that's true or not

doesn't matter.  What matters is maybe you should meet with

him after the next break to confirm that because if he has a

-- an explanation or you guys have a misunderstanding with

U.S. Probation and Pretrial, then that particular motion is

for nothing.

          MS. M. MILLER:  Absolutely.  We would love to do

that.  We would absolutely like to meet Mr. Martin, show him,

we will show him the photograph of the passport that was taken

in December of 2018, and we'd love to hear the explanation.

That would be great.

          THE COURT:  I mean, they don't have to respond,

but you could at least give them the dates.

          MS. M. MILLER:  Absolutely.  100 percent.

          THE COURT:  And perhaps Mr. Martin would want to

talk -- walk in with his client to speak to the probation

officer who's his -- or pretrial officer, I should say --

pretrial officer, to figure out what's going on.  Yes?

          MR. MARTIN:  Your Honor, he reports to his

officer every week.

          THE COURT:  Okay.

          MR. MARTIN:  If he was out of the country, they

would know it.

```
 1            THE COURT:  Okay.  Well, usually, what's          07:44AM

 2   interesting too though is if there is a violation -- I will  07:44AM

 3   say this, if there is a violation, usually my pretrial      07:44AM

 4   officers bring in a violation, they let us know.  I'm not sure  07:44AM

 5   --                                                          07:44AM

 6            MS. M. MILLER:  They were unaware because there    07:44AM

 7   was no record of the travel.                                07:44AM

 8            THE COURT:  Okay.  I see.  All right.              07:44AM

 9            Yes, Ms. McConwell?                                07:44AM

10            MS. MCCONWELL:  Before we start our hearing on     07:44AM

11   the motion that was filed by the government -- before we start  07:44AM

12   our hearing, yesterday if you'll recall, Your Honor, what   07:45AM

13   paused our trial and paused our conversation was the        07:45AM

14   government's attempt to admit its Exhibit 2939-82, 83.  And  07:45AM

15   your request was for them to provide you the offer that     07:45AM

16   supports the admission of those two pages --                07:45AM

17            THE COURT:  Correct.                               07:45AM

18            MS. MCCONWELL:  -- out of that document.  What     07:45AM

19   they filed yesterday was completely something different than  07:45AM

20   what we had discussed in Court yesterday.                   07:45AM

21            MS. M. MILLER:  What?                              07:45AM

22            MS. MCCONWELL:  And so -- yeah, it is.             07:45AM

23            THE COURT:  All right.  Well, then --              07:45AM

24            MS. MCCONWELL:  And quite frankly, Your Honor,     07:45AM

25   the frustration from the point of Hansen Helicopters in     07:45AM
```

1    representing our client is it's a constant, "this is the          07:45AM

2    issue," but then we're over here, and then we take sharp left     07:45AM

3    turns, and there has just been this continual drip, drip, drip    07:45AM

4    throughout the trial that one argument is made and then when      07:45AM

5    something else is filed, it takes us off in a completely          07:45AM

6    different direction.                                              07:45AM

7              We're just trying to get this particular case           07:45AM

8    tried, and it's constantly being changed by the United States    07:46AM

9    and, yeah, and... I'm extremely frustrated by the adjectives     07:46AM

10   that the prosecution continues to use because they're being      07:46AM

11   the basically the prosecution, the jury and executioner in the   07:46AM

12   form of the questions that are used.  Pardon me, Ms. Miller,     07:46AM

13   calling it the form, in her questions, calling them the guilt,   07:46AM

14   the fraud, the illegality, all of those are highly, highly       07:46AM

15   inflammatory and the overall cumulative effect, since this       07:46AM

16   trial began in March, I don't know how the jury ever avoids it   07:46AM

17   and then now, they're trying to reform, apparently with the      07:46AM

18   motion that was filed yesterday, the indictment.  And so --      07:46AM

19             THE COURT:  Well, if that's the case, then we'll        07:46AM

20   address that.  But let's get to the motion, you guys.            07:46AM

21             MS. M. MILLER:  Yes, Your Honor.                        07:46AM

22             THE COURT:  Let's get to it because the jury is        07:46AM

23   waiting.                                                          07:46AM

24             MS. M. MILLER:  Yes, Your Honor.                        07:46AM

25             THE COURT:  And I will address any further             07:46AM

```
 1    distractions.  I do think that we should focus, but I do        07:46AM
 2    appreciate the fact at least now you guys know, they may file    07:46AM
 3    a motion for remand, revocation of detention.                    07:47AM
 4              MS. M. MILLER:  Absolutely.                            07:47AM
 5              THE COURT:  Revocation, but that -- you know, at       07:47AM
 6    least you know.  Be prepared.                                    07:47AM
 7              MS. M. MILLER:  Right.  All right, Your Honor, so      07:47AM
 8    --                                                               07:47AM
 9              THE COURT:  Whether or not it's true or not, I         07:47AM
10    don't know.  But let's go.  Proceed.                             07:47AM
11              MS. M. MILLER:  So regardless of what Ms.              07:47AM
12    McConwell said, which is absolutely incorrect, our entire        07:47AM
13    offer of proof yesterday was geared towards why the two pages    07:47AM
14    that were at the very end of the bank records that were          07:47AM
15    originally admitted several months ago should in fact come in.   07:47AM
16    And the Court yesterday said that you did not see the            07:47AM
17    connection between Pacific Spotters and Limey Air and the        07:47AM
18    Defendants in order to allow that in.  So our offer of proof     07:47AM
19    was geared directly towards that, and we started our offer of    07:47AM
20    proof with the exhibit itself, 2939, pages 82 and 83.  And,      07:47AM
21    Your Honor, when you look at 2939, pages 82 and 83 and, Ms.      07:47AM
22    Miller, is that something could you bring up on Trial Director   07:47AM
23    for the Court to see?                                            07:47AM
24              MS. S. MILLER:  Yup.                                   07:47AM
25              MS. M. MILLER:  If we could show you, Your Honor.      07:48AM
```

1    On those two pages, what we see is the Limey Air bank account,    07:48AM
2    and we see funds coming in to the Limey Air bank account from    07:48AM
3    Pacific Spotters Corporation.  When you look at those last two    07:48AM
4    pages, that's a summary of wire transfers from Pacific    07:48AM
5    Spotters to Limey Air starting at the end of 2018 and going    07:48AM
6    through 2019.    07:48AM
7            Do you have the number 2939?    07:48AM
8            And we're going to pull up those two pages.  And,    07:48AM
9    Ms. Miller, could you just focus in on the first page and blow    07:49AM
10   up that part there.    07:49AM
11           So, Your Honor, this was a record we received    07:49AM
12   from the bank, and it was the bank account for Limey Air    07:49AM
13   Service Inc., and as Your Honor knows and why the rest of the    07:49AM
14   record was previously admitted is Limey Air Service Inc. is,    07:49AM
15   according to the Defendant's own submission to this Court, one    07:49AM
16   of the companies that is being used by Jon Walker and Hansen    07:49AM
17   Helicopters.  It's contained on this list.  Limey Air Services    07:49AM
18   Inc., which is why we got the subpoena and we got those bank    07:49AM
19   records.  When you look at pages 82 and 83, you see that this    07:49AM
20   is a wire transfer schedule showing that -- and if you look at    07:50AM
21   the dates received, the dates it starts on August 31st of    07:50AM
22   2018, and what is very important about this is that this is    07:50AM
23   after the first indictment was filed against Jon Walker and    07:50AM
24   Hansen Helicopters.  So we have August of 2018, wire transfers    07:50AM
25   start coming in to Limey Air, one of the Defendants admitted    07:50AM

*Direct - Khamvongsa*

alter ego shell companies from -- and this is what's really 07:50AM

important, Your Honor -- the originator on this document is 07:50AM

Pacific Spotters Corporation.  And you see that on pages 82 07:50AM

and 83. 07:50AM

Now the rest of the exhibits that were already 07:51AM

entered into evidence, 2939, show the creation of Limey Air 07:51AM

and show the creation of the bank account.  Now, if we go to 07:51AM

the rest of the exhibits for 2939, which the government cited 07:51AM

in its proffer and we actually put in the excerpted pages, we 07:51AM

see that Limey Air was created in 1999.  This was after Jon 07:51AM

Walker purchased Hansen Helicopters from Vern Hansen.  And he 07:51AM

created it in 1999, and we also submitted documentation 07:51AM

showing that when it was created, Hansen Helicopters, the 07:51AM

company, that Jon Walker owned 99.9% of, owned 99.9% of Limey 07:51AM

Air. 07:52AM

We produced to Your Honor 2939-39, which was an 07:52AM

excerpt from the minutes creating Limey Air, and we also 07:52AM

showed Your Honor the signature of the Defendant, Jon Walker, 07:52AM

in creating that company on May 3rd of 1999.  Exhibit 2939-49 07:52AM

shows that Hansen Helicopters is the 99.9% owner of Limey Air, 07:52AM

and Jon Walker is also listed as an owner, and he also, again, 07:52AM

signs off on that document that we produced to the Court, and 07:52AM

that has been entered into evidence in this case. 07:52AM

Beginning in 2015, we see a reference in these 07:52AM

records to Wilma's Flight Services.  Wilma's Flight Services, 07:52AM

1    as you know, Your Honor, based on the Defendant's own      07:53AM
2    admission and submission and the evidence admitted in this  07:53AM
3    court, is another one of the companies that is used by the  07:53AM
4    Defendants as a shell alter ego of Hansen and Jon.  The reason 07:53AM
5    why it's important to know that Wilma's Flight Services makes 07:53AM
6    it into these records is that as you heard from the testimony 07:53AM
7    of special agent Khamvongsa, Wilma's Flight Services is the 07:53AM
8    company that manages all of the schedules and billings for the 07:53AM
9    tuna boat leases.  And we produce to Your Honor 2939-72 which 07:53AM
10   references Wilma's Flight Services as an affiliate and minutes 07:53AM
11   that were signed again by Jon D. Walker, the Defendant, who is 07:54AM
12   identifying that the financial statements and information that 07:54AM
13   apply to Wilma's support Limey Air's income into the bank   07:54AM
14   accounts.                                                    07:54AM
15          Less than one month after the indictment, Limey      07:54AM
16   Air, with Mr. Walker as the chairman and now the 99.9% owner 07:54AM
17   of Limey Air, opens up a bank account for Limey Air, and    07:54AM
18   that's 2939-73.  So now we have 1990 -- sorry, 2018 and     07:54AM
19   Mr. Walker is the 99.9% owner of Limey Air, and he opens up a 07:54AM
20   bank account.  You see the minutes there that we produced   07:54AM
21   showing that he said we wanted to open up the bank account. 07:55AM
22   This is right after he's indicted.  This coincides with     07:55AM
23   Special Agent Khamvongsa's testimony --                      07:55AM
24          THE COURT:  You mean the second indictment?          07:55AM
25          MS. M. MILLER:  Yes, Your Honor.  This is the         07:55AM

first indictment.  This is right after the initial indictment. 07:55AM

And this also aligns with Special Agent Khamvongsa's testimony 07:55AM

that Jon Walker was closing and removing funds from the 07:55AM

accounts that the government was aware of and creating 07:55AM

accounts that the money could be moved into. 07:55AM

We then show Your Honor 2939, that's a typo in 07:55AM

our proffer, dash 76, Jon Walker notarizes an affidavit 07:55AM

confirming he is now the 99.9% owner of Limey Air Services 07:55AM

Inc., and interestingly in this -- it's dated July 25th, 2018 07:55AM

-- he indicates that Limey Air services, a U.S. corporation, 07:55AM

and he uses the address of Hansen Helicopters for Limey Air. 07:56AM

So now we have Jon Walker, 2018, 99.9% owner of Limey Air, and 07:56AM

by the way, Your Honor, the bank records indicate that Limey 07:56AM

Air is in the business of leasing helicopters to tuna boats 07:56AM

for income.  And we know that Limey Air is associated with 07:56AM

Wilma's, which as the Court saw, was the company that was 07:56AM

being used to schedule all of the billings, handle all of the 07:56AM

accounts receivable for all of the helicopters subject to this 07:56AM

indictment.  So Jon Walker opens up this bank account.  And we 07:56AM

have the minutes, and we have the indication that he says, 07:57AM

we're opening up this account, I'm the 99% -- 99.9% owner of 07:57AM

the account, and here it is, 2939-81, Limey Air Services Inc., 07:57AM

we produced this in our proffer, incorporated in Guam, which 07:57AM

by the way Your Honor, is inconsistent with what the 07:57AM

Defendants have represented to the Court and to the 07:57AM

```
 1    government.  And Jon Walker is the president, director, 99.9%     07:57AM
 2    owner, and what happens?  The bank account is opened and one      07:57AM
 3    month later, funds start coming in from Pacific Spotters          07:57AM
 4    Corporation into the Limey Air bank account.  We're talking       07:57AM
 5    about $5 million, Your Honor, from August of 2018                 07:58AM
 6    through 2019, from Pacific Spotters.                              07:58AM
 7                 Now, the question became, what is the connection     07:58AM
 8    between Pacific Spotters and Jon Walker?  Well, the government    07:58AM
 9    thinks that's very clear, but the government also refers the      07:58AM
10    Court to documents regarding that relationship.  If Your Honor    07:58AM
11    looks at the documents that we produced previously in this       07:58AM
12    case, Exhibit 3003, one of the first things that you're going     07:58AM
13    to see that we produced is that the helicopters that are being   07:58AM
14    used are all insured by another one of the Defendant's shell     07:58AM
15    companies, Caledonian Insurance.  And that's why we produced      07:58AM
16    it to you as well, Your Honor, to show the connection.           07:58AM
17    Caledonian Insurance Company, which is 99.9% owned by Hansen      07:59AM
18    Northern, which is 99.9% owned by Jon Walker.  Jan's Flight       07:59AM
19    Service, which is listed as one of the Vanuatu shell companies   07:59AM
20    used by Jon Walker, is listed as the owner of these              07:59AM
21    helicopters.  Which, by the way, this is part of the fraud,       07:59AM
22    that is not the registered owner of these helicopters            07:59AM
23    according to what Jon Walker filed with the FAA.  So that's       07:59AM
24    the first document we see the connection between Jan's and we     07:59AM
25    see the connection with the... Pacific Spotters Corporation in    07:59AM
```

1    3003-18 and 19.                                          07:59AM

2            And what is the connection here?  We attached a    07:59AM

3    board resolution that shows that Jon Walker sold aircraft from  07:59AM

4    Jan's Helicopters, so Jan's Helicopters supposedly owned these  08:00AM

5    aircraft.  This is another connection that's very important  08:00AM

6    for the Court to know.  This list of the helicopters, under  08:00AM

7    Jan's Helicopters, that Jon Walker then sells to Pacific   08:00AM

8    Spotters, is the same list of helicopters that were issued a  08:00AM

9    cease-and-desist order and a delisting and a deregistration  08:00AM

10   order from the Philippine authorities because of Jon Walker's  08:00AM

11   failure to comply with their rules and their regulations.  08:00AM

12           The helicopters had been registered in the       08:00AM

13   Philippines from 2009, they never reregistered them properly,  08:01AM

14   they never allowed an inspection of them, they never produced  08:01AM

15   any proof that they were airworthy, and they never produced  08:01AM

16   any proof that the pilots flying them were registered in the  08:01AM

17   Philippines and certified as Philippine pilots.  That has come  08:01AM

18   into evidence as Exhibit 355, G-355, we see that notice   08:01AM

19   forcing the deregistration and delisting of all of these   08:01AM

20   helicopters for the failure to comply with the Philippine  08:01AM

21   authorities rules and regulations, just like they were failing  08:01AM

22   to comply with the FAA rules and regulations.  But here we see  08:01AM

23   Jon Walker selling these helicopters to, you guessed it,   08:01AM

24   Pacific.Spotters.  And we produced this to Your Honor, and you  08:01AM

25   see Jon Walker's signature on this document, and that's   08:02AM

```
1   page 10 of our offer.  So Jon Walker sells his helicopters to        08:02AM
2   himself, but in the name of a different company.                     08:02AM
3            So now Pacific.Spotters owns these helicopters.             08:02AM
4   And now I think it's important for us to take a step back and       08:02AM
5   look at these helicopters that are sold to Pacific.Spotters.        08:02AM
6            These are helicopters that are all in the Second           08:02AM
7   Superseding Indictment.  These are helicopters that have a          08:02AM
8   corollary U.S. registration number attached to them.  These        08:02AM
9   are helicopters that Mr. McConwell produced in a list that he       08:02AM
10  represented to this Court was from the Philippine authorities       08:02AM
11  that identifies them as Hansen Helicopter helicopters that          08:02AM
12  they intend to use in the Philippines.  In the list that            08:03AM
13  Mr. McConwell produced as Defense Exhibit 4-124, he also            08:03AM
14  references the name Pacific Spotters Corporation as being the       08:03AM
15  company under which these helicopters will be operating.  But       08:03AM
16  what's really interesting about these helicopters, Your Honor,      08:03AM
17  is that they're on the MD Helicopters Destroyed List.  They've      08:03AM
18  been involved in multiple accidents.  And Jon Walker has           08:03AM
19  actually represented falsely to the FAA that several of them       08:03AM
20  have been lost at sea.  And these are the helicopters that are     08:03AM
21  being sold to Pacific Spotters Corporation, so that after the      08:03AM
22  first indictment, the Defendant can continue his fraud in the      08:03AM
23  Philippines, because he couldn't continue his fraud here in        08:03AM
24  Guam.                                                               08:03AM
25            We also attached, Your Honor, on page 10 of our          08:04AM
```

proffer, the photograph of Mr. Walker and the reference to his

U.S. passport number and the date on which that information

was produced in the Philippines to the Philippine authorities

so that Mr. Walker could sign the paper work for this

Philippine corporation, Pacific.Spotters Corporation, so that

he could identify himself as the president and director of the

company, as the primary owner of the company, and represent to

the Philippine authorities that the company is a company.  And

we produced the articles of incorporation for Pacific Spotters

Corporation signed by Jon Walker, identifying him, Your Honor,

as you could see here on page 11 and 12, as the primary owner,

the primary director, the primary controller, the person

responsible for the helicopters that are being leased pursuant

to contracts to boat companies out in the middle of the

Pacific Ocean.

Then we learned this morning that one of these

helicopters, which was previously N1DQ, which is currently

being operated in the Philippines as RPC 6911, crashed

yesterday and killed another pilot.  It hasn't stopped, Your

Honor.

We also showed Your Honor in this proffer that

his employee and co-Counsel, Turner Kapp, filed a motion with

the Court, which is marked as a Government's Exhibit, 775, and

he represented the following to Judge Manibusan, he said,

"Hansen works with Pacific.Spotters Corporation, a Philippines

1   company, that contracts with fishing vessels to supply

2   helicopters, pilots and mechanics."  Page 2, paragraph 7,

3   "Since December 2018, I've been the vice president of

4   Pacific.Spotters."  Page 2, paragraph 8, "In order to

5   discharge my professional duties to Hansen Helicopters, it is

6   necessary that I be in Guam most of the time, but it is also

7   necessary for me to travel overseas to the Philippines where

8   Hansen has its business activities."  And he goes on through

9   page 4 in paragraphs 9 through 13 making these

10  representations.

11          Then we have in Exhibit 770, Mr. McConwell

12  stating the following, and I quote "The fact that Hansen

13  Helicopters has aviation business interests in the

14  Philippines, which requires the presence of Mr. Kapp as the

15  person in charge of maintenance and safety of Hansen

16  affiliates, aircraft, has been known to the government and

17  monitored."  So Mr. McConwell is identifying Pacific.Spotters

18  as an affiliated company of Hansen Helicopters.

19          This is before we had the records that were

20  produced in evidence as Exhibit 3003 from the Philippine

21  authorities, showing what was given to them.  The articles of

22  incorporation, again, Jon Walker, same group.  We now own

23  this, we now operate it, etc.

24          Then we have Mr. Kapp filing something through

25  Mr. McConwell, Exhibit 771, where he indicates to the labor

department in the Philippines that he is working for

Pacific.Spotters, but stateside his employer is Limey Air.  We

see another direct connection between Pacific.Spotters and

Limey Air if the receipt of the funds in Exhibit 2939 isn't

enough.

        Then what we see, Your Honor, are the leases.

The leases for the helicopters that were being used in the

fraud against the United States.  Those same helicopters are

now being used in leases for Pacific.Spotters, which of course

makes sense, because Jon Walker sold the helicopters from

himself to himself to continue conducting his fraud.  We

produced to Your Honor leases showing that these helicopters

and these identical helicopters, and by the way, the examples

we produced to Your Honor shows he's so bold as to even still

be using N-numbered helicopters even though he deregistered

all of the helicopters with the FAA claiming to the FAA,

himself personally, that these helicopters were being

deregistered because they were going to be exported to the

Philippines, and they were going to be used in the

Philippines.  You can't use U.S. registration numbers anymore

once you do that.  We've heard that testimony.  He knows that.

He's been an A&P mechanic for his entire career.  He's been an

IA.  He's worked with the FAA; intentional fraud.

        And then we see, Your Honor, that Judge Manibusan

is concerned about the representations being made not only by

*Direct - Khamvongsa*

Mr. Kapp, but by his attorney, Mr. McConwell.  Because when

Judge Manibusan was initially being asked to allow travel to

the Philippines, he was being told by Mr. Kapp, co-defendant,

co-conspirator, employee and friend of Jon Walker, we have

this business in the Philippines, it's affiliated with Hansen

Helicopters, it's Pacific.Spotters, but I'm an employee of

Hansen Helicopters, so Judge, you don't have to worry about me

fleeing, don't be concerned about it.  I get a diminutive

compensation from Pacific.Spotters.  Everything -- you know, I

live in Guam, my employment is in Guam, you don't have to

worry about it.  Judge Manibusan asks Mr. McConwell, Can you

explain the relationship between Pacific Spotters and Hansen

Helicopters?  And Mr. McConwell can only say, Well, it's an

affiliate.  It's an affiliate, can't tell you anymore than

that.

         We also quoted Judge Manibusan when he said, when

he questioned the Defendant about why he never disclosed to

the probation officer as part of his pretrial requirements

that he was employed by this foreign corporation.  His

attorney, Mr. McConwell said, It's because his interests were

de minimis, and there is no income from Pacific Spotters

Corporation, the Defendant just started earning income from

Pacific Spotters in January of 2019.  The defense Counsel and

the Defendants would not explain anything further to Judge

Manibusan, and Judge Manibusan was concerned and said that he

```
 1    found it suspect that the Defendant was representing to the      08:11AM
 2    Court that the relationship with Pacific Spotters was de         08:11AM
 3    minimis, that it was an affiliate of Hansen Helicopters, yet     08:11AM
 4    when the judge was looking at the information, it seemed like    08:11AM
 5    there was more going on there.                                   08:11AM
 6            Now, Your Honor, this happened back in 2019.  And        08:11AM
 7    now here we are in 2022, and we have a lot more information,     08:11AM
 8    and we know, yes, there was a lot going on there, which brings   08:11AM
 9    us back to the point of this particular bank account.           08:11AM
10    Pacific.Spotters was created to continue the fraud, to          08:12AM
11    continue to use the same helicopters that are identified in     08:12AM
12    the Second Superseding Indictment, it was another shell         08:12AM
13    corporation, that just wasn't listed on the Defendants'         08:12AM
14    exhibit that it produced to the Court because it wasn't         08:12AM
15    created for this purpose until 2018.                            08:12AM
16            We know that it was used by Jon Walker, created         08:12AM
17    by Jon Walker, we know that it had an association with the      08:12AM
18    Limey bank account because we see the money coming into the     08:12AM
19    Limey bank account from Pacific Spotters, and by the way, the   08:12AM
20    Limey account has the same address as Hansen Helicopters here   08:12AM
21    on Guam.  Because of all of these reasons, Your Honor, it is    08:12AM
22    absolutely appropriate, relevant and very probative to this    08:12AM
23    fraud to show the modus operandi, that it is continuing for    08:12AM
24    this evidence to come in.  That is why we presented this       08:13AM
25    information to the Court in this way so the Court could see     08:13AM
```

1  very clearly the connection between Jon Walker, Hansen
2  Helicopters, Limey Air, and Pacific Spotters Corporation.
3            THE COURT:  All right.  Thank you.  Okay.  Who
4  wishes to go -- you're going to argue the matter, Ms.
5  McConwell?  Okay.
6            MS. M. MILLER:  Oh.  Ms. Miller just brought
7  something else up to my attention.  So Pacific Spotters
8  Corporation actually lists the Guam address of Hansen
9  Helicopters on its website and on the "contact us" form on the
10 website.  Just another connection showing this isn't some
11 random entity.
12           MS. MCCONWELL:  Your Honor, can you hear me?
13           THE COURT:  Bring the mic a little closer in.
14 There we go.
15           MS. MCCONWELL:  Is that better?
16           THE COURT:  Yeah.  Thank you.
17           MS. MCCONWELL:  Just holler at me if I need to be
18 louder.
19           THE COURT:  Okay.
20           MS. MCCONWELL:  I'm going to start in reverse on
21 the -- for Ms. Miller's argument.  So she has spent sometime
22 claiming that Mr. McConwell made representations on behalf of
23 Mr. Kapp at a hearing on May 22nd, 2019.  I would start by
24 saying that at this point in our proceeding, Mr. McConwell's
25 representing Hansen Helicopters, and the proffer for this

 1    Exhibit 2939-82 and 83 is relevant only to Counts 100          08:15AM

 2    through 110, to which Hansen Helicopters is not a party.       08:15AM

 3    That's my first thing.  My second thing--                     08:15AM

 4              MS. M. MILLER:  Your Honor, the question is then     08:15AM

 5    why is she up here even arguing --                            08:15AM

 6              MS. MCCONWELL:  Would you ask Ms. Miller not to      08:15AM

 7    interrupt me?                                                 08:15AM

 8              THE COURT:  Hold on.  Let her finish, then you       08:15AM

 9    could --                                                      08:15AM

10              MS. M. MILLER:  Okay.                                08:15AM

11              THE COURT:  What was that?  Go ahead.                08:15AM

12              MS. MCCONWELL:  And then if I would direct your      08:15AM

13    Court -- the Court's attention to -- because this is beyond   08:15AM

14    what was in our original filing last night.  If you look at   08:15AM

15    ECF 237, Mr. McConwell was not present at that hearing,       08:15AM

16    Attorney Anthony Perez was the attorney that was representing  08:15AM

17    Mr. Kapp at that hearing on May 22nd, 2019.                   08:15AM

18              THE COURT:  Okay.                                    08:15AM

19              MS. MCCONWELL:  And ultimately, any concerns that   08:15AM

20    Judge Manibusan had had about Mr. Kapp's travel was -- was    08:15AM

21    subsequently resolved, and in my brief, I listed those ECF    08:15AM

22    numbers which showed where those were.                        08:16AM

23              THE COURT:  So it sounds like the judge, when       08:16AM

24    this happened, allowed people to travel, right?              08:16AM

25              MS. MCCONWELL:  That is true.  It cleared it up,     08:16AM

*Direct - Khamvongsa*

1    and Mr. Kapp was allowed to travel thereafter and the                08:16AM

2    government -- I believe all but one of the travel requests did      08:16AM

3    object to his travel.  But each time, either Judge Manibusan         08:16AM

4    or Judge Bordallo did allow him to travel.                          08:16AM

5              THE COURT:  And has there been any revocation of           08:16AM

6    anyones travel so far?                                              08:16AM

7              MS. MCCONWELL:  No, never.                                08:16AM

8              THE COURT:  For all the co-conspirators?                   08:16AM

9              MS. MCCONWELL:  He has -- I can't speak to all of          08:16AM

10   them, I know that Mr. Kapp's travel has never been revoked.         08:16AM

11   This was the only time where he was not allowed to have his         08:16AM

12   passport released to do travel, but then it was ultimately          08:16AM

13   resolved and he has -- he was never a flight risk, and it was       08:16AM

14   never revoked.  I don't believe that any of the Defendants'         08:16AM

15   travel has ever been revoked.  But... um... I can't speak to        08:16AM

16   -- I can't speak specifically to that.                             08:16AM

17             THE COURT:  Okay.                                         08:16AM

18             MS. MCCONWELL:  And I'm sorry, Your Honor, I               08:16AM

19   thought I had my response up here.                                  08:17AM

20             (Pause.)                                                  08:17AM

21             MS. MCCONWELL:  I think I lost my battery, sorry           08:17AM

22   about that.                                                         08:18AM

23             (Pause.)                                                  08:18AM

24             MS. MCCONWELL:  Ms. Miller spent an inordinate             08:18AM

25   amount of time discussing Exhibit 2939, and in Exhibit 2939,        08:18AM

*Direct - Khamvongsa*

1   Your Honor.  Let me pull that up.  She identifies a number of      08:18AM
2   exhibits.  And I'm going to have to -- I have to be my own         08:18AM
3   person here.                                                        08:18AM
4           THE COURT:  Okay.  That is -- I'm sorry.  2939,            08:18AM
5   which --                                                            08:18AM
6           MS. MCCONWELL:  2939, 1 through 81 is what's been          08:18AM
7   admitted to Court already.                                          08:18AM
8           THE COURT:  Right.  She only cited a certain               08:18AM
9   number.  Which one are you looking at?                              08:18AM
10          MS. MCCONWELL:  Right.  I'm going to be -- I'm              08:18AM
11  going to -- we're going to kind of go over a number of the         08:18AM
12  things in 2939 because I think it's important for the Court to      08:18AM
13  see the entire exhibit.                                             08:19AM
14          And then, Carmen, do I have the ability to                 08:19AM
15  publish?  And that's one of these?                                  08:19AM
16          (Pause.)                                                    08:19AM
17          MS. MCCONWELL:  Well, thank you.  As our                    08:19AM
18  threshold, Your Honor, I think in our motion we said we            08:20AM
19  weren't given notice that this issue was going to be                08:20AM
20  revisited.  We had discussed this -- this ad nauseam, and we        08:20AM
21  supplied to the Court excerpts of the transcript which -- at        08:20AM
22  our Exhibit 2, which went through -- wherein we exhaustively        08:20AM
23  discussed Exhibit 2939-82 and 83 and why it should not be          08:20AM
24  admitted at that time.  So we object to this being revisited        08:20AM
25  at this time.                                                       08:20AM

1              In our Exhibits 3 and 4 that we attached to our
2    motion, we attached to you the Exhibit List that was provided
3    to us by Ms. Miller, and at no time did she indicate that the
4    government intended to revisit this issue or many of these
5    exhibits that she has attached to her motion at this time.  So
6    we object to having any lack of notice of these particular
7    exhibits.
8              We also submit that she represent --
9    misrepresents Limey Air Service when she knows -- and it is
10   included in Exhibit 239, if you look at Exhibit 239, and I'm
11   just going to walk through it, it's not in the complete order
12   of my filing but I think it's important at the pages 1
13   through 12, and you can see it on the screen, page 1.  We see
14   that Limey Air Service did open up a number of bank accounts,
15   and we see that the authorized individuals on each and every
16   one of these bank accounts is Mr. Crowe, Mr. Kapp and
17   Mr. Reed.  Mr. Walker's signature is not contained on any one
18   of these signature cards for the bank accounts that
19   Mr. Khamvongsa is testifying.
20             If we go to 39... if we go to 39, which is for --
21   which is at the end, and I'm going to go up so that you could
22   see what the document is that it's attached to.  It's
23   basically the end of the bylaws for Limey Air Service which
24   was created in -- actually it starts on page 13, which was
25   created in 1999.  And Mr. Walker was just one of the officers

 1    of that.  And when we go to where the ownership of Limey Air          08:22AM

 2    Service is, Hansen Helicopters is the majority owner of Limey          08:22AM

 3    Air Service, Inc., which was lawfully created in Guam.  And            08:22AM

 4    I'm going to show you on page 439.  So it shows that Hansen            08:22AM

 5    Helicopters, not Jon Walker, is the predominant owner of Limey         08:22AM

 6    Air Service, which is a valid Guam corporation.                        08:23AM

 7              Additionally -- and so throughout, Ms. Miller               08:23AM

 8    just sort of cobbles back and forth, she identifies Hansen             08:23AM

 9    Helicopters in her Exhibit 2939-72, which having shareholder           08:23AM

10    meeting minutes, where they discussed Wilma's.  Well, Wilma's         08:23AM

11    is not Pacific Spotters.                                               08:23AM

12              She goes through and she shows then that Limey              08:23AM

13    Air Service, which is a valid Guam corporation, at pages 73,           08:23AM

14    74 and 75 -- let me go to there.  There is page 73.  73.  In          08:23AM

15    2018, it shows that they had a board of directors meeting and          08:24AM

16    then they also -- they also -- a month -- later in the month          08:24AM

17    had board of directors meetings and you could see that they --        08:24AM

18    they signed things as shareholders and directors.                     08:24AM

19              In our Exhibit 5 that's attached to the motion,             08:24AM

20    are letters from the Bank of Hawaii indicate that they're             08:24AM

21    going to be closing all of the accounts that were at the Bank         08:24AM

22    of Hawaii that Agent Khamvongsa had actually issued the               08:24AM

23    original subpoena against prior -- at the time of the first --        08:24AM

24    or the first indictment.  And so thereafter, Bank of Hawaii           08:24AM

25    told them that they were going to close all their accounts.           08:24AM

*Direct - Khamvongsa*

1   And so in this time period -- and Agent Khamvongsa and the      08:24AM

2   government conveniently leave that part out.  That there was     08:25AM

3   some scrambling to get some accounts opened so that they could   08:25AM

4   continue operating their business and Judge Manibusan            08:25AM

5   indicated that Hansen Helicopters could continue operating its   08:25AM

6   business, and as we know, Hansen Helicopters was acting as an    08:25AM

7   operator for a number of different entities.                     08:25AM

8            So throughout, Limey Air Service, additionally          08:25AM

9   when we look at 2939, pages 80 and 81, they did file --          08:25AM

10  actually they filed a number of places, but in these in          08:25AM

11  particular, were for years 2017 and 2018.  And these are         08:25AM

12  annual reports that were signed by Defendant Crowe, not          08:25AM

13  Walker.  So if he added an S and called it Limey Air Services    08:25AM

14  instead of Limey Air Service, that's -- that's a typographical   08:25AM

15  error.  And if we look at what their actual operations are, it   08:26AM

16  shows what their operations are.  The government likes to say    08:26AM

17  it's just specifically for leasing but it's not, it's for a      08:26AM

18  broader business purpose.                                        08:26AM

19           And their next -- the Limey begins to open, well,       08:26AM

20  they indicate Limey has received $5 million in transfers, but    08:26AM

21  according to Mr. Khamvongsa, the annual revenues for the         08:26AM

22  organization is $20 million, and so clearly, this wasn't a       08:26AM

23  wholehearted shift of any type of operations because this is a   08:26AM

24  de minimus amount.  When you look at the amounts that have       08:26AM

25  been coming -- that were coming through.                         08:26AM

1    Their next exhibit that they want the Court to          08:26AM
2  look at that they identified on page 8 is an exhibit that has   08:26AM
3  not been admitted.  And even if it had, the date on this is   08:26AM
4  2012, which is not relevant to the dates which are on pages 82  08:26AM
5  and 83, which begin in August of '18 and end in about a year   08:27AM
6  later in '19.                                                  08:27AM

7    The next thing that the prosecution wants you to      08:27AM
8  look at is on their 303-18[sic], 19 which indicates there is a  08:27AM
9  bulk sales resolution.  If you actually look at the document,  08:27AM
10  this indicates that this is a resolution by the board of      08:27AM
11  directors for Jan's Helicopters Service, located in the       08:27AM
12  Philippines.  And so Mr. Walker signed this as a board        08:27AM
13  director -- as a director, and not in any other ownership     08:27AM
14  capacity, in individual ownership capacity.                   08:27AM

15    Then with Pacific Spotters, the government wants    08:27AM
16  to say that it's solely on leasing helicopters.  If you look  08:27AM
17  at its primary purpose, which is contained -- is contained on  08:27AM
18  page 22 of 3003 and is admitted to this Court, it is in the   08:27AM
19  business -- primary function is to overhaul, repair and       08:27AM
20  maintain all types of aircraft.  A secondary purchase involves 08:28AM
21  -- or secondary purpose involves purchase, acquisition        08:28AM
22  ownership, leasing, selling and conveying of any kind of      08:28AM
23  property, which is able -- which it can do.                   08:28AM

24    The 3003 that they reference, 33 and 34, is out    08:28AM
25  of context.  You need to look at Exhibit 3, and let me find   08:28AM

*Direct - Khamvongsa*

```
1    it, 3,000 -- at page 30, because in that it shows the actual     08:28AM
2    ownership interest of Pacific Spotters.  And if the Court will    08:28AM
3    -- let me pull that up so that I can show the Court.  Bring it    08:28AM
4    up so you could see it.  3003 at page 30 shows what the           08:29AM
5    ownership interest -- there is another page, 31 after this.       08:29AM
6    But that was not admitted.  This shows all but 15% of the         08:29AM
7    ownership and it shows that Mr. Walker only owns 32% of this      08:29AM
8    entity.  So he's -- he's not -- he does not own the               08:29AM
9    controlling interest in this particular entity.                   08:29AM
10              Additionally, when we -- at 3003 at pages 35 and       08:29AM
11   36, we have reviewed those previously when Mr. Marty was here,    08:29AM
12   I believe it was Mr. Marty.  And in those, it indicates what      08:29AM
13   the -- what the functions are for the board of directors and     08:30AM
14   what also the roles and obligations and the duties of the        08:30AM
15   various officers, not just who the president of that             08:30AM
16   corporation is.                                                   08:30AM
17              Then with regard to the Exhibits 775, 770, 771,       08:30AM
18   I'm sorry, ECF, the ECF 238, I mean those are all pleadings,     08:30AM
19   those are all out of court.  The 775 has to do with -- and 770   08:30AM
20   have to do with bond release applications of no party that is    08:30AM
21   in this trial right now.  And Hansen Helicopters is not in, as   08:30AM
22   I said, is not in this particular count.  The release document   08:30AM
23   --                                                                08:30AM
24              THE COURT:  Would the fact that statements made        08:30AM
25   at a bail detention hearing about dealing with                   08:31AM
```

```
 1   co-conspirators, would that not be relevant to an issue that      08:31AM
 2   it might be relevant to?                                          08:31AM
 3              MS. MCCONWELL:  No.  And we discussed this on           08:31AM
 4   June 8th, that statements made by other -- that others --         08:31AM
 5   well, first of all, Hansen Helicopters is not in the count.       08:31AM
 6   And these aren't relative to -- these aren't relative to the      08:31AM
 7   wire fraud or the money laundering count.  The government is      08:31AM
 8   very specific with Counts 101 through 104, and those are          08:31AM
 9   specifically cited and you have specific evidence about that.     08:31AM
10   And also 105 through 110.  And these ECF do not relate to any     08:31AM
11   of those monetary transactions that form the basis for those      08:31AM
12   particular -- those transactions.  All those transactions         08:31AM
13   occurred in 2015 and 2016.  And so the -- the document they're    08:31AM
14   trying to get in is 2018, 2019, which there is no relationship    08:32AM
15   to 2015 and 2016.                                                 08:32AM
16              Then the same -- the government continues to           08:32AM
17   attempt to use as its offer of proof, which they've attached      08:32AM
18   leases that are primarily unsigned or not -- don't relate to      08:32AM
19   the time period in question.  In those counts, 100               08:32AM
20   through 110.  And so we would ask that the Court deny the         08:32AM
21   admission of 2939-82, 83.  I think that covered all of my         08:32AM
22   things.                                                           08:32AM
23              Mr. Martin?                                            08:32AM
24              (Pause.)                                               08:32AM
25              THE COURT:  Okay.  Thank you.                          08:33AM
```

```
1              MS. MCCONWELL:  Let me look and make sure there      08:33AM
2    is...                                                          08:33AM
3              THE COURT:  Okay.                                    08:33AM
4              (Pause.)                                             08:33AM
5              MS. MCCONWELL:  Yeah.  I think this is a miss --     08:33AM
6    yeah, we talked about this, we talked about --                 08:33AM
7              MS. M. MILLER:  I can't hear you, Ms. McConwell.     08:33AM
8    I'm sorry.                                                     08:33AM
9              MS. MCCONWELL:  Sure.  That it's a                   08:33AM
10   misrepresentation to say that Jon Walker sold to Pacific       08:33AM
11   Spotters what he signed was the -- as a director on the        08:33AM
12   exhibit that's attached, that he signed it bulk sales, which   08:33AM
13   is required apparently when you're going to sell assets as     08:33AM
14   opposed to a straight up corporation.                          08:33AM
15             THE COURT:  Thank you.                               08:33AM
16             MR. MARTIN:  Your Honor, we were asked to come to    08:34AM
17   court today and argue the admissibility of Exhibits 2939-81    08:34AM
18   and 82, I believe.                                             08:34AM
19             MS. MCCONWELL:  83.                                  08:34AM
20             MR. MARTIN:  82, 83.  I stand corrected.  And        08:35AM
21   this is not the first time we've done it.  We submitted the    08:35AM
22   transcript.  This is the third time we argued the             08:35AM
23   admissibility of this exhibit.  This is the transcript of      08:35AM
24   Mr. Khamvongsa from the day of June 8th.  He was on the stand  08:35AM
25   from ten -- from 10:03 until approximately 5:27, June 8th.  He 08:35AM
```

*Direct - Khamvongsa*

```
1    was on the stand all day Monday, Your Honor.  And he was on        08:35AM
2    the stand for however long he was yesterday, and he's still on     08:35AM
3    the stand, and the government is still in direct examination       08:35AM
4    under their second lawyer in this case.                            08:35AM
5              And we have heard the government argue and               08:35AM
6    chastise Counsel, and I say that, Your Honor, because I have       08:35AM
7    tried in excess of 200 jury trials in my career.  I have never    08:36AM
8    in my life been asked more than -- no less than three times to    08:36AM
9    be sanctioned by a Court, which I have in this case.  I've        08:36AM
10   never been accused of misrepresenting anything to a Court as I    08:36AM
11   have in this case.  I've never heard co-Counsel be attacked,      08:36AM
12   as I have heard in this case, when he wasn't even in Court and    08:36AM
13   had nothing do with what he's been accused of.  And it is        08:36AM
14   offensive to me that that has continued to occur in this case.   08:36AM
15   And I know the Court wants us to, "get along," and I agree       08:36AM
16   with that, Judge, but it is very difficult to do when every     08:36AM
17   time you come to court, you wake up in the morning, as I did    08:36AM
18   this morning, and I looked at a reply that was filed by the    08:36AM
19   government that starts out, "unfortunately defense Counsel's   08:36AM
20   misrepresentations to this Court continue."                    08:36AM
21             The government has not argued law, they have          08:37AM
22   stood up here and given you a scenario in this case of Jon     08:37AM
23   Walker, in our opinion, is a bad person.  And here's why he's  08:37AM
24   bad, I don't have the evidence to support it, but because he's 08:37AM
25   a bad person, I want you to allow us to take this indictment,  08:37AM
```

that this is our third indictment, take this indictment and    08:37AM
reform it, and let us argue things that aren't in the         08:37AM
indictment, admit exhibits that we haven't provided to Counsel 08:37AM
in this case.                                                  08:37AM

          As you'll recall on June 8th, I stood over there    08:37AM
and Ms. McConwell stood over there, and we had a stack of new  08:37AM
evidence that was six or seven inches thick that we had just   08:37AM
gotten.  And the Court made comments about the fact that I     08:37AM
think the government finally conceded they had been giving us  08:37AM
new evidence every -- they said ten days of the 27 days we     08:37AM
were in trial, I would say it's more like 20 days of the       08:37AM
27 days we were in trial.  Way beyond the Court's scheduling   08:38AM
order.  And we continue to get it today, Your Honor.  I filed  08:38AM
a motion this morning because the government gave me four new   08:38AM
summary charts, now they call them demonstrative aids, but     08:38AM
they're summary charts that they intend to use in this case.   08:38AM
And while we've been here this morning, I've got e-mails about 08:38AM
new summary charts they call demonstrative aids.               08:38AM

          I submit to you that this indictment laid the       08:38AM
groundwork and the framework for what we are defending         08:38AM
against.  That's what every indictment does.  And what we've   08:38AM
gotten here is the government comes up every day with a        08:38AM
brand-new theory of why we should introduce new evidence.     08:38AM

          As we heard this morning, something about a         08:38AM
helicopter crash that nobody knows the facts of, nobody knows  08:38AM

1   a thing about it, what it was.  They come in here this morning          08:38AM

2   and accuse Mr. Walker of being in the Philippines in 2018.              08:38AM

3   I'm having his passport delivered here, Your Honor.  Last time          08:38AM

4   he was in the Philippines was 2016.  I will have the passport           08:38AM

5   here, I want to introduce it into evidence as a Court Exhibit           08:39AM

6   for you to know when he was here, so that we could put that             08:39AM

7   issue to rest.  But they come in here and make these                    08:39AM

8   allegations with no support whatsoever, make us a, "bad                 08:39AM

9   person," in their eyes, and ask you on passion to admit an              08:39AM

10  exhibit which doesn't meet the definitions of what's in the --          08:39AM

11  in this indictment here, Your Honor.                                    08:39AM

12          They have not come in here and said this is why                 08:39AM

13  this -- this is why Pacific Spotters, that's not mentioned in           08:39AM

14  the indictment anywhere, this exhibit about them should be              08:39AM

15  admitted.  I will submit to you, Your Honor, that the                   08:39AM

16  government can't go outside the four corners of the                     08:39AM

17  indictment.  They can't reform the indictment.  They need to            08:39AM

18  argue legally, not facts that they make up and write on this            08:39AM

19  board for you, why this exhibit should be admitted.  They need          08:39AM

20  to give us notice of what we're going to have to defend                 08:40AM

21  against.  And I don't know, Your Honor, I don't think it's              08:40AM

22  going to get resolved.  I don't think we're ever going to get           08:40AM

23  along as long as every morning when I wake up, I'm accused of           08:40AM

24  misrepresentation and Mr. McConwell and Ms. McConwell are.              08:40AM

25  And I don't know how to deal with that issue, but I'll abide            08:40AM

1    by whatever Court -- whatever order this Court --    08:40AM

2            THE COURT:  Well, let me just say, look, I mean    08:40AM

3    in the heat of trial, people get off and they start becoming    08:40AM

4    quite accusatory, overzealous, probably insulting.  I don't    08:40AM

5    like that, I told everybody that.  Civility is very important    08:40AM

6    in my courtroom.    08:40AM

7            Now if I thought that anybody was out of hand    08:40AM

8    already, I would have said, hey, you're out of my Court, I    08:40AM

9    would have sanctioned you.  Let me tell you, my 30 years as a    08:40AM

10   judge, 16 of that as a federal judge, it's rare that I    08:40AM

11   sanction a lawyer.  I will tell that you.  It's rare that    08:41AM

12   attorneys come to me and ask that other attorneys be    08:41AM

13   sanctioned.    08:41AM

14           MR. MARTIN:  It's occurred to me three times in    08:41AM

15   this Court, Your Honor.  Three motions have been filed where I    08:41AM

16   have been asked to be sanctioned by you.  Now you have done    08:41AM

17   nothing.  And I understand --    08:41AM

18           THE COURT:  I think -- you know, it's true, I    08:41AM

19   have -- if I really felt there was legitimacy to any motion,    08:41AM

20   or if I felt that -- you know, there was other motions too    08:41AM

21   that were filed regarding Mr. Lujan and others which I have    08:41AM

22   kept in abeyance because that was more insulting words, so    08:41AM

23   forth.  And I said, I will deal with those later, but if I    08:41AM

24   felt that there was anything immediate that needed to be    08:41AM

25   addressed, I would have warned -- I have warned all of you,    08:41AM

```
1   Counsels, both of you.  Not just both of you, everybody that's     08:41AM
2   been in this court from day one when I took over.  Of course,      08:41AM
3   the magistrate judges have had the case longer than I have         08:41AM
4   because they were involved in the discovery and all the three      08:41AM
5   indictments, and then by the time it got to me, then now it's      08:41AM
6   here, we're in trial.  So, you know, I'm sorry that you are        08:42AM
7   feeling that way, you know, of course the Court always feels       08:42AM
8   that civility is paramount.  I expect that.  I -- I -- I,          08:42AM
9   myself, am civil to all of you.  I expect you to be civil to       08:42AM
10  me and to each other.  So I would warn -- because I can see        08:42AM
11  that you're quite upset about this, I would warn everyone to       08:42AM
12  be civil and respectful to each other.  You all have your own      08:42AM
13  interests in representing who -- your parties.  And there is       08:42AM
14  no -- there is no reason why one Counsel should be berated        08:42AM
15  because he or she represented somebody that the other party       08:42AM
16  may not like, it doesn't matter.  So like I said, I continue      08:42AM
17  to order that there be civility.  I think we've controlled        08:42AM
18  everything pretty much.  We just have to get through this         08:42AM
19  trial.                                                             08:42AM
20          To the extent that there is motions filed, and           08:42AM
21  there is objections, the Court has ruled on those.  And so --     08:43AM
22          MR. MARTIN:  Well, Your Honor, and I appreciate          08:43AM
23  that.  It just -- it rakes me over the coals when there is an     08:43AM
24  ECF 237 that clearly shows Mr. McConwell wasn't present when      08:43AM
25  something happened, and then we are read quotes of things he      08:43AM
```

1    said that he didn't say, that apparently -- and then          08:43AM

2    interpretations of what that means.                            08:43AM

3                THE COURT:  All right.  So what we can do -- let    08:43AM

4    me just say --                                                 08:43AM

5                MS. M. MILLER:  Let me just clarify the record.    08:43AM

6                THE COURT:  No, wait, wait, wait.  Ms. Miller,     08:43AM

7    just wait until he's done.                                     08:43AM

8                MS. M. MILLER:  I just want --                     08:43AM

9                THE COURT:  No, no, no.                            08:43AM

10                MS. M. MILLER:  Okay.                             08:43AM

11               THE COURT:  One person at a time.  Let me say,     08:43AM

12   there is ways that the Court can handle any misrepresentations 08:43AM

13   that have been brought before it, motion to strike, sanctions, 08:43AM

14   so forth.  We can take care of that later.  My goal is to just 08:43AM

15   get the trial done with.  And these issues of misconduct,      08:43AM

16   we'll take care of that later.                                 08:43AM

17               MR. MARTIN:  And in relation to the motion, Your   08:43AM

18   Honor.                                                         08:44AM

19               THE COURT:  Yeah?                                  08:44AM

20               MR. MARTIN:  This is a legal argument based on     08:44AM

21   the four corners of the indictment.  That's our position.     08:44AM

22               THE COURT:  All right.                             08:44AM

23               MR. MARTIN:  We've not had any notice, the        08:44AM

24   government has not said anything about this indictment.  They  08:44AM

25   could pull up any documents they want, but unless they relate  08:44AM

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | to the four corners of this indictment, we shouldn't have to | 08:44AM |
| 2 | defend against our life through -- for eternity unless they're | 08:44AM |
| 3 | accusing us of an incident or an act in the four corners of | 08:44AM |
| 4 | this indictment.  And what they're doing is -- Mr. Walker is | 08:44AM |
| 5 | basically having to defend from birth to today, because the | 08:44AM |
| 6 | government says this is just a suggestion, it's really not -- | 08:44AM |
| 7 | I'm holding my hand on the indictment, this is just a | 08:44AM |
| 8 | suggestion, it's really not that important, we're just going | 08:44AM |
| 9 | to bring in whatever evidence we want.  And that's not the | 08:44AM |
| 10 | law, Your Honor.  And I object to the way they're trying to do | 08:44AM |
| 11 | this. | 08:45AM |
| 12 | THE COURT:  Well, do know that I -- I mean, the | 08:45AM |
| 13 | law is clear that the defendant or all defendants that come | 08:45AM |
| 14 | before the Court must be apprised of what they have to be | 08:45AM |
| 15 | defending against.  And if it's not within the four corners of | 08:45AM |
| 16 | the indictment, then it's not within it.  Then the Court | 08:45AM |
| 17 | handles that in that way.  And that's probably your best | 08:45AM |
| 18 | argument, I guess.  And so let's just -- we'll proceed | 08:45AM |
| 19 | forward.  Okay? | 08:45AM |
| 20 | MR. MARTIN:  Thank you, Your Honor. | 08:45AM |
| 21 | THE COURT:  All right.  Thank you.  Ms. Miller, | 08:45AM |
| 22 | you want to reply? | 08:45AM |
| 23 | MS. M. MILLER:  Yes, Your Honor, I do. | 08:45AM |
| 24 | THE COURT:  I'm sorry?  Okay.  Hold on.  You got | 08:45AM |
| 25 | it?  Yes? | 08:45AM |

|    |                                                              |        |
|----|--------------------------------------------------------------|--------|
| 1  | MS. M. MILLER:  Okay.                                        | 08:45AM |
| 2  | MR. MARTIN:  May I do one thing?  I apologize.              | 08:45AM |
| 3  | THE COURT:  Yes, yes.                                        | 08:45AM |
| 4  | MR. MARTIN:  May I have a -- I have Mr. Walker's            | 08:45AM |

1        MS. M. MILLER:  Okay.

2        MR. MARTIN:  May I do one thing?  I apologize.

3        THE COURT:  Yes, yes.

4        MR. MARTIN:  May I have a -- I have Mr. Walker's

5   passport, Your Honor.  I'd like to have a copy made of it and

6   let --

7        THE COURT:  You just wanted that timeframe?  We

8   we're talking about what year that was?  You probably don't

9   have to do everything, you just probably want the year of --

10  what did you say?  What year was it?

11       MR. MARTIN:  There is only actually only one page

12  in the entire passport, Your Honor.

13       THE COURT:  For -- is it 2018?

14       MR. MARTIN:  Yeah.  There is only one page in the

15  entire passport.

16       THE COURT:  Okay.  Well, give it to Carmen then.

17       MR. MARTIN:  If we could make a copy and provide

18  it to all Counsel, but it should show exactly where he has

19  been.

20       THE COURT:  Okay.

21       MS. M. MILLER:  And, Your Honor, I don't want

22  just a copy of that one page.  I'm going to need a copy of the

23  actual passport number, etc., because we just submitted into

24  Court a copy of his passport with a notarization from the

25  Philippine authorities dated 2018.  So if we're not producing

*Direct - Khamvongsa*

1  a passport to the Court that doesn't have that information in,        08:46AM

2  we've got yet another thing I guess we'll have to address              08:46AM

3  later with Mr. Walker.                                                 08:46AM

4          THE COURT:  Let me just say, I don't know.  Let's             08:46AM

5  just know that -- we know that the Philippines is not                  08:46AM

6  altogether with their... well, I shouldn't -- I'm not trying           08:46AM

7  to insult them, but they may not be altogether with their             08:46AM

8  processes, if you will.  So I'm not sure.  When you -- when            08:46AM

9  there is -- I mean, myself, I have traveled to the                     08:46AM

10 Philippines, and I've given them my U.S. passport, that -- I          08:47AM

11 mean, I've seen that.  But how that plays out all the time,            08:47AM

12 I'm not sure.  And this issue of something other than a                08:47AM

13 passport to gain entry into the Philippines, I don't know              08:47AM

14 about that either.  So, again, if he wants to give that to            08:47AM

15 you, we'll give him a copy.  Then you guys -- it's your                08:47AM

16 burden, so I don't think --                                            08:47AM

17         MS. M. MILLER:  Okay.                                         08:47AM

18         THE COURT:  It's the prosecutor's burden.  You                08:47AM

19 guys have got to be sure of this because you are accusing him         08:47AM

20 of violating a Court order.  That is a major accusation.  That        08:47AM

21 can cause him -- you're asking the Court to remand him to the          08:47AM

22 custody of the marshals.  So be sure what you say.                     08:47AM

23         MS. M. MILLER:  Oh, no, we will file the                      08:47AM

24 appropriate motion and we're in the process of getting the --        08:47AM

25         THE COURT:  Okay.  Well, file it.                             08:47AM

*Direct - Khamvongsa*

```
1              MS. M. MILLER:  -- evidence.                    08:47AM

2              THE COURT:  I'm just saying -- I'm saying that if  08:47AM

3    his attorney has said, look, I got my passport and it doesn't  08:47AM

4    show a stamp that I -- that he had traveled to the Philippines  08:47AM

5    during the period in question, then that's one thing.  08:47AM

6              MS. M. MILLER:  Right.                          08:48AM

7              THE COURT:  If there is another way to enter the  08:48AM

8    Philippines and exit the Philippines without a passport, I  08:48AM

9    don't know.                                               08:48AM

10             MS. M. MILLER:  And it has to do with, Your  08:48AM

11   Honor, what we've already submitted into evidence with Your  08:48AM

12   Honor, that shows a copy of his passport was provided to the  08:48AM

13   Philippine authorities and they notarized him signing off on  08:48AM

14   corporate documents for Pacific.Spotters Corporation, using  08:48AM

15   his passport as his identifier.  So this is a collateral  08:48AM

16   issue.                                                    08:48AM

17             THE COURT:  No, I guess my point is, let's assume  08:48AM

18   --                                                        08:48AM

19             MS. M. MILLER:  It's a collateral issue.  We'll  08:48AM

20   address it.                                               08:48AM

21             THE COURT:  Yeah, we can address it later, but my  08:48AM

22   point is, since you're bringing it up and Mr. Martin has gone  08:48AM

23   out of his way to get the passport.                      08:48AM

24             MS. M. MILLER:  Yes, Your Honor.               08:48AM

25             THE COURT:  Assuming that's true, that you have  08:48AM
```

*Direct - Khamvongsa*

1   this issue that Mr. Walker may have presented this passport,   08:48AM

2   there was a signature on another piece of paper, I mean, then   08:48AM

3   we have to call into question the Philippines processes.  And   08:48AM

4   we're going to have a whole trial on that, and frankly, I'm    08:49AM

5   not prepared to have a whole trial on that.                    08:49AM

6           I think that when we -- even myself, when I --        08:49AM

7   I've been vetted as a federal judge; they take my passport     08:49AM

8   from birth or 18 years old to current, and they look at every  08:49AM

9   single entry of any foreign country that I've been to.  There  08:49AM

10  is a reliance that we're hoping that every foreign country     08:49AM

11  would have followed their own processes.                       08:49AM

12          Now, I don't know if the Philippines has a            08:49AM

13  different process.  I'm going to gather that he's probably not  08:49AM

14  a -- there is not dual citizenship here.  I don't know.        08:49AM

15          Anyway, putting that aside, you -- he'll get a        08:49AM

16  copy of that.  You guys figure it out, and let's not get       08:49AM

17  distracted by that.  But you can do a quick rebuttal because   08:49AM

18  the jurors are here.                                           08:49AM

19          MS. M. MILLER:  Yes, Your Honor, definitely.          08:49AM

20          THE COURT:  Right?                                    08:49AM

21          MS. M. MILLER:  First of all, Mr. Martin didn't       08:49AM

22  address any of the substantive arguments that the government   08:49AM

23  --                                                             08:49AM

24          THE COURT:  Okay.  Putting that aside.  I read        08:49AM

25  everything on the substantive arguments.  What about his      08:49AM

*Direct - Khamvongsa*

```
 1    arguments that they have had no notice in the Second          08:49AM
 2    Superseding Indictment?                                       08:50AM
 3                MS. M. MILLER:  Two things, Your Honor.  First of  08:50AM
 4    all --                                                        08:50AM
 5                THE COURT:  That's his only argument really.  Or  08:50AM
 6    best argument.                                                08:50AM
 7                MS. M. MILLER:  If you look at the Second         08:50AM
 8    Superseding Indictment, Your Honor.                           08:50AM
 9                THE COURT:  Yeah.                                 08:50AM
10                MS. M. MILLER:  Page 12.                          08:50AM
11                THE COURT:  Uh-huh, go ahead.                     08:50AM
12                MS. M. MILLER:  Sub paragraph N, says using shell 08:50AM
13    companies to conceal the true fraudulent actors in the scheme 08:50AM
14    to avoid criminal culpability.  So that's on page 12 of the   08:50AM
15    Second Superseding Indictment and it is identified as one of  08:50AM
16    the ways in which the Defendants, the manner and means of     08:50AM
17    their conspiracy.  So it is clearly in the indictment.  The   08:50AM
18    other thing I would --                                        08:50AM
19                THE COURT:  All right.  Okay.  Hold on.  Strike   08:50AM
20    that -- not strike that, but where does it say, and the       08:50AM
21    specific one is Pacific Spotters, right?  We're talking about 08:50AM
22    Pacific Spotters as a shell --                                08:50AM
23                MS. M. MILLER:  Pacific.Spotters, yes, Your       08:50AM
24    Honor.                                                        08:50AM
25                THE COURT:  Sometimes it's called Pacific         08:50AM
```

*Direct - Khamvongsa*

Spotters, sometimes it's called Pacific.Spotters.  Are they
all the same?                                              08:50AM

          MS. M. MILLER:  They are.  They use them both    08:50AM
ways.                                                      08:50AM

          THE COURT:  So where in the indictment does it   08:50AM
talk about Pacific Spotters?                               08:51AM

          MS. M. MILLER:  It does not specifically identify 08:51AM
all of the shell corporations in the indictment.          08:51AM

          THE COURT:  So let me ask you this though.       08:51AM

          MS. M. MILLER:  Yes.                             08:51AM

          THE COURT:  Does that mean that Mr. Walker does  08:51AM
not have notice that Pacific Spotters is an issue for him? 08:51AM

          MS. M. MILLER:  Absolutely not, Your Honor, it   08:51AM
does not mean that.  As a matter of fact, Your Honor, if you 08:51AM
look at your order, ECF 1387, the Defendants -- this is an 08:51AM
issue that has come up repeatedly, repeatedly.            08:51AM

          THE COURT:  Yes.                                 08:51AM

          MS. M. MILLER:  If you recall during the        08:51AM
deposition of Mr. Marinho, he talked about Pacific Spotters 08:51AM
being one of the entities being used by the Defendants because 08:51AM
his paycheck came from them.  The government brought that up. 08:51AM
The government has been arguing this issue since the first 08:51AM
indictment so --                                          08:51AM

          THE COURT:  Okay.  But even if the government has 08:51AM
been arguing, why didn't the government put down Pacific   08:51AM

1    Spotters within this indictment?                                    08:51AM

2              MS. M. MILLER:  The government didn't name any of          08:51AM

3    the 47 shell companies that the Defendant was using, but the        08:51AM

4    government did say that the Defendant was using these shell          08:52AM

5    companies.  The government's theory of the case from day one         08:52AM

6    has been that the shell companies are all alter egos of Jon          08:52AM

7    Walker.  When you're a 99.99% owner of a corporate entity,          08:52AM

8    that is not a valid structure.                                       08:52AM

9              THE COURT:  Okay.  But it's not as if the                  08:52AM

10   government did not know who the shell companies were.  Is that       08:52AM

11   not true?                                                           08:52AM

12             MS. M. MILLER:  Your Honor, over time the                  08:52AM

13   government has developed its knowledge regarding all of the         08:52AM

14   shell companies.  As a matter of fact --                            08:52AM

15             THE COURT:  And that's obvious because the                 08:52AM

16   prosecution has gone through three indictments with three          08:52AM

17   grand jurors.                                                       08:52AM

18             MS. M. MILLER:  Well, yes, because the Defendant          08:52AM

19   continues to commit crimes.                                         08:52AM

20             THE COURT:  Okay.  Yeah --                                 08:52AM

21             MS. M. MILLER:  And that's why we superseded, as          08:52AM

22   you know.                                                           08:52AM

23             THE COURT:  Yeah, I know that.                             08:52AM

24             MS. M. MILLER:  For the second time, because Ms.          08:52AM

25   McConwell says, well, deposits in 18 and 19 aren't relevant.       08:52AM

*Direct - Khamvongsa*

```
 1   That's the whole point why -- why we superseded and added all        08:52AM
 2   of those counts.                                                      08:52AM
 3             THE COURT:  I understand that, but my question              08:52AM
 4   is --                                                                 08:52AM
 5             MS. M. MILLER:  Here's --                                   08:52AM
 6             THE COURT:  When -- okay, I understand --                   08:53AM
 7             MS. M. MILLER:  No, no.                                     08:53AM
 8             THE COURT:  I think I've memorized that chart.              08:53AM
 9             MS. M. MILLER:  Oh, you probably have, but what             08:53AM
10   is important about what's not on here?                                08:53AM
11             THE COURT:  Yeah.                                           08:53AM
12             MS. M. MILLER:  Pacific Spotters.                           08:53AM
13             THE COURT:  Correct.                                        08:53AM
14             MS. M. MILLER:  And we filed motions with the               08:53AM
15   Court, and of course you don't have everything that has been          08:53AM
16   in front of Judge Bordallo.  When Judge Manibusan was the             08:53AM
17   Magistrate Judge in this case, this issue came up, this issue         08:53AM
18   was litigated.  Judge Manibusan was very concerned about the          08:53AM
19   fact that Pacific Spotters was now being used by Jon Walker to        08:53AM
20   continue the fraud.  When Judge Manibusan was replaced by             08:53AM
21   Judge Bordallo --                                                     08:53AM
22             THE COURT:  I -- can I tell you that?  I know               08:53AM
23   that, I read that.  My only question is, he's arguing, the           08:53AM
24   defense is arguing, that look, why didn't the prosecutors put        08:53AM
25   in any or all or some or whatever of the shell companies             08:53AM
```

```
1    because -- at least the ones that they knew of?                08:53AM

2              MS. M. MILLER:  What we did, Your Honor, is we        08:53AM

3    have identified repeatedly throughout this case, if you look    08:53AM

4    at the ECF filings in this case going back to 2018.             08:53AM

5              THE COURT:  I don't disagree -- I don't disagree      08:54AM

6    -- wait, wait, wait.  I don't disagree with you.  I'm putting   08:54AM

7    you up to the highest burden because you guys are the           08:54AM

8    prosecutors.                                                    08:54AM

9              MS. M. MILLER:  Of course.                            08:54AM

10             THE COURT:  My question is, you guys have gone        08:54AM

11   through the grand jury three times.  That's a lot of times.     08:54AM

12   This is a big case for both the United States of America and    08:54AM

13   the Defendants.                                                 08:54AM

14             MS. M. MILLER:  Yes.                                  08:54AM

15             THE COURT:  This is a 100-count indictment.           08:54AM

16             MS. M. MILLER:  And what is the purpose of an         08:54AM

17   indictment?  To give notice.  And there is case law --         08:54AM

18             THE COURT:  They're saying they don't have           08:54AM

19   notice.                                                         08:54AM

20             MS. M. MILLER:  They do have -- that is              08:54AM

21   absolutely incorrect, Your Honor.  They haven't filed a motion  08:54AM

22   for --                                                          08:54AM

23             THE COURT:  Well, what about -- let me ask you       08:54AM

24   this, let's change the crime.  What if this was a rape case?    08:54AM

25   And the defendant, I'm not saying Mr. Walker, but a defendant   08:54AM
```

```
1    says, look, he's been accused of raping one woman, just one     08:54AM
2    woman, but there is accusations that there is a lot of other     08:54AM
3    women that have been raped.                                       08:54AM
4              MS. M. MILLER:  That's right.                           08:54AM
5              THE COURT:  During that period of time --               08:54AM
6              MS. M. MILLER:  Yes.                                     08:54AM
7              THE COURT:  The question is --                          08:54AM
8              MS. M. MILLER:  And that evidence may come in           08:54AM
9    through the case to show --                                       08:54AM
10             THE COURT:  It could come in.                           08:54AM
11             MS. M. MILLER: -- for modus operandi.                   08:55AM
12             THE COURT:  Possible.                                    08:55AM
13             MS. M. MILLER:  Right?  And the jury would be           08:55AM
14   instructed that that evidence is being brought in to show the    08:55AM
15   modus operandi and that evidence -- you wouldn't name every      08:55AM
16   single one of those rape victims in the indictment.  Paragraph   08:55AM
17   -- not only sub paragraph N, but in paragraph 127, let me tell   08:55AM
18   you where these are in the indictment.  Paragraph 127 in the     08:55AM
19   Second Superseding Indictment says, specifically, that the       08:55AM
20   Defendant used numerous shell corporations, including but not    08:55AM
21   limited to, and we talk about those shell corporations.          08:55AM
22             The purpose of an indictment, as the Ninth             08:55AM
23   Circuit has said and every other circuit has said, is to give   08:55AM
24   general notice to the defendant.  If the defendant said, I      08:55AM
25   have insufficient notice, and the defendant files a motion for  08:55AM
```

*Direct - Khamvongsa*

1    a Bill of Particulars, and the Court, and you have, Your          08:55AM

2    Honor, in this case granted motions for bills of particulars      08:55AM

3    requiring the government to identify more specifically what it     08:55AM

4    meant or what it charged.  They never filed a motion for Bill      08:55AM

5    of Particulars on the reference to the shell companies either      08:55AM

6    to the first part, which is paragraph 47, 48, and nor did they     08:56AM

7    file motion for Bill of Particulars as to paragraph 127 of the     08:56AM

8    Second Superseding Indictment.                                     08:56AM

9              THE COURT:  Okay.  But my question is, if you            08:56AM

10   guys knew of some or all or -- of the names of the shell           08:56AM

11   corporations, why not name them?                                   08:56AM

12             MS. M. MILLER:  We did.  In all of our pleadings,        08:56AM

13   Your Honor.  If I went through ECF --                              08:56AM

14             THE COURT:  Okay, I'm saying in the indictment,          08:56AM

15   in the indictment.                                                 08:56AM

16             MS. M. MILLER:  Supersede again to now name and          08:56AM

17   add every single one of shell companies used?                      08:56AM

18             THE COURT:  No.  I'm talking about in any one of         08:56AM

19   these indictments.                                                 08:56AM

20             MS. M. MILLER:  Because there was -- our position        08:56AM

21   has always been that Jon Walker is the puppeteer.  All of          08:56AM

22   these companies are alter egos of Jon Walker.  The evidence is     08:56AM

23   relevant.  We're missing the point here, the evidence is           08:56AM

24   relevant to prove --                                               08:56AM

25             THE COURT:  That's not the question though.              08:56AM

*Direct - Khamvongsa*

1   That's not the question of relevancy.  He's bringing up the      08:56AM

2   issue of notice.                                                08:56AM

3           MS. M. MILLER:  There is notice.  There is notice       08:56AM

4   throughout the discovery in this case.                          08:56AM

5           THE COURT:  You're saying so the discovery in and       08:56AM

6   of itself is sufficient notice --                               08:57AM

7           MS. M. MILLER:  Yes.                                    08:57AM

8           THE COURT:  -- to say to the Defendant, hey, you        08:57AM

9   better be prepared --                                           08:57AM

10          MS. M. MILLER:  Yes.                                    08:57AM

11          THE COURT:  -- to --                                    08:57AM

12          MS. M. MILLER:  Yes.                                    08:57AM

13          THE COURT:  -- defend --                                08:57AM

14          MS. M. MILLER:  Yes.                                    08:57AM

15          THE COURT:  -- on an indictment that doesn't name       08:57AM

16  any of these shell corporations?                                08:57AM

17          MS. M. MILLER:  Yes.  And, Your Honor, in ECF, if       08:57AM

18  you look at ECF 1387, you entered an order indicating that the  08:57AM

19  government was correct that the use of the shell companies is   08:57AM

20  relevant because Jon Walker did not act under his own name.     08:57AM

21  From day one, the discovery has -- there are hundreds of        08:57AM

22  documents in the discovery with Pacific Spotters Corporation.   08:57AM

23  We were litigating the issue of Pacific Spotters Corporation    08:57AM

24  and the relationship to the Defendants.  We have filed          08:57AM

25  motions, we have filed pleadings.  The shell corporations use   08:57AM

*Direct - Khamvongsa*

```
 1   has been in the Second Superseding Indictment.  Our theory of    08:57AM

 2   the case from the time this case was supposed to go to trial      08:57AM

 3   back in 2020 until now has always been that Jon Walker used       08:58AM

 4   multiple corporations as alter egos.                              08:58AM

 5               THE COURT:  The Court understands your argument,      08:58AM

 6   your theory, your pleadings.  I guess the question is, then       08:58AM

 7   why not just name them?  In the indictment?  If you know it,      08:58AM

 8   name it.                                                          08:58AM

 9               MS. M. MILLER:  They never ever -- they never         08:58AM

10   filed a motion saying, tell us which shell corporations you       08:58AM

11   are referencing in the indictment.  And, Your Honor, we have      08:58AM

12   withstood numerous motions to dismiss.                            08:58AM

13               THE COURT:  Let me just ask you this, could they      08:58AM

14   strategically not have done that -- just put that aside.          08:58AM

15   Could the defense strategically not have done that and said,      08:58AM

16   look, the prosecution may have messed up because they did not     08:58AM

17   -- they did not submit with particularity the indictment with    08:58AM

18   the shell corporations when they presented it to the grand       08:58AM

19   jury?  Is that possible?                                          08:58AM

20               MS. M. MILLER:  I have no idea.                       08:58AM

21               THE COURT:  Okay.  All right.  Anything further,      08:58AM

22   Counsels?                                                         08:58AM

23               MS. M. MILLER:  No, but I do think that I want on     08:58AM

24   the record, Your Honor, that the Ninth Circuit says an           08:59AM

25   indictment is required to let the defendant know what he is      08:59AM
```

*Direct - Khamvongsa*

```
 1    being charged with, and this indictment did just that.  We      08:59AM
 2    never hid the fact that our position was he was using all of     08:59AM
 3    these companies as shell corporations.  The Defendants filed,    08:59AM
 4    by the way, motions to dismiss, starting in 2018 continuing      08:59AM
 5    through 2020.  Motions to suppress, again, starting in 2018      08:59AM
 6    throughout 2020.  They filed responses to motions that we        08:59AM
 7    filed regarding the use of shell corporations to which this      08:59AM
 8    Court has already ruled in ECF 1387.  And we have another        08:59AM
 9    motion pending that you have not ruled on yet regrading the      08:59AM
10    alter egos.                                                      08:59AM
11            Our theory of our case, in both the indictment          08:59AM
12    and continuing throughout, has been the Defendant's use of all  08:59AM
13    of these corporate entities as shell companies, and we have     08:59AM
14    produced discovery to the Defendants and identified as          08:59AM
15    G-number exhibits in this case, numerous documents regarding    08:59AM
16    Pacific Spotters Corporation being one of the 47 shell          09:00AM
17    companies used in this case.  To say that they had no notice    09:00AM
18    is just not supported by the record.  It is not supported by    09:00AM
19    the record.                                                     09:00AM
20            THE COURT:  To say that they have no notice is          09:00AM
21    not supported, correct, by the filed record and by the          09:00AM
22    discovery --                                                    09:00AM
23            MS. M. MILLER:  Yes.                                    09:00AM
24            THE COURT:  -- but it is supported by the fact          09:00AM
25    that it's not in the indictment.                                09:00AM
```

```
1            MS. M. MILLER:  None of the shell companies are      09:00AM
2    in the indictment, Your Honor.                                09:00AM
3            THE COURT:  I know, which I find amazing.  I just     09:00AM
4    think it should be in there.  Seriously.                      09:00AM
5            MS. M. MILLER:  Well, we could file a Bill of         09:00AM
6    Particulars right now.  I mean, I think that we --            09:00AM
7            THE COURT:  You could try to file a Bill of           09:00AM
8    Particulars, but now they're going to say, okay, no, that's   09:00AM
9    unduly prejudicial to us right now in the middle of trial.    09:00AM
10           MS. M. MILLER:  I guess the question becomes what     09:00AM
11   are we really here to do?                                     09:00AM
12           THE COURT:  Well, he's arguing, and he has the        09:00AM
13   right to argue, look, we didn't have notice about Pacific     09:00AM
14   Spotters and whatever else, all the other corporations.  But  09:00AM
15   right now the focus is Pacific Spotters.  That's what his     09:00AM
16   argument is.                                                  09:00AM
17           MS. M. MILLER:  And what I'm saying, Your Honor,      09:00AM
18   is obviously they did.  This has been litigated in front of   09:00AM
19   Judge Manibusan.  This has been litigated in front of Judge   09:00AM
20   Bordallo.  This was then litigated in front of you and, Your  09:01AM
21   Honor, the government has relied on your order, ECF 1387,      09:01AM
22   saying that the government has presented sufficient evidence  09:01AM
23   that shell corporations are in fact relevant to this case.    09:01AM
24           THE COURT:  Well, they are relevant, but that's       09:01AM
25   not the issue they're arguing.  But, anyway.                  09:01AM
```

*Direct - Khamvongsa*

         MS. M. MILLER:  No, I understand.  And so here's    09:01AM
Ms. Miller.  Thank you, Ms. Miller.                          09:01AM

         We argued also the point of what is an indictment   09:01AM
supposed to do?  If we put every single allegation of how    09:01AM
Mr. Walker committed the fraud in the indictment instead of  09:01AM
having a 40-page indictment, we'd have a 150-page indictment. 09:01AM
And the Ninth Circuit has said that bills of particulars are 09:01AM
seldom employed in modern federal practice because an        09:01AM
indictment is sufficient to provide a temporal framework for 09:01AM
the crimes alleged because open-file discovery obviates the  09:01AM
need for greater specificity.  This is the Ninth Circuit, this 09:01AM
is all circuits, not only the Ninth Circuit.                 09:02AM

         THE COURT:  I know the law.                          09:02AM

         MS. M. MILLER:  Because Counsel has no argument      09:02AM
against the admissibility of those two pages, instead the tact 09:02AM
is, let's say we have no notice.  And, Your Honor, I will ask 09:02AM
this Court to look at the record as a whole because the      09:02AM
government is entitled to a fair trial, just like Jon Walker 09:02AM
is entitled to a fair trial.  And if this Court does not allow 09:02AM
any evidence of a shell company that Mr. Walker clearly      09:02AM
created to use to continue this fraud, then there will be no 09:02AM
real justice done in this case.                              09:02AM

         THE COURT:  Well --                                 09:02AM

         MS. M. MILLER:  Ms. McConwell actually got up       09:02AM
here and said to Your Honor in her argument -- well, look -- 09:02AM

*Direct - Khamvongsa*

1    THE COURT:  Counsel, you have one minute because      09:02AM
2  the jurors are ready.                                    09:02AM
3    MS. M. MILLER:  Look at 2939, page 49, it says,        09:02AM
4  Hansen Helicopters, not Jon Walker, is the owner of Limey Air.  09:03AM
5  That's a total misrepresentation because on page 76, years  09:03AM
6  later, Jon Walker is representing, I, Jon Walker, am the 99.9%  09:03AM
7  owner of Limey Air.  They're not saying they had no notice of  09:03AM
8  Limey Air.  The argument here is that when Limey Air gets  09:03AM
9  $5 million from Pacific Spotters Corporation and we have  09:03AM
10 evidence that Pacific Spotters Corporation is using the    09:03AM
11 identical aircraft that are in the indictment, and it is   09:03AM
12 during the period of time of the indictment, how is that not  09:03AM
13 relevant to be admitted?  We're not going to ask the jury to  09:03AM
14 find --                                                    09:03AM
15    THE COURT:  Counsel, Counsel, you do not have to       09:03AM
16 -- it's not a relevance issue right now.  It's not -- right  09:03AM
17 now.                                                       09:03AM
18    MS. M. MILLER:  But it is.                              09:03AM
19    THE COURT:  Well, it could be.  But the point is,      09:03AM
20 the Court is going to -- I'll get back to you in ten minutes.  09:03AM
21    All the jurors ready to go?                             09:03AM
22    All right, Counsels.  Yes, Mr. McConwell?               09:03AM
23    MR. MCCONWELL:  Can we go to the restroom first?        09:03AM
24    THE COURT:  Yes.  No -- we'll take a 15-minute          09:04AM
25 recess, and I'll come back.  Thank you, Counsels.          09:04AM

```
 1              (Recess taken at 9:04 a.m.)                    09:04AM

 2              (Back on the record at 9:24 a.m.)             09:24AM

 3         THE COURT:  All right.  Please be seated.  All     09:24AM

 4    Counsel present, Defendants are present.                09:24AM

 5              Yes, Mr. Martin?                              09:24AM

 6         MR. MARTIN:  Your Honor, I provided to the         09:24AM

 7    government and to Carmen the passport.  I'd like to introduce  09:24AM

 8    it as a sealed exhibit, if I could, and maybe give it an      09:24AM

 9    exhibit number.  The government has a copy of it.  If that's   09:24AM

10    okay, we could.                                        09:24AM

11              THE COURT:  All right.  Carmen, what number can     09:24AM

12    this be?  Defendant's Exhibit?                          09:24AM

13              THE CLERK:  129, Your Honor.                  09:24AM

14              THE COURT:  Hold on.                          09:24AM

15         MR. MARTIN:  If it could be sealed, Your Honor?    09:24AM

16              THE COURT:  Very well.  It will be sealed.  And    09:24AM

17    you gave a copy to the prosecution?                     09:24AM

18              MR. MARTIN:  Yes, Your Honor, I did.          09:24AM

19              THE COURT:  All right.  Exhibit 129.          09:24AM

20              All right.  So over the break, I thought about      09:24AM

21    this issue, I want the parties to give me -- I don't want you  09:24AM

22    to give me a brief, I just want you to give me the Ninth       09:25AM

23    Circuit case law on this issue.  Is discovery sufficient to    09:25AM

24    give a defendant notice?  I've not heard this argument, to be  09:25AM

25    honest with you, in all my years about discovery and pleadings 09:25AM
```

are sufficient to give a defendant notice of the charges                     09:25AM

against him.  I think there -- maybe Second Circuit may have                 09:25AM

ruled on it, but I don't think the Ninth Circuit has, but I                  09:25AM

may be wrong.  And I'm going to check, but you guys will have                09:25AM

to find the case law.  So just get me the case law on that,                  09:25AM

and I would think that you want to wait until we finish this                 09:25AM

issue, right?  You want to get him out of --                                 09:25AM

     MS. M. MILLER:  Yeah.  We're done.  This is the     09:25AM

last piece of his direct examination.  So we're done.  He can                09:25AM

go to cross now.  We will get that case law to Your Honor.                   09:25AM

     THE COURT:  All right.  Do you want to -- Mr.         09:25AM

Martin and Ms. McConwell?                                                    09:25AM

     So you're done with him?                               09:25AM

     MS. M. MILLER:  I'm done.                              09:25AM

     THE COURT:  Did you say that already to the jury?     09:25AM

     MS. M. MILLER:  No, no, no.  When the jury comes       09:25AM

back, I will let them know we're finished.                                   09:26AM

     THE COURT:  All right.  Very well.                     09:26AM

     MS. M. MILLER:  What I'll say, Your Honor, is         09:26AM

we're finished pending further ruling from the Court so that                 09:26AM

if he is called back, it's not unusual.                                      09:26AM

     THE COURT:  Right.  Okay.                             09:26AM

     Mr. Martin, Ms. McConwell, you ready to proceed        09:26AM

then on cross-examination of the witness pending this issue?                 09:26AM

     MR. MARTIN:  So just so I understand, it's the        09:26AM

1    intent then that with crossing, and then based on the Court's    09:26AM

2    ruling, he'll either be recalled or he won't be recalled?    09:26AM

3                THE COURT:  Right.  Right.    09:26AM

4                MR. MARTIN:  I prefer to get it resolved, Your    09:26AM

5    Honor, but --    09:26AM

6                THE COURT:  Well, can you get your cases in    09:26AM

7    20 minutes?  Can you guys do it, like -- it shouldn't take --    09:26AM

8                MS. M. MILLER:  I already have them.  I could    09:26AM

9    just e-mail it to chambers.    09:26AM

10               THE COURT:  You've got Ninth Circuit case law on    09:26AM

11   that?    09:26AM

12               MS. M. MILLER:  I will tell you in one second,    09:26AM

13   Your Honor.  I have case law on it.    09:26AM

14               THE COURT:  I think there is District Court    09:26AM

15   cases, but I don't know about Ninth Circuit.    09:26AM

16               MR. MARTIN:  The only concern I have, Your Honor,    09:26AM

17   is, as the Court is aware.    09:26AM

18               THE COURT:  Yes.    09:27AM

19               MR. MARTIN:  The discovery in this case is the    09:27AM

20   universe.  It's not like it's, you know -- we've got 30 -- I    09:27AM

21   don't remember how many terabytes of data, it's a gazillion.    09:27AM

22               THE COURT:  You said it was up to where the --    09:27AM

23               MR. MARTIN:  The International Space Station.    09:27AM

24   And it's kind of -- that's the kind of cases I'm going to be    09:27AM

25   looking for.  I don't know if I can do it in 20 minutes, but I    09:27AM

*Direct - Khamvongsa*

1  can sure try, Judge.                                      09:27AM

2          THE COURT:  Well, all right.  Look, I think it's   09:27AM

3  just a pretty simple issue.  Okay.  We already know that a 09:27AM

4  defendant is entitled to notice of the charges against him in 09:27AM

5  an indictment.  We know that.                              09:27AM

6          The question is, and this is an interesting issue  09:27AM

7  because you have a defendant, Mr. Walker, who's being accused 09:27AM

8  of owning 99.9% -- 99% of Hansen Helicopters and has all of 09:27AM

9  these -- allegedly, I'm just saying allegedly, alter ego   09:27AM

10 corporations that he's working through, these shell        09:27AM

11 corporations, there is 47 of them, I guess.  And the question 09:27AM

12 is not one of them are mentioned in the grand jury indictment. 09:28AM

13 There are three grand jury indictments in this case.  We're 09:28AM

14 talking about right now.  The Second Superseding Indictment. 09:28AM

15 And so is it sufficient notice to the defendant that the   09:28AM

16 charges against him, as it relates to the alter ego of the 09:28AM

17 corporations, with regard to who they are and what they are, 09:28AM

18 to be found in discovery.  Whether it's 30 terabytes, I don't 09:28AM

19 know whatever you want to call it, to the international news 09:28AM

20 station, whatever you call it, you know.  With regard to    09:28AM

21 discovery and with regard to pleadings, really, I've not heard 09:28AM

22 this argument.  I'll be honest, all the years I've been a   09:28AM

23 judge, I've not heard this.                                09:28AM

24          MR. MARTIN:  Your Honor, let me be clear, there    09:28AM

25 are multiple corporations mentioned in the indictment.     09:28AM

*Direct - Khamvongsa*

| | |
|---|---|
| 1 | THE COURT:  Right. |
| 2 | MR. MARTIN:  It's not like there are none.  There |
| 3 | are multiple.  I mean if you just go to page 13, there is -- |
| 4 | page 14, I mean there is a bunch of them.  So I mean... |
| 5 | THE COURT:  Well, I know, but -- okay, so -- any |
| 6 | way, so you could make that argument. |
| 7 | MS. M. MILLER:  Yes. |
| 8 | THE COURT:  The point is -- the point is, the |
| 9 | shell corporations, that's it. |
| 10 | MS. M. MILLER:  Yes, we will get you the case |
| 11 | law, Your Honor.  And -- |
| 12 | THE COURT:  All I -- I don't want -- I don't need |
| 13 | you guys to do an analysis.  I can look at the case law. |
| 14 | MS. M. MILLER:  No.  We're just -- we're just |
| 15 | going to get you the case law. |
| 16 | THE COURT:  Prosecution will get theirs. |
| 17 | Defense, you can get yours.  How much time do you need, it's |
| 18 | 9:30? |
| 19 | MR. MARTIN:  I mean... I didn't even look, Judge, |
| 20 | but I'll -- |
| 21 | THE COURT:  How much time?  What do you think? |
| 22 | What's your feel?  I don't think it should be that big of a -- |
| 23 | honestly, I don't think it should be that difficult of a find, |
| 24 | but I don't know. |
| 25 | MR. MARTIN:  I'll -- you tell me how much time I |

The timestamps in the right margin read (top to bottom): 09:28AM, 09:28AM, 09:28AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM, 09:29AM.

*Direct - Khamvongsa*

1    have, Your Honor, I'll use it.                                    09:29AM

2            MS. MCCONWELL:  Maybe an hour?  Could we check             09:29AM

3    back in an hour.                                                  09:29AM

4            THE COURT:  Okay.  You're going to just do it             09:29AM

5    from here?                                                        09:29AM

6            MR. MARTIN:  Yeah.  We'll just go back there.             09:29AM

7            THE COURT:  Okay.  I'll give you an hour.  The            09:29AM

8    prosecutor -- might be faster if the prosecutor gives you        09:29AM

9    their cases since they already have it, and if she wants to      09:30AM

10   give it to you now, would be better.  Give it to me and the --   09:30AM

11   give it to me too so I could look at it.  We already have been   09:30AM

12   looking at some cases anyway.                                    09:30AM

13           MS. M. MILLER:  Yes.                                     09:30AM

14           THE COURT:  But why don't we look at that.  And          09:30AM

15   then I'll give you an hour.  And if it's earlier than an hour,   09:30AM

16   let me know because the jurors are waiting.                      09:30AM

17           Just tell the jurors we're still working on legal        09:30AM

18   issues.  Okay.  Thank you.                                       09:30AM

19           And they're all here.  By the way, all the jurors       09:30AM

20   are here.  They all came in on time, by 9:00 a.m., number one.  09:30AM

21   Well on time for today.  Number two, there is one juror, as      09:30AM

22   you might recall, whose wife is ready to give birth any         09:30AM

23   minute, so just FYI.  He might be called out, but just FYI.     09:30AM

24   Another juror just wanted to give us notice that they have a    09:30AM

25   family member that's really sick, but they're just on call,    09:30AM

*Direct - Khamvongsa*

```
 1   but they're here.  All right.                              09:30AM
 2             MS. M. MILLER:  And the only other thing I want   09:30AM
 3   to bring to the Court's --                                  09:30AM
 4             THE COURT:  Can you get on the mic there, Ms.     09:30AM
 5   Miller?                                                     09:30AM
 6             MS. M. MILLER:  I'm sorry.  I put my mic on, Your  09:30AM
 7   Honor.                                                      09:30AM
 8             THE COURT:  Go ahead.                             09:30AM
 9             MS. M. MILLER:  So Mr. Martin represented to the  09:30AM
10   Court that Mr. Walker's passport showed no travel to the    09:31AM
11   Philippines after 2016, but I'm looking at the copy of it and 09:31AM
12   there is a stamp for the Philippines in November of 2018.  So 09:31AM
13   I'm curious about -- I'm unsure of that representation versus 09:31AM
14   what I'm seeing here.                                       09:31AM
15             THE COURT:  All right.  So why -- you know what   09:31AM
16   they could flush that out.  They'll have to flush that out.  I 09:31AM
17   mean if -- (Pause.)  Sometimes too, I'm not sure, you know,  09:31AM
18   Ms. Miller, I know that sometimes you have to look at it     09:31AM
19   carefully.  If the stamps are -- come together, sometimes they 09:31AM
20   get --                                                      09:31AM
21             MS. M. MILLER:  It's pretty clear.                09:31AM
22             THE COURT:  Okay.  So if it's clear then -- okay.  09:31AM
23   I notice on some of my stamping, they put one on top of the 09:31AM
24   other.                                                      09:31AM
25             MS. M. MILLER:  Says November 15th, 2018 on it.   09:31AM
```

```
 1              MS. MCCONWELL:  Let's take our break and work on      09:31AM
 2    what our issue is that the Court --                            09:31AM
 3              MR. MARTIN:  Two years.  That's a run, Marie.         09:31AM
 4              MS. M. MILLER:  Excuse me?                            09:31AM
 5              MR. MARTIN:  Does not mean he was in the              09:31AM
 6    Philippines two years ago.                                     09:31AM
 7              MS. M. MILLER:  So are you saying now that -- you     09:32AM
 8    represented to this Court that the last stamp was from --      09:32AM
 9              MR. MARTIN:  No.  What I'm saying is there is a       09:32AM
10    run.                                                           09:32AM
11              MS. M. MILLER:  -- 2016.                             09:32AM
12              MR. MARTIN:  It's a run.  It's 2016.  If you'll      09:32AM
13    look at it.                                                    09:32AM
14              THE COURT:  Okay.  Well, you guys can argue that     09:32AM
15    later because that's not before me.  And I'm focusing on the   09:32AM
16    indictment.  It's 9:32.  I'll see all of you at 10:32.  Unless 09:32AM
17    you find the cases earlier, which I'm probably sure you will   09:32AM
18    be able to find it.                                            09:32AM
19              MS. MCCONWELL:  They're going to e-mail it to us.    09:32AM
20              MS. M. MILLER:  Yeah.  We have a case right here,    09:32AM
21    Your Honor, so we'll send to you.                              09:32AM
22              THE COURT:  Just one case.                           09:32AM
23              MS. M. MILLER:  Well, there are many, but you        09:32AM
24    wanted Ninth Circuit and you wanted on point so we'll --       09:32AM
25              THE COURT:  And there is a Ninth Circuit Court of    09:32AM
```

*Direct - Khamvongsa*

```
1   Appeals case.  Okay.  Good to know.                         09:32AM
2              MS. M. MILLER:  Yes.  And it's citing a second   09:32AM
3   one.                                                        09:32AM
4              THE COURT:  It's not a District Court case, it's 09:32AM
5   a Ninth Circuit Court of Appeals case?                      09:32AM
6              MS. M. MILLER:  Both.  Ninth Circuit citing      09:32AM
7   another Ninth Circuit.  We will send it to chambers --      09:32AM
8              THE COURT:  Yeah.  Send to it chambers and to    09:32AM
9   Counsels.  Thank you, Counsel.                              09:32AM
10             MS. M. MILLER:  Thank you, Your Honor.           09:32AM
11             THE COURT:  Okay.  We'll see you in an hour.     09:32AM
12  Longest witness ever.                                       09:32AM
13             (Recess taken at 9:33 a.m.)                      09:33AM
14             (Back on the record at 10:30 a.m.)               10:30AM
15             (Pause.)                                         10:30AM
16             THE COURT:  Did you guys send me something,      10:31AM
17  Defense?                                                    10:31AM
18             MR. MARTIN:  We didn't, Your Honor.  I didn't    10:31AM
19  find anything specific on the issue you raised about discovery 10:31AM
20  expand --                                                   10:31AM
21             THE COURT:  Okay.  You ready to go?  Okay.  Let's 10:31AM
22  go.  We'll call the case up then.  Okay.  Or I'll just call -- 10:31AM
23  let me know.  We're outside the presence of the jury and we 10:31AM
24  took a 30-minute, or no -- hour recess, right?  Was it an   10:31AM
25  hour?  It was an hour recess.  So the Court is in receipt of 10:31AM
```

*Direct - Khamvongsa*

 1   an e-mail from Samantha Miller to Carmen Santos, my clerk, and          10:31AM

 2   to the defense Counsels and then -- so one page e-mail and             10:31AM

 3   then the notice of an unpublished, I'm sorry, unpublished              10:31AM

 4   opinion.  *United States versus Vera*, 894 F.2d 410, 1990 --          10:31AM

 5   hold on one second.  All right.  So the Court is in receipt of         10:31AM

 6   the case from United States of America.  And then defense             10:32AM

 7   Counsel, on the record, did you guys submit anything to the           10:32AM

 8   Court?                                                                 10:32AM

 9              Mr. Martin, I'm sorry, just to place it on the             10:32AM

10   record?                                                                10:32AM

11              MR. MARTIN:  No, Your Honor.  I did not.  I did            10:32AM

12   not find anything on point to the issue that you cited to us,         10:32AM

13   nor did I find that the government's case was on point to the         10:32AM

14   issue it was directed to.                                             10:32AM

15              THE COURT:  So I've already read the government's          10:32AM

16   case.  So let's hear from you why the government's case should        10:32AM

17   not be considered by this Court.  Mr. Martin.                         10:32AM

18              MR. MARTIN:  Sorry, Your Honor.                            10:32AM

19              THE COURT:  That's okay.                                   10:32AM

20              MR. MARTIN:  And if I might, Judge.  Which I got           10:32AM

21   it here, I'm trying to remember which case it was.                    10:32AM

22              THE COURT:  Okay.  *United States of America*              10:32AM

23   *versus Vera;* Johnny Vera 894 F.2d 410.  894 F.2d 410, 1990.         10:32AM

24              MR. MCCONWELL:  Is that a memorandum or a order?           10:33AM

25              THE COURT:  This was an unpublished decision.             10:33AM

1    MS. M. MILLER:  Citing a published Ninth Circuit    10:33AM

2  decision, Your Honor.  *U.S. v. Long.*    10:33AM

3    MS. MCCONWELL:  *U.S. v. Long* only has to do with    10:33AM

4  a denial of the request for Bill of Particulars.  It's not on    10:33AM

5  point.    10:33AM

6    THE COURT:  Okay.  Well, let me just hear the    10:33AM

7  arguments then.  Okay.  Did you find the case, Mr. Martin and    10:33AM

8  Ms. McConwell?  Did you find the prosecutor's case?    10:33AM

9    MR. MARTIN:  Ms. McConwell is going to argue it,    10:33AM

10  Your Honor.  I was looking at another one.    10:33AM

11    THE COURT:  Oh, okay.  All right.    10:33AM

12    MS. MCCONWELL:  So, Your Honor, first of all,    10:34AM

13  this is a non-published opinion.  So it's not -- I don't think    10:34AM

14  -- it does not have precedence for this Court -- for this    10:34AM

15  Court to rule upon that.  The Ninth Circuit case, which is the    10:34AM

16  *U.S. v. Long* that the United States also provided, dealt with    10:34AM

17  a Bill of Particulars issue and an indictment.  Each time, the    10:34AM

18  only thing that was complained of was the sufficiency and the    10:34AM

19  specific counts that were contained in the indictment that    10:34AM

20  they weren't -- that they didn't give notice.  None of these    10:34AM

21  cases are for the case on point which is expanding the actual    10:35AM

22  indictment to include additional party defendants or -- or try    10:35AM

23  to shoehorn defendants -- other entities into an indictment.    10:35AM

24    In our indictment, the paragraphs that    10:35AM

25  Ms. Miller, I mean, Ms. Marie Miller had cited to, which was    10:35AM

1    127, does not give -- does not give any of the Defendants          10:35AM

2    either I guess, Mr. Walker or Hansen Helicopters, and Hansen       10:35AM

3    Helicopters isn't in this; it identifies specifically using        10:35AM

4    Caledonian Agency, Bank of Hawaii and Hansen Northern              10:35AM

5    Helicopters.  And in those specific bank accounts, it doesn't      10:35AM

6    give us any type of a notice that Pacific Spotters is somehow      10:35AM

7    going to be -- attempted to be dovetailed into -- into this        10:35AM

8    action.                                                            10:35AM

9               We are actually in the third to the last witness.       10:35AM

10   We've been in trial since March.  And at no point has this --      10:35AM

11   has the government raised this issue that they want to include     10:36AM

12   a Philippine corporation that the United States government has     10:36AM

13   no jurisdiction over or Philippine-registered aircraft into a      10:36AM

14   criminal trial in the United States.                              10:36AM

15              So the case that they provided is -- is -- what         10:36AM

16   he's trying to -- what this defendant was trying to do was         10:36AM

17   have his conviction set aside because he didn't -- he didn't       10:36AM

18   have adequate -- because he didn't have adequate notice or due     10:36AM

19   process.  And I believe in this *Vera*, it was a very limited      10:36AM

20   indictment.  It wasn't -- it was a drug -- he was -- it was a      10:36AM

21   drug charge, whether he knowingly and intentionally possessed      10:36AM

22   or to distribute cocaine.                                          10:36AM

23              THE COURT:  Well, I mean I think it was more the        10:36AM

24   amount, whether it was approximately -- approximately five         10:36AM

25   kilograms of cocaine versus the statutory requirement that it      10:37AM

| | | |
|---|---|---|
| 1 | be five grams. | 10:37AM |
| 2 | MS. MCCONWELL:  Five grams.  Right. | 10:37AM |
| 3 | THE COURT:  Five kilograms or more. | 10:37AM |
| 4 | MS. MCCONWELL:  So at least he knew he was | 10:37AM |
| 5 | dealing with a drug, cocaine.  This is a completely different | 10:37AM |
| 6 | entity being -- trying to be shoehorned into a -- how many -- | 10:37AM |
| 7 | or indictment is -- and it's the third one... 47 pages long, | 10:37AM |
| 8 | 110 counts.  And as you see in your Exhibit 3003, it's -- you | 10:37AM |
| 9 | know, a corporation that is incorporated in the Philippines, | 10:37AM |
| 10 | and they're attempting to say because Mr. Walker has an | 10:37AM |
| 11 | ownership interest, somehow that should put everybody on | 10:37AM |
| 12 | notice that that -- that that lawful corporation should be | 10:37AM |
| 13 | brought into this Court in this criminal trial.  And I just | 10:37AM |
| 14 | think should fail, and particularly, since it's trying to be | 10:38AM |
| 15 | brought in on the third day of the third to the last witness | 10:38AM |
| 16 | testimony in the trial.  If this was an issue, if this was | 10:38AM |
| 17 | something that the government thought was part of this | 10:38AM |
| 18 | indictment, we should have been hearing about this at the very | 10:38AM |
| 19 | beginning of trial, which we have not.  We did not. | 10:38AM |
| 20 | THE COURT:  Okay.  Yes, Mr. Martin? | 10:38AM |
| 21 | MR. MARTIN:  Your Honor, pardon me.  This case | 10:38AM |
| 22 | that the government cites -- and I apologize for not being | 10:38AM |
| 23 | fully prepared when we first walked in.  I was trying to find | 10:38AM |
| 24 | some cases that were on point to what you submitted to us and | 10:38AM |
| 25 | I hadn't read all of this, but this case is a -- more than an | 10:38AM |

*Direct - Khamvongsa*

1    issue related to the indictment.  It's a sentencing issue.  It    10:38AM

2    talks about, you know, does it meet a -- is the sentence ten    10:38AM

3    to life versus what other sentence it might be.  And the    10:38AM

4    defendant in that case alleged he did not have sufficient    10:38AM

5    notice.    10:39AM

6              This -- the case we have, Your Honor, the issue    10:39AM

7    that you ask is, are we informed that -- through an indictment    10:39AM

8    -- can an indictment basically be broadened by discovery so    10:39AM

9    that we are informed of everything?  I don't necessarily think    10:39AM

10   this case touches that.  And the reason I say that is this,    10:39AM

11   this is a one-count indictment that this gentleman plead to,    10:39AM

12   Mr. Vera, I'm assuming it's Mr. Vera, pled to.  We're dealing    10:39AM

13   with 110 counts.  We're dealing with tons and tons of    10:39AM

14   discovery in this case.  Much of which we are -- as the Court    10:39AM

15   is aware, we have been getting, during this trial, exhibits,    10:39AM

16   which I consider to be discovery in this case.  And I submit    10:39AM

17   that although *Vera* is instructive, it's not necessarily    10:39AM

18   controlling and that it would be more prudent at this point,    10:39AM

19   this far along in the trial, for us to stay on scope, on focus    10:39AM

20   as to where we have been up until today.  Because virtually,    10:40AM

21   we're at the point where the government is trying to    10:40AM

22   completely change the theory of the case in their third from    10:40AM

23   last witness and bring in new things that we have to defend    10:40AM

24   against.  And I don't think it's appropriate.  And I don't    10:40AM

25   think this case addresses the specific point that the Court    10:40AM

1    asked us to address.                                    10:40AM

2            THE COURT:  Are you -- I'm sorry.  So I heard Ms.    10:40AM

3    McConwell say that she felt that the Second Superseding    10:40AM

4    Indictment in this case, she didn't use the word "reform" but    10:40AM

5    she's saying adding on a -- other defendants in this case,    10:40AM

6    including Pacific Spotters.                              10:40AM

7            MR. MARTIN:  Yes, Your Honor, it included -- when    10:40AM

8    we first got this case in May of 2018, there were four    10:40AM

9    defendants:  Jon Walker, Rufus Crowe, Turner Kapp and Marvin    10:40AM

10   Reed.  There was a second -- there was a superseding    10:40AM

11   indictment, which included Hansen Helicopters, and I believe    10:41AM

12   Randall Rogers.  Then there was the Second Superseding    10:41AM

13   Indictment which added the Frank Litkei and Spares, Inc.  So    10:41AM

14   we've gone through -- and we went from -- and I may be wrong    10:41AM

15   on my numbers, but we want from 18 counts, or somewhere in    10:41AM

16   that neighborhood, to 70 or 80 counts, to 110 counts is what's    10:41AM

17   alleged in this indictment, Your Honor.  So each indictment    10:41AM

18   expanded and expanded and expanded.  If that was the question    10:41AM

19   you asked me?                                           10:41AM

20           THE COURT:  Okay.  Yes?                         10:41AM

21           MS. MCCONWELL:  Well, and, Your Honor, also the    10:41AM

22   witness that is on the stand right now is on the stand for    10:41AM

23   only the wire fraud and the money laundering counts.  And so    10:41AM

24   it's also not clear on them trying to reform the indictment    10:41AM

25   that -- I mean, I assume it's only relevant to if -- it would    10:41AM

1   only be relevant to these Counts 100 through 110, but I would                10:42AM

2   submit I don't think they've given notice.  I don't think it's               10:42AM

3   patently fair to the Defendants to change it this late in the                10:42AM

4   game.                                                                        10:42AM

5             THE COURT:  Okay.  Anything else, Counsels?                        10:42AM

6             MR. MARTIN:  No, Your Honor.                                       10:42AM

7             THE COURT:  Hold on one second before I hear from                  10:42AM

8   -- let me check my notes.  Ms. Marie Miller, are you going to                10:42AM

9   argue this?                                                                  10:42AM

10            MS. M. MILLER:  Yes, Your Honor, I am.                             10:42AM

11            THE COURT:  Okay.  You may proceed.                                10:42AM

12            MS. M. MILLER:  The whole point of a superseding                   10:42AM

13  indictment, Your Honor, is to add additional charges or                      10:42AM

14  additional defendants if evidence comes to the attention of                  10:42AM

15  the government that additional crimes are being committed.                    10:42AM

16            To correct Ms. McConwell, we are absolutely not                    10:42AM

17  adding Pacific Spotters Corporation to the indictment.  We're                10:42AM

18  not charging Pacific Spotters Corporation.  We've charged Jon                10:42AM

19  Walker.  Also, Your Honor --                                                 10:43AM

20            THE COURT:  Okay.  Hold on, hold on.  So let me                    10:43AM

21  just think about that.  Are you not incorporating by reference               10:43AM

22  Pacific Spotters into the shell corporations that are being                  10:43AM

23  alleged in the indictment?                                                   10:43AM

24            MS. M. MILLER:  It is one of many shell                            10:43AM

25  corporations that Jon Walker used, yes.  However --                          10:43AM

*Direct - Khamvongsa*

1    THE COURT:  Okay.                          10:43AM

2    MS. M. MILLER:  -- even though Ms. McConwell is    10:43AM

3    saying, well, wait a minute, what does that have to do with    10:43AM

4    the wire fraud charges?  It has everything to do with the wire    10:43AM

5    fraud charges.  She keeps ignoring Count 99 of the Second    10:43AM

6    Superseding Indictment which is the conspiracy to commit wire    10:43AM

7    fraud.  And where we incorporated in all of our allegations    10:43AM

8    that preceded that.  What's important about that count, Your    10:43AM

9    Honor, and what's important about this piece of evidence is we    10:43AM

10   have evidence that Pacific Spotters Corporation wired funds    10:43AM

11   from its continued lease of the helicopters to Limey Air, Inc.    10:43AM

12   That's the evidence that is subject of this motion.    10:43AM

13   Ms. McConwell also said we haven't heard about it    10:44AM

14   in this case until this point.  That's not true.  We talked    10:44AM

15   about it in opening, Ms. Jones testified specifically about    10:44AM

16   Pacific Spotters, Mr. Marinho testified specifically about    10:44AM

17   Pacific Spotters.  And by the way, to remind the Court,    10:44AM

18   Mr. Marinho's testimony wasn't live.  It was a deposition that    10:44AM

19   was taken years ago, and where that issue about Pacific    10:44AM

20   Spotters being used in the fraud was flagged by the government    10:44AM

21   for the Defendants during the course of that deposition.    10:44AM

22   We introduced a number of exhibits that pertained    10:44AM

23   directly to Pacific Spotters:  Exhibit 2939, Exhibit 3047,    10:44AM

24   Exhibit 829, Exhibit 3003, Exhibit 775, Exhibit 770,    10:44AM

25   Exhibit 771, 2900, 2990.  ECFs that we've asked this Court to    10:44AM

 1    take judicial notice of.                                    10:45AM

 2              I think the other thing that's critical for the   10:45AM

 3    Court to note is that these helicopters were sold to specific 10:45AM

 4    -- Pacific Spotters by Jon Walker who signed off on it.  And, 10:45AM

 5    Your Honor, those helicopters, when they were sold to Pacific 10:45AM

 6    Spotters, had been registered under the name of Bean Bag,   10:45AM

 7    which you've heard, which the Defendants are not contending  10:45AM

 8    they had no notice of; O'Hara, which you've heard that name,  10:45AM

 9    the Defendants are not contending they had no notice of; of   10:45AM

10    Hansen Northern, which you've heard, the Defendants aren't    10:45AM

11    contending they had no notice of; of Whirlwide and of         10:45AM

12    Helifish.  Those were the registered --                      10:45AM

13              THE COURT:  I'm sorry.  They are not -- let's --   10:45AM

14    they're not at least -- they have not complained about that,  10:45AM

15    that's right.                                                10:45AM

16              MS. M. MILLER:  No, they have not.                 10:45AM

17              THE COURT:  As of right now, we're only focusing   10:45AM

18    though on Pacific Spotters because of the witnesses on the    10:45AM

19    stand.                                                       10:45AM

20              MS. M. MILLER:  But Pacific Spotters bought those   10:45AM

21    helicopters.  Jon Walker sold his own helicopters to Pacific  10:45AM

22    Spotters from the shell companies that have been identified to 10:46AM

23    Pacific Spotters after the first indictment --               10:46AM

24              THE COURT:  Listen.                                10:46AM

25              MS. M. MILLER:  -- to conceal --                   10:46AM

1       THE COURT:  Okay.  The theory of your case is all          10:46AM

2   well and good, we've got that down, you got it down.  The      10:46AM

3   question is notice.                                            10:46AM

4       MS. M. MILLER:  So let's --                                10:46AM

5       THE COURT:  I guess my question to you is --               10:46AM

6       MS. M. MILLER:  Yes.                                       10:46AM

7       THE COURT:  -- what about allowing amendment of            10:46AM

8   the indictment?  If it would not prejudice the Defendant, the  10:46AM

9   Court could allow it.  Should I do that?  Allow amendment of   10:46AM

10  the indictment?  I know they're going to just jump up and go   10:46AM

11  crazy.                                                         10:46AM

12      MS. M. MILLER:  Your Honor, I would argue this is          10:46AM

13  not an amendment of the indictment, and that's why we cited    10:46AM

14  this case law to you.                                          10:46AM

15      THE COURT:  I think this case is weak, I'll be             10:46AM

16  honest with you.  I looked at this case carefully.  This is a  10:46AM

17  one-count indictment.  This has to do with a guilty plea, and  10:46AM

18  this is really an issue of does the defendant have notice that 10:46AM

19  he's going to receive a more severe sentence because the       10:46AM

20  indictment says approximately five kilograms, whereas the      10:47AM

21  statute says five kilograms or more.  I mean it's pretty       10:47AM

22  simple.  I've done hundreds of sentencings.  So I mean this is 10:47AM

23  like kind of a weak -- I mean this particular case is a weak   10:47AM

24  case for your citation.  And then the judge -- I'm looking at  10:47AM

25  how this was written by the appellate court, and where they    10:47AM

1    talk about --                                              10:47AM

2              MS. M. MILLER:  In *Long*.                        10:47AM

3              THE COURT:  They look at the District Court's     10:47AM

4    colloquy and where the District Court judge, before the plea  10:47AM

5    of guilty to that count, specifically informed the defendant  10:47AM

6    of the penalties, the maximum penalties.  The defendant says  10:47AM

7    I'm going to show you that it doesn't apply, and in fact, with  10:47AM

8    regard to the weight of the cocaine, the prosecution and the  10:47AM

9    defense both had expert witnesses to say how much was that  10:47AM

10   cocaine weighing.                                          10:47AM

11             So, I mean, I think that clearly this case is    10:47AM

12   strong in terms of -- strong in terms of for that case, but I  10:47AM

13   just don't see it.  I'm more concerned about this case, where  10:48AM

14   you have a 100-count indictment and I still don't -- I guess I  10:48AM

15   still don't understand why the prosecution, anybody in the  10:48AM

16   prosecutor's office, they just didn't put in the names of the  10:48AM

17   corporations.  You guys knew it.  You guys knew that Pacific  10:48AM

18   Spotters -- I mean, you may not want to admit there was -- I  10:48AM

19   don't know, whatever -- I've just not seen this in court,   10:48AM

20   like, you guys knew that after the first indictment, as I   10:48AM

21   recall, and correct me if I'm wrong, that you allege that   10:48AM

22   Mr. Walker or somebody went ahead and -- yeah, Walker, they   10:48AM

23   opened up an account to get moneys, that's after the first   10:48AM

24   indictment.  Well, then fast-forward to the Second Superseding  10:48AM

25   Indictment, I mean, I just -- I just --                    10:48AM

| | | |
|---|---|---|
| 1 | MS. M. MILLER:  Your Honor, first of all -- | 10:48AM |
| 2 | THE COURT:  You guys knew that. | 10:48AM |
| 3 | MS. M. MILLER:  Your Honor. | 10:48AM |
| 4 | THE COURT:  I just don't understand why it's not | 10:48AM |

THE COURT:  I just don't understand why it's not
in there.  It's not that big of a deal to stick it in there.
MS. M. MILLER:  And it's also -- if the
Defendants wanted to know all of the shell companies that the
government is contending were used by Jon Walker for this
fraud, the Defendants could have filed a Bill of Particulars.
And Your Honor knows that they did in fact file motions for
bills of particulars pertaining to counts that they had
questions about.  We have alleged and have continued to allege
in the Second Superseding Indictment --
THE COURT:  I don't think we -- I don't think we
disagree with that.  I think everybody agrees that they could
have done it.  They didn't do it.  As I recall, somebody
correct me if I'm wrong, with regard to the record, the
defense did not file a motion for Bill of Particulars as it
relates to the names --
MS. M. MILLER:  Correct.
THE COURT:  -- and addresses of any alleged shell
corporations.
MS. M. MILLER:  Correct.  They did not because
they knew.
THE COURT:  Okay.  You could say that.

```
 1              MS. M. MILLER:  This is an issue of notice, but    10:49AM
 2    what's really, really important here is that we go beyond the  10:49AM
 3    external and we go to what's really happening here.  There is  10:49AM
 4    no question that the Defendants were aware that Jon Walker was  10:49AM
 5    going to now use Pacific.Spotters Corporation to continue the  10:49AM
 6    fraud.  There was always a question, and Your Honor is saying,  10:49AM
 7    well, the -- the government you knew -- we didn't know in      10:49AM
 8    2018.  In 2018 --                                             10:50AM
 9              THE COURT:  But you guys knew it.  No, but you      10:50AM
10    knew the corporations.  Is it not true --                     10:50AM
11              MS. M. MILLER:  We didn't --                        10:50AM
12              THE COURT:  You guys correct me if I'm wrong, but   10:50AM
13    --                                                            10:50AM
14              MS. M. MILLER:  Yes.                                10:50AM
15              THE COURT:  -- did the prosecution not know of      10:50AM
16    the 47, 48, whatever shell corporation names by the time the  10:50AM
17    Second Superseding Indictment was brought to the grand jury?  10:50AM
18              MS. M. MILLER:  We knew those -- yes, that are on   10:50AM
19    829.                                                         10:50AM
20              THE COURT:  And it's actually 48.  There's 47      10:50AM
21    there plus Pacific Spotters is 48.                            10:50AM
22              MS. M. MILLER:  But we did not know Pacific         10:50AM
23    Spotters was being used the way it was because I want to bring  10:50AM
24    this Court's attention to Judge Manibusan's order at 238.     10:50AM
25    That was in 2019, Your Honor.  And the Defendants, as a matter  10:50AM
```

*Direct - Khamvongsa*

of fact, Mr. Kapp was saying to Judge Manibusan that there was                10:50AM
a de minimus relationship between Pacific Spotters and Hansen                  10:50AM
Helicopters.  It wasn't until after the Second Superseding                     10:50AM
Indictment that we learned that all they did was completely                    10:51AM
move the business over there.  It was after.  You've seen the                  10:51AM
dates on the records that we received from the Philippines,                    10:51AM
every single one of those dates is after the Second                            10:51AM
Superseding Indictment, not before.                                            10:51AM

          And you also saw the representations made by                         10:51AM
defense Counsel in seeking to get travel to the Philippines.                   10:51AM
Jon Walker never sought to obtain travel to the Philippines,                   10:51AM
yet when we got the documents showing the creation of Pacific                  10:51AM
Spotters, that's when we saw that Jon Walker had his passport                  10:51AM
as an identifier for him to have his signature notarized in                    10:51AM
the creation of Pacific Spotters and also in the creation of                   10:51AM
the bank account.                                                              10:51AM

          Limey Air, which is the bank account at issue                        10:51AM
here, and I want to get two pages into evidence from that bank                 10:51AM
account, those two pages show that Limey Air received                          10:52AM
$5 million from Pacific Spotters in --                                         10:52AM

          THE COURT:  All right.  So Ms. -- okay.  You                         10:52AM
don't have to go -- listen, please, I don't need to hear the                   10:52AM
evidence.  I know -- I think I know the evidence pretty well.                  10:52AM
I'm pretty -- I'm a quick study on this.                                       10:52AM

          MS. M. MILLER:  Yes.                                                 10:52AM

1    THE COURT:  So you guys don't have to go through          10:52AM

2  the evidence.  The only issue before this Court is this case   10:52AM

3  that you cite --                                              10:52AM

4    MS. M. MILLER:  Yes.                                        10:52AM

5    THE COURT:  -- enough for me to agree with you?            10:52AM

6  That's it.  Is that -- that -- so I just -- I say that to you,  10:52AM

7  I read this -- okay, maybe there is a stronger case because    10:52AM

8  this is -- it's different, I mean, you know, this case has     10:52AM

9  gotten more longevity, and we are talking about shell          10:52AM

10 corporations.  You're saying Jon Walker is Hansen Helicopters, 10:52AM

11 is spotty -- so forth, so on and 47 others.  He is all that in 10:52AM

12 one.                                                           10:52AM

13   MS. M. MILLER:  Yes.                                        10:52AM

14   THE COURT:  Yeah.  And I just don't -- I guess             10:52AM

15 you're just not giving me an answer as to why any prosecutor   10:52AM

16 just didn't put in there.  Why not?                           10:53AM

17   MS. M. MILLER:  We would have had to supersede a           10:53AM

18 third time to put all the shell corporations in.               10:53AM

19   THE COURT:  You could have done it by the first            10:53AM

20 one or the second one.                                         10:53AM

21   MS. M. MILLER:  We couldn't have done it by the            10:53AM

22 first one.  The first one --                                   10:53AM

23   THE COURT:  Well, how about by the second one?             10:53AM

24   MS. M. MILLER:  We couldn't have done it by the            10:53AM

25 second one, Your Honor.                                        10:53AM

1          THE COURT:  You couldn't have put 47 in?          10:53AM

2          MS. M. MILLER:  No.  Your Honor, we could not     10:53AM

3     have done it by the second one because we were still --   10:53AM

4          THE COURT:  Investigating?                         10:53AM

5          MS. M. MILLER:  -- getting information about the   10:53AM

6     -- we filed an MLAT with the Philippine authorities to get   10:53AM

7     information from them.                                   10:53AM

8          THE COURT:  Okay.  But here's the deal, I totally  10:53AM

9     understand that, you guys were still investigating this case.   10:53AM

10         MS. M. MILLER:  Yes.                               10:53AM

11         THE COURT:  As you were --                         10:53AM

12         MS. M. MILLER:  Yes.                               10:53AM

13         THE COURT:  As you were going into the grand jury  10:53AM

14    --                                                       10:53AM

15         MS. M. MILLER:  Yes.                               10:53AM

16         THE COURT:  -- the investigation was not           10:53AM

17    complete.  And that's part of your theory that you feel the   10:53AM

18    conspiracy was still ongoing.                            10:53AM

19         MS. M. MILLER:  Which is why we had that           10:53AM

20    allegation in the Second Superseding Indictment.         10:53AM

21         THE COURT:  I understand that, but my point is     10:53AM

22    that, here we are -- I mean, that is -- that is kind of --   10:53AM

23    that is the problem with notice.  I mean, because you're still   10:53AM

24    -- even as right now as we're at trial, the balls are    10:53AM

25    juggling, you're saying to me, Judge, we believe that there's   10:53AM

*Direct - Khamvongsa*

 1    still deaths occurring, alleged deaths occurring.  We still          10:54AM

 2    believe there is some stuff going on that shouldn't be going         10:54AM

 3    on with the Defendants or Defendant.  And so that's still            10:54AM

 4    going to be maybe an additional charge, additional indictment.       10:54AM

 5                MS. M. MILLER:  Mm-hmm.                                   10:54AM

 6                THE COURT:  Or --                                        10:54AM

 7                MS. M. MILLER:  But not Pacific Spotters.  We,           10:54AM

 8    Your Honor --                                                        10:54AM

 9                THE COURT:  But I'm just saying that even as we          10:54AM

10    are in trial and even as have you gone through the grand jury        10:54AM

11    indictment, the original grand jury indictment to the third         10:54AM

12    grand jury indictment to today's trial, right before the end        10:54AM

13    of the prosecution's case in chief, this case is still              10:54AM

14    developing as we speak.                                             10:54AM

15                MS. M. MILLER:  Because the Defendants are              10:54AM

16    continuing the fraud.  I am not sure what we can do, Your           10:54AM

17    Honor, other than what we have done.                               10:54AM

18                THE COURT:  Let me just say this, because I'm not       10:54AM

19    the one that did bail detention hearings.                          10:54AM

20                MS. M. MILLER:  Yes.                                    10:54AM

21                THE COURT:  I don't know and I'm not going to          10:54AM

22    criticize any of my judges --                                      10:54AM

23                MS. M. MILLER:  Yes.                                    10:54AM

24                THE COURT:  -- before me.  But there is always a       10:54AM

25    way that certain activities could be banned, prohibited --         10:54AM

```
 1              MS. M. MILLER:  Yes.                          10:54AM

 2              THE COURT:  -- if it's part of criminal       10:54AM

 3    conduct --                                              10:55AM

 4              MS. M. MILLER:  Yes.                          10:55AM

 5              THE COURT:  -- related to the indictment.     10:55AM

 6              MS. M. MILLER:  Yes.                          10:55AM

 7              THE COURT:  But obviously, either you tried and  10:55AM

 8    you were unsuccessful or whatever it may have been.  That's  10:55AM

 9    what's happened.  So I'm not even going to say I think you're  10:55AM

10    right or you're correct in any culpability by the Defendants  10:55AM

11    because I don't know.                                   10:55AM

12              MS. M. MILLER:  Right.                        10:55AM

13              THE COURT:  You know everything is a clean slate  10:55AM

14    to me here.  But my point is, that is always a danger of --  10:55AM

15    I've been a prosecutor too for ten years before I became a  10:55AM

16    judge.  So we're talking 40 years of experience on this bench,  10:55AM

17    and I'm saying this only because when I evaluate the case and,  10:55AM

18    I mean, I'm listening to all of you -- you're a good   10:55AM

19    prosecutor, Ms. Miller, really you are.  I'm just baffled by  10:55AM

20    why the hell -- I must say that, I just don't understand,  10:55AM

21    really why it wasn't even -- why it wasn't put in the  10:55AM

22    indictment, and let's assume you couldn't put it in the  10:55AM

23    indictment, I mean, this is a good motion, this is a valid  10:55AM

24    motion for the defense to bring up.  Question is whether they  10:55AM

25    win or not is a different story, but I'm just saying that had  10:56AM
```

```
 1   even the prosecutor said -- submitted, and I don't know, maybe    10:56AM
 2   you did, tell me if I'm wrong, I've read a lot of things in       10:56AM
 3   this case.  You can see my staff and I have been working our      10:56AM
 4   overtime to get all my orders out too.  That was there           10:56AM
 5   anything, any addendum to say, hey, by the way, when we say       10:56AM
 6   shell corporation as to this, you know, this is what we mean?     10:56AM
 7            MS. M. MILLER:  In Mr. Marinho's deposition, Your        10:56AM
 8   Honor, when Pacific Spotters Corporation was identified as the    10:56AM
 9   company that paid Mr. Marinho --                                  10:56AM
10            THE COURT:  Yup.                                         10:56AM
11            MS. M. MILLER:  -- his payment, even though he           10:56AM
12   was hired by Hansen Helicopters, and he was put on a boat         10:56AM
13   through a company called Alpha Air, at that point, the            10:56AM
14   government maintained that Pacific Spotters was another entity    10:56AM
15   of Hansen.  And at that point, the question was asked of          10:56AM
16   Mr. Marinho in his deposition, "Do you know who Pacific           10:57AM
17   Spotters was?"  And I don't know if you recall this or not,      10:57AM
18   but he said, he asked Diane Keller, who was an employee of        10:57AM
19   Hansen Helicopters, "Who is Pacific Spotters?  The bank          10:57AM
20   stopped my payment because I gave them a contract with Hansen     10:57AM
21   and Alpha Air and now I get a check from Pacific Spotters."       10:57AM
22   And Diane Keller on behalf of Hansen, an agent of Hansen,         10:57AM
23   said, "Pacific Spotters is just another Hansen entity."          10:57AM
24            The defense Counsel said to Judge Manibusan that         10:57AM
25   Pacific Spotters was another Hansen entity.  This occurred        10:57AM
```

1    after the Second Superseding Indictment, and we did not get          10:57AM

2    all of records from the Philippines pursuant to the MLAT until       10:57AM

3    before trial.  That's why they're marked 3003, because we           10:57AM

4    didn't even have them at the time that we did our first             10:57AM

5    exhibit list.                                                       10:57AM

6              And, Your Honor, Limey Air, which is the bank             10:57AM

7    account that that $5 million was wire transferred into, has         10:58AM

8    always been -- the defense is not saying, well, we didn't know     10:58AM

9    about Limey Air.  It's always been a part and parcel of this       10:58AM

10   case.  In their own filings --                                     10:58AM

11             THE COURT:  If I could just say --                       10:58AM

12             MS. M. MILLER:  -- which -- referring to this.           10:58AM

13             THE COURT:  Okay, I know you -- listen, again.           10:58AM

14             MS. M. MILLER:  Your Honor, if you're not going          10:58AM

15   allow it in --                                                     10:58AM

16             THE COURT:  No, no, no.  That's not the issue.           10:58AM

17   I'm trying to understand this.  What I'm telling you is, as I      10:58AM

18   listen to this, the question is, did the indictment give the       10:58AM

19   Defendant notice of the alleged facts and of the prosecution's     10:58AM

20   basic legal theory?  I'm talking about the four corners of the     10:58AM

21   indictment.                                                        10:58AM

22             MS. M. MILLER:  Yes.                                     10:58AM

23             THE COURT:  The -- okay, you're arguing that.            10:58AM

24             MS. M. MILLER:  Our position is yes.                     10:58AM

25             THE COURT:  I got your position.  But you're             10:58AM

```
 1    citing me to go outside the indictment.  That's what you're          10:58AM
 2    telling me to do.  You're citing this case.                          10:58AM
 3              MS. M. MILLER:  No.                                         10:58AM
 4              THE COURT:  Oh, this is outside of the                      10:58AM
 5    indictment.                                                          10:58AM
 6              MS. M. MILLER:  Paragraph 47 and paragraph 127 of          10:58AM
 7    the indictment both identify the use of shell companies,            10:58AM
 8    plural, in the fraud.                                                10:58AM
 9              THE COURT:  Right, you -- okay.  And that's true,          10:59AM
10    but my point is, I really feel that that -- for you to say,         10:59AM
11    look, it's in the deposition with Marinho who, by the way, can      10:59AM
12    barely speak English, and we've had to go through                   10:59AM
13    interpretations, and I listened to him, and I -- we had him on      10:59AM
14    the video or whatever it was.  We had to get Counsel in, as I       10:59AM
15    recall, Razzano, Lujan, blah-blah-blah.  And so, I mean, is         10:59AM
16    that -- and not even knowing at that point, because I don't         10:59AM
17    even know whether or not -- no, I had not even reviewed yet         10:59AM
18    his deposition -- I don't think I had ruled on his deposition       10:59AM
19    testimony, what was going to be in or out.  And so that whole       10:59AM
20    issue of notice again, I mean, that's just another issue that       10:59AM
21    makes it more complex.  And I got to just tell you honestly,        10:59AM
22    I've never seen this in all my years.  I have not.  You know,       10:59AM
23    47, 48 shell corporations is a lot.                                 10:59AM
24              MS. M. MILLER:  It is.                                      10:59AM
25              THE COURT:  If it was -- yeah, I mean, and I just          10:59AM
```

1    think that this case is -- is not the strongest.  It's        11:00AM

2    probably -- I think it's a weak case for you to cite to me.    11:00AM

3              MS. M. MILLER:  Well, we tried to stick with         11:00AM

4    Ninth Circuit.  There are other cases --                       11:00AM

5              THE COURT:  No, all I care about is the Ninth        11:00AM

6    Circuit.                                                       11:00AM

7              MS. M. MILLER:  Right.  And there are other cases    11:00AM

8    in other circuits that could be persuasive that are much, much 11:00AM

9    stronger involving challenging indictments, involving         11:00AM

10   indictments where there is fraud alleged and where there is   11:00AM

11   substantial things and every single court recognizes the fact  11:00AM

12   that if the prosecutor was required to put every single fact   11:00AM

13   they were going to prove at trial in an indictment,           11:00AM

14   indictments would be unwieldy.  And this is a fact, we're     11:00AM

15   really talking about here a fact.  The Defendant is saying    11:00AM

16   they didn't have notice.                                      11:00AM

17             THE COURT:  What case are you talking about, what   11:00AM

18   circuit?  I have never had this issue in my court in my life, 11:00AM

19   so I want to see it.  If you're telling me that there is      11:00AM

20   something that could be persuasive --                         11:00AM

21             MS. M. MILLER:  Yes.                                11:00AM

22             THE COURT:  Not mandatory, I'll look at it, but     11:00AM

23   you --                                                        11:00AM

24             MS. M. MILLER:  Yes.                                11:00AM

25             THE COURT:  And I did say just give me the Ninth    11:00AM

| | |
|---|---|
| 1 | Circuit because I thought you guys had Ninth Circuit case law, | 11:00AM |
| 2 | but I -- | 11:00AM |
| 3 | MS. M. MILLER: We do, you're saying it's a weak | 11:00AM |
| 4 | case. Okay, it's a weak case. | 11:01AM |
| 5 | THE COURT: It's a weak case. It's a weak case. | 11:01AM |
| 6 | If you're going to compare this -- now you're saying, look, | 11:01AM |
| 7 | there's other cases that are more complicated. | 11:01AM |
| 8 | MS. M. MILLER: There are. | 11:01AM |
| 9 | THE COURT: That deals with fraud, that have a | 11:01AM |
| 10 | lot of indictments, could be shell -- whatever it might be. | 11:01AM |
| 11 | Give me the case law. | 11:01AM |
| 12 | MS. M. MILLER: Then we will do that, but at this | 11:01AM |
| 13 | point, Your Honor, what I would recommend, because I don't | 11:01AM |
| 14 | want to hold the jury up any longer, I will end my direct | 11:01AM |
| 15 | examination of Special Agent Khamvongsa. The government feels | 11:01AM |
| 16 | very strongly that those two pages of that bank record for | 11:01AM |
| 17 | Limey Air should come in to prove the conspiracy to wire | 11:01AM |
| 18 | fraud, and we'll just put a pin in. We will cite you the | 11:01AM |
| 19 | other circuits which are persuasive, as you recognized, not -- | 11:01AM |
| 20 | they're not mandatory for you to follow it, but there are fact | 11:01AM |
| 21 | patterns in other cases -- | 11:01AM |
| 22 | THE COURT: All right. We'll look at it. I | 11:01AM |
| 23 | never -- I never believe a lawyer until I read it myself. | 11:01AM |
| 24 | MS. M. MILLER: Yeah. Absolutely. | 11:01AM |
| 25 | THE COURT: So. | 11:01AM |

*Direct - Khamvongsa*

```
 1              MS. M. MILLER:  We will do that.                11:01AM

 2              THE COURT:  I'm not necessary saying against you  11:01AM

 3    because I think you're a good lawyer, but I don't believe   11:01AM

 4    lawyers.                                                    11:01AM

 5              MS. M. MILLER:  We will absolutely do that.  We   11:01AM

 6    will do that.                                               11:01AM

 7              THE COURT:  Yes.                                  11:01AM

 8              MR. MARTIN:  Your Honor, very briefly.  When the  11:01AM

 9    government submits to you that they didn't know about Pacific  11:02AM

10    Spotters until 2020, that's disingenuous.  And I want to point  11:02AM

11    to the Court --                                             11:02AM

12              THE COURT:  I think they did say though earlier   11:02AM

13    on in 2018 or if I recall -- I can't remember the date, but I  11:02AM

14    did think that there was evidence --                       11:02AM

15              MS. M. MILLER:  It was when they were filing     11:02AM

16    their motions to go to the Philippines, obviously they      11:02AM

17    mentioned Pacific Spotters first.                           11:02AM

18              MR. MARTIN:  May I --                             11:02AM

19              MS. M. MILLER:  Which means, you know, they're   11:02AM

20    saying they have no notice, but they mentioned Pacific      11:02AM

21    Spotters first.                                             11:02AM

22              THE COURT:  Well, listen, Counsel, we're talking  11:02AM

23    about notice in the indictment.  Not notice in the world out  11:02AM

24    there, space.                                               11:02AM

25              MR. MARTIN:  You asked them when they knew about  11:02AM
```

```
1    it so that they could have put it in the indictment.  I          11:02AM
2    received this grand jury subpoena June 10th, 9th or 10th from     11:02AM
3    the government, which is the one that formed the basis for        11:02AM
4    these two exhibits that we're arguing about.  The grand jury      11:02AM
5    subpoena that supports these two pages of exhibits they want      11:02AM
6    to introduce is dated November 22nd, 2019.  They've had these     11:03AM
7    records prior to the Second Superseding Indictment, Your          11:03AM
8    Honor.  And we never had this grand jury subpoena.                11:03AM
9             THE COURT:  Well, okay.  No matter what, bottom          11:03AM
10   line is, there has been no mention of any of the specific         11:03AM
11   shell corporations.  That's really the issue before the Court.    11:03AM
12            MR. MARTIN:  Correct.                                    11:03AM
13            THE COURT:  And specifically we're only talking          11:03AM
14   about Pacific Spotters.  Because that's the only matter that's    11:03AM
15   being challenged, because of the agent.  So I -- the             11:03AM
16   prosecution is going to, you know, she could bring back the       11:03AM
17   witness, but I -- she can go ahead and submit a -- if she         11:03AM
18   thinks that there is stronger, not Ninth Circuit but circuit      11:03AM
19   opinion, I'll look at it, you guys can look at it.  But in the    11:03AM
20   meantime, if the prosecution has no further questions of the      11:03AM
21   witness, you guys go ahead and start your cross.                  11:03AM
22            MS. M. MILLER:  Yup.                                     11:03AM
23            THE COURT:  And then nothing about Pacific               11:03AM
24   Spotters would be allowed to be discussed at this time.  I        11:03AM
25   think that's fair.  So at this point, the Court is not going      11:04AM
```

*Direct - Khamvongsa*

```
 1  to allow Pacific Spotters issue to be brought up.  So we       11:04AM
 2  should move right along because it's -- oh.                     11:04AM
 3              MR. MARTIN:  Just to protect my record, Your        11:04AM
 4  Honor.                                                          11:04AM
 5              THE COURT:  -- 11:04.                                11:04AM
 6              MR. MARTIN:  I am asking that this issue is at an    11:04AM
 7  end, and that Agent Khamvongsa is not -- I want to put him      11:04AM
 8  behind us.  I'm just making my record.  So I object to him      11:04AM
 9  being allowed to be recalled.                                   11:04AM
10              THE COURT:  Well, I mean, I haven't said he could   11:04AM
11  be recalled.  The prosecutor wants to just have the            11:04AM
12  opportunity to look at -- pull a circuit opinion.  How long     11:04AM
13  will it take you -- it took you -- you guys could get that      11:04AM
14  fast.                                                           11:04AM
15              MS. M. MILLER:  We have one right now.  We're       11:04AM
16  going to send to chambers, Your Honor.                          11:04AM
17              THE COURT:  Let's look at it right now.  Hold on,   11:04AM
18  we'll wait then.  If you got it now, let's look at it now.      11:04AM
19  What circuit?                                                   11:04AM
20              MS. M. MILLER:  It's Second Circuit, Your Honor.    11:04AM
21              THE COURT:  That's what I thought.  I thought it    11:04AM
22  was second.  All right.                                         11:04AM
23              Did you guys send it?  Did you send it, Ms.         11:06AM
24  Miller?                                                         11:06AM
25              MS. M. MILLER:  I'm sending it.                     11:06AM
```

```
 1              THE COURT:  You're sending it now?          11:06AM

 2              MS. M. MILLER:  Right now.                  11:07AM

 3              THE COURT:  Then, Emily, you're going to send it   11:07AM

 4    to me?                                                11:07AM

 5              (Discussion with law clerk.)                11:07AM

 6              MS. M. MILLER:  It was sent, Your Honor.    11:07AM

 7              THE COURT:  Okay.  Thank you.  Let me look at   11:08AM

 8    that.  You sent it to Counsel, too?                   11:08AM

 9              MS. M. MILLER:  Yes.                         11:08AM

10              THE COURT:  Yeah.  Okay.  Thank you.        11:08AM

11              (Pause.)                                     11:08AM

12              MS. S. MILLER:  Emily, will you get it if I send   11:08AM

13    it to chambers at --                                  11:08AM

14              (Pause.)                                     11:08AM

15              MS. MCCONWELL:  So which is the case, the *Hamling*   11:08AM

16    *versus United States*?                               11:08AM

17              THE COURT:  I'm sorry?  What was that?      11:08AM

18              MS. MCCONWELL:  I'm trying to figure out which   11:08AM

19    case she wants us to look at.                         11:08AM

20              THE COURT:  How many -- did you send one case, or   11:08AM

21    how many cases did you guys send?                     11:08AM

22              MS. MCCONWELL:  She sent a bunch of texts.  11:08AM

23              MS. S. MILLER:  I sent -- it cites three cases,   11:08AM

24    but there is a string cite within one of them that includes   11:08AM

25    additional case law from other circuits, including the Second   11:08AM
```

*Direct - Khamvongsa*

```
 1   Circuit.                                                    11:08AM

 2            THE COURT:  I'm sorry.  Did you send me the case,  11:08AM

 3   or are you sending me the citations?                        11:09AM

 4            MS. S. MILLER:  Sorry.  Did you want the actual    11:09AM

 5   cases themselves?                                           11:09AM

 6            THE COURT:  No.  It just takes time, now.  I'll    11:09AM

 7   find it.  If you have the case, it'd be nice.               11:09AM

 8            MS. MCCONWELL:  Is the case the *United States*    11:09AM

 9   *versus Cohen* case then?                                   11:09AM

10            MS. S. MILLER:  All of them in there we think are  11:09AM

11   relevant.                                                   11:09AM

12            (Pause.)                                           11:11AM

13            THE COURT:  Which case?  Okay.  I'm just looking   11:12AM

14   at the little summaries, but which case is the one that you 11:12AM

15   said is more similar to this case?  Counsel?  I'll just pull 11:12AM

16   -- I'll go to that one first.                               11:12AM

17            MS. M. MILLER:  The one that we sent the hard      11:12AM

18   copy of to -- the entire copy, Your Honor.                  11:13AM

19            THE COURT:  Which one?  The one that you sent me   11:13AM

20   already?                                                    11:13AM

21            MS. M. MILLER:  *LeMay*, the Second Circuit one,   11:13AM

22   yes.  Oh, I'm sorry.  It's Ninth Circuit quoting second?   11:13AM

23            MS. S. MILLER:  Quoting second.                    11:13AM

24            MS. M. MILLER:  Yes, it's Ninth Circuit quoting    11:13AM

25   Second Circuit on this issue.                               11:13AM
```

*Direct - Khamvongsa*

1    THE COURT:  Okay.  What second -- what case is

2 the Second Circuit?  That's *Long*?  No.  Oh, that's Ninth

3 Circuit.  *Long* is Ninth Circuit.  I'm sorry.  Which circuit --

4 which case is that, what's the name of the case?

5    MS. M. MILLER:  One second.

6    THE COURT:  Okay.  All right.  I want to review

7 these cases.  I want to look at them.  I want to look at the

8 facts.  Which one are you relying on, Counsel?  All I care

9 about is the facts.  The case law -- I already know the case

10 law.  Which facts are more relevant or similar to the facts of

11 this case?  You said it's a Second Circuit case?

12    MS. MCCONWELL:  It says *United States versus*

13 *Cohen*.

14    THE COURT:  I'm sorry?

15    MS. MCCONWELL:  It's *United States versus Cohen*,

16 which is in the second or third paragraph of their e-mail.

17 They cited that, a 1975 case.

18    THE COURT:  Is that the one you guys are relying

19 on?  I don't want --

20    MS. M. MILLER:  That's one of them, Your Honor.

21 That's one of them, Your Honor.  There are several that are

22 conspiracy cases with representations by the Court that it is

23 not necessary for the government to allege in the indictment

24 every single fact that supports and so, yeah.

25    THE COURT:  Yeah.  That goes with overt acts.

```
1    That's true.  You don't even have to put overt acts at all in        11:14AM
2    the indictment.  You don't have to prove that.                       11:14AM
3              MS. M. MILLER:  Right.                                      11:14AM
4              THE COURT:  That's actually surplusage.                     11:14AM
5    Shouldn't even --                                                    11:14AM
6              MS. M. MILLER:  Right.  Since we were contending           11:14AM
7    that it was all Jon Walker, that was our position.  So anyway,       11:14AM
8    those are --                                                         11:14AM
9              THE COURT:  I'm sorry?  Since you were what?               11:14AM
10             MS. M. MILLER:  Since we were contending that the          11:14AM
11   illegal conduct was all Jon Walker, that he was the alter ego        11:14AM
12   for all of these companies, that was our position.  And by the      11:14AM
13   time that subpoena was issued in November, we went to the           11:14AM
14   grand jury for a Second Superseding Indictment in December.         11:15AM
15   We didn't even have the records.                                     11:15AM
16             So, you know, our position is Limey Air, that was          11:15AM
17   the bank account, those were the wire fraud proceeds that went      11:15AM
18   into Limey Air.  They came from leasing the same helicopters,       11:15AM
19   that are identified in the indictment, to the same tuna boat        11:15AM
20   companies, that are identified in the indictment.  That is          11:15AM
21   more than sufficient for notice.  And Pacific Spotters has          11:15AM
22   been mentioned by defense Counsel, Defendants, and is cited in      11:15AM
23   all of the G-number evidence that the government cited.  I          11:15AM
24   think --                                                             11:15AM
25             THE COURT:  All right.  I got it.                          11:15AM
```

*Direct - Khamvongsa*

1          MS. M. MILLER:  We just need to --                    11:15AM

2          THE COURT:  Yes.                                       11:15AM

3          MR. MARTIN:  The grand jury subpoena, Your Honor,      11:15AM

4    is December -- November 2019.  The indictment is January 2021.  11:15AM

5    I don't think it took two years for them to get a return on   11:15AM

6    this grand jury subpoena that we didn't have a copy of.       11:15AM

7          THE COURT:  All right.  Listen, I want to read         11:16AM

8    these.  It's going to it take me a little bit.  So let me just  11:16AM

9    ask, is the prosecutor relying on *Cohen*, *LeMay* and *Williams?*   11:16AM

10   Are those your three top ones?                               11:16AM

11         MS. M. MILLER:  Yes, Your Honor.                       11:16AM

12         THE COURT:  Okay, is there any one -- other ones       11:16AM

13   that you want me to look at?                                 11:16AM

14         MS. S. MILLER:  I mean, I think the bulk quote of      11:16AM

15   all those SDNY cases are relevant here.  One of them is      11:16AM

16   security fraud case, for example.                           11:16AM

17         THE COURT:  All I care about, honestly, all I         11:16AM

18   care about is which facts are similar to the indictment in   11:16AM

19   this case, in terms of what has happened.                   11:16AM

20         MS. S. MILLER:  So the *United States versus Bin*      11:16AM

21   *Laden* case, 92 F.Supp.2d, where there was a denial of a Bill  11:16AM

22   of Particulars because unindicted co-conspirators weren't    11:16AM

23   listed.                                                      11:16AM

24         THE COURT:  You don't have to tell me what it is,     11:16AM

25   just tell me the case cite.  All I care about is the case.  I  11:16AM

```
 1    don't want to review things I don't need to review.  I        11:16AM
 2    honestly know -- I think I know the case law.  I just want to  11:16AM
 3    know how -- which case you are you relying on to say, Judge,   11:16AM
 4    this is -- this is persuasive authority that should allow us   11:16AM
 5    to get this in.                                                11:17AM
 6              MS. MCCONWELL:  I don't see a *Bin Laden* case.      11:17AM
 7              THE COURT:  So *USA versus Bin Laden*.  I saw Ms.    11:17AM
 8    Marie Miller said yes as to *Cohen, LeMay* and *Williams*, right? 11:17AM
 9    Right?  Anything else?                                         11:17AM
10              MS. S. MILLER:  I think the final one would be       11:17AM
11    *U.S. v. Bonventre*.  It's 2013 Westlaw 2303726.               11:17AM
12              MS. MCCONWELL:  Can you e-mail that case?            11:17AM
13              MS. S. MILLER:  They're all in the cite right        11:17AM
14    there.                                                         11:17AM
15              THE COURT:  So will you repeat it?                   11:17AM
16              MS. MCCONWELL:  I don't have Westlaw.                11:17AM
17              THE COURT:  2013.                                    11:17AM
18              MS. S. MILLER:  Sorry.  2013 Westlaw, 2303726.       11:17AM
19              THE COURT:  Okay.  Got it.  So there is five         11:17AM
20    cases.  This is what I'm going to go review.  All right.       11:17AM
21    Let's go ahead and take a lunch break, and then we'll come     11:17AM
22    back.  I'll tell the jurors to go ahead and eat lunch.  Their  11:17AM
23    lunch is going to be here in a few minutes.  And it's now      11:17AM
24    11:20.  So I'll see all of you at 12:15.                       11:17AM
25              MS. M. MILLER:  Yes, Your Honor.                     11:18AM
```

*Direct - Khamvongsa*

| | | |
|---|---|---|
| 1 | MS. MCCONWELL: And, Samantha, will you e-mail | 11:18AM |
| 2 | that to me? | 11:18AM |
| 3 | MS. S. MILLER: They're all publicly available. | 11:18AM |
| 4 | You can just Google it, and they'll come up on Casetext for | 11:18AM |
| 5 | free. | 11:18AM |
| 6 | (Recess taken at 11:18 a.m.) | 11:18AM |
| 7 | (Back on the record at 12:47 p.m.) | 12:47PM |
| 8 | THE COURT: All right. We're back on the record. | 12:47PM |
| 9 | All Counsels present. Defendants are present. All right. So | 12:47PM |
| 10 | I reviewed the prosecutor's cases, I still -- I'm not sure | 12:47PM |
| 11 | 100% on this issue, so I want to take a little bit more time, | 12:47PM |
| 12 | to be honest with you. It's an important decision for both | 12:47PM |
| 13 | the prosecution and defense. So I don't want to be rushed | 12:47PM |
| 14 | into this decision. And anyway, so what I'm going to do is I | 12:47PM |
| 15 | think we should just go ahead and proceed forward with the | 12:47PM |
| 16 | agent. | 12:47PM |
| 17 | MS. M. MILLER: Yes, Your Honor. | 12:47PM |
| 18 | THE COURT: Go ahead and begin cross -- you can | 12:47PM |
| 19 | end your cross, I mean direct. Defense can start their cross. | 12:47PM |
| 20 | And then if the Court decides that it would be allowed, then | 12:47PM |
| 21 | the Court may allow him to be called back. We can -- I can | 12:47PM |
| 22 | decide that at that time. | 12:47PM |
| 23 | MS. M. MILLER: Yes, Your Honor. | 12:47PM |
| 24 | THE COURT: But that's -- and I understand that | 12:47PM |
| 25 | the defense are objecting on the record. Is that -- Mr. | 12:47PM |

*Direct - Khamvongsa*

1    Martin, your objection is preserved and --                    12:47PM

2              MR. MARTIN:  Thank you, Your Honor.                  12:47PM

3              THE COURT:  -- so is yours Ms. McConwell.  All       12:47PM

4    right.  We can get the witness up and we'll call in the jury. 12:47PM

5              MS. M. MILLER:  Yes, Your Honor.                     12:47PM

6              THE COURT:  I think she's going to say -- are you    12:48PM

7    going to just ask any further questions?  You want to just at  12:48PM

8    least let the jurors --                                        12:48PM

9              MS. M. MILLER:  I'm just going to let jurors know    12:48PM

10   at this time I have no further questions, subject to further   12:48PM

11   rulings of the Court.                                          12:48PM

12             THE COURT:  All right.                               12:48PM

13             MS. M. MILLER:  And then I'll turn it over to        12:48PM

14   Mr. McConwell.  If he wants to stand up so he doesn't have to  12:48PM

15   walk over, that's fine.  I don't have to go up to the podium   12:48PM

16   to do that, Your Honor.                                        12:48PM

17             THE COURT:  That's fine.  Mr. McConwell, you can     12:48PM

18   do that.  Do you want --                                       12:48PM

19             MS. MCCONWELL:  I'd like them to take their board    12:48PM

20   down.                                                          12:48PM

21             MS. M. MILLER:  Oh, is it okay with you if I just    12:48PM

22   flip it to just a blank page, or you want it --                12:48PM

23             MS. MCCONWELL:  That's fine.                         12:48PM

24             MS. M. MILLER:  That's fine?                         12:48PM

25             MS. MCCONWELL:  And, Your Honor.                     12:48PM

*Direct - Khamvongsa*

```
 1              MR. MCCONWELL:  I'll need you to help with that.        12:48PM

 2              MS. MCCONWELL:  Ms. Miller's -- if he's recalled,       12:48PM

 3    it will only be limited to that one item?                        12:49PM

 4              THE COURT:  Right.  I think that's all she wants        12:49PM

 5    to talk about is those exhibits.  She wanted to get those        12:49PM

 6    exhibits and that one issue.  Those issues, the issues related   12:49PM

 7    to that one -- those two --                                      12:49PM

 8              MS. M. MILLER:  Correct.                                12:49PM

 9              MS. MCCONWELL:  It's two pages on one, but --          12:49PM

10    because I don't want another 30, 40-hour long -- to be called    12:49PM

11    a direct if we come back, if he's called back.  That's my        12:49PM

12    concern based on experience is one question turns into an        12:49PM

13    hour.                                                            12:49PM

14              THE COURT:  Okay, so noted.  Let's call in the         12:49PM

15    jury.  So understood.                                            12:49PM

16              MS. M. MILLER:  I don't think I've taken 30 or         12:49PM

17    40 hours.  Might have felt like --                               12:49PM

18              THE COURT:  It feels like it, team.  Both sides,       12:49PM

19    both sides.                                                      12:49PM

20              MS. M. MILLER:  Sometimes, yeah.                       12:49PM

21              THE COURT:  Not all the time, please.                  12:49PM

22              (Jury in at 12:49 p.m.)                                12:49PM

23              THE COURT:  Please be seated.  Welcome back,           12:50PM

24    ladies and gentlemen of the jury.  Okay.  You have been here a   12:50PM

25    long time, like 9:00, 10, 12, 4 hours.  You had your lunch,      12:50PM
```

*Direct - Khamvongsa*

1    couple of your breaks.  And the Court ran into an issue with        12:50PM
2    the attorneys on legal matter that had to be resolved.  It's        12:50PM
3    taken us this long.  So rather than send you back home, we          12:50PM
4    decided to see if we could try to resolve it, and we resolved       12:50PM
5    it somewhat.  So at this time, let me ask Ms. Miller, Marie         12:50PM
6    Miller, do you have any further questions of the agent?             12:50PM
7              MS. M. MILLER:  Your Honor, at this time, the             12:50PM
8    government has no further questions of the agent subject to         12:50PM
9    recalling him after Your Honor rules on the issue.                  12:50PM
10             THE COURT:  All right.  Very well.  And so at             12:50PM
11   this time, ladies and gentlemen, Mr. McConwell, on behalf of        12:50PM
12   Hansen Helicopters, is going to conduct his cross-examination       12:51PM
13   of the agent.  You may proceed, Mr. McConwell.                      12:51PM
14             MR. MCCONWELL:  Thank you, Your Honor.                    12:51PM
15                                                                       12:51PM
16                    CROSS-EXAMINATION                                  12:51PM
17   BY MR. MCCONWELL:                                                   12:51PM
18      Q.   Mr. Khamvongsa, why don't you take us through your          12:51PM
19   assignment in this matter.  What were you retained to do by         12:51PM
20   the government?                                                     12:51PM
21      A.   We have a hand.                                             12:51PM
22             THE COURT:  Yes?                                          12:51PM
23             JUROR:  The monitor.                                      12:51PM
24             THE COURT:  Oh, monitors.  Are the monitors are          12:51PM
25   not on?  They're on now?  IT?  Somebody's monitor is not            12:51PM

*Cross - Khamvongsa*

```
 1    working?  Only one, we'll get the IT person to come on up.      12:51PM
 2    Okay.  Go ahead and proceed.  Let's just see.                   12:51PM
 3    BY MR. MCCONWELL: (CONTINUING)                                  12:51PM
 4        Q.    First of all, when did you get the assignment?        12:51PM
 5        A.    I got the assignment around 2017.                     12:51PM
 6        Q.    Could you give me approximate date?                   12:51PM
 7        A.    Um... about the fall of 2017.                         12:52PM
 8        Q.    And what were you designated to do?                   12:52PM
 9        A.    My primary role was to investigate the conspiracy as  12:52PM
10    it relates to the wire fraud and the money laundering.          12:52PM
11        Q.    And take us through the -- your investigation process 12:52PM
12    then.  What did you do first?                                   12:52PM
13        A.    First I reviewed the records that were provided to me 12:52PM
14    from the FBI and Department of Transportation OIG and U.S.      12:52PM
15    Attorney's Office --                                            12:52PM
16        Q.    What were those records?                              12:52PM
17        A.    The records relate to everything as it pertains to    12:52PM
18    what was seized from the search warrant, as well as any FAA     12:52PM
19    records that were available that the time.                      12:52PM
20        Q.    How about DOT records, memorandums to DOT?            12:52PM
21        A.    I would have reviewed them.                           12:52PM
22        Q.    All the DOT -- you've seen the 2015 DOT memorandums   12:52PM
23    concerning the progress of the case at that point?             12:53PM
24        A.    There was a lot.                                      12:53PM
25        Q.    You've seen those; correct?                           12:53PM
```

```
1     A.    Yes.                                                12:53PM

2     Q.    And you did note that in the memorandums, and     12:53PM

3  particularly in September, and again, in November, they    12:53PM

4  detailed the Jon Walker companies by name, they identified 12:53PM

5  each of the Vanuatu companies involved in this case and    12:53PM

6  depicted on Exhibit 829; correct?                          12:53PM

7     A.    What exactly is your question specifically?  I'm not 12:53PM

8  understanding your question, I'm sorry.                    12:53PM

9     Q.    Okay.  The DOT memos as of September and November of 12:53PM

10 2015, detailed or identified Jon Walker as the beneficial  12:53PM

11 owner of various Vanuatu corporations that owned aircraft  12:53PM

12 involved in this case; correct?                            12:53PM

13    A.    I looked at a lot of documents.  Do you have the  12:53PM

14 specific document I could review?                          12:53PM

15    Q.    We could pull those out for you if you need it?   12:53PM

16    A.    Sure.                                             12:53PM

17    Q.    Did you have a liaison with the FAA that you worked 12:54PM

18 with initially?                                            12:54PM

19    A.    Initially it was through DOT OIG.  And when I say DOT 12:54PM

20 OIG, meaning Department of Transportation Office of Inspector 12:54PM

21 General.                                                   12:54PM

22    Q.    And that's the same office of Ms. Miller?  Marie  12:54PM

23 Miller is from; is that correct?                           12:54PM

24    A.    Yes.                                              12:54PM

25    Q.    So you received initial information, the status of 12:54PM
```

1   the case, from someone in DOT OIG; correct?                    12:54PM

2       A.   It was primarily through the U.S. Attorney's Office.  12:54PM

3       Q.   Okay.  What documents did you receive?                12:54PM

4       A.   They include pilot-mechanic list, there was a lot     12:54PM

5   that I reviewed, but I reviewed pilot-mechanic lists, the bank 12:54PM

6   records pertaining to various companies belonging to Jon       12:54PM

7   Walker, memorandums, e-mails, statements made from witnesses   12:55PM

8   that were interviewed by the FBI.                              12:55PM

9       Q.   Let's focus on the Jon Walker matter.  What companies 12:55PM

10  are identified when you first got in the case as having been   12:55PM

11  involved with Mr. Walker?                                      12:55PM

12      A.   When I initially reviewed the case, the -- all the    12:55PM

13  moneys were going into the Caledonian Agency Inc. bank account 12:55PM

14  with some funds as it relates to the leasing of the            12:55PM

15  helicopters, going to Hansen Northern Helicopters and Hansen   12:55PM

16  Helicopters itself.                                            12:55PM

17      Q.   Okay.  We'll come back to that after a while and talk 12:56PM

18  a little bit about that detail.  You were critical of the      12:56PM

19  corporate structure that Mr. Walker established to handle the  12:56PM

20  business that he acquired in 1998; correct?                    12:56PM

21      A.   When you say I'm being critical, what exactly are you 12:56PM

22  referring to?                                                  12:56PM

23      Q.   Well, you defined what a valid corporation was;       12:56PM

24  correct?                                                       12:56PM

25      A.   I did -- I did speak about that earlier, yes.         12:56PM

1    Q.   Well, your education you said as an accounting major?          12:56PM

2    A.   Yes.                                                          12:56PM

3    Q.   Did you take corporations?                                    12:56PM

4    A.   Yes.                                                          12:56PM

5    Q.   Did you take auditing?                                        12:56PM

6    A.   We did, yes.                                                  12:56PM

7    Q.   Did you take contract course?                                 12:56PM

8    A.   Yes.                                                          12:56PM

9    Q.   Okay.  Can you tell me what the phrase beneficial             12:56PM

10   interest -- the essential benefit means in terms of what -- of    12:57PM

11   a contract, what that means?                                      12:57PM

12   A.   The beneficial interest?                                      12:57PM

13   Q.   No.  Strike that.  Essential purpose, I'm sorry,             12:57PM

14   essential purpose.                                                 12:57PM

15   A.   The essential purpose, as it relates to?                      12:57PM

16   Q.   A contract.                                                   12:57PM

17   A.   The essential purpose?  I'd have to see it within the        12:57PM

18   contract itself.                                                   12:57PM

19   Q.   For example, and we'll get into it a little bit              12:57PM

20   later, if we have lease agreements concerning tuna boats and      12:57PM

21   aircraft being supplied to tuna boats, the essential purpose      12:57PM

22   of that contract would be to provide that facility of an          12:57PM

23   aircraft that would be able to do fish spotting in this           12:57PM

24   instance; correct?                                                12:57PM

25   A.   Are we talking about the misrepresentations made to         12:57PM

1    the tuna boat companies from --                                      12:57PM

2        Q.   I'm talking about the essential purpose of the              12:57PM

3    contract was to get an aircraft that can go spot for tuna;           12:57PM

4    correct?                                                             12:57PM

5        A.   Are we talking about specific contracts?                    12:57PM

6        Q.   I'm talking about -- yes, specific contract for a           12:57PM

7    tuna boat -- tuna contract and an aircraft.  Essential purpose       12:58PM

8    of that contract is to get an aircraft that can spot for tuna        12:58PM

9    for that boat for the period of time of the contract; correct?       12:58PM

10       A.   We're talking about the tuna boat companies as it           12:58PM

11   relates to this case; correct?                                       12:58PM

12       Q.   I'm talking about any tuna boat contract with an            12:58PM

13   aircraft -- helicopter for fish spotting?                            12:58PM

14            MS. M. MILLER:  Your Honor, I'm going to object             12:58PM

15   because only the tuna boat contracts as they relate to this          12:58PM

16   case are relevant.  So I think what's tripping up the question       12:58PM

17   is here is Mr. McConwell saying any tuna boat contract,              12:58PM

18   anywhere.  That's not relevant.                                      12:58PM

19            THE COURT:  All right.  Mr. McConwell, you want             12:58PM

20   to specify?                                                          12:58PM

21            MS. M. MILLER:  I'll rephrase it, Your Honor.               12:58PM

22            THE COURT:  Rephrase it.  All right.  Very well.            12:58PM

23   Sustained.                                                           12:58PM

24   BY MR. MCCONWELL: (CONTINUING)                                       12:58PM

25       Q.   Let's say a tuna boat contract for an aircraft to           12:58PM

*Cross - Khamvongsa*

1   spot for tuna, in this -- similar to this case, the essential   12:58PM

2   purpose of that contract is to provide an aircraft and spot   12:58PM

3   for tuna for the period of time requested; correct?   12:59PM

4       A.   If we're talking about the contracts I looked at?   12:59PM

5       Q.   I'm talking -- yeah, a tuna boat contract similar to   12:59PM

6   the one in this case.   12:59PM

7       A.   In --   12:59PM

8       Q.   Ones in this case.   12:59PM

9       A.   And what you're asking me is they could provide any   12:59PM

10  aircraft?   12:59PM

11      Q.   An aircraft that would provide fish spotting services   12:59PM

12  for that contract, that's the essential purpose of the   12:59PM

13  contract; correct?   12:59PM

14      A.   It's not correct.   12:59PM

15      Q.   Not correct?   12:59PM

16      A.   Yeah, that's not correct.   12:59PM

17      Q.   What's uncorrect -- not correct about it?   12:59PM

18      A.   Well, the contract misrepresented that they're   12:59PM

19  providing U.S.-registered helicopters when in fact -- that   12:59PM

20  there were issues within the contract.   12:59PM

21      Q.   Try to answer my question.  The purpose of the   12:59PM

22  contract is to get an aircraft to provide tuna spotting   12:59PM

23  services; correct?   12:59PM

24      A.   Tuna spotting services, that's it.   12:59PM

25      Q.   Okay.  That's what the purpose of the contract,   01:00PM

*Cross - Khamvongsa*

1   right?                                                      01:00PM

2       A.    Yeah, they would provide tuna spotting.          01:00PM

3       Q.    For the boat for the three years or whatever the 01:00PM

4   period of the contract; correct?                           01:00PM

5       A.    As it relates just to the purpose, yes, tuna     01:00PM

6   spotting.                                                   01:00PM

7       Q.    That's the purpose of the contract.  All right.  Now, 01:00PM

8   we'll get into it a little bit later, but you have gone     01:00PM

9   through -- you have gone through 3 or 4,000 pages of        01:00PM

10  contracts; correct?                                         01:00PM

11      A.    I've gone through a lot, sir.                     01:00PM

12      Q.    And the essential purpose of all those contracts, 01:00PM

13  whether signed or unsigned, was to provide an aircraft to   01:00PM

14  provide tuna spotting services for the boat involved; correct? 01:00PM

15      A.    To provide tuna spotting services; correct.      01:00PM

16      Q.    For the boat?                                     01:00PM

17      A.    For the boat, fishing boat.                       01:00PM

18      Q.    Now, how many times have you testified by the way? 01:00PM

19      A.    Um, it's maybe 3 or 4.  Most of my cases plead out. 01:01PM

20      Q.    When were these -- in Federal Court?              01:01PM

21      A.    Oh, absolutely, yes.                              01:01PM

22      Q.    For the U.S. Attorney's Office?                   01:01PM

23      A.    Yes.                                              01:01PM

24      Q.    Now, you took an oath to tell the truth, the whole 01:01PM

25  truth and nothing but the truth; correct?  In this case?    01:01PM

```
 1        A.    Absolutely.  Yes.                                    01:01PM

 2        Q.    Is it your job to tell the whole truth about the     01:01PM

 3   circumstances that apply to this case?                          01:01PM

 4        A.    Absolutely, absolutely.                              01:01PM

 5        Q.    I mean, you don't give just the government's version 01:01PM

 6   of it, for the purpose of convicting someone, you give the      01:01PM

 7   good points and the bad points; correct?                        01:01PM

 8        A.    I tell the truth and nothing but the truth, so...    01:01PM

 9        Q.    I believe toward the end of the direct examination   01:02PM

10   the other day, you went through the wire transfers for certain  01:02PM

11   boats and you matched it up to the billing history of Wilma's;  01:02PM

12   correct?                                                        01:02PM

13        A.    What I testified to is I went through 3,000          01:02PM

14   transactions and we just picked a sample.  So I've actually     01:02PM

15   reviewed every single wire as it relates to what I was          01:02PM

16   involved in, in regards to the investigation.                   01:02PM

17        Q.    Now, was this a random sample or was it a selected   01:02PM

18   sample?                                                         01:02PM

19        A.    This sample, these particular ones involved wires    01:02PM

20   that happened to coincide with the FBI search warrant.  In      01:02PM

21   addition, it was an abnormal transaction that occurred within   01:02PM

22   that account.  It was a huge dollar amount, which represents    01:02PM

23   trying to move money to get away -- to get it out of law        01:02PM

24   enforcement oversight.                                          01:02PM

25             MR. MCCONWELL:  Move to strike that answer.           01:02PM
```

*Cross - Khamvongsa*

```
 1    That's not responsive, Your Honor.                          01:03PM

 2              MS. M. MILLER:  Well, Your Honor, I think that     01:03PM

 3    answer was absolutely responsive.                           01:03PM

 4              THE COURT:  Okay.  Hold on.  Let me just --        01:03PM

 5    Veronica, can you repeat the question and answer real quick 01:03PM

 6    here?                                                       01:03PM

 7              (Whereupon the reporter read back requested       01:03PM

 8    portion.)                                                   01:03PM

 9              THE COURT:  All right.  The Court will make its    01:03PM

10    ruling.  I will sustain the objection and the Court will order 01:03PM

11    the witness to just answer the question.  That was a very   01:03PM

12    specific question.  Was it random or actual.  Okay.  So you 01:03PM

13    want to answer the question random or actual?  You want to  01:03PM

14    still ask the question?                                     01:03PM

15              MR. MCCONWELL:  Yes.                               01:03PM

16              THE COURT:  Okay.                                  01:03PM

17              THE WITNESS:  So the question again is?            01:03PM

18    BY MR. MCCONWELL: (CONTINUING)                              01:03PM

19       Q.   It was not a random sample; correct?               01:03PM

20       A.   No, it was not a random sample.                     01:04PM

21       Q.   It was a selection of ten particular aircraft and   01:04PM

22    then two more; correct?                                     01:04PM

23       A.   No.                                                 01:04PM

24       Q.   Okay.  How did you make the selection?             01:04PM

25       A.   No.  Your question was ten random aircraft?         01:04PM
```

*Cross - Khamvongsa*

```
 1     Q.   Ten random aircraft, that received special restricted
 2  airways certificates on February the 25th, 2015, and two
 3  others that received standard airworthiness certificates
 4  several years earlier.
 5     A.   I apologize, sir, but I thought we were talking about
 6  the transactions as it relates to the wire fraud and not the
 7  -- I think I misunderstood your question.  Are you talking
 8  about the airplane or the monetary -- the wire fraud
 9  transactions themselves?
10     Q.   I'm talking about the money, the $4.9 million you
11  seized, and you went through this analysis of the money and
12  tracked it through the accounts of the various companies, and
13  it was specific just selected items, not a random sample?
14          MS. M. MILLER:  Your Honor, I'm -- I apologize.
15  I'm not sure I understand the question, so I'm not sure if
16  there is an objection there.  He started with the
17  transactions, then he went to the money that was seized.
18          THE COURT:  Okay.  I think the objection will be
19  sustained.  Can you just rephrase the question, Mr. McConwell?
20  BY MR. MCCONWELL: (CONTINUING)
21     Q.   Well, you got -- you ultimately got a search warrant
22  or a warrant to seize $4.9 million?
23     A.   Yes.
24     Q.   And for each of the items that you -- that came up in
25  that total $4.9 million, you did that analysis of tracking the
```

```
 1    money; correct?                                          01:05PM
 2        A.  Yes, yes.  I did trace the money as it relates to  01:05PM
 3    what I seized.                                           01:05PM
 4        Q.  Okay.                                            01:05PM
 5        A.  To the wire fraud and the misrepresentations made to  01:05PM
 6    the tuna boat companies as well as the helicopters and the  01:05PM
 7    pilots and mechanics involved.                           01:05PM
 8            MR. MCCONWELL:  Again, I move to strike.  That's  01:05PM
 9    not responsive, Your Honor.                              01:05PM
10            THE COURT:  Just answer yes or no.  The Court   01:06PM
11    will strike your answer, and just answer yes or no.  Did you  01:06PM
12    or did you not?  Just answer it that way.  Okay.        01:06PM
13            THE WITNESS:  Yes, ma'am.                        01:06PM
14            MS. M. MILLER:  Your Honor, I don't believe --   01:06PM
15    can we hear Mr. McConwell's question back because it didn't  01:06PM
16    call for a yes or no answer.                             01:06PM
17            THE COURT:  Okay.  Let's call it back then.  Let  01:06PM
18    me hear.  Veronica, last question, last answer.         01:06PM
19            (Whereupon the reporter read back requested      01:06PM
20    portion.)                                               01:06PM
21            THE COURT:  Okay.  So that's fine then.         01:06PM
22    Objection -- I mean, let me take back my ruling.  So he  01:06PM
23    answered the question, yes.                             01:06PM
24            MR. MCCONWELL:  It was the tail end of the answer  01:06PM
25    was not responsive.  The first part was correct.
```

```
 1                    THE COURT:  The part about seized?

 2                    MR. MCCONWELL:  No.  I think it went beyond that.

 3       We can go on --

 4                    THE COURT:  No, I think that's all.  That was all

 5       -- is there any other parts to that answer?              01:07PM

 6                    (Whereupon the reporter read back requested   01:07PM

 7       portion.)                                                 01:07PM

 8                    THE COURT:  All right.  So the Court will strike 01:07PM

 9       the last -- last part of the answer.  The part where he says 01:07PM

10       yes, the Court will keep that.  So disregard anything after 01:07PM

11       the word yes.  Okay.  Proceed.                            01:07PM

12       BY MR. MCCONWELL:  (CONTINUING)                           01:07PM

13          Q.   Now, did you utilize the QuickBooks programs of the 01:07PM

14       companies?                                                01:07PM

15          A.   Um... I did review it.                           01:07PM

16          Q.   Did you run a trial balance for yourself off the  01:07PM

17       quick -- or just -- what did you do to review -- let me   01:07PM

18       withdraw.                                                 01:07PM

19               What did you do in your review and what action did 01:07PM

20       you take with regard to the QuickBooks program in your    01:07PM

21       analysis?                                                 01:07PM

22                    MS. M. MILLER:  Objection, Your Honor; compound 01:08PM

23       question.                                                 01:08PM

24                    THE COURT:  What did you do?  What was the last 01:08PM

25       part of that?                                             01:08PM
```

```
 1              MR. MCCONWELL:  I'll rephrase.                    01:08PM

 2              THE COURT:  Okay.  Go ahead.                      01:08PM

 3   BY MR. MCCONWELL: (CONTINUING)                              01:08PM

 4       Q.   You used QuickBooks; correct?                      01:08PM

 5       A.   I didn't use that.  I reviewed what the forensic   01:08PM

 6   accountant -- the forensic accountant and I reviewed it     01:08PM

 7   together.                                                   01:08PM

 8       Q.   Okay.  So you had the QuickBooks reports that the  01:08PM

 9   forensic accountant, Ms. Jones, came up with; correct?     01:08PM

10       A.   Yes, Ms. Jones; correct.                          01:08PM

11       Q.   And did she -- did you identify any general accepted 01:08PM

12   accounting principles that were violated in the preparation of 01:08PM

13   the QuickBooks?                                             01:08PM

14       A.   Um... I didn't look at that for that purpose; no.  01:08PM

15       Q.   And you heard Ms. Jones' testimony, she -- her issue 01:08PM

16   with regard to the QuickBooks was not gapped general aviation 01:08PM

17   -- generally-accepted accounting principles, she just didn't 01:08PM

18   like it.  Remember that?                                    01:09PM

19       A.   Are you talking about the -- how the quickbook[sic] 01:09PM

20   records were being maintained?                             01:09PM

21       Q.   Right; correct.                                    01:09PM

22       A.   So -- so the question you want me to ask -- or     01:09PM

23   respond to is what again, sir?                             01:09PM

24       Q.   Well, there is no gap problem with it, but do you  01:09PM

25   agree with Ms. Jones you just didn't like the way it was    01:09PM
```

*Cross - Khamvongsa*

1    structured or do you have any opinion on that at all?

2        A.   Well, the quickbook[sic] records moved around just

3    like what my review of the bank records, in that money was

4    being moved to other corporations owned by Jon Walker for no

5    legitimate business reason.

6        Q.   It was identified where the money was going, and when

7    it was going to go; correct?  Nothing wrong with that, is

8    there?

9        A.   If it's a legitimate business reason, there is

10   nothing wrong with it.  But if you're using it to hide money

11   or conceal some criminal activity or conceal who the

12   beneficiary of the money is, then it's a problem.

13       Q.   There's never been a concealing that Jon Walker was

14   the beneficiary of these companies, was there?

15       A.   The concealment is in the tax record.  Hansen

16   Helicopters, if you looked, we talked about $23 million to a

17   potential --

18            MR. MARTIN:  Your Honor, I've got to object.

19   That's not responsive at all to the question that was asked.

20            MS. M. MILLER:  Your Honor, the question that

21   asked --

22            THE COURT:  Okay.  Okay.  Hold on.  I don't want

23   to hear it.  Let me see.  Let me just hear the question again.

24            (Whereupon the reporter read back requested

25   portion.)

```
 1                    THE COURT:  All right.  The -- so let me -- let       01:10PM
 2     me just do it this way.  Let's -- the Court will strike the          01:10PM
 3     answer, and just answer the question, so just reask-- you want       01:11PM
 4     to still ask the same question, Mr. McConwell?                       01:11PM
 5                    MR. MCCONWELL:  Yes, Your Honor.                       01:11PM
 6                    THE COURT:  Okay.  So let me ask my court             01:11PM
 7     reporter to reask the question.  Say it again, Veronica.             01:11PM
 8                    (Whereupon the reporter read back requested           01:11PM
 9     portion.)                                                            01:11PM
10                    THE WITNESS:  Yes, there's been concealment.          01:11PM
11                    THE COURT:  Okay, next question.                      01:11PM
12     BY MR. MCCONWELL: (CONTINUING)                                       01:11PM
13        Q.   Where?                                                       01:11PM
14        A.   On the tax returns.                                          01:11PM
15        Q.   Now, tax returns, you're talking about the Hansen            01:11PM
16     Helicopters tax returns?                                            01:11PM
17        A.   And his own personal tax returns.                            01:11PM
18        Q.   Now, you announced that there was -- Hansen                  01:11PM
19     Helicopters reported only 20% of the overall income, was that       01:11PM
20     what you said the other day?                                         01:11PM
21        A.   Yes.  They reported less than 20% on the corporate          01:11PM
22     tax returns; correct.                                                01:11PM
23        Q.   How would you describe for us your assessment of the        01:11PM
24     different -- in the structure of the companies, the Hansen          01:11PM
25     Helicopters' companies, affiliated companies or however you         01:12PM
```

```
 1    want to describe it, ones you attribute to Mr. Walker?          01:12PM

 2              MS. M. MILLER:  I'm not sure I understand the          01:12PM

 3    question, Your Honor.                                           01:12PM

 4              THE COURT:  Do you understand the question,           01:12PM

 5    Mr. Witness?                                                     01:12PM

 6              THE WITNESS:  Could you rephrase it, sir?             01:12PM

 7              MR. MCCONWELL:  I'll rephrase it.                     01:12PM

 8              THE COURT:  Let's see if he understands it.           01:12PM

 9              MR. MCCONWELL:  I was going to preliminaries          01:12PM

10    originally.  We'll start from the beginning.                    01:12PM

11    BY MR. MCCONWELL: (CONTINUING)                                  01:12PM

12       Q.   The -- when Mr. Walker bought the company, he decided   01:12PM

13    obviously to set up a series of companies; correct?             01:12PM

14       A.   He decided -- Jon Walker decided to set up a series     01:12PM

15    of companies.                                                   01:12PM

16       Q.   Right.                                                  01:12PM

17       A.   Companies or alter egos, yes.                           01:12PM

18       Q.   Well, I asked you about companies.  We'll talk about    01:12PM

19    alter egos later.  Whole different topic, sir.  He set up       01:12PM

20    eight United States corporations; correct?  In Guam?           01:12PM

21       A.   Yes.                                                    01:12PM

22       Q.   And then he set up another United States corporation    01:12PM

23    called Wilma's Flight Service[sic], Inc.; correct?              01:12PM

24       A.   Walker set up Wilma's Flight Services here in Guam,     01:13PM

25    yes.                                                            01:13PM
```

*Cross - Khamvongsa*

```
1       Q.   Okay.  And that was in 1999; correct?              01:13PM

2       A.   Around that time, yes.                             01:13PM

3       Q.   And you verified that by looking at the corporate  01:13PM

4  records of Guam, and you know that that actually did occur;  01:13PM

5  correct?                                                     01:13PM

6       A.   Yes.                                               01:13PM

7       Q.   Okay.  You also know, don't you, sir, that that    01:13PM

8  corporation was dissolved in 2008; correct?                  01:13PM

9       A.   Yes.                                               01:13PM

10      Q.   Okay.                                              01:13PM

11      A.   Well, I recall that there being no more filings as of  01:13PM

12 2008, doesn't -- I didn't really see anything that reflected 01:13PM

13 that it was dissolved.                                       01:13PM

14      Q.   Were you aware that the procedure for dissolving a 01:13PM

15 corporation is to lower the life of the corporation from     01:13PM

16 perpetual to some fixed amount, sometime, and that was done in  01:13PM

17 this instance at 2008?                                       01:13PM

18      A.   Was that a question or a statement?                01:13PM

19      Q.   That's a question.  Are you aware that that's the  01:14PM

20 procedure in Guam?                                           01:14PM

21      A.   I'm not aware of that.                             01:14PM

22      Q.   But you see -- that wasn't an actually active      01:14PM

23 business company, was it, sir?  Wilma's, the U.S. company?   01:14PM

24      A.   How is it receiving money then if it's not active? 01:14PM

25      Q.   You also know, don't you, sir, that in 2002, that  01:14PM
```

1    Wilma's Flight Service, Inc., in fact it was July the 1st,      01:14PM

2    2002, Wilma's Flight Service, Inc. was set up in Vanuatu as a    01:14PM

3    Vanuatu corporation?  Don't you know that, sir?                  01:14PM

4         A.   In name only.                                         01:14PM

5         Q.   Now -- well, how do you come up with that?            01:14PM

6         A.   Because Wilma's Flight Service had a bank account     01:14PM

7    here in Guam, and it was receiving money as though it's a U.S.   01:14PM

8    corporation.                                                     01:14PM

9         Q.   Not until 2014 or so; correct?                        01:14PM

10        A.   So then it was not dissolved then if it's operating   01:15PM

11   as a U.S. corporation in 2014, when you said it dissolved in     01:15PM

12   -- when it stopped filing in 2008, right?                        01:15PM

13        Q.   Are you aware that a foreign corporation can set up a  01:15PM

14   bank account if they go through the right procedures in Guam     01:15PM

15   -- in United States, as was done in this instance in 2017, by    01:15PM

16   Wilma's Flight Service, Inc., the Vanuatu corporation?           01:15PM

17             MS. M. MILLER:  Objection, Your Honor; assuming        01:15PM

18   facts not in evidence.                                           01:15PM

19             THE COURT:  Mr. McConwell, on that objection?          01:15PM

20             MR. MCCONWELL:  We have an exhibit on that.            01:15PM

21   Laura.                                                           01:15PM

22             It's a new exhibit.  It's the Wilma's Flight           01:15PM

23   Services board of directors from October 25, 2017.              01:15PM

24             THE COURT:  Okay.                                      01:16PM

25             MR. MCCONWELL:  Okay.  We're going to -- I'm           01:16PM

*Cross - Khamvongsa*

```
 1    going to withdraw that, Your Honor.                          01:16PM

 2              THE COURT:  Okay.                                   01:16PM

 3              MR. MCCONWELL:  We're going to have a new number,   01:16PM

 4    it's called "Certificate of Amendment of Articles            01:16PM

 5    Incorporation" with a file stamp of November 21, 2008.       01:16PM

 6              THE COURT:  I'm sorry.  So you're going to try to   01:16PM

 7    get a new exhibit marking?  Is that what you're saying?      01:16PM

 8              MR. MCCONWELL:  I want to -- I'm marking exhibit    01:17PM

 9     -- this is Exhibit 130, Defendants.                         01:17PM

10              MS. M. MILLER:  And these are exhibits the         01:17PM

11    government has not seen, Your Honor.                         01:17PM

12              THE COURT:  Have you not seen that yet?            01:17PM

13              MR. MCCONWELL:  This is cross-examination          01:17PM

14    material that we just received.                             01:17PM

15              MS. M. MILLER:  I'm sorry?  I didn't hear what he  01:17PM

16    just said?                                                   01:17PM

17              MR. MCCONWELL:  This is cross-examination          01:17PM

18    material that we just received.                             01:17PM

19              MS. M. MILLER:  This is -- so for the record,      01:17PM

20    just so we're clear, this is cross-examination information  01:17PM

21    you've just received?                                        01:17PM

22              MR. MCCONWELL:  Yes.                               01:17PM

23              THE COURT:  Okay, Exhibit 130.  Look at it.  See   01:17PM

24    what -- see if you know, okay.  Look at that, Counsels.      01:17PM

25    Defendant's Exhibit 130, is that a correct number, Carm?    01:17PM
```

|   |   |   |
|---|---|---|
| 1 | THE CLERK:  It is, it's next. | 01:17PM |
| 2 | THE COURT:  Defendant's Exhibit 130. | 01:17PM |
| 3 | (Exhibit D-130 marked.) | 01:17PM |
| 4 | THE COURT:  Hold on.  Give the prosecutor a | 01:17PM |
| 5 | minute to look at the certificate of amendment.  And you want | 01:17PM |
| 6 | to look -- you want all of this brought -- you're going to try | 01:18PM |
| 7 | to move to admit all of this, Mr. McConwell? | 01:18PM |
| 8 | MR. MCCONWELL:  Yes. | 01:18PM |
| 9 | THE COURT:  Exhibit 130? | 01:18PM |
| 10 | MR. MCCONWELL:  It's the entire document. | 01:18PM |
| 11 | THE COURT:  Okay.  Exhibit 130 consisting of how | 01:18PM |
| 12 | many pages, 13... 15 pages. | 01:18PM |
| 13 | MR. MCCONWELL:  Right. | 01:18PM |
| 14 | THE COURT:  Any objections, Counsel? | 01:18PM |
| 15 | MS. M. MILLER:  Well, since I just received it, | 01:18PM |
| 16 | Your Honor, and suspiciously, this was not in the Defendant's | 01:18PM |
| 17 | computers when the computers received and the information was | 01:18PM |
| 18 | downloaded.  I would like more than 30 seconds to review | 01:18PM |
| 19 | 15 pages. | 01:18PM |
| 20 | THE COURT:  All right. | 01:18PM |
| 21 | MR. MARTIN:  Your Honor, may I ask the Court to | 01:18PM |
| 22 | admonish the jury to disregard, the *suspiciously* comment by | 01:18PM |
| 23 | Counsel, and if we continue with these, we're going to -- I'll | 01:18PM |
| 24 | be making a motion and -- because that's totally | 01:18PM |
| 25 | inappropriate. | 01:18PM |

*Cross - Khamvongsa*

```
 1          THE COURT:  Yes.  I think the issue -- the           01:18PM

 2   wording suspiciously will be stricken from the record.  Ladies   01:19PM

 3   and gentlemen of the jury, disregard that.  If you guys want   01:19PM

 4   to talk about suspiciously, talk to me about it privately.   01:19PM

 5          MS. M. MILLER:  And the government would like any     01:19PM

 6   other exhibits the defense obviously intends to use with this   01:19PM

 7   witness now, so that we could prepare for it.  Your Honor has   01:19PM

 8   held the government to a very tight requirement to provide the   01:19PM

 9   defense with these exhibits, yet they're obviously intending   01:19PM

10   to use a number.                                                01:19PM

11          THE COURT:  All right, Counsels, so you got more      01:19PM

12   than -- you got a minute or two.  Go ahead and review it.    01:19PM

13          MS. M. MILLER:  Thank you.                            01:19PM

14          THE COURT:  It's not -- it's just an article of       01:19PM

15   incorporation.  Just see if you guys have notice of that.    01:19PM

16          (Pause.)                                              01:19PM

17          MS. M. MILLER:  No objection, Your Honor.             01:20PM

18          THE COURT:  Very well.  Ladies and gentlemen of       01:20PM

19   the jury, Exhibit No. 130 will be admitted without objection.   01:20PM

20   (Exhibit 130 admitted.)                                      01:20PM

21          THE COURT:  Is there any other evidence you want      01:20PM

22   to pass over?                                                01:20PM

23          MR. MCCONWELL:  I've got 131.                         01:20PM

24          THE COURT:  Okay.  Why don't you pass that over       01:20PM

25   to the prosecutor.  Is that a number one?                    01:20PM
```

```
 1              MR. MCCONWELL:  Yes.                              01:20PM

 2              THE COURT:  Okay.  131.  Anything else?  Why      01:20PM

 3    don't we give it to them now so we can move right along.    01:20PM

 4              MR. MCCONWELL:  I don't think anything new --      01:21PM

 5              THE COURT:  Just those two Mr./Ms. McConwell?     01:21PM

 6              MR. MCCONWELL:  Yes.                              01:21PM

 7              THE COURT:  Okay.                                 01:21PM

 8              MR. MCCONWELL:  Of the new exhibits.  The others  01:21PM

 9    have been identified as exhibits in the trial.              01:21PM

10              THE COURT:  Okay.  Very well.  So 130 and 131.    01:21PM

11    Is there a 132?                                             01:21PM

12              MR. MCCONWELL:  Yes, there is, Your Honor.        01:21PM

13              THE COURT:  Oh.  130, 131, 132.                   01:21PM

14              (Exhibit 131 marked for identification.)          01:21PM

15              (Exhibit 132 marked for identification.)          01:21PM

16              MS. MCCONWELL:  They have these.                  01:21PM

17              THE COURT:  They have them?  The prosecution has  01:21PM

18    them?  Okay.                                                01:21PM

19              MS. M. MILLER:  We have 132?                      01:21PM

20              MS. MCCONWELL:  I'm going to give it to them.     01:21PM

21              THE COURT:  Give it to them again.                01:21PM

22              MS. MCCONWELL:  I will, I will.                   01:21PM

23              THE COURT:  Assuming you have them.  I don't want 01:21PM

24    to have like a whole diatribe about whether you have them or 01:21PM

25    not.                                                        01:21PM
```

*Cross - Khamvongsa*

```
 1              MS. MCCONWELL:  I'm moving slow to make sure I      01:22PM
 2   don't mess --                                                 01:22PM
 3              THE COURT:  Okay.  You're moving slow because of    01:22PM
 4   what?                                                         01:22PM
 5              MS. MCCONWELL:  I want to make sure that I don't    01:22PM
 6   mess it up.                                                   01:22PM
 7              THE COURT:  (Laughing.)                            01:22PM
 8              Okay.  All right.  130, 131, and 132.  I got 132.  01:22PM
 9   Okay.                                                         01:22PM
10              MR. MCCONWELL:  Can we go ahead and hand those to  01:22PM
11   the witness?                                                  01:22PM
12              THE COURT:  Okay.  Yes, sure.  130, 131, 132.      01:22PM
13   Anything else there, Mr. McConwell?  Is this it for right now? 01:22PM
14              MR. MCCONWELL:  For right now, Yes, Your Honor.    01:23PM
15              THE COURT:  Okay.                                  01:23PM
16              So the prosecution you should have 130, 131, 132.  01:23PM
17              MS. M. MILLER:  We do, Your Honor.                 01:23PM
18              THE COURT:  Okay.                                  01:23PM
19              There is a 133?  Oh, okay.  Why don't we get --    01:23PM
20   do we have a 134?  Why don't we get them all together.  You   01:23PM
21   want to do that, Mr. McConwell.  Why don't we get it all      01:23PM
22   together.                                                     01:23PM
23              MR. MCCONWELL:  I think those are all the new      01:23PM
24   ones, Your Honor.                                             01:23PM
25              THE COURT:  I think there is a little bit more.    01:23PM
```

*Cross - Khamvongsa*

```
 1   Let's -- why don't we just get -- Ms. McConwell is just        01:23PM
 2   marking really quick.  Prosecution are speed readers, they     01:23PM
 3   could get it done fast.                                        01:23PM
 4              Anything beyond 135?  Not right now.  Okay,          01:24PM
 5   Mr. McConwell, Ms. McConwell will pass to the prosecution 130, 01:24PM
 6   31, 32, 33, 34, 35.                                            01:24PM
 7              MS. M. MILLER:  Oh, we're up to 135 now?             01:24PM
 8              THE COURT:  Well, this has been happening, team.     01:24PM
 9              MS. M. MILLER:  Okay.                                01:24PM
10              THE COURT:  By both sides.                           01:24PM
11              (Pause.)                                             01:26PM
12              MS. M. MILLER:  No, Your Honor, we have no           01:26PM
13   objection to any of the exhibits being admitted.               01:26PM
14              THE COURT:  Fabulous.  Ladies and gentlemen of      01:26PM
15   the jury, Exhibit 130, 131, 132, 133, 134, 135 is admitted     01:26PM
16   into evidence without objection.                               01:26PM
17   (Exhibits 130-135 admitted.)                                   01:26PM
18              THE COURT:  And yes, Mr. McConwell, you may          01:26PM
19   proceed with your questions.                                   01:26PM
20              MR. MCCONWELL:  Thank you, Your Honor.               01:26PM
21              Laura, are we going to be able to put that on?       01:26PM
22              THE COURT:  Okay.  You want this on?                 01:26PM
23              MR. MCCONWELL:  We'll put it on electronically.      01:26PM
24              THE COURT:  Okay.  It will be on the screen then.    01:26PM
25              MR. MCCONWELL:  Yes.                                 01:26PM
```

*Cross - Khamvongsa*

```
 1                    THE COURT:  Okay.                          01:26PM

 2                    MR. MCCONWELL:  If the witness wants the    01:26PM

 3   individual exhibits, I could give them all to him.          01:26PM

 4                    THE COURT:  Do you have the hard copies there?  01:26PM

 5                    THE WITNESS:  They provided me with the hard 01:26PM

 6   copy, Your Honor.                                           01:26PM

 7                    THE COURT:  They've got -- he's got the hard 01:26PM

 8   copies, but, yeah.                                          01:26PM

 9                    MR. MCCONWELL:  Up to 135.                 01:26PM

10                    THE COURT:  If you want to publish it to the 01:26PM

11   jurors, you may do so.                                     01:26PM

12                    MR. MCCONWELL:  Thank you, Your Honor.      01:26PM

13                    THE COURT:  I think we were able to fix the 01:26PM

14   monitor there, Carm?                                       01:27PM

15                    THE CLERK:  Yes, ma'am.  With the help of one of 01:27PM

16   the other jurors.                                          01:27PM

17                    THE COURT:  Oh, good.  Yes?  Hold on, she's going 01:27PM

18   to let you in.                                             01:27PM

19   BY MR. MCCONWELL:  (CONTINUING)                            01:27PM

20       Q.   Can you read the introduction to the -- this Exhibit, 01:27PM

21   130, the first paragraph and the beginning?               01:27PM

22       A.   Sir, would you like me to start with the undersigned? 01:27PM

23       Q.   I'd like you to start with "Certificate of amendment 01:27PM

24   of articles of incorporation filed by the Department of   01:27PM

25   Revenue and Taxation."  That's what I'd like for you to read. 01:27PM
```

*Cross - Khamvongsa*

1    A.   Okay.  Sure.  "Certificate of amendment of articles                01:27PM

2  of incorporation, filed Department of Revenue and Taxation,                01:27PM

3  Gov Guam, business registration, November 21st, 2008."                     01:27PM

4    Q.   The undersigned?                                                    01:28PM

5    A.   Oh.  You want me to read whole thing, sir?                          01:28PM

6    Q.   Yes.                                                                01:28PM

7    A.   Oh, okay.  "The undersigned being the duly elected                  01:28PM

8  president and secretary and a majority of the members of the               01:28PM

9  board of directors of Wilma's Flight Services, Inc., a Guam                01:28PM

10 corporation, do hereby certify that the annexed second amended             01:28PM

11 articles of incorporation reflecting the amendment of Article              01:28PM

12 4 of the first amended articles of incorporation were duly                 01:28PM

13 approved by a majority vote of the board of directors and the              01:28PM

14 written assent of more than two-thirds of the stockholders                 01:28PM

15 representing all of the subscribed capital stock of the                    01:28PM

16 corporation pursuant to a duly unexecuted unanimous consent of             01:28PM

17 shareholders and directors in lieu of combined special                     01:28PM

18 meetings dated November 21, 2008.  The undersigned do hereby               01:28PM

19 further certify that the same is correct and that said                     01:28PM

20 amendment does not affect adversely or otherwise any rights or             01:28PM

21 actions which have or might have accrued to others between the             01:28PM

22 time of filing the first amended article of incorporation and              01:28PM

23 the filing of the second amended articles."                                01:29PM

24    Q.   Okay.  Let's stop right there and go to article four               01:29PM

25 please on page 5.  Could you read that, please?                            01:29PM

```
 1      A.   "The corporation shall have succession by its
 2  corporate name for the term expiring November 21st, 2008, and
 3  it shall have all the powers here in enumerated or implied
 4  here from and the powers now provided or which may be
 5  hereafter provided by law for incorporated companies. "
 6      Q.   So isn't that the termination date of this
 7  corporation, sir?
 8      A.   Expiring November 21st, 2008.
 9      Q.   Yes.
10      A.   Yes.
11      Q.   Correct?
12      A.   Yes.  That's what it appears on here.
13      Q.   Now, with regard to Wilma's -- let's go back, I want
14  to put this in early so we can -- you represented to the jury
15  that Wilma's was a U.S. corporation and it was the one that
16  took all this money in that you looked at and said was wired
17  wrongfully; correct?
18      A.   The last part, I'm sorry, I didn't -- it was wired
19  wrongfully?
20      Q.   That they were -- this is part of the wire fraud by
21  Wilma's, the U.S. corporation, that was instrumental in your
22  findings; correct?
23      A.   It was one of the vehicles used to receive -- that
24  was involved in the wire fraud, but it's more so Caledonian
25  Agency, Inc.  Its just that the --
```

1     Q.   Wilma's -- you put Wilma's in the middle of it, but
2  Wilma's was gone by the time these wires occurred; correct?
3     A.   Wilma's was not gone.
4     Q.   Wilma's, the U.S. corporation, expired, did no more
5  business after November 21, 2008; correct?
6     A.   That's not correct.
7     Q.   That's your opinion; correct?
8     A.   It's not my opinion.  It's based on fact.
9     Q.   What fact?
10     A.   In 2016, Jon Walker tried to sell Hansen Helicopters,
11  and as you recall, Wilma's Flight Services generated over
12  $20 million from tuna boat company.  It had not disappeared.
13  He claimed it as being still in existence and generating a lot
14  of money --
15          MR. MCCONWELL:  Move to strike this answer as
16  totally not responsive, Your Honor.
17          THE COURT:  The Court will overrule that.  He's
18  responding to -- you asked him how he knew that.
19  BY MR. MCCONWELL: (CONTINUING)
20     Q.   I probably left it a little open, sorry.  Go ahead.
21     A.   As I said, Wilma's was still in operation because
22  their own records, Hansen Helicopters and Jon Walker's own
23  records, and earlier Mr. Crowe said that they are synonymous.
24  It showed that Wilma's still generated money.  All those
25  various corporations that we saw earlier in that -- that was

```
 1   released to a potential buyer, it showed that it was still      01:32PM

 2   operating, generating money.  These corporations are nothing    01:32PM

 3   more than alter egos because if you look at the tax returns,     01:32PM

 4   it should have been reported on Hansen Helicopters' tax return   01:32PM

 5   only --                                                          01:32PM

 6              MR. MARTIN:  Your Honor, I now object.  We're         01:32PM

 7   getting into a narrative here.                                   01:32PM

 8              THE COURT:  Yeah.  The Court will sustain that        01:32PM

 9   part.  Just how did you get it, not explain narrative about      01:32PM

10   what type of corporation you believe it to be.  Just your       01:32PM

11   process of how you came to that conclusion --                   01:32PM

12              THE WITNESS:  Okay.                                   01:32PM

13              THE COURT:  -- is sufficient.                         01:32PM

14              Anything else on that --                             01:32PM

15              THE WITNESS:  I will end it on that note.  Sorry,     01:32PM

16   thank you.                                                       01:32PM

17              THE COURT:  No, no, if you're done, you're done,     01:32PM

18   if you're not --                                                01:32PM

19   BY MR. MCCONWELL: (CONTINUING)                                   01:32PM

20      Q.   Now take a look at Exhibit 131 if you would, sir.       01:32PM

21   Let's put that up on the ELMO, on the screen.                    01:32PM

22              THE COURT:  I'm sorry, 131?                           01:32PM

23              MR. MCCONWELL:  131, Your Honor.                      01:32PM

24              THE COURT:  Okay.  Exhibit 131.                       01:32PM

25              MR. MCCONWELL:  That's 130.                           01:33PM
```

*Cross - Khamvongsa*

```
 1            MS. MCCONWELL:  Sorry.                          01:33PM
 2            (Pause.)                                        01:33PM
 3            MR. MCCONWELL:  Before we do that, I'd like to  01:33PM
 4   put up this 829, or have you hold up the poster board, Laura. 01:33PM
 5            MS. MCCONWELL:  Okay.                           01:33PM
 6            THE COURT:  You want Mr. Han to hold up the     01:33PM
 7   poster board?                                            01:33PM
 8            MR. MCCONWELL:  If he would, that'd be great.   01:33PM
 9   BY MR. MCCONWELL: (CONTINUING)                           01:33PM
10       Q.   Now do you see 829?  You're familiar with this 01:33PM
11   document, aren't you, sir?                               01:33PM
12       A.   Yes, sir.                                       01:33PM
13       Q.   Okay.  And that represents the 31 Vanuatu       01:33PM
14   corporations, and Bean Bag and on up; correct?          01:34PM
15       A.   You're talking about the corporate structure that the 01:34PM
16   30 Vanuatu companies at the bottom, then Bean Bag, and then it 01:34PM
17   ended up flowing through Jon Walker, yes.               01:34PM
18       Q.   Jon Walker is at the very top, but there is several 01:34PM
19   corporations in between; correct?                       01:34PM
20       A.   There are layers in between to -- between Walker and 01:34PM
21   the Vanuatu companies, there are layers in between.     01:34PM
22       Q.   Now the Vanuatu companies, you see Wilma's Flight 01:34PM
23   Service, Inc. there as a corporation, a Vanuatu company; 01:34PM
24   correct?                                                 01:34PM
25       A.   I see it on that document, but I've never seen a 01:34PM
```

*Cross - Khamvongsa*

constitution for Wilma's Flight Services saying it's a Vanuatu

company.

Q.   Okay.  Explain how -- first of all, each of the

Vanuatu companies owned at least one aircraft pursuant to the

federal aviation registry information; correct?

A.   The 30 Vanuatu companies all represented as U.S.

corporations on the FAA registry.

Q.   And now the word FAA -- FAA is not on it, or U.S. is

not on the FAA bill of sale or the application for

registration form; is it, sir?

A.   Are we talking about the registry or the bill of

sale?  Because --

Q.   I'm talking about 8050-1, the application for

registration.  Doesn't say U.S. corporation on that at all,

does it, sir?  It has a box for corporation; correct?

A.   Can you please pull it up so we can discuss it?

Q.   We'll do it a little later after a break, yes.  You

don't remember that?

A.   Well, I'm not going to respond until I look at it,

sir.

Q.   Okay.  We'll get that for you.  So isn't it correct,

and you've read the leases, the 2900; 4,000 pages or whatever,

the leases were with Wilma's Flight Service, Inc., that has a

Vanuatu address on it, and with a particular individual boat;

isn't that correct?

1    A.   That's not correct.                                  01:36PM

2    Q.   What's wrong about that statement?                   01:36PM

3    A.   Any time you look at those Vanuatu companies, it is  01:36PM

4  Jon Walker.  All the corporations are owned by Jon Walker.  01:36PM

5    Q.   Sir, it's not responsive.  I move to strike.  That is 01:36PM

6  absolutely not responsive, sir.                             01:36PM

7         THE COURT:  So moving to strike?                     01:36PM

8         MR. MCCONWELL:  Yes.                                 01:36PM

9         THE COURT:  All right.  Let me -- all right.  The    01:36PM

10  Court will grant the motion to strike.  Please disregard,   01:36PM

11  ladies and gentlemen of the jury, and that will be stricken 01:36PM

12  from the record.  Next question.                           01:36PM

13  BY MR. MCCONWELL: (CONTINUING)                             01:36PM

14    Q.   Are you saying that all the companies, all the       01:36PM

15  Vanuatu companies, was all just a setup as a structure by Jon 01:36PM

16  Walker for his sole benefit?                               01:36PM

17    A.   Yes.                                                 01:36PM

18    Q.   Okay.  And nobody else benefitted from that but Jon  01:36PM

19  Walker, all the various corporations on 829; correct?       01:36PM

20    A.   Yes.                                                 01:36PM

21    Q.   And they were set up starting in 1999 with Bean Bag; 01:36PM

22  correct?                                                   01:36PM

23    A.   Which is owned by Jon Walker.                        01:36PM

24    Q.   You know about -- you took corporations, didn't you, 01:36PM

25  in college?  You could be a shareholder of a corporation, that 01:37PM

*Cross - Khamvongsa*

doesn't necessarily mean you own the corporation assets, you

own a share in the corporation, doesn't it, sir?

    A.   Are we talking about as it relates to this case or

just in general?

    Q.   In general.

    A.   So you're asking me can any individual own a share of

stock in a corporation?

    Q.   Can any individual set up a corporation and be the

sole individual that owns any interest in the corporation?

    A.   Of course they could, but there is also other filing

requirements that are needed to show that that entity is its

own legal entity separate from the owners.

    Q.   And you're saying you've not seen any -- in your

research, this thorough research you did, you did not see any

documentation from Vanuatu of the constitutions of each one,

the minutes that set each of those corporations up?  Is that

what you're saying?

    A.   Can you rephrase the question, sir?

    Q.   Are you saying that you have not looked at any of the

constitutions of any of those 30 companies or any of the

minutes that set up the initial companies at all?

    A.   I looked at a variety of documents as it relates to

everything that's up there.

    Q.   Have you looked at the constitutions for each of the

30 corporations, or any of the 30 corporations?

```
 1        A.    I looked at what -- what we did have.              01:38PM

 2        Q.    What did you have?                                 01:38PM

 3        A.    We have Evan Air, Marlin Bay, I believe Alpha Air. 01:38PM

 4   There might be a couple more that seem to slip my mind.       01:38PM

 5        Q.    And you know that there is a Caledonian Insurance  01:38PM

 6   Company, that was set up in about 2001, or about 2000,        01:38PM

 7   actually; isn't that correct?                                 01:38PM

 8        A.    I'll have to see the corporate records.            01:38PM

 9        Q.    You looked at it one time or another, haven't you, 01:38PM

10   sir?                                                          01:38PM

11        A.    I have.                                            01:38PM

12        Q.    Have you looked at the insurance policy that was   01:38PM

13   issued in 2005 by this insurance company?                    01:38PM

14        A.    The insurance policy?                              01:38PM

15        Q.    Yes.                                               01:39PM

16        A.    I've seen an insurance policy.                     01:39PM

17        Q.    For -- issued by Caledonian Insurance Company;     01:39PM

18   correct?                                                      01:39PM

19        A.    From Caledonian Insurance Company.  Okay, yes.     01:39PM

20        Q.    You've seen that.                                  01:39PM

21        A.    I --                                               01:39PM

22        Q.    And you've seen numerous of the constitutions of the 01:39PM

23   various 30 Vanuatu international companies; correct?          01:39PM

24        A.    Yeah, again -- yeah, I've seen documents.          01:39PM

25        Q.    Okay.  And you've seen leases between Wilma's Flight 01:39PM
```

*Cross - Khamvongsa*

1    Services concerning aircraft that are registered under the

2    names of each of the 30 -- individual -- the 30 corporations;

3    correct?

4        A.   (No response.)

5        Q.   Let me start -- I'll withdraw that.  Each of these

6    companies has, by the FAA registry, ownership of one or more

7    of the aircraft involved in this case?

8        A.   But they didn't always match up with what was on the

9    contract.

10       Q.   Sir, would you --

11            MR. MCCONWELL:  I move to strike, and ask him to

12   answer the questions, Your Honor.

13            THE COURT:  Mr. Khamvongsa, please just answer

14   the question.

15            THE WITNESS:  Yes, ma'am.

16            THE COURT:  Okay.  Do you understand last

17   question?

18            THE WITNESS:  Could you ask again, please?

19   BY MR. MCCONWELL: (CONTINUING)

20       Q.   Each of the 30 companies had an aircraft registered

21   on the U.S. registry, or more, one or more aircraft; correct?

22       A.   Yes.

23       Q.   And Wilma's acted as management company for the other

24   Vanuatu corporations, to enter into leases, with the boat --

25   individual boats; correct?

```
 1      A.   Wilma's?  Specifically?                        01:40PM

 2      Q.   Yes.                                           01:40PM

 3      A.   I just want to make sure I understand.  So Wilma's  01:40PM

 4  specifically had contracts for the tuna boats?          01:40PM

 5      Q.   Right.  And the individual Vanuatu corporations,  01:40PM

 6  supplied their aircraft to Wilma's to be used for those  01:41PM

 7  leases; isn't that correct, sir?                        01:41PM

 8      A.   I've never seen a contract between... could you  01:41PM

 9  rephrase the question one more time?                    01:41PM

10      Q.   It doesn't need to be a written contract for the  01:41PM

11  Vanuatu companies to supply their aircraft to Wilma's to  01:41PM

12  fulfill a lease requirement, does there, sir?           01:41PM

13           MS. M. MILLER:  Objection, Your Honor.  That   01:41PM

14  calls for a legal conclusion.                           01:41PM

15           THE COURT:  It calls for speculation.  The Court  01:41PM

16  will sustain the objection.  Rephrase.                  01:41PM

17  BY MR. MCCONWELL: (CONTINUING)                          01:41PM

18      Q.   You're aware that the various companies, various  01:41PM

19  Vanuatu companies that had boats -- had aircraft, their  01:41PM

20  aircraft are on boats and they're on there pursuant to a  01:41PM

21  written lease between Wilma's and the individual boat, tuna  01:41PM

22  boat.  You're aware of that, aren't you, sir?           01:41PM

23      A.   I'm aware that there are multiple companies     01:42PM

24  identified within the contracts, including Wilma's.     01:42PM

25      Q.   But the vast majority of the leases in 2900, the  01:42PM
```

*Cross - Khamvongsa*

```
 1  4,000 pages of leases, are between Williams -- Wilma's and a        01:42PM
 2  boat; correct?                                                      01:42PM
 3      A.   The vast majority?                                         01:42PM
 4      Q.   Yes.                                                       01:42PM
 5      A.   I -- I'm going to say no.                                  01:42PM
 6      Q.   Well, approximately what percentage of the total          01:42PM
 7  4,000 pages for the written agreement between Wilma's and a         01:42PM
 8  particular boat?                                                    01:42PM
 9      A.   I -- I couldn't say.                                       01:42PM
10      Q.   How many of them did you look at?                         01:42PM
11      A.   I looked at every one, sir.                               01:42PM
12      Q.   And you can't give us a sense of the percentage of        01:42PM
13  Wilma's involvement.  Do we need to go through each one for        01:42PM
14  you to verify that for you?                                        01:42PM
15      A.   Yeah, if you'd like.  I mean, I'm not trying to be        01:42PM
16  difficult, but it's -- if I recall correctly, it's about          01:43PM
17  5,000 pages, 4 to 5,000 pages, and so when I went through, I       01:43PM
18  looked at specifically the sections as it relates to my           01:43PM
19  investigation.  I didn't actually keep a tabular count which      01:43PM
20  -- to identify how many went to a specific company.               01:43PM
21      Q.   And Williams[sic] actually did the billing and the       01:43PM
22  collection of the money, and it came back into Williams --        01:43PM
23  Wilma's bank account; correct?                                    01:43PM
24      A.   Wilma's, which Jon Walker had control; yes.              01:43PM
25           MR. MCCONWELL:  I move to strike.  And ask just          01:43PM
```

*Cross - Khamvongsa*

1    answer the question.                                               01:43PM

2              THE COURT:  Yeah, the Court will sustain the             01:43PM

3    objection.  The part about "which Jon Walker" -- that's            01:43PM

4    surplusage or added verbiage and just answer the question.         01:43PM

5    The Court will sustain that objection and strike it.  Please       01:43PM

6    disregard the last few words.                                      01:43PM

7    BY MR. MCCONWELL:  (CONTINUING)                                    01:43PM

8        Q.   In your investigation, you had the power of the          01:43PM

9    United States government behind you for subpoenas and request      01:43PM

10   for information, didn't you, sir?                                  01:43PM

11       A.   I did use the grand jury subpoenas; yes.                  01:44PM

12       Q.   Well, you should know then that the Wilma's money was    01:44PM

13   collected for the boat leases went into a Vanuatu bank account     01:44PM

14   for a good deal of time.  It was handled in that manner from       01:44PM

15   the Vanuatu bank account; correct?                                 01:44PM

16       A.   That's not correct.                                      01:44PM

17       Q.   Do you know why after 2014 there was no Vanuatu bank     01:44PM

18   account for Williams -- for Wilma's?                               01:44PM

19       A.   I do.                                                    01:44PM

20       Q.   Is that because Vanuatu changed the rules and said       01:44PM

21   they had to get their money out of the bank and out of the        01:44PM

22   country?  And other corporations like them, not just -- wasn't     01:44PM

23   singling out --                                                   01:44PM

24              MS. M. MILLER:  Objection, Your Honor.  Counsel        01:44PM

25   is testifying and he's also inserting facts that are not in        01:44PM

1    evidence.                                                    01:44PM

2            THE COURT:  The Court will overrule that             01:44PM

3    objection, he says he knows why.  Overruled.                 01:44PM

4            Can you answer his question?                         01:45PM

5            THE WITNESS:  Yes.                                   01:45PM

6            THE COURT:  Okay.                                    01:45PM

7            THE WITNESS:  So any offshore account that they      01:45PM

8    had, they were forced to close it and so all moneys went into 01:45PM

9    Caledonian Agency, Inc. bank account thereafter.             01:45PM

10           MR. MCCONWELL:  I move to strike his answer.          01:45PM

11   We'll get to that, Your Honor.                               01:45PM

12           THE COURT:  Okay.  The Court will grant that          01:45PM

13   motion to strike, just -- he talked about the corporate      01:45PM

14   structure change.  That was the question, so answer that     01:45PM

15   question.                                                    01:45PM

16           MR. MCCONWELL:  But my question -- the answer is      01:45PM

17   okay.  It's just the law made them get the money out of the  01:45PM

18   Vanuatu, out the banks, the Vanuatu -- I think that's what he 01:45PM

19   said.                                                        01:45PM

20           THE COURT:  No, actually, I think he went beyond     01:45PM

21   that but --                                                  01:45PM

22           MR. MCCONWELL:  He did.  That's why I move to         01:45PM

23   strike.                                                      01:45PM

24           THE COURT:  So I guess it's not clear how he          01:45PM

25   answered that question.  So did the law change?  That was his 01:45PM

```
1    question, did the law change?                              01:45PM

2              THE WITNESS:  No, I -- I thought I heard that --   01:45PM

3    I apologize, but I thought he asked me what happened with the  01:45PM

4    bank, the bank account specifically.                        01:45PM

5              THE COURT:  Okay.  Let's go back to the question.  01:46PM

6    Hold on.  Let's go back to the question.  Hold on.  Hold on.  01:46PM

7    Hold on one second.                                          01:46PM

8              How are you doing there, Mr. Han?  Are you tired?  01:46PM

9    Do you need help there, Mr. Han?  We need to get you an easel  01:46PM

10   there.  Let's help him.  I think he's going to be tired.    01:46PM

11             I'll have Veronica just read.  Thank you, Steven.  01:46PM

12   I appreciate that.  Let's get a repeat of that question.  I  01:46PM

13   think it was very specific.  Let's see what Veronica says    01:46PM

14   here.                                                        01:47PM

15             (Whereupon the reporter read back requested        01:47PM

16   portion.)                                                    01:47PM

17             THE COURT:  Okay, so that's the question.          01:47PM

18             THE WITNESS:  About the law.                       01:47PM

19             THE COURT:  About the rules.  I thought it was     01:47PM

20   the law, but they said the rules.                            01:47PM

21             THE WITNESS:  I -- I don't know about the rules    01:47PM

22   specifically.                                                01:47PM

23             THE COURT:  All right.  Next question.             01:47PM

24   BY MR. MCCONWELL:  (CONTINUING)                              01:47PM

25        Q.   But you do know that the money, if it really was in  01:47PM
```

*Cross - Khamvongsa*

```
 1   the Vanuatu bank account for the -- Wilma's, went to        01:47PM
 2   Caledonian Agency; correct?                                 01:47PM
 3               MS. M. MILLER:  Objection, Your Honor; assuming  01:47PM
 4   facts not in evidence.  Calls for speculation.              01:47PM
 5               MR. MCCONWELL:  He's already testified about     01:47PM
 6   that.                                                       01:47PM
 7               MS. M. MILLER:  He said the money, if it was in. 01:47PM
 8               THE COURT:  The Court will -- okay.  Let's see.  01:47PM
 9   The Court will sustain the objection.  Just ask it another way 01:47PM
10   if you want to.                                             01:47PM
11   BY MR. MCCONWELL: (CONTINUING)                              01:47PM
12       Q.   Will you agree that the money that was collected from 01:47PM
13   the leases after 2014 went into an account of -- Caledonian 01:47PM
14   Agency?                                                     01:48PM
15       A.   Yes.                                               01:48PM
16       Q.   Okay.  And that was a non-operating company; correct? 01:48PM
17       A.   Yes.                                               01:48PM
18       Q.   And it was -- it held the moneys in trust for the  01:48PM
19   distribution of bills and the like for -- or handled by Hansen 01:48PM
20   in its administrative capacity; correct?                    01:48PM
21       A.   No.                                                01:48PM
22       Q.   Now, the Vanuatu -- or the Williams[sic] money     01:48PM
23   collected was not income in United States, was it, sir?     01:48PM
24       A.   I'm sorry?  One more time.                         01:48PM
25       Q.   The money collected by Wilma's Flight Service, Inc., 01:48PM
```

*Cross - Khamvongsa*

 1    a Vanuatu company, on behalf of the Vanuatu 30 corporations,     01:48PM

 2    was not income in the United States; correct?                   01:48PM

 3        A.   Oh, it's income to Hansen Helicopters.                 01:48PM

 4        Q.   No, it's not -- it's income to the individual          01:48PM

 5    Wilma's, isn't it?  It's being held for the benefit of          01:49PM

 6    Williams -- Wilma's.                                            01:49PM

 7        A.   No, that's incorrect.                                  01:49PM

 8        Q.   Okay.  And you do know, don't you, that the chief      01:49PM

 9    financial officers of Hansen, over the years, had been          01:49PM

10    certified public accountants, and the current one is one, he's  01:49PM

11    not an active one, but he was manager of a local big            01:49PM

12    accounting firm?                                                01:49PM

13              MS. M. MILLER:  Objection, Your Honor; compound       01:49PM

14    question, speculation, assuming facts not in evidence.          01:49PM

15              MR. MCCONWELL:  I'll withdraw and ask again.          01:49PM

16              THE COURT:  Okay, withdrawn.  Next question.          01:49PM

17    BY MR. MCCONWELL: (CONTINUING)                                  01:49PM

18        Q.   Are you aware what that the current CFO of Hansen is   01:49PM

19    a CPA that was a former manager of one of the Big 8 accounting  01:49PM

20    firms?                                                          01:49PM

21              MS. M. MILLER:  Objection, Your Honor; outside        01:49PM

22    the scope.  Current CEO of Hansen?  Current meaning as of       01:49PM

23    today?                                                          01:49PM

24              MR. MCCONWELL:  CFO.                                  01:49PM

25              THE COURT:  I'm sorry?  Sorry?  She's saying --       01:49PM

```
 1   current, what do you mean by current?                      01:49PM

 2              MR. MCCONWELL:  CFO during the relevant time     01:50PM

 3   period within this --                                      01:50PM

 4              THE COURT:  So not current.                      01:50PM

 5              MS. M. MILLER:  Not current, okay.               01:50PM

 6              THE COURT:  You don't mean current, right?       01:50PM

 7              MR. MCCONWELL:  Well, he is current at the time, 01:50PM

 8   yes.  The CFO of Hansen was the CPA at the time the money went 01:50PM

 9   into Caledonian Agency?                                    01:50PM

10              THE COURT:  Okay.                                01:50PM

11              THE WITNESS:  So the question is?                01:50PM

12   BY MR. MCCONWELL:  (CONTINUING)                            01:50PM

13      Q.   You're aware that -- the money --                  01:50PM

14              THE COURT:  Your question is again?              01:50PM

15   BY MR. MCCONWELL:  (CONTINUING)                            01:50PM

16      Q.   The deposit was under the eyes and ears of a CFO,  01:50PM

17   chief financial officer, who was a CPA?                    01:50PM

18      A.   So you're asking me if the CFO is aware of the money 01:50PM

19   coming into the bank account?                              01:50PM

20      Q.   At Caledonian Agency, in terms and conditions under 01:50PM

21   which it comes into that bank account?                     01:50PM

22              MS. M. MILLER:  Objection, Your Honor.  That     01:50PM

23   would call for speculation.                                01:50PM

24              THE COURT:  Sustained.                           01:50PM

25   BY MR. MCCONWELL:  (CONTINUING)                            01:50PM
```

*Cross - Khamvongsa*

```
 1      Q.   Okay.  Do you know what kind of business the        01:50PM
 2   Caledonian Agency was actually engaged in, if any?          01:50PM
 3      A.   According to -- yes.                                 01:51PM
 4      Q.   What?                                                01:51PM
 5      A.   It should have been investment as it says on the bank  01:51PM
 6   signature card.                                              01:51PM
 7      Q.   But you're not aware of any investment income or     01:51PM
 8   expenses relating to that, are you, sir?                     01:51PM
 9      A.   No.                                                  01:51PM
10      Q.   Let's take a look at 131, if we can.  Now would you  01:51PM
11   tell us what this is, please?                                01:51PM
12      A.   This is Wilma's Flight Services, Inc. minutes.       01:51PM
13      Q.   And would you go ahead and read that first line,     01:51PM
14   first two lines for us, please?                              01:51PM
15      A.   Yes, sir.  "Minutes of the shareholders and board of  01:52PM
16   directors meeting of Wilma's Flight Services, Inc. held at the  01:52PM
17   company affiliates Hansen Helicopters.Inc. Offices in Harmon,  01:52PM
18   Guam on October 25th, 2017."                                 01:52PM
19      Q.   Keep going.                                          01:52PM
20      A.   "Present Jon D. Walker, Director, also representing  01:52PM
21   Bean Bag Helicopters, Inc., the 100% owner of the company    01:52PM
22   ultimately owned by Jon D. Walker.  Kenneth R. Crowe,        01:52PM
23   Director.  Chairman, by agreement, Jon D. Walker, chaired the  01:52PM
24   meeting.  Discussion."  Do you want me to read all that, sir?  01:52PM
25      Q.   Yeah, go ahead.                                      01:52PM
```

A.   "The general operations of the company were

discussed.  The initial financial statements as and for the

year ended December 31st, 2016, were reviewed and discussed.

It was agreed that the financial statements show that the

company continues to do extremely well in its business

activities and it is expected to do even better by the time

the year ends this coming December based on current demand for

helicopters owned by Wilma's Flight Services, Inc.

Personnel matters were also discussed and it was

agreed that additional pilots and mechanics may need to be

hired based in the increasing demand for helicopters.  There

was a specific discussion held as to the need for Wilma's

Flight Services, Inc. to open a general checking account at

Bank of Hawaii in order to receive lease deposits for leases

of helicopters where the lease income is generated in open

waters and is not considered U.S.-effectively connected

income.  Given that Wilma's Flight Services, Inc. qualifies as

the active NFFE per the form W8BENE, and given that there is

no U.S.-source income generated by Wilma's Flight Services,

Inc., as such, there should be no problem opening the bank

account at Bank of Hawaii.

It was unanimously agreed to open this account at

Bank of Hawaii.  It was further agreed that effective

immediately, the following are appointed to be officers of the

corporation as follows:  President, Mr. Jon D. Walker; Vice

*Cross - Khamvongsa*

1    President, Mr. Phillip T. Kapp; Secretary-Treasurer,          01:54PM

2    Mr. Kenneth R. Crowe.  As there was no further business to be  01:54PM

3    discussed, the chairman moved to adjourn the meeting.          01:54PM

4          Signed as true record of the meeting, President and     01:54PM

5    Director, Jon D. Walker, signs it, Kenneth R. Crowe, Vice      01:54PM

6    President, Secretary and Director signs it."                   01:54PM

7    Q.   Are you aware of the requirement of this type of a        01:54PM

8    letter at Bank of Hawaii for a foreign corporation to open an  01:54PM

9    account at Bank of Hawaii at this particular time?             01:54PM

10   A.   I am aware that the banks do require certain              01:54PM

11   documents to open an account; yes.                             01:54PM

12   Q.   And you saw -- you see the statement, "is not             01:54PM

13   U.S.-effectively connected income," that's a requirement to    01:55PM

14   open an account by the foreign corporation; correct?           01:55PM

15   A.   Are we talking about this specific document?              01:55PM

16   Q.   That point in time, the requirement that was to           01:55PM

17   assure that the income being deposited, the Bank of Hawaii,    01:55PM

18   was not U.S.-effectively connected income, it had to be        01:55PM

19   certification by your board, up to that effect?                01:55PM

20   A.   That's incorrect.                                         01:55PM

21   Q.   Well, you know whether Bank of Hawaii required this       01:55PM

22   letter in this format in order to open the account?           01:55PM

23   A.   The bank did require these kind of documents to open      01:55PM

24   corporate accounts; that's correct.                            01:55PM

25   Q.   And what is active NFFE mean per that form, W8BENE?       01:55PM

1    A.   I'm sorry, I don't recall.                      01:55PM

2    Q.   Okay.  Now this would be one of the banks official   01:55PM

3  records that you would have subpoenaed back in 2018; correct?  01:55PM

4    A.   It might have been before that time; yes.        01:56PM

5    Q.   You subpoenaed all the banks records which should   01:56PM

6  have included this particular document; correct?       01:56PM

7    A.   It should have been provided, if it was a bank    01:56PM

8  document; yes.                                          01:56PM

9    Q.   So you should have known back in 2017 that Wilma's  01:56PM

10 Flight Service, Inc., a foreign corporation, had money in the  01:56PM

11 Bank of Hawaii that was generated from lease income from tuna  01:56PM

12 boats; correct?                                         01:56PM

13   A.   U.S. income.                                     01:56PM

14   Q.   It generated income.  Whether it's U.S. or not,   01:56PM

15 that's not subject to this case, is it, sir?            01:56PM

16   A.   But you're asking me about U.S. income, if it was   01:56PM

17 U.S. income.                                            01:56PM

18   Q.   Well, I misspoke, I'm sorry.  This particular letter  01:56PM

19 should have been --                                     01:56PM

20        MS. M. MILLER:  Your Honor, I'm confused.        01:56PM

21        MR. MCCONWELL:  I am too.  Could we read back?    01:56PM

22 It's late in the day.  We've had too long a day.  We can start  01:57PM

23 again here.                                             01:57PM

24        THE COURT:  Okay.  Start again.                  01:57PM

25 BY MR. MCCONWELL: (CONTINUING)                          01:57PM

*Cross - Khamvongsa*

         1      Q.   I think we've established that this letter should     01:57PM
         2   have been produced to you --                                  01:57PM
         3              THE COURT:   Okay, we have like three minutes       01:57PM
         4   before the next break.   So I'm going to get back on track, so 01:57PM
         5   at 2:00, we'll take a recess and then you guys can get        01:57PM
         6   unconfused.   Go ahead.                                        01:57PM
         7   BY MR. MCCONWELL: (CONTINUING)                                 01:57PM
         8      Q.   Okay.   So this document should have been the          01:57PM
         9   information you got from the bank; correct?                    01:57PM
        10      A.   Right.                                                 01:57PM
        11      Q.   Okay.                                                  01:57PM
        12      A.   Correct.                                               01:57PM
        13      Q.   And part of the information you utilized in your       01:57PM
        14   assessment of this wrongful transfer of money back and forth? 01:57PM
        15      A.   It's the transfer -- it's wire fraud, it's the -- so   01:57PM
        16   the question is?                                               01:57PM
        17      Q.   Is it illegal for a company to transfer money that     01:57PM
        18   it's earned through lease income, lawfully-earned lease        01:57PM
        19   income?                                                       01:57PM
        20      A.   That's incorrect.                                      01:57PM
        21      Q.   Well, explain why that's not correct.                  01:58PM
        22      A.   Because the money involved in this case involves the   01:58PM
        23   misrepresentations made to the tuna boat companies as it       01:58PM
        24   relates to the helicopters, and the airmen that are not FAA    01:58PM
        25   certificated.                                                  01:58PM

                              *Cross - Khamvongsa*

```
1              MR. MCCONWELL:  Now, I move to strike that.  It       01:58PM
2    was totally nonresponsive, even though I left it a little bit   01:58PM
3    open.  It was a speech, a narrative.                            01:58PM
4              THE COURT:  Well, he answered the question.           01:58PM
5              MR. MCCONWELL:  He got me.  We'll take care of        01:58PM
6    that then.                                                      01:58PM
7              MS. M. MILLER:  Your Honor, that's the problem        01:58PM
8    is, the question is open-ended.  Then he responds accordingly   01:58PM
9    --                                                              01:58PM
10             THE COURT:  I'm not going to -- yup, strike, go       01:58PM
11   ahead.  Proceed.                                                01:58PM
12   BY MR. MCCONWELL: (CONTINUING)                                  01:58PM
13     Q.   Okay.  There is nothing illegal about wire              01:58PM
14   transferring from one bank to another income that was lawfully  01:58PM
15   earned from lease income to buy a tuna -- from a tuna boat;     01:58PM
16   correct?                                                        01:58PM
17     A.   Are we talking about this case?                         01:58PM
18     Q.   I'm talking about in general, period.                   01:58PM
19     A.   So we're not talking about this case?                   01:58PM
20     Q.   I'm -- I asked you a general question, and I'm asking   01:58PM
21   you to give me a general answer.                                01:59PM
22             MS. M. MILLER:  Your Honor, I object as to           01:59PM
23   relevance.                                                      01:59PM
24             THE COURT:  Overruled.  General question.            01:59PM
25             THE WITNESS:  In general, not related to this        01:59PM
```

*Cross - Khamvongsa*

```
 1   case, there is no problems with moving money among banks, it's      01:59PM
 2   just inefficient.                                                    01:59PM
 3   BY MR. MCCONWELL: (CONTINUING)                                       01:59PM
 4       Q.   If it's lawfully-earned income, there is no problem         01:59PM
 5   about moving money around by Jon Walker from one account to          01:59PM
 6   another that he owns, that clearly identified where the money        01:59PM
 7   is going, there is nothing wrong with that, is there?                01:59PM
 8       A.   Are we talking about Jon Walker?                            01:59PM
 9       Q.   I said if it's lawfully owned by -- earned by Jon           01:59PM
10   Walker, there is nothing -- or his companies that he's been          01:59PM
11   involved with, there is nothing wrong with moving that money         01:59PM
12   around at his direction to different banks of the company, and       01:59PM
13   when transactions are totally open, there is nothing hidden          01:59PM
14   here?  Nothing unlawful?                                             01:59PM
15                THE COURT:  That's a hypothetical question there,       01:59PM
16   Agent.                                                               01:59PM
17                MS. M. MILLER:  Well, Your Honor, I'm going to          02:00PM
18   object because I was not permitted to ask any hypothetical           02:00PM
19   questions.                                                           02:00PM
20                THE COURT:  Overruled.  Overruled.  Go ahead,           02:00PM
21   answer the question.  He just gave you one.                          02:00PM
22                THE WITNESS:  That's completely incorrect as it         02:00PM
23   relates to this case because it's all based upon the                 02:00PM
24   misrepresentations --                                                02:00PM
25                MR. MCCONWELL:  I move to strike.  Ask him to           02:00PM
```

*Cross - Khamvongsa*

```
 1    answer the question as proposed to you, sir.                    02:00PM
 2              THE COURT:  The question as proposed to you.          02:00PM
 3              THE WITNESS:  Okay.  So --                            02:00PM
 4              THE COURT:  He said -- he already gave you the        02:00PM
 5    hypothetical.                                                   02:00PM
 6              THE WITNESS:  The hypothetical, not related to        02:00PM
 7    any of the evidence that I looked at?                           02:00PM
 8              THE COURT:  Well, okay, just whatever -- just the     02:00PM
 9    hypothetical, period.                                           02:00PM
10              THE WITNESS:  I'm sorry, the accounting side --       02:00PM
11              THE COURT:  You're adding -- no, no, no, you're       02:00PM
12    adding to the question.  You're not supposed to add to the     02:00PM
13    question.  The hypothetical as propounded by the attorney,     02:00PM
14    what's your answer?  Do you have an answer?                     02:00PM
15              THE WITNESS:  I don't have an answer.  Maybe I        02:00PM
16    need to hear it one more time.                                 02:00PM
17              THE COURT:  Again?                                    02:00PM
18              THE WITNESS:  Yeah.                                   02:00PM
19              THE COURT:  Okay.  Let me see.  Let Veronica ask      02:00PM
20    the question, before we take our next recess.                  02:00PM
21              (Whereupon the reporter read back requested          02:01PM
22    portion.)                                                       02:01PM
23              THE WITNESS:  And this is purely a hypothetical,      02:01PM
24    not -- as a hypothetical, if it truly was lawful income, as a  02:01PM
25    hypothetical, moving around between bank accounts, as a        02:01PM
```

*Cross - Khamvongsa*

```
 1   hypothetical, for a legitimate business reason, as a            02:01PM
 2   hypothetical, then there is hypothetically nothing wrong with   02:01PM
 3   it.                                                             02:01PM
 4            (Laughter in courtroom.)                               02:01PM
 5            THE COURT:  Okay.  You got the answer to the           02:01PM
 6   question.                                                       02:01PM
 7   BY MR. MCCONWELL: (CONTINUING)                                  02:01PM
 8       Q.  It's a hypothetical answer -- let me ask one more.      02:01PM
 9            THE COURT:  Go ahead.                                  02:02PM
10   BY MR. MCCONWELL: (CONTINUING)                                  02:02PM
11       Q.  You responded to Ms. Marie Miller's question about      02:02PM
12   the money, the operation of the money that you had analyzed     02:02PM
13   from this being wired around.  That you -- you answered -- I    02:02PM
14   believe you answered that that money came from the operation    02:02PM
15   of the helicopters pursuant to the lease as the source of the  02:02PM
16   funds that you seized; correct?                                 02:02PM
17       A.  To the wire fraud, the money came from leasing the      02:02PM
18   helicopters to the tuna boats, which were fraudulent.          02:02PM
19       Q.  That's your opinion, and that's the issue of what      02:02PM
20   we're here for, to decide whether they're fraudulent or not.   02:02PM
21   That's not for you to decide, is it, sir?                      02:02PM
22       A.  You're right.  It's for the jury to decide.           02:02PM
23            MR. MCCONWELL:  Probably a good time to break.        02:02PM
24            THE COURT:  I think so.  All right.  It's --          02:02PM
25   okay, ladies and gentlemen, we'll see you in 15 minutes.       02:02PM
```

*Cross - Khamvongsa*

```
1    Please rise for the jury.  Keep an open mind.              02:02PM

2                 (Jury out at 2:03 p.m.)                       02:03PM

3               THE COURT:  How much longer do you think you    02:03PM

4    have, Mr. McConwell, with this witness?                    02:03PM

5               MR. MCCONWELL:  Probably not too much, maybe 30 02:03PM

6    or 40 minutes.  I'll try to do better.                     02:03PM

7               THE COURT:  That's fine.  I'm not rushing you.  I 02:03PM

8    just wanted to know.                                       02:03PM

9               MR. MCCONWELL:  I got some other documents I can 02:03PM

10   pull out at the break.                                     02:03PM

11              THE COURT:  If there is if new or additional    02:03PM

12   documents, why don't you pass.                             02:03PM

13              MR. MCCONWELL:  They were previously identified. 02:03PM

14              THE COURT:  Oh, they've already --              02:03PM

15              MR. MCCONWELL:  Well, in general, we haven't set 02:03PM

16   for this cross-examination.  We didn't know what he was going 02:03PM

17   to be talked about for sure but -- we'll get them -- I'll give 02:03PM

18   them the numbers.                                          02:03PM

19              THE COURT:  Yeah, yeah, if you give -- if you -- 02:03PM

20   if they've already been marked and identified?            02:03PM

21              MR. MCCONWELL:  They're identified in our trial. 02:03PM

22   Pretrial stuff.                                            02:03PM

23              THE COURT:  All right.  So just work it out so we 02:03PM

24   don't have to take time during the testimony.             02:03PM

25              MR. MCCONWELL:  I will, Your Honor.             02:03PM
```

*Cross - Khamvongsa*

```
 1                    THE COURT:  All right.  Thank you.  All right.    02:03PM
 2    I'll see you all in shortly.  Yeah, 15 minutes.                   02:03PM
 3                    THE WITNESS:  Thank you, Your Honor.              02:03PM
 4                    THE COURT:  Yeah, thank you.                      02:04PM
 5                    (Recess taken at 2:04 p.m.)                       02:04PM
 6                    (Back on the record at 2:21 p.m.)                 02:21PM
 7                    (Pause.)                                          02:27PM
 8                    THE COURT:  Are we ready?                         02:28PM
 9                    MR. MARTIN:  Ms. McConwell is looking for some of 02:28PM
10    the exhibits.  She put them somewhere, Judge.                    02:28PM
11                    THE COURT:  Did you give them to the prosecution, 02:28PM
12    Mr. McConwell?  Your listing?                                    02:28PM
13                    MS. M. MILLER:  I'm sorry, Your Honor?           02:28PM
14                    THE COURT:  I'm just asking.                      02:28PM
15                    MR. MARTIN:  She did not give them.              02:28PM
16                    MS. M. MILLER:  She did not.                      02:28PM
17                    THE COURT:  Oh, okay.                             02:28PM
18                    MS. M. MILLER:  I think she's got the hard copies 02:28PM
19    there.                                                           02:28PM
20                    THE COURT:  Right.  She didn't give it to you.   02:28PM
21    All right.  Before we call in the jury in here.                  02:28PM
22                    MR. MCCONWELL:  I think I'm back online here.     02:29PM
23                    THE COURT:  So 30 to 40 minutes and then,        02:29PM
24    Mr. Martin, are you going to cross-examine the witness?         02:29PM
25                    MS. M. MILLER:  Ms. McConwell, do you have a      02:29PM
```

```
 1    copy?                                                      02:29PM

 2              MR. MARTIN:  At least 1 or 2 questions, Judge.    02:29PM

 3              THE COURT:  That's it?                            02:29PM

 4              MR. MARTIN:  Probably 3 or 4.                     02:29PM

 5              THE COURT:  Maybe 5 or 6.  10 or 11.              02:29PM

 6              MS. M. MILLER:  You don't have to put stickers on 02:29PM

 7    them, I could just write numbers on them.                  02:29PM

 8              MR. MCCONWELL:  Get the official one.             02:29PM

 9              THE COURT:  Oh, wow, I like the cooperation.      02:29PM

10              MS. M. MILLER:  I try to be cooperative, Your     02:29PM

11    Honor.                                                     02:29PM

12              MS. MCCONWELL:  I'm the low girl on the totem     02:29PM

13    pole.                                                      02:29PM

14              THE COURT:  You're the low girl?  You're the high 02:29PM

15    girl on the totem pole.  Appearances can be deceiving.  Okay. 02:29PM

16              THE WITNESS:  Your Honor, have you ever thought   02:30PM

17    about doing karaoke in the courtroom?                      02:30PM

18              THE COURT:  What's that?                          02:30PM

19              THE WITNESS:  Have you ever thought about doing   02:30PM

20    karaoke in the courtroom?                                  02:30PM

21              THE COURT:  I think --                            02:30PM

22              THE WITNESS:  I think it could be kind of fun.  I 02:30PM

23    mean, off hours.                                           02:30PM

24              THE COURT:  Ask Stacy?  You know Stacy.           02:30PM

25              THE WITNESS:  I haven't.                          02:30PM
```

*Cross - Khamvongsa*

02:30PM
02:30PM
02:30PM
02:30PM
02:30PM
02:30PM
02:30PM
02:30PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:31PM
02:32PM
02:32PM
02:32PM

1          THE COURT:  My community outreach.

2          THE WITNESS:  Oh.

3          THE COURT:  You know she's the one that puts

4    everything together.  Should ask her to do that for law week.

5          THE WITNESS:  That would be kind of fun.

6          THE COURT:  Yeah.  It might be, I don't know.  I

7    don't know about my voice, I don't have a good voice.

8          THE WITNESS:  It's karaoke, not American Idol.

9          Are we ready to go then?

10         MS. MCCONWELL:  We are.

11         THE COURT:  Mr. McConwell, you ready, sir?

12         MR. MCCONWELL:  Yes, ma'am.

13         THE COURT:  Okay, we'll call in the jury.  And so

14   will we be done with this witness today, Counselors?  If it's

15   really going to be 30 minutes with continuation with

16   Mr. McConwell and then Mr. Martin, by 4:00 p.m.?

17         MR. MARTIN:  We'll do everything we can to make

18   that happen, Judge.

19         THE COURT:  All right.  And then who's the next

20   witness up?

21         MS. MCCONWELL:  I believe Mr. Guzzetti.

22         THE COURT:  Guzzetti, okay.  I think I have --

23   all right.  So there is a pending summary chart motion from

24   last week.  So I'll hear that tomorrow after Court at 4.  I

25   have a 5:00 meeting tomorrow morning, a.m., 7:00 a.m. motion

| | | |
|---|---|---|
| 1 | for compassionate release.  So let's see, it will be ECF No. | 02:32PM |
| 2 | 1628.  That's what we'll hear tomorrow.  Okay. | 02:32PM |
| 3 | MS. MCCONWELL:  At 4. | 02:32PM |
| 4 | THE COURT:  At 4:00 p.m. after we're done. | 02:32PM |
| 5 | (Jury in at 2:32 p.m.) | 02:32PM |
| 6 | THE COURT:  Okay.  That's a motion for summary -- | 02:32PM |
| 7 | there's another motion for summary chart I haven't looked at, | 02:32PM |
| 8 | that was this morning, but the ones from last week, I'm going | 02:33PM |
| 9 | to hear, you guys already briefed that.  So we'll hear that | 02:33PM |
| 10 | tomorrow at 4 after the jury leaves. | 02:33PM |
| 11 | All right.  Please be seated.  Welcome back, | 02:33PM |
| 12 | ladies and gentlemen of the jury.  All right, Mr. McConwell, | 02:33PM |
| 13 | you may continue on with your cross-examination, sir. | 02:33PM |
| 14 | MR. MCCONWELL:  Thank you, Your Honor. | 02:33PM |
| 15 | THE COURT:  Uh-huh. | 02:33PM |
| 16 | BY MR. MCCONWELL: (CONTINUING) | 02:33PM |
| 17 | Q.   Let's take a look at Exhibit 133, please.  134 also | 02:33PM |
| 18 | and 135.  Just look at them all together.  Did you receive | 02:33PM |
| 19 | these letters in your subpoena from the Bank of Hawaii, sir? | 02:34PM |
| 20 | A.   I do not recall seeing these documents until now. | 02:34PM |
| 21 | Q.   These documents dated June 25, 2018, I believe you | 02:34PM |
| 22 | were critical of the companies for moving accounts at this | 02:34PM |
| 23 | timeframe in the July 2013 -- or '18 timeframe; correct? | 02:34PM |
| 24 | A.   I did say moneys was moved to -- during this | 02:34PM |
| 25 | timeframe; yes. | 02:34PM |

```
 1       Q.   And that was to Community Bank and Limey was the --     02:34PM
 2   Limey Air Service, Inc., I think, was the bank name for that     02:34PM
 3   account; correct?                                                02:34PM
 4       A.   That was one of a few; yes.                             02:34PM
 5       Q.   Okay.  And Wilma's Flight Services also removed its     02:34PM
 6   money from the Bank of Hawaii, same time; correct?               02:34PM
 7            MS. MCCONWELL:  Excuse me, I believe these are          02:34PM
 8   admitted, aren't they?                                           02:34PM
 9            MR. MCCONWELL:  They had no objection, I thought.       02:35PM
10            THE COURT:  All right.                                  02:35PM
11            MS. MCCONWELL:  We need them published.                 02:35PM
12            MR. MCCONWELL:  Oh, I'm sorry.                          02:35PM
13            THE COURT:  Oh, you want it published?                  02:35PM
14            MR. MCCONWELL:  We want --                              02:35PM
15   BY MR. MCCONWELL: (CONTINUING)                                   02:35PM
16       Q.   Now, this is a letter from the Bank of Hawaii, right    02:35PM
17   after your subpoena, right after the indictment telling         02:35PM
18   Wilma's and the other corporations associated with Hansen       02:35PM
19   Helicopters, Inc. to get their money out of the bank within     02:35PM
20   30 days; correct?                                               02:35PM
21       A.   If you give me time, I could review it because I       02:35PM
22   don't --                                                        02:35PM
23       Q.   Why don't you take a moment and read it then.          02:35PM
24       A.   Okay.  Thank you.                                      02:35PM
25       Q.   Let me ask you before you do that, let me say one      02:35PM
```

more thing, this is a document that should have been produced
to you in response to your subpoena; correct?

MS. M. MILLER:  Objection, Your Honor;
speculation.

THE COURT:  Overruled.

THE WITNESS:  At the time that I issued the
subpoena, it was before this particular date.

BY MR. MCCONWELL: (CONTINUING)

Q.   Did you get ongoing production from the bank after
the particular date -- initial date of the subpoena?

A.   From Bank of Hawaii?

Q.   Yes.

A.   I don't recall as it relates to these documents here.

Q.   Okay.  Take a look at the first document, 133, if you
would, sir.

MR. MCCONWELL:  I'm sorry, Laura, I don't have a
number on that.

BY MR. MCCONWELL: (CONTINUING)

Q.   Anyway, this particular document, take a look at it.
This document is 134; is that correct?

A.   Oh, I'm sorry.  I was reading the hard copies.

Q.   But we marked it 134.  Somehow it was unmarked?

A.   Actually, this is pertaining to Wilma's and it's
identified... it's identified as Defendant's Exhibit 132.

Q.   Okay.  All right.  So it's a fair statement to say

1   that the banks told them to get their money out of the bank          02:37PM

2   within 30 days or they'll find someplace to put it?                  02:37PM

3       A.   Yes, this is -- can I read it?  Do you want me to           02:37PM

4   read it?                                                              02:37PM

5       Q.   If you'd like, yeah?                                        02:37PM

6       A.   Out loud?                                                   02:37PM

7       Q.   Yes.                                                        02:37PM

8       A.   Sure.  I'll start with "Dear sir."  Is that all            02:37PM

9   right?                                                                02:37PM

10      Q.   That's fine.                                                02:37PM

11      A.   "Dear sir, we have conducted a review of our customer      02:37PM

12  accounts and transaction history and have determined that we         02:38PM

13  will no longer be able to service your account.  This letter         02:38PM

14  will serve as a notice of our intent to terminate the account        02:38PM

15  listed above, collectively the account, on July 31st, 2018,          02:38PM

16  pursuant to the business deposit account agreement governing         02:38PM

17  the account.  We believe this will provide you with sufficient       02:38PM

18  time to make other arrangements to meet your financial needs.        02:38PM

19  In conjunction with this closure, any debit cards attached to        02:38PM

20  your account will be blocked from further transactions five          02:38PM

21  business days prior to the closure date identified above.  You       02:38PM

22  may voluntarily close your account prior to July 31st, 2018,         02:38PM

23  by visiting one of our branches.  If you do not do so by             02:38PM

24  August 7th, 2018, a check in the amount of any funds remaining       02:38PM

25  in your account will be sent to your last address of record.         02:38PM

*Cross - Khamvongsa*

1    If you have any questions concerning this matter, please feel          02:38PM
2    free to contact me at the number below, sincerely, Brian               02:38PM
3    Bliss, Vice President, Guam Commercial."                               02:39PM
4        Q.   And this was at a time there were millions of dollars          02:39PM
5    coming into the account for lease payments and moneys for               02:39PM
6    payments for obligations of the various companies; correct?             02:39PM
7        A.   This is the time after the indictment.                         02:39PM
8        Q.   After the indictment?                                          02:39PM
9        A.   Yes, this is the time after the indictment.                    02:39PM
10       Q.   So this was a pretty hectic time for them to have to           02:39PM
11   find a bank to handle this amount of money that quickly;                02:39PM
12   correct?                                                                02:39PM
13       A.   I don't know about hectic.                                     02:39PM
14       Q.   Difficult though?                                              02:39PM
15       A.   I don't know their state of mind.                              02:39PM
16       Q.   Okay.  Take a look at Exhibit 136, if you would, sir.          02:39PM
17            THE COURT:  You have a copy of this, Ms. Marie                  02:39PM
18   Miller, 136?                                                            02:39PM
19            MR. MCCONWELL:  I belive they've got it.                        02:39PM
20            MS. M. MILLER:  He did, Your Honor.                             02:39PM
21            THE COURT:  Okay.  Go ahead.                                    02:39PM
22   BY MR. MCCONWELL: (CONTINUING)                                          02:39PM
23       Q.   Take a look at this, and tell us what this is.                 02:40PM
24            MR. MCCONWELL:  First of all, there was no                      02:40PM
25   objection to this.                                                      02:40PM

*Cross - Khamvongsa*

1      THE COURT:  Is there any objection to 136?                    02:40PM

2      MS. M. MILLER:  No, Your Honor.                               02:40PM

3      THE COURT:  All right.  Ladies and gentlemen, 136            02:40PM

4  will be admitted without objection.  Yes, you may produce it.    02:40PM

5  Project it.  Present it.                                         02:40PM

6  (Exhibit 136 admitted.)                                          02:40PM

7      THE COURT:  Publish it, I'm sorry.  I'm trying to            02:40PM

8  find the right word.  Publish it.                                02:40PM

9  BY MR. MCCONWELL: (CONTINUING)                                   02:40PM

10     Q.   Did you have a chance to look at it, sir?               02:40PM

11     A.   Yes.                                                    02:40PM

12     Q.   Does this help you recall whether there was a bona      02:40PM

13  fide company Williams[sic] Flight Service, Inc., incorporated   02:40PM

14  in Vanuatu, July 1st 2002?                                      02:40PM

15     A.   That's incorrect.                                       02:40PM

16     Q.   That's the date of its constitution though; correct?    02:40PM

17     A.   Specifically that's the date of this constitution,      02:41PM

18  July 1, 2002.                                                   02:41PM

19     Q.   Okay.  And you have no reason to believe that there     02:41PM

20  was another Wilma's Flight Services in fact incorporated that   02:41PM

21  handled money for -- during the time period of your analysis;   02:41PM

22  correct?                                                        02:41PM

23     A.   I have no evidence of another...                        02:41PM

24     Q.   Just this company, Wilma's, and the one that was        02:41PM

25  terminated in 2008; correct?                                    02:41PM

```
 1      A.   This is the first time I've seen this -- this          02:41PM

 2   particular; yes.                                               02:41PM

 3      Q.   Okay.  Let's take a look now at Exhibit 76.            02:41PM

 4           THE COURT:  76?                                         02:41PM

 5           MR. MCCONWELL:  Yes.                                    02:41PM

 6           THE COURT:  Has that been admitted or no               02:41PM

 7   objection?                                                     02:41PM

 8           MS. M. MILLER:  I don't even know what it is.          02:41PM

 9           MR. MCCONWELL:  It's an insurance policy, the          02:41PM

10   Caledonian Insurance policy.                                   02:41PM

11           THE COURT:  Did you get a copy of that?                02:42PM

12           MS. M. MILLER:  Yes.                                   02:42PM

13           THE COURT:  Oh, you want to look at that?              02:42PM

14           MS. M. MILLER:  I would like to, Your Honor, and       02:42PM

15   then I'll let you know if I have any objections.               02:42PM

16           THE COURT:  Okay.  Right.  Hold on.                    02:42PM

17           Are you wanting to publish this, Mr. McConwell?        02:42PM

18           MR. MCCONWELL:  Yes, Your Honor.                       02:42PM

19           THE COURT:  Give her a second to review it.            02:42PM

20   Exhibit 76.                                                    02:42PM

21           MS. M. MILLER:  I don't see it.  It's not on the       02:42PM

22   screen.  I can't review it.                                    02:42PM

23           MS. MCCONWELL:  Oh, I'm sorry.                         02:42PM

24           THE COURT:  76.                                        02:42PM

25           MS. M. MILLER:  It's 32 pages, Your Honor.  So         02:42PM
```

| | |
|---|---|
| 1 | I'm going to need sometime to review it before I can let you |
| 2 | know if I have any objections or not. |
| 3 | THE COURT:  Go ahead. |
| 4 | MS. M. MILLER:  Do you have a hard copy, Ms. |
| 5 | McConwell? |
| 6 | MS. MCCONWELL:  No.  I don't have an additional |
| 7 | because this is one of our exhibits on our exhibit list. |
| 8 | We gave you hard copy, a binder of our exhibits. |
| 9 | MS. M. MILLER:  It will be faster if I do that, |
| 10 | if I review it. |
| 11 | MS. MCCONWELL:  Here you go. |
| 12 | MS. M. MILLER:  Thanks.  It's 76? |
| 13 | MS. MCCONWELL:  Yeah. |
| 14 | (Counsel conferred.) |
| 15 | MS. M. MILLER:  I have no objection, Your Honor. |
| 16 | THE COURT:  Ladies and gentlemen of the jury, |
| 17 | Exhibit 76 will be admitted without objection and, yes, you |
| 18 | may publish what you need to, Mr. McConwell. |
| 19 | (Exhibit 76 admitted.) |
| 20 | MR. MCCONWELL:  Thank you, Your Honor.  Let's do |
| 21 | the first page. |
| 22 | BY MR. MCCONWELL: (CONTINUING) |
| 23 | Q.   First of all, you indicated earlier you had seen the |
| 24 | insurance policy that -- issued by Caledonian; correct? |
| 25 | A.   I've seen some insurance policies. |

*Cross - Khamvongsa*

1    Q.   All right.  This particular document starts out with

2  Bean Bag.  Would you read the first four lines there for me?

3    A.   Do you want me to start at the insurance effected and

4  go down?

5    Q.   Yes.

6    A.   Okay, sure.  "This insurance effected and provided

7  for Bean Bag Helicopters, Inc., PMB9102 Lini Highway, Port

8  Vila, Vanuatu, South Pacific and the following wholly-owned

9  subsidiary companies."

10   Q.   Now go down to the bottom, if you would, of that

11  page, or under Wilma's.  Read the last line.

12   A.   Port Vila, Vanuatu.

13   Q.   No, the last -- the Vanuatu companies.

14   A.   Oh, the last line -- okay.  Wilma's Flight Services,

15  Inc.

16   Q.   And then keep on going, please.

17        MR. MCCONWELL:  Let's go down to the list of

18  aircraft, Laura.  It's about 4 or 5 pages, I think.  Oh, it

19  says schedule of aircraft on page 4.

20  BY MR. MCCONWELL:  (CONTINUING)

21   Q.   Can you tell us what this is?

22   A.   A list of U.S.-registered helicopters, as well as

23  Philippine-registered helicopters and New Zealand-registered

24  helicopters.

25   Q.   At that time, these helicopters were on the registry

*Cross - Khamvongsa*

```
 1    of the United States; correct?                           02:48PM

 2        A.   The U.S.-registered ones were on the FAA registry.  02:48PM

 3        Q.   Okay.  And those are the ones that were owned by the  02:48PM

 4    Vanuatu companies earlier identified in the said policy;   02:48PM

 5    correct?                                                  02:49PM

 6        A.   They are identified in this policy.              02:49PM

 7             MR. MCCONWELL:  Okay.  Keep on going, please.    02:49PM

 8    Let's go to Exhibit 77 now.  And I'll move this into evidence,  02:49PM

 9    Your Honor.                                               02:49PM

10             THE COURT:  It's already been admitted.  76 is   02:49PM

11    admitted.                                                 02:49PM

12             MR. MCCONWELL:  Yes, thank you.  Exhibit 77.     02:49PM

13             THE COURT:  Has that been admitted already?      02:49PM

14             MR. MCCONWELL:  Not yet.  We'll need to identify  02:49PM

15    it.                                                       02:49PM

16             THE COURT:  Does prosecution have a copy of this?  02:49PM

17             MR. MCCONWELL:  It was produced to them earlier.  02:49PM

18             MS. M. MILLER:  I have it, Your Honor.           02:49PM

19             THE COURT:  She has it now.  Very well.          02:49PM

20             MS. M. MILLER:  Your Honor, I'm going to object  02:52PM

21    to the admissibility of this document on the basis of a lack  02:52PM

22    of foundation.  It is a document that was prepared by a   02:52PM

23    company that has not been -- there is no way to determine  02:52PM

24    whether this document is accurate or inaccurate.  There has  02:52PM

25    been no foundation for its admissibility.                 02:52PM
```

*Cross - Khamvongsa*

```
 1              MR. MCCONWELL:  It's a business record of the     02:52PM

 2   companies, Your Honor, prepared by the registered agent, but  02:52PM

 3   if we have to have a foundation witness, I guess we'll have to 02:52PM

 4   do that.                                                      02:52PM

 5              THE COURT:  Okay.                                  02:52PM

 6              MS. M. MILLER:  I'm sorry.  So he's withdrawing    02:52PM

 7   it until he has a foundation witness to bring it in?          02:52PM

 8              MR. MCCONWELL:  I haven't offered it yet.          02:53PM

 9              THE COURT:  I think he's thinking about it.        02:53PM

10              MS. M. MILLER:  He's thinking about it, okay.      02:53PM

11              THE COURT:  Yeah.                                  02:53PM

12              MR. MCCONWELL:  And I do have an Exhibit 72 also.  02:53PM

13              THE COURT:  I'm sorry.  Exhibit 72?  Is that what  02:53PM

14   you said?                                                     02:53PM

15              MR. MCCONWELL:  Yes.                               02:53PM

16              THE COURT:  Okay.  Exhibit 72.  So take out the    02:53PM

17   other one.  72.                                               02:53PM

18              Prosecution, can you see that?                     02:53PM

19              MS. M. MILLER:  Yes, Your Honor.                   02:53PM

20              THE COURT:  You're trying to move to admit this,   02:53PM

21   Mr. McConwell?                                                02:53PM

22              MR. MCCONWELL:  Yes, Your Honor.                   02:53PM

23              THE COURT:  Is that just a one-page certificate?   02:53PM

24              MR. MCCONWELL:  Yes, one-page certificate.         02:53PM

25              THE COURT:  Any objections?                        02:53PM
```

*Cross - Khamvongsa*

1          MS. M. MILLER:  Yes, Your Honor.  Same objection,          02:53PM

2     lack of foundation.          02:53PM

3          MR. MCCONWELL:  Again, we can have somebody from          02:53PM

4     the corporation to identify it as a business record of the          02:53PM

5     company if that's necessary.          02:53PM

6          MS. MCCONWELL:  Well, I thought business records          02:53PM

7     of the Defendants were something that we weren't going to          02:53PM

8     object to foundation and require those types of foundational.          02:53PM

9          THE COURT:  Did you guys stipulate to that?          02:53PM

10          MS. M. MILLER:  No.          02:54PM

11          MR. MCCONWELL:  We stipulated they could do that          02:54PM

12     with things that were produced, but it's not reciprocal          02:54PM

13     apparently.          02:54PM

14          THE COURT:  If you stipulated to it, then of          02:54PM

15     course it's going to be allowed.          02:54PM

16          MR. MCCONWELL:  I can't tell you the exact terms          02:54PM

17     of it, but I anticipated it would not be objected to, but          02:54PM

18     we'll deal with it.          02:54PM

19          THE COURT:  Okay.  All right.  Next question?          02:54PM

20          MR. MCCONWELL:  Let's take that off, please.          02:54PM

21          THE COURT:  Okay.          02:54PM

22     BY MR. MCCONWELL:  (CONTINUING)          02:54PM

23      Q.   There has been discussion, Mr. Khamvongsa, about the          02:54PM

24     shell companies.  Can you tell us what a shell company is in          02:54PM

25     your view?          02:54PM

*Cross - Khamvongsa*

```
1     A.    Are we talking hypothetical or in this case?        02:54PM

2     Q.    Hypothetically.                                      02:54PM

3     A.    Hypothetically, a shell corporation may be used to   02:54PM

4   limit the liability of an asset or something of that nature. 02:55PM

5   It exists primarily in name, it's not -- it's not really     02:55PM

6   generating any income or has any employees.                  02:55PM

7     Q.    But it has assets in the form of, for example, the   02:55PM

8   boats; companies have 3 or 4 subsidiary companies that you   02:55PM

9   could call shell companies, couldn't they?                   02:55PM

10     A.    Are we talking about the tuna boat companies?       02:55PM

11     Q.    Yes, sir.                                            02:55PM

12     A.    Well, and hypothetically speaking?                  02:55PM

13     Q.    Yes, sir.                                            02:55PM

14     A.    Well, hypothetically, a shell company or corporation 02:55PM

15   could own boats for tuna spotting or tuna fishing.          02:55PM

16     Q.    Well, hasn't that been done on 3 or 4 of the boat   02:55PM

17   companies that you went through yesterday when you went     02:55PM

18   through the billing?  You had sub -- boats, different LLCs,  02:55PM

19   but the primary boat company was also included?             02:55PM

20     A.    They were -- they appear to be subsidiaries of      02:55PM

21   fishing companies.  They didn't appear to be shell          02:56PM

22   corporations, per say.                                      02:56PM

23     Q.    Well, they appear to be LLCs, that's a corporate type 02:56PM

24   of device, isn't it, sir?                                   02:56PM

25     A.    They appear to be LLCs?  Is that what you asked?    02:56PM
```

*Cross - Khamvongsa*

1    Q.    Yes.                                                    02:56PM

2    A.    I do recall -- there are LLCs on the documents that I   02:56PM

3    reviewed.                                                     02:56PM

4    Q.    And that would be the same thing as a shell company     02:56PM

5    to hold aircraft under Bean Bag; correct?                     02:56PM

6    A.    That's not correct.  If we're talking about Bean Bag.   02:56PM

7    Q.    Well, isn't it true that the use of shell companies,    02:56PM

8    calling them shell companies, is a common practice in the     02:56PM

9    aviation industries to hold the title to aircraft that are    02:56PM

10   registered in the United States?                              02:56PM

11   A.    It's not true to the facts in this case.                02:56PM

12   Q.    Isn't it true that it's a common practice for           02:56PM

13   aircraft registered in the United States for companies to use 02:57PM

14   a subsidiary shell company, that they call them, to hold the  02:57PM

15   title and register the aircraft?                              02:57PM

16   A.    Is this a general question?  Or are we talking about    02:57PM

17   the facts as it relates to this case?                         02:57PM

18   Q.    A general practice in the aviation industry             02:57PM

19   recognized by the United States government as a legitimate    02:57PM

20   practice?                                                     02:57PM

21   A.    My knowledge is only as it relates to the evidence I    02:57PM

22   reviewed in this case, and what's reflected in the evidence.  02:57PM

23   Q.    You know what the Government Accounting Office is,       02:57PM

24   sir, of the United States?                                    02:57PM

25   A.    The Government Accounting Office?                        02:57PM

1    Q.    The GAO?                                              02:57PM

2    A.    I'm aware of it.                                      02:57PM

3    Q.    Are you aware that the GAO has reported that --       02:57PM

4          MS. M. MILLER:  Objection, Your Honor.  I'm going     02:57PM

5    to object because the government filed a motion in limine to 02:57PM

6    exclude the GAO report that Mr. McConwell is attempting to   02:57PM

7    talk about, and the judge granted that motion in limine and  02:58PM

8    Mr. McConwell knows it.                                     02:58PM

9          MR. MCCONWELL:  It's about a 90-page document,        02:58PM

10   Your Honor, and there is one particular page that does      02:58PM

11   directly relate to the question and we --                   02:58PM

12         THE COURT:  Does it relate to the report?            02:58PM

13         MR. MCCONWELL:  Yes, but --                           02:58PM

14         THE COURT:  If it does --                             02:58PM

15         MR. MCCONWELL:  -- it relates directly to what        02:58PM

16   we're dealing with in this case.                            02:58PM

17         MS. M. MILLER:  Your Honor, you granted the           02:58PM

18   motion in limine to exclude that.                           02:58PM

19         MR. MCCONWELL:  Anyway, I'd like to offer it,         02:58PM

20   like the Court to look at it and review that, see if this is 02:58PM

21   within the Court's scope of the Court's order because I think 02:58PM

22   many more things involving that order --                    02:58PM

23         THE COURT:  Okay.  We'll come back to that.  Why      02:58PM

24   don't you go to another line of questioning, we'll come back 02:58PM

25   to that.  So we can try to finish up what we can without     02:58PM

```
1    taking a recess.                                    02:58PM
2    BY MR. MCCONWELL: (CONTINUING)                      02:58PM
3        Q.   Isn't it true that the reason that shell companies  02:58PM
4    cause some concern is you need the ability to identify the   02:58PM
5    beneficial owner or ultimate owner of the corporation, that  02:58PM
6    needs to be done; correct?                          02:59PM
7        A.   It's true that the owner should be identified; yes.  02:59PM
8        Q.   Or easily identifiable; correct?           02:59PM
9        A.   Easily identifiable, transparency; yes.    02:59PM
10       Q.   And Mr. Prozik, in his testimony, indicated that   02:59PM
11   Mr. Walker was easily identifiable as the owner of all of    02:59PM
12   these corporations, the ultimate beneficial owner, not the   02:59PM
13   individual specific owner of corporation by corporation?     02:59PM
14              MS. M. MILLER:  Objection, Your Honor, Counsel is  02:59PM
15   misstating the testimony of Special Agent Prozik.   02:59PM
16              MR. MCCONWELL:  I don't believe I am --   02:59PM
17              THE COURT:  Okay.  The Court will overrule the    02:59PM
18   objection.  Do you recall that?                      02:59PM
19              THE WITNESS:  I don't recall Mr. Prozik saying    02:59PM
20   that.                                               02:59PM
21              THE COURT:  All right.  Next question.    02:59PM
22              MR. MCCONWELL:  Okay.  I have no further  02:59PM
23   questions after we resolve the GAO issue.           02:59PM
24              THE COURT:  Okay, so can you get me -- okay, I    02:59PM
25   guess I need to get the proffer on that.            02:59PM
```

*Cross - Khamvongsa*

```
 1                    MR. MCCONWELL:  It's Exhibit --                02:59PM

 2                    MS. M. MILLER:  Yes, the government would need   02:59PM

 3      the proffer on that as well, obviously outside the presence of 02:59PM

 4      the jury.                                                      02:59PM

 5                    MR. MCCONWELL:  64-A.                            02:59PM

 6                    THE COURT:  Hold on.  Hold on.  Wait.  Wait.     02:59PM

 7      Just a minute.  What, Mr. McConwell?                           02:59PM

 8                    MR. MCCONWELL:  It's Exhibit 64-A, and we've     03:00PM

 9      given it to the government.                                    03:00PM

10                    THE COURT:  64-A.  Let's pull up 64-A somebody.  03:00PM

11      Pull it up and zoom in on what you want me to look at it.      03:00PM

12      Okay.                                                          03:00PM

13                    MR. MCCONWELL:  I'm sorry, 66-A.                 03:00PM

14                    THE COURT:  Okay.  66-A, that's fine.            03:00PM

15                    MS. M. MILLER:  Your Honor, the whole report is  03:00PM

16      in this --                                                     03:00PM

17                    THE COURT:  Hold on.  Let's just see what he     03:00PM

18      wants -- I just want to look -- he's not going to talk about   03:00PM

19      it.                                                            03:00PM

20                    MS. M. MILLER:  I don't have A is my point, I    03:00PM

21      only have the whole report.                                   03:00PM

22                    THE COURT:  Okay, so pull up -- let her pull up  03:00PM

23      what they have.  Let's see what they're talking about.  Maybe  03:01PM

24      you might have this.                                           03:01PM

25                    MR. MCCONWELL:  It will be about page 80 or 81.  03:01PM
```

1    We could do that.                                                03:01PM

2                THE COURT:  Page 80 or 81.                           03:01PM

3                MR. MCCONWELL:  In that area.                        03:01PM

4                THE COURT:  Okay.  The only thing is -- let me       03:01PM

5    just -- okay.  Counsel, the Court does exclude the GAO report    03:01PM

6    so if you want to get anything from that report, the Court       03:01PM

7    will sustain that objection.                                     03:01PM

8                MR. MCCONWELL:  In its entirety, but it was a        03:01PM

9    motion in limine, which I understood we could bring back up      03:01PM

10   and give the Court the opportunity to look at the particular     03:01PM

11   portion we wanted to --                                          03:02PM

12               THE COURT:  I'm sorry.  So can you repeat that?      03:02PM

13   What was --                                                      03:02PM

14               MR. MCCONWELL:  I understood in a motion in          03:02PM

15   limine that when you have a particular paragraph or statement    03:02PM

16   within a document, you can bring that back to the Court's        03:02PM

17   attention, and that's the purpose of giving you advance          03:02PM

18   notice.                                                          03:02PM

19               THE COURT:  Okay.  Why don't we -- maybe we need     03:02PM

20   to look at what you're talking about.  I'm not clear on that.    03:02PM

21   But let's just see what the deal is.  Excuse me.  Okay.  Okay.   03:02PM

22   Is that it, Mr. McConwell?  On the screen?                       03:02PM

23               MS. M. MILLER:  Is that the page?                    03:02PM

24               MR. MCCONWELL:  No, go over one more.                03:02PM

25               MS. M. MILLER:  That's the page?                     03:02PM

*Cross - Khamvongsa*

|    |                                                                              |        |
|----|------------------------------------------------------------------------------|--------|
| 1  | THE COURT:  No, she said next page.  What are you                             | 03:02PM |
| 2  | looking at, which block there?  First block?                                  | 03:02PM |
| 3  | MR. MCCONWELL:  First of all, the block of                                    | 03:02PM |
| 4  | noncitizen corporation.                                                       | 03:02PM |
| 5  | MS. M. MILLER:  Objection to Counsel --                                       | 03:02PM |
| 6  | THE COURT:  Just say first block.                                             | 03:02PM |
| 7  | MR. MCCONWELL:  First block.                                                  | 03:03PM |
| 8  | THE COURT:  First block there?                                                | 03:03PM |
| 9  | MR. MCCONWELL:  Right.                                                        | 03:03PM |
| 10 | THE COURT:  You're wanting to ask a question                                  | 03:03PM |
| 11 | about the first block?                                                        | 03:03PM |
| 12 | MR. MCCONWELL:  I want to have this document,                                 | 03:03PM |
| 13 | that portion, admitted into evidence.                                        | 03:03PM |
| 14 | THE COURT:  That page?                                                        | 03:03PM |
| 15 | MR. MCCONWELL:  Yes, that page.                                               | 03:03PM |
| 16 | THE COURT:  Or that block?                                                    | 03:03PM |
| 17 | MR. MCCONWELL:  Well, that block in particular,                               | 03:03PM |
| 18 | yeah, that block --                                                           | 03:03PM |
| 19 | THE COURT:  The block that has three different                                | 03:03PM |
| 20 | columns?                                                                      | 03:03PM |
| 21 | MR. MCCONWELL:  Right.                                                        | 03:03PM |
| 22 | THE COURT:  All right.  Okay.  Hold on a second.                              | 03:03PM |
| 23 | (Pause.)                                                                      | 03:03PM |
| 24 | After the prosecution reviews it, let me know if                              | 03:03PM |
| 25 | you object to that block being admitted into evidence and                     | 03:03PM |

*Cross - Khamvongsa*

1   published to the jury.                                    03:03PM

2           MS. M. MILLER:  Yes, Your Honor, and I have an    03:03PM

3   additional basis for the objection besides the fact that you   03:03PM

4   already granted our motion.                               03:04PM

5           THE COURT:  Okay.  And what is the -- I'm sorry,  03:04PM

6   Mr. McConwell, this has already been excluded.  Is there a   03:04PM

7   different basis in which to present this?                 03:04PM

8           MR. MCCONWELL:  I'm not sure, and I don't recall  03:04PM

9   this document being even totally considered in argument or in   03:04PM

10  total, it was just a blank document with certain portions   03:04PM

11  irrelevant, that's why I thought under the rules would be able   03:04PM

12  to bring it back --                                       03:04PM

13          THE COURT:  If you're offering it under the void  03:04PM

14  ab initio theory, then the Court has excluded this.       03:04PM

15          MS. M. MILLER:  And also, Your Honor, under our   03:04PM

16  motion in limine, Exhibit ECF 1013, which this Court granted,   03:04PM

17  ECF 1251.                                                 03:04PM

18          THE COURT:  Yes, I do have my ruling from the     03:04PM

19  bench at 1251.  Mr. McConwell?                            03:04PM

20          MR. MCCONWELL:  Let me show you the next page     03:04PM

21  then.                                                     03:04PM

22          THE COURT:  Next page, okay.                      03:04PM

23          MR. MCCONWELL:  Make a record of it and we're --  03:04PM

24          THE COURT:  So let's go to next page, and which   03:04PM

25  paragraph?                                                03:05PM

```
 1                  MR. MCCONWELL:  Keep going, Laura.              03:05PM

 2                  THE COURT:  Excuse me, which paragraph?         03:05PM

 3                  MR. MCCONWELL:  We can start here, we have a few 03:05PM

 4    more pages -- this page here, the entirety of this page.     03:05PM

 5                  THE COURT:  Okay.  That whole page?            03:05PM

 6                  MR. MCCONWELL:  Right.  That's page 85.        03:05PM

 7                  THE COURT:  All right.                          03:05PM

 8                  MR. MCCONWELL:  Keep on going.  And that page, 03:05PM

 9    which is 86, and that entirety of that paragraph 3 which deals 03:05PM

10    specifically with what we are talking about.                 03:05PM

11                  THE COURT:  Table 3?  Next page is that right? 03:05PM

12                  MR. MCCONWELL:  That's it.  And that's all.    03:05PM

13                  THE COURT:  Okay.  And that's on page 6 -- 86 of 03:05PM

14    92?                                                          03:05PM

15                  MR. MCCONWELL:  Well, it's actually in the     03:05PM

16    document page 81.                                            03:05PM

17                  MS. MCCONWELL:  Right.  She's correct, it's 86 of 03:05PM

18    92.  On Exhibit 66.                                          03:05PM

19                  THE COURT:  All right.  Do you have any objection 03:05PM

20    to that, Prosecution?  On that particular second page?       03:06PM

21                  MS. M. MILLER:  So just to be clear, he's asking 03:06PM

22    for the Court to admit page 80 of the document which is marked 03:06PM

23    as page 85 of his exhibit?                                   03:06PM

24                  THE COURT:  Yeah, it looks like page 85 and 86 of 03:06PM

25    92, he's requesting admission.                               03:06PM
```

```
 1            MR. MCCONWELL:  That's correct.                03:06PM

 2            THE COURT:  Which is page 80 and 81 on the paper.   03:06PM

 3            MS. M. MILLER:  Got it.                        03:06PM

 4            MS. MCCONWELL:  84, 85, 86?  Do you want two or    03:06PM

 5  three pages?                                             03:06PM

 6            MR. MCCONWELL:  I think we have three pages,   03:06PM

 7  actually.                                                03:06PM

 8            THE COURT:  So now you want -- you also want to  03:06PM

 9  include page 84?  So 84, 85, 86, which are 79, 80, and 81 of  03:06PM

10  the same -- it just has a different numbering system?    03:06PM

11            MR. MCCONWELL:  Correct.                       03:06PM

12            MS. M. MILLER:  84 we object to, Your Honor,   03:06PM

13  because of the fact that this Court has already ruled.   03:06PM

14            THE COURT:  Okay.  Page 85, any objections?    03:06PM

15            MS. M. MILLER:  Page 85, I don't object to.    03:07PM

16            THE COURT:  All right.  85 is admitted without  03:07PM

17  objection.                                               03:07PM

18  (Exhibit D-66-85 admitted.)                              03:07PM

19            THE COURT:  86?                                03:07PM

20            MS. M. MILLER:  I'm reading it.                03:07PM

21            (Pause.)                                       03:07PM

22            MS. M. MILLER:  Would that include page 87 of 92  03:07PM

23  as well?  Because it wouldn't be complete if it didn't also  03:07PM

24  include 87.  And if it includes both 86 and 87, I have no  03:07PM

25  objection.                                               03:07PM
```

*Cross - Khamvongsa*

1        THE COURT:  All right.                                    03:07PM

2        MR. MCCONWELL:  That's fine.                              03:07PM

3        THE COURT:  Very well.  86 and 87 are also                03:07PM

4   admitted, ladies and gentlemen of the jury.  84 will not be    03:07PM

5   admitted.                                                      03:07PM

6   (Exhibit D-66A-86 to D-66A-87 admitted.)                       03:07PM

7        THE COURT:  So the others have been admitted              03:07PM

8   without objection.  Anything further, Mr. McConwell?           03:07PM

9        MR. MCCONWELL:  Um, yes, I do have a question.            03:07PM

10  Go back and look, if I could ask the -- let's publish this, if 03:07PM

11  we can?                                                        03:08PM

12       THE COURT:  Sure.  You may publish it.  You want          03:08PM

13  to go to page -- which page you want?                          03:08PM

14       MR. MCCONWELL:  85 and -- 85 and 86.                      03:08PM

15       THE COURT:  Okay, 85.  Pull that.                         03:08PM

16  BY MR. MCCONWELL: (CONTINUING)                                 03:08PM

17   Q.   Please, Mr. Khamvongsa, please read the actual text      03:08PM

18  of this paragraph?                                             03:08PM

19       THE COURT:  Is that 85?                                   03:08PM

20       MR. MCCONWELL:  It's on page 85, appendix four.           03:08PM

21       THE COURT:  Okay.  Is that right?  Is that the            03:08PM

22  right page?  Okay.                                             03:08PM

23       MS. M. MILLER:  That is the right page, Your              03:08PM

24  Honor.                                                         03:08PM

25       THE COURT:  All right.  Go ahead.                         03:08PM

*Cross - Khamvongsa*

THE WITNESS: "Appendix four. Use of opaque ownership structures for aircraft registration. Opaque ownership structures are legitimate business structures that are widely used by corporations and individuals to facilitate commerce, as well as for asset and tax management; however, the lack of transparency related to aircraft registrations using opaque ownership structures also creates challenges for safety and law enforcement investigators seeking information about beneficial owners to support timely investigations.

The Financial Action Task Force, FATF, and other international organizations have determined that beneficial ownership information can be obscured through, among other things, the use of shell companies which can be established with various forms of ownership structures, especially in cases where there is foreign ownership that is spread across jurisdictions. Complex ownerships and control structures involving many layers of shares registered in the name of other legal entities; formal nominee shareholders and directors where the identity of the beneficial owner is undisclosed; trusts and other legal arrangements that enable a separation of legal ownership and beneficial ownership of assets; and use of intermediaries in forming legal entities including professional intermediaries. Shell companies, one the opaque ownership structures may be formed for legitimate purposes to obtain financing prior to starting operations. In

1    the aircraft ownership context, shell companies may own          03:10PM

2    aircraft by holding title for registration purposes.  However,    03:10PM

3    shell companies may also be used to conceal the beneficial        03:10PM

4    owner's identify for illicit purposes.                            03:10PM

5            For example, according to Federal Aviation               03:10PM

6    Administration, FAA officials, some aircraft registrations        03:10PM

7    have stacked company ownership where shell companies own each     03:10PM

8    other.  Such ownership arrangement can be used for illicit        03:10PM

9    purposes to conceal the identity of foreign- based beneficial     03:10PM

10   owners and create challenges for investigators, according to      03:10PM

11   law enforcement officials.                                        03:10PM

12           Further, shell companies may use a registered agent's     03:11PM

13   mailing address on the aircraft application forms, further        03:11PM

14   obscuring aircraft ownership information.  Table 3 describes      03:11PM

15   the four opaque ownership structures, their legitimate uses       03:11PM

16   and how they can be vulnerable to abuse, according to our         03:11PM

17   illustrative case and intermediary research and interviews        03:11PM

18   with FAA and law enforcement officials.                           03:11PM

19           Table 3 features of opaque ownership structures used      03:11PM

20   in aircraft registrations.  Opaque ownership structure shell      03:11PM

21   companies; definition, companies that conduct either no           03:11PM

22   business or minimal business.  Legitimate use; shell companies    03:11PM

23   may be formed to obtain financing prior to starting               03:11PM

24   operations.                                                       03:11PM

25           In the aircraft ownership context, shell companies        03:11PM

1    may be created to hold title to aircraft for registration    03:11PM

2    purposes.  Potential abuse; shell companies are vulnerable to    03:11PM

3    abuse when used to conceal beneficial owner identity for    03:12PM

4    illicit purposes.  According to Federal Aviation    03:12PM

5    Administration, FAA officials, some aircraft registrations    03:12PM

6    have stacked company ownership, when shell companies own each    03:12PM

7    other.  Such ownership arrangement can be used for illicit    03:12PM

8    purposes to conceal the identity of foreign-based beneficial    03:12PM

9    owners and can be difficult to detect.    03:12PM

10            "Opaque ownership structure Limited Liability    03:12PM

11   Companies (LLC).  Definition, LLCs are a hybrid of a    03:12PM

12   corporation and a partnership protecting the owners who are    03:12PM

13   referred to as members from some debts and obligations like a    03:12PM

14   corporation and may confer certain tax advantages like a    03:12PM

15   partnership.    03:12PM

16            Legitimate use; as U.S. companies, LLCs provide a    03:12PM

17   range of services that are essential to the country's economic    03:12PM

18   system.  In the aircraft ownership context, LLCs may be    03:13PM

19   created to hold title to aircraft for registration purposes.    03:13PM

20   Potential abuse; LLCs may obscure beneficial owner    03:13PM

21   information.  Depending on the state at the time of company    03:13PM

22   formation, information on members who are owners of the LLCs    03:13PM

23   may not be required.  LLCs may be abused by those who do not    03:13PM

24   meet the definition of a U.S. citizen or by illicit actors to    03:13PM

25   hide their identity for illicit purposes.  Additionally, LLCs    03:13PM

```
 1   may be shell companies subject to vulnerabilities discussed        03:13PM
 2   earlier.                                                           03:13PM
 3            For aircraft registrations, FAA made LLCs a separate      03:13PM
 4   registration type on the aircraft registration application in      03:13PM
 5   2018.  However, according to FAA officials, LLC corporate          03:13PM
 6   structures may change any time after the registration, posing      03:13PM
 7   challenges in identifying beneficial owners as part of safety      03:13PM
 8   or law enforcement investigations."                                03:14PM
 9            MR. MCCONWELL:  Okay.                                     03:14PM
10            THE WITNESS:  Do you want me to read the foot --          03:14PM
11            MR. MCCONWELL:  That's fine.  Yeah, that's fine.          03:14PM
12   Thank you very much.                                               03:14PM
13            THE COURT:  Thank you.  All right, Mr. Martin?            03:14PM
14   Do you want us to move the easel there?                            03:14PM
15            MR. MARTIN:  I will, Your Honor.                          03:14PM
16            THE COURT:  Okay.                                         03:14PM
17            MR. MARTIN:  I'm having Ms. McConwell help me             03:14PM
18   with the ELMO.                                                     03:14PM
19            THE COURT:  Okay, that's fine.                            03:14PM
20            Okay.  Cross-examination by Mr. Martin, you may           03:15PM
21   proceed.                                                           03:15PM
22            MR. MARTIN:  Thank you, Your Honor.                       03:15PM
23                                                                      03:15PM
24                    CROSS-EXAMINATION                                 03:15PM
25   BY MR. MARTIN:                                                     03:15PM
```

*Cross - Khamvongsa*

```
 1      Q.   Agent Khamvongsa, I'm going to draw your attention to       03:15PM

 2   the indictment.  You were shown it yesterday, in particular --      03:15PM

 3   I'm going to publish for him, Your Honor, from the indictment,       03:16PM

 4   Counts 100 through 104 that you used yesterday.                      03:16PM

 5                 THE COURT:  Okay.                                      03:16PM

 6                 THE CLERK:  One moment, one moment.                    03:16PM

 7   BY MR. MARTIN:  (CONTINUING)                                         03:16PM

 8      Q.   Agent Khamvongsa, can you see what's -- I think it's         03:16PM

 9   published to the jury as well?                                       03:16PM

10                 THE COURT:  Jury, can you see?                         03:16PM

11                 THE JURY:  Yes.                                        03:16PM

12                 THE COURT:  Yes, they can.                             03:16PM

13   BY MR. MARTIN:  (CONTINUING)                                         03:16PM

14      Q.   Perfect.  Agent Khamvongsa, do you see up here where         03:16PM

15   it says "Count," and then it's got 100 through 104?                  03:16PM

16      A.   Yes, sir.                                                    03:16PM

17      Q.   And you testified about those particular counts              03:16PM

18   yesterday; correct, sir?                                            03:16PM

19      A.   Yes, sir.                                                    03:16PM

20      Q.   As a matter of fact, I think you told the jury that         03:16PM

21   you actually assisted and helped prepare the information            03:16PM

22   relating to those counts; correct, sir?                             03:16PM

23      A.   Yes, sir.                                                    03:17PM

24      Q.   And you testified that you did that by looking at           03:17PM

25   various documents and coming up with, for example, One             03:17PM
```

*Cross - Khamvongsa*

```
1   Thirty-Four Two Nineteen Ninety-Two[sic] in Count 100, right?      03:17PM
2       A.   Yes, sir.                                                  03:17PM
3       Q.   And in Count 101, One Ninety-Four One Eighty-Three         03:17PM
4   Fifty-Two[sic]; correct?                                           03:17PM
5       A.   Yes, sir.                                                  03:17PM
6       Q.   And in Count 102, $120,000; correct?                      03:17PM
7       A.   Yes, sir.                                                  03:17PM
8       Q.   Count 103, 234,980; correct?                              03:17PM
9       A.   Yes, sir.                                                  03:17PM
10      Q.   And finally, Count 104, $401,588.41; is that correct,     03:17PM
11  sir?                                                               03:17PM
12      A.   Yes, sir.                                                  03:17PM
13      Q.   Okay.  And you based those numbers, as you've             03:17PM
14  indicated, on review of the records in this case; correct?         03:17PM
15      A.   Yes, sir.                                                  03:18PM
16      Q.   Okay.  Now, I'm going to draw your attention to and I     03:18PM
17  need to give control back to... Ms. McConwell, so she can --       03:18PM
18  I'd like to pull up for you to review, sir, what's been            03:18PM
19  previously introduced as Government's Exhibit 2900, page 3280      03:18PM
20  through 3285.  And were going to go over that, okay?               03:18PM
21      A.   Yes, sir.                                                 03:18PM
22           MS. MCCONWELL:  3280.                                     03:18PM
23           THE COURT:  Did you say it's been admitted?               03:18PM
24           MR. MARTIN:  It's been, and I think Mr. Reed              03:18PM
25  actually, the first witness in this case, Judge.                   03:18PM
```

*Cross - Khamvongsa*

| | | |
|---|---|---|
| 1 | THE COURT:  Long ago, go ahead. | 03:18PM |
| 2 | MR. MARTIN:  Just the other day. | 03:18PM |
| 3 | THE COURT:  Go ahead. | 03:18PM |
| 4 | MR. MARTIN:  I'm waiting for it to get up on the | 03:18PM |
| 5 | -- | 03:18PM |
| 6 | MS. MCCONWELL:  3280? | 03:18PM |
| 7 | MR. MARTIN:  Yes, 3280 through 3285. | 03:18PM |
| 8 | MS. MCCONWELL:  Got it. | 03:19PM |
| 9 | BY MR. MARTIN: (CONTINUING) | 03:19PM |
| 10 | Q.   Do you see that agreement, sir? | 03:19PM |
| 11 | A.   Yes, sir. | 03:19PM |
| 12 | Q.   And are you familiar with that agreement? | 03:19PM |
| 13 | A.   Yes, sir.  We talked about it through the course of | 03:19PM |
| 14 | my testimony. | 03:19PM |
| 15 | Q.   Okay.  And in particular, this agreement is one of | 03:19PM |
| 16 | the agreements that forms the foundation of Count 100, isn't | 03:19PM |
| 17 | that true, sir? | 03:19PM |
| 18 | A.   It is a piece of the evidence in which I utilized. | 03:19PM |
| 19 | Q.   That's what I just said. | 03:19PM |
| 20 | A.   Yes. | 03:20PM |
| 21 | Q.   This is one of the agreements that forms the basis of | 03:20PM |
| 22 | your Count 100, isn't that true, sir? | 03:20PM |
| 23 | A.   It's one of the items; yes. | 03:20PM |
| 24 | Q.   Okay.  English is your first language, right? | 03:20PM |
| 25 | A.   Are you insulting me or? | 03:20PM |

*Cross - Khamvongsa*

1      Q.   I'm asking you because you don't seem to want to

2 answer my questions.

3      A.   No, I want to be thorough.  And so sometimes I just I

4 want to clarify.

5      Q.   Is it one of the pieces or one of the contracts that

6 forms the basis of Count 100, sir?

7      A.   It is one of the pieces; yes, sir.

8      Q.   Okay.  If you don't understand my question, please

9 let me know, I'll re-ask it.  Okay?

10      A.   Thank you, sir.

11      Q.   Okay.  So we're talking about Count 100, one of the

12 contracts, right?

13      A.   Yes, sir.

14      Q.   Okay.  And you have indicated many, many times to

15 this jury that the tuna boat companies were defrauded, haven't

16 you, sir?

17      A.   They were defrauded, yes.

18      Q.   No, my question is -- listen carefully, please.

19      A.   Yes.

20      Q.   You have indicated to this jury many, many times that

21 you believe the tuna boat companies were defrauded, isn't that

22 true?  I don't care about your opinion, I care about the

23 question I asked you.  Isn't that true, you represented it to

24 the jury?

25      A.   Define many.

```
 1      Q.   How about this, more than one?                    03:21PM
 2      A.   Yes.                                              03:21PM
 3      Q.   And you understand that the tuna boat companies,  03:21PM
 4   we're looking at the very first document here, entered into a  03:21PM
 5   written contract, in this case, Wilma's Flight Services, with  03:21PM
 6   Friesland Fishing Company, LLC; correct?                 03:21PM
 7      A.   As it relates to this specific contract, Wilma's  03:21PM
 8   Flight Services did enter into a contract with Friesland  03:21PM
 9   Fishing Company, LLC.                                    03:22PM
10      Q.   So there is no misunderstanding, for purposes of my  03:22PM
11   questioning, until I put another document up here, I'm   03:22PM
12   referring to this document.  Okay?                       03:22PM
13      A.   Yes.                                              03:22PM
14      Q.   So, this is a written lease, written contract between  03:22PM
15   Wilma's Flight Services and Friesland Fishing Company relating  03:22PM
16   to the substance, part of the substance of Count 100; correct?  03:22PM
17      A.   Yes.                                              03:22PM
18      Q.   And this is the only agreement as relates to this  03:22PM
19   contract, there is not another written contract about this  03:22PM
20   one, is there, sir?                                      03:22PM
21      A.   There is an amendment.                            03:22PM
22      Q.   Does it change anything other than the length or the  03:22PM
23   aircraft?                                                03:22PM
24      A.   I don't recall, I'd have to see it.  But I believe  03:22PM
25   the amendment is signed.                                 03:22PM
```

1    Q.    No, my question was -- I didn't ask if it was signed, `03:23PM`

2    I said did it change anything other than the length of the `03:23PM`

3    contract or the aircraft that -- `03:23PM`

4    A.    I believe it is the aircraft.  I'd have to see it to `03:23PM`

5    confirm it. `03:23PM`

6    Q.    But that's the only thing it changed?  All the other `03:23PM`

7    terms and conditions are the same, it's a little blurry, `03:23PM`

8    right? `03:23PM`

9    A.    The term is -- `03:23PM`

10            MS. M. MILLER:  Well, Your Honor, I'm going to `03:23PM`

11    object.  He said he needs to see the amendment so he could `03:23PM`

12    answer the question truthfully and thoroughly, otherwise, he's `03:23PM`

13    just speculating, and that's not helpful to the jury. `03:23PM`

14            MR. MARTIN:  Well, Your Honor, he doesn't get to `03:23PM`

15    ask questions.  I ask questions, and if he doesn't know, he `03:23PM`

16    could tell me I don't know. `03:23PM`

17            MS. M. MILLER:  Your Honor, he said he didn't `03:23PM`

18    know. `03:23PM`

19            THE COURT:  The Court will overrule the `03:23PM`

20    objection.  Do you understand?  Can you answer the last `03:23PM`

21    question? `03:23PM`

22            THE WITNESS:  The last question again? `03:23PM`

23            THE COURT:  About the other terms. `03:23PM`

24            THE WITNESS:  The terms, the terms are the same. `03:23PM`

25    BY MR. MARTIN: (CONTINUING) `03:23PM`

*Cross - Khamvongsa*

1    Q.   Okay.  And so you have a very good reading voice.    03:23PM

2    All right.    03:24PM

3    A.   Thank you.    03:24PM

4    Q.   And I want you to tell me on this first page, if we    03:24PM

5    can scroll through it, and we'll scroll through it slowly.  I    03:24PM

6    don't want you to read it, I want you to read it to yourself    03:24PM

7    but when you get to that first page -- well, let me back up.    03:24PM

8    I'll just -- I'll ask you a different question, I apologize.    03:24PM

9    I think you testified that you looked at each of the    03:24PM

10   contracts, specifically at the sections of the contracts,    03:24PM

11   right?    03:24PM

12   A.   I looked -- yes.    03:24PM

13   Q.   Because you were interested in what each section of    03:24PM

14   the contract said, right?    03:24PM

15   A.   Yes.    03:24PM

16   Q.   Okay.  And so in this contract -- and you looked at    03:24PM

17   this contract, right?    03:24PM

18   A.   Yes.    03:24PM

19   Q.   In this contract, can you tell the ladies and    03:24PM

20   gentlemen of the jury where it says, where it says the word    03:24PM

21   "Federal Aviation Administration" or the initials "FAA"?    03:24PM

22   A.   The registration number.    03:25PM

23   Q.   No, I said --    03:25PM

24        (Pause.)    03:25PM

25   BY MR. MARTIN: (CONTINUING)    03:25PM

*Cross - Khamvongsa*

1    Q.   Listen carefully please, sir.  I know you want to

2  help Ms. Miller all you can, and you're doing a great job

3  helping Ms. Miller all you can.

4               MS. M. MILLER:  Your Honor.

5               MR. MARTIN:  But I get to ask the questions and

6  my question was --

7               MS. M. MILLER:  Your Honor.

8               MR. MARTIN:  Do I need to repeat it?  Is that a

9  question.

10               MS. M. MILLER:  I object and move to strike.  I'm

11  going to ask Mr. Martin to, first of all, calm down because

12  he's screaming at the witness, he just screamed at me, and I

13  don't appreciate it in a court of law, first thing.  Second

14  thing, this witness is not testifying for Marie Miller.  This

15  witness is testifying on behalf of the United States.

16               THE COURT:  All right.

17               MS. M. MILLER:  It is inappropriate, it is

18  argumentative and he needs to calm down.

19               THE COURT:  All right.  Go ahead.  I think -- the

20  Court will sustain the objection about your statement that the

21  witness -- that may be your opinion, but it is inappropriate

22  to say that and ask him that.  So the Court will sustain that

23  objection, strike that.  Don't listen to that part.  You could

24  argue that later, but you can't ask that in a question, ladies

25  and gentlemen of the jury.  Secondly , I think yes, we need to

*Cross - Khamvongsa*

```
 1    calm down.  I know you're zealous.                          03:26PM
 2              MR. MARTIN:  I get upset when witnesses don't      03:26PM
 3    answer questions intentionally, Your Honor, and they know they 03:26PM
 4    are.  And I'll go -- I'll ask the questions exactly again.   03:26PM
 5              MS. M. MILLER:  Your Honor, I'm going to move to    03:26PM
 6    strike that comment.  That is an inappropriate comment on the 03:26PM
 7    credibility of the witness.                                   03:26PM
 8              THE COURT:  The Court will sustain the objection    03:26PM
 9    on commenting on the presentation of the answers.  So the -- 03:26PM
10    if you think that he's not answering it, then address it to   03:26PM
11    me, then I can admonish the witness if I agree with you.      03:26PM
12    Okay.  Let's go --                                           03:26PM
13    BY MR. MARTIN: (CONTINUING)                                  03:26PM
14        Q.   Agent Khamvongsa --                                 03:26PM
15        A.   Yes, sir.                                           03:26PM
16        Q.   -- again, point me and the jury to the section of the 03:26PM
17    contract that is found at Exhibit 2900, pages 3280           03:26PM
18    through 3285, the words, W-O-R-D-S, Federal Aviation         03:27PM
19    Administration.  I want you to point those words out to me.  03:27PM
20    Do you -- first, do you understand my question?             03:27PM
21        A.   As it -- literally, FAA is what you want me --      03:27PM
22        Q.   No, no, I said Federal Aviation Administration.     03:27PM
23        A.   Okay.                                               03:27PM
24        Q.   Okay.  Tell me what section that is so I can point it 03:27PM
25    out to the jury.                                             03:27PM
```

```
 1        A.    The word Federal --                              03:27PM

 2        Q.    Aviation Administration.                          03:27PM

 3        A.    -- Aviation Administration... does not appear on the   03:27PM

 4   contract, except in the registration number.               03:27PM

 5        Q.    Registration number, I don't see registration number   03:27PM

 6   Federal Aviation Administration, sir.  Do you see the words   03:27PM

 7   Federal Aviation Administration there?                     03:28PM

 8        A.    Yes.                                              03:28PM

 9        Q.    The words, point them out to me, circle the words   03:28PM

10   "federal" and then circle the word "aviation" and then circle   03:28PM

11   the word "administration."                                  03:28PM

12             THE COURT:  Why don't -- hold on, can you do me a   03:28PM

13   favor?  Take that off for a second.  It's kind of too fat.   03:28PM

14   Let's make it a little skinnier.                            03:28PM

15             THE WITNESS:  Can I just underline it?            03:28PM

16             THE COURT:  Yeah, you can underline it.  Why      03:28PM

17   don't you underline it.  Okay.  Underneath, it's underlined   03:28PM

18   underneath those.  Okay go ahead.                           03:28PM

19   BY MR. MARTIN:  (CONTINUING)                                03:28PM

20        Q.    Okay.  Can you spell "federal," please?          03:28PM

21        A.    Yes.                                              03:28PM

22        Q.    Please, spell it.                                 03:28PM

23        A.    F-E-D-E-R-A-L.                                    03:28PM

24        Q.    Can you spell "aviation," please?                 03:28PM

25        A.    Yes.                                              03:28PM
```

*Cross - Khamvongsa*

```
1      Q.   Spell it.                                          03:28PM

2      A.   A-V -- (laughing) A-V -- aviation, A-V-I-A-I-T-I-O-N.  03:28PM

3      Q.   Okay.  How about "administration"?                 03:28PM

4      A.   I'm going to fail this.  A-D-M-I-N, admin,          03:29PM

5  I-S-T-R-A-T-I-O-N.  I spelled aviation wrong, I think.      03:29PM

6      Q.   Do you see the words you just spelled on that      03:29PM

7  document, those three words, sir?                           03:29PM

8      A.   I do not see those specific three words on the     03:29PM

9  document.                                                   03:29PM

10          MR. MARTIN:  Can we take the yellow line off,       03:29PM

11 please.                                                     03:29PM

12 BY MR. MARTIN: (CONTINUING)                                 03:29PM

13     Q.   Now, will you tell me and show the jury, on that   03:29PM

14 document, the letters, sequentially, "FAA."  Number one, do 03:29PM

15 you understand my question?                                 03:29PM

16     A.   Yes.  You want me to point out FAA on the document 03:29PM

17 specifically as it relates to those specific letters.       03:29PM

18     Q.   Yes.  Every question I ask is specific, Agent      03:30PM

19 Khamvongsa.  So, yes, specifically, the letters "FAA."      03:30PM

20          (Pause.)                                           03:31PM

21          THE WITNESS:  Those specific letters, FAA, are     03:31PM

22 not on the document that we see.                            03:31PM

23 BY MR. MARTIN: (CONTINUING)                                 03:31PM

24     Q.   Is there a signature line on this document for the 03:31PM

25 federal aviation to sign, sir?                              03:31PM
```

1      A.   There is no FAA line specifically on this document;     03:31PM

2   yes.     03:31PM

3      Q.   Is there a signature line on this document, sir, for     03:31PM

4   the Federal Aviation Administration to sign, sir?     03:31PM

5      A.   No, no signature line; yes.     03:31PM

6      Q.   Is there a signature line for the Department of     03:31PM

7   Transportation to sign this document, sir?     03:31PM

8      A.   No.     03:32PM

9      Q.   Would you agree with me, sir, that the Federal     03:32PM

10   Aviation Administration is not a party to this written     03:32PM

11   contract?     03:32PM

12      A.   It's not a party to this specific contract; no.     03:32PM

13      Q.   Okay.  Now, let's go to Government's     03:32PM

14   Exhibit 2900-2996-3001 -- yeah, excuse me, I gave the wrong     03:32PM

15   number.  2900, starting at 2996.  Are you familiar with this     03:32PM

16   document, sir?     03:32PM

17      A.   Yes.     03:32PM

18      Q.   And do you need to see the indictment for -- I'm     03:32PM

19   going to ask you a question, does that document relate to one     03:32PM

20   of the contracts relating to Count 101 of this -- of the     03:33PM

21   indictment?     03:33PM

22      A.   Yes.     03:33PM

23      Q.   You need to see the indictment or you're agreeing     03:33PM

24   with me?     03:33PM

25      A.   I believe it's 101.     03:33PM

*Cross - Khamvongsa*

1    Q.   Okay.  Well, I want to make sure, so here.                    03:33PM

2    A.   Thank you, sir.  Yes.                                         03:33PM

3    Q.   So, again, point out for the ladies and gentlemen of          03:33PM

4  the jury, if you know, and if we need to go through the              03:33PM

5  document, we will, but I think you should agree with me that         03:33PM

6  the words "Federal Aviation Administration" do not appear in         03:33PM

7  that document anywhere, do they, sir?                                03:33PM

8    A.   The words specifically does not appear in the                 03:33PM

9  document.                                                            03:33PM

10   Q.   And the letters "FAA," do not appear in that                  03:33PM

11 document, do they, sir?                                              03:34PM

12   A.   Literally, no.                                                03:34PM

13   Q.   If we could go to page 3001 of that exhibit, the last         03:34PM

14 page.  Do you see the last page, sir?                                03:34PM

15   A.   Yes.                                                          03:34PM

16   Q.   Okay.  And I represent to you that's page 3001,               03:34PM

17 that's the last page of that lease agreement contract.  Is          03:34PM

18 there a signature line for the Federal Aviation Administration       03:34PM

19 on that document, sir?                                               03:34PM

20   A.   No.                                                           03:34PM

21   Q.   Is there a signature line for the FAA on that                 03:34PM

22 document, sir?                                                       03:34PM

23   A.   No.                                                           03:34PM

24   Q.   Is the Federal Aviation Administration or the FAA,            03:34PM

25 based on your -- based on this document, a party to that            03:34PM

*Cross - Khamvongsa*

1    document, sir?                                                    03:35PM

2        A.    As it relates to this document, no.                    03:35PM

3        Q.    All right.  Now, as to Count 102, I'm going to hand     03:35PM

4    you the indictment again.  I'm going to ask you to look at        03:35PM

5    Count 102 and compare it to Count 100, and ask you if -- not      03:35PM

6    this one but the contract we just had up on the screen, which     03:35PM

7    would have been 3280 to 3285 of Exhibit 2900, if that contract    03:35PM

8    would also be covered in Count 102?                               03:35PM

9        A.    Yes.                                                    03:35PM

10       Q.    So if we went back to Exhibit 3280, if we could, oh,    03:35PM

11   it's up, I'm sorry, somebody was thinking ahead of me.  Just      03:36PM

12   like your prior testimony, you'll agree that Federal Aviation     03:36PM

13   Administration and FAA literally do not appear in those           03:36PM

14   documents?                                                        03:36PM

15       A.    They literally do not appear in this contract and       03:36PM

16   this document.                                                    03:36PM

17       Q.    And there is no signature line for the Federal          03:36PM

18   Aviation Administration, and if we need to go to that last        03:36PM

19   page, I'm happy to do that.                                       03:36PM

20       A.    Could we, please?                                       03:36PM

21       Q.    Sure.                                                   03:36PM

22             (Pause.)                                                03:36PM

23   BY MR. MARTIN: (CONTINUING)                                       03:36PM

24       Q.    There is no signature line for the Federal Aviation     03:36PM

25   Administration, is there, sir?                                    03:36PM

*Cross - Khamvongsa*

1      A.   No.                                                    03:36PM

2      Q.   Okay.   Or the FAA?                                     03:36PM

3      A.   No.                                                    03:36PM

4      Q.   And they're not a party to the contract?              03:36PM

5      A.   This is -- this contract between the tuna boat, the   03:37PM

6  lessor and the lessee.                                          03:37PM

7      Q.   Yes, sir.                                              03:37PM

8      A.   Yes.                                                   03:37PM

9      Q.   Now, if we go to Government's -- I'm going to show     03:37PM

10  you Government's Exhibit 2900-3434-3439, I'm going to hand you  03:37PM

11  the indictment again.   Do you see that, sir?                  03:37PM

12     A.   Yes.                                                   03:37PM

13     Q.   Is that one of the contracts that is the subject      03:37PM

14  matter of Count 103?                                           03:37PM

15     A.   I'd have to actually get additional documentation or  03:37PM

16  review it, specifically the aircraft vessel assignment which   03:37PM

17  would further reflect.                                         03:38PM

18     Q.   Well, let me ask you, sir, do you have Count 103 in    03:38PM

19  front of you, do you not, sir?                                 03:38PM

20     A.   I do.                                                  03:38PM

21     Q.   And are you saying that you're not familiar enough     03:38PM

22  with this contract to know that this is one of the contracts   03:38PM

23  that was contained within the substance matter of the draft of 03:38PM

24  the Count 103?                                                 03:38PM

25     A.   I know what is there, but there is also documentation  03:38PM

which corroborates it, and in order for me to corroborate it, 03:38PM

I refer to other sources to ensure, 'cause Ocean Conquest, 03:38PM

there is multiple, there is multiple boats that make up this 03:38PM

particular charge. 03:38PM

Q.   Yeah.  And that's true for Count 100, Count 101, 03:38PM

Count 102 and Count 104, isn't it, sir? 03:38PM

A.   No, Count 100, 101 and 102 refer to only one boat. 03:39PM

Where as Count 103 and 104 refer to multiple boats.  So it's 03:39PM

easier for me to remember and recall 100 to 102 because I'm 03:39PM

only referencing one, whereas 103 I'm referencing multiple 03:39PM

boats as it relates to this wire fraud charge. 03:39PM

Q.   So you're saying that you don't know that this 03:39PM

contract relates to Count 103, is that your testimony, sir? 03:39PM

A.   What I'm saying is I would need to review other 03:39PM

documents to reference it. 03:39PM

Q.   And I would -- well, let me make it a little easier 03:39PM

then.  You have looked at every one of the 4 to 5,000 pages of 03:39PM

contracts in this case, have you not, sir? 03:39PM

A.   Yes. 03:39PM

Q.   And every one of them that you looked at -- this is 03:39PM

already in evidence, if we could go to 3439, please.  Every 03:40PM

one of them that is in evidence has a page not identical but 03:40PM

very similar to page 3439, wouldn't you agree, sir, every one 03:40PM

of the contracts? 03:40PM

A.   Yes. 03:40PM

---

*Cross - Khamvongsa*

1    Q.   Every one of the contracts has a signature page;    03:40PM
2    correct?                                                   03:40PM
3    A.   Has a signature page, yes.                            03:40PM
4    Q.   And on the signature page, there are only two        03:40PM
5    signers; correct?                                          03:40PM
6    A.   The lessor and lessee, yes.                           03:40PM
7    Q.   So every contract has two signatures and one of them 03:40PM
8    is the lessor and in this case, it's signed by Marvin Reed, 03:41PM
9    right?                                                     03:41PM
10   A.   Yes.                                                  03:41PM
11   Q.   And the lessee in this case is a tuna boat company;   03:41PM
12   correct?                                                   03:41PM
13   A.   Yes.                                                  03:41PM
14   Q.   And that is true about every contract you looked at;  03:41PM
15   correct, sir?                                              03:41PM
16   A.   That Marvin Reed signs it?                            03:41PM
17   Q.   No.                                                   03:41PM
18   A.   That's --                                             03:41PM
19   Q.   That there are only two people signing it, the tuna   03:41PM
20   boat company and the lessor?                               03:41PM
21   A.   Yes.                                                  03:41PM
22   Q.   And not -- on not one of the 4,000 pages, 4 to        03:41PM
23   5,000 pages of documents you reviewed, is there a signature 03:41PM
24   line for the Federal Aviation Administration, is there, sir? 03:41PM
25   A.   Not a signature line, no.                             03:41PM

*Cross - Khamvongsa*

1    Q.   Is there a signature line for the FAA on any of those          03:41PM

2  contracts or leases, sir?                                            03:42PM

3    A.   If we're talking about a signature line for the               03:42PM

4  FAA --                                                               03:42PM

5    Q.   That's what my question was.                                  03:42PM

6    A.   -- no.                                                        03:42PM

7    Q.   What was your answer?                                         03:42PM

8    A.   I said no, sir.                                               03:42PM

9    Q.   Okay.  And they are not a party to any of the 4 to            03:42PM

10 5,000 pages of lease agreements you looked at, isn't that           03:42PM

11 true, sir?                                                           03:42PM

12   A.   They are not a party, no.                                     03:42PM

13   Q.   And let me ask you, sir, do I have or do you have --          03:42PM

14   A.   I have it, sir, the --                                        03:42PM

15   Q.   I have a copy too.                                            03:42PM

16   A.   Oh, okay.                                                     03:42PM

17   Q.   The numbers that are reflected in Counts 100                  03:42PM

18 through 104, that you came up with, those represent funds that       03:42PM

19 were paid pursuant to the lease agreements; correct, sir?           03:43PM

20   A.   Yes.                                                          03:43PM

21   Q.   All of 'em?                                                   03:43PM

22   A.   Yes.                                                          03:43PM

23   Q.   In Count 100?                                                 03:43PM

24   A.   Yes.                                                          03:43PM

25   Q.   Count 102, 101 -- I'll start with 101.                       03:43PM

*Cross - Khamvongsa*

1    A.    Yes.                                                   03:43PM

2    Q.    102?                                                   03:43PM

3    A.    Pursuant to the leases, yes.                           03:43PM

4    Q.    103?                                                   03:43PM

5    A.    Yes.                                                   03:43PM

6    Q.    And 104?                                               03:43PM

7    A.    Yes.                                                   03:43PM

8    Q.    And those were payments for the services of            03:43PM

9 helicopters for tuna spotting; correct, sir?                    03:43PM

10   A.    Yes.                                                   03:43PM

11   Q.    And nothing else?                                      03:43PM

12   A.    Well, there were also payments for damages, overages,  03:43PM

13 overtime, yes.                                                 03:43PM

14   Q.    Okay.  But they all related to the terms of these      03:43PM

15 written contracts; correct, sir?                               03:44PM

16   A.    The terms as the lessee knew it, yes.                  03:44PM

17   Q.    Is there anything -- maybe I misunderstood your        03:44PM

18 answer.  The terms of this written contract, those are the     03:44PM

19 terms of the contract; correct, sir?                           03:44PM

20   A.    As the lessee's knew it, yes.                          03:44PM

21   Q.    Which lessees have you talked to?  Name them, please.  03:44PM

22   A.    Talked to...the South Pacific Tuna Company.            03:44PM

23 Specifically that one because that was the only                03:44PM

24 U.S.-registered tuna company that I could identify.            03:44PM

25   Q.    Okay.  And let me ask you, sir, South Pacific Tuna     03:44PM

1   Company, this lease, and I'm just looking at the one here,   03:44PM

2   3439 -- the one that's in front of you?   03:44PM

3       A.   Yes, sir.   03:45PM

4       Q.   We'll go to the front, it's 3434.  That's the entire   03:45PM

5   written agreement between the parties, isn't it, sir?   03:45PM

6       A.   Between the parties South Pacific Tuna Company and   03:45PM

7   the lessor, yes.   03:45PM

8       Q.   And in this case, we got Ocean Conquest, LLC and   03:45PM

9   that's South Pacific Tuna Company, right, sir?   03:45PM

10      A.   Yes, it's one of the many boats that they oversee.   03:45PM

11      Q.   And so South Pacific Tuna Company has a shell   03:45PM

12  corporation that Ocean Conquest, LLC falls within; is that   03:45PM

13  correct, sir?   03:45PM

14      A.   I don't know to the specifics of Ocean Conquest and   03:45PM

15  the relationship between South Pacific Tuna Company, but I do   03:45PM

16  know that they are responsible for resolving their financials,   03:45PM

17  such as the payments for the leases and ensuring that all the   03:46PM

18  paperwork is filed as it relates to the specific tuna   03:46PM

19  companies.   03:46PM

20      Q.   All right.  And do they have lawyers?   03:46PM

21      A.   They do have lawyers.   03:46PM

22      Q.   That review their leases?   03:46PM

23      A.   I don't know what their responsibilities are.   03:46PM

24      Q.   Okay.   03:46PM

25      A.   Specifically.   03:46PM

1    Q.   And I'm sure you checked this out, but has Ocean

2    Conquest and South Pacific have not filed any litigation

3    against any of Jon Walker's companies to recover any losses

4    for any misrepresentation, isn't that true?

5    A.   Not yet.

6    Q.   I didn't ask you if they done it yet.  I'm talking

7    about today.  Let's get real.  Right now, have they -- isn't

8    it true they have not filed any litigation against any of

9    these companies because of any kind of misrepresentation or

10   fraud or deceit, isn't that true?

11   A.   I haven't seen any -- any documents to reflect such

12   actions.

13   Q.   And as a matter of fact, you have not seen any

14   documents to reflect that any tuna boat company of all of the

15   tuna boat companies have ever filed any type of litigation

16   against any of these companies for fraud, misrepresentation or

17   anything like that, isn't that true, sir?

18   A.   Not yet, I mean --

19   Q.   Is there --

20        (Pause.)

21   BY MR. MARTIN: (CONTINUING)

22   Q.   I'm not talking about tomorrow.  If you -- if you --

23   if my question -- you don't understand, let me know.  I'm

24   talking about right now.  Okay.  So I want to know right now,

25   not tomorrow, not five years from now, not when you go out in

*Cross - Khamvongsa*

1   the hall and pick up the phone and call somebody and say, hey,    03:47PM
2   you got to do this so I don't look bad.  I want to know about     03:48PM
3   right now have any companies filed any type of civil              03:48PM
4   litigation because of fraud, deceit, misrepresentation,           03:48PM
5   against any of these helicopter companies, sir?                   03:48PM
6        A.   No.  Because they don't know.                           03:48PM
7        Q.   You can read minds now?                                 03:48PM
8        A.   I'm aware of what South Pacific Tuna Company told us.   03:48PM
9        Q.   No.  My question is can you read minds?                 03:48PM
10       A.   I cannot read your mind.                                03:48PM
11       Q.   Can you read a tuna company's mind?                     03:48PM
12       A.   No.                                                     03:48PM
13       Q.   Do you think they can read contracts?                   03:48PM
14       A.   I think they can read contracts if it was truthful.    03:48PM
15       Q.   Did I ask you whether or not it was truthful, sir?     03:48PM
16       A.   You did not ask that.                                   03:48PM
17       Q.   Okay.  I'm going to ask the question again, and I'd    03:48PM
18   like for you to answer it.  Do you think they can read          03:48PM
19   contracts?                                                       03:48PM
20       A.   They can read.                                          03:48PM
21       Q.   Okay.  Now, I believe you testified that what you      03:49PM
22   referred to as shell corporations didn't own any assets, do    03:49PM
23   you recall that testimony, sir?                                 03:49PM
24       A.   Yes.                                                    03:49PM
25       Q.   Is an aircraft or a helicopter an asset, sir?          03:49PM

*Cross - Khamvongsa*

1    A.   In this case, yes.                                  03:49PM

2    Q.   My questions that I'm asking are about this case, all  03:49PM

3  right?                                                       03:49PM

4    A.   Excellent.  Thank you.  Yes.                         03:49PM

5    Q.   Okay.  So helicopters and aircraft are assets.  And  03:49PM

6  if a helicopter or an asset is owned by a Vanuatu corporation,  03:50PM

7  that would be an asset; correct, sir?                        03:50PM

8    A.   In this case, that's not how it was done.           03:50PM

9    Q.   I didn't ask you how anything was done or anything   03:50PM

10  like that.  I said if a Vanuatu corporation owns a helicopter  03:50PM

11  or it owns an aircraft, that is an asset, isn't that true,   03:50PM

12  sir?                                                        03:50PM

13    A.   But are we talking about the facts of this case     03:50PM

14  because if we are --                                        03:50PM

15    Q.   I'm asking you a question, sir.                     03:50PM

16    A.   A general question about just a Vanuatu company?  And  03:50PM

17  not the corporations that are tied to this case?            03:50PM

18    Q.   Are you familiar with a corporation called Eddie Air,  03:50PM

19  Inc.?                                                       03:51PM

20    A.   I've seen it before; yes.                           03:51PM

21    Q.   A Vanuatu corporation?                              03:51PM

22    A.   In name, yes.                                       03:51PM

23    Q.   And you've seen documentation on the FAA registry   03:51PM

24  indicating that it is the registered aircraft; correct, sir?  03:51PM

25    A.   Eddie Air, it was on a registry, yes, an FAA registry  03:51PM

*Cross - Khamvongsa*

1   as a U.S. corporation.                                      03:51PM

2       Q.   Well, as a corporation?                            03:51PM

3       A.   A U.S. corporation.                                03:51PM

4       Q.   You know, we went through this with -- you been    03:51PM

5   through this trial, you sat in the back and listened to all 03:51PM

6   the witnesses testify, haven't you sir?                     03:51PM

7       A.   Yes, sir.                                          03:51PM

8       Q.   Okay.  And you know that there are all kinds of forms 03:51PM

9   that have come out about these registration forms they've   03:51PM

10  changed, right?  You heard that testimony?                  03:52PM

11      A.   Yes.                                               03:52PM

12      Q.   And one time they just said "corporation," then back 03:52PM

13  in probably 2000 -- and I may get the date wrong, so if I do, 03:52PM

14  I apologize -- sometime around 2017, 2018, they added to the 03:52PM

15  form, "U.S. corporation," right?                            03:52PM

16      A.   I'd have to see that.  I... I don't recall --      03:52PM

17      Q.   I'm not arguing about the date.  I could be wrong on 03:52PM

18  the date.  I'm talking about they actually added the word   03:52PM

19  "U.S. corporation," right?                                  03:52PM

20      A.   That still doesn't take away from the fact that it 03:52PM

21  was registered as a U.S. corporation.                       03:52PM

22      Q.   My question, sir, is, did the form change to reflect 03:52PM

23  "U.S. corporation"?                                         03:52PM

24      A.   At some point.                                     03:52PM

25      Q.   Okay.                                              03:52PM

1     A.    It may have been added.                          03:52PM

2     Q.    And a corporation -- and I just picked Eddie Air as   03:52PM

3  an example --                                             03:52PM

4     A.    Yes, sir.                                         03:52PM

5     Q.    -- that owns an aircraft, a helicopter, isn't it true   03:52PM

6  that helicopter that is registered in their name is an asset,   03:53PM

7  sir?                                                       03:53PM

8     A.    A helicopter registered... if it truly was registered   03:53PM

9  in their name and was treated as such, yes, it would be that   03:53PM

10 corporation's asset.  But that's not how it was done in this   03:53PM

11 case.                                                      03:53PM

12    Q.    You know, you have your opinion as to what was done   03:53PM

13 in this case.  I'll agree with you.                        03:53PM

14    A.    No, it's not my opinion; it's based upon what was   03:53PM

15 presented.                                                 03:53PM

16    Q.    Sir, I'm asking you questions.  If you let me finish   03:53PM

17 my question, we're going to get through a lot quicker.  And I   03:53PM

18 can tell you right now we're not going to get through by 4:00   03:53PM

19 based on your answers.  So here's the question.           03:53PM

20    A.    Yes, sir.                                         03:53PM

21    Q.    You understand the jury's job is to decide what the   03:53PM

22 facts are in this case, don't you, sir?                    03:53PM

23    A.    Yes, sir.                                         03:53PM

24    Q.    You've testified in Court, I think, you just said at   03:53PM

25 least three times before, right?                           03:54PM

*Cross - Khamvongsa*

```
 1      A.   Yes, sir.                                       03:54PM

 2      Q.   And you know that you're here to testify to what your   03:54PM

 3 investigation reveals; correct?                          03:54PM

 4      A.   Yes, sir.                                       03:54PM

 5      Q.   And --                                          03:54PM

 6      A.   As well as the facts, sir.                      03:54PM

 7      Q.   That's what your investigation turns up, I'm    03:54PM

 8 assuming?                                                 03:54PM

 9      A.   Right, but --                                   03:54PM

10      Q.   Facts?                                          03:54PM

11      A.   Correct.                                        03:54PM

12      Q.   Okay.  So when -- and I assume you have opinions   03:54PM

13 about this case; correct, sir?                           03:54PM

14      A.   Yes, but that doesn't factor into the facts.    03:54PM

15      Q.   My question is, you have opinions about this case;   03:54PM

16 correct, sir?                                             03:54PM

17      A.   I have opinions.                                03:54PM

18      Q.   All right.  And you've been an IRS agent for 20   03:54PM

19 something years?                                          03:54PM

20      A.   Yes, sir.                                       03:54PM

21      Q.   And you've probably been to continuing law      03:54PM

22 enforcement or IRS training, schools, every year to assist you   03:55PM

23 with your investigative techniques, right?               03:55PM

24      A.   Yes, sir.                                       03:55PM

25      Q.   And you've been to actual classes that assist you on   03:55PM
```

*Cross - Khamvongsa*

1    how to testify to a jury to appear to be more believable,    03:55PM

2    isn't that true, sir?                                        03:55PM

3        A.   To appear more believable?  No.  No, not -- not the 03:55PM

4    way you framed it.  We --                                    03:55PM

5        Q.   You've been to classes to assist you in testifying, 03:55PM

6    we'll leave it at that, isn't that true, sir?                03:55PM

7        A.   Yeah, we talk about testifying in courtroom and     03:55PM

8    procedures.                                                  03:55PM

9        Q.   Okay.  And in that regard, sir --                   03:55PM

10            THE COURT:  Okay.  Four more minutes before we       03:55PM

11   recess for the day, Mr. Martin.                              03:55PM

12   BY MR. MARTIN: (CONTINUING)                                  03:55PM

13       Q.   On Government's Exhibit G-2 -- 829, there are        03:56PM

14   multiple corporations listed here under what's labeled "30   03:56PM

15   Vanuatu international companies," you see that, sir?          03:56PM

16       A.   Yes, sir.                                            03:56PM

17       Q.   And each of those companies that's listed has an     03:56PM

18   aircraft or helicopter in their assets, isn't that true, sir? 03:56PM

19       A.   No, sir.                                             03:56PM

20       Q.   They don't all have helicopters?                     03:56PM

21       A.   No, sir, they all belong to Hansen Helicopters.      03:56PM

22       Q.   So Eddie Air, the one we just talked about doesn't   03:56PM

23   have a helicopter?                                           03:56PM

24       A.   It exists in name.                                   03:56PM

25       Q.   It doesn't -- it's not registered on the FAA registry 03:56PM

*Cross - Khamvongsa*

1   as a helicopter?                                              03:57PM

2        A.    Only as name.                                      03:57PM

3        Q.    So... what you're saying is the registry is a fraud? 03:57PM

4        A.    Not the registry; what was filed is a fraud.       03:57PM

5        Q.    My question is, you're telling me that if it's filed 03:57PM

6   on the FAA registry, if Eddie's Air is at the FAA registry as 03:57PM

7   a helicopter...(pause.)                                       03:57PM

8             MR. MARTIN:  Your Honor, I'm looking for an         03:58PM

9   exhibit.  It might take me a few minutes.  I can go ahead and 03:58PM

10  do it, or we --                                               03:58PM

11            THE COURT:  Want to recess and finish it up         03:58PM

12  tomorrow?                                                     03:58PM

13            MR. MARTIN:  Yes, Your Honor.                       03:58PM

14            THE COURT:  All right.  Why don't we do that.       03:58PM

15  It's almost 4:00 anyway.  Why don't we do that.               03:58PM

16            Ladies and gentlemen of the jury, please keep an    03:58PM

17  open mind.  Do not form or express any opinion on this case   03:58PM

18  until it's submitted to you, do not speak to anyone on any    03:58PM

19  subject connected with the trial.  Now, we're supposed to     03:58PM

20  start at 8:15 tomorrow, I'm going to ask you to be here        03:58PM

21  actually at 9:00 because I have a motion for compassionate     03:58PM

22  release that's going to be heard early in the morning.  I'm    03:58PM

23  not sure how long that's going to go.  So rather than keep you 03:58PM

24  waiting, we'll start at 9:00 a.m.  How much longer do you have 03:58PM

25  with this witness, do you think?                              03:58PM

         1              MR. MARTIN:  I didn't think I would go as long as          03:58PM
         2    I did, Your Honor.                                                   03:58PM
         3              THE COURT:  It's okay.                                     03:58PM
         4              MR. MARTIN:  So I'm having -- as quickly as I              03:58PM
         5    can.                                                                 03:58PM
         6              THE COURT:  All right.  So --                             03:58PM
         7              MR. MARTIN:  Maybe 30, 40 minutes, Judge.                  03:58PM
         8              THE COURT:  Oh okay.  So then, Prosecution, you            03:58PM
         9    don't have that much long rebuttal, I mean --                        03:58PM
        10              MS. M. MILLER:  I will have a redirect based on           03:58PM
        11    both witnesses questions and the introduction of new exhibits.       03:58PM
        12              THE COURT:  Right.  But I mean how long -- I'm             03:59PM
        13    just --                                                              03:59PM
        14              MS. M. MILLER:  Approximately an hour.                     03:59PM
        15              THE COURT:  All right.  So then you'll have your           03:59PM
        16    next witness ready to go?                                            03:59PM
        17              MS. M. MILLER:  Yes.                                       03:59PM
        18              THE COURT:  All right.  So we're almost there,             03:59PM
        19    prosecution has two more witnesses after this agent.  All            03:59PM
        20    right.  Ladies and gentlemen, take care.  I'll see you               03:59PM
        21    tomorrow.  So be here and we'll start at 9:00 a.m.  Okay.            03:59PM
        22    Thank you.                                                           03:59PM
        23              (Jury out at 3:59 p.m.)                                    03:59PM
        24              Okay, so we're outside the presence of the jury.          03:59PM
        25    So, Counsels, make sure too that when you have exhibits that         03:59PM

*Cross - Khamvongsa*

```
 1   are new, give it to other Counsels ahead of time, not during      03:59PM
 2   the testimony, so that they can all be prepared.  You don't        03:59PM
 3   have to waste time, everybody reviewing it.  And new exhibits.     03:59PM
 4   Okay.  All right.  Thank you.  I'll see all of you tomorrow.       03:59PM
 5               THE WITNESS:  Thank you, Your Honor.                    03:59PM
 6               THE COURT:  Thank you, take care.                       03:59PM
 7               (Proceedings concluded at 4:00 p.m.)                    04:00PM
 8                            * * *                                      04:00PM
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*Cross - Khamvongsa*

| | |
|---|---|
| 1 | August 18, 2022; 9:06 a.m.; Hagatna, Guam | 08:52AM |
| 2 | * * * | 08:52AM |
| 3 | | 08:52AM |
| 4 | THE COURT:  I don't have a cold.  I really think | 09:06AM |
| 5 | it's my -- one of my parts of my house is undergoing | 09:06AM |
| 6 | construction, so I think all the construction dust is actually | 09:06AM |
| 7 | gotten to me.  So I'm coughing. | 09:06AM |
| 8 | MS. M. MILLER:  It gets everywhere, doesn't it? | 09:06AM |
| 9 | THE COURT:  Well, I mean -- I'm redesigning a | 09:06AM |
| 10 | room and making it like a room for my husband, like a man | 09:07AM |
| 11 | cave. | 09:07AM |
| 12 | MS. M. MILLER:  A man cave.  Nice. | 09:07AM |
| 13 | THE COURT:  Yeah.  So I'm just -- I have a lot of | 09:07AM |
| 14 | construction ongoing, and I just was there last night trying | 09:07AM |
| 15 | to clean up.  So I think it really is affecting me this | 09:07AM |
| 16 | morning.  Okay.  We ready to go, everybody? | 09:07AM |
| 17 | MS. M. MILLER:  Yes, Your Honor. | 09:07AM |
| 18 | MR. MARTIN:  Yes, Your Honor. | 09:07AM |
| 19 | THE COURT:  Where were we last?  Oh, yes, that's | 09:07AM |
| 20 | right, Mr. Martin was cross-examining the witness. | 09:07AM |
| 21 | MS. M. MILLER:  Yes. | 09:07AM |
| 22 | THE COURT:  We'll call in the jury. | 09:07AM |
| 23 | (Pause.) | 09:07AM |
| 24 | THE COURT:  Just an FYI.  I know I told you I was | 09:07AM |
| 25 | still thinking about that issue, so I'm actually doing further | 09:07AM |

*Cross - Khamvongsa*

```
1    research on that issue we discussed yesterday regarding shell      09:07AM
2    corporations.  I think that if there is any relevant cases, it      09:07AM
3    would really come from cases dealing with like organized            09:07AM
4    crime, shell corporations and stuff.  So we're kind of looking      09:07AM
5    at that.  If you guys have any cases you want me to look at,         09:07AM
6    let me look at them, too.  Send them to me.  Okay?  All right.      09:07AM
7              (Pause.)                                                  09:08AM
8              THE COURT:  How much longer do you have with this         09:08AM
9    witness, Mr. Martin?  Approximately?                                09:08AM
10             MR. MARTIN:  Your Honor, I would say less than an         09:08AM
11   hour.                                                               09:08AM
12             THE COURT:  Okay.                                         09:08AM
13             MR. MARTIN:  Kind of going to depend on how               09:08AM
14   things go.                                                          09:08AM
15             THE COURT:  You guys are communicating?  You guys         09:08AM
16   are communicating?                                                  09:08AM
17             MR. MARTIN:  Me and the witness?                          09:08AM
18             THE COURT:  Yeah.                                         09:08AM
19             MR. MARTIN:  Sure.  We're communicating, Judge.           09:08AM
20   We get along great.                                                 09:08AM
21             THE COURT:  I said -- that's what I mean,                 09:08AM
22   depending on how you're communicating?  I'm just teasing.          09:08AM
23             MR. MARTIN:  I think we're communicating very             09:08AM
24   well, Your Honor.                                                   09:08AM
25             THE COURT:  Yeah, right.  I think so.                     09:08AM
```

*Cross - Khamvongsa*

```
 1                    THE WITNESS:  Yes, ma'am.                    09:08AM
 2                    THE COURT:  (Laughing.)  Okay.  My allergies have   09:08AM
 3        kicked in, team.                                         09:08AM
 4                    MS. M. MILLER:  Sorry.                        09:08AM
 5                    MR. MARTIN:  Mine hit this morning, Your Honor.   09:08AM
 6                    THE COURT:  Well, I take Zyrtec-D.  It really   09:08AM
 7        works.                                                    09:08AM
 8                    MR. MARTIN:  I take Allegra?  Or the generic   09:08AM
 9        Allegra, whatever the heck that is.                       09:08AM
10                    THE COURT:  Generic?                          09:08AM
11                    MR. MARTIN:  The Walgreens Allegra.           09:08AM
12                    THE COURT:  I don't think I would take generic.   09:09AM
13                    MR. MARTIN:  Well, the ingredients are exactly   09:09AM
14        the same.                                                 09:09AM
15                    THE COURT:  I know, but there is something about   09:09AM
16        a generic doesn't sound -- it doesn't sound like it's going to   09:09AM
17        do the job, but it probably does.                        09:09AM
18                    Please rise for the jury.                     09:09AM
19                    (Jury in at 9:09 a.m.)                        09:09AM
20                    THE COURT:  All right.  Please be seated.     09:09AM
21        Welcome back, ladies and gentlemen of the jury.  We'll   09:09AM
22        continue on with the cross-examination of the witness by   09:09AM
23        Mr. Martin.  You may proceed, Mr. Martin.                09:09AM
24                    MR. MARTIN:  Thank you, Your Honor.  Good     09:09AM
25        morning, ladies and gentlemen of the jury.               09:09AM
```

*Cross - Khamvongsa*

```
1              THE JURY:  Morning.                         09:09AM

2    BY MR. MARTIN: (CONTINUING)                           09:09AM

3        Q.   Morning, Agent Khamvongsa.                   09:09AM

4        A.   Good morning, sir.                           09:09AM

5        Q.   Turn this on, so be everybody could hear me.  I've  09:09AM

6    been known to be very quiet.                          09:10AM

7              THE COURT:  Well, you have a country accent or  09:10AM

8    something like that, right?  Oklahoma.  It's kind of a nice  09:10AM

9    accent there.                                         09:10AM

10             MR. MARTIN:  Well, thank you, Your Honor.   09:10AM

11   BY MR. MARTIN: (CONTINUING)                           09:10AM

12       Q.   Agent Khamvongsa, I don't know if we'll need this,  09:10AM

13   but I'm going to give it to you just in case.  That's the  09:10AM

14   indictment, okay?                                     09:10AM

15       A.   Yes, sir.                                    09:10AM

16       Q.   Now, yesterday, Agent, we were testify -- you were  09:10AM

17   testifying about all these corporations.  Do you recall that  09:10AM

18   testimony, sir?                                       09:10AM

19       A.   Yes.                                         09:10AM

20       Q.   Okay.  And that -- that was of interest in your  09:10AM

21   investigation.  Would you agree with that, sir?       09:10AM

22       A.   It was a big -- sorry, I think I misunderstood you.  09:10AM

23   Big?                                                  09:10AM

24       Q.   That -- I want to make sure my microphone is on.  It  09:10AM

25   looks like it is.  That was of interest to your investigation;  09:10AM
```

*Cross - Khamvongsa*

```
 1   is that accurate?                                          09:11AM

 2        A.   Oh, interest?  Yes.                              09:11AM

 3        Q.   Okay.  And one of the things that was of interest to   09:11AM

 4   your investigation was the fact that we don't really know who   09:11AM

 5   the true owner is, or at least you didn't really know who the   09:11AM

 6   true owner was.  Would you agree with that, sir?           09:11AM

 7        A.   Who the true owner of the 30 Vanuatu companies?   09:11AM

 8        Q.   Well, of the aircraft.                           09:11AM

 9        A.   Of the aircraft?  Oh, yeah.  We know who the owners   09:11AM

10   are.                                                       09:11AM

11        Q.   Okay.  How about of the companies, was that a concern   09:11AM

12   to you?                                                    09:11AM

13        A.   In regards to this case --                       09:11AM

14        Q.   Yes.                                             09:11AM

15        A.   -- the companies do play a role in this case.    09:11AM

16        Q.   Okay.  So I'm going to show you what's been      09:11AM

17   previously -- and we'll verify that before I put it up, but   09:11AM

18   I'm going to show you what's been previously identified as   09:11AM

19   Government's Exhibit 752-54, sir.  I'm hoping Ms. McConwell is   09:11AM

20   ahead of me, which she is most of the time.  So she'll...   09:12AM

21             THE CLERK:  Thank you.  One moment.              09:12AM

22   BY MR. MARTIN: (CONTINUING)                                09:12AM

23        Q.   Sir, do you see what's been put on the screen as   09:12AM

24   Government's Exhibit 752-54, previously admitted into      09:12AM

25   evidence?                                                  09:12AM
```

```
1      A.   Yes.                                              09:12AM

2      Q.   Do you recognize that as a record that is kept in the    09:12AM

3   regular course of business by the Federal Aviation          09:12AM

4   Administration, sir?                                         09:12AM

5      A.   Yes.                                              09:12AM

6      Q.   Okay.  And that is an aircraft registration        09:12AM

7   application.  Would you agree with that, sir?               09:12AM

8      A.   Yes, sir.                                         09:13AM

9      Q.   Okay.  And it indicates that the owner in this     09:13AM

10  instance is Whirlwide Helicopters, Inc.; correct?           09:13AM

11     A.   The owner -- what's --                            09:13AM

12     Q.   The name of the applicant, let's put it that way.  09:13AM

13     A.   The applicant, what was listed here, yes.          09:13AM

14     Q.   Okay.  If we could -- and it gets a little -- before   09:13AM

15  I move it, it gives an address, right?                      09:13AM

16     A.   In Guam, yes.                                     09:13AM

17     Q.   Right, it gives an address and the address is in   09:13AM

18  Guam?                                                       09:13AM

19     A.   Mm-hmm.                                           09:13AM

20     Q.   Correct?  And if we go on down, we see that the    09:13AM

21  president of that company, whose address is in Guam, is Jon D.   09:13AM

22  Walker, president.  You see that, sir?                      09:13AM

23     A.   Yes, sir.                                         09:13AM

24     Q.   Okay.  And if we could go back up to the top of this   09:13AM

25  exhibit, do you see the type of registration there, sir, the   09:13AM
```

| | |
|---|---|
| 1 | line that says type of registration?  I'll -- this box right | 09:13AM |
| 2 | there.  Do you see that box, sir? | 09:14AM |
| 3 |     A.   Yes, sir. | 09:14AM |
| 4 |     Q.   Okay.  And would you agree with me, sir, that the | 09:14AM |
| 5 | type of registration is corporation? | 09:14AM |
| 6 |     A.   U.S. corporation, yes, sir. | 09:14AM |
| 7 |     Q.   Well, let's both agree, will you read the word after | 09:14AM |
| 8 | number three?  Will you just read the word? | 09:14AM |
| 9 |     A.   Yes, sir. | 09:14AM |
| 10 |     Q.   What's that word? | 09:14AM |
| 11 |     A.   Corporation. | 09:14AM |

Q.   Okay.  Now if we could go, Agent, to -- or Ms.
McConwell, I've lost my notes here, to Government's
Exhibit 752-52.  And I don't have the capability or the
knowledge, let me rephrase that, of removing that yellow
thing.

         MR. MARTIN:  Thank you, Carmen.  I appreciate it.
BY MR. MARTIN: (CONTINUING)
    Q.   Do you recognize this document as a document kept in
the normal course of business of the Federal Aviation
Administration, sir?
    A.   Yes, sir.
    Q.   And as a matter of fact, would you agree with me,
sir, that it relates to the same aircraft, sir?
    A.   Yes, sir.  The same U.S. registration, yes.

*Cross - Khamvongsa*

1    Q.   Right.  Right.  And this is a bill of sale versus an    09:15AM
2    application for registration; correct, sir?    09:15AM
3    A.   Yes, sir.    09:15AM
4    Q.   And the purchaser of this aircraft, the same one we    09:15AM
5    just saw, is Whirlwide Helicopters, Inc.; correct, sir?    09:15AM
6    A.   What's reflected here is Whirlwide Helicopters, Inc.    09:15AM
7    Q.   Right.  I mean, you don't have any reason to believe    09:15AM
8    that this form is inaccurate, do you, sir?    09:15AM
9    A.   Yes.    09:15AM
10   Q.   You have reason to believe this form is inaccurate,    09:15AM
11   that a record kept by the Federal Aviation Administration that    09:15AM
12   is in their files, I don't know -- yeah, it's there right now,    09:16AM
13   right?  It's in their files right now?    09:16AM
14   A.   Yes.    09:16AM
15   Q.   Okay, so let's talk about this form that you have    09:16AM
16   reason to believe is inaccurate.  It shows the purchaser is    09:16AM
17   Whirlwide Helicopters, Inc.; correct, sir?    09:16AM
18   A.   Yes.    09:16AM
19   Q.   And it shows that the address of this company,    09:16AM
20   Whirlwide Helicopters, Inc., is in Vanuatu; correct, sir?    09:16AM
21   A.   It says Vanuatu; yes.    09:16AM
22   Q.   Okay.  Not like the one we just saw where the same    09:16AM
23   company or the same named company had an address in Guam;    09:16AM
24   correct, sir?    09:16AM
25   A.   Same company, two different addresses; yes.    09:16AM

*Cross - Khamvongsa*

```
 1      Q.    Same named company?  We don't know if it's the same      09:16AM

 2   company, do we?                                                    09:16AM

 3      A.    It's the same -- benefits the same person.                09:16AM

 4      Q.    The same named company, sir, we don't know -- I           09:16AM

 5   didn't ask you who it benefitted.  And we're going to get in       09:16AM

 6   this discussion and be here a long time if you don't --            09:16AM

 7   because if you don't understand the question, I'll re-ask it,      09:16AM

 8   okay?                                                              09:16AM

 9      A.    Sure.                                                      09:16AM

10      Q.    The same named company, the company has the same          09:16AM

11   name?                                                              09:17AM

12      A.    Yes, the company has the same name.                       09:17AM

13      Q.    Okay.  Now let's go down to the seller.  Do you see       09:17AM

14   where it says seller on the left-hand side there?                  09:17AM

15      A.    Yes.                                                       09:17AM

16      Q.    Okay.  Do you see the name of the seller, sir?            09:17AM

17      A.    Yes.                                                       09:17AM

18      Q.    And the name of the seller is Whirlwide Helicopters,      09:17AM

19   Inc.; correct?                                                     09:17AM

20      A.    Yes.                                                       09:17AM

21      Q.    And the address of Whirlwide Helicopters, Inc. is in      09:17AM

22   Guam; correct, sir?                                                09:17AM

23      A.    Yes.                                                       09:17AM

24      Q.    Okay.  And so from this form, that is kept by the         09:17AM

25   Federal Aviation Administration, it's on their records, you        09:17AM
```

*Cross - Khamvongsa*

1    can get access to it any time you want, right?                    09:17AM

2         A.    Yes.                                                    09:17AM

3         Q.    This form shows that the company named Whirlwide        09:17AM

4    Helicopters in Guam sold this helicopter to a company named       09:18AM

5    Whirlwide Helicopters in Vanuatu; correct, sir?                   09:18AM

6         A.    That's what this document reflects; yes.               09:18AM

7         Q.    Okay.  That's what I'm asking.  I'm asking what the     09:18AM

8    document reflects.  Thank you.  And, again, the seller or         09:18AM

9    co-owner as reflected in the document, looks like Mr. Walker's    09:18AM

10   signature, doesn't it, sir?                                       09:18AM

11        A.    Yes.                                                    09:18AM

12        Q.    Okay.  Now, if we go to Government's Exhibit 752-50.    09:18AM

13   Do you recognize that, sir, as being a record kept in the         09:18AM

14   normal course of business by the Federal Aviation                09:18AM

15   Administration?                                                   09:18AM

16        A.    Yes.                                                    09:18AM

17        Q.    And this is an aircraft registration application;      09:18AM

18   correct, sir?                                                     09:19AM

19        A.    Yes.                                                    09:19AM

20        Q.    And you know from the testimony of other witnesses,    09:19AM

21   because you've been sitting in the courtroom, particularly        09:19AM

22   Wendy Hedrick, that you can't apply for a registration without    09:19AM

23   some form of bill of sale; correct, sir?                         09:19AM

24        A.    I do recall something to that effect; yes.            09:19AM

25        Q.    Okay.  So Whirlwide Helicopters, Inc. in Vanuatu       09:19AM

1  cannot apply for a registration of a helicopter without a bill    09:19AM

2  of sale.  Would you agree with that, sir?    09:19AM

3     A.   You're asking if a bill of sale needs to be required    09:19AM

4  accompanying this?    09:19AM

5     Q.   Yes.    09:19AM

6     A.   Yes.    09:19AM

7     Q.   Okay.  As a matter of fact, we just saw a bill of    09:19AM

8  sale in Government's Exhibit 752-52 that we were just talking    09:19AM

9  about, didn't we, sir?    09:19AM

10    A.   The paperwork, yes.    09:19AM

11    Q.   Yes.    09:20AM

12    A.   Yes.    09:20AM

13    Q.   That the FAA keeps in the normal course of business,    09:20AM

14 right, sir?    09:20AM

15    A.   Yes.    09:20AM

16    Q.   Okay.  And so this application for registration of    09:20AM

17 helicopter 60 -- excuse me, 9068F, it's the same helicopter;    09:20AM

18 correct, sir?    09:20AM

19    A.   I don't know if it's the same helicopter, but it's    09:20AM

20 the same U.S. registration.    09:20AM

21    Q.   The number is the same?    09:20AM

22    A.   The U.S. registration number is the same.    09:20AM

23    Q.   Right.  And I'm not going to argue with you about    09:20AM

24 that, but the number is the same; correct, sir?    09:20AM

25    A.   The U.S. registration number is the same.    09:20AM

*Cross - Khamvongsa*

1      Q.   All right.  And if we could go back to 752-52?      09:20AM

2                THE COURT:  I'm sorry, 752- --      09:20AM

3                MR. MARTIN:  52, Your Honor.      09:20AM

4                THE COURT:  52, okay.      09:20AM

5      BY MR. MARTIN:  (CONTINUING)      09:20AM

6      Q.   Sir, do you see there the aircraft serial number on      09:20AM

7      the bill of sale?      09:21AM

8      A.   Yes.      09:21AM

9      Q.   2109 -- 2109 -- getting a little dyslexic here.      09:21AM

10     2-1-0-2-9-3-S, would you agree that's the serial number      09:21AM

11     registered?      09:21AM

12     A.   Yes, sir.  It's reflected on the registration right      09:21AM

13     there.      09:21AM

14     Q.   Now, let's go back to Government's Exhibit 52, excuse      09:21AM

15     me, 752-50; do you see the aircraft serial number listed on      09:21AM

16     that bill of sale, sir?      09:21AM

17     A.   Yes.      09:21AM

18     Q.   2-1-0-2-9-3-S, do you see that, sir?      09:21AM

19     A.   Yes.  It's reflected on the document there.      09:21AM

20     Q.   And it's the same serial number that was reflected on      09:21AM

21     the bill of sale that we just looked at; correct, sir?      09:21AM

22     A.   It's the same serial number on the other document;      09:21AM

23     yes.      09:21AM

24     Q.   Okay.  And so this application for registration of      09:21AM

25     this helicopter with this company in Vanuatu, if we could go      09:22AM

*Cross - Khamvongsa*

```
 1    on down, was actually signed by Mr. Walker, right?                09:22AM

 2         A.   Yes, that's his signature, signed as president.         09:22AM

 3         Q.   Of the corporation that is located in Vanuatu?          09:22AM

 4         A.   Yes.                                                     09:22AM

 5         Q.   Okay.  Now -- I'm through with that document.           09:22AM

 6              The FAA, in their records, and we've seen them           09:22AM

 7    throughout this trial, have every transaction for the             09:22AM

 8    registration -- the bill of sale and registration of every        09:22AM

 9    helicopter that we are talking about in this indictment; isn't    09:22AM

10    that true, sir?                                                   09:22AM

11         A.   The FAA has that information; yes.                      09:22AM

12         Q.   Okay.  And so it's not like it's hidden from anyone,    09:22AM

13    is it, sir?                                                       09:23AM

14         A.   It is hidden.                                           09:23AM

15         Q.   The FAA registration information is hidden?             09:23AM

16         A.   The --                                                  09:23AM

17         Q.   The FAA information we just went over is hidden, sir?   09:23AM

18         A.   The information is incorrect on there, sir.             09:23AM

19         Q.   No, my question -- you misunderstood my question.      09:23AM

20    And I'm sorry, so I'll repeat it.  The FAA information that we     09:23AM

21    just saw that is on their records is hidden; is that true,        09:23AM

22    sir?                                                              09:23AM

23         A.   The information reported to the FAA is hidden.          09:23AM

24         Q.   So you're telling me that what we just saw, 752-52,    09:23AM

25    nobody can have access to?                                        09:23AM
```

1    A.   Oh, no, everybody can have access to it, but the    09:23AM
2    information is in- -- reported to the FAA incorrectly.    09:23AM
3    Q.   I didn't ask you anything about the correctness of    09:23AM
4    the information, did I, sir?    09:23AM
5    A.   No, but you asked --    09:23AM
6    Q.   Did you ask -- did I ask you anything about the    09:23AM
7    information, the incorrectness of any of that information,    09:23AM
8    sir?    09:23AM
9    A.   Sir, as you --    09:23AM
10   Q.   Did I ask you anything about the incorrectness of    09:24AM
11   that information, sir?    09:24AM
12   A.   It sounded like it to me.    09:24AM
13   Q.   It sounded like it to you?  If you misunderstand me,    09:24AM
14   sir, you can ask me to rephrase the question.  Did I use the    09:24AM
15   word *incorrect* in any of my questions other than the one I    09:24AM
16   just asked?    09:24AM
17   A.   No, but you asked if it was available and so with    09:24AM
18   that... there is the inference of correctness.    09:24AM
19   Q.   Oh, there is an inference of correctness?  The fact    09:24AM
20   that a document is available draws with it the inference of    09:24AM
21   correctness?    09:24AM
22   A.   Yeah, it does.  In the U.S. government, yes, it does,    09:24AM
23   because everything is signed and certified --    09:24AM
24   Q.   I didn't ask you to give me a narrative, sir.  I    09:24AM
25   asked you one question.  It was a simple yes or no.  Did you    09:24AM

*Cross - Khamvongsa*

```
 1   understand that?                                            09:24AM

 2        A.   I understand that question, yes, sir.             09:24AM

 3        Q.   Okay.  So... let's go to what has previously been 09:24AM

 4   marked -- marked and introduced as Government's Exhibit 366-4. 09:25AM

 5             THE CLERK:  One moment, please.                   09:25AM

 6             (Pause.)                                          09:25AM

 7   BY MR. MARTIN: (CONTINUING)                                 09:25AM

 8        Q.   Do you see that document, sir?                    09:25AM

 9        A.   Yes, sir.                                         09:25AM

10        Q.   This document has previously been introduced in this 09:25AM

11   case.  Can we blow it up just a little bit?  Maybe center it. 09:26AM

12   There we go.                                                09:26AM

13             This document is relating to the FAA registry;   09:26AM

14   correct, sir?                                               09:26AM

15        A.   Yes, sir.                                         09:26AM

16        Q.   And as a matter of fact, it deals with a helicopter 09:26AM

17   that has been assigned an N-number, N1DQ.  Do you see that, 09:26AM

18   sir?                                                        09:26AM

19        A.   Yes, sir.                                         09:26AM

20        Q.   I put a little deal there.                        09:26AM

21        A.   Thank you.                                        09:26AM

22        Q.   Okay.  And it actually has a serial number, doesn't 09:26AM

23   it, sir?                                                    09:26AM

24        A.   It has a serial number.  Recorded serial number, yes. 09:26AM

25        Q.   Okay.  And that is an aircraft that is registered 09:26AM
```

*Cross - Khamvongsa*

1    that says the registered owner right over here, registered          09:27AM

2    owner, is a company called Evan's Air, Inc.  Do you see that          09:27AM

3    sir?          09:27AM

4        A.   Yes, sir.          09:27AM

5        Q.   And the country is Vanuatu, isn't it, sir?          09:27AM

6        A.   What's listed there is Vanuatu.  You're correct, sir.          09:27AM

7        Q.   And this is the FAA registry, this is a document that          09:27AM

8    the federal government has at their disposal at any time,          09:27AM

9    right, sir?          09:27AM

10       A.   Yes.          09:27AM

11       Q.   And as a matter of fact, Evan's Air is on this list,          09:27AM

12   is it not, sir?          09:27AM

13       A.   It's on that document -- or 829, yes, sir.          09:27AM

14       Q.   Right.  Am I pointing at it?  Can you see?          09:27AM

15       A.   No.  Yes, sir, it's right there.          09:27AM

16       Q.   Okay.          09:27AM

17       A.   Thank you.          09:27AM

18       Q.   And it's listed as a registration as a corporation;          09:27AM

19   correct, sir?  Do you see that?          09:28AM

20       A.   It's identified as a registered owner on this          09:28AM

21   document -- as a corporation, yes.          09:28AM

22       Q.   Yeah.          09:28AM

23       A.   Yes.          09:28AM

24       Q.   So we have a -- if we could take it up just a little          09:28AM

25   further.  Perfect.  So we have -- an N-number aircraft,          09:28AM

1   registered as a corporation, under a corporation name Evan   09:28AM

2   Air, Inc., the country is Vanuatu; correct?   09:28AM

3       A.   The country is Vanuatu; yes.   09:28AM

4       Q.   One of the names of the corporations on Government's   09:28AM

5   Exhibit 829; correct, sir?   09:28AM

6       A.   Yes.   09:28AM

7       Q.   And that helicopter that is identified in the FAA   09:28AM

8   registry, this document, has value, doesn't it, sir?   09:29AM

9       A.   Absolutely.   09:29AM

10      Q.   And it is -- registered owner is a Vanuatu   09:29AM

11  corporation; correct, sir?   09:29AM

12      A.   It's what's reflected on here; yes.   09:29AM

13      Q.   Okay, if we could go to -- I think on the same   09:29AM

14  exhibit, if we could go down, there is another, and I   09:29AM

15  apologize, Carmen, could we take my yellow stickies off.   09:29AM

16  Thank you.  Another FAA document; correct, sir?   09:29AM

17      A.   Yes, sir.   09:29AM

18      Q.   And this one deals with, and I can point it out if I   09:29AM

19  need to, a helicopter with N-number N1042N.  Do you see that,   09:29AM

20  sir?   09:29AM

21      A.   Yes.   09:29AM

22      Q.   And it has a serial number.  Do you see that, sir?   09:30AM

23      A.   Yes.   09:30AM

24      Q.   Okay.  And this one, the registered owner at the FAA   09:30AM

25  is Jan's Helicopter Services, Inc.; correct, sir?   09:30AM

*Cross - Khamvongsa*

```
 1      A.    The purported owner is Jan's Helicopter Service, Inc.    09:30AM

 2      Q.    The owner that the FAA has on their registry is Jan's    09:30AM

 3  Helicopter Services, Inc; correct, sir?                            09:30AM

 4      A.    What's literally on here is Jan's Helicopter Service,    09:30AM

 5  Inc., yes.                                                         09:30AM

 6      Q.    Okay.  And the country is Vanuatu; correct, sir?         09:30AM

 7      A.    Yes.                                                     09:30AM

 8      Q.    And the type of registration is corporation; correct,   09:30AM

 9  sir?                                                               09:30AM

10      A.    Type of registration, corporation; yes.                 09:30AM

11      Q.    And I'll bring this back over there.                     09:30AM

12      A.    Thank you, sir.                                          09:30AM

13      Q.    Jan's helicopter is on this list, is it not, sir?       09:30AM

14      A.    Yes, right here.                                         09:30AM

15      Q.    Okay.                                                    09:30AM

16            THE COURT:  I'm sorry, Mr. Martin, I have to take        09:30AM

17  an urgent call, so let's --                                       09:31AM

18            MR. MARTIN:  Sorry, Your Honor.                          09:31AM

19            THE COURT:  No, that's okay.  It's not your              09:31AM

20  fault.  I just got a message.  So 20 minutes, ladies and          09:31AM

21  gentlemen of the jury.  We'll be right back, keep an open         09:31AM

22  mind.  We'll come right back.                                     09:31AM

23            (Jury out at 9:31 a.m.)                                  09:31AM

24            (Recess taken at 9:35 a.m.)                              09:35AM

25            (Back on the record at 10:19 a.m.)                       10:19AM
```

*Cross - Khamvongsa*

|  |  |  |
|---|---|---|
| 1 | THE COURT:  We're back on the record.  All | 10:19AM |
| 2 | Counsels are present, and let's go ahead and continue.  I | 10:19AM |
| 3 | apologize for that.  I had to take that call.  Call in the | 10:19AM |
| 4 | jury. | 10:19AM |
| 5 | Mr. Martin, I apologize for cutting you up -- | 10:19AM |
| 6 | cutting your examination there. | 10:19AM |
| 7 | MR. MARTIN:  No apology needed, Your Honor. | 10:19AM |
| 8 | (Pause.) | 10:19AM |
| 9 | THE COURT:  Is our computer still messed up? | 10:19AM |
| 10 | Carm? | 10:19AM |
| 11 | (Discussion with clerk.) | 10:19AM |
| 12 | (Jury in at 10:20 a.m.) | 10:20AM |
| 13 | THE COURT:  Please be seated, ladies and | 10:21AM |
| 14 | gentlemen of the jury.  Thank you for your patience, and we'll | 10:21AM |
| 15 | go ahead and allow Mr. Martin to continue on with his | 10:21AM |
| 16 | cross-examination. | 10:21AM |
| 17 | MR. MARTIN:  Thank you, Your Honor.  I believe we | 10:21AM |
| 18 | had up on the monitor Government's Exhibit 366-4, the bottom. | 10:21AM |
| 19 | There is two FAA registrations, if we could pull that back up. | 10:21AM |
| 20 | The bottom of the page, I think it was Jan's we were on, | 10:22AM |
| 21 | because that's Evan's Air. | 10:22AM |
| 22 | BY MR. MARTIN: (CONTINUING) | 10:22AM |
| 23 | Q.   Agent, you remember we were talking about Jan's | 10:22AM |
| 24 | Helicopter Services? | 10:22AM |
| 25 | A.   I remember we were talking about this FAA registry, | 10:22AM |

*Cross - Khamvongsa*

1    but I don't remember the discussion before the break.    10:22AM

2        Q.   Well, just for recollection purposes, this is the    10:22AM

3    second one on that list.  Do you recall that, sir?    10:22AM

4        A.   Yes.    10:22AM

5        Q.   Okay.  And it has an N-number.  It has a serial    10:22AM

6    number.  It says it's a corporation.  The name of the    10:22AM

7    corporation is Jan's Helicopter, Inc.  The country is Vanuatu.    10:22AM

8    Do you agree with that, sir?    10:22AM

9        A.   Yes, that's what's purported on there; yes.    10:22AM

10       Q.   And I think we went through this, and we found that    10:22AM

11   Jan's Helicopter Services, Inc. is on this list, right here?    10:22AM

12       A.   It's at the bottom of this list; yes.    10:22AM

13       Q.   This is Government's 829, right, sir?    10:22AM

14       A.   Yes, sir.    10:22AM

15       Q.   And consistent with your prior testimony, you'll    10:22AM

16   agree with me, won't you, sir, that a helicopter -- that    10:23AM

17   helicopter is an asset?    10:23AM

18       A.   Consistent with my prior testimony?    10:23AM

19       Q.   Well, you testified earlier that the other one was an    10:23AM

20   asset so I'll ask a different question.  That helicopter is an    10:23AM

21   asset, isn't it, sir?    10:23AM

22       A.   The helicopter is an asset to an entity or a person.    10:23AM

23       Q.   It's an asset, isn't it, sir?    10:23AM

24       A.   Yes.    10:23AM

25       Q.   Okay.  If we could go to Government's Exhibit 366-5.    10:23AM

*Cross - Khamvongsa*

1   Do you see that, sir?                                          10:23AM

2       A.   Yes.                                                  10:23AM

3       Q.   And would you agree with me, sir, this is the FAA     10:23AM

4   registry and the records that are kept in the normal course of 10:23AM

5   business of the FAA, sir?                                      10:23AM

6       A.   As it's record with the FAA; yes.                     10:23AM

7       Q.   Okay.  Kept in the normal course of business?         10:24AM

8       A.   Yes.                                                  10:24AM

9       Q.   Okay.                                                 10:24AM

10      A.   It's available online.                                10:24AM

11      Q.   And it relates to helicopter N105FM.  Would you agree 10:24AM

12  with that, sir?                                                10:24AM

13      A.   N105FM is reflected on this document; yes, sir.       10:24AM

14      Q.   It has a serial number; correct?                      10:24AM

15      A.   Yes, sir.                                             10:24AM

16      Q.   It's registered as a corporation; correct?           10:24AM

17      A.   Yes, sir.                                             10:24AM

18      Q.   The name of the corporation as registered is Hampton  10:24AM

19  Helicopters, Inc.; correct, sir?                               10:24AM

20      A.   It's purported to be Hampton Helicopters, Inc.; yes,  10:24AM

21  sir.                                                           10:24AM

22      Q.   No, it's not purported.  It actually says *Hampton    10:24AM

23  Helicopters Inc.*; correct, sir?                               10:24AM

24      A.   It's -- yes.                                          10:24AM

25      Q.   Okay.  And the country is Vanuatu; correct, sir?      10:24AM

1    A.   Yes.                                                    10:24AM

2    Q.   And, again, I'm going to show you what's been           10:24AM

3    previously used as Government's Exhibit 829; is Hampton      10:25AM

4    Helicopters, Inc. on this list, sir?                         10:25AM

5    A.   Yes.                                                    10:25AM

6    Q.   Right there where I'm pointing my finger?              10:25AM

7    A.   It's right there, sir.  Yes.                            10:25AM

8    Q.   Okay.  And is this helicopter N105FM an asset, sir?     10:25AM

9    A.   It's an asset.                                          10:25AM

10   Q.   Okay.  If we could go to the next one.  Do you see,     10:25AM

11   sir, what's up on the monitor now, which is Government's     10:25AM

12   Exhibit 366-, I believe it's 5, at the bottom of the page.   10:25AM

13   Would you agree with me, sir, that that is a record kept in  10:25AM

14   the regular course of business of the FAA?                   10:26AM

15   A.   Yes.                                                    10:26AM

16   Q.   And that it relates to helicopter N1156X, that's the    10:26AM

17   registration?                                                10:26AM

18   A.   It's reflected as the U.S. registration for N1156X;     10:26AM

19   yes.                                                         10:26AM

20   Q.   And it has a serial number; correct?                    10:26AM

21   A.   Yes.                                                    10:26AM

22   Q.   And the registration is a corporation; correct?         10:26AM

23   A.   A U.S. corporation; yes.                                10:26AM

24   Q.   That doesn't say "U.S. corporation," it says            10:26AM

25   "corporation," doesn't it, sir?                              10:26AM

*Cross - Khamvongsa*

```
 1      A.   It's a corporation as reflected on what's here, it's          10:26AM

 2   an FAA registry, and it's reflected as a -- it's a corporation        10:26AM

 3   with the U.S., otherwise it would say "non-citizen                    10:26AM

 4   corporation" or something to that effect.                            10:26AM

 5      Q.   Does it say "individual" on there, sir?                       10:26AM

 6      A.   It says "corporation," sir.                                   10:26AM

 7      Q.   Okay.  And the letters "U period, S period" aren't on         10:26AM

 8   that document, are they, sir?                                        10:26AM

 9      A.   It's a U.S. corporation -- no, it's literally not on          10:26AM

10   that document; you're correct.                                       10:26AM

11      Q.   I'm asking you about this document.  If you don't             10:27AM

12   understand the document I'm talking to you about, please             10:27AM

13   interrupt me, and I'll make sure we're on the same page.  I am       10:27AM

14   talking to you about this document, nothing else.  Okay?            10:27AM

15      A.   Yes, sir.                                                     10:27AM

16      Q.   Okay.  And when I bring up another document, I'm             10:27AM

17   talking to you about that document and nothing else.  Okay?         10:27AM

18      A.   All right.  So you just want me to focus on what I          10:27AM

19   see specifically on this document, yes, sir.                        10:27AM

20      Q.   Correct.                                                     10:27AM

21      A.   Yes, sir.                                                     10:27AM

22      Q.   Very good.  Very good.  That's -- this is the FAA           10:27AM

23   registry, a business record kept by them in the normal course      10:27AM

24   of business; correct?                                               10:27AM

25      A.   Yes.                                                         10:27AM
```

*Cross - Khamvongsa*

1    Q.   And their document reflects that the word type of      10:27AM

2  registration says "corporation"; correct, sir?                 10:27AM

3    A.   Corporation; yes.                                        10:27AM

4    Q.   And the name of the corporation is Walker Helicopter,    10:27AM

5  Inc.; correct, sir?                                             10:27AM

6    A.   Walker Helicopter, Inc. is identified on this            10:27AM

7  document; yes.                                                  10:27AM

8    Q.   And the country is Vanuatu; correct, sir?                10:27AM

9    A.   Vanuatu is the country identified on this document;      10:27AM

10 yes.                                                            10:27AM

11   Q.   And is Walker Helicopter, Inc. on Government's           10:27AM

12 Exhibit 829, sir?                                               10:28AM

13   A.   Yes, sir.  Right where your finger is, sir.              10:28AM

14   Q.   Okay.  And is this helicopter an asset, sir?             10:28AM

15   A.   An asset for Hansen Helicopters; yes.                    10:28AM

16   Q.   Did I ask you anything about Hansen Helicopters, sir?    10:28AM

17   A.   You asked if it's an asset; yes.                         10:28AM

18   Q.   Did I ask you anything about Hansen Helicopters, sir?    10:28AM

19   A.   This case is about Hansen Helicopters --                 10:28AM

20   Q.   Did I ask you anything about Hansen Helicopters?  Is     10:28AM

21 that a question you're having difficulty understanding?         10:28AM

22   A.   No, sir.                                                 10:28AM

23   Q.   Okay.  Now, can you answer the question?  Did I ask      10:28AM

24 you anything about Hansen Helicopters?                          10:29AM

25   A.   No, sir.                                                 10:29AM

*Cross - Khamvongsa*

1    Q.   Okay.  Now, let's try that again.  Is that helicopter    10:29AM

2  an asset?                                                        10:29AM

3    A.   It's an asset.                                           10:29AM

4    Q.   And as a matter of fact, the FAA says the registered    10:29AM

5  owner is Walker Helicopters, Inc., doesn't it, sir?             10:29AM

6    A.   Actually, the person who registered this says it        10:29AM

7  belongs to Walker Helicopters, Inc.                             10:29AM

8    Q.   Actually, my question was, sir, the FAA registry says   10:29AM

9  that the registered owner is Walker's Helicopters, Inc.; isn't  10:29AM

10  that what the registry says, sir?                              10:29AM

11    A.   Yes, that's what the registry says.                     10:29AM

12    Q.   Okay.  Thank you.  If we could go to, I believe the     10:29AM

13  next one is Government's Exhibit 366-6.  Do you see that       10:29AM

14  document, sir?                                                 10:29AM

15    A.   Yes, sir.                                               10:29AM

16    Q.   Is that a record that is kept in the normal course of   10:30AM

17  business of the FAA, known as the FAA registry?                10:30AM

18    A.   FAA registry, yes.                                      10:30AM

19    Q.   And is this particular document dealing with aircraft   10:30AM

20  number N126BC?                                                 10:30AM

21    A.   It's -- it's U.S. registration number N126BC.           10:30AM

22    Q.   All right.  It has a serial number, doesn't it, sir?    10:30AM

23    A.   It has a serial number, yes.                            10:30AM

24    Q.   And it's registered as a corporation, correct, sir?     10:30AM

25  That's what it says?                                           10:30AM

```
 1        A.    Yes.                                               10:30AM

 2        Q.    And the corporation is called Bill's Air Services, 10:30AM

 3   Inc.; correct; sir?                                           10:30AM

 4        A.    Bill's Air Service, Inc. is the -- is identified   10:30AM

 5   there in the name; yes.                                       10:30AM

 6        Q.    And it's also identified as the registered owner;  10:30AM

 7   correct, sir?                                                 10:30AM

 8        A.    It's listed under the registered owner; yes.       10:30AM

 9        Q.    Okay.  And it's -- Vanuatu is the country; correct 10:30AM

10   sir?                                                          10:30AM

11        A.    Vanuatu company -- or Vanuatu is the country listed 10:30AM

12   on the document; yes.                                         10:30AM

13        Q.    All right, sir.  And I have in my hand Government's 10:31AM

14   Exhibit 829; is Bill's Air Services identified on that?       10:31AM

15        A.    Yes, where your finger is.                         10:31AM

16        Q.    Okay.  And this helicopter is an asset; correct, sir? 10:31AM

17        A.    It's an asset.                                     10:31AM

18        Q.    All right.  If we could go to the bottom of that   10:31AM

19   page.  Do you see the document now on the page, sir?          10:31AM

20        A.    Yes, sir.                                          10:31AM

21        Q.    And would you agree with me, sir, that this is a   10:31AM

22   document from the federal aviation registry kept in the normal 10:31AM

23   course of business?                                           10:31AM

24        A.    This is -- yes.                                    10:31AM

25        Q.    And would you agree with me, sir, that it deals with 10:31AM
```

1    an aircraft with the registration number N129BC?                10:32AM

2         A.    It deals with the U.S. registration number N129BC.    10:32AM

3         Q.    Has a serial number; correct, sir?                    10:32AM

4         A.    Yes, sir.                                             10:32AM

5         Q.    Registered as a corporation; correct, sir?           10:32AM

6         A.    Corporation; yes, sir.                                10:32AM

7         Q.    The name is of the corporation is Spotters, Inc.;     10:32AM

8    correct, sir?                                                    10:32AM

9         A.    Spotters, Inc. is listed there; yes, sir.            10:32AM

10        Q.    And it's listed there as the registered owner;        10:32AM

11   correct, sir?                                                    10:32AM

12        A.    It's underneath registered owner; yes, sir.          10:32AM

13        Q.    And the country is Vanuatu; correct, sir?            10:32AM

14        A.    The country identified there is Vanuatu; yes, sir.   10:32AM

15        Q.    And I'm again going to show you Government's          10:32AM

16   Exhibit 829.  Do you see Spotters, Inc. on Government's          10:32AM

17   Exhibit 829, sir?                                                10:32AM

18        A.    Spotters, Inc. is right where your finger is at.     10:32AM

19        Q.    Okay.  And that helicopter is an asset; correct, sir? 10:33AM

20        A.    The helicopter, it would be an asset; yes.           10:33AM

21        Q.    All right, sir.  If we could go to 366-7.  Do you see 10:33AM

22   that document, sir?                                              10:33AM

23        A.    Yes, sir.                                             10:33AM

24        Q.    Would you agree that it is from the FAA registry and  10:33AM

25   record kept in the normal course of business?                   10:33AM

*Cross - Khamvongsa*

1    A.    Yes.                                                    10:33AM

2    Q.    Would you agree, sir, that this entry in the registry  10:33AM

3  deals with the registration number aircraft N153EH?            10:33AM

4    A.    U.S. registration number N153EH; yes.                  10:33AM

5    Q.    All right, sir.  That aircraft also has a serial        10:33AM

6  number; correct, sir?                                           10:33AM

7    A.    Yes, sir.                                               10:33AM

8    Q.    And the name of the registered owner in the registry   10:33AM

9  is Tuna Copters; correct, sir?                                  10:34AM

10   A.    Tuna Copters is identified there; yes.                  10:34AM

11   Q.    And the country is Vanuatu; correct, sir?               10:34AM

12   A.    Vanuatu is listed on that document; yes.                10:34AM

13   Q.    I'm going to show you again Government's Exhibit 829,   10:34AM

14 sir.  Is Tuna Copters on that list?                             10:34AM

15   A.    Yes, right where your finger is pointing.               10:34AM

16   Q.    Okay.  And is that helicopter, that aircraft, an       10:34AM

17 asset, sir?                                                     10:34AM

18   A.    That helicopter would be an asset; yes.                 10:34AM

19   Q.    If we could go to the next -- same page.  Do you see   10:34AM

20 that document, sir?                                             10:35AM

21   A.    Yes.                                                    10:35AM

22   Q.    Is that a record kept in the normal course of          10:35AM

23 business with the FAA registry?                                 10:35AM

24   A.    Yes.                                                    10:35AM

25   Q.    And does this document deal with a helicopter with     10:35AM

*Cross - Khamvongsa*

```
 1   registration number -- an aircraft with registration number      10:35AM
 2   N190M?                                                            10:35AM
 3        A.    Regarding U.S. registration number N190M.              10:35AM
 4        Q.    Okay, so you're agreeing with me?                      10:35AM
 5        A.    Yes, sir.                                              10:35AM
 6        Q.    It has a serial number; correct, sir?                  10:35AM
 7        A.    There is a serial number reflected; yes.               10:35AM
 8        Q.    And the registered owner listed on the FAA registry    10:35AM
 9   is Jan's Helicopter Services, Inc.; correct, sir?                 10:35AM
10        A.    Jan's Helicopter Service, Inc. is identified on this;  10:35AM
11   yes.                                                              10:35AM
12        Q.    And this is a Vanuatu corporation or Vanuatu country,  10:35AM
13   that's what it says?                                              10:35AM
14        A.    That's what it says, Vanuatu.                          10:35AM
15        Q.    Right.  And I could bring the board back up there,     10:35AM
16   but you remember already testifying about Jan's Helicopter        10:35AM
17   being on this board, sir?                                         10:36AM
18        A.    Yes, sir.                                              10:36AM
19        Q.    Okay.  And you'll agree with me, won't you, sir, that  10:36AM
20   that helicopter is an asset; correct?                             10:36AM
21        A.    The helicopter is an asset.                            10:36AM
22        Q.    Okay.  If we could go to the next one, which is        10:36AM
23   Government's Exhibit 3006, dash, I believe it's 8.  Do you see    10:36AM
24   that document, sir?                                               10:36AM
25        A.    Yes.                                                   10:36AM
```

*Cross - Khamvongsa*

1    Q.   Would you agree with me, sir, that this is a document    10:36AM

2  kept in the normal course of business relating to the FAA    10:36AM

3  registry by the FAA?    10:36AM

4    A.   Yes.    10:36AM

5    Q.   And would you agree with me, sir, that this document    10:36AM

6  kept by the FAA relates to the registration N192PB?    10:36AM

7    A.   Yes.    10:36AM

8    Q.   Okay.  And it has a serial number, doesn't it, sir?    10:37AM

9    A.   Yes.    10:37AM

10    Q.   And the registered owner on the FAA document is    10:37AM

11  Micronesian Aviation Corporation, Inc.  Do you see that?    10:37AM

12    A.   Yes.    10:37AM

13    Q.   And the country is, I believe that says North    10:37AM

14  Marianas, sir?    10:37AM

15    A.   Yes.    10:37AM

16    Q.   Okay.  I've got Government's 829 here.  Do you see    10:37AM

17  that company on this chart, sir?    10:37AM

18    A.   I do not.    10:37AM

19    Q.   Okay.  But that aircraft is an asset; would you agree    10:37AM

20  with me, sir?    10:37AM

21    A.   It's an asset, yes.    10:37AM

22    Q.   All right, sir.  If we could go to the next one.  Do    10:37AM

23  you see the record in front of you there, sir?    10:38AM

24    A.   Yes.    10:38AM

25    Q.   Would you agree with me, sir, that that is a record    10:38AM

1   from the registry of the federal aviation authority that's

2   kept in a normal course of business?

3       A.   Yes.

4       Q.   Would you agree, sir, that it deals with helicopter

5   registered number N26892?

6       A.   Yes, that's N26892, U.S. registration number, that's

7   correct.

8       Q.   Has a serial number; correct, sir?

9       A.   There is a serial number identified there; yes.

10      Q.   The registration says it's a corporation; correct,

11  sir?

12      A.   Corporation identified there; yes.

13      Q.   It says the registered owner is Williams -- Wilma's

14  Flight Services, Inc.; correct, sir?

15      A.   Wilma's Flight Services, Inc. is identified on this

16  page; yes.

17      Q.   All right.  It says the country is Vanuatu, sir;

18  correct?

19      A.   The country is Vanuatu; yes.

20      Q.   And is Wilma's Flight Services -- my thumb is there,

21  is Wilma's Flight Services on this document, sir?

22      A.   It's right by your thumb, sir.

23      Q.   Okay.  And would you agree with me, sir, that Wilma's

24  -- excuse me, would you agree with me, sir, that that

25  helicopter is an asset?

1     A.    I'll agree that the helicopter is an asset.          10:39AM

2     Q.    If we could go to the next one, please.  Would you   10:39AM

3  agree, sir, that this -- the document we're looking at is the  10:40AM

4  registry of the FAA document kept by the Federal Aviation      10:40AM

5  Administration in the normal course of business?               10:40AM

6     A.    Yes, yes.                                             10:40AM

7     Q.    And that it deals with U.S. registration number N271M 10:40AM

8  aircraft?                                                      10:40AM

9     A.    Yes.                                                  10:40AM

10    Q.    That it has a serial number?                          10:40AM

11    A.    Yes.                                                  10:40AM

12    Q.    The registered owner reflected on the record is Jan's 10:40AM

13  Helicopters, Inc.; correct?                                   10:40AM

14    A.    Jan's Helicopter Service, Inc. is on this document;   10:40AM

15  yes.                                                          10:40AM

16    Q.    Vanuatu corporation or Vanuatu country?               10:40AM

17    A.    Vanuatu is identified on this document; yes.          10:40AM

18    Q.    And we've talked about Jan's before, haven't we, sir, 10:40AM

19  on this document, on 829?                                     10:40AM

20    A.    Jan's is on 829; yes.                                 10:40AM

21    Q.    Okay.  And that is -- that aircraft identified there  10:40AM

22  is an asset, wouldn't you agree, sir?                         10:41AM

23    A.    The aircraft is an asset, yes.                        10:41AM

24    Q.    If we can go to the next one.  Again, this is a       10:41AM

25  document kept in the normal course of business on the FAA     10:41AM

*Cross - Khamvongsa*

1    registry, sir?                                                    10:41AM

2        A.   Yes.                                                     10:41AM

3        Q.   Relates to registration number N2949P; would you        10:41AM

4    agree with that, sir?                                             10:41AM

5        A.   U.S. registration number N2949P is reflected on this    10:41AM

6    document; yes.                                                    10:41AM

7        Q.   So you're agreeing with me?                             10:41AM

8        A.   Yes, yes.                                                10:41AM

9        Q.   Okay.  It has a serial number; correct?                 10:41AM

10        A.   It has a serial number; yes.                            10:41AM

11        Q.   And it's listed as a corporation; correct?             10:41AM

12        A.   Corporation is identified; yes.                         10:41AM

13        Q.   And the name of that corporation as a registered       10:41AM

14    owner is Heli Fish, Inc.; correct?                               10:41AM

15        A.   Heli Fish, Inc. is on this document; yes.              10:41AM

16        Q.   And the country is Vanuatu?                            10:41AM

17        A.   The country identified is Vanuatu; yes.                10:42AM

18        Q.   And would you agree with me, sir, that Heli Fish,      10:42AM

19    Inc. is on Government's Exhibit 829?                             10:42AM

20        A.   Yes.                                                    10:42AM

21        Q.   Okay.  And this document, excuse me, I'll rephrase.    10:42AM

22    The aircraft identified in the registry as November 2949P, is    10:42AM

23    an asset, would you agree, sir?                                  10:42AM

24        A.   The aircraft itself would be an asset; yes.            10:42AM

25        Q.   Next one, please.  Again, this is the FAA registry,    10:42AM

*Cross - Khamvongsa*

1    something that is kept in the normal corpus[sic] of business;    10:42AM

2    correct, sir?    10:42AM

3        A.    Yes.    10:42AM

4        Q.    And this document in particular is referring to an    10:42AM

5    aircraft with registration number N336HH; correct, sir?    10:43AM

6        A.    N336HH, yes, it's identified there where you pointed;    10:43AM

7    yes.    10:43AM

8        Q.    It has a serial number?    10:43AM

9        A.    Yes, there is a serial number there; yes.    10:43AM

10        Q.    Registration is a corporation?    10:43AM

11        A.    There is a registration of a corporation there; yes.    10:43AM

12        Q.    Shows, according to the FAA records, that the    10:43AM

13    registered owner is Foxtrot Air, Inc.; correct, sir?    10:43AM

14        A.    Foxtrot Air, Inc. is identified on this document;    10:43AM

15    yes.    10:43AM

16        Q.    As the registered owner?    10:43AM

17        A.    Underneath registered owner; yes.    10:43AM

18        Q.    Right.  And that's what the FAA documents show.  And    10:43AM

19    the country is Vanuatu; correct, sir?    10:43AM

20        A.    Vanuatu is identified on this document; yes.    10:43AM

21        Q.    And is Foxtrot Air, Inc. on this document, sir?  If I    10:43AM

22    need to bring it over there, I will.    10:43AM

23        A.    Could you bring it over, please?  I just want to    10:44AM

24    confirm.    10:44AM

25        Q.    Sure.    10:44AM

1    A.    My apologies.                                          10:44AM

2    Q.    No, that's fine.  I don't want to --                   10:44AM

3    A.    Yes.  Right where your finger is, yes, sir.            10:44AM

4    Q.    And that aircraft is an asset; correct, sir?           10:44AM

5    A.    The aircraft is an asset.                              10:44AM

6    Q.    If we could go to the next one.  Record kept in the    10:44AM

7    normal course of business of the FAA, again, sir; correct?   10:44AM

8    A.    Yes, sir.                                              10:44AM

9    Q.    And this deals with aircraft registered number         10:44AM

10   N336SP; correct, sir?                                        10:44AM

11   A.    U.S. registration number N336SP is identified here;    10:44AM

12   yes, sir.                                                    10:44AM

13   Q.    Has a serial number?                                   10:44AM

14   A.    Serial number is reflected there where you pointed it  10:44AM

15   out; yes.                                                    10:44AM

16   Q.    It's a corporation, it's registered as a corporation?  10:44AM

17   A.    A corporation is identified on this document.          10:44AM

18   Q.    The registered owner, according to the FAA registry,   10:45AM

19   is Alpha Air, Inc.; correct?  Is?                            10:45AM

20   A.    Alpha Air, Inc. is identified on this document.        10:45AM

21   Q.    And the location of that registered owner is Vanuatu,  10:45AM

22   as the country; correct, sir?                                10:45AM

23   A.    Vanuatu is identified on this document; yes.           10:45AM

24   Q.    As the country; correct, sir?                          10:45AM

25   A.    Yes.                                                   10:45AM

*Cross - Khamvongsa*

        Q.   Okay.  And is Alpha Air, Inc. on this document?        10:45AM

        A.   Could you bring it over just --                        10:45AM

        Q.   Absolutely.                                            10:45AM

        A.   -- to confirm.  Thank you.                             10:45AM

        Q.   I need the exercise.                                   10:45AM

        A.   Alpha -- there is a different spelling in the name.    10:45AM

        Q.   Okay.  What's the --                                   10:45AM

        A.   The difference is how they spelled Alpha.  You have    10:45AM

A-L-F-A versus the A-L-P-H-A.                                        10:45AM

        Q.   Okay.  All right.  And you'll agree with me, will you  10:45AM

not, sir, that this aircraft that's been identified in the FAA      10:45AM

registry is an asset; correct, sir?                                 10:46AM

        A.   This helicopter is an asset.                           10:46AM

        Q.   All right.  And -- well... my technological skills     10:46AM

aren't that good.  There we go.  All right.  Another document       10:46AM

kept in the normal course of business of the Federal Aviation       10:46AM

Administration; correct, sir?                                       10:46AM

        A.   Yes.                                                   10:46AM

        Q.   And this document relates to an aircraft identified    10:46AM

as N369BK; correct, sir?                                            10:46AM

        A.   U.S. registration number N369BK is identified here;    10:46AM

yes, sir.                                                           10:46AM

        Q.   It's got a serial number, correct, sir?               10:46AM

        A.   A serial number is identified on this document; yes.   10:46AM

        Q.   It's identified as a type of registration as a        10:46AM

*Cross - Khamvongsa*

 1    corporation; correct, sir?                                    10:46AM

 2        A.   A corporation is identified on this document; yes.   10:46AM

 3        Q.   And the FAA records reflect that the registered owner 10:46AM

 4    is a company called Charlie Air, Inc.; correct, sir?          10:46AM

 5        A.   Charlie Air, Inc. is on this document; yes.          10:46AM

 6        Q.   And the country listed for the address of Charlie Air 10:46AM

 7    Inc. is Vanuatu; correct, sir?                                10:47AM

 8        A.   Vanuatu is the country; yes.                         10:47AM

 9        Q.   And is Charlie Air, Inc. listed on Government's       10:47AM

10    Exhibit 0829?                                                 10:47AM

11        A.   Yes, right where your finger is located, sir.  Thank  10:47AM

12    you.                                                          10:47AM

13        Q.   And is this helicopter an asset, sir?                10:47AM

14        A.   This helicopter is an asset.                         10:47AM

15        Q.   Okay.  If we could go to the next one.  Again, this   10:47AM

16    document kept in the normal course of business of the Federal 10:47AM

17    Aviation Administration; correct?                             10:47AM

18        A.   This document; yes.                                  10:47AM

19        Q.   And it relates to an aircraft with registration      10:47AM

20    number N369V; correct, sir?                                   10:47AM

21        A.   U.S. registration number N369V is identified there;  10:47AM

22    yes.                                                          10:47AM

23        Q.   Has a serial number, right, sir?                     10:47AM

24        A.   There is a serial number; yes.                       10:48AM

25        Q.   And the registration is a corporation?               10:48AM

*Cross - Khamvongsa*

1    A.    Corporation is identified.    10:48AM

2    Q.    And the corporation listed as a registered owner is    10:48AM

3  Foxtrot Air, Inc.; correct, sir?    10:48AM

4    A.    Foxtrot Air, Inc. is identified on this document.    10:48AM

5    Q.    And the location of Foxtrot Air, Inc. is indicated to    10:48AM

6  be the country of Vanuatu; correct, sir?    10:48AM

7    A.    Vanuatu is identified on this document.    10:48AM

8    Q.    And I do need to bring this chart up there, or are    10:48AM

9  you familiar with Foxtrot Air, Inc.?    10:48AM

10    A.    I'll save you the journey over here, and Foxtrot Air    10:48AM

11  is identified on that document.    10:48AM

12    Q.    And the document I'm referring to is Government's    10:48AM

13  Exhibit 829; correct, sir?    10:48AM

14    A.    Yes, sir.    10:48AM

15    Q.    All right.  And you'll agree with me, sir, that this    10:48AM

16  helicopter reflected in the FAA registry is an asset; correct,    10:48AM

17  sir?    10:48AM

18    A.    N369V, the helicopter; yes, it's an asset.    10:48AM

19    Q.    All right, sir.  Again, I think we're at G-366-12.    10:48AM

20  This is a record kept in the normal course of business of the    10:49AM

21  Federal Aviation Administration; correct, sir?    10:49AM

22    A.    Yes.    10:49AM

23    Q.    And it deals with an aircraft identified by    10:49AM

24  registration number is N369MV; correct, sir?    10:49AM

25    A.    Yes.  It's U.S. registration number N369MV.    10:49AM

*Cross - Khamvongsa*

Q.   It has a serial number; correct, sir?                    10:49AM

A.   Yes.                                                     10:49AM

Q.   The type of registration is a corporation.  Would you    10:49AM
agree, sir?                                                   10:49AM

A.   Corporation is identified on here; yes.                  10:49AM

Q.   The registered owner, according to the FAA registry,     10:49AM
is Heli Fish, Inc.; correct, sir?                            10:49AM

A.   Heli Fish is identified on this document.                10:49AM

Q.   And the country of Heli Fish, Inc. is identified as      10:49AM
Vanuatu; correct, sir?                                        10:49AM

A.   Vanuatu is identified; yes.                              10:49AM

Q.   And I could bring this over there, or I think you've     10:49AM
already identified it, but Heli Fish, Inc. is on Government's 10:49AM
Exhibit 829, isn't it, sir?                                   10:50AM

A.   Yes, sir.  Thank you.                                    10:50AM

Q.   Okay.  And would you agree with me that the              10:50AM
helicopter identified in this document is an asset?           10:50AM

A.   The helicopter itself is an asset.                       10:50AM

Q.   All right.  If we can go to the next one.  Again,        10:50AM
from the FAA registry, a record kept in the normal course of 10:50AM
business.  Would you agree with that, sir?                    10:50AM

A.   Yes.                                                     10:50AM

Q.   And this listing from the FAA registry relates to an     10:50AM
aircraft register under N369PF.  Would you agree with that,   10:50AM
sir?                                                          10:50AM

---

*Cross - Khamvongsa*

1    A.    N369PF is identified here; yes.                    10:50AM

2    Q.    It has a serial number; correct, sir?              10:50AM

3    A.    Yes.                                               10:50AM

4    Q.    The type of registration is corporation; correct,  10:50AM

5  sir?                                                        10:50AM

6    A.    Type of registration says corporation on the      10:50AM

7  document; yes.                                              10:50AM

8    Q.    And the registered owner, according to the FAA     10:50AM

9  registry, is Bill's Air Service, Inc.; correct, sir?       10:50AM

10   A.    Bill's Air Service, Inc. is identified here; yes.  10:51AM

11   Q.    And the country for Bill's Air Service, Inc. is    10:51AM

12  Vanuatu; correct, sir?                                     10:51AM

13   A.    Vanuatu is identified here; yes.                   10:51AM

14   Q.    Okay.  And are you familiar with Bill's Air, Inc.? 10:51AM

15  Is it on this list?                                        10:51AM

16   A.    This -- could you bring it over?                   10:51AM

17   Q.    Sure.                                              10:51AM

18   A.    Yes, where your finger is located.  Thank you.     10:51AM

19   Q.    Okay.  And this aircraft, you'll agree with me, sir, 10:51AM

20  is -- pardon me, is an asset; correct?                     10:51AM

21   A.    This aircraft is an asset.                         10:51AM

22   Q.    If we could go to the next one.  Government's      10:51AM

23  Exhibit 366-13.  Do you see that document, sir?            10:51AM

24   A.    Yes.                                               10:51AM

25   Q.    Would you agree with me, sir, that this is a record 10:51AM

*Cross - Khamvongsa*

1    kept in the normal course of business by the Federal Aviation                10:51AM

2    Administration?                                                               10:52AM

3        A.   Yes.                                                                 10:52AM

4        Q.   And that it deals specifically with an aircraft                      10:52AM

5    identified by registration number is N40490?                                  10:52AM

6        A.   That is a U.S. registration number N40490; yes,                      10:52AM

7    identified here; yes.                                                         10:52AM

8        Q.   Okay.  Has a serial number?                                          10:52AM

9        A.   Yes.                                                                 10:52AM

10       Q.   Type of registration, corporation; correct, sir?                     10:52AM

11       A.   Corporation is identified here; yes.                                 10:52AM

12       Q.   The registered owner according to the FAA registry is                10:52AM

13   Wilma's Flight Services, Inc.; correct, sir?                                   10:52AM

14       A.   Wilma's Flight Services, Inc. is identified here;                     10:52AM

15   yes.                                                                          10:52AM

16       Q.   And the country for Wilma's Flight Services Inc. is                   10:52AM

17   Vanuatu; correct, sir?                                                         10:52AM

18       A.   Vanuatu is identified on this document; yes.                         10:52AM

19       Q.   And if I need to, I'm happy to bring this over there,                 10:52AM

20   but would you agree with me that Wilma's Flight Services is on                 10:52AM

21   this document, Government's 829?                                               10:52AM

22       A.   Yes.                                                                 10:52AM

23       Q.   You're agreeing with me?                                             10:52AM

24       A.   Yes.                                                                 10:52AM

25       Q.   Okay.  All right.  And are you agreeing -- would you                  10:52AM

*Cross - Khamvongsa*

1    agree with me, sir, that the aircraft identified as          10:52AM

2    November 40490 is an asset?                                  10:53AM

3        A.   N40490 is an asset.                                 10:53AM

4        Q.   Okay, sir.  If we could go to the next one.  Again, 10:53AM

5    sir, this is from the federal aviation registry, a document  10:53AM

6    kept in the normal course of business.  Do you recognize that 10:53AM

7    document, sir?                                               10:53AM

8        A.   Yes.                                                10:53AM

9        Q.   And would you agree, sir, that this document relates 10:53AM

10   to an aircraft identified as N4206S?                         10:53AM

11       A.   U.S. registration number N4206S is identified here; 10:53AM

12   yes.                                                         10:53AM

13       Q.   And it has a serial number; correct, sir?           10:53AM

14       A.   Yes, there is a serial number.                      10:53AM

15       Q.   And the type of registration is a corporation.  Would 10:53AM

16   you agree with that, sir?                                    10:53AM

17       A.   Corporation is identified on this document; yes.    10:53AM

18       Q.   And the registered owner, according to the FAA's    10:53AM

19   records, is a company called Tuna Copter, Inc.; correct, sir? 10:54AM

20       A.   Tuna Copters, Inc. is identified on this document.  10:54AM

21       Q.   As a registered owner?                              10:54AM

22       A.   Underneath registered owner; yes.                   10:54AM

23       Q.   Okay.  And the country for Tuna Copters, Inc. is    10:54AM

24   Vanuatu; correct, sir?                                       10:54AM

25       A.   Vanuatu is identified on this document.             10:54AM

1      Q.    And I've got in my hand Government's Exhibit 829.  Do          10:54AM

2   you need to look at this document to verify that Tuna Copters,          10:54AM

3   Inc. is on there or not?                                                10:54AM

4      A.    Tuna Copters is on there.                                      10:54AM

5      Q.    Okay.  All right.  And would you agree with me, sir,           10:54AM

6   that the helicopter identified in this document, the                    10:54AM

7   government's exhibit, is an asset?                                      10:54AM

8      A.    The helicopter itself is an asset.                             10:54AM

9      Q.    If we could go to the next one.  Again, we have a              10:54AM

10  document from the FAA registry kept in the normal course of             10:54AM

11  business; correct, sir?                                                 10:55AM

12     A.    Yes.                                                           10:55AM

13     Q.    And this particular document specifically deals with           10:55AM

14  the helicopter identified as N4250N.  Would you agree with              10:55AM

15  that sir?                                                               10:55AM

16     A.    U.S. registered N4250N is on here; yes.                        10:55AM

17     Q.    Has a serial number; correct, sir?                             10:55AM

18     A.    Yes, serial number.                                            10:55AM

19     Q.    Type of registration is a corporation, right, sir?            10:55AM

20     A.    Corporation is on here; yes.                                   10:55AM

21     Q.    Okay.  And the registered owner, according to the FAA          10:55AM

22  registry, is Bean Bag Helicopters, Inc.; correct, sir?                  10:55AM

23     A.    Bean Bag Helicopters, Inc. is identified on this              10:55AM

24  document; yes.                                                          10:55AM

25     Q.    And the country for Bean Bag Helicopters, Inc. is             10:55AM

1   Vanuatu; correct, sir?                              10:55AM

2       A.   Vanuatu is identified on this document; yes.   10:55AM

3       Q.   And, again, I have Government's Exhibit 829 is Bean   10:55AM

4   Bag on this document, sir?                          10:55AM

5       A.   Bean Bag is identified on that document, it's -- it's   10:55AM

6   the wholly -- Bean Bag wholly owns the 30 subsidiaries   10:55AM

7   underneath it.                                      10:56AM

8       Q.   All right.  And would you agree with me, sir, that   10:56AM

9   the aircraft identified on this exhibit as N4250N is an asset?   10:56AM

10      A.   The helicopter N4250N is an asset.           10:56AM

11      Q.   All right, sir.  Would you agree to the next one.  Do   10:56AM

12  you see that document, sir?                         10:56AM

13      A.   Yes.                                         10:56AM

14      Q.   Do you recognize it as a document that's kept in the   10:56AM

15  normal course of business by the Federal Aviation   10:56AM

16  Administration as a business record?                10:56AM

17      A.   Yes.                                         10:56AM

18      Q.   And do you recognize, sir, that that document deals   10:56AM

19  specifically with an aircraft with a registration number   10:56AM

20  N444GJ?                                             10:56AM

21      A.   U.S. registration number N444GJ is reflected on this   10:56AM

22  document.                                           10:56AM

23      Q.   And it shows that the aircraft has a serial number;   10:56AM

24  correct, sir?                                       10:57AM

25      A.   There is a serial number on this document; yes.   10:57AM

1    Q.   Also shows that the type of registration for this
2  aircraft is corporation; correct, sir?
3    A.   Corporation is identified on this document.
4    Q.   And the FAA registry, the official business records
5  of the FAA, show that the registered owner of this aircraft is
6  a company named Foxtrot Air, Inc.; correct, sir?
7    A.   Foxtrot Air, Inc. is identified on this document.
8    Q.   All right.  And the country for Foxtrot Air, Inc. is
9  Vanuatu; correct, sir?
10   A.   Vanuatu is identified on this document.
11   Q.   All right.  And, again, I have Government's Exhibit
12 G-829, do you need to look at this document?  Do I need to
13 bring it to you to see if it has Foxtrot Air, Inc. on it, or
14 do you remember?
15   A.   No, thank you.  I do recall it being on that
16 document.  Thank you.
17   Q.   Okay.  And would you agree with me, sir, that the
18 aircraft identified in the FAA registry as November 444GJ is
19 an asset?
20   A.   This -- yeah, N444GJ is an asset.
21   Q.   All right, sir.  If we could go to the next one.
22 Again, this is the FAA registry, a record kept in the normal
23 course of business.  Would you agree with that, sir?
24   A.   Yes.
25   Q.   And, specifically, this page of the registry deals

*Cross - Khamvongsa*

1    with an aircraft identified as N454S; correct, sir?    10:58AM

2        A.    That is U.S. registration number N454S; you're    10:58AM

3    correct, sir.    10:58AM

4        Q.    And it has a serial number; correct?    10:58AM

5        A.    A serial number is identified on this document; yes.    10:58AM

6        Q.    And the type of registration reflected in the FAA    10:58AM

7    registry is a corporation; correct, sir?    10:58AM

8        A.    Corporation is reflected on this document; yes.    10:58AM

9        Q.    And the FAA registry, under registered owner,    10:58AM

10    reflects that the registered owner is Dave's Helicopter    10:59AM

11    Services, Inc.; correct, sir?    10:59AM

12        A.    Dave's Helicopter Service, Inc. is identified on this    10:59AM

13    document; yes.    10:59AM

14        Q.    As the registered owner?    10:59AM

15        A.    It's underneath registered owner.    10:59AM

16        Q.    Okay.  And the country identified for Dave's    10:59AM

17    Helicopter, Inc. -- Dave's Helicopter Services, Inc., is    10:59AM

18    Vanuatu; correct, sir?    10:59AM

19        A.    Vanuatu is identified on here; yes.    10:59AM

20        Q.    All right.  And is Dave's Helicopter Services, Inc.    10:59AM

21    on Government's Exhibit 829?  I can bring it over there if you    10:59AM

22    need to see it?    10:59AM

23        A.    I do recall Dave's Helicopter being on there, sir.    10:59AM

24        Q.    Okay.  All right.  And would you agree with me, sir,    10:59AM

25    that the aircraft identified in the FAA registry as N454S, is    10:59AM

*Cross - Khamvongsa*

1    an asset?                                                    10:59AM

2        A.    N4 -- U.S.-registered number N454S, is a asset -- is    10:59AM

3    an asset.  Excuse me.                                        11:00AM

4        Q.    Okay.  Do you see the next document that we've pulled    11:00AM

5    up, sir?                                                     11:00AM

6        A.    Yes, sir.                                          11:00AM

7        Q.    And would you agree with me, sir, that this is a    11:00AM

8    document kept in the normal course of business of the Federal    11:00AM

9    Aviation Administration as a business record?                11:00AM

10       A.    It's a business record; yes.                       11:00AM

11       Q.    Of the Federal Aviation Administration?            11:00AM

12       A.    Yes.                                               11:00AM

13       Q.    And, specifically, this document relates to an     11:00AM

14   aircraft that has been identified as N45777?                 11:00AM

15       A.    U.S. registration number N45777 is on here; yes.   11:00AM

16       Q.    Okay.  It has a serial number, doesn't it, sir?    11:00AM

17       A.    There is a serial number; yes.                     11:00AM

18       Q.    And the type of registration reflects corporation;    11:00AM

19   correct, sir?                                                11:00AM

20       A.    Corporation is identified; yes.                    11:00AM

21       Q.    And according to the FAA records, the registered   11:00AM

22   owner is Charlie Air, Inc; correct, sir?                     11:00AM

23       A.    Charlie Air, Inc. is identified on this document;    11:01AM

24   yes.                                                         11:01AM

25       Q.    Okay.  And the corporation that's identified as    11:01AM

1   Charlie Air, Inc. reflects the country is Vanuatu; correct,          11:01AM

2   sir?                                                                 11:01AM

3       A.   Vanuatu is identified on this document; yes.               11:01AM

4       Q.   Okay.  And I've got in my hand, and I'm happy to           11:01AM

5   bring it up there if you need to see it, Government's Exhibit        11:01AM

6   G-829, is Charlie Air, Inc. on this document?                       11:01AM

7       A.   Could you bring it --                                      11:01AM

8       Q.   Sure.  Absolutely.                                         11:01AM

9       A.   Yes; yes.  Charlie Air, Inc.; yes, sir.                    11:01AM

10      Q.   Okay.  And would you agree with me, sir, the aircraft      11:01AM

11  that is identified on this document as N45777, is an asset?         11:01AM

12      A.   U.S. registration N45777 is an -- is an asset.            11:01AM

13      Q.   Okay.  If we go to the next one.  Do you recognize         11:01AM

14  the document?  You are now looking at Government's                   11:02AM

15  Exhibit 366-16, is a business record kept by the Federal            11:02AM

16  Aviation Administration in the normal course of business, sir?      11:02AM

17      A.   Yes.                                                        11:02AM

18      Q.   Do you recognize, sir, that this specifically, this        11:02AM

19  document specifically, deals within an aircraft identified as       11:02AM

20  N500LA?                                                              11:02AM

21      A.   N500LA is identified on this document; yes.                11:02AM

22      Q.   And this aircraft has a registration -- excuse me,         11:02AM

23  has a serial number; correct, sir?                                   11:02AM

24      A.   There is a serial number on this document.                 11:02AM

25      Q.   And the type of registration reflected in the FAA          11:02AM

*Cross - Khamvongsa*

1    registry is a corporation; correct, sir?                    11:02AM

2         A.   Corporation is reflected on this document.        11:02AM

3         Q.   And, again, according to the FAA registry, the    11:02AM

4    registered owner of the aircraft listed above is Chance Air, 11:02AM

5    Inc.; correct, sir?                                         11:02AM

6         A.   Chance Air, Inc. is reflected on this document; yes. 11:02AM

7         Q.   And the country for Chance Air, Inc. is reflected as 11:03AM

8    Vanuatu; correct, sir?                                      11:03AM

9         A.   Vanuatu is reflected on this document; yes.       11:03AM

10        Q.   All right.  And I have Government's Exhibit 829.  Is 11:03AM

11   Chance Air, Inc. on this, or I do need to bring it up there 11:03AM

12   for you to verify?                                          11:03AM

13        A.   I recall Chance Air being on that; yes.           11:03AM

14        Q.   Okay.  Would you agree with me, sir, that the     11:03AM

15   helicopter that has been identified as N500LA on this       11:03AM

16   document, is an asset?                                      11:03AM

17        A.   N500LA is an asset.                               11:03AM

18        Q.   Okay.  We could go to the next one.  Again, sir, do 11:03AM

19   you see this is the second half of Government's Exhibit      11:03AM

20   366-16, do you see a record reflected that is a business     11:03AM

21   record kept in the normal course of business of the Federal 11:03AM

22   Aviation Administration?                                    11:03AM

23        A.   Yes.                                              11:03AM

24        Q.   And, specifically, this document, would you agree, 11:03AM

25   sir, relates to an aircraft identified as N500PA?           11:04AM

1    A.   U.S. registration number N500PA; yes.                    11:04AM

2    Q.   And this aircraft has a serial number; correct, sir?     11:04AM

3    A.   There is a serial number reflected there; yes.           11:04AM

4    Q.   And the type of registration for this aircraft, would    11:04AM

5 you agree, sir, is a corporation?                                11:04AM

6    A.   Corporation is identified on this; yes.                  11:04AM

7    Q.   All right.  And the -- according to the FAA registry,    11:04AM

8 the registered owner is Alpha Air, Inc.; correct, sir?           11:04AM

9    A.   Alpha Air, Inc. is identified on this document; yes.     11:04AM

10   Q.   According to the FAA registry is the registered          11:04AM

11 owner; correct, sir?                                            11:04AM

12   A.   It's identified underneath "registered owner," yes.      11:04AM

13   Q.   Okay.  And the country for Alpha Air, Inc. is            11:04AM

14 Vanuatu; correct, sir?                                          11:04AM

15   A.   Vanuatu is identified on this document; yes.             11:04AM

16   Q.   Okay.  And, again, I have Government's Exhibit 829, I    11:05AM

17 can bring it up there.  Is Alpha Air, Inc. on here?             11:05AM

18   A.   There is a discrepancy in the name between the two.      11:05AM

19   Q.   The spelling?                                            11:05AM

20   A.   The spelling.                                            11:05AM

21   Q.   Yeah.  Is the -- and we talked about that earlier,       11:05AM

22 right?                                                          11:05AM

23   A.   We just identified that the PH, there is A-L-P-H-A       11:05AM

24 spelled here on the registry, and it's A-L-F-A identified       11:05AM

25 there.                                                          11:05AM

*Cross - Khamvongsa*

 1     Q.   Right here on this very first listing, right, sir?     11:05AM

 2     A.   Correct.     11:05AM

 3     Q.   Okay.  And you agree with me, sir, that the aircraft     11:05AM

 4   identified in the FAA registry is N500PA, is an asset;     11:05AM

 5   correct, sir?     11:05AM

 6     A.   The U.S.-registered number N500PA is an asset.     11:05AM

 7     Q.   If we can go to the next one.  I believe this is     11:05AM

 8   Government's Exhibit No. G-366-17.  Do you recognize this     11:05AM

 9   document reflected on the monitor, sir, as a record kept in     11:06AM

10   the normal course of business of the Federal Aviation     11:06AM

11   Administration?     11:06AM

12     A.   Yes.     11:06AM

13     Q.   And do you specifically see, sir, that this document     11:06AM

14   reflect -- relates to an aircraft with a registration number     11:06AM

15   of N501FC?     11:06AM

16     A.   U.S. registration number N501FC is on here; yes.     11:06AM

17     Q.   Okay.  You'll agree that this aircraft has a serial     11:06AM

18   number; correct, sir?     11:06AM

19     A.   Yes.     11:06AM

20     Q.   And the type of registration is corporation; correct,     11:06AM

21   sir?     11:06AM

22     A.   Corporation is identified; yes.     11:06AM

23     Q.   And the registered owner is Eddie Air, Inc.  Would     11:06AM

24   you agree with that, sir?     11:06AM

25     A.   Eddie Air, Inc. is identified on this document; yes.     11:06AM

1    Q.   And the location identified on the FAA registry for    11:06AM

2  Eddie Air, Inc. is the country of Vanuatu; correct, sir?    11:06AM

3    A.   Vanuatu is identified here; yes.    11:07AM

4    Q.   And let me ask you, sir, Government's Exhibit 829,    11:07AM

5  which I have in my hand, is Eddie Air, Inc. on that?  And I'm    11:07AM

6  happy to bring it over there if you need to see it?    11:07AM

7    A.   Yes, Eddie Air, Inc. is on there.    11:07AM

8    Q.   Okay.  And would you agree with me, sir, that the    11:07AM

9  aircraft identified on this document as N501FC is an asset?    11:07AM

10   A.   N501FC is an asset.    11:07AM

11   Q.   All right, sir.  We can go to the next one.  This is    11:07AM

12  the second half of Government's Exhibit 366-17.  Again, a    11:07AM

13  record of the Federal Aviation Administration kept in the    11:07AM

14  normal course of business; correct, sir?    11:07AM

15   A.   Yes.    11:07AM

16   Q.   And specifically this document deals with an aircraft    11:07AM

17  listed in the registry as November 501SU; correct, sir?    11:08AM

18   A.   U.S. registration number N501SU is identified here;    11:08AM

19  yes.    11:08AM

20   Q.   And it has a serial number, you agree with that, sir?    11:08AM

21   A.   Serial number is reflected on here; yes.    11:08AM

22   Q.   And the type of registration is a corporation?    11:08AM

23   A.   Type of registration identified here is a    11:08AM

24  corporation; yes.    11:08AM

25   Q.   And would you agree with me, sir, that the federal    11:08AM

1    aviation registry reflects the registered owner as Dave's          11:08AM

2    Helicopter Service, Inc.?                                          11:08AM

3        A.    Dave's Helicopter Service, Inc. is identified here;      11:08AM

4    yes.                                                               11:08AM

5        Q.    And the country reflected in the FAA registry for        11:08AM

6    Dave's Helicopter Service, Inc. is Vanuatu, you agree with         11:08AM

7    that, sir?                                                         11:08AM

8        A.    Vanuatu is identified here; yes.                         11:08AM

9        Q.    And I have in my hand Government's Exhibit G-829, is      11:08AM

10   Dave's Helicopter Services, Inc. on this chart?  And I'm happy     11:08AM

11   to bring it up there.                                              11:09AM

12       A.    Yes.  I mean the corporation is identified on that       11:09AM

13   chart; yes, sir.                                                   11:09AM

14       Q.    Okay.  And is that aircraft N501SU, identified on the    11:09AM

15   screen in the FAA registry, an asset?                              11:09AM

16       A.    U.S.-registered number N501SU is an asset.               11:09AM

17       Q.    All right, sir.  We can go to the next one.  Before      11:09AM

18   you on the screen is G-366-18.  Would you agree with me, sir,      11:09AM

19   that that is a record kept in the normal course of business at     11:09AM

20   the Federal Aviation Administration?                               11:09AM

21       A.    Yes.                                                     11:09AM

22       Q.    Would you agree with me, sir, that this document on      11:09AM

23   the screen specifically relates to an aircraft identified by       11:09AM

24   number N504WW?                                                     11:09AM

25       A.    U.S. registration number N504WW is reflected on this    11:09AM

*Cross - Khamvongsa*

1    document; yes.                                                    11:10AM

2         Q.    Do you agree, sir, that it has a serial number?       11:10AM

3         A.    There is a serial number; yes.                        11:10AM

4         Q.    And the registration reflected is a corporation;      11:10AM

5    correct, sir?                                                     11:10AM

6         A.    Corporation is identified on this document; yes.      11:10AM

7         Q.    And the corporation -- or excuse me, and the          11:10AM

8    registered owner, according to the FAA registry reflects the     11:10AM

9    name of H-H Helicopters Inc.; correct sir?                       11:10AM

10        A.    HH Helicopters, Inc. is identified on this document.  11:10AM

11        Q.    And HH Helicopters, Inc. is recognized from the       11:10AM

12   country of Vanuatu; correct, sir?                                 11:10AM

13        A.    Vanuatu is identified on this document.               11:10AM

14        Q.    And do you know, sir, if HH Helicopter, Inc. is on    11:10AM

15   Government's Exhibit 829?  And I'm happy to bring it over         11:11AM

16   there.                                                            11:11AM

17        A.    Yes, please.                                          11:11AM

18        Q.    Okay.                                                  11:11AM

19        A.    It's right where your finger is located.             11:11AM

20        Q.    Okay, sir.  Thank you.  Would you agree with me, sir, 11:11AM

21   that the aircraft identified as N504WW is an asset?               11:11AM

22        A.    U.S. registration number N504WW is an asset.         11:11AM

23        Q.    If we could go to the next one.  Again, from the      11:11AM

24   registry, business record FAA registry; correct, sir?            11:11AM

25        A.    Yes.                                                  11:11AM

11:11AM
11:11AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:12AM
11:13AM
11:13AM

1      Q.   And this particular document G-366-18, second part of

2    it, deals specifically with an aircraft identified by N539;

3    correct, sir?

4      A.   U.S. registration number N539 is identified on this

5    document.

6      Q.   You'll agree it has a serial number; correct, sir?

7      A.   There is a serial number.

8      Q.   Would you agree with me, sir, that the FAA registry

9    reflects the type of registration is a corporation?

10     A.   Corporation is identified; yes.

11     Q.   Would you agree with me, sir, that according to the

12   FAA registry, the registered owner is a company called Heli

13   Fish, Inc.?

14     A.   Heli Fish, Inc. is identified on this document.

15     Q.   And the location of Heli Fish, Inc. is identified in

16   the country of Vanuatu; correct, sir?

17     A.   Vanuatu is identified on this document.

18     Q.   All right.  And is Heli Fish, Inc. on Government's

19   Exhibit 829?

20     A.   Yes, it is.

21     Q.   Okay.  And let me ask you, sir, would you agree with

22   me that the aircraft that's identified as N539 on the FAA

23   registry is an asset?

24     A.   U.S. registration number N539 is an asset.

25     Q.   We could go to the next one.  Again, sir, we're at

*Cross - Khamvongsa*

1    Government's Exhibit 366-19.  This is a business record kept    11:13AM

2    in the normal course of business by the Federal Aviation    11:13AM

3    Administration; correct?    11:13AM

4         A.   Yes.    11:13AM

5         Q.   And this document specifically deals with an aircraft    11:13AM

6    identified as N577DW; correct, sir?    11:13AM

7         A.   U.S. registration N577DW is reflected here; yes.    11:13AM

8         Q.   And the FAA registry reflects that the serial number    11:13AM

9    for this aircraft is on there; correct?    11:13AM

10        A.   A serial number is reflected; yes.    11:13AM

11        Q.   And the FAA registry reflects that the type of    11:13AM

12   registration is corporation; correct, sir?    11:13AM

13        A.   Corporation is identified; yes.    11:13AM

14        Q.   And the FAA registry reflects that the registered    11:13AM

15   owner of the aircraft identified above as N577DW, is Whirlwide    11:14AM

16   Helicopters, Inc.; correct, sir?    11:14AM

17        A.   Whirlwide Helicopters, Inc. is identified here; yes.    11:14AM

18        Q.   And the location for Whirlwide Helicopter, Inc. is    11:14AM

19   identified as Vanuatu?    11:14AM

20        A.   Vanuatu is identified here; yes.    11:14AM

21        Q.   And I have in my hand, sir, Government's Exhibit 829,    11:14AM

22   do I need to bring it over there to see if Whirlwide    11:14AM

23   Helicopter, Inc. is on here?    11:14AM

24        A.   Sure.    11:14AM

25        Q.   Okay.    11:14AM

*Cross - Khamvongsa*

1    A.   Yes.  Whirlwide is reflected by your finger.      11:14AM

2    Q.   You'll agree with me, sir, that N577DW reflected in   11:14AM

3  the FAA registry is an asset; correct, sir?            11:14AM

4    A.   N577DW is an asset.                              11:15AM

5    Q.   All right, sir.  Thank you.  If we could go to the  11:15AM

6  next one.  Again, Government's Exhibit 366-19 is from the FAA  11:15AM

7  registry records kept in the normal course of business;  11:15AM

8  correct, sir?                                          11:15AM

9    A.   Yes.  Yes, sir.                                  11:15AM

10   Q.   And specifically this document that we're looking at  11:15AM

11 on the screen relates an aircraft identified by the listing  11:15AM

12 N584SD; correct, sir?                                  11:15AM

13   A.   U.S. registration number N584SD, is identified.  11:15AM

14   Q.   And the FAA registry reflects that it has a serial  11:15AM

15 number; correct, sir?                                  11:15AM

16   A.   A serial number is reflected; yes.               11:15AM

17   Q.   And the FAA registry reflects that the type of   11:15AM

18 registration for this aircraft is a corporation; correct, sir?  11:15AM

19   A.   Corporation is identified; yes.                  11:15AM

20   Q.   And according to the FAA registry the registered  11:15AM

21 owner for that aircraft is a company called Walk-Air, Inc.;  11:16AM

22 correct?                                               11:16AM

23   A.   Walk-Air, Inc. is identified here; yes.          11:16AM

24   Q.   And the country for Walk-Air, Inc. is identified as  11:16AM

25 Vanuatu; correct, sir?                                 11:16AM

*Cross - Khamvongsa*

1    A.    Vanuatu is identified on this document; yes.    11:16AM

2    Q.    And is Walk-Air, Inc. on this Government's    11:16AM

3  Exhibit 829?  I'm happy to bring it up there.    11:16AM

4    A.    Yes, please.    11:16AM

5    Q.    Sure.    11:16AM

6    A.    Walk-Air, Inc. is identified right by your finger.    11:16AM

7    Q.    Okay.  And is the aircraft identified in the FAA    11:16AM

8  registry as N584SD an asset?    11:16AM

9    A.    N584SD is an asset.    11:16AM

10    Q.    Thank you, sir.  If we could go to the next one.  I    11:17AM

11  believe we're now at Government's Exhibit 366-20.  Do you see    11:17AM

12  that, sir?    11:17AM

13    A.    Yes, sir.    11:17AM

14    Q.    Would you agree with me, sir, that this document is a    11:17AM

15  record kept in the normal course of business by the Federal    11:17AM

16  Aviation Administration?    11:17AM

17    A.    Yes, sir.    11:17AM

18    Q.    Would you agree with me, sir, that this document    11:17AM

19  specifically relates to an aircraft that's identified as    11:17AM

20  N58478?  I put a yellow mark there by it.    11:17AM

21    A.    U.S. registration number N58478 is identified; yes,    11:17AM

22  sir.    11:17AM

23    Q.    Okay.  And would you agree, sir, that the FAA    11:17AM

24  registry reflects that this aircraft has a serial number?    11:17AM

25    A.    A serial number is reflected there; yes.    11:17AM

 1     Q.   Okay.  And the FAA registry further reflects that the
 2   type of registration is corporation; correct, sir?
 3     A.   Corporation is reflected on this document; yes.
 4     Q.   And just like the document before, the FAA registry
 5   reflects that the registered owner of this aircraft is a
 6   company called Walk-Air, Inc.; correct, sir?
 7     A.   Walk-Air, Inc. is reflected on this document; yes.
 8     Q.   And the location for Walk-Air, Inc. is identified in
 9   the country of Vanuatu; correct, sir?
10     A.   The country reflected on here is Vanuatu.
11     Q.   And if I need to, I can bring it back up, but I think
12   we just did it, Walk-Air, Inc. is on this Government's
13   Exhibit 829; correct, sir?
14     A.   Yes, sir.
15     Q.   Okay.  And you'll agree with me will you not, sir,
16   that according -- that the aircraft identified as N58478, is
17   an asset?
18     A.   U.S. registration number N58478 is an asset.
19     Q.   Thank you, sir.  If we can go to the next one.  I
20   believe we're at the second portion of Government's
21   Exhibit 366-20.  On the monitor, will you agree with me, sir,
22   that the document reflected is a record kept in the normal
23   course of business of the Federal Aviation Administration?
24     A.   Yes.
25     Q.   Would you agree with me, sir, that it deals

*Cross - Khamvongsa*

1    specifically with an aircraft that's identified as N6188C?          11:19AM

2        A.   U.S. registration number N6188C is reflected.             11:19AM

3        Q.   And the federal aviation registry reflects that there     11:19AM

4    is a serial number for this aircraft; correct, sir?                11:19AM

5        A.   A serial number is identified.                            11:19AM

6        Q.   And the federal aviation registry, will you agree,        11:19AM

7    sir, reflects that this registration is a corporation;             11:19AM

8    correct?                                                           11:19AM

9        A.   Corporation is identified on this document.               11:19AM

10       Q.   And according to the FAA registry, the registered         11:19AM

11   owner of aircraft N6188C, is a corporation called Bravo Air,       11:19AM

12   Inc.; correct, sir?                                                11:20AM

13       A.   Bravo Air, Inc. is identified here; yes.                  11:20AM

14       Q.   And the location for Bravo Air, Inc. is Vanuatu;          11:20AM

15   correct, sir?                                                      11:20AM

16       A.   Vanuatu is identified.                                    11:20AM

17       Q.   And Government's Exhibit 829, is Bravo Air, Inc. on       11:20AM

18   that?  Do I need to bring it up there?  I'm happy to.              11:20AM

19       A.   No.  Bravo Air is on there.  Yes, sir.                    11:20AM

20       Q.   Right there?                                              11:20AM

21       A.   Yes, sir.                                                 11:20AM

22       Q.   Where my finger was?                                      11:20AM

23       A.   Yes.                                                      11:20AM

24       Q.   Okay.  And would you agree with me, sir, that the         11:20AM

25   aircraft identified as N6188C is an asset?                         11:20AM

*Cross - Khamvongsa*

1    A.   U.S. registration number N6188C is an asset.        11:20AM

2    Q.   Thank you, sir, we can go to the next one.  I believe   11:20AM

3  we're at Government's Exhibit 366-21, and that is a record   11:20AM

4  kept in the normal course of business by the Federal Aviation   11:21AM

5  Administration, isn't it, sir?        11:21AM

6    A.   Yes.        11:21AM

7    Q.   Known as the FAA registry; correct?        11:21AM

8    A.   Yes.        11:21AM

9    Q.   And this document specifically relates to an aircraft   11:21AM

10  identified as N6188D; correct, sir?        11:21AM

11    A.   U.S. registration number N6188D, is identified.   11:21AM

12    Q.   And according to the FAA registry, this aircraft has   11:21AM

13  a serial number; correct, sir?        11:21AM

14    A.   Yes.        11:21AM

15    Q.   And according to the FAA registry, the type of   11:21AM

16  registration is a corporation; correct, sir?        11:21AM

17    A.   Type of registry is a corporation; yes.        11:21AM

18    Q.   And the FAA registry reflects that the registered   11:21AM

19  owner is a company called Bravo Air, Inc.; correct, sir?   11:21AM

20    A.   Bravo Air, Inc. is identified.        11:21AM

21    Q.   All right.  And the location for the corporation   11:21AM

22  Bravo Air, Inc. is in the country of Vanuatu; correct, sir?   11:21AM

23    A.   Vanuatu is identified.        11:21AM

24    Q.   And, sir, this is Government's Exhibit 829.  I'm   11:21AM

25  happy to bring it up there.  Is Bravo Air, Inc. on   11:22AM

*Cross - Khamvongsa*

1    Government's Exhibit 829?                                          11:22AM

2        A.    Yes.                                                     11:22AM

3        Q.    Okay.  Would you agree with me, sir, that the           11:22AM

4    aircraft identified as N6188D is an asset?                        11:22AM

5        A.    U.S. registration number N6188D is an asset.            11:22AM

6        Q.    Thank you, sir.  We are now at Government's             11:22AM

7    Exhibit 366-21.  Would you agree with me, sir, that this is a     11:22AM

8    record kept in the normal course of business by the Federal      11:22AM

9    Aviation Administration?                                          11:22AM

10       A.    Yes.                                                    11:22AM

11       Q.    And that this document reflected on the screen          11:22AM

12   specifically relates to an aircraft identified as N6360S?         11:22AM

13       A.    U.S. registration number N6360S is identified; yes.     11:22AM

14       Q.    Okay.  And does the registry reflect that there is a    11:22AM

15   serial number for this aircraft.                                  11:22AM

16       A.    There is a serial number; yes.                          11:23AM

17       Q.    Would you agree with me, sir, that the FAA registry     11:23AM

18   reflects that the type of registration is a corporation, sir?     11:23AM

19       A.    A corporation is identified; yes.                       11:23AM

20       Q.    All right.  And according to the FFA registry, the      11:23AM

21   registered owner is a company named Oceanside Helicopters,        11:23AM

22   Inc.; correct, sir?                                               11:23AM

23       A.    Oceanside Helicopters, Inc. is identified here; yes.    11:23AM

24       Q.    Okay.  And the location for the corporation             11:23AM

25   Oceanside, Helicopter Inc. is the country of Vanuatu; correct,    11:23AM

1    sir?                                                    11:23AM

2        A.    Vanuatu is identified; yes.                   11:23AM

3        Q.    I'm going to take Government's Exhibit 829 again,  11:23AM

4    sir.  And I can bring it over there and have you look at it to  11:23AM

5    look for Oceanside Helicopters, Inc.?                   11:23AM

6        A.    Yes, please.                                  11:23AM

7        Q.    Okay.  Is Oceanside Helicopters, Inc. identified on  11:23AM

8    Government's Exhibit 829?                               11:23AM

9        A.    Yes, it's identified -- excuse me, it's identified by  11:23AM

10   your finger.                                            11:23AM

11       Q.    Okay.  And would you agree with me, sir, that the  11:24AM

12   aircraft identified as N6360S is an asset?              11:24AM

13       A.    U.S. registration number N6360S is an asset.  11:24AM

14       Q.    Thank you, sir.  If we can go to the next one.  I  11:24AM

15   believe we are at Government's Exhibit 366-22.  Do you see  11:24AM

16   that document, sir?                                     11:24AM

17       A.    Yes.                                          11:24AM

18       Q.    And would you agree with me, sir, that this is a  11:24AM

19   document kept in the normal course of business by the Federal  11:24AM

20   Aviation Administration?                                11:24AM

21       A.    Yes.                                          11:24AM

22       Q.    Would you agree with me, sir, that this document  11:24AM

23   deals specifically with an aircraft identified as N66HH?  11:24AM

24       A.    U.S. registration number N66HH is identified.  11:24AM

25       Q.    And would you agree with me, sir, that the registry  11:24AM

*Cross - Khamvongsa*

```
 1  reflects that there is a serial number for this particular    11:25AM
 2  aircraft?                                                       11:25AM
 3       A.   A serial number is identified.                       11:25AM
 4       Q.   And the FAA registry reflects that the type of       11:25AM
 5  registration is a corporation, isn't that true, sir?          11:25AM
 6       A.   Corporation is identified; yes.                      11:25AM
 7       Q.   And the FAA registry reflects that the registered    11:25AM
 8  owner for this aircraft identified as N66HH, is a company      11:25AM
 9  called Jim's Air Repair, Inc.  Would you agree, sir?           11:25AM
10       A.   Jim's Air Repair, Inc. is identified; yes.           11:25AM
11       Q.   Okay.  And the location for Jim's Air Repair, Inc.,  11:25AM
12  according to the FAA registry, is a country called Vanuatu;    11:25AM
13  correct, sir?                                                   11:25AM
14       A.   Vanuatu is identified.                               11:25AM
15       Q.   And I have in my hand or I'm picking it up right now, 11:25AM
16  Government's Exhibit G-829.  Is Jim's Air Repair on this        11:25AM
17  document?                                                       11:25AM
18       A.   Could you bring it over here, please?                11:25AM
19       Q.   Absolutely.                                          11:25AM
20       A.   Thank you, sir.  Jim's Air Repair, Inc. is identified 11:25AM
21  by your finger; yes.                                           11:26AM
22       Q.   Thank you, sir.  And would you agree with me, sir,   11:26AM
23  that the aircraft identified in the FAA registry as N66HH is   11:26AM
24  an asset?                                                       11:26AM
25       A.   N66HH is an asset.                                   11:26AM
```

*Cross - Khamvongsa*

1    Q.   Thank you, sir.  If we can go to the next one.  In

2  front of you is the second half of Government's Exhibit

3  G-366-22.  Would you agree with me, sir, that this is a

4  document kept in the normal course of business by the Federal

5  Aviation Administration?

6    A.   Yes.

7    Q.   Would you agree with me, sir, that this document

8  deals specifically with an aircraft identified as N660SL?

9    A.   U.S. registration number N660SL is identified on this

10  document.

11    Q.   And the FAA registry further reflects that this

12  aircraft has a serial number; correct, sir?

13    A.   A serial number is reflected.

14    Q.   And would you agree with me, sir, that the to FAA

15  registry reflects that the type of registration is a

16  corporation?

17    A.   Corporation is identified.

18    Q.   Okay.  And the FAA registry, would you agree, sir,

19  identifies the registered owner as a company called Tuna

20  Copter, Inc.?

21    A.   Tuna Copter, Inc. is identified.

22    Q.   And the location identified in the registry for Tuna

23  Copter, Inc. is a country of Vanuatu; correct, sir?

24    A.   Vanuatu is identified.

25    Q.   And I have in my hand Government's Exhibit 829, is

*Cross - Khamvongsa*

1    Tuna Copter, Inc. on this chart?  I'll bring it over here.    11:27AM

2        A.    Thank you, sir.  Yes, it's right by your finger, Tuna    11:27AM

3    Copter, Inc.    11:27AM

4        Q.    Okay.  And would you agree with me, sir, that the    11:27AM

5    aircraft identified in the FAA registry as N660SL is an asset?    11:28AM

6        A.    U.S. registration number N660SL is an asset.    11:28AM

7        Q.    Thank you, sir.  We're now looking at Government's    11:28AM

8    Exhibit 366-23.  Would you agree with me, sir, that this is a    11:28AM

9    record kept in the normal course of business of the Federal    11:28AM

10    Aviation Administration?    11:28AM

11        A.    Yes.    11:28AM

12        Q.    Further, that this record that we're looking at    11:28AM

13    specifically deals with an aircraft identified as N74AM?    11:28AM

14        A.    U.S. registration number N74AM is identified on this    11:28AM

15    document.    11:28AM

16        Q.    And the FAA registry further reflects that this    11:28AM

17    aircraft has a specific unique serial number; correct, sir?    11:28AM

18        A.    A serial number is reflected on this document; yes.    11:28AM

19        Q.    Okay.  And according to the registry, the type of    11:28AM

20    registration is a corporation, right, sir?    11:29AM

21        A.    Yes, corporation is identified.    11:29AM

22        Q.    And the FAA registry reflects that the registered    11:29AM

23    owner of this aircraft is a corporation called Fling Air,    11:29AM

24    Inc.; correct, sir?    11:29AM

25        A.    Fling Air, Inc. is identified on this document.    11:29AM

*Cross - Khamvongsa*

```
 1        Q.   And the location for Fling Air, Inc. is actually    11:29AM

 2   identified as Guam; correct, sir?                             11:29AM

 3        A.   Yes, Guam is identified on this document.           11:29AM

 4        Q.   All right, sir.  And is Fling Air, Inc., if you know, 11:29AM

 5   on this -- on Government's Exhibit 829, or do I need to bring  11:29AM

 6   it over there?                                                11:29AM

 7        A.   Could you bring it over, please?                    11:29AM

 8        Q.   Sure, sure.  Absolutely.                            11:29AM

 9        A.   Fling Air, Inc. doesn't appear to match up with     11:29AM

10   what's purported on this document because it's showing that   11:29AM

11   it's reflected as a Vanuatu international company --           11:29AM

12        Q.   I'm asking you, is that name on there, though?      11:30AM

13        A.   The name is on this document; yes.                  11:30AM

14        Q.   Okay.  And you'll agree with me, sir, that foreign  11:30AM

15   corporations can have businesses in the United States;        11:30AM

16   correct?                                                      11:30AM

17        A.   Are we talking about generally?                     11:30AM

18        Q.   Yes.                                                11:30AM

19        A.   Generally, foreign corporations can have businesses 11:30AM

20   in the U.S.                                                   11:30AM

21        Q.   You ever heard of Toyota?                           11:30AM

22        A.   Yes.                                                11:30AM

23        Q.   Can you buy a Toyota in the United States?          11:30AM

24        A.   Yes.                                                11:30AM

25        Q.   Mitsubishi?                                         11:30AM
```

*Cross - Khamvongsa*

```
1      A.   Yes.                                              11:30AM

2      Q.   Is that a foreign corporation?                    11:30AM

3      A.   Yes.                                              11:30AM

4      Q.   Can you buy a Mitsubishi in the United States?    11:30AM

5      A.   Yes.                                              11:30AM

6      Q.   Okay.  So Fling Air, you'll agree with me, is     11:30AM

7 identified on Government's Exhibit 829, right here where my  11:30AM

8 finger is, right?  You may not see it, but if you don't trust 11:30AM

9 me, I'll bring it back over there?                           11:30AM

10     A.   No, Fling Air is on that document, but it doesn't 11:30AM

11 necessarily match up with what's on here.                   11:31AM

12     Q.   Fling Air is on the document was my question, okay? 11:31AM

13 Is Fling Air on the document?                               11:31AM

14     A.   Fling Air is on 829; yes.                         11:31AM

15     Q.   Okay.  All right.  And it's indicated to be the   11:31AM

16 registered owner; correct, sir?                            11:31AM

17     A.    It's identified here as -- underneath registered 11:31AM

18 owner.                                                      11:31AM

19     Q.   All right.  And would you agree with me, sir, that 11:31AM

20 according to the FAA registry -- I need to rephrase that.   11:31AM

21 That the aircraft identified as N74AM, according to the FAA 11:31AM

22 registry, is an asset?                                      11:31AM

23     A.   U.S. registration number N74AM is an asset.       11:31AM

24          MR. MARTIN:  Your Honor, I don't know how long     11:31AM

25 you want me to go.                                          11:31AM
```

```
 1              THE COURT:  You still got --                    11:31AM

 2              MR. MARTIN:  I didn't know what time lunch was.  11:31AM

 3              THE COURT:  11:45 is when we start lunch.        11:31AM

 4              MR. MARTIN:  Okay.  I've got time to go then, I'm 11:31AM

 5   sorry.                                                     11:32AM

 6              THE COURT:  We have 13 minutes, now 12.         11:32AM

 7              MR. MARTIN:  Sorry, Your Honor.                 11:32AM

 8              THE COURT:  Go ahead.                           11:32AM

 9   BY MR. MARTIN: (CONTINUING)                               11:32AM

10      Q.   If we could go to the next one.  Before you, sir, is 11:32AM

11   Government's Exhibit 366-23.  Would you agree with me, sir, 11:32AM

12   that that is a record from the FAA registry kept in the normal 11:32AM

13   course of business?                                       11:32AM

14      A.   Yes.                                              11:32AM

15      Q.   Would you agree with me, sir, that document that  11:32AM

16   we're looking at on the screen specifically relates to an 11:32AM

17   aircraft identified as N755PC?                            11:32AM

18      A.   U.S. registration number N755PC is identified here. 11:32AM

19      Q.   Very good.  And would you agree, sir, that the FAA 11:32AM

20   registry reflects a serial number?                        11:32AM

21      A.   A serial number is reflected; yes.                11:32AM

22      Q.   And according to the U.S.A. -- according to the FAA 11:32AM

23   registry, the type of registration is reflected as a      11:32AM

24   corporation; correct, sir?                                11:32AM

25      A.   Corporation is identified; yes.                   11:32AM
```

*Cross - Khamvongsa*

1    Q.    And according to the FAA registry, the registered
2  owner is a company called HH Helicopters; correct, sir?
3    A.    HH Helicopters is identified; yes.
4    Q.    And the country for HH helicopters is Vanuatu;
5  correct, sir?
6    A.    Vanuatu is identified.
7    Q.    And in my hand is Government's Exhibit 829.  Do you
8  need to look at it to see whether or not HH Helicopters is on
9  this chart?
10    A.    HH Helicopters is on the chart that you're holding.
11    Q.    Okay.  And would you agree with me, sir, that the
12  aircraft identified as N755PC is an asset?
13    A.    U.S. registration number N755PC is an asset.
14    Q.    If we could go to the next one.
15         THE COURT:  Well, you're keeping us, you know,
16  alert.  The way you...
17  BY MR. MARTIN: (CONTINUING)
18    Q.    Agent Khamvongsa, before you is Government's
19  Exhibit 366-24, would you agree with me, sir, that this a
20  record kept in the normal course of business by the Federal
21  Aviation Administration?
22    A.    Yes.
23    Q.    Would you agree with me, sir, that this particular
24  document on the screen relates to an aircraft identified as
25  N805LA?

11:33AM (lines 1-14)
11:33AM (line 15)
11:34AM (lines 16-25)

*Cross - Khamvongsa*

1    A.    U.S. registration number N805LA is identified.    11:34AM

2    Q.    And the FAA registry reflects that this aircraft has    11:34AM

3    a serial number; correct, sir?    11:34AM

4    A.    A serial number is reflected.    11:34AM

5    Q.    And the FAA registry reflects that the registered    11:34AM

6    owner of this aircraft is Jim's Air Repair; correct, sir?    11:34AM

7    A.    Jim's Air Repair is identified here; yes.    11:34AM

8    Q.    And the location for Jim's Air Repair is reflected as    11:34AM

9    Vanuatu; correct, sir?    11:35AM

10    A.    Vanuatu is identified.    11:35AM

11    Q.    An according to the FAA registry, the type of    11:35AM

12    registration is a corporation, right, sir?    11:35AM

13    A.    Corporation is identified.    11:35AM

14    Q.    And I have Government's Exhibit 829.  Do you know,    11:35AM

15    sir, whether or not Jim's Air Repair is on this document, and    11:35AM

16    I'm happy to bring it over there.    11:35AM

17    A.    Yes, please.    11:35AM

18    Q.    Okay.    11:35AM

19    A.    Jim's Air Repair is identified right by your finger.    11:35AM

20    Q.    Okay, sir.  Thank you.    11:35AM

21    A.    Thank you.    11:35AM

22    Q.    And would you agree with me, sir, that the aircraft    11:35AM

23    identified in the FAA registry as N805LA is an asset?    11:35AM

24    A.    N805LA is an asset.    11:35AM

25    Q.    Thank you, sir.  Go to the next one.  Before you is    11:35AM

*Cross - Khamvongsa*

1    Government's Exhibit 366-24.  Would you agree with me, sir,    11:36AM

2    that that is a record kept in the normal course of business by    11:36AM

3    the Federal Aviation Administration?    11:36AM

4         A.   Yes.    11:36AM

5         Q.   Would you agree with me, sir, that that particular    11:36AM

6    record from the FAA registry relates to the aircraft    11:36AM

7    identified as N810M?    11:36AM

8         A.   U.S. registration number N810M is identified on this    11:36AM

9    document.    11:36AM

10        Q.   All right, sir.  Would you agree with me that the    11:36AM

11   registry reflects that this aircraft has a serial number?    11:36AM

12        A.   Yes.    11:36AM

13        Q.   Would you agree with me, sir, that the FAA registry    11:36AM

14   reflects that the type of registration for N810M is a    11:36AM

15   corporation?    11:36AM

16        A.   Corporation is identified.    11:36AM

17        Q.   All right, sir.  And according to the FAA registry,    11:36AM

18   this official record, the registered owner is Bravo Air, Inc.    11:36AM

19   Would you agree with that, sir?    11:36AM

20        A.   Bravo Air, Inc. is identified on this document.    11:36AM

21        Q.   And the location for Bravo Air, Inc. is the country    11:36AM

22   of Vanuatu.  Would you agree with that, sir?    11:37AM

23        A.   Vanuatu is identified on this document.    11:37AM

24        Q.   And on Government's Exhibit 829, do you know whether    11:37AM

25   or not Bravo Air, Inc. is on this document?    11:37AM

*Cross - Khamvongsa*

1    A.    Bravo Air, Inc. is on that document.                    11:37AM

2    Q.    Okay.  And would you agree with me, sir, that the      11:37AM

3  aircraft identified as N810M is an asset?                       11:37AM

4    A.    The U.S. registration number N810M is an asset.        11:37AM

5    Q.    Thank you, sir.  We're now looking at Government's     11:37AM

6  Exhibit 366-25.  Would you agree with me, sir, that this a      11:37AM

7  record kept in the normal course of business by the Federal    11:37AM

8  Aviation Administration?                                        11:37AM

9    A.    Yes.                                                    11:37AM

10    Q.    And that this particular document deals specifically   11:37AM

11  with an aircraft identified as N825LF?                          11:37AM

12    A.    U.S. registration N825LF is identified on this         11:38AM

13  document.                                                       11:38AM

14    Q.    And that the registry reflects that this aircraft      11:38AM

15  does have a serial number; correct, sir?                        11:38AM

16    A.    There is a serial number there; yes.                   11:38AM

17    Q.    And according to the FAA registry, the type of        11:38AM

18  registration is a corporation, right, sir?                      11:38AM

19    A.    Corporation is identified; yes.                        11:38AM

20    Q.    And would you agree that according to the registry,    11:38AM

21  the registered owner of N825LF is a company called Walk-Air,   11:38AM

22  Inc.                                                            11:38AM

23    A.    Walk-Air, Inc. is identified on this document.         11:38AM

24    Q.    And the location for Walk-Air, Inc. is the country     11:38AM

25  Vanuatu?                                                        11:38AM

*Cross - Khamvongsa*

1    A.   Vanuatu is identified on this document.                    11:38AM

2    Q.   I have, sir, Government's Exhibit 829, happy to bring      11:38AM

3 it up there, is Walk-Air, Inc. on this document, if you know?     11:38AM

4    A.   Sure.  Could you bring it up, please?                      11:38AM

5    Q.   Absolutely.                                                11:38AM

6    A.   Walk-Air, Inc. is identified by your thumb.                11:39AM

7    Q.   All right, sir.  My fingers and thumbs are getting         11:39AM

8 identified a lot.  Would you agree with me, sir, that the         11:39AM

9 aircraft identified by N825LF, is an asset?                       11:39AM

10   A.   U.S. registration number N825LF is an asset.              11:39AM

11   Q.   Thank you, sir.  We could go to the next one?             11:39AM

12              THE COURT:  You got five minutes.                    11:39AM

13              MR. MARTIN:  Thank you, Your Honor.                  11:39AM

14              THE COURT:  Okay.                                    11:39AM

15 BY MR. MARTIN: (CONTINUING)                                       11:39AM

16   Q.   Before you is the second half of G-366-25.  Again, a      11:39AM

17 document kept in the regular course of business by the Federal   11:39AM

18 Aviation Administration, sir?                                     11:39AM

19   A.   Yes.                                                       11:39AM

20   Q.   And this particular document relates specifically to      11:39AM

21 an aircraft identified as N831FG; correct?                        11:39AM

22   A.   U.S. registration number N831FG is identified on this     11:40AM

23 document.                                                         11:40AM

24   Q.   And in particular, the registry reflects that it has      11:40AM

25 a serial number, sir; correct?                                    11:40AM

```
 1        A.    A serial number is identified here.                    11:40AM

 2        Q.    And according to the registry, the type of            11:40AM

 3   registration is a corporation; correct, sir?                     11:40AM

 4        A.    A corporation is identified.                          11:40AM

 5        Q.    All right.  And the registry reflects that the        11:40AM

 6   registered owner of N831FG, is a company called Marlin Bay       11:40AM

 7   Helicopters, Inc.; correct, sir?                                 11:40AM

 8        A.    Marlin Bay Helicopters, Inc. is identified.           11:40AM

 9        Q.    And the country for Marlin Bay Helicopters, Inc. is   11:40AM

10   Vanuatu; correct, sir?                                           11:40AM

11        A.    Vanuatu is identified.                                11:40AM

12        Q.    All right, sir.  I have Government's Exhibit 829 in   11:40AM

13   my hand.  Do you know, sir, whether or not Marlin Bay           11:40AM

14   Helicopters is on this document?  I'm happy to bring it up.     11:41AM

15        A.    Yes, please.                                          11:41AM

16        Q.    Okay.                                                 11:41AM

17        A.    Marlin Bay Helicopters, Inc. is identified by your   11:41AM

18   finger.                                                          11:41AM

19        Q.    All right, sir.  And would you agree with me, sir,   11:41AM

20   that the aircraft identified in the FAA registry as N831FG is   11:41AM

21   an asset?                                                        11:41AM

22        A.    U.S. registration number N831FG is an asset.          11:41AM

23        Q.    Thank you, sir.  We could go to the next one.  We're 11:41AM

24   now looking at Government's Exhibit 366-26.  Do you see that,   11:41AM

25   sir?                                                             11:41AM
```

*Cross - Khamvongsa*

```
 1        A.    Yes, sir.                                      11:41AM

 2        Q.    And would you agree, sir, that this is a record kept  11:41AM

 3   in the normal course of business by the Federal Aviation   11:41AM

 4   Administration?                                           11:41AM

 5        A.    Yes, sir.                                      11:41AM

 6        Q.    And would you agree with me that that particular  11:41AM

 7   record of the Federal Aviation Administration deals       11:41AM

 8   specifically with an aircraft identified as N831F -- 8312F, I  11:42AM

 9   stand corrected.                                          11:42AM

10        A.    U.S. registration number N8312F is identified.  11:42AM

11        Q.    All right, sir.  And according to the registry, this  11:42AM

12   helicopter has a serial number; correct, sir?            11:42AM

13        A.    A serial number is reflected.                  11:42AM

14        Q.    And the FAA registry, would you agree with me, sir,  11:42AM

15   reflects that the registered owner for this particular   11:42AM

16   aircraft, N8312F, is a company called Rosie Air Support, Inc.;  11:42AM

17   correct?                                                 11:42AM

18        A.    Rosie Air Support, Inc. is reflected on this  11:42AM

19   document; yes.                                           11:42AM

20        Q.    All right.  And the country for the location of Rosie  11:42AM

21   Air Support, Inc. is Vanuatu; correct, sir?              11:42AM

22        A.    Vanuatu is identified here; yes.              11:42AM

23        Q.    And the type of registration for Rosie Air Support,  11:42AM

24   Inc. is corporation; correct?                            11:42AM

25        A.    Corporation is identified on this document; yes.  11:43AM
```

*Cross - Khamvongsa*

1      Q.   And if we go to Government's Exhibit 829, do you know    11:43AM

2    whether or not Rosie Air, Inc., if I'm saying that right?    11:43AM

3    Rosie Air Support, Inc. is on that document?  I could bring it    11:43AM

4    up there?    11:43AM

5      A.   Yes, please.  Rosie Air Support, Inc. is right by    11:43AM

6    your finger.    11:43AM

7      Q.   Thank you, sir.  And would you agree with me, sir,    11:43AM

8    that the aircraft identified in the registry as N8312F is an    11:43AM

9    asset?    11:43AM

10     A.   U.S. registration number N8312F is an asset.    11:43AM

11     Q.   Thank you, sir.  We're now looking at Government's    11:43AM

12   Exhibit 366-26, would you agree with me, sir, that this is a    11:43AM

13   document kept in the normal course of business by the Federal    11:44AM

14   Aviation Administration?    11:44AM

15     A.   Yes.    11:44AM

16     Q.   Would you agree with me, sir, that this particular    11:44AM

17   document deals with an aircraft identified as N8315F?    11:44AM

18     A.   U.S. registration N8351 -- 15F is identified.    11:44AM

19     Q.   And this aircraft, according to the registry, has a    11:44AM

20   serial number; correct, sir?    11:44AM

21     A.   There is a serial number.    11:44AM

22     Q.   And the type of registration according to the    11:44AM

23   registry is the corporation; correct, sir?    11:44AM

24     A.   Corporation is identified.    11:44AM

25     Q.   And according to the registry, the registered owner    11:44AM

```
 1    is a company called Rosie Air Support, Inc.; correct, sir?        11:44AM
 2         A.   Rosie Air Support, Inc. is identified.                   11:44AM
 3         Q.   And the location for Rosie Air Support, Inc. is          11:44AM
 4    Vanuatu; correct, sir?                                             11:44AM
 5         A.   Vanuatu is identified.                                   11:44AM
 6         Q.   And I believe we just did it, but I'm happy to do it     11:44AM
 7    again, Government's Exhibit 829, is Rosie Air Support, Inc. on     11:44AM
 8    the document?                                                      11:45AM
 9         A.   Rosie Air Support, Inc. is on that document.             11:45AM
10         Q.   Okay.  And you would agree with me, sir, that the       11:45AM
11    aircraft identified in the FAA registry is N8315F is an asset?     11:45AM
12         A.   U.S. registration number N8315F is an asset.            11:45AM
13         Q.   Thank you, sir.                                          11:45AM
14              THE COURT:  Is this a good time to --                    11:45AM
15              MR. MARTIN:  Sure, Your Honor.                           11:45AM
16              THE COURT:  Okay.  Good for you, Mr. Martin?             11:45AM
17              MR. MARTIN:  Yes, Your Honor.  I'm sorry.  Good          11:45AM
18    for me.                                                            11:45AM
19              THE COURT:  Okay.  Ladies and gentlemen of the          11:45AM
20    jury, we'll go ahead and take our lunch recess.  Keep an open      11:45AM
21    mind.  Do not form or express any opinion on this case until       11:45AM
22    it's submitted to you, and I will see you guys in 45 minutes.      11:45AM
23    Have a nice lunch.                                                 11:45AM
24              (Jury out at 11:45 a.m.)                                 11:45AM
25              THE COURT:  How much longer, Mr. Martin, do you          11:46AM
```

*Cross - Khamvongsa*

think?                                                              11:46AM

          MR. MARTIN:  30, 40 minutes max, Judge.                   11:46AM

          THE COURT:  Okay.  Just checking.                         11:46AM

          MS. M. MILLER:  (Laughing.)  Sorry.  Your Honor,          11:46AM

the government is willing to stipulate that the records that        11:46AM

Mr. Martin is painfully going through all say that the name of      11:46AM

the Vanuatu company is the registered owner of an aircraft.         11:46AM

          THE COURT:  Well, does he want you to stipulate?          11:46AM

          MS. M. MILLER:  I don't know, I think --                  11:46AM

          THE COURT:  Probably not because if he did --            11:46AM

          MS. M. MILLER:  Kill time.                                11:46AM

          THE COURT:  Well --                                       11:46AM

          MR. MARTIN:  I don't think trying to prove that           11:46AM

the government has failed to prove their case beyond a              11:46AM

reasonable doubt can be classified as killing time, Your           11:46AM

Honor.  I respectfully decline their stipulation.                   11:46AM

          THE COURT:  I figured that.                               11:46AM

          MS. M. MILLER:  Okay.  It was worth a try, Your           11:46AM

Honor.                                                              11:46AM

          THE COURT:  Yeah, you should have asked him               11:46AM

before.                                                             11:46AM

          MS. M. MILLER:  Yeah, well, I know.                       11:46AM

          MS. S. MILLER:  We hadn't had a break yet.                11:46AM

          MS. M. MILLER:  Yeah, I didn't want to interrupt          11:46AM

him.                                                                11:46AM

*Cross - Khamvongsa*

```
 1                    THE COURT:  I know.  But if you really wanted --    11:46AM
 2      he wasn't going to stipulate.                                     11:46AM
 3                    (Recess taken at 11:47 a.m.)                        11:47AM
 4                    (Back on the record at 12:40 p.m.)                  12:40PM
 5                    THE COURT:  Shall we call in the jury?  All         12:40PM
 6      Counsel is present.  We'll call in the jury.                      12:41PM
 7                    Ms. Miller, how long do you think will be your      12:41PM
 8      redirect?  I'm just trying to figure out if we're going to be     12:41PM
 9      able to have your next witness today.                             12:41PM
10                    MS. M. MILLER:  Well, I'd love to get to him, but   12:41PM
11      I have a feeling that we are not going to.                        12:41PM
12                    THE COURT:  Oh, why?                                12:41PM
13                    MS. M. MILLER:  I think just the way this is        12:41PM
14      going, Your Honor.  We still have a bunch of pages.  If           12:41PM
15      Mr. Martin continues down this path, it's going it take quite     12:41PM
16      a long time, which will require, unfortunately, me to cover       12:41PM
17      more area.                                                        12:41PM
18                    THE COURT:  Well, he might stipulate to it.         12:41PM
19                    MR. MARTIN:  I'll stipulate to her cross, Your      12:41PM
20      Honor -- her redirect.                                           12:41PM
21                    THE COURT:  Okay.  I don't know what that means.    12:41PM
22      But how do you stipulate to cross?  You mean, like, stipulate     12:41PM
23      that there be no cross?                                           12:41PM
24                    MR. MARTIN:  No redirect.                           12:41PM
25                    THE COURT:  I mean -- oh, well, there'd be no       12:41PM
```

*Cross - Khamvongsa*

| | | |
|---|---|---|
| 1 | redirect if you guys didn't cross. | 12:41PM |
| 2 | MS. M. MILLER:  Of course not. | 12:41PM |
| 3 | MR. MARTIN:  And we wouldn't be in trial if they | 12:41PM |
| 4 | didn't indict, Judge. | 12:41PM |
| 5 | THE COURT:  Well, okay.  We don't want to go | 12:41PM |
| 6 | there because I can hear the next rebuttal on that.  So -- | 12:42PM |
| 7 | MS. M. MILLER:  Probably know it by heart. | 12:42PM |
| 8 | THE COURT:  All right.  We'll call in the jury. | 12:42PM |
| 9 | So you don't -- okay.  So you don't think you'll done with the | 12:42PM |
| 10 | witness? | 12:42PM |
| 11 | MS. M. MILLER:  I would think if -- | 12:42PM |
| 12 | THE COURT:  This afternoon. | 12:42PM |
| 13 | MS. M. MILLER:  If Mrs. Martin does in fact only | 12:42PM |
| 14 | take an hour, which I doubt, then I will be done today with | 12:42PM |
| 15 | this witness.  If he goes longer than that, I cannot guarantee | 12:42PM |
| 16 | that I will be. | 12:42PM |
| 17 | THE COURT:  I see.  And then who is your next | 12:42PM |
| 18 | witness? | 12:42PM |
| 19 | MS. M. MILLER:  Jeff Guzzetti. | 12:42PM |
| 20 | THE COURT:  And how long is Mr. Guzzetti, you | 12:42PM |
| 21 | think, for you? | 12:42PM |
| 22 | MS. M. MILLER:  I will be done with him in half a | 12:42PM |
| 23 | day, Your Honor. | 12:42PM |
| 24 | THE COURT:  Okay.  All right.  So I'm looking at | 12:42PM |
| 25 | my schedule for tomorrow.  We thought we -- go ahead.  You can | 12:42PM |

*Cross - Khamvongsa*

```
 1    call in the jury.  We'll talk about this -- so we thought we'd          12:42PM
 2    be done by, you know.                                                   12:42PM
 3              MS. M. MILLER:  Yes, that's what I was hoping                  12:42PM
 4    too.                                                                    12:42PM
 5              THE COURT:  It's now Thursday.  And so... yeah,                12:42PM
 6    let me look at my schedule because we have -- I have                    12:42PM
 7    off-island trainers here for our Court.  So I need -- I'll              12:42PM
 8    talk with you guys afterwards on just the timing might be               12:43PM
 9    changed -- it will probably change tomorrow a little bit.               12:43PM
10              MS. M. MILLER:  Thank you, Your Honor.                         12:43PM
11              THE COURT:  I want to get your -- the feeling of               12:43PM
12    how we're going to go, you only have two more witnesses after           12:43PM
13    this agent.                                                             12:43PM
14              MS. M. MILLER:  Yes, Your Honor.                               12:43PM
15              THE COURT:  Okay.  Please be seated.  Ladies and               12:43PM
16    gentlemen, thank you.  And you may continue to proceed,                 12:43PM
17    Mr. Martin.                                                             12:43PM
18              MR. MARTIN:  Thank you, Your Honor.  I believe we              12:43PM
19    left off, if we could put back up on the monitor, Government's          12:43PM
20    Exhibit 366-26.                                                         12:43PM
21    BY MR. MARTIN: (CONTINUING)                                             12:43PM
22       Q.   Sir, I believe this was the one we just finished, the           12:43PM
23    one with Rosie Air Support.  Do you recall that, sir?                   12:43PM
24       A.   This is U.S. registration N8315F.  I'm not sure if we           12:43PM
25    just did this last, sorry.                                              12:43PM
```

```
 1      Q.   Well, let me just -- this is a record kept in the      12:43PM
 2   regular course of business by the Federal Aviation            12:43PM
 3   Administration; correct?                                      12:44PM
 4      A.   Yes.                                                  12:44PM
 5      Q.   And this directly relates to an aircraft registration 12:44PM
 6   number November 8315F; correct, sir?                          12:44PM
 7      A.   U.S. registration number N8315F; yes.                 12:44PM
 8      Q.   With a serial number; correct, sir?                   12:44PM
 9      A.   Yes.                                                  12:44PM
10      Q.   And the FAA registry reflects that the type of        12:44PM
11   registration is a corporation; correct, sir?                  12:44PM
12      A.   Corporations identified; yes.                         12:44PM
13      Q.   And you'll agree with me, won't you, sir, that the    12:44PM
14   FAA registry reflects that the registered owner of this       12:44PM
15   aircraft is a company called Rosie Air Support, Inc., right,  12:44PM
16   sir?                                                          12:44PM
17      A.   Rosie Air Support, Inc. is identified; yes.           12:44PM
18      Q.   And the location of Rosie Air Support, Inc.,          12:44PM
19   according to the FAA registry, is the country of Vanuatu;     12:44PM
20   correct, sir?                                                 12:44PM
21      A.   Vanuatu is identified; yes.                           12:44PM
22      Q.   And is Rosie Air Support, Inc. identified in          12:44PM
23   Government's Exhibit G0829?                                    12:44PM
24      A.   Yes.                                                  12:44PM
25      Q.   Okay.  And you'll agree with me, will you not, sir,   12:44PM
```

*Cross - Khamvongsa*

1   that the aircraft identified in the FAA registry as N8315F is   12:45PM

2   an asset?   12:45PM

3       A.   U.S. registration number N8315F is an asset.   12:45PM

4       Q.   Thank you, sir.  If we can go to the next one.  This   12:45PM

5   is Government's Exhibit G-366-27.  Will you agree with me,   12:45PM

6   sir, that that is a record from the Federal Aviation   12:45PM

7   Administration kept in the normal course of business?   12:45PM

8       A.   Yes.   12:45PM

9       Q.   Would you agree, sir, that this specific record   12:45PM

10  relates to the aircraft identified by the numbers N846D?   12:45PM

11      A.   U.S. registration N846D is identified.   12:45PM

12      Q.   And would you agree, sir, that this -- pardon me.   12:45PM

13  This aircraft, according to the registry, has a serial number?   12:45PM

14      A.   Serial number is identified.   12:46PM

15      Q.   All right, sir.  And the FAA registry indicates that   12:46PM

16  the type of registration say corporation; correct, sir?   12:46PM

17      A.   Corporation is identified.   12:46PM

18      Q.   And according to the FAA registry, the registered   12:46PM

19  owner of N846D is a corporation called Echo Air, Inc.;   12:46PM

20  correct, sir?   12:46PM

21      A.   Echo Air, Inc. is identified.   12:46PM

22      Q.   And the location of Echo Air, Inc. is the country of   12:46PM

23  Vanuatu; correct, sir?   12:46PM

24      A.   Vanuatu is identified.   12:46PM

25      Q.   And, sir, if you know, is Echo Air, Inc. on   12:46PM

1   Government's Exhibit 829, and I'm happy to bring it up there          12:46PM

2   if you need to see it?                                                12:46PM

3       A.   Yes, please.                                                 12:46PM

4       Q.   Okay.                                                        12:46PM

5       A.   Yes, Echo Air, Inc. is identified where you're              12:46PM

6   pointing.                                                            12:46PM

7       Q.   Thank you, sir.  And would you agree with me, sir,          12:46PM

8   and I apologize, something in my throat, but would you agree         12:47PM

9   with me, sir, that the aircraft identified as N846D in the FAA       12:47PM

10  registry is an asset?                                                12:47PM

11      A.   U.S. registration number N846D is an asset.                 12:47PM

12      Q.   Thank you, sir.  If we could go to the next one.  I         12:47PM

13  believe that's going to be Government's Exhibit 366-27.  Is          12:47PM

14  that a record that is kept in the normal course of business by       12:47PM

15  the Federal Aviation Administration, sir?                            12:47PM

16      A.   Yes.                                                        12:47PM

17      Q.   And this particular document on the screen in front         12:47PM

18  of you, would you agree with me, sir, that it relates to the         12:47PM

19  aircraft identified as N901TM?                                       12:47PM

20      A.   U.S. registration number N901TM is identified.              12:48PM

21      Q.   All right, sir.  And this aircraft has a serial             12:48PM

22  number; correct, sir?                                                12:48PM

23      A.   Yes.                                                        12:48PM

24      Q.   And would you agree with me, sir, that the --               12:48PM

25  according to the FAA registry, this registration is that for a       12:48PM

---

*Cross - Khamvongsa*

1    corporation?                                                    12:48PM

2        A.   It's a corporation.                                    12:48PM

3        Q.   All right, sir.  And according to the FAA, the         12:48PM

4    registered owner of N901TM is a company called South Pacific    12:48PM

5    Spotter[sic], Inc.; correct, sir?                               12:48PM

6        A.   Based on what was provided to the FAA registry, South  12:48PM

7    Pacific Spotters, Inc. is identified.                           12:48PM

8        Q.   Are you agreeing with me that's what the registry      12:48PM

9    shows, sir?                                                     12:48PM

10       A.   The registry reflects that.                            12:48PM

11       Q.   Okay.  And the location of the company, South Pacific  12:48PM

12   Spotters, Inc. is Vanuatu; correct, sir?                        12:48PM

13       A.   Vanuatu is identified.                                 12:48PM

14       Q.   All right, sir.  And I have Government's Exhibit        12:48PM

15   G-0829.  And would you agree with me, sir, that South Pacific   12:49PM

16   Spotters is on this document?  I'm happy to bring it up there.  12:49PM

17       A.   Sure, please.  Yes, South Pacific Spotters is          12:49PM

18   identified where you're pointing.                               12:49PM

19       Q.   All right, sir.  Thank you.  And, sir, is the          12:49PM

20   aircraft that's identified in the FAA registry as N901TM an     12:49PM

21   asset?                                                          12:49PM

22       A.   U.S. registration number N901TM is identified as an    12:49PM

23   asset, or is an asset, excuse me.                               12:49PM

24       Q.   Is an asset?                                           12:49PM

25       A.   Yes.                                                   12:49PM

1     Q.   Okay.  Thank you, sir.  We could go to the next one.

2  In front of you, sir, is Government's Exhibit 366-28.  Do you

3  see that document?

4     A.   Yes.

5     Q.   Sir, is this a record that is kept in the normal

6  course of business by the Federal Aviation Administration?

7     A.   Yes.

8     Q.   And would you agree that the particular document that

9  we are looking at on the screen specifically relates to an

10  aircraft identified as N90176?

11     A.   U.S. registration number N90176 is identified on this

12  document.

13     Q.   All right, sir.  And does this aircraft, the FAA

14  registry reflect that this aircraft has a serial number?

15     A.   A serial number is reflected.

16     Q.   All right, sir.  And does the FAA registry reflect

17  the type of registration as that of a corporation?

18     A.   Yes.

19     Q.   And would you agree with me, sir, that according to

20  the FAA registry, the registered owner for aircraft number

21  N90176 is a company called Spotters, Inc.?

22     A.   Spotters, Inc. is identified on this document.

23     Q.   And the location for the registered owner Spotters,

24  Inc., would you agree, sir, is the country of Vanuatu?

25     A.   Vanuatu is identified.

*Cross - Khamvongsa*

1    Q.   And, sir, I have Government's Exhibit 829.  If I need    12:51PM

2  to bring it up there for you, which it looks like I need to.    12:51PM

3  Would you agree with me, sir, that Spotters, Inc. is on    12:51PM

4  Government's Exhibit 829?    12:51PM

5    A.   Spotters, Inc. is identified where you're pointing.    12:51PM

6    Q.   Okay, sir.  Thank you.  Now, sir, would you agree    12:51PM

7  with me that the aircraft that is identified as N90176,    12:51PM

8  according to the FAA registry, is an asset?    12:51PM

9    A.   U.S. registration N90176 is an asset.    12:51PM

10   Q.   Thank you, sir.  If we could go to the next.  This is    12:51PM

11 the second half of Government's Exhibit 366-28.  Would you    12:52PM

12 agree with me, sir, that this is a record kept in the normal    12:52PM

13 course of business by the Federal Aviation Administration?    12:52PM

14   A.   Yes.    12:52PM

15   Q.   Would you also agree with me, sir, that this document    12:52PM

16 we are looking at on the screen specifically refers to an    12:52PM

17 aircraft which has been identified by the FAA by the number    12:52PM

18 November 903F?    12:52PM

19   A.   U.S. registration number N903F is identified.    12:52PM

20   Q.   All right, sir.  And the registry reflects this    12:52PM

21 particular aircraft has a serial number; correct, sir?    12:52PM

22   A.   Serial number is identified.    12:52PM

23   Q.   All right.  The registry reflects that the aircraft    12:52PM

24 number 903 -- N903F is registered as a corporation, right,    12:52PM

25 sir?    12:52PM

*Cross - Khamvongsa*

1    A.   Corporation is identified.                           12:52PM

2    Q.   And according to the registry, the registered owner   12:52PM

3  of N903F is a company called Marlin Bay Helicopters, Inc.;   12:53PM

4  correct, sir?                                                12:53PM

5    A.   Marlin Bay Helicopters, Inc. is identified.           12:53PM

6    Q.   And would you agree with me, sir, that according to   12:53PM

7  the registry, the location for Marlin Bay Helicopters, Inc. is  12:53PM

8  the country Vanuatu?                                         12:53PM

9    A.   Vanuatu is identified.                                12:53PM

10    Q.   All right, sir.  Now, I have Government's            12:53PM

11  Exhibit 829, do you know, sir, whether or not Marlin         12:53PM

12  Helicopters or -- not Marlin, but Marlin Bay Helicopters, Inc.  12:53PM

13  is on this?                                                  12:53PM

14    A.   Marlin Bay Inc. -- Marlin Bay Helicopters, Inc. is on  12:53PM

15  that document.                                               12:53PM

16    Q.   On Government's Exhibit 0829?                         12:53PM

17    A.   Yes, on the corporate structure there.               12:53PM

18    Q.   All right, sir.  And would you agree with me, sir,   12:53PM

19  that the aircraft identified in the FAA registry as N903F is  12:53PM

20  an asset?                                                    12:53PM

21    A.   U.S. registration number N903F is an asset.          12:53PM

22    Q.   All right, sir.  If we could go to the next one.     12:54PM

23  Sir, we are looking at Government's Exhibit 366-29.  Do you   12:54PM

24  see that, sir?                                               12:54PM

25    A.   U.S. registration N9056F is identified on this       12:54PM

*Cross - Khamvongsa*

 1    document.                                                    12:54PM

 2         Q.    Okay.  Thank you.  And would you agree with me, sir,   12:54PM

 3    that the document that we are looking at is a document that is   12:54PM

 4    kept in the normal course of business by the Federal Aviation   12:54PM

 5    Administration?                                                12:54PM

 6         A.    Yes.                                               12:54PM

 7         Q.    And would you agree with me, sir, that that document   12:54PM

 8    reflects that the helicopter number N9056F has a serial        12:54PM

 9    number?                                                        12:54PM

10         A.    Yes.                                               12:54PM

11         Q.    And according to the FAA registry, 9056F is         12:54PM

12    registered as a corporation; correct, sir?                     12:54PM

13         A.    Corporation; yes.                                   12:54PM

14         Q.    All right.  And according to the registry, the      12:54PM

15    registered owner of 9056F is a company called Limey Air        12:54PM

16    Service, Inc.  Would you agree with that, sir?                 12:55PM

17         A.    Limey Air Service, Inc. is identified on this       12:55PM

18    document; yes.                                                 12:55PM

19         Q.    All right.  The location, according to the FAA      12:55PM

20    registry for Limey Air Service, Inc., is the country of        12:55PM

21    Vanuatu; correct, sir?                                         12:55PM

22         A.    Identified is Vanuatu.                              12:55PM

23         Q.    All right.  And, sir, pardon me, I have Government's   12:55PM

24    Exhibit 829, is Limey Air, Inc. on this document, or do you    12:55PM

25    need me to bring it up there for you to look at it?            12:55PM

*Cross - Khamvongsa*

1      A.    Yes, please.  Yes, it's identified by your -- where    12:55PM

2    you're pointing.    12:55PM

3      Q.    All right, sir.    12:55PM

4      A.    Thank you.    12:55PM

5      Q.    Thank you, sir.  And would you agree with me, sir,    12:55PM

6    the aircraft identified as N9056F according to the FAA    12:55PM

7    registry is an asset?    12:56PM

8      A.    November -- U.S. registration N9056F is an asset.    12:56PM

9      Q.    Thank you, sir.  In front of you, sir, is    12:56PM

10    Government's Exhibit G-360-29.  Do you see that document, sir?    12:56PM

11      A.    Yes.    12:56PM

12      Q.    Would you agree with me, sir, that that document is a    12:56PM

13    record that is kept in the regular course of business by the    12:56PM

14    Federal Aviation Administration?    12:56PM

15      A.    Yes.    12:56PM

16      Q.    And specifically, this document, sir, would you    12:56PM

17    agree, relates to an aircraft that has a registration number    12:56PM

18    of N9057F?    12:56PM

19      A.    U.S. registration N90F -- 57F is identified here.    12:56PM

20      Q.    All right, sir.  And this aircraft, also according to    12:56PM

21    the FAA registry, has a serial number, right, sir?    12:56PM

22      A.    Yes.    12:56PM

23      Q.    And according to the FAA registry, sir, would you    12:56PM

24    agree with me that this registration indicates that 9057F is a    12:56PM

25    corporation?    12:57PM

*Cross - Khamvongsa*

1    A.    Yes.                                                    12:57PM

2    Q.    And according to the FAA registry, sir, the            12:57PM

3    registered owner of 9057F is Wilma's Flight Services, Inc.   12:57PM

4    Would you agree with that, sir?                              12:57PM

5    A.    Yes.                                                    12:57PM

6    Q.    And the location of Wilma's Flight Services, Inc. is   12:57PM

7    the country of Vanuatu.  Would you agree with that, sir?     12:57PM

8    A.    Yes.                                                    12:57PM

9    Q.    And if we go to Government's Exhibit 829, I'm happy    12:57PM

10   to bring it up there, do you know whether or not Wilma's     12:57PM

11   Flight Services is on this chart?                            12:57PM

12   A.    Wilma's Flight Services, Inc. is on the chart.         12:57PM

13   Q.    All right, sir.  And would you agree with me, sir,     12:57PM

14   that the aircraft identified in the FAA registry is N5 --    12:57PM

15   excuse me, N9057F is an asset?                               12:57PM

16   A.    U.S. registration N9057F is an asset.                 12:57PM

17   Q.    All right, sir.  If we could go to the next one.       12:58PM

18   Sir, we're looking at Government's Exhibit 366-30; do you see 12:58PM

19   that document?                                               12:58PM

20   A.    Yes.                                                    12:58PM

21   Q.    Would you agree with me, sir, that this is a document  12:58PM

22   that is kept in the normal course of business by the Federal 12:58PM

23   Aviation Administration?                                     12:58PM

24   A.    Yes.                                                    12:58PM

25   Q.    Would you agree that this particular document deals    12:58PM

1    specifically with an aircraft that is identified in the FAA          12:58PM

2    registry as N907HH?          12:58PM

3         A.   U.S. registration N907HH is identified.          12:58PM

4         Q.   All right, sir.  And would you agree with me, pardon          12:58PM

5    me, just a second.  Would you agree with me, sir, that that          12:58PM

6    aircraft, according to the FAA registry, has a serial number?          12:59PM

7         A.   Serial number is identified.          12:59PM

8         Q.   All right, sir.  And according to the FAA registry,          12:59PM

9    the type of registration is a corporation; correct, sir?          12:59PM

10         A.   Corporation is identified.          12:59PM

11         Q.   And according to the FAA registry, the registered          12:59PM

12    owner of aircraft number N907HH is a company called Limey Air          12:59PM

13    Services, Inc.; correct, sir?          12:59PM

14         A.   Limey Air Services, Inc. is identified on this          12:59PM

15    document.          12:59PM

16         Q.   And the location for Limey Air Services, Inc.,          12:59PM

17    according to the FAA registry, is the country of Vanuatu;          12:59PM

18    correct, sir?          12:59PM

19         A.   Vanuatu is identified.          12:59PM

20         Q.   And is Limey Air Services, Inc., if you know, sir, on          12:59PM

21    Government's Exhibit G-0829?          12:59PM

22         A.   Um --          12:59PM

23         Q.   I'm happy to bring it up there.          12:59PM

24         A.   Yes.          12:59PM

25         Q.   Right here where my finger is?          01:00PM

*Cross - Khamvongsa*

```
1    A.   Yes; yes.                                              01:00PM

2    Q.   All right.  Would you agree with me, sir, that the    01:00PM

3  aircraft identified in the FAA registry as N907HH is an asset? 01:00PM

4    A.   U.S. registration number N907HH is an asset.          01:00PM

5    Q.   All right, sir.  Thank you very much.  We could go to  01:00PM

6  the next one.  All right, sir.  This is the second part of    01:00PM

7  Government's Exhibit 366-30.  Will you agree, sir, that this   01:00PM

8  is a record that is kept in the normal course of business by  01:00PM

9  the Federal Aviation Administration?                          01:00PM

10    A.   Yes.                                                  01:00PM

11    Q.   Will you agree with me, sir, that this particular     01:00PM

12  exhibit that we're looking at on the screen deals specifically 01:00PM

13  with the aircraft that has been identified in the registry as 01:00PM

14  N910WC?                                                      01:00PM

15    A.   U.S. registration N910WC is identified.               01:00PM

16    Q.   All right, sir.  And the FAA registry reflects that   01:01PM

17  this aircraft has a serial number, right, sir?               01:01PM

18    A.   A serial number is identified.                        01:01PM

19    Q.   And according to the FAA registry, would you agree,   01:01PM

20  sir, the type of registration for N910WC is a corporation?   01:01PM

21    A.   Corporation is identified.                            01:01PM

22    Q.   All right, sir.  Now, would you agree that according  01:01PM

23  to the FAA registry, the registered owner of N910WC is a     01:01PM

24  corporation called Bean Bag Helicopter Services, Inc.?       01:01PM

25    A.   Beep Bag Helicopter Service, Inc. is identified.      01:01PM
```

*Cross - Khamvongsa*

1    Q.   And the location, according to the registry, for the
2  company Bean Bag Helicopter Services, Inc. is the country of
3  Vanuatu; correct, sir?
4    A.   Vanuatu is identified.
5    Q.   All right, sir.  And if you know, I have in my hand
6  Government's Exhibit 829.  Do you know whether or not Bean Bag
7  Services is on this document?
8    A.   Bean Bag Services is the -- is on that document as a
9  parent company of the Vanuatu companies.
10    Q.   All right, sir.  Thank you.  And would you agree with
11  me, sir, that the aircraft that's been identified as N910WC,
12  according to the FAA registry, is an asset?
13    A.   U.S. registration N910WC is an asset.
14    Q.   All right, sir.  Thank you.  If we could go to the
15  next one.  We're looking at Government's Exhibit 366-31.
16  Would you agree with me, sir, that the document we are looking
17  at is a document kept in the normal course of business by the
18  Federal Aviation Administration?
19    A.   Yes.
20    Q.   And particularly, this document -- in particular, the
21  document that is on the screen, would you agree that it deals
22  specifically with the aircraft that's been identified as
23  N911GP?
24    A.   U.S. registration N911GP is identified.
25    Q.   All right, sir.  And according to the registry,

01:01PM
01:01PM
01:01PM
01:01PM
01:01PM
01:01PM
01:02PM
01:02PM
01:02PM
01:02PM
01:02PM
01:02PM
01:02PM
01:02PM
01:02PM
01:02PM
01:02PM
01:03PM
01:03PM
01:03PM
01:03PM
01:03PM
01:03PM
01:03PM
01:03PM

*Cross - Khamvongsa*

1    N911GP has a serial number, right, sir?                      01:03PM

2        A.   Yes.                                                 01:03PM

3        Q.   And according to the registry, N911GP is registered 01:03PM

4    as a corporation; correct, sir?                              01:03PM

5        A.   Corporation is identified.                          01:03PM

6        Q.   And would you agree, sir, that the registered owner, 01:03PM

7    according to the registry, of N911GP is a corporation called 01:03PM

8    South Pacific Spotters, Inc.?                                01:03PM

9        A.   South Pacific Spotters, Inc. is identified.         01:03PM

10       Q.   And according to the registry, the location of the  01:04PM

11   corporation South Pacific Spotters, Inc. is the country of   01:04PM

12   Vanuatu?                                                     01:04PM

13       A.   Vanuatu is identified.                              01:04PM

14       Q.   And, sir, I've got Government's Exhibit 829 here, and 01:04PM

15   I'm happy to bring it up there.  Do you know whether or not  01:04PM

16   South Pacific Spotters, Inc. is on this document?            01:04PM

17       A.   It is.                                              01:04PM

18       Q.   Okay.  And, sir, here we are.  Would you agree with 01:04PM

19   me, sir, that the aircraft identified in the FAA registry is 01:04PM

20   N911GP is an asset?                                          01:04PM

21       A.   U.S. registry -- or U.S. registration N911GP is an  01:04PM

22   asset.                                                       01:04PM

23       Q.   All right, sir.  Thank you.  We could go to the next 01:05PM

24   one.  In front of you, sir, is Government's Exhibit 366-31.  01:05PM

25   Would you agree with me, sir, that that is a record that is  01:05PM

```
 1   kept in the normal course of business by the Federal Aviation      01:05PM
 2   Administration?                                                     01:05PM
 3        A.   Yes.                                                      01:05PM
 4        Q.   And in particular, the record that is on the screen      01:05PM
 5   in front of you, would you agree, deals specifically with an       01:05PM
 6   aircraft that is identified as N9162F?                             01:05PM
 7        A.   U.S. registration number N9162F is identified.           01:05PM
 8        Q.   And the registry reflects, would you agree, sir, that    01:05PM
 9   there is a serial number for that aircraft?                        01:05PM
10        A.   A serial number is identified.                           01:05PM
11        Q.   And according to the registry, the registration for     01:05PM
12   N9162F is a corporation.  Is that correct, sir?                    01:05PM
13        A.   A corporation is identified.                             01:05PM
14        Q.   And would you agree, sir, that the registered owner     01:05PM
15   is a corporation by the name of Rosie Air Support, Inc.           01:05PM
16        A.   Rosie Air Support, Inc. is identified.                   01:06PM
17        Q.   And the location of Rosie Air Support, Inc. is in the   01:06PM
18   country of Vanuatu.  Would you agree with that, sir?              01:06PM
19        A.   Vanuatu is identified.                                   01:06PM
20        Q.   And, sir, I've got again Government's Exhibit No.        01:06PM
21   829, the chart.  Would you agree with me, sir, that Rosie Air     01:06PM
22   Support, Inc. is on this chart?  If I need to bring to it over    01:06PM
23   there, I will.                                                     01:06PM
24        A.   No, I do recall it being on that chart.  Thank you.     01:06PM
25        Q.   All right.  In particular, sir, would you agree that    01:06PM
```

*Cross - Khamvongsa*

the aircraft identified in the FAA registry as N9162F is an

asset?

    A.    U.S. registration N9162F is an asset.

    Q.    All right, sir.  Thank you.  Now, sir, I have in

front of us Government's Exhibit 366-32.  Would you agree with

me, sir, that that is a record kept in the normal course of

business by the Federal Aviation Administration?

    A.    Yes.

    Q.    Would you agree with me, sir, that the document on

the screen specifically relates to the aircraft identified in

the registry as N9212F?

    A.    U.S. registration N9212F is identified on this

document.

    Q.    All right, sir.  Would you agree with me, sir, that

according to the registry, this aircraft has a serial number?

    A.    A serial number is identified.

    Q.    And according to the registry, sir, N9212F is

registered as a corporation; correct, sir?

    A.    The helicopter is not registered as a corporation.

    Q.    The type of registration is a corporation; correct,

sir?

    A.    Yes.

    Q.    All right.  Thank you.  And the registry reflects

that the registered owner for N9212F is a company called

Judy's Helicopter Service, Inc.  Would you agree with that,

```
 1   sir?                                                          01:08PM

 2       A.   Judy's Helicopter Service, Inc. is identified on this 01:08PM

 3   document; yes.                                                01:08PM

 4       Q.   Okay.  And the location for Judy's Helicopter        01:08PM

 5   Service, Inc. is a country of Vanuatu; correct, sir?          01:08PM

 6       A.   Vanuatu is identified on this document.              01:08PM

 7       Q.   And do you know, sir, whether or not Judy's          01:08PM

 8   Helicopter Service, Inc. is on Government's Exhibit           01:08PM

 9   G-O829[sic]?                                                  01:08PM

10       A.   Could you bring it by, please?                       01:09PM

11       Q.   Absolutely.                                          01:09PM

12       A.   Judy's Helicopter, Inc. is identified where your     01:09PM

13   finger is at.                                                 01:09PM

14       Q.   All right, sir.  And would you agree with me, sir,   01:09PM

15   that the aircraft identified as N9212F, according to the FAA  01:09PM

16   registry, is an asset?                                        01:09PM

17       A.   U.S. registration N9212F is an asset.                01:09PM

18       Q.   All right, sir.  If we could go to next one.  In     01:09PM

19   front of you, sir, is Government's Exhibit 366-32.  Would you 01:09PM

20   agree with me, sir, that this is a record kept in the normal  01:09PM

21   course of business of the Federal Aviation Administration?    01:09PM

22       A.   Yes.                                                 01:09PM

23       Q.   Would you agree with me, sir, that the document now  01:09PM

24   on the screen relates specifically to an aircraft identified  01:09PM

25   by the registry as N9237F?                                    01:10PM
```

*Cross - Khamvongsa*

1    A.   U.S. registration N9237F is identified.                  01:10PM

2    Q.   All right, sir.  And would you agree with me, sir,       01:10PM

3  that the FAA registry reflects that this helicopter has a       01:10PM

4  serial number?                                                  01:10PM

5    A.   A serial number is identified.                           01:10PM

6    Q.   And that according to the registry, this helicopter,     01:10PM

7  excuse me, according to the registry, the type of registration  01:10PM

8  is a corporation, sir?                                          01:10PM

9    A.   Yes, corporation is identified.                          01:10PM

10   Q.   And the registered owner, according to the registry,     01:10PM

11 is a corporation called Fling Air, Inc.  You see that, sir?     01:10PM

12   A.   Fling Air, Inc. is identified here; yes.                 01:10PM

13   Q.   All right.  And the location for Fling Air, Inc. is      01:10PM

14 the country of Vanuatu; correct, sir?                           01:10PM

15   A.   Vanuatu is identified here.                              01:10PM

16   Q.   All right.  And if we go to Government's Exhibit         01:10PM

17 G-0829, do you know, sir, whether or not Fling Air, Inc. is on  01:11PM

18 this document?                                                  01:11PM

19   A.   Yes.                                                     01:11PM

20   Q.   Okay.  And would you agree with me, sir, that the       01:11PM

21 aircraft that's been identified as N9237F is an asset?          01:11PM

22   A.   U.S. registration N9237F is an asset.                    01:11PM

23   Q.   All right, sir.  If we could go to the next one.  In     01:11PM

24 front of you, sir, is what's been marked and admitted for       01:11PM

25 identification -- and admitted as Government's Exhibit 366-33.   01:11PM

*Cross - Khamvongsa*

1    Is that a record that is kept in the regular course of          01:11PM

2    business by the Federal Aviation Administration, sir?          01:11PM

3        A.   Yes.                                                   01:11PM

4        Q.   And particularly, the document on the screen, sir,    01:11PM

5    would you agree with me relates to the aircraft that is        01:11PM

6    identified as N9263F?                                          01:12PM

7        A.   U.S. registration N9263F is identified.               01:12PM

8        Q.   Would you agree, sir, that according to the registry, 01:12PM

9    helicopter 9236F has a serial number?                          01:12PM

10       A.   A serial number is reflected.                         01:12PM

11       Q.   And the type of registration for N9236F is a          01:12PM

12   corporation; correct, sir?                                     01:12PM

13       A.   A corporation is reflected.                           01:12PM

14       Q.   An the registered owner is a corporation by the name  01:12PM

15   of Ohara Helicopters, Inc.; correct, sir?                      01:12PM

16       A.   Ohara Helicopters, Inc. is identified.                01:12PM

17       Q.   And the location of Ohara -- Ohara Helicopters, Inc.  01:12PM

18   is a country of Vanuatu; correct, sir?                         01:12PM

19       A.   Vanuatu is identified.                                01:12PM

20       Q.   Sir, again, I have Government's Exhibit 0829 in my    01:12PM

21   hand.  Do you know whether or not Ohara Helicopters, Inc. is   01:12PM

22   identified on this document?                                   01:12PM

23       A.   Can I see the --                                      01:13PM

24       Q.   Absolutely.                                           01:13PM

25       A.   Ohara Helicopters, Inc. is identified here on this    01:13PM

*Cross - Khamvongsa*

1    document by your finger.                                           01:13PM

2        Q.   All right, sir.  And would you agree with me, sir,        01:13PM

3    that the aircraft identified as N9236F, according to the FAA       01:13PM

4    registry, is an asset?                                             01:13PM

5        A.   U.S. registration number N9263F is an asset.             01:13PM

6        Q.   All right, sir.  Before you, sir, is Government's         01:13PM

7    Exhibit 366-33.  Is this a record kept in the normal course of     01:13PM

8    business by the Federal Aviation Administration?                   01:13PM

9        A.   Yes.                                                      01:13PM

10        Q.   And would you agree with me, sir, that this              01:13PM

11    particular FAA document relates specifically to an aircraft       01:14PM

12    identified in the registry as N9938A?                             01:14PM

13        A.   U.S. registration N9938A is identified.                  01:14PM

14        Q.   And would you agree, sir, that this particular           01:14PM

15    document reflects that this aircraft has a serial number?         01:14PM

16        A.   Yes, there is a serial number identified.                01:14PM

17        Q.   And that the FAA registry reflects that the type of      01:14PM

18    registration is a corporation, sir?                               01:14PM

19        A.   The type of registration is a corporation.               01:14PM

20        Q.   And the registered owner is a corporation called         01:14PM

21    South Pacific Spotters, Inc.  Do you see that, sir?               01:14PM

22        A.   South Pacific Spotters, Inc. is identified.              01:14PM

23        Q.   All right, sir.  And the location of South Pacific       01:14PM

24    Spotters, Inc. is the country of Vanuatu; correct, sir?           01:15PM

25        A.   Vanuatu is identified.                                   01:15PM

*Cross - Khamvongsa*

1    Q.   All right.  And do you know, sir, whether or not

2   South Pacific Spotters, Inc. is identified on Government's

3   Exhibit G-0829?

4    A.   Yes.

5    Q.   All right, sir.  Thank you.  And would you agree with

6   me, sir, that the aircraft that's identified as N9938A,

7   according to the FAA registry, is an asset?

8    A.   According to this, U.S. registration N9938A would be

9   an asset.

10    Q.   All right, sir.  Sir, before you is Government's

11   Exhibit G-366-34.  Do you see that document, sir?

12    A.   Yes.

13    Q.   Would you agree with me, sir, that this is a document

14   that's kept in the normal course of business by the New

15   Zealand Civil Aviation Authority?

16    A.   Yes, but this was actually, I mean, all the documents

17   talked about has been provided by the Hansen Helicopters.

18    Q.   I'm asking you, do you recognize this as a document

19   that is kept in the normal course of business by the New

20   Zealand Civil Aviation Authority?

21    A.   Yes.

22    Q.   All right, sir.  And would you agree with me, sir,

23   that this particular document deals with an aircraft with a

24   registration mark -- ZKHIA?

25    A.   This document identifies ZKHIA as being New Zealand

1    registered.                                                    01:16PM

2        Q.   All right, sir.  And it reflects that this aircraft   01:16PM

3    has a serial number; correct, sir?                             01:17PM

4        A.   Yes.                                                  01:17PM

5        Q.   And it's now, if we could scroll up just a little     01:17PM

6    bit.  It is -- shows that Jon Darrell Walker is entitled to    01:17PM

7    the possession of that aircraft; correct, sir?                 01:17PM

8        A.   Jon Darrell Walker owns that aircraft.                01:17PM

9        Q.   Well, it says, "name persons entitled to possession   01:17PM

10   of aircraft for a period of 28 days or longer"; if I read that 01:17PM

11   right.                                                         01:17PM

12       A.   Jon Darrell Walker is identified there; yes.          01:17PM

13       Q.   Okay.  All right.  All right, sir.  And would you      01:17PM

14   agree with me, sir, that the aircraft that's identified as     01:17PM

15   ZKHIA is an asset?                                             01:17PM

16       A.   New Zealand registered ZKHIA would be an asset.       01:17PM

17       Q.   All right, sir.                                       01:17PM

18            MR. MARTIN:  May I have just a second, Your            01:18PM

19   Honor?                                                         01:18PM

20            THE COURT:  Yes, that's fine.                         01:18PM

21   BY MR. MARTIN: (CONTINUING)                                    01:18PM

22       Q.   In front of you, sir, I believe, is what's been       01:18PM

23   identified as Government's Exhibit 366-35.  Do you recognize   01:18PM

24   that exhibit as a document that is kept in the normal course   01:18PM

25   of business by the New Zealand Civil Aviation Authority?       01:18PM

*Cross - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | A.   Yes. | 01:18PM |
| 2 | Q.   And would you agree, sir, that this particular | 01:18PM |
| 3 | document deals specifically with an aircraft identified as | 01:18PM |
| 4 | ZKHMF? | 01:18PM |
| 5 | A.   ZKHMF is a New Zealand-registered aircraft. | 01:18PM |
| 6 | Q.   And would you agree, sir, that this aircraft has a | 01:18PM |
| 7 | serial number? | 01:18PM |
| 8 | A.   Yes. | 01:18PM |
| 9 | Q.   And does it indicate that Mr. Walker is entitled to | 01:18PM |
| 10 | possess that aircraft for 28 days or longer, sir? | 01:19PM |
| 11 | A.   Yes, sir, and he's on that document as well. | 01:19PM |
| 12 | Q.   And does it show in particular that this is care of | 01:19PM |
| 13 | Oceania Aviation Limited, sir? | 01:19PM |
| 14 | A.   As to the address; yes. | 01:19PM |
| 15 | Q.   Right.  All right, sir.  And would you agree with me, | 01:19PM |
| 16 | sir, that the aircraft identified as ZKHMF is an asset? | 01:19PM |
| 17 | A.   It's an asset to Jon Walker; yes. | 01:19PM |
| 18 | Q.   All right, sir.  It's an asset too, right, sir?  It's | 01:19PM |
| 19 | just an asset? | 01:19PM |
| 20 | A.   Just an asset, if we're limited to that; yes. | 01:19PM |
| 21 | Q.   That's what I'm asking, is it an asset? | 01:19PM |
| 22 | A.   Yes, yes. | 01:19PM |
| 23 | Q.   Thank you, sir.  Okay, sir.  Sir, in front of you is | 01:19PM |
| 24 | Government's Exhibit 366-36.  Do you recognize that as a | 01:20PM |
| 25 | document kept in the normal course of business by the | 01:20PM |

*Cross - Khamvongsa*

1    Department of Transportation for the Republic of the

2    Philippines?

3         A.    This is similar to what I've seen; yes.

4         Q.    All right.  Would you agree with me, sir, that this

5    is a certificate of registration for the Philippines, in

6    particular, relating to an aircraft identified as RPC588?

7         A.    RPC588 is identified on this document.

8         Q.    And would you agree with me, sir, that this aircraft

9    has a serial number?

10        A.    A serial number is reflected on this document.

11        Q.    All right, sir.  And, sir, let me ask you, would you

12   agree that the aircraft identified as RPC588 in this document

13   from the Philippines, the certificate of registration, is an

14   asset?

15        A.    RPC588 Philippine-registered helicopter would be an

16   asset.

17        Q.    All right, sir.  Thank you.  And --

18               (Pause.)

19   BY MR. MARTIN: (CONTINUING)

20        Q.    Would you agree with me, sir, that any helicopter,

21   whether or not it is registered or not, is an asset?

22        A.    To who, or just in general?

23        Q.    Just in general, a helicopter is an asset?

24        A.    To the owner; yes.  An asset to the owner.  If we're

25   just talking generally; yes.

1    Q.   Okay.  Let me ask you, sir -- oh, I forgot we need to    01:22PM

2  pull that back up, I need to go back to one document.  I    01:22PM

3  forgot.  Just a second.  I apologize.  I would like to go back    01:22PM

4  to Government's Exhibit 366-23.  If we could bring that up.    01:22PM

5  Okay.  This is -- do you recall -- this is Government's    01:23PM

6  Exhibit 366-23.  Would you agree, sir, this is a record that    01:23PM

7  was kept in the regular course of business by the Federal    01:23PM

8  Aviation Administration?    01:23PM

9    A.   Yes.    01:23PM

10    Q.   And it's a document relating -- in particular to    01:23PM

11  N74AM, which you previously testified about; correct?    01:23PM

12    A.   U.S. registration N74AM; yes, I recall talking about    01:23PM

13  this earlier before the break.    01:23PM

14    Q.   As a matter of fact, pardon me, dealt with a    01:23PM

15  corporation by the name of Fling Air, Inc.  Do you recall    01:23PM

16  that, sir?    01:23PM

17    A.   I recall Fling Air, Inc.; yes.    01:23PM

18    Q.   And do you recall in that particular -- in this    01:23PM

19  particular case, relating to this particular aircraft, the    01:24PM

20  location of Fling Air, Inc. was Guam.  Do you recall that,    01:24PM

21  sir?    01:24PM

22    A.   Yes.    01:24PM

23    Q.   And do you recall my questions about you -- to you    01:24PM

24  relating to Toyota, Mitsubishi, that corporations, foreign    01:24PM

25  corporations, can operate in the United States.  Do you recall    01:24PM

*Cross - Khamvongsa*

1    those questions?                                          01:24PM

2        A.   If we're talking in general, foreign corporations can    01:24PM

3    operate in the U.S.                                       01:24PM

4        Q.   Okay.  Well I'm -- that's what I meant.          01:24PM

5        A.   Okay.                                            01:24PM

6        Q.   And would you agree with me, sir, that this FAA    01:24PM

7    registry, this document, identified in Government's       01:24PM

8    Exhibit 366-23 reflects that this is a foreign corporation?    01:24PM

9        A.   No, that's incorrect.                            01:24PM

10       Q.   That's incorrect?  Do you see the word "foreign"    01:25PM

11   there, sir?                                               01:25PM

12       A.   I see that.                                      01:25PM

13       Q.   Okay.  All right.  Well, if we can go on, I'm through    01:25PM

14   with this document.  Would you agree, sir -- I want to go back    01:25PM

15   to the contracts.  If you don't remember, I'm happy to pull    01:25PM

16   one up, and we can go over it.  But would you agree, sir, that    01:25PM

17   the contracts, the leases in this case, which form part of    01:25PM

18   your investigation relating to Counts 100 through 104, those    01:25PM

19   are the wire fraud counts, right, sir?                    01:25PM

20       A.   The leases cover the entirety, so it also includes 99    01:25PM

21   as well.                                                  01:25PM

22       Q.   Well, right now I'm talking about -- do you have the    01:25PM

23   indictment in front of you?  I think I gave it to you this    01:25PM

24   morning.                                                  01:25PM

25       A.   Yes.                                             01:25PM

*Cross - Khamvongsa*

```
 1        Q.    Okay.                                                01:25PM

 2        A.    You just want me to focus on those particular counts? 01:25PM

 3        Q.    Well, the wire fraud counts relate to 100            01:26PM

 4   through 104.  Would you agree with that, sir?                   01:26PM

 5        A.    It's part of the evidence; yes.                      01:26PM

 6        Q.    No, I said the wire -- my question was, the wire     01:26PM

 7   fraud counts relate to Counts 100 through 104.  Would you       01:26PM

 8   agree with that?  That's what the wire fraud counts that are    01:26PM

 9   covered in the indictment?                                      01:26PM

10        A.    No, it's 99.  It also includes 99.                   01:26PM

11        Q.    Well, 99 is conspiracy to commit wire fraud.  I'm    01:26PM

12   talking about wire fraud, okay.                                 01:26PM

13        A.    Those -- those counts after 99, 100 through 105 are  01:26PM

14   part or a sample of what makes up 99.  Count 99.                01:26PM

15        Q.    Okay.  Let me ask this question very delicately, and 01:26PM

16   I want you to listen to me.  You have the indictment in front   01:26PM

17   of you, sir?                                                    01:26PM

18        A.    What page would you like me to turn to?              01:26PM

19        Q.    Do you have the indictment in front of you, sir?     01:26PM

20        A.    Yes, sir.  Right here.                               01:26PM

21        Q.    All right.  And would you agree with me, sir, that   01:26PM

22   Counts 100, 101, 102, 103 and 104 specifically relate to wire  01:26PM

23   fraud?                                                          01:27PM

24        A.    Yes.                                                 01:27PM

25        Q.    Okay.  Now, in that regard, sir, the tuna boat       01:27PM
```

*Cross - Khamvongsa*

1    companies had written contracts with the company that provided

2    a helicopter to them for tuna spotting; correct, sir?

3    Wilma's?

4        A.    We're just talking specifically about the contract?

5        Q.    Yes, sir.  They had contracts, right?

6        A.    The contracts existed; correct.

7        Q.    And the contracts provided that the helicopter --

8    excuse me, the contracts provided that the tuna boat companies

9    had the opportunity to inspect every helicopter before they

10   left port and went to go do their tuna operations; correct,

11   sir?

12       A.    No.

13       Q.    They didn't have the opportunity to inspect them?

14       A.    Not adequate opportunity, no.

15       Q.    I said -- let's pull up Government's Exhibit 3280,

16   please.  Sir, I'm going ask you questions, and I would like

17   you to answer the questions I ask and not reform them and

18   reword them.  Can you do that for me?

19       A.    I'll do the best I can, sir.  Thank you.

20       Q.    All right.  So if we can pull up 3280, please.  Sir,

21   we are looking at what's identified as Government's

22   Exhibit 2900-3280.  Do you see that, sir?  Do you see that

23   document?

24       A.    I see a portion of it; yes.

25       Q.    Okay.  A portion of it.  Let's start at the top then.

*Cross - Khamvongsa*

1    Do you see the top page?                                    01:29PM

2        A.   Yes.                                               01:29PM

3        Q.   And this is -- we testified yesterday, I believe, or   01:29PM

4    maybe it was this morning, it's been awhile.  I know we    01:29PM

5    testified yesterday, you and I were going yesterday, that this   01:29PM

6    particular document deals specifically with Count 100, right,   01:29PM

7    sir?                                                        01:29PM

8        A.   Uh-huh.                                            01:29PM

9        Q.   If you need to look at indictment, go right ahead.   01:29PM

10       A.   Yeah, it looks -- yes.  Yes.                       01:29PM

11       Q.   You're agreeing with me it deals with specifically   01:30PM

12   Count 100?                                                  01:30PM

13       A.   It makes up a part of -- it's one of the pieces of   01:30PM

14   evidence that makes up Count 100; yes.                      01:30PM

15       Q.   Okay.  So the first part is basically the date and   01:30PM

16   the parties, right, sir?                                    01:30PM

17       A.   Wilma's Flight Services, Inc. is the lessor and    01:30PM

18   Friesland Fishing Company is the lessee; yes.               01:30PM

19       Q.   Okay.  If we can go up just a little bit.  I want to   01:30PM

20   go to Section 1.  Section 1, do you see Section 1, lease of   01:30PM

21   aircraft, sir?                                              01:30PM

22       A.   Yes.                                               01:30PM

23       Q.   Do you see, sir, where it specifically provides that   01:30PM

24   the lessee shall have 24 hours from arrival of the aircraft in   01:30PM

25   which to provide lessor written notification of any defects in   01:30PM

1    the aircraft or its equipment and accessories or in case the          01:30PM

2    pilot is not sufficient, capable for his work according to the        01:30PM

3    judgment of the captain.  In absence of written notification,         01:30PM

4    lessee agrees it is satisfied with and finds the aircraft and         01:30PM

5    its equipment and accessories to be accessible.  Do you see           01:31PM

6    that in Section 1 of Government's Exhibit 2900-3280, sir?             01:31PM

7         A.   I see that.                                                01:31PM

8         Q.   All right.  The tuna boat companies were given the        01:31PM

9    option to inspect the helicopters.  Isn't that true, sir?           01:31PM

10        A.   The option to inspect?  Yes.                              01:31PM

11        Q.   All right, sir.  And as a matter of fact, if they         01:31PM

12   weren't satisfied, they could notify the lessor, and they           01:31PM

13   could either get a replacement or something like that;              01:31PM

14   correct, sir?                                                       01:31PM

15        A.   It appears that way on the contract.                      01:31PM

16        Q.   All right.  And as a matter of fact, there are other      01:31PM

17   portions of the contract that provide if something happens to       01:31PM

18   the helicopter, during the term of this lease, it can be            01:31PM

19   replaced; correct, sir?                                             01:32PM

20        A.   Yes, in that sense; yes.                                  01:32PM

21        Q.   All right.  Now, you'll agree with me, won't you,         01:32PM

22   sir, -- I'm through with that now.  Thanks.  That -- you'll         01:32PM

23   agree with me, won't you, sir, that a helicopter was provided       01:32PM

24   with every lease that was done with the tuna boat companies;        01:32PM

25   correct, sir?                                                       01:32PM

```
 1      A.    Um, no.                                            01:32PM

 2      Q.    There were tuna boats that did not get helicopters?  01:32PM

 3      A.    They were not airworthy.                           01:32PM

 4      Q.    Sir, did I use the word "airworthy"?               01:32PM

 5      A.    Well, if we're talking about contract --           01:32PM

 6      Q.    Did I use -- my question, did I use the word       01:32PM

 7 "airworthy"?  And I'm asking a question, did I use the word    01:32PM

 8 "airworthy"?                                                   01:32PM

 9      A.    No.                                                01:32PM

10      Q.    All right.                                         01:32PM

11      A.    All right.                                         01:32PM

12      Q.    So let's go back to my question.  Did every tuna boat  01:32PM

13 get a helicopter?                                              01:32PM

14      A.    A helicopter was provided.                         01:33PM

15      Q.    Okay.  Thank you, sir.  Now, are you an FAA certified  01:33PM

16 A&P mechanic, sir?                                             01:33PM

17      A.    I am not.                                          01:33PM

18      Q.    Are you an FAA certified, I believe it's called an  01:33PM

19 AI, sir?                                                       01:33PM

20      A.    I am not.                                          01:33PM

21      Q.    All right.  And you know what those terms are, don't  01:33PM

22 you, sir?                                                      01:33PM

23      A.    I do know what they refer to loosely.              01:33PM

24      Q.    They refer to someone that has a specialized       01:33PM

25 certificate to inspect, repair and correct any issues with a  01:33PM
```

*Cross - Khamvongsa*

```
1    helicopter, generally speaking.  Would you agree with that?    01:33PM

2        A.   And, again, that's -- that is in reference to what    01:33PM

3    the FAA provides; correct?  Like a certification?              01:33PM

4        Q.   Correct.                                              01:33PM

5        A.   Yeah, the FAA does provide that.                      01:33PM

6        Q.   Okay, sir.  Now, would you agree with me, sir, that   01:34PM

7    in Count 99 of the indictment, and you may look at it, I think 01:34PM

8    I've given you a copy of it to look at, do you have Count 99   01:34PM

9    in front of you, sir?                                          01:34PM

10       A.   Starting on page 33, sir?                             01:34PM

11       Q.   Yes, sir.  And if we're going to -- if you would you  01:34PM

12   go to page 34, sir.                                            01:34PM

13       A.   Yes, sir.                                             01:34PM

14       Q.   In particular, starting at paragraph 26, there are    01:34PM

15   numerous aircraft that begin with the designation N at page -- 01:35PM

16   excuse me, at paragraph 26.  Do you see all those, sir?        01:35PM

17       A.   You're talking about paragraph 126 -- starting at     01:35PM

18   subsection A though subsection RR?                             01:35PM

19       Q.   That's correct, sir.  Thank you.  Yeah, and those are 01:35PM

20   helicopters that have been identified by an N registration;    01:35PM

21   correct, sir?                                                  01:35PM

22       A.   Those are U.S.-registered helicopters; yep.           01:35PM

23       Q.   And those helicopters, many of them, you and I, over  01:35PM

24   the last hour or two, probably closer to two --                01:35PM

25       A.   Probably two.                                         01:35PM
```

*Cross - Khamvongsa*

```
1    Q.   -- we have identified for this jury; correct, sir?    01:35PM
2    A.   We identified they're U.S.-registered helicopters;    01:36PM
3  yes.                                                          01:36PM
4    Q.   And many of those are contained in paragraph 126 of   01:36PM
5  the indictment?                                               01:36PM
6    A.   Yes.                                                   01:36PM
7    Q.   And those are the same aircraft that were registered, 01:36PM
8  many of them, with Vanuatu corporations; correct, sir?       01:36PM
9    A.   They're actually U.S.-registered corporations.        01:36PM
10   Q.   In Vanuatu, is that what you're saying?                01:36PM
11   A.   The country identified for -- the address shows       01:36PM
12 Vanuatu.                                                      01:36PM
13   Q.   All right, sir.  They are alleged to be -- they are,  01:36PM
14 according to the FAA registry, what you testified to, the    01:36PM
15 companies are located in Vanuatu; correct, sir?              01:36PM
16   A.   Yes.                                                   01:36PM
17   Q.   Okay.                                                  01:36PM
18   A.   Purportedly.                                           01:36PM
19   Q.   And -- and -- so it's your testimony then, I guess as 01:36PM
20 a legal expert, that Vanuatu allows U.S. corporations in their 01:37PM
21 country?                                                      01:37PM
22   A.   According to the Constitution, there is a -- it does  01:37PM
23 allow for it to exist by name, but they can't carry on       01:37PM
24 business in Vanuatu.                                          01:37PM
25   Q.   And when did you get your legal degree, sir?          01:37PM
```

*Cross - Khamvongsa*

```
 1        A.   Where did I get my legal degree?  I base it upon the      01:37PM

 2    evidence.                                                          01:37PM

 3                MS. M. MILLER:  Your Honor, I'm --                      01:37PM

 4                MR. MARTIN:  I'm asking you -- my question was --       01:37PM

 5                MS. M. MILLER -- I'm going to object and move to        01:37PM

 6    strike Mr. Martin's comment about where did you get your legal     01:37PM

 7    degree.                                                            01:37PM

 8                MR. MARTIN:  That was a question, Your Honor.           01:37PM

 9                MS. M. MILLER:  He's asking him for legal               01:37PM

10    conclusion.                                                        01:37PM

11                THE COURT:  Hold on just a minute, let me hear          01:37PM

12    the objection.  What was the objection?                            01:37PM

13                MS. M. MILLER:  Yeah.  He's asking him for legal        01:37PM

14    conclusions, and then when the witness is giving him his           01:37PM

15    answer, he's arguing with him.  "When did you get your legal       01:37PM

16    degree?"  I objected previously when he asked a legal              01:37PM

17    conclusion, and that was overruled.  But does the comeback, if     01:37PM

18    that's the question he's going to ask, is appropriate, and I       01:37PM

19    move to strike it.                                                 01:38PM

20                THE COURT:  And?  And?                                  01:38PM

21                MR. MARTIN:  Your Honor, I asked him a question         01:38PM

22    about whether or not U.S. companies could operate in Vanuatu.      01:38PM

23    He gave me an opinion, and I asked him when he got his legal       01:38PM

24    degree.                                                            01:38PM

25                THE COURT:  Overruled, go ahead.  Overruled.           01:38PM
```

*Cross - Khamvongsa*

1    Cross-exam -- I mean, yeah, this is cross-exam.  Go ahead.    01:38PM

2    BY MR. MARTIN:  (CONTINUING)    01:38PM

3        Q.   Would you tell the ladies and gentlemen of the jury    01:38PM

4    where you got your legal degree, sir?    01:38PM

5        A.   Um, I don't have a legal degree, but I did get    01:38PM

6    training in law -- as it relates to my job in reviewing    01:38PM

7    statutes.    01:38PM

8        Q.   You don't have a legal degree?    01:38PM

9        A.   No.    01:38PM

10       Q.   Okay.  Thank you.  Now, also, these N helicopters,    01:38PM

11   that are in Count 99, which is paragraph...    01:38PM

12               MR. MARTIN:  I think I'm done.    01:39PM

13               MS. MCCONWELL:  Mr. Martin, do you --    01:39PM

14               MR. MARTIN:  May I borrow the indictment, sir?    01:39PM

15               THE WITNESS:  Yes.    01:39PM

16               MS. MCCONWELL:  Mr. Martin, do you want me to put    01:39PM

17   it on the screen?    01:39PM

18               THE WITNESS:  Here you go.    01:39PM

19               MR. MARTIN:  Thank you.    01:39PM

20               THE WITNESS:  Thank you, sir.    01:39PM

21   BY MR. MARTIN:  (CONTINUING)    01:39PM

22       Q.   I just want to make sure we're -- there we go.  I    01:39PM

23   just want to make sure you and I are talking about the -- can    01:39PM

24   you see the screen, sir?    01:39PM

25       A.   Yes, sir.    01:39PM

*Cross - Khamvongsa*

```
 1      Q.   We're talking about these helicopters, I'm just going        01:39PM
 2   to circle it with my finger, those there, and these particular       01:39PM
 3   helicopters right here identified with an N number, are we not       01:39PM
 4   sir?  So we're on the same page.                                     01:39PM
 5      A.   U.S.-registered helicopters; yes.                            01:39PM
 6      Q.   Okay.  So these here and these here?                         01:40PM
 7      A.   Yes.                                                         01:40PM
 8      Q.   All right.  Sir.  And those are the same helicopters         01:40PM
 9   that we talked about that are listed in the FAA registry, many       01:40PM
10   of them, not necessarily all of them, but almost all of them.        01:40PM
11   Would you agree with that, sir?                                      01:40PM
12      A.   They are identified in the FAA registry, those               01:40PM
13   helicopters; yes.                                                    01:40PM
14      Q.   Okay.  And you would agree with me, sir, that, as you        01:40PM
15   have, and we've talked about it, that each of those                  01:40PM
16   helicopters is an asset?                                             01:40PM
17      A.   They are an asset.                                           01:40PM
18      Q.   All right.  Okay, sir, and... you also testified,           01:40PM
19   sir, not only relating to the conspiracy to commit wire fraud        01:41PM
20   and the wire fraud counts, but you testified relating to the         01:41PM
21   engaging in a monetary transaction or what's commonly referred       01:41PM
22   to as money laundering counts.  Do you recall that, sir?            01:41PM
23      A.   I did testify to that.                                       01:41PM
24      Q.   And those are outlined in Counts 105 through 110.            01:41PM
25   Would you agree with that?                                           01:41PM
```

1    A.   Yes.                                                01:41PM

2    Q.   If I can turn -- just so that I make sure we're on  01:41PM

3 the same pain again here.  I'm going to show you, from the  01:41PM

4 indictment, Count 105 and 106 are reflected here; correct,  01:41PM

5 sir?                                                        01:42PM

6    A.   Yes.                                                01:42PM

7    Q.   And those relate to the transfers of funds from the 01:42PM

8 Caledonian bank to a -- from the Caledonian account in the  01:42PM

9 Bank of Hawaii to the Hansen Northern account in the Bank of 01:42PM

10 Hawaii; correct, sir?                                       01:42PM

11   A.   Caledonian Bank of Hawaii corporate bank account to  01:42PM

12 Hansen Northern Bank of Hawaii corporate bank account, the  01:42PM

13 $3,000,000 transfer; yes.                                   01:42PM

14   Q.   And, additionally, Counts 107 through 110, we're on  01:42PM

15 the next page, also relates to the transfer of funds; correct, 01:42PM

16 sir?                                                        01:42PM

17   A.   Electronically-transferred funds; yes.              01:42PM

18   Q.   Correct.  Correct.  And the premise behind those is 01:42PM

19 that the funds that were transferred were, quote,          01:42PM

20 criminally-derived property; correct, sir?                 01:43PM

21   A.   Yes.                                                01:43PM

22   Q.   And if those funds are not criminally-derived       01:43PM

23 property, those money laundering counts cannot stand.  Isn't 01:43PM

24 that true, sir?                                            01:43PM

25   A.   I would never have included that or recommended that. 01:43PM

*Cross - Khamvongsa*

1    Q.   I didn't ask you what you recommended or what you    01:43PM
2  concluded.  I asked you, isn't it true, sir, that if those    01:43PM
3  funds are not criminally-derived property, those counts cannot    01:43PM
4  stand?    01:43PM
5    A.   That's for the jury to decide.    01:43PM
6    Q.   I agree with you, sir.  I agree with you 100%.  If    01:43PM
7  the jury were to decide those are not criminally-derived    01:43PM
8  property, those counts can't stand.  Isn't that true, sir?    01:43PM
9    A.   Are we talking generally, or are we talking about    01:43PM
10  this case?    01:43PM
11    Q.   I'm talking about the law, sir.  If you don't know    01:43PM
12  the law, just tell me.  Do you not -- I tell you what, I'll    01:43PM
13  withdraw that question.  May I have just one moment, Your    01:43PM
14  Honor?  I need to talk to co-counsel.    01:44PM
15         THE COURT:  You may have one minute.  Yeah, no    01:44PM
16  I'm just -- we still -- recess not until two, but go ahead.    01:44PM
17         MR. MARTIN:  I don't think I can discuss it with    01:44PM
18  him that long, Your Honor.    01:44PM
19         THE COURT:  Yeah, I didn't think so.  Go ahead.    01:44PM
20         MR. MARTIN:  Thank you, agent.  No further    01:44PM
21  questions, Your Honor.    01:45PM
22         THE COURT:  All right.  Thank you, Mr. Martin.    01:45PM
23  Why don't we just go ahead and take our -- we'll take our    01:45PM
24  recess early, and just still keep it at 15 minutes.  So ladies    01:45PM
25  and gentlemen, keep an open mind, do not form or express any    01:45PM

*Cross - Khamvongsa*

```
 1    opinion on this case, but when you come back, Ms. Miller, will        01:45PM
 2    begin redirect.  Please rise for the jury.                            01:45PM
 3                   (Jury out at 1:45 p.m.)                                01:45PM
 4                   THE COURT:  Okay.  I'll see you guys in                01:45PM
 5    15 minutes.                                                           01:45PM
 6                   (Recess taken at 1:45 p.m.)                            01:45PM
 7                   (Back on the record at 2:18 p.m.)                      02:18PM
 8                   THE COURT:  Okay.  We ready to proceed, Counsels?      02:18PM
 9                   MS. M. MILLER:  Yes, Your Honor.                       02:18PM
10                   THE COURT:  All right.  We'll call in the jury.        02:18PM
11    Sorry for that delay.  We have a 4:00, right?                         02:18PM
12                   MS. M. MILLER:  Yes.  And then we're having the        02:18PM
13    hearing, Your Honor, at that time?                                    02:18PM
14                   THE COURT:  Right.  Shouldn't take too long.           02:18PM
15    I'll just rule from the bench.                                        02:18PM
16                   MS. M. MILLER:  Okay.  Thank you.                      02:18PM
17                   THE COURT:  I don't think I need to hear               02:18PM
18    arguments.                                                            02:18PM
19                   MS. M. MILLER:  Okay.                                  02:18PM
20                   THE COURT:  So let me see.                             02:18PM
21                   (Pause.)                                               02:18PM
22                   THE COURT:  Maybe just a couple of questions.          02:19PM
23    Oh, how long do you think you'll be, Ms. Marie Miller?                02:19PM
24                   MS. M. MILLER:  Probably go until 4.                   02:19PM
25                   THE COURT:  Okay.  You think you'll be done with       02:19PM
```

*Cross - Khamvongsa*

```
1    the witness?                                               02:19PM

2              MS. M. MILLER:  I'm hoping -- I'm hoping we will  02:19PM

3    be.                                                        02:19PM

4              THE COURT:  How long have you been here?  On the 02:19PM

5    stand?                                                     02:19PM

6              THE WITNESS:  How long I have been on the stand? 02:19PM

7    I think --                                                 02:19PM

8              THE COURT:  How many hours, days?                02:19PM

9              THE WITNESS:  Day five.                          02:19PM

10             MS. M. MILLER:  I think you've spent more time    02:19PM

11   off the stand though then on.  You don't think so?        02:19PM

12             MR. MARTIN:  June 8th.  All day June 8th.        02:19PM

13             THE WITNESS:  Oh, so I could include all the time 02:19PM

14   in between.                                                02:19PM

15             THE COURT:  I notice when you said "assets," you 02:19PM

16   were like assets.                                         02:19PM

17             THE WITNESS:  Assets.                            02:19PM

18             THE COURT:  Is there a meaning to that?          02:19PM

19             (Laughing.)                                      02:20PM

20             THE COURT:  You emphasized.  Just joking.  But   02:20PM

21   not really.                                                02:20PM

22             (Jury in at 2:20 p.m.)                           02:20PM

23             THE COURT:  All right.  Please be seated.  I'm    02:20PM

24   sorry, I thought it would only be about fifteen minutes, but 02:20PM

25   went a little longer than I thought.  I had some other legal 02:20PM
```

*Cross - Khamvongsa*

matters to take care in my chamber on my other cases.  All

right.  So we'll go ahead and begin.

　　　　　Ms. Marie Miller, go ahead.

　　　　　MS. M. MILLER:  Thank you, Your Honor.  Good

afternoon, members of the jury.  Thank you.


**REDIRECT EXAMINATION**

BY MS. M. MILLER:

Q.　Special Agent Khamvongsa, Mr. McConwell asked you

about the essential parts of the tuna boat contracts.  Do you

recall those questions?

A.　Um, I recall him asking something to that effect;

yeah.

Q.　Okay.  Can you tell the members of the jury why is

the registration number is an essential part of the tuna boat

contract?

A.　The registration number is essential because it

identifies the helicopter, as well as to what country it's

registered to, which means that whatever country is reflected

by the prefixes determines what laws they have to follow.  In

this case, any time it's an N registration, it is -- has to

follow FAA laws or regulations.

Q.　Why, when Mr. Martin asked you whether the words

"Federal Aviation Administration" or "FAA" were in the

contracts he showed you, did you say that yes, they are,

*Redirect - Khamvongsa*

```
 1   because of that registration number?                          02:21PM

 2       A.   Why did I say that?                                   02:21PM

 3       Q.   Yes.                                                  02:21PM

 4       A.   Because the helicopters in which I reviewed and that  02:21PM

 5   contract, it specifically identified an N-number which is a    02:21PM

 6   U.S. registration number.  So you are -- so those helicopters  02:22PM

 7   are bound by the rules and regulations of the Federal Aviation 02:22PM

 8   Authority.                                                     02:22PM

 9       Q.   Why is the lessor, the name of the company that's     02:22PM

10   leasing the helicopter to the tuna boat company, an essential  02:22PM

11   part of the contract?                                          02:22PM

12       A.   The lessor is important because it identifies who the 02:22PM

13   operator is, what is reflected in the registry, if there is -- 02:22PM

14   in this case, there was a lot of misrepresentations in the     02:22PM

15   contract where the lessor --                                   02:22PM

16            MR. MARTIN:  Your Honor, I object.  I object to       02:22PM

17   the use of the term misrepresentations.  He can testify as to  02:22PM

18   what his investigation said, but him characterizing something  02:22PM

19   as misrepresentation, he needs to talk about what the contract 02:22PM

20   said, not whether it was misrepresenting or not.  And it calls 02:22PM

21   for a conclusion, and I object to a conclusion.                02:22PM

22            THE COURT:  All right.  Yes, Ms. McConwell?           02:22PM

23            MS. MCCONWELL:  And it lacks foundation.              02:22PM

24            THE COURT:  I'm sorry, lacks foundation?             02:23PM

25            MS. MCCONWELL:  Yes.                                  02:23PM
```

*Redirect - Khamvongsa*

|     |                                                              |        |
|-----|--------------------------------------------------------------|--------|
| 1   | THE COURT:  All right.                                       | 02:23PM |
| 2   | MS. M. MILLER:  Well, Your Honor, we already                 | 02:23PM |
| 3   | heard testimony from Special Agent Khamvongsa that even though | 02:23PM |
| 4   | the contract said the lessor was one company and paragraph 8 | 02:23PM |
| 5   | of the contract said that the lessor must be the registered  | 02:23PM |
| 6   | owner, that that was not true.  It is appropriate for an IRS | 02:23PM |
| 7   | special agent to identify misrepresentations and            | 02:23PM |
| 8   | inconsistencies, and I do have case law to cite, Your Honor, | 02:23PM |
| 9   | if necessary, regarding that, that is not --                | 02:23PM |
| 10  | THE COURT:  Okay.                                           | 02:23PM |
| 11  | MS. M. MILLER: -- opinion.                                  | 02:23PM |
| 12  | THE COURT:  If he wants to identify                        | 02:23PM |
| 13  | inconsistencies, he can do that.                            | 02:23PM |
| 14  | MS. M. MILLER:  Yes, we could use the word                 | 02:23PM |
| 15  | inconsistency instead of misrepresentation.                 | 02:23PM |
| 16  | THE COURT:  Well, okay.                                     | 02:23PM |
| 17  | MS. M. MILLER:  Although -- inaccuracy is another           | 02:23PM |
| 18  | word.                                                        | 02:23PM |
| 19  | THE COURT:  Okay, if it relates to this                    | 02:23PM |
| 20  | contract --                                                  | 02:23PM |
| 21  | MS. M. MILLER:  Yes.                                        | 02:23PM |
| 22  | THE COURT:  -- in question, then he can do that,           | 02:23PM |
| 23  | and if it's related to what was already brought out during  | 02:23PM |
| 24  | cross-examination, the Court will allow that.               | 02:23PM |
| 25  | MS. M. MILLER:  Yes.                                        | 02:23PM |

*Redirect - Khamvongsa*

```
 1              MR. MARTIN:  My objection was conclusions and         02:23PM
 2    speculation, Your Honor.                                        02:23PM
 3              THE COURT:  All right.  The Court will sustain        02:23PM
 4    the objection to that extent, but as far as his personal       02:23PM
 5    knowledge and investigation.                                   02:24PM
 6              MS. M. MILLER:  Yes.                                  02:24PM
 7              THE COURT:  The Court will allow that.  Go ahead.     02:24PM
 8    BY MS. M. MILLER:  (CONTINUING)                                02:24PM
 9       Q.   Yes.  So Special Agent Khamvongsa, could you remind    02:24PM
10    the jury were there inconsistencies between the name of the    02:24PM
11    lessor in the contracts and the name of the registered owner   02:24PM
12    and what we've seen in the FAA files?                          02:24PM
13       A.   Yes.                                                   02:24PM
14       Q.   So Section 8 of the contract that says, the lessor     02:24PM
15    shall be the registered owner.  If the lessor is not the       02:24PM
16    registered owner, isn't that a misrepresentation of who the    02:24PM
17    lessor is?                                                     02:24PM
18              MR. MARTIN:  Your Honor, this is a leading           02:24PM
19    question, Your Honor.  She can ask him --                      02:24PM
20              MS. M. Miller:  It is not.                           02:24PM
21              THE COURT:  All right.  Wait.  Wait just a           02:24PM
22    minute, just rephrase it.                                      02:24PM
23              MS. M. MILLER:  Yes, Your Honor.                     02:24PM
24              THE COURT:  It is leading.                           02:24PM
25    BY MS. M. MILLER:  (CONTINUING)                                02:24PM
```

*Redirect - Khamvongsa*

1    Q.   So can you please tell the members of the jury, as an    02:24PM
2  experienced IRS agent, what do you make of a situation where    02:24PM
3  the lessor is named with a name, the contract requires that    02:24PM
4  person to be the registered owner, and it is not?    02:25PM
5    A.   It is inconsistent with the contract.    02:25PM
6         MS. MCCONWELL:  That calls for a conclusion.    02:25PM
7         THE COURT:  I'm sorry?    02:25PM
8         MS. MCCONWELL:  I said I think this calls for a    02:25PM
9  legal conclusion.    02:25PM
10        THE COURT:  All right.  Overruled.  Go ahead.    02:25PM
11        THE WITNESS:  The name on the FAA registry is    02:25PM
12 inconsistent with what's reflected on the contract.    02:25PM
13 BY MS. M. MILLER: (CONTINUING)    02:25PM
14   Q.   Okay.  Why is airworthiness an essential part of a    02:25PM
15 contract?    02:25PM
16   A.   So if we go back to the registration, the N    02:25PM
17 registration is representing that it is a aircraft is being    02:25PM
18 provided that meets the standards of the FAA.  So in this    02:25PM
19 case, the representations made that this is an airworthy    02:25PM
20 aircraft to the tuna boat companies, the tuna boat companies    02:25PM
21 are believing that's what they're getting.    02:25PM
22   Q.   Okay.  Did you ever see anything in any of the    02:25PM
23 contracts that indicated that these aircraft were on the    02:26PM
24 destroyed list?    02:26PM
25   A.   No.    02:26PM

*Redirect - Khamvongsa*

 1     Q.   Was there anything in the contract that indicated
 2  that the aircraft had been illegally rebuilt?
 3     A.   No indication in the contract.
 4     Q.   How about whether the helicopters were actually
 5  foreign helicopters not eligible for FAA registration?
 6     A.   That was never reflected in the contract.
 7     Q.   How about the fact that some of the airworthiness
 8  certificates were obtained as a result of a bribe?
 9     A.   That was not reflected in the contract, which affects
10  airworthiness.
11     Q.   Why is the qualification of the airman, who were also
12  being leased with the helicopters, an essential part of the
13  contract?
14     A.   Again, if we go back to the registration, these are
15  U.S.-registered helicopters, which must comply with the FAA.
16  So an airman, such as a pilot or mechanic, must be FAA
17  certificated; in this case, they were not.
18              MS. M. MILLER:  Your Honor, I'd like to show the
19  witness what has been previously marked, but not admitted yet,
20  as Government's Exhibit 430.
21              THE COURT:  All right.  Counsel, you -- they have
22  a copy of that?
23              MS. M. MILLER:  They do.
24              THE COURT:  All right.  Are you going to flash it
25  up?

*Redirect - Khamvongsa*

```
 1              MS. M. MILLER:  It hasn't been admitted yet, Ms.    02:27PM
 2    Santos.                                                       02:27PM
 3              THE COURT:  All right.  430.  You want to --        02:27PM
 4    Okay.  Agent can see that.                                    02:27PM
 5    BY MS. M. MILLER: (CONTINUING)                                02:27PM
 6       Q.   And if you could take a moment and please review that 02:27PM
 7    document.                                                     02:27PM
 8       A.   (Witness read document.)                              02:28PM
 9              THE COURT:  Is there a specific paragraph here       02:28PM
10    that you're focused on, Counsel?  If you are --               02:29PM
11              MS. M. MILLER:  It's the entire e-mail, Your        02:29PM
12    Honor.                                                        02:29PM
13              THE COURT:  All right.  Can you make this,          02:29PM
14    please, a little bigger, Counsel?                             02:29PM
15              MS. M. MILLER:  Yes, Ms. Miller.                    02:29PM
16              MS. S. MILLER:  Yes.                                02:29PM
17              MS. M. MILLER:  Highlight the bottom part of it     02:29PM
18    or pull it out.                                               02:29PM
19              THE WITNESS:  Okay.                                 02:29PM
20    BY MS. M. MILLER: (CONTINUING)                                02:29PM
21       Q.   Did you read it, sir?                                 02:29PM
22       A.   Yes.                                                  02:29PM
23       Q.   Can you tell --                                       02:29PM
24              MR. MARTIN:  Has it been admitted or not, Your      02:29PM
25    Honor.                                                        02:29PM
```

*Redirect - Khamvongsa*

```
 1              THE COURT:  No, it has not been admitted she      02:29PM

 2    said.  So she's -- I guess she's going to try and set a     02:29PM

 3    foundation.                                                 02:29PM

 4              MS. M. MILLER:  Correct.                          02:29PM

 5              MR. MARTIN:  I thought you asked him to read it.  02:29PM

 6              MS. M. MILLER:  No, I said have you read it.      02:29PM

 7              MR. MARTIN:  I'm sorry, Marie.  I couldn't hear.  02:29PM

 8    BY MS. M. MILLER: (CONTINUING)                              02:29PM

 9       Q.   Have you read it, sir?                              02:29PM

10       A.   I just read it as of now.                          02:29PM

11       Q.   Yes.  Do you recognize it?                         02:29PM

12       A.   It's -- yes.                                        02:29PM

13       Q.   Okay.  Is it a true and correct copy of what was   02:29PM

14    seized from the Defendant's computers?                      02:29PM

15       A.   Yes.                                                02:29PM

16              MS. M. MILLER:  Your Honor, at this time, I would 02:29PM

17    offer into evidence what has been previously been marked as 02:29PM

18    Government's Exhibit 430.                                   02:29PM

19              MR. MARTIN:  Your Honor, I have an objection, but 02:29PM

20    I think it would be appropriate for the jury be excused for 02:29PM

21    this purpose.  And I apologize, but we had no idea this     02:30PM

22    exhibit was going to be brought in.                         02:30PM

23              MS. M. MILLER:  Could we just approach the bench  02:30PM

24    to talk about that, Your Honor?  As opposed to sending the  02:30PM

25    jury out again so soon after break.                         02:30PM
```

*Redirect - Khamvongsa*

| | |
|---|---|
| 1 | THE COURT: Can we get on the thing there? Does | 02:30PM |
| 2 | it work? Well, let's see if it works, I'd rather just stay | 02:30PM |
| 3 | over here. Keep you guys over there. Don't get too close to | 02:30PM |
| 4 | me. You guys have been traveling, and so have I. I don't | 02:30PM |
| 5 | want to give anything to you either. I'm not trying to be. | 02:30PM |
| 6 | (Technical issues with sidebar connection.) | 02:30PM |
| 7 | (Pause.) | 02:32PM |
| 8 | THE COURT: I guess it's on vacation or | 02:32PM |
| 9 | something. Mine won't even start. You don't know what | 02:32PM |
| 10 | channel yours -- | 02:32PM |
| 11 | MS. M. MILLER: It will turn on, but it doesn't | 02:32PM |
| 12 | allow the speaker to turn on. | 02:32PM |
| 13 | THE COURT: I think there is -- and sorry, but | 02:32PM |
| 14 | our guy is -- | 02:32PM |
| 15 | MS. M. MILLER: Not here. | 02:32PM |
| 16 | THE COURT: -- not here. I don't know something | 02:32PM |
| 17 | happened to him. So we'll try to fix it tomorrow, but in the | 02:32PM |
| 18 | meantime, I'm going to excuse the jurors. Sorry, jurors, but | 02:32PM |
| 19 | you know, take a stretch. Keep an open mind. Take a stretch. | 02:32PM |
| 20 | Hopefully, it won't be that long. | 02:32PM |
| 21 | (Jury out at 2:32 p.m.) | 02:32PM |
| 22 | THE COURT: We're outside the presence -- you | 02:33PM |
| 23 | want to step outside then. | 02:33PM |
| 24 | THE WITNESS: Sure. | 02:33PM |
| 25 | THE COURT: Thank you, Agent. | 02:33PM |

*Redirect - Khamvongsa*

|     |                                                              |        |
|-----|--------------------------------------------------------------|--------|
| 1   | THE WITNESS:  Yes, Your Honor.                               | 02:33PM |
| 2   | THE COURT:  This is Exhibit -- is it 430?                    | 02:33PM |
| 3   | MS. M. MILLER:  Yes, Your Honor.                            | 02:33PM |
| 4   | THE COURT:  All right.  First of all, once the              | 02:33PM |
| 5   | witness gets out, question is what's your proffer on this, why | 02:33PM |
| 6   | are you trying to bring this in?                            | 02:33PM |
| 7   | MS. M. MILLER:  Because Mr. Martin, in                       | 02:33PM |
| 8   | questioning the witness, asked the witness repeatedly whether | 02:33PM |
| 9   | he was aware of the fact that there was any litigation, either | 02:33PM |
| 10  | pending or that had occurred, between the tuna boat companies | 02:33PM |
| 11  | and Hansen Helicopters, arguing that the tuna boat companies | 02:33PM |
| 12  | always got what they paid for, what they wanted, there wasn't | 02:33PM |
| 13  | any litigation, any conflict or anything like this.          | 02:33PM |
| 14  | What this shows, Your Honor, is that there were              | 02:33PM |
| 15  | discussions between the tuna boat companies, and the         | 02:33PM |
| 16  | Defendants as well as litigation -- potential litigation     | 02:34PM |
| 17  | between individual families of persons who were killed or    | 02:34PM |
| 18  | injured by the Defendants.  And I have a number of exhibits, | 02:34PM |
| 19  | some of which have already been admitted into evidence, and  | 02:34PM |
| 20  | this particular one, to show that there were these issues that | 02:34PM |
| 21  | did arise, that rise to the level of prospective litigation. | 02:34PM |
| 22  | THE COURT:  Who's Teresa?                                    | 02:34PM |
| 23  | MS. M. MILLER:  She's somebody -- she's someone             | 02:34PM |
| 24  | who we see in another e-mail who's a representative of one of | 02:34PM |
| 25  | the tuna boat companies.                                     | 02:34PM |

*Redirect - Khamvongsa*

         1          THE COURT:  Is she like an agent to the company?    02:34PM

         2          MS. M. MILLER:  She is.                             02:34PM

         3          THE COURT:  Mm-hmm.  All right.  Yes, Mr. Martin?   02:34PM

         4          MR. MARTIN:  First of all, Your Honor, if I'm       02:34PM

         5    going to be quoted, it should be accurate.  My question was,  02:34PM

         6    are you aware of any tuna boat company that has sued?  That    02:34PM

         7    doesn't mean pending litigation or possible litigation.  That  02:34PM

         8    has sued Hansen Helicopters relating to any of these       02:34PM

         9    contracts?  And the answer was "not yet."                 02:35PM

        10          THE COURT:  Right, I recall that question.          02:35PM

        11          MR. MARTIN:  I did not ask about possible or        02:35PM

        12    pending or anything -- as a matter of fact, I excluded it from  02:35PM

        13    my question because I made him correct it.  I said -- I   02:35PM

        14    specifically said, any litigation that has occurred.      02:35PM

        15    Secondly --                                               02:35PM

        16          THE COURT:  Okay, so the Court would agree with     02:35PM

        17    you, I do recall that part.  Okay.  Next one?  Next --    02:35PM

        18          MR. MARTIN:  Secondly, Your Honor, this is --       02:35PM

        19    it's far outside the scope of my cross-examination, and it is  02:35PM

        20    a letter to Marvin Reed from somebody who we have no clue who  02:35PM

        21    it is.  The government may represent it's one of the tuna boat  02:35PM

        22    companies or something, but all I have is -- all I have is  02:35PM

        23    TWH-- TWTHSU at Fong K-U-O, dot com, dot TV.  And I don't know  02:35PM

        24    who that is, Judge.  And so I think that we don't have a   02:36PM

        25    foundation for this exhibit to come in.  Even though it's  02:36PM

```
1   beyond the scope of cross-examination, and it's hearsay to Jon    02:36PM
2   Walker.                                                           02:36PM
3           MS. M. MILLER:  Your Honor, this goes directly to        02:36PM
4   counter the cross-examination because Mr. Martin and             02:36PM
5   Mr. McConwell both asked this witness questions about his        02:36PM
6   knowledge of and basis for the criminal fraud underlying the     02:36PM
7   wire fraud counts.                                               02:36PM
8           Part of the fraud, as Your Honor knows, is the           02:36PM
9   fact that the airmen were not certificated.  As a result of      02:36PM
10  that, plus the fact that the aircraft were not airworthy,        02:36PM
11  regardless of what was represented, there were claims, there     02:36PM
12  were injuries, there were deaths.                                02:36PM
13          This goes to the Defendants' knowledge because           02:36PM
14  this is a co-defendant and the e-mail address is for Fong Kuo,   02:36PM
15  K-U-O, which is all over the billings and collections list       02:36PM
16  that the Defendants produced to us in response to a grand jury   02:37PM
17  subpoena, as Your Honor has seen, Exhibit 725 and 726.  This     02:37PM
18  is a direct communication between the tuna boat company          02:37PM
19  representative and the Defendants regarding an incident.  And    02:37PM
20  some of the other e-mails that the jury should see, Your         02:37PM
21  Honor, is the Defendants trying to conceal accidents,            02:37PM
22  incidences, claims, issues, between themselves and the tuna      02:37PM
23  boat companies.  This goes directly to Mr. Martin opening the    02:37PM
24  door by leaving an impression with the jury that the tuna boat   02:37PM
25  companies got what they bargained for.                           02:37PM
```

*Redirect - Khamvongsa*

02:37PM (lines 1-9)
02:38PM (lines 10-25)

1    As a matter of fact, Mr. McConwell even said,

2  isn't it true the tuna boat companies got what they bargained

3  for, they were satisfied?  The essential element of this

4  contract was just to produce a helicopter?  Didn't matter if

5  it was a tin can or not.

6    Well, you know what, Your Honor, that's just not

7  true.  This goes to the weight, not the admissibility.  It's

8  relevant to show that there were conflicts between the tuna

9  boat companies and the Defendants and that there were

10  numerous, numerous issues and problems.  This isn't a

11  situation where the tuna boat companies weren't victims of the

12  Defendants' fraud.

13    THE COURT:  All right.  Anything further,

14  Counsels?  Defense.

15    MR. MARTIN:  Your Honor, other than the fact that

16  my question specifically dealt with, "lawsuits."

17    THE COURT:  All right.  Any -- Ms. McConwell?

18    MS. MCCONWELL:  Yeah.  Hansen Helicopters is not

19  a party to Counts 99 through 110 --

20    THE COURT:  I'm sorry.  Can you get on the mic?

21  I can't hear you.

22    MS. MCCONWELL:  Hansen Helicopters is not named

23  in the indictment, 99 through 110, so to any extent that she

24  wants to assign this to Hansen Helicopters, it's inappropriate

25  for the admission against Hansen Helicopters.  Additionally,

*Redirect - Khamvongsa*

1    just by the plain text of this e-mail, which I would submit is          02:38PM

2    hearsay, it doesn't show that there is a conflict.  There is a          02:38PM

3    question that's being broached.                                          02:38PM

4            MS. M. MILLER:  It shows knowledge on the part of              02:38PM

5    the Defendants regardless of --                                          02:38PM

6            THE COURT:  All right.  The Court will -- the                  02:38PM

7    Court has, you know, listened to the evidence and so the                02:38PM

8    question really is -- is it beyond the scope of cross.  At              02:38PM

9    this point the Court finds it is beyond the scope of cross,             02:39PM

10   and will sustain the objection.                                         02:39PM

11           MS. M. MILLER:  Okay.                                          02:39PM

12           THE COURT:  On this particular letter at this                  02:39PM

13   time.  Yeah.                                                             02:39PM

14           MS. M. MILLER:  Sure.                                          02:39PM

15           THE COURT:  Okay.  Next, we'll call in the jury               02:39PM

16   then.                                                                    02:39PM

17           MS. M. MILLER:  Yes.                                           02:39PM

18           THE COURT:  Is there anything else that we                     02:39PM

19   should look at --                                                        02:39PM

20           MS. M. MILLER:  Well, there is, while the jury is              02:39PM

21   out.                                                                     02:39PM

22           THE COURT:  Why don't we look at it now.                       02:39PM

23           MS. M. MILLER:  The next exhibit that I intend to              02:39PM

24   use with this witness is G-1, which has already been entered           02:39PM

25   into evidence.                                                           02:39PM

```
 1                THE COURT:  Oh, it's already been admitted?        02:39PM

 2                MS. M. MILLER:  It's already been admitted into    02:39PM

 3    evidence.                                                      02:39PM

 4                THE COURT:  All right.  Then you can use that.      02:39PM

 5    Move on to the next.                                           02:39PM

 6                MS. M. MILLER:  And 421, which has already been    02:39PM

 7    admitted into evidence as well.  Okay, that's it.              02:39PM

 8                THE COURT:  So is there anything that has not       02:39PM

 9    been that you want in --                                       02:39PM

10                MS. M. MILLER:  Yes.                                02:39PM

11                THE COURT:  That we should look at right now        02:39PM

12    because our COVID bench apparatus is not working.              02:39PM

13                MR. MARTIN:  What was the other, 421?               02:39PM

14                MS. M. MILLER:  Yeah.                               02:39PM

15                THE COURT:  What were the next two that you were    02:39PM

16    going to admit?                                                02:39PM

17                MS. M. MILLER:  So I'm going to what was not        02:39PM

18    already admitted into evidence.                                02:39PM

19                THE COURT:  Not already, not admitted.             02:39PM

20                MR. MARTIN:  Well, I want to look at it to make     02:39PM

21    sure that the one she's having aren't beyond the scope.        02:39PM

22                THE COURT:  What are the next two that have been    02:39PM

23    admitted, you believe?                                         02:39PM

24                MS. M. MILLER:  Exhibit 1 and Exhibit 421.          02:39PM

25                THE COURT:  Okay.  Hold on.  Give him one second   02:40PM
```

*Redirect - Khamvongsa*

```
 1    to look at 1 and 421.  Then tell us when you're done,          02:40PM
 2    Counsels, Defense.  Then when you're done, go to the next one,  02:40PM
 3    the ones that are not admitted yet.  We might as well get       02:40PM
 4    through this, let's do this now at this bench conference.  She  02:40PM
 5    said 1 and 421 have been admitted.                             02:40PM
 6              MS. M. MILLER:  They have been.                      02:40PM
 7              MS. MCCONWELL:  Oh, oh, they have been admitted,     02:40PM
 8    but we need to see if they are beyond the scope.               02:40PM
 9              MS. M. MILLER:  Oh, boy.                             02:40PM
10              MR. MARTIN:  Your Honor, my objection to --          02:40PM
11              THE COURT:  Wait.  Pull up.                          02:40PM
12              MR. MARTIN:  421.                                    02:40PM
13              THE COURT:  Pull 421 up, please.  And what's the     02:40PM
14    proffer on 421?  Let me just hear the proffer.  You should     02:40PM
15    hear the proffer before you object.  421.                      02:40PM
16              MS. MCCONWELL:  I've got it on my screen.            02:40PM
17              MS. M. MILLER:  We'll pull it up.  So, Your          02:40PM
18    Honor, this is another situation where the -- there is         02:40PM
19    communications back and forth between, in this case, a         02:40PM
20    representative of the family of a pilot who was killed and the 02:41PM
21    Defendants paying for the movement of his body to his home in  02:41PM
22    order to be buried.  If you see on the bottom of the second    02:41PM
23    page, Your Honor, that's where the communications start, and   02:41PM
24    there is a discussion regarding compensation.                  02:41PM
25              And if you also remember, Your Honor, Mr. Reed       02:41PM
```

*Redirect - Khamvongsa*

```
 1    testified that the Defendants paid $100,000 to this family to        02:41PM
 2    avoid any lawsuit being filed.  And the Government's                 02:41PM
 3    contention is that if money is paid to tuna boat companies or        02:41PM
 4    to families of pilots and others to avoid lawsuits being             02:41PM
 5    filed, that is relevant, that is within the scope of the             02:41PM
 6    cross-examination where Mr. Martin asked about whether any           02:41PM
 7    lawsuits had been filed.  Concealing information, paying             02:41PM
 8    people off so that lawsuits aren't filed is very relevant to         02:41PM
 9    the issue of fraud.  This is a fraud case.  Concealment is           02:41PM
10    always something that is included in a fraud.                        02:42PM
11              MR. MARTIN:  May I respond, Your Honor?                     02:42PM
12              THE COURT:  Okay.  Good argument.                          02:42PM
13              MR. MARTIN:  My question was, have any tuna boat           02:42PM
14    companies filed any litigation against us because of these          02:42PM
15    contracts.  It had nothing to do with death of pilots or             02:42PM
16    settlements or payment of things relating to a pilot or an           02:42PM
17    airman.  It had -- the question was very specific, had any           02:42PM
18    tuna boat companies sued us because of failing to comply with        02:42PM
19    contracts.  This doesn't go to that issue.                           02:42PM
20              THE COURT:  I got it.  Any -- Ms. McConwell?                02:42PM
21              MS. MCCONWELL:  We join.  Also, it's not relevant          02:42PM
22    to Hansen Helicopters, we're not -- we're not in any of the          02:42PM
23    counts.                                                              02:42PM
24              THE COURT:  Bring the mic closer to you and then           02:42PM
25    just pick it up.                                                     02:42PM
```

*Redirect - Khamvongsa*

1  MS. MCCONWELL:  I'll do that.  I just don't like  02:42PM

2  to bump it.  And it was an insurance payment, not some kind of  02:42PM

3  a settlement, buy out, pay off or buy out as Ms. Miller is  02:43PM

4  representing.  02:43PM

5  THE COURT:  All right.  Ms. Miller, you may  02:43PM

6  proceed.  02:43PM

7  MS. M. MILLER:  Yes, Your Honor, it's in  02:43PM

8  conjunction with the testimony that we heard from Mr. Reed  02:43PM

9  that in addition to paying the body to be sent back, that this  02:43PM

10  company paid Mr. Santos family $100,000 in compensation for  02:43PM

11  his death.  Again, to avoid litigation.  02:43PM

12  THE COURT:  All right.  The Court will sustain  02:43PM

13  the objection because it was very narrow.  You know, you've  02:43PM

14  already got this in.  You could make the argument.  02:43PM

15  MS. M. MILLER:  Sure.  02:43PM

16  THE COURT:  However -- we could talk about that  02:43PM

17  later.  02:43PM

18  MS. M. MILLER:  Yes.  02:43PM

19  THE COURT:  The Court will sustain the objection,  02:43PM

20  and disregard -- disallow this to come in.  02:43PM

21  MR. MARTIN:  We need to look at Exhibit No. 1,  02:43PM

22  Your Honor.  02:43PM

23  THE COURT:  Oh, okay.  One?  02:43PM

24  MR. MARTIN:  That's --  02:43PM

25  THE COURT:  Bring it up, one.  How many exhibits  02:43PM

*Redirect - Khamvongsa*

```
 1  do you have so we could let the jurors know, there's some          02:43PM
 2  smokers in there, I'm pretty sure they want to smoke.              02:43PM
 3          MS. M. MILLER:  Well, I think this is only                 02:43PM
 4  related to the litigation questions that Mr. Martin asked.         02:43PM
 5  The rest of the questions all include exhibits that have           02:44PM
 6  already been admitted into evidence except for one that has        02:44PM
 7  not been admitted into evidence.                                   02:44PM
 8          THE COURT:  So how many more?  You have one more           02:44PM
 9  exhibit you're going to talk about this after this?               02:44PM
10          MS. M. MILLER:  Not related to this issue.                 02:44PM
11          THE COURT:  Oh, okay.  All right.  Let's make --           02:44PM
12  can you make this bigger, and so what's your proffer on this,      02:44PM
13  this G --                                                          02:44PM
14          MS. M. MILLER:  So this one is a communication             02:44PM
15  between Jon Walker and Rufus Crowe where he's talking about        02:44PM
16  the fishing companies being aware of the latest fatality.         02:44PM
17  Also in this e-mail, there is a discussion about losing four       02:44PM
18  contracts.  That's the reason why, again, related to this         02:44PM
19  litigation question and issue.                                     02:44PM
20          MR. Martin:  The subject matter of the e-mail,             02:44PM
21  Your Honor, is where the Pacific Ranger ran into a helicopter      02:44PM
22  that was trying to disconnect a buoy.  The spotter was killed      02:44PM
23  in that, and there was no litigation out of that, Your Honor.      02:44PM
24  And so the reference to that , I mean, a helicopter getting        02:45PM
25  hit by a boat does not have anything to do with a tuna boat        02:45PM
```

| | |
|---|---|
| 1 | company suing us because -- and there is no litigation.  You | 02:45PM |
| 2 | heard the witness.  There's been no litigation yet. | 02:45PM |
| 3 | MS. M. MILLER:  Your Honor, this has to do with | 02:45PM |
| 4 | Mr. McConwell's discussion in cross-examination, where he was | 02:45PM |
| 5 | saying didn't the tuna boat companies get what they wanted, | 02:45PM |
| 6 | weren't the parts -- essential parts of the lease fulfilled, | 02:45PM |
| 7 | didn't the tuna boat companies, you know, weren't they | 02:45PM |
| 8 | satisfied because at least they got an airplane, whether it | 02:45PM |
| 9 | was airworthy or not, same thing with the airman, whether they | 02:45PM |
| 10 | were qualified or not.  This contradicts directly the | 02:45PM |
| 11 | contention that the tuna boat companies had no problems and no | 02:45PM |
| 12 | issues with Hansen Helicopters. | 02:45PM |
| 13 | THE COURT:  All right.  So this has nothing to do | 02:45PM |
| 14 | with the liability question? | 02:45PM |
| 15 | MS. M. MILLER:  No, this has to do with the more | 02:45PM |
| 16 | general question. | 02:45PM |
| 17 | MR. MARTIN:  Read the e-mail, Your Honor, it | 02:45PM |
| 18 | deals directly with liability, and it doesn't have anything to | 02:45PM |
| 19 | do with airmen or anything else.  It's talking about buoys. | 02:46PM |
| 20 | This is stealing buoys, boats are having their spotters steal | 02:46PM |
| 21 | buoys. | 02:46PM |
| 22 | MS. M. MILLER:  Sorry, I didn't mean to do that, | 02:46PM |
| 23 | Your Honor.  It's more than just that.  It has to do with the | 02:46PM |
| 24 | latest fatality, it has to do with insurance limits, insurance | 02:46PM |
| 25 | is an essential element of the contract that we're going to | 02:46PM |

```
 1   talk about it.  It has to do with the fact that four contracts      02:46PM
 2   were lost, and Mr. McConwell specifically said, do you have         02:46PM
 3   any information that any contracts were lost?  This directly        02:46PM
 4   goes to this idea that the defense has put into the minds of        02:46PM
 5   the jurors that the tuna boat companies were completely             02:46PM
 6   satisfied with what they got, so therefore, there cannot be         02:46PM
 7   wire fraud.                                                         02:46PM
 8              THE COURT:  All right.  The Court will -- let me          02:46PM
 9   just say, okay, so here's the problem, you have a judge up          02:46PM
10   here who knows some of the evidence, not all of it, only the        02:46PM
11   evidence that's brought before me.  You all have the luxury         02:46PM
12   and the opportunity to know whatever these four contracts are,      02:47PM
13   these liability limits and so forth.                                02:47PM
14              So the Court was going to sustain the objection          02:47PM
15   because you're going to have to go deeper.  This refers to so       02:47PM
16   many other things.  I will sustain the objection as for             02:47PM
17   purposes of this redirect.  And if you can tie it in to your        02:47PM
18   closing, tie it in your closing.                                    02:47PM
19              MS. M. MILLER:  Yeah, and I also have two more            02:47PM
20   witnesses, Your Honor, these issues are very relevant to the        02:47PM
21   safety, culture, or lack thereof, of Hansen Helicopters, so         02:47PM
22   they'll come in --                                                  02:47PM
23              THE COURT:  Court.                                       02:47PM
24              MS. M. MILLER:  Absolutely.                              02:47PM
25              THE COURT:  Court will sustain the objection.            02:47PM
```

```
 1    All right.  Wait now.  Which exhibit does he not know -- they       02:47PM

 2    not know?                                                           02:47PM

 3              MS. M. MILLER:  So, Your Honor, you had admitted          02:47PM

 4    portions of Exhibit 3003, but not all of 3003.                      02:47PM

 5              THE COURT:  Okay.                                         02:47PM

 6              MS. M. MILLER:  And there was one page of 3003            02:47PM

 7    that was not admitted.  And now I think it is relevant, and         02:47PM

 8    should be admitted.  And that is the one that is not yet            02:47PM

 9    admitted that I will use, if, Your Honor, allows in my              02:47PM

10    redirect examination, and specifically, that is page 3003-15.      02:48PM

11              THE COURT:  Okay.                                         02:48PM

12              MS. M. MILLER:  And, Ms. Miller, if you could            02:48PM

13    pull that up for the Court, please.  It's in Trial Director as     02:48PM

14    3003, not 3003-A, which is the truncated version that has been     02:48PM

15    admitted.                                                          02:48PM

16              MR. MARTIN:  What was the number again?                  02:48PM

17              MS. M. MILLER:  3003-15.  And if you can hone in,        02:48PM

18    Ms. Miller, on the paragraph that starts, "The seller here         02:48PM

19    hereby warrants to the buyer."  If you could pull that part        02:48PM

20    out.  So, Your Honor, what this document is --                     02:48PM

21              THE COURT:  So it's an insurance policy?                 02:49PM

22              MS. M. MILLER:  No, no, no.  This is a sales             02:49PM

23    agreement.                                                          02:49PM

24              THE COURT:  Okay.                                         02:49PM

25              MS. M. MILLER:  Between Jan's Helicopters, which         02:49PM
```

*Redirect - Khamvongsa*

```
 1   is one of the Vanuatu companies in Exhibit 829, and we heard,    02:49PM
 2   for two and a half hours, Mr. Martin talk about the Vanuatu      02:49PM
 3   companies in Exhibit 829.                                        02:49PM
 4           Jan's is represented in this buyer-seller               02:49PM
 5   agreement as owning all of the helicopters that are listed in    02:49PM
 6   that agreement to be sold to Pacific Spotters Corporation.       02:49PM
 7   And we just heard Mr. Martin go on for hours about how each of   02:49PM
 8   these individual Vanuatu companies, isn't it true this company   02:49PM
 9   was the registered owner, and this company was a registered      02:49PM
10   owner, and this company was a registered owner.                  02:49PM
11           Well, if that's true, then how can Jan's sell all       02:49PM
12   of these helicopters when Jan's is not the, according to the     02:49PM
13   FAA, the business record of the FAA, the registered owner of     02:49PM
14   all of these helicopters?                                        02:50PM
15           So it goes directly to contradict the                   02:50PM
16   representation that Mr. Martin is trying to leave the jury       02:50PM
17   with, which is, that each individual helicopter was an asset     02:50PM
18   of each individual Vanuatu company, which isn't true.            02:50PM
19   Further, Your Honor --                                           02:50PM
20           THE COURT:  I'm sorry.  So each of the                  02:50PM
21   helicopters are not -- you're trying to say that it rebuts the   02:50PM
22   representation that the helicopters of the individual           02:50PM
23   corporations that were identified in cross-examination are not   02:50PM
24   individual assets of those corporations?                        02:50PM
25           MS. M. MILLER:  Yes, Your Honor.                        02:50PM
```

*Redirect - Khamvongsa*

| | |
|---|---|
| 1 | THE COURT:  But rather they are what? | 02:50PM |
| 2 | MS. M. MILLER:  But rather, they are assets of | 02:50PM |
| 3 | Jan's Helicopters.  If Jan's Helicopters is selling all of | 02:50PM |
| 4 | these helicopters to Pacific Spotters Corporation as is | 02:50PM |
| 5 | represented in this document.  It contradicts what Mr. -- | 02:50PM |
| 6 | THE COURT:  Okay, so I'm sorry, so where does it | 02:50PM |
| 7 | say that the seller owns all of those -- | 02:51PM |
| 8 | MS. M. MILLER:  The seller -- | 02:51PM |
| 9 | THE COURT:  Owns all the helicopters? | 02:51PM |
| 10 | MS. M. MILLER:  So right here. | 02:51PM |
| 11 | THE COURT:  How do I know that? | 02:51PM |
| 12 | MS. M. MILLER:  Yeah.  So if we go to page 14 | 02:51PM |
| 13 | first, Ms. Miller, if you can go to 14 where it lists the | 02:51PM |
| 14 | helicopters. | 02:51PM |
| 15 | THE COURT:  Okay.  I see. | 02:51PM |
| 16 | MS. M. MILLER:  So page 14, could you make that | 02:51PM |
| 17 | bigger, Ms. Miller? | 02:51PM |
| 18 | MS. MCCONWELL:  Your Honor, page 14 is not | 02:51PM |
| 19 | admitted into evidence, and this is -- | 02:51PM |
| 20 | THE COURT:  That's right.  She knows -- | 02:51PM |
| 21 | MS. M. MILLER:  I'm answering the Court's | 02:51PM |
| 22 | question about why it's relevant. | 02:51PM |
| 23 | THE COURT:  Yeah.  She wants to try to put this | 02:51PM |
| 24 | in. | 02:51PM |
| 25 | MS. M. MILLER:  Yes.  Can you highlight that, Ms. | 02:51PM |

1    Miller, 14?                                                    02:51PM

2              THE COURT:  She indicated this was not in.          02:51PM

3              MS. M. MILLER:  So what we see here, Jan's          02:51PM

4    Helicopters existing under Philippines law, which by the way  02:51PM

5    Jan's was represented -- see this contradicts what Mr. Martin 02:51PM

6    was trying to present to the jury.  Jan's was represented to  02:51PM

7    the jury as being a Vanuatu company.  Here we have Jan's      02:51PM

8    representing itself as the Philippine company with an address 02:51PM

9    in the Philippines, seller and the owner.                     02:51PM

10             THE COURT:  So first of all, it's going to rebut    02:51PM

11   the Vanuatu address.                                          02:51PM

12             MS. M. MILLER:  Yes, yes, yes.  The owner of the    02:52PM

13   following aircraft, then we see the RPC numbers of all of     02:52PM

14   these helicopters with the aircraft serial numbers, and, Ms.  02:52PM

15   Miller, if you could go up so the Judge can see all of them.  02:52PM

16   Then, Your Honor --                                           02:52PM

17             THE COURT:  And those are the particular RP,        02:52PM

18   which stands for Philippines.                                 02:52PM

19             MS. M. MILLER:  Yes.  And when you look at the      02:52PM

20   serial numbers, that correlates to the U.S. N-registration    02:52PM

21   number.  As a matter of fact, Ms. Miller, can you pull up     02:52PM

22   Exhibit D-120 -- no; yes, 123 that Mr. McConwell moved into   02:52PM

23   evidence, thank you, Mr. McConwell, identified for us the     02:52PM

24   correlation between the Philippine registration numbers and   02:52PM

25   the U.S. registration numbers along with the serial number.   02:52PM

1  So we'll pull that up because that ties it all together for                    02:52PM

2  the jury.                                                                       02:52PM

3            THE COURT:  Okay, so these -- just for the                           02:52PM

4  record, so these helicopter -- RP helicopter registration                      02:52PM

5  numbers --                                                                      02:53PM

6            MS. M. MILLER:  Yes, Your Honor.                                      02:53PM

7            THE COURT:  On GE-3003-14, are some of the ones                      02:53PM

8  that were represented in the answers by the last witness?  On                  02:53PM

9  cross-examination.                                                             02:53PM

10           MS. M. MILLER:  Yes, Your Honor.                                      02:53PM

11           THE COURT:  And were discussed as having been                        02:53PM

12 assets of various corporations, not necessarily Jan's                          02:53PM

13 corporation.                                                                    02:53PM

14           MS. M. MILLER:  Correct.  As a matter of fact,                        02:53PM

15 Mr. Martin painstakingly went through each individual one to                   02:53PM

16 say, so this was owned by Limey, and this was owned by Dave's,                  02:53PM

17 and this was opened by Heli Fish, and this was an asset of,                     02:53PM

18 and this was an asset of.  And now, Your Honor, if you look at                  02:53PM

19 what Mr. McConwell introduced, Exhibit 123, you could see RPC                   02:53PM

20 numbers, you could see serial numbers, you could also see                       02:53PM

21 previous registration numbers here.  And what you're going to                   02:53PM

22 see, Your Honor, is that this is a moving target for the                        02:54PM

23 Defendants.                                                                     02:54PM

24           THE COURT:  Well, let me just ask you, is it                          02:54PM

25 possible, I mean, that -- maybe Mr. Martin and Ms. McConwell                    02:54PM

```
 1   will say that -- that it was owned by certain of those other      02:54PM
 2   corporations, non-Jan's corporations, previous to when Jan's       02:54PM
 3   sold it pursuant to this bill of sale?                             02:54PM
 4              MS. M. MILLER:  But there is no paperwork                02:54PM
 5   evidence saying that.                                              02:54PM
 6              MR. MARTIN:  May I respond, Your Honor?                  02:54PM
 7              MS. M. MILLER:  And here's the issue --                 02:54PM
 8              THE COURT:  Hold on.  Wait, wait, wait.  Let me          02:54PM
 9   let her answer.                                                    02:54PM
10              MS. M. MILLER:  This is what is really important:        02:54PM
11   Number one, there is no paperwork; number two, Mr. McConwell       02:54PM
12   also entered into evidence those pages from the GEO report         02:54PM
13   that discussed just how companies like Hansen and Mr. Walker       02:54PM
14   can defraud the registry by having this complex schedule of        02:54PM
15   different companies owning different things.  Your Honor, it's     02:54PM
16   all smoke and mirrors.  I want to show you something here.         02:54PM
17              THE COURT:  No, no, no.  I remember the GEO              02:54PM
18   report.                                                            02:54PM
19              MS. M. MILLER:  Absolutely.  And when you look at       02:54PM
20   123, there is something that's very important here.                02:54PM
21              THE COURT:  When I look at what now?                     02:55PM
22              MS. M. MILLER:  Exhibit 123 that Mr. McConwell          02:55PM
23   entered into evidence.  On the right-hand side, do you see         02:55PM
24   N1DQ?                                                              02:55PM
25              THE COURT:  Yeah.                                        02:55PM
```

1          MS. M. MILLER:  Do you see N1DQ?  I just          02:55PM

2     highlighted it.                                        02:55PM

3          THE COURT:  Yeah.                                 02:55PM

4          MS. M. MILLER:  RPC6911, that is the helicopter   02:55PM

5     that was just in an accident two days ago.             02:55PM

6          MR. MARTIN:  What's that got to do with this?     02:55PM

7          MS. M. MILLER:  That has everything to do with    02:55PM

8     it, Your Honor, everything to do with it because N1DQ is the   02:55PM

9     same helicopter that Mr. Bustos testified about.  He said it   02:55PM

10    was in an accident while he was flying it and Jon Walker   02:55PM

11    personally flew out there to do the repairs because the   02:55PM

12    repairs were difficult to do.                          02:55PM

13         Mr. Bustos moves on, this is one of the           02:55PM

14    helicopters that the Defendants claim -- look at this letter,   02:55PM

15    it's saying reserve these registration numbers for Pacific   02:55PM

16    Spotters Corporation, which is yet another shell corporation,   02:55PM

17    which was the subject of the argument we had previously too,   02:55PM

18    Your Honor.  And RPC6911, just two days ago, crashed and a   02:56PM

19    helicopter pilot was killed and the mechanics that were flying   02:56PM

20    in the helicopter for a test run were seriously injured.   02:56PM

21         So Mr. Martin brought up N1DQ to this jury on     02:56PM

22    this cross-examination and he said, isn't N1DQ registered with   02:56PM

23    the FAA and owned by this Vanuatu company?  And so, Your   02:56PM

24    Honor, this is absolutely proper redirect to show the jury   02:56PM

25    just what a complex web of deceit has been created by the   02:56PM

1    Defendants, the way they move these helicopters from company    02:56PM

2    to company depending on who they're trying to defraud.    02:56PM

3                THE COURT:  Okay.    02:56PM

4                MS. M. MILLER:  If they're trying to do fraud the    02:56PM

5    Philippine authorities, here Pacific Spotters owns all of    02:56PM

6    these helicopters, we removed them properly from the U.S.    02:57PM

7    registry, now we want to put them into the Philippine    02:57PM

8    registry; otherwise, it's Jan's Helicopters; otherwise it's    02:57PM

9    Wilma's Flight Services.    02:57PM

10               You're going to see, Your Honor, because it's    02:57PM

11   already been entered into evidence a balance sheet that shows    02:57PM

12   that Wilma's Flight Service owns all of the helicopters.  A    02:57PM

13   balance sheet for the same year that Mr. Martin was showing    02:57PM

14   this jury that the helicopters were owned by all of these    02:57PM

15   different Vanuatu companies.  It is critical for the jury to    02:57PM

16   be able to see the fraud.    02:57PM

17               THE COURT:  All right.    02:57PM

18               MR. MARTIN:  May I respond, Your Honor?    02:57PM

19               THE COURT:  Yes.    02:57PM

20               MR. MARTIN:  First, I want to talk about the    02:57PM

21   smoke and mirror.  I'm sure everyone can quote every question    02:57PM

22   I asked about every one of the "FAA business records" that I    02:57PM

23   was cross-examining about.  I only cross-examined about FAA    02:57PM

24   business records.    02:58PM

25               "Isn't it true, Agent, that Exhibit 366-4 is a    02:58PM

*Redirect - Khamvongsa*

record kept in the normal course of business of the Federal 02:58PM

Aviation Administration?  Yes.  Isn't it true, Agent 02:58PM

Khamvongsa, that this record is, relates to an N-number? 02:58PM

That's true, relating to the FAA registry.  Isn't it true, 02:58PM

sir, that according to the FAA registry, this particular 02:58PM

N-number helicopter has a serial number?  Isn't it true, sir, 02:58PM

that pursuant to the business record kept by the Federal 02:58PM

Aviation Administration, this is registered as a corporation? 02:58PM

Yes, sir.  Isn't it true, Agent Khamvongsa, that this -- that 02:58PM

the FAA registry shows that it is -- the registered owner is 02:58PM

this particular corporation?  Doesn't the FAA register 02:58PM

indicate that the location of this corporation is in Vanuatu." 02:58PM

          Every question I asked, Your Honor, dealt 02:58PM

specifically with the business records that are kept in the 02:59PM

normal course of business relating to the FAA?  If she wants 02:59PM

to redirect the witness about the business records of the FAA, 02:59PM

I can't object, but if she is going to go beyond the scope of 02:59PM

what I asked question -- because that's what I asked.  My 02:59PM

questions were very, very specific, and very specific for an 02:59PM

intentional purpose. 02:59PM

          THE COURT:  What about the last question though 02:59PM

about the asset? 02:59PM

          MR. MARTIN:  I said, "Is the helicopter that is 02:59PM

identified by the registry as this number, is that an asset?" 02:59PM

          THE COURT:  Well, you said is that an asset of 02:59PM

1   that corporation though, of that corporation that it's          02:59PM

2   registered to.                                                  02:59PM

3            MR. MARTIN:  I asked if it was an asset.               02:59PM

4            THE COURT:  No, but I -- I know, but it was in         02:59PM

5   the context I thought --                                        02:59PM

6            MR. MARTIN:  According to the FAA.                     02:59PM

7            THE COURT:  Right.  According to the business          02:59PM

8   records, and of course he was also very particular, this       03:00PM

9   Agent, and he was saying, okay, so if you're saying is this    03:00PM

10  what the business record demonstrates, or establishes then he  03:00PM

11  was saying; yes, you're right, it is an asset and it's         03:00PM

12  representative of an asset of that corporate registrant owner. 03:00PM

13           MR. MARTIN:  And every one of these has an            03:00PM

14  expiration date and some of these aren't there anymore, Your   03:00PM

15  Honor.  And the records that they're trying to bring in, many  03:00PM

16  of them, for example, the one on Jan's Air Service, I can't    03:00PM

17  read the exhibit number.  I think it's Exhibit 3003-14, is     03:00PM

18  dated November of 2018.  The records I'm referring to come     03:00PM

19  from an e-mail that is in -- found in 366, Exhibit, pardon me, 03:00PM

20  Exhibit 366 that is dated May of 2016.  So this is the FAA     03:00PM

21  registry as of May of 2016.                                    03:01PM

22           THE COURT:  I'm sorry, okay, so wait, wait.  So       03:01PM

23  the FAA registry that you queried the agent on was dated       03:01PM

24  May 2016?                                                       03:01PM

25           MR. MARTIN:  Yes, an e-mail from that day.           03:01PM

```
 1                    THE COURT:  All right.  Okay.  But the        03:01PM
 2      registration dates were consistent with that date and month, 03:01PM
 3      that year and month?                                         03:01PM
 4                    MR. MARTIN:  They are -- the e-mail that these 03:01PM
 5      came from, Your Honor, was dated, I believe, Wednesday       03:01PM
 6      October 5th, 2016, --                                        03:01PM
 7                    THE COURT:  No, okay.  Let me -- strike that.  03:01PM
 8      The ownership dates and the registration dates --            03:01PM
 9                    MR. MARTIN:  They had to be before that.       03:01PM
10                    THE COURT:  Right, so it's before May 2016.    03:01PM
11                    MR. MARTIN:  And my questions though --        03:01PM
12                    THE COURT:  Wait, wait.  So if they're before  03:01PM
13      May 2016, then there is some expiration some other time.  As I 03:01PM
14      understand, there is an expiration date.                     03:01PM
15                    MS. M. MILLER:  None of them expired until 2020, 03:01PM
16      Your Honor.  This is 2018.  Can we not -- we're being -- we  03:01PM
17      are so splitting the hairs here that the -- we're at risk the 03:02PM
18      government is not having a fair trial at this point.  Let me  03:02PM
19      tell you why, Your Honor.                                    03:02PM
20                    MR. MARTIN:  We don't need to go into the      03:02PM
21      government not having a fair --                              03:02PM
22                    MS. M. MILLER:  Who gives the FAA the information 03:02PM
23      that he read from for two and a half hours?  Oh, I'll tell you 03:02PM
24      who, Jon Walker.  Jon Walker files with the FAA a registration 03:02PM
25      --                                                           03:02PM
```

```
 1              THE COURT:  Listen.  Okay.  Wait.  Okay.  You          03:02PM
 2    guys don't --                                                    03:02PM
 3              MS. M. MILLER:  A registration --                      03:02PM
 4              THE COURT:  You guys don't have to sit and argue,      03:02PM
 5    save your arguments for the jury.  I get that.  We're just       03:02PM
 6    focusing on the objection.  All I want to do is, we'll find      03:02PM
 7    out --                                                           03:02PM
 8              MS. M. MILLER:  Yes.                                   03:02PM
 9              THE COURT:  Are the dates inconsistent?                03:02PM
10              MS. M. MILLER:  The dates are --                       03:02PM
11              THE COURT:  For example, if somebody could be an       03:02PM
12    owner, a prior owner, and then the subsequent owner was Jan's    03:02PM
13    Helicopters, let's just assume that, then of course Jan's        03:02PM
14    Helicopter Services has the -- is the owner.                     03:02PM
15              MS. M. MILLER:  Right.                                 03:02PM
16              THE COURT:  But if, in fact, these other               03:02PM
17    companies are not really the owners, but it was always Jan's     03:02PM
18    Helicopters, then that's a different story.                      03:03PM
19              MS. M. MILLER:  Well, Your Honor, the point is         03:03PM
20    this.                                                            03:03PM
21              THE COURT:  So I'm just looking at the dates, and      03:03PM
22    I think that you guys are flushing it out.                       03:03PM
23              MS. M. MILLER:  The point is this, the Defendants      03:03PM
24    had registered these helicopters using the name of different     03:03PM
25    Vanuatu companies as the owners, and then identifying the        03:03PM
```

*Redirect - Khamvongsa*

1  mailing address on the registrations as somewhere in Vanuatu.  03:03PM

2  Jon Walker signed most of them indicating that that was  03:03PM

3  correct, and when he signed those, he actually certified that  03:03PM

4  a U.S. corporation was registering the aircraft.  03:03PM

5          As a matter of fact, let's pull up 752, because  03:03PM

6  Mr. McConwell -- Mr. Martin, actually, specifically brought  03:03PM

7  the witness's attention to a particular registration of  03:03PM

8  aircraft N9068F, and that was Exhibit 752-, was it 52?  Yeah.  03:03PM

9  And Mr. Martin asked this witness about this particular  03:04PM

10  aircraft with this particular serial number, and we're going  03:04PM

11  to pull that up for you because this goes right to the heart  03:04PM

12  of this argument, Your Honor.  03:04PM

13          THE COURT:  Okay.  03:04PM

14          MS. M. MILLER:  Okay.  So what we see here, is we  03:04PM

15  see a registration of this particular aircraft with this  03:04PM

16  particular serial number N9068F with serial number 210293S, as  03:04PM

17  in Sam.  And Mr. Martin talked about this.  So this was the  03:04PM

18  original aircraft registration.  And we see Whirlwide  03:04PM

19  Helicopters with a Guam address registering this helicopter  03:04PM

20  with Jon Walker as president and, Your Honor, you may or may  03:04PM

21  not remember this because it was a while ago, but the woman  03:05PM

22  from the FAA registry -- Ms. Miller, if you can hone in on the  03:05PM

23  certification part of this here.  She brought to the attention  03:05PM

24  of the Court and the jury that when Jon Walker signed this, he  03:05PM

25  was certifying under penalty of perjury, that the company that  03:05PM

was registering it or the individual that was registering it
was a U.S. citizen.  Look at the certification.  We talked
about this before.  The aircraft is not registered under the
laws of any foreign country.  We have numerous aircraft in
this case that were dual-registered both in the Philippines
and in the FAA at the same time, and identified as being owned
by different companies at the same time.  All of the
companies, by the way, owned by Jon Walker.  Then it also says
that the legal evidence of ownership has been filed with the
FAA and it says, if you look at, number one, the above
aircraft is owned by the undersigned applicant who is a
citizen, including corporations, of the United States.  If he
was registering as a foreign corporation, which is what
Mr. Martin is trying to assert to this jury, then that would
have to be marked in that box.  And additionally, if we go
up --

        THE COURT:  Marked as --

        MS. M. MILLER:  Right, are you a corporation or
non-citizen corporation.  You would have to check non-citizen
corporation.  Three hundred seventeen times, Jon Walker
registered as a U.S. citizen or U.S. corporation.

        And Ms. Miller, go to the next registration where
Whirlwide now all of a sudden has a Vanuatu address.  Because
it goes from Guam to Vanuatu, to Guam to Vanuatu.  As a matter
of fact, Your Honor, you just saw when Mr. Martin was

1  cross-examining the IRS agent, Limey Air Services, isn't that                    03:06PM

2  listed as a Vanuatu company?  We had an argument in front of                      03:07PM

3  you just yesterday, where you saw that in the bank records for                    03:07PM

4  2939, Limey Air is identified as a U.S. corporation in Guam.                      03:07PM

5  And that it is still today a U.S. corporation in Guam.                            03:07PM

6  They're using the Vanuatu address in these registrations for                      03:07PM

7  these corporations to defraud the FAA.  And if they're not                        03:07PM

8  using the Vanuatu addresses to defraud the FAA, then they're                      03:07PM

9  still defrauding the FAA because they had to identify                             03:07PM

10 themselves as a foreign corporation, but they didn't.  Because                    03:07PM

11 Mr. Martin is right, saying that you have an FAA certification                     03:07PM

12 has value.  When you're trying to sell a company because you                      03:07PM

13 know you're under investigation, you want the person buying                       03:07PM

14 the company to believe that your aircraft had value.  Look at                     03:07PM

15 all of these aircraft registered with the FAA.  Look at these                     03:07PM

16 valuable, valuable aircraft.  In Exhibit 366, which he spent                      03:08PM

17 two hours on, are the financial statements of Wilma's and                         03:08PM

18 Hansen Helicopters.  Wilma's identifies all of the aircraft as                    03:08PM

19 being owned by Wilma's.                                                           03:08PM

20             THE COURT:  All right.  Well, the Court is going                       03:08PM

21 -- go ahead; yes, Mr. Martin.                                                     03:08PM

22             MR. MARTIN:  Your Honor, first of all, the                            03:08PM

23 government knows that there is a Limey corporation registered                     03:08PM

24 in Vanuatu, if you will pull up Government Exhibit 784, that                       03:08PM

25 is the Constitution of Limey Air from -- Services, that is in                      03:08PM

*Redirect - Khamvongsa*

1  Vanuatu.  And for them to represent this is a U.S.                    03:08PM

2  corporation, that's what their own exhibit, it hadn't been            03:08PM

3  admitted, but it's in their exhibit.                                  03:08PM

4          THE COURT:  Okay.  Well, rather than get into the            03:08PM

5  Limey stuff, let's focus on this -- let's go back to the             03:08PM

6  original objection and the particular, Exhibit 3000 what?  Can       03:09PM

7  you go back together it?  The one that was not --                    03:09PM

8          MS. M. MILLER:  3003-15?                                     03:09PM

9          THE COURT:  Okay.  Pull that up one more time.              03:09PM

10 That's really what you're focusing in on.  15.  And then the        03:09PM

11 other page after that?                                               03:09PM

12         MS. M. MILLER:  The page before that was 14.               03:09PM

13         THE COURT:  14.  You're trying to get in 14?              03:09PM

14         MS. M. MILLER:  I'm actually trying to get in 15          03:09PM

15 because of the representation that Jan's Air makes on 15 that        03:09PM

16 the aircraft that are being sold to Pacific Spotters               03:09PM

17 Corporation, if you go to page 15, and, Ms. Miller, if you go      03:09PM

18 to the middle of that page.                                          03:09PM

19         THE COURT:  All right.  So you're just asking for         03:09PM

20 3003-15?                                                              03:09PM

21         MS. M. MILLER:  Yes.                                         03:09PM

22         THE COURT:  That's what you want to bring in?              03:09PM

23         MS. M. MILLER:  Yes.  So what I'm trying to focus         03:09PM

24 on here for the jury, Your Honor, is this part, "The aircraft       03:09PM

25 is sold in an as-is basis without any warranties whatsoever as      03:09PM

1    to the merchantability, fitness for any particular purpose,           03:09PM

2    durability, design, suitability, especially that it was              03:10PM

3    disclosed that the majority of the aircraft are considered to        03:10PM

4    be scrap, non-functional and/or have expired and lost               03:10PM

5    certificates of registration and airworthiness." That's the         03:10PM

6    part I want to bring in, because of Mr. Martin's insistence on       03:10PM

7    talking about assets, assets, assets, assets, the assets of         03:10PM

8    these Vanuatu companies. These assets are these helicopters.        03:10PM

9    This is the representation that they're making within their          03:10PM

10   own company about these assets. They're scrap, they're not          03:10PM

11   airworthy, they have no value, so how can they be an asset.          03:10PM

12   And what's also very important, Your Honor, is in 2018, we           03:10PM

13   have contracts that are covered by these very aircraft in 2018       03:10PM

14   that are representing to the tuna boat companies, that these         03:10PM

15   aircraft are airworthy. And here you have an admission by a          03:10PM

16   Defendant, 801D2E, that these aircraft, the majority of the          03:11PM

17   aircraft are scrap, non-functional, and/or have no                   03:11PM

18   certificates of registration and no airworthiness                    03:11PM

19   certificates.                                                        03:11PM

20            Additionally, four of the aircraft that he                  03:11PM

21   identified in his cross-examination, were on the MD                  03:11PM

22   Helicopters destroyed list before 2016 and yet, that's what         03:11PM

23   the Defendants are trying to sell, and that's what they're           03:11PM

24   using. It is critical for the jury to hear this. This is            03:11PM

25   relevant. It has been disclosed. It's admissible. It's not          03:11PM

hearsay.  And it's an admission under 801D2E.  It's within the

timeframe of the fraud, and it is directly within the scope of

a cross-examination that went on for two hours to try to leave

this jury with the wrong impression.

THE COURT:  Okay.  I've heard the arguments from

everybody.  With regard to 3003-15, the Court understands that

the prosecution is trying to proffer these list of exhibits --

these list of helicopters as not being really assets, I guess

-- as defined, what assets are, but rather what is indicated

here in this particular highlighted portion that she's talked

about.  And in addition, the proffer is that they're not

assets of the individual alleged shell corporations that have

been identified during cross-examination, but rather are

assets, if you will, of Jan's corporation.  And so, so, to

that extent, the Court does not find it's beyond the scope of

cross-examination, and will allow it.  And allow the exhibit

to be brought forward to the agent.

The question as to whether it's hearsay or

nonhearsay, the Court finds, at this point, it's nonhearsay.

And it's -- because it's an admission by a party opponent, so

the Court will allow question to go.

Yes, Ms. McConwell?

MS. MCCONWELL:  Your Honor, I think it's

important for you to go back and look also -- well, first of

all, this is beyond 2955, which is the third amended exhibit

```
 1   list.  But if the Court is going to be entertaining it, the          03:13PM
 2   Court needs to look at 3003-14, which was up prior.  Because          03:13PM
 3   this is not the Jan's Helicopter that is on the Vanuatu list.         03:13PM
 4   This is Jan's Helicopter which is a corporation formed under          03:13PM
 5   the Philippine laws.  This is not Jan's Helicopters that's a          03:13PM
 6   Vanuatu corporation.  And it says so directly on the bill of         03:13PM
 7   sale, and Ms. Miller can smirk all she wants --                       03:13PM
 8              MS. M. MILLER:  I'm smirking because of the lies.          03:13PM
 9   It's constant.  Now we --                                            03:13PM
10              MR. MARTIN:  Wait.                                        03:13PM
11              THE COURT:  Counsel, wait.  Let her finish.  Let          03:13PM
12   her finish.  Be respectful.                                          03:13PM
13              MS. M. MILLER:  Where is the paperwork showing            03:13PM
14   that Jan's --                                                        03:13PM
15              THE COURT:  Hold on.  Wait just a minute.  Listen         03:13PM
16   -- first of all, I can't understand two people talking at the        03:14PM
17   same -- now three people, three persons, and neither can my          03:14PM
18   court reporter.                                                      03:14PM
19              MS. M. MILLER:  Sorry, Veronica.                          03:14PM
20              THE COURT:  Yeah.  And then secondly, well,               03:14PM
21   anyway, go ahead.  Yes, Ms. McConwell.  Proceed.                     03:14PM
22              MS. MCCONWELL:  Either if Mr. Leon Guerrero would         03:14PM
23   put up or Ms. Miller whoever has -- is driving, or let me            03:14PM
24   drive, it's 3003-14.  If you look in the recital portion of          03:14PM
25   the bill of sale, the Jan's Helicopter Service, Inc. existing        03:14PM
```

*Redirect - Khamvongsa*

1    under Philippines laws and having its principal place in the                03:14PM

2    Philippines, is -- the corporation that is involved in this                 03:14PM

3    transaction.  It is not --                                                  03:14PM

4              THE COURT:  I'm sorry, so -- excuse me?                           03:14PM

5              MS. MCCONWELL:  3003-14.                                          03:14PM

6              THE COURT:  Can you pull that up, somebody?                       03:14PM

7              MS. MCCONWELL:  Yeah.  If I can drive, I'll pull                  03:14PM

8    it up.                                                                      03:14PM

9              THE COURT:  Let's have prosecutors pull it up                     03:14PM

10   since they got it.  They can go straight to 14, okay.  And                  03:14PM

11   make that a little bigger please.  So Jan's Helicopters                     03:15PM

12   Service, Inc. it says there under Philippine laws.                          03:15PM

13             MS. MCCONWELL:  So right here.                                    03:15PM

14             THE COURT:  At the top.                                           03:15PM

15             MS. MCCONWELL:  Right there under Philippine                      03:15PM

16   laws, so this is the Jan's Helicopters Service, Inc. that is a              03:15PM

17   corporation that's organized under the laws of the                          03:15PM

18   Philippines.  It is not a Jan's Helicopters that has been                   03:15PM

19   organized in Vanuatu.  They're separate organizations.  And                03:15PM

20   Ms. Miller is continually trying to merge them together like                03:15PM

21   she's done with Wilma's, like she's done with Limey's.                      03:15PM

22             These are separate and distinct corporations that                03:15PM

23   she's representing to you the reason it should be in is                      03:15PM

24   because that Jan's Helicopters, the Jan's Helicopters in here               03:15PM

25   or on the next page is the Vanuatu corporation, but if you                  03:15PM

*Redirect - Khamvongsa*

1  look at the document --                                            03:15PM

2          THE COURT:  So I'm sorry, are you saying there is         03:15PM

3  two different Jan's Helicopters?                                    03:15PM

4          MS. MCCONWELL:  Yes, that's exactly what I'm              03:15PM

5  saying.                                                             03:15PM

6          THE COURT:  One corporation that's established            03:15PM

7  under Philippine law, and the other under Vanuatu laws?             03:15PM

8          MS. MCCONWELL:  Yes, ma'am.  That's exactly what          03:16PM

9  I'm saying.                                                         03:16PM

10         THE COURT:  That really, that to the extent that          03:16PM

11 she's trying to rebut the testimony under direct examination       03:16PM

12 with Mr. Martin, on this agent, it's the wrong Jan's               03:16PM

13 corporation?                                                        03:16PM

14         MS. MCCONWELL:  That's correct.                           03:16PM

15         THE COURT:  That's what you're saying?                    03:16PM

16         MS. MCCONWELL:  That's what I'm saying.                   03:16PM

17         THE COURT:  Okay, I got it.  I got the gist.              03:16PM

18         MS. M. MILLER:  Absolutely ready to respond              03:16PM

19 because, you know, I'll give Ms. McConwell the benefit of the      03:16PM

20 doubt and assume maybe she just doesn't -- hasn't studied the      03:16PM

21 evidence as much, but this just --                                 03:16PM

22         THE COURT:  Well, I don't think that -- wait,             03:16PM

23 wait.                                                               03:16PM

24         MS. M. MILLER:  Let me tell you why.                     03:16PM

25         THE COURT:  That wasn't nice, Ms. -- excuse me,           03:16PM

```
 1    Ms. -- wait, wait, okay.                                    03:16PM

 2              MS. M. MILLER:  I want you to look --             03:16PM

 3              THE COURT:  Hold on.  Hold on.                    03:16PM

 4              MS. M. MILLER:  Ms. Miller, can you bring up so   03:16PM

 5    the Judge can see very clearly --                           03:16PM

 6              THE COURT:  Excuse me, Ms. Miller, that wasn't    03:16PM

 7    nice to say.  She hasn't said --                            03:16PM

 8              MS. M. MILLER:  Well, Your Honor, you know, it is 03:16PM

 9    just so frustrating to sit here and to have Counsel of record 03:16PM

10    who is an officer of the Court say that these are two       03:16PM

11    completely different --                                     03:16PM

12              THE COURT:  She just said it.                     03:17PM

13              MS. M. MILLER:  I know, okay.                     03:17PM

14              THE COURT:  But let me just say.                  03:17PM

15              MS. M. MILLER:  Wow.  Okay.  I'm going to show    03:17PM

16    you why that is absolutely false.                           03:17PM

17              THE COURT:  Well, my point is, Counsel, Ms.       03:17PM

18    Miller.                                                     03:17PM

19              MS. M. MILLER:  Sorry.                            03:17PM

20              THE COURT:  Let me get your attention, please.    03:17PM

21    So first of all, you guys don't need -- you all don't need to 03:17PM

22    insult each other.  I mean, really.  All you have to say is 03:17PM

23    you know what, you can say what -- you can think what you feel 03:17PM

24    about somebody, but really, if the evidence shows otherwise, 03:17PM

25    if the evidence is in your favor, all have you to say is, you 03:17PM
```

```
 1  know, that's an incredulous argument, I mean, the evidence        03:17PM
 2  shows this.                                                        03:17PM
 3              MS. M. MILLER:  Yes.                                   03:17PM
 4              THE COURT:  Without saying, hey, did she study         03:17PM
 5  the record.  Come on.                                             03:17PM
 6              MS. M. MILLER:  Well, it is an incredulous             03:17PM
 7  argument, and I'm going to show you.                              03:17PM
 8              THE COURT:  I think you do need to apologize.          03:17PM
 9              MS. M. MILLER:  I'm sorry I said that, Laura.  It      03:17PM
10  is an incredulous argument, and I'm going to show you why.        03:17PM
11              MR. MCCONWELL:  May I clarify something, Your          03:17PM
12  Honor?  That argument, just to clarify.                           03:17PM
13              THE COURT:  I think so; yes.                           03:17PM
14              MR. MCCONWELL:  It appears to me that these            03:17PM
15  helicopter -- first of all, 6911 is not on the list.  That's      03:17PM
16  the one that crashed a couple days ago.  It appears to me         03:18PM
17  these are the helicopters that are registered by Jan's            03:18PM
18  Helicopter Service in the Philippines that had the flag with      03:18PM
19  the government over the fees in 2014, and I don't remember the    03:18PM
20  exact dates, but in the early time, they pulled the               03:18PM
21  certificates, you had somebody from the Philippines testify,      03:18PM
22  and this was all administrative issue, wasn't anything about      03:18PM
23  airworthiness, but those were pulled.  I haven't had time to      03:18PM
24  match up the letters, but I suspect those are the 17 or so        03:18PM
25  that lost their airworthiness certificates and their              03:18PM
```

*Redirect - Khamvongsa*

1    registration.  So that's a totally different deal, and they're    03:18PM

2    probably not -- 1DQ is not on the list.  It's been    03:18PM

3    deregistered anyway and now re-registered in the Philippines,    03:18PM

4    and there is a process that the Philippines --    03:18PM

5                    THE COURT:  Are you talking --    03:18PM

6                    MS. M. MILLER:  Your Honor --    03:18PM

7                    MR. MCCONWELL:  Let me finish.    03:18PM

8                    THE COURT:  Hold on.    03:18PM

9                    MR. MCCONWELL:  It will become relevant to you at    03:18PM

10   some point.  But the point is, this is something totally    03:18PM

11   different that has been represented to you, and I don't know    03:18PM

12   how to --    03:19PM

13                   THE COURT:  Okay, listen, if you're trying -- it    03:19PM

14   sounds like you're talking about the incident that happened    03:19PM

15   two days ago with that other helicopter, is that what you're    03:19PM

16   talking about?    03:19PM

17                   MR. MCCONWELL:  Two days ago, but that's one that    03:19PM

18   wasn't on the Philippine registry here.    03:19PM

19                   THE COURT:  Right, but for me to, for me right    03:19PM

20   now, the issue is, if you will, let's just focus on the    03:19PM

21   objection.  And then that other issue could very well be a    03:19PM

22   distraction for everybody.    03:19PM

23                   MS. M. MILLER:  So if I could share my screen    03:19PM

24   with Your Honor and Counsel?    03:19PM

25                   THE COURT:  Yeah.    03:19PM

*Redirect - Khamvongsa*

```
 1              MS. M. MILLER:  I could show you why --        03:19PM
 2              THE COURT:  So the only issue is she says they're   03:19PM
 3    two separate corporations, you say they're one in the same.   03:19PM
 4              MS. M. MILLER:  Yes, they are.                  03:19PM
 5              THE COURT:  So just show us the evidence.       03:19PM
 6              MS. M. MILLER:  Yes, Your Honor.                03:19PM
 7              THE COURT:  As they say in Missouri, show me.   03:19PM
 8              MS. M. MILLER:  Exactly.  So if you --          03:19PM
 9              THE COURT:  I should know that, I went to law   03:19PM
10    school there.  Go ahead.                                 03:19PM
11              MS. M. MILLER:  You'll be able to see this in a   03:19PM
12    moment.                                                  03:19PM
13              THE COURT:  All right.                          03:19PM
14              MS. M. MILLER:  So, Your Honor, this is a chart   03:19PM
15    that was created to show that Jan's Helicopters is Jan's   03:19PM
16    Helicopters, period.  Doesn't matter if they used a Vanuatu   03:20PM
17    address, the Philippines.  Just like Limey Air, he mentioned   03:20PM
18    the charter for Limey Air that was in 2002, not in 2016, '17,   03:20PM
19    '18, which all says it is a U.S. corporation in Guam.  So   03:20PM
20    which is it?  I don't know.  I guess they get to choose.  But   03:20PM
21    I'm not able to show you this unfortunately.             03:20PM
22              MS. S. MILLER:  I could do it from over there.   03:20PM
23    If you want to stand over there.                         03:20PM
24              MS. M. MILLER:  Wait a minute.  I think I just   03:20PM
25    connected it now.  There we go.  So, Your Honor, if you look   03:20PM
```

*Redirect - Khamvongsa*

```
1    at RPC4901, which is in Exhibit 3003.                      03:20PM

2              THE COURT:  And that's been admitted.            03:20PM

3              MS. M. MILLER:  No.  It was page 14 of 3003 that 03:20PM

4    Ms. McConwell was saying, Your Honor, this is not the same 03:20PM

5    Jan's, this is a different Jan's.                          03:20PM

6              THE COURT:  How do I know -- wait just a minute, 03:20PM

7    can I ask you a question?                                  03:20PM

8              MS. M. MILLER:  Yes.                             03:20PM

9              THE COURT:  How do I know --                     03:20PM

10             MS. M. MILLER:  I have the exhibit numbers here. 03:20PM

11             THE COURT:  No, I know, but how do I know -- all 03:21PM

12   I see here is Jan's Helicopter assets.                     03:21PM

13             MS. M. MILLER:  I'm going to tell you.           03:21PM

14             THE COURT:  But how do I know Jan's is one       03:21PM

15   corporation?                                               03:21PM

16             MS. M. MILLER:  I am going to tell you, Your     03:21PM

17   Honor.                                                     03:21PM

18             THE COURT:  Okay.                                03:21PM

19             MS. M. MILLER:  3003 is one document, but then  03:21PM

20   there is also 355, which identifies Jan's and identifies  03:21PM

21   RPC4901, which is on --                                    03:21PM

22             THE COURT:  Okay.  Hold on.  Hold on.  Wait,    03:21PM

23   wait, wait.                                                03:21PM

24             MS. MCCONWELL:  I want to know what exhibit this 03:21PM

25   is.                                                        03:21PM
```

1    MS. M. MILLER:  This is a demonstrative aid.  It    03:21PM

2    is not an exhibit.    03:21PM

3    MS. MCCONWELL:  This is a new summary chart, Your    03:21PM

4    Honor.    03:21PM

5    MS. M. MILLER:  This isn't a summary chart.  Your    03:21PM

6    Honor asked how do we know that Jan's is Jan's, and I'm    03:21PM

7    showing you.    03:21PM

8    MS. MCCONWELL:  It's a chart.    03:21PM

9    MS. M. MILLER:  This is all the exhibits that    03:21PM

10    have been entered into evidence already.    03:21PM

11    THE COURT:  Let me just ask, okay.  This sounds    03:21PM

12    like -- I can see this, it looks like it talks about what's    03:21PM

13    the registration number of the helicopters and --    03:21PM

14    MS. M. MILLER:  Correct, and --    03:21PM

15    THE COURT:  -- accidents and serial number.    03:21PM

16    MS. M. MILLER:  -- and the serial number.    03:21PM

17    THE COURT:  And then the name of the registered    03:21PM

18    owner.    03:21PM

19    MS. M. MILLER:  And the N-number, and then the    03:21PM

20    name of the registered owner.  So Bean Bag, which you've    03:21PM

21    heard, unless they're going to now say Bean Bag is not a    03:22PM

22    Vanuatu company, maybe that's also a Philippine company.  Bean    03:22PM

23    Bag, right here --    03:22PM

24    THE COURT:  Yes, we've heard.    03:22PM

25    MS. M. MILLER:  -- is the registered owner of the    03:22PM

*Redirect - Khamvongsa*

1   helicopter that is on the list in 3003 that is identified with    03:22PM

2   both RPC4901 and the serial number 810338S.  That helicopter       03:22PM

3   was registered in the U.S. as N501F Harry?                         03:22PM

4          MR. MCCONWELL:  Hotel.                                       03:22PM

5          MS. M. MILLER:  Hotel, thank you.  And so you see           03:22PM

6   that there.  So, Your Honor, what we did was we correlated all     03:22PM

7   of the helicopters that were identified in the Exhibit 3003,       03:22PM

8   which by the way, was an exhibit that was seized from the          03:22PM

9   Defendants' computer, from Hansen Helicopters' computer            03:22PM

10  identifying all of these helicopters, and then we also have        03:23PM

11  Government's Exhibit 355 which correlates it.  So we've            03:23PM

12  correlated all of those RPC numbers with serial numbers with       03:23PM

13  N-numbers, if they were ever registered with the FAA and with      03:23PM

14  other identifying information including these Bean Bag             03:23PM

15  helicopters, Ohara Helicopters, Hansen Northern Helicopters.       03:23PM

16  These are all companies that you heard Mr. Martin talking          03:23PM

17  about as having assets --                                          03:23PM

18         THE COURT:  I see.  Okay.                                    03:23PM

19         MS. M. MILLER:  Yes.  Whirlwide, Heli Fish.                  03:23PM

20         THE COURT:  Okay, so let me just say, I can                 03:23PM

21  streamline this or separate this.  I understand how you --         03:23PM

22  which I think is very good, this is easy to read --                03:23PM

23  understand, that I can see how you're saying, okay, so when        03:23PM

24  there were sales, these sales were linked back to certain          03:23PM

25  numbers, which link back to certain shell registered owners.       03:23PM

```
 1          MS. M. MILLER:  Yes.                                03:24PM

 2          THE COURT:  But in the end, it was Jan's           03:24PM

 3   Helicopter sales.                                         03:24PM

 4          MS. M. MILLER:  Yes.                                03:24PM

 5          THE COURT:  Alleged.  All right.  I get that.      03:24PM

 6   But how do I know that -- the issue is, is Jan's Helicopters   03:24PM

 7   -- what kind of corporation is it, that's what -- they're 03:24PM

 8   trying to say, well, they're two different corporations, so   03:24PM

 9   you got the wrong one.                                    03:24PM

10          MS. M. MILLER:  I'm not saying they're two         03:24PM

11   different corporations.                                   03:24PM

12          THE COURT:  No, no, no.  I know.  They're          03:24PM

13   saying -- how do I know that Jan's corporation is --      03:24PM

14          MS. M. MILLER:  They're making that assertion.     03:24PM

15          THE COURT:  No, okay.  Strike that.  How do you    03:24PM

16   know that Jan's corporation is a -- according to you, Jan's   03:24PM

17   corporation is a -- well, I'm sorry --                    03:24PM

18          MS. M. MILLER:  No, no, no.                         03:24PM

19          THE COURT:  The exhibit that you were bringing     03:24PM

20   out in 3003-15.                                           03:24PM

21          MS. M. MILLER:  Yes.                                03:24PM

22          THE COURT:  Says Jan's corporation is registered   03:24PM

23   under the Philippines laws.                               03:24PM

24          MS. M. MILLER:  No.                                 03:24PM

25          THE COURT:  Right?                                 03:24PM
```

*Redirect - Khamvongsa*

1    MS. M. MILLER:  That's what the Defendants are    03:24PM
2  saying.  The government isn't saying that.    03:24PM
3    THE COURT:  Oh, I see.  Okay.  Wait.    03:24PM
4    MS. M. MILLER:  The Defendants are saying that    03:24PM
5  because it's their documents.    03:24PM
6    THE COURT:  No, no, no.  My point -- okay, let me    03:24PM
7  just go back.  So the exhibit --    03:25PM
8    MS. M. MILLER:  Yes.    03:25PM
9    THE COURT:  -- said that.    03:25PM
10    MS. M. MILLER:  Yes.    03:25PM
11    THE COURT:  So the exhibit said that.  And was    03:25PM
12  that Exhibit 3003-15, that was --    03:25PM
13    MS. MCCONWELL:  14.    03:25PM
14    THE COURT:  -- that was found from the    03:25PM
15  Defendants' corporation.    03:25PM
16    MS. M. MILLER:  Turner Kapp signs it.  Turner    03:25PM
17  Kapp signs that document.    03:25PM
18    THE COURT:  Can you pull up 3003-15 for one    03:25PM
19  second.    03:25PM
20    MS. M. MILLER:  Can you pull 3003 back up and    03:25PM
21  then also --    03:25PM
22    THE COURT:  So wait, wait.  Hold on.  Let me just    03:25PM
23  finish my thought process, I just got to understand this.  All    03:25PM
24  right.  So once I get it, I get it, I'll get it.  So 3003-15,    03:25PM
25  it says that the Jan's corporation was established under the    03:25PM

*Redirect - Khamvongsa*

1   laws of Philippines, the Defense Counsel is saying, well, you          03:25PM

2   got the wrong -- there is -- the rebuttal is actually wrong            03:25PM

3   because Jan's corporation that is being represented really is          03:25PM

4   a Vanuatu one, that's what they're saying.  I mean, that's the         03:25PM

5   argument.                                                              03:25PM

6                MS. M. MILLER:  No, they're not saying that.  As          03:25PM

7   a matter of fact --                                                    03:25PM

8                THE COURT:  They just said there is two separate          03:25PM

9   corporations.  You've got the wrong one.                              03:26PM

10               MS. M. MILLER:  No, Ms. McConwell --                      03:26PM

11               THE COURT:  At least that's what I thought --             03:26PM

12               MS. M. MILLER:  She's not saying that.  She's not         03:26PM

13  saying.                                                                03:26PM

14               THE COURT:  Ms. McConwell, did you say that?             03:26PM

15               MS. MCCONWELL: (Nodded head.)                            03:26PM

16               THE COURT:  You said, I thought you said they got        03:26PM

17  the wrong -- she did say that.  Okay.                                  03:26PM

18               MR. MARTIN:  Judge, could we get a copy of the           03:26PM

19  demonstrative exhibit that they're showing you so we can              03:26PM

20  respond to them?  The one they just showed you, I've never           03:26PM

21  seen before.  I don't think we have it, and I don't think it's        03:26PM

22  fair for them to drop it on you, and we've never seen it.             03:26PM

23               MS. M. MILLER:  I'm not dropping anything on you,        03:26PM

24  I'm answering your question about how will you know                   03:26PM

25  it's relevant.                                                        03:26PM

*Redirect - Khamvongsa*

1    MR. MARTIN:  Can you give me the demonstrative    03:26PM

2  exhibit, please?    03:26PM

3    THE COURT:  Can you give him a copy of that one    03:26PM

4  that's --    03:26PM

5    MS. M. MILLER:  Sure.  Absolutely.    03:26PM

6    MR. MARTIN:  We've got to get them all.    03:26PM

7    MS. M. MILLER:  Absolutely.    03:26PM

8    THE COURT:  Why don't you give it to them so they    03:26PM

9  can look at it first before we get into this.    03:26PM

10    MS. M. MILLER:  Well, there is something else I    03:26PM

11  want to bring up to your attention.    03:26PM

12    THE COURT:  Hold on.  Just let them at least look    03:26PM

13  at it.  I think I got.    03:26PM

14    MS. M. MILLER:  Okay.    03:26PM

15    THE COURT:  But, I guess, my -- she did -- that    03:26PM

16  is her argument though.    03:26PM

17    MS. M. MILLER:  But, no, but one thing you don't    03:26PM

18  get, and I'm worried about that, and that's this, Your    03:26PM

19  Honor --    03:26PM

20    THE COURT:  I don't think.  I think I got.  I    03:26PM

21  think I know what you are going to say.    03:26PM

22    MS. M. MILLER:  No, I mean you got what's been    03:26PM

23  said.    03:26PM

24    THE COURT:  No, no, I got what's been -- not what    03:26PM

25  is being shown to me.  Now, whether it's true or not is a    03:27PM

1    different story.                                              03:27PM

2              MS. M. MILLER:  Yes.                                03:27PM

3              THE COURT:  I get that.  But my question is, so     03:27PM

4    this bill of sale says this -- this bill of sale under 3003-14  03:27PM

5    indicates that the Jan's is registered under the Philippine    03:27PM

6    laws, right?                                                  03:27PM

7              MS. M. MILLER:  Yes.                                03:27PM

8              THE COURT:  Okay.                                   03:27PM

9              MS. MCCONWELL:  Yes.                                03:27PM

10             THE COURT:  Okay, so I got that.                    03:27PM

11             MS. M. MILLER:  Yes.                                03:27PM

12             THE COURT:  And the Defense Counsel is saying,      03:27PM

13   look, there's two different companies here, there is not a     03:27PM

14   true rebuttal here.                                           03:27PM

15             MS. M. MILLER:  Where is the evidence of the        03:27PM

16   other Jan's company, 829 which is also something that they     03:27PM

17   produced where they have Jan's as a Vanuatu company?  Don't    03:27PM

18   you see what they're doing?                                   03:27PM

19             THE COURT:  No, I understand what you're saying.    03:27PM

20   829 is what now?                                              03:27PM

21             MS. M. MILLER:  829.                                03:27PM

22             THE COURT:  Oh, 829 is that?                        03:27PM

23             MS. M. MILLER:  829.                                03:27PM

24             THE COURT:  No, no, 829, I thought you said A-29.   03:27PM

25             MS. M. MILLER:  No, 829 was produced by the        03:27PM

1  Defendants, both of these Counsel, in a motion that they filed            03:27PM

2  with this Court, and they represented to the Court here's the              03:28PM

3  structure of the company, okay.  They keep wanting to say the              03:28PM

4  Government's Exhibit 829.  This isn't our Exhibit 829.  I                   03:28PM

5  don't believe anything that they have to say about their                   03:28PM

6  corporate entities or their structures.  To me that's not                  03:28PM

7  issue; the issue is the helicopters.  Because the helicopters              03:28PM

8  are what they registered with the FAA and once they did, they             03:28PM

9  were required to comply with the requirements of the FAA.  If              03:28PM

10 they want to screw around and say, you know Jan's is a                      03:28PM

11 Philippines corporation in one instance, but it's really a                 03:28PM

12 Vanuatu corporation in another instance.                                   03:28PM

13        The government has never seen a Vanuatu charter                      03:28PM

14 for Jan's.  Do they have one?  I don't know.  We've never seen             03:28PM

15 it.  The only thing we've seen for Jan's, Your Honor, if we go             03:28PM

16 back to Exhibit 355, as you recall, the Philippine                         03:28PM

17 authorities --                                                             03:28PM

18        THE COURT:  Okay.  I got it.                                         03:29PM

19        MS. M. MILLER:  -- involuntarily deregistered and                    03:29PM

20 delisted all of those helicopters for their failure to comply             03:29PM

21 with the Philippine rules.  Remember that was admitted into                03:29PM

22 that evidence.  And Harry Lero, who is their representative in             03:29PM

23 the Philippines for Jan's, accepted that delisting and that               03:29PM

24 deregistration.  And then Harry Lero is also the gentleman who            03:29PM

25 is an agent of the Defendants who accepted $18,000 a year in              03:29PM

1  bribes to keep the Philippine authorities at bay while they    03:29PM

2  were able to fly those helicopters for almost ten years    03:29PM

3  without any oversight without any review or anything.  All of    03:29PM

4  that has gotten into evidence as well.    03:29PM

5           My point is this, doesn't matter if Jan's is a    03:29PM

6  Philippine corporation legitimately or a Vanuatu corporation.    03:29PM

7  What matters is they're identifying helicopters that are    03:29PM

8  subject of this indictment.    03:29PM

9           THE COURT:  Okay.  I got it.  I got it.    03:29PM

10          MS. M. MILLER:  So helicopters can be traced to    03:29PM

11  the indictment.    03:29PM

12          THE COURT:  Okay.  So I got it.  I think you    03:29PM

13  pounded it through pretty well.    03:30PM

14          All right.  Yes, Ms. McConwell?    03:30PM

15          MS. MCCONWELL:  I respectfully disagree with Ms.    03:30PM

16  Miller's argument.    03:30PM

17          THE COURT:  Okay.  You have to get on to the mic    03:30PM

18  then, please.  You respectfully disagree?    03:30PM

19          MS. MCCONWELL:  I respectfully disagree.  If you    03:30PM

20  look at the 3003 was a document that Ms. Miller offered after    03:30PM

21  2955, which was the end of the third amended exhibit list,    03:30PM

22  which we've talked about ad nauseam that they're not to come    03:30PM

23  in beyond that.  And several exhibits --    03:30PM

24          THE COURT:  Well, the only way that an exhibit --    03:30PM

25  let me just say this, the only way an exhibit can come in    03:30PM

*Redirect - Khamvongsa*

1    that's beyond the exhibit list is if it's true rebuttal or if    03:30PM

2    there is new evidence that needs to be brought in, they can    03:30PM

3    ask for that, but go ahead.    03:30PM

4            MS. MCCONWELL:  Portions of the 3003 were not    03:30PM

5    rebuttal.  They were things that they brought in on the direct    03:30PM

6    examination of Mr. Marty, and they couldn't bring in these    03:31PM

7    additional documents.  But if the Court is going to look at    03:31PM

8    the 3003, 3003-14 was a document that the Philippines    03:31PM

9    certified that was in their records and it shows that Jan's    03:31PM

10   Helicopters, Inc. that is a portion, that is a party to that    03:31PM

11   contract is a Philippine corporation.    03:31PM

12           THE COURT:  Okay, so let me just say this, all    03:31PM

13   right.  Fine, that's fine.  So if the evidence shows -- let me    03:31PM

14   just say this, if the evidence shows that the Philippines    03:31PM

15   government registry office, says that Jan's was established    03:31PM

16   under the Philippine laws, then okay, so you got it, that's    03:31PM

17   your argument, you could argue that.  And if, if the 892, I    03:31PM

18   guess that exhibit there, says that Jan's is a Vanuatu    03:31PM

19   corporation, I mean, you could make your argument, really.    03:31PM

20   You guys can both make your argument.  That the prosecutor is    03:31PM

21   going to say they're one in the same, doesn't matter.  She's    03:32PM

22   obviously saying that she feels, well, you know what she feels    03:32PM

23   about fraud.    03:32PM

24           MS. MCCONWELL:  And then beyond that, I believe    03:32PM

25   she conflates the dates.  So the e-mail that had or the FAA    03:32PM

1    documents from the FAA registry are what were attached to          03:32PM

2    Government's Exhibit 366, which Mr. Martin went through, was        03:32PM

3    an e-mail that was sent in late 2016.  And those show all of        03:32PM

4    those registry.  The aircraft that she wants to talk about         03:32PM

5    that were deregistered in the Philippines, that occurred I         03:32PM

6    believe in 2014.  And the evidence was that $17,000 was paid       03:32PM

7    because the Philippines charged all of the aircraft owner for      03:32PM

8    all of the inspections, which the United States doesn't do.        03:32PM

9    And for a number of aircraft they had, that's what the cost        03:32PM

10   was.                                                                03:32PM

11           THE COURT:  Okay.  But let me just say, let's              03:32PM

12   just focus on -- the focus is on the particular request.  So       03:32PM

13   the prosecution is asking for 3003-15.                             03:33PM

14           MS. MCCONWELL:  Right.                                     03:33PM

15           THE COURT:  And you're asking for -- well, if             03:33PM

16   you're going to do that --                                         03:33PM

17           MS. MCCONWELL:  I don't think 3003-15 should be           03:33PM

18   admitted.  It's not even in, it's not the same timeframe.          03:33PM

19   It's a document that's two years later, it's dated 2018 and        03:33PM

20   what Mr. Martin went through was in 2016.                          03:33PM

21           MR. MARTIN:  August.  August.                             03:33PM

22           THE COURT:  What he went through were records --          03:33PM

23           MS. MCCONWELL:  FAA records.                              03:33PM

24           THE COURT:  -- demonstrating registration of all         03:33PM

25   those companies.                                                   03:33PM

---

*Redirect - Khamvongsa*

```
 1              MS. MCCONWELL:  Right.  Effective 2016.        03:33PM

 2              THE COURT:  Okay.  But does it -- let me ask you  03:33PM

 3    this, does it matter though with the -- I guess, the     03:33PM

 4    registration though, there would be an expiration, most  03:33PM

 5    governments have expirations on vehicles and aircraft so that  03:33PM

 6    they can keep getting money.  Is that not true?         03:33PM

 7              MS. MCCONWELL:  I think it does matter.        03:33PM

 8              THE COURT:  No, no, no, but is that not true?  03:33PM

 9    There would be an expiration.  Wait, wait, and if that's true,  03:33PM

10    then the prosecutor has represented to the Court that the  03:33PM

11    expiration was not until 2020.                          03:34PM

12              MS. M. MILLER:  Correct.                       03:34PM

13              THE COURT:  And that the particular sale, bill of  03:34PM

14    sale, is identified as 2018.                            03:34PM

15              MS. M. MILLER:  That's right.                  03:34PM

16              MS. MCCONWELL:  Well, I don't know that we have  03:34PM

17    all of the specific -- all of the specific documents.   03:34PM

18              THE COURT:  So you want to review them?        03:34PM

19              MS. MCCONWELL:  Related to that --             03:34PM

20              THE COURT:  Well, okay.  That's her theory, and  03:34PM

21    that's what she says she has the evidence.              03:34PM

22              MS. MCCONWELL:  We do know that a number of    03:34PM

23    aircraft were deregistered in 2020 because it was requested to  03:34PM

24    try to make sure that they were all cleaned up.  Because --  03:34PM

25    and I think Mr. Walker -- those are admitted into evidence of  03:34PM
```

*Redirect - Khamvongsa*

1  all of the requests for deregistration for a number of                    03:34PM

2  aircraft.  So that's for 2020.                                            03:34PM

3              THE COURT:  But the purpose of this -- the                     03:34PM

4  purpose of this redirect is to rebut the testimony that was               03:34PM

5  given by the witness through the cross-examination.  And                  03:34PM

6  they're trying to rehabilitate.  That's what they're trying to            03:34PM

7  do.                                                                       03:35PM

8              So the Court finds, just based on what has been                03:35PM

9  presented -- are you saying you need more time to review it?              03:35PM

10 Because based on what I see, I think -- I mean, I think it's              03:35PM

11 right, I think she's does have an opportunity to go forward              03:35PM

12 and the Court will allow the questioning.                                 03:35PM

13             MR. MARTIN:  Your Honor, I went through -- I                   03:35PM

14 think.                                                                    03:35PM

15             THE COURT:  Yeah.                                             03:35PM

16             MR. MARTIN:  I went through multiple, as                       03:35PM

17 everybody will recall.                                                    03:35PM

18             THE COURT:  Yes.                                              03:35PM

19             MR. MARTIN:  Multiple, some of them expired in --             03:35PM

20 I haven't looked at them all, but they all had different                  03:35PM

21 expiration date.  I'm looking at one right now, 2017; this               03:35PM

22 document, 2018.  I'd like to go through them and find out --             03:35PM

23             THE COURT:  Well, why don't do you that.  Since               03:35PM

24 this is a new document, go look through it.  And to the extent            03:35PM

25 that, I mean, if there's 40 helicopters -- you know, I'm just            03:35PM

*Redirect - Khamvongsa*

```
1   -- if there are 40 helicopters that were -- that he identified    03:35PM

2   as being registered to all of these alleged shell corporations    03:35PM

3   and only two of them are relevant to that bill of sale, then       03:35PM

4   you got a good point.  She can only -- you know, so, yeah.         03:35PM

5               MS. M. MILLER:  And it goes to the weight and not      03:36PM

6   the admissibility, and now we lose 24 minutes of the day.          03:36PM

7               THE COURT:  Well, no, but they're right, I mean,       03:36PM

8   they do have the right to look at this.  They haven't looked       03:36PM

9   at that what you just indicated.                                   03:36PM

10              MS. M. MILLER:  Right now on the FAA registry,         03:36PM

11  one of these very helicopters is shown as being registered in      03:36PM

12  the name of Jan's in Vanuatu, right now.                           03:36PM

13              MR. MARTIN:  Well, that's great.                       03:36PM

14              MS. M. MILLER:  Right today.                           03:36PM

15              MR. MARTIN:  That's not relevant to what we're         03:36PM

16  talking about.                                                     03:36PM

17              MS. M. MILLER:  It's very relevant because it's        03:36PM

18  one of the ones that Mr. Martin identified with this agent to      03:36PM

19  say, isn't this an asset of this particular Vanuatu                03:36PM

20  corporation, and then we have Ms. McConwell coming up going,       03:36PM

21  wait a minute, Jan's is a Philippine corporation.  They mixed      03:36PM

22  and matched which corporations they used.                          03:36PM

23              THE COURT:  So that may be true.  Maybe that's         03:36PM

24  exactly what they believe and they know.  Okay.  In the end,       03:36PM

25  it's what the jury is going to believe, so you guys have to        03:36PM
```

*Redirect - Khamvongsa*

```
 1    pull to together.                                         03:36PM

 2              MR. MARTIN:  Your Honor.                         03:36PM

 3              THE COURT:  This case will rise and fall on your 03:36PM

 4    understanding of the evidence and your closing argument.   03:37PM

 5              MS. M. MILLER:  100%.                            03:37PM

 6              MR. MARTIN:  Your Honor, that is not what I      03:37PM

 7    represented.  I said is this aircraft in the FAA registry an 03:37PM

 8    asset.  I did not particularly refer to any specific       03:37PM

 9    corporation, but what I would ask is --                    03:37PM

10              MS. M. MILLER:  What?                            03:37PM

11              MR. MARTIN:  We just saw an exhibit I haven't    03:37PM

12    seen before.  If the government has exhibits, I'd like to see 03:37PM

13    them.                                                      03:37PM

14              THE COURT:  I think, no, maybe I'm wrong, but I  03:37PM

15    was under the impression that you were -- okay.  I'll have to 03:37PM

16    think about that or go back and listen to that question.  I 03:37PM

17    was under the impression that when you were going through the 03:37PM

18    registration requirements, and he was confirming them, that 03:37PM

19    when you asked the last question about the asset, it was    03:37PM

20    essentially, is this an asset of the corporation that is being 03:37PM

21    registered.                                                03:37PM

22              MS. M. MILLER:  Yes.                             03:37PM

23              MR. MARTIN:  May I say what I said, since I      03:37PM

24    remember, I asked it.  I believe the question was, based upon 03:37PM

25    the records of the FAA, a particular helicopter has been   03:37PM
```

```
 1    identified as X, is that helicopter an asset?          03:38PM
 2                  MS. M. MILLER:  Of that entity.          03:38PM
 3                  MR. MARTIN:  I didn't say that.          03:38PM
 4                  MS. M. MILLER:  Oh, of course you did.   03:38PM
 5                  MR. MARTIN:  Then let's replay it.       03:38PM
 6                  MS. M. MILLER:  Let's look at -- let's have  03:38PM
 7    Veronica read it back.  Because I think that's going to be the  03:38PM
 8    most fair way to do this because we have revisionist history  03:38PM
 9    going on.  Your Honor, if your memory and my memory, is  03:38PM
10    that --                                                 03:38PM
11                  THE COURT:  Let's not get Washingtonian, please.  03:38PM
12                  MS. M. MILLER:  But if your memory and my memory  03:38PM
13    is he was associating these helicopters with that company --  03:38PM
14                  THE COURT:  Let me just say, I got the    03:38PM
15    impression, really, Mr. Martin, I got the appreciation that  03:38PM
16    you were -- I mean.                                     03:38PM
17                  MS. M. MILLER:  Why else do it?          03:38PM
18                  THE COURT:  No, we can do it.            03:38PM
19                  MS. M. MILLER:  But, no, what I'm saying is why  03:38PM
20    else would he do it unless --                           03:38PM
21                  THE COURT:  Let's just hear the Q and A.  Yeah.  03:38PM
22    He did say -- he did put an emphasis on the first three  03:38PM
23    letters.  Let's hear it.                                03:38PM
24                  MR. MARTIN:  May I make a suggestion, Your Honor?  03:38PM
25    I don't think we are going to get done with this issue before  03:38PM
```

*Redirect - Khamvongsa*

1    4, and I'm just saying that for the purposes of the jury.    03:38PM

2                THE COURT:  Yeah.  Right.  Let me call the jury    03:39PM

3    back in, and I'm going to just excuse them.  I'm going tell --    03:39PM

4    so, Counsels, here's the deal, we have -- I have some    03:39PM

5    off-island trainers coming in for my staff, and I have to meet    03:39PM

6    with them.  And my staff has asked that I, because some of the    03:39PM

7    staff wants to go to the training, which I understand.  So I    03:39PM

8    -- I'm going to just recess for a few hours, and then we'll    03:39PM

9    start later tomorrow.    03:39PM

10               MS. M. MILLER:  Okay.    03:39PM

11               THE COURT:  All right.  I'm sorry about that, but    03:39PM

12   I thought we'd be done by Wednesday.    03:39PM

13               MS. M. MILLER:  Yeah, I know.  Well, you know, if    03:39PM

14   we take all this time we can't -- but a couple of things, one    03:39PM

15   of the things we have talked about and just for planning    03:39PM

16   purposes because next week then becomes tricky.    03:39PM

17               THE COURT:  What happened -- what's going on next    03:39PM

18   week?    03:39PM

19               MS. M. MILLER:  Well, I mean we thought we'd be    03:39PM

20   done this week.  I'm sure you have things planned, we have    03:39PM

21   witnesses, like Mr. Guzzetti, was supposed to leave on Sunday.    03:39PM

22   He has other obligations so we're running into an issue there,    03:39PM

23   but we're going to push through.  I don't know if Saturday is    03:39PM

24   a possibility for trial, Your Honor.  I also think, just for    03:40PM

25   planning purposes, one of the things that we've been    03:40PM

discussing is we may just finish our case with Mr. Guzzetti, 03:40PM

and not call Mr. Klang.  In which case, it would be nice to 03:40PM

know if the defense is going to call any witnesses, and 03:40PM

whether we need to be ready for closings, and we still have to 03:40PM

discuss jury instructions.  Yes. 03:40PM

        THE COURT:  Jury instructions, which you guys 03:40PM

have a copy of.  I'm not so worried about us handling the 03:40PM

legal issues, working overtime in the morning or late evening. 03:40PM

The issue is getting the jurors done, and you guys getting 03:40PM

into closing argument.  That's the issue.  What Mr. -- all 03:40PM

right, Counsel?  What do you think? 03:40PM

        MR. MARTIN:  Your Honor, I think if we're going 03:40PM

to do Saturday, we got to take the jury into consideration. 03:40PM

        THE COURT:  I'll have to ask them.  I'll have to 03:40PM

ask them.  I'll have Lani -- come on, bring in the jury. 03:40PM

        MR. MARTIN:  If we're not going to call Mr. 03:40PM

Klang -- 03:40PM

        (Jury in at 3:40 p.m.) 03:40PM

        THE COURT:  If you're not going to call him what? 03:40PM

All right.  Please be seated.  Thank you, ladies and 03:41PM

gentlemen, for your patience.  We're going to go ahead and 03:41PM

retire for the day, recess for the day.  We're still going 03:41PM

through some legal issues that come up, and I'm sorry about 03:41PM

that, but when there are legal issues that have to be decided 03:41PM

by the Court, it has to be outside your presence.  So that we 03:41PM

```
 1    can figure it out and see if certain evidence can come in or      03:41PM
 2    not.  So I would like to thank you again for your patience.       03:41PM
 3    Please keep an open mind, and do not form or express any          03:41PM
 4    opinion on this case until it's submitted to you at the time      03:41PM
 5    of deliberation.  Do not speak to anyone on any subject           03:41PM
 6    connected with the trial.  In addition, stay away from all        03:41PM
 7    social media that may report on the case.  Tomorrow I have        03:42PM
 8    some off-island trainings that are coming in for my staff and     03:42PM
 9    in order to let them have an opportunity to attend that           03:42PM
10    training, the Court is going to have to be in recess.  I've       03:42PM
11    decided to be in recess while they're training, but we will       03:42PM
12    come back tomorrow and resume at 1:00 in the afternoon.  I        03:42PM
13    apologize for that, but we'll have to do that.                    03:42PM
14             In the meantime, I'll have to work on some stuff         03:42PM
15    with the lawyers here.  Either today and finish up today,        03:42PM
16    we're going to be here until later today and then hopefully,      03:42PM
17    we'll finish up some stuff tomorrow.  But still, we're almost     03:42PM
18    done with the testimony of this last witness, and then the       03:42PM
19    prosecution may call one or two more witnesses, and so I'm        03:42PM
20    thinking, to be perfectly honest, we thought we would be done    03:42PM
21    this week, and unfortunately, it's not happening because there    03:42PM
22    are legal issues that have arisen during the course of the        03:43PM
23    trial.  And that happens in every trial.  It's not just          03:43PM
24    limited to this trial.  So it looks like we'll be done next       03:43PM
25    week.  I'm pretty confident you guys will get the case next       03:43PM
```

*Redirect - Khamvongsa*

```
 1    week.                                                          03:43PM

 2             The Court has to ascertain how many more               03:43PM

 3    witnesses will actually testify, I'll be speaking to the       03:43PM

 4    lawyers, and then while we were -- while we had the break, the 03:43PM

 5    attorneys were working on the jury instructions, so we will    03:43PM

 6    have to have a jury instructions conference, I will have to    03:43PM

 7    have that with them and have all the jury instructions         03:43PM

 8    prepared for you.                                              03:43PM

 9             So I just want you to hang in there, we still         03:43PM

10    need you.  We don't -- I don't want to lose you because we've  03:43PM

11    gone this far, and the government has paid so much money just  03:43PM

12    to keep you here, and to make sure that -- and I appreciate    03:43PM

13    your dedication to staying on in the trial and listening to    03:43PM

14    the evidence.  So I'll see you tomorrow.  Please be here by no 03:43PM

15    later than 12:45 and we'll start at 1:00.  Please rise for the 03:43PM

16    jury.                                                          03:44PM

17             (Jury out at 3:44 p.m.)                               03:44PM

18             THE COURT:  Please be seated.  Okay.  So, yeah.       03:44PM

19             MR. MARTIN:  I was going to say, Your Honor, Ms.      03:44PM

20    Miller indicated that they may rest after Mr. Guzzetti.

21             THE COURT:  Okay.  Hold on.  Hold on.  Hold on.

22             MR. MARTIN:  I'm sorry.

23             THE COURT:  Oh sorry, Veronica needed to --

24             MR. MARTIN:  I'm sure she heard everything I

25    said.
```

1      THE COURT:  Who?  Veronica?  Yeah.  Well, she --
2  hold on.
3      MR. MARTIN:  As I was saying, Your Honor, Ms.                          03:44PM
4  Miller just indicated, possibly, that the government may rest              03:44PM
5  after Mr. Guzzetti.                                                        03:44PM
6      THE COURT:  Right.                                                     03:44PM
7      MR. MARTIN:  And asked, it would be nice to know                       03:44PM
8  what our intentions were.  Of course, this is the first we've              03:45PM
9  heard of that.  We need to visit privately about that before               03:45PM
10 we can give and answer, but if that's truly something that's               03:45PM
11 going to occur, then we would like to know that too because it             03:45PM
12 impacts where we are going too, as far as, are we going to                  03:45PM
13 call witnesses or not.  And I don't want, hypothetically,                   03:45PM
14 tomorrow at 3:00, let's say, they're done and suddenly we're                03:45PM
15 expected to call witnesses so that's the reason I make this                 03:45PM
16 comment.                                                                    03:45PM
17     THE COURT:  Is that -- that's the reason why                            03:45PM
18 what?                                                                       03:45PM
19     MR. MARTIN:  Well, I mean, if they are going to                         03:45PM
20 end with Mr. Guzzetti, that impacts anything we do, whether we             03:45PM
21 call witnesses or not, so that's the reason I'm making this                 03:45PM
22 comment.                                                                    03:45PM
23     THE COURT:  Guzzetti has to leave by this Sunday?                       03:45PM
24     MS. M. MILLER:  Well, that was what he was                              03:45PM
25 scheduled to do, and I'm going to have to now see if we can                 03:45PM

1   move him back.  I mean, I don't know what else to do.          03:45PM

2              THE COURT:  Is he here on Guam?                      03:45PM

3              MS. M. MILLER:  He's here on Guam; yes.              03:45PM

4              THE COURT:  Okay.                                    03:45PM

5              MS. M. MILLER:  Pardon?                              03:45PM

6              THE COURT:  Yeah, I forgot to ask the jurors, are   03:45PM

7   they still out there?  For Saturday, I'm not sure.             03:46PM

8              MS. M. MILLER:  Yeah, that would work, if we        03:46PM

9   could do it on Saturday, then we could do that.  Worse case    03:46PM

10  scenario, since Mr. Khamvongsa is here on island, we could     03:46PM

11  jump in Mr. Guzzetti and then finish him, and then get         03:46PM

12  Mr. Khamvongsa back on to finish him.                          03:46PM

13             THE COURT:  How much time do you need on            03:46PM

14  Guzzetti?  Oh, Guzzetti was the guy --                         03:46PM

15             MS. M. MILLER:  He's the accident reconstruction    03:46PM

16  expert, Your Honor, he's the gentleman that did the jury view. 03:46PM

17  So my direct examination of him will be four hours.            03:46PM

18             THE COURT:  Oh, okay.  That's a long time then.     03:46PM

19             MR. MARTIN:  Judge, I don't mean any disrespect     03:46PM

20  to anyone, but based upon how long it's taken with every       03:46PM

21  witness we've had, I don't know how in the world, even if we   03:46PM

22  go Saturday, I mean, I would love to finish Saturday, I don't  03:46PM

23  know how in the world though that we might get done on         03:46PM

24  Saturday.                                                      03:46PM

25             THE COURT:  Yeah.                                   03:46PM

*Redirect - Khamvongsa*

1    MR. MARTIN:  And I'm just saying that out of          03:46PM

2    caution so that if they do need to make other arrangements, I    03:46PM

3    want them -- I'm not misrepresenting.               03:46PM

4    THE COURT:  I'm going to bet that some of the       03:46PM

5    jurors already have plans.  Really, I do think that.  It's    03:46PM

6    kind of late for us to ask them.  I mean, if I had done it    03:46PM

7    earlier in the week.  They were under the impression that we    03:47PM

8    would be done this week, but you guys have a new issue popping    03:47PM

9    up every hour on the hour.                          03:47PM

10    MS. M. MILLER:  Yeah, I mean, it wouldn't hurt to    03:47PM

11    ask.  They may have plans, but if they don't, we can then push    03:47PM

12    through.  Anyway.                                   03:47PM

13    THE COURT:  Yeah, I don't know because the way in    03:47PM

14    which this is going, even if you did four hours without    03:47PM

15    interruption, without any objections, which I doubt that will    03:47PM

16    happen.                                             03:47PM

17    MS. M. MILLER:  Yeah, I doubt that, too.            03:47PM

18    THE COURT:  I doubt that.  They have the right to    03:47PM

19    present their case, and when they go -- when they       03:47PM

20    cross-examine Mr. Guzzetti, I'm sure it's going to be.    03:47PM

21    MS. M. MILLER:  But, I mean, it's also -- you       03:47PM

22    know, one of the reasons why I would cut Mr. Klang is if they    03:47PM

23    were going to present a witness, because we're going to    03:47PM

24    running up against some deadline just with Counsel here.  And    03:47PM

25    so that's why this whole -- we don't know if we're going to    03:47PM

*Redirect - Khamvongsa*

1  call anybody.  You know, if they really don't, that's one      03:47PM

2  thing you, I would think by now, after all this time, they      03:47PM

3  probably do know.  So it would just help us with scheduling,     03:48PM

4  Your Honor, if we knew if they were going to call anybody.      03:48PM

5          THE COURT:  Do you guys have an idea, or you just     03:48PM

6  don't want to tell her?      03:48PM

7          MR. MARTIN:  Two things, we are considering     03:48PM

8  whether or not to do it, and I'll be honest with you, Your     03:48PM

9  Honor, I never make that final decision until the government     03:48PM

10  rests and I evaluate where we think we are in the case.  So if     03:48PM

11  I say, no, we're not calling any witnesses, and then come next     03:48PM

12  Tuesday I'm going, well, Your Honor, you know, because they     03:48PM

13  did this and this and this, I got to call these three witness.     03:48PM

14  I don't want to misrepresent anybody.  I will not make that     03:48PM

15  decision or Mr. Walker won't make that decision until he and I     03:48PM

16  talk about where we are in the case.  I'm saying that out of     03:48PM

17  candor so everybody will understand what goes into this, it     03:48PM

18  doesn't just happen.      03:48PM

19          THE COURT:  Yeah, well, I mean, I think everybody     03:48PM

20  says that.  All Defense Counsels say that, and then they --     03:48PM

21  and I think they probably mean it.  So that's fine.  We     03:48PM

22  understand.  So putting that aside.      03:48PM

23          MS. M. MILLER:  Yes, the motion.      03:48PM

24          THE COURT:  Back together this issue.  So let me     03:48PM

25  just say I'll -- let the Defense Counsel review the      03:48PM

1   demonstrative exhibit.  But I am inclined to allow it in.  Or                03:49PM
2   at least let her bring it in.  And under the theory -- under                 03:49PM
3   proper rebuttal.                                                             03:49PM
4           MS. M. MILLER:  And just so you know, Your Honor,                    03:49PM
5   we did give Defense Counsel 3003 and our intent to use it on                 03:49PM
6   May 20th of 2022.  So on May 20th they had that entire                       03:49PM
7   exhibit, they had had all of that information, so this last                  03:49PM
8   minute, you know, give me a break.  I mean, they had it.  They               03:49PM
9   had to review.  Since May 20th of 2022.                                      03:49PM
10          MR. MARTIN:  We're not arguing about 3003, we're                     03:49PM
11  talk about the demonstrative exhibit you just put up.  We                    03:49PM
12  don't have it.                                                               03:49PM
13          THE COURT:  Oh, I know.  No, the yellow one, you                     03:49PM
14  have that one.                                                               03:49PM
15          MS. M. MILLER:  That's a demonstrative aid.  That                    03:49PM
16  wasn't anything we were going to introduce in trial.  That was               03:49PM
17  an analysis we did ourselves --                                             03:49PM
18          THE COURT:  Right.                                                   03:49PM
19          MS. M. MILLER:  -- to use for questions.                             03:49PM
20          MR. MARTIN:  They just argued with it, and I've                      03:49PM
21  never seen it.                                                               03:49PM
22          THE COURT:  Just let them look at it though.                         03:49PM
23          MS. M. MILLER:  We sent it to them.                                  03:49PM
24          THE COURT:  Oh, okay.  Just now?                                     03:49PM
25          MR. MARTIN:  When?                                                   03:49PM

*Redirect - Khamvongsa*

| | | |
|---|---|---|
| 1 | MS. M. MILLER:  Right now. | 03:49PM |
| 2 | THE COURT:  Oh, I know.  But that's what they are | 03:49PM |
| 3 | saying, they never got it until after they asked. | 03:49PM |
| 4 | MS. M. MILLER:  Well, yeah, because we didn't | 03:49PM |
| 5 | intend to use it as an exhibit at trial.  It was something we | 03:50PM |
| 6 | put together for ourselves to analyze the helicopters.  It was | 03:50PM |
| 7 | working papers.  It's work product. | 03:50PM |
| 8 | THE COURT:  Sort of like your work product? | 03:50PM |
| 9 | Okay, got it. | 03:50PM |
| 10 | MS. M. MILLER:  It identifies the exhibits that | 03:50PM |
| 11 | have already come in.  It identifies relationships.  It's -- | 03:50PM |
| 12 | we have a lot of those. | 03:50PM |
| 13 | MR. MARTIN:  I haven't received an e-mail from | 03:50PM |
| 14 | the government.  If they sent it, I haven't got it. | 03:50PM |
| 15 | MS. M. MILLER:  I sent it as soon as you said | 03:50PM |
| 16 | send it. | 03:50PM |
| 17 | MR. MARTIN:  I still don't have it. | 03:50PM |
| 18 | MS. M. MILLER:  Okay. | 03:50PM |
| 19 | THE COURT:  All right.  Well, there is something | 03:50PM |
| 20 | going on with the computers.  I thought it was fixed, but mine | 03:50PM |
| 21 | apparently is not with the e-mails.  So Microsoft is to be -- | 03:50PM |
| 22 | okay, so we'll come back to this issue.  Let's see.  If the | 03:50PM |
| 23 | jurors are coming in tomorrow, let me just ask, are there any | 03:50PM |
| 24 | other exhibits that you want, with regard to rebuttal, that | 03:50PM |
| 25 | they have not -- that. | 03:50PM |

*Redirect - Khamvongsa*

```
 1              MS. M. MILLER:  Everything else has been          03:50PM
 2    introduced, Your Honor.                                     03:50PM
 3              THE COURT:  And admitted.  Introduced and         03:50PM
 4    admitted?                                                   03:50PM
 5              MS. M. MILLER:  And admitted.  And admitted; yes. 03:50PM
 6              THE COURT:  So there's nothing else that has not  03:50PM
 7    been admitted?                                              03:50PM
 8              MS. M. MILLER:  It has -- no.                      03:50PM
 9              THE COURT:  Okay, good.  So we're only talking    03:50PM
10    about 3000 --                                               03:50PM
11              MS. M. MILLER:  3-15.                             03:50PM
12              THE COURT:  15, that's it.                        03:50PM
13              MS. M. MILLER:  Yup.                              03:51PM
14              THE COURT:  All right.  Got it.                   03:51PM
15              MR. MARTIN:  The only issue that will come up     03:51PM
16    then, Your Honor, will be whether or not it's beyond the    03:51PM
17    scope, whether or not it's relevant.                        03:51PM
18              THE COURT:  Right.  Yeah.                         03:51PM
19              MR. MARTIN:  Those issues may come up during.     03:51PM
20              THE COURT:  Right.  Right.  But really the main   03:51PM
21    issue is you wanted to be sure that you got to look at the  03:51PM
22    exhibit that she wants to redirect the witness with.  All   03:51PM
23    right.  Now, on this issue.                                 03:51PM
24              MR. MARTIN:  I don't know what they are.  I mean, 03:51PM
25    she's given the ones that aren't in evidence, but I don't know 03:51PM
```

*Redirect - Khamvongsa*

1   what the other ones are.                                                03:51PM

2           MS. M. MILLER:  No, and I didn't -- did I get               03:51PM

3   what they planned on using before they cross-examined, I mean,       03:51PM

4   Your Honor, come on.                                                 03:51PM

5           THE COURT:  You don't want to give it to them?              03:51PM

6           MS. M. MILLER:  No, I really don't.  I'm really             03:51PM

7   not inclined to give it to them.  I'm inclined for this to go        03:51PM

8   the way it should go, which is if they have a legitimate             03:51PM

9   objection, make the objection at the time.                           03:51PM

10          THE COURT:  They don't want to give it to you,              03:51PM

11  they don't have to give to you.                                      03:51PM

12          MS. M. MILLER:  I don't have to.                            03:51PM

13          THE COURT:  But if they wanted to.                          03:51PM

14          MS. M. MILLER:  I don't want to.                            03:51PM

15          MS. MCCONWELL:  Well, I'd just like the record to           03:51PM

16  reflect, Mr. McConwell gave his cross-examination exhibits to        03:51PM

17  them, even though he shouldn't have had to.                          03:51PM

18          MS. M. MILLER:  130, 131, 132, 133, 134, 135,               03:51PM

19  136, never saw them.                                                 03:52PM

20          MS. MCCONWELL:  Oh, bologna, you saw them.                  03:52PM

21          MS. M. MILLER:  Bologna, the new ones you brought           03:52PM

22  in today?                                                            03:52PM

23          MS. MCCONWELL:  You saw those Hawaii ones, Bank             03:52PM

24  of Hawaii.                                                           03:52PM

25          MS. M. MILLER:  In what universe?                           03:52PM

```
 1              MS. MCCONWELL:  Well, then you didn't read my      03:52PM
 2    motion because it -- you didn't read my motion.            03:52PM
 3              THE COURT:  Well --                              03:52PM
 4              MS. M. MILLER:  What motion?  As exhibits what   03:52PM
 5    motion?                                                    03:52PM
 6              THE COURT:  Counsels, Counsels, keep your        03:52PM
 7    conversations, chats to yourselves.  I don't want to be   03:52PM
 8    involved in that.  But, anyway.  It's getting on the record. 03:52PM
 9    Come on.                                                   03:52PM
10              MS. M. MILLER:  Oh, by the way, on the record,   03:52PM
11    could we go back to Mr. Martin question and the answer because 03:52PM
12    I don't think that he is stating exactly what was said.   03:52PM
13              THE COURT:  So let me, in fairness to Mr. Martin, 03:52PM
14    we'll go back to the last two registration questions dealing 03:52PM
15    with assets.                                               03:52PM
16              Veronica, want to put that in your search?       03:54PM
17              (Whereupon the reporter read back requested      03:54PM
18    portion.)                                                  03:54PM
19              MS. M. MILLER:  There is an association to the   03:54PM
20    company that is in the registration file.  Can you go back, 03:54PM
21    Ms. Veronica, please to where Mr. Martin asked about the  03:54PM
22    Vanuatu company that is in the FAA record?  He starts with, Is 03:55PM
23    this a business record of the FAA?  So can you find that part 03:55PM
24    where he says, Is this a business record of the FAA?  And then
25    he asks about the company that is identified as the owner of
```

*Redirect - Khamvongsa*

1    the helicopter.

2                MR. MARTIN:  I can repeat them verbatim, Your

3    Honor, I did it several times.

4                MS. M. MILLER:  I'd rather her read it back.

5                MR. MARTIN:  Well, she read it back exactly the

6    way I asked it.

7                MS. M. MILLER:  She read a part of it back, not

8    the whole thing.

9                THE COURT REPORTER:  That was one whole question.

10               MR. MARTIN:  Thank you, Veronica.

11               MS. M. MILLER:  But the question preceding it.

12               MR. MARTIN:  The question preceding it is --

13               MS. M. MILLER:  I want it from her, not you.

14               THE COURT:  We will get it from her.  Let's get

15   it from the official court reporter.

16               MR. MARTIN:  It had to do with the location,

17   Judge, of the company.

18               THE COURT:  We'll just hear from the court

19   reporter.                                                   03:59PM

20               (Whereupon the reporter read back requested      03:59PM

21   portion.)                                                    03:59PM

22               MS. M. MILLER:  So clearly, Your Honor, the      03:59PM

23   impression that you got and I got and I'm sure the jury got, 03:59PM

24   is that he's implicating that the asset is the asset of South 03:59PM

25   Pacific Spotters Corporation in Vanuatu.  How do I know that? 03:59PM

*Redirect - Khamvongsa*

1   Because then he went to the registration document, and then he

2   went to the bill of sale document.  To really reenforce this

3   issue that on the FAA paperwork, isn't it true that that

4   particular helicopter is being identified as owned by a

5   Vanuatu corporation.  Therefore, it is an asset of the Vanuatu

6   corporation.  That is what he was trying to do, that's what he

7   did for two and half hours.  And when I tried to stipulate to

8   move it along, he wouldn't.  Because he wanted to keep making

9   those associations, and Your Honor even commented, he

10  commented, I want to be able to argue to the jury that my

11  client didn't own those aircraft, they were owned by these

12  Vanuatu companies.  That's what he was trying to do, that's

13  what he did, it's appropriate impeachment of that concept to

14  bring in the fact that his client's companies had that

15  ownership all over the place.

16          MR. MARTIN:  May I respond, Your Honor?  That's

17  not what my question was.  My question was what she said.  Is

18  that an asset?  Any impression she got, if it's right, wrong,

19  or indifferent, it's limited to what my question was, and my

20  question was, Is this an asset, is this identified?  And he

21  said yes.

22          THE COURT:  Yeah, well, I think -- you know what,

23  it might just -- it might be just something that you both can

24  argue.  I might -- I still -- I'm going to think about it,

25  I'll let you know tomorrow morning or tomorrow.  But I was

```
 1   under the impression -- I mean, you're right, the question is    04:01PM
 2   very clear, Is it just an asset, generally.  I mean, you know.    04:01PM
 3              MR. MARTIN:  And I asked that every time, Judge,        04:01PM
 4   specifically.  Because -- I mean, I know exactly what I ask,      04:01PM
 5   and I ask very narrow questions.                                  04:01PM
 6              THE COURT:  Right.  That's understood.  It's           04:01PM
 7   clear that that was very narrowly queried, but it also seemed     04:01PM
 8   to the Court, but, you know, that it was relating to that         04:01PM
 9   particular corporation.  And I'm not sure what your argument      04:01PM
10   will be with regard to all of that questioning, other than to    04:02PM
11   say that it was an asset of that corporation, not an asset of    04:02PM
12   Mr. Walker.                                                       04:02PM
13              MS. M. MILLER:  I mean, if he wants to stipulate       04:02PM
14   that he's not going to argue that, then no problem, but I have    04:02PM
15   a doubt that he will.                                             04:02PM
16              MR. MARTIN:  I got your e-mail, thank you.  No         04:02PM
17   comment, Your Honor.                                              04:02PM
18              THE COURT:  Well, maybe you'll think about it.         04:02PM
19   Yeah, okay.  Anyway, in the meantime, okay, so it could be        04:02PM
20   that, I mean, let me just say, I'm inclined to allow it in,       04:02PM
21   and that you guys can argue.  You can argue away, say, hey,       04:02PM
22   the question was just really whatever the question was and he    04:02PM
23   answered the question because, you know, Mr. Agent here is       04:02PM
24   very precise.  Very precise how he answers.  But on the -- and    04:02PM
25   then the prosecution could say, hey, look, I mean, what other     04:02PM
```

1    purpose would you ask that question other than your argument.    04:03PM

2    All right, but in the meantime, to be fair to the defense,    04:03PM

3    they should have the opportunity to review what assets we're    04:03PM

4    discussing, and if they were expired or not.  So I think    04:03PM

5    that's fair, and we could discuss that tomorrow.    04:03PM

6         On the issue of United States' Motion in Limine    04:03PM

7    to admit summary charts pursuant to Federal Rule of Evidence    04:03PM

8    1006, all right, so I do have a question, the government    04:03PM

9    proposed to use G-3025 and G-1242, Guzzetti's summary chart.    04:03PM

10   The first one was the aircraft registration information    04:03PM

11   related to Jon Walker; when was that chart provided?    04:03PM

12        MS. M. MILLER:  That was provided during the    04:03PM

13   testimony of Ms. Hedrick, Your Honor.  And I believe that was,    04:03PM

14   was that March?  May.    04:03PM

15        THE COURT:  All right.  And then what about --    04:04PM

16        MS. M. MILLER:  And that, Your Honor, by the way,    04:04PM

17   was a document that we created in rebuttal to the assertion by    04:04PM

18   Mr. McConwell and Mr. Martin that Mr. Walker retired from the    04:04PM

19   company.    04:04PM

20        THE COURT:  Okay.  And then there was a first    04:04PM

21   iteration of the Guzzetti summary.    04:04PM

22        MS. M. MILLER:  That was given to the defense,    04:04PM

23   his expert summary was given to them in May of 2020, his    04:04PM

24   summary charts were given to them for the first time in August    04:04PM

25   of 2020.  And from that point forward, any time any change was    04:04PM

*Redirect - Khamvongsa*

```
1   made to them, they were provided to the defense.  Those were    04:04PM
2   also summary charts that we met with Ms. McConwell on and she    04:04PM
3   wanted some changes, and we made some changes, and so I don't    04:04PM
4   know what the objections to them are as it stands today.  I      04:04PM
5   don't know.  They'll have to make those objections, I guess.     04:04PM
6             MS. S. MILLER:  And if I could just add, Your          04:05PM
7   Honor, those two summary charts were ones we discussed with      04:05PM
8   Your Honor when we had a hearing on summary charts back in       04:05PM
9   middle of March, I think it was maybe the 13th or the 15th.      04:05PM
10            THE COURT:  Okay.  Thank you.  Yes,                    04:05PM
11  Ms. McConwell?                                                   04:05PM
12            MS. MCCONWELL:  We objected to the 1242 chart,         04:05PM
13  which we received, first time I remember seeing it, is in        04:05PM
14  January, but notwithstanding that, we objected to all of         04:05PM
15  Mr. Guzzetti's editorial comments, and then some of the items    04:05PM
16  that are on in 1242 wasn't substantiated by the documents that   04:05PM
17  they provided, there were holes.  And so it's all his sort of    04:05PM
18  interpretation of documents, so I think it's more appropriate    04:05PM
19  that if he's going to be an expert and testify, he needs to      04:05PM
20  testify about that and lay the foundation for it, rather than    04:05PM
21  just admit a chart because I don't believe that a number of      04:05PM
22  the items that are in what they provided are admissible in       04:05PM
23  this Court.  That's 1242.  3025, the first time we saw that      04:06PM
24  was with, I believe, Ms. Hedrick, and they attempted for an      04:06PM
25  hour and a half, two hours to try to get that in with Ms.        04:06PM
```

1  Hedrick, and the Court would not -- did not allow that

2  admission of that.  It's -- it wasn't provided, it wasn't on

3  their third amended witness list or, I mean, exhibit list.

4  And they just keep, after the Court rules on it, they just

5  continue to keep trying to get documents in.  I think it is

6  inappropriate for them to file a motion to try to get

7  something in that they couldn't even get in with a live

8  witness because they couldn't lay the foundation for it, and

9  it's not on their third amended witness list, and we're in

10  their case in chief.

11             THE COURT:  That's 1242.

12             MS. MCCONWELL:  No, that was 3025.

13             THE COURT:  I'm sorry, 3025.

14             MS. M. MILLER:  3025.  And we did file a motion

15  to allow that to be admitted as a summary chart.  And we

16  reiterate that also when the Court asked for us to identify

17  which witness we want to get it in on.

18             And if you recall, Your Honor, Ms. Hedrick did

19  lay the foundation for the admissibility of it because Ms.

20  Hedrick created it herself.  Ms. Hedrick created it as records

21  custodian for all of the registration information.  The only

22  reason why the Court didn't let it in is because Ms. McConwell

23  said she didn't have the sufficient amount of time to review

24  any of the underlying documents.  However, those are the Blue

25  Ribbon records from the FAA files that have been provided

```
 1  repeatedly to the defense that are available to the defense     04:07PM
 2  via public record, and now we're talking months and months and  04:07PM
 3  months, and it is appropriate rebuttal evidence to the          04:07PM
 4  Defendants' contention at trial made for the first time that    04:07PM
 5  Jon Walker either retired or stepped back from the active       04:07PM
 6  management of the company.  It wasn't a foundational issue, it  04:07PM
 7  was a notice issue, and they have had notice now since March.   04:07PM
 8          THE COURT:  Okay.  So with regard to the                04:07PM
 9  underlying information, are there any specific objections?      04:07PM
10          MS. MCCONWELL:  Well, because the admit -- the         04:08PM
11  exhibit wasn't admitted and the Court has said that nothing    04:08PM
12  beyond 2955 on their third amended witness list, or exhibit    04:08PM
13  list, was going to be admitted into evidence, I -- over break, 04:08PM
14  I did not look at all of the Blue Ribbon copies to go back and 04:08PM
15  review this particular -- this exhibit.                        04:08PM
16          THE COURT:  Okay, but the -- the offer of proof        04:08PM
17  is that it's really now to be rebutting.                       04:08PM
18          MS. MCCONWELL:  Well, then that's what they do in      04:08PM
19  their -- in their -- that's what they would do to rebut        04:08PM
20  anything that we have.  It's inappropriate -- they're in their 04:08PM
21  case in chief, Your Honor, if they want to bring something in  04:08PM
22  later after we put on our case for rebuttal, then I suppose    04:08PM
23  it's fair game to use new exhibits.                            04:08PM
24          MS. M. MILLER:  That's not the way rebuttal            04:08PM
25  works.                                                         04:08PM
```

*Redirect - Khamvongsa*

                    MS. MCCONWELL:  But they couldn't get it in with    04:08PM

Ms. Hedrick and it wasn't just that --                                 04:08PM

                    THE COURT:  Yeah, but if you don't have a case in   04:08PM

chief.                                                                 04:08PM

                    MS. M. MILLER:  Exactly.                            04:08PM

                    THE COURT:  They wouldn't have opportunity to do    04:08PM

that.                                                                  04:08PM

                    MS. MCCONWELL:  Okay.  I mean --                    04:08PM

                    MS. M. MILLER:  That's fine.                        04:09PM

                    MS. MCCONWELL:  That's correct, but this was not    04:09PM

on their exhibit list.                                                 04:09PM

                    THE COURT:  Right.                                  04:09PM

                    MS. MCCONWELL:  And I was working to go through     04:09PM

it, we had -- there were a number of inaccuracies on it that I         04:09PM

addressed to the Court just when we talked about it with Ms.           04:09PM

Hedrick.  There were a number of problems with this exhibit,           04:09PM

which is why, you know, Ms. Miller withdrew the exhibit and --         04:09PM

                    MS. M. MILLER:  Why didn't she file a response.     04:09PM

                    THE COURT:  Only one person at time.  Let me just   04:09PM

say, so for G-3025, I understand that.  Now, if you have any           04:09PM

specific objections, the Court will review it.  If there are          04:09PM

no specific objections, and because it's being used to rebut           04:09PM

assertions or implications that Mr. Walker either retired or           04:09PM

was no longer active in the fraud, then the Court is inclined          04:09PM

to allow it in.  But if you want time to review it, let me             04:09PM

*Redirect - Khamvongsa*

```
 1    know by tomorrow then, and we'll hold off on my ruling.          04:09PM
 2                MS. MCCONWELL:  I will, and I need them to reopen    04:09PM
 3    their Blue Ribbon copies because I'm missing, I think, one        04:10PM
 4    copy.  So I need that to be reopened so I can pull it back        04:10PM
 5    out.                                                             04:10PM
 6                THE COURT:  So, Samantha Miller, if you're the       04:10PM
 7    one working with her, make sure you reopen that, G-3025, okay?   04:10PM
 8                MS. S. MILLER:  Yes, Your Honor.                     04:10PM
 9                THE COURT:  On G-1242, let's, moving right along.    04:10PM
10    The summary chart here, the first iteration, let's see, was      04:10PM
11    provided over two years ago.  What was the issue with this Ms.   04:10PM
12    -- did you want to review this as well?                          04:10PM
13                MS. MCCONWELL:  No, it has a number of his           04:10PM
14    editorial and summary comments, it's -- it has documents that   04:10PM
15    are not admissible in trial.                                     04:10PM
16                THE COURT:  So but did the --                        04:10PM
17                MS. MCCONWELL:  So it's -- it's -- I don't know      04:10PM
18    who generated the chart, I don't know if Mr. Guzzetti did or     04:10PM
19    Counsel did, but Mr. Guzzetti is the one that's going be         04:10PM
20    testifying about it and so he -- so he should be the one         04:10PM
21    laying the foundation to bring it in.  I don't believe that      04:10PM
22    there is foundation.                                             04:11PM
23                MS. M. MILLER:  He is going to, he will be, Your     04:11PM
24    Honor.  I'm not sure what Ms. McConwell is thinking.  Of         04:11PM
25    course Mr. Guzzetti created the charts, we said that to them     04:11PM
```

```
 1    more than two years ago.  Here are Mr. Guzzetti's summary      04:11PM
 2    charts.  These are summarizing all of the underlying           04:11PM
 3    documents.  Here are all of the underlying documents.  For two 04:11PM
 4    years they've had an opportunity to review those underlying    04:11PM
 5    documents and to raise specific objections.                    04:11PM
 6              THE COURT:  All right.  Hold on.                      04:11PM
 7              MS. M. MILLER:  To the charts.                        04:11PM
 8              THE COURT:  I got it.  Let me just, I don't           04:11PM
 9    really need to hear arguments, all I need to know is this,      04:11PM
10    there was G-1242 and 1247.  The Court has ordered that the     04:11PM
11    Counsels, Ms. McConwell and Ms. Miller, I think it was         04:11PM
12    Samantha Miller, meet together to ascertain how they can       04:11PM
13    streamline this, and apparently, allegedly there is            04:11PM
14    modifications made pursuant to the objections by the defense.  04:12PM
15              MS. MCCONWELL:  Not to these, not to 1242 or          04:12PM
16    1247, Your Honor.  There were other charts that have been      04:12PM
17    admitted that we did agree to, they did, I mean, we don't      04:12PM
18    agree with them, but they did -- I mean, it was something,     04:12PM
19    what did she say, it goes to the weight, not the               04:12PM
20    admissibility.  Not these -- not 1242 or 1247.  We don't --    04:12PM
21    all of these -- I mean, this is essentially part -- this is    04:12PM
22    essentially part of his report and all of his comments.        04:12PM
23              THE COURT:  So my question is --                      04:12PM
24              MS. MCCONWELL:  And then he's basing it on, and       04:12PM
25    he's got other information that was provided to us, some of it 04:12PM
```

*Redirect - Khamvongsa*

1    was not provided to us.  So I'm not -- I'm not clear where he      04:12PM

2    had his source of the information, and some of it are reports      04:12PM

3    that are not admissible.                                          04:12PM

4              MR. MARTIN:  By the way, Your Honor, if I might         04:12PM

5    respond.  By way of example, if the Court has Exhibit 1242 in     04:12PM

6    front of it, the section that says "remarks," those remarks we    04:13PM

7    contend are improper for him.  He can testify --                  04:13PM

8              THE COURT:  I thought -- so, okay.  I thought           04:13PM

9    Counsels met with each other and they threw out whatever was      04:13PM

10   surplusage, remarks, you know, whatever.  Is that not true?       04:13PM

11             MS. S. MILLER:  Your Honor, we met, and you might       04:13PM

12   recall during the hearing, so they never said a single            04:13PM

13   specific word since we had the hearing, and at the hearing        04:13PM

14   what their argument was, was they didn't think it was             04:13PM

15   accurate, and we had a whole discussion and Your Honor            04:13PM

16   basically held, verbally, that it goes to the weight, not the     04:13PM

17   admissibility.  Unless they can point to specific issues in       04:13PM

18   the underlying documents, which we provided to them over and      04:13PM

19   over again, then they can cross-examine him all they want on      04:12PM

20   whatever commentary is in the chart.                              04:13PM

21             THE COURT:  I do recall that.  I guess what             04:13PM

22   they're saying is, okay --                                        04:13PM

23             MS. S. MILLER:  They never asked for specific           04:13PM

24   changes.                                                          04:13PM

25             MS. MCCONWELL:  Well, that's because the only           04:13PM

1    thing -- I mean, this --                                    04:13PM

2            THE COURT:  Let me just say, unless you             04:13PM

3    specifically point out what the objection is, the Court is  04:13PM

4    going to allow the summary chart.                           04:14PM

5            MS. MCCONWELL:  Well, all of these remarks, I       04:14PM

6    mean, none of these remarks should be, as a threshold, none of  04:14PM

7    the remarks should be in it.  Then they have --             04:14PM

8            THE COURT:  Did you guys exclude the remarks?       04:14PM

9            MS. M. MILLER:  No, that's whole point of -- this   04:14PM

10   is a summary chart of an accident reconstruction expert who 04:14PM

11   worked for the NTSB for 18 years.                           04:14PM

12           THE COURT:  So is -- I'm sorry, strike that.        04:14PM

13   Okay.  I got that.                                          04:14PM

14           MS. M. MILLER:  Right.                              04:14PM

15           THE COURT:  I know his resume.                      04:14PM

16           MS. M. MILLER:  Yeah, and --                        04:14PM

17           THE COURT:  No, no, you don't have to convince      04:14PM

18   me.                                                         04:14PM

19           MS. M. MILLER:  Those remarks --                    04:14PM

20           THE COURT:  My question is --                       04:14PM

21           MS. M. MILLER:  Okay.  There's --                   04:14PM

22           THE COURT:  When he says remarks.                   04:14PM

23           MS. M. MILLER:  It's summaries of the records,      04:14PM

24   they're not his personal remarks.                           04:14PM

25           THE COURT:  That's what I'm asking.  Is it --       04:14PM

*Redirect - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | MS. M. MILLER:  Yes, and we already responded to | 04:14PM |
| 2 | them.  Summary of the records, the NTSB records, not his | 04:14PM |
| 3 | personal view, it is a summary.  The NTSB records alone, Your | 04:14PM |
| 4 | Honor, would have been over 4,000 pages of documents relating | 04:14PM |
| 5 | to all of their accidents.  And so what we asked Mr. Guzzetti | 04:14PM |
| 6 | to do was to summarize the facts underlying the accidents | 04:14PM |
| 7 | based on the NTSB data and reports, which is exactly what he | 04:15PM |
| 8 | did.  And from two years ago until today, this is the same | 04:15PM |
| 9 | nonsense we've been hearing, which is we don't like the fact | 04:15PM |
| 10 | that he has that summary in there. | 04:15PM |
| 11 | THE COURT:  You guys got one more minute on this | 04:15PM |
| 12 | issue because I got to go. | 04:15PM |
| 13 | MS. M. MILLER:  Okay. | 04:15PM |
| 14 | THE COURT:  30 seconds to go. | 04:15PM |
| 15 | MS. MCCONWELL:  Okay, here's an example.  He's | 04:15PM |
| 16 | like, oh there's a YouTube video that was uploaded on | 04:15PM |
| 17 | September 5th 2010.  Well, but that's not -- I mean, I don't | 04:15PM |
| 18 | know that that's -- I don't know that it's relevant, I don't | 04:15PM |
| 19 | know that it's admissible.  It's in all probability not | 04:15PM |
| 20 | admissible.  He's going to have to lay the foundation for | 04:15PM |
| 21 | that.  And the items that this has to be based on, they don't | 04:15PM |
| 22 | have to be admitted, but they do need to be admissible.  And | 04:15PM |
| 23 | all of his remarks, I mean, that's just the thing.  It's just | 04:15PM |
| 24 | all his -- it's -- | 04:15PM |
| 25 | MR. MARTIN:  Your Honor, he can testify.  What | 04:15PM |

*Redirect - Khamvongsa*

```
 1    we're concerned about is the government is trying to submit a      04:15PM
 2    summary chart with his remarks.  We're not -- his testimony is     04:16PM
 3    his testimony and we understand that.  But putting together a      04:16PM
 4    document with his commentary in it, we are objecting to.           04:16PM
 5               MS. MCCONWELL:  And we also objected to all of          04:16PM
 6    the red and the purple and all of the different colors that        04:16PM
 7    they had on the chart, and they were disinclined to indicate       04:16PM
 8    that.  The other thing is under their damage --                    04:16PM
 9               THE COURT:  Well, you don't like the colors of          04:16PM
10    the chart because why?                                             04:16PM
11               MS. M. MILLER:  We had this before, too, if you         04:16PM
12    recall.                                                            04:16PM
13               THE COURT:  I know, but why don't you like the          04:16PM
14    color charts?                                                      04:16PM
15               MS. MCCONWELL:  Um, well, I don't like the              04:16PM
16    colors.  I think it draws -- I think it draws emphasis, and        04:16PM
17    under "damage," that are no terms, I mean, there aren't terms      04:16PM
18    of art for where these came from on his particular opinion.  I     04:16PM
19    mean, we talked about all of that.                                 04:16PM
20               MS. M. MILLER:  Mr. Guzzetti will testify, Your         04:16PM
21    Honor, that everything in his summary charts are just that,        04:16PM
22    summaries of information that are contained in the NTSB            04:16PM
23    reports and in the NTSB files.  And the defense has had two        04:17PM
24    years now to bring to this Court, to the government's              04:17PM
25    attention, any inaccuracy, which is what is required under         04:17PM
```

*Redirect - Khamvongsa*

1   Rule 1006, for two years they haven't been able to do it.   04:17PM

2                THE COURT:  Yeah.  Is there any specific   04:17PM

3   objection to the merits of what he's -- what he's found with   04:17PM

4   regard to the investigation?   04:17PM

5                MS. MCCONWELL:  Well, a number of these, there   04:17PM

6   are not -- if we're going to talk about specifically the NTSB,   04:17PM

7   there are not investigations.  There is not a reference to   04:17PM

8   one.  There is not a reference to one.  There is just his   04:17PM

9   editorial comment.   04:17PM

10               THE COURT:  I thought he was reviewing NTSB --   04:17PM

11               MS. M. MILLER:  He did.   04:17PM

12               THE COURT:  -- investigations?   04:17PM

13               MS. M. MILLER:  He reviewed NTSB files and NTSB   04:17PM

14  records, and there is one chart which is 1247, I believe, I   04:17PM

15  don't know, 1242 or 1247, where he includes accidents that   04:18PM

16  were never reported to the NTSB, but we know about because the   04:18PM

17  files and information regarding the accidents were in the   04:18PM

18  possession of the Defendants.  And where he has relied on the   04:18PM

19  Defendants records, to identify the date of an accident, the   04:18PM

20  helicopter involved, the personnel involved, et cetera, he   04:18PM

21  cites to which parts of the Defendants evidence he is relying   04:18PM

22  on.  They have absolutely everything, Your Honor, and they   04:18PM

23  have to date, after two years, been able to show one   04:18PM

24  inaccuracy.   04:18PM

25               MS. MCCONWELL:  He also -- getting back --   04:18PM

*Redirect - Khamvongsa*

```
 1              THE COURT:  All right, so let me just say, okay,    04:18PM
 2    so unless and until there is specific objections, and they're  04:18PM
 3    valid objections, the Court is inclined to allow the summary    04:18PM
 4    charts in.  I'll be honest with you.                           04:18PM
 5              On the issue of the one that you want to talk        04:18PM
 6    about on the G-3025, you want to go back and discuss that with 04:18PM
 7    Counsel on the Blue Ribbon, the Court will allow that.  So     04:19PM
 8    I'll hold off on that.  But unless, you know, so that's the    04:19PM
 9    Court's inclination at this time, Counsels.  Anything further? 04:19PM
10              MS. M. MILLER:  No, Your Honor.  Thank you.         04:19PM
11              THE COURT:  Nothing further, then I will see all    04:19PM
12    of you tomorrow.  Yeah.                                        04:19PM
13              MS. M. MILLER:  1:00.                               04:19PM
14              THE COURT:  Yeah, 1:00.  Sorry about that.  We      04:19PM
15    have to do at 1:00.                                            04:19PM
16              MS. M. MILLER:  That's fine.                        04:19PM
17              THE COURT:  And I'm not inclined to ask the         04:19PM
18    jurors at the last minute.  I thought about that.  I don't     04:19PM
19    think so.  I think that one juror's baby is going to come out  04:19PM
20    like -- any minute now, pretty soon.                          04:19PM
21              MS. M. MILLER:  We'll talk to Mr. Guzzetti, Your    04:19PM
22    Honor.                                                         04:19PM
23              THE COURT:  Yeah.  Talk to Guzzetti, tell          04:19PM
24    Guzzetti, I'm pretty sure you can stand to stay on Guam for a  04:19PM
25    few more days.                                                 04:19PM
```

*Redirect - Khamvongsa*

```
 1                    MS. M. MILLER:  Yes.                        04:19PM

 2                    THE COURT:  All right.  Maybe not, but I hope he   04:19PM

 3       can.  All right.  Take care.                             04:19PM

 4                    MS. M. MILLER:  Thank you, Your Honor.       04:19PM

 5                    THE COURT:  You guys have a nice weekend.  Or no,  04:19PM

 6       I'll see you -- (Laughing.)                              04:19PM

 7                    MR. MARTIN:  See you Monday, Judge.          04:19PM

 8                    THE COURT:  I don't want to see all of you guys   04:19PM

 9       anymore.  I feel like I never left Guam.                 04:19PM

10                    (Proceedings concluded at 4:19 p.m.)         04:19PM

11                             *  *  *                            04:19PM

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*Redirect - Khamvongsa*

12:57PM
12:57PM
01:03PM
01:03PM
01:03PM
01:03PM
01:03PM
01:03PM
01:03PM
01:03PM
01:03PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM
01:04PM

1     August 19, 2022; 1:03 p.m.; Hagatna, Guam

2                         * * *

3

4          THE COURT:  All right.  You guys ready to go?

5          MS. M. MILLER:  Yes.

6          THE COURT:  All right.  I want you to know I

7   don't have COVID.  I know I'm coughing a lot.  I did take a

8   test again.  It's just I have construction in my house and I

9   have a lot of dust in my lungs, I think.  So I know I sound

10  bad, but do know that you're safe.

11          All right.  Let's call in the jury.  They're all

12  here.  And I think we're fit to go.  Where were we last?

13          MS. M. MILLER:  We were on the admissibility of

14  that exhibit.  We were discussing it because I -- I have that

15  3003-15.

16          THE COURT:  Oh, right.  I already ruled on that.

17          MS. M. MILLER:  (Shook head.)  Okay.

18          THE COURT:  I thought I did.

19          MS. M. MILLER:  Oh, it's admitted.  Okay.  Thank

20  you, Your Honor.

21          THE COURT:  Well, you can try to get --

22          MS. M. MILLER:  I can try to admit it; yes.

23          THE COURT:  Yeah.

24          MS. M. MILLER:  Got it.

25          THE COURT:  I will allow you to at least probe

*Redirect - Khamvongsa*

      1    that.

      2              MS. M. MILLER:  Got it.  Thank you, Your Honor.

      3              THE COURT:  But the other ones I already made my

      4    rulings on.

      5              MS. M. MILLER:  Yeah, yeah.  And I'll bring those

      6    up on direct.

      7              THE COURT:  Now, for the record, there is nothing

      8    else that's new that --

      9              MS. M. MILLER:  No, no.

     10              THE COURT:  -- that they haven't seen?

     11              MS. M. MILLER:  No.  I made sure I went through

     12    all the questions.  Nothing is going to be introduced that

     13    wasn't previously introduced.

     14              THE COURT:  And admitted?

     15              MS. M. MILLER:  And admitted.  And all -- I can

     16    tie every single question to the cross-examination.

     17              THE COURT:  All right.  Okay.

     18              MR. MARTIN:  We'll reserve the right to object if

     19    we think --

     20              THE COURT:  (Laughing.)  *Ai adai*.

     21              THE WITNESS:  Sorry, I didn't mean to laugh.

     22              MS. M. MILLER:  And just so you know, Your Honor,

     23    this will not take all day.  I should be done with Mr. --

     24    Special Agent Khamvongsa in an hour.

     25              THE COURT:  Oh, good.

*Redirect - Khamvongsa*

```
 1              MS. M. MILLER:  We'll go straight to the        01:05PM
 2   Mr. Guzzetti.                                               01:05PM
 3              THE COURT:  Okay.  Mr. Guzzetti is ready to go?  01:05PM
 4              MS. M. MILLER:  Yes, he is.                      01:05PM
 5              THE COURT:  Okay.  Excellent.  But you haven't   01:05PM
 6   decided if you're going to stop at Guzzetti?               01:05PM
 7              MS. M. MILLER:  Correct.                         01:05PM
 8              THE COURT:  Okay.  All right.  So is our -- our  01:05PM
 9   computer's working now?  Everybody?  Do we know?  Up here at 01:05PM
10   least?                                                      01:05PM
11              Okay.  Please rise for the jury.                01:05PM
12              (Jury in at 1:05 p.m.)                           01:05PM
13              THE COURT:  Okay.  Please be seated.  Welcome    01:06PM
14   back, ladies and gentlemen of the jury.  We'll continue on.  I 01:06PM
15   just told the attorneys that I don't have COVID.  I'm       01:06PM
16   coughing, but I did take a COVID test.  So I want you to know 01:06PM
17   I'm good, I'm negative.  But I'm -- I'm just coughing because 01:06PM
18   I have construction going on in my house, so I think it's all 01:06PM
19   the dust coming into me.  So I apologize if I cough too much. 01:06PM
20   I've got tea and stuff.                                     01:06PM
21              All right.  You may proceed.                    01:06PM
22              MS. M. MILLER:  Yes, Your Honor.  Thank you.     01:06PM
23              Good afternoon, members of the jury.  I was going 01:06PM
24   to say, "Good morning," but we're past morning and we're in 01:06PM
25   afternoon.  Good afternoon, everyone.                       01:06PM
```

*Redirect - Khamvongsa*

| | |
|---|---|
| 1 | THE JURY: Afternoon. | 01:06PM |
| 2 | BY MS. M. MILLER: (CONTINUING) | 01:06PM |
| 3 | Q. Special Agent Khamvongsa, welcome back. | 01:06PM |
| 4 | A. Hello; good day. | 01:06PM |
| 5 | Q. And I appreciate your bow tie today. It looks very | 01:06PM |
| 6 | good. I'm not sure in the jurors have all seen it, but it's | 01:06PM |
| 7 | very interesting. Okay. So -- | 01:06PM |
| 8 | THE COURT: Is it island wear? | 01:07PM |
| 9 | MS. M. MILLER: No. | 01:07PM |
| 10 | THE WITNESS: I tried. | 01:07PM |
| 11 | MS. M. MILLER: Okay. We're exhausting -- we're | 01:07PM |
| 12 | exhausting his professional wardrobe because he thought he'd | 01:07PM |
| 13 | be on and off in a couple of days. | 01:07PM |
| 14 | BY MS. M. MILLER: (CONTINUING) | 01:07PM |
| 15 | Q. Okay. What I'd like to do, Special Agent Khamvongsa, | 01:07PM |
| 16 | is talk about with you Wilma's Flight Service. Can you tell | 01:07PM |
| 17 | the members of the jury, when was Wilma's Flight Service first | 01:07PM |
| 18 | incorporated in the U.S.? | 01:07PM |
| 19 | A. It was incorporated in 1999 in Guam. | 01:07PM |
| 20 | Q. And yesterday, Mr. McConwell introduced to the jury a | 01:07PM |
| 21 | document that was marked as Defense Exhibit 136. Do you | 01:07PM |
| 22 | recall that? | 01:08PM |
| 23 | A. I believe that's -- that's the -- | 01:08PM |
| 24 | Q. The charter, Wilma's, for Vanuatu? | 01:08PM |
| 25 | A. Yes. | 01:08PM |

*Redirect - Khamvongsa*

1    Q.   And what was the year that that charter was created

2    for Wilma's Vanuatu?

3    A.   I can't recall.

4    Q.   Okay.

5    A.   Can I review it?

6    Q.   Let's --

7              MS. M. MILLER:  Is Exhibit 136 in?  No?  Okay.

8    Your Honor, may I approach with Exhibit 136?  It's not in

9    Trial Director yet.

10             THE COURT:  Okay, yes.

11             MS. M. MILLER:  Here you go, sir.

12             THE WITNESS:  Thank you.

13   BY MS. M. MILLER: (CONTINUING)

14   Q.   Can you tell the members of the jury, what's the date

15   of that charter for Wilma's in Vanuatu?

16   A.   It's represented as July 1st, 2002.

17   Q.   Okay.  Do you remember as part of your investigation

18   reading why the Defendants opened up all of these Vanuatu

19   corporations?

20   A.   To limit their liability.  Hansen Helicopters and Jon

21   Walker was trying to limit their liability as it relates to

22   the helicopters.

23   Q.   Okay.  Have you seen all of the Vanuatu charters for

24   all of the Vanuatu companies listed either in 829 or

25   identified in this case?

```
 1      A.   I've only seen what was provided to me.          01:09PM

 2      Q.   By whom?                                         01:09PM

 3      A.   By Hansen Helicopters.                           01:09PM

 4      Q.   Of all the charters that were provided to you, were   01:09PM

 5   they identical?                                          01:09PM

 6      A.   Yes.                                             01:10PM

 7      Q.   Could you please look at the second page of the  01:10PM

 8   charter that you have in front of you as Defense Exhibit 136.   01:10PM

 9   Do you see a section called "restrictions"?              01:10PM

10      A.   Yes.                                             01:10PM

11      Q.   What is a restriction on the Vanuatu companies?  01:10PM

12      A.   "Shall not carry on business in Vanuatu."        01:10PM

13      Q.   From the evidence that you've seen, did the      01:10PM

14   Defendants carry on business in Vanuatu?                 01:10PM

15      A.   No.                                              01:10PM

16      Q.   I'd like you to look at what has previously been  01:10PM

17   entered into evidence as Exhibit G-890, and it will come up on   01:10PM

18   your screen shortly.                                     01:11PM

19           THE COURT:  And, Ms. Miller, can you blow up the  01:11PM

20   content of that; eliminate the white so we could read it more   01:11PM

21   easily.  And let's wait until it's up on the jurors' screens   01:11PM

22   before we talk about it.                                 01:11PM

23   BY MS. M. MILLER:  (CONTINUING)                          01:11PM

24      Q.   Okay.  First, let's talk about the companies     01:12PM

25   identified on the very top of this document.  Marlin Bay   01:12PM
```

1    Helicopters and Fling Air, Inc.  Do you recall Mr. Martin          01:12PM

2    asking you about those companies yesterday?                        01:12PM

3        A.   I remember questions being asked about those              01:12PM

4    particular companies; yes.                                         01:12PM

5        Q.   And do you remember those companies were not listed       01:12PM

6    on Exhibit 829?                                                    01:12PM

7        A.   I -- I can't recall without actually looking at the       01:12PM

8    document.                                                          01:12PM

9        Q.   Okay.  Let me show it to you.                             01:12PM

10            MS. M. MILLER:  May I approach the witness with           01:12PM

11   Exhibit 829, Your Honor?                                           01:12PM

12            THE COURT:  You may.                                      01:12PM

13   BY MS. M. MILLER: (CONTINUING)                                     01:12PM

14       Q.   Do you see Fling Air?                                     01:12PM

15       A.   Yes.  Fling Air and Marlin Bay Helicopters are           01:12PM

16   identified on the document.                                        01:12PM

17       Q.   Okay.  Yesterday when Mr. Martin was asking you the      01:12PM

18   questions about them, though, do you remember that the address     01:12PM

19   in 366 was Guam, not Vanuatu?                                      01:12PM

20       A.   For Fling Air; I recall it being for Fling Air; yes.     01:12PM

21       Q.   Okay.  And we're going to talk about that a little       01:13PM

22   bit more, but let's look at this content of this e-mail.  Who      01:13PM

23   is Gary Wiggs?                                                     01:13PM

24       A.   He was the former CFO for Hansen Helicopters, the        01:13PM

25   chief financial officer.                                           01:13PM

 1    Q.   And who's being copied on this e-mail?                01:13PM

 2    A.   Defendant Jon Walker.                                 01:13PM

 3    Q.   And who is this e-mail addressed to?                  01:13PM

 4    A.   It's addressed to individuals in Vanuatu with the --  01:13PM

 5 appears to be civil aviation agency in Vanuatu.               01:13PM

 6    Q.   Okay.  Could you read what is being communicated      01:13PM

 7 here?                                                         01:13PM

 8    A.   "Hi, Joseph.  Jon Walker is currently off Guam        01:13PM

 9 island, so I am providing you with the information you        01:13PM

10 requested."                                                   01:13PM

11    Q.   Okay.  Hold on.  Start with No. 1.  Read No. 1.       01:13PM

12    A.   "The helicopters are not and will not be located in   01:13PM

13 Vanuatu."                                                     01:13PM

14    Q.   Okay.  Just stop there for a minute.  Read No. 2.     01:13PM

15    A.   "The helicopters will be operated under N             01:14PM

16 registrations when we get them reinstated to the FAA          01:14PM

17 register."                                                    01:14PM

18    Q.   Okay.  Stop there for one moment.  Read No. 3,        01:14PM

19 please.                                                       01:14PM

20    A.   "The helicopters were removed from the N register by  01:14PM

21 accidental misunderstanding on the part of the seller."      01:14PM

22    Q.   And read No. 4, please.                               01:14PM

23    A.   "There are and will be no flight operations          01:14PM

24 undertaken out of or within Vanuatu."                         01:14PM

25    Q.   And the date of this communication?                   01:14PM

*Redirect - Khamvongsa*

1    A.    May 5th, 2010.                                    01:15PM

2    Q.    Okay.  Now, in 2018, who did you issue a grand jury    01:15PM

3    subpoena to for records regarding schedules of billings for    01:15PM

4    the tuna boat leases involving the helicopters?           01:15PM

5    A.    Hansen Helicopters.                              01:15PM

6    Q.    Okay.  And let's look at Exhibit 726, which was    01:15PM

7    previously produced.  And when you issued this grand jury    01:15PM

8    subpoena to Hansen Helicopters, is this with a return to you?    01:16PM

9    And we'll wait until the jury can see it as well.  Do you see    01:16PM

10   this, sir?                                            01:16PM

11   A.    Yes.                                           01:16PM

12   Q.    Okay.  And what does it say on the very top of this    01:16PM

13   document?                                           01:16PM

14   A.    "Wilma's Flight Services, Inc."                    01:16PM

15   Q.    Okay.  And underneath that?                      01:16PM

16   A.    "Top level schedule of billings and collections."    01:16PM

17   Q.    Could you tell the members of the jury, from what day    01:16PM

18   to what day did Hansen Helicopters give you schedules of    01:16PM

19   billings and records that were in the name of Wilma's Flight    01:16PM

20   Services, Inc?                                         01:16PM

21   A.    Exhibit 7 -- Government Exhibit 726 covers the years    01:16PM

22   December 2013 to April of 2018.                        01:16PM

23   Q.    Now I would like you to look at what the Defendants    01:16PM

24   introduced yesterday as Exhibit 76.                      01:17PM

25          MS. M. MILLER:  Is that in Trial Director,          01:17PM

1    Ms. Miller?  Okay.                                          01:17PM

2            All right.  And could we blow up the top portion of 01:17PM

3    it that has the list of companies.                         01:17PM

4    BY MS. M. MILLER: (CONTINUING)                             01:17PM

5        Q.    Do you see Wilma's on this document?             01:17PM

6        A.    Yes.                                             01:17PM

7        Q.    What is this document?                           01:17PM

8        A.    This is the purported insurance document that was 01:17PM

9    provided to me in -- in testimony through Mr. McConwell.   01:17PM

10       Q.    Okay.  And what is Wilma's identified as in this  01:18PM

11   document?                                                  01:18PM

12       A.    It is a wholly owned -- one of the wholly-owned   01:18PM

13   subsidiary companies for Bean Bag Helicopters, Inc.        01:18PM

14       Q.    Now let's look at Exhibit 366, which Mr. Martin was 01:18PM

15   talking to you about yesterday.                            01:18PM

16            MS. M. MILLER:  Now, Ms. Miller, can you          01:19PM

17   highlight or just hone in on the very top portion of       01:19PM

18   Exhibit 366, Page 1.  We'll wait until it's on screen for the 01:19PM

19   jurors.  Yup.                                              01:19PM

20   BY MS. M. MILLER: (CONTINUING)                             01:19PM

21       Q.    Where it says "attachments," can you tell the members 01:19PM

22   of the jury, what does it say right after the word         01:19PM

23   "attachments"?                                             01:19PM

24       A.    "Hansen Helicopters in Vanuatu, group structure." 01:19PM

25       Q.    Okay.                                            01:19PM

1   A.   Do you want me to keep going?                        01:19PM

2   Q.   No.                                                   01:19PM

3        And the date of this, sir?                            01:19PM

4   A.   October 5th, 2016.                                    01:19PM

5   Q.   Okay.  Now, I would like you to look at Page 3 of    01:19PM

6   Exhibit 366.  And that is the list of helicopters that was 01:20PM

7   being shared with a prospective buyer of Hansen Helicopters; 01:20PM

8   correct?                                                   01:20PM

9   A.   Yes.                                                  01:20PM

10            MS. MCCONWELL:  Your Honor, I object.  That      01:20PM

11   misstates prior evidence and testimony.                   01:20PM

12            THE COURT:  Okay.                                01:20PM

13            MS. MCCONWELL:  If she's indicating that the     01:20PM

14   receiver of the e-mail is a prospective buyer, that's not what 01:20PM

15   the testimony has been in the case.                       01:20PM

16            MS. M. MILLER:  I disagree, Your Honor.  The     01:20PM

17   testimony has absolutely been that.                       01:20PM

18            THE COURT:  Why don't we -- the Court will leave 01:20PM

19   that up to the jury to decide.                            01:20PM

20            MS. M. MILLER:  Okay.                            01:20PM

21            THE COURT:  It's their memory that counts anyway. 01:20PM

22   So you may proceed.                                       01:20PM

23   BY MS. M. MILLER:  (CONTINUING)                           01:20PM

24   Q.   Do you remember why this information was being shared 01:20PM

25   with the group that it was being shared with?             01:20PM

---

*Redirect - Khamvongsa*

```
 1      A.   It was to show the -- the entire fleet that Hansen    01:20PM

 2  Helicopters had in its possession.                            01:20PM

 3      Q.   For what purpose?                                    01:20PM

 4      A.   It's to identify the assets, to determine the worth  01:20PM

 5  or the value of the company.                                  01:21PM

 6      Q.   Who is Hansen sharing this information with?         01:21PM

 7      A.   They're sharing this information with the potential  01:21PM

 8  buyers.                                                       01:21PM

 9      Q.   Of these helicopters that are being listed as an     01:21PM

10  asset, could you tell the members of the jury how many of    01:21PM

11  these were on the MD Helicopters destroyed list?             01:21PM

12      A.   I've identified 14 of these helicopters being on the 01:21PM

13  MD Helicopters destroyed list.                               01:21PM

14      Q.   Now let's turn to Page 37 of Exhibit 366, please.   01:21PM

15  Could you tell the members of the jury who is being identified 01:21PM

16  as having a total of 46 helicopters on Page 37?              01:21PM

17      A.   Hansen Helicopters, Inc., as identified here in this 01:21PM

18  document.                                                    01:21PM

19      Q.   Where do you usually see assets in financial        01:21PM

20  paperwork?                                                   01:21PM

21      A.   On the balance sheet.                               01:21PM

22           MS. MCCONWELL:  I object to foundation.             01:21PM

23           MS. M. MILLER:  He's an accountant, he's an IRS     01:22PM

24  agent.                                                       01:22PM

25           THE COURT:  Overruled.  Overruled.                  01:22PM
```

*Redirect - Khamvongsa*

| | |
|---|---|
| 1 | MS. MCCONWELL:  He's not an accountant, he is | 01:22PM |
| 2 | not -- he was -- no -- | 01:22PM |
| 3 | MR. MARTIN:  He has an accounting degree. | 01:22PM |
| 4 | MS. MCCONWELL:  He has a bachelor of arts -- a | 01:22PM |
| 5 | bachelor of arts.  And he's not an expert, he's an IRS agent. | 01:22PM |
| 6 | MS. M. MILLER:  He has an accounting degree -- | 01:22PM |
| 7 | THE COURT:  Don't you have an accounting degree? | 01:22PM |
| 8 | THE WITNESS:  I do. | 01:22PM |
| 9 | THE COURT:  I do recall that.  Overruled.  Go | 01:22PM |
| 10 | ahead. | 01:22PM |
| 11 | BY MS. M. MILLER: (CONTINUING) | 01:22PM |
| 12 | Q.   Where do you usually see assets in financial | 01:22PM |
| 13 | documents? | 01:22PM |
| 14 | A.   I see them in the balance sheet.  Specifically the | 01:22PM |
| 15 | balance sheet of the company that owns it. | 01:22PM |
| 16 | Q.   Let's look at the balance sheet that was produced to | 01:22PM |
| 17 | the prospective buyer on Page 87 of Exhibit 366.  What is the | 01:22PM |
| 18 | name of the company on the top of this balance sheet? | 01:23PM |
| 19 | A.   Wilma's Flight Service, Inc. | 01:23PM |
| 20 | Q.   Okay.  Now, if you look at -- well, first, before we | 01:23PM |
| 21 | go to that, what is Wilma's identified as in Row 1 of this | 01:23PM |
| 22 | balance sheet? | 01:23PM |
| 23 | A.   "Jon D. Walker, Entities Under Common Control." | 01:23PM |
| 24 | Q.   Now let's go to Row 30 -- well, first, before we do | 01:24PM |
| 25 | that -- | 01:24PM |

1    MS. M. MILLER:  Thank you, Ms. Miller.                    01:24PM

2    BY MS. M. MILLER: (CONTINUING)                            01:24PM

3        Q.    Could you please tell the members of the jury, when    01:24PM

4    we look at the top of this, how many different companies are    01:24PM

5    identified as Jon Walker entities under common control.   01:24PM

6        A.    Six.                                            01:24PM

7        Q.    And what are the names of those companies?      01:24PM

8        A.    Wilma's Flight Service, Inc., Bean Bag Helicopters    01:24PM

9    Services, Inc., Caledonian Insurance Company Limited,     01:24PM

10   Caledonian Agency, Inc., Hansen Helicopters, Inc., Hansen    01:24PM

11   Northern Helicopters, Inc.  That's it.                    01:24PM

12       Q.    Are all those companies on Exhibit 829?         01:24PM

13       A.    Yes.                                            01:25PM

14       Q.    Now go to Line -- Row, rather, 36 of Page 87.  What    01:25PM

15   is identified in Row 36 of Page 87?                       01:25PM

16       A.    Fixed -- fixed assets, and it identifies aircraft    01:25PM

17   underneath that.                                          01:25PM

18       Q.    Okay.  What is the value of the aircraft being    01:25PM

19   identified in that document?                              01:25PM

20       A.    Under Wilma's, it's identified as ten point -- over    01:25PM

21   10.5 million.  And then for Hansen Northern Helicopters, it's    01:25PM

22   identified as over 3 million.  And then for -- or, excuse me,    01:25PM

23   for Hansen Helicopters, it's over 3 million.  And then for    01:25PM

24   Hansen Northern Helicopters, it's 360,000 in value for the    01:26PM

25   aircraft, so totaling a little under $14 million in aircraft    01:26PM

1    assets.                                                        01:26PM

2        Q.   Now let's go to Page 97 of this document.            01:26PM

3             MS. M. MILLER:  And, Ms. Miller, if you could        01:26PM

4    hone in on the very top so the jury can see what this document 01:26PM

5    is.                                                           01:26PM

6    BY MS. M. MILLER: (CONTINUING)                                01:26PM

7        Q.   What is this document, sir?                          01:26PM

8        A.   It's a profit/loss statement for Hansen Helicopters  01:26PM

9    for the period January through December of 2015.              01:26PM

10       Q.   And what is identified in Row 1 of this particular   01:26PM

11   document?                                                     01:26PM

12       A.   These are Jon D. Walker's group companies.           01:26PM

13       Q.   Okay.  Jon D. Walker's what companies?               01:27PM

14       A.   Group.                                               01:27PM

15       Q.   Group companies.                                     01:27PM

16       A.   Group companies.                                     01:27PM

17       Q.   Okay.  Now, identify those companies.                01:27PM

18       A.   Wilma's Flight Services, Inc., Bean Bag Helicopters, 01:27PM

19   Inc., Caledonian Insurance Company Limited, Caledonian Agency, 01:27PM

20   Inc., Hansen Helicopters, Inc., and Hansen Northern           01:27PM

21   Helicopters, Inc.                                             01:27PM

22       Q.   Okay.  And let's go to what is being identified as   01:27PM

23   the profit for those combined companies.                     01:27PM

24             MS. M. MILLER:  Ms. Miller, if you can get out of   01:27PM

25   this one and highlight the profit.                           01:27PM

1    BY MS. M. MILLER:  (CONTINUING)                          01:27PM

2        Q.   And this is for the year 2016; correct?        01:27PM

3        A.   2015.                                           01:28PM

4        Q.   2015.  Okay.  And could you tell the members of the    01:28PM

5    jury, what is the total profit?                          01:28PM

6        A.   It's actually -- it's the gross revenue, actually.     01:28PM

7    It's what --                                             01:28PM

8        Q.   Gross revenue.                                  01:28PM

9        A.   And that reflects over $23 million.             01:28PM

10       Q.   Can you give me the exact amount, sir?          01:28PM

11       A.   Yes.  $23,167,598.96.                           01:28PM

12       Q.   And this is for 2015 for Hansen Helicopters?    01:28PM

13       A.   Yes.                                            01:28PM

14       Q.   And this amount rolls up any income for any of those    01:28PM

15   six companies that you identified?                       01:28PM

16       A.   Yes.  This includes all six companies identified on    01:28PM

17   the profit/loss statement.                               01:28PM

18       Q.   Can you tell the members of the jury whether you    01:28PM

19   tried to get tax return information for all of the companies    01:28PM

20   that were identified by the Defendants as being used?    01:29PM

21       A.   Yes.                                            01:29PM

22       Q.   Which companies actually filed tax returns?     01:29PM

23       A.   Hansen Helicopters.                             01:29PM

24            MR. MARTIN:  Well, Your Honor, I'm objecting.    01:29PM

25   Tax returns has never been brought up on direct or cross, and    01:29PM

*Redirect - Khamvongsa*

```
1    we're getting into it for the first time now, and I object to        01:29PM
2    it.                                                                   01:29PM
3              THE COURT:  That's a good point.                           01:29PM
4              MS. M. MILLER:  May I respond?                             01:29PM
5              MS. MCCONWELL:  And Hansen Helicopters is not a            01:29PM
6    party to Counts 99 through 110 to the -- and I would also join       01:29PM
7    in Mr. Martin's objection.                                           01:29PM
8              THE COURT:  Okay.                                          01:29PM
9              MS. M. MILLER:  May I respond, Your Honor?                 01:29PM
10             THE COURT:  Yes.                                           01:29PM
11             MS. M. MILLER:  So yesterday, we heard Mr. Martin          01:29PM
12   go on for two hours about the representations being made in          01:29PM
13   Exhibit 366 from each of these Vanuatu companies, or                 01:29PM
14   non-Vanuatu companies, having as an asset of each of these           01:29PM
15   individual aircraft.                                                 01:29PM
16             So this goes directly to contradict the fact that         01:29PM
17   any of those companies had as an asset any of those aircraft         01:29PM
18   because none of them ever identified the aircraft as an asset.       01:30PM
19   We just showed that the aircraft were all identified as assets       01:30PM
20   of Hansen Helicopters and the six companies that are wholly          01:30PM
21   owned by Hansen, and the only income from all of the tuna boat       01:30PM
22   leases was income shown by Hansen Helicopters and its tax            01:30PM
23   return because none of those other companies ever filed a tax        01:30PM
24   return.  That's directly relevant to contradict what                01:30PM
25   Mr. Martin tried to do with this jury yesterday.                     01:30PM
```

| | | |
|---|---|---|
| 1 | THE COURT: All right. | 01:30PM |
| 2 | MR. MARTIN: May I respond, Your Honor? | 01:30PM |
| 3 | THE COURT: Yes. Go ahead. | 01:30PM |
| 4 | MR. MARTIN: To begin with, the fact that I went | 01:30PM |
| 5 | on for two hours and the fact that the government has gone on | 01:30PM |
| 6 | for five days with this witness has nothing to do with the | 01:30PM |
| 7 | objection -- | 01:30PM |
| 8 | THE COURT: Okay, okay, okay. Wait, wait, wait. | 01:30PM |
| 9 | MS. M. MILLER: Move to strike that, because I | 01:30PM |
| 10 | haven't been doing this witness for five days. We've been on | 01:30PM |
| 11 | breaks -- | 01:30PM |
| 12 | MR. MARTIN: It's my response. | 01:30PM |
| 13 | THE COURT: Ms. Miller, no, no, do not interrupt | 01:30PM |
| 14 | the Court. | 01:30PM |
| 15 | MS. M. MILLER: Yes, yes. | 01:30PM |
| 16 | THE COURT: And do not interrupt the objection. | 01:30PM |
| 17 | I agree that -- you know, to say that he went on for two | 01:30PM |
| 18 | hours, that's a cheap shot. And to say that she went on for | 01:31PM |
| 19 | five days, another cheap shot. | 01:31PM |
| 20 | MR. MARTIN: I agree, Your Honor. | 01:31PM |
| 21 | THE COURT: So the two of you, cut it out. Let's | 01:31PM |
| 22 | just move on because -- let's not waste our energy on these | 01:31PM |
| 23 | little -- | 01:31PM |
| 24 | MS. M. MILLER: Yes, Your Honor. | 01:31PM |
| 25 | THE COURT: -- tit-for-tat. Let's just go on. | 01:31PM |

*Redirect - Khamvongsa*

```
 1    We all get heated; in the heat of battle, we get all excited.    01:31PM

 2    Let's just focus and get this little guy off the stand -- this    01:31PM

 3    guy.  He needs -- he probably needs to, you know, go eat          01:31PM

 4    something.  He's tired of being here.  All right.                 01:31PM

 5                  MR. MARTIN:  My objection was beyond the scope of    01:31PM

 6    cross, Your Honor.                                                 01:31PM

 7                  THE COURT:  Yeah.                                     01:31PM

 8                  MR. MARTIN:  Her response had nothing to do with     01:31PM

 9    my cross-examination because the questions that I asked did       01:31PM

10    not identify any assets.  My question was very specific.  We      01:31PM

11    heard Veronica read it back yesterday:  Is aircraft on the FAA    01:31PM

12    registry X, Y, Z an asset?  He answered it.  That's -- that is    01:31PM

13    where I ended.  Anything beyond that is beyond the scope of my    01:32PM

14    cross, and I object.                                              01:32PM

15                  THE COURT:  And I told both of you that, you         01:32PM

16    know, when you guys argue this with the jury, it will be --       01:32PM

17    that'll be the argument --                                        01:32PM

18                  MS. M. MILLER:  Right.                               01:32PM

19                  THE COURT:  -- that it was related only to the       01:32PM

20    document, not necessarily to the corporation.                     01:32PM

21                  MS. M. MILLER:  And, Your Honor, the                 01:32PM

22    government --                                                     01:32PM

23                  THE COURT:  The issue of beyond the scope --         01:32PM

24                  MS. M. MILLER:  But the government is very -- if     01:32PM

25    Mr. Martin wants to stipulate that these --                      01:32PM
```

*Redirect - Khamvongsa*

```
 1                    THE COURT:  No, no, no, no.  Strike that.        01:32PM

 2                    MS. M. MILLER:  Okay.                            01:32PM

 3                    THE COURT:  Let's not -- if you guys want to talk 01:32PM

 4       about stipulations, do it outside the presence of the jury.  01:32PM

 5                    MS. M. MILLER:  Okay.  That's fine.              01:32PM

 6                    THE COURT:  Because it's not fair -- it's like   01:32PM

 7       saying, "Hey, do you want to stipulate to... everything I want 01:32PM

 8       in."  Don't do that.                                         01:32PM

 9                    MS. M. MILLER:  Sure.                            01:32PM

10                    THE COURT:  Because no prosecutor, no defense    01:32PM

11       attorney will stipulate to anything unless it's -- unless they 01:32PM

12       really want to do it, and they would have already done it.   01:32PM

13                    MS. M. MILLER:  Clearly, the inference --        01:32PM

14                    THE COURT:  I know -- I know the argument.       01:32PM

15                    MS. M. MILLER:  Okay.                            01:32PM

16                    THE COURT:  The issue is -- the -- the objection 01:32PM

17       is beyond the scope.  I heard your argument.                 01:32PM

18                    MS. M. MILLER:  Yes.                             01:32PM

19                    THE COURT:  Yes, Ms. McConwell?                  01:32PM

20                    MS. MCCONWELL:  I was just going to ask the Court 01:32PM

21       to remind Counsel that we're not to be making speaking       01:33PM

22       objections.                                                  01:33PM

23                    MS. M. MILLER:  Your Honor, I'm responding to a  01:33PM

24       speaking objection.                                          01:33PM

25                    THE COURT:  Okay.  I think everybody --          01:33PM
```

*Redirect - Khamvongsa*

| | |
|---|---|
| 1 | MS. MCCONWELL:  Argument -- | 01:33PM |
| 2 | THE COURT:  You all have to be reminded NSO, "no | 01:33PM |
| 3 | speaking objections." | 01:33PM |
| 4 | All right.  Everybody, let's calm down.  Because | 01:33PM |
| 5 | if not, if we don't at least get through this, you know, we | 01:33PM |
| 6 | don't have to -- I don't have to speak so much.  I'm already | 01:33PM |
| 7 | losing my voice, so let's -- let's get through this. | 01:33PM |
| 8 | On this objection, I think -- excuse me.  On the | 01:33PM |
| 9 | -- I think you're getting too -- you know, if you're going to | 01:33PM |
| 10 | keep on and on about the tax stuff -- | 01:33PM |
| 11 | MS. M. MILLER:  Oh, no. | 01:33PM |
| 12 | THE COURT:  Is that it, you're done? | 01:33PM |
| 13 | MS. M. MILLER:  I -- | 01:33PM |
| 14 | THE COURT:  Are you done on this tax question? | 01:33PM |
| 15 | MS. M. MILLER:  I'm done. | 01:33PM |
| 16 | THE COURT:  All right.  Move on to the next | 01:33PM |
| 17 | question. | 01:33PM |
| 18 | MS. M. MILLER:  Okay. | 01:33PM |
| 19 | THE COURT:  Go ahead. | 01:33PM |
| 20 | BY MS. M. MILLER: (CONTINUING) | 01:33PM |
| 21 | Q.   So the next question -- | 01:33PM |
| 22 | THE COURT:  So we wasted ten minutes talking | 01:33PM |
| 23 | about it.  If you're going to move on, let's go. | 01:33PM |
| 24 | MS. M. MILLER:  I know.  All right. | 01:33PM |
| 25 | BY MS. M. MILLER: (CONTINUING) | 01:33PM |

*Redirect - Khamvongsa*

1    Q.   Right.  Now, one of the questions that was asked of     01:33PM

2  you by Mr. McConwell was, Isn't it true that since these     01:33PM

3  transactions involved Vanuatu companies that the funds weren't     01:33PM

4  necessarily paid in U.S. dollars?  I'd like you to look at a     01:34PM

5  document that was admitted as Exhibit 1542.     01:34PM

6              MS. MCCONWELL:  Your Honor, I object.  That's not     01:34PM

7  the question that was posed by Mr. McConwell.     01:34PM

8              MS. M. MILLER:  Well, we can go to the exact     01:34PM

9  question.     01:34PM

10             THE COURT:  Let's not.  1542.  Court will     01:34PM

11 overrule the objection.  Go ahead.     01:34PM

12             MS. M. MILLER:  Yeah, 1542 is already admitted,     01:34PM

13 Your Honor.     01:34PM

14             THE COURT:  Okay.     01:34PM

15             (Pause.)     01:34PM

16             MS. MCCONWELL:  I do not have 1542 as having been     01:34PM

17 admitted.     01:34PM

18             THE COURT:  1542, nobody has it?  Carmen doesn't     01:34PM

19 have it?  She doesn't have it.  You want to double-check?     01:34PM

20 Maybe it's the wrong number?     01:34PM

21             MS. M. MILLER:  We had it -- no, I don't think     01:34PM

22 it's the wrong number, but we did have it as admitted, Your     01:34PM

23 Honor.     01:35PM

24             MS. MCCONWELL:  No.     01:35PM

25             THE COURT:  Okay.  Well, let's try to find it.     01:35PM

*Redirect - Khamvongsa*

```
 1              MS. M. MILLER:  Yup.                          01:35PM
 2              THE COURT:  My court clerk doesn't have it.   01:35PM
 3  Neither does Ms. McConwell.                              01:35PM
 4              MS. M. MILLER:  Okay.  So we'll lay the       01:35PM
 5  foundation.  We did have it as admitted, Your Honor, but we 01:35PM
 6  will go ahead and lay the foundation.                    01:35PM
 7              THE COURT:  Okay.                             01:35PM
 8              MS. M. MILLER:  And if we could show it to the 01:35PM
 9  witness and to the Court and to Counsel.                 01:35PM
10              Can you -- Ms. Miller, could you get the -- my 01:35PM
11  yellow -- oh, you can't.  Oh, never mind.  Ms. Santos did it. 01:35PM
12  BY MS. M. MILLER: (CONTINUING)                           01:35PM
13      Q.  All right.  So, sir, so do you recognize         01:35PM
14  Exhibit 1542?                                            01:35PM
15      A.  Yes.                                             01:35PM
16      Q.  Okay.  Is it a true and correct copy of a document 01:35PM
17  that was seized or subpoenaed from the defendants?       01:35PM
18      A.  Yes.                                             01:35PM
19              MS. M. MILLER:  Your Honor, at this time, the 01:35PM
20  Government would offer Exhibit 1542 in.  And I will not say 01:35PM
21  anything further until Your Honor rules about it.        01:35PM
22              THE COURT:  Okay.  Any objections, Counsel?   01:35PM
23              MR. MARTIN:  May I have just a minute, Your   01:35PM
24  Honor?  I'm just pulling it up.                          01:36PM
25              THE COURT:  That's fine.  I think it's -- yeah, 01:36PM
```

```
 1    it's on the screen.  Uh-huh.                          01:36PM

 2              (Pause.)                                     01:37PM

 3              MR. MARTIN:  If it please the Court, Your Honor.  01:37PM

 4              THE COURT:  Yes.                             01:37PM

 5              MR. MARTIN:  I have an objection, but I would  01:37PM

 6    rather not make it in the presence of the jury.  I think it  01:37PM

 7    would be more appropriate.  And I apologize, but there is an  01:37PM

 8    issue here.                                            01:37PM

 9              THE COURT:  Oh.  Okay.  Have we fixed that?  Oh,  01:37PM

10    we fixed it?  Okay.  Well, can we -- let's try it.  Let's try  01:37PM

11    the... will it take just a few minutes?                01:37PM

12              MR. MARTIN:  It shouldn't take too long.     01:37PM

13              (Trying to get sidebar microphones on.)      01:40PM

14              (Pause.)                                     01:40PM

15              MR. MARTIN:  You'll be absolutely amazed, Your  01:41PM

16    Honor, but in the -- in the attempt to reach cooperation, I  01:41PM

17    think we have an agreement.  Just if I may talk with   01:41PM

18    Ms. Miller one minute, I think we can resolve this.    01:41PM

19              THE COURT:  Oh, nice, I like that.           01:41PM

20              MS. M. MILLER:  Miracles do occur.           01:41PM

21              MR. MARTIN:  It will never happen again.     01:41PM

22              THE COURT:  I'm praying, I'm praying.  I've got  01:41PM

23    my rosary here.                                        01:42PM

24              (Pause.)                                     01:42PM

25              (Counsel conferred.)                         01:42PM
```

*Redirect - Khamvongsa*

```
 1              MS. M. MILLER:  We have a stipulation.           01:42PM
 2              THE COURT:  Still good, team?                    01:42PM
 3              MS. M. MILLER:  Yeah, we have a stipulation.     01:42PM
 4              THE COURT:  Oh, go ahead.  Read it out.          01:42PM
 5              MS. M. MILLER:  So the stipulation is that all of 01:42PM
 6    the payments from the tuna boat companies were always made in 01:42PM
 7    U.S. dollars.  So we don't need to bring this in.         01:42PM
 8              THE COURT:  Oh, very good.  Is that correct,     01:42PM
 9    Mr. Martin?                                                01:42PM
10              MR. MARTIN:  Amazingly, Yes, Your Honor.         01:42PM
11              THE COURT:  And Ms. McConwell?                   01:42PM
12              MS. MCCONWELL:  Yes, ma'am.                      01:42PM
13              THE COURT:  Okay.  Well, I'm glad we had that    01:42PM
14    breakdown in our COVID -- whatever that thing is, apparatus. 01:42PM
15    What's it called?  Mouthpiece?                             01:42PM
16              MS. M. MILLER:  I don't know.  So we could take  01:42PM
17    this off the screen, Ms. Miller.                           01:42PM
18              THE COURT:  Okay.  Well, I hope that moved --    01:42PM
19    yeah, this is moving it along.                             01:42PM
20              MS. M. MILLER:  And that eliminated three        01:42PM
21    questions.                                                 01:42PM
22              THE COURT:  Even better.  Okay.                  01:42PM
23    BY MS. M. MILLER: (CONTINUING)                             01:43PM
24       Q.  Special Agent Khamvongsa, yesterday we did hear    01:43PM
25    from -- or it might have been the day before, Mr. McConwell 01:43PM
```

*Redirect - Khamvongsa*

01:43PM 1    introduced letters from the Bank of Hawaii to several of the

01:43PM 2    Hansen Helicopters subsidiaries closing their accounts; do you

01:43PM 3    remember that?

01:43PM 4        A.   Yes.

01:43PM 5        Q.   And, for the record, those were Exhibits 132, 133,

01:43PM 6    134 and 135; do you recall that, sir?

01:43PM 7        A.   I recall reviewing those, yes.

01:43PM 8        Q.   And one of those companies was Wilma's Flight

01:43PM 9    Service?

01:43PM 10       A.   Yes.

01:43PM 11       Q.   Could you tell the members of the jury the address

01:43PM 12   that the bank had for Wilma's Flight Services.

01:43PM 13       A.   Though I know it, could I review the document real

01:43PM 14   quick, please?

01:43PM 15       Q.   Yes.

01:43PM 16            MS. M. MILLER:  May I approach the witness with

01:43PM 17   the documents, Your Honor?

01:43PM 18            THE COURT:  Yes, you may.

01:43PM 19            THE WITNESS:  Thank you.

01:43PM 20   BY MS. M. MILLER: (CONTINUING)

01:43PM 21       Q.   Thank you.

01:43PM 22            What was the address, sir?

01:44PM 23       A.   It is PO Box 9099, Tamuning, Guam.

01:44PM 24       Q.   Okay.  And the next letter?

01:44PM 25       A.   Hansen Helicopters, Inc.  The address is PO Box 9099,

*Redirect - Khamvongsa*

| | | |
|---|---|---|
| 1 | Tamuning, Guam. | 01:44PM |
| 2 | Q.   Next letter. | 01:44PM |
| 3 | A.   Caledonian Agency, Inc.  The address is PO Box 9099, | 01:44PM |
| 4 | Tamuning, Guam. | 01:44PM |
| 5 | Q.   And the next letter. | 01:44PM |
| 6 | A.   Hansen Northern Helicopters, Inc.  The address is PO | 01:44PM |
| 7 | Box 9099, Tamuning, Guam. | 01:44PM |
| 8 | Q.   Okay.  Thank you, sir. | 01:44PM |
| 9 | Now let's look at an exhibit that Mr. Martin showed | 01:44PM |
| 10 | you yesterday, which is Government's Exhibit 752-54.  And I'll | 01:44PM |
| 11 | come and retrieve those documents from you.  Thank you, sir. | 01:44PM |
| 12 | Thank you. | 01:45PM |
| 13 | MS. MCCONWELL:  Your Honor, I'm going to object | 01:45PM |
| 14 | to this as cumulative.  Ms. Miller was already asking | 01:45PM |
| 15 | questions about 752-54 yesterday, I think, so I'm objecting | 01:45PM |
| 16 | that it's cumulative. | 01:45PM |
| 17 | MS. M. MILLER:  I don't recall that at all. | 01:45PM |
| 18 | THE COURT:  You never -- you never asked about | 01:45PM |
| 19 | 752-54? | 01:45PM |
| 20 | MS. M. MILLER:  I may have started and then we | 01:45PM |
| 21 | had objections and -- anyway. | 01:45PM |
| 22 | THE COURT:  May have got lost? | 01:45PM |
| 23 | MS. M. MILLER:  Yeah. | 01:45PM |
| 24 | THE COURT:  Well -- all right.  Let's hear the -- | 01:45PM |
| 25 | overruled at this time then since we can't pinpoint this.  Go | 01:45PM |

*Redirect - Khamvongsa*

```
 1    ahead.  What was the question?                          01:45PM
 2            MS. M. MILLER:  We're going to look at 752-54,   01:45PM
 3    which is what Mr. Martin introduced or discussed yesterday.  01:45PM
 4            THE COURT:  All right.                           01:45PM
 5    BY MS. M. MILLER:  (CONTINUING)                          01:45PM
 6       Q.   And do you see that, sir?                        01:45PM
 7       A.   Yes.                                             01:45PM
 8       Q.   Okay.  Now, what is the date on this document?   01:45PM
 9       A.   August 29th, 2007.                               01:45PM
10       Q.   Okay.  Which aircraft does this document pertain to?  01:46PM
11       A.   N9068F.                                          01:46PM
12       Q.   And what is the serial number on this document?  01:46PM
13       A.   210293S.                                         01:46PM
14       Q.   And what is the name of the company that is      01:46PM
15    registering the aircraft?                                01:46PM
16       A.   Whirlwide Helicopters, Inc.                      01:46PM
17       Q.   And the individual?                              01:46PM
18       A.   The individual signing it is Jon D. Walker,      01:46PM
19    President.                                               01:46PM
20       Q.   And the certification is indicating what, sir?   01:46PM
21       A.   The certification?  Would you like me to read it 01:46PM
22    specifically?                                            01:46PM
23       Q.   Yes, please.                                     01:46PM
24       A.   "I certify that the above aircraft is owned by the  01:46PM
25    undersigned applicant who is a citizen, including        01:47PM
```

*Redirect - Khamvongsa*

1  corporations, for the United States -- or of the United                     01:47PM

2  States."  For voting trust, give name of trustee -- that's                  01:47PM

3  blank -- or check one as appropriate.  "A, a resident alien                 01:47PM

4  with alien registration"; number is blank.  "(B), a noncitizen             01:47PM

5  corporation organized and doing business under the laws of                  01:47PM

6  state," which is left blank, "and said aircraft is based and                01:47PM

7  primarily used in the United States.  Records or flight hours               01:47PM

8  are available for inspection at," and that's left blank.                    01:47PM

9  "Two, that the aircraft is not registered under the laws of                 01:47PM

10  any foreign country."                                                      01:47PM

11      Q.   Okay.                                                             01:47PM

12           MS. M. MILLER:  Ms. Miller, can you back up out                   01:47PM

13  of that to show the rest of it and the signature, please.                  01:47PM

14  Okay.                                                                      01:47PM

15  BY MS. M. MILLER: (CONTINUING)                                             01:47PM

16      Q.   Sir, how many times did Jon Walker register aircraft             01:47PM

17  under the name of some other company but certifying that the               01:47PM

18  aircraft was being registered by a U.S. citizen or a U.S.                  01:48PM

19  citizen corporation?                                                       01:48PM

20      A.   317 times.                                                        01:48PM

21      Q.   Now, we also saw, which was produced or identified by            01:48PM

22  Mr. Martin, the bill of sale for 9068F.  I'd like to show you              01:48PM

23  Exhibit 752-56.  Do you see that, sir?                                     01:48PM

24      A.   Yes.                                                              01:48PM

25           MS. S. MILLER:  Marie?                                            01:48PM

*Redirect - Khamvongsa*

```
 1              MS. M. MILLER:  Yes?                        01:48PM
 2              (Counsel conferred.)                        01:48PM
 3              MR. MARTIN:  Your Honor, the bill -- I object.  01:48PM
 4   The bill of sale I used was 752, I believe 52, if we're going  01:48PM
 5   to use the one that I used.                            01:49PM
 6              THE COURT:  Okay.  Did you hear that, Counsel?  01:49PM
 7              MS. M. MILLER:  No, I didn't hear, I'm sorry.  01:49PM
 8              THE COURT:  He said he used 752-52, not 56.  01:49PM
 9              MS. M. MILLER:  Okay.  So let's go to that one.  01:49PM
10   752-52.  And if you could, please, expand that, Ms. Miller, so  01:49PM
11   we could see it.                                       01:49PM
12   BY MS. M. MILLER:  (CONTINUING)                        01:49PM
13      Q.   Okay.  So who is identified as the seller of 9068F?  01:49PM
14      A.   The seller is identified is Whirlwide Helicopters,  01:49PM
15   Inc., out of Tamuning, Guam, Jon Walker.               01:49PM
16      Q.   And what is the address for Whirlwide as the seller?  01:49PM
17      A.   PO Box 9099, Tamuning, Guam.                   01:49PM
18      Q.   And who is the purchaser?                      01:49PM
19      A.   The purchaser is Whirlwide Helicopters, Inc., 9102  01:49PM
20   PMB Lini Highway, Port Vila, Vanuatu.                  01:50PM
21      Q.   And what is the date of this document?  Whoops.  What  01:50PM
22   is the date of this document?                          01:50PM
23      A.   The 21st day of December 2007.                 01:50PM
24              MS. M. MILLER:  Okay.  Now let's go back,   01:50PM
25   Ms. Miller, to the document that I identified which predates  01:50PM
```

*Redirect - Khamvongsa*

```
 1    this.                                                        01:50PM

 2    BY MS. M. MILLER:  (CONTINUING)                              01:50PM

 3        Q.   And what is the date of this bill of sale, sir?     01:50PM

 4        A.   The 3rd day of August 2007.                         01:50PM

 5        Q.   And in August of 2007, who was the seller of this   01:50PM

 6    helicopter?                                                  01:50PM

 7        A.   Hansen Helicopters, Inc.                            01:51PM

 8        Q.   And who is the purchaser?                           01:51PM

 9        A.   Whirlwide Helicopters -- excuse me.  Whirlwide      01:51PM

10    Helicopters, Inc., PMB 9102 Lini Highway, Port Vila, Vanuatu. 01:51PM

11             MS. M. MILLER:  Okay.  So if we could,             01:51PM

12    Ms. Miller, put both of those bills of sale side by side.    01:51PM

13             MR. MARTIN:  Your Honor, my objection still         01:51PM

14    stands.  I did not talk about 752-56.  I object as it being  01:51PM

15    beyond the scope.                                            01:51PM

16             MS. M. MILLER:  May I respond?  He did talk about   01:51PM

17    this bill of sale, which the bill of sale that he talked about 01:51PM

18    was only one month after this bill of sale.  And it regards  01:51PM

19    the same helicopter that he talked about with the same serial 01:52PM

20    number that he talked about.                                 01:52PM

21             THE COURT:  Okay.                                   01:52PM

22             MR. MARTIN:  Your Honor, this is a speaking         01:52PM

23    objection.                                                   01:52PM

24             MS. M. MILLER:  I'm responding to the relevance.    01:52PM

25             THE COURT:  I'm sorry.  So --                       01:52PM
```

*Redirect - Khamvongsa*

         1              MS. M. MILLER:  And that's --                    01:52PM

         2              MR. MARTIN:  I didn't object to relevance.  I     01:52PM

         3    objected beyond the scope.                                 01:52PM

         4              THE COURT:  All right.  Okay.                     01:52PM

         5              MR. MARTIN:  And I never questioned about this    01:52PM

         6    exhibit, Your Honor.                                       01:52PM

         7              THE COURT:  All right.  Okay.  So you're just     01:52PM

         8    saying it's related to the exhibit that was -- essentially, 01:52PM

         9    you don't have to tell how it's related, but it's related to 01:52PM

        10    752-52?                                                    01:52PM

        11              MS. M. MILLER:  Yes, Your Honor.                  01:52PM

        12              THE COURT:  Okay.  That's her response.          01:52PM

        13              MS. M. MILLER:  Yes.                             01:52PM

        14              MR. MARTIN:  It's beyond the scope, Your Honor.   01:52PM

        15    This file that they are in, 752, all deals with the same   01:52PM

        16    helicopter.  So that -- under that theory, I believe this file 01:52PM

        17    is 170 pages long.  That makes every exhibit in there not  01:52PM

        18    beyond the scope.  It is beyond the scope.  I talked about  01:52PM

        19    specific documents, and so I object.                       01:52PM

        20              THE COURT:  All right.  So the Court will         01:52PM

        21    overrule the objection at this time.  Go ahead.            01:52PM

        22              MS. M. MILLER:  Yes.  Ms. Miller, can you put     01:52PM

        23    them both side by side, please.  Okay.                     01:52PM

        24    BY MS. M. MILLER: (CONTINUING)                             01:52PM

        25         Q.   So we see here, Special Agent Khamvongsa, bills of 01:53PM

*Redirect - Khamvongsa*

sale that are only one month apart; is that correct?                    01:53PM

   A.   Yes.                    01:53PM

   Q.   Okay.  And what we see here, the earlier bill of                    01:53PM

sale --                    01:53PM

         MR. MARTIN:  Your Honor, the objection is                    01:53PM

leading.  I think she should ask him a specific question --                    01:53PM

         MS. M. MILLER:  I'm --                    01:53PM

         MR. MARTIN:  -- and let him answer and not                    01:53PM

leading him.                    01:53PM

         THE COURT:  All right.  The objection will be                    01:53PM

sustained.                    01:53PM

BY MS. M. MILLER:  (CONTINUING)                    01:53PM

   Q.   What is the earlier bill of sale of these two?                    01:53PM

   A.   The earlier bill of sale is the one on the right,                    01:53PM

reflecting that Hansen Helicopters sold N9068F to Whirlwide                    01:53PM

Helicopters.                    01:53PM

   Q.   Okay.  Can you circle the owner of this helicopter in                    01:53PM

the earlier bill of sale, please.                    01:53PM

   A.   Yes.                    01:54PM

   Q.   And can you put the No. 1 next to that.                    01:54PM

   A.   (Witness complied.)                    01:54PM

   Q.   Okay.  And could you circle who is the purchaser of                    01:54PM

this helicopter, according to what was filed with the FAA.                    01:54PM

   A.   On that same document?                    01:54PM

   Q.   Yes, sir.  And put No. 2 there.                    01:54PM

*Redirect - Khamvongsa*

```
 1                THE WITNESS:  Can I change the color?        01:54PM
 2                THE COURT:  Hold on.  He wants to change the  01:54PM
 3    color.  Okay.  Hold on.  Let's see.  Show you how do it.  Hold  01:54PM
 4    on.  Hold on and Carmen will help you.                 01:54PM
 5                THE WITNESS:  Okay.  Thank you.             01:55PM
 6                THE COURT:  You want a different color, though?  01:55PM
 7                MS. M. MILLER:  I think he wanted the thickness  01:55PM
 8    to be gone, Your Honor.                                01:55PM
 9                THE WITNESS:  I meant the thickness.  I'm sorry.  01:55PM
10                MS. M. MILLER:  Because the thickness was kind of  01:55PM
11    covering some of the... yeah.                          01:55PM
12    BY MS. M. MILLER:  (CONTINUING)                        01:55PM
13        Q.   So now let's look at the exhibit that Mr. Martin  01:55PM
14    talked to you about yesterday.  Who is the seller in 752-52?  01:55PM
15    Can you circle that?                                   01:55PM
16        A.   (Witness complied.)                           01:55PM
17        Q.   And can you write No. 3 next to that.         01:55PM
18        A.   (Witness complied.)                           01:55PM
19        Q.   What is the difference between the purchaser in  01:55PM
20    Exhibit 752-56, who is now the seller in 752-52?      01:55PM
21        A.   The address is different on both -- on the document  01:56PM
22    for Whirlwide Helicopters.                             01:56PM
23        Q.   And who is the purchaser in the document that  01:56PM
24    Mr. Martin introduced through you yesterday?           01:56PM
25        A.   Whirlwide Helicopters out of -- that reflects the  01:56PM
```

1    address PO Box 9099, Tamuning, Guam.                    01:56PM

2        Q.   Purchaser, sir, of 752-52.                     01:56PM

3        A.   Sorry.  Whirlwide Helicopters, Inc., 9102 PMB Lini    01:56PM

4    Highway, Port Vila, Vanuatu.                            01:56PM

5        Q.   Can you circle that and put No. 4, please.     01:56PM

6        A.   Yes.  (Witness complied.)                      01:56PM

7        Q.   So if we look at these two documents together, then    01:56PM

8    it would appear, would it not, sir, that --             01:56PM

9             MS. MCCONWELL:  Your Honor, I object to leading.    01:56PM

10            MS. M. MILLER:  I haven't even finished the    01:56PM

11   question yet, Your Honor.                               01:57PM

12            THE COURT:  Okay.  Go ahead, finish the question.    01:57PM

13   BY MS. M. MILLER: (CONTINUING)                          01:57PM

14       Q.   Who, as the owner, as of the final transaction    01:57PM

15   evidenced in 752-56, is selling to who as the purchaser in the    01:57PM

16   final transaction in 752-52?                            01:57PM

17       A.   Who is the owner?                              01:57PM

18       Q.   To to for?                                     01:57PM

19       A.   There is no change.  Whirlwide -- or Jon Walker.    01:57PM

20       Q.   Well -- but Whirlwide Vanuatu is selling to Whirlwide    01:57PM

21   Vanuatu?                                                01:57PM

22       A.   Correct.                                       01:57PM

23       Q.   Why?                                           01:57PM

24            MR. MARTIN:  Speculation, Your Honor.          01:57PM

25            THE COURT:  Sustained.                         01:57PM

*Redirect - Khamvongsa*

BY MS. M. MILLER: (CONTINUING)

Q.   And who is signing off on this information that's being sent to the FAA?

A.   Jon Walker.

Q.   Now, 752-52, which Mr. Martin asked you about yesterday, we end with who owning 9068F, serial number 210293S.  Who's the final owner of that helicopter according to the paperwork that Mr. Martin presented to you?

A.   Whirlwide Helicopters, Inc.

Q.   And what is the address of that owner at that time?

A.   9102 PMB Lini Highway, Port Vila, Vanuatu.

Q.   So the last info the FAA has about the ownership of 9068F is Whirlwide Vanuatu; correct?

A.   Yes.

        MS. MCCONWELL:  Could we have a date on that, Your Honor?  I'm not sure what the time frame is.

        THE COURT:  Date?

        THE WITNESS:  The date on that document is December 21st, 2007.

BY MS. M. MILLER: (CONTINUING)

Q.   Let's look at the chart of registrations that has been entered into evidence as Exhibit 1252.  And we'll look at 9068F and see if that registration information ever changed.

        MS. M. MILLER:  Thank you, Ms. Santos. Ms. Miller, can you just focus -- thank you so much.

*Redirect - Khamvongsa*

BY MS. M. MILLER: (CONTINUING)                                    02:00PM

    Q.    So, sir, can you tell the members of the jury, all    02:00PM

the way through the time it was deregistered in 2019, who was    02:00PM

identified as the registered owner of 9068F?                     02:00PM

    A.    Whirlwide Helicopters, Inc.                          02:00PM

    Q.    Okay.  And the address that was provided, if you look 02:00PM

at the first row, what was the address there?                    02:00PM

    A.    9102 Lini Highway PMB, Port Vila, Vanuatu.           02:00PM

    Q.    Okay.  Now --                                        02:00PM

        MS. M. MILLER:  I'd like to approach the witness,     02:00PM

Your Honor, with what has been previously entered into           02:00PM

evidence as Exhibit 2972.                                        02:00PM

        THE COURT:  You may.                                  02:00PM

BY MS. M. MILLER: (CONTINUING)                                    02:00PM

    Q.    What is that document that I just gave you, sir?     02:01PM

    A.    This is one of the items that was seized from the    02:01PM

search warrant in October of 2016 from the Hansen facilities     02:01PM

in Guam, Saipan and in -- also in Georgia.                       02:01PM

    Q.    Sir, what is the file that I just gave you?          02:01PM

    A.    The file is tied to N9068F.                          02:01PM

    Q.    Does the cover of the file say 9068F?                02:01PM

    A.    Yes.                                                 02:01PM

        MR. MARTIN:  Your Honor, does this have an           02:01PM

exhibit number?                                                   02:01PM

        MS. M. MILLER:  2972.                                02:01PM

|    |                                                             |        |
|----|-------------------------------------------------------------|--------|
| 1  | MR. MARTIN:  I'm sorry?                                      | 02:01PM |
| 2  | MS. M. MILLER:  2972.                                       | 02:01PM |
| 3  | MR. MARTIN:  It would be helpful if we could                | 02:01PM |
| 4  | hear these --                                               | 02:01PM |
| 5  | THE COURT:  Yeah, okay.  You got it, 2972?                   | 02:01PM |
| 6  | MS. M. MILLER:  Yes.                                         | 02:01PM |
| 7  | THE COURT:  All right.  Is that right?                       | 02:01PM |
| 8  | THE WITNESS:  Yes.                                           | 02:01PM |
| 9  | THE COURT:  Okay.                                            | 02:01PM |
| 10 | BY MS. M. MILLER: (CONTINUING)                               | 02:01PM |
| 11 | Q.   So that is the file that was seized from where?        | 02:01PM |
| 12 | A.   From Hansen facilities.                                 | 02:01PM |
| 13 | Q.   Located where?                                          | 02:01PM |
| 14 | A.   In Guam, Saipan and --                                  | 02:01PM |
| 15 | Q.   Where was that file seized from, sir?  Where was that  | 02:02PM |
| 16 | particular file seized from?                                 | 02:02PM |
| 17 | A.   Here in Guam.                                          | 02:02PM |
| 18 | Q.   Open up that file, please, and tell the members of     | 02:02PM |
| 19 | the jury what you see in that file that was seized from Guam. | 02:02PM |
| 20 | A.   I see --                                               | 02:02PM |
| 21 | MR. MARTIN:  Your Honor, I object.  This is well            | 02:02PM |
| 22 | beyond the scope of my cross-examination.  I did not go into | 02:02PM |
| 23 | this file, I did not talk about this file.                  | 02:02PM |
| 24 | THE COURT:  Okay.                                            | 02:02PM |
| 25 | MR. MARTIN:  I can't even find -- is this a -- is           | 02:02PM |

*Redirect - Khamvongsa*

```
 1   this in the --                                          02:02PM
 2              MS. MCCONWELL:  It's a summary chart -- oh, no --  02:02PM
 3              MS. M. MILLER:  It's a physical file.         02:02PM
 4              MS. MCCONWELL:  It's a physical file.         02:02PM
 5              THE COURT:  Physical file.                    02:02PM
 6              MR. MARTIN:  I never went into this chart.  I 02:02PM
 7   object to the use of it, Your Honor.  It's beyond the scope of 02:03PM
 8   cross-examination, and I object.                        02:03PM
 9              MS. MCCONWELL:  Hansen joins.                 02:03PM
10              THE COURT:  Hansen joins.  Okay.  Yes?        02:03PM
11              MS. M. MILLER:  May I respond?                02:03PM
12              THE COURT:  Yes.                              02:03PM
13              MS. M. MILLER:  Yes, Your Honor.              02:03PM
14              THE COURT:  No speaking, just right to the point. 02:03PM
15              MS. M. MILLER:  Yes, right to the point.      02:03PM
16   Mr. Martin talked about the fact that that particular   02:03PM
17   helicopter was registered to a company in Vanuatu.  However, 02:03PM
18   the file for that particular helicopter was found at Hansen 02:03PM
19   Helicopters here in Guam.  That's the point.  Any inference 02:03PM
20   that -- well, I'll stop talking.                        02:03PM
21              THE COURT:  Okay.  You want to look at the file; 02:03PM
22   have you seen it?                                       02:03PM
23              MR. MARTIN:  I would like to look at the file. 02:03PM
24              THE COURT:  Why don't you let him look at the 02:03PM
25   file?                                                   02:03PM
```

*Redirect - Khamvongsa*

```
 1                 MS. M. MILLER:  Sure.                          02:03PM

 2                 THE COURT:  Maybe you guys can --               02:03PM

 3                 MS. M. MILLER:  He has seen it.                 02:03PM

 4                 THE COURT:  -- stipulate.  Go ahead.            02:03PM

 5                 MS. MCCONWELL:  It's still beyond the scope of  02:03PM

 6      his cross-examination.                                     02:03PM

 7                 THE COURT:  Okay.  Well, it could very well be. 02:03PM

 8                 (Pause.)                                        02:03PM

 9                 (Counsel conferred.)                            02:03PM

10                 THE COURT:  Yes?                                02:04PM

11                 MR. MARTIN:  If we may approach, Your Honor,    02:04PM

12      there is something --                                     02:04PM

13                 THE COURT:  Okay.  Why don't you guys talk over 02:04PM

14      there?  Maybe you can --                                  02:04PM

15                 MR. MARTIN:  No, we have a major problem.  That 02:04PM

16      is --                                                     02:04PM

17                 THE COURT:  We fixed it?                        02:04PM

18                 MR. MARTIN:  -- way beyond the scope.           02:04PM

19                 MS. M. MILLER:  Really?  Okay.  Well, I disagree.02:04PM

20                 MR. MARTIN:  Turn your mic off, please.         02:04PM

21                 MS. M. MILLER:  Sorry.                          02:04PM

22                 THE COURT:  Ladies and gentlemen, why don't     02:04PM

23      you -- yeah.  Ten minutes, 15 minutes.  Keep an open mind. 02:04PM

24                 (Jury out at 2:04 p.m.)                         02:04PM

25                 MR. MARTIN:  Your Honor, if I may hand the file 02:05PM
```

*Redirect - Khamvongsa*

```
 1    to you.                                                          02:05PM
 2              THE COURT:  Oh, okay.  Let me see.  Might it           02:05PM
 3    explode?                                                         02:05PM
 4              MS. M. MILLER:  No, it won't explode.                  02:05PM
 5              MR. MARTIN:  The prosecution intends, I believe,       02:05PM
 6    to go into the fact that they found a file, contained within     02:05PM
 7    that file is a -- what appears to be a data plate.               02:05PM
 8              THE COURT:  A what?                                     02:05PM
 9              MR. MARTIN:  A data plate, that piece of metal --      02:05PM
10              THE COURT:  Data plate?                                02:05PM
11              MR. MARTIN:  Yes.  That piece of metal there.         02:05PM
12              THE COURT:  Oh, this thing?                            02:05PM
13              MR. MARTIN:  That thing.  My cross-examination         02:05PM
14    never went into data plates at all.  There has already been      02:05PM
15    testimony about this file and about that data plate, but not      02:05PM
16    by this witness.  And this has nothing whatsoever to do with     02:05PM
17    my cross-examination, Mr. McConwell's cross-examination.  But    02:05PM
18    it's specifically for the purpose of adding new evidence in      02:05PM
19    their case-in-chief.  And there -- the word "data plate," I      02:06PM
20    promise you -- and we can have Veronica search all day long --   02:06PM
21    never came out of my mouth yesterday, and it never came out of   02:06PM
22    Mr. McConwell's mouth the day before that.                       02:06PM
23              THE COURT:  Are you trying to get the data plate       02:06PM
24    info out of this file?                                           02:06PM
25              MS. M. MILLER:  Serial number.                         02:06PM
```

*Redirect - Khamvongsa*

02:06PM
02:06PM
02:06PM
02:06PM
02:06PM
02:06PM
02:06PM
02:06PM
02:06PM
02:06PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:07PM
02:08PM

1    THE COURT:  I mean, you're trying to get the

2  serial number on the data plate?

3    MS. M. MILLER:  Yes.  Because when Mr. Martin

4  brought up Exhibit 752-52 to this jury, he said to them, What

5  is the registration number of this helicopter?  N9068F.  What

6  is the serial number associated with that registration?  And

7  he had this witness identify the serial number associated with

8  that registration.  And the whole point of doing that was,

9  Whirlwide is the registered owner, Whirlwide owns 9068F;

10  that's an asset of Whirlwide with this serial number.  What

11  that shows, Your Honor, is when the file for 9068F was seized,

12  No. 1, it was seized in Hansen Helicopters' facility; No. 2,

13  in that file was a serial number associated with 9068F that

14  was not 9068F; that's called evidence of fraud.  This is

15  absolutely directly within the scope of Mr. Martin's

16  cross-examination.

17    MR. MARTIN:  If I might respond, Your Honor?  My

18  cross-examination about 9068F did not deal with what

19  Ms. Miller said.  My cross-examination was before I ever went

20  to those charts.  My cross-examination went to show that

21  Whirlwide in Guam sold this helicopter to Whirlwide, a Vanuatu

22  corporation.  I never talked about the serial number of that

23  helicopter.  I never talked about the data plate of that

24  helicopter.  I simply talked about that exhibit for the

25  specific purpose, Exhibit No. 752-52 and 752, I believe -54,

1  for that purpose.  I mean, they already got into 752-56 which          02:08PM

2  I didn't even use.  But this, Your Honor, is so far beyond the          02:08PM

3  scope of what I ever went into, it's just -- it's more                 02:08PM

4  case-in-chief stuff.                                                   02:08PM

5          MS. M. MILLER:  It's not.                                      02:08PM

6          THE COURT:  Okay.  Let me -- okay.  So what --                 02:08PM

7  okay.  Just so I can understand this, the serial number -- I           02:08PM

8  mean, do you agree that the serial number that's contained in          02:08PM

9  this little plastic Ziploc bag is consistent with the                  02:08PM

10 helicopter 9 -- N9085 -- or 9086 --                                    02:08PM

11          MS. M. MILLER:  9068F.                                        02:08PM

12          THE COURT:  -- F?                                             02:08PM

13          MR. MARTIN:  I haven't even looked at the serial              02:08PM

14 number, Your Honor.  My objection was immediately when I saw           02:08PM

15 it that they're going into a data plate.  I never went into            02:08PM

16 data --                                                                02:09PM

17          THE COURT:  What's the significance of a data                 02:09PM

18 plate?                                                                 02:09PM

19          MS. M. MILLER:  The data plate identifies the                 02:09PM

20 serial number.  Here's -- here is --                                   02:09PM

21          THE COURT:  I know, but is there a problem -- is              02:09PM

22 there, like, a missing helicopter here?                                02:09PM

23          MS. M. MILLER:  Yes.  Here's the problem --                   02:09PM

24          THE COURT:  No, no, wait.  We've already -- just              02:09PM

25 a minute.  Hold on.                                                    02:09PM

*Redirect - Khamvongsa*

| | |
|---|---|
| 1 | MS. M. MILLER:  Yes. | 02:09PM |
| 2 | THE COURT:  As I understand it -- | 02:09PM |
| 3 | MS. M. MILLER:  Yes. | 02:09PM |
| 4 | THE COURT:  -- the evidence shows that -- and | 02:09PM |
| 5 | correct me if I'm wrong -- N908 -- | 02:09PM |
| 6 | MS. M. MILLER:  9068F. | 02:09PM |
| 7 | THE COURT:  -- F, is the helicopter in question | 02:09PM |
| 8 | that was sold from Wilma's -- | 02:09PM |
| 9 | MS. M. MILLER:  No. | 02:09PM |
| 10 | THE COURT:  -- one Wilma's to another Wilma's? | 02:09PM |
| 11 | MS. M. MILLER:  Whirlwide to Whirlwide. | 02:09PM |
| 12 | THE COURT:  I mean Whirlwide to Whirlwide.  Wait, | 02:09PM |
| 13 | wait.  I mean so that's not an issue? | 02:09PM |
| 14 | MR. MARTIN:  Well, I -- | 02:09PM |
| 15 | THE COURT:  Right, that's not an issue, that -- | 02:09PM |
| 16 | MS. M. MILLER:  Correct, that's not an issue. | 02:09PM |
| 17 | THE COURT:  Wait, wait.  The helicopter N9068F | 02:09PM |
| 18 | was sold from Whirlwide seller in one country to another | 02:09PM |
| 19 | Whirlwide seller -- another country.  Okay.  So what's -- | 02:09PM |
| 20 | what's the relevance of this data plate? | 02:09PM |
| 21 | MS. M. MILLER:  Okay. | 02:09PM |
| 22 | THE COURT:  Why do you need this? | 02:09PM |
| 23 | MS. M. MILLER:  No. 1, every registration number | 02:09PM |
| 24 | is associated with a specific serial number. | 02:10PM |
| 25 | THE COURT:  Yeah, but, I mean, I don't think | 02:10PM |

*Redirect - Khamvongsa*

1  that's an issue, though.                                              02:10PM

2           MS. M. MILLER:  No, it is an issue.  Listen to               02:10PM

3  this, Your Honor:  The Defendants represented to the FAA that         02:10PM

4  this helicopter, 9068F, with this serial No. 210293S, was its         02:10PM

5  helicopter sold from Hansen to Whirlwide, then from Whirlwide         02:10PM

6  to Whirlwide.  What that shows --                                     02:10PM

7           THE COURT:  A different serial number?                       02:10PM

8           MS. M. MILLER:  It shows a different serial                  02:10PM

9  number --                                                             02:10PM

10           THE COURT:  Yeah, okay.                                     02:10PM

11           MS. M. MILLER:  -- because it is consistent with           02:10PM

12  the government's theory of the case that the defendants              02:10PM

13  violated the law by creating and using serial numbers that did       02:10PM

14  not belong to the registration number.                               02:10PM

15           So the fact that Mr. Martin yesterday said,                02:10PM

16  "Let's look at Exhibit 9068F[sic], this registration number,         02:10PM

17  and what is the serial number," he had, this witness, identify       02:11PM

18  the serial number not once, but twice.                               02:11PM

19           THE COURT:  I got it.                                      02:11PM

20           MS. M. MILLER:  Yeah.                                      02:11PM

21           THE COURT:  I got it.                                      02:11PM

22           MR. MARTIN:  Your Honor, I did not have him                02:11PM

23  identify it, I do not believe, and I would ask that we check         02:11PM

24  that.                                                                02:11PM

25           MS. M. MILLER:  We should.                                 02:11PM

*Redirect - Khamvongsa*

```
 1              MR. MARTIN:  I do not believe that I had the          02:11PM

 2    witness identify it.                                            02:11PM

 3              MS. M. MILLER:  We should.                            02:11PM

 4              THE COURT:  Wait, let him finish.                     02:11PM

 5              MR. MARTIN:  She's been wrong before about what I     02:11PM

 6    said.                                                           02:11PM

 7              THE COURT:  Let him finish because he didn't          02:11PM

 8    interrupt you.  For once, you guys cut it out.  Go ahead.       02:11PM

 9              MR. MARTIN:  I -- this was not part of the,           02:11PM

10    quote, "two-hour part."  This was at the very beginning of my  02:11PM

11    cross-examination.                                              02:11PM

12              THE COURT:  I thought you guys were going to stop     02:11PM

13    about that two-hour stuff.                                      02:11PM

14              MR. MARTIN:  Well, I'm just trying to put it in       02:11PM

15    reference.  I'm not trying to criticize anyone, okay?  I'm      02:11PM

16    just trying to put it in reference to my cross-examination.     02:11PM

17    At the very beginning of the cross-examination --               02:11PM

18              THE COURT:  No, no.  The question is, You said        02:11PM

19    you never asked for the serial number.                         02:11PM

20              MR. MARTIN:  On this particular exhibit, yes,         02:11PM

21    Your Honor, I do not believe.                                   02:11PM

22              THE COURT:  All right.  Let's check it out.           02:11PM

23              MR. MARTIN:  It would be --                           02:11PM

24              THE COURT:  Let's check it out.  I never listen       02:12PM

25    to lawyers, I only listen to my court reporter.  Go ahead,      02:12PM
```

*Redirect - Khamvongsa*

```
 1    Veronica.  You want to help guide her?                          02:12PM

 2            (Whereupon, the reporter read back the requested        02:12PM

 3    portion.)                                                       02:15PM

 4               MR. MARTIN:  Your Honor, that was a portion of my    02:15PM

 5    question.  That's where I was talking about yesterday where I   02:15PM

 6    was showing that Whirlwide sold to Whirlwide.  And I stand      02:15PM

 7    corrected, I did say "serial number," obviously.               02:15PM

 8               THE COURT:  Okay.                                    02:15PM

 9               MR. MARTIN:  But I still say it's beyond the         02:15PM

10    scope in that the -- it was used to identify that particular    02:15PM

11    document.                                                       02:15PM

12               THE COURT:  Okay.  So I have a question.  The --     02:15PM

13    I can't remember, but was there prior testimony that these     02:15PM

14    data plates are what -- are what?  Are on the helicopters?      02:15PM

15    They're like --                                                 02:15PM

16               MS. M. MILLER:  Yes.                                 02:15PM

17               THE COURT:  Like...                                  02:15PM

18               MS. M. MILLER:  They're riveted --                  02:15PM

19               THE COURT:  Put into -- it's almost like a VIN       02:15PM

20    number.                                                         02:15PM

21               MS. M. MILLER:  Correct.  They're -- they are.      02:15PM

22    That's exactly correct.                                         02:15PM

23               THE COURT:  Well, I'm just trying to remember if    02:15PM

24    I recalled that somebody testified to that.                    02:15PM

25               MS. M. MILLER:  You do.  That was --                02:16PM
```

*Redirect - Khamvongsa*

```
 1                    THE COURT:  That was, like, weeks ago.      02:16PM
 2                    MS. M. MILLER:  Mr. Breitzman, the MD       02:16PM
 3      Helicopters --                                            02:16PM
 4                    THE COURT:  Right.  Okay, I remember -- okay.  I  02:16PM
 5      remember somebody testifying to that.                     02:16PM
 6                    MR. MARTIN:  There has been previous testimony  02:16PM
 7      about this --                                             02:16PM
 8                    THE COURT:  I'm sorry.  Mr. Martin, I don't think  02:16PM
 9      you're on a -- okay.  I'm sorry.  All right.  Hold on.  What  02:16PM
10      were you saying, Mr. Martin?                              02:16PM
11                    MR. MARTIN:  I was saying, I believe -- and I may  02:16PM
12      by mistaken, but I believe there's already been previous  02:16PM
13      testimony about this exhibit.                             02:16PM
14                    THE COURT:  About this data plate --        02:16PM
15                    MR. MARTIN:  Yes.                           02:16PM
16                    THE COURT:  -- in particular?               02:16PM
17                    MR. MARTIN:  I think Mr. Prozac[sic], and I may  02:16PM
18      be -- I may be incorrect, but one of the witnesses        02:16PM
19      testified --                                              02:16PM
20                    THE COURT:  I don't think his name is Prozac.  02:16PM
21                    MS. M. MILLER:  It's Prozik, Your Honor.    02:16PM
22                    MR. MARTIN:  Prozik.  Yes.                  02:16PM
23                    MS. M. MILLER:  I mean, you take Prozac, but  02:16PM
24      Prozik was the testifier.                                 02:16PM
25                    THE COURT:  He probably wants to change his name.  02:16PM
```

```
1          MS. M. MILLER:  Anyway, Your Honor, obviously        02:16PM
2     this is within the scope.  Obviously this is an important   02:16PM
3     piece of evidence for the government because it shows that the 02:16PM
4     serial number that was identified in the file folder that    02:16PM
5     Hansen Helicopters had for this particular helicopter was a  02:16PM
6     different serial number than what it represented to the FAA. 02:16PM
7     That is right in line with our allegations in this case, and 02:17PM
8     it right in line with the cross-examination.  So I would ask 02:17PM
9     permission for us to get the jury back and keep going.        02:17PM
10          THE COURT:  Yep.                                      02:17PM
11          MR. MARTIN:  Your Honor, they just used a chart,      02:17PM
12     Government's Chart 15 -- 1252-9.                             02:17PM
13          MS. MCCONWELL:  It's actually --                      02:17PM
14          THE COURT:  I'm sorry?                                02:17PM
15          MS. MCCONWELL:  I think --                            02:17PM
16          THE COURT:  You have to speak into the mic, I         02:17PM
17     can't hear you.  Are you talking to him?                    02:17PM
18          MS. MCCONWELL:  1252-18.                              02:17PM
19          THE COURT:  Okay.  What about it?  What about          02:17PM
20     that?                                                        02:17PM
21          MR. MARTIN:  Well, that -- that exhibit we just       02:17PM
22     had deals with this one and -- this exhibit, and the serial 02:17PM
23     number on there is the serial number that is 210293S, which is 02:17PM
24     what Ms. Miller wrote up there.                             02:17PM
25          MS. M. MILLER:  That's the whole point.  What was     02:17PM
```

*Redirect - Khamvongsa*

```
 1   represented to the FAA is the serial number is not the serial    02:17PM
 2   number in the file for 9068F when it was seized from Hansen       02:17PM
 3   Helicopters.                                                      02:18PM
 4            MR. MARTIN:  It's never been changed, Your Honor.         02:18PM
 5   The serial number on the helicopter has never been changed.       02:18PM
 6   That is in the file, but that serial number has never been        02:18PM
 7   represented as being a helicopter.                                02:18PM
 8            MS. M. MILLER:  Your Honor.                               02:18PM
 9            THE COURT:  I'm sorry.  Wait.  That serial number         02:18PM
10   is not -- is not -- is not together with N9068F?                  02:18PM
11            MR. MARTIN:  May I borrow that a second?  Sorry.          02:18PM
12   Okay.  Correct, Your Honor.  That serial -- that data plate       02:18PM
13   may have been found in that file, but all the records that the    02:18PM
14   government has introduced, including their summary chart,         02:18PM
15   reflect that the helicopter 9068F has consistently had the        02:18PM
16   serial number 210293S.  And that's reflected in their last        02:18PM
17   exhibit.                                                          02:19PM
18            MS. M. MILLER:  And the summary chart, Your              02:19PM
19   Honor, is a summary chart of the FAA records.  The FAA            02:19PM
20   records, Your Honor, are the data in the FAA that was given to    02:19PM
21   the FAA by Jon Walker.  Jon Walker certified under penalty of     02:19PM
22   being prosecuted that that serial number belonged to that        02:19PM
23   helicopter.  However, when we seized that file, we had a          02:19PM
24   baggie --                                                         02:19PM
25            THE COURT:  All right.  I got it.                         02:19PM
```

*Redirect - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | MS. M. MILLER:  Yes. | 02:19PM |
| 2 | THE COURT:  I figured it out. | 02:19PM |
| 3 | MS. M. MILLER:  Thank you.  Can we -- | 02:19PM |
| 4 | THE COURT:  Listen.  So it seems like you got | 02:19PM |

        1          MS. M. MILLER:  Yes.                              02:19PM

        2          THE COURT:  I figured it out.                    02:19PM

        3          MS. M. MILLER:  Thank you.  Can we --            02:19PM

        4          THE COURT:  Listen.  So it seems like you got    02:19PM

        5   this folder here, or file, that has been testified to as   02:19PM

        6   having been seized at the Hansen Helicopters Corporation.  02:19PM

        7          MS. M. MILLER:  Correct.                         02:19PM

        8          THE COURT:  And the documents indicate that the  02:19PM

        9   helicopter N9068F, at least the paperwork I'm reading here,  02:19PM

       10   you're right, is consistent with the 21 -- that particular  02:19PM

       11   serial number.  But we've got this data plate that's in a   02:20PM

       12   plastic baggie with a --                                02:20PM

       13          MS. M. MILLER:  Serial number.                   02:20PM

       14          THE COURT:  -- a serial number --                02:20PM

       15          MS. M. MILLER:  That's different.                02:20PM

       16          THE COURT:  -- with a magic marker over the      02:20PM

       17   plastic baggie that's, I guess, trying to say that this is --  02:20PM

       18   I'm not sure -- how do I know -- I guess the question is, How  02:20PM

       19   do I know that this --                                  02:20PM

       20          MR. MARTIN:  You don't.                          02:20PM

       21          MS. MCCONWELL:  You don't.                       02:20PM

       22          THE COURT:  Here's my question -- okay.  I'm     02:20PM

       23   sorry.  How do I know or how does the jury know that this data  02:20PM

       24   plate actually belongs to N9068F?  It's in a plastic baggie  02:20PM

       25   that says that, but how do we know it actually belongs --  02:20PM

*Redirect - Khamvongsa*

1    MS. M. MILLER:  It was in the plastic baggie that    02:20PM

2  said that in the file that had on its cover 9068F that was    02:20PM

3  seized from Hansen Helicopters pursuant to the search and    02:20PM

4  seizure.  And, Your Honor, if you look --    02:20PM

5    THE COURT:  Wait, wait.  This file?  This file?    02:20PM

6    MS. M. MILLER:  Yes.  If you look at this    02:21PM

7  everything in that file --    02:21PM

8    THE COURT:  Yeah.    02:21PM

9    MS. M. MILLER:  -- every single piece of paper    02:21PM

10  references 9068F.    02:21PM

11    THE COURT:  Right.    02:21PM

12    MS. M. MILLER:  Everything.    02:21PM

13    THE COURT:  No, I know that.  But my --    02:21PM

14    MS. M. MILLER:  That's how we know.    02:21PM

15    THE COURT:  No, I know.  But my question is, How    02:21PM

16  do I know or will the jury know that this data plate that has    02:21PM

17  this other serial number, which you believe is the original    02:21PM

18  serial number --    02:21PM

19    MS. M. MILLER:  Oh, I'm not saying that I believe    02:21PM

20  that's the original serial number.  May I tell you what I    02:21PM

21  believe based on the evidence?    02:21PM

22    THE COURT:  No, no.  Here's my question.  How    02:21PM

23  would the jury know that this data plate belongs to that    02:21PM

24  particular helicopter?    02:21PM

25    MS. M. MILLER:  It's in its file.    02:21PM

|  |  |  |
|---|---|---|
| 1 | THE COURT:  Wait, wait.  Okay. | 02:21PM |
| 2 | MS. M. MILLER:  The 9068F file, everything in | 02:21PM |
| 3 | there is related to 9068F. | 02:21PM |
| 4 | THE COURT:  The data plate is in the file. | 02:21PM |
| 5 | Right.  I got that. | 02:21PM |
| 6 | MS. M. MILLER:  And it's in the baggie with 9068F | 02:21PM |
| 7 | on there.  And if you look in that file, the defendants | 02:21PM |
| 8 | represented to the FAA that N9068F sunk to the bottom of the | 02:21PM |
| 9 | ocean after it was involved in an accident that killed | 02:22PM |
| 10 | Mr. Santos.  They also represented to the FAA that the | 02:22PM |
| 11 | airworthiness certificate and the registration for 9068F was | 02:22PM |
| 12 | lost.  None of that is true.  That file has the original | 02:22PM |
| 13 | airworthiness certificate.  It has the issued airworthiness | 02:22PM |
| 14 | certificate from Tim Cislo.  It has the registration paperwork | 02:22PM |
| 15 | that the defendants said was lost at sea.  It has proof that | 02:22PM |
| 16 | the helicopter was not lost at sea; it was retrieved.  And | 02:22PM |
| 17 | that is one of the helicopters that we found at Rogers' | 02:22PM |
| 18 | facility that the defendants were going to patch back together | 02:22PM |
| 19 | and put a new data plate on with a different serial number and | 02:22PM |
| 20 | continue operating it just like they have with the other | 02:22PM |
| 21 | helicopters in this case. | 02:23PM |
| 22 | THE COURT:  And essentially, if it was lost at | 02:23PM |
| 23 | sea, you wouldn't be having the data plate -- | 02:23PM |
| 24 | MS. M. MILLER:  Exactly.  It was a lie. | 02:23PM |
| 25 | THE COURT:  Well, okay. | 02:23PM |

*Redirect - Khamvongsa*

```
 1          MS. M. MILLER:  Fraud.  That's the whole thing      02:23PM

 2    we're trying to prove here, Your Honor.                   02:23PM

 3          THE COURT:  No, no, I'm trying to put the points    02:23PM

 4    together.  You guys know this better than I do.  Go ahead. 02:23PM

 5          MR. MARTIN:  Nothing she just said, Your Honor,     02:23PM

 6    goes to the -- to the scope of my cross-examination.  My -- 02:23PM

 7          MS. M. MILLER:  But --                              02:23PM

 8          MR. MARTIN:  May I finish, please?                  02:23PM

 9          THE COURT:  Yeah, let him finish.                   02:23PM

10          MR. MARTIN:  I mean, I never brought up anything    02:23PM

11    about lost at sea or helicopter -- or the airworthiness   02:23PM

12    certificate or anything else.                             02:23PM

13          THE COURT:  It sounds like what she's saying,       02:23PM

14    though --                                                 02:23PM

15          MR. MARTIN:  I know what she's saying.  I'm         02:23PM

16    sorry, Judge, I didn't mean to interrupt you.             02:23PM

17          THE COURT:  What she's saying is that the           02:23PM

18    representation of the serial number by Mr. Walker or whoever 02:23PM

19    submitted the paperwork as to that -- as to that helicopter 02:23PM

20    is -- is not the actual serial number.                    02:23PM

21          MR. MARTIN:  She's saying that, what's in your      02:24PM

22    hand --                                                   02:24PM

23          THE COURT:  She's saying this is the actual         02:24PM

24    serial number of the original.                            02:24PM

25          MR. MARTIN:  No.  She's saying that is not the      02:24PM
```

*Redirect - Khamvongsa*

1 actual serial number.  This number here, the 210293S, is the

2 actual serial number.  That's what I read yesterday.  I think

3 we're in agreement that that's the actual serial number.

4 She's -- what she's saying is, in the file, they found that

5 one, and then she's going to bootstrap from there that this is

6 a different helicopter.  I never went into that data plate.  I

7 never went into any information relating to that, Your Honor.

8 I specifically went into Whirlwide Guam selling this

9 helicopter to Whirlwide Vanuatu.

10             THE COURT:  Okay.  I'm sorry.  Wait.  So I'm just

11 looking at -- just let me get this in perspective.  The

12 affidavit of lost certificate says that on September 2, 2015,

13 N9068F, a Hughes serial No. 210293S was crashed at sea and

14 subsequently sank.  All right.  And then all of its

15 certificates of airworthiness, etc., were lost with the

16 aircraft.  So they're saying that that was the original

17 helicopter, but now -- now this is -- this is a new one?

18             MS. M. MILLER:  No.

19             THE COURT:  This is a new number that went in?

20             MS. M. MILLER:  Yes.  This shows the defendants'

21 intent to do what its modus operandi we've seen throughout

22 this case --

23             THE COURT:  Okay.  So the original one was

24 210293S --

25             MS. M. MILLER:  Correct.

The time stamps on the right margin read: 02:24PM (lines 1-11), 02:25PM (lines 12-25).

```
 1                    THE COURT:  -- originally attached to the      02:25PM

 2      original -- to the helicopter?                               02:25PM

 3                    MS. M. MILLER:  Correct.  Correct.             02:25PM

 4                    THE COURT:  In terms of original serial number. 02:25PM

 5                    MS. M. MILLER:  Correct.                       02:25PM

 6                    THE COURT:  This is like somebody made this new 02:25PM

 7      data plate?                                                  02:25PM

 8                    MS. M. MILLER:  Correct.                       02:25PM

 9                    THE COURT:  Okay.                              02:25PM

10                    MS. M. MILLER:  That's -- that's one of the overt 02:25PM

11      acts that's we've alleged; that's something that we         02:25PM

12      established repeatedly.                                      02:25PM

13                    MR. MARTIN:  I understand that's their theory.  02:25PM

14      That's not within the scope of my cross, Your Honor.  My cross 02:25PM

15      dealt with the transfer from Whirlwide Guam to Whirlwide     02:26PM

16      Vanuatu.  That serial number over there, I never had that   02:26PM

17      file.  I never used that file.  That file, I don't -- I have a 02:26PM

18      copy of it somewhere, but I -- I never questioned anything   02:26PM

19      about the file that she's trying to question him about.     02:26PM

20                    THE COURT:  Yeah, but her point is that -- that a 02:26PM

21      fraud was -- alleged fraud was committed.                   02:26PM

22                    MS. M. MILLER:  Correct.  And, Your Honor --   02:26PM

23                    MR. MARTIN:  They already presented --         02:26PM

24                    THE COURT:  Wait, wait.  You guys -- I just need 02:26PM

25      to talk -- just shh, everybody.  Go ahead.  You don't have to 02:26PM
```

1    talk to me.                                                      02:26PM

2              MS. M. MILLER:  Thank you.                             02:26PM

3              THE COURT:  Mr. Martin.                                02:26PM

4              MR. MARTIN:  Your Honor, I understand their            02:26PM

5    theory.  And I understand they've already presented this        02:26PM

6    evidence through another witness, not through --                02:26PM

7              THE COURT:  Mm-hmm.  So your objection now is          02:26PM

8    cumulative?                                                      02:26PM

9              MR. MARTIN:  Well, no.  My objection is his            02:26PM

10   testimony about it, No. 1, is beyond the scope.  And it could    02:26PM

11   be cumulative, but the major objection is, I never went into     02:26PM

12   the subject matter that she is trying to bring out now.          02:26PM

13   They've already -- as I said, they've already had another        02:27PM

14   witness testify about the very substance of this.                02:27PM

15             MS. M. MILLER:  He went into the serial number         02:27PM

16   more than once.                                                  02:27PM

17             THE COURT:  I got it.  Yeah, you don't have to --      02:27PM

18   yes, Ms. McConwell.                                              02:27PM

19             MS. MCCONWELL:  Your Honor, she's trying to            02:27PM

20   bootstrap this into the thing.  Finding a -- a data plate in a   02:27PM

21   baggie in that file when it's seized doesn't -- yeah, doesn't    02:27PM

22   mean that -- I mean --                                           02:27PM

23             MS. M. MILLER:  Goes to the weight.                    02:27PM

24             MS. MCCONWELL:  We don't know why that was in          02:27PM

25   that file.                                                       02:27PM

---

*Redirect - Khamvongsa*

```
 1              MS. M. MILLER:  Goes to the weight.              02:27PM

 2              THE COURT:  Okay --                              02:27PM

 3              MS. MCCONWELL:  And it wasn't affixed to the     02:27PM

 4    helicopter.                                                02:27PM

 5              MS. M. MILLER:  Goes to the weight.              02:27PM

 6              THE COURT:  All right.  I agree.  I think it does 02:27PM

 7    go to the weight of the evidence.  I think you can guys can 02:27PM

 8    argue this away.  First of all, it's in a little trash -- a 02:27PM

 9    little plastic baggie, and it's not like it's got, you know -- 02:27PM

10    what do you call it?  Permanent identifying numbers on the 02:27PM

11    date plate itself.  Like, what is the exact helicopter; does 02:27PM

12    it say?                                                    02:27PM

13              MS. M. MILLER:  There are.                       02:27PM

14              MS. MCCONWELL:  The serial number does not --    02:27PM

15              THE COURT:  No, no.  There is a serial number    02:27PM

16    here.  I'm just saying on the data plate itself.  Might be in 02:28PM

17    another record, I'm guessing.  But on the data plate itself, 02:28PM

18    it doesn't say N9 --                                       02:28PM

19              MS. M. MILLER:  Correct.                         02:28PM

20              THE COURT:  Okay.  That's what I'm saying.       02:28PM

21              MS. M. MILLER:  Correct.                         02:28PM

22              THE COURT:  So to -- to connect it to that       02:28PM

23    helicopter by virtue of, No. 1, it's in the file, and you  02:28PM

24    can -- you can make an inference that's what they're going to 02:28PM

25    try to argue.                                              02:28PM
```

```
1              MS. M. MILLER:  Right.                        02:28PM

2              THE COURT:  You guys can argue away just as    02:28PM

3    strongly that, hey, it is in a little plastic baggie, somebody  02:28PM

4    could have just put it on a -- take the little black marker  02:28PM

5    and put down the -- the helicopter number.                02:28PM

6              So -- and so -- okay.  So in terms of beyond the  02:28PM

7    scope, the Court will overrule the objection and allow the  02:28PM

8    question.                                                 02:28PM

9              MS. M. MILLER:  May I have the file back, Your  02:28PM

10   Honor?                                                    02:28PM

11             THE COURT:  Sure.  Now I know a lot about data  02:28PM

12   plates.  Okay.  Let's go.  Let's take -- let me let my staff  02:28PM

13   take a ten-minute recess and then we'll come back.        02:28PM

14             MS. M. MILLER:  Yes, Your Honor.                02:28PM

15             THE COURT:  Let's try to get this witness done  02:28PM

16   with, team.                                               02:28PM

17             MS. M. MILLER:  If we have to keep going back to  02:28PM

18   the transcript...                                         02:28PM

19             MS. MCCONWELL:  So, Your Honor --               02:29PM

20             THE COURT:  Yes?  The Court is overruling the    02:29PM

21   objection at this time.  I'm going to allow her to -- to ask  02:29PM

22   questions regarding that.                                 02:29PM

23             MS. MCCONWELL:  I understand.                   02:29PM

24             THE COURT:  But you guys can make your argument  02:29PM

25   to the jury that, well, it just doesn't hold true.        02:29PM
```

*Redirect - Khamvongsa*

```
 1              MS. MCCONWELL:  Okay.  My last one is, it's not          02:29PM
 2   relevant to anything that's in Count 99 through 110, which is       02:29PM
 3   what this --                                                        02:29PM
 4              MS. S. MILLER:  Conspiracy.                              02:29PM
 5              MS. MCCONWELL:  -- this witness is about, even if        02:29PM
 6   you look at their paragraphs.                                       02:29PM
 7              THE COURT:  Okay.  Very well.  The Court will            02:29PM
 8   overrule the objection.  Ten minutes, Counsels.  And I will        02:29PM
 9   make my ruling, too, with regard to the --                         02:29PM
10              MS. M. MILLER:  The two pages on the bank               02:29PM
11   records?                                                            02:29PM
12              THE COURT:  Yes, yes.  The Court has been               02:29PM
13   reviewing cases, my law clerks have been looking at it            02:29PM
14   carefully.  So the Court is inclined to allow that questioning    02:29PM
15   in.                                                                02:29PM
16              MS. M. MILLER:  Yes, Your Honor.                        02:29PM
17              THE COURT:  And I'll cite to some of the cases         02:29PM
18   that we've looked at in the different circuits.                    02:29PM
19              MS. M. MILLER:  Yes, Your Honor.                        02:29PM
20              THE COURT:  So that means that he can be called        02:29PM
21   back.  But why don't we finish --                                  02:29PM
22              MS. M. MILLER:  I don't have to call him back          02:30PM
23   now, I'll just ask while he's on here.                             02:30PM
24              THE COURT:  Oh, that's right.  Okay.  That's           02:30PM
25   fine.  But are you almost done with him?                           02:30PM
```

*Redirect - Khamvongsa*

1   MS. M. MILLER:  Yeah.                                    02:30PM

2        THE COURT:  Okay.  Let's go ten minutes.  Staff,    02:30PM

3   you guys can, you know, go use the restroom.             02:30PM

4        (Recess taken at 2:30 p.m.)                         02:30PM

5        (Back on the record at 2:48 p.m.)                   02:48PM

6        THE COURT:  Okay.  We'll -- everybody ready?        02:48PM

7   We'll call in the jury?                                  02:49PM

8        MS. M. MILLER:  Yes, Your Honor.                    02:49PM

9        THE COURT:  All right.  Okay.  While we're          02:49PM

10  waiting for the jury, let me just make -- let me just tell  02:49PM

11  you, the Court has reviewed some of the cases, and let me just  02:49PM

12  say, the Court finds that Paragraph 127 of the Second   02:49PM

13  Superseding Indictment which contains the language, quote,  02:50PM

14  "numerous shell corporations of defendants, including but not  02:50PM

15  limited to," dot dot dot, "in conjunction with the discovery  02:50PM

16  in this case has given sufficient notice to defendants that  02:50PM

17  they would have to defend against the theory of conspiracy to  02:50PM

18  commit wire fraud that included Pacific Spotters."      02:50PM

19       The Court further finds that pursuant to Federal    02:50PM

20  Rule of Evidence 104(b), that the jury could reasonably find  02:50PM

21  that Pacific Spotters is an alter ego of Defendant Hansen  02:50PM

22  Helicopters, and as such, the relevancy objection to    02:50PM

23  Exhibit G-2939082[sic] and 3 -- 83 is overruled.  The United  02:50PM

24  States' motion to allow redacted G-2939, Pages 82 and 83 ECF  02:50PM

25  No. 1699 is denied as moot.  That will be the Court's order.  02:50PM

*Redirect - Khamvongsa*

1    And the Court will -- with regard to the cases, I    02:50PM

2  looked at *United States v. Cardel*, Fifth Circuit, No. 896051;    02:50PM

3  *U.S. v. McGill*, 359 F. App'x 56, 2010, U.S. App. Lexis 34.    02:51PM

4  And that's M-C-G-I-L-L; *United States v. Williams*, United    02:51PM

5  States Court of Appeals from the Eleventh Circuit; 785 F.    02:51PM

6  App'x 6922019 U.S. App. Lexis 25073.    02:51PM

7    And finally -- okay, please rise for the jury.    02:51PM

8    (Jury in at 2:51 p.m.)    02:51PM

9    THE COURT:  *United States v. Stavroulakis*,    02:51PM

10  S-T-A-V-R-O-U-L-A-K-I-S, U.S. Court of Appeals for the Second    02:51PM

11  Circuit, 952 F. 2d 686 (1992), U.S. App Lexis 165; and *U.S. v.*    02:51PM

12  *Johnson*, U.S. District Court for the District of Utah,    02:51PM

13  Reporter 2015 U.S. District Lexis 145102.    02:51PM

14    Okay.  Please be seated, ladies and gentlemen.    02:52PM

15    That will be the Court's order.    02:52PM

16    Okay.  We'll continue on.  You may proceed.    02:52PM

17    MS. M. MILLER:  Yes, Your Honor.  Thank you.    02:52PM

18  BY MS. M. MILLER: (CONTINUING)    02:52PM

19    Q.   Special Agent Khamvongsa, can I refer you back to the    02:52PM

20  file folder for N9068F that was seized from Hansen Helicopters    02:52PM

21  facility here in Guam.    02:52PM

22    A.   Ms. Miller, the file is still up there.    02:52PM

23    Q.   Let me hand it to you.    02:52PM

24    MS. M. MILLER:  May I approach the witness, Your    02:52PM

25  Honor?    02:52PM

*Redirect - Khamvongsa*

1    THE COURT:  (Nodded head.)                    02:52PM

2         THE WITNESS:  Thank you.                 02:52PM

3  BY MS. M. MILLER: (CONTINUING)                  02:52PM

4    Q.   Sir, can you tell the members of the jury if you see   02:52PM

5  a baggie in that file with 9068F on it.         02:52PM

6    A.   Yes.                                      02:52PM

7    Q.   And is there a serial number on a data plate in that   02:52PM

8  baggie for 9068F?                               02:52PM

9    A.   Yes.                                      02:52PM

10   Q.   Can you read the serial number that is on that -- in   02:52PM

11 that baggie.                                    02:53PM

12   A.   700239S.                                  02:53PM

13   Q.   Is there also an affidavit in that file regarding   02:53PM

14 9068F?                                          02:53PM

15   A.   Yes.                                      02:53PM

16   Q.   What does that affidavit indicate?       02:53PM

17   A.   It's an affidavit of lost certificate.   02:53PM

18   Q.   And what does it say?                     02:53PM

19   A.   It says, "This is to certify that Whirlwide   02:53PM

20 Helicopters, Inc., does not possess the aircraft registration   02:53PM

21 certificate of N9068F, a Hughes 369HS Serial No. 210293S,   02:53PM

22 issued on May 28th, 2008, or any aircraft registration   02:53PM

23 certificate for N9068F because of the following circumstances:   02:53PM

24 On September 2nd, 2015, N9068F, a Hughes 369HS Serial   02:53PM

25 No. 210293S, crashed at sea and subsequently sank.  The   02:54PM

*Redirect - Khamvongsa*

1  aircraft's registration and certificate of airworthiness were

2  lost with the aircraft."

3       Q.   The affidavit is dated what date?

4       A.   March 4th, 2016.

5       Q.   And it says the aircraft registration -- the

6  airworthiness certificate first; correct?

7       A.   Certificate of airworthiness; yes.

8       Q.   The registration?

9       A.   Yes.

10      Q.   And the aircraft itself, right?

11      A.   Yes.

12      Q.   All lost at sea; is that correct?

13      A.   Yes.

14      Q.   Can you tell the members of the jury, do you see the

15  airworthiness certificate in that file, sir?

16      A.   Yes, it's right here.

17      Q.   So is it lost at sea?

18      A.   No.

19      Q.   Do you see the registration in that file, sir?

20      A.   Yes, it's right here.

21      Q.   So is it lost at sea?

22      A.   No.

23      Q.   And even though they say that the aircraft sunk to

24  the bottom of the ocean, do you see evidence that that

25  aircraft was also not lost at sea?

1    A.    Yes.                                                      02:55PM

2    Q.    What do you see?                                          02:55PM

3    A.    I see the data plate that has the same serial number      02:55PM

4    of 2102934 -- 34S, as well as the work being done at Vanguard   02:55PM

5    Aviation, which is listed -- which is right here in this file.   02:55PM

6    Q.    Yesterday, Mr. McCon -- Mr. Martin also asked you to       02:55PM

7    read to the jury a registration for an aircraft that was        02:56PM

8    identified as N74AM, and I would like you to look at            02:56PM

9    Exhibit 366, Page 23.  Do you see that, sir?                    02:56PM

10   A.    Yes.                                                      02:56PM

11   Q.    Do you remember Mr. Martin asking you about that          02:56PM

12   yesterday?                                                      02:57PM

13   A.    Yes.                                                      02:57PM

14   Q.    And what company --                                      02:57PM

15         MS. M. MILLER:  Ms. Miller, if you go down to the         02:57PM

16   next section.                                                   02:57PM

17   BY MS. M. MILLER:  (CONTINUING)                                 02:57PM

18   Q.    What company is identified as the registered owner of     02:57PM

19   this particular aircraft?                                       02:57PM

20   A.    Can you scroll down, please?                              02:57PM

21   Q.    She's going to do that in a moment.                       02:57PM

22   A.    Okay.  Fling Air, Inc.                                    02:57PM

23   Q.    And what's the address of Fling Air, Inc?                 02:57PM

24   A.    PO Box 9099, Tamuning, Guam, the same address as          02:57PM

25   Hansen Helicopters.                                             02:57PM

*Redirect - Khamvongsa*

1    Q.   And remember, yesterday and today, you saw that      02:57PM

2    Exhibit 829 shows Fling Air, Inc., as being a Vanuatu company?    02:57PM

3    A.   Yes.      02:57PM

4    Q.   Okay.  Now, what is the serial number of N74AM on      02:57PM

5    this document?      02:57PM

6    A.   1250790S.      02:57PM

7    Q.   All right.  Now, I would like you to look at what was      02:58PM

8    previously entered into evidence as Government's Exhibit 204.    02:58PM

9    And, to remind the jury, this was already admitted, and I'm    02:58PM

10   going to wait until it comes up for the jury.      02:58PM

11        Okay.  And what is the subject of this e-mail?      02:58PM

12   A.   E-mailing Hansen Helicopters aircraft registrations,    02:58PM

13   October 20th, 2015.      02:59PM

14   Q.   Now, I'd like you to go to Page 9 of Exhibit 204,      02:59PM

15   please.  And could you tell the members of the jury whether    02:59PM

16   you see on Page 9 of Exhibit 204 a reference to Fling Air and    02:59PM

17   the aircraft identified as N74AM.  And Ms. Miller will hone in    02:59PM

18   on that page for you.      02:59PM

19        MS. M. MILLER:  And it's on Row 79, Ms. Miller.      02:59PM

20   Page 9, Row 79.  Is there a way to pull that out even further?    02:59PM

21        THE WITNESS:  I see it.      03:00PM

22        MS. M. MILLER:  I can't see it.  (Laughing.)  Can      03:00PM

23   we hone in on that more, or is that the best we can do?  There    03:00PM

24   we go.  Okay.      03:00PM

25   BY MS. M. MILLER:  (CONTINUING)      03:00PM

 1    Q.   So do you see Row 79, Special Agent Khamvongsa?      03:00PM

 2    A.   Yes.  If I may, can I mark it just so --            03:00PM

 3    Q.   I'm sorry?                                          03:00PM

 4    A.   May I mark it?                                      03:00PM

 5    Q.   Yes, please.  If you could just circle it to make it  03:00PM

 6  easier to see.                                             03:00PM

 7    A.   (Witness marked the exhibit.)                       03:00PM

 8         Fling Air is right there where the yellow circle is.  03:00PM

 9    Q.   Yes.  Perfect.  And can you also circle the N       03:00PM

10  registration number for Fling Air on this document?       03:00PM

11    A.   (Witness complied.)                                 03:00PM

12    Q.   There we go.  And can you also circle the serial    03:00PM

13  number associated with that N number?                     03:00PM

14    A.   (Witness complied.)                                 03:00PM

15    Q.   And is that consist with what I wrote on the board  03:00PM

16  that the Defendant Jon Walker represented to the FAA was the  03:01PM

17  serial number for this particular aircraft?               03:01PM

18    A.   Yes.                                                03:01PM

19    Q.   Now I'd like you to look at Page 10 of this exhibit,  03:01PM

20  Hansen Helicopters registration fleet information.  And when  03:01PM

21  we get to Page 10, I'd like to bring your attention to    03:01PM

22  Row 161.  Thank you.  Do you see N74AM?                    03:01PM

23    A.   Yes.                                                03:02PM

24    Q.   And could you read that, what it says there.  First  03:02PM

25  of all, the title of this section of the Hansen Helicopters  03:02PM

1    registration information for their aircraft is entitled what?    03:02PM

2        A.    "Problem Children."    03:02PM

3        Q.    And now can you read what is on this document    03:02PM

4    regarding N74AM?    03:02PM

5        A.    "This aircraft was changed into N74AM.  Have    03:02PM

6    paperwork for recertification of new air frame."    03:02PM

7        Q.    What is the serial number that is now going to be    03:02PM

8    associated with N74AM because it needed a new air frame and it    03:02PM

9    was now going to be associated with a different serial number?    03:02PM

10       A.    590102E.    03:02PM

11       Q.    Do you recall the testimony of Mr. Breitzman?    03:03PM

12       A.    I do recall his -- his testimony.    03:03PM

13       Q.    How many serial numbers can be associated with a    03:03PM

14   helicopter?    03:03PM

15       A.    One; it's like a car VIN.    03:03PM

16       Q.    All right.  Sir, now let's talk about another    03:03PM

17   helicopter that Mr. Martin questioned you about, and that is    03:03PM

18   N454S.  Do you recall those questions?    03:03PM

19       A.    I recall being questioned.    03:03PM

20       Q.    Okay.  What counts does N454S pertain to?    03:03PM

21       A.    Counts 100 and 102.    03:03PM

22       Q.    Okay.  And let's look at the contract for that    03:03PM

23   particular helicopter.  And that was entered into evidence as    03:04PM

24   Exhibit 2900-3280.    03:04PM

25              MS. M. MILLER:  And, Ms. Miller, can you hone in    03:04PM

1      on the top portion of that contract, please.                03:04PM

2      BY MS. M. MILLER:  (CONTINUING)                              03:04PM

3          Q.   Who is identified as the lessor of this helicopter? 03:04PM

4          A.   Wilma's Flight Service, Inc.                        03:04PM

5          Q.   Do you remember who the registered owner of the     03:04PM

6      helicopter was according to what Mr. Walker sent to the FAA? 03:04PM

7          A.   I believe it was Eddie's or -- Eddie's, and it      03:04PM

8      changed over to Dave's.                                      03:04PM

9          Q.   Well, let's make sure it's absolutely correct.      03:04PM

10              MS. M. MILLER:  Ms. Miller, could we go to           03:04PM

11     Exhibit 1252, the registration information regarding this    03:04PM

12     helicopter, N454S.                                           03:04PM

13     BY MS. M. MILLER:  (CONTINUING)                              03:05PM

14         Q.   Okay.  So tell the members of the jury, please, who 03:05PM

15     is the first registered owner of this helicopter?            03:05PM

16         A.   Hansen Helicopters, Inc.                            03:05PM

17         Q.   And then who is the registered owner after that?    03:05PM

18         A.   Eddie Air, Inc.                                     03:05PM

19         Q.   And then who is the registered owner after that?    03:05PM

20         A.   Dave's Helicopter Service.                          03:05PM

21         Q.   And who is the individual who was registering and   03:05PM

22     reregistering this helicopter with the FAA under all these   03:05PM

23     different names?                                             03:05PM

24         A.   Defendant Jon Walker.                               03:05PM

25         Q.   When this helicopter was leased by Wilma's Flight   03:06PM

*Redirect - Khamvongsa*

1    Service and the money came in, what account was the money          03:06PM

2    deposited into?                                                     03:06PM

3        A.   Caledonian Agency, Inc., bank account.                    03:06PM

4        Q.   When you traced the money from Caledonian Agency,         03:06PM

5    where did it go after it left the bank account of Caledonian        03:06PM

6    Agency?                                                             03:06PM

7        A.   It went into Hansen Northern Helicopters' bank            03:06PM

8    account --                                                          03:06PM

9            MR. MARTIN:  Your Honor, may I enter an                    03:06PM

10   objection?  We're going way beyond cross.  I never mentioned        03:06PM

11   bank accounts, I didn't go into any type of money on this.         03:06PM

12   This is way beyond -- this is just a re -- re-examination.          03:07PM

13           MS. M. MILLER:  May I respond?                             03:07PM

14           THE COURT:  Wait just a minute.  Any other                 03:07PM

15   objections?                                                         03:07PM

16           MR. MARTIN:  Cumulative.                                   03:07PM

17           THE COURT:  Yeah.  Okay.  Beyond -- well, first            03:07PM

18   of all, beyond the scope.  And then cumulative?  So is it --        03:07PM

19           MR. MARTIN:  Well, he's redoing what he's already          03:07PM

20   done.  I mean, this is his direct examination, again.               03:07PM

21           MS. M. MILLER:  Mr. Martin cross-examined this             03:07PM

22   witness on these counts.  And Mr. Martin, in cross-examining        03:07PM

23   the witness on these counts, brought to the witness's               03:07PM

24   attention and to the jury that this helicopter was registered,      03:07PM

25   it was leased, and didn't the tuna boat companies get what          03:07PM

*Redirect - Khamvongsa*

```
 1    they bargained for.                                      03:07PM

 2              Mr. McConwell brought in Defense Exhibit 66,    03:07PM

 3    which was an excerpt of the GAO report showing that one of the  03:07PM

 4    ways in which companies --                               03:07PM

 5              THE COURT:  You don't have to explain it.  I know  03:07PM

 6    what it said.                                            03:07PM

 7              MS. M. MILLER:  Okay.                           03:07PM

 8              THE COURT:  Go ahead.  And therefore...         03:07PM

 9              MS. M. MILLER:  And therefore, this is relevant,  03:07PM

10    Your Honor, to show the stacked ownership, complex business  03:07PM

11    relationships --                                         03:08PM

12              THE COURT:  You're trying to show what the GAO  03:08PM

13    report shows?                                            03:08PM

14              MS. M. MILLER:  Yes.  It ties into -- first of  03:08PM

15    all, it's within the scope of Mr. Martin questioning about  03:08PM

16    these counts, because he did question him about these counts.  03:08PM

17              THE COURT:  Uh-huh.                             03:08PM

18              MS. M. MILLER:  Secondly, it is also within the  03:08PM

19    scope of Mr. McConwell's questioning about --            03:08PM

20              THE COURT:  I got it.  All right.  Further?     03:08PM

21              MR. MARTIN:  Your Honor, I never questioned him  03:08PM

22    about any bank accounts.  And that's where she's going now.  03:08PM

23    Where did it go from this account to that account, I never  03:08PM

24    went into that.                                          03:08PM

25              MS. M. MILLER:  The whole point of --           03:08PM
```

|     |                                                              |         |
| --- | ------------------------------------------------------------ | ------- |
| 1   | MR. MARTIN:  And I don't think Mr. McConwell did             | 03:08PM |
| 2   | either.                                                      | 03:08PM |
| 3   | THE COURT:  Okay.                                            | 03:08PM |
| 4   | MS. M. MILLER:  If we need to go back, we -- we              | 03:08PM |
| 5   | certainly can, Your Honor.  But, he did question him regarding | 03:08PM |
| 6   | these counts, and the whole point of the wire fraud is --    | 03:08PM |
| 7   | MR. MARTIN:  Not the counts.                                 | 03:08PM |
| 8   | MS. M. MILLER:  -- part of the underlying --                 | 03:08PM |
| 9   | THE COURT:  No, she's saying --                              | 03:08PM |
| 10  | MR. MARTIN:  I'm saying "account," bank accounts,            | 03:08PM |
| 11  | not the counts of the indictment.                            | 03:08PM |
| 12  | THE COURT:  Bank accounts.                                   | 03:08PM |
| 13  | MS. M. MILLER:  Wire fraud requires -- he                    | 03:08PM |
| 14  | questioned --                                                | 03:08PM |
| 15  | THE COURT:  No, he's saying he never talked about            | 03:08PM |
| 16  | bank accounts.                                               | 03:08PM |
| 17  | MS. M. MILLER:  I know what he's saying.  But                | 03:08PM |
| 18  | what I'm saying --                                           | 03:08PM |
| 19  | THE COURT:  But did they talk about bank                     | 03:08PM |
| 20  | accounts?                                                    | 03:08PM |
| 21  | MS. M. MILLER:  They talked about the money with             | 03:08PM |
| 22  | the wire fraud which goes into accounts.  You don't have wire | 03:08PM |
| 23  | fraud without it going into a bank account.                  | 03:09PM |
| 24  | THE COURT:  Which monies, though?  Which                     | 03:09PM |
| 25  | monies -- what was it, the monies that the tuna boats        | 03:09PM |

*Redirect - Khamvongsa*

```
 1   received?                                          03:09PM

 2             MS. M. MILLER:  Correct.                 03:09PM

 3             THE COURT:  Okay.  Yes, Mr. Martin?      03:09PM

 4             MR. MARTIN:  Your Honor, I never talked about   03:09PM

 5   bank accounts.  I did not go into the depth that she's trying   03:09PM

 6   to go back into, and I stand on my objection that it's   03:09PM

 7   cumulative.                                        03:09PM

 8             THE COURT:  All right.  The Court has considered   03:09PM

 9   the objections and the proffer, and the Court will overrule   03:09PM

10   the objections and allow.  Go ahead.  You may proceed.   03:09PM

11   BY MS. M. MILLER: (CONTINUING)                     03:09PM

12      Q.   Special Agent Khamvongsa, after the money was   03:09PM

13   transferred to Hansen Northern, where was it transferred then?   03:09PM

14      A.   It was transferred into Walker Agricola, LLC.   03:09PM

15      Q.   And who is the sole owner of Walker Agricola?   03:09PM

16      A.   The sole signer on that account is Jon Walker.   03:09PM

17      Q.   Now let's look at Exhibit 66 which was a defense   03:09PM

18   exhibit that Mr. McConwell entered into evidence yesterday.   03:09PM

19   And could you go to the next page, please.  Thank you.   03:10PM

20             MS. M. MILLER:  And then, Ms. Miller, could you   03:10PM

21   please highlight potential abuse where it says "shell   03:10PM

22   companies" and focus in on that, pull that out, please.   03:10PM

23   BY MS. M. MILLER: (CONTINUING)                     03:10PM

24      Q.   And, Special Agent Khamvongsa, can you read the part   03:10PM

25   that says "shell companies."                       03:10PM
```

*Redirect - Khamvongsa*

1    THE COURT:  Okay.  Hold on.  I'm sorry.  Hold on.    03:10PM

2  Carmen is checking something.  Hold on.  Fine.  You may    03:10PM

3  proceed.  Go ahead.  Sorry.    03:11PM

4    MS. M. MILLER:  Thank you, Your Honor.    03:11PM

5  BY MS. M. MILLER:  (CONTINUING)    03:11PM

6    Q.   Special Agent Khamvongsa, could you please read this    03:11PM

7  to the jury?    03:11PM

8    A.   Yes.  "Potential abuse.  Shell companies are    03:11PM

9  vulnerable to abuse when used to conceal beneficial owner    03:11PM

10  identity for illicit purposes.  According to the Federal    03:11PM

11  Aviation Administration, FAA, officials, some aircraft    03:11PM

12  registrations have stacked company ownership.  When shell    03:11PM

13  companies own each other, such ownership arrangement can be    03:11PM

14  used for illicit purposes to conceal the identity of    03:11PM

15  foreign-based beneficial owners and can be difficult to    03:11PM

16  detect."    03:12PM

17    Q.   Special Agent Khamvongsa, when we look at    03:12PM

18  Exhibit 829, do you see stacked ownership?    03:12PM

19    A.   Yes.    03:12PM

20    Q.   When we look at this transaction involving this    03:12PM

21  helicopter, 454S, do we see one, two, three, four, five, six,    03:12PM

22  seven different entities involved in one lease of one    03:12PM

23  helicopter?    03:12PM

24    A.   Yes.    03:12PM

25    Q.   Despite that, who initially registered the    03:12PM

| | | |
|---|---|---|
| 1 | helicopter? | 03:12PM |
| 2 | A.   Jon Walker. | 03:12PM |
| 3 | Q.   Who eventually receives the money from the lease? | 03:12PM |
| 4 | A.   Jon Walker. | 03:12PM |
| 5 | Q.   Why seven different corporations from different | 03:12PM |
| 6 | countries in between Jon Walker to Jon Walker? | 03:12PM |
| 7 | MR. MARTIN:  Objection, Your Honor; speculation. | 03:12PM |
| 8 | THE COURT:  All right.  Sustained. | 03:12PM |
| 9 | BY MS. M. MILLER: (CONTINUING) | 03:12PM |
| 10 | Q.   All right.  Let's go now to another topic that was | 03:12PM |
| 11 | covered by Mr. Martin yesterday.  Actually, we're going to go | 03:12PM |
| 12 | to an exhibit that was introduced previously, and it's | 03:12PM |
| 13 | Exhibit 2939.  Okay? | 03:13PM |
| 14 | MS. M. MILLER:  And, Ms. Miller, can you bring | 03:13PM |
| 15 | that up, please? | 03:13PM |
| 16 | BY MS. M. MILLER: (CONTINUING) | 03:13PM |
| 17 | Q.   Special Agent Khamvongsa, do you see Exhibit 2939? | 03:13PM |
| 18 | A.   Yes. | 03:13PM |
| 19 | Q.   Okay.  And this exhibit was entered into evidence | 03:13PM |
| 20 | previously with the exception of the last two pages.  First of | 03:13PM |
| 21 | all, can you tell the members of the jury, what is this | 03:13PM |
| 22 | document? | 03:13PM |
| 23 | A.   This is a member application with Community First | 03:13PM |
| 24 | Guam Federal Credit Union, and it's for Limey Air Service, | 03:14PM |
| 25 | Inc. | 03:14PM |

*Redirect - Khamvongsa*

1    Q.   What's the address for Limey Air Services, Inc., that          03:14PM

2    you see there?                                                      03:14PM

3    A.   There's two.  There is the mailing address of PO              03:14PM

4    Box 9099, Tamuning, Guam.  Then the street location is Lot         03:14PM

5    51584, No. 521 East Harmon Industrial, Harmon, Guam.               03:14PM

6    Q.   Who else shares that address?                                  03:14PM

7    A.   Hansen Helicopters.                                            03:14PM

8    Q.   Now, Special Agent Khamvongsa, when this account was          03:14PM

9    opened, what happened just two months earlier?                     03:14PM

10    A.   The first -- the first indictment took place.                03:14PM

11    Q.   When were the defendants indicted?                            03:14PM

12    A.   May of 2018.                                                  03:14PM

13    Q.   When was this account opened?                                 03:14PM

14    A.   July 26, 2018.                                                03:15PM

15    Q.   Did the defendants enter into a transaction to sell          03:15PM

16    their helicopters to another corporate entity after the          03:15PM

17    indictment?                                                        03:15PM

18    A.   Yes.                                                          03:15PM

19    Q.   Let's look at Exhibit 3003-15.                                03:15PM

20         MS. M. MILLER:  And this has not been entered               03:15PM

21    into evidence yet, Your Honor.                                    03:15PM

22         THE COURT:  Okay.  Yes, Ms. McConwell?                      03:15PM

23         MS. MCCONWELL:  I object to the aggregate of                03:15PM

24    defendants.  She needs to identify what defendant -- which       03:15PM

25    defendants she's --                                               03:15PM

1    THE COURT:  Okay, that's fair enough.  Yeah,    03:15PM

2  which --                                            03:15PM

3    MS. M. MILLER:  Jon Walker.                       03:15PM

4    THE COURT:  Okay, very well.  Please do that when 03:15PM

5  you question the witness.                            03:15PM

6  BY MS. M. MILLER:  (CONTINUING)                      03:15PM

7    Q.   Let's look at Exhibit 3003-15, it's going to come up  03:15PM

8  on your screen.  Do you recognize this document, sir?  03:16PM

9    A.   Yes.                                          03:16PM

10    Q.   Is it a true and correct copy of the information that  03:16PM

11  you obtained from and regarding Pacific Spotters?   03:16PM

12    A.   Yes.                                          03:16PM

13    MS. M. MILLER:  Your Honor, at this time, we      03:16PM

14  would offer this into evidence.                      03:16PM

15    THE COURT:  Counsel?                               03:16PM

16    MS. MCCONWELL:  Well, Your Honor, this was --      03:16PM

17  this was obtained and produced on February 11th, 2022.  And  03:16PM

18  Mr. Khamvongsa -- Agent Khamvongsa --                03:16PM

19    MS. M. MILLER:  Your Honor, this is a speaking     03:16PM

20  objection.  What is the legal basis?                 03:16PM

21    THE COURT:  I'm sorry.  What's the legal basis     03:16PM

22  then?                                                03:16PM

23    MS. MCCONWELL:  Well, the witness has just         03:16PM

24  testified that he relied on this as part of his investigation.  03:16PM

25  However, this was produced, according to the government, after  03:16PM

*Redirect - Khamvongsa*

1   his investigation.  So if he's indicating that he relied --      03:16PM

2   used this to rely on his investigation, it doesn't            03:16PM

3   substantiate --                                               03:16PM

4              THE COURT:  It didn't exist?                        03:16PM

5              MS. M. MILLER:  I did not ask him that question,    03:16PM

6   so I'm really not sure where that came from.  And this has    03:17PM

7   already been argued.  The relevance, the foundation, etc.     03:17PM

8   This Court has already ruled on it.                           03:17PM

9              THE COURT:  Yeah, but I think it's a different      03:17PM

10  objection.                                                    03:17PM

11             MS. M. MILLER:  I'm really not sure what that       03:17PM

12  objection is, Your Honor --                                   03:17PM

13             THE COURT:  Why don't you rephrase?                 03:17PM

14             MS. M. MILLER:  -- because I didn't ask the         03:17PM

15  witness that question.                                        03:17PM

16             THE COURT:  Well, let's rephrase the question.      03:17PM

17  Let me hear the question again or --                          03:17PM

18  BY MS. M. MILLER: (CONTINUING)                                03:17PM

19     Q.   Special Agent Khamvongsa, I had asked you just        03:17PM

20  previously did you see evidence that there was a sale or      03:17PM

21  transfer of the helicopters from one company to another.     03:17PM

22     A.   Yes.                                                  03:17PM

23     Q.   Okay.  Is this one piece of evidence that supports    03:17PM

24  your knowledge of that sale?                                  03:17PM

25     A.   Yes.                                                  03:17PM

*Redirect - Khamvongsa*

1     Q.   When we go back to the Limey bank records, are there

2    two pages that have not been entered into evidence yet that

3    will be entered into evidence that also support your

4    investigation regarding the fact that those aircraft were

5    transferred to another company?

6             MS. MCCONWELL:  I object to leading.

7             MR. MARTIN:  I object to commenting on evidence.

8             MS. M. MILLER:  It's foundational.

9             THE COURT:  Okay.  The Court will sustain the

10   objection as to leading.

11   BY MS. M. MILLER: (CONTINUING)

12     Q.   What does --

13            THE COURT:  Let the exhibit speak for itself.

14   BY MR. M. MILLER: (CONTINUING)

15     Q.   What does Exhibit 2939, the last two pages of that

16   exhibit that we're going to show the jury in a moment, show

17   you regarding this transaction?

18     A.   It shows that the operation moved offshore into the

19   Philippines, and then wires are being sent back to Guam here

20   so that they could pay their own operational expenses from the

21   account that we just looked at.

22            MR. MARTIN:  Your Honor, I object to him

23   speculating as to what -- what was paid with what.  He can say

24   that -- he can say what the document reflects, but he's

25   testifying as to what his theory of the case is, and I object

*Redirect - Khamvongsa*

```
1   to it.                                                          03:18PM
2            THE COURT:  Okay.  Okay.  Just focus on what the       03:18PM
3   document states then.  Does the document state what you just    03:18PM
4   said, everything you said?                                      03:18PM
5            THE WITNESS:  It supports -- it's one piece of         03:18PM
6   the document that supports what I just said.                    03:18PM
7            MR. MARTIN:  That's his theory, Your Honor, which      03:18PM
8   I object --                                                     03:18PM
9            THE COURT:  It's not -- okay.  So the question         03:18PM
10  is, though -- okay.                                             03:18PM
11           MS. M. MILLER:  We argued this --                      03:19PM
12           THE COURT:  Okay.  I know.                             03:19PM
13           MS. M. MILLER:  At length.  If we have to go all       03:19PM
14  the way back, we can.                                           03:19PM
15           THE COURT:  No, no, I'm just -- hold on.               03:19PM
16           MR. MARTIN:  Your Honor, my objection is              03:19PM
17  speculation.  And we haven't argued that.  He's testifying as   03:19PM
18  to his theory, which is speculation.  I'm not arguing what the  03:19PM
19  document says.                                                  03:19PM
20           THE COURT:  All right.  Why don't we -- okay.          03:19PM
21  The Court will sustain the objection in terms of -- of what     03:19PM
22  you believe the document says.  Let the document speak for      03:19PM
23  itself.  So sustained.                                          03:19PM
24  BY MS. M. MILLER:  (CONTINUING)                                 03:19PM
25     Q.   Sir, Limey Air Service, when you received these bank    03:19PM
```

*Redirect - Khamvongsa*

```
1   records from Limey Air Service, can you tell the members of    03:19PM
2   the jury why you asked for these bank records from Limey Air    03:19PM
3   Service?                                                        03:19PM
4       A.   I asked for those particular bank records because it   03:19PM
5   was identified they opened that account shortly after the      03:19PM
6   first indictment.                                              03:19PM
7       Q.   Okay.  And was there evidence about Limey Air Service  03:19PM
8   being involved in the underlying actions that you were         03:19PM
9   investigating?                                                 03:20PM
10      A.   Yes.                                                   03:20PM
11      Q.   Was there also evidence about the defendants opening   03:20PM
12  up a new corporate entity after they were indicted?            03:20PM
13              MR. MARTIN:  Objection.                             03:20PM
14              THE WITNESS:  Yes.                                  03:20PM
15              MR. MARTIN:  Objection; leading, Your Honor.  I'd   03:20PM
16  ask the witness --                                             03:20PM
17              MS. M. MILLER:  I'm laying a foundation.            03:20PM
18              THE COURT:  Hold on.  Hold on.  Just -- the         03:20PM
19  objection is leading, the Court will sustain the objection.    03:20PM
20  BY MS. M. MILLER: (CONTINUING)                                 03:20PM
21      Q.   What evidence was there, sir, of any additional       03:20PM
22  corporations opened after the indictment?                      03:20PM
23      A.   Pacific.Spotters Corporation was opened up around the 03:20PM
24  timeframe after the indictment.                                03:20PM
25      Q.   And how do you know that, sir?                        03:20PM
```

*Redirect - Khamvongsa*

```
 1        A.    I've seen the records from the Philippines.          03:20PM

 2        Q.    Who is the president of Pacific.Spotters?            03:20PM

 3        A.    Defendant Jon Walker.                                03:20PM

 4        Q.    Who's the president of Limey Air Services, Inc?      03:20PM

 5        A.    Defendant -- Defendant Jon Walker.                   03:20PM

 6        Q.    What is the business of Pacific.Spotters Corporation? 03:20PM

 7        A.    Helicopter leasing.                                  03:21PM

 8        Q.    What was the business of Limey Air Services, Inc.?   03:21PM

 9        A.    Helicopter leasing.                                  03:21PM

10        Q.    And this exhibit in front of you, sir,              03:21PM

11   Exhibit 3003-15, what does this exhibit show you?              03:21PM

12              MR. MARTIN:  Well, Your Honor, I object.  He can     03:21PM

13   read from the exhibit, but he cannot interpret the exhibit.    03:21PM

14              MS. M. MILLER:  And I move in Exhibit 3003-15,       03:21PM

15   Your Honor, based on all the arguments you heard yesterday     03:21PM

16   regarding this, and I would ask it to be published to the      03:21PM

17   jury.                                                          03:21PM

18              THE COURT:  All right.  Is it okay?                  03:21PM

19              MR. MARTIN:  And I understand that, Your Honor,      03:21PM

20   and I want the record to reflect my continuing objection.      03:21PM

21              THE COURT:  Okay.  Objection so noted.  Yes,        03:21PM

22   Ms. McConwell?                                                 03:21PM

23              MS. MCCONWELL:  And Hansen Helicopters and also     03:21PM

24   this -- if this is admitted, Hansen Helicopters is not part of 03:21PM

25   Counts 99 through 110.                                         03:21PM
```

*Redirect - Khamvongsa*

| | |
|---|---|
| 1 | THE COURT:  All right.  So noted.  Objection | 03:21PM |
| 2 | overruled.  And Exhibit... | 03:22PM |
| 3 | MS. M. MILLER:  3003-15. | 03:22PM |
| 4 | THE COURT:  3003-15 will be admitted. | 03:22PM |
| 5 | (Exhibit 3003-15 admitted.) | 03:22PM |
| 6 | MS. M. MILLER:  Thank you, Your Honor.  May I | 03:22PM |
| 7 | publish it to the jury, please? | 03:22PM |
| 8 | THE COURT:  You may. | 03:22PM |
| 9 | MS. M. MILLER:  May I publish it to the jury, | 03:22PM |
| 10 | Your Honor? | 03:22PM |
| 11 | THE COURT:  You may. | 03:22PM |
| 12 | MS. M. MILLER:  Yes.  Thank you. | 03:22PM |
| 13 | BY MS. M. MILLER: (CONTINUING) | 03:22PM |
| 14 | Q.   Okay.  Special Agent Khamvongsa, do you see the | 03:22PM |
| 15 | document in front of you? | 03:22PM |
| 16 | A.   Yes. | 03:22PM |
| 17 | Q.   Can you tell the members of the jury, what date is | 03:22PM |
| 18 | this document? | 03:22PM |
| 19 | A.   November 17th, 2018. | 03:22PM |
| 20 | Q.   Read the first paragraph of the document, please, | 03:22PM |
| 21 | sir. | 03:22PM |
| 22 | A.   "The -- the seller did on this November 17th, 2018, | 03:22PM |
| 23 | day of November 2018 sell, transfer and deliver all of its | 03:23PM |
| 24 | rights, title and interest in and to the aircraft in each case | 03:23PM |
| 25 | to the following entity, the said aircraft to be the property | 03:23PM |

*Redirect - Khamvongsa*

1  thereof:  Pacific.Spotters Corporation, Unit 117, Charlie       03:23PM

2  Building, Subic International Hotel Complex, Zarita Road,        03:23PM

3  Subic Bay, Freeport Zone, Philippines.  The buyer."            03:23PM

4      Q.   And how much did Pacific.Spotters Corporation pay for   03:23PM

5  the helicopters?                                               03:23PM

6      A.   $340,000.                                             03:23PM

7      Q.   Can you remind the jury what the value of the          03:23PM

8  helicopters were in the balance sheet of Wilma's?             03:23PM

9      A.   Approximately $14 million.                            03:23PM

10     Q.   Now let's go down to the bottom of this document,      03:23PM

11 please, and see what is being represented regarding the        03:23PM

12 condition of the helicopters.  And can you please read         03:23PM

13 Subparagraph 3, starting with "the aircraft."                 03:24PM

14     A.   "The aircraft is sold in an as-is basis without any    03:24PM

15 warranties whatsoever, expressed or implied, as to the        03:24PM

16 merchantability, fitness for any purpose, durability, design  03:24PM

17 or suitability, especially that it was disclosed that the     03:24PM

18 majority of the aircraft are considered to be scrap,          03:24PM

19 nonfunctional and/or have expired and lost certificates of    03:24PM

20 registration and airworthiness."                              03:24PM

21     Q.   All right.  Now, sir, I would like you to look at      03:24PM

22 Exhibit 2939 again.  And this time, I would like you to look   03:24PM

23 at Page 82 of that exhibit, which has not been entered into    03:24PM

24 evidence yet, but I will seek to move it in.  And while that's 03:24PM

25 being pulled up for you, can you tell the members of the jury  03:24PM

```
 1   whether Pacific.Spotters did, in fact, start leasing      03:25PM

 2   helicopters to tuna boat companies for money in 2018?     03:25PM

 3       A.   Yes, they did.                                   03:25PM

 4       Q.   And I want you to look at Exhibit 2939, Pages 82 and  03:25PM

 5   83.  Do you recognize those pages?                        03:25PM

 6       A.   Yes.                                             03:25PM

 7       Q.   And are they a true and correct copy of the      03:25PM

 8   information that you obtained from the bank account of Limey  03:25PM

 9   Air Services, Inc.?                                       03:25PM

10       A.   Yes.                                             03:25PM

11            MS. M. MILLER:  Your Honor, at this time, the    03:25PM

12   government would move into evidence Exhibit 2939, Pages 82 and  03:25PM

13   83.                                                       03:25PM

14            MR. MARTIN:  Your Honor, we'll stand on our      03:25PM

15   previous objection.                                      03:25PM

16            THE COURT:  Okay.  Same?                         03:25PM

17            MS. MCCONWELL:  Same with Hansen.                03:25PM

18            THE COURT:  All right.  Very well.  Objections   03:25PM

19   will be preserved.                                       03:25PM

20            MS. M. MILLER:  May I publish to the jury?       03:25PM

21            THE COURT:  Yes, 2939-82 are both -- are         03:25PM

22   admitted.                                                03:26PM

23            MS. M. MILLER:  Thank you, Your Honor.           03:26PM

24            THE COURT:  You may publish.                     03:26PM

25   (Exhibit 2939-82, 2939-83 admitted.)                      03:26PM
```

*Redirect - Khamvongsa*

```
 1            MS. M. MILLER:  May I publish that to the jury,      03:26PM
 2   Your Honor?                                                   03:26PM
 3            THE COURT:  You may.  It's just one exhibit          03:26PM
 4   there, right?                                                 03:26PM
 5            MS. M. MILLER:  It's Pages 82 and 83.                03:26PM
 6            THE COURT:  Oh, okay.  That was -- okay.  I see.     03:26PM
 7   82, that has both 82 on it.  Okay.  82 and 83 are both        03:26PM
 8   admitted, and the objections are preserved and noted.  And may 03:26PM
 9   be published.                                                 03:26PM
10   BY MS. M. MILLER:  (CONTINUING)                               03:26PM
11      Q.    Special Agent Khamvongsa, can you tell the members of 03:26PM
12   the jury what we're looking at here?                          03:26PM
13      A.    This was provided from the bank.  This is a summary  03:26PM
14   of incoming wire transfers for January to December of 2018.   03:26PM
15      Q.    Okay.  From the originator, what is the originator?  03:26PM
16      A.    The originator, Limey -- excuse me.  The originator  03:26PM
17   is Pacific.Spotters Corporation.                              03:26PM
18      Q.    And the funds are going into which account?          03:26PM
19      A.    Limey Air Service, Inc.                              03:26PM
20      Q.    Okay.  And that is the account we've been talking    03:26PM
21   about, sir?                                                   03:26PM
22      A.    Yes.                                                 03:26PM
23      Q.    Who's the president of Limey Air?                    03:26PM
24      A.    Defendant Jon Walker.                                03:26PM
25      Q.    Who's the president of Pacific.Spotters?             03:27PM
```

*Redirect - Khamvongsa*

| 1 | A. Defendant Jon Walker. | 03:27PM |
| 2 | Q. Now let's look at Page 83. And what do we see here? | 03:27PM |

1    A.    Defendant Jon Walker.                                03:27PM

2    Q.    Now let's look at Page 83.  And what do we see here?  03:27PM

3    A.    This is an incoming wire transfer log from January to 03:27PM

4    December 2019 identifying the originator and the beneficiary 03:27PM

5    and the amounts.                                           03:27PM

6    Q.    And who is the originator of these hundreds of        03:27PM

7    thousands of dollars totaling $5 million coming into this   03:27PM

8    account?                                                    03:27PM

9    A.    Pacific.Spotters Corporation.                         03:27PM

10   Q.    And who's the beneficiary or recipient of those       03:27PM

11   funds?                                                      03:27PM

12   A.    Limey Air Service, Inc.                               03:27PM

13   Q.    Can you tell the members of the jury whether you      03:27PM

14   traced these funds to determine the source of the funds?   03:27PM

15   A.    Yes.                                                  03:27PM

16   Q.    What was the source of the funds?                     03:27PM

17   A.    The leasing of the helicopters to tuna boat          03:27PM

18   companies.                                                  03:27PM

19   Q.    Okay.  Now, sir, I'd like to talk to you about all of 03:27PM

20   these different companies that were used and ask you some   03:28PM

21   questions.                                                  03:28PM

22        What did the defendants themselves say about why so   03:28PM

23   many different companies were used to lease these helicopters? 03:28PM

24              MR. MARTIN:  Your Honor, I object, this is beyond 03:28PM

25   the scope of direct -- I mean of cross, and not -- not      03:28PM

```
1   consistent with the exhibits just introduced, that the Court        03:28PM
2   allowed the government the opportunity -- I'm sorry.  And not       03:28PM
3   consistent with the exhibit that was just introduced which the      03:28PM
4   Court allowed, which was 3003-82 and 83.                            03:28PM
5              THE COURT:  Ms. McConwell?                               03:28PM
6              MS. MCCONWELL:  And it's leading.                        03:28PM
7              THE COURT:  All right.                                   03:28PM
8              MS. M. MILLER:  It is within the scope, Your             03:28PM
9   Honor, because Mr. Martin and Mr. McConwell both asked this         03:28PM
10  witness questions about the different companies that were used      03:28PM
11  and also asked questions to try to represent that these            03:29PM
12  companies were actually legitimate, valid, independent from         03:29PM
13  the defendants.                                                     03:29PM
14             MR. MARTIN:  This is a speaking objection.  If           03:29PM
15  we're going to go into that, I mean -- what I intend to            03:29PM
16  represent is a speaking objection.                                  03:29PM
17             THE COURT:  Yeah, right.  Yeah, don't -- yeah,           03:29PM
18  just respond to -- the objection is beyond the scope -- beyond      03:29PM
19  the -- beyond the scope of the --                                   03:29PM
20             MS. M. MILLER:  My response -- it is -- it is            03:29PM
21  within the scope because it rebuts and refutes any assertion        03:29PM
22  that these Vanuatu companies --                                     03:29PM
23             MR. MARTIN:  We're making a speaking objection           03:29PM
24  again, Your Honor, what she thinks it rebuts or -- is a             03:29PM
25  speaking objection.                                                 03:29PM
```

*Redirect - Khamvongsa*

```
 1              THE COURT:  All right.  All right.  Anything --        03:29PM
 2    okay.  That's it.  The Court will overrule the objection.  Go    03:29PM
 3    ahead and proceed.                                               03:29PM
 4    BY MS. M. MILLER: (CONTINUING)                                   03:29PM
 5       Q.   What did the defendants say about why all of these       03:29PM
 6    different companies were used?                                   03:29PM
 7       A.   To limit their liability; to limit Hansen Helicopters    03:29PM
 8    and Mr. Walker's liability.                                      03:29PM
 9       Q.   Mr. Martin also showed you an Exhibit 366 yesterday,     03:29PM
10    an aircraft that was registered in New Zealand; do you recall    03:29PM
11    that?                                                            03:30PM
12       A.   Yes.                                                     03:30PM
13       Q.   I'd like to you show what has been previously marked     03:30PM
14    as Exhibit 302 and has been entered into evidence as             03:30PM
15    Exhibit 302.                                                     03:30PM
16              MS. M. MILLER:  And specifically, Ms. Miller, if       03:30PM
17    you can go to Page 2 of Exhibit 302, that references the New     03:30PM
18    Zealand-registered aircraft.                                     03:30PM
19              MS. MCCONWELL:  I do not -- oh, no.  Never mind.       03:30PM
20    BY MS. M. MILLER: (CONTINUING)                                   03:30PM
21       Q.   Could you please read for the jury what the             03:30PM
22    defendants represented the reason was for the aircraft being     03:30PM
23    registered in New Zealand.                                       03:30PM
24       A.   "The aircraft wasn't changed to" --                     03:30PM
25              MS. MCCONWELL:  Your Honor, I object to the           03:30PM
```

*Redirect - Khamvongsa*

1   grouping of defendants.                                          03:30PM

2           THE COURT:  All right.  Please specify which           03:30PM

3   defendant.                                                       03:30PM

4           MS. M. MILLER:  Yes.  This was rep -- this was an       03:30PM

5   attempted sale by Hansen Helicopters --                         03:30PM

6           MR. MARTIN:  Your Honor --                              03:30PM

7           MS. M. MILLER:  -- of its company --                   03:30PM

8           MR. MARTIN:  The objection was --                       03:31PM

9           THE COURT:  Right, the -- the Court -- what is         03:31PM

10  the -- which defendant is it?                                    03:31PM

11          MS. M. MILLER:  So this goes to both Hansen            03:31PM

12  Helicopters and Jon Walker.                                      03:31PM

13          THE COURT:  That was the question.  All right.         03:31PM

14          MS. MCCONWELL:  Hansen Helicopters is not a party      03:31PM

15  to Counts 99 through 110, and I would object to any questions    03:31PM

16  about --                                                         03:31PM

17          MS. M. MILLER:  But Jon Walker is, and our             03:31PM

18  contention is as the sole owner --                              03:31PM

19          THE COURT:  I know --                                  03:31PM

20          MS. M. MILLER:  -- and controller --                   03:31PM

21          THE COURT:  -- I got it.                               03:31PM

22          MS. M. MILLER:  Right.                                 03:31PM

23          THE COURT:  Anything else, counsels?                   03:31PM

24          MR. MARTIN:  Your Honor, we don't know who the         03:31PM

25  author -- the government hasn't -- our question was, who is     03:31PM

1    the author of this document.  That's the objection.          03:31PM

2            MS. M. MILLER:  This was -- this was            03:31PM

3    previously --                                            03:31PM

4            THE COURT:  Hold on.  You want -- you want to    03:31PM

5    voir dire the witness in aid of an objection?            03:31PM

6            MR. MARTIN:  Yes, Your Honor.                    03:31PM

7            THE COURT:  All right.  That might be faster than 03:31PM

8    all these objections.  Go ahead.                         03:31PM

9                                                             03:31PM

10                       VOIR DIRE                            03:31PM

11   BY MR. MARTIN:                                           03:31PM

12       Q.   Agent Khamvongsa, in front of you, I believe, is 03:31PM

13   Exhibit No. G-302; do you see that, sir?                 03:31PM

14       A.   They took it off screen, but I -- oh, yes.  Yes. 03:31PM

15       Q.   Okay.  And have you had a chance to review that, sir? 03:31PM

16       A.   Yes.                                            03:31PM

17       Q.   Okay.  And do you -- sir, by looking at that    03:31PM

18   document, can you tell --                                03:32PM

19            MS. MCCONWELL:  He doesn't have the front, the  03:32PM

20   first page.                                              03:32PM

21            MR. MARTIN:  All right.                         03:32PM

22   BY MR. MARTIN: (CONTINUING)                              03:32PM

23       Q.   Do you know who the author of that document is, sir? 03:32PM

24       A.   Co-defendant, Mr. Crowe.                        03:32PM

25       Q.   Well, no, where do you see that, sir?           03:32PM

1    A.   It came as a result in response to an e-mail.  This    03:32PM
2    was an e-mail attachment in regards to a potential buyer that    03:32PM
3    we've been talking about throughout this trial.    03:32PM
4    Q.   So the -- so it is -- it refers to a meeting with    03:32PM
5    Rufus; correct, sir?    03:32PM
6    A.   Mr. Crowe, yes.    03:32PM
7    Q.   Okay.  It doesn't say Mr. Crowe is the author, this    03:32PM
8    is some third party; correct, sir?    03:32PM
9    A.   This -- this is in response -- this is between that    03:32PM
10   meeting, yes.    03:32PM
11   Q.   This is not a document that was authored by    03:32PM
12   Mr. Crowe, this is a document that was written by a third    03:32PM
13   party in --    03:32PM
14           MS. M. MILLER:  Objection, Your Honor.    03:32PM
15           MR. MARTIN:  -- is that correct?    03:32PM
16           THE COURT:  Hold on.  No, no, let him finish the    03:32PM
17   question.  What is the question, Mr. Martin?  Go ahead.    03:32PM
18   Okay.  One person.    03:33PM
19           MS. MCCONWELL:  Well, no, Your Honor.  He needs    03:33PM
20   to have the first page and I'm not driving on the exhibit.  He    03:33PM
21   needs to have the first page of the exhibit --    03:33PM
22           MS. M. MILLER:  Your Honor --    03:33PM
23           MS. MCCONWELL:  -- displayed to the witness.    03:33PM
24           THE COURT:  Hold on, Counsel.  Okay.  Let --    03:33PM
25   Mr. Martin, do you want the first page of the exhibit on, or    03:33PM

```
 1    what's the deal?  You want to keep on asking questions?      03:33PM
 2              MR. MARTIN:  I thought he had the first page       03:33PM
 3    because I'm looking at it on my computer.  I'm sorry.  If we  03:33PM
 4    could go to the very first page, 302-1.                      03:33PM
 5    BY MR. MARTIN: (CONTINUING)                                  03:33PM
 6        Q.   Do you see the top of the first page, sir?          03:33PM
 7        A.   Yes.                                                03:33PM
 8        Q.   Okay.  And would you agree with me, sir, that this is  03:33PM
 9    some type of a document that somebody prepared based upon a  03:33PM
10    meeting with Mr. Crowe?                                      03:33PM
11        A.   This is from Mr. Crowe.                             03:33PM
12        Q.   Does it have Mr. Crowe's e-mail address on it, sir?  03:33PM
13        A.   Sir, if you look, it's answering a question, he's   03:33PM
14    responding --                                                03:33PM
15        Q.   The question was --                                 03:33PM
16              THE COURT:  Hold on.  Hold on.  Q and A, question  03:33PM
17    and answer.                                                  03:34PM
18    BY MR. MARTIN: (CONTINUING)                                  03:34PM
19        Q.   My question was, Does it have Mr. Crowe's e-mail    03:34PM
20    address on there?                                            03:34PM
21        A.   His e-mail is not on this document.                 03:34PM
22              MS. M. MILLER:  By the way, Your Honor, we went    03:34PM
23    through this when this document was admitted into evidence   03:34PM
24    months ago.  We had the e-mail introduced --                 03:34PM
25              THE COURT:  That's not -- that's not the           03:34PM
```

*Redirect - Khamvongsa*

1    question.  I know, but the question is the query of getting          03:34PM

2    into the substance of this because you're trying to get --           03:34PM

3                    MS. M. MILLER:  But the prior --                      03:34PM

4                    THE COURT:  Hold on.  Trying to get an admission,     03:34PM

5    so let's just try to get through this.                               03:34PM

6                    MS. M. MILLER:  And he's already answered.  This      03:34PM

7    was prepared by Mr. Crowe.                                           03:34PM

8                    THE COURT:  Hold on.  Let him finish his              03:34PM

9    question.  Go ahead, Mr. Martin.                                     03:34PM

10   BY MR. MARTIN: (CONTINUING)                                          03:34PM

11       Q.   From the document that is on the screen, Exhibit 302,       03:34PM

12   is there anything to identify who the author of the document         03:34PM

13   is?                                                                  03:34PM

14       A.   This was attach -- the documents with Mr. Crowe in          03:34PM

15   his response.                                                        03:34PM

16       Q.   Is there anything on the document to identify who the       03:34PM

17   author of the document is, sir?                                      03:35PM

18       A.   The author is both --                                       03:35PM

19       Q.   Is there anything --                                        03:35PM

20       A.   -- the buyer and Mr. Crowe.                                 03:35PM

21       Q.   -- on the -- in the contents of the document to             03:35PM

22   identify who the author of the document is?  Do you understand       03:35PM

23   that question?                                                       03:35PM

24       A.   Yeah, it's the response to the questions.                   03:35PM

25       Q.   No, is there -- I'm not asking about response, I'm          03:35PM

*Redirect - Khamvongsa*

```
1    not asking about anything, I'm asking --              03:35PM

2         A.    But you said "is there anything," is there  03:35PM

3    anything --                                           03:35PM

4         Q.    Is there anything --                       03:35PM

5         A.    The response is to the buyer.  The response is a  03:35PM

6    meeting with Rufus.                                   03:35PM

7         Q.    Sir, read in this document where it says who the  03:35PM

8    author of the document is.                            03:35PM

9         A.    Sure.  "All the companies owned by Jon with a few  03:35PM

10   percentages going to Ledger, Marv or me" --           03:35PM

11        Q.    That --                                     03:35PM

12        A.    -- or me.  "Or me, Rufus Crowe, for legality's sake."  03:35PM

13        Q.    Where are you reading, sir?                 03:35PM

14        A.    Look at No. 1.  Look at the -- "revisit the  03:35PM

15   organizational structure and ownership interest of the various  03:35PM

16   companies."  Now look at the response in bold.        03:36PM

17        Q.    Who is the -- who is it -- where does it say that  03:36PM

18   Rufus said that, sir?                                 03:36PM

19        A.    Meeting with Rufus.                         03:36PM

20             MR. MARTIN:  Your Honor, I -- I object that there  03:36PM

21   is no indication who the author of this is and that it  03:36PM

22   reflects actually it is a third party.  Somebody prepared  03:36PM

23   this -- not Mr. Crowe, but somebody prepared this document  03:36PM

24   that is not one of the defendants in this case.        03:36PM

25             THE COURT:  Anything else?  Okay.  Any other  03:36PM
```

*Redirect - Khamvongsa*

```
 1    objection or any other question?                          03:36PM
 2              MR. MARTIN:  That's it, Your Honor.             03:36PM
 3              THE COURT:  Okay.  Now you may respond,         03:36PM
 4    Ms. Miller.                                                03:36PM
 5              MS. M. MILLER:  First of all, this document is in  03:36PM
 6    evidence.  Secondly, this argument was made the first time the  03:36PM
 7    government moved this document into evidence.  At that time,  03:36PM
 8    we offered Your Honor the e-mail --                        03:36PM
 9              THE COURT:  We got that.  The question is -- he  03:36PM
10    just asked him a very specific question.                   03:36PM
11              MS. M. MILLER:  Yes.  So when you see "all of the  03:36PM
12    companies are owned by Jon with a few percentages going to  03:36PM
13    Ledger, Marv or me," Rufus Crowe is the other person besides  03:37PM
14    David Ledger, Marvin Reed and Jon Walker.                  03:37PM
15              THE COURT:  All right.  So you're repeating     03:37PM
16    everything he just said.  All right.  Very well.  Anything  03:37PM
17    else?                                                      03:37PM
18              MR. MARTIN:  Your Honor, that does not reflect  03:37PM
19    who the author is.                                         03:37PM
20              THE COURT:  All right.  So I think that this is  03:37PM
21    one of those situations where, again, it will go to the    03:37PM
22    credibility of the witness and what the jury wants to glean  03:37PM
23    from that; whether Rufus Crowe is the author or not, that's up  03:37PM
24    to them.  So the Court will overrule the objection.  Next  03:37PM
25    question.                                                  03:37PM
```

```
 1              MS. M. MILLER:  Yes, Your Honor.  Can we go to        03:37PM
 2     Page 2, please?                                                03:37PM
 3     BY MS. M. MILLER: (CONTINUING)                                 03:37PM
 4         Q.   And, sir, by the way, where did the government get    03:37PM
 5     this document from?                                            03:37PM
 6         A.   It was obtained through the search warrant back in    03:37PM
 7     October of 2016.                                               03:37PM
 8         Q.   From whose computer?                                  03:37PM
 9         A.   Hansen Helicopters.                                   03:37PM
10         Q.   Now can we go to Page 2.  What was represented here   03:37PM
11     regarding the New Zealand-registered helicopters that          03:37PM
12     Mr. Martin asked you about yesterday?                          03:37PM
13         A.   "The aircraft wasn't changed to U.S. registration    03:37PM
14     because leaving it this way circumnavigates the FAA.  Just     03:38PM
15     like Stewart does with skydiving planes Australian.  The FAA   03:38PM
16     leaves you alone."                                             03:38PM
17         Q.   Okay, sir.  Now let's go down to Question 4 in this   03:38PM
18     document which is on the same page, Page 2, Question 4.  And   03:38PM
19     to remind the jury, sir, this document was prepared in         03:38PM
20     anticipation of an attempt to sell Hansen Helicopters?         03:38PM
21              MR. MARTIN:  Your Honor, I object to that.            03:38PM
22     There's...                                                     03:38PM
23              THE COURT:  Objection will be leading.  Next          03:38PM
24     question.                                                      03:38PM
25     BY MS. M. MILLER: (CONTINUING)                                 03:38PM
```

*Redirect - Khamvongsa*

```
 1        Q.   Why was this document prepared, sir?          03:38PM

 2        A.   It was --                                     03:38PM

 3             MS. MCCONWELL:  I object to speculation.      03:38PM

 4             THE COURT:  Sustained.                        03:38PM

 5   BY MS. M. MILLER: (CONTINUING)                          03:38PM

 6        Q.   Do you know why this document was prepared?   03:38PM

 7        A.   Yes.                                          03:38PM

 8        Q.   Why?`                                         03:38PM

 9             MR. MARTIN:  Your Honor, we object to         03:38PM

10   speculation.                                            03:38PM

11   BY MS. M. MILLER: (CONTINUING)                          03:38PM

12        Q.   How do you know why?                          03:38PM

13        A.   Based upon e-mails that I reviewed --         03:38PM

14        Q.   Okay.                                         03:38PM

15        A.   -- between the -- between Hansen Helicopters and its   03:38PM

16   officers and an outside third party.                   03:38PM

17        Q.   And what was the communications with the outside   03:39PM

18   third party?                                            03:39PM

19        A.   They either wanted to buy or invest into the company.  03:39PM

20        Q.   Okay.  Now, let's look at Question 4.  "Some of the    03:39PM

21   leases refer to Wilma's Flight Service as the lessor and   03:39PM

22   operator, registered owner, whereas other leases do not.  Is    03:39PM

23   this a typo, or is there some explanation?"             03:39PM

24             And can you read the answer to that question?  03:39PM

25             MR. MARTIN:  Your Honor, I -- my objection is,   03:39PM
```

*Redirect - Khamvongsa*

1  this is a brand-new direct examination.  We are way beyond the            03:39PM

2  scope of cross, we're way beyond the scope of the new exhibits            03:39PM

3  you allowed in.  This is just a brand-new redirect, and we're             03:39PM

4  plowing ground that should have been plowed a long time ago.              03:39PM

5  That's an Oklahoma phrase, it's not a legal -- it's not a                 03:39PM

6  legal objection, but I apologize.                                         03:39PM

7            MS. M. MILLER:  Well, Your Honor, Mr. Martin --                 03:39PM

8            THE COURT:  Hold on.  Let me hear the next                      03:39PM

9  objection first.                                                          03:39PM

10           MS. M. MILLER:  I think he's done.                              03:40PM

11           THE COURT:  I take all objections first before --               03:40PM

12           MS. M. MILLER:  Yeah.                                           03:40PM

13           MS. MCCONWELL:  Hansen joins.                                   03:40PM

14           THE COURT:  Hansen joins, yes.                                  03:40PM

15           MS. M. MILLER:  So Mr. Martin yesterday, Your                   03:40PM

16 Honor, asked the witness about the lease between Wilma's                  03:40PM

17 Flight Service and the tuna boat company that identified                  03:40PM

18 S45S -- 454S as part of the lease.  And Wilma's Flight Service            03:40PM

19 was identified as a lessor.  And that was a lease that                    03:40PM

20 Mr. Martin went over with Special Agent Khamvongsa.  So this              03:40PM

21 is directly in response to his cross-examination, and it's                03:40PM

22 very relevant to whether that was, in fact, a valid and                   03:40PM

23 independent transaction or not.                                           03:40PM

24           THE COURT:  All right.  Overruled.  Go ahead.                   03:40PM

25 BY MS. M. MILLER:  (CONTINUING)                                           03:40PM

*Redirect - Khamvongsa*

```
 1      Q.   Can you please read the answer to Question 4?        03:40PM
 2      A.   "It is all Hansen Helicopters.  All the aircraft are  03:40PM
 3 owned wholly by Hansen and its subsidiary companies, and all  03:40PM
 4 leases and contracts are basically with Hansen, Jon and --    03:40PM
 5 Hansen.  Jon and Ledger were trying to spread out the         03:40PM
 6 liability through the forming of the other companies.         03:40PM
 7 Everything is controlled by Hansen and Jon.  They are         03:40PM
 8 synonymous."                                                   03:41PM
 9           MS. M. MILLER:  I have no further questions, Your    03:41PM
10 Honor.                                                         03:41PM
11           THE COURT:  I'm sorry?                               03:41PM
12           MS. M. MILLER:  I have no further questions.         03:41PM
13           THE COURT:  No further questions.  Okay.  So --      03:41PM
14 yes?  Are we ready to excuse this witness, everyone?          03:41PM
15           MS. M. MILLER:  Yes, Your Honor.                     03:41PM
16           MR. MCCONWELL:  Might we take a break before we      03:41PM
17 start?                                                         03:41PM
18           THE COURT:  Well, it's already -- okay.  I'm         03:41PM
19 going to excuse this witness.  Are you done -- we're done with 03:41PM
20 him?                                                           03:41PM
21           MS. M. MILLER:  Yes, we're done with this            03:41PM
22 witness, Your Honor.                                           03:41PM
23           THE COURT:  Oh, no.                                  03:41PM
24           MR. MARTIN:  No, no, Your Honor.  I have             03:41PM
25 extensive cross-examination that I, in all candor, after      03:41PM
```

*Redirect - Khamvongsa*

1  Mr. McConwell gets done, I don't think I can finish before    03:41PM

2  4:00.  I don't know how much time he's going to take, but --    03:41PM

3            THE COURT:  Oh, I thought --    03:41PM

4            MR. MARTIN:  She's gone three hours and    03:41PM

5  45 minutes with him.    03:41PM

6            MS. M. MILLER:  I have not.    03:41PM

7            MR. MARTIN:  Two hours and 45 minutes.  I can't    03:41PM

8  see that well.    03:41PM

9            THE COURT:  Okay.    03:41PM

10           MS. M. MILLER:  Okay.  Then we had breaks, then    03:41PM

11 we had arguments.  So I certainly didn't.    03:41PM

12           THE COURT:  Ms. Miller, let him talk.  I thought    03:41PM

13 we were done.    03:41PM

14           MS. M. MILLER:  We should be done.    03:41PM

15           THE COURT:  Hold on, hold on.  You still want to    03:41PM

16 come back and do a re -- hold on, let me think.  It's a    03:42PM

17 recross because there's -- is there new stuff that you guys    03:42PM

18 need to --    03:42PM

19           MR. MARTIN:  You just introduced two brand-new    03:42PM

20 exhibits, Judge.    03:42PM

21           MS. M. MILLER:  Your Honor, that was all in    03:42PM

22 response to his cross.    03:42PM

23           THE COURT:  Hold on.  This is -- no, no, I didn't    03:42PM

24 make a ruling subsequent in the middle of -- yeah, so I'll let    03:42PM

25 you speak on those -- on those particular exhibits, yes.    03:42PM

*Redirect - Khamvongsa*

```
 1          MR. MARTIN:  And she substantially expanded          03:42PM

 2   several areas that I think I should be allowed to go into.   03:42PM

 3   I'll try to be as brief as I can, but...                    03:42PM

 4          MS. M. MILLER:  Well, then, Your Honor, I'm going     03:42PM

 5   to want re-redirect.  I mean --                             03:42PM

 6          THE COURT:  No, no, no, no, no.  Let me tell you      03:42PM

 7   this.  If I allow -- here's the deal.  The only time -- the  03:42PM

 8   only time -- see?  Not only is my throat going out, my       03:42PM

 9   computer is going out because you guys are getting too noisy. 03:42PM

10   All right.  And now my microphone is broken.  Everything is   03:42PM

11   breaking apart up here.  Never mind.  You can fix it later.   03:43PM

12          All right.  All right.  So listen, normally I          03:43PM

13   allow direct examination, cross-examination and redirect, and 03:43PM

14   I allow recross if there is new information that was brought  03:43PM

15   out that you -- and so the Court will agree with Mr. Martin,  03:43PM

16   Ms. McConwell, that they can go back to the exhibits that I   03:43PM

17   allowed in, and I made that ruling -- you know which one I'm  03:43PM

18   talking about -- earlier.  So I will allow --                03:43PM

19          MS. M. MILLER:  Those two new exhibits?               03:43PM

20          THE COURT:  -- right now with regard to those         03:43PM

21   two.  Now, if -- is there anything further than those two, and 03:43PM

22   if so, you have to explain that to me.                       03:43PM

23          MR. MARTIN:  Well, you admitted 3003-15.  You         03:43PM

24   admitted 3003-82, 3003-83.  And --                          03:43PM

25          MS. M. MILLER:  No, no, wrong numbers.                03:43PM
```

*Redirect - Khamvongsa*

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Okay.  Hold on. | 03:43PM |
| 2 | MR. MARTIN:  2939-82 and 2939 -- I apologize. | 03:43PM |
| 3 | 3929 -- 2939-83.  And there are exhibits, Your Honor -- there | 03:44PM |
| 4 | is an exhibit... okay.  There are exhibits, Your Honor, a | 03:44PM |
| 5 | couple of them that have been admitted that relate that should | 03:44PM |
| 6 | be gone into. | 03:44PM |
| 7 | THE COURT:  All right.  I don't think my throat | 03:44PM |
| 8 | is going to stay -- we've got like 15 more minutes.  So what | 03:44PM |
| 9 | we're going to do is we'll recess and start on Monday with | 03:44PM |
| 10 | him.  But I want to talk to all of you so we can narrow, | 03:44PM |
| 11 | narrow this recross-examination. | 03:44PM |
| 12 | Now, the only way that Ms. Marie Miller is going | 03:44PM |
| 13 | to come back again, if I allow her to go on re-redirect, is if | 03:44PM |
| 14 | it's something totally brand-new.  But I'm pretty sure we can | 03:44PM |
| 15 | get this done with.  You-all are pounding -- I think we got | 03:44PM |
| 16 | it.  We got it.  This is a smart jury.  They got it. | 03:44PM |
| 17 | Okay.  So, ladies and gentlemen, let me say, keep | 03:44PM |
| 18 | an open mind.  Please do not form or express any opinion on | 03:45PM |
| 19 | this case.  You're still here.  Oh, my gosh.  I feel like we | 03:45PM |
| 20 | live together. | 03:45PM |
| 21 | THE WITNESS:  You're a great roommate, Your | 03:45PM |
| 22 | Honor. | 03:45PM |
| 23 | THE COURT:  Thank you.  Well, I'm falling apart | 03:45PM |
| 24 | here.  Everything, my throat, my everything is falling apart. | 03:45PM |
| 25 | But do not form or express any opinion on this case until it's | 03:45PM |

*Redirect - Khamvongsa*

```
 1    submitted to you.  Do not speak to anyone on any subject          03:45PM
 2    connected with this trial.  If there is any media coverage,       03:45PM
 3    sometimes there is or has been, just ignore it, don't pay         03:45PM
 4    attention to it.  What really counts is what happens in the       03:45PM
 5    courtroom.  And there is a lot happening in the courtroom.        03:45PM
 6            So, you know, what's very important is what you            03:45PM
 7    hear from the testimony of the witnesses and the exhibits that    03:45PM
 8    are produced, and you will be able to get that when you go and    03:45PM
 9    deliberate.  But it's important to ensure that both the          03:45PM
10    prosecution, the defense have a fair trial that you focus only    03:45PM
11    on what happens here.                                             03:45PM
12            So we're going to hopefully finish with the agent        03:45PM
13    on Monday morning.  And then prosecution will have their next     03:45PM
14    witness, Mr. Guzzetti, ready to go right after.  So you guys      03:45PM
15    have a nice weekend.  Take care of yourself.  I know one of       03:46PM
16    you is going to have a baby soon, so we wish you the best.        03:46PM
17    We're praying for you.  All right.  Have a nice weekend.  Take    03:46PM
18    care.                                                             03:46PM
19            (Jury out at 3:46 p.m.)                                   03:46PM
20            THE COURT:  Same time, same time.  8:15, right.          03:46PM
21    Get her ice chips.  All right.  So what --                       03:46PM
22            MS. M. MILLER:  Your Honor, I just had something         03:46PM
23    brought to my attention that I do want to bring to the Court's   03:46PM
24    attention.                                                        03:46PM
25            THE COURT:  Oh, no.                                       03:46PM
```

|    |                                                              |        |
|----|--------------------------------------------------------------|--------|
| 1  | THE CLERK:  One moment.                                      | 03:46PM |
| 2  | THE COURT:  Hold on.  Hold on.  Hold on.                     | 03:46PM |
| 3  | MS. MCCONWELL:  Am I in trouble?                             | 03:46PM |
| 4  | MS. M. MILLER:  Yeah, you are.                               | 03:47PM |
| 5  | MS. MCCONWELL:  She's looking at me.                         | 03:47PM |
| 6  | THE COURT:  Uh-huh.                                          | 03:47PM |
| 7  | MS. M. MILLER:  Someone overheard Ms. McConwell              | 03:47PM |

8   approach Ms. Santos to try to convince her, I guess, that             03:47PM
9   Exhibit 3003-14 was already admitted into evidence when it has         03:47PM
10  not been admitted into evidence; is that correct?                      03:47PM
11           MS. MCCONWELL:  Well, I e-mailed to ask if it was            03:47PM
12  admitted into evidence because I said my notes said it -- my           03:47PM
13  note -- I have two conflicting notes; was it admitted or was           03:47PM
14  it not admitted.                                                       03:47PM
15           THE CLERK:  It is admitted, Your Honor.  And it              03:47PM
16  showed up also on the transcript of proceedings that one of            03:47PM
17  the parties just requested and was docketed just recently              03:47PM
18  regarding 3003.                                                        03:47PM
19           THE COURT:  So just some confusion?                          03:47PM
20           THE CLERK:  3003-14 was admitted.                            03:47PM
21           THE COURT:  It was admitted.                                 03:47PM
22           THE CLERK:  It was my error that I did not note              03:47PM
23  it as being admitted.                                                  03:48PM
24           THE COURT:  Okay.  So Carmen has indicated it was            03:48PM
25  her error, she made a mistake and she does note it was already         03:48PM

*Redirect - Khamvongsa*

```
 1    admitted.  You were correct.                                    03:48PM

 2              MS. M. MILLER:  So 3003-14 is in?                      03:48PM

 3              THE COURT:  Yes.                                       03:48PM

 4              MS. M. MILLER:  Because we had it out.                 03:48PM

 5              MS. MCCONWELL:  Well, as I said --                     03:48PM

 6              THE COURT:  No.  Anyway, long story short, Carmen      03:48PM

 7    said it's in because she verified it with the court reporter.   03:48PM

 8              MS. M. MILLER:  Okay.                                  03:48PM

 9              THE CLERK:  And also the recording, Your Honor --      03:48PM

10              THE COURT:  The recording.                            03:48PM

11              THE CLERK:  -- I verified with the recording.         03:48PM

12              THE COURT:  Okay.                                     03:48PM

13              THE CLERK:  It's ECF 1691, the transcript.            03:48PM

14              MS. M. MILLER:  Well, one of the problems is, I       03:48PM

15    just finished with this witness and I had no knowledge that    03:48PM

16    that exhibit was in, and I could have used that exhibit with   03:48PM

17    3003-15 to show which aircraft were transferred.  So I'm going 03:48PM

18    to ask the Court to allow me, with this information, to reopen 03:48PM

19    my redirect, because it would be appropriate for me to be able 03:48PM

20    to tie that to 15 and finish out that examination.  Otherwise, 03:48PM

21    I am in a situation where Counsel can now question potentially 03:49PM

22    the witness regarding that, and I haven't had an opportunity   03:49PM

23    to because we had it as not admitted.                          03:49PM

24              THE COURT:  All right.  So --                         03:49PM

25              MR. MARTIN:  Your Honor, it's not our fault they      03:49PM
```

*Redirect - Khamvongsa*

1   don't know what exhibits are in or out.  That's why we ask          03:49PM

2   questions.                                                          03:49PM

3              THE COURT:  Yeah, but Ms. --                             03:49PM

4              MS. M. MILLER:  But she had it as not admitted.          03:49PM

5              THE COURT:  Hold on.  So there was a mistake.  My        03:49PM

6   courtroom clerk made a mistake just like some other people          03:49PM

7   might have made a mistake.  My court reporter confirmed that        03:49PM

8   it was admitted and the FTR confirms that.  So -- okay, so we       03:49PM

9   have human error and whatever.  So let's just move on.  I           03:49PM

10  don't think I disagree -- I agree with the prosecutor, if they      03:49PM

11  needed to just come back in and clean it up before we pass the      03:49PM

12  witness to the defense.  So I'll allow that.  But it's very         03:49PM

13  limited questioning.  How many questions?                           03:49PM

14             MS. M. MILLER:  No, it will be limited                   03:49PM

15  questioning, but --                                                 03:49PM

16             THE COURT:  Like how many questions?                     03:49PM

17             MS. M. MILLER:  I don't know right now, but I            03:49PM

18  will tell Your Honor Monday morning, and it will be limited.        03:49PM

19             THE COURT:  All right.  I think it's fair.  Yes,         03:50PM

20  Ms. McConwell?                                                      03:50PM

21             MS. MCCONWELL:  Well, I'm going to -- I don't            03:50PM

22  know that it's fair, and I'm going to tell you why.  Because        03:50PM

23  yesterday when we had our conversation with you outside the         03:50PM

24  presence of the jury and Ms. Miller went through the exhibits       03:50PM

25  that she wanted to use, she told us she wanted to use 3003-15.      03:50PM

*Redirect - Khamvongsa*

1   She never said she wanted to use 14.  All along she's always          03:50PM

2   said she wanted to get 3000 -- 3003-15 in.  She never asked to        03:50PM

3   also have 3003-14 admitted.                                            03:50PM

4               MS. M. MILLER:  That's right, because my                  03:50PM

5   assumption was -- if you recall, Your Honor, we tried to              03:50PM

6   introduce the entirety of 3003, and we were not permitted to          03:50PM

7   introduce the entirety because the defense objected to it.            03:50PM

8   And as a result, only certain pages were introduced.  And we          03:50PM

9   relied on what we confirmed with Ms. Santos that 14 was not           03:50PM

10  one of the pages introduced.  That is not our fault.                  03:50PM

11              THE COURT:  All right.  All right.  So -- okay,           03:50PM

12  look.  I think it's -- okay.  However way it shakes out, the          03:51PM

13  exhibit has been admitted, and it was erroneously usually             03:51PM

14  said -- it was erroneously represented that it was not.               03:51PM

15  Officially, officially by the Court.                                   03:51PM

16              MS. MCCONWELL:  Well, Ms. Miller was asking to            03:51PM

17  have a new exhibit admitted and 3003-15.  She could have also         03:51PM

18  asked yesterday that she wanted to have 3003-14 admitted along        03:51PM

19  with 15.  She didn't want to do that.  She only wanted 3003-15        03:51PM

20  admitted.                                                              03:51PM

21              MS. M. MILLER:  Your Honor --                             03:51PM

22              THE COURT:  Let's not keep going back because,            03:51PM

23  you know, I'm getting headaches.                                       03:51PM

24              MS. M. MILLER:  I know.                                    03:51PM

25              THE COURT:  And I never get headaches.  I tell            03:51PM

*Redirect - Khamvongsa*

```
1   you, I rarely get headaches, and I've only gotten headaches in    03:51PM
2   this trial.  Let me just say -- I really do, I'm serious.  So      03:51PM
3   let me just say, look, I'm going to allow the prosecution --       03:51PM
4   because the exhibit's already been admitted, if it was in          03:51PM
5   your -- if it was -- you know, the tide were turned here, I        03:51PM
6   would do the same thing.  I'm going to allow the prosecution       03:52PM
7   to continue with the witness because he hasn't been obviously      03:52PM
8   turned over.  Focus your questions just narrowly on those          03:52PM
9   exhibits.  And then defense can do their recross-examination       03:52PM
10  on the exhibits -- the newer exhibits that were admitted           03:52PM
11  throughout the redirect.  I will allow that.  Okay?  That's        03:52PM
12  fair.                                                              03:52PM
13              MS. MCCONWELL:  So it's limited to 3003-14?            03:52PM
14              THE COURT:  Yeah, that's all she's going to talk       03:52PM
15  about.                                                             03:52PM
16              MS. S. MILLER:  2939, Pages 82 and 83.                 03:52PM
17              MS. MCCONWELL:  Well, we've already talked about       03:52PM
18  that.  We've already talked about 2939-82 and 83.                 03:52PM
19              MR. MARTIN:  We're talking about reopening             03:52PM
20  direct.                                                            03:52PM
21              THE COURT:  Okay.  So yeah, so direct, she's only      03:52PM
22  going to focus on that 3003-14.                                    03:52PM
23              MS. M. MILLER:  Yes.                                   03:52PM
24              THE COURT:  And then it will be passing over to        03:52PM
25  the two of you if you wish to speak or query the witness on        03:52PM
```

*Redirect - Khamvongsa*

1  all the new exhibits that were introduced during the redirect                03:52PM
2  examination.                                                                  03:53PM
3            MS. M. MILLER:  And I will ask Your Honor, in the                   03:53PM
4  future, if Ms. McConwell is going to make an inquiry about                    03:53PM
5  whether an exhibit has or has not been admitted and there's a                 03:53PM
6  decision that there was an error, that we be included in any                  03:53PM
7  of that correspondence, because otherwise, it would -- it                     03:53PM
8  would not be appropriate.  If Ms. Santos did confirm that that                03:53PM
9  was admitted and Ms. McConwell then confirmed that it was                     03:53PM
10 admitted but they didn't let the government know, I'm confused                03:53PM
11 about why that would be the case when the minutes indicated                   03:53PM
12 that it was not admitted.                                                     03:53PM
13            THE COURT:  All right.  Yeah.                                      03:53PM
14            MS. MCCONWELL:  Your Honor, then it goes both                      03:53PM
15 ways.  Because --                                                             03:53PM
16            THE COURT:  What goes both ways?                                   03:53PM
17            MS. MCCONWELL:  Because the agent came up --                       03:53PM
18 has -- continually comes up to ask Ms. Santos about what's                    03:53PM
19 been admitted, and I'm not jumping him.                                       03:53PM
20            THE COURT:  Yeah.  Listen -- yeah.                                 03:53PM
21            MS. M. MILLER:  But if there was ever a                            03:53PM
22 situation --                                                                  03:53PM
23            THE COURT:  Let's just say -- look, look, we're                    03:53PM
24 on Guam.  This is not like we have to get into, like, little                  03:53PM
25 knit-picky, like, should I talk to the court reporter, should                 03:54PM

*Redirect - Khamvongsa*

1    I talk to the courtroom clerk?  Yeah.  So...                    03:54PM

2                (Discussion with clerk.)                            03:54PM

3                THE CLERK:  The transcript with regard to 3003      03:54PM

4    was docketed August 16th, and it does state that 3003 was       03:54PM

5    filed.                                                          03:54PM

6                THE COURT:  Yeah.                                   03:54PM

7                THE CLERK:  So, sorry.  That's where I picked it    03:54PM

8    up.                                                             03:54PM

9                THE COURT:  Yeah.  Don't worry about it.  Listen.   03:54PM

10   Everybody had noted -- if you guys want to, like, clear this    03:54PM

11   up with Carmen, talk to her, you can.  But I'm going to allow   03:54PM

12   you to -- if you need to come talk to my clerk and my court     03:54PM

13   reporter informally about exhibits, it's fine to do that.  I    03:54PM

14   don't have a problem with you doing it individually.  I mean,   03:54PM

15   you know, you're all officers of the court.                     03:54PM

16               MS. M. MILLER:  And I'm not suggesting that's a     03:54PM

17   problem.  What I'm saying, though, is, if the minutes indicate  03:54PM

18   that something was not admitted and then there is a             03:55PM

19   correction --                                                  03:55PM

20               THE COURT:  Okay.                                   03:55PM

21               MS. M. MILLER:  All parties need to know that a     03:55PM

22   correction was made and that an exhibit is now admitted and     03:55PM

23   available.                                                      03:55PM

24               THE COURT:  Well, a dispute -- all right.  So at    03:55PM

25   this point, I'm not going to order that -- I mean, I don't      03:55PM

*Redirect - Khamvongsa*

think we have to get to that point yet.  I'd rather you just      03:55PM

calm down, everybody, and -- you know.  All right.  I'll see      03:55PM

you Monday.  Okay.  Let's see.      03:55PM

          THE WITNESS:  Take care, Your Honor.  Thank you.      03:55PM

          THE COURT:  Thank you.      03:55PM

          (Proceedings concluded at 3:55 p.m.)      03:55PM

                * * *      03:55PM

*Redirect - Khamvongsa*

| | |
|---|---|
| 1 | August 22, 2022; 8:40 a.m.; Hagatna, Guam | 08:12AM |
| 2 | * * * | 08:12AM |
| 3 | | 08:12AM |
| 4 | THE COURT:  All right, good morning, everyone. | 08:40AM |
| 5 | Are we ready to go?  All the jurors are present now? | 08:40AM |
| 6 | MS. M. MILLER:  And, Your Honor, I'm not going to | 08:40AM |
| 7 | ask Special Agent Khamvongsa any questions about 3003-14.  So | 08:40AM |
| 8 | we could go straight to recross. | 08:40AM |
| 9 | THE COURT:  Oh, very good.  Okay.  You ready to | 08:41AM |
| 10 | go?  Did we -- is there anything left that -- did I forget | 08:41AM |
| 11 | anything?  (Laughing.)  I -- I will say -- sorry, I still have | 08:41AM |
| 12 | a little -- still a little cough.  So I'll try to contain it. | 08:41AM |
| 13 | So there was nothing else further, right?  I | 08:41AM |
| 14 | mean, just that you guys wanted to recross, and I made my | 08:41AM |
| 15 | ruling that we can contain -- I mean we'll limit to the new | 08:41AM |
| 16 | exhibits that you all had heard about on re- -- | 08:41AM |
| 17 | MS. M. MILLER:  Redirect. | 08:41AM |
| 18 | THE COURT:  Right.  Right, is that it? | 08:41AM |
| 19 | MS. M. MILLER:  Yes. | 08:41AM |
| 20 | THE COURT:  That was last thing I recall? | 08:41AM |
| 21 | MS. M. MILLER:  Yes. | 08:41AM |
| 22 | THE COURT:  Okay.  So we'll call -- we'll call in | 08:41AM |
| 23 | the jury.  And the agent is here? | 08:41AM |
| 24 | MS. M. MILLER:  Yes. | 08:41AM |
| 25 | THE COURT:  Oh, there you are.  You're always | 08:41AM |

*Redirect - Khamvongsa*

```
 1    there.                                                    08:41AM
 2              MS. M. MILLER:  He was here all weekend.         08:41AM
 3    (Laughing.)                                                08:41AM
 4              THE WITNESS:  I've been waiting patiently.       08:41AM
 5              THE COURT:  Oh, poor guy.  The longest witness   08:42AM
 6    ever.  All right.  So we'll call in the jury, and then I -- 08:42AM
 7    the Court also will be prepared to -- I've already written a 08:42AM
 8    decision, an order on the United States Attorney's motion for 08:42AM
 9    an order permitting testimony and evidence of Defendants'  08:42AM
10    alter ego shell companies.  So I will -- I will send that out 08:42AM
11    to you guys right after -- why don't we do that after -- we'll 08:42AM
12    talk about that after this witness?  You want to do that?  08:42AM
13              MS. M. MILLER:  Sounds good, Your Honor.  Thank  08:42AM
14    you.                                                       08:42AM
15              MR. MARTIN:  Sure.                               08:42AM
16              THE COURT:  Okay.  We'll do that.  And... yeah,  08:42AM
17    let's do that afterwards, let's just focus on this.  I don't 08:42AM
18    want to send it to you now, and then you're going to get   08:42AM
19    thinking about others things.  Let's focus on trying to    08:42AM
20    complete the testimony of this witness.  And then -- then   08:42AM
21    after he's done, which will be -- how long do you think you'll 08:42AM
22    be, Mr. Martin, and -- based on what you know?  Approximately. 08:42AM
23              MR. MCCONWELL:  I have no questions, Your Honor.  08:43AM
24              THE COURT:  Oh, Mr. McConwell has none.          08:43AM
25              How about you, Mr. Martin?                       08:43AM
```

*Redirect - Khamvongsa*

|    |    |    |
|----|----|----|
| 1  | MR. MARTIN:  10, 20 minutes max, Your Honor. | 08:43AM |
| 2  | THE COURT:  Then you'll have Mr. Guzzetti ready? | 08:43AM |
| 3  | MS. M. MILLER:  Yes, Your Honor.  He's ready. | 08:43AM |
| 4  | THE COURT:  Okay.  Excellent.  And then he'll be | 08:43AM |
| 5  | ready.  And then you said you might have him for four hours | 08:43AM |
| 6  | today approximately? | 08:43AM |
| 7  | MS. M. MILLER:  Yes, Your Honor. | 08:43AM |
| 8  | THE COURT:  Okay.  All right.  So what we'll do | 08:43AM |
| 9  | is... um... let's finish him, let's finish this agent.  And | 08:43AM |
| 10 | then I will issue my decision, you guys might want to take a | 08:43AM |
| 11 | few minutes to read it.  And then we could talk about it. | 08:43AM |
| 12 | The only thing I might have to do -- I'm just | 08:43AM |
| 13 | trying to decide if I'm going to go to mass or go to a | 08:43AM |
| 14 | viewing.  I do have a cousin who died, and I did not know | 08:43AM |
| 15 | today was his viewing, but I'll let you know that.  It's just | 08:43AM |
| 16 | down the street.  If I go to the viewing, it will only take me | 08:43AM |
| 17 | 15 minutes.  Please rise for the jury.  So I can do it during | 08:43AM |
| 18 | a recess just to be efficient. | 08:43AM |
| 19 | MS. M. MILLER:  Yes, Your Honor. | 08:43AM |
| 20 | (Jury in at 8:43 a.m.) | 08:43AM |
| 21 | THE COURT:  All right.  Please be seated, ladies | 08:44AM |
| 22 | and gentlemen of the jury.  We'll continue on with the | 08:44AM |
| 23 | examination of Agent Khamvongsa.  And Mr. Martin will have an | 08:44AM |
| 24 | opportunity to conduct a recross-examination.  Yes, | 08:44AM |
| 25 | Mr. Martin. | 08:44AM |

*Redirect - Khamvongsa*

| | | |
|---|---|---|
| 1 | MR. MARTIN:  Thank you, Your Honor.  Morning, | 08:44AM |
| 2 | ladies and gentlemen. | 08:44AM |
| 3 | THE JURY:  Morning. | 08:44AM |
| 4 | MR. MARTIN:  Good morning, Agent Khamvongsa. | 08:44AM |
| 5 | THE WITNESS:  Good morning, sir. | 08:44AM |
| 6 | | 08:44AM |
| 7 | RECROSS-EXAMINATION | 08:44AM |
| 8 | BY MR. MARTIN: | 08:44AM |
| 9 | Q.   When we recessed -- pardon me, I didn't have my | 08:44AM |
| 10 | microphone on.  When we recessed Friday, you had just finished | 08:45AM |
| 11 | your testimony, sir, and in particular, I think you were | 08:45AM |
| 12 | testifying about Government's Exhibit 3003-15. | 08:45AM |
| 13 | If we could briefly pull that up. | 08:45AM |
| 14 | And that had to do with the sale of some aircraft, | 08:45AM |
| 15 | did it not, sir, to Pacific Spotters; correct? | 08:45AM |
| 16 | A.   No. | 08:46AM |
| 17 | Q.   It did not have to do with sale of aircraft to | 08:46AM |
| 18 | Pacific Spotters? | 08:46AM |
| 19 | A.   No. | 08:46AM |
| 20 | Q.   All right.  And who did it have to do with aircraft | 08:46AM |
| 21 | -- | 08:46AM |
| 22 | A.   It actually had to do the sale of scrap. | 08:46AM |
| 23 | Q.   Okay, sir.  Let's go, sir, to Exhibit 30014[sic] | 08:46AM |
| 24 | that's already been introduced into evidence. | 08:46AM |
| 25 | Would you agree with me, sir, that 300.314 is the | 08:46AM |

*Recross – Khamvongsa*

bill of sale that relates to 300.15 that I just asked you    08:46AM

questions about, sir?    08:46AM

    A.    What's reflected here is purported to be --    08:46AM

    Q.    Would you agree, sir, that that relates to the bill    08:46AM

of sale in 300.15, that's the bill of sale for the property    08:47AM

that's in 300.15, sir, would you agree with that?  That's a    08:47AM

yes or no?  Do you agree or not?    08:47AM

    A.    Just to clarify, just this page matches up with the    08:47AM

previous -- the page 3003-15; correct?  That's it?    08:47AM

    Q.    That's it.    08:47AM

    A.    Yes, this page goes to that.    08:47AM

    Q.    And at the top, it says it's a bill of sale, doesn't    08:47AM

it, sir?    08:47AM

    A.    It does say bill of sale.    08:47AM

    Q.    Right.  And -- and it says it is a bill of sale from    08:47AM

Jan's Helicopter Services, and we know to Pacific Spotters;    08:47AM

correct, sir?    08:47AM

    A.    It is from -- it does represent on this document    08:47AM

Jan's Helicopter Service to Pacific.Spotters Corporation.    08:47AM

    Q.    And it deals with the sale of aircraft -- if we can    08:47AM

go back up to the top, please.    08:47AM

        It deals with the sale of what is collectively known    08:48AM

as aircraft from Jan's Helicopter Services; correct , sir?    08:48AM

    A.    No.    08:48AM

    Q.    Okay.  And if we can go up to right about there.    08:48AM

1    Just go right up there.  That's where I want to be.        08:48AM

2            Are you telling me that those items that are listed    08:48AM

3    there are not aircraft, sir?                                  08:48AM

4        A.   You're negating the second page where they say --    08:48AM

5        Q.   I asked you about the items listed on this page.     08:48AM

6    I'll get to the second page, okay, sir.                       08:49AM

7            This is not going to take ten minutes, Judge.  And I  08:49AM

8    apologize.                                                    08:49AM

9            We're on page 300.3.14.  That's the only page I'm     08:49AM

10   talking about.                                                08:49AM

11       A.   Okay.  So --                                         08:49AM

12       Q.   All right.  Would you agree with me, sir, that the   08:49AM

13   items listed there are aircraft?                              08:49AM

14       A.   The items listed here are purported to be aircraft.  08:49AM

15       Q.   Okay.  And will you agree with me, sir, and if we    08:49AM

16   need to raise this, you can you count them, that there purport 08:49AM

17   to be 17 aircraft on that page?                               08:49AM

18       A.   Yes, 17.                                             08:49AM

19       Q.   Okay.                                                08:49AM

20       A.   I will agree with 17.                                08:49AM

21       Q.   All right.  And will you agree with me, sir, that    08:49AM

22   they were sold for $340,000 for all of 'em?                   08:49AM

23       A.   I will not -- I disagree.                            08:49AM

24       Q.   All right.  Would you agree with me, sir, if we can  08:49AM

25   go to page 303 -- 3003.15, stop right there.  That the total  08:50AM

*Recross - Khamvongsa*

1    amount of the sale was $340,000?                                      08:50AM

2        A.   This document represents $340,000.  May have                08:50AM

3    happened, but the exchange was basically between Jon Walker          08:50AM

4    and Jon Walker.  So there is no real exchange of money.              08:50AM

5        Q.   I'm asking you -- I didn't ask you about your               08:50AM

6    opinion.  I asked you what's on that page, sir.  Does that           08:50AM

7    page represent that there was a sale for $340,000?  What's on        08:50AM

8    that page?                                                           08:50AM

9        A.   This page does reflect $340,000, yes.                       08:50AM

10       Q.   And as a matter of fact, you testified Friday that          08:50AM

11   the value of these aircraft, as I recall, was almost                 08:50AM

12   $14 million, do you recall that, sir?                                 08:50AM

13       A.   What I testified to was that there was an                    08:51AM

14   inconsistency with what's reflected here and what's on Hansen        08:51AM

15   Helicopters -- or Wilma's Flight Services, Inc. balance sheet,       08:51AM

16   which reflected a $14 million aircrafts, their inventory.            08:51AM

17       Q.   And you will agree with me, won't you, sir, if we'll        08:51AM

18   go back up to 3003.14, that is not their inventory, is it,           08:51AM

19   sir?  Will you agree with that?                                       08:51AM

20       A.   Who is their inventory?                                      08:51AM

21       Q.   You just said that there is an inconsistency in the         08:51AM

22   inventory.  That is not the inventory, is it, sir?                   08:51AM

23       A.   For Hansen Helicopters or Jan's Helicopter Service?         08:51AM

24   Or Pacific Spotters Corporation?                                      08:51AM

25       Q.   I'm talking to you, sir, about your prior testimony.        08:51AM

```
 1      A.   Correct.                                          08:51AM

 2      Q.   Do you recall testifying --                       08:51AM

 3      A.   So --                                             08:51AM

 4      Q.   Do you recall testifying Friday that there was    08:51AM

 5 approximately $14 million in inventory of helicopters?  Do you  08:51AM

 6 recall that, sir?                                          08:52AM

 7      A.   Absolutely, yes, it's on the balance sheet that's 08:52AM

 8 reflected on the --                                        08:52AM

 9      Q.   This is not that inventory, is it?                08:52AM

10           MS. M. MILLER:  Your Honor, for the record, could 08:52AM

11 we have just the witness be able to answer then -- because 08:52AM

12 otherwise, it's not -- the record is not going to be clear. 08:52AM

13           THE COURT:  Good point.                           08:52AM

14           MR. MARTIN:  If he would answer, Your Honor, we'd 08:52AM

15 get a lot better, but he's just arguing with me.           08:52AM

16           My question is --                                 08:52AM

17           THE COURT:  Okay.  Well --                        08:52AM

18           MS. M. MILLER:  Your Honor, I'm going move to     08:52AM

19 strike that.                                               08:52AM

20           THE COURT:  Okay.  Let's -- motion granted.       08:52AM

21 Stricken.  Please disregard it, ladies and gentlemen of the 08:52AM

22 jury.  So Mr. -- hold on.  So Mr. -- Agent, make sure that -- 08:52AM

23 listen to the question, and just answer the question.  So if 08:52AM

24 it calls for yes or no, just answer yes or no, if you could 08:52AM

25 answer yes or no.  But just answer the questions.          08:52AM
```

*Recross - Khamvongsa*

|   |   |
|---|---|
| 1 | THE WITNESS:  Yes, Your Honor. | 08:52AM |
| 2 | THE COURT:  And then Mr. Martin, let's not get | 08:52AM |
| 3 | excited.  Let's calm down.  You guys -- we're almost at the | 08:52AM |
| 4 | finish line, team.  So let's do it. | 08:52AM |
| 5 | Okay.  Go ahead. | 08:52AM |
| 6 | BY MR. MARTIN: (CONTINUING) | 08:52AM |
| 7 | Q.   Agent Khamvongsa, 3003.14, is not the inventory, is | 08:52AM |
| 8 | it, sir? | 08:53AM |
| 9 | A.   It is the inventory. | 08:53AM |
| 10 | Q.   I'm going to show you what's already been shown to | 08:53AM |
| 11 | you multiple times.  It's from the indictment.  It's paragraph | 08:53AM |
| 12 | 126, sir. | 08:53AM |
| 13 | Sir, do you see part of paragraph 126 there? | 08:54AM |
| 14 | A.   Yes, I see part of it. | 08:54AM |
| 15 | Q.   All right.  And those are aircraft, are they not, | 08:54AM |
| 16 | sir? | 08:54AM |
| 17 | A.   These are U.S.-registered aircraft; yes. | 08:54AM |
| 18 | Q.   Okay.  Let's just deal with page 34, right there. | 08:54AM |
| 19 | How many aircraft are listed on that page? | 08:54AM |
| 20 | A.   20, on page 34. | 08:54AM |
| 21 | Q.   20.  Okay.  Let's go up to page 35. | 08:54AM |
| 22 | How many aircraft are listed on page 35, sir? | 08:54AM |
| 23 | A.   I believe it's 50. | 08:54AM |
| 24 | Q.   And so 20 plus 50, will you agree with me, that's 70 | 08:55AM |
| 25 | aircraft listed in -- listed in the indictment in | 08:55AM |

1   paragraph 126, sir?                                          08:55AM

2       A.   Yes, around that much.  Yeah.  Yes.                 08:55AM

3       Q.   And will you agree with me, sir, that 17 is less than  08:55AM

4   70?                                                          08:55AM

5       A.   I will agree with you that the number 17 is less than  08:55AM

6   70.                                                          08:55AM

7       Q.   Okay.  And, sir, you made reference, I believe, to, I  08:55AM

8   think it's... Exhibit 2939 on Friday, do you recall that, sir?  08:55AM

9   That's the -- that's the -- let me be more specific for you.  08:56AM

10  I apologize.  That's the -- I believe, the records for the   08:56AM

11  Community First Bank of Guam; do you recall that?            08:56AM

12      A.   I recall the log, I'm just not 100% sure the exhibit  08:56AM

13  number matches up with the document.                         08:56AM

14      Q.   Okay.  Well, let's go to 2939, if we could.        08:56AM

15      A.   Thank you.                                          08:56AM

16      Q.   Does that aid your recollection, sir?               08:56AM

17      A.   The signature card member application for Community  08:56AM

18  First Guam Federal Credit Union, yes, sir.  For one year of  08:56AM

19  service.                                                     08:56AM

20      Q.   Right, right.  And you testified about that Friday,  08:56AM

21  do you recall that, sir?                                     08:56AM

22      A.   Yes, sir.                                           08:56AM

23      Q.   As a matter of fact, if -- if we look, for example,  08:56AM

24  you mentioned that it was a -- the signature card.  Those are  08:56AM

25  the people that are authorized to write checks and wires, do  08:57AM

1    things relating to that account, right?                    08:57AM

2        A.    Those are individuals that are signers on the    08:57AM

3    account; yes.                                              08:57AM

4        Q.    Okay.  Jon Walker is not on that account as a    08:57AM

5    signatory, is he, sir?                                     08:57AM

6        A.    His name literally isn't on this.                08:57AM

7        Q.    He is not a signatory; correct, sir?             08:57AM

8        A.    Yes.                                             08:57AM

9        Q.    Okay.  Now, you testified, sir, in particular, about  08:57AM

10   Government's Exhibit 366-23, I believe that was aircraft   08:57AM

11   number, if we could pull that up, aircraft number N74AM.  Do  08:57AM

12   you recall that aircraft?  It was from the list of those that  08:57AM

13   I had shown you that Ms. Miller cross-examined -- or direct  08:57AM

14   examined you about?                                        08:57AM

15       A.    I believe this is the one with Fling Air and the Guam  08:57AM

16   address?                                                   08:57AM

17       Q.    Absolutely, sir.                                 08:58AM

18       A.    Correct.                                         08:58AM

19       Q.    Absolutely.  And as you'll recall, those records came  08:58AM

20   from Jon Walker -- were sent to Jon Walker's friend, the   08:58AM

21   lawyer who was going to put together the business plan for  08:58AM

22   him, right?                                                08:58AM

23       A.    I don't know if that's his friend or not.        08:58AM

24       Q.    I'm sorry?                                       08:58AM

25       A.    I don't know if that's Jon Walker's friend or not.  I  08:58AM

1   just know, based upon the information, it appeared to be a           08:58AM

2   potential buyer.                                                     08:58AM

3           MS. M. MILLER:  Your Honor, I'm going to move to            08:58AM

4   strike, assumes facts not in evidence.                              08:58AM

5           MR. MARTIN:  You've read everything -- I'll                 08:58AM

6   withdraw the question.                                              08:58AM

7           THE COURT:  All right.  Question withdrawn,                 08:58AM

8   answer withdrawn -- stricken.  Go ahead.                            08:58AM

9   BY MR. MARTIN: (CONTINUING)                                         08:58AM

10      Q.   You've reviewed everything in this case?                   08:58AM

11      A.   I have.                                                    08:58AM

12      Q.   And you know from reviewing everything in this case,       08:58AM

13   number one, he's a lawyer, right?                                  08:58AM

14      A.   Don't recall if he's a lawyer or not.                      08:58AM

15      Q.   If we could look at Government's Exhibit -- not being      08:58AM

16   introduced, but for you, 3007.                                     08:58AM

17           MS. M. MILLER:  Your Honor, I'm going to object.           08:58AM

18   We're going outside the scope right now of my redirect.           08:58AM

19           MR. MARTIN:  It's impeachment, Your Honor.                 08:59AM

20           THE COURT:  Okay.                                          08:59AM

21           MR. MARTIN:  It's clear impeachment.                       08:59AM

22           THE COURT:  Impeachment?  All right.  Overruled.           08:59AM

23           MS. M. MILLER:  Can I have clarity on what's               08:59AM

24   being impeached?                                                   08:59AM

25           MR. MARTIN:  When the exhibit comes up it will be          08:59AM

*Recross - Khamvongsa*

```
 1    --                                                              08:59AM

 2             THE COURT:  Well, I think the last question?           08:59AM

 3             MR. MARTIN:  The last question.                        08:59AM

 4             THE COURT:  Well, let's see.                           08:59AM

 5             MS. M. MILLER:  Well, here's the problem with          08:59AM

 6    that question, Counsel had represented that that attorney was   08:59AM

 7    Mr. Walker's attorney, Then he withdrew that representation.    08:59AM

 8             MR. MARTIN:  We're doing a speaking --                 08:59AM

 9             THE COURT:  Counsel.                                   08:59AM

10             MR. MARTIN:  We have a speaking objection.            08:59AM

11             THE COURT:  The Court will overrule the               08:59AM

12    objection.  Overruled.                                          08:59AM

13             MR. MARTIN:  This is not in evidence, Your Honor.      08:59AM

14    If we need to do something --                                   08:59AM

15             THE COURT:  All right.  So okay it's not in           08:59AM

16    evidence.  All right.  So just show the Counsel.               08:59AM

17    BY MR. MARTIN: (CONTINUING)                                     08:59AM

18      Q.   Sir, do you recognize what's been marked for            08:59AM

19    identification purposes as Government's Exhibit 3007-1, sir?   08:59AM

20      A.   It looks familiar.                                       08:59AM

21      Q.   Well, that's the government's exhibit, isn't it?        08:59AM

22      A.   I reviewed a lot of documents so --                     08:59AM

23      Q.   My question was, is that a government's exhibit?        09:00AM

24      A.   3007-1, yes.                                             09:00AM

25      Q.   Okay.  And you, I believe, testified you've seen        09:00AM
```

*Recross - Khamvongsa*

1    everything in this case; correct, sir?                    09:00AM

2        A.   I've seen a lot of documents just like you have.   09:00AM

3            MR. MARTIN:  All right.  And, Your Honor, I move    09:00AM

4    for the introduction of Government's Exhibit 3007.         09:00AM

5            THE COURT:  Okay.  Any objections, Counsel?         09:00AM

6            MS. M. MILLER:  Yes, Your Honor.  I object,         09:00AM

7    outside the scope, I object on the basis of hearsay.  It's not  09:00AM

8    being offered by a party opponent.  And I object on the basis   09:00AM

9    of relevance.                                              09:00AM

10            MR. MARTIN:  Your Honor.                           09:00AM

11            THE COURT:  Okay.  Relevance is overruled.  But    09:00AM

12    beyond -- okay.  And beyond the scope, that's overruled on  09:00AM

13    impeachment.  What was the third objection?               09:00AM

14            MS. M. MILLER:  Hearsay, Your Honor.               09:00AM

15            THE COURT:  Hearsay?                               09:00AM

16            MR. MARTIN:  It's impeachment, Your Honor.         09:00AM

17            MS. M. MILLER:  That -- just because it's          09:00AM

18    impeachment doesn't except it from the hearsay rule, Your   09:00AM

19    Honor.                                                     09:00AM

20            THE COURT:  Anything further?  Anything further?   09:01AM

21            MS. M. MILLER:  No.                                09:01AM

22            MR. MARTIN:  Your Honor, it's not impeachment      09:01AM

23    under the government's theory in that they say it's a      09:01AM

24    co-conspirator statement.                                 09:01AM

25            THE COURT:  Okay.                                  09:01AM

*Recross - Khamvongsa*

```
 1              MS. M. MILLER:  Well, Your Honor, but it -- I          09:01AM
 2    would have to offer it.                                          09:01AM
 3              THE COURT:  Okay.  Yes, Ms. McConwell?                 09:01AM
 4              MS. MCCONWELL:  The --                                 09:01AM
 5              THE COURT:  I'm sorry, can you speak a little          09:01AM
 6    louder?                                                          09:01AM
 7              MS. MCCONWELL:  Yes.  The agent had previously         09:01AM
 8    testified that it was an investor that was being communicated    09:01AM
 9    with in other exhibits, and Ms. Miller also made that           09:01AM
10    representation.  And so this directly affects his knowledge of   09:01AM
11    who the identity of Mr. Ferruzzo is.                            09:01AM
12              MS. M. MILLER:  There is absolutely nothing in        09:01AM
13    this document that is contrary to that representation.          09:01AM
14              THE COURT:  All right.                                09:01AM
15              MS. M. MILLER:  As a matter of fact, Your Honor,      09:01AM
16    there's been a piece of evidence that has been admitted, which  09:01AM
17    is Exhibit 425, which has this person's name on it and the      09:01AM
18    fact that he is part of a law firm --                           09:01AM
19              THE COURT:  Okay.  Well, Court will overrule the      09:01AM
20    objection.  Go ahead, proceed.                                  09:01AM
21              MR. MARTIN:  May we publish it to the jury, Your      09:01AM
22    Honor?                                                           09:01AM
23              THE COURT:  You may.  3007-1 admitted over            09:01AM
24    objection and may be published.                                 09:02AM
25    (Exhibit 3007-1 admitted.)                                      09:02AM
```

*Recross - Khamvongsa*

```
 1    BY MR. MARTIN:  (CONTINUING)                              09:02AM

 2        Q.    Agent Khamvongsa, would you agree with me that this   09:02AM

 3    -- the lower portion of this is an e-mail from Jon Walker to    09:02AM

 4    Rufus Crowe, sir?                                          09:02AM

 5        A.    Yes, from Jon Walker to Rufus Crowe.             09:02AM

 6        Q.    And will you read to the ladies and gentlemen of the  09:02AM

 7    jury where I've marked where it says "Rufus," would you read    09:02AM

 8    that to the ladies and gentlemen of the jury?             09:02AM

 9        A.    "Rufus, I hired a legal firm to help with the company 09:02AM

10    sale.  It's Greg Ferruzzo and his uncle Tom Ferruzzo.  Greg     09:02AM

11    races with us.  I'm not sure if you met him or not when you     09:02AM

12    were in Baja.  They operate some huge law firm in Long Beach.   09:02AM

13    They'll be calling and e-mailing you and Les.  Give them        09:02AM

14    whatever they need.  Thanks, Jon."                        09:02AM

15        Q.    Does that refresh your memory, sir, as to who Tom     09:02AM

16    Ferruzzo and Greg Ferruzzo are, sir?                      09:02AM

17        A.    The name Tom Ferruzzo is familiar.  Greg Ferruzzo,    09:03AM

18    I'm not -- this is the first that I can remember the name       09:03AM

19    coming up.                                                 09:03AM

20        Q.    So your answer is -- let me rephrase the question.    09:03AM

21    Does it refresh your memory as to who Tom Ferruzzo is, sir?     09:03AM

22        A.    Yes.                                             09:03AM

23        Q.    He's a lawyer; correct, sir?                    09:03AM

24        A.    (Pause.)  Uhh, he's represented as -- as being part  09:03AM

25    of the legal firm.                                         09:03AM
```

*Recross - Khamvongsa*

```
 1      Q.   Okay.  If we could go to 366, Government's Exhibit      09:03AM

 2   366.                                                           09:03AM

 3           And, sir, do you see that e-mail?                      09:03AM

 4      A.   Yes.                                                   09:03AM

 5      Q.   This has already been introduced.  And who is the      09:03AM

 6   e-mail to, sir?                                                09:04AM

 7      A.   Tom Ferruzzo, the name that I'm familiar with.         09:04AM

 8      Q.   The gentleman we just talked about?                    09:04AM

 9      A.   As it relates to this e-mail, yes.                     09:04AM

10      Q.   Okay.  And this -- as a matter of fact, it's on the    09:04AM

11   same day, isn't it?  I don't know if we need to go back to the 09:04AM

12   other e-mail, but I'll represent to you that both e-mails were 09:04AM

13   sent on October 5th, and if you don't believe me, I'm happy to 09:04AM

14   go back.                                                       09:04AM

15      A.   Yes, please.                                           09:04AM

16      Q.   Okay.  Let's go back to 3007.  The date here is        09:04AM

17   Wednesday, October 5th, right, 2016?                           09:04AM

18      A.   That's what's represented there, yes.                  09:04AM

19      Q.   Okay.  And tell me what the date is on the one that's  09:04AM

20   getting ready to come up.  Will you tell us what the date is?  09:04AM

21      A.   October 6th, 2016.                                     09:04AM

22      Q.   Okay.  And the date at the top from Rufus?             09:05AM

23      A.   October 5th, 2016.                                     09:05AM

24      Q.   Okay.  They're all within the same general time        09:05AM

25   frame, right?                                                  09:05AM
```

*Recross - Khamvongsa*

1    A.    Yes.                                                      09:05AM

2    Q.    And you'll agree with me that Guam is several hours       09:05AM

3  ahead of the United States, right, sir?                          09:05AM

4    A.    Yes.                                                      09:05AM

5    Q.    In the time -- in the time -- okay.  Now, in this         09:05AM

6  e-mail that's on -- that's here, if we can go to -- I think I    09:05AM

7  was asking you about Fling Air, and, I believe, it's on          09:05AM

8  page 23 of this exhibit.  If we can -- don't move it.            09:05AM

9          MS. MCCONWELL:  I'm sorry.                                09:05AM

10 BY MR. MARTIN: (CONTINUING)                                      09:05AM

11   Q.    All right.  Do you see where I put the dot, sir?          09:05AM

12   A.    Yes.                                                      09:05AM

13   Q.    And that's Fling Air?                                     09:05AM

14   A.    Yes.                                                      09:05AM

15   Q.    And that's the one that we said shows that it's in        09:05AM

16 Guam, right, sir?                                                09:06AM

17   A.    Yes.                                                      09:06AM

18   Q.    Okay.  And we -- we talked about this the other day,      09:06AM

19 and maybe you forgot it when you were testifying Friday, but     09:06AM

20 next to state, the word "foreign" is inserted.  Do you see       09:06AM

21 that sir?                                                        09:06AM

22   A.    It's purported to be foreign on the document.            09:06AM

23   Q.    Well, the word "foreign" is inserted; correct, sir,      09:06AM

24 just the word "foreign" is inserted?                             09:06AM

25   A.    For this document, the word "foreign" is listed on       09:06AM

1    this document.                                                    09:06AM

2        Q.   Okay.  And this is a document that was created by the    09:06AM

3    Federal Aviation Administration; correct, sir?                    09:06AM

4        A.   Well, it was actually created by Jon Walker, who         09:06AM

5    would have submitted the document.                                09:06AM

6        Q.   Now, this document that's on the page, Jon Walker        09:06AM

7    didn't create this page, did he, sir?                             09:06AM

8        A.   If we're just talking about what's on the page --        09:06AM

9        Q.   I'm asking you, the page that is being disclosed to      09:06AM

10   you, Government's Exhibit 366-23, that document was prepared      09:06AM

11   by the Federal Aviation Administration, one of their             09:07AM

12   employees; correct, sir?                                          09:07AM

13       A.   No.                                                      09:07AM

14       Q.   Who prepared it?  Who prepared that page?                09:07AM

15       A.   Jon Walker, because they rely -- all this information    09:07AM

16   is dependent upon what the individual submits to the FAA         09:07AM

17   registry.                                                         09:07AM

18       Q.   So you're saying that although Jon Walker's name is      09:07AM

19   nowhere on this page, he sat down at a computer and a            09:07AM

20   typewriter and typed all these numbers and letters and          09:07AM

21   everything out.  Is that what you're telling the ladies and      09:07AM

22   gentlemen of the jury?                                            09:07AM

23       A.   No, that's incorrect.                                   09:07AM

24       Q.   Well, somebody at the FAA prepared this document,       09:07AM

25   isn't that true, sir?                                             09:07AM

```
 1      A.   They relied -- no, they relied on Jon Walker's input.   09:07AM
 2   It relies on a document submitted to the FAA.                   09:07AM
 3      Q.   Let me ask you a question, sir.  I want you to think    09:07AM
 4   about it.                                                       09:07AM
 5      A.   Okay.                                                   09:07AM
 6      Q.   Did I ask you anything about anybody relying on         09:07AM
 7   anything?                                                       09:07AM
 8      A.   Your question --                                       09:07AM
 9      Q.   Did I ask you anything about anybody relying on         09:07AM
10   anything?                                                       09:08AM
11      A.   Not specifically the word "rely."                      09:08AM
12      Q.   So the answer is, no, you didn't, Mr. Martin?          09:08AM
13      A.   Sorry.  I wasn't sure if that was a question or a       09:08AM
14   statement.                                                      09:08AM
15      Q.   The question was -- so the answer is, no, you didn't   09:08AM
16   ask me anything about reliance, Mr. Martin.                     09:08AM
17           MS. M. MILLER:  Your Honor, I'm going to object.        09:08AM
18   BY MR. MARTIN:  (CONTINUING)                                    09:08AM
19      Q.   Do you agree with that?                                 09:08AM
20           MS. M. MILLER:  I'm trying to object.                   09:08AM
21           THE COURT:  I'm sorry.  What's your objection?          09:08AM
22           MS. M. MILLER:  Basis of argumentative, Your            09:08AM
23   Honor.  He now wants to tell the witness this is how I want     09:08AM
24   you to answer.  Is the witness being scolded like a child?      09:08AM
25           MR. MARTIN:  Is that an objection, Your Honor?          09:08AM
```

*Recross - Khamvongsa*

```
 1  That wasn't a scold, it was a question.  I asked him if I          09:08AM
 2  asked him about reliance.                                          09:08AM
 3              THE COURT:  All right.  Whatever it was,                09:08AM
 4  objection or not, overruled.  Just answer the question.            09:08AM
 5              Did you understand his last question on reliance?       09:08AM
 6              THE WITNESS:  Sorry.  Go ahead and ask it again.        09:08AM
 7  Again, I wasn't sure if it was a statement or a question.           09:09AM
 8              THE COURT:  All right.                                  09:09AM
 9  BY MR. MARTIN:  (CONTINUING)                                       09:09AM
10     Q.   Isn't it true I didn't ask you anything about anybody      09:09AM
11  relying on anything?                                               09:09AM
12     A.   No.                                                        09:09AM
13     Q.   You disagree with that?                                    09:09AM
14     A.   In the question -- the -- specifically the word            09:09AM
15  "rely," you're right; correct.                                     09:09AM
16     Q.   Okay.                                                      09:09AM
17              MR. MARTIN:  Your Honor, I need just a second.          09:09AM
18              THE COURT:  Sure.  That's fine.                         09:09AM
19  BY MR. MARTIN:  (CONTINUING)                                       09:11AM
20     Q.   Would you agree with me, sir, that the exhibit we          09:11AM
21  just had up, which was 366-23 relating to Fling Air, somebody      09:11AM
22  told the FAA it was a foreign corporation?                         09:11AM
23     A.   Somebody.                                                  09:11AM
24     Q.   Okay.                                                      09:11AM
25              MR. MARTIN:  No further questions.                      09:11AM
```

*Recross - Khamvongsa*

```
 1                THE COURT:  No further questions.  Mr. McConwell,    09:11AM

 2   or Ms. McConwell, any questions?                                  09:11AM

 3                MS. MCCONWELL:  No, ma'am.                            09:11AM

 4                THE COURT:  No, okay.  Very well.                     09:11AM

 5                MS. M. MILLER:  Only one question, Your Honor.        09:11AM

 6                THE COURT:  Oh, okay.  Yes.                           09:11AM

 7                                                                     09:11AM

 8                     REDIRECT EXAMINATION                            09:11AM

 9   BY MS. M. MILLER:                                                  09:11AM

10       Q.   So Special Agent Khamvongsa, based on what we just       09:11AM

11   heard from Mr. Martin, everything in Exhibit 366 was produced     09:11AM

12   at the request of Jon Walker to attorneys representing him        09:11AM

13   when he tried to sell his company?                                09:11AM

14       A.   Yes.                                                     09:11AM

15                MS. M. MILLER:  No further questions, Your Honor.     09:11AM

16                THE COURT:  Okay.  All right.  May we excuse this     09:11AM

17   witness, Counsels?                                                09:11AM

18                MS. M. MILLER:  Yes.                                 09:11AM

19                THE COURT:  Yes?                                     09:11AM

20                MR. MARTIN:  Do we have to, Judge?  We're having      09:11AM

21   a good time.                                                      09:11AM

22                THE COURT:  Okay.  I'm glad somebody is.             09:11AM

23                MS. M. MILLER:  Yes, Your Honor.                     09:12AM

24                THE COURT:  Yeah.                                    09:12AM

25                MR. MARTIN:  He may be excused.                      09:12AM
```

*Redirect - Khamvongsa*

```
 1              THE COURT:  Yes, Ms. McConwell --                09:12AM

 2              MS. MCCONWELL:  Yes.                             09:12AM

 3              THE COURT:  So you're excused.  Have a nice day. 09:12AM

 4              THE WITNESS:  Thank you, Your Honor.  Thank you. 09:12AM

 5              THE COURT:  Take care.                           09:12AM

 6              THE WITNESS:  Thank you.                         09:12AM

 7              THE COURT:  How long have we been -- yeah, three 09:12AM

 8    -- three minutes.  All right.  Ladies and gentlemen of the 09:12AM

 9    jury, we're going to go ahead and take a 15-minute recess.  I 09:12AM

10    want to talk to the attorneys on something real quick before 09:12AM

11    they call their next witness.  All right.  So please rise,  09:12AM

12    keep an open mind.  It's not yet over, but we're almost over. 09:12AM

13    We're almost there.  So please rise for the jury.          09:12AM

14              (Jury out at 9:12 a.m.)                          09:12AM

15              THE COURT:  Okay.  Thank you, jury.  Thank you.  09:12AM

16    All right.  So let me just -- let me just give you my       09:12AM

17    conclusion and I'm going to submit -- send this out to you.  09:12AM

18    It is -- so we got to put the numbers on -- put the page     09:13AM

19    numbers on it.  I forgot -- this one didn't have it.  Before I 09:13AM

20    -- before I sign off and issue it.  But so I wrote a -- how   09:13AM

21    many pages, it's about 15?  Emily?  34.  34 pages.  Let's    09:13AM

22    backtrack.  34-page -- the Court has issued -- is going to   09:13AM

23    issue a 34-page decision.  I'm issuing it today like in the  09:13AM

24    next minute or so.  Order regarding, as I'm indicating, United 09:13AM

25    States' motion for order permitting testimony in evidence of 09:13AM
```

*Redirect - Khamvongsa*

1    defendant's alter ego shell companies.  I'm sorry, I thought          09:13AM

2    it was less, but it actually was back-to-back.  I have the           09:13AM

3    back-to-back version.                                                 09:13AM

4           So my conclusion is Alpha Air, let me look at                  09:13AM

5    this, Alpha Air, A-L-F-A Air, A-L-P-H-A Air, Americo --               09:13AM

6    Americopters, Bean Bag, Bill's, Bravo, Caledonian, Chance,            09:13AM

7    Charlie, Dave's, Echo, Eddie, Evan, Fidget, Figet, Fling,             09:13AM

8    Foxtrot, H-H, Hansen, Hansen Northern, Heli Fish, Jan's,              09:14AM

9    Jerry's, Jim's, Judy's, Limey, Marlin Bay, O'Hara, Oceanside,         09:14AM

10   Rosie, South Pacific Spotters, Tunacopters, Walk Air, Walker          09:14AM

11   Helicopters, Whirlwide, and Wilma's shall be considered alter         09:14AM

12   egos of Defendant Hansen Helicopters for the purposes of              09:14AM

13   relevancy objections.  The Court declines to make a                   09:14AM

14   Rule 104(b) finding at this time as to Defendant Hansen               09:14AM

15   Helicopters, Hansen Helicopters Marshall, M-A-R-S-H-A-L-L,            09:14AM

16   Mid-America Turbine, Trafficopters, Vanguard Aviation, Walker         09:14AM

17   Agricola, LLC, and Walker's Helicopters and those -- the              09:14AM

18   reasons for both findings are contained in the 34-page                09:14AM

19   opinion.                                                              09:15AM

20          So do you want -- you guys want take time to                   09:15AM

21   review this before we hear from Mr. Guzzetti, or do you want          09:15AM

22   to just go -- I'm going to go ahead and issue it.  I'm signing        09:15AM

23   off on it, I'm just going to put on my electronic signature,         09:15AM

24   and we could go forward.                                              09:15AM

25          MS. M. MILLER:  I think we'd like to go forward               09:15AM

| | |
|---|---|
| 1 | with Mr. Guzzetti, Your Honor. | 09:15AM |
| 2 | THE COURT:  Okay.  And Mr. -- yeah, it's probably | 09:15AM |
| 3 | a good idea. | 09:15AM |
| 4 | MR. MARTIN:  We kind of like to look at it, | 09:15AM |
| 5 | Judge.  Just so we know that we don't step into something. | 09:15AM |
| 6 | THE COURT:  Okay.  Well, I'll give you | 09:15AM |
| 7 | 15 minutes, and if you need more time, just let me know.  But | 09:15AM |
| 8 | I think -- well, you think you can you read -- are you guys | 09:15AM |
| 9 | fast readers?  Did you take speed reading in law school?  I | 09:15AM |
| 10 | did. | 09:15AM |
| 11 | MS. M. MILLER:  Evelyn Wood.  Remember? | 09:15AM |
| 12 | THE COURT:  Yeah, I took -- | 09:15AM |
| 13 | MS. M. MILLER:  Evelyn Wood. | 09:15AM |
| 14 | THE COURT:  Or what's Stanley Kaplan, was that | 09:15AM |
| 15 | for LSAT? | 09:15AM |
| 16 | MS. M. MILLER:  That was LSAT. | 09:15AM |
| 17 | THE COURT:  Yeah, I took that too.  I needed all | 09:15AM |
| 18 | the help I could get.  All right.  So why don't I give you -- | 09:15AM |
| 19 | you want 30 minutes? | 09:15AM |
| 20 | MS. MCCONWELL:  Yes. | 09:15AM |
| 21 | THE COURT:  Well, if I give you 30 minutes, then | 09:15AM |
| 22 | I could run over -- actually. | 09:16AM |
| 23 | MS. M. MILLER:  Oh, yeah, yeah, yeah. | 09:16AM |
| 24 | THE COURT:  I could run and go to a family | 09:16AM |
| 25 | viewing for -- for my cousin who passed away.  So I could just | 09:16AM |

1    run up to Sinajana, which is like eight minutes away.                    09:16AM

2              MS. MCCONWELL:  We'll multitask.                                09:16AM

3              MS. M. MILLER:  Could we also count this as our                 09:16AM

4    morning break?  So when the jury does come back after Guzzetti           09:16AM

5    gets on, we can go through lunch.                                        09:16AM

6              THE COURT:  Yeah -- yeah, we can do that -- we                  09:16AM

7    can do that.  But why don't you review it --                            09:16AM

8              MS. MCCONWELL:  Go until lunch.                                09:16AM

9              THE COURT:  I'm sorry.                                         09:16AM

10             MS. MCCONWELL:  She means go until lunch, not                   09:16AM

11   through lunch.                                                           09:16AM

12             THE COURT:  Yeah, that's right.  So let me go --               09:16AM

13   I'll sign off on this, you guys will get your electronic                 09:16AM

14   copies.  And then I think -- I might have another -- I know we           09:16AM

15   worked on something else.  Should I issue that one too, or the           09:16AM

16   other one, or no, not yet?                                               09:16AM

17             MR. MARTIN:  There were some summary exhibits                   09:16AM

18   objections that we had, Your Honor, that may relate to Mr.               09:16AM

19   Guzzetti's --                                                            09:16AM

20             THE COURT:  Okay.  I thought I -- okay.  Let me                 09:16AM

21   -- let me double-check that.  I know -- I know I was -- we               09:16AM

22   were working on these things so --                                      09:16AM

23             MS. M. MILLER:  And you instructed Counsel, Your               09:16AM

24   Honor, if they had any specific inaccuracy challenges to raise          09:16AM

25   those, and we've gotten nothing from them.  So the government           09:17AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

```
 1   would object to having any more protracted arguments on the        09:17AM
 2   general admissibility of summary charts.                           09:17AM
 3               THE COURT:  Yeah, yeah, I don't -- I don't want        09:17AM
 4   any --                                                             09:17AM
 5               MR. MARTIN:  That would -- we've never even            09:17AM
 6   addressed the issue I just brought up, Your Honor.                 09:17AM
 7               THE COURT:  These are other --                         09:17AM
 8               MR. MARTIN:  They came up with, I think, and I         09:17AM
 9   may be wrong on the number, let me just say, multiple summary      09:17AM
10   charts that were not -- I'm not talking about -- they label       09:17AM
11   them as demonstrative exhibits, we call them summary charts       09:17AM
12   that were just produced last week.                                 09:17AM
13               THE COURT:  Okay.  Well, okay.                         09:17AM
14               MR. MARTIN:  And I filed a motion on that.             09:17AM
15               MS. M. MILLER:  We did talk about this already.        09:17AM
16               THE COURT:  Hold on.  Let me just say something.       09:17AM
17   On the demonstrative exhibits that they have put up, they're      09:17AM
18   really just a copy of the indictment, like, they'll just pull     09:17AM
19   up, like, a count.  As I recall.                                  09:17AM
20               MR. MARTIN:  Not the ones I'm talking about now,       09:17AM
21   Your Honor.  These are related to Mr. Guzzetti, and I filed a     09:17AM
22   motion and, if I -- if you'll give me a second --                 09:17AM
23               THE COURT:  Let me just ask you, if they're not       09:17AM
24   related to Guzzetti, then we won't worry about that, but were     09:17AM
25   they related to Mr. Klang.                                        09:17AM
```

```
 1              MR. MARTIN:  They're related to Mr. Guzzetti.    09:17AM

 2    The ones --                                               09:18AM

 3              THE COURT:  Oh, they're related to Mister -- oh, 09:18AM

 4    to both?  Okay.  Let me -- let me go back -- hold on, let me 09:18AM

 5    -- what was that that you said?                           09:18AM

 6              MR. MARTIN:  I'm talking about the demonstrative 09:18AM

 7    aids that Marie e-mailed to me last week.                 09:18AM

 8              THE COURT:  Are you still going to use them?    09:18AM

 9              MS. S. MILLER:  We're talking --                09:18AM

10              MS. M. MILLER:  I think he's -- I think what he's 09:18AM

11    talking about is when we were addressing the argument for 09:18AM

12    3,315, the admissibility of it.                           09:18AM

13              THE COURT:  Right, I --                         09:18AM

14              MS. M. MILLER:  I had a working document that I  09:18AM

15    produced to Counsel.  I don't intend to use that.  So if  09:18AM

16    that's what he's talking about, then done, we're done.    09:18AM

17              THE COURT:  So why don't we do this rather than  09:18AM

18    discuss it because everybody sounds a little confused.  Why 09:18AM

19    not during this next 30 minutes, before you start your    09:18AM

20    30 minutes, talk about if it's true that the United States 09:18AM

21    attorney is not going to use whatever you think you're going 09:18AM

22    to use, then you don't have to discuss it, and you do not have 09:18AM

23    to talk to me about it.                                   09:18AM

24              MS. M. MILLER:  Right.  Sounds good, thank you,  09:18AM

25    Your Honor.                                               09:18AM
```

*Criminal Case No. 18-00010, USA v. Walker, et al.*

```
 1              THE COURT:  Yes, Mr. McConwell.                      09:18AM

 2              MR. MCCONWELL:  I have a motion in limine to         09:18AM

 3   exclude evidence about failure of the pitch links and the      09:18AM

 4   like, for Mr. Guzzetti, that needs to be dealt with before he  09:19AM

 5   testifies.                                                     09:19AM

 6              THE COURT:  Did you file that already?              09:19AM

 7              MR. MCCONWELL:  I did it last week.                 09:19AM

 8              THE COURT:  Oh, okay.  All right.  Let me --        09:19AM

 9   yeah, that's right.  Okay.  I've got that.  I've got that.     09:19AM

10   Yeah.  Yeah.  I think every -- every time I look at my inbox   09:19AM

11   it says another motion filed.  So we're catching up with all   09:19AM

12   of 'em.  So yeah, let me look at that.  So you want -- yeah,   09:19AM

13   I'll talk about that before Mr. Guzzetti starts his            09:19AM

14   examination.                                                   09:19AM

15              Any other motions?  So we got the -- you're going   09:19AM

16   to take care of the summary demonstrative one?                09:19AM

17              MS. M. MILLER:  Yes.                                09:19AM

18              THE COURT:  This is on the rotor link thing?        09:19AM

19              MR. MCCONWELL:  The -- the pitch link.              09:19AM

20              THE COURT:  I'm sorry?                              09:19AM

21              MR. MCCONWELL:  Pitch change links.                09:19AM

22              THE COURT:  Pitch rotor links?                     09:19AM

23              MR. MCCONWELL:  The tail rotor pitch links.        09:19AM

24              THE COURT:  Tail rotor pitch links.  That's        09:19AM

25   right.  Okay.  That one.  And then anything else?             09:19AM
```

```
1            MS. M. MILLER:  No.                              09:19AM

2            MR. MCCONWELL:  No, I think that was all we      09:19AM

3   included.  As it relates to death and serious bodily injury.  09:19AM

4            THE COURT:  Right.  Right.  Okay.  And I know   09:19AM

5   there is another one, there is another motion that I've  09:19AM

6   already worked on about whether or not the mention of nine  09:19AM

7   deaths as opposed to less than nine deaths, that's the one --  09:20AM

8   that's the one we -- okay -- okay, I worked on that.  So let  09:20AM

9   me just finish that up.                                  09:20AM

10           MS. M. MILLER:  And it's now ten deaths.        09:20AM

11           THE COURT:  Okay.  Well, we'll -- we'll talk    09:20AM

12   about that, because I -- anyway, I will issue something on  09:20AM

13   that, I've already written something on it.              09:20AM

14           MS. M. MILLER:  Yes, Your Honor.                09:20AM

15           THE COURT:  Okay.  Anything further, Counsels?  09:20AM

16           MS. M. MILLER:  No, thank you.                  09:20AM

17           THE COURT:  Nothing?  Okay.  I'll see you all,  09:20AM

18   let's see, now let's get the time right so we're all in sync.  09:20AM

19           MS. MCCONWELL:  May we have 30 minutes from when  09:20AM

20   we get the document?                                     09:20AM

21           THE COURT:  Okay.  I'll give you -- yeah.  You   09:20AM

22   should get the document like -- it will be instant like this.  09:20AM

23   As I talk, boom.                                         09:20AM

24           MS. MCCONWELL:  Okay.                           09:20AM

25           THE COURT:  Emily, did we do it yet?            09:20AM
```

```
 1              (Discussion with law clerk.)                    09:20AM

 2              THE COURT:  So tell the clerk, chop, chop.  Let's  09:20AM

 3   go.  It's fast.  So I'll give you guys -- it's 9:00 -- let's  09:20AM

 4   be in sync.  It's 9:22 on my watch.  So I'll give you until  09:20AM

 5   ten.  I'm actually going to give you 40 minutes.           09:20AM

 6              MS. M. MILLER:  Okay.  Thank you.               09:21AM

 7              THE COURT:  So that gives you time to discuss    09:21AM

 8   your other issues.  I'll see you at ten, thank you.        09:21AM

 9              (Recess taken at 9:21 a.m.)                     09:21AM

10              (Back on the record at 10:04 a.m.)             10:04AM

11              THE COURT:  Ready to proceed, Counsels?  Did you  10:05AM

12   have enough time to review the Court's decision?          10:05AM

13              MS. M. MILLER:  Yes, Your Honor.               10:05AM

14              THE COURT:  Okay.  U.S. Attorneys.  Mr. Martin   10:05AM

15   and Ms. McConwell?  Mr. Martin?                           10:05AM

16              MR. MARTIN:  Yes, Your Honor.                  10:05AM

17              THE COURT:  Okay.  Ms. McConwell?              10:05AM

18              MS. MCCONWELL:  Yes, Your Honor.               10:05AM

19              THE COURT:  And Mr. McConwell?                 10:05AM

20              MR. MCCONWELL:  Yes.                           10:05AM

21              THE COURT:  Mr. Han?  Excuse me?               10:05AM

22              MR. HAN:  Yes.                                 10:05AM

23              THE COURT:  See, I can't see you there with that  10:05AM

24   podium.  All right.  And then, hold on one second.  And the  10:05AM

25   court is in receipt of and I'm looking at it right now, the  10:05AM
```

```
 1   motion, defendant Jon Walker's motion filed -- just looking,      10:06AM
 2   still looking at that.  Objection to the government's proposed     10:06AM
 3   use of new summary charts designated, demonstrative aids.  Let     10:06AM
 4   me ask, did you guys figure that out?                              10:06AM
 5               MR. MARTIN:  Your Honor, it's my understanding         10:06AM
 6   that there will be only be two exhibits used with -- and those     10:06AM
 7   were the summary charts that were previously provided to us?       10:06AM
 8               MS. M. MILLER:  Yeah, so the three charts I was        10:06AM
 9   going to use, I've withdrawn.  So we don't need any argument       10:06AM
10   on them.                                                           10:06AM
11               THE COURT:  Thank you.                                 10:06AM
12               MS. M. MILLER:  You're welcome.                        10:06AM
13               MR. MARTIN:  For the record, can we just have the      10:06AM
14   numbers of the one you intend to use?  Summary charts.             10:06AM
15               MS. M. MILLER:  Three demonstrative aids?  No,         10:06AM
16   the three demonstrative aids in that e-mail that you showed me     10:06AM
17   that Mack showed you.                                              10:06AM
18               MR. MARTIN:  No, no, no, what you intend to use.       10:06AM
19               MS. M. MILLER:  Oh, the ones we're going to use?       10:06AM
20   Hold on.                                                           10:06AM
21               THE COURT:  Yeah, right, want to be on the same        10:06AM
22   --                                                                 10:06AM
23               MS. M. MILLER:  Yes, yes.                              10:06AM
24               THE COURT:  Track.                                     10:07AM
25               MS. M. MILLER:  Okay.  So the ones we're going to      10:07AM
```

1  use are Government's Summary Chart 17, G-DA17, and... that's a    10:07AM

2  demo aid, though.  Then for summary chart, we're using 1242,    10:07AM

3  1247, 1236.    10:07AM

4          THE COURT:  Did you get that?  You want -- why    10:07AM

5  don't you repeat that one more time, Ms. --    10:07AM

6          MS. M. MILLER:  1242, 1247, 1236.  I'm just going    10:07AM

7  through to make sure there isn't anything else.    10:07AM

8          THE COURT:  What's the last one?  1230 --    10:07AM

9          MS. M. MILLER:  1236, Your Honor.  That's not a    10:07AM

10  summary chart, that's an NTSB report, I'm sorry, of the    10:08AM

11  accident of 1243D.  We have the summary chart of the Spares,    10:08AM

12  Inc. parts that were purchased, which is 3038.  And we have    10:08AM

13  another demo aid that I sent to defense Counsel on June 4th,    10:08AM

14  which is the NTSB -- how it investigates accidents, and, Mack,    10:08AM

15  you didn't raise any objections to that.    10:08AM

16          MR. MARTIN:  I'm not objecting to that.  I'm    10:08AM

17  looking for 17, I don't see that I have 17.    10:08AM

18          MS. M. MILLER:  Demonstrative aid 17?  I sent    10:08AM

19  that to you on June 4th as well.  And all that is, is "How    10:08AM

20  Helicopters Work," that's the title of the demonstrative aid.    10:08AM

21  It's not a summary chart.    10:08AM

22          MS. MCCONWELL:  I don't -- I don't have it    10:08AM

23  either.    10:08AM

24          MS. M. MILLER:  I sent it to you as well, and I    10:08AM

25  saved the e-mail.  So if I need to send that --    10:08AM

| | | |
|---|---|---|
| 1 | THE COURT: Why don't you just send it again. | 10:08AM |
| 2 | MS. M. MILLER: I'll send it again. | 10:08AM |
| 3 | THE COURT: Yeah, it gets lost. | 10:08AM |
| 4 | MS. M. MILLER: Yup. | 10:08AM |
| 5 | THE COURT: They'll send it again. I think they | 10:08AM |
| 6 | should just send it again. Sometimes it's just too many | 10:08AM |
| 7 | e-mails. | 10:08AM |
| 8 | MS. M. MILLER: Yup. And then -- and that's it. | 10:08AM |
| 9 | So the two summary chart that Mr. Guzzetti prepared, 1242, | 10:08AM |
| 10 | 1247, the summary chart regarding the purchase of the parts, | 10:09AM |
| 11 | 3038... and I'm going through his direct just to make sure | 10:09AM |
| 12 | there is nothing else. | 10:09AM |
| 13 | I believe that's it. That's it. | 10:09AM |
| 14 | THE COURT: Okay. Mr. Martin, did you -- are you | 10:09AM |
| 15 | able to -- did you retrieve the e-mail? I don't know if she | 10:09AM |
| 16 | sent it already. | 10:09AM |
| 17 | MS. M. MILLER: I'm going to resend. I saved all | 10:09AM |
| 18 | of those e-mails, just in case there was an issue. And let me | 10:09AM |
| 19 | go down to 64. | 10:10AM |
| 20 | (Pause.) | 10:10AM |
| 21 | MR. MARTIN: I'm looking at 6/4, and I have them | 10:10AM |
| 22 | all as well. | 10:10AM |
| 23 | THE COURT: You got it? | 10:10AM |
| 24 | MR. MARTIN: No, Your Honor, I'd just like to see | 10:10AM |
| 25 | the demonstrative aid they intend to use. I -- | 10:10AM |

```
 1                    THE COURT:  Okay.  So you've got it.  So.  Anyway      10:10AM
 2     --                                                                    10:10AM
 3                    MR. MARTIN:  I don't have it, no.                       10:10AM
 4                    THE COURT:  It should be --                            10:10AM
 5                    MS. M. MILLER:  I'm going to send it -- I'm going       10:10AM
 6     to send it to you again.  Hold on.                                    10:10AM
 7                    THE COURT:  Okay.  Assuming you get it, so there        10:10AM
 8     is no issues then, and you're prepared to withdraw ECF 695            10:10AM
 9     because they are either A -- well, they're not using certain          10:10AM
10     ones and, B, the ones that they are using, have already been          10:10AM
11     admitted.  Is that -- is that a fair statement, Mr. Martin?           10:10AM
12                    MR. MARTIN:  Kind of.                                   10:10AM
13                    THE COURT:  Okay.  Well, then you state on the          10:11AM
14     record what it is.                                                    10:11AM
15                    MR. MARTIN:  Your Honor --                              10:11AM
16                    THE COURT:  I was trying --                             10:11AM
17                    MR. MARTIN:  My concern is I want to see 17             10:11AM
18     because I don't know what it is.                                      10:11AM
19                    MS. M. MILLER:  Yeah, I'm sending it -- I'm             10:11AM
20     sending it again.  Hold on.                                           10:11AM
21                    THE COURT:  Okay.  Why don't we wait a minute           10:11AM
22     here.  Maybe it's lengthy.  So it takes a while.                      10:11AM
23                    MS. M. MILLER:  Yeah.  So that is gone.  And then       10:11AM
24     I'm also going to send you again the NTSB one.  Did you get           10:11AM
25     it, Mack?                                                             10:11AM
```

| | |
|---|---|
| 1 | MR. MARTIN:  I'm sure I will. | 10:11AM |
| 2 | (Pause.) | 10:11AM |
| 3 | MS. MCCONWELL:  And I would ask that it also be | 10:11AM |
| 4 | sent to me. | 10:11AM |
| 5 | MS. M. MILLER:  I did -- I did -- I did.  And to | 10:11AM |
| 6 | Ed and everyone. | 10:11AM |
| 7 | MR. MARTIN:  Your Honor, what I'd like to do is | 10:12AM |
| 8 | -- I got it. | 10:12AM |
| 9 | THE COURT:  Oh, okay.  Good, you received it. | 10:12AM |
| 10 | MR. MARTIN:  I'm assuming it will be a little bit | 10:12AM |
| 11 | before you get to that, or are you going to go right into | 10:12AM |
| 12 | that? | 10:12AM |
| 13 | MS. M. MILLER:  The "How Helicopters Work" one is | 10:12AM |
| 14 | pretty early one.  It's just a recap of Mr. Guzzetti's | 10:12AM |
| 15 | expertise, which is very brief, and then we're going right | 10:12AM |
| 16 | into "How Helicopters Work." | 10:12AM |
| 17 | THE COURT:  Okay.  Therefore?  Yes, Mr. Martin? | 10:12AM |
| 18 | MR. MARTIN:  If I might have a minute to review | 10:12AM |
| 19 | it, Your Honor? | 10:12AM |
| 20 | THE COURT:  Sure. | 10:12AM |
| 21 | (Pause.) | 10:12AM |
| 22 | (Discussion with clerk.) | 10:14AM |
| 23 | (Pause.) | 10:14AM |
| 24 | THE COURT:  Yes, go ahead -- go ahead.  He's just | 10:15AM |
| 25 | going to fix my computer. | 10:15AM |

*Criminal Case No. 18-00010, USA v. Walker, et al.*

```
 1              MR. MARTIN:  We reviewed the demonstrative aids    10:15AM
 2   the government intends to use, and we don't have an objection  10:15AM
 3   to it.                                                         10:15AM
 4              THE COURT:  No objections.  Okay.                   10:15AM
 5              MR. MARTIN:  To 17.                                 10:15AM
 6              THE COURT:  17.  All right.  Did you want to        10:15AM
 7   review the other ones?                                         10:15AM
 8              MS. M. MILLER:  That will come a little later.      10:16AM
 9              (Pause.)                                            10:16AM
10              (Defense Counsel conferred.)                        10:16AM
11              THE COURT:  Did you -- okay.  So I guess my         10:16AM
12   question is, 17 is okay --                                     10:16AM
13              MR. MARTIN:  The others I have seen, Your Honor.    10:16AM
14              THE COURT:  All right.  So then my question is,     10:16AM
15   on your ECF, the one that -- ECF 6095, will you withdraw that  10:16AM
16   from the record then?                                          10:17AM
17              MR. MARTIN:  It's my... it's my understanding,      10:17AM
18   Your Honor, that the government doesn't intend to use any of   10:17AM
19   those exhibits with Mr. Guzzetti, and if that's correct, then  10:17AM
20   I withdraw it.                                                 10:17AM
21              MS. M. MILLER:  That's correct.                     10:17AM
22              THE COURT:  That is correct.  Okay.  Withdrawn      10:17AM
23   for the record.  And -- are you guys both -- anything else,    10:17AM
24   Ms. McConwell, on the -- on what was just transpiring?         10:17AM
25              MS. MCCONWELL:  Yeah, for those demonstrative       10:17AM
```

1  aids, that would -- that would be true.  And --        10:17AM

2              THE COURT:  Okay.                            10:17AM

3              MS. MCCONWELL:  We -- we still continue to have  10:17AM

4  an objection to the remark section of 1242 and 1247 because  10:17AM

5  that's just -- that -- that's just -- that is -- those are   10:17AM

6  just opinions and things that Mr. Guzzetti has written into  10:17AM

7  the remarks section of both of those 1242 and 1247.  And so --  10:17AM

8  and we notified them in January that we had that objection,  10:17AM

9  but they don't agree.                                  10:17AM

10             THE COURT:  All right.  So when he testifies --   10:17AM

11 when he gets to that, why don't you renew that objection.   10:18AM

12             MS. MCCONWELL:  Yes, I will.                 10:18AM

13             THE COURT:  If you -- if he does testify to that.  10:18AM

14             MS. MCCONWELL:  And then we will also be having   10:18AM

15 objections to 3038, but we'll wait.                     10:18AM

16             THE COURT:  All right.  So yeah, to the extent   10:18AM

17 that -- yeah, let's just see what he says.  All right.  And   10:18AM

18 then we already took care of the other issue.  The 34-page   10:18AM

19 decision I issued.  So now there is a defense motion in limine  10:18AM

20 concerning the testimony of Jeff Guzzetti, and he's the one   10:18AM

21 that's going be testifying in a few minutes; is that correct   10:18AM

22 Ms. --                                                 10:18AM

23             MS. M. MILLER:  He is, Your Honor, he is our --   10:18AM

24 our next and probably last witness.                    10:18AM

25             THE COURT:  Oh, he will be your last witness?   10:18AM

1    MS. M. MILLER:  I believe so, yes.    10:18AM

2    THE COURT:  Okay.  All right.  So Defendants had    10:18AM

3    filed a joint motion in limine concerning the testimony of    10:18AM

4    Mr. Guzzetti, ECF 1686.  The motion seeks an order barring the    10:18AM

5    prosecution from arguing and/or offering testimony that any    10:18AM

6    parts Hansen obtained from Spares, Inc. caused a helicopter    10:18AM

7    crash causing the death or serious bodily injury -- or causing    10:18AM

8    death or serious bodily injury.    10:19AM

9    Motion at 2 ECF 1686.  The Defendants are    10:19AM

10    claiming that the United States failed to provide any details    10:19AM

11    about the purported nine deaths or serious bodily injuries    10:19AM

12    that Defendants are alleged to have caused by the    10:19AM

13    misrepresentation of, failure of, or defects in the tail rotor    10:19AM

14    pitch change link, TRPCL, or more specifically, a pitch link    10:19AM

15    blank, installed on the helicopters referenced in    10:19AM

16    paragraph 126 of the Second Superseding Indictment.    10:19AM

17    Motion at 6 ECF No. 1686, they also seem to    10:19AM

18    object on relevancy grounds and of -- relevancy grounds of    10:19AM

19    unde -- and grounds of undue prejudice.    10:19AM

20    Motion at 23 ECF 1686.  Mr. Jeff Guzzetti's    10:19AM

21    expert report states that, "He will testify that 23 accidents    10:19AM

22    occurred in helicopters while being operated by Hansen for one    10:20AM

23    of its numerous subsidiaries."  That, quote, in light of the    10:20AM

24    23 Hansen accidents were fatal, killing nine people and    10:20AM

25    seriously injuring four, and that three of the Hansen    10:20AM

1    accidents fit the pattern of a failed tail rotor pitch control    10:20AM

2    link.    10:20AM

3                United States of America notice of intent to use    10:20AM

4    expert testimony of Guzzetti at 1112 ECF 480.  Count 9 charges    10:20AM

5    both Defendants, Walker and Hansen Helicopters, with aircraft    10:20AM

6    parts fraud, that proximately caused serious bodily injury.    10:20AM

7    Second Superseding Indictment, paragraphs 93 through 96 ECF    10:20AM

8    862, Count 10 charges both Defendants with aircraft parts    10:20AM

9    fraud that proximately caused Second Superseding Indictment --    10:20AM

10   caused death -- I'm sorry, strike that, let me start that    10:20AM

11   again.    10:20AM

12               Count 10 charges both Defendants with aircraft    10:21AM

13   parts fraud that proximately caused death, Second Superseding    10:21AM

14   Indictment paragraphs 99 through 100 at ECF 862.    10:21AM

15               Count 13 charges only Defendant, Hansen    10:21AM

16   Helicopters, with aircraft parts fraud that proximately caused    10:21AM

17   death, Second Superseding Indictment, paragraphs 109    10:21AM

18   through 110 at ECF 862.    10:21AM

19               The Court notes in a footnote that Counts 8, 11,    10:21AM

20   and 12 are also for aircraft parts fraud, but do not allege    10:21AM

21   violations of 18 United States Code 38(b)(2) or (b)(3), which    10:21AM

22   contained the sentencing enhancements for proximately causing    10:21AM

23   serious injury and death, respectively.  The government,    10:21AM

24   therefore, needs only prove one serious bodily injury and two    10:21AM

25   deaths.  The Second Superseding Indictment provides notice of    10:21AM

```
 1    three crashes, one of which caused serious bodily injury and          10:21AM
 2    two of which caused deaths.                                            10:22AM
 3               The Court cites at Second Superseding Indictment           10:22AM
 4    paragraphs 51, 59 through 61, and 80 at ECF 862.  These               10:22AM
 5    accidents are not described in Counts 9, 10, and 13, but an           10:22AM
 6    indictment should be read as a whole, quote, end quote.  The          10:22AM
 7    Court cites United States versus Blinder, 10 F.3d 1468, 1473,         10:22AM
 8    9th Circuit, 1993.  Therefore, testimony about those accidents        10:22AM
 9    goes directly to a fact of consequence in determining the            10:22AM
10    action and should be admitted, Federal Rule of Evidence              10:22AM
11    401(b).  Therefore, the motion should be denied.                     10:22AM
12               Testimony about other accidents, however, should          10:22AM
13    be inadmissible as unfairly prejudice, the Court knows that          10:22AM
14    there's-- anyway, the Court notes that -- well, this part I'm        10:22AM
15    not sure how I'm going rule upon, but at this point -- I mean,       10:22AM
16    I'm not sure if there will be a further ruling on that unless        10:23AM
17    there was notice potentially through discovery that the             10:23AM
18    government was going to prove 9, 10, and 13 based on different       10:23AM
19    accidents than the ones alleged in the second superseding           10:23AM
20    indictments and what those -- what actions those were.  And         10:23AM
21    the Court cites the Federal Rule of Evidence 403.                    10:23AM
22               So that's the Court's ruling on --                        10:23AM
23               MR. MCCONWELL:  May I ask for clarification?  Our          10:23AM
24    motion was made on the basis that there was no evidence             10:23AM
25    proffered by the government at all that would come close to         10:23AM
```

| | |
|---|---|
| 1 | establishing a failure of the pitch link -- the pitch link | 10:23AM |
| 2 | causing a death.  And it's a Daubert-type motion that the | 10:23AM |
| 3 | witnesses provided no document and no specific statement.  It | 10:23AM |
| 4 | seems like, fits the pattern, is not adequate evidence by an | 10:23AM |
| 5 | expert.  There should be some scientific basis for it and | 10:23AM |
| 6 | reasons specifically for it, but they -- he's cited no failure | 10:23AM |
| 7 | of a pitch link at all, no metallurgical examinations, | 10:24AM |
| 8 | anything.  In fact, he's not even said a pitch link actually | 10:24AM |
| 9 | failed.  And -- and we don't know -- they've not told us which | 10:24AM |
| 10 | aircraft they're really referring to on these alleged deaths, | 10:24AM |
| 11 | but it fits the pattern is not even close to being something | 10:24AM |
| 12 | that should be allowed to be admissible under the Daubert | 10:24AM |
| 13 | standard.  That -- that was the basis for our motion. | 10:24AM |

1  establishing a failure of the pitch link -- the pitch link

THE COURT:  Okay.  All right.

MS. M. MILLER:  And, Your Honor, this Court previously already ruled when Mr. McConwell filed a motion for a bill of particulars for a second time as to Counts 8 through 13.  This Court entered an order at ECF 1179 specifically saying that the motion for an additional bill of particulars was denied because there was substantial evidence in discovery provided to the Defendant to provide further insight into the allegations against them, and specifically, I cite to page 3, lines 9 to 10 of your, ECF 1179.

Additionally, you talked about reviewing the Second Superseding Indictment, and the additional discovery

| Line | Text | Time |
|---|---|---|
| 1 | establishing a failure of the pitch link -- the pitch link | 10:23AM |
| 2 | causing a death.  And it's a Daubert-type motion that the | 10:23AM |
| 3 | witnesses provided no document and no specific statement.  It | 10:23AM |
| 4 | seems like, fits the pattern, is not adequate evidence by an | 10:23AM |
| 5 | expert.  There should be some scientific basis for it and | 10:23AM |
| 6 | reasons specifically for it, but they -- he's cited no failure | 10:23AM |
| 7 | of a pitch link at all, no metallurgical examinations, | 10:24AM |
| 8 | anything.  In fact, he's not even said a pitch link actually | 10:24AM |
| 9 | failed.  And -- and we don't know -- they've not told us which | 10:24AM |
| 10 | aircraft they're really referring to on these alleged deaths, | 10:24AM |
| 11 | but it fits the pattern is not even close to being something | 10:24AM |
| 12 | that should be allowed to be admissible under the Daubert | 10:24AM |
| 13 | standard.  That -- that was the basis for our motion. | 10:24AM |
| 14 | THE COURT:  Okay.  All right. | 10:24AM |
| 15 | MS. M. MILLER:  And, Your Honor, this Court | 10:24AM |
| 16 | previously already ruled when Mr. McConwell filed a motion for | 10:24AM |
| 17 | a bill of particulars for a second time as to Counts 8 through | 10:24AM |
| 18 | 13.  This Court entered an order at ECF 1179 specifically | 10:24AM |
| 19 | saying that the motion for an additional bill of particulars | 10:24AM |
| 20 | was denied because there was substantial evidence in discovery | 10:24AM |
| 21 | provided to the Defendant to provide further insight into the | 10:24AM |
| 22 | allegations against them, and specifically, I cite to page 3, | 10:24AM |
| 23 | lines 9 to 10 of your, ECF 1179. | 10:25AM |
| 24 | Additionally, you talked about reviewing the | 10:25AM |
| 25 | Second Superseding Indictment, and the additional discovery | 10:25AM |

1    that was provided to the defense.  We provided the summary     10:25AM

2    charts to the defense which outline all of the accidents that  10:25AM

3    the aircraft were involved in before Hansen purchased them,    10:25AM

4    and the status of those aircraft at the time, whether they     10:25AM

5    were destroyed or substantially damaged.  And then that Hansen 10:25AM

6    actually purchased those destroyed or substantially-damaged    10:25AM

7    aircraft.  And then, after Hansen purchased them and started   10:25AM

8    leasing them out with the tuna boat contracts, they were in    10:25AM

9    another 37 accidents.                                          10:25AM

10              And we provided that summary chart to the defense   10:25AM

11   back in August of 2020.  So in August of 2020, following the   10:25AM

12   May 2020 17-page disclosure of opinions of Mr. Guzzetti, the   10:25AM

13   government provided in explicit detail not only the summary    10:26AM

14   charts identifying the registration number of the helicopter,  10:26AM

15   the date of the accident, the NTSB report underlying the       10:26AM

16   information, whether there were fatalities or serious bodily   10:26AM

17   injuries, and the cause of the accident.  Those were all       10:26AM

18   provided to the defense more than two years ago.  And that's   10:26AM

19   why, Your Honor, when Mr. Kapp, through Mr. McConwell, had     10:26AM

20   filed a motion for a second bill of particulars, we objected.  10:26AM

21   And this Court ruled there is enough evidence, you have enough 10:26AM

22   evidence, you have all of the underlying documents, and as you 10:26AM

23   have said repeatedly, Your Honor, if any of the summary        10:26AM

24   evidence in those exhibits is in any way inaccurate, bring it  10:26AM

25   to my attention.  They've had the NTSB reports, and they've    10:26AM

1  had Mr. Guzzetti's charts for two years and not once did they    10:26AM

2  say, Your Honor, look at this report, and look at this summary    10:27AM

3  and this chart, do you see the inconsistency.  They have never    10:27AM

4  done that, Your Honor.  And so here we are, Mr. Guzzetti is       10:27AM

5  about to get on the witness stand, and they're making the        10:27AM

6  objection again.                                                 10:27AM

7          This is relevant because, number one, in               10:27AM

8  paragraph 50 of our Second Superseding Indictment, we actually   10:27AM

9  identified the 30 aircraft that they purchased that had been     10:27AM

10 previously destroyed or substantially damaged.  And in his       10:27AM

11 summary chart, regarding the accidents that occurred after       10:27AM

12 they bought it, we provided them with all of that information.   10:27AM

13 That information isn't only relevant to Counts 8 through 13 of    10:27AM

14 the Second Superseding Indictment, that information is also      10:27AM

15 relevant to Count 1, which we have also alleged in               10:27AM

16 Mr. Guzzetti's expert summary.  Count 1 alleges that the         10:27AM

17 Defendant was involved in a conspiracy to commit a fraud         10:27AM

18 against the FAA and NTSB.  And this Court has agreed that the     10:27AM

19 Ninth Circuit jury instructions on fraud against the             10:28AM

20 government includes an agreement or a conspiracy to impede,      10:28AM

21 obstruct, or otherwise make it difficult for the government to   10:28AM

22 fulfill its mission.                                            10:28AM

23          We've heard testimony from FAA representatives          10:28AM

24 that the mission of the FAA is to ensure safe flight.  We also   10:28AM

25 have heard information from Mr. Guzzetti before doing the jury   10:28AM

1  view of what the mission of the NTSB is, which is to                    10:28AM

2  investigate any accidents or incidents involving                        10:28AM

3  U.S.-registered aircraft or aircraft that are manufactured in           10:28AM

4  the U.S.                                                                 10:28AM

5          The Defendants have violated 18 U.S.C. 371 by                    10:28AM

6  their fraud because they have impeded the ability of the FAA            10:28AM

7  to ensure safe travel in relation to those aircraft that               10:28AM

8  they've used in their fraud.  And the jury will also see, and           10:28AM

9  the Defendants have seen for the last two years, that there             10:28AM

10  are at least 20 accidents that occurred that the Defendants            10:29AM

11  failed to report to the NTSB, which is a direct impediment of          10:29AM

12  the ability of the NTSB to fulfill its mission, which is               10:29AM

13  evidence for Count 1.                                                  10:29AM

14          So Mr. Guzzetti's testimony is relevant to                     10:29AM

15  Count 1 as well as Counts 8 through 13.  His summary charts            10:29AM

16  underlying his opinions have been in the possession of the             10:29AM

17  Defendants as well as all the underlying documents for two             10:29AM

18  years.  There can be no alleged prejudice.  Certainly not              10:29AM

19  unfair prejudice under 403 as to this evidence coming in for           10:29AM

20  both Count 1 and Counts 8 through 13.                                  10:29AM

21          That's the government's position, Your Honor.                  10:29AM

22          MR. MCCONWELL:  May I respond, Your Honor?                     10:29AM

23          THE COURT:  Okay.  All right.  But you guys                    10:29AM

24  understanding my ruling?                                               10:29AM

25          MS. MCCONWELL:  Yup.                                           10:29AM

| | | |
|---|---|---|
| 1 | THE COURT: Do you get it? | 10:29AM |
| 2 | MR. MCCONWELL: I understand your ruling. I just | 10:29AM |
| 3 | want clarification. Our motion is directed at the parts fraud | 10:29AM |
| 4 | that there were violations of Chapter 38. And there is | 10:29AM |
| 5 | certain enhanced penalties involved and if there is a fraud, a | 10:30AM |
| 6 | failure of one of these parts, that's why it's isolated. | 10:30AM |
| 7 | (Pause.) | 10:30AM |
| 8 | THE COURT: Right. Okay. But... but you -- | 10:30AM |
| 9 | MR. MARTIN: Your Honor. | 10:30AM |
| 10 | MR. MCCONWELL: Maybe I misunderstood your | 10:30AM |
| 11 | ruling. | 10:30AM |
| 12 | THE COURT: Did you misunderstand my ruling? | 10:30AM |
| 13 | MR. MARTIN: Could I ask for you to repeat the | 10:30AM |
| 14 | relevant portions of the ruling? | 10:30AM |
| 15 | THE COURT: Why don't I give you copy of this so | 10:30AM |
| 16 | you guys can read it or not, you know. Let me -- let me just | 10:30AM |
| 17 | -- let me -- let's download copies and give it to them. Can | 10:30AM |
| 18 | we Xerox it or whatever we do? Oh. Okay. You know what, I | 10:30AM |
| 19 | actually didn't put it in order. Actually this is my own | 10:30AM |
| 20 | notes. I haven't issued an order. Yeah, let me just... I'll | 10:30AM |
| 21 | just convert it to an order. | 10:30AM |
| 22 | MS. M. MILLER: And I think one of the things | 10:30AM |
| 23 | though, Your Honor, before you convert it -- | 10:30AM |
| 24 | THE COURT: I thought -- yeah, I'm sorry, I | 10:30AM |
| 25 | didn't convert it to an order. It was just my own notes. | 10:30AM |

| | |
|---|---|
| 1 | MS. M. MILLER:  Before you -- I'm sorry to |
| 2 | interrupt.  Before you convert it to an order -- |
| 3 | THE COURT:  I'm going to convert it to order |
| 4 | right now. |
| 5 | MS. M. MILLER:  It was strictly -- it was strict |
| 6 | -- it seems to be strictly geared towards Counts 8 through 13, |
| 7 | which was Mr. McConwell's motion.  What I want to ensure is |
| 8 | that we don't have any limitations for Count 1, which is |
| 9 | conspiracy to defraud the FAA and the NTSB, which as you know |
| 10 | in the jury instructions, requires the government to show an |
| 11 | impediment, obstruction, or otherwise deceitful, or other |
| 12 | actions which made it difficult or impossible for the FAA and |
| 13 | NTSB to fulfill its mission.  The evidence of the accidents, |
| 14 | and the incidents, and the death go directly to Count 1 and, |
| 15 | therefore, under Count 1, those should not be excluded under |
| 16 | 403 of the Federal Rules of Evidence.  The government will not |
| 17 | argue under the aircraft parts fraud that other than the |
| 18 | accidents we previously identified as causing serious bodily |
| 19 | injury or death, did in fact cause serious bodily injury or |
| 20 | death under those counts, but for Count 1, the totality |
| 21 | regarding the number of accidents, and incidents, and |
| 22 | injuries, and death -- first of all, the jury has already |
| 23 | heard -- |
| 24 | THE COURT:  Okay.  I got it.  You want -- you |
| 25 | wanted -- you're saying, look, because the limit -- strike |

10:30AM
10:30AM
10:30AM
10:30AM
10:30AM
10:30AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:32AM
10:32AM
10:32AM
10:32AM
10:32AM

1    that.  Because the motion in limine was limited to the three    10:32AM

2    counts, I'm only -- I ruled on 9, 11 and 13, I think.    10:32AM

3            MS. M. MILLER:  Yes, Your Honor.    10:32AM

4            THE COURT:  All right.  9, 10 and 13 -- 9, 10 and    10:32AM

5    13.    10:32AM

6            MS. M. MILLER:  Yes, Your Honor.    10:32AM

7            THE COURT:  You're saying, Judge, the other    10:32AM

8    remaining fatalities and/or injuries should be allowed under    10:32AM

9    Count 1.    10:32AM

10            MS. M. MILLER:  Correct.  Thank you.    10:32AM

11            MR. MARTIN:  May I respond, Your Honor?    10:32AM

12            THE COURT:  Yeah.    10:32AM

13            MR. MARTIN:  403, which is undue prejudice among    10:32AM

14    other things, would apply to the whole indictment, and I would    10:32AM

15    object to the government trying to say, well, it doesn't apply    10:32AM

16    to this, but it applies to that.  And to try to expand 403    10:32AM

17    undue prejudice against us in that regard.  I think if's    10:32AM

18    unduly prejudicial, it's unduly prejudicial to the whole    10:32AM

19    indictment, and so I would submit to the Court that, you know,    10:33AM

20    sustaining it in part on these counts but not to that count is    10:33AM

21    actually no order at all.    10:33AM

22            MS. M. MILLER:  And, Your Honor, I would    10:33AM

23    disagree.  And the reason why I would disagree is the very    10:33AM

24    language contained in Rule 403.  403 says that there is a    10:33AM

25    balancing test the Court must exercise when deciding whether    10:33AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1    evidence comes in to prove a particular fact.  In this case,        10:33AM

2    what the Court is ordering is that evidence of other               10:33AM

3    fatalities unrelated to the aircraft parts fraud would be          10:33AM

4    unduly prejudice under 403, for those counts.  And the             10:33AM

5    government is not going to object to that order at all.            10:33AM

6            However, when you look at Count 1, and you look            10:33AM

7    at the requirements the government has to prove for Count 1,       10:33AM

8    it is a different analysis.  For Count 1, impeding the FAA's       10:33AM

9    ability to fulfill its function, impeding the NTSB's ability       10:33AM

10   to fulfill its function, if we are not permitted to allow into     10:34AM

11   evidence all of the accidents, and incidents, and death that       10:34AM

12   were the result of the Defendants' conspiracy to defraud the       10:34AM

13   U.S., that is extremely probative for Count 1.  And the            10:34AM

14   balancing test for Count 1 is not overcome by the danger of        10:34AM

15   unfair prejudice.                                                  10:34AM

16           And, again, Your Honor, Counsel has not moved to           10:34AM

17   exclude any of this evidence under Count 1.  Their motion          10:34AM

18   exclusively addressed Counts 8 through 13.  So if they are now     10:34AM

19   expanding their motion to Count 1, first of all, they never        10:34AM

20   filed this motion and my question would be, why not?  The          10:34AM

21   government produced this information to them more than two         10:34AM

22   years ago.  It took them two years to figure out that that may    10:34AM

23   be unfairly prejudicial under Count 1?  I don't think so.  I       10:34AM

24   also think, Your Honor, that the balancing test does not weigh     10:34AM

25   in favor of unfair prejudice when we look at the jury              10:34AM

| | |
|---|---|
| 1 | instructions for Count 1. |
| 2 | THE COURT:  Okay.  Well, let me just say -- okay. |
| 3 | All right.  All right.  I understand the argument.  I mean, |
| 4 | we've already -- we've already gone through the issue of the |
| 5 | fact that the United States Attorney's did not put in the |
| 6 | indictment all of the -- well, any of the... companies, the -- |
| 7 | the companies that they were using to shelter -- the shelter |
| 8 | companies to allegedly commit the fraud, we note that they |
| 9 | were not noted in the indictment.  Now we're talking about |
| 10 | death and serious bodily injury which enhances the sentencing |
| 11 | of any of the Defendants if they're found guilty. |
| 12 | MS. M. MILLER:  Only Counts 8 through 13 is an |
| 13 | enhancement. |
| 14 | THE COURT:  Right, I got -- |
| 15 | MS. M. MILLER:  Not for Count 1. |
| 16 | THE COURT:  No, hold on.  So let's just listen. |
| 17 | Now Counts 9 -- so the counts, let me verify this on my order |
| 18 | here.  Counts 9, 10, and 13 charges the Defendants with either |
| 19 | causing -- proximately causing death or serious bodily injury. |
| 20 | That's actually noted within the grand jury indictment.  Not |
| 21 | necessarily so with regard to any other death or serious |
| 22 | bodily injury.  And so I think that that -- the Court has to |
| 23 | look at the issue of under the balancing test and so |
| 24 | specifically, the question is, will relevant evidence be |
| 25 | excluded if its probative value is substantially outweighed by |

1    any danger of unfair prejudice, confusion of issues,    10:36AM

2    misleading the jury, considerations of delay, waste of time,    10:36AM

3    or needless presentation of cumulative evidence.  I understand    10:36AM

4    your argument.  You don't have to repeat it --    10:36AM

5                MS. M. MILLER:  Oh, I'm not going repeat it.    10:36AM

6                THE COURT:  No, no, no, just hold on.  I just    10:36AM

7    need you just -- can I have you both sit down?    10:36AM

8                MS. M. MILLER:  Yes, of course.    10:36AM

9                THE COURT:  Makes it easier.  You both keep    10:36AM

10    jumping up.  All right.  So let me just say, I'm concerned    10:36AM

11    about that because it's clear that the indictment does give    10:36AM

12    the Defendants absolute notice that -- clear notice that at    10:37AM

13    least you're focusing in on two potential deaths and one    10:37AM

14    serious bodily injury.  Anything beyond that is not necessary    10:37AM

15    -- it's not in the indictment, it's not in the four corners of    10:37AM

16    the indictment.  If it is, show me where it is.    10:37AM

17                MS. M. MILLER:  It is, that's why I got up.    10:37AM

18                THE COURT:  Okay.  Hold on.  Just hold on.  So    10:37AM

19    well, it's not -- and I guess when it was raised in the motion    10:37AM

20    in limine, I get that, but I want to be sure that the    10:37AM

21    Defendants have notice within the indictment.  Just show me --    10:37AM

22    just tell me the counts, you don't have to read it, just tell    10:37AM

23    me what counts they were.    10:37AM

24                MS. M. MILLER:  One.    10:37AM

25                THE COURT:  Okay.  I got that.  Any other count    10:37AM

|   |   |   |
|---|---|---|
| 1 | MS. M. MILLER:  No, but specifically, in Count 1 | 10:37AM |
| 2 | if you look at paragraph 50. | 10:37AM |
| 3 | THE COURT:  Okay.  So let me look at that. | 10:37AM |
| 4 | That's all I need to know.  Just cite it and I'll review it. | 10:37AM |
| 5 | MS. M. MILLER:  Yes, Your Honor. | 10:37AM |
| 6 | THE COURT:  All right. | 10:38AM |
| 7 | MS. M. MILLER:  And then I have -- | 10:38AM |
| 8 | THE COURT:  All right.  So paragraph -- hold on. | 10:38AM |
| 9 | So the Court looks at paragraph 50, which is under the -- is | 10:38AM |
| 10 | under the overt acts title.  And it -- and it has a chart | 10:38AM |
| 11 | about how -- and it alleges Walker, Reed, Crowe, Kapp, Hansen | 10:38AM |
| 12 | and Rogers purchasing aircraft previously destroyed or | 10:38AM |
| 13 | substantially damaged with the intent to conceal the condition | 10:38AM |
| 14 | of said aircraft from the government and others and it lists | 10:38AM |
| 15 | -- it lists 26 instances from year 1992 to 2016 reflecting | 10:38AM |
| 16 | what I -- what I just stated.  Okay.  What else? | 10:39AM |
| 17 | MS. M. MILLER:  Look at paragraph 51, please. | 10:39AM |
| 18 | THE COURT:  Hang on.  Okay.  Let me just -- let | 10:39AM |
| 19 | me get a different color.  Any other -- any other paragraph? | 10:39AM |
| 20 | MS. M. MILLER:  Yes, Your Honor, 55. | 10:39AM |
| 21 | THE COURT:  Can you ask Steve to see my computer | 10:39AM |
| 22 | went out again.  As soon as he walked out it goes out.  Okay. | 10:39AM |
| 23 | What, 55? | 10:39AM |
| 24 | MS. M. MILLER:  55, Your Honor. | 10:39AM |
| 25 | THE COURT:  Let me look at that.  Okay.  What | 10:39AM |

*Criminal Case No. 18-00010, USA v. Walker, et al.*

```
1    else?                                                    10:40AM

2             MS. M. MILLER:  59.                             10:40AM

3             THE COURT:  Okay.  What else?                   10:40AM

4             MS. M. MILLER:  And just for your reference, Your  10:40AM

5    Honor, 59, 60 and 61 are referring to the same fatal accident,  10:40AM

6    as is 62.                                                10:40AM

7             THE COURT:  That's referring to 59's accident?  10:40AM

8             MS. M. MILLER:  That's all -- that's all related  10:40AM

9    to --                                                    10:40AM

10             THE COURT:  59 --                              10:40AM

11             MS. M. MILLER:  608 9068 F.                    10:40AM

12             THE COURT:  59, 60, 61, and 62?                10:40AM

13             MS. M. MILLER:  Yes, Your Honor.  It's kind of  10:40AM

14   like all of the allegations through paragraph 63 are related  10:40AM

15   to that particular incident -- 62 -- are related to that  10:40AM

16   particular incident.                                     10:40AM

17             THE COURT:  Okay.  Any other paragraph?        10:40AM

18             MS. M. MILLER:  Um, let me see.  No, Your Honor,  10:40AM

19   that's it.                                               10:40AM

20             THE COURT:  All right.  So the one thing I note,  10:40AM

21   and I just read this pretty quickly, is that the only    10:40AM

22   paragraph that actually talks about a fatal crash is 59. 10:41AM

23   That's the only one -- of all the ones that you just cited.  10:41AM

24             (Discussion with IT.)                          10:41AM

25             MS. M. MILLER:  51 does too, Your Honor.       10:41AM
```

| | | |
|---|---|---|
| 1 | THE COURT:  Oh, I'm sorry what? | 10:41AM |
| 2 | MS. M. MILLER:  51. | 10:41AM |
| 3 | THE COURT:  Yeah, that's related though to 59. | 10:41AM |
| 4 | Yeah, you said that that's all related to -- it's related to | 10:41AM |
| 5 | the same -- | 10:41AM |
| 6 | MS. M. MILLER:  No. | 10:41AM |
| 7 | THE COURT:  -- aircraft.  N9068F. | 10:41AM |
| 8 | MS. M. MILLER:  51? | 10:41AM |
| 9 | THE COURT:  Oh, I'm sorry. | 10:41AM |
| 10 | MS. M. MILLER:  No, 51 is not. | 10:41AM |
| 11 | THE COURT:  You're right.  I missed that one. | 10:41AM |
| 12 | That's right.  So 51, so -- okay.  So now I see 51 and 59 are | 10:41AM |
| 13 | two.  Any other ones?  The other ones do not, as I see it. | 10:41AM |
| 14 | MS. M. MILLER:  Yes, Your Honor. | 10:41AM |
| 15 | THE COURT:  They do not reflect serious bodily | 10:41AM |
| 16 | injury or fatal crash; is that correct? | 10:42AM |
| 17 | MS. M. MILLER:  That is -- yes. | 10:42AM |
| 18 | THE COURT:  All right. | 10:42AM |
| 19 | MS. M. MILLER:  And then, Your Honor, in your -- | 10:42AM |
| 20 | in your order, when you denied the Defendants' motion for a | 10:42AM |
| 21 | bill of particulars and this was also for Count 1, they had | 10:42AM |
| 22 | asked for a bill of particulars for Count 1.  One of the | 10:42AM |
| 23 | findings that you had was that there had been so much | 10:42AM |
| 24 | discovery provided to the Defendant, including the charts that | 10:42AM |
| 25 | Mr. Guzzetti had prepared, what's important about that, Your | 10:42AM |

Honor, is as of August of 2020, the Defendants had          10:42AM

Mr. Guzzetti's charts which identified all of the Hansen      10:42AM

accidents that resulted in injury or death.  So for two years,  10:42AM

they've had the N-number of the aircraft, they've had the date  10:42AM

of the accident, they've had how many injuries or deaths were   10:42AM

sustained as a result of the accident, and they've had the      10:42AM

underlying NTSB report citing that accident.  This is all in    10:42AM

reference to Count 1, which this Court has denied their motion   10:42AM

to dismiss repeatedly, denied repeated motions for bill of      10:43AM

particulars on the basis that sufficient evidence was           10:43AM

provided.  So, Your Honor --                                    10:43AM

        THE COURT:  Okay.  Can you -- okay.  I've got it.    10:43AM

I know your argument on that.                                   10:43AM

        MS. M. MILLER:  Yes.                                 10:43AM

        THE COURT:  Can you clarify that the list in         10:43AM

paragraph 50 is of accidents that occurred before --           10:43AM

        MS. M. MILLER:  Yes.                                 10:43AM

        THE COURT:  -- Hansen became the owners.             10:43AM

        MS. M. MILLER:  Yes, and that supports one of        10:43AM

Mr. Guzzetti's charts, and the other chart he did was of the    10:43AM

accident occurred -- that occurred after Hansen's ownership.    10:43AM

        THE COURT:  No, but, I mean, I'm just saying on      10:43AM

paragraph 50 in particular.                                    10:43AM

        MS. M. MILLER:  Yes, that's before.  Yes, 100%.      10:43AM

        THE COURT:  All right.  So yes, Counsel?              10:43AM

1   Defense?  Defense?  On her -- okay.  So now we have, okay.      10:43AM

2   The Court has already made a ruling on three of the             10:43AM

3   paragraphs, the prosecutor is now citing to two additional      10:43AM

4   paragraphs that focus on death.  And you know what they are.    10:43AM

5   She just stated them.  So let's focus on that first.  And then  10:43AM

6   let's focus on the other argument that she makes regarding the  10:44AM

7   bill of particulars issue, the fact that you all have           10:44AM

8   discovery and so forth.  Let's start with the first question.   10:44AM

9           MR. MARTIN:  The first question -- the first            10:44AM

10  question, Your Honor, Rule 403 doesn't divide it into what      10:44AM

11  counts have been charged.  Rule 403 says, "The Court may        10:44AM

12  exclude relevant evidence if it's probative value is            10:44AM

13  substantially outweighed by danger of one or more of the        10:44AM

14  following:  Unfair prejudice, confusing the issues, misleading  10:44AM

15  the jury, undue delay, wasting time, or needless presenting     10:44AM

16  cumulative evidence."  If it is prejudicial or it's a           10:44AM

17  violation of 403 as to one count, that same prejudice applies   10:44AM

18  to all counts of the indictment.                                10:44AM

19          As relates to, Your Honor, the Counts 8, 9, and         10:44AM

20  10, let me make just -- make this, I filed a motion to dismiss  10:45AM

21  those.  The Court ordered the government to file a bill of      10:45AM

22  particulars as to 8, 9 and 10, the government did file a bill   10:45AM

23  of particulars as to 8, 9 and 10, and basically amended their   10:45AM

24  charges where the Count 8 aircraft fraud by way of election,    10:45AM

25  and that's in ECF 106-1, Count 8 now charges a violation of     10:45AM

1    38(a)(1)(A), which relates to a particular purchase order.

2    Count 9 relates to a different purchase order, is a violation

3    of 38(a)(1)(B), and Count 10 is now an attempt or a conspiracy

4    which is out -- which is outlined that we conspired to falsely

5    identify counterfeit parts versus we conspired to defraud the

6    government by falsely identifying counterfeit critical parts

7    or legitimate parts, including a tail rotor pitch change link.

8    That does not, in their amendment and election, allege that

9    caused serious bodily injury or death, Your Honor, in

10   Count 10.

11            And I submit to the Court that just for the

12   purposes of 403, those should be excluded.  I understand that

13   their argument relating to the conspiracy, but if it's

14   prejudicial as to the other counts, it should be prejudicial

15   as to the conspiracy.  I understand the Court is going to

16   issue a ruling that outlines which deaths should come out --

17            THE COURT:  Well, I just did -- I've just given

18   you a... I've just given you a, you know, a written -- or not

19   written, a verbal ruling on the specific counts.  And then

20   now, the prosecutor says, well, no, no there are other --

21   there are two other counts she's indicated -- showing there

22   are two other counts within the indictment that talk about

23   fatal --

24            (Discussion with IT.)

25            THE COURT:  I got to keep my IT guy here.

```
 1          MS. M. MILLER:  Your Honor, there is          10:47AM
 2  also paragraph --                                      10:47AM
 3          THE COURT:  Wait, wait, wait, hold on.         10:47AM
 4          MS. M. MILLER: -- 47.  Oh, okay.  I just wanted  10:47AM
 5  to --                                                  10:47AM
 6          THE COURT:  Wait, wait, wait.  Just hold on.  Let  10:47AM
 7  me finish.  Now they've given me two other -- other counts and  10:47AM
 8  they've given the other argument.  So you're saying that it's  10:47AM
 9  not good enough, the other argument, about discovery, the fact  10:47AM
10  that they've given you summary charts, they've given you other  10:47AM
11  further evidence with regard to justifying or substantiating  10:47AM
12  further deaths or serious bodily injury?              10:47AM
13          MR. MARTIN:  Your Honor, I submit to you that the  10:47AM
14  materials that we have been provided by Mr. Guzzetti in terms  10:47AM
15  of his expert opinion, do not specifically identify -- may I  10:47AM
16  have just one second?                                  10:47AM
17          THE COURT:  Mm-hmm.                            10:47AM
18          MR. MARTIN:  He doesn't identify --            10:47AM
19          THE COURT:  Hold on -- hold on.  Let me just   10:47AM
20  verify with my --                                      10:47AM
21          (Pause.)                                       10:47AM
22          THE COURT:  All right.  Thank you, Steve.      10:48AM
23          MR. MCCONWELL:  May I?                         10:48AM
24          MR. MARTIN:  I'm referring to Mr. Guzzetti's   10:48AM
25  notice of intent for expert testimony which is ECF 480.  I  10:48AM
```

*Criminal Case No. 18-00010, USA v. Walker, et al.*

10:48AM
1   don't believe he's identified in his testimony one specific

2   death, Your Honor, in his -- in his expert testimony.  And I

3   submit that beyond that, that it is -- it still falls within

4   the 403 analysis and the Court should exclude it beyond what

5   you've already -- what you've already ordered.

6           MR. MCCONWELL:  Your Honor, may I clarify one

7   thing?

8           THE COURT:  Yes, go ahead.

9           MR. MCCONWELL:  My motion was directed on the

10  fact -- first of all, 9068F, there is no allegation or

11  evidence that there was a failed pitch link for that.  I'm

12  talking about --

13          THE COURT:  No, that can go to credibility.  I

14  mean, you guys can --

15          MR. MCCONWELL:  Well, I understand but -- but

16  we're -- we -- you gave us an opportunity when I moved for

17  Daubert to say at the time of the trial if something comes up,

18  we'll take care of it then.  That was the purpose of my motion

19  effectively.  And they've offered no evidence that a pitch

20  link failed, let alone caused the death.  So I mean -- I think

21  they should have to have that evidence or say some credible

22  evidence to be able to speculate that that happened.  That was

23  my problem.  That was my motion.

24          THE COURT:  Yeah, but there was -- but you recall

25  there was some evidence regarding that -- that particular --

1    or that particular part.  There was some evidence.                      10:49AM

2                    MS. M. MILLER:  Yes.                                     10:49AM

3                    MR. MCCONWELL:  There is no evidence one of those        10:49AM

4    failed.  Let alone caused a death.                                      10:49AM

5                    THE COURT:  Okay.  But there was evidence that it        10:49AM

6    was deficient, if you will, allegedly deficient in certain              10:49AM

7    expert's eyes and -- is that not true?                                  10:50AM

8                    MR. MCCONWELL:  That wasn't the opinion expressed        10:50AM

9    in his report that he disclosed to us.  And there is no                 10:50AM

10   document --                                                             10:50AM

11                   THE COURT:  Who are you talking about, who is he?        10:50AM

12                   MR. MCCONWELL:  Mr. Guzzetti.                            10:50AM

13                   THE COURT:  Okay.  Never mind Mr. Guzzetti yet,          10:50AM

14   but what about the other -- other -- other witnesses who may            10:50AM

15   have testified?                                                         10:50AM

16                   MR. MCCONWELL:  I don't think there was any             10:50AM

17   credible evidence that one of these failed and caused a death.          10:50AM

18                   THE COURT:  No, okay.  But the connection of            10:50AM

19   causing the death is one thing.  The particular testimony that          10:50AM

20   the part, the link, rotor pitch -- I keep getting -- I have to          10:50AM

21   write that down, I'm sorry.                                             10:50AM

22                   MS. M. MILLER:  Tail rotor pitch change link.           10:50AM

23                   THE COURT:  I know, I --                                10:50AM

24                   MS. M. MILLER:  I know it's -- it's hard.               10:50AM

25                   MR. MCCONWELL:  The problem is we're going to get        10:50AM

```
 1  into, Your Honor, there is a complicated chain of things that      10:50AM
 2  could have cause the failure of a tail rotor --                    10:50AM
 3          THE COURT:  You know what, I don't think it's a            10:50AM
 4  problem.  I think that that has come out during the trial.         10:50AM
 5          MS. M. MILLER:  It has.                                    10:51AM
 6          THE COURT:  I think the witnesses have testified           10:51AM
 7  that even the particular transport of that part could have         10:51AM
 8  been affected by movement, by packaging, by a lot of other         10:51AM
 9  things.  And so I mean, in terms of -- in terms of                 10:51AM
10  credibility, that -- that will be a good -- may be a good          10:51AM
11  argument for the defense.  Anyway, that -- but I understand        10:51AM
12  your point.                                                        10:51AM
13          MR. MCCONWELL:  But I just think they shouldn't            10:51AM
14  be allowed to speculate.                                           10:51AM
15          THE COURT:  All right.  And you know what?  Hold           10:51AM
16  on.  Hold on.  Let me just finish with the defense first.  I       10:51AM
17  understand what you're saying, but again, I think it's really      10:51AM
18  going to come down to whether or not the jurors want to            10:51AM
19  believe that little, looks like a -- I don't even know I'm not     10:51AM
20  a tool person, anyway, whatever that is, the tail... rotor         10:51AM
21  pitch link, it's up to them to decide whether that has caused,     10:51AM
22  if there is sufficient evidence and if there is any indicia of     10:52AM
23  reliability, that that in particular caused the death of           10:52AM
24  anyone.  Really.                                                   10:52AM
25          So I mean your best bet is look at -- I mean, you          10:52AM
```

```
1   know, look at the evidence, listen -- I'm sure you have        10:52AM

2   listened to the evidence and pull it together in a blended      10:52AM

3   closing argument.  You can do it.                               10:52AM

4               MS. M. MILLER:  Yup.                                10:52AM

5               THE COURT:  I've seen it done.                      10:52AM

6               MS. M. MILLER:  So, Your Honor, may I just          10:52AM

7   respond --                                                      10:52AM

8               THE COURT:  No, no, no, no, no, no, hold on.  Let   10:52AM

9   me just -- let me just finish with this -- objections.          10:52AM

10              MS. M. MILLER:  Yes.                                10:52AM

11              THE COURT:  I think -- I have to think.  So I got   10:52AM

12  that.  Yes, Ms. McConwell?                                      10:52AM

13              MS. MCCONWELL:  I was just standing up to ask if    10:52AM

14  you have filed your order because I was watching for it.        10:52AM

15              THE COURT:  Oh, no, I -- I'm going to.  Have I --   10:52AM

16  we going to issue it out?  Okay.  Yeah, good.  Yeah, Yeah,      10:52AM

17  Emily was just waiting for me to say go, hit it, hit the        10:52AM

18  button.  It's going to you right now as we speak.               10:52AM

19              MS. MCCONWELL:  Okay.                               10:52AM

20              THE COURT:  So to be clear, it's only limited at    10:52AM

21  this point to what I just said.                                 10:52AM

22              MS. M. MILLER:  Right.                              10:53AM

23              THE COURT:  We're only -- we're hearing arguments   10:53AM

24  now whether the additional deaths and/or serious bodily         10:53AM

25  injuries could be added.  Yes, Mr. Martin?                      10:53AM
```

*Criminal Case No. 18-00010, USA v. Walker, et al.*

10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:53AM
10:54AM
10:54AM
10:54AM
10:54AM
10:54AM

1    MR. MARTIN:  Your Honor, what I'm -- the point I

2  was trying to make is in his report, he makes reference to

3  well, there were 23 accidents, nine people were killed, but

4  there is no specifics relating to who he's talking about, when

5  the accidents occurred, anything about particularly who they

6  are.  And I submit to Your Honor, that, you know, when we got

7  26 terabytes of discovery, in this case, for us --

8                   (Ms. M. Miller sighed.)

9            THE COURT:  No comments.  That's commenting on

10  the evidence.  That's commenting on his position.

11            MS. M. MILLER:  I'm just taking a deep breath.

12            MR. MARTIN:  I can sit over here and sigh every

13  time, Your Honor --

14            THE COURT:  Yeah, I know.

15            MR. MARTIN:  -- the other side says something,

16  and I restrain myself, and I don't appreciate this --

17            THE COURT:  Counsel, not being professional.

18  Let's not -- let's not do it.

19            MS. M. MILLER:  Sorry, I'm just taking a deep

20  breath, Your Honor.

21            THE COURT:  Then turn off the mic.

22            MS. M. MILLER:  Yes.  Definitely.  Good idea.

23            THE COURT:  Good idea.  Okay.  Yes.  Mr. Martin?

24                   (Pause.)

25            THE COURT:  Okay.  So.  We are -- you were --

Case 1:18-cr-00010   Document 1917   Filed 03/09/23   Page 1261 of 1311

```
 1              MR. MARTIN:  My objection is, Your Honor, let me          10:54AM
 2   -- so the record is clear.  Anything outside what the Court          10:54AM
 3   just announced as to all these other accidents or deaths that        10:54AM
 4   we haven't, in my opinion, have not been given the appropriate       10:54AM
 5   notice and the expert -- in the expert report or the discovery       10:54AM
 6   material provided, I object to.                                      10:54AM
 7              THE COURT:  What about -- so now the prosecutor            10:54AM
 8   has just pointed out to me paragraph 51.  What do you say            10:54AM
 9   about paragraph 51?                                                  10:54AM
10              MS. M. MILLER:  Paragraph 47.                             10:54AM
11              THE COURT:  Hold on -- hold on, Counsel.  Let me          10:54AM
12   finish.                                                              10:54AM
13              MR. MARTIN:  I'll do them one at a time.                  10:54AM
14              THE COURT:  Paragraph 51 and 59.  Hold on.  She           10:54AM
15   wants to add one.                                                    10:54AM
16              MS. M. MILLER:  47.                                       10:54AM
17              THE COURT:  Is that the only one to add?                  10:54AM
18              MS. M. MILLER:  That's the only one right now,            10:54AM
19   yes.  And then I do have other argument, Your Honor.                 10:54AM
20              THE COURT:  No, no, no.                                   10:54AM
21              MS. M. MILLER:  47.                                       10:54AM
22              THE COURT:  I just want -- let me just tell you,          10:54AM
23   Counsel, all I care about is the paragraphs.                         10:54AM
24              MS. M. MILLER:  47.                                       10:54AM
25              THE COURT:  Don't say right now.  Tell me now             10:54AM
```

```
 1    forever.  Because -- or forever hold your peace.  So tell me    10:54AM
 2    is there any other -- any others, you guys should know this     10:54AM
 3    indictment inside out.                                          10:55AM
 4              MS. M. MILLER:  No, no, 47.                           10:55AM
 5              THE COURT:  So let me just little tag it there.       10:55AM
 6    47.  So let's start with -- let everybody look at 47 right      10:55AM
 7    now.  Let me look at that too.  The conspiracy...              10:55AM
 8              (Pause.)                                              10:55AM
 9              THE COURT:  So that's Count 1, though.  That's        10:55AM
10    really -- 47 comes under Count 1, okay.  That's where -- we     10:55AM
11    see that.  That's already incorporated.  So really, it's just  10:55AM
12    the other -- she's citing to Count 1, and then the two other   10:55AM
13    counts.  So --                                                  10:55AM
14              MR. MARTIN:  It's all -- I mean, you've already       10:55AM
15    ruled on counts -- I think 8 through 13, Your Honor.           10:55AM
16              THE COURT:  Yeah.                                     10:55AM
17              MR. MARTIN:  And she's asking you to allow her to     10:55AM
18    bring this in under Count 1.                                    10:56AM
19              THE COURT:  I -- I ruled on Counts 9, 10 and 13.      10:56AM
20    Those are the ones.  So I already heard your argument on        10:56AM
21    Count 1.  Because that's the overall charge of conspiracy.     10:56AM
22    What about count -- now she's citing to Count 51.               10:56AM
23              MS. M. MILLER:  No, that's still --                   10:56AM
24              MR. MARTIN:  That's a paragraph in Count 1.           10:56AM
25              THE COURT:  Oh, that's still in Count 1, okay.        10:56AM
```

1       MS. M. MILLER:  It's all Count 1.  Everything        10:56AM
2  that I cited, Your Honor, was Count 1.                    10:56AM
3       THE COURT:  Oh, that's all right.  That's right.     10:56AM
4       MS. M. MILLER:  Yes.                                 10:56AM
5       THE COURT:  It's all in Count 1.  Okay.  Those       10:56AM
6  two are in Count 1.                                       10:56AM
7       MS. MCCONWELL:  And, Your Honor, you had already     10:56AM
8  --                                                        10:56AM
9       THE COURT:  Is the Count 1 -- hold on.  Is the       10:56AM
10 Count 1, let me look at this for one second then.  I need to   10:56AM
11 review this carefully.  I know that Count 1... okay.  So 59    10:56AM
12 was N9068F.  And I --                                     10:56AM
13      MS. MCCONWELL:  You have 51 and then you'd have      10:56AM
14 paragraphs 59 through 61 and that's the 908 -- 68F.  And 51    10:56AM
15 was 104BN.  And, Your Honor, when you initially ruled, you     10:56AM
16 already identified those four paragraphs and those two    10:57AM
17 incidents.                                                10:57AM
18      THE COURT:  Are those contained -- let me just be    10:57AM
19 sure, are those contained in either Counts 9, 10 and 13?  10:57AM
20      MS. MCCONWELL:  No.                                  10:57AM
21      THE COURT:  They're not.  So they're different,      10:57AM
22 they're different --                                      10:57AM
23      MS. M. MILLER:  This is all Count 1.                 10:57AM
24      THE COURT:  All right.  Okay.  That's Count 1.       10:57AM
25 So -- but I guess my question is -- all right.  All right.  So  10:57AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

| | |
|---|---|
| 1 | that is just Count 1. | 10:57AM |
| 2 | MS. M. MILLER:  Just Count 1. | 10:57AM |
| 3 | THE COURT:  Right.  All right.  So essentially, | 10:57AM |
| 4 | then it's Count 1, 9, 10, and 13.  So if there is going to be | 10:57AM |
| 5 | an additional -- if there is going to be an additional injury | 10:57AM |
| 6 | or serious -- I mean a death, then it will relate to those two | 10:57AM |
| 7 | helicopters. | 10:57AM |
| 8 | MS. M. MILLER:  No, Your Honor.  Paragraph 47 | 10:57AM |
| 9 | identifies nine deaths as a result of the Defendants' | 10:57AM |
| 10 | accidents, paragraph 9. | 10:57AM |
| 11 | THE COURT:  Okay.  Hold on. | 10:57AM |
| 12 | MS. M. MILLER:  47.  I'm sorry, paragraph 47 | 10:57AM |
| 13 | refers to nine deaths. | 10:57AM |
| 14 | THE COURT:  47.  Oh, it says numerous persons | 10:57AM |
| 15 | died, it doesn't say nine.  Where does it say nine? | 10:58AM |
| 16 | MS. M. MILLER:  It says numerous persons died, | 10:58AM |
| 17 | many more were seriously injured.  Yes, you're right. | 10:58AM |
| 18 | THE COURT:  So it doesn't say nine. | 10:58AM |
| 19 | MS. M. MILLER:  No, it says many died, and many | 10:58AM |
| 20 | were seriously injured.  Then, Your Honor, for the record, | 10:58AM |
| 21 | Mr. Guzzetti's disclosure in May of 2020, gave the Defendants | 10:58AM |
| 22 | notice of the following -- | 10:58AM |
| 23 | THE COURT:  All right.  Let's not -- let's not | 10:58AM |
| 24 | worry -- I don't want to get into his disclosures right now. | 10:58AM |
| 25 | My focus is on the indictment only. | 10:58AM |

```
 1              MS. M. MILLER:  Yes.                          10:58AM

 2              THE COURT:  All right.  So I've got -- I see it  10:58AM

 3    says numerous.                                         10:58AM

 4              MS. M. MILLER:  Yes.                          10:58AM

 5              THE COURT:  All right.  So my question is, on  10:58AM

 6    paragraphs 51 and 59, which are part of the conspiracy charge.  10:58AM

 7              MS. M. MILLER:  Yes.                          10:58AM

 8              THE COURT:  In Count 1.                       10:58AM

 9              MS. M. MILLER:  Yes.                          10:58AM

10              THE COURT:  Are those different events, different  10:58AM

11    deaths and/or serious bodily injuries from Counts 9, 10, and  10:58AM

12    13?                                                    10:58AM

13              MS. M. MILLER:  Yes.                          10:58AM

14              THE COURT:  All right.  That's all I want to  10:58AM

15    know.  You don't have to tell me about the disclosure stuff  10:58AM

16    because I -- I understand the argument on there.  Yes?  10:59AM

17              MR. MARTIN:  We don't know who 9, 10, and 13 are  10:59AM

18    because it's not in the indictment, it's not in their -- that  10:59AM

19    they filed.  And so I don't know how they -- I mean, I know  10:59AM

20    that Count 9, Your Honor, based on their bill of particulars,  10:59AM

21    alleges to something that occurred on August 24th, 2016, with  10:59AM

22    a purchase order, but we don't have anything from that bill of  10:59AM

23    particulars about a death.  I know from Count 10 that that is  10:59AM

24    a -- that is an attempt or conspiracy to commit an offense,  10:59AM

25    but there is no reference in there about a death or serious  10:59AM
```

1    bodily injury.  So we don't know from the indictment or the           10:59AM
2    bill of particulars that they filed pursuant to your Court            10:59AM
3    order what helicopters, what dates they're referring to, for          10:59AM
4    those two counts.  And then they try to say, oh, and we got           10:59AM
5    more going back to these others where they don't identify             10:59AM
6    them, doesn't give us notice.                                         11:00AM
7              MS. M. MILLER:  May I approach, Your Honor, with            11:00AM
8    the summary chart that was given to the Defendants two years          11:00AM
9    ago?  So that you could see what they are claiming did not            11:00AM
10   give them sufficient notice.                                          11:00AM
11             THE COURT:  All right.  That's fine.  Do you have           11:00AM
12   that?                                                                 11:00AM
13             MS. M. MILLER:  They do.                                    11:00AM
14             MR. MARTIN:  Well, I'd like to know what number            11:00AM
15   she's referring to.                                                   11:00AM
16             THE COURT:  Give her -- give him the cite of what          11:00AM
17   you're referring to --                                                11:00AM
18             MS. M. MILLER:  It's Exhibit 1242, Your Honor.             11:00AM
19             THE COURT:  Okay.  Exhibit 1242.                           11:00AM
20             MS. M. MILLER:  Yes, Your Honor.                           11:00AM
21             THE COURT:  Okay.                                          11:00AM
22             MS. M. MILLER:  So as you could see, they've had          11:00AM
23   that for two years.  That's why this is such an insincere            11:00AM
24   argument that they don't know about these other accidents,           11:00AM
25   they don't know about these other incidents, they don't know         11:00AM

```
 1    about these other deaths, that's not true.  If you look at        11:00AM
 2    that summary chart I just gave you, which defense Counsel had      11:00AM
 3    just three months after Mr. Guzzetti's disclosure where he        11:00AM
 4    said that he looked at 53 different cases, that's in his          11:00AM
 5    disclosure in May, and he said that he was putting together      11:00AM
 6    the summary chart that would identify all of the accidents       11:01AM
 7    that occurred after Hansen Helicopters owned this.  And that's   11:01AM
 8    Exhibit G-1242, Emily.                                            11:01AM
 9              MR. MARTIN:  The problem, Your Honor --                 11:01AM
10              MS. M. MILLER:  And so I'm still -- I'm still           11:01AM
11    making this assertion, Your Honor.                                11:01AM
12              THE COURT:  Okay.                                       11:01AM
13              MS. M. MILLER:  When you look at that, the             11:01AM
14    defense has had notice May of 2020 from Mr. Guzzetti's           11:01AM
15    disclosure which said here's the number of accidents I          11:01AM
16    reviewed, here's the number of injuries, here's the number of   11:01AM
17    deaths, here's the number of analyses that I performed, etc.    11:01AM
18              Then two months later, we give them two summary       11:01AM
19    charts with all of the underlying data.  The summary charts    11:01AM
20    identify the tail number of the helicopters --                  11:01AM
21              THE COURT:  Okay.  And I saw that.  I've read it.     11:01AM
22              MS. M. MILLER:  You have all of that.  They had       11:01AM
23    it for two years, including all of the underlying documents,    11:01AM
24    that's why this is so insincere.                                 11:02AM
25              THE COURT:  Okay.  I've got the -- I read the        11:02AM
```

1   chart real quickly, has a red highlighted portion that shows          11:02AM

2   nine deaths alleged deaths.  Okay.  Let me just say something,        11:02AM

3   let me just go back for one second just to --                          11:02AM

4            MR. MARTIN:  May I briefly respond to --                      11:02AM

5            THE COURT:  Yeah, you can respond to that in a                11:02AM

6   minute, but let me just -- to close the argument by                   11:02AM

7   Mr. McConwell.  So I went back to -- I pulled up my ECF 706,          11:02AM

8   the Court's order denying Daubert motion and the Daubert              11:02AM

9   motion, as the Counsels know, has to be based on methodology,        11:02AM

10  not on the quality of evidence and in my ruling, so sometimes        11:02AM

11  I have to go back and remember what did I write, I issue so          11:02AM

12  many orders that I have to look and see what did I order.            11:02AM

13           The Court said that the specific factors                     11:02AM

14  discussed in Daubert peer review publication potential error         11:02AM

15  rate, etc., and on which Defendants rely heavily on their            11:02AM

16  objections are particularly helpful, thank you, in cases where       11:02AM

17  the reliability of expert testimony depends on the correct           11:02AM

18  application of a valid methodology.  However, those same             11:02AM

19  factors simply are not applicable to some kinds of testimony         11:03AM

20  whose reliability depends heavily on the knowledge and               11:03AM

21  experience of the expert rather than methodology of the theory       11:03AM

22  behind it.                                                            11:03AM

23           The Court -- I cite U.S. v. Hankey, H-A-N-K-E-Y,            11:03AM

24  203 F.3d 11601169[sic], 9th Circuit, 2000.  Most, if not all,       11:03AM

25  of the opinions contained in the prosecution's expert               11:03AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1    disclosures fall into the latter category.  And let me just    11:03AM

2    say, let me see what I put here.  All right.  I said, "This is    11:03AM

3    not intended to suggest that every proffered expert testimony    11:03AM

4    will be admissible at trial.  The Court simply finds," and    11:03AM

5    this is what I found, "that in light of the nature of the    11:03AM

6    expert testimony, proffered by the government, no special    11:03AM

7    pretrial proceedings were necessary to determine the    11:03AM

8    admissibility of the government's expert testimony.  Rather,    11:03AM

9    the ordinary procedures for objecting during trial will    11:03AM

10   adequately permit the Court to fulfill its gatekeeping role.    11:03AM

11   However, as you might know," I did say, "if it becomes clear    11:04AM

12   during trial that a Daubert hearing would be helpful in    11:04AM

13   assessing the reliability of a particular expert's testimony,    11:04AM

14   the Court will hold one."  But I don't -- anyway, so that was    11:04AM

15   my -- I wanted to go back.  What did I rule again?  So that's    11:04AM

16   -- that was my ruling.    11:04AM

17            MR. MCCONWELL:  That's what I was referring to in    11:04AM

18   my motion, actually.  If now is the time to bring it up.  They    11:04AM

19   -- I'm happy to hear them say that the Count 1 deaths are    11:04AM

20   different than the Counts in 9, 10 and 13 deaths.  They've    11:04AM

21   never identified those deaths, they've never identified the    11:04AM

22   failure of a single pitch link.  There is no evidence in their    11:04AM

23   documents they're going to have with the witness, and I say    11:04AM

24   that should be something precluded from speculating about    11:04AM

25   whether there was a death that proximately caused the death.    11:04AM

|   |   |   |
|---|---|---|
| 1 | THE COURT:  All right.  So the prosecution now | 11:04AM |
| 2 | has cited -- and this is exhibit what, 1241? | 11:04AM |
| 3 | MS. M. MILLER:  1242, Your Honor. | 11:04AM |
| 4 | THE COURT:  1242.  The prosecution has excited -- | 11:04AM |
| 5 | not excited -- cited to 1242.  And so the Court is just -- | 11:05AM |
| 6 | look at this just quickly and sees that on their injuries, you | 11:05AM |
| 7 | see the red highlights there.  So that is what I asked you to | 11:05AM |
| 8 | respond to. | 11:05AM |
| 9 | MR. MCCONWELL:  It doesn't respond to a failure | 11:05AM |
| 10 | of a pitch link, which wrecks or accidents involve that, or | 11:05AM |
| 11 | which -- which ones actually involved the death that are | 11:05AM |
| 12 | separate than their Count 1 allegations. | 11:05AM |
| 13 | THE COURT:  Well, it has remarks there.  It has | 11:05AM |
| 14 | remarks. | 11:05AM |
| 15 | MR. MCCONWELL:  It doesn't tie anything to pitch | 11:05AM |
| 16 | link failure.  That's the problem.  And that's -- and that's | 11:05AM |
| 17 | the enhanced penalty that's going to occur in 38 -- the three | 11:05AM |
| 18 | paragraphs.  And that was the purpose of my motion. | 11:05AM |
| 19 | THE COURT:  Well, so some of the remarks in the | 11:05AM |
| 20 | -- this particular 1242, does indicate they have the words | 11:05AM |
| 21 | tail rotor -- tail rotor pitch link. | 11:05AM |
| 22 | MR. MCCONWELL:  I'm not sure it ties to one of -- | 11:05AM |
| 23 | one of the deaths.  The fact that there may have been a tail | 11:05AM |
| 24 | rotor problem or bearing within a tail rotor in one of the | 11:05AM |
| 25 | other accidents doesn't mean it was one that was in the -- in | 11:06AM |

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1  an accident that caused a death.  And that's what we're tying

2  it up.

3          THE COURT:  Okay.  I mean, you make a good point.

4  I suppose, again, that -- all right.  So for purposes of those

5  -- the three that I have already said could go through -- no,

6  I'm sorry, did you say that those--

7          MR. MCCONWELL:  9, 10, and 13.

8          THE COURT:  9, 10, 13 occurred before Hansen

9  Helicopters became owners?

10         MS. M. MILLER:  No.

11         THE COURT:  Or occurred after?

12         MS. M. MILLER:  No, after.

13         MR. MCCONWELL:  After original ones involving

14  Hansen or the -- the subsidiary corporation.

15         THE COURT:  So, again, you know, if we -- well, I

16  don't need to tell you guys how to do your closing arguments

17  but --

18         MR. MCCONWELL:  We'll bring it up, I'm sure.

19         THE COURT:  I'm sorry?

20         MR. MCCONWELL:  I think I'd like to block it from

21  the jury knowing because it's pure speculation at this point.

22         THE COURT:  No, no, this is critical.  I mean, I

23  know that -- so that there is a lot to lose here, a lot to

24  gain for whoever, whoever the Court decides.  I already made a

25  decision as to three.  The question is do I make a decision,

1  do I allow any -- an additional two, or full nine, or                11:06AM

2  whatever.  That's really the question.  So you're just saying         11:07AM

3  it's still not enough?                                                11:07AM

4          MR. MCCONWELL:  We don't know who the -- we don't             11:07AM

5  know the deaths -- we do not know the deaths.                         11:07AM

6          THE COURT:  Well, it says -- it says the deaths               11:07AM

7  here, it shows the deaths.                                            11:07AM

8          MS. M. MILLER:  Yes.                                          11:07AM

9          THE COURT:  It says fatalities.                               11:07AM

10         MR. MCCONWELL:  The type of the failure of the                11:07AM

11 pitch link is my problem.                                             11:07AM

12         THE COURT:  Okay.  All right.  Ms. McConwell, do              11:07AM

13 you have anything, and then I'll go to Mr. Martin?                    11:07AM

14         MR. MCCONWELL:  And I'll drop off now.                        11:07AM

15         THE COURT:  No, no, thank you.                                11:07AM

16         Ms. McConwell, anything further?                              11:07AM

17         Mr. Martin, on this issue?  Of 1242?                          11:07AM

18         MR. MARTIN:  On 1242, Your Honor, the problem I               11:07AM

19 have with it, although I have the chart, it doesn't                   11:07AM

20 specifically tie it to Counts 8 through 13, so we don't know          11:07AM

21 which ones we're defending against.  I know this is the               11:07AM

22 government's allegation within their conspiracy, but the chart        11:07AM

23 in and of itself has things that completely negate the fact           11:07AM

24 that it was caused by some -- a failure of a tail rotor pitch         11:07AM

25 change link, just by reading the comments.                           11:07AM

1    THE COURT:  All right, but by virtue of the    11:07AM
2    summary chart though, as we all know under the rule of    11:08AM
3    evidence, the summary chart has to be substantiated by    11:08AM
4    documents, and you are to have received that in discovery.    11:08AM
5    Right?    11:08AM
6    MS. M. MILLER:  Which they have, two years ago.    11:08AM
7    THE COURT:  That's -- that's what's critical.    11:08AM
8    MS. MCCONWELL:  In January, Mr. McConwell    11:08AM
9    provided to Ms. Miller, actually I think I did, there were a    11:08AM
10   number of line items on those where no documentation was    11:08AM
11   provided, and our objection has been also to the remarks --    11:08AM
12   that remarks column on the far right, which is what    11:08AM
13   Mr. Guzzetti has said which don't -- doesn't appear to be tied    11:08AM
14   to the documents that form the basis for the left portion of    11:08AM
15   the chart.    11:08AM
16   THE COURT:  All right.  So are you saying though    11:08AM
17   then that -- okay.  So if we have a summary chart, did you    11:08AM
18   guys agree on this summary chart, 1242.    11:08AM
19   MS. MCCONWELL:  No, ma'am.    11:08AM
20   MS. M. MILLER:  We discussed it, and this is the    11:08AM
21   circular argument over --    11:08AM
22   THE COURT:  No, wait, wait, I only asked the    11:08AM
23   question, did you agree?    11:08AM
24   MS. M. MILLER:  We did not agree because it's the    11:08AM
25   same thing.    11:09AM

1        THE COURT:  So that's all I asked about.                    11:09AM

2        MS. M. MILLER:  Yes.                                        11:09AM

3        THE COURT:  So you did not agree to this.  So              11:09AM

4   it's still pending as to whether or not it's admissible?        11:09AM

5        MS. M. MILLER:  Yes.                                        11:09AM

6        THE COURT:  The summary chart.  All right.  Are            11:09AM

7   you trying to put in 1242?                                       11:09AM

8        MS. M. MILLER:  Yes, and their argument --                  11:09AM

9        THE COURT:  Hold on, hold on, hold on.  All I              11:09AM

10  care -- I got to focus here.  So on 1242, are you telling me    11:09AM

11  that, Ms. McConwell, that as far as you know, that any and all  11:09AM

12  documentation provided by the prosecution to substantiate       11:09AM

13  summary chart 1242, do not connect the failure of the...        11:09AM

14       MR. MCCONWELL:  Tail rotor.                                 11:09AM

15       THE COURT:  Yeah, here it is.  Tail rotor pitch           11:09AM

16  link to any deaths?                                              11:09AM

17       MR. MCCONWELL:  Right.                                      11:09AM

18       MS. MCCONWELL:  Yes.                                        11:09AM

19       THE COURT:  Mr. McConwell says, yes, Ms.                  11:09AM

20  McConwell -- Mr. Martin.                                         11:09AM

21       MR. MARTIN:  I join, Your Honor.                            11:09AM

22       THE COURT:  Not one?  And has -- not one?                 11:09AM

23       MR. MARTIN:  Not one.                                       11:09AM

24       MR. MCCONWELL:  Not one.                                    11:09AM

25       MR. MARTIN:  Not one.                                       11:09AM

1    THE COURT:  Wow, that's -- that's -- let me just    11:09AM

2    say, that's --    11:10AM

3    MR. MARTIN:  The best we have, Your Honor, is --    11:10AM

4    THE COURT:  I'm sorry?    11:10AM

5    MR. MARTIN:  The best we have from the government    11:10AM

6    is it fits the pattern.  That's --    11:10AM

7    MR. MCCONWELL:  On 30 --    11:10AM

8    MR. MARTIN:  Right.    11:10AM

9    THE COURT:  It fits the pattern?    11:10AM

10    MR. MARTIN:  The testimony, as represented in    11:10AM

11    this summary, is that the accident against -- as observed fit    11:10AM

12    the pattern that these could possibly be tail rotor pitch    11:10AM

13    change link failures.    11:10AM

14    THE COURT:  So are you telling -- okay.  So but    11:10AM

15    have you all -- so you did submit objections?  You said I    11:10AM

16    object to the summary chart because it doesn't -- it's not    11:10AM

17    sufficient to answer our objections.    11:10AM

18    MR. MCCONWELL:  The comments are what we object    11:10AM

19    to.    11:10AM

20    THE COURT:  The remarks?  You mean remarks?    11:10AM

21    MS. M. MILLER:  Yes, the remarks.    11:10AM

22    MS. MCCONWELL:  The remarks and the lack of    11:10AM

23    connecting with the tail rotor pitch link blank.    11:10AM

24    THE COURT:  Right.  So there is three -- there's    11:10AM

25    -- all right.  So there is -- 1, 2, 3, 4, 5.  5 columns, and    11:10AM

1  you got -- so the defense is objecting to, what do you call          11:11AM

2  it, Mr. Guzzetti's conclusions or remarks, that's what you're        11:11AM

3  objecting to?  And that's what you have objected to throughout       11:11AM

4  the discovery process, throughout and up till today?                 11:11AM

5          MS. MCCONWELL:  (Nodded head.)                               11:11AM

6          MS. M. MILLER:  And, Your Honor, has said to the             11:11AM

7  defense repeatedly, show me the money.  Show the NTSB report         11:11AM

8  that Mr. Guzzetti is summarizing here and the inconsistency or       11:11AM

9  inaccuracy between that underlying document and his comments.        11:11AM

10 And the defense has not once in two years done that.  Their          11:11AM

11 argument has been this general, general, "we don't like the          11:11AM

12 comments; we don't like the remarks."  So on the one hand,           11:11AM

13 they say we don't know which accidents were caused by the tail       11:11AM

14 rotor pitch change link, but then they just admit, well, we do       11:12AM

15 know which accidents he's going to say were caused by the tail       11:12AM

16 rotor pitch change link, but we still don't have enough              11:12AM

17 information.  This is a criminal case, this is not a civil           11:12AM

18 case.  This Court in ECF 1179 already ruled on this issue.           11:12AM

19 And this Court has repeatedly, repeatedly told the defense           11:12AM

20 Counsel, even as recently as yesterday, if you have a specific       11:12AM

21 objection to these charts, based on the underlying documents,        11:12AM

22 you must give that to the government, they still don't.              11:12AM

23          THE COURT:  All right.                                      11:12AM

24          MS. M. MILLER:  It's still this general thing.              11:12AM

25 1179 you said, Your Honor, "The Ninth Circuit has stated that        11:12AM

1    a defendant is not entitled to know all the evidence the    11:12AM

2    government intends to produce, but only the theory of the    11:12AM

3    government's case."  And you cited *United States versus Ryland*    11:12AM

4    9th Circuit for that proposition.    11:12AM

5              THE COURT:  Okay.  I got it, I got it, I got your    11:13AM

6    argument.  Let me -- okay.  I got it.  Okay.  You can be    11:13AM

7    seated, Ms. Miller.    11:13AM

8              MS. M. MILLER:  Thank you, Your Honor.    11:13AM

9              THE COURT:  All right.  Well, well, well,    11:13AM

10   (laughing) here we are, it's 11:13 and we are now at the    11:13AM

11   finish line, the end of the -- right at the -- like right    11:13AM

12   before the finish line and we have this issue.  So let me --    11:13AM

13   let me see, it's 11:13, the jurors are going to -- they are    11:13AM

14   getting their lunch shortly.  So what I'm going to do is I'm    11:13AM

15   going to have you all go and get your lunch now, and I'm going    11:13AM

16   to come back with my ruling on this issue.  Okay.    11:13AM

17             MS. M. MILLER:  Thank you, Your Honor.    11:13AM

18             THE COURT:  Anything further?  That's it.    11:13AM

19             MS. M. MILLER:  No, that's it.    11:13AM

20             THE COURT:  All right.  Thank you.  So our -- we    11:13AM

21   have -- we go from 11 --    11:13AM

22             MS. MCCONWELL:  I think it's 11:45 to 12:30.    11:13AM

23             THE COURT:  Okay.  11:45 to 12:30.  Yeah.  So    11:13AM

24   come back at 12:30.  So the jurors are already used to that.    11:13AM

25   Let me ask you this though, Counsels.    11:13AM

```
 1              (Pause.)                                            11:14AM

 2              THE COURT:  All right.  For -- under Rule 1006,      11:14AM

 3    Defendants do have to give a specific objection for notice,   11:14AM

 4    I'm thinking that the language in paragraph 47 so paragraph 47 11:14AM

 5    in the grand jury indictment, I don't think it's enough to put 11:14AM

 6    the Defendants on notice that accidents, other than the ones   11:14AM

 7    mentioned in the Second Superseding Indictment, will be used   11:14AM

 8    to prove any of the counts.  Let me just say that's what I'm   11:14AM

 9    thinking temporarily -- as of right now.  I -- let me -- let   11:14AM

10    me just say, in the accidents in paragraph 50 aren't           11:14AM

11    prejudicial because they weren't allegedly caused by the       11:14AM

12    Defendants on 50.  Let me just say, okay.  So this indictment  11:14AM

13    is like -- unlike -- is like other indictments, it's not       11:14AM

14    precisely crafted.  I -- I will say that.  It's not.  Part of  11:14AM

15    the problem is that the United States Attorney's Office is     11:15AM

16    still investigating.  That's -- that's part of the issue.  Is  11:15AM

17    that -- I mean, so that can cause problems.  But also, there   11:15AM

18    is an inordinate amount of -- of discovery here.  I know that. 11:15AM

19    That doesn't excuse anything.                                  11:15AM

20              MS. M. MILLER:  We just want -- we just want         11:15AM

21    1242, which they've had -- that's a summary chart, they've had 11:15AM

22    it for two years.  Those are the only accidents and incidents  11:15AM

23    that we want to use.                                           11:15AM

24              THE COURT:  But Counsel, anyway, my point is I'm     11:15AM

25    going to go back and look at it, but I'm just telling you that 11:15AM
```

```
 1    -- that -- you know, I've -- I've really looked at this issue          11:15AM
 2    of notice, you know, I've given -- I've actually given you             11:15AM
 3    guys the benefit of the doubt.  I let the prosecution have the         11:15AM
 4    alter ego corporations in.  Some of them, not all of them.            11:15AM
 5              MS. M. MILLER:  Right.                                        11:15AM
 6              THE COURT:  But on this issue, this is -- this is            11:15AM
 7    causing death and serious bodily injury.  It is high stakes           11:15AM
 8    for both sides.                                                        11:15AM
 9              MS. M. MILLER:  Yes.                                          11:15AM
10              THE COURT:  For prosecution and defense.  Really,           11:15AM
11    again, you know, I'm -- I'm pretty conservative in terms of           11:16AM
12    pleadings, I always believe that, man if you're a prosecutor,        11:16AM
13    put everything in the indictment.  Everything.  I mean, to the       11:16AM
14    extent that you can do it.  And give the defendants all notice       11:16AM
15    that they can.  That's just always been my philosophy as a           11:16AM
16    prosecutor, a former prosecutor.  And even just as a judge           11:16AM
17    watching this because things always unravel during trial.            11:16AM
18    This is a big case, it's a 100-count indictment.  Involves so        11:16AM
19    many defendants.  But Mr. Walker and Hansen Helicopters are on       11:16AM
20    trial right now.  And the United States Attorney's Office            11:16AM
21    represents the United States of America, this is also a trial        11:16AM
22    for them too.                                                         11:16AM
23              MS. M. MILLER:  Absolutely.                                  11:16AM
24              THE COURT:  So I -- I understand that, I'm going            11:16AM
25    to think about this issue, and I'll come back.  All right.            11:16AM
```

```
 1              MS. M. MILLER:  Thank you, Your Honor.              11:16AM
 2              THE COURT:  Have a nice lunch.  All right.  Take    11:16AM
 3    care.  Thank you.                                            11:16AM
 4              So we'll have Mr. Guzzetti start then right after   11:16AM
 5    lunch at 12 -- did I -- what time is it?  12:45?  Is that when 11:16AM
 6    we come back usually?  It's 11:45 to 12:30, right, is our    11:17AM
 7    lunch break?  We're going to take lunch early so I can make  11:17AM
 8    this ruling.                                                 11:17AM
 9              MS. M. MILLER:  Thank you, Your Honor.              11:17AM
10              THE COURT:  Thank you, take care.                  11:17AM
11              (Recess taken at 11:17 a.m.)                       11:17AM
12              (Back on the record at 12:34 p.m.)                 12:34PM
13              THE COURT:  We're outside the presence of the      12:35PM
14    jury.  And let's see.  So I think we have additional         12:35PM
15    information regarding Guzzetti submitted to the Court; is that 12:35PM
16    right?  So I just had a chance to review.  You got a chance to 12:35PM
17    review that, Counsel, defense?  Memorandum or an e-mail from 12:35PM
18    Ms. Samantha Miller?                                         12:35PM
19              MR. MARTIN:  We got it, Your Honor, we sent you     12:35PM
20    an e-mail response.                                          12:35PM
21              THE COURT:  Oh, you did?  You sent me something?    12:35PM
22              MR. MARTIN:  Well, we just said that --            12:35PM
23              THE COURT:  Sorry, can you get on your mic there?  12:35PM
24              MR. MARTIN:  Is there another one?                 12:35PM
25              MS. M. MILLER:  No.                                12:35PM
```

1        THE COURT:  Oh, I don't know.  I just got this    12:35PM

2  like --                                                  12:35PM

3        MS. M. MILLER:  It's not.                          12:35PM

4        MR. MARTIN:  I'm sorry.  I wasn't on the           12:35PM

5  microphone, Your Honor.                                  12:35PM

6        THE COURT:  It says additional -- today is         12:35PM

7  May 22nd, right?                                         12:35PM

8        MS. M. MILLER:  Yes, well --                       12:36PM

9        MR. MARTIN:  During the lunch hour, they sent      12:36PM

10  another one.  I think Laura responded to it, Your Honor. 12:36PM

11        THE COURT:  Okay.  Let me get there -- let me --  12:36PM

12        MR. MARTIN:  Just if we could -- we're happy to   12:36PM

13  make further discussion with the Court on it, but we disagree 12:36PM

14  with it.                                                 12:36PM

15        THE COURT:  All right.  Well, let me just make my 12:36PM

16  rulings.  I -- I've read this without looking at the     12:36PM

17  objections from defense, I'm sorry, I did not or not     12:36PM

18  objections, but -- well, I guess objections or response.  So 12:36PM

19  the Court has considered all the arguments by Counsel.  And 12:36PM

20  I've already made my ruling regarding the motion in limine by 12:36PM

21  Mr. McConwell and team.  And so the Court will stand by that 12:36PM

22  ruling on those three particular counts.                 12:36PM

23        Any other deaths or serious bodily injury, the    12:36PM

24  Court will disallow at this time.  And I know you guys have 12:36PM

25  made all your arguments ad nauseam, I've heard it, I've seen 12:36PM

```
 1   it, and we don't need to go through it again.  I believe that
 2   pursuant to federal evidence -- Federal Rule of Evidence 403
 3   in particular, the Court finds that for the Court to allow
 4   these additional requests by prosecution, it would be in
 5   violation of 403.  The Court believes that the probative value
 6   is substantially outweighed by danger of unfair prejudice.
 7   And so the Court has already discussed that earlier.  So at
 8   this time, with regard to the -- as I've indicated, I've
 9   already made my ruling.  So we'll stick with that.  Anything
10   further, Counsel?  And if not we'll proceed forward.
11           MS. M. MILLER:  I want to make sure I understand
12   your ruling.  So then for Mr. Guzzetti's chart 1242, we need
13   to redact the column that has a reference to death and serious
14   bodily injury; is that correct, Your Honor?
15           THE COURT:  Unless it relates to the three counts
16   --
17           MS. M. MILLER:  The Counts 9 -- yes, yes, yes.
18   So the two that relate to that are 9068F and 74LB.  And what
19   we'll do is we will redact that column for the rest of those
20   accidents and incidents and, Your Honor, I'm assuming that --
21           THE COURT:  You'll redact -- oh, I see, I'm sorry
22   you'll redact --
23           MS. M. MILLER:  The column that has serious
24   bodily injury or death, so we will -- we will redact that
25   column with the exception of the two accidents that
```

1   Mr. Guzzetti will testify were approximately caused by the          12:38PM

2   failure of the tail rotor pitch change link which are accident      12:38PM

3   9068F and accident 74LB.                                            12:38PM

4              THE COURT:  So just to be clear, let me just ask         12:38PM

5   you, just to be clear on this 1242, the third column says          12:38PM

6   injuries, so --                                                     12:38PM

7              MS. M. MILLER:  That would be redacted.                   12:38PM

8              THE COURT:  The entire -- the entire column will         12:38PM

9   be redacted?                                                        12:39PM

10             MS. M. MILLER:  Yes.                                      12:39PM

11             THE COURT:  Pull that all out, but everything            12:39PM

12  else you want to leave as is?                                       12:39PM

13             MS. M. MILLER:  Yes.                                      12:39PM

14             THE COURT:  Okay.  I don't think I have a problem        12:39PM

15  with that, but I -- let me hear from the defense.                   12:39PM

16             MS. M. MILLER:  And no, the other thing I want to        12:39PM

17  make sure we're not going have a problem with, the jury has        12:39PM

18  already heard evidence about the death of Mr. Santos, 9068F,       12:39PM

19  and that is, Your Honor, one of the deaths that we attribute        12:39PM

20  to a failure of the tail rotor pitch change link.  So I don't      12:39PM

21  think there is any problem there.                                   12:39PM

22             THE COURT:  Yeah, that's already been -- I've           12:39PM

23  already allowed this.                                               12:39PM

24             MS. M. MILLER:  That's already in evidence.  The        12:39PM

25  jury also heard, Your Honor, the death of the spotter who was      12:39PM

on the aircraft, N471M, with Mr. Bustos.  And they've also          12:39PM

heard about the serious bodily injury to both the pilot and         12:39PM

the spotter in N805LA, which was testified to by Mr. Reed and       12:39PM

Ms. Leon Guerrero.  If you recall, Your Honor, that was the         12:39PM

aircraft that was brought in to the Guam harbor, and the pilot      12:40PM

was removed from the aircraft.  He had a broken back and put        12:40PM

in the Hansen Helicopter's van.  So those pieces of evidence        12:40PM

have already been come in, Your Honor.  And those are              12:40PM

incidents that I will be discussing with Mr. Guzzetti during        12:40PM

his testimony.                                                      12:40PM

       Mr. Braga testified about his accident, 4910,          12:40PM

said he had minor injuries as a result of that accident.  And       12:40PM

then, of course, in our Second Superseding Indictment, we do        12:40PM

also discuss the death associated with N104BN.  And I'm             12:40PM

assuming that that --                                               12:40PM

       THE COURT:  I'm sorry.  What was your last part?     12:40PM

You're assuming what?                                               12:40PM

       MS. M. MILLER:  In our Second Superseding            12:40PM

Indictment, I cited the paragraph to you, Your Honor, that          12:40PM

talked about 104, N104BN.                                           12:40PM

       THE COURT:  Okay.  Hold on one second.  Anything     12:40PM

else?                                                               12:41PM

       MS. M. MILLER:  No, that's it.                       12:41PM

       THE COURT:  All right.  So hold on, hold on, hold    12:41PM

on, Defense, calm down.                                             12:41PM

| | | |
|---|---|---|
| 1 | MR. MARTIN: I just -- | 12:41PM |
| 2 | THE COURT: Wait just a minute. | 12:41PM |
| 3 | MR. MARTIN: Repeat the numbers. | 12:41PM |
| 4 | THE COURT: Oh, repeat the numbers then. | 12:41PM |
| 5 | MR. MARTIN: That that's all I'm asking. | 12:41PM |
| 6 | MS. M. MILLER: So the numbers, Your Honor, are | 12:41PM |

7   471M, N471M... RPC4910, 9068F, 74LB, 805LA, and 104BN.   12:41PM

8          And what we're going to do, Your Honor, so that   12:41PM

9   there is no issue, we'll redact that entire column from   12:41PM

10   Exhibit 1242, but Mr. Guzzetti will testify about those   12:41PM

11   accidents and incidents that caused serious bodily injury or   12:42PM

12   death --   12:42PM

13          THE COURT: Well, yeah, I don't -- I think -- and   12:42PM

14   I agree, I think, to the extent that it's either in the   12:42PM

15   indictment, I already ruled on that. And to the extent that   12:42PM

16   there's already been testimony and, you know, whatever   12:42PM

17   objections were made, the Court ruled on those objections.   12:42PM

18          MS. M. MILLER: Right.   12:42PM

19          THE COURT: So Counsel will all have to abide by   12:42PM

20   those. But to that extent, the Court will allow that evidence   12:42PM

21   in. I don't disagree with you on that.   12:42PM

22          MS. M. MILLER: Right. Right.   12:42PM

23          MR. MARTIN: May I talk to Marie a minute, Your   12:42PM

24   Honor?   12:42PM

25          THE COURT: Okay. Hold on. Wait, wait. So he   12:42PM

1    wants to talk to Ms. Miller, and you want to talk.  So hold          12:42PM

2    on.  I gotta do one or the other.  Yes, Ms. McConwell, go            12:42PM

3    ahead, you're first.                                                 12:42PM

4              MS. MCCONWELL:  I was just going to say N74LB is           12:42PM

5    not in your order, the two that were in your order were the          12:42PM

6    9068F and 104BN.                                                     12:42PM

7              MS. M. MILLER:  No, Laura, 74LB is one of the              12:42PM

8    aircraft that Mr. Guzzetti is going to testify was caused by         12:42PM

9    the failure of the tail rotor pitch change link.  Remember you       12:43PM

10   said you didn't know which two?  Those are the two, 9068F and        12:43PM

11   74LB.                                                                12:43PM

12             MS. MCCONWELL:  Well, the two that we discussed            12:43PM

13   prior to the break --                                                12:43PM

14             MS. M. MILLER:  No, no, no, I'm not talking about          12:43PM

15   what we had discussed prior to the break.  The Judge's order         12:43PM

16   regarding Counts 9, etc., the aircraft parts fraud was the           12:43PM

17   only accidents that the government can discuss that caused           12:43PM

18   death or serious bodily injury are those that we contend were        12:43PM

19   approximately caused by a failure of the tail rotor pitch            12:43PM

20   change link.  I'm telling you that 74LB is one of those.  That       12:43PM

21   accident is not excluded by the Court's earlier order, and it        12:43PM

22   is not excluded by her order now.                                    12:43PM

23             MS. MCCONWELL:  Well, the Court's order, 1707,             12:43PM

24   identified 9068F and 104BN, and I did not see 74LB listed.          12:43PM

25   Which page is that listed on?                                        12:43PM

```
 1              MS. M. MILLER:  There is no page.  The Court's      12:44PM
 2    order was that any of the accidents that the government       12:44PM
 3    contends were proximately caused by a failure of the tail     12:44PM
 4    rotor pitch change link may come in.  I am telling you that   12:44PM
 5    those accidents include N74LB.                                12:44PM
 6              THE COURT:  Okay.  So --                            12:44PM
 7              MS. MCCONWELL:  I'm not conceding to that.  I'll     12:44PM
 8    let Mr. Martin talk, and I'll reread the order --             12:44PM
 9              THE COURT:  All right.  Why don't you guys all --    12:44PM
10    why don't you go together though so you guys are all -- Ms.   12:44PM
11    McConwell, then you could come back and look at your notes,   12:44PM
12    but so you guys all understand the Court's ruling.            12:44PM
13              (Counsel conferred.)                                12:44PM
14              THE COURT:  And then we could get to Mr.            12:44PM
15    Guzzetti's testimony.                                         12:44PM
16              (Pause.)                                            12:44PM
17              THE COURT:  You're just going to merge the          12:45PM
18    columns and just delete that out?                            12:45PM
19              MS. M. MILLER:  Yeah.                               12:45PM
20              THE COURT:  Good.                                   12:45PM
21              MS. MCCONWELL:  But then she's got all those        12:45PM
22    other things that she has listed and all the remarks on the  12:45PM
23    right side of the column.  Are we just going to take those up 12:45PM
24    as we go?                                                     12:45PM
25              THE COURT:  Yeah, I think so.  I mean, you know I   12:45PM
```

```
 1    think that -- you know what, that will go really just to the        12:45PM
 2    credibility of the witness.  I mean, those are his remarks,         12:45PM
 3    those are his findings, I suppose, when he conducted his            12:45PM
 4    review so --                                                        12:45PM
 5              MS. M. MILLER:  They actually aren't.  They're            12:45PM
 6    just a summary of what he reviewed.                                 12:45PM
 7              THE COURT:  All right.  So it's even that.  Okay.         12:45PM
 8    Whatever that is.  Yeah.  All right.  Okay.  Is that -- is          12:45PM
 9    everybody -- is it clear what the ruling is.                        12:45PM
10              MS. M. MILLER:  I showed Mr. Martin what we're            12:45PM
11    going to do in terms of the redaction, and he said that's          12:45PM
12    fine.                                                               12:45PM
13              THE COURT:  All right.  So essentially, Column 3          12:45PM
14    is wiped out completely.                                           12:45PM
15              MS. M. MILLER:  Yes.                                      12:45PM
16              THE COURT:  Deleted.                                      12:45PM
17              Yes, Ms. McConwell, on the -- on 1242, Column 3?         12:45PM
18              MS. MCCONWELL:  No, I'm -- I'm back to 74LB.  I           12:46PM
19    don't -- I guess I'm not seeing where in your 1707 that that's      12:46PM
20    -- that that aircraft is allowed.                                   12:46PM
21              (Pause.)                                                  12:46PM
22              THE COURT:  Okay.  Hold on.                               12:46PM
23              MS. M. MILLER:  Your Honor, that aircraft was not         12:46PM
24    specifically addressed in your order.  Your order specifically      12:46PM
25    said that the aircraft that the government contends were in an      12:46PM
```

1    accident as a result of the failure of the tail rotor pitch     12:46PM

2    change link and that caused serious bodily injury or death.     12:46PM

3    Those accidents can come in.     12:46PM

4              THE COURT:  I said just two -- okay.  So, Ms.     12:46PM

5    McConwell, so I have my order that's pretty clear.  The part     12:46PM

6    that's verbally being discussed today and ordered today, right     12:46PM

7    now, is the evidence that has already come into trial,     12:46PM

8    whatever evidence has been brought in through the testimony of     12:46PM

9    whatever witness as far as any event that may have caused     12:46PM

10   bodily injury, whether it's serious or not, or death.  And to     12:47PM

11   the extent that there were objections, the objections should     12:47PM

12   be honored, but the prosecution has the right to at least try     12:47PM

13   to bring them in to show something, whatever they're intending     12:47PM

14   to show, and then you have the right to rebut that through     12:47PM

15   cross-examination.     12:47PM

16             MS. MCCONWELL:  Okay.  I just had understood her     12:47PM

17   say to that your order specifically addressed N74LB, and I     12:47PM

18   just -- I did not see it in the order, which is why I was     12:47PM

19   trying to clarify.     12:47PM

20             THE COURT:  So we got it clarified now.     12:47PM

21             MS. MCCONWELL:  Right.  And so then on their     12:47PM

22   chart, are they then going to be limited to these aircraft     12:47PM

23   that they're contending have already been into evidence and     12:47PM

24   then this additional one that they're claiming is a tail rotor     12:47PM

25   pitch link related failure, or they still going to have all     12:47PM

| | |
|---|---|
| 1 | the 35 aircraft identified on the chart? | 12:47PM |
| 2 | THE COURT:  I'm sorry, can you repeat the | 12:47PM |
| 3 | question? | 12:47PM |
| 4 | MS. MCCONWELL:  Yeah.  Their -- their summary | 12:47PM |
| 5 | chart, 1242, has about 34, 35 aircraft on it. | 12:47PM |
| 6 | THE COURT:  Right. | 12:47PM |
| 7 | MS. MCCONWELL:  And my question, trying to | 12:47PM |
| 8 | understand the Court's ruling, is there only certain aircraft | 12:48PM |
| 9 | they're going to -- that the witness is going to be able to | 12:48PM |
| 10 | testify about, are the other ones going to be redacted from | 12:48PM |
| 11 | the chart so that we're only -- | 12:48PM |
| 12 | MS. M. MILLER:  No. | 12:48PM |
| 13 | MS. MCCONWELL:  Having maybe ten, or wait, 1, 2, | 12:48PM |
| 14 | 3, 4, 5, 6 aircraft on the chart rather than 35? | 12:48PM |
| 15 | MS. M. MILLER:  The Court's ruling -- | 12:48PM |
| 16 | THE COURT:  So okay.  Hold on.  That's a good | 12:48PM |
| 17 | question. | 12:48PM |
| 18 | MS. M. MILLER:  No, the Court's ruling from my | 12:48PM |
| 19 | understanding is, any evidence of injury or death is what's | 12:48PM |
| 20 | coming out.  The fact that there were those accidents | 12:48PM |
| 21 | described in 1242 go to Count 1, which is two-fold.  Number | 12:48PM |
| 22 | one, the mission of the FAA as to safe transportation, and | 12:48PM |
| 23 | obviously, with 35 accidents, that's not safe transportation. | 12:48PM |
| 24 | Number 2, 22 of those accidents were never reported to the | 12:48PM |
| 25 | NTSB.  That goes to fraud against the NTSB, failure to report | 12:48PM |

*Criminal Case No. 18-00010, USA v. Walker, et al.*

```
 1   accidents.  The Court found that what was 403, what was         12:48PM
 2   unfairly prejudicial was for the jury to hear about all of the  12:48PM
 3   death and injury not related to the tail rotor pitch change     12:49PM
 4   link so --                                                      12:49PM
 5           THE COURT:  It's not -- well, it's not just --          12:49PM
 6   okay, and it could be even further could be something not even  12:49PM
 7   related or related to something else other than the tail rotor  12:49PM
 8   pitch link because it was all about notice.                     12:49PM
 9           MS. M. MILLER:  Correct.                                12:49PM
10           THE COURT:  So that's not allowed, but you're           12:49PM
11   right to the extent there has been -- if there has been         12:49PM
12   evidence brought in during the trial of all of these            12:49PM
13   incidences --                                                   12:49PM
14           MS. M. MILLER:  Yes.                                    12:49PM
15           THE COURT:  -- occurring on 1242, that are              12:49PM
16   relevant to Charge 1 conspiracy, the answer is yes, that can    12:49PM
17   come in.                                                        12:49PM
18           MS. M. MILLER:  And that's our position --              12:49PM
19           THE COURT:  The Court has said that's fine, but I       12:49PM
20   -- but I did say -- but I did exclude any deaths that have not  12:49PM
21   been specifically noted in the --                              12:49PM
22           MS. M. MILLER:  The tail rotor pitch change link.       12:49PM
23           THE COURT:  Well, tail rotor pitch link and any         12:49PM
24   other type of cause of death --                                12:49PM
25           MS. M. MILLER:  Or injury.                              12:49PM
```

THE COURT:  -- that has not been noted in the
indictment.

MS. M. MILLER:  Yes.

MS. MCCONWELL:  Or serious bodily injury.

THE COURT:  Or serious bodily injury; that is
correct.

MS. M. MILLER:  Right.  And that's why we're just
taking that whole column out so there is no question.

THE COURT:  Is that clear?  Do you guys -- is
that -- do you --

MS. MCCONWELL:  Well, but she's still leaving all
of the aircraft.  She may take that column out, but she's
still leaving all the aircraft -- all the aircraft on the list
that the Court said that they're not supposed to testify
about.

MS. M. MILLER:  Because there is evidence already
about those aircraft being involved in accidents after
Hansen's ownership.

THE COURT:  Yes.  And -- and I did say that that
can come in.  What I was very focused on -- and I was trying
to streamline it in terms of what I felt would be prejudicial
to the Defendant would be the death and serious bodily injury
notices.  But everything else, if the prosecution has already,
to this point, because Mr. Guzzetti is the expert witness,
he's coming in, to this point, if they have already introduced

1   evidence of these -- is it 35?                          12:50PM

2           MS. M. MILLER:  It is -- I'll show you in one    12:50PM

3   second -- can you give me --                           12:50PM

4           THE COURT:  Hold on -- hold on.  Let me just    12:50PM

5   finish my thought here.  If the prosecution has already 12:50PM

6   introduced evidence of these numbered -- however numbers, 12:51PM

7   whatever the total number is, in 1242, if that's already been 12:51PM

8   introduced, and admitted, and discussed, and cross-examined, 12:51PM

9   they can bring that out because they are saying that it's 12:51PM

10  relevant to conspiracy in Count 1.  Okay.  Does that -- you 12:51PM

11  understand that?                                       12:51PM

12          MS. MCCONWELL:  Right.  But I just want to make 12:51PM

13  sure, but -- but for the aircraft that are on this list, what 12:51PM

14  -- which have not been brought out already in evidence, that 12:51PM

15  needs to come off the list.                            12:51PM

16          THE COURT:  Well, I assume that that's -- they're 12:51PM

17  going -- they're going to make sure that's not -- she says 12:51PM

18  these are all in.                                      12:51PM

19          MS. M. MILLER:  They're all in because we already 12:51PM

20  --                                                     12:51PM

21          THE COURT:  But you're right to the extent they 12:51PM

22  have not been discussed ever, they should be out.      12:51PM

23          MS. M. MILLER:  They're all in, if I have to list 12:51PM

24  all the exhibits that we got in that reference them --  12:51PM

25          THE COURT:  I don't think so.  As an officer of 12:51PM

| | |
|---|---|
| 1 | the Court, if -- |
| 2 | MS. M. MILLER: -- testimony that's got it in. |
| 3 | THE COURT: No. If you're stating as an officer |
| 4 | the Court, that with regard to all of the air -- whatever -- |
| 5 | what do they call -- registration numbers of those air -- air |
| 6 | -- helicopters -- |
| 7 | MS. M. MILLER: Yes. |
| 8 | THE COURT: -- or aircrafts, if they have been |
| 9 | discussed during the course of the trial, then they're in. |
| 10 | MS. M. MILLER: Yes. |
| 11 | THE COURT: Ms. McConwell, see she's already |
| 12 | indicating that. |
| 13 | MS. MCCONWELL: Well, yeah, I understand the |
| 14 | ruling. I just don't agree with her that all 35 have been -- |
| 15 | have been discussed or admitted into some type of evidence. |
| 16 | THE COURT: Okay. Well, I mean, when -- when it |
| 17 | comes up during trial, I mean, if he testifies, and you say |
| 18 | that's not been admitted then we have to do the search, but |
| 19 | just make sure you know what your specific -- |
| 20 | MS. MCCONWELL: Right. I'm going to do that -- |
| 21 | THE COURT: Make sure you know your specific |
| 22 | objection. All right. Are we ready -- |
| 23 | MS. M. MILLER: We're ready. |
| 24 | THE COURT: Yes, Mr. Martin? |
| 25 | MR. MARTIN: Your Honor, just take a second if we |

*Criminal Case No. 18-00010, USA v. Walker, et al.*

compare that to paragraph 126 to make sure that they're all in 12:52PM

the indictment, if you'll just give us a moment. 12:52PM

THE COURT: I'm sorry, 126? 12:52PM

MR. MARTIN: It lists all -- it lists all the 12:52PM

aircraft that are the subject of this indictment in 12:52PM

paragraph 126, if we could just have a moment. 12:52PM

THE COURT: Okay. You got a moment. I'll give 12:52PM

you five minutes, and then we'll call in the jury, how is 12:53PM

that? 12:53PM

MR. MARTIN: Sure. 12:53PM

THE COURT: All you have to do is go in and do a 12:53PM

search, like pull up the indictment, stick in the OCR, put in 12:53PM

the numbers. That should do it, I believe. Is that right, 12:53PM

Emily? Is that right? They could just take -- they have the 12:53PM

indictment they could just do the OCR search? Stick it -- 12:53PM

okay. 12:53PM

Can you tell the jury five more minutes? 12:53PM

(Pause.) 12:53PM

MR. MARTIN: May I visit with the government a 12:57PM

minute, Your Honor? 12:57PM

THE COURT: Yeah, that's fine. 12:57PM

(Counsel conferred.) 12:57PM

THE COURT: You guys okay? So -- 12:59PM

MS. M. MILLER: Your Honor, we're comparing what 12:59PM

Mr. Martin gave us with our list. There are some helicopters 12:59PM

1    that are on that list that are not specifically mentioned in    12:59PM

2    the indictment, Your Honor.  However, we would argue that    12:59PM

3    those are still relevant under Count 1 because they show the    12:59PM

4    evidence of the attempt to defraud the FAA and the NTSB.  We    12:59PM

5    would also refer the Court to the jury instruction you're    01:00PM

6    going to give about charged and uncharged conduct, so these    01:00PM

7    are helicopters that are absolutely owned by Hansen    01:00PM

8    Helicopters, Jon Walker, or one of the affiliated    01:00PM

9    corporations.    01:00PM

10              These are accidents that occurred during the    01:00PM

11    course of and in furtherance of the conspiracy to defraud the    01:00PM

12    FAA and the NTSB.  And these are also helicopters that were    01:00PM

13    identified by Mr. Guzzetti in August of 2020.  So in terms of    01:00PM

14    notice of these accidents, that has been given to the    01:00PM

15    Defendants.  We will, of course, as we already said, redact    01:00PM

16    any reference to serious bodily injury or death from all of    01:00PM

17    those accidents so that the 403 aspect of it is addressed.    01:00PM

18    But in terms of the 401 aspect of it, the government believes    01:00PM

19    that this entire chart should come in with that exception.    01:00PM

20              THE COURT:  All right.  So let me just say, the    01:00PM

21    Court 's ruling is this:  That my prior -- my order that I    01:00PM

22    issued earlier stands.  Any -- let me just pull this chart.    01:00PM

23    Any registered helicopter on Column 1 that's neither -- that's    01:01PM

24    neither listed in the grand jury Second Superseding Indictment    01:01PM

25    nor discussed during trial will not be allowed.  That's it,    01:01PM

1   period.  Does that -- you understand what my ruling is?                    01:01PM

2                MS. M. MILLER:  And when you say discussed during            01:01PM

3   trial, so Mr. Sprayberry during his testimony, he actually               01:01PM

4   identified the total number of accidents that the Defendants             01:01PM

5   were involved in.  He was using this particular chart to                 01:01PM

6   identify those number of accidents.                                      01:01PM

7                And so we would argue that that evidence has, in            01:01PM

8   fact, already came in.  And that -- when he was cross-examined           01:01PM

9   on that by Mr. McConwell and Mr. McConwell asked him, Well,              01:01PM

10  isn't it true that Hansen's operation is a relatively safe               01:01PM

11  operation?  Mr. Sprayberry responded, no, their record is               01:01PM

12  abysmal, I believe is the word he used, Your Honor.  And then           01:01PM

13  he specifically said they've had over 35 accidents.  And so             01:02PM

14  that testimony has already come in, and it was not stricken.             01:02PM

15               THE COURT:  All right.  So let me just say, even            01:02PM

16  if Sprayberry said there were 35 or 105, bottom line is, in             01:02PM

17  terms of notice, the Court believes that notice has to be               01:02PM

18  given in term of specific numbers.                                       01:02PM

19               MS. M. MILLER:  And we did in August of 2020.              01:02PM

20               THE COURT:  No, I said it has to be within either          01:02PM

21  in the grand jury indictment, or in the trial itself.  In the          01:02PM

22  testimony.  So if Sprayberry said there were 35 accidents or           01:02PM

23  12 accidents that caused whatever it caused and these are the          01:02PM

24  registered numbers, then the Court will allow that in.  I              01:02PM

25  don't want to have to get into all this discovery dispute              01:02PM

1    stuff that is arising here.  So that -- to that extent, unless    01:02PM

2    it's -- let me just repeat this, unless it's in the grand jury    01:02PM

3    indictment specifically listed, or unless it's testified    01:02PM

4    during the trial itself, specifically mentioned by any    01:02PM

5    witness, it won't come in.  So basically, if it's -- if it    01:03PM

6    hasn't been either of those -- in either of those situations,    01:03PM

7    then delete them.    01:03PM

8            MS. M. MILLER:  Okay.    01:03PM

9            THE COURT:  Okay.  It just keeps it simple.  So    01:03PM

10   the Court has ruled in your favor defense.  Did you just hear    01:03PM

11   my ruling?    01:03PM

12           MS. MCCONWELL:  Yes.    01:03PM

13           MR. MARTIN:  I think we might need to get with    01:03PM

14   the government and decide if there is any modifications that    01:03PM

15   need to be made.    01:03PM

16           THE COURT:  Okay.  Then talk to them.  But you --    01:03PM

17   but did you understand my ruling, Mr. Martin?    01:03PM

18           MR. MARTIN:  Yes, I did, Your Honor.    01:03PM

19           THE COURT:  So if you need to go further --    01:03PM

20           MR. MARTIN:  And I appreciate it.    01:03PM

21           THE COURT:  Well, don't worry about it.  You    01:03PM

22   don't have to tell me --    01:03PM

23           MR. MARTIN:  I understand what you said when you    01:03PM

24   ruled in our favor, and that's why I think we need to talk to    01:03PM

25   the government.    01:03PM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1    THE COURT:  Well, you know, I'm ruling in favor    01:03PM

2  of notice.  I'm not trying to --    01:03PM

3    MR. MARTIN:  No, I understand, Judge.    01:03PM

4    THE COURT:  Go ahead.  Continue on, I guess    01:03PM

5  you're going to keep trying to whittle it down.    01:03PM

6    (Counsel conferred.)    01:03PM

7    MS. M. MILLER:  So, Your Honor, we have an    01:05PM

8  agreement on the first four helicopters that are listed in    01:05PM

9  Mr. Guzzetti's chart based on your order that if they are not    01:05PM

10  in the indictment, and they weren't specifically brought up at    01:05PM

11  trial --    01:05PM

12    THE COURT:  Okay.  Good.    01:05PM

13    MS. M. MILLER:  -- that they should be out.  What    01:05PM

14  we do not have an agreement on is the RPC helicopters that    01:05PM

15  were involved in accidents here.  Ms. McConwell is saying even    01:05PM

16  if they have come up in trial, multiple times, she doesn't    01:05PM

17  agree they should be on there, and I don't agree with that.    01:05PM

18  So for example, 40 --    01:05PM

19    THE COURT:  Okay.  I think it's clear.  It    01:05PM

20  doesn't matter to me.  The -- the thing is, I've already made    01:05PM

21  my ruling.  I think it's pretty simple.  Either they're    01:05PM

22  notified -- notice in the indictment or they're testified to    01:06PM

23  in trial as it relates to Count 1, the Court is going to    01:06PM

24  allow.  I think it's pretty simple.  Yes, Ms. McConwell?    01:06PM

25    MS. MCCONWELL:  Well, just --    01:06PM

1           THE COURT:  Can you get on to the mic?  Pull the          01:06PM

2    mic over.          01:06PM

3           MS. MCCONWELL:  Yes, yes.  So with the exception          01:06PM

4    of the RPC4910 with the accident date listed as 5-30-2017, we          01:06PM

5    objected to the rest of those RPC.  Ms. Miller is saying her          01:06PM

6    -- the reason that those should come in is because they          01:06PM

7    appeared on 3003-14.  And there's -- and I don't agree that          01:06PM

8    those should be in there's no testimony about -- that was a          01:06PM

9    bulk sale document, that was a bill of sale, and that doesn't          01:06PM

10   have anything to do with any type of accident.  A number of          01:06PM

11   the other aircraft on there --          01:06PM

12          THE COURT:  Okay.  Let's stop then.  All right.          01:06PM

13   So let me -- let me go back, and maybe let me make it even a          01:06PM

14   little more clear.  To the extent that the registered          01:06PM

15   helicopter or aircraft, I guess it's all helicopters, but just          01:07PM

16   in case I don't -- is it all helicopters, right?          01:07PM

17          MS. M. MILLER:  It's all helicopters.          01:07PM

18          THE COURT:  Right.  So to the extent that these          01:07PM

19   registered helicopters listed in Column 1 have been noticed in          01:07PM

20   the grand jury indictment as indicated in the order that I had          01:07PM

21   issued earlier, or has been testified during the trial as it          01:07PM

22   relates to Count 1 , the conspiracy, then the Court will allow          01:07PM

23   it.  Now, what is it that -- that you don't -- because the          01:07PM

24   prosecutor is saying they're only going to introduce -- and          01:07PM

25   it's the second category, what was testified in trial.  If          01:07PM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

```
 1    there was a testimony in trial about accidents or -- not --        01:07PM
 2    well, any -- accidents or any type of death or anything that       01:07PM
 3    relates to Count 1 and the conspiracy, then the Court will         01:07PM
 4    allow it.                                                          01:07PM
 5            MS. MCCONWELL:  So the testimony was relating to           01:08PM
 6    the Counts 99 through 110 for those particular counts for the      01:08PM
 7    wire fraud, and the money laundering, and the conspiracy to        01:08PM
 8    commit -- I mean, this is what we've just been talking about       01:08PM
 9    with Mr. Khamvongsa for a couple of days.                          01:08PM
10            THE COURT:  No, but they're talking about Count            01:08PM
11    -- okay.  So I'm sorry, what is the objection?  I'm not sure.      01:08PM
12            MS. MCCONWELL:  I'm just saying I don't believe            01:08PM
13    that those aircraft have been discussed and identified as it       01:08PM
14    relates to Count 1.  I think those aircraft were identified as     01:08PM
15    a bill of sale and a bulk sale as part of Mr. Khamvongsa's         01:08PM
16    testimony, and Mr. Khamvongsa's testimony related to Counts 99     01:08PM
17    through 110, not to Count 1.                                       01:08PM
18            THE COURT:  Well are they -- let me just ask, is           01:08PM
19    the witness, Mr. Guzzetti, going to discuss those particular,      01:08PM
20    is it RP --                                                        01:08PM
21            MS. M. MILLER:  Yes, RPC4910.                              01:08PM
22            THE COURT:  Is she -- is he going to testify               01:08PM
23    about testimony that has come out and it relates to Count 1?       01:08PM
24            MS. M. MILLER:  Count 1.                                   01:08PM
25            THE COURT:  All right.                                     01:08PM
```

1    MS. M. MILLER:  All Count 1.  As a matter of    01:08PM

2  fact, Your Honor.    01:08PM

3          THE COURT:  Okay.  We got it.    01:08PM

4          MS. M. MILLER:  Obviously, you don't have    01:08PM

5  Counts 99 through 110 without Count 1.  The conspiracy to    01:09PM

6  defraud, the underlying actions, are all about the fraud    01:09PM

7  against the FAA and the NTSB.  So yes, this all comes in under    01:09PM

8  Count 1.  And when you look at Exhibit 3003-14, what was so    01:09PM

9  relevant about that on 15 is that the Defendants were even    01:09PM

10  describing these aircraft as being scrapped, not airworthy    01:09PM

11  because of the fact that they were in accidents, incidents,    01:09PM

12  destroyed.  So obviously, this is all related to Count 1.    01:09PM

13          MR. MARTIN:  Your Honor, we don't know why they    01:09PM

14  were described that way, Ms. Miller can say what she wants,    01:09PM

15  and she's been doing it throughout the trial, but the deal is    01:09PM

16  --    01:09PM

17          MS. M. MILLER:  I object and move to strike that    01:09PM

18  comment, Your Honor.    01:09PM

19          MR. MARTIN:  -- you don't know why that was    01:09PM

20  written that way, Ms. Miller.    01:09PM

21          THE COURT:  Okay.  I'll rule at that time.  Go    01:09PM

22  ahead.  What?    01:09PM

23          MR. MARTIN:  Counts -- the RPC aircraft, with the    01:09PM

24  exception of, I believe it's 4910 --    01:09PM

25          MS. MCCONWELL:  Well, the 2017 accident of 4910.    01:09PM

```
 1              MR. MARTIN:  Well, anyway with the exception of      01:10PM

 2    RPC4910, have only been described in an exhibit, which is      01:10PM

 3    3003.14, which today I cross-examined Mister -- Agent          01:10PM

 4    Khamvongsa about, and they were not about accidents or         01:10PM

 5    incidents.  They were about the fact that they were in a bulk  01:10PM

 6    bill of sale between Jan's and Pacific Spotters, and not that  01:10PM

 7    they were involved in any accidents.  I believe the only one   01:10PM

 8    that's been testified about that was involved in any accident  01:10PM

 9    is RPC4910.                                                    01:10PM

10              THE COURT:  Okay.                                    01:10PM

11              MS. M. MILLER:  Your Honor, that's --                01:10PM

12              THE COURT:  Hold on, hold on, hold on.  Let me       01:10PM

13    just say, but conspiracy to defraud the United States under    01:10PM

14    Count 1 is broader than that.  They're talking about --       01:10PM

15              MS. M. MILLER:  Yes.                                 01:10PM

16              THE COURT:  And you see that on the object of the    01:10PM

17    conspiracy, paragraphs 46 and 47.  It's not just deaths, it's  01:10PM

18    serious injuries and so forth.                                 01:10PM

19              MR. MARTIN:  What we're saying is, Your Honor,       01:10PM

20    that the only testimony that's come out about those           01:11PM

21    helicopters was under Counts 99, conspiracy to commit wire    01:11PM

22    fraud, wire fraud, and money laundering.                      01:11PM

23              MS. M. MILLER:  No.                                  01:11PM

24              MR. MARTIN:  Not Count 1.                           01:11PM

25              MS. M. MILLER:  That is wrong and let me tell you   01:11PM
```

1   why.  We brought in Count 1, Mr. Prozik testified about the       01:11PM

2   fact that we found the Philippine authorities had issued the      01:11PM

3   cease and desist order for all of those RPC aircraft that are     01:11PM

4   in Mr. Guzzetti's chart.  And that cease and desist order,        01:11PM

5   Your Honor, was because of the Defendants' violation of the       01:11PM

6   Philippine authorities rules.                                     01:11PM

7          We also, Your Honor, brought to the Defendants'            01:11PM

8   attention that these RPC-numbered helicopters were registered     01:11PM

9   in the U.S. with the FAA at the same time that they were being    01:11PM

10  operated in the Philippines.  We provided defense Counsel with    01:11PM

11  a chart showing the N-Number of these helicopters.  We           01:11PM

12  provided them with a chart showing the registered owner of the    01:12PM

13  helicopters being one of the shell companies that this Court      01:12PM

14  has already ruled could be considered an alter ego of the         01:12PM

15  Defendant, and we provided them with a chart showing all of       01:12PM

16  the ones that were dual registered.                               01:12PM

17         So the evidence that has come in regarding these           01:12PM

18  is much, much more substantial than what Mr. Martin and Ms.       01:12PM

19  McConwell is saying.  I could cite to the Court to G-355.  I      01:12PM

20  could cite to the Court to G-1252.  I could cite the Court to     01:12PM

21  Defense Exhibit 124, where Mr. McConwell actually identified a    01:12PM

22  number of these aircraft and said that they intend to             01:12PM

23  reregister them in the Philippines.  I cite the Court to          01:12PM

24  Mr. Marty's testimony from the Philippines, which I know is a     01:12PM

25  long time ago, Your Honor.  But when Mr. Marty testified,         01:12PM

1  Mr. Marty testified about these helicopters.  So this evidence  `01:12PM`

2  is substantial, and it did not just come in in the last few  `01:12PM`

3  days with Mr. Khamvongsa.  We started with our first witness,  `01:13PM`

4  Special Agent Prozik, who talked about how these very  `01:13PM`

5  helicopters were used by the Defendants to defraud the FAA.  `01:13PM`

6          THE COURT:  All right.  Let me -- hold on a  `01:13PM`

7  second.  Hold on.  Let me just check something on the  `01:13PM`

8  conspiracy.  `01:13PM`

9          MS. M. MILLER:  And we say in our conspiracy  `01:13PM`

10  allegation defrauding other civil aviation authorities is part  `01:13PM`

11  of the modus operandi of the Defendants.  `01:13PM`

12          THE COURT:  Okay.  Hold on.  Yeah.  Defense, real  `01:13PM`

13  quickly, because -- or Ms. McConwell, you want to go?  `01:13PM`

14          MS. MCCONWELL:  Yes, Your Honor, because I had  `01:13PM`

15  one more that I didn't want to lose site of.  On N74LD, I  `01:13PM`

16  don't have that something's been admitted about that, and I've  `01:13PM`

17  just run through, did that OCR of the government's exhibit  `01:13PM`

18  list, and I don't see that there is an exhibit that's been  `01:13PM`

19  admitted about that aircraft at all.  `01:13PM`

20          THE COURT:  You know, let me just ask you, are  `01:14PM`

21  you going to try to push this summary chart right now?  I mean  `01:14PM`

22  -- is he going to be able to speak without the summary chart?  `01:14PM`

23          MS. M. MILLER:  I could go around -- I could go  `01:14PM`

24  around the summary chart.  `01:14PM`

25          THE COURT:  Why don't you go around the summary  `01:14PM`

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1  chart for now, and then let's get back to -- because I think                    01:14PM

2  it's delaying.                                                                   01:14PM

3          MS. M. MILLER:  I could do that -- I could do                          01:14PM

4  that.                                                                            01:14PM

5          THE COURT:  Let me just say, like I said, to the                       01:14PM

6  extent that it is part of conspiracy one, which it sounds like                   01:14PM

7  it is, I -- I think it's going to be okay.  Yeah, I think it's                   01:14PM

8  going to be fine so that the prosecution lets this in.  Now                      01:14PM

9  let me also say, Counsels, from now on, if you guys have                         01:14PM

10  something to submit to the Court, make sure you file it.                        01:14PM

11  Don't send it to me in chambers.  I don't need to have a                        01:14PM

12  chitchat with you all.  I mean, unless it's a procedural                        01:14PM

13  matter with my -- with my clerk or something, they can handle                   01:14PM

14  it.  But -- but this is, you know, the last substantive e-mail                  01:14PM

15  that was submitted by Samantha Miller, and then the responses,                  01:14PM

16  I'd rather you guys put that through, put it on the docket                       01:14PM

17  because that's actual -- that's actually a part of the record,                  01:14PM

18  the appellate record, if there is going to be an appeal.                        01:15PM

19          MS. M. MILLER:  Yes, Your Honor.                                       01:15PM

20          THE COURT:  All right.  So, Counsels, remember                         01:15PM

21  that.  All right.  Let's go ahead and call in the jury.  I --                   01:15PM

22  so the Court has not ruled on the summary chart yet.  But, I                    01:15PM

23  -- I mean, part of it I do think is relevant, and I will allow                  01:15PM

24  it.  But since you all are still concerned about certain parts                  01:15PM

25  of it, we'll just hold off on that.  The prosecution is not                     01:15PM

1   going to -- the prosecution is not going to proceed forward     01:15PM

2   with it at -- right at this time.  So let's let Mr. Guzzetti    01:15PM

3   begin.  And then we will see what happens.  It is now 1:20.     01:15PM

4   So let's try to go straight through.                            01:15PM

5                MS. M. MILLER:  We'll go straight through till     01:15PM

6   4:00?                                                           01:15PM

7                THE COURT:  As long as the jurors are not too...   01:15PM

8                Mr. Guzzetti has already been sworn in on          01:16PM

9   June 6th.                                                       01:16PM

10               MS. M. MILLER:  He was.                            01:16PM

11               THE COURT:  Is that D-Day?                         01:16PM

12               (Pause.)                                           01:16PM

13               THE COURT:  What's today?                          01:16PM

14               THE WITNESS:  Today is World Helicopter Day,       01:16PM

15   believe it or not.                                             01:16PM

16               THE COURT:  Is it really?                          01:16PM

17               THE WITNESS:  Yes, it is.                          01:16PM

18               THE COURT:  Oh, my gosh.  I love it.               01:16PM

19               MS. M. MILLER:  You're kidding.                    01:16PM

20               THE WITNESS:  Nope.                                01:16PM

21               THE COURT:  Is it really, or are you just joking?  01:16PM

22               THE WITNESS:  Nope, Google it.  World Helicopter   01:16PM

23   Day.                                                           01:16PM

24               THE COURT:  See that?  How ironic.  You have to    01:16PM

25   tell -- celebrate helicopters.                                 01:16PM

```
 1          MS. M. MILLER:  So just so there is no confusion    01:16PM
 2   and panic, there is a chart that he prepared about the     01:16PM
 3   pre-Hansen ownership accidents that I will get in pretty early  01:16PM
 4   on in his testimony, Your Honor, but I won't go into the   01:16PM
 5   post-ownership ones.                                        01:16PM
 6          THE COURT:  Okay.  So we'll call in the jury, and   01:17PM
 7   yeah, it's now 1:17.  We'll take -- we'll take a break after 01:17PM
 8   one hour and a half.  Or maybe even earlier, just let me know. 01:17PM
 9   We've been going since -- wow, world helicopter day.  I didn't 01:17PM
10   know there was such a thing.                                01:17PM
11          MS. S. MILLER:  Make days for everything now.       01:17PM
12          THE COURT:  I'm just trying to think how many       01:17PM
13   helicopters that I rode in my life.  One.                   01:17PM
14          MS. M. MILLER:  One?  I flew one.                    01:17PM
15          THE COURT:  On, like...                             01:17PM
16          MS. M. MILLER:  Like flew it.                       01:17PM
17          THE COURT:  Like you piloted it?                    01:17PM
18          MS. M. MILLER:  Yeah.                               01:17PM
19          THE COURT:  Wow.  I believe that.                   01:17PM
20          MS. M. MILLER:  Yup.  It wasn't -- it wasn't one    01:17PM
21   like the ones in this case.  It was like a $20 million      01:17PM
22   helicopter.                                                 01:17PM
23          THE COURT:  Oh my God.  I was a passenger.          01:17PM
24   Actually, my father-in-law was a pilot.                     01:18PM
25          MS. M. MILLER:  Helicopter pilot?                   01:18PM
```

| | |
|---|---|
| 1 | THE COURT:  Yeah.  In the war.  Please rise. | 01:18PM |
| 2 | (Jury in at 1:18 p.m.) | 01:18PM |
| 3 | THE COURT:  This is definitely your last witness? | 01:18PM |
| 4 | MS. M. MILLER:  Yes. | 01:18PM |
| 5 | MS. S. MILLER:  Definitely? | 01:18PM |

THE COURT:  Yeah.  In the war.  Please rise.

(Jury in at 1:18 p.m.)

THE COURT:  This is definitely your last witness?

MS. M. MILLER:  Yes.

MS. S. MILLER:  Definitely?

MS. M. MILLER:  Well, you know, I mean, barring some weird strange thing, which with this case, you never know.

THE COURT:  Please be seated.  Welcome back, ladies and gentlemen of the jury.  Thank you for your patience.  I actually had to speak with the lawyers on very important issue and -- or issues.  And so we worked through all the time since we last saw you this morning.  So the prosecution will call their next witness who has already been previously sworn in.

MS. M. MILLER:  Yes, Your Honor.

THE COURT:  You may proceed.

MS. M. MILLER:  At this time, the government will continue with Mr. Guzzetti.  And good afternoon, members of the jury.

                         (End of excerpt.)

                              * * *

# CERTIFICATE OF OFFICIAL REPORTER

CITY OF HAGATNA     )
                         )  ss.
TERRITORY OF GUAM   )

       I, Veronica F. Flores, Official Court Reporter for the District Court of Guam, do hereby certify the foregoing pages, 1 to 1,310, to be a true and correct transcript of the proceedings held in the above-entitled matter to the best of my ability.

       Dated this 9th day of March 2023.


                          /s/Veronica F. Flores
                          Veronica F. Flores