1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF GUAM

3    _____

4    UNITED STATES OF AMERICA,

5             Plaintiff,

6        v.                        Case No.

7    JOHN D. WALKER,                   1:18-cr-00010

8        aka JON WALKER,

9    MARVIN R. REED, KENNETH R. CROWE,

10   PHILLIP T. KAPP, RANDALL ROGERS,

11   HANSEN HELICOPTERS, INC., et al.,

12            Defendants.

13   _____

14                    HEARING

15            DATE:    Friday, June 8, 2018

16            TIME:    9:04 a.m.

17            BEFORE:  Honorable Joaquin V.E.

18                     Manibusan, Jr.

19            LOCATION: United States Courthouse

20                     520 West Soledad Avenue

21                     Hagåtña, Guam 96910

22            RECORDER: Walter M. Tenorio

23

24

25

Veritext Legal Solutions
www.veritext.com
Case 1:18-cr-00010    Document 2334    Filed 07/31/25    Page 1 of 91    516-608-2400

1                A P P E A R A N C E S

2   ON BEHALF OF PLAINTIFF:

3        STEPHEN LEON GUERRERO, ESQUIRE

4        Office of the United States Attorney

5        Sirena Plaza

6        108 Hernan Cortez, Suite 500

7        Hagåtña, GU 96910

8

9   ON BEHALF OF DEFENDANT, JOHN D. WALKER:

10       MACK K. MARTIN, ESQUIRE

11       AMBER B. MARTIN, ESQUIRE

12       Martin Law Office

13       125 Park Avenue, Fifth Floor

14       Oklahoma City, OK 73102

15

16       JAMES M. MAHER, ESQUIRE

17       Law Office of James M. Maher

18       238 Archbishop Flores Street, Suite 300

19       Hagåtña, GU 96910

20

21   ON BEHALF OF DEFENDANT, KENNETH R. CROWE:

22       DAVID J. LUJAN, ESQUIRE

23       Lujan & Wolff LLP

24       238 Archbishop Flores Street

25       Hagåtña, GU 96910

```
 1   ON BEHALF OF DEFENDANT, PHILLIP T. KAPP:

 2        ANTHONY C. PEREZ, ESQUIRE

 3        Law Offices of Anthony C. Perez

 4        Suite 802, DNA Building

 5        238 Archbishop Flores Street

 6        Hagåtña, GU 96910

 7

 8   ON BEHALF OF DEFENDANT, MARVIN R. REED:

 9        PETER CORNELL PEREZ, ESQUIRE

10        The Law Offices of Peter C. Perez

11        Suite 802, DNA Building

12        238 Archbishop Flores Street

13        Hagåtña, GU 96910

14

15   ALSO PRESENT:

16        JANET YAMASHITA, U.S. Probation Officer

17        PETER PROZIK, Special Agent, FBI

18

19

20

21

22

23

24

25
```

1               P R O C E E D I N G S

2               COURTROOM DEPUTY:  Please rise.  The

3    District Court of Guam is now in session, the

4    Honorable Joaquin V.E. Manibusan, Jr., presiding.

5               THE COURT:  Buenas yan håfa adai.  Good

6    morning.  Please be seated.

7               Criminal Case 18-00010, USA v. John D.

8    Walker, initial appearance on an indictment and

9    arraignment.

10              Counsel, please state your appearance.

11              MR. LEON GUERRERO:  Buenas yan håfa

12   adai, Your Honor.  Stephen Leon Guerrero on

13   behalf of the United States.  Also present is FBI

14   Special Agent Pete Prozik.

15              THE COURT:  Good morning.

16              MR. LEON GUERRERO:  Good morning.

17              MR. MARTIN:  Mack Martin, Your Honor.

18   Also appearing with me is Amber Martin and our

19   local counsel, Jim Maher.  John Walker's also

20   present.

21              THE COURT:  Good morning.

22              MR. MARTIN:  Good morning, Your Honor.

23              THE COURT:  And let the record show

24   that we have before the Court today the

25   Defendant, Mr. John D. Walker, also known as Jon

1  Walker.  And sir, let me just advise you that the

2  grand jury has returned an indictment herein

3  charging you in Count 1 with the offense of

4  conspiracy to defraud the National Transportation

5  Safety Board and the Federal Aviation

6  Administration; further charging you in Count 2

7  with conspiracy to defraud the Federal Aviation

8  Administration; further charging you in Counts 3

9  to 5 with the offense of honest services fraud;

10  further charging you in Counts 6 to 10 with the

11  offense of wire fraud; and further charging you

12  in Counts 11 to 16 with the offense of money

13  laundering for matters and events as they are

14  more particularly stated in each of the counts

15  that the Court has referred to.  And sir, have

16  you seen or received a copy of the indictment?

17            MR. WALKER:  Yes, sir.

18            THE COURT:  All right.  Let me just

19  advise you of certain rights that you have in

20  this matter.  You have the right to be

21  represented by an attorney of your own choosing,

22  and you've exercised that right today by having

23  retained counsel represent you in today's

24  proceedings.  Is that correct?

25            MR. WALKER:  Yes, Your Honor.

1    THE COURT:  And today we're here for

2    arraignment, so let me ask that you be placed

3    under oath for purposes of being arraigned by the

4    Court.

5    COURTROOM DEPUTY:  Please stand, sir,

6    and raise your right hand.  You do solemnly swear

7    to tell the truth, the whole truth and nothing

8    but the truth, so help you?

9    MR. WALKER:  I do.

10   COURTROOM DEPUTY:  Thank you.  May be

11   seated.  And if I can have you state your full

12   name and spell your last name for the record.

13   MR. WALKER:  It's John Darryl Walker.

14   COURTROOM DEPUTY:  Can you spell the

15   last name for me?

16   MR. WALKER:  Oh, W-A-L-K-E-R.

17   COURTROOM DEPUTY:  Thank you, sir.

18   THE COURT:  And Mr. Walker, can I ask

19   you, sir, how old you are?

20   MR. WALKER:  Fifty-two.

21   THE COURT:  All right, and sir, in

22   terms of your education, how far did you go in

23   school?

24   MR. WALKER:  High school.

25   THE COURT:  Okay, and are you currently

1  or have you recently been under the care of a

2  doctor or a psychiatrist or been hospitalized or

3  treated for narcotics addiction?

4          MR. WALKER:  No, sir.

5          THE COURT:  And sir, have you taken any

6  drugs, medicine or pills or alcohol in the past

7  24 hours?

8          MR. WALKER:  No, sir.

9          THE COURT:  All right, and, sir, you've

10  indicated to the Court that you've received a

11  copy of the indictment that has been filed in

12  this case against you.  Have you had some

13  opportunity to discuss the charges therein with

14  your attorney?

15          MR. WALKER:  Yes.

16          THE COURT:  And at this time, let me

17  ask you and your attorney whether you wish to

18  wait reading of the indictment and are prepared

19  to enter a plea.

20          Mr. Mack?  Mr. Martin, I'm sorry.

21          MR. MARTIN:  Your Honor, we will waive

22  reading -- we'll waive reading of the indictment,

23  Your Honor.

24          THE COURT:  All right, and as to the

25  charges against the Defendant, how does the

Case 1:18-cr-00010   Document 2334   Filed 07/31/25   Page 7 of 91

1    Defendant plead?

2              MR. MARTIN:  He'll enter a plea of not

3    guilty to all counts, Your Honor.

4              THE COURT:  All right, and the Court

5    will enter Mr. Walker's belief not guilty to all

6    of the charges against him in the indictment as

7    the Court has stated it to Mr. Walker, and I

8    guess the next thing for the Court to do really

9    would be to set the trial date here.  And looking

10   at the record, I see that the Government has

11   filed a motion here for an extension of time to

12   provide discovery.

13             MR. LEON GUERRERO:  Yes, Your Honor,

14   and if I may.

15             THE COURT:  Mr. Guerrero?

16             MR. LEON GUERRERO:  Yes.  Thank you.

17   So with respect to the unopposed motion for

18   extension of time, and I did speak with counsel

19   prior to the hearing, just to let Your Honor know

20   at the time that this motion was filed because

21   the other Defendants, Defendants Kapp, Reed and

22   Crowe --

23             THE COURT:  Crowe.

24             MR. LEON GUERRERO:  -- had been

25   arraigned already.  So this was generated

1  because, again, the discovery deadline for the
2  Government was yesterday.
3            THE COURT:  That's correct.
4            MR. LEON GUERRERO:  So I filed this,
5  and just to make the record clear, I know I do
6  reflect here in the motion that I said defense
7  counsels, and I should have been more specific
8  stating those specific defense counsels for the
9  respective Defendants.
10            THE COURT:  Those who have previously
11  appeared.
12            MR. LEON GUERRERO:  Correct, and I
13  didn't coordinate with Attorney Martin given the
14  fact that his arraignment was going to be today.
15            THE COURT:  All right.
16            MR. LEON GUERRERO:  So I just wanted to
17  make sure the record was clear with respect to
18  that.  It was only for the three other Defendants
19  and their lawyers that I coordinated prior to
20  filing this motion.  But my understanding is, I
21  think Attorney Martin did have a proposal that
22  the Government is considering, and I'll allow him
23  to elaborate on that.
24            THE COURT:  All right, sir.
25            MR. MARTIN:  Your Honor, I spoke to

 1  Stephen this morning and advised him that we

 2  talked about this case and proposed we present a

 3  joint motion to the Court to declare this a

 4  complex case, ask the Court, once that's filed in

 5  the body of the motion, and that we reset all

 6  scheduling deadlines and the trial date because

 7  if the Court's reviewed some of the pleadings by

 8  the Government in this case, and there's another

 9  case involving the forfeiture, there are tens of

10  thousands, if not hundreds of thousands of

11  documents in this case, and that way the Court

12  would have much more information in front of it,

13  and maybe we could get together and set realistic

14  deadlines versus those that at this time would

15  comply with the speedy trial act.

16          THE COURT:  Let me ask this.  When can

17  the Court meet with all of the attorneys to

18  discuss a more reasonable trial date, taking into

19  consideration the discovery that the Government

20  needs to provide the Defendants and the time

21  that's needed for the Defendants to review the

22  discovery and to be adequately prepared for

23  purposes going to trial?

24          MR. MARTIN:  It would be helpful to us,

25  Your Honor, if we at least had the opportunity to

1  review some of the discovery materials to know

2  what we're dealing with.  But I just know from

3  the pleadings they filed, we've not seen

4  anything, that it is extensive.  So if the Court

5  gives the Government an extension to provide it,

6  I would hope that after they provided it, we

7  would have the opportunity to appear and set

8  those.  But I think to go ahead and file a joint

9  motion and get the Court aware of the fact that

10  we all think this is a complex case would at

11  least aid the Court in knowing what we're looking

12  at.

13         THE COURT:  With the understanding that

14  the joint motion, in a sense, really is for the

15  purpose of vacating the current deadlines that

16  are set, including the current trial date that's

17  set by the Court.

18         MR. MARTIN:  Sure.

19         MR. LEON GUERRERO:  And the reason

20  being too, Your Honor, it's also reflective in

21  the motion that was filed, that with respect to

22  the discovery, because, again, there's additional

23  discovery that's currently --

24         THE COURT:  Well, my understanding from

25  your motion, is that you're awaiting hard drives

1    from the Defendant --

2              MR. LEON GUERRERO:  Correct.

3              THE COURT:  -- and once they provide

4    you the hard drives, it would take approximately

5    three weeks to, I suppose, download.  Is that the

6    right term?  Download the discovery materials to

7    these hard drives for production --

8              MR. LEON GUERRERO:  Production to the

9    defense counsels.

10             THE COURT:  -- for production to them,

11   and I guess at that point, it needs to be

12   determined how much time they need to look at the

13   discovery --

14             MR. LEON GUERRERO:  Right.

15             THE COURT:  -- and to adequately

16   prepare really for purposes of trial.

17             MR. LEON GUERRERO:  Right.

18             THE COURT:  And then taking into

19   consideration also everybody's trial calendar,

20   because, you know, not everybody can be able to

21   go to trial at a certain date.  Some of you may

22   have currently trial dates that are pending.  So

23   that has to be taken by the Court in

24   consideration in setting a new trial date that's

25   convenient to all of the attorneys and the

1    parties.

2              MR. LEON GUERRERO:  Yes.  Your Honor.

3              THE COURT:  So what is your proposal

4    today?

5              MR. MARTIN:  Your Honor, my proposal is

6    today that we set a date -- let's say,

7    hypothetically, this is June 8th.

8              THE COURT:  Right.

9              MR. MARTIN:  If we provide them maybe

10   next week, the hard drives, three weeks out would

11   put us sometime in July, give us --

12             THE COURT:  Well, assuming that you

13   provide the hard drives by the 14th.

14             MR. MARTIN:  Yes, sir.

15             THE COURT:  Three weeks after that,

16   really, based on my calculation, falls on the

17   motion cutoff date.  So realistically, you know,

18   I mean, we can go to trial with the dates in hand

19   because we've already gone past the motion cutoff

20   deadline.

21             MR. MARTIN:  I guess what I'm

22   suggesting is by filing the motion to declare it

23   a complex case, it would suspend these deadlines

24   pending further order from the Court.

25             THE COURT:  Okay.  So should we have a

1   status hearing at some point in time?

2              MR. MARTIN:  I was going to suggest,

3   Your Honor --

4              THE COURT:  And when should we have

5   that status hearing?

6              MR. MARTIN:  I was going to suggest

7   after we get the materials, let's say in July,

8   maybe 20 days out, we set a status hearing where

9   all counsel meet with the Court.

10             THE COURT:  All right.  Well, can I get

11  a date then when you think these hard drives will

12  be submitted to the Government so I can have an

13  idea as to certain timeframes?

14             MR. MARTIN:  As I understand, do we

15  have to ship them to Honolulu or do we give them

16  to --

17             MR. LEON GUERRERO:  Yeah.  They have to

18  be shipped to Honolulu.

19             THE COURT:  The hard drives?

20             MR. LEON GUERRERO:  Correct.

21             THE COURT:  Okay.  Well, you can -- the

22  hard drives can be --

23             MR. LEON GUERRERO:  So my

24  understanding, Your Honor, the hard drives that

25  the FBI has to download the information onto

1   would have to be sent to Hawaii, which we will

2   provide the address needed.  And then with

3   respect to the discovery that's currently in the

4   possession of the Department of Transportation,

5   the hard drives would have to be sent to

6   Washington D.C., and again, there's an address

7   that will be provided as well.

8           THE COURT:  All right.  So the

9   Defendants would send to you through Honolulu the

10  hard drives.

11          MR. LEON GUERRERO:  Correct.

12          THE COURT:  And once that's received

13  there, that will be sent to Washington D.C.?

14          MR. LEON GUERRERO:  No.  The hard

15  drives should be sent directly to the address --

16          THE COURT:  To Honolulu?

17          MR. LEON GUERRERO:  -- in Washington

18  D.C.  for the Department of Transportation.  And

19  then for the information that the FBI has, the

20  hard drives would have to be sent to Hawaii, to

21  the FBI's CART office.  And then they'll provide

22  the discovery on those hard drives.  So upon

23  receipt of the respective agencies receiving the

24  hard drives, we're submitting three weeks,

25  approximately three weeks, that information

 1   should be produced to -- downloaded and produced

 2   to defense counsels.

 3           THE COURT:  All right.  So as I

 4   understand it, these hard drives need to be

 5   mailed to Honolulu, right, by the Defendants?

 6           MR. LEON GUERRERO:  Correct, for the

 7   information that the FBI has in their possession.

 8           THE COURT:  Okay.

 9           MR. LEON GUERRERO:  And then a separate

10   hard drive would need to be sent to the

11   Department of Transportation's office in

12   Washington, D.C.

13           THE COURT:  All right.  So they're

14   sending two hard drives then each?

15           MR. LEON GUERRERO:  No.  So --

16           THE COURT:  No?

17           MR. LEON GUERRERO:  So with respect to

18   the order, Your Honor, or to the motion --

19           THE COURT:  Okay.

20           MR. LEON GUERRERO:  -- so the counsels

21   have to provide four --

22           THE COURT:  Hard drives?

23           MR. LEON GUERRERO:  -- four terabyte

24   hard drives.

25           THE COURT:  Right.

1           MR. LEON GUERRERO:  So there's four

2    four-terabyte hard drives.  They need four of

3    those that they have to send over to Honolulu --

4           THE COURT:  Right.

5           MR. LEON GUERRERO:  -- for the

6    information that they have.  Now, there's

7    additional, like, videos, images.  And if they

8    want this information, they would have to provide

9    an additional three four-terabyte hard drives to

10   Honolulu to download that information.  So this

11   will be sent directly to the CART office in

12   Honolulu.  The Department of Transportation --

13          THE COURT:  Well, why would you have

14   three when there's four of them as to the second

15   one?

16          MR. LEON GUERRERO:  So it'd be a total

17   of seven, Your Honor.  If they want all the

18   discovery pertaining to this case, they would

19   need to send seven hard drives, each being four

20   terabytes, to Honolulu.

21          MR. MARTIN:  Is that per Defendant, or

22   is that for everybody?

23          MR. LEON GUERRERO:  No, per Defendant.

24          MR. MARTIN:  Seven hard drives per

25   Defendant.

```
 1            MR. LEON GUERRERO:  Correct.  That
 2   would have to be sent to Honolulu.  Now --
 3            THE COURT:  Oh, I see.
 4            MR. LEON GUERRERO:  And then with
 5   respect to --
 6            THE COURT:  Oh, so when you say four
 7   hard drives, it's four per Defendant.
 8            MR. LEON GUERRERO:  Correct.
 9            THE COURT:  So it's seven then per
10   Defendant in total.
11            MR. LEON GUERRERO:  That would have to
12   be sent to Hawaii.
13            THE COURT:  Okay.
14            MR. LEON GUERRERO:  Okay.  Now
15   Department of Transportation also has information
16   that's ready to be produced, and defense counsel
17   has to send -- they have to send a separate hard
18   drive to Department of transportation in D.C. so
19   they can download --
20            THE COURT:  And how many of those would
21   they need to send?
22            MR. LEON GUERRERO:  Just one.
23            THE COURT:  Just one?
24            MR. LEON GUERRERO:  Just one for the
25   information from the Department of
```

1    Transportation.

2              THE COURT:  But they need four, because

3    there are four Defendants here.

4              MR. LEON GUERRERO:  Yeah.  So one each.

5    So --

6              MR. MARTIN:  I mean, they need 28 hard

7    drives, it sounds like.

8              MR. LEON GUERRERO:  Correct, total for

9    all Defendants.

10             THE COURT:  Well --

11             MR. LEON GUERRERO:  So it's about --

12   it's approximately eight hard drives per

13   Defendant.

14             THE COURT:  Well, 28 -- seven per

15   Defendant to Hawaii.

16             MR. LEON GUERRERO:  Correct.

17             THE COURT:  And four again to D.C., no?

18             MR. LEON GUERRERO:  Just one.  It's

19   just one terabyte hard -- one four-terabyte hard

20   drive that has to be sent to Department of

21   Transportation.

22             THE COURT:  All right.  But they're

23   four Defendants, though.

24             MR. LEON GUERRERO:  Per Defendant.  So

25   a total of four.

1    THE COURT:  Okay.  All right.

2    MR. MARTIN:  Thirty-two.

3    THE COURT:  Okay.  Yeah.  Okay.  So in

4    a sense, a total of 32.

5    MR. MARTIN:  Correct.

6    THE COURT:  Okay, and just as an

7    additional question by the Court, really, you're

8    saying that the process to get it to the

9    Defendants, if it's mailed to Honolulu, would

10   take approximately three weeks from the receipts

11   of these hard drives.

12   MR. LEON GUERRERO:  Correct.  So once -

13   -

14   THE COURT:  What about the timeframe in

15   Washington, D.C.?

16   MR. LEON GUERRERO:  We'd submit --

17   THE COURT:  Is it the same?

18   MR. LEON GUERRERO:  -- the three weeks

19   -- we'd submit that the three weeks --

20   THE COURT:  From the time that it's

21   received?

22   MR. LEON GUERRERO:  Correct.  Correct.

23   THE COURT:  And the manner in which it

24   is to be sent to the offices, are they to be sent

25   special deliveries?  I'm not so sure how we would

1    want to send them.

2              MR. LEON GUERRERO:  If I can just have

3    one moment, Your Honor.

4              THE COURT:  Okay.  Shipping it might

5    take some months.

6              MR. LEON GUERRERO:  Okay.  So, so the

7    information that I received, Your Honor, is with

8    respect to the Defendants that will be currently

9    on Guam at the time, we can coordinate to have

10   those hard drives sent to us.  And we'll provide

11   those hard drives to defense counsels for the

12   three Defendants that are here.  With respect to

13   --

14             THE COURT:  You mean once the discovery

15   has been downloaded into the hard drives?

16             MR. LEON GUERRERO:  Once we receive the

17   hard drives from Department of Transportation and

18   the FBI CART team from Hawaii, once we receive it

19   here on Guam, we'll coordinate with defense

20   counsels to arrange for the production of that

21   discovery.

22             THE COURT:  All right.  So the process

23   then is the Defendants will separately mail these

24   hard drives to Honolulu.

25             MR. LEON GUERRERO:  Right.

 1              THE COURT:  And Honolulu in turn will

 2      mail it back to you?

 3              MR. LEON GUERRERO:  For the three that

 4      are here, and we can coordinate, you know, with

 5      their defense counsels here to get the

 6      information.  I anticipate, you know, Defendant

 7      Walker would like to be able to go back to his

 8      residence in Missouri.  So with respect to his

 9      information, the FBI and Department of

10      Transportation can send the hard drives that have

11      been downloaded onto directly to Attorney Martin.

12              THE COURT:  I see.  Okay.  All right.

13      Is that a procedure that's satisfactory to

14      everybody?

15              MR. MARTIN:  I don't know that we have

16      a choice, Your Honor.

17              THE COURT:  Okay.

18              MR. MARTIN:  I would suggest based on

19      what he said, that just to make sure we keep

20      everything on track, that we set a status

21      conference date for discovery conference for the

22      Court to know where we are.  And based on what he

23      said, I would anticipate late July or sometime in

24      August just to make sure we have everything and

25      that everybody's got the materials they're

1   supposed to get.  We can -- I mean, it sounds

2   like with 32 hard drives, it sounds like we're

3   going to spend a couple thousand dollars per

4   Defendant just getting hard drives to them.

5           THE COURT:  All right.  Let's see.  If

6   the Court were to set a status hearing August

7   15th, is that a timeframe that's reasonable and

8   non-objectionable to the parties?

9           MR. LEON GUERRERO:  The Government

10  wouldn't have an objection with that date, Your

11  Honor.

12          MR. MARTIN:  Your Honor --

13          THE COURT:  The 15th is a Wednesday.

14          Mr. Martin?

15          MR. MARTIN:  The only -- the problem I

16  have with it is, and it's not an issue, Your

17  Honor, I'll just -- on the 17th, which is two

18  days later, and it's two days for me to get here,

19  I have a murder one hearing in a little town in

20  Oklahoma called Duncan, Oklahoma.  And I don't

21  think my judge is going to be very receptive to

22  moving that case since it was set some time ago.

23  If we could maybe go --

24          THE COURT:  A week before?

25          MR. MARTIN:  A week before or a week

 1  after, either one.  Mondays and Fridays are

 2  Better for me.  But I'll be here whenever the

 3  Court says obviously.

 4         THE COURT:  Okay.  Well, August 13th --

 5  okay, well, that's the same week.  Would that be

 6  fine or not?  August 13th is a Monday, or would

 7  you like to wait until Friday?

 8         MR. MARTIN:  If we could go one week

 9  more, Judge, if it's possibility, we can go --

10         THE COURT:  Oh, the 6th?  You mean the

11  6th?

12         MR. MARTIN:  I meant the next week.

13  The week of the 20th would be a much better week

14  for me if we could do that.

15         THE COURT:  All right.  But I thought

16  you had a murder case on the 17th.

17

18         MR. MARTIN:  On the 17th, I do.  My

19  concern is on the 13th, and I --

20         THE COURT:  But wouldn't you be on

21  trial on the 20th?

22         MR. MARTIN:  No, it is a one-day, what

23  they call a preliminary examination, Your Honor.

24  If we don't finish it on Friday, they'll set a

25  new date out.  We've got that whole day set

1  aside.  It will not be finished that day.  But we

2  won't be going on the 20th.

3           THE COURT:  I see.  Okay.  All right.

4           CLERK:  Judge, August 20, 9:00.

5           THE COURT:  The 20th, at 9:00, then.

6  Is that date fine with everybody?  August 20th,

7  for a status hearing at 9:00?

8           MR. MARTIN:  The 20th at 9:00.

9           THE COURT:  I see Mr. Perez in the back

10  and Mr. Lujan.  Would that be fine with you, Mr.

11  Perez and Mr. Lujan?

12           MR. LUJAN:  I'm good.

13           MR. PEREZ:  That's fine.

14           THE COURT:  And that would be fine also

15  with the other Mr. Perez?

16           MR. PEREZ:  He'll be back on the island

17  by then.

18           THE COURT:  Okay.

19           MR. MARTIN:  And Your Honor, I would

20  assume that prior to that date we would try to

21  get filed with the Court our joint motion that

22  we've talked about at least so you'll have it in

23  front of you and we can discuss might be

24  resetting deadlines at that time.

25           MR. LEON GUERRERO:  Yes.

1          THE COURT:  And you know, hopefully by

2     then you would have had the opportunity to look

3     at the discovery and just provide to the Court an

4     estimate as to the time that's needed for

5     preparation and as to when it would be

6     appropriate for the Court to set this matter for

7     trial, taking into consideration due diligence in

8     its preparation -- in your preparation.

9          MR. MARTIN:  Yes, sir.

10          THE COURT:  All right.  Let me go ahead

11     then and vacate the current dates that has been

12     represented to the Court to be inappropriate and

13     unreasonable in light of the extensive discovery

14     and perhaps the complexity of the case before the

15     Court.  So the trial date that currently has been

16     set by the Court and all those other dates in its

17     trial scheduling order, all of those dates are

18     hereby vacated upon motion by the parties, a

19     joint motion, and the Court in lieu thereof will

20     set a status hearing for August 15th.  I'm sorry,

21     August 20th, that's a Monday, at 9:00 in the

22     morning.

23          CLERK:  (Indiscernible) time between

24     now and then --

25          THE COURT:  So the Court, having

1  granted the joint motion and indicating the trial

2  dates and in setting a status hearing for the

3  20th of August at 9:00, the Court will exclude

4  from the running of the speedy trial clock the

5  date from today to the status hearing, finding

6  that the interests of justice are served by the

7  granting of the joint motion before the Court and

8  that such a continuance outweighs the best

9  interest of the public and the Defendant in a

10  speedy trial in that it provides the Defendant

11  the discovery that's needed for purposes of

12  effective preparation in this case, taking into

13  consideration the exercise of due diligence and

14  also providing continuity in counsel.

15           So the timeframe from today to the

16  status hearing on August 20th is hereby excluded

17  from the running of the speedy trial clock.  And

18  I guess the next issue that we need to determine

19  really is bail for Mr. Walker.  The pretrial

20  services here has filed an addendum report to the

21  report initially prepared by the pretrial

22  services in the Western District of Oklahoma.

23  And let me just ask our probation office their

24  recommendations then at this point.

25           MS. YAMASHITA:  We request that the --

1  we are recommending that the Defendant be

2  released with conditions, Your Honor.

3           THE COURT:  All right, and specifically

4  what conditions are you asking the Court to

5  impose?

6           MS. YAMASHITA:  That he -- I believe it

7  is the Defendant's intent to return to the

8  District of Missouri.  So should the Court

9  release him today, Your Honor, we ask that he

10 remain at that address and not --

11          THE COURT:  Specifically what is the

12 address?

13          MS. YAMASHITA:  Oh, it is 3561 Route C,

14 Neosho, Missouri.  We are also asking that he not

15 have any contact with his Co-Defendants and that

16 he submit to the supervision of the U.S.

17 probation office in Missouri.

18          THE COURT:  And with other standard

19 conditions, I suppose?

20          MS. YAMASHITA:  Not possess a firearm,

21 destructive device or other weapon, not use

22 alcohol at all, not use or unlawfully possess a

23 narcotic, drug or other controlled substance and

24 report as soon as possible to the pretrial

25 services officer or supervising officer every

1    contact with law enforcement personnel, including

2    arrests, questioning or traffic stops.

3               THE COURT:  With regards to Mr.

4    Walker's passport, do you have the passport, sir?

5               MR. MARTIN:  He does have a passport,

6    Your Honor.

7               THE COURT:  For purposes of travel

8    here?

9               MR. MARTIN:  Yes, sir.  Your Honor, he

10   lives in Missouri.  He has a business here.  He

11   works here.  The Co-Defendants in the -- may I?

12              THE COURT:  Certainly.

13              MR. MARTIN:  The Co-Defendants that are

14   here in the courtroom are employees of his.  As

15   part of his employment, he has to talk to him

16   every day.  And we all have, for lack of a better

17   word, a common defense.  Based on the fact that

18   the Government has so much discovery material,

19   we're all going to need to be talking to each

20   other so that on August 20th, when we show up, we

21   can have some kind of a meaningful conversation

22   with the Court as to what we're doing.

23              THE COURT:  You mean the attorneys need

24   to talk to each other about the case?

25              MR. MARTIN:  Well, the Defendants do

 1    to, Your Honor, because they work together and

 2    because we we've got so much material to go

 3    through.

 4              THE COURT:  You mean outside of the

 5    presence of their attorneys?

 6              MR. MARTIN:  Sorry?

 7              THE COURT:  Outside of the presence of

 8    their attorneys.

 9              MR. MARTIN:  They work in the same

10    facility, Your Honor.  It's like they all work in

11    one business together, and they do -- you know,

12    they conduct businesses.  I've never had the

13    condition where Defendants can't talk to each

14    other in 39 years of practicing law, Your Honor.

15              THE COURT:  But not with regards to the

16    case.

17              MR. MARTIN:  Not with regards to any

18    case have I ever had a condition where Defendants

19    cannot speak to each other, particularly when

20    they work together.

21              THE COURT:  Well, that must be

22    something unusual in Missouri or Oklahoma.

23              MR. MARTIN:  I've practiced all over

24    the United States, Your Honor.  Never in Guam,

25    but --

```
 1              THE COURT:  Well, cultures differ in
 2    the different districts of the United States.
 3              MR. MARTIN:  I understand that.
 4              THE COURT:  So the culture in Oklahoma
 5    and Missouri may be different from the culture in
 6    Northern California, Southern California,
 7    District of Hawaii, District of Alaska or the
 8    District of Guam.
 9              MR. MARTIN:  Sure.  I understand the
10    cultural differences, Your Honor, but when people
11    work together, I can understand you not
12    wanting --
13              THE COURT:  So you want us to tell them
14    to go ahead and discuss the case among
15    themselves?
16              MR. MARTIN:  I want you to allow them
17    to talk to each other for purposes of employment,
18    for purposes of -- when all the lawyers are
19    present, we can talk about the case together.
20              THE COURT:  Well, that's what I said.
21              MR. MARTIN:  Okay.
22              THE COURT:  To allow you -- to allow
23    them to talk to each other about the case in the
24    presence of their attorneys.
25              MR. MARTIN:  Correct.
```

1          THE COURT:  And I thought you said that
2    that was something you did not want them to do.
3          MR. MARTIN:  No, I want them to be
4    allowed to do that.
5          THE COURT:  In the presence of their
6    attorneys.
7          MR. MARTIN:  Correct.
8          THE COURT:  To talk about the case.
9          MR. MARTIN:  Yes, sir.
10          THE COURT:  And I have an objection to
11    that.
12          MR. MARTIN:  And the other problem is,
13    Your Honor, they need to be able to talk about
14    other things when they work together.  They
15    actually work in the same facility, and so they
16    need to be able to talk to each other and say,
17    move, something's going to hit you in the head if
18    you don't move.  If they can't talk, they can't
19    work together.  And they all run the business.  I
20    don't mind them not talking about the case, but
21    other communications, they should be able to work
22    together and basically not shut down Hansen
23    Helicopter where they all work.
24          THE COURT:  Well, that would seem to be
25    reasonable, sir.

1        MR. MARTIN:  So --

2        THE COURT:  That would seem to be

3  reasonable.

4        MR. MARTIN:  And that's what I want to

5  make sure that we don't run afoul of the Court's

6  order by having some federal agents show up at

7  work, and they're all there working and 00

8        THE COURT:  Well, they cannot all be

9  there working because the Court has set a

10  schedule.  The Court has previously set a

11  schedule that allows them to work in such a way

12  that they're not all together at the place of

13  employment.

14        MR. MARTIN:  That's going to -- Your

15  Honor, you might -- the Court might as well just

16  shut the business down, from what I understand

17  from talking to Mr. --

18        THE COURT:  Well, it's been going on

19  and working for the past couple of days.

20        MR. MARTIN:  I don't know.  I haven't

21  had a chance to talk to any of them, Your Honor.

22  That's my concern.  I think the Court -- I think

23  it's appropriate for the Court to order them not

24  to discuss the case among themselves except in

25  the presence of their lawyer.  But to prevent

1    them from -- they've been working for 20 years

2    every day together in the same business.  With

3    that understanding, it's reasonable.

4              THE COURT:  It would be reasonable for

5    the Court to say that they can talk to each other

6    about the business, really, the operations of the

7    business.  But the Court has previously set a

8    schedule as to when these employees are able to

9    work at the business, sir, and they've agreed to

10   that schedule.  So if you want the Court to

11   revise that schedule, their attorneys would have

12   to make a motion on their behalf.

13             MR. MARTIN:  Your Honor, I think their

14   attorneys are here, if the Court would entertain

15   it.

16             THE COURT:  But you don't have standing

17   to make the motion on their behalf.

18             MR. MARTIN:  Sure, and that motion --

19   that was not a condition, at least in Oklahoma,

20   that was put on Mr. Walker, Your Honor.

21             THE COURT:  Well, I'm not talking about

22   Mr. Walker.  I'm talking about the condition the

23   Court has set for the other Defendants, and those

24   remain in place --

25             MR. MARTIN:  Mr. Walker --

1          THE COURT:  -- until their attorneys

2    move the Court to change those conditions of

3    release.  And the only person that can do that is

4    their attorney, not Mr. Walker's attorney.

5          MR. MARTIN:  I understand, Your Honor.

6    As it relates to Mr. Walker, he owns the

7    business.  I would assume it would be all right

8    for him at any time to go to the business that he

9    owns as long as he does not talk to any of the

10   Co-Defendants about the pending case.

11         THE COURT:  That would be reasonable.

12   That would be reasonable.

13         MR. MARTIN:  Okay.

14         THE COURT:  I can agree to that.

15         MR. MARTIN:  Okay.  I just --

16         THE COURT:  But, you know, we

17   haven't -- we haven't set the conditions of

18   release yet.

19         MR. MARTIN:  Sure.

20         THE COURT:  We're still talking about

21   those conditions.

22         MR. MARTIN:  I mean --

23         THE COURT:  And one of the conditions

24   that you're asking the Court is that he be

25   allowed to talk to these employees for the

1   purpose of running the business, and that would
2   be reasonable to the Court, really.  As head of
3   the business, there needs to be the ability to
4   make directives that need to be followed for
5   purposes of the business moving forward.  So I
6   see that to be reasonable in this case.
7           MR. MARTIN:  And just so the Court will
8   be aware, Your Honor, for setting conditions of
9   bond, and I know you haven't set them yet, but we
10  voluntarily agreed months ago that if we found
11  out there was an indictment, we would surrender.
12  That didn't occur because we weren't notified.
13          But once we found out there was an
14  indictment, we did surrender voluntarily.  We
15  appeared in Oklahoma last Friday, and these
16  conditions that were in Oklahoma were set.  And
17  in all candid, we had to jump through all kinds
18  of hoops to get here.  I got here Thursday
19  morning at 2:00 so that we could be here.  Mr.
20  Walker jumped through all kinds of hoops too, to
21  be here.
22          And I think under the Bail Reform Act,
23  the Court should, you know, put the least
24  restrictive measures in to assure his appearance
25  and him voluntarily and jump through hoops to get

Veritext Legal Solutions
Case 1:23-cr-00010   Document 2334   Filed 07/31/25   Page 36 of 91
212-267-6868                    www.veritext.com                    516-608-2400

1  here I think is at least a good showing of good
2  faith in that regard.  I'd ask the Court to
3  consider that.  As relates to a couple other
4  issues that the probation officer mentioned, if I
5  could address those, I'd appreciate it.
6              THE COURT:  Certainly, sir.
7              MR. MARTIN:  He lives on a farm in
8  Missouri, and it's a large farm.  And there are
9  all kinds of, for lack of a better --
10             THE COURT:  According to the bail
11 report, it's 5,000 acres.
12             MR. MARTIN:  Yes, sir.  There are all
13 kinds of what I'll refer to in Oklahoma as
14 varmints, and --
15             THE COURT:  I think that's probably
16 bigger than our villages of Sinajana.
17             MR. MARTIN:  There's all kinds of
18 varmints, snakes, coyotes and things like that.
19 And firearms are necessary sometimes to kill
20 those so that they don't kill livestock or hurt
21 humans or anything like that.  And I would ask
22 that -- there's no indication that he's a violent
23 individual, that he'd at least be allowed to have
24 his firearms for that limited purpose, Your
25 Honor.

1    THE COURT:  Let me ask, is there an
2  objection from the probation office to allow him
3  to have firearms in his home or in his ranch?
4    MS. YAMASHITA:  Normally, Your Honor,
5  when we ask that firearms not be allowed in the
6  residence, it would be for the safety of officers
7  when they conduct their home visits.  I would
8  still continue to recommend that his firearms --
9  he not possess any firearms for the safety of
10  those officers, should they intend to visit him
11  on pretrial.
12    THE COURT:  Well, you know, a couple of
13  things to -- you know, like you said, sir, this
14  is a complicated case.  The culture here is that
15  there's no firearms.  I'm not so sure what the
16  culture is in Missouri.  The probation office
17  there may have a different picture of what the
18  necessities are.  They may say that in Mr.
19  Walker's situation, it may not be necessary to
20  impose a no firearms restriction on him.  That I
21  can't say.  But assuming that the -- I'm sorry --
22    MR. MARTIN:  Oklahoma did not impose
23  that on him when we appeared there, Your Honor,
24  and the pretrial services officer in Missouri
25  knew that that, and we've actually talked to him.

1          THE COURT:  See, I don't know that,
2    sir.
3          MR. MARTIN:  I have the pretrial
4    services report from Oklahoma.
5          THE COURT:  I have it.  But, you know,
6    I'm talking about the District of Missouri --
7          MR. MARTIN:  Right.
8          THE COURT:  -- whether they have a
9    different perspective on the case other than
10   Oklahoma.
11         MR. MARTIN:  They're providing
12   supervisory --
13         THE COURT:  The recommendation is to
14   release Mr. Walker to his address in Missouri.
15         MR. MARTIN:  Right.
16         THE COURT:  And to have the probation
17   office there supervise him.  And you know, what
18   I'm saying today is that office may say that a
19   condition that restricts Mr. Walker from the use
20   of firearms may not be necessary there.
21         MR. MARTIN:  So is the Court -- I want
22   to make sure I understand you.  If the probation
23   officer in Missouri is okay with him possessing
24   firearms, are you saying that that would not be a
25   violation in your eyes, Your Honor?

```
 1              THE COURT:  If they recommend that to
 2   the Court and the Court adopts that
 3   recommendation, yes.
 4              MR. MARTIN:  Okay.
 5              THE COURT:  But the Court has to adopt
 6   it first here.
 7              MR. MARTIN:  I understand, Your Honor.
 8              THE COURT:  All right.
 9              MR. MARTIN:  I understand you clearly.
10   I'm assuming that his travel -- from what you're
11   saying, he can travel from Missouri to Oklahoma
12   to see me at my office?
13              THE COURT:  Certainly.
14              MR. MARTIN:  Okay.  I just want to -- I
15   just want to make sure, Your Honor.  It didn't
16   really address that in here.
17              THE COURT:  I haven't really imposed
18   any restrictions on the travel.  And at this
19   point, he has his passport, and I understand it's
20   reasonable for him to have his passport.  How
21   else can he get to Guam?
22              MR. MARTIN:  Exactly, Your Honor.
23              THE COURT:  The first thing they ask
24   you when you try to board is, sir, let me see
25   your passport.  So it wouldn't be unreasonable to
```

1   have him continue to hold on to his passport for

2   the purposes of travel here to Guam and when made

3   necessary for purposes of his case.

4          MR. MARTIN:  May I have just a moment,

5   Your Honor?

6          THE COURT:  Sure.

7          MR. MARTIN:  The only other issue that

8   I wanted to address, Your Honor, was there were

9   no conditions relating to substance abuse.  We

10   passed a test yesterday, a drug test yesterday.

11   I think my client advised the probation officer

12   that he generally has a couple of drinks in the

13   evening, and they've put in a recommendation that

14   he completely refrain from the use of alcohol.

15   There's no issue that I've seen as relates to

16   substance abuse on his part.  And I would ask

17   that that just be that he not use alcohol

18   excessively.  That would be the only other

19   Request that I would make.

20          THE COURT:  All right.  You know, in

21   looking at the pr trial services report from

22   Oklahoma, it did recommend that he submit to drug

23   and alcohol testing.  And you're asking us not to

24   impose that?

25          MR. MARTIN:  No, I'm asking that the --

1    one of the possible conditions be that he not

2    drink alcohol excessively --

3            THE COURT:  That he not drink

4    excessively.  That's what you're asking.

5            MR. MARTIN:  Right.  The substance

6    abuse testing --

7            THE COURT:  To be consistent with the

8    bail report in Oklahoma.

9            MR. MARTIN:  Yes, sir.

10           THE COURT:  You know, like I said,

11   generally speaking, the culture here is that when

12   a person has been charged previously with DUIs

13   that a no drinking policy is imposed.  Generally,

14   the culture here.  So like I said, the culture

15   there in Missouri and Oklahoma may be different,

16   but generally the culture here is once a person

17   has been charged with a DUI offense, that that

18   condition of no alcohol use is imposed as a

19   required condition of release.

20           MR. MARTIN:  Would that be something

21   that if the pretrial services officer, after he

22   talks to Mr. Walker or does some evaluation is

23   comfortable with, that we could submit something

24   to the Court, Your Honor?

25           THE COURT:  Certainly.  You know, we've

1   always changed these conditions of release

2   really, you know, as we see the passage of time

3   and how it applies to each Defendant really.

4           MR. MARTIN:  Very well, Your Honor.

5           THE COURT:  But I see here under, you

6   know, under his prior records, a DUI conviction

7   in 2002, a DUI conviction in 2006.  So the more

8   prudent thing would be to require him not to

9   drink alcohol at all.  Did you see that in the

10  bail report?

11          MR. MARTIN:  I've seen those, Your

12  Honor.  I mean that those are 12-year-old

13  arrests, and --

14          THE COURT:  No, but he says he still

15  drinks --

16          MR. MARTIN:  He says he --

17          THE COURT:  -- at least twice and the

18  danger of drinking is that what if you get into

19  your automobile and start driving?  And we

20  certainly don't want to see that condition.

21          MR. MARTIN:  Sure, Your Honor.  I

22  understand that.  I don't think just too

23  excessively is unreasonable, but I understand the

24  Court's position.

25          THE COURT:  But you know, I may modify

1    it if the probation office thinks it's a

2    condition that should no longer apply.  Okay.

3              MR. MARTIN:  Very well, Your Honor.

4              THE COURT:  As to the -- any other

5    consideration, sir, that you want to place on the

6    record?

7              MR. MARTIN:  I'm assuming, Your Honor,

8    for purposes of business, from what you're

9    telling me, since you're putting no restrictions

10   on his travel, he can travel for purposes of

11   business?

12             THE COURT:  Well, I have to hear from

13   the Government first.

14             MR. MARTIN:  Sure.  Absolutely.

15             THE COURT:  Yes.

16             MR. LEON GUERRERO:  Yes, Your Honor.

17             THE COURT:  Mr. Guerrero?

18             MR. LEON GUERRERO:  So just to address

19   some of the points raised by counsel.  So, so

20   just to put on the record, Your Honor, we do

21   object to the Defendants -- the Defendant being

22   able to communicate with the Co-Defendants in

23   this case.  You know, the argument's been made

24   that, you know, they need to conduct business and

25   so forth, but the Government submits there's

 1   conspiracy charges in the indictment, and this

 2   conspiracy all stems from their business

 3   dealings.  It all stems from them talking with

 4   one another, and the way they conducted their

 5   business is the substance of a lot of those

 6   charges that have been brought.  So we are

 7   concerned, you know, with this Defendant

 8   communicating, you know, with any of these Co-

 9   Defendants, again, even if it's just for business

10   purposes, because it's that communication, again,

11   which has led to these charges in the indictment.

12   That's number one.

13             Number two, you know, they can say, you

14   know, the Court orders, you know, my client not

15   to talk about the case, we'll do so.  I mean,

16   really, how's that going to be monitored?  You

17   know, I submit that the Court's prior scheduling

18   with the Co-Defendants, you know, working

19   different schedules has worked.  We haven't

20   received any information that it's caused an

21   undue hardship on the company.

22             For purposes of Defendant Walker, you

23   know, if there's somebody that is identified at

24   Hansen that's separate and apart from the

25   Co-Defendants that can relay whatever message

1    Defendant Walker needs in order to operate the

2    business, I think that that'd be another

3    alternative to consider.  But I want to put, you

4    know, our objection on the record of these

5    Defendants communicating, you know, about their

6    business, because, again, it's what's led to the

7    charges in the indictment, the way that they

8    operated their business.

9            With respect to the passport, I

10   understand, you know, he's going to be allowed to

11   go back to Missouri.  He's going to need his

12   passport to, you know, leave Guam or to come into

13   Guam.  I understand that.  However, you know,

14   this is a Defendant who has ties to foreign

15   countries.  This is a Defendant that's facing

16   serious time of he's found guilty at trial or

17   what have you.  He is facing significant time in

18   jail.  And for that, you know, we do think that,

19   you know, that has the potential for him to be a

20   flight risk, and therefore, we'd ask that there'd

21   be a travel restriction in place for any kind of

22   international travel.  Again, he hasn't shown a

23   basis for a need to do so and therefore we'd just

24   ask that --

25            THE COURT:  So basically, you're

1   telling the Court that if he desires to travel to

2   a foreign destination, that he should get the

3   permission of the Court first.

4              MR. LEON GUERRERO:  Yes, Your Honor.

5              THE COURT:  Okay.

6              MR. LEON GUERRERO:  And we be allowed

7   to respond.

8              THE COURT:  Okay.  All right.

9              MR. LEON GUERRERO:  And with that, the

10  Government has nothing further, Your Honor.

11  Thank you.

12             THE COURT:  Mr. Martin, sir, in reply?

13             MR. MARTIN:  Very briefly, Your Honor,

14  it was my understanding that the Court had -- at

15  least is considering allowing my client, who's

16  the owner of the business, to communicate with

17  his employees.  And I'm just a little concerned

18  that there is no allegation whatsoever that there

19  is any type of ongoing misconduct by my client

20  relating to any of these Defendants in this case

21  and what the Government is basically asking the

22  Court to do Is to shut their business down.

23             I know they say, well, there's nothing

24  happened.  It's been less than a week, Your

25  Honor, since the Court entered that scheduling.

1    But to not allow Mr. Walker to talk to his

2    employees about ongoing business is, in essence,

3    shutting down his business.  And I would submit

4    to the Court that since he does own it, he should

5    be allowed to communicate with them about the

6    business as it goes.

7              As relates to my client being a flight

8    risk, I was here in April, Your Honor.  I met

9    with the Government and assured them that if an

10   indictment was issued, we would appear.  And I

11   asked to allow us to appear on a summons.  That

12   was denied three times.  I happened to have a

13   meeting in my office scheduled for last Thursday

14   with my client, and we found out that an arrest

15   warrant had been issued.  He appeared in my

16   office Thursday morning.  We immediately went to

17   the marshal's office in Oklahoma City.  We

18   surrendered him.  He knew, and he surrendered to

19   the marshal's office.  We made appearance before

20   the magistrate in Oklahoma.  We were told at that

21   hearing that they anticipated within about three

22   weeks --

23             THE COURT:  Sir, just to advise you

24   that a lot of my fellow judges don't like the use

25   of the term magistrate.  It's a magistrate judge.

1    Just to show you, they get real upset.  I'm not,

2    but the others are.  So I just wanted to let you

3    know that.

4             MR. MARTIN:  And I apologize, Your

5    Honor.  I didn't mean any disrespect by using

6    that.

7             THE COURT:  That's what they wanted, to

8    make sure that there was no disrespect there.

9             MR. MARTIN:  The judge in Oklahoma,

10   Your Honor, that we appeared in front of us told

11   us that she anticipated we would be required to

12   appear here within the next three weeks.  We

13   found out Friday morning we would have to be here

14   this Friday.  As I said, we jumped through all

15   kinds of hoops to get here.  My client has known

16   about this investigation for over a year.  He's

17   had plenty of opportunity to abscond, and that's

18   not occurring.  Him failing to appear is not an

19   issue in this case.

20            I don't have any problems with his

21   travel being restricted.  However, there are

22   certain jurisdictions like the Philippines,

23   Majuro, Micronesia and other countries that he

24   does business in, he has businesses in that I

25   would ask that he be allowed to travel to those

1  countries for purposes of business and nothing

2  else, obviously letting his pretrial services

3  officer know.

4           THE COURT:  The travel to those places

5  were not identified in the initial pretrial

6  services report from Oklahoma.

7           MR. MARTIN:  They weren't.  We weren't

8  allowed.  We were told we were going to have to

9  get permission to do that in Oklahoma, Your

10  Honor.

11           THE COURT:  Well, what I'm saying is

12  that, you know, when it mentioned about the

13  Defendant's travels, all it did was it said that

14  he travels to -- let's see, where's the report?

15           MR. MARTIN:  Your Honor, we clarified

16  that yesterday in our meeting with the pretrial

17  services officer here, I believe.

18           THE COURT:  All right.  It says he

19  travels often to Mexico, Asia, Singapore,

20  Philippines, right?

21           MR. MARTIN:  Mexico is not for

22  business, Your Honor.  The others are for

23  business.

24           THE COURT:  Okay.  All right.  Go

25  ahead, sir.  I'm sorry.  I see it here.

1           MR. MARTIN:  And I'm just submitting to
2    the Court that those would be travel for purposes
3    of his business, not for --
4           THE COURT:  Let me ask you this.  Is
5    there an opposition to require him that in the
6    event he needs to travel to these places for
7    business, that he provides the probation office
8    in Missouri his itinerary?
9           MR. MARTIN:  Not at all.
10          THE COURT:  And get their permission?
11          MR. MARTIN:  Not at all, Your Honor.
12   That would be appropriate, I think.
13          THE COURT:  Okay.  All right.
14          MR. MARTIN:  And that's the --
15          THE COURT:  Let me see.  I hear someone
16   from -- something from our --
17          MS. YAMASHITA:  Your Honor, it would
18   also be a recommendation that he surrender his
19   passport to the probation office in Missouri.
20   And should he need to travel, he can -- as he
21   requests it through the Court, they can release
22   it to him whenever the need arises for him to
23   travel.
24          THE COURT:  Okay.  All right.  Thank
25   you for that.

Veritext Legal Solutions
Case 1:23-cr-00010   Document 2334   Filed 07/31/25   Page 51 of 91
212-267-6868                www.veritext.com                516-608-2400

1       Sir?

2           MR. MARTIN:  My only concern with that,

3   Your Honor, is, for example, if we have to come

4   out here or go somewhere and it's on the weekend

5   and we can't get it from them, and I'm not saying

6   that that that'll happen, but there are times

7   when you need a passport at the last minute to

8   come to Guam or to go to any of these other

9   countries.  And your probation officer's office

10  is not open on Saturdays and Sundays.  And that's

11  just a concern that I have.  He's not shown any

12  propensity for flight.  We've known about this

13  for a long time.

14          THE COURT:  But if there's no

15  objection, though, to providing the probation

16  office there with the itinerary.  Business travel

17  generally is planned.  It's not last minute.  So

18  I'm sure that if Mr. Walker intends to travel to

19  the Philippines, he must know that at least a

20  week before so that he can appropriately advise

21  the probation office there in Missouri to get his

22  passport.  Is that too much of an inconvenience?

23          MR. MARTIN:  The only reason I say

24  that, Your Honor, is Mr. Walker lives in -- we'll

25  say this is Missouri.  I'm using this notebook.

1   Mr. Walker lives here in Neosho, Missouri.  The

2   office is in Springfield, Missouri, which is --

3            MR. WALKER:  Sixty miles.

4            MR. MARTIN:  -- an hour away.  The

5   officer is not always there.  He has a whole

6   territory he covers.  And that's the concern I

7   have.  I don't have a problem with providing an

8   itinerary.  I just want the Court to know that

9   that will create a disadvantage.  We'll work with

10  whatever conditions the Court gives us, but I

11  want you to be aware of everything.

12           THE COURT:  I see.  So what you're

13  saying to the Court then is that he'd be allowed

14  to continue to hold on to his passport, but if he

15  decides to travel to a foreign destination, that

16  he provide the probation office in Missouri the

17  itinerary prior.

18           MR. MARTIN:  Absolutely.

19           THE COURT:  And how much time would he

20  be required in advance to provide that notice?

21           MR. MARTIN:  As soon as it's known.  We

22  would provide it, Your Honor, as soon as travel

23  would be arranged.  If he knew he was going to go

24  to, let's just say Guam, as soon as he knows he

25  has to be here, we will -- once travel is

1    arranged so we know the flight, where he's going

2    to be staying and everything, we would

3    immediately provide it to the probation office.

4              THE COURT:  All right.  Any other

5    concerns, sir?

6              MR. MARTIN:  No, Your Honor.

7              MR. LEON GUERRERO:  Your Honor, I just

8    have one thing to add, just for Your Honor's

9    consideration.  If we can take a sidebar?

10             THE COURT:  Okay.  All right.

11             (Begin sidebar discussion.)

12             MR. LEON GUERRERO:  The other thing I

13   want Your Honor to consider is the Government's

14   position regarding the contact that this

15   Defendant has with the Co-Defendants, I mean,

16   just receiving the effectuated witness warrants

17   there was an employee there that was violating

18   his immigration stats.  So again, that's a

19   concern.  He was in violation of his immigration

20   status.

21             THE COURT:  Meaning?

22             MR. LEON GUERRERO:  He was working at

23   Hansen, and we have information that he was

24   working at Hansen.

25             THE COURT:  An H-2 worker or something?

 1          MR. LEON GUERRERO:  He's not even an H-

 2    2.  He came in under particular visa that didn't

 3    allow him to work.  Again, we have information

 4    that he was working.  So the concern that we

 5    have, again, is it all deals with the way that

 6    they're conducting business.  And that's just one

 7    example, like I said, of just recently affected

 8    arrest warrant, we already found a violation of

 9    immigration law.  So we just want to put that on

10    the record that's a concern that the Government

11    has if this Defendant speaks with the

12    Co-Defendants.  I mean, that's just one recent

13    situation where, again, there's a violation of

14    immigration law.  I just want Your Honor to

15    consider that, you know, when you make your

16    decision.

17          THE COURT:  Mr. Martin?

18          MR. MARTIN:  Well, first of all, Your

19    Honor, it's the first I've heard of this.  Second

20    of all, my client wasn't here when the arrest

21    occurred, so I don't know who was present and who

22    wasn't.  He was in Neosha, Missouri.  This is not

23    part of the substance of the indictment.  The

24    substance of the indictment is a conspiracy

25    relating to violations of the FAA laws, not

1  anything -- there's no allegation in there

2  relating to immigration violations.  If that is

3  something, that would be a matter of a new

4  indictment, if there's a new investigation going

5  on.  I don't know how my client can run a

6  business he owns if he can't communicate about

7  the business with his employees.

8            THE COURT:  Well, you know, part of the

9  standard condition of release is that the person

10 comply with all federal and local laws.  So as a

11 condition of release, that's something that he

12 must comply with.  So to the extent that we find

13 out that there is some violation of law that

14 occurs within the premises, then obviously Mr.

15 Walker would be in violation of his condition of

16 release, and he can be brought back and then

17 we'll decide whether he's detained because he's

18 purposely violated or not.

19            MR. MARTIN:  I don't know if they have.

20 And I agree with that.  Absolutely, Your Honor.

21 But there's no evidence that I've been made aware

22 of that my client had anything to do with what --

23            THE COURT:  Well, you know, as the

24 owner, see, he ultimately takes responsibility.

25 That's the problem.

```
 1              MR. MARTIN:  Well, I understand.

 2              THE COURT:  That's the problem.

 3              MR. MARTIN:  I understand he's

 4   responsible for the business, but what his other

 5   employees do --

 6              THE COURT:  We can't close our eyes to

 7   other activities that are ongoing in the business

 8   that's done by the employees, because ultimately,

 9   he's responsible.

10              MR. MARTIN:  Well, I think I would

11   respectfully disagree to a little extent, Your

12   Honor.  If an employee of mine embezzles money

13   from somebody and I have no knowledge of it, I'm

14   not responsible for it.  And I think we're all

15   agreeable on that.  I don't know what -- I just

16   think --

17              THE COURT:  Well, you know, true.

18   There's always different scenarios that would

19   apply.  You know, the other question that I

20   wanted to address, really, now that we're on

21   sidebar, is the bail report.  They recommended a

22   $1 million unsecured bond.  So I'm really looking

23   at the issue regarding the posting of some type

24   of bond here.  I notice he's got property here in

25   Guam.  Is that free and clear?
```

1         MR. MARTIN:  I don't know.  I can find

2    out.  I believe it is.

3         THE COURT:  Okay.

4         MS. MARTIN:  Your Honor, might I also

5    add, the allegation in the civil forfeiture is

6    for an amount (indiscernible) $4.6 million.

7         MR. MARTIN:  They've seized that much.

8         THE COURT:  Well, that's been seized

9    (indiscernible), right.

10        MS. MARTIN:  And if we abscond, we

11   obviously lose that.  So in essence, that

12   forfeiture and seizure also holds to be kind of a

13   bond without calling it a bond.

14        THE COURT:  Well, I disagree in that

15   regard because you can't use something that's

16   been allegedly obtained illegally as the source

17   for, you know, for security.  But I'm looking at,

18   you know, in lieu of the million dollar unsecured

19   bond, if he posts the property, can you ask him

20   if it's secured or not?  Because it's the least

21   onerous, really (indiscernible).

22        MR. MARTIN:  May I have a moment?

23        THE COURT:  Yes, you may.

24        MR. MARTIN:  My client tells me it's

25   free and clear, Your Honor.  And we will be --

1  however, he doesn't know how to do it, and I

2  don't either, but --

3          THE COURT:  Well, you have a local

4  attorney that will be able to assist you there,

5  Mr. Maher, if the Court requires that, a posting

6  of a bond, in lieu of an unsecured bond.

7          MR. MARTIN:  Sure.

8          THE COURT:  And that may allow the

9  Court to be more flexible in dealing with other

10 matters given the fact that it's got the security

11 and may allow him to keep his passport in that

12 sense.

13          MR. MARTIN:  We'll do whatever the

14 Court (indiscernible) --

15         THE COURT:  Oh, so that's available for

16 posting as bond?

17         MR. MARTIN:  It is today.

18         THE COURT:  And it's valued at

19 approximately $800,000.

20         MR. MARTIN:  That's what

21 (indiscernible).

22         THE COURT:  Okay.  All right.

23         (End sidebar discussion.)

24         MR. LEON GUERRERO:  And Your Honor,

25 just in closing with respect to these conditions

1   that were being discussed, I would also ask that

2   -- I've indicated my objection to further

3   communications between the Co-Defendants, but we

4   would also ask that there be a stay away, no

5   contact with any potential witnesses in this case

6   as well.

7           THE COURT:  Okay.  All right.  Any

8   final comments on your part, Mr. Martin, sir,

9   before the Court decides the bail issue?

10          MR. MARTIN:  The only final comment is

11   what the Government just suggested, Your Honor,

12   if they want to provide us a list of witnesses,

13   we'll know who not to have contact with.  Other

14   than that, I mean, we can make a pretty good

15   guess, but I'd hate to violate something

16   unknowingly.  So that's the concern I have about

17   that last one is if they want to make sure we are

18   completely aware.  Great.  If they want us to

19   guess, it's kind of hard in that regard.

20          THE COURT:  Mr. Guerrero, is there a

21   list of persons right now or is that something

22   you would want to provide them at a certain point

23   in time?

24          MR. LEON GUERRERO:  That's something.

25   Yes, that's correct, Your Honor.  We'll provide

1   it at a certain point in time.

2              THE COURT:  Okay.  All right.  Okay.

3   The matter then before the Court concerns the

4   bail of Mr. Walker.  And the Court will release

5   Mr. Walker with these conditions.  To secure his

6   presence, the Court will require that he post a

7   property bond and that he, through local counsel,

8   obtain a -- or rather execute a deed of the

9   residence in Guam.  And I'll ask Mr. Maher, sir,

10  if you can get the specific address of that

11  property and prepare --

12             MR. MAHER:  Your Honor, would you want

13  a legal description or is it sufficient if we

14  were to just provide --

15             THE COURT:  Well, whatever description

16  that's called for in any type of deed.

17             MR. MAHER:  Well, then I'll have to

18  order a PTR if Mr. Walker does not have a PTR

19  available.  So until that, that would take about

20  10 days from PATICO.

21             THE COURT:  Sir, do you --

22             MR. MAHER:  So --

23             THE COURT:  Well, let me ask this, sir.

24  When you obtained this property, you probably got

25  a deed to the property, right?

1              MR. WALKER:  Yes, Your Honor.

2              THE COURT:  Where is that deed?

3              MR. WALKER:  I believe I have it on the

4    property.

5              THE COURT:  All right.  And is it

6    accessible, the information on that date, is it

7    accessible to you at the present time?

8              MR. WALKER:  I believe so, if it's

9    where I think it is.  Yes.

10             THE COURT:  Provide that information to

11   your local counsel here.  All right.  So that

12   would be the description that'd be used in the

13   preparation of the deed.

14             MR. WALKER:  Yes, sir.

15             THE COURT:  So the deed is to be -- the

16   grantee will be the clerk of court, the District

17   Court of Guam.  So that would be in lieu of the

18   $1 million unsecured bond, sir.  And the Court

19   will release you upon with the understanding that

20   that bond has to be provided to the Court.  Also,

21   as part of your condition of release, the Court

22   will require that you be supervised by the --

23   now, the district in Missouri, is that just one

24   district, sir, or is it like a northern,

25   southern, eastern, western?

1           MR. MARTIN:  Your Honor, I believe it's

2    the District of Missouri, but it's the Southern

3    Division.

4           THE COURT:  The Southern District?

5           MR. MARTIN:  Southern Division.

6           THE COURT:  Oh, Southern Division.

7           MR. MARTIN:  There's one district and

8    there's a northern and a western and a southern.

9    It's southern.

10          THE COURT:  All right.  So it's just

11   the District of Missouri then?

12          MR. MARTIN:  Yes, sir.

13          THE COURT:  Southern Division.

14          MR. MARTIN:  Yes, Your Honor.

15          THE COURT:  Okay.  Supervision at the

16   District of Missouri, Southern Division, that you

17   are basically, sir, not restricted in your travel

18   activities.  If you desire to -- for business

19   purposes only, if you desire to travel abroad,

20   you are required to notify the probation office

21   there as soon as it is reasonably -- I'm trying

22   to see what's the -- determined that you're going

23   to make that trip.  So if you know it three weeks

24   in advance and that notice three weeks in

25   advance, if you know it, if it's urgent, send an

 1    email that is urgent.

 2            Because the Court is receiving a

 3    property bond, the Court will allow you to keep

 4    your passport merely because of the

 5    representations made to the Court of the

 6    inconvenience to -- you know, it's not like Guam

 7    where you could just go to a probation officer, a

 8    two-minute drive to get your passport.  I'm

 9    advised that the distance between where you are

10    located and the probation office there may be

11    significant in terms of time travel.  So based on

12    that consideration, the Court will allow you to

13    keep your passport.

14            The Court will require that you not

15    consume alcohol, sir, unless the probation office

16    in the District of Missouri finds that condition

17    to be not as appropriate as the Court here thinks

18    it is.  And to the extent that they think it

19    would be inappropriate, they should ask the Court

20    here to modify your conditions of release so that

21    that condition will be changed from no use of

22    alcohol to no excessive use of alcohol.

23            And for purposes of business, you know,

24    I know it's -- when you're running a business,

25    it's difficult not to be able to tell people what

1   to do.  So the Court will allow you to

2   communicate with your employees solely for the

3   purpose of the business operation of Hansen

4   Enterprises.  You are not to discuss any matter

5   regarding the case that is before the Court with

6   any of your employees, except in the presence of

7   your attorney.  All right?

8           MR. WALKER:  Yes, Your Honor.

9           THE COURT:  So if I find that somehow

10  you've talked to any one of them, sir, or that

11  you violate any other condition of release, you

12  may be subjected to a warrant of arrest by this

13  Court.  And the Court will require that you not

14  leave the Territory of Guam, sir, until the

15  property bond has been provided to the Court and

16  the Court is satisfied with the deed.  Once the

17  Court is satisfied, then you are free to leave

18  Guam to return back to your residence.  Is there

19  anything I missed?

20          CLERK:  Firearms.

21          THE COURT:  Oh, on the firearms.  On

22  the firearms issue, let me leave that

23  considerate.  I'm ordering no firearms at the

24  present time.  You may discuss that issue with

25  the probation office there in Missouri.  And if

1    they find it reasonable, you know, because I

2    don't know the conditions where you live, sir.  I

3    don't know.  Are there bears around or animals

4    where you need protection from a firearm?  And if

5    that is the case, then obviously the probation

6    office makes that recommendation to the Court

7    that you need your firearm as a protection

8    against animals, then obviously that may be a

9    reasonable condition.  I don't know.

10             Mr. Martin?

11             MR. MARTIN:  Your Honor, I just want to

12    advise the Court, currently there are firearms on

13    the residence.

14             THE COURT:  Right.

15             MR. MARTIN:  And he'll have to go back

16    and make arrangements to have them removed.  So

17    there'll be a short period of time, since he's

18    here now, that we'll need to make those

19    arrangements.

20             THE COURT:  We don't want him to be in

21    violation at the present time --

22             MR. MARTIN:  Exactly, Your Honor.

23             THE COURT:  -- because of what the

24    Court has ordered.  Right.  So the Court will

25    give you an opportunity, sir, to discuss that

1  issue with the probation officer and have them

2  make that recommendation to the Court here.  All

3  right?  And like I said, if they say that it's

4  all right for you to have possession of these

5  firearms, then they need to advise us so that we

6  can modify the condition of release, sir.

7          MR. WALKER:  I understand.

8          THE COURT:  The Court will require that

9  you submit to drug and alcohol testing.  That's

10  part of the conditions of release originally

11  recommended to the Court, that you report all

12  contact with any law enforcement officer or

13  office to the United States probation office,

14  that you not use any or possess any narcotic,

15  drug or controlled substance unless prescribed by

16  a licensed medical practitioner.  Is there

17  anything that I missed?

18          MR. LEON GUERRERO:  Just the no contact

19  with potential witnesses in this case, which

20  we'll provide a list.

21          THE COURT:  There's no contact with the

22  potential witnesses.  And the Government will

23  provide you a list, sir, of individuals that are

24  potential witnesses here and individuals that

25  they want you to not have any contact with.

1          MR. WALKER:  I understand.

2          THE COURT:  Probation, is there

3    anything else that the Court should include?

4          MS. YAMASHITA:  To report any contact

5    with law enforcement personnel, Your Honor.

6          THE COURT:  Okay.  All right.

7          MR. MARTIN:  You did that.

8          THE COURT:  All right.  So those would

9    be the conditions of release then, sir.  And the

10   Court will order your release today and order

11   that you comply with these conditions of release

12   and also advise you that if you fail to comply

13   with these conditions of release, a warrant for

14   your arrest may be issued and you could be jailed

15   pending for the proceedings herein.

16          Also, if you fail to appear in Court

17   when required, that's a crime for which you can

18   be sentenced to prison or be subject to contempt

19   of court.  And also, should the matter go to

20   trial, please note it is a crime to try to

21   contact any potential juror or to otherwise

22   obstruct the administration of justice.

23          Also, if you commit a crime while on

24   release, that may lead to more severe punishment

25   than you would have received for committing the

1  same crime at any other time.  Do you understand
2  that?
3              MR. WALKER:  I do, Your Honor.
4              THE COURT:  All right.  Let me then
5  order your release and order you to comply with
6  these conditions of release as the Court has
7  stated.  Any questions?
8              Mr. Martin?
9              MR. MARTIN:  Your Honor, the Court
10 scheduled a status conference for August 20th.
11 Do you require the Defendant to be present for
12 that conference?
13             THE COURT:  Generally, we will, unless
14 the attorneys ask that their presence not be
15 required and.  But let us know in advance
16 thereof.  Don't surprise us.  Don't surprise us
17 at the date of the hearing by telling me you've
18 told them not to come.
19             MR. MARTIN:  Don't call you on the
20 19th.  Yes, sir.
21             THE COURT:  Yes.  Okay.
22             MR. MARTIN:  Thank you, Your Honor.
23             THE COURT:  All right.  Thank you very
24 much for being here this morning.
25             MR. LEON GUERRERO:  Thank you, Your

1  Honor.

2           THE COURT:  You're welcome.

3           (Proceedings adjourned at 10:14 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

7    *[signature: Sonya M. Ledanski Hyde]*

8

9    _____

10

11   Veritext Legal Solutions

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date: July 29, 2025

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
Case 1:23-cv-00010    Document 2334    Filed 07/31/25    Page 71 of 91
212-267-6868    www.veritext.com    516-608-2400

| & | | |
|---|---|---|

**&** 2:23

| 0 | | |
|---|---|---|

**00** 33:7
**00010** 1:7

| 1 | | |
|---|---|---|

**1** 5:3 57:22 62:18
**10** 5:10 61:20
**108** 2:6
**10:14** 70:3
**11** 5:12
**11501** 71:14
**12** 43:12
**12151** 71:7
**125** 2:13
**13th** 24:4,6,19
**14th** 13:13
**15th** 23:7,13 26:20
**16** 5:12
**17th** 23:17 24:16,18
**18-00010** 4:7
**19th** 69:20
**1:18** 1:7

| 2 | | |
|---|---|---|

**2** 5:6 54:25 55:2
**20** 14:8 25:4 34:1
**2002** 43:7
**2006** 43:7
**2018** 1:15
**2025** 71:16

**20th** 24:13,21 25:2,5,6,8 26:21 27:3,16 29:20 69:10
**238** 2:18,24 3:5 3:12
**24** 7:7
**28** 19:6,14
**29** 71:16
**2:00** 36:19

| 3 | | |
|---|---|---|

**3** 5:8
**300** 2:18 71:13
**32** 20:4 23:2
**330** 71:12
**3561** 28:13
**39** 30:14

| 4 | | |
|---|---|---|

**4.6** 58:6

| 5 | | |
|---|---|---|

**5** 5:9
**5,000** 37:11
**500** 2:6
**520** 1:20

| 6 | | |
|---|---|---|

**6** 5:10
**6th** 24:10,11

| 7 | | |
|---|---|---|

**73102** 2:14

| 8 | | |
|---|---|---|

**8** 1:15
**800,000** 59:19
**802** 3:4,11
**8th** 13:7

| 9 | | |
|---|---|---|

**96910** 1:21 2:7 2:19,25 3:6,13
**9:00** 25:4,5,7,8 26:21 27:3
**9:04** 1:16

| a | | |
|---|---|---|

**a.m.** 1:16 70:3
**ability** 36:3
**able** 12:20 22:7 32:13,16,21 34:8 44:22 59:4 64:25
**abroad** 63:19
**abscond** 49:17 58:10
**absolutely** 44:14 53:18 56:20
**abuse** 41:9,16 42:6
**accessible** 62:6 62:7
**accurate** 71:4
**acres** 37:11
**act** 10:15 36:22
**activities** 57:7 63:18
**actually** 32:15 38:25
**adai** 4:5,12
**add** 54:8 58:5
**addendum** 27:20
**addiction** 7:3

**additional** 11:22 17:7,9 20:7
**address** 15:2,6 15:15 28:10,12 37:5 39:14 40:16 41:8 44:18 57:20 61:10
**adequately** 10:22 12:15
**adjourned** 70:3
**administration** 5:6,8 68:22
**adopt** 40:5
**adopts** 40:2
**advance** 53:20 63:24,25 69:15
**advise** 5:1,19 48:23 52:20 66:12 67:5 68:12
**advised** 10:1 41:11 64:9
**affected** 55:7
**afoul** 33:5
**agencies** 15:23
**agent** 3:17 4:14
**agents** 33:6
**ago** 23:22 36:10
**agree** 35:14 56:20
**agreeable** 57:15

**agreed** 34:9
36:10
**ahead** 11:8
26:10 31:14
50:25
**aid** 11:11
**aka** 1:8
**al** 1:11
**alaska** 31:7
**alcohol** 7:6
28:22 41:14,17
41:23 42:2,18
43:9 64:15,22
64:22 67:9
**allegation**
47:18 56:1
58:5
**allegedly** 58:16
**allow** 9:22
31:16,22,22
38:2 48:1,11
55:3 59:8,11
64:3,12 65:1
**allowed** 32:4
35:25 37:23
38:5 46:10
47:6 48:5
49:25 50:8
53:13
**allowing** 47:15
**allows** 33:11
**alternative**
46:3
**amber** 2:11
4:18
**america** 1:4

**amount** 58:6
**animals** 66:3,8
**anthony** 3:2,3
**anticipate** 22:6
22:23
**anticipated**
48:21 49:11
**apart** 45:24
**apologize** 49:4
**appear** 11:7
48:10,11 49:12
49:18 68:16
**appearance**
4:8,10 36:24
48:19
**appeared** 9:11
36:15 38:23
48:15 49:10
**appearing** 4:18
**applies** 43:3
**apply** 44:2
57:19
**appreciate**
37:5
**appropriate**
26:6 33:23
51:12 64:17
**appropriately**
52:20
**approximately**
12:4 15:25
19:12 20:10
59:19
**april** 48:8
**archbishop**
2:18,24 3:5,12

**argument's**
44:23
**arises** 51:22
**arraigned** 6:3
8:25
**arraignment**
4:9 6:2 9:14
**arrange** 21:20
**arranged**
53:23 54:1
**arrangements**
66:16,19
**arrest** 48:14
55:8,20 65:12
68:14
**arrests** 29:2
43:13
**asia** 50:19
**aside** 25:1
**asked** 48:11
**asking** 28:4,14
35:24 41:23,25
42:4 47:21
**assist** 59:4
**assume** 25:20
35:7
**assuming**
13:12 38:21
40:10 44:7
**assure** 36:24
**assured** 48:9
**attorney** 2:4
5:21 7:14,17
9:13,21 22:11
35:4,4 59:4
65:7

**attorneys**
10:17 12:25
29:23 30:5,8
31:24 32:6
34:11,14 35:1
69:14
**august** 22:24
23:6 24:4,6
25:4,6 26:20
26:21 27:3,16
29:20 69:10
**automobile**
43:19
**available** 59:15
61:19
**avenue** 1:20
2:13
**aviation** 5:5,7
**awaiting** 11:25
**aware** 11:9
36:8 53:11
56:21 60:18

### b

**b** 2:11
**back** 22:2,7
25:9,16 46:11
56:16 65:18
66:15
**bail** 27:19
36:22 37:10
42:8 43:10
57:21 60:9
61:4
**based** 13:16
22:18,22 29:17
64:11

Veritext Legal Solutions
212-267-6868                                    www.veritext.com                                    516-608-2400
Case 1:25-cr-00010     Document 233-4     Filed 07/31/25     Page 73 of 91

**basically** 32:22 46:25 47:21 63:17
**basis** 46:23
**bears** 66:3
**behalf** 2:2,9,21 3:1,8 4:13 34:12,17
**belief** 8:5
**believe** 28:6 50:17 58:2 62:3,8 63:1
**best** 27:8
**better** 24:2,13 29:16 37:9
**bigger** 37:16
**board** 5:5 40:24
**body** 10:5
**bond** 36:9 57:22,24 58:13 58:13,19 59:6 59:6,16 61:7 62:18,20 64:3 65:15
**briefly** 47:13
**brought** 45:6 56:16
**buenas** 4:5,11
**building** 3:4,11
**business** 29:10 30:11 32:19 33:16 34:2,6,7 34:9 35:7,8 36:1,3,5 44:8 44:11,24 45:2 45:5,9 46:2,6,8

47:16,22 48:2 48:3,6 49:24 50:1,22,23 51:3,7 52:16 55:6 56:6,7 57:4,7 63:18 64:23,24 65:3
**businesses** 30:12 49:24

## c

**c** 2:1 3:2,3,10 4:1 28:13 71:1 71:1
**calculation** 13:16
**calendar** 12:19
**california** 31:6 31:6
**call** 24:23 69:19
**called** 23:20 61:16
**calling** 58:13
**candid** 36:17
**care** 7:1
**cart** 15:21 17:11 21:18
**case** 1:6 4:7 7:12 10:2,4,8,9 10:11 11:10 13:23 17:18 23:22 24:16 26:14 27:12 29:24 30:16,18 31:14,19,23 32:8,20 33:24 35:10 36:6

38:14 39:9 41:3 44:23 45:15 47:20 49:19 60:5 65:5 66:5 67:19
**caused** 45:20
**certain** 5:19 12:21 14:13 49:22 60:22 61:1
**certainly** 29:12 37:6 40:13 42:25 43:20
**certify** 71:3
**chance** 33:21
**change** 35:2
**changed** 43:1 64:21
**charged** 42:12 42:17
**charges** 7:13 7:25 8:6 45:1,6 45:11 46:7
**charging** 5:3,6 5:8,10,11
**choice** 22:16
**choosing** 5:21
**city** 2:14 48:17
**civil** 58:5
**clarified** 50:15
**clear** 9:5,17 57:25 58:25
**clearly** 40:9
**clerk** 25:4 26:23 62:16 65:20

**client** 41:11 45:14 47:15,19 48:7,14 49:15 55:20 56:5,22 58:24
**clock** 27:4,17
**close** 57:6
**closing** 59:25
**come** 46:12 52:3,8 69:18
**comfortable** 42:23
**comment** 60:10
**comments** 60:8
**commit** 68:23
**committing** 68:25
**common** 29:17
**communicate** 44:22 47:16 48:5 56:6 65:2
**communicati...** 45:8 46:5
**communicati...** 45:10
**communicati...** 32:21 60:3
**company** 45:21
**completely** 41:14 60:18
**complex** 10:4 11:10 13:23
**complexity** 26:14
**complicated** 38:14

Veritext Legal Solutions
Case 1:23-cr-00010 Document 234 Filed 07/31/25 Page 74 of 91
212-267-6868 www.veritext.com 516-608-2400

**comply** 10:15
56:10,12 68:11
68:12 69:5
**concern** 24:19
33:22 52:2,11
53:6 54:19
55:4,10 60:16
**concerned** 45:7
47:17
**concerns** 54:5
61:3
**condition**
30:13,18 34:19
34:22 39:19
42:18,19 43:20
44:2 56:9,11
56:15 62:21
64:16,21 65:11
66:9 67:6
**conditions**
28:2,4,19 35:2
35:17,21,23
36:8,16 41:9
42:1 43:1
53:10 59:25
61:5 64:20
66:2 67:10
68:9,11,13
69:6
**conduct** 30:12
38:7 44:24
**conducted**
45:4
**conducting**
55:6
**conference**
22:21,21 69:10

69:12
**consider** 37:3
46:3 54:13
55:15
**considerate**
65:23
**consideration**
10:19 12:19,24
26:7 27:13
44:5 54:9
64:12
**considering**
9:22 47:15
**consistent** 42:7
**conspiracy** 5:4
5:7 45:1,2
55:24
**consume** 64:15
**contact** 28:15
29:1 54:14
60:5,13 67:12
67:18,21,25
68:4,21
**contempt**
68:18
**continuance**
27:8
**continue** 38:8
41:1 53:14
**continuity**
27:14
**controlled**
28:23 67:15
**convenient**
12:25
**conversation**
29:21

**conviction**
43:6,7
**coordinate**
9:13 21:9,19
22:4
**coordinated**
9:19
**copy** 5:16 7:11
**cornell** 3:9
**correct** 5:24
9:3,12 12:2
14:20 15:11
16:6 18:1,8
19:8,16 20:5
20:12,22,22
31:25 32:7
60:25
**cortez** 2:6
**counsel** 4:10
4:19 5:23 8:18
14:9 18:16
27:14 44:19
61:7 62:11
**counsels** 9:7,8
12:9 16:2,20
21:11,20 22:5
**count** 5:3,6
**countries**
46:15 49:23
50:1 52:9
**country** 71:12
**counts** 5:8,10
5:12,14 8:3
**couple** 23:3
33:19 37:3
38:12 41:12

**court** 1:1 4:3,5
4:15,21,23,24
5:15,18 6:1,4
6:18,21,25 7:5
7:9,10,16,24
8:4,4,7,8,15,23
9:3,10,15,24
10:3,4,11,16
10:17 11:4,9
11:11,13,17,24
12:3,10,15,18
12:23 13:3,8
13:12,15,24,25
14:4,9,10,19
14:21 15:8,12
15:16 16:3,8
16:13,16,19,22
16:25 17:4,13
18:3,6,9,13,20
18:23 19:2,10
19:14,17,22
20:1,3,6,7,14
20:17,20,23
21:4,14,22
22:1,12,17,22
23:5,6,13,24
24:3,4,10,15
24:20 25:3,5,9
25:14,18,21
26:1,3,6,10,12
26:15,16,19,25
26:25 27:3,7
28:3,4,8,11,18
29:3,7,12,22
29:23 30:4,7
30:15,21 31:1
31:4,13,20,22

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400
Case 1:23-cr-00010 Document 233 Filed 07/31/25 Page 75 of 91

32:1,5,8,10,24
33:2,8,9,10,15
33:18,22,23
34:4,5,7,10,14
34:16,21,23
35:1,2,11,14
35:16,20,23,24
36:2,7,23 37:2
37:6,10,15
38:1,12 39:1,5
39:8,13,16,21
40:1,2,2,5,5,8
40:13,17,23
41:6,20 42:3,7
42:10,24,25
43:5,14,17,25
44:4,12,15,17
45:14 46:25
47:1,3,5,8,12
47:14,22,25
48:4,23 49:7
50:4,11,18,24
51:2,4,10,13
51:15,21,24
52:14 53:8,10
53:12,13,19
54:4,10,21,25
55:17 56:8,23
57:2,6,17 58:3
58:8,14,23
59:3,5,8,9,14
59:15,18,22
60:7,9,20 61:2
61:3,4,6,15,21
61:23 62:2,5
62:10,15,16,17
62:18,20,21

63:4,6,10,13
63:15 64:2,3,5
64:12,14,17,19
65:1,5,9,13,13
65:15,16,17,21
66:6,12,14,20
66:23,24,24
67:2,8,8,11,21
68:2,3,6,8,10
68:16,19 69:4
69:6,9,13,21
69:23 70:2
**court's**  10:7
  33:5 43:24
  45:17
**courthouse**
  1:19
**courtroom**  4:2
  6:5,10,14,17
  29:14
**covers**  53:6
**coyotes**  37:18
**cr**  1:7
**create**  53:9
**crime**  68:17,20
  68:23 69:1
**criminal**  4:7
**crowe**  1:9 2:21
  8:22,23
**cultural**  31:10
**culture**  31:4,5
  38:14,16 42:11
  42:14,14,16
**cultures**  31:1
**current**  11:15
  11:16 26:11

**currently**  6:25
  11:23 12:22
  15:3 21:8
  26:15 66:12
**cutoff**  13:17,19

**d**

**d**  1:7 2:9 4:1,7
  4:25
**d.c.**  15:6,13,18
  16:12 18:18
  19:17 20:15
**danger**  43:18
**darryl**  6:13
**date**  1:15 8:9
  10:6,18 11:16
  12:21,24 13:6
  13:17 14:11
  22:21 23:10
  24:25 25:6,20
  26:15 27:5
  62:6 69:17
  71:16
**dates**  12:22
  13:18 26:11,16
  26:17 27:2
**david**  2:22
**day**  24:22,25
  25:1 29:16
  34:2
**days**  14:8
  23:18,18 33:19
  61:20
**deadline**  9:1
  13:20
**deadlines**  10:6
  10:14 11:15
  13:23 25:24

**dealing**  11:2
  59:9
**dealings**  45:3
**deals**  55:5
**decide**  56:17
**decides**  53:15
  60:9
**decision**  55:16
**declare**  10:3
  13:22
**deed**  61:8,16
  61:25 62:2,13
  62:15 65:16
**defendant**  2:9
  2:21 3:1,8 4:25
  7:25 8:1 12:1
  17:21,23,25
  18:7,10 19:13
  19:15,24 22:6
  23:4 27:9,10
  28:1 43:3
  44:21 45:7,22
  46:1,14,15
  54:15 55:11
  69:11
**defendant's**
  28:7 50:13
**defendants**
  1:12 8:21,21
  9:9,18 10:20
  10:21 15:9
  16:5 19:3,9,23
  20:9 21:8,12
  21:23 28:15
  29:11,13,25
  30:13,18 34:23
  35:10 44:21,22

Veritext Legal Solutions
www.veritext.com
516-608-2400
Case 1:23-cv-00010   Document 2334   Filed 07/31/25   Page 76 of 91

45:9,18,25
46:5 47:20
54:15 55:12
60:3
**defense** 9:6,8
12:9 16:2
18:16 21:11,19
22:5 29:17
**defraud** 5:4,7
**deliveries**
20:25
**denied** 48:12
**department**
15:4,18 16:11
17:12 18:15,18
18:25 19:20
21:17 22:9
**deputy** 4:2 6:5
6:10,14,17
**description**
61:13,15 62:12
**desire** 63:18,19
**desires** 47:1
**destination**
47:2 53:15
**destructive**
28:21
**detained** 56:17
**determine**
27:18
**determined**
12:12 63:22
**device** 28:21
**differ** 31:1
**differences**
31:10

**different** 31:2
31:5 38:17
39:9 42:15
45:19 57:18
**difficult** 64:25
**diligence** 26:7
27:13
**directives** 36:4
**directly** 15:15
17:11 22:11
**disadvantage**
53:9
**disagree** 57:11
58:14
**discovery** 8:12
9:1 10:19,22
11:1,22,23
12:6,13 15:3
15:22 17:18
21:14,21 22:21
26:3,13 27:11
29:18
**discuss** 7:13
10:18 25:23
31:14 33:24
65:4,24 66:25
**discussed** 60:1
**discussion**
54:11 59:23
**disrespect** 49:5
49:8
**distance** 64:9
**district** 1:1,2
4:3 27:22 28:8
31:7,7,8 39:6
62:16,23,24
63:2,4,7,11,16

64:16
**districts** 31:2
**division** 63:3,5
63:6,13,16
**dna** 3:4,11
**doctor** 7:2
**documents**
10:11
**doing** 29:22
**dollar** 58:18
**dollars** 23:3
**don't** 57:15
58:1 59:2
**download** 12:5
12:6 14:25
17:10 18:19
**downloaded**
16:1 21:15
22:11
**drink** 42:2,3
43:9
**drinking** 42:13
43:18
**drinks** 41:12
43:15
**drive** 16:10
18:18 19:20
64:8
**drives** 11:25
12:4,7 13:10
13:13 14:11,19
14:22,24 15:5
15:10,15,20,22
15:24 16:4,14
16:22,24 17:2
17:9,19,24
18:7 19:7,12

20:11 21:10,11
21:15,17,24
22:10 23:2,4
**driving** 43:19
**drug** 28:23
41:10,22 67:9
67:15
**drugs** 7:6
**due** 26:7 27:13
**dui** 42:17 43:6
43:7
**duis** 42:12
**duncan** 23:20

e

**e** 2:1,1 4:1,1
6:16 71:1
**eastern** 62:25
**education** 6:22
**effective** 27:12
**effectuated**
54:16
**eight** 19:12
**either** 24:1
59:2
**elaborate** 9:23
**email** 64:1
**embezzles**
57:12
**employee**
54:17 57:12
**employees**
29:14 34:8
35:25 47:17
48:2 56:7 57:5
57:8 65:2,6
**employment**
29:15 31:17

33:13

**enforcement** 29:1 67:12 68:5

**enter** 7:19 8:2 8:5

**entered** 47:25

**enterprises** 65:4

**entertain** 34:14

**esquire** 2:3,10 2:11,16,22 3:2 3:9

**essence** 48:2 58:11

**estimate** 26:4

**et** 1:11

**evaluation** 42:22

**evening** 41:13

**event** 51:6

**events** 5:13

**everybody** 12:20 17:22 22:14 25:6

**everybody's** 12:19 22:25

**evidence** 56:21

**exactly** 40:22 66:22

**examination** 24:23

**example** 52:3 55:7

**except** 33:24 65:6

**excessive** 64:22

**excessively** 41:18 42:2,4 43:23

**exclude** 27:3

**excluded** 27:16

**execute** 61:8

**exercise** 27:13

**exercised** 5:22

**extension** 8:11 8:18 11:5

**extensive** 11:4 26:13

**extent** 56:12 57:11 64:18

**eyes** 39:25 57:6

## f

**f** 71:1

**faa** 55:25

**facility** 30:10 32:15

**facing** 46:15,17

**fact** 9:14 11:9 29:17 59:10

**fail** 68:12,16

**failing** 49:18

**faith** 37:2

**falls** 13:16

**far** 6:22

**farm** 37:7,8

**fbi** 3:17 4:13 14:25 15:19 16:7 21:18 22:9

**fbi's** 15:21

**federal** 5:5,7 33:6 56:10

**fellow** 48:24

**fifth** 2:13

**fifty** 6:20

**file** 11:8

**filed** 7:11 8:11 8:20 9:4 10:4 11:3,21 25:21 27:20

**filing** 9:20 13:22

**final** 60:8,10

**find** 56:12 58:1 65:9 66:1

**finding** 27:5

**finds** 64:16

**fine** 24:6 25:6 25:10,13,14

**finish** 24:24

**finished** 25:1

**firearm** 28:20 66:4,7

**firearms** 37:19 37:24 38:3,5,8 38:9,15,20 39:20,24 65:20 65:21,22,23 66:12 67:5

**first** 40:6,23 44:13 47:3 55:18,19

**flexible** 59:9

**flight** 46:20 48:7 52:12 54:1

**floor** 2:13

**flores** 2:18,24 3:5,12

**followed** 36:4

**foregoing** 71:4

**foreign** 46:14 47:2 53:15

**forfeiture** 10:9 58:5,12

**forth** 44:25

**forward** 36:5

**found** 36:10,13 46:16 48:14 49:13 55:8

**four** 16:21,23 17:1,2,2,9,14 17:19 18:6,7 19:2,3,17,19 19:23,25

**fraud** 5:9,11

**free** 57:25 58:25 65:17

**friday** 1:15 24:7,24 36:15 49:13,14

**fridays** 24:1

**front** 10:12 25:23 49:10

**full** 6:11

**further** 5:6,8 5:10,11 13:24 47:10 60:2

## g

**g** 4:1

**generally** 41:12 42:11,13 42:16 52:17 69:13

**generated** 8:25

getting 23:4
give 13:11
  14:15 66:25
given 9:13
  59:10
gives 11:5
  53:10
go 6:22 11:8
  12:21 13:18
  22:7 23:23
  24:8,9 26:10
  30:2 31:14
  35:8 46:11
  50:24 52:4,8
  53:23 64:7
  66:15 68:19
goes 48:6
going 9:14
  10:23 14:2,6
  23:3,21 25:2
  29:19 32:17
  33:14,18 45:16
  46:10,11 50:8
  53:23 54:1
  56:4 63:22
good 4:5,15,16
  4:21,22 25:12
  37:1,1 60:14
government
  8:10 9:2,22
  10:8,19 11:5
  14:12 23:9
  29:18 44:13,25
  47:10,21 48:9
  55:10 60:11
  67:22

government's
  54:13
grand 5:2
granted 27:1
grantee 62:16
granting 27:7
great 60:18
gu 2:7,19,25
  3:6,13
guam 1:2,21
  4:3 21:9,19
  30:24 31:8
  40:21 41:2
  46:12,13 52:8
  53:24 57:25
  61:9 62:17
  64:6 65:14,18
guerrero 2:3
  4:11,12,16
  8:13,15,16,24
  9:4,12,16
  11:19 12:2,8
  12:14,17 13:2
  14:17,20,23
  15:11,14,17
  16:6,9,15,17
  16:20,23 17:1
  17:5,16,23
  18:1,4,8,11,14
  18:22,24 19:4
  19:8,11,16,18
  19:24 20:12,16
  20:18,22 21:2
  21:6,16,25
  22:3 23:9
  25:25 44:16,17
  44:18 47:4,6,9

  54:7,12,22
  55:1 59:24
  60:20,24 67:18
  69:25
guess 8:8 12:11
  13:21 27:18
  60:15,19
guilty 8:3,5
  46:16

## h

h 54:25 55:1
hagåtña 1:21
  2:7,19,25 3:6
  3:13
hand 6:6 13:18
hansen 1:11
  32:22 45:24
  54:23,24 65:3
happen 52:6
happened
  47:24 48:12
hard 11:25
  12:4,7 13:10
  13:13 14:11,19
  14:22,24 15:5
  15:10,14,20,22
  15:24 16:4,10
  16:14,22,24
  17:2,9,19,24
  18:7,17 19:6
  19:12,19,19
  20:11 21:10,11
  21:15,17,24
  22:10 23:2,4
  60:19
hardship 45:21

hate 60:15
hawaii 15:1,20
  18:12 19:15
  21:18 31:7
he'll 8:2 25:16
  66:15
head 32:17
  36:2
hear 44:12
  51:15
heard 55:19
hearing 1:14
  8:19 14:1,5,8
  23:6,19 25:7
  26:20 27:2,5
  27:16 48:21
  69:17
helicopter
  32:23
helicopters
  1:11
help 6:8
helpful 10:24
hernan 2:6
high 6:24
hit 32:17
hold 41:1
  53:14
holds 58:12
home 38:3,7
honest 5:9
honolulu 14:15
  14:18 15:9,16
  16:5 17:3,10
  17:12,20 18:2
  20:9 21:24
  22:1

Veritext Legal Solutions
Case 1:21-cv-00010   Document 2334   Filed 07/31/25   Page 79 of 91
212-267-6868          www.veritext.com          516-608-2400

honor 4:12,17
4:22 5:25 7:21
7:23 8:3,13,19
9:25 10:25
11:20 13:2,5
14:3,24 16:18
17:17 21:3,7
22:16 23:11,12
23:17 24:23
25:19 28:2,9
29:6,9 30:1,10
30:14,24 31:10
32:13 33:15,21
34:13,20 35:5
36:8 37:25
38:4,23 39:25
40:7,15,22
41:5,8 42:24
43:4,12,21
44:3,7,16,20
47:4,10,13,25
48:8 49:5,10
50:10,15,22
51:11,17 52:3
52:24 53:22
54:6,7,13
55:14,19 56:20
57:12 58:4,25
59:24 60:11,25
61:12 62:1
63:1,14 65:8
66:11,22 68:5
69:3,9,22 70:1
honor's 54:8
honorable 1:17
4:4

hoops 36:18,20
36:25 49:15
hope 11:6
hopefully 26:1
hospitalized
7:2
hour 53:4
hours 7:7
how's 45:16
humans 37:21
hundreds
10:10
hurt 37:20
hyde 71:3
hypothetically
13:7
håfa 4:5,11

**i**

idea 14:13
identified
45:23 50:5
illegally 58:16
images 17:7
immediately
48:16 54:3
immigration
54:18,19 55:9
55:14 56:2
impose 28:5
38:20,22 41:24
imposed 40:17
42:13,18
inappropriate
26:12 64:19
include 68:3
including
11:16 29:1

inconvenience
52:22 64:6
indicated 7:10
60:2
indicating 27:1
indication
37:22
indictment 4:8
5:2,16 7:11,18
7:22 8:6 36:11
36:14 45:1,11
46:7 48:10
55:23,24 56:4
indiscernible
26:23 58:6,9
58:21 59:14,21
individual
37:23
individuals
67:23,24
information
10:12 14:25
15:19,25 16:7
17:6,8,10
18:15,25 21:7
22:6,9 45:20
54:23 55:3
62:6,10
initial 4:8 50:5
initially 27:21
intend 38:10
intends 52:18
intent 28:7
interest 27:9
interests 27:6
international
46:22

investigation
49:16 56:4
involving 10:9
island 25:16
issue 23:16
27:18 41:7,15
49:19 57:23
60:9 65:22,24
67:1
issued 48:10,15
68:14
issues 37:4
it'd 17:16
itinerary 51:8
52:16 53:8,17

**j**

j 2:22
jail 46:18
jailed 68:14
james 2:16,17
janet 3:16
jim 4:19
joaquin 1:17
4:4
john 1:7 2:9
4:7,19,25 6:13
joint 10:3 11:8
11:14 25:21
26:19 27:1,7
jon 1:8 4:25
jr 1:18 4:4
judge 23:21
24:9 25:4
48:25 49:9
judges 48:24
july 13:11 14:7
22:23 71:16

Veritext Legal Solutions
Case 1:23-cr-00010    Document 2334    Filed 07/31/25    Page 80 of 91
212-267-6868            www.veritext.com            516-608-2400

**jump** 36:17,25
**jumped** 36:20
  49:14
**june** 1:15 13:7
**jurisdictions**
  49:22
**juror** 68:21
**jury** 5:2
**justice** 27:6
  68:22

### k

**k** 2:10 6:16
**kapp** 1:10 3:1
  8:21
**keep** 22:19
  59:11 64:3,13
**kenneth** 1:9
  2:21
**kill** 37:19,20
**kind** 29:21
  46:21 58:12
  60:19
**kinds** 36:17,20
  37:9,13,17
  49:15
**knew** 38:25
  48:18 53:23
**know** 8:19 9:5
  11:1,2 12:20
  13:17 22:4,6
  22:15,22 26:1
  30:11 33:20
  35:16 36:9,23
  38:12,13 39:1
  39:5,17 41:20
  42:10,25 43:2
  43:6,25 44:23

44:24 45:7,8
45:13,14,14,17
45:18,23 46:4
46:5,10,12,13
46:18,19 47:23
49:3 50:3,12
52:19 53:8
54:1 55:15,21
56:5,8,19,23
57:15,17,19
58:1,17,18
59:1 60:13
63:23,25 64:6
64:23,24 66:1
66:2,3,9 69:15
**knowing** 11:11
**knowledge**
  57:13
**known** 4:25
  49:15 52:12
  53:21
**knows** 53:24

### l

**l** 6:16
**lack** 29:16 37:9
**large** 37:8
**late** 22:23
**laundering**
  5:13
**law** 2:12,17 3:3
  3:10 29:1
  30:14 55:9,14
  56:13 67:12
  68:5
**laws** 55:25
  56:10

**lawyer** 33:25
**lawyers** 9:19
  31:18
**lead** 68:24
**leave** 46:12
  65:14,17,22
**led** 45:11 46:6
**ledanski** 71:3
**legal** 61:13
  71:11
**leon** 2:3 4:11
  4:12,16 8:13
  8:16,24 9:4,12
  9:16 11:19
  12:2,8,14,17
  13:2 14:17,20
  14:23 15:11,14
  15:17 16:6,9
  16:15,17,20,23
  17:1,5,16,23
  18:1,4,8,11,14
  18:22,24 19:4
  19:8,11,16,18
  19:24 20:12,16
  20:18,22 21:2
  21:6,16,25
  22:3 23:9
  25:25 44:16,18
  47:4,6,9 54:7
  54:12,22 55:1
  59:24 60:24
  67:18 69:25
**letting** 50:2
**licensed** 67:16
**lieu** 26:19
  58:18 59:6
  62:17

**light** 26:13
**limited** 37:24
**list** 60:12,21
  67:20,23
**little** 23:19
  47:17 57:11
**live** 66:2
**lives** 29:10
  37:7 52:24
  53:1
**livestock** 37:20
**llp** 2:23
**local** 4:19
  56:10 59:3
  61:7 62:11
**located** 64:10
**location** 1:19
**long** 35:9 52:13
**longer** 44:2
**look** 12:12 26:2
**looking** 8:9
  11:11 41:21
  57:22 58:17
**lose** 58:11
**lot** 45:5 48:24
**lujan** 2:22,23
  25:10,11,12

### m

**m** 1:22 2:16,17
**mack** 2:10 4:17
  7:20
**made** 41:2
  44:23 48:19
  56:21 64:5
**magistrate**
  48:20,25,25

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400
Case 1:23-cr-00010 Document 233 Filed 07/31/25 Page 81 of 91

**maher** 2:16,17 4:19 59:5 61:9 61:12,17,22
**mail** 21:23 22:2
**mailed** 16:5 20:9
**majuro** 49:23
**make** 9:5,17 22:19,24 33:5 34:12,17 36:4 39:22 40:15 41:19 49:8 55:15 60:14,17 63:23 66:16,18 67:2
**makes** 66:6
**manibusan** 1:18 4:4
**manner** 20:23
**marshal's** 48:17,19
**martin** 2:10,11 2:12 4:17,17 4:18,22 7:20 7:21 8:2 9:13 9:21,25 10:24 11:18 13:5,9 13:14,21 14:2 14:6,14 17:21 17:24 19:6 20:2,5 22:11 22:15,18 23:12 23:14,15,25 24:8,12,18,22 25:8,19 26:9 29:5,9,13,25

30:6,9,17,23 31:3,9,16,21 31:25 32:3,7,9 32:12 33:1,4 33:14,20 34:13 34:18,25 35:5 35:13,15,19,22 36:7 37:7,12 37:17 38:22 39:3,7,11,15 39:21 40:4,7,9 40:14,22 41:4 41:7,25 42:5,9 42:20 43:4,11 43:16,21 44:3 44:7,14 47:12 47:13 49:4,9 50:7,15,21 51:1,9,11,14 52:2,23 53:4 53:18,21 54:6 55:17,18 56:19 57:1,3,10 58:1 58:4,7,10,22 58:24 59:7,13 59:17,20 60:8 60:10 63:1,5,7 63:12,14 66:10 66:11,15,22 68:7 69:8,9,19 69:22
**marvin** 1:9 3:8
**material** 29:18 30:2
**materials** 11:1 12:6 14:7 22:25

**matter** 5:20 26:6 56:3 61:3 65:4 68:19
**matters** 5:13 59:10
**mean** 13:18 19:6 21:14 23:1 24:10 29:23 30:4 35:22 43:12 45:15 49:5 54:15 55:12 60:14
**meaning** 54:21
**meaningful** 29:21
**meant** 24:12
**measures** 36:24
**medical** 67:16
**medicine** 7:6
**meet** 10:17 14:9
**meeting** 48:13 50:16
**mentioned** 37:4 50:12
**merely** 64:4
**message** 45:25
**met** 48:8
**mexico** 50:19 50:21
**micronesia** 49:23
**miles** 53:3
**million** 57:22 58:6,18 62:18

**mind** 32:20
**mine** 57:12
**mineola** 71:14
**minute** 52:7,17 64:8
**misconduct** 47:19
**missed** 65:19 67:17
**missouri** 22:8 28:8,14,17 29:10 30:22 31:5 37:8 38:16,24 39:6 39:14,23 40:11 42:15 46:11 51:8,19 52:21 52:25 53:1,2 53:16 55:22 62:23 63:2,11 63:16 64:16 65:25
**modify** 43:25 64:20 67:6
**moment** 21:3 41:4 58:22
**monday** 24:6 26:21
**mondays** 24:1
**money** 5:12 57:12
**monitored** 45:16
**months** 21:5 36:10
**morning** 4:6 4:15,16,21,22

10:1 26:22
36:19 48:16
49:13 69:24
**motion** 8:11,17
8:20 9:6,20
10:3,5 11:9,14
11:21,25 13:17
13:19,22 16:18
25:21 26:18,19
27:1,7 34:12
34:17,18
**move** 32:17,18
35:2
**moving** 23:22
36:5
**murder** 23:19
24:16

**n**

**n** 2:1 4:1 71:1
**name** 6:12,12
6:15
**narcotic** 28:23
67:14
**narcotics** 7:3
**national** 5:4
**necessary**
37:19 38:19
39:20 41:3
**necessities**
38:18
**need** 12:12
16:4,10 17:2
17:19 18:21
19:2,6 27:18
29:19,23 32:13
32:16 36:4
44:24 46:11,23

51:20,22 52:7
66:4,7,18 67:5
**needed** 10:21
15:2 26:4
27:11
**needs** 10:20
12:11 36:3
46:1 51:6
**neosha** 55:22
**neosho** 28:14
53:1
**never** 30:12,24
**new** 12:24
24:25 56:3,4
**non** 23:8
**normally** 38:4
**northern** 31:6
62:24 63:8
**note** 68:20
**notebook**
52:25
**notice** 53:20
57:24 63:24
**notified** 36:12
**notify** 63:20
**number** 45:12
45:13
**ny** 71:14

**o**

**o** 4:1 71:1
**oath** 6:3
**object** 44:21
**objection**
23:10 32:10
38:2 46:4
52:15 60:2

**objectionable**
23:8
**obstruct** 68:22
**obtain** 61:8
**obtained** 58:16
61:24
**obviously** 24:3
50:2 56:14
58:11 66:5,8
**occur** 36:12
**occurred** 55:21
**occurring**
49:18
**occurs** 56:14
**offense** 5:3,9
5:11,12 42:17
**office** 2:4,12,17
15:21 16:11
17:11 27:23
28:17 38:2,16
39:17,18 40:12
44:1 48:13,16
48:17,19 51:7
51:19 52:9,16
52:21 53:2,16
54:3 63:20
64:10,15 65:25
66:6 67:13,13
**officer** 3:16
28:25,25 37:4
38:24 39:23
41:11 42:21
50:3,17 53:5
64:7 67:1,12
**officer's** 52:9
**officers** 38:6
38:10

**offices** 3:3,10
20:24
**oh** 6:16 18:3,6
24:10 28:13
59:15 63:6
65:21
**ok** 2:14
**okay** 6:25
13:25 14:21
16:8,19 18:13
18:14 20:1,3,3
20:6 21:4,6
22:12,17 24:4
24:5 25:3,18
31:21 35:13,15
39:23 40:4,14
44:2 47:5,8
50:24 51:13,24
54:10 58:3
59:22 60:7
61:2,2 63:15
68:6 69:21
**oklahoma** 2:14
23:20,20 27:22
30:22 31:4
34:19 36:15,16
37:13 38:22
39:4,10 40:11
41:22 42:8,15
48:17,20 49:9
50:6,9
**old** 6:19 43:12
71:12
**once** 10:4 12:3
15:12 20:12
21:14,16,18
36:13 42:16

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400
Case 2:23-cr-00010 Document 2334 Filed 07/31/25 Page 83 of 91

53:25 65:16

**onerous** 58:21

**ongoing** 47:19 48:2 57:7

**open** 52:10

**operate** 46:1

**operated** 46:8

**operation** 65:3

**operations** 34:6

**opportunity** 7:13 10:25 11:7 26:2 49:17 66:25

**opposition** 51:5

**order** 13:24 16:18 26:17 33:6,23 46:1 61:18 68:10,10 69:5,5

**ordered** 66:24

**ordering** 65:23

**orders** 45:14

**originally** 67:10

**outside** 30:4,7

**outweighs** 27:8

**own** 5:21 48:4

**owner** 47:16 56:24

**owns** 35:6,9 56:6

**p**

**p** 2:1,1 4:1

**park** 2:13

**part** 29:15 41:16 55:23 56:8 60:8 62:21 67:10

**particular** 55:2

**particularly** 5:14 30:19

**parties** 13:1 23:8 26:18

**passage** 43:2

**passed** 41:10

**passport** 29:4 29:4,5 40:19 40:20,25 41:1 46:9,12 51:19 52:7,22 53:14 59:11 64:4,8 64:13

**past** 7:6 13:19 33:19

**patico** 61:20

**pending** 12:22 13:24 35:10 68:15

**people** 31:10 64:25

**perez** 3:2,3,9 3:10 25:9,11 25:13,15,16

**period** 66:17

**permission** 47:3 50:9 51:10

**person** 35:3 42:12,16 56:9

**personnel** 29:1 68:5

**persons** 60:21

**perspective** 39:9

**pertaining** 17:18

**pete** 4:14

**peter** 3:9,10,17

**philippines** 49:22 50:20 52:19

**phillip** 1:10 3:1

**picture** 38:17

**pills** 7:6

**place** 33:12 34:24 44:5 46:21

**placed** 6:2

**places** 50:4 51:6

**plaintiff** 1:5 2:2

**planned** 52:17

**plaza** 2:5

**plea** 7:19 8:2

**plead** 8:1

**pleadings** 10:7 11:3

**please** 4:2,6,10 6:5 68:20

**plenty** 49:17

**point** 12:11 14:1 27:24 40:19 60:22 61:1

**points** 44:19

**policy** 42:13

**position** 43:24 54:14

**possess** 28:20 28:22 38:9 67:14

**possessing** 39:23

**possession** 15:4 16:7 67:4

**possibility** 24:9

**possible** 28:24 42:1

**post** 61:6

**posting** 57:23 59:5,16

**posts** 58:19

**potential** 46:19 60:5 67:19,22 67:24 68:21

**pr** 41:21

**practiced** 30:23

**practicing** 30:14

**practitioner** 67:16

**preliminary** 24:23

**premises** 56:14

**preparation** 26:5,8,8 27:12 62:13

**prepare** 12:16 61:11

**prepared** 7:18 10:22 27:21

**prescribed**
  67:15
**presence** 30:5
  30:7 31:24
  32:5 33:25
  61:6 65:6
  69:14
**present** 3:15
  4:13,20 10:2
  31:19 55:21
  62:7 65:24
  66:21 69:11
**presiding** 4:4
**pretrial** 27:19
  27:21 28:24
  38:11,24 39:3
  42:21 50:2,5
  50:16
**pretty** 60:14
**prevent** 33:25
**previously**
  9:10 33:10
  34:7 42:12
**prior** 8:19 9:19
  25:20 43:6
  45:17 53:17
**prison** 68:18
**probably**
  37:15 61:24
**probation** 3:16
  27:23 28:17
  37:4 38:2,16
  39:16,22 41:11
  44:1 51:7,19
  52:9,15,21
  53:16 54:3
  63:20 64:7,10

  64:15 65:25
  66:5 67:1,13
  68:2
**problem** 23:15
  32:12 53:7
  56:25 57:2
**problems**
  49:20
**procedure**
  22:13
**proceedings**
  5:24 68:15
  70:3 71:5
**process** 20:8
  21:22
**produced** 16:1
  16:1 18:16
**production**
  12:7,8,10
  21:20
**propensity**
  52:12
**property** 57:24
  58:19 61:7,11
  61:24,25 62:4
  64:3 65:15
**proposal** 9:21
  13:3,5
**proposed** 10:2
**protection**
  66:4,7
**provide** 8:12
  10:20 11:5
  12:3 13:9,13
  15:2,21 16:21
  17:8 21:10
  26:3 53:16,20

  53:22 54:3
  60:12,22,25
  61:14 62:10
  67:20,23
**provided** 11:6
  15:7 62:20
  65:15
**provides** 27:10
  51:7
**providing**
  27:14 39:11
  52:15 53:7
**prozik** 3:17
  4:14
**prudent** 43:8
**psychiatrist**
  7:2
**ptr** 61:18,18
**public** 27:9
**punishment**
  68:24
**purpose** 11:15
  36:1 37:24
  65:3
**purposely**
  56:18
**purposes** 6:3
  10:23 12:16
  27:11 29:7
  31:17,18 36:5
  41:2,3 44:8,10
  45:10,22 50:1
  51:2 63:19
  64:23
**put** 13:11
  34:20 36:23
  41:13 44:20

  46:3 55:9
**putting** 44:9

**q**

**question** 20:7
  57:19
**questioning**
  29:2
**questions** 69:7

**r**

**r** 1:9,9 2:1,21
  3:8 4:1 6:16
  71:1
**raise** 6:6
**raised** 44:19
**ranch** 38:3
**randall** 1:10
**rather** 61:8
**reading** 7:18
  7:22,22
**ready** 18:16
**real** 49:1
**realistic** 10:13
**realistically**
  13:17
**really** 8:8
  11:14 12:16
  13:16 20:7
  27:19 34:6
  36:2 40:16,17
  43:2,3 45:16
  57:20,22 58:21
**reason** 11:19
  52:23
**reasonable**
  10:18 23:7
  32:25 33:3

34:3,4 35:11
35:12 36:2,6
40:20 66:1,9
**reasonably**
63:21
**receipt** 15:23
**receipts** 20:10
**receive** 21:16
21:18
**received** 5:16
7:10 15:12
20:21 21:7
45:20 68:25
**receiving** 15:23
54:16 64:2
**recent** 55:12
**recently** 7:1
55:7
**receptive** 23:21
**recommend**
38:8 40:1
41:22
**recommenda...**
39:13 40:3
41:13 51:18
66:6 67:2
**recommenda...**
27:24
**recommended**
57:21 67:11
**recommending**
28:1
**record** 4:23
6:12 8:10 9:5
9:17 44:6,20
46:4 55:10
71:5

**recorder** 1:22
**records** 43:6
**reed** 1:9 3:8
8:21
**refer** 37:13
**referred** 5:15
**reflect** 9:6
**reflective**
11:20
**reform** 36:22
**refrain** 41:14
**regard** 37:2
58:15 60:19
**regarding**
54:14 57:23
65:5
**regards** 29:3
30:15,17
**relates** 35:6
37:3 41:15
48:7
**relating** 41:9
47:20 55:25
56:2
**relay** 45:25
**release** 28:9
35:3,18 39:14
42:19 43:1
51:21 56:9,11
56:16 61:4
62:19,21 64:20
65:11 67:6,10
68:9,10,11,13
68:24 69:5,6
**released** 28:2
**remain** 28:10
34:24

**removed** 66:16
**reply** 47:12
**report** 27:20
27:21 28:24
37:11 39:4
41:21 42:8
43:10 50:6,14
57:21 67:11
68:4
**represent** 5:23
**representations**
64:5
**represented**
5:21 26:12
**request** 27:25
41:19
**requests** 51:21
**require** 43:8
51:5 61:6
62:22 64:14
65:13 67:8
69:11
**required** 42:19
49:11 53:20
63:20 68:17
69:15
**requires** 59:5
**reset** 10:5
**resetting** 25:24
**residence** 22:8
38:6 61:9
65:18 66:13
**respect** 8:17
9:17 11:21
15:3 16:17
18:5 21:8,12
22:8 46:9

59:25
**respectfully**
57:11
**respective** 9:9
15:23
**respond** 47:7
**responsibility**
56:24
**responsible**
57:4,9,14
**restricted**
49:21 63:17
**restriction**
38:20 46:21
**restrictions**
40:18 44:9
**restrictive**
36:24
**restricts** 39:19
**retained** 5:23
**return** 28:7
65:18
**returned** 5:2
**review** 10:21
11:1
**reviewed** 10:7
**revise** 34:11
**right** 5:18,20
5:22 6:6,21 7:9
7:24 8:4 9:15
9:24 12:6,14
12:17 13:8
14:10 15:8
16:3,5,13,25
17:4 19:22
20:1 21:22,25
22:12 23:5

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400
Case 1:23-cv-00010    Document 2334    Filed 07/31/25    Page 86 of 91

24:15 25:3
26:10 28:3
35:7 39:7,15
40:8 41:20
42:5 47:8
50:18,20,24
51:13,24 54:4
54:10 58:9
59:22 60:7,21
61:2,25 62:5
62:11 63:10
65:7 66:14,24
67:3,4 68:6,8
69:4,23
**rights** 5:19
**rise** 4:2
**risk** 46:20 48:8
**road** 71:12
**rogers** 1:10
**route** 28:13
**run** 32:19 33:5
56:5
**running** 27:4
27:17 36:1
64:24

**s**

**s** 2:1 4:1
**safety** 5:5 38:6
38:9
**satisfactory**
22:13
**satisfied** 65:16
65:17
**saturdays**
52:10
**saying** 20:8
39:18,24 40:11

50:11 52:5
53:13
**says** 24:3 43:14
43:16 50:18
**scenarios**
57:18
**schedule** 33:10
33:11 34:8,10
34:11
**scheduled**
48:13 69:10
**schedules**
45:19
**scheduling**
10:6 26:17
45:17 47:25
**school** 6:23,24
**seated** 4:6 6:11
**second** 17:14
55:19
**secure** 61:5
**secured** 58:20
**security** 58:17
59:10
**see** 8:10 18:3
22:12 23:5
25:3,9 36:6
39:1 40:12,24
43:2,5,9,20
50:14,25 51:15
53:12 56:24
63:22
**seem** 32:24
33:2
**seen** 5:16 11:3
41:15 43:11

**seized** 58:7,8
**seizure** 58:12
**send** 15:9 17:3
17:19 18:17,17
18:21 21:1
22:10 63:25
**sending** 16:14
**sense** 11:14
20:4 59:12
**sent** 15:1,5,13
15:15,20 16:10
17:11 18:2,12
19:20 20:24,24
21:10
**sentenced**
68:18
**separate** 16:9
18:17 45:24
**separately**
21:23
**serious** 46:16
**served** 27:6
**services** 5:9
27:20,22 28:25
38:24 39:4
41:21 42:21
50:2,6,17
**session** 4:3
**set** 8:9 10:13
11:7,16,17
13:6 14:8
22:20 23:6,22
24:24,25 26:6
26:16,20 33:9
33:10 34:7,23
35:17 36:9,16

**setting** 12:24
27:2 36:8
**seven** 17:17,19
17:24 18:9
19:14
**severe** 68:24
**ship** 14:15
**shipped** 14:18
**shipping** 21:4
**short** 66:17
**show** 4:23
29:20 33:6
49:1
**showing** 37:1
**shown** 46:22
52:11
**shut** 32:22
33:16 47:22
**shutting** 48:3
**sidebar** 54:9
54:11 57:21
59:23
**signature** 71:7
**significant**
46:17 64:11
**sinajana** 37:16
**singapore**
50:19
**sir** 5:1,15,17
6:5,17,19,21
7:4,5,8,9 9:24
13:14 26:9
29:4,9 32:9,25
34:9 37:6,12
38:13 39:2
40:24 42:9
44:5 47:12

48:23 50:25
52:1 54:5 60:8
61:9,21,23
62:14,18,24
63:12,17 64:15
65:10,14 66:2
66:25 67:6,23
68:9 69:20
**sirena** 2:5
**situation** 38:19
55:13
**sixty** 53:3
**snakes** 37:18
**soledad** 1:20
**solely** 65:2
**solemnly** 6:6
**solutions** 71:11
**somebody**
45:23 57:13
**something's**
32:17
**sonya** 71:3
**soon** 28:24
53:21,22,24
63:21
**sorry** 7:20
26:20 30:6
38:21 50:25
**sounds** 19:7
23:1,2
**source** 58:16
**southern** 31:6
62:25 63:2,4,5
63:6,8,9,13,16
**speak** 8:18
30:19

**speaking** 42:11
**speaks** 55:11
**special** 3:17
4:14 20:25
**specific** 9:7,8
61:10
**specifically**
28:3,11
**speedy** 10:15
27:4,10,17
**spell** 6:12,14
**spend** 23:3
**spoke** 9:25
**springfield**
53:2
**stand** 6:5
**standard** 28:18
56:9
**standing** 34:16
**start** 43:19
**state** 4:10 6:11
**stated** 5:14 8:7
69:7
**states** 1:1,4,19
2:4 4:13 30:24
31:2 67:13
**stating** 9:8
**stats** 54:18
**status** 14:1,5,8
22:20 23:6
25:7 26:20
27:2,5,16
54:20 69:10
**stay** 60:4
**staying** 54:2
**stems** 45:2,3

**stephen** 2:3
4:12 10:1
**stops** 29:2
**street** 2:18,24
3:5,12
**subject** 68:18
**subjected**
65:12
**submit** 20:16
20:19 28:16
41:22 42:23
45:17 48:3
67:9
**submits** 44:25
**submitted**
14:12
**submitting**
15:24 51:1
**substance**
28:23 41:9,16
42:5 45:5
55:23,24 67:15
**sufficient**
61:13
**suggest** 14:2,6
22:18
**suggested**
60:11
**suggesting**
13:22
**suite** 2:6,18 3:4
3:11 71:13
**summons**
48:11
**sundays** 52:10
**supervise**
39:17

**supervised**
62:22
**supervising**
28:25
**supervision**
28:16 63:15
**supervisory**
39:12
**suppose** 12:5
28:19
**supposed** 23:1
**sure** 9:17 11:18
20:25 22:19,24
31:9 33:5
34:18 35:19
38:15 39:22
40:15 41:6
43:21 44:14
49:8 52:18
59:7 60:17
**surprise** 69:16
69:16
**surrender**
36:11,14 51:18
**surrendered**
48:18,18
**suspend** 13:23
**swear** 6:6

## t

**t** 1:10 3:1 71:1
71:1
**take** 12:4 20:10
21:5 54:9
61:19
**taken** 7:5
12:23

**takes** 56:24
**talk** 29:15,24
  30:13 31:17,19
  31:23 32:8,13
  32:16,18 33:21
  34:5 35:9,25
  45:15 48:1
**talked** 10:2
  25:22 38:25
  65:10
**talking** 29:19
  32:20 33:17
  34:21,22 35:20
  39:6 45:3
**talks** 42:22
**team** 21:18
**tell** 6:7 31:13
  64:25
**telling** 44:9
  47:1 69:17
**tells** 58:24
**tenorio** 1:22
**tens** 10:9
**terabyte** 16:23
  17:2,9 19:19
  19:19
**terabytes**
  17:20
**term** 12:6
  48:25
**terms** 6:22
  64:11
**territory** 53:6
  65:14
**test** 41:10,10
**testing** 41:23
  42:6 67:9

**thank** 6:10,17
  8:16 47:11
  51:24 69:22,23
  69:25
**that'd** 46:2
  62:12
**thereof** 26:19
  69:16
**thing** 8:8 40:23
  43:8 54:8,12
**things** 32:14
  37:18 38:13
**think** 9:21 11:8
  11:10 14:11
  23:21 33:22,22
  34:13 36:22
  37:1,15 41:11
  43:22 46:2,18
  51:12 57:10,14
  57:16 62:9
  64:18
**thinks** 44:1
  64:17
**thirty** 20:2
**thought** 24:15
  32:1
**thousand** 23:3
**thousands**
  10:10,10
**three** 9:18 12:5
  13:10,15 15:24
  15:25 17:9,14
  20:10,18,19
  21:12 22:3
  48:12,21 49:12
  63:23,24

**thursday** 36:18
  48:13,16
**ties** 46:14
**time** 1:16 7:16
  8:11,18,20
  10:14,20 12:12
  14:1 20:20
  21:9 23:22
  25:24 26:4,23
  35:8 43:2
  46:16,17 52:13
  53:19 60:23
  61:1 62:7
  64:11 65:24
  66:17,21 69:1
**timeframe**
  20:14 23:7
  27:15
**timeframes**
  14:13
**times** 48:12
  52:6
**today** 4:24
  5:22 6:1 9:14
  13:4,6 27:5,15
  28:9 39:18
  59:17 68:10
**today's** 5:23
**together** 10:13
  30:1,11,20
  31:11,19 32:14
  32:19,22 33:12
  34:2
**told** 48:20
  49:10 50:8
  69:18

**total** 17:16
  18:10 19:8,25
  20:4
**town** 23:19
**track** 22:20
**traffic** 29:2
**transcript** 71:4
**transportation**
  5:4 15:4,18
  17:12 18:15,18
  19:1,21 21:17
  22:10
**transportatio...**
  16:11
**travel** 29:7
  40:10,11,18
  41:2 44:10,10
  46:21,22 47:1
  49:21,25 50:4
  51:2,6,20,23
  52:16,18 53:15
  53:22,25 63:17
  63:19 64:11
**travels** 50:13
  50:14,19
**treated** 7:3
**trial** 8:9 10:6
  10:15,18,23
  11:16 12:16,19
  12:21,22,24
  13:18 24:21
  26:7,15,17
  27:1,4,10,17
  41:21 46:16
  68:20
**trip** 63:23

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400
Case 1:23-cv-00010 Document 2334 Filed 07/31/25 Page 89 of 91

**true** 57:17 71:4
**truth** 6:7,7,8
**try** 25:20 40:24
  68:20
**trying** 63:21
**turn** 22:1
**twice** 43:17
**two** 6:20 16:14
  20:2 23:17,18
  45:13 64:8
**type** 47:19
  57:23 61:16

**u**

**u.s.** 3:16 28:16
**ultimately**
  56:24 57:8
**under** 6:3 7:1
  36:22 43:5,6
  55:2
**understand**
  14:14 16:4
  31:3,9,11
  33:16 35:5
  39:22 40:7,9
  40:19 43:22,23
  46:10,13 57:1
  57:3 67:7 68:1
  69:1
**understanding**
  9:20 11:13,24
  14:24 34:3
  47:14 62:19
**undue** 45:21
**united** 1:1,4,19
  2:4 4:13 30:24
  31:2 67:13

**unknowingly**
  60:16
**unlawfully**
  28:22
**unopposed**
  8:17
**unreasonable**
  26:13 40:25
  43:23
**unsecured**
  57:22 58:18
  59:6 62:18
**unusual** 30:22
**upset** 49:1
**urgent** 63:25
  64:1
**usa** 4:7
**use** 28:21,22
  39:19 41:14,17
  42:18 48:24
  58:15 64:21,22
  67:14
**used** 62:12
**using** 49:5
  52:25

**v**

**v** 1:6 4:7
**v.e.** 1:17 4:4
**vacate** 26:11
**vacated** 26:18
**vacating** 11:15
**valued** 59:18
**varmints** 37:14
  37:18
**veritext** 71:11
**versus** 10:14

**videos** 17:7
**villages** 37:16
**violate** 60:15
  65:11
**violated** 56:18
**violating** 54:17
**violation** 39:25
  54:19 55:8,13
  56:13,15 66:21
**violations**
  55:25 56:2
**violent** 37:22
**visa** 55:2
**visit** 38:10
**visits** 38:7
**voluntarily**
  36:10,14,25

**w**

**w** 6:16
**wait** 7:18 24:7
**waive** 7:21,22
**walker** 1:7,8
  2:9 4:8,25 5:1
  5:17,25 6:9,13
  6:13,16,18,20
  6:24 7:4,8,15
  8:7 22:7 27:19
  34:20,22,25
  35:6 36:20
  39:14,19 42:22
  45:22 46:1
  48:1 52:18,24
  53:1,3 56:15
  61:4,5,18 62:1
  62:3,8,14 65:8
  67:7 68:1 69:3

**walker's** 4:19
  8:5 29:4 35:4
  38:19
**walter** 1:22
**want** 17:8,17
  21:1 31:13,16
  32:2,3 33:4
  34:10 39:21
  40:14,15 43:20
  44:5 46:3 53:8
  53:11 54:13
  55:9,14 60:12
  60:17,18,22
  61:12 66:11,20
  67:25
**wanted** 9:16
  41:8 49:2,7
  57:20
**wanting** 31:12
**warrant** 48:15
  55:8 65:12
  68:13
**warrants**
  54:16
**washington**
  15:6,13,17
  16:12 20:15
**way** 10:11
  33:11 45:4
  46:7 55:5
**we've** 11:3
  13:19 24:25
  25:22 30:2
  38:25 42:25
  52:12
**weapon** 28:21

| | |
|---|---|
| **wednesday** | 45:18 54:22,24 |
| 23:13 | 55:4 |
| **week** 13:10 | **works** 29:11 |
| 23:24,25,25 | **y** |
| 24:5,8,12,13 | |
| 24:13 47:24 | **yamashita** |
| 52:20 | 3:16 27:25 |
| **weekend** 52:4 | 28:6,13,20 |
| **weeks** 12:5 | 38:4 51:17 |
| 13:10,15 15:24 | 68:4 |
| 15:25 20:10,18 | **yan** 4:5,11 |
| 20:19 48:22 | **yeah** 14:17 |
| 49:12 63:23,24 | 19:4 20:3 |
| **welcome** 70:2 | **year** 43:12 |
| **went** 48:16 | 49:16 |
| **west** 1:20 | **years** 30:14 |
| **western** 27:22 | 34:1 |
| 62:25 63:8 | **yesterday** 9:2 |
| **whatsoever** | 41:10,10 50:16 |
| 47:18 | |
| **wire** 5:11 | |
| **wish** 7:17 | |
| **witness** 54:16 | |
| **witnesses** 60:5 | |
| 60:12 67:19,22 | |
| 67:24 | |
| **wolff** 2:23 | |
| **word** 29:17 | |
| **work** 30:1,9,10 | |
| 30:20 31:11 | |
| 32:14,15,19,21 | |
| 32:23 33:7,11 | |
| 34:9 53:9 55:3 | |
| **worked** 45:19 | |
| **worker** 54:25 | |
| **working** 33:7,9 | |
| 33:19 34:1 | |

Case 1:23-cv-10010 Document 2334 Filed 07/31/25